Andrew Gould (No. 013234)
Drew C. Ensign (No. 025463)
Dallin B. Holt (No. 037419)
Brennan A.R. Bowen (No. 036639)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2575 East Camelback Road, Suite 860
Phoenix, Arizona 85016
(602) 388-1262
agould@holtzmanvogel.com
densign@holtzmanvogel.com
dholt@holtzmanvogel.com
bbowen@holtzmanvogel.com
minuteentries@holtzmanvogel.com

Michael Berry (*pro hac vice forthcoming*)
Richard P. Lawson (*pro hac vice forthcoming*)
Jessica H. Steinmann (*pro hac vice forthcoming*)
Patricia Nation *(pro hac vice forthcoming)*
AMERICA FIRST POLICY INSTITUTE
1001 Pennsylvania Ave., N.W., Suite 530
Washington, D.C. 2004
(813) 952-8882
rlawson@americafirstpolicy.com
jsteinmann@americafirstpolicy.com
pnation@americafirstpolicy.com

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Encore, an Arizona non-profit corporation; Karen Glennon, an Arizona individual; America First Policy Institute, a non-profit corporation, <br><br> Plaintiffs, <br> vs. <br><br> Adrian Fontes, in his official capacity as Arizona Secretary of State; Kris Mayes, in her official capacity as Arizona Attorney General; Katie Hobbs, in her official capacity as Governor of Arizona, <br> Defendants. | Case No.: <br><br> **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br><br> **Oral Argument Requested** |

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION..........................................................................................................1

LEGAL STANDARD.....................................................................................................3

ARGUMENT .................................................................................................................4

I.  THE SPEECH RESTRICTION IS A BINDING CRIMINAL PROHIBITION ..........................................................................................................4

II.  ALL PLAINTIFFS POSSESS STANDING TO CHALLENGE THE EPM. ...................7

III.  PLAINTIFFS ARE LIKELY TO SUCCEED IN ESTABLISHING THAT THE SPEECH RESTRICTION VIOLATES THE FIRST AMENDMENT ......................10

   A.  The Speech Restriction's Lack of a *Mens Rea* Requirement Violates The First Amendment ...........................................................................................10

   B.  The EPM's Attempt to Ban Offensive Speech Is Unconstitutional ..............10

   C.  The Speech Restriction Is Also an Impermissible Content- and Viewpoint-Based Regulation of Speech.............................................................................11

   D.  The Speech Restriction Is Unconstitutional As to Public Forums................11

   E.  The Speech Restriction Is Unconstitutional Even For Non-Public Forums, Such As Polling Stations..............................................................................12

   F.  The Speech Restriction Fails Strict Scrutiny ...............................................13

   G.  Additionally, The Speech Restriction Is Also Facially Invalid Under The Overbreadth Doctrine....................................................................................14

IV.  THE SPEECH RESTRICTION VIOLATES THE DUE PROCESS CLAUSE UNDER THE VOID-FOR-VAGUENESS DOCTRINE ...............................................15

V.  THE REMAINING REQUIREMENTS FOR INJUNCTIVE RELIEF ARE MET HERE....16

CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Ali v. Fed. Bureau of Prisons,*
   552 U.S. 214 (2008) ................................................................................................ 4

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
   178 F.3d 350 (5th Cir. 1999) ................................................................................ 9

*Babb v. Wilkie,*
   140 S. Ct. 1168 (2020) ........................................................................................ 4

*Baird v. Bonta,*
   81 F.4th 1036 (9th Cir. 2023) ........................................................................ 3, 16

*BST Holdings, L.L.C. v. OSHA,*
   17 F.4th 604 (5th Cir. 2021) .............................................................................. 16

*Cal. Trucking Ass'n v. Bonta,*
   996 F.3d 644 (9th Cir. 2021) ........................................................................... 8, 9

*City of Chi. v. Morales,*
   527 U.S. 41 (1999) ............................................................................................. 15

*City of L.A. v. Patel,*
   576 U.S. 409 (2015) ........................................................................................... 14

*Cohen v. Cal.,*
   403 U.S. 15 (1971) ............................................................................................. 11

*Contender Farms, L.L.P. v. USDA,*
   779 F.3d 258 (5th Cir. 2015) .............................................................................. 7

*Cornelius v. NAACP Legal Def. & Educ. Fund ,*
   473 U.S. 788 (1985) ........................................................................................... 11

*Counterman v. Colorado,*
   600 U.S. 66 (2023) ............................................................................................. 10

*Ctr. for Investigative Reporting v. SEPTA,*
   975 F.3d 300 (3d Cir. 2020) .............................................................................. 12

*E. Bay Sanctuary Covenant v. Trump,*
   950 F.3d 1242 (9th Cir. 2020) ........................................................................... 16

*Env't Prot. Info. Ctr. v. Carlson,*
   968 F.3d 985 (9th Cir. 2020) .......................................................................... 3, 4

*FCC v. Fox TV Stations, Inc.*,
  567 U.S. 239 (2012) ............................................................................ 15

*FCC v. Pacifica Found.*,
  438 U.S. 726 (1978) ............................................................................ 11

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013) ........................................................... 16

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................ 9–10

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ............................................................................... 13

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................. 9

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ............................................................ 16

*Matal v. Tam*,
  582 U.S. 218 (2017) ........................................................................... 11

*Minn. Voters All. v. Mansky*,
  585 U.S. 1 (2018) ............................................................. 1–2, 11-12–13

*Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*,
  142 S. Ct. 661 (2022) ........................................................................ 16

*Powell's Books, Inc. v. Kroger*,
  622 F.3d 1202 (9th Cir. 2010) ........................................................... 14

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ........................................................................... 13

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) ............................................................................... 7

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) ............................................................. 7

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................. 8

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) .............................................................. 7

*United States v. Salerno*,
  481 U.S. 739 (1987) ........................................................................... 14

*United States v. Stevens,*
    559 U.S. 460 (2010) ............................................................... 14

*United States v. Williams,*
    553 U.S. 285 (2008) ......................................................... 11, 15

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ............................................................... 12

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) .................................................................... 3

**Statutes**

A.R.S. § 13-707 .......................................................................... 5

A.R.S. § 16-452 .................................................................. 1, 4–5

A.R.S. § 16-1013 ............................................................. *passim*

**Rules**

Fed. R. Civ. P. 65 ....................................................................... 1

**Other**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 2948.1 (2d ed. 1995) ................................... 16

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs American Encore, Karen Glennon, and America First Policy Institute ("AFPI") (collectively, "Plaintiffs") respectfully move for a preliminary injunction prohibiting implementation and enforcement of the 2023 Elections Procedures Manual's ("EPM" or "2023 EPM") Speech Restriction. *See* 2023 EPM Ch. 9, § III.D, EPM pages 181–83.

## INTRODUCTION

The Speech Restriction is an aggressive and unconstitutional regulation of speech. It explicitly regulates speech both "inside *or outside* the 75-foot limit at a voting location," EPM at 181 (emphasis added)—*i.e.*, on every square inch of Arizona's territory. Although styled as an electoral regulation, the *only* required nexus to voting is that the proscribed speech be made to "voters"—*i.e.*, most adults. *Id.* And by its plain terms the Speech Restriction explicitly applies to "*any activity* by a *person*." *Id.* (emphasis added). *All* such "activity by a person" that violates its terms—including such ubiquitous actions as "raising one's voice" or "using … offensive language" — "is prohibited." *Id*. at 181–82. What's more, this broad prohibition carries criminal teeth, since any "*person* … who violates *any rule* [in an EPM] … is guilty of a class 2 misdemeanor" under Arizona law. A.R.S. § 16-452(C) (emphasis added).[1]

The Speech Restriction is a uniquely unconstitutional law with nary an equal across the county. Indeed, the Speech Restriction's closest equivalent was Minnesota's prohibition on wearing a "political badge, political button, or anything bearing political insignia *inside a polling place on Election Day*." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 5 (2018) (emphasis added). The Supreme Court had little difficulty concluding that *far-*

---

[1]  A challenge to the Speech Restriction (and other provisions of the 2023 EPM) is also pending in Maricopa County Superior Court. *See* Motion for Preliminary Injunction, *Arizona Free Enterprise Club v. Fontes*, No. CV-2024-002760 (Maricopa Cnty. Sup. Ct. May 28, 2024). That action only asserts violations of the Arizona Constitution and Arizona statutory law. In contrast, this suit asserts only violations of the U.S. Constitution.

Plaintiffs' Complaint also challenges the Vote Nullification Provision. This motion does not seek a preliminary injunction against that provision at this time. Instead, Plaintiffs have sent Secretary Fontes a letter asking him to disavow enforcement of that provision for the 2024 primary and general elections. *See* Exhibit A.

more limited electoral restriction of speech violated the First Amendment. *Id.* at 11–23. Here, by contrast, the Speech Restriction is *far* more expansive — reaching a much broader swath of speech and is limited to neither polling places nor election days. It merits the same fate as the Minnesota law challenged in *Mansky*.

Even as to the narrow confines of in-person polling places, the Speech Restriction places indefensible limitations on speech. Take a recent example from the 2022 elections in Maricopa County. Suppose a voter arrives at a polling place and is told that the ballot-printing machines have broken down and that the wait to vote will be several hours. Should that voter frustratedly exclaim in response, "You've got to be kidding me" in even a modestly elevated tone, that would be a Class 2 misdemeanor—by violating the Speech Restriction's prohibition on "raising one's voice . . . [to] a voter or poll worker." 2023 EPM at 182. Similarly, if that voter were even to *whisper,* "your level of incompetence is stunning," that too would be a crime for using "insulting or offensive language to a voter or poll worker." *Id.* Neither statement is remotely "threatening" or "intimidating" conduct—nor is either one remotely approaching "violence"—as required by the enabling Arizona statute. *See* A.R.S. §16-1013. Yet they are now criminal acts under the EPM's Speech Restriction. Similarly, wearing a jacket or shirt with off-color language, or shouting, "VOTE!" around a polling location or near a voter or poll worker, is now potentially a crime too.

Worse still, the Speech Restriction sweeps *far* broader than just polling places and election days. It has no temporal restriction: it applies on election day and *every other day*—quite literally to "any action" that violates its terms, whether on election day or otherwise. EPM at 181–83. And as discussed above, it also has no geographic limitation, expressly applying both "inside *or outside* the 75-foot limit" around polling locations. *Id.* at 181 (emphasis added).

The upshot is that the Speech Restriction is, by its terms, so overbroad that there are few people who would be free from the newly-defined crimes of occasionally raising one's voice, swearing, or using insulting language to a voter. Additionally, the Speech Restriction

is patently vague, violating fair notice principles and creating a real danger that it will be enforced in a hopelessly selective manner, almost certainly with a bias against officials' political and ideological opponents.

Unsurprisingly, given its staggering scope and its pretense that it can freely criminalize both core political and everyday speech, the Speech Restriction squarely violates the First Amendment and the Due Process Clause of the Fourteenth Amendment. Specifically, the Speech Restriction is unconstitutional because it: (1) requires no proof of *mens rea*, (2) purports to ban speech based purely on alleged offensiveness, (3) is content- and viewpoint-based restriction on speech; (4) impermissibly prohibits speech in public forums, (5) unconstitutionally regulates speech in polling places because it is viewpoint-based and incapable of reasoned application, and (6) is so vague that it violates due process. Given these constitutional violations, which inflict irreparable harm on Plaintiffs, this Court should enjoin enforcement of the Speech Restriction and order Defendants to promulgate a revised election procedure manual that removes the offending provisions.

## LEGAL STANDARD

In general, a party seeking a preliminary injunction must demonstrate that "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When, as here, "the nonmovant is the government, the last two *Winter* factors "'merge.'" *Id.* (citation omitted).

"The first factor 'is a threshold inquiry and is the most important factor.'" *Id.* (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). And "[i]t is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury." *Id.* Consequently, "[i]f a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.* Additionally, such a plaintiff's "likelihood of succeeding on the merits also tips the public interest sharply in his favor

because it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* (citation omitted).

## ARGUMENT

### I. THE SPEECH RESTRICTION IS A BINDING CRIMINAL PROHIBITION

In the state court litigation, defendants have largely forgone any defense of the Speech Restriction's plain text. Rather, they have artfully sought to rewrite the Speech Restriction in the hopes of making it pass constitutional muster. Thus, under Defendants' strained construction, the Speech Restriction (1) is purely non-binding guidance for election workers, (2) does not apply to the general public, (3) criminalizes nothing by its own terms, (4) has both implied geographic and temporal limitations, and (5) does nothing more than "paraphrase" A.R.S. § 16-1013. If Defendants were to offer a similar defense of the Speech Restriction under the First and Fourteenth Amendments here, it would be unavailing for four reasons.

*First*, the Speech Restriction is unequivocally written as a *general prohibition* on the conduct of *everyone, everywhere*—not mere guidance for poll workers. By its terms, the Speech Restriction provides that "*Any* activity by *a person*" that violates its terms "*is prohibited*." EPM at 181 (emphasis added). Because the prohibition applies to anyone that is "person," it is *not* limited to poll workers (who are no more or less "persons" than other citizens). And the use of the word "any" means just that—*any* activity that falls within its scope is prohibited. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (citation omitted) ("The word any has a well-established expansive meaning, that is, one or some indiscriminately of whatever kind.") (quotation marks and citation omitted); *accord Babb v. Wilkie*, 140 S. Ct. 1168, 1174 n.3 (2020) ("We have repeatedly explained that the word any has an expansive meaning.") (quotation marks and citation omitted).

The Speech Restriction's prohibition on *all* offending conduct by *all* persons in Arizona has criminal teeth, since "*[a] person* who violates *any rule* adopted pursuant to this section [*i.e.*, any provision of the EPM] is guilty of a class 2 misdemeanor." A.R.S. § 16-452(C) (emphasis added). So, if *anyone* violates the Speech Restriction's universally-

applicable prohibition, they are subject to criminal enforcement and penalties, including up to 4 months in jail. A.R.S. 13-707(A)(2). That is the inescapable effect of Defendants' *own* choice to use the phrase "is prohibited" in the Speech Restriction, rather than some other phrasing like "poll workers should *strive* to …" or "voters are *advised* not to …."

If Defendants had intended to draft the Speech Restriction as mere guidance, rather than as a binding prohibition, they scarcely could have chosen a worse word than "prohibited."

*Second*, the Speech Restriction has neither geographic nor temporal limitations. On the former, it expressly applies *both* "*inside or outside the 75-foot limit* at a voting location." EPM at 181 (emphasis added). The combined universe of locations that are either "*inside or outside the 75-foot limit*" is simply the entire territory of Arizona's borders. *Id.* (emphasis added). Lest there be any doubt on that issue, the Speech Restriction repeats the same "inside *or outside* the polling place" language a second time. *Id.* at 182 (emphasis added). Similarly, the Speech Restriction has no temporal limitation and instead prohibits "*[a]ny* activity" that falls within its scope. *Id.* at 181. Because "any" means "any," *supra* at 4, the Speech Restriction is not limited to election day.

*Third*, the Speech Restriction is no mere "paraphrase" of the statute it purports to implement, A.R.S. § 16-1013. Instead, it is explicitly structured as a *free-standing* prohibition of "*[a]ny* activity" within its defined scope, rather than some illustrative or shorthand rephrasing of § 16-1013.

*Fourth*, the Speech Restriction, by its terms, goes *far beyond* § 16-1013's restrictions on violence, threats, and intimidation;[2] instead, prohibiting a broad swath of

---

[2] A.R.S. § 16-1013 provides in full:
  A. It is unlawful for a person knowingly:
    1. Directly or indirectly, to make use of force, violence or restraint, or to inflict or threaten infliction, by himself or through any other person, of any injury, damage, harm or loss, or in any manner to practice intimidation upon or against any person, in order to induce or compel such person to vote or refrain from voting for a particular person or measure at any election provided by law, or on account of such person having voted or refrained from voting at an election.

protected speech and expressive conduct not covered by the statute. For example, § 16-1013 expressly requires a *mens rea* of "knowing[]" conduct. *See* A.R.S. § 16-1013(A) ("It is unlawful for a person *knowingly*...." (emphasis added)). But the Speech Restriction removes any *mens rea* requirement and prohibits speech based on "the intent or *effect*" it has on the listener, thereby making violation of the Speech Restriction a strict-liability crime. EPM at 181 (emphasis added). Similarly, the Speech Restriction adds a prohibition on "harassing" actions found nowhere in the text of § 16-1013. And it further dilutes § 16-1013's requirement that the actions at issue be taken to "induce or compel such person *to vote or refrain from voting*," *id.* (emphasis added), by merely requiring that the activity be made to "a voter" (EPM at 181) — whether in connection with voting *or not*.

Common sense fairly demands that this Court consider the cumulative effect of all of Defendants' additions to A.R.S. § 16-1013. If there had only been one or two ways in which the Speech Restriction arguably expanded upon § 16-1013, this Court could perhaps dismiss this as stray language. But the Speech Restriction's text expands upon § 16-1013's prohibition in just about *every* conceivable dimension. The cumulative effect of those textual expansions is to render Defendants' actual intent in the 2023 EPM manifest: the Speech Restriction was *meant* to be an *independent criminal prohibition* that *goes beyond* what § 16-1013 itself prohibits. To read it any other way defies common sense as well as virtually every applicable canon of construction.

---

2. By abduction, duress or any forcible or fraudulent device or contrivance whatever, to impede, prevent or otherwise interfere with the free exercise of the elective franchise of any voter, or to compel, induce or to prevail upon a voter either to cast or refrain from casting his vote at an election, or to cast or refrain from casting his vote for any particular person or measure at an election.

B. A person, whether acting in his individual capacity or as an officer or agent of a corporation, who violates a provision of this section is guilty of a class 1 misdemeanor.

1

## II.   ALL PLAINTIFFS POSSESS STANDING TO CHALLENGE THE EPM.

2

3

Plaintiffs here have Article III standing to challenge the Speech Restriction on four independent grounds.[3]

4

5

*First*, AFPI and American Encore have standing because of their status as regulated parties and their resulting compliance costs. Like many other entities and individuals, these two organizations' speech is regulated by the Speech Restriction. And the standing of an "object of the action (or forgone action) at issue" is typically "self-evident." *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (citation omitted). In addition, the Speech Restriction produces compliances costs, which establishes standing since "[a]n increased regulatory burden typically satisfies the injury in fact requirement." *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 266 (5th Cir. 2015).

6

7

8

9

10

11

12

As set forth in the accompanying Cypher Declaration (attached hereto as Exhibit B): "AFPI's training and compliance costs have been increased because it must design and conduct new trainings specific to, and in compliance with, Arizona's 2023 Elections Procedures Manual"—including the Speech Restriction. Ex. B at ¶7. Ms. Cypher provides several paragraphs explaining in detail why those compliance costs will be incurred and explains (at ¶13) different ways in which such costs would arise. *See id.* at ¶¶7–13.

13

14

15

16

17

18

*Second*, Plaintiffs have standing because there is a credible threat of enforcement of the Speech Restriction that will violate their constitutional rights, which is all that is required in a free speech, pre-enforcement challenge. *See Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) *cert. denied* 144 S. Ct. 33 (2023) ("[I]n the context of pre-enforcement challenges to laws on First Amendment grounds, a plaintiff 'need only demonstrate that a threat of potential enforcement will cause [her] to self-censor.'" (citation omitted)). As explained in the Cypher Declaration, for example, AFPI regularly engages in the sort of voter engagement and election integrity activities that could easily run afoul

19

20

21

22

23

24

25

26

27

28

---

[3]  "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

of the Speech Restriction's breathtaking scope and has already engaged in self-censorship to avoid running afoul of it. *See* Ex. B at ¶¶ 4–14; *see also* Glennon Decl. (attached as Exhibit C) at ¶¶ 5–9; Noble Decl. (attached as Exhibit D) at ¶¶ 3–12.

In particular, a credible threat of enforcement exists here as "the state's refusal to disavow enforcement of [the challenged law] against [plaintiffs] during this litigation is strong evidence that the state intends to enforce the law and that [plaintiffs'] members face a credible threat." *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (finding credible threat of future enforcement where "respondents have not disavowed enforcement if petitioners make similar statements in the future").

Not only have Defendants refused to disavow enforcement, but they *intentionally retained* the Speech Restriction even after the Arizona House Speaker and Senate President *specifically* argued that it violated the First Amendment during the comment period for the EPM's adoption. *See* Ex. B at ¶ 22. That conspicuous refusal to address the legislative leaders' well-founded First Amendment objections powerfully demonstrates Defendants' intention to enforce the provision. Indeed, why retain it given its *obvious* legal vulnerabilities except to enforce it?

In any event, whatever doubts about enforcement that could have existed when the EPM was promulgated have since been dispelled. After the EPM became final, counsel for Plaintiffs sent both the Secretary and Attorney General a letter on May 21, 2024, specifically asking that "Secretary Fontes provide a binding and unequivocal commitment to forego making any criminal referrals for alleged violations of the 2023 EPM's Speech Restriction," and that "Attorney General Mayes provide a binding and unequivocal commitment to not prosecute anyone for alleged violations of the 2023 EPM's Speech Restriction." *See* ECF No. 1-2. Both responded on May 31. *See* ECF Nos. 1-3; 1-4.

Notably, the Secretary's response does not provide any such disavowal—or even acknowledge Plaintiffs' request for one. *See* ECF No. 1-3. This intentional refusal to disavow enforcement through criminal referrals "is strong evidence" supporting standing,

and is dispositive here. *Bonta*, 996 F.3d at 653. That is particularly true as the Secretary could make such referrals to the County Attorneys—who have not disavowed enforcement—rather than the Attorney General.

Unlike the Secretary, the Attorney General does purport to disavow enforcement. *See* ECF No. 1-4. But that disavowal is explicitly premised on her erroneous and indefensible interpretation of the Speech Restriction as "not itself restrict[ing] or criminaliz[ing] anything." *Id.* (emphasis added). Because that construction is riddled with patent legal errors as explained above, *supra* § I, Plaintiffs cannot reasonably rely upon it. Indeed, if a court were to interpret the Speech Restriction to mean what it obviously says, she would presumably be obliged to disavow her disavowal to reflect the judicial determination that it is an actual criminal prohibition, which she would be required to take care to enforce under her oath of office.

Moreover, the Attorney General herself correctly observes that "county attorneys may also enforce provisions of Title 16 and Title 13 as they relate to voting and elections." *Id.* Thus, by her own admission, the threat of enforcement against Plaintiffs remains despite her purported disavowal.

*Third*, and relatedly, AFPI has associational standing on behalf of its members on the same essential grounds as Ms. Glennon. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977) ("[T]his Court has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity."). Given AFPI's vast number of members and the *enormous* breadth of the Speech Restriction—reaching such everyday activities as raising one's voice or using "offensive" or "insulting" language (intentionally left undefined, and thus presumably as judged by the most-sensitive ears one can encounter)—the risk that one or more of its members will be subject to enforcement by Defendants is clear. *See* Ex. B at ¶¶ 20–21.

*Fourth*, both AFPI and American Encore have organizational standing as they have alleged an actual concrete harm in the form of increased expenses and training costs

necessary to comply with the EPM's Speech Restriction provisions. *See* Ex. B at ¶¶ 7–9, 13; Ex. D at ¶¶ 7-12; *see also Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources [establish organizational standing].").

**III.   PLAINTIFFS ARE LIKELY TO SUCCEED IN ESTABLISHING THAT THE SPEECH RESTRICTION VIOLATES THE FIRST AMENDMENT**

The Speech Restriction clearly violates the First Amendment. In particular, it is unconstitutional because it (1) lacks any *mens rea* requirement, (2) attempts to ban speech based on it being "offensive," (3) regulates speech impermissibly on both content and viewpoint, and (4) violates the applicable requirements for regulation of speech in both public and non-public forums (*i.e.*, voting locations). It is further facially unconstitutional under the overbreadth doctrine.

**A.   The Speech Restriction's Lack of a *Mens Rea* Requirement Violates The First Amendment**

The Supreme Court has squarely held that any imposition of liability for allegedly threatening or intimidating speech requires proof of a *mens rea* of at least recklessness. *See Counterman v. Colorado*, 600 U.S. 66, 69 (2023) (stating a defendant must have "some subjective understanding of the threatening nature of his statements" though "a mental state of recklessness is sufficient"). The First Amendment demands as much to "provide[] breathing room for more valuable speech." *Id.* at 75 (cleaned up) (citation omitted).

However, as explained above, *supra* at 6, the Speech Restriction imposes a *strict-liability* criminal prohibition based purely on "effect" alone—proof of *mens rea* is not required. Such strict liability, pure-speech "crimes" violate the First Amendment under *Counterman*. And because the Speech Restriction does not require *mens rea* for *any* violation, the provision is facially unconstitutional and should be invalidated in its entirety.

**B.   The EPM's Attempt to Ban Offensive Speech Is Unconstitutional**

The Speech Restriction also violates the Free Speech Clause because it purposes to criminalize speech on the basis of "offensive[ness]." 2023 EPM at 182. But because "one

10

man's vulgarity is another's lyric" it has been well-established law for more than a *half century* that putative offensiveness is *not* a permissible basis to criminalize speech. *Cohen v. California*, 403 U.S. 15, 25 (1971). Thus, "the fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection." *FCC v. Pacifica Found.*, 438 U.S. 726, 745–46 (1978); *see also United States v. Williams*, 553 U.S. 285, 306 (2008) ("[W]e have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent.'").

The Speech Restriction, however, explicitly purports to impose criminal liability for all uses of "offensive language to a voter or poll worker"—*anywhere* in Arizona and *every single day* of the year. That criminal prohibition of speech is unconstitutional.

### C. The Speech Restriction Is Also an Impermissible Content- and Viewpoint-Based Regulation of Speech

The Speech Restriction's attempt to criminalize speech based on its potential to offend or "insult" others is also unconstitutional content- and viewpoint-based discrimination. *Matal v. Tam*, 582 U.S. 218, 249 (2017) (holding that when a restriction "reflects the Government's disapproval of a subset of messages it finds offensive . . . [it] is the essence of viewpoint discrimination"); *Williams*, 553 U.S. at 306. This is because "[g]iving offense is a viewpoint." *Id.* at 243. The Speech Restriction thus violates the First Amendment on these grounds too.

### D. The Speech Restriction Is Unconstitutional As to Public Forums

Because it applies to *all* of Arizona's territory, the Speech Restriction regulates—and criminalizes—speech in a wide variety of public forums, such as "[p]ublic streets and parks." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985). Indeed, even the 75-foot buffer is certain to extend to public forums like public streets, sidewalks, and parks. As to public forums, the Speech Restriction is unconstitutional for three reasons.

*First*, the Speech Restriction is a content-based (and viewpoint-based) regulation of speech. That does not fly for public forums. *See*, *e.g.*, *Mansky*, 585 U.S. at 11 (for public

forums "restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited").

*Second*, the Speech Restriction is not "narrowly tailored to serve a significant governmental interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). It has neither geographical nor temporal restrictions, and thus no tailoring on those fronts. And it applies to a broad swath of ubiquitous speech, such as "offensive" or "insulting" language or raised voices. That is not tailored either. Indeed, the Speech Restriction's *sole nod* to tailoring is that it "only" applies to speech directed at voters and poll workers—but that is still a majority of Arizona's adult population.

*Third*, the Speech Restriction fails to "leave open ample alternative channels for communication of the information." *Id.* Indeed, given its lack of any temporal or geographical limitations, it does not leave open *any* alternative channels anywhere in the State. That cannot possibly pass muster under the First Amendment. *Id.*

### E. The Speech Restriction Is Unconstitutional Even For Non-Public Forums, Such As Polling Stations

Even for the 75-feet bubble around polling stations, which are non-public forums, the Speech Restriction (though not the actual statute, A.R.S. § 16-1013, that it purports to implement) is still unconstitutional. Specifically, the Speech Restriction fails both because it is viewpoint-based and because it is not "capable of reasoned application." *Mansky*, 585 U.S. at 23; *see also Ctr. for Investigative Reporting v. SEPTA*, 975 F.3d 300, 315 (3d Cir. 2020) ("According to *Mansky*, a prohibition on speech is unreasonable if it fails to 'articulate some sensible basis for distinguishing what may come in from what must stay out.'" (quoting *Mansky*, 585 U.S. at 29)).

Under this analysis, the question is "whether [the State's] ban on [speech] is reasonable in light of the purpose served by the forum: voting." *Mansky*, 585 U.S. at 13 (quotation marks and citation omitted). Although narrow tailoring is not required, the State still "must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." *Id.* at 16. But the Speech Restriction provides no meaningful

guidance as to what speech is actually prohibited. Worse still, some of the examples that the EPM provides for what may "be considered intimidating conduct inside or outside the polling place" include "aggressive behavior" (also undefined), "raising one's voice," and using "insulting, or offensive language" are so wildly expansive as to be incapable of reasoned application. *Id.* at p. 182.

In *Mansky*, Minnesota failed to define "political," prompting the Supreme Court to observe: "Under a literal reading of those definitions, a button or T-shirt merely imploring others to 'Vote!' could qualify." *Id.* at 17. In the same way, under the Speech Restriction, raising one's voice to yell "Vote!" could similarly be prohibited. It is "self-evident that an indeterminate prohibition carries with it the opportunity for abuse, especially where it has received a virtually open-ended interpretation." *Id.* at 21 (cleaned up). This is yet another way in which the Speech Restriction is unconstitutional.

**F.  The Speech Restriction Fails Strict Scrutiny**

Because the Speech Restriction intrudes upon protected speech in *multiple* ways, it could only pass constitutional muster if it satisfied strict scrutiny. *See*, *e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 182 (2015). Restrictions like the Speech Restriction are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 163. It is the State's burden to prove that strict scrutiny is satisfied. But it is already apparent that any effort to do so should prove unavailing.

To start, it is unclear what compelling interests the State could assert here. Generally, a compelling interest is an interest of the highest order, such as protecting minors or combatting terrorism. *See*, *e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 29 (2010) (stating that "combating terrorism" is a compelling interest). But here, the State's desire to prohibit speech based on alleged offensiveness is not a legitimate interest at all—let alone a compelling one. Similarly, the State has no legitimate interest in making voters uniquely privileged from any speech that might offend or insult them.

But even if the State had any compelling interests at stake, the Speech Restriction is not narrowly tailored to serve them. As discussed above, it (1) has no temporal limitation, (2) no geographical limitation, (3) applies to all speech directed towards voters or poll workers (*i.e.*, a majority of adult Arizonans), and (4) sweeps too broadly—reaching "insulting or offensive" language or merely "raising one's voice." Thus, whatever interests the State might have here, such a wildly overbroad provision is not narrowly tailored to serve them.

### G. Additionally, The Speech Restriction Is Also Facially Invalid Under The Overbreadth Doctrine

This Court should enjoin the Speech Restriction in its entirety because it is facially unconstitutional. Some of its deficiencies, such as the lack of a *mens rea* requirement, applies to every single application, rendering it facially invalid under the ordinary *Salerno* test. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). In addition, the Speech Restriction is facially unconstitutional under the overbreadth doctrine.

A regulation is overbroad where "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotation and citation omitted). Courts first construe the reach of the law, then inquire whether the statute criminalizes a substantial amount of expressive activity. *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1208 (9th Cir. 2010). In evaluating a challenged law for facial invalidity, "only applications of the statute in which it actually authorizes or prohibits conduct" are relevant. *Los Angeles v. Patel*, 576 U.S. 409, 418 (2015).

Although A.R.S. § 16-1013's prohibition against violence, threats, and intimidation are lawful—and necessary in today's political climate—the Speech Restriction's prohibition on such ubiquitous speech as raising one's voice or using offensive language is not. Thus, for present purposes, the relevant universe is thus speech/conduct that is *lawful* under A.R.S. § 16-1013, but *unlawful* under the Speech Restriction: *i.e.*, where that EPM provision "actually . . . prohibits conduct," *Patel*, 576 U.S. at 418.

14

The Speech Restriction has, at best, *minimal* "legitimate sweep" as measured by *Patel/Moreno*. A vast swath of speech and political discourse is caught up in "raising one's voice" and using "offensive or insulting language" to a voter anywhere, anytime in the State—very little of which may be constitutionally prescribed. And what little that can be constitutionally prohibited *is already criminalized* by A.R.S. § 16-1013, and thus cannot supply "legitimate sweep" to save the Speech Restriction from facial invalidity.

## IV. THE SPEECH RESTRICTION VIOLATES THE DUE PROCESS CLAUSE UNDER THE VOID-FOR-VAGUENESS DOCTRINE

Even if the Speech Restriction somehow comported with the First Amendment it would fail under the Fourteenth Amendment's Due Process Clause, which mandates that criminal laws be sufficiently specific to give fair notice as to which actions are (and are not) actually criminalized. A statute is thus unconstitutionally vague where it "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox TV Stations, Inc.,* 567 U.S. 239, 253–54 (2012). The Speech Restriction fails both facets of the vagueness doctrine.

*First*, as stated above, the statute gives no guidance whatsoever as to what constitutes "offensive language." The average person or voter will not be able to parse out what versions (if any) of raising one's voice are legal and what are not. Indeed, the Speech Restriction criminalizes speech based purely on what *effect* it produces on the listener, 2023 EPM at 181–82, such that its criminal prohibition presumably extends to whatever the most sensitive listener might find "insulting or offensive."

*Second*, the Speech Restriction's actual meanings and prohibitions are left to the on-the-spot discretion of whatever public officials (many of whom are volunteers) are on the scene, which is a classic indication of unconstitutional vagueness. It "entrusts lawmaking"—here, defining offensive speech—"to the moment-to-moment judgment of

the" enforcing official. *City of Chi. v. Morales*, 527 U.S. 41, 60 (1999) (statute void for vagueness because it instructed enforcement officials to define "loitering"). The Due Process Clause precludes such arbitrary enforcement of ill-defined prohibitions.

The result of the vague Speech Restriction is obvious: if enforced even-handedly, no one will risk saying anything at all near a polling place. And if selectively enforced, it will be a powerful tool for censoring political opponents, since few people will be able to comply with the Speech Restriction's extremely broad and ill-defined prohibitions. Such a result violates the Due Process Clause.

## V.   THE REMAINING REQUIREMENTS FOR INJUNCTIVE RELIEF ARE MET HERE

As the Ninth Circuit has repeatedly recognized, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Baird*, 81 F.4th at 1042 (collecting cases) (cleaned up). Thus, once Plaintiffs establish a likely violation of their constitutional rights, such a "showing will almost always demonstrate [they are] suffering irreparable harm as well." *Id.*; *accord* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

In addition, it is a truism that "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) (cleaned up) (emphasis in original). Moreover, because of Defendants' sovereign immunity to damages here, Plaintiffs' unrecoverable compliance costs constitute irreparable harm. *See*, *e.g.*, *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020).

For similar reasons, "[a] plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird*, 81 F.4th at 1042. Indeed, enforcing an unconstitutional law is "always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). And an injunction "will do [Defendants] no harm whatsoever. Any interest [they] may claim in

enforcing an unlawful (and likely unconstitutional) [regulation] is illegitimate." *BST Holdings, LLC. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021), *aff'd* 142 S.Ct. 661 (2022).

## CONCLUSION

The Court should grant a preliminary injunction prohibiting Defendants from implementing or enforcing the Speech Restriction and directing them to promulgate an updated Election Procedure Manual that eliminates the constitutional infirmities.

Dated this 18th day of July, 2024.

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC

By: */s/ Andrew Gould*
    Andrew Gould
    Drew C. Ensign
    Dallin B. Holt
    Brennan A.R. Bowen
    2575 E. Camelback Road, Suite 860
    Phoenix, AZ 85016

    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18 day of July, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for parties that are registered CM/ECF users will be served by the CM/ECF system pursuant to the notice of electronic filing.

*/s/ Andrew Gould*