# Addendum 2



# ARIZONA
# ELECTIONS PROCEDURES MANUAL

A PUBLICATION OF THE ARIZONA SECRETARY OF STATE'S OFFICE
ELECTIONS SERVICES DIVISION

## INTRODUCTION
## FROM SECRETARY OF STATE ADRIAN FONTES

### December 2023

I am pleased to provide you with the 2023 Elections Procedures Manual to county, city, and town election officials throughout Arizona. Updating the Election Procedures Manual has been one of my Administration's highest priorities. We worked in close partnership with County Recorders, Elections Directors, and their staff to ensure that the 2023 Elections Procedures Manual will provide the maximum degree of correctness, impartiality, uniformity, and efficiency in election procedures across Arizona.

Open and honest elections are at the heart of our democratic republic. It's a process made possible by the continued dedication of election workers, from poll workers to election officers. Their efforts make for a rewarding experience for Arizona voters. Through the unrelenting dedication and vigilance of election workers throughout the State, our elections are secure, accurate, and accessible. We are deeply grateful for their invaluable contributions.

Sincerely,

Adrian Fontes
Arizona Secretary of State



**STATE OF ARIZONA**
**OFFICE OF THE GOVERNOR**

**KATIE HOBBS**
GOVERNOR

EXECUTIVE OFFICE

December 30, 2023

The Honorable Adrian Fontes
Arizona Secretary of State
1700 West Washington Street, 7th Floor
Phoenix, AZ 85007

Dear Secretary Fontes,

My Office has reviewed the 2023 Election Procedures Manual (EPM) that you submitted for
final approval on December 30, 2023. In accordance with A.R.S. § 16-452(B), I hereby approve
the 2023 Elections Procedures Manual.

As a former Secretary of State, I understand the immense amount of work required by state,
county, and local officials to produce this important document. This Manual builds on the work
done on the 2019 EPM and 2021 draft EPM to ensure our elections achieve the maximum
degree of correctness, impartiality, uniformity and efficiency. I'm confident that Arizona's
elections, as well as our voters and election officials, will benefit from this updated EPM.

Sincerely,

Katie Hobbs
Governor
State of Arizona



**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

**STATE OF ARIZONA**

**KRIS MAYES**
**ATTORNEY GENERAL**

December 30, 2023

The Honorable Adrian Fontes
Arizona Secretary of State
1700 W. Washington Street
Phoenix, Arizona 85007

       Re:    Approval of the 2023 Elections Procedures Manual

Dear Secretary Fontes:

My office has reviewed the Elections Procedures Manual submitted on December 30, 2023, as required by A.R.S § 16-452(B).  Based upon our review, we find the submitted Manual complies with Arizona's election statutes.

An updated Elections Procedures Manual is critical to the fair, consistent, and orderly administration of elections in Arizona.  Therefore, I am pleased to be able to approve the Manual as submitted on December 30, 2023.

Sincerely,

Kris Mayes
Attorney General
State of Arizona

cc:    Governor Katie Hobbs

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## TABLE OF CONTENTS

CHAPTER 1:  Voter Registration.................................................................................................... 1

    I.     Voter Registration Forms ........................................................................................ 1

      A. County/State Responsibility for Supplying Forms ............................................... 1

      B. Eligibility to Use FPCA and FWAB Forms ......................................................... 2

    II.    Voter Registration Requirements ........................................................................... 2

      A. Citizenship Requirement ....................................................................................... 3

      B. Age Requirement for Registration ...................................................................... 14

      C. Residency Requirements for Registration .......................................................... 15

      D. Effect of Felony Conviction on Qualification to Register to Vote ..................... 17

      E. Effect of Incapacitation on Qualification to Register to Vote ............................ 18

      F. Effect of Inability to Sign or Make a Mark ........................................................ 18

    III.   Voter Registration Assistance Agencies .............................................................. 18

      A. Designated Voter Registration Assistance Agencies .......................................... 18

      B. Tracking and Reporting Source of Registration.................................................. 19

    IV.   Voter Registration Processing Procedures ........................................................... 20

      A. Statewide Voter Registration Database............................................................... 20

      B. Registration Codes in the Statewide Voter Registration Database ..................... 21

      C. Minimum Required Information on Registration Forms ...................................... 22

      D. Political Party Preference .................................................................................... 24

      E. Date of Registration ............................................................................................ 25

      F. Initial Duplicate Checking Within the County ................................................... 25

      G. Electronic Verification Procedures ..................................................................... 26

      H. Issuance of Voter Registration Cards.................................................................. 27

      I. Help America Vote Act Identification Requirements .......................................... 28

    V.    Protection of Secured Registrants ........................................................................ 29

      A. Marking Secured Records.................................................................................... 30

      B. Responding to Public Records Requests ............................................................. 30

      C. Creating Signature Rosters or Uploading E-Pollbook Data................................ 31

      D. Issuance of Official Mail and Election Documents ............................................ 31

      E. Signing Candidate, Initiative, Referendum, or Recall Petitions.......................... 31

      F. Terminating Secured Registrant Status ............................................................... 32

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

VI.     Registration Processing During "Books Closed"................................................ 32

VII.    Eligibility to Vote.................................................................................................. 33

   A. Age Requirements to Vote in the Next Election ............................................... 33

   B. Residency Requirements to Vote in the Next Election ..................................... 34

VIII.   Registration Deadline to Vote in Next Election ................................................... 35

   A.     Date of Receipt of Voter Registrations....................................................... 35

   B.     Voter Registration Form Received After Deadline ...................................... 36

   C.     When Registration Deadline Falls on a Weekend or Holiday....................... 36

IX.     Voter Registration List Maintenance ................................................................... 36

   A. Deceased, Felon, and Incapacitated Registrants ............................................. 36

   B. Secretary of State Duties to Forward Registrant Information........................... 39

   C. County Recorders' Duty to Cancel Registrant Information.............................. 41

   D. Cancellation through NVRA Process Due to Address Changes....................... 45

   E.  Systematic Cancellations within 90 Days of Election Prohibited ................... 48

X.      Reporting Voter Registration Information ............................................................ 49

   A. Voter Registration Statistics............................................................................ 49

   B. "Federal-Only" Registration and Ballot Report ............................................. 50

XI.     Provision of Registration Data to Third Parties ................................................... 50

   A. Precinct Lists to Recognized Political Parties................................................. 50

   B. Use of County Registration Rolls by Political Subdivision ............................. 52

   C. Public Records Requests by Third Parties ...................................................... 52

XII.    Minority Language Assistance.............................................................................. 54

CHAPTER 2: Early Voting ............................................................................................. 55

I.      Ballot-By-Mail ..................................................................................................... 55

   A. One-Time Requests to Receive a Ballot-by-Mail ........................................... 55

   B. Requests to Be Placed on the Active Early Voting List................................... 58

   C. Creation and Preparation of Early Ballots........................................................ 64

   D. Mailing Ballots-by-Mail ................................................................................. 67

   E. Issuing Replacement Ballots-by-Mail .............................................................. 70

   F. Emergency UOCAVA Early Balloting Procedures........................................... 70

   G. Reporting UOCAVA Transmission Statistics................................................... 70

   H. Deadline to Return Ballots-by-Mail................................................................. 71

   I. Ballot Drop-Off Locations and Drop-Boxes ..................................................... 71

   J. Reporting Ballot-by-Mail Requests and Returns .............................................. 74

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

II.      On-Site Early Voting.................................................................................... 75

  A. Posting Notice of Write-In and Withdrawn Candidates ................................... 75

  B. Applicability of Voter ID Requirements ............................................................ 75

  C. Requirements and Security Procedures for Accessible Voting Devices........................ 76

  D. Requirements for Ballot Security and Transport ................................................ 76

III.     Emergency Voting.................................................................................... 76

  A. Establishing Emergency Voting Centers ............................................................ 76

  B. Identification and Signed Statement Requirements ........................................... 77

IV.     Special Election Boards .................................................................................... 77

  A. Time Periods for Requesting a Special Election Board................................... 78

  B. Identification and Signed Statement Requirements ........................................... 78

V.      Challenges to Early Ballots .................................................................................... 79

  A.   Time Periods for Early Ballot Challenges................................................... 79

  B.   Grounds for Challenging an Early Ballot ................................................... 79

  C.   Notice of an Early Ballot Challenge................................................... 80

  D.   Signature Verification of Challenged Early Ballots ................................... 81

  E.   Determination of Early Ballot Challenges................................................... 81

VI.     Processing and Tabulating Early Ballots ..................................................... 82

  A. County Recorder Responsibilities.................................................................... 82

  B. Early Ballot Board Responsibilities ................................................................ 85

  C. Timing for Tabulation of Early Ballots and Reporting of Results................................... 87

VII.    Eligible Voters in Jails or Detention Facilities.................................................. 87

CHAPTER 3:  Ballot-by-Mail Elections .................................................................... 88

  I.     Eligibility to Hold a Ballot-by-Mail Election ................................................ 88

  II.    Approval to Hold a Ballot-by-Mail Election ................................................ 88

  III.   Preparing and Mailing Ballots ......................................................................... 89

  IV.   Methods to Return or Replace Ballots ............................................................ 89

  V.    Processing Voted Ballots in a Ballot-by-Mail Election ................................ 90

  VI.   Post-Election Reporting Requirements .......................................................... 90

CHAPTER 4:  Voting Equipment.................................................................................... 91

  I.     Logic and Accuracy (L&A) Testing ............................................................ 91

  A. Timeframe to Conduct L&A Testing .............................................................. 91

  B. Public Notice of L&A Test ............................................................................. 93

  C. Observers for L&A Test.................................................................................. 93

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

D. Process for Conducting L&A Tests by the Secretary of State ........................................ 93

E. L&A Testing Standards ................................................................................................. 98

F. County L&A Testing ...................................................................................................... 100

G. Retention of L&A Programs, Test Ballots, and Database ............................................ 100

II.     Security Measures for Electronic Voting Systems .................................................... 100

A. Physical Security of the Electronic Voting System ...................................................... 101

B. Data Security of the Electronic Voting System ............................................................ 102

C. Removable Electronic Storage Devices Used with the Voting System ........................ 102

D. Gateway Computer ....................................................................................................... 104

E. E-Pollbooks and Ballot-on-Demand Printers .............................................................. 105

III.    Contingency and Incident Response Planning ......................................................... 106

A. Election Operations Contingency Plan ........................................................................ 106

B. Incident Response Plan ................................................................................................ 107

C. Tabulation Contingency Plan ....................................................................................... 107

D. Election Program Contingency File ............................................................................. 108

CHAPTER 5:  Accommodating Voters with Disabilities .................................................... 109

I.     Voter Registration Information ................................................................................. 109

II.     Voting and Voting Location Information ................................................................. 110

III.    Ensuring Accessibility at the Voting Location ........................................................ 111

IV.    Alternative Voting Options ....................................................................................... 113

V.     Special Election Boards ............................................................................................ 115

CHAPTER 6:  Regulation of Petition Circulators ............................................................... 116

I.     Qualifications for Petition Circulators ..................................................................... 116

II.     Circulator Registration and Disclosure Requirements ............................................. 116

A. Paid Circulators ............................................................................................................ 117

B. Non-Resident Circulators ............................................................................................. 117

C. Circulator Registration Procedures .............................................................................. 118

D. Service of Process on Registered Circulators .............................................................. 120

III.    Signature Gathering and Verification Requirements ................................................ 120

CHAPTER 7:  Presidential Preference Election .................................................................. 121

I.     Timing ....................................................................................................................... 121

II.     Eligibility to Participate in the PPE .......................................................................... 121

A. Party Eligibility to Participate in the PPE .................................................................... 121

B. Eligibility to Vote in the PPE ....................................................................................... 121

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

C. Candidate Participation in the PPE ................................................................. 122

III.    PPE Ballots ................................................................................................. 122

A. Official Ballot ................................................................................................ 122

B. Ballot Proof ................................................................................................... 123

C. Sample Ballots ............................................................................................... 123

IV.    Conduct of the PPE .................................................................................... 123

A. Voting Locations ............................................................................................ 123

B. Certification of Results .................................................................................. 124

V.    County Reimbursement for the PPE ........................................................... 124

CHAPTER 8: Pre-Election Procedures ................................................................. 125

I.    Establishing Precincts and Voting Locations ............................................ 125

A. Establishing Precincts .................................................................................... 125

B. Establishing Voting Locations ....................................................................... 125

C. Failure to Timely Establish Polling Places ................................................... 127

D. Consolidation of Polling Places Based on Lack of Candidates .................... 127

E. Factors to Consider When Selecting Voting Locations ................................. 127

F. Use of School Facilities for Voting Locations ............................................... 129

G. Polling Place/Vote Center Emergency Designation ...................................... 129

H. Requirement to Allow Electioneering Outside 75-Foot Limit ...................... 130

I. Ensuring Accessibility at the Voting Location ............................................... 130

II.    Appointment and Training of Poll Workers and Other Election Staff ........ 130

A. Certified Election Officers ............................................................................. 130

B. Poll Workers ................................................................................................... 131

C. Election Administrator Code of Conduct ....................................................... 137

III.    Designation of Political Party and other Observers .................................... 138

A. Appointment Process ...................................................................................... 138

B. Observer Credentials ...................................................................................... 139

C. Observation at Voting Locations ................................................................... 139

D. Observation at Central Counting Places ........................................................ 139

E. Observer Guidelines ....................................................................................... 140

IV.    Issuing Pre-Election Notices ...................................................................... 141

A. Secretary of State: 120-Day Notice of Offices to be Elected ....................... 141

B. County: 210-Day Notice of Election to Local Jurisdictions ......................... 141

C. Special Taxing District/Nonpartisan Election Notices .................................. 142

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

V.      Preparation of Ballots.................................................................................... 142

   A. Official Ballot Format ................................................................................ 143

   B. Proofing Ballots........................................................................................ 156

   C. Sending Ballot Proofs to Candidates and Political Parties.............................. 156

   D. Financial Responsibility for Printing Ballots................................................. 156

   E. Storage and Security of Ballots ................................................................... 157

   F. Sample Ballots ......................................................................................... 157

VI.     Language Minority Voting Materials.......................................................... 159

   A. Voting Materials Required to Be in Minority Language(s).............................. 160

   B. Types of Elections Requiring Minority Language Voting Materials.................. 160

VII.    Preparation of Signature Rosters and E-PollBooks ................................... 161

VIII.   Preparation of Voting Supplies ................................................................... 163

   A. Materials to Be Distributed to Voting Locations ........................................... 163

   B. Provisional Ballot Envelope and Affidavit ................................................... 165

IX.     Implementing a Wait Time Reduction Plan ............................................... 166

   A. Projecting Voter Turnout ........................................................................... 166

   B. Re-Precincting .......................................................................................... 167

   C. Staffing and Supplying Voting Locations ..................................................... 168

   D. Conducting Voter Education ....................................................................... 169

   E. Developing Contingency Plans .................................................................... 169

   F. Emergency Procedures .............................................................................. 170

   G. Ballot Box Overflow Procedures ................................................................. 170

   H. Complete Power or Unit Failure/Ballot Emergency Bin ................................. 171

   I. Determining Optimal Layout....................................................................... 172

   J. Wait-Time Reduction Survey...................................................................... 172

   K. Public Input............................................................................................. 172

X.      Canceling An Election ................................................................................. 172

CHAPTER 9: Conduct of Elections/Election Day Operations................................ 174

I.      Setting up the Voting Location ................................................................... 174

   A. Instructions Posted at the Voting Location ................................................... 175

   B. Right to Vote a Provisional Ballot ............................................................... 177

   C. Notice to Voters ....................................................................................... 178

II.     Opening the Voting Location....................................................................... 179

III.    Preserving Order and Security at the Voting Location ............................... 180

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

A. Enforcing Electioneering Ban ................................................................................. 180

B. Enforcing Photography Ban ................................................................................... 180

C. Enforcing Access Restrictions ............................................................................... 181

D. Preventing Voter Intimidation ............................................................................... 181

IV.    Checking Voter Identification ............................................................................ 183

A. Acceptable Forms of Identification ........................................................................ 184

B. ID Requirements for Native American Voters ........................................................ 185

V.     Assisting Voters on Election Day ....................................................................... 186

VI.    Issuing Ballots ................................................................................................... 187

A. Issuing a Regular Ballot ......................................................................................... 187

B. Issuing a Provisional Ballot .................................................................................... 188

VII.   On-Site Early Ballot Tabulation ........................................................................ 192

VIII.  Challenges to a Voter's Eligibility to Vote ........................................................ 194

IX.    Closing the Voting Location ............................................................................... 196

A. Announcing the Closing of the Polls ...................................................................... 196

B. Election Board Close-Out Duties ........................................................................... 197

C. Transport of Ballots, Voting Equipment, and Supplies ......................................... 199

CHAPTER 10:  Central Counting Place Procedures ...................................................... 200

I.     Central Counting Place Operations .................................................................... 200

A. Deputies/Oath of Office ......................................................................................... 201

B. Providing Live Video Recording at Central Counting Place .................................. 201

II.    Establishing Central Counting Place Boards ...................................................... 201

A. Receiving Board ..................................................................................................... 202

B. Inspection Board ..................................................................................................... 203

C. Central Counting Place Board ................................................................................ 205

D. Ballot Duplication Board ....................................................................................... 206

E. Accuracy Certification Board ................................................................................. 211

F. Provisional Ballot Processing ................................................................................. 212

G. Write-In Tally Board .............................................................................................. 216

H. Audit Board ............................................................................................................ 219

I. Snag Board .............................................................................................................. 220

CHAPTER 11:  Hand Count Audit ................................................................................ 221

I.     Designation of Hand Count Board Members ...................................................... 221

II.    Observation of the Hand Count Audit ................................................................ 223

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

III.    Types and Quantities of Ballots to Hand Count.................................................. 223

  A. Ballots Included in the Early Ballot Hand Count ............................................. 223

  B. Ballots Included in the Precinct Hand Count ................................................... 223

IV.    Selecting Precincts/Polling Places to be Hand Counted .............................. 224

V.    Races Eligible to be Hand Counted................................................................... 225

  A. Eligible Races Generally...................................................................................... 225

  B. Eligible Races in Special Elections .................................................................... 226

  C. Eligible Races in a PPE ........................................................................................ 226

VI.    Selecting Races to be Hand Counted ............................................................... 226

  A. Selecting Races for Primary and General Elections ....................................... 227

  B. Selecting Races for a PPE .................................................................................... 229

VII.    Hand Count Tabulating Methods ..................................................................... 230

  A. Stacking Method for Optical/Digital Scan Ballots ......................................... 230

  B. Procedures for Conducting the Hand Count ................................................... 232

  C. Review of Election Program by a Special Master............................................ 240

  D. Standard for Determining Voter Intent in Hand Count................................ 240

  E. Reporting Results of the Hand Count............................................................... 241

CHAPTER 12:  Post-Election Day Procedures ................................................................ 243

I.    Reporting Election Results................................................................................. 243

II.    Conducting Post-Election Logic & Accuracy Test ........................................ 243

III.    Filing Federal Post-Election Reports ............................................................... 244

  A.    Election Assistance Commission Reporting.................................................. 244

  B.    Department of Justice UOCAVA Reporting ................................................ 244

IV.    Post-Election Reimbursement Requests .......................................................... 244

  A.    Post-Election Reimbursement Requests........................................................ 244

  B.    Reimbursement for PPE Expenses ................................................................. 244

  C.    Reimbursement for Sample Ballots................................................................ 245

CHAPTER 13:  Certifying Election Results....................................................................... 246

I.    Determining Election Results............................................................................. 246

II.    Canvassing the Election ..................................................................................... 247

  A.    County Board of Supervisors' Canvassing Duties ....................................... 247

  B.    Secretary of State's Canvassing Duties ......................................................... 252

  C. City and Town Canvassing Duties.................................................................... 253

  D. Special Taxing District Canvassing Duties...................................................... 253

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

E. County School Superintendent Canvassing Duties ........................................................ 253

III.    Conducting an Automatic Recount ............................................................................. 254

   A.    Vote Margin that Triggers an Automatic Recount .................................................. 254

   B.    Method of Initiating a Recount................................................................................ 254

   C.    Method of Conducting the Recount......................................................................... 255

   D.    Hand Count Audit of Recounted Ballots ................................................................ 256

IV.    Issuing Certificates of Nomination and Election ....................................................... 256

V.    Issuing Ballot Measure Proclamations ....................................................................... 257

VI.    Storage of Ballots and Returns of the Election .......................................................... 257

CHAPTER 14:  Campaign Finance ........................................................................................ 259

I.    Campaign Finance Reporting....................................................................................... 259

II.    Campaign Finance Enforcement .................................................................................. 259

   A.    Initiation of Campaign Finance Complaints........................................................... 260

   B. Notice of Complaint and Opportunity for Response and Reply .................................. 262

   C. Decision by Filing Officer........................................................................................... 265

   D. Decision by Enforcement Officer ............................................................................... 266

   E. Response to Notice by Violation................................................................................. 266

CHAPTER 15:   Election Calendar and Sample Forms ......................................................... 268

# CHAPTER 1:
# VOTER REGISTRATION

## I.   VOTER REGISTRATION FORMS

Voter registration forms that are accepted in Arizona include:

- The state voter registration form prescribed by the Secretary of State pursuant to A.R.S. § 16-152(C) (the "State Form"), including any low-vision/large-print version of the State Form prescribed by the Secretary of State and made available on the Secretary of State's website.[1]

- The National Mail Voter Registration Form prescribed by the U.S. Election Assistance Commission pursuant to the National Voter Registration Act of 1993 (the "Federal Form").[2]

- Registrations electronically received from the Arizona Department of Transportation, Motor Vehicle Department (AZMVD) pursuant to A.R.S. § 16-112, whether through in-person registration at an AZMVD or AZMVD affiliate's office or online through the MVD portal or voter registration website.

- The Federal Postcard Application prescribed by the U.S. Secretary of Defense (the "FPCA") pursuant to the Uniformed and Overseas Citizens Absentee Voting Act of 1986 (UOCAVA).[3]

- The Federal Write-In Absentee Ballot prescribed by the U.S. Secretary of Defense pursuant to UOCAVA (the "FWAB").[4]

### A. County/State Responsibility for Supplying Forms

The County Recorder shall make available State Forms (at no cost) to all federal, state, county, local, and tribal government agencies, political parties, and private organizations located within the County Recorder's jurisdiction that conduct voter registration activities. A.R.S. § 16-151(A). The County Recorder, a justice of the peace or a deputy registrar shall supply, without charge, a registration form to any qualified person requesting registration information. A.R.S. § 16-131(A).

---

[1] The latest State Form is available at https://www.azsos.gov/elections/voting-election.

[2] 52 U.S.C. § 20505(a)(1); 52 U.S.C. § 20508(a)(2). The Federal Form is available at National Voter Registration Application Form for U.S. Citizens (ENG) (eac.gov); https://www.eac.gov/voters/national-mail-voter-registration-form.

[3] A.R.S. § 16-103(B); 52 U.S.C. § 20301(b)(2); 52 U.S.C. § 20302(a)(4); Executive Order 12642 (June 9, 1988). The FPCA is available at https://www.fvap.gov/military-voter/overview.

[4] A.R.S. § 16-543.02(D); 52 U.S.C. § 20302(a)(4). The FWAB is available at https://www.fvap.gov/military-voter/overview.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The Secretary of State shall make available Federal Forms (at no cost) to all federal, state, county, local, and tribal government agencies, political parties, and private organizations that conduct voter registration activities. A.R.S. § 16-151(B). The Secretary of State and County Recorders may place reasonable restrictions on the number of forms to be provided to individuals or organizations depending on the type of voter registration activity to be conducted and reasonable estimates of the number of voters that the individual or group will seek to register.

Any registration form in compliance with applicable state or federal laws may be used to register to vote for the first time or amend or update an existing registration record. In addition, other documents may be used to amend or update a registrant's residence or mailing address, including but not limited to a request for an early ballot, an Active Early Voting List (AEVL) request form, or a provisional ballot envelope or affidavit. A.R.S. § 16-135(A), (E); A.R.S. § 16-544(D)(1), (2).

### B. Eligibility to Use FPCA and FWAB Forms

The following registrants temporarily absent from the State are authorized to use the FPCA for registration and the FWAB for registration and voting:

- Uniformed service members;

- Eligible family members of uniformed service members;

- Overseas voters; and

- Non-resident U.S. Citizens with parents already registered to vote in Arizona.

52 U.S.C. § 20310; A.R.S. § 16-103; A.R.S. § 16-543(C). For more information on eligibility, visit www.fvap.gov or https://my.arizona.vote/UOCAVA2/default.aspx.

A UOCAVA registrant may designate the method for transmission of voting materials and information on the FPCA form, including electronic transmission, fax, or regular mail. A UOCAVA registrant may designate the length of time they wish to receive voting materials, not to exceed two federal election cycles. If no designation is made, the UOCAVA registrant's request for email, fax, or electronic transmission of voting materials will be valid until immediately after the next state general election. A.R.S. § 16-542(B).

### II.    VOTER REGISTRATION REQUIREMENTS

A person is qualified to *register* to vote in Arizona if the resident:

- Is a United States citizen;

- Will be 18 years old by the date of the next general election;

- Is a resident for at least 29 days prior to the next election, except as provided in A.R.S. § 16-126;

- Can write the resident's name (or make the resident's mark), unless prevented from doing so by physical disability;

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Has not been convicted of treason or a felony, unless their civil rights have been restored; and

- Has not been adjudicated an "incapacitated person" by a court with their voting rights revoked, as defined in A.R.S. § 14-5101.

Ariz. Const. Art. VII, § 2; A.R.S. § 9-822(A); A.R.S. § 16-101; A.R.S. § 16-126(A); A.R.S. § 16-152. Each qualification is discussed in further detail below.

### A. Citizenship Requirement

A registrant must be a U.S. citizen to be qualified to register to vote. Ariz. Const. Art. VII, § 2; A.R.S. § 16-101(A)(1); 18 U.S.C. § 611(a).

U.S. citizenship must be sworn to when registering to vote. In addition, under Arizona's bifurcated or dual-track voter registration system, an acceptable form of documentary proof of citizenship (DPOC) is required to be registered as a "full-ballot" voter. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013). A "full-ballot" voter is entitled to vote for all federal, state, county, and local races as well as state and local ballot measures for which the voter qualifies. *Ariz. Atty Gen. Op.* I13-011.

An otherwise eligible registrant who does not submit DPOC and whose U.S. citizenship cannot be verified via AZMVD records or other record in the statewide voter registration database is registered as a "federal-only" voter. A "federal-only" voter is eligible to vote solely in races for federal office in Arizona (including the Presidential Preference Election (PPE)).

In addition, upon receiving a Federal Form not accompanied by DPOC, a County Recorder must attempt to verify citizenship, including checking certain databases if the County has access. *See* A.R.S. § 16-121.01(D).[5]   If citizenship is verified, the applicant must be registered; however, if the databases affirmatively show the applicant is a non-citizen, the County Recorder must (1) not register the applicant, (2) notify the applicant, and (3) if the applicant does not timely provide DPOC in response, forward the application to the County Attorney and Attorney General. *See* A.R.S. § 16-121.01(E).  This paragraph is explained further in Section II(A)(8) below.

### 1. Valid Forms of DPOC

The following section outlines what constitutes satisfactory DPOC under Arizona law.

#### a. *Driver Licenses and Identification Cards*

A registrant may submit certain state-issued driver license or non-driver identification card information as satisfactory DPOC. A.R.S. § 16-166(F)(1).

---

[5] Litigation is pending on the statutory provisions in this paragraph. *See Mi Familia Vota et al. v. Fontes et al.*, CV-22-00509-PHX-SRB.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### i.   Arizona Driver License or Non-Driver Identification Card Number

An Arizona driver license or non-driver identification card number (AZDL/ID#) issued by AZMVD after October 1, 1996 constitutes valid DPOC. To be deemed satisfactory, (1) the AZDL/ID# must be verified against AZMVD records; and (2) the verification must not return a result with an Authorized Presence Type that indicates non-citizenship.

A County Recorder may accept a copy of the registrant's AZDL/ID# as DPOC but must still enter the AZDL/ID# into the statewide voter registration database to verify citizenship with AZMVD records. AZMVD issues licenses or ID cards to those who are authorized to be physically present in the United States but who are non-citizens at the time of issuance. Because a non-citizen authorized presence designation is not apparent on the face of the license or ID card, an AZDL/ID# alone is not sufficient to prove citizenship without verification against AZMVD records.

### ii.   Out-of-State Driver License or Identification Card

An out-of-state driver license or identification card may constitute satisfactory DPOC if it was issued by the state's driver license-issuing agency and indicates *on the face of the license or card* that the person provided proof of U.S. citizenship in that state. A County Recorder may accept an approved out-of-state license or identification card at face value and need not electronically verify the license or card.

For example, enhanced driver licenses or enhanced identification cards from other states that are issued in compliance with the Departments of State and Homeland Security's Western Hemisphere Travel Initiative satisfy Arizona's DPOC requirement. These states display an American flag on the face of the license or card. Examples of an enhanced license from Michigan and New York appear below with the American flag circled.

 

While a County Recorder shall not accept an out-of-state driver license or identification card number alone (because the statewide voter registration database cannot electronically verify these numbers), a County Recorder may visually verify or accept a copy of these licenses or cards for DPOC purposes.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### b. *Birth Certificate*

A registrant may submit a legible copy of the registrant's birth certificate from any U.S. state or territory as satisfactory DPOC. A.R.S. § 16-166(F)(2).[6] For U.S. citizens born abroad, a "Certification of Report of Birth" or "Consular Report of Birth Abroad" issued by a consular officer from the U.S. Department of State will suffice for a birth certificate. 22 U.S.C. § 2705(2).

The registrant must supply supporting legal documentation (such as a marriage certificate or court-documented name change) if the name on the birth certificate or document is not the registrant's current legal name. If the registrant cannot provide supporting legal documentation to account for a different last name, a County Recorder must accept the birth certificate or document if at least the following information matches on both the birth certificate or document and the registration form:

- First name;
- Middle name;
- Place of birth;
- Date of birth; and
- Parents' name(s).

### c. *U.S. Passport*

A registrant may submit a legible copy of the pertinent pages of the registrant's U.S. passport or passport card or present the registrant's U.S. passport or passport card to the County Recorder, as DPOC. A.R.S. § 16-166(F)(3).

The pertinent pages of a U.S. passport are those that contain the photo, passport number, name, nationality, date of birth, gender, place of birth, and signature (if applicable). A U.S. passport card also may be accepted, which does not contain a signature.

If the County Recorder visually inspects (and does not make a copy of) the pertinent passport pages or passport card, the County Recorder must note in the registrant's voter registration record that the passport was inspected.

### d. *Citizenship and Immigration Documents*

A registrant may present the registrant's original naturalization documents to the County Recorder for inspection or submit (1) a legible copy of the registrant's Certificate of Naturalization or Certificate of Citizenship, or (2) the registrant's Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number (the "A-Number").

---

[6] A registrant may also submit a legible copy of the registrant's late or delayed birth certificate, issued pursuant to A.R.S. § 36-333.01, A.R.S. § 36-333.02, and/or A.R.S. § 36-333.03, as satisfactory DPOC.

If a registrant does not present originals or provide a copy of documents but just provides the registrant's Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number, for proof of citizenship purposes, this number must be verified against U.S. Citizenship and Immigration Services (USCIS) Systematic Alien Verification for Entitlements (SAVE) database before the number can be deemed satisfactory. A.R.S. § 16-166(F)(4); *see* Chapter 1, Section II(A)(6) for more information on SAVE verification procedures.

### e.  *Tribal Identification Numbers and Documents*

A registrant may submit a Tribal Enrollment Number, Indian Census Number, Bureau of Indian Affairs Card Number, or Tribal Treaty Card Number as satisfactory DPOC. These tribal identification numbers are presumed valid for voter registration purposes and need not be verified against any database. A.R.S. § 16-166(F)(6).

A registrant may also submit a legible copy of the registrant's Tribal Certificate of Indian Blood or Tribal/Bureau of Indian Affairs Affidavit of Birth as satisfactory DPOC.

### 2.  **DPOC Requirement for "Full-Ballot" Voter Designation**

Regardless of the type of voter registration form submitted, a County Recorder must make a registrant a "full-ballot" voter for the next election if:

- The registrant provides DPOC with or after submission of the registrant's voter registration application; or

- The County Recorder acquires DPOC on the registrant's behalf, including from AZMVD records or the statewide voter registration database.

A.R.S. § 16-166(F); *see also League of United American Citizens of Arizona (LULAC) v. Reagan*, 2:17-cv-04102-DGC, Doc. 37 (D. Ariz. June 18, 2018) (the "LULAC Consent Decree").

### a.  *Acquisition of DPOC from State Records*

The Secretary of State must program or enable the statewide voter registration database to attempt to acquire DPOC for new registrants from AZMVD records. This attempt to acquire DPOC must be completed in all cases where a new registrant fails to provide DPOC with the voter registration form. The Secretary shall promptly notify the applicable County Recorder of the results of the check against AZMVD records. If DPOC is acquired, the Secretary shall promptly notify the applicable County Recorder, via the automated process in the voter registration database, to make the applicant a "full-ballot" voter. However, in no event shall an acquired Arizona driver license number with a non-citizen authorized presence designation qualify as valid DPOC.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### b. *Registrant's Submission of DPOC*

A registrant may provide DPOC at the time of submitting the registrant's voter registration application or by 5:00 p.m. on the Thursday before the election. *See* LULAC Consent Decree at page 5. The registrant is entitled to vote a "full-ballot" at the next election if:

- The registrant submitted a voter registration application by the registration deadline; and

- The registrant provided DPOC to the County Recorder with the registration application or separately by 5:00 p.m. on the Thursday before the election.

If a registrant does not provide DPOC with their registration application and valid DPOC otherwise cannot be electronically acquired via AZMVD records or the statewide voter registration database (and the registrant's AZMVD record is not shown to have a non-citizen authorized presence designation), a County Recorder must:

1. Designate the registrant as a "federal-only" voter; and

2. Send a letter to the registrant (including a DPOC Submission Form/"Federal Only" Notice) within 10 business days of receipt of the registration application, informing the registrant that:

    - The registrant has not satisfied the DPOC requirements;

    - The registrant must submit DPOC to become a "full-ballot" voter, and the registrant must provide DPOC by 5:00 p.m. on the Thursday before any given election in order to vote a "full-ballot" in that election; and

    - The registrant will remain a "federal-only" voter unless and until the registrant submits valid DPOC to become a "full-ballot" voter.

The registrant may provide separate DPOC using the DPOC Submission Form. A registrant who provides DPOC using a method other than the DPOC Submission Form sent by the County Recorder must be made a "full-ballot" voter if the County Recorder has sufficient information to link the registrant's DPOC with the registrant's form on file. If the County Recorder lacks sufficient information to link the DPOC to a registration form, the County Recorder must make a reasonable effort to follow up with the registrant to seek the necessary information. Registrants who subsequently provide the missing information necessary to link their submitted DPOC to their registration form shall be made "full-ballot" voters within 10 business days of receipt of DPOC.

If the registrant provides DPOC to the County Recorder *after* 5:00 p.m. on the Thursday before the next election, the County Recorder must make the registrant a "full-ballot" voter for *future* elections within five business days after the completion of processing of provisional ballots.

### 3. Procedures for Registrants with a Non-Citizen AZDL/ID#

If a registrant has not provided DPOC other than an AZDL/ID# and AZMVD records show that the registrant's AZMVD record has a non-citizen authorized presence designation, a County Recorder must:

1. Enter the registrant's information into the voter registration database with a status of "not eligible" (or functional equivalent) and a reason code of "invalid citizenship proof" (or functional equivalent).

2. Send a letter to the registrant (including a DPOC Submission Form/Non-Citizen AZDL/ID# Notice) within 10 business days of receipt of the registration application, informing the registrant that:

   • According to AZMVD records, the registrant's AZDL/ID has a non-citizen authorized presence designation and has not been registered to vote for that reason; and

   • The registrant may be registered if the registrant submits valid DPOC to the County Recorder. The registrant must provide DPOC by 5:00 p.m. on the Thursday before the next regular general election in order to vote in that election.

3. Maintain the registrant's information in the voter registration database with a status of "not eligible" (or functional equivalent) until the next regular general election if the registrant has not provided valid DPOC. If, after the next regular general election, the registrant still has not provided valid DPOC, the registrant's record may be changed to "not registered" (or functional equivalent). The registrant would then be required to complete a new registration form to become eligible to vote in future elections.

### 4. "Federal-Only" Voter Designation

Regardless of the type of form submitted, a registrant who submits an otherwise valid voter registration form to the County Recorder, but without accompanying DPOC, is entitled to be registered as a "federal-only" voter based on the registrant's sworn statement on the registration form that the registrant is a U.S. citizen. An otherwise valid voter registration form submitted to the County Recorder, but without accompanying DPOC, shall be accepted, entered into the database, and registered for federal elections (*i.e.*, made a "federal-only" voter unless and until proof of citizenship is received or acquired), so long as the registrant's AZMVD record is not shown to have a non-citizen authorized presence designation.

A "federal-only" voter shall be upgraded to a "full-ballot" voter if:

• The County Recorder acquires DPOC on the registrant's behalf from AZMVD records or the statewide voter registration database; or

• The registrant provides DPOC to the County Recorder by 5:00 p.m. on the Thursday before an election.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If a "federal-only" voter has been issued a ballot-by-mail, but becomes a "full-ballot" voter prior to 5:00 p.m. on the Thursday before the election, the voter may:

- Vote the "federal-only" ballot-by-mail; *or*
- Vote a regular or provisional "full-ballot" in-person during early voting or on Election Day, depending on the procedures implemented by the County Recorder or other officer in charge of elections.

If a voter is issued both an early "federal-only" ballot and an early "full-ballot," the first ballot accepted by the County Recorder's office is the only ballot that will be counted.

### 5.  DPOC When Moving Between Counties

A voter who registered to vote before December 13, 2004, and was therefore exempted from the requirement of providing DPOC, must submit valid DPOC if the voter is changing voter registration from one county to another in order to be registered as a "full-ballot" voter in the new county. A.R.S. § 16-166(G).

Registered voters who submitted valid DPOC to the County Recorder in their county of residence need not resubmit evidence of citizenship upon moving and registering to vote in a new county in Arizona so long as a record of their previously submitted DPOC is accessible by the new County Recorder (*e.g.*, via AZMVD records or the statewide voter registration database) and can be made part of their voter registration file in the new county. While proof of voter *registration* from another state or county is not satisfactory evidence of citizenship, A.R.S. § 16-166(H), valid documentary proof of *citizenship* presented in one Arizona county and documented in the statewide voter registration database constitutes valid DPOC if the voter registers in another county in Arizona.

### 6.  Verifying Citizenship/Naturalization/Alien Registration Numbers

#### a. *SAVE Usage*

Each County Recorder accesses SAVE pursuant to the Secretary of State's Memorandum of Agreement with USCIS (the "USCIS MOA").[7] The Secretary of State will provide SAVE access to each County Recorder upon signing a separate agreement (the "SOS/County SAVE Agreement") that will govern the terms of SAVE usage (and, in some cases, billing as well, though some counties have a separate Reimbursement Memorandum of Agreement with USCIS).

When a registrant provides a Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number as DPOC, that number must be verified through the SAVE database and the registrant must remain in "suspense" status until the SAVE verification is completed.

---

[7] County Recorders who access SAVE pursuant to the Secretary of State's USCIS MOA must comply with the conditions of use in the USCIS MOA.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

SAVE shall only be used for verification of citizenship for a new registration if the registrant provides a Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number as DPOC. Further, under the terms of the current USCIS MOA, SAVE shall not be used for list maintenance purposes, *i.e.* to cancel an existing registration.

### i.   SAVE Returns U.S. Citizen Status

If SAVE returns "United States Citizenship," the registrant's status must be updated to "active" in the voter registration database and the voter must be registered as a "full-ballot" voter.

### ii.   SAVE Returns Non-Citizen Status

If SAVE returns "Lawful Permanent Resident," "Refugee," "Non-Immigrant," or "Asylee," or other non-citizen status, the registrant must be processed like those with a non-citizen AZDL/ID#. *See* Chapter 1, Section II(A)(3) above. Specifically, a County Recorder must:

1. Enter the registrant's information into the voter registration database with a status of "not eligible" (or functional equivalent).

2. Send a letter to the registrant (including a DPOC Submission Form/SAVE Non-Citizen Notice) within 10 business days, informing the registrant that:

    • According to DHS records, the registrant holds an immigration number indicating non-citizenship and has not been registered to vote for that reason; and

    • The registrant may be registered as a "full-ballot" voter if the registrant submits other valid DPOC to the County Recorder. The registrant must provide DPOC by 5:00 p.m. on the Thursday before the next regular general election in order to vote a "full-ballot" in that election.

4. Maintain the registrant's information in the voter registration database with a status of "not eligible" (or functional equivalent) until the next regular general election if the registrant has not provided valid DPOC. If, after the next regular general election, the registrant still has not provided valid DPOC, the registrant's record may be changed to "not registered" (or functional equivalent). The registrant would then be required to complete a new registration form to become eligible to vote in future elections.

### iii.   SAVE Returns No Match

If SAVE is unable to find a match, the registrant must be processed like any other registrant who has not provided satisfactory DPOC. *See* Chapter 1, Section II(A)(4). Specifically, if valid DPOC cannot be electronically acquired via AZMVD records or the statewide voter registration database (and the registrant's AZMVD record is not shown to have a non-citizen authorized presence designation), a County Recorder must:

1. Process the voter registration application and designate the registrant as a "federal-only" voter; and

2. Send a letter to the registrant (including a DPOC Submission Form/SAVE No Match Notice) within 10 business days, informing the registrant that they have been registered

as a "federal-only" voter and must submit other valid DPOC to become a "full-ballot" voter.

### b. *Naturalization Ceremonies*

County Recorder representatives who conduct registration drives at naturalization ceremonies must take special precautions to ensure registration forms are properly processed.

- The County Recorder representative who receives the registrant's completed voter registration form must write the representative's name or initials on the form, along with the date and some indication that the form was completed at a naturalization ceremony (*e.g.*, "NC");

- The County Recorder representative who conducted the registration drive must ensure that the registrant's Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number is written on each registration form; and

- If any registrants reside outside that county, the County Recorder representative must bundle the voter registration forms by county and send them to the applicable County Recorders, along with a cover letter affirming that the registration forms were received through a naturalization ceremony.

The County Recorder who receives the bundle may rely on this cover letter as verification of citizenship. The County Recorder need not re-check any citizenship or immigration numbers to verify citizenship and may register the newly naturalized registrants as "full-ballot" voters (assuming no other deficiencies).

### c. *Verifying Citizenship Near Voter Registration Deadlines*

Often there is a delay between when a registrant becomes a U.S. citizen and when that registrant's citizenship status has been updated in SAVE. Therefore, certain precautions must be taken if a County Recorder receives a voter registration form within two weeks of a registration deadline that contains a Citizenship, Naturalization, or Alien Registration Number:

- If a County Recorder receives a registration form within 14 days of a voter registration deadline, the County Recorder must, as soon as practicable, notify the registrant by telephone and/or email (or by mail if the registrant's telephone number and email is not available) about the potential need (in case SAVE results are not ready by the deadline) to submit further DPOC to be a "full-ballot" voter for the next election. For example, the registrant may present their naturalization papers or submit a copy to the County Recorder to satisfy the DPOC requirement.

- Within 14 days of Election Day, a County Recorder must check SAVE for the results of any pending verifications to print or create precinct registers for Election Day. If any cases remain pending for additional verification at that time, the County Recorder should be prepared to supplement the precinct registers immediately preceding the election or be prepared to issue Recorder's Certificates to any newly registered voters whose citizenship was verified at the last minute. If the County Recorder cannot obtain verification of

citizenship from SAVE by 5:00 p.m. on the Thursday before Election Day, the registrant must be registered as a "federal-only" voter and the County Recorder must notify the registrant that the registrant must submit other valid DPOC in order to become a "full-ballot" voter for future elections. *See* Chapter 1, Section II(A)(6).

### 7.  Preservation and Protection of Citizenship Documentation

A County Recorder must maintain all DPOC received pursuant to A.R.S. § 16-166(F) in a manner that the County Recorder reasonably believes will prevent access by unauthorized persons. Documents submitted for purposes of proving citizenship may be maintained outside the voter registration database, but the County Recorder must otherwise document in the voter registration database that DPOC had been received.

A County Recorder may destroy DPOC documents two years after the date of receipt. The County Recorder must exercise reasonable diligence to ensure any DPOC documents are properly destroyed. A.R.S. § 16-166(F), (J).

### 8.  Statutory Obligation to Verify Citizenship[8]

#### a.  *Database Checks*

Within 10 business days after receiving a Federal Form not accompanied by DPOC, a County Recorder must attempt to verify citizenship, including checking certain databases if the County has access. A.R.S. § 16-121.01(D).[9] This includes:

1.  "The department of transportation databases of Arizona driver licenses or nonoperating identification licenses." A.R.S. § 16-121.01(D)(1). County Recorders already currently fulfill this obligation through their voter registration process, which automatically checks AZMVD records. *See* Section II(A)(2)(a) above; Section IV(H) below.

2.  "The United States citizenship and immigration services [USCIS] systematic alien verification for entitlements [SAVE] program, if practicable." A.R.S. § 16-121.01(D)(3). A County Recorder may fulfill this obligation by following the procedures for SAVE usage as described in this Manual. *See* Section II(A)(6) above.

    Note:  SAVE is used only if a registrant provides a Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number.  If a registrant does not

---

[8] Litigation is pending on the statutory provisions cited here. *See Mi Familia Vota et al. v. Fontes et al.*, CV-22-00509-PHX-SRB.

[9] A related statutory enactment states that County Recorders must reject State Forms not accompanied by DPOC. A.R.S. § 16-121.01(C). But, at the time of publication, a federal court has declared this provision in violation of the LULAC Consent Decree, so it should not be enforced. *See Mi Familia Vota et al. v. Fontes et al.*, CV-22-00509-PHX-SRB, Order filed 9/14/23, Dkt. 534, pgs. 21–22.

provide such a number, the statutory obligation to check SAVE does not apply because checking SAVE is not "practicable."  A.R.S. § 16-121.01(D)(3).

Although the statute lists other databases for County Recorders to check, the Secretary of State is unaware of County Recorders currently having access to those databases for citizenship verification purposes. This includes the Social Security Administration database, the National Association for Public Health Statistics Information and Systems (NAPHSIS) electronic verification of vital events system, and the Electronic Registration Information Center (ERIC) database. *See* A.R.S. § 16-121.01(D)(2), (D)(4), (D)(5).  Because the obligation to check databases applies only when County Recorders have access to citizenship data through the database, County Recorders currently have no obligation to check these databases.

### b.  *Results of Database Checks*

After conducting the database checks described above, if the County Recorder verifies citizenship, the applicant must be registered.  A.R.S. § 16-121.01(E).  For example:

- When AZMVD records confirm citizenship and the applicant is otherwise eligible, the applicant must be registered as a "full-ballot" voter.  *See* Section II(A)(2)(a) above.

- When SAVE returns U.S. citizen status and the applicant is otherwise eligible, the applicant must be registered as a "full-ballot" voter.  *See* Section II(A)(6)(a)(i) above.

If the database checks affirmatively show the applicant is a non-citizen, the County Recorder must (1) not register the applicant, (2) notify the applicant, and (3) if the applicant does not timely provide DPOC in response, forward the application to the County Attorney and Attorney General. A.R.S. § 16-121.01(E). For example:

- When AZMVD data show that the applicant's AZMVD record has a non-citizen authorized presence designation and no valid DPOC has been provided by the applicant or otherwise acquired, the County Recorder should follow the procedures in Section II(A)(3) above.  If the applicant does not timely submit valid DPOC in response to these procedures, the County Recorder shall then forward the application to the County Attorney and Attorney General.[10]

- When SAVE returns non-citizen status and no valid DPOC has been provided by the applicant or otherwise acquired, the County Recorder should follow the procedures in Section II(A)(6)(a)(ii) above.  If the applicant does not timely submit valid DPOC in response to these procedures, the County Recorder shall then forward the application to the County Attorney and Attorney General.

---

[10] The fact that an AZMVD record has a non-citizen authorized presence designation generally indicates that the applicant was not a citizen at the time they obtained that AZDL/ID#.  However, it is possible that the applicant has become a naturalized citizen since then.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If the County Recorder cannot verify whether the applicant is a citizen or non-citizen but the applicant is otherwise eligible to register to vote, the County Recorder must register the applicant as a "federal-only" voter.  *See* Section II(A)(4) above.[11]

### c.  *Recording Efforts to Verify Citizenship*

A County Recorder must record efforts made to verify citizenship status under Section II(A)(8)(a) and (b) above.  *See* A.R.S. § 16-121.01(F).

### B. Age Requirement for Registration

A registrant must be at least 18 years old by the next "regular general election" that occurs following their registration. A.R.S. § 16-101(A)(2). For purposes of this requirement, the next "regular general election" is the next statewide general election held pursuant to A.R.S. § 16-211.[12]

A minor who is qualified to register to vote is not necessarily a qualified elector for the next election. Although registered, a minor will not be eligible to vote in any elections until they turn 18 years of age as required by Ariz. Const. Art. VII, § 2.

If a County Recorder receives a voter registration form from a registrant who will be at least 18 years old on or before the next statewide general election but will not be 18 years old at the time of the next election, the registrant must be entered in the voter registration database and placed in a "suspense" status with a "registrant too young" reason code (or functional equivalent).

The County Recorder, after verifying citizenship as outlined in Chapter 1(II)(A), must notify the registrant by mail within 10 business days of receipt of the registration form to: (1) inform the registrant that their registration will remain in "suspense" until the registrant turns 18; (2) specify the next election where the registrant will be eligible to vote; and (3) specify the registrant's "full-ballot" or "federal-only ballot" designation (providing an opportunity to submit DPOC where applicable). A.R.S. § 16-101(A)(1), (2), (3); A.R.S. § 16-134(B); A.R.S. § 16-152(A)(15).

On or after the registrant's 18th birthday, the registrant's status must be changed to "active" to make the registrant a qualified elector for the next election. A registered minor is not eligible to sign initiative, referendum, or recall petitions, or petitions for political party recognition, until they

---

[11] Related statutory enactments state that if, after checking databases, the County Recorder cannot verify citizenship, the County Recorder must notify the applicant that the applicant cannot vote in a presidential election or by mail with an early ballot until DPOC is provided.  *See* A.R.S. §§ 16-121.01(E); 16-127.  But, at the time of publication, a federal court has declared these provisions preempted by the NVRA and they may not be enforced.  *See Mi Familia Vota et al. v. Fontes et al.*, CV-22-00509-PHX-SRB, Order filed 9/14/23, Dkt. 534, pgs. 10–15.

[12] A.R.S. § 16-152(A)(15) requires that the state voter registration form ask whether a registrant will be 18 years old "on or before *election day*" in order to register to vote. (Emphasis added). However, this provision must be interpreted consistently with A.R.S. § 16-101(A)(2), and therefore only forbids registration if the registrant will not be at least 18 years old by the next regular general election.

**CHAPTER 1:**
**Voter Registration**
*Voter Registration Requirements*

turn 18 years old. A.R.S. § 16-321(B); A.R.S. § 19-121.02(A); A.R.S. § 19-208.02(A); A.R.S. § 16-803(E). However, a registered minor is eligible to sign candidate nomination petitions so long as the minor will be 18 years old by the next regular general election and, at the time of signing, the minor is a registered voter (with their registration status in "suspense" due only to age) in the electoral district of the office the candidate is seeking. A.R.S. § 16-101; A.R.S. § 16-121(A); A.R.S. § 16-321(B); *Simpson v. Tarver*, No. CV-20-0218-AP/EL (Ariz. Aug. 24, 2020).

In order to maintain eligibility to vote in the next general election, the registered minor must be a resident of Arizona for the 29 days preceding the election, except as provided in A.R.S. § 16-126. A.R.S. § 16-101(A)(4). *See also* A.R.S. § 16-593.

## C. Residency Requirements for Registration

A new registrant must be a resident of Arizona at least 29 days before the next election. A.R.S. § 16-101(A)(3). A registrant is a "resident" if they have physical presence in the county along with an intent to remain. A registrant may be temporarily absent from the jurisdiction without losing their residency status, as long as they have an intent to return. A.R.S. § 16-101(B). Generally, a County Recorder has no duty to verify a registrant's residency status and shall rely on the registrant's documentation or affirmation of residency. However, if the registrant submits an AZDL/ID# as proof of location of residence, the County Recorder must verify that number. *See* A.R.S. § 16-123.

Except for UOCAVA registrants, a person who registers to vote shall provide an identifying document that establishes proof of location of residence. A.R.S. § 16-123.[13] However, a person who registers using a Federal Form need not provide such documentation to vote in federal elections.[14] Accordingly, a person who registers using a Federal Form and who does not provide such documentation should be registered as a "federal-only" voter and cannot be registered as a "full-ballot" voter until such documentation is provided.

Any of the identifying documents listed in A.R.S. § 16-579(A)(1) constitutes satisfactory proof of location of residence, but it is not an exhaustive list of the documents that can be used to satisfy A.R.S. § 16-123.[15] Further, A.R.S. § 16-123 does not require tribal members or other Arizona residents to have a standard street address to satisfy A.R.S. § 16-123. In addition to the documents listed in A.R.S. § 16-579(A)(1), documents satisfying the requirement in A.R.S. § 16-123 include, but are not limited to:

- A valid unexpired Arizona driver license or nonoperating ID ("AZ-issued ID"), regardless of whether the address on the AZ-issued ID matches the address on the

---

[13] Litigation is pending on this statutory provision. *See Mi Familia Vota et al. v. Fontes et al.*, CV-22-00509-PHX-SRB.
[14] *See Mi Familia Vota et al. v. Fontes et al.*, CV-22-00509-PHX-SRB, Order filed 09/14/23, Dkt. 534, pg. 9.
[15] *Mi Familia Vota, et al., v. Fontes, et al.*, CV-22-00509-PHX-SRB, Order filed 09/14/23, Dkt. 534, pp. 33-34.

ID-holder's voter registration form and even if the AZ-issued ID lists only a P.O. Box.

- Any Tribal identification document, including but not limited to a census card, an identification card issued by a tribal government, or a tribal enrollment card, regardless of whether the Tribal identification document contains a photo, a physical address, a P.O. Box, or no address.

- Written confirmation signed by the registrant that they qualify to register pursuant to A.R.S. § 16-121(B), regarding registration of persons who do not reside at a fixed, permanent, or private structure.

If the County Recorder acquires an AZDL/ID# from AZMVD for an applicant, that AZDL/ID# satisfies the proof of location of residence requirement for a State or Federal Form. A.R.S. § 16-123.

Although often interchangeable, the 29-day residency qualification (A.R.S. § 16-101(A)(3)) is distinct from the 29-day deadline to register to vote (A.R.S. § 16-120) in advance of an election.

## 1.  Determining Residency for Homeless/Transient Voters

A person who is otherwise qualified to register to vote shall not be refused registration or declared ineligible to vote because the person does not live in a fixed, permanent, or private structure. A.R.S. § 16-121(C).

Pursuant to A.R.S. § 16-121(B), a person who does not reside at a fixed, permanent, or private structure may use any of the following places as their registration address:

1. A homeless shelter to which the registrant regularly returns;[16]

2. The place at which the registrant is a resident;

3. The county courthouse in the county in which the registrant resides; or

4. A general delivery address for a post office covering the location where the registrant is a resident.

## 2.  Voting in a Presidential Election after Moving Out-of-State

Notwithstanding the 29-day residency requirement, a registrant who moves away from Arizona after the 30th day immediately preceding a presidential election may vote for presidential electors in Arizona (and for no other races or ballot questions) by early ballot in the Arizona precinct from which the registrant moved, in-person at the County Recorder's office, or by mail. A.R.S. § 16-

---

[16] "Homeless shelter" is defined as "a supervised publicly or privately operated shelter designed to provide temporary living accommodations to individuals who lack a fixed, regular and adequate nighttime residence." A.R.S. § 16-121(D).

126(A). A registrant who votes pursuant to this provision shall have their registration promptly canceled after the election. A.R.S. § 16-126(B).

### 3. Residency Requirement for UOCAVA Voters

The only other exception to the requirement for residency prior to the election is for a UOCAVA registrant who has never resided in the United States but has at least one parent registered to vote in Arizona at the time of registration. A.R.S. § 16-103(E). *See* Chapter 1, Section I(B) for more information on registration and voting requirements for UOCAVA registrants.

### D. Effect of Felony Conviction on Qualification to Register to Vote

A registrant may not register to vote if they have been convicted of treason or a felony, unless their civil rights have been restored. A.R.S. § 16-101(A)(5).

- If a registrant has only one felony conviction in Arizona, civil rights are automatically restored upon: (i) completion of the sentence, including probation, parole, and discharge from imprisonment; and (ii) payment of any restitution imposed. Payment of any other legal financial obligations, such as fines or court fees, is no longer required before civil rights are automatically restored after a first felony conviction. A.R.S. § 13-907.[17]

- If a registrant has more than one Arizona felony conviction or is unable to pay restitution, they may petition the superior court in which they were convicted to restore their voting rights. If their convictions are federal, they may petition the superior court in their county of residence to restore their voting rights. A.R.S. § 13-908.

- If a registrant has a felony conviction(s) from another state, they are eligible to register to vote in Arizona if their civil rights have been restored in the state of their conviction(s), assuming all other requirements for voter registration in Arizona are met. *See Parker v. City of Tucson*, 233 Ariz. 422, 431 (App. 2013).

- Those who have only misdemeanor convictions or are in pretrial detention remain eligible to register to vote assuming no other deficiencies.

A registrant must affirm under penalty of perjury that they are not barred from registering to vote due to a felony conviction. A.R.S. § 16-152(A)(16). A County Recorder has no duty to verify whether the civil rights of a registrant with felony conviction(s) have been restored and may rely on the registrant's affirmation when registering to vote.

For more information on when and how civil rights may be restored, see A.R.S. § 13-604(A); A.R.S. § 13-905; A.R.S. § 13-906; A.R.S. § 13-907; A.R.S. § 13-908; A.R.S. § 16-1011(C).

---

[17] A person with a single felony conviction in Arizona is eligible for automatic rights restoration in Arizona upon completion of their sentence and payment of any restitution imposed, even if they have a felony conviction(s) in another state(s), so long as their civil rights have been restored in the other state(s). *See Parker v. City of Tucson*, 233 Ariz. 422, 431 (App. 2013) (stating that A.R.S. § 13-912(A) (renumbered as A.R.S. § 13-907) applies to first-time felony convictions that occurred in Arizona).

County election officials should refer individuals who have questions regarding the impact of a criminal conviction on their eligibility to register to vote to the appropriate superior court for additional information on the rights restoration process.

### E. Effect of Incapacitation on Qualification to Register to Vote

A registrant may not register to vote if they have been adjudicated mentally incapacitated by a court with their voting rights revoked. A.R.S. § 16-101(A)(6); A.R.S. § 14-5101(3). A registrant must affirm under penalty of perjury that they are not barred from registering to vote due to a court adjudication of mental incapacitation under A.R.S. § 14-5101(3). A County Recorder has no duty to verify whether a registrant has been adjudicated mentally incapacitated and may rely on the registrant's affirmation when registering to vote. For more information on findings of incapacitation and retention of voting rights, see A.R.S. § 14-5101(3); A.R.S. § 14-5304.02.

### F. Effect of Inability to Sign or Make a Mark

A person who is unable to complete, sign, or make their mark on a voter registration form due to physical disability is nonetheless eligible to register to vote. A.R.S. § 16-101(A)(4).

- In that circumstance, the voter registration form may be completed at the registrant's direction, and the person who assisted in completing the form must sign the assister's name on the State Form. A.R.S. § 16-152(A)(20).

- Even if the registrant needs assistance in filling out the form, if the registrant is able to sign or make their mark, the registrant should do so.

- If the registrant is unable to sign or make their mark, as a best practice, it is recommended (but not required) that the person assisting write "Voter Unable to Sign Due to Disability," or a substantially similar note, in the voter signature space.

### III.    VOTER REGISTRATION ASSISTANCE AGENCIES

### A. Designated Voter Registration Assistance Agencies

Various agencies, organizations, and offices in Arizona may be designated as "voter registration assistance" agencies. An officially designated voter registration assistance agency:

- Provides assistance in registering to vote without regard to political party or affiliation;

- Develops written policies and conducts internal training to ensure compliance with federal and state voter registration laws;

- Meets with the Secretary of State and/or County Recorder, as applicable, on an as-needed basis to discuss voter registration policies and procedures;

- Receives State Forms (from the applicable County Recorder) and Federal Forms (from the Secretary of State) on a regular basis; and

- Accepts and agrees to return completed voter registration forms to the applicable County Recorder within five business days of receipt of the completed forms.

52 U.S.C. § 20506; A.R.S. § 16-134(A); A.R.S. § 16-140; A.R.S. § 16-141.

All public assistance agencies and disabilities agencies are designated as voter registration assistance agencies under federal and state law and are subject to specified responsibilities to conduct voter registration. 52 U.S.C. § 20506(a)(2); A.R.S. § 16-140.

- A "public assistance agency" means a state agency, division, or office that provides cash or in-kind assistance (such as access to medical care or transportation) to low-income or underserved populations. A.R.S. § 16-140(F)(3). The following agencies or divisions constitute "public assistance agencies" in Arizona:

    - Arizona Department of Economic Security (DES): Family Assistance Administration (FAA) within the Division of Benefits and Medical Eligibility (DBME)

    - Arizona Health Care Cost Containment System (AHCCCS)

    - Arizona Department of Health Services (ADHS): Division of Health Prevention

- A "disabilities agency" means a state agency, division, or office that administers state-funded programs to provide services to persons with disabilities. A.R.S. § 16-140(F)(2). The following offices or divisions constitute "disabilities agencies" in Arizona:

    - Arizona Department of Economic Security (DES):

        a. Developmental Disabilities Division (DDD)

        b. Employment and Rehabilitation Services Division (DERS)

Armed Forces Recruiting Centers are also designated as voter registration assistance agencies. 52 U.S.C. § 20506(c); A.R.S. § 16-140; A.R.S. § 16-141; *see also* Department of Justice guidance, *available at* https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.

The Arizona Game and Fish Department (AGFD) is also required to assist with voter registration when accepting hunting, fishing, or trapping license applications by providing a voter registration form to each in-person applicant and referring an online applicant to the state's voter registration website. A.R.S. § 16-132.

A County Recorder may also designate additional "voter registration volunteers" at their discretion, which could be any person, group, or entity, and may include governmental or nonprofit and other private organizations. 52 U.S.C. § 20506(a)(3); A.R.S. § 16-140(E), (F)(1).

## B. Tracking and Reporting Source of Registration

A County Recorder should ensure that State Forms provided to a public assistance or disabilities agency have the appropriate pre-populated source code to allow reliable tracking of the origin of a completed form. The source code should not be publicly decipherable but should allow a County

Recorder to internally distinguish between public assistance versus disabilities agencies. A.R.S. § 16-140(D); A.R.S. § 16-152(A)(22). A County Recorder must input the source of registration into each registrant's electronic registration record. *See* Chapter 1, Section IV(B)(2). The source code from a particular registrant's form may not be publicly disclosed and may only be used by election officials to monitor compliance with federal and state law. A.R.S. § 16-140(D).[18]

A voter registration assistance agency should ensure that the agency distributes voter registration forms with pre-populated source codes to the appropriate divisions or offices within the agency. Completed registration forms returned to the County Recorder should be distinguished between those received from public assistance versus disabilities assistance agencies, where applicable, for proper tracking. If the agency directs applicants to register to vote online (through AZ MVD Now or by downloading a registration form), the agency must utilize a reasonable method to track which applicants were directed to an online registration method, and offer to mail a paper registration form, at the applicant's request, if the applicant is unable to access online registration or unable to download and print a registration form.

The Secretary of State must report the number of registrations received through voter registration assistance agencies to the U.S. Election Assistance Commission on a biennial basis. Accordingly, the County Recorders should ensure (through use of pre-populated source codes or other reliable method) that completed registration forms received from state agencies can be properly distinguished between a public assistance versus a disabilities assistance agency.

## IV.   VOTER REGISTRATION PROCESSING PROCEDURES

### A. Statewide Voter Registration Database

Arizona operates a voter registration and election management system called the Access Voter Information Database (AVID). The statewide database is a matter of statewide concern and is not subject to modification or further regulation by a political subdivision. Maricopa and Pima County systems link to the state system through an interface. The 13 smaller counties directly use the state system. To the extent practicable, Maricopa and Pima County's systems will use the same terms, codes, and classifications as the state system. To the extent it is necessary for Maricopa and Pima to use different terms, codes, and classifications, they must correspond to the terms, codes, and classifications in the state system.

Maricopa and Pima County must file a detailed and complete explanation of their voter registration system or program and any subsequent revisions with the Secretary of State. A.R.S. § 16-173. If Maricopa or Pima County anticipates needing to make substantive changes to their voter registration system that may inhibit data integration or otherwise impact compatibility with the state system, the Secretary of State's Office must be timely notified to enable consideration of compatibility with, and any necessary modifications to, the state system. Prior to implementation,

---

[18] If, under certain circumstances, pre-populated source codes are not practicable, a County Recorder should develop another reliable method to receive, and track completed voter registration forms directly received from voter registration assistance and disabilities agencies.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

any substantive changes to the Maricopa or Pima County voter registration systems must be approved by the Secretary of State for compatibility with the statewide voter registration system. A.R.S. § 16-168(J).

### B. Registration Codes in the Statewide Voter Registration Database

A County Recorder must assign the appropriate status, reason, source, and form code to each registrant's record.

#### 1. Registration Status and Reason Codes

There are eight (8) recognized "status" codes that may be selected in the statewide voter registration database: active, inactive, suspense, canceled, not eligible, merged, archived, and not registered. Each status code has its own set of "reason" codes that provide further detail on the reason the particular status code was assigned. County Recorders must track the registration status and reason codes using statewide uniform codes as defined by the Secretary of State in consultation with County Recorders.

#### 2. Registration Source Codes

A registration "source" code describes the source from which a voter registration form was received by the County Recorder or the source that circulated the registration form.

The following sources must be tracked in the voter registration database:

| Source |
| --- |
| Registration form was received from NVRA-mandated public assistance agencies |
| Registration form was completed in-person or dropped off at the County Recorder's Office counter |
| Registration form was received from voter registration efforts or volunteers designated by the County Recorder |
| Registration form was received from Armed Forces recruitment offices |
| Registration form was received from state-funded agencies primarily serving persons with disabilities |
| Registration form was received from a Naturalization ceremony |
| Registration form was received from a political party or third-party organization's voter registration drive |
| Registration form was received from other public agencies designated by the state or county but not mandated by NVRA (*e.g.*, city clerks, libraries, post offices, Arizona Game and Fish Department, Native Health) |
| Registration form was received through an in-person MVD transaction |
| Registration form was received through an online MVD transaction |

| Registration form was received through Arizona's stand-alone online voter registration website |
| Form was received directly from the registrant (Federal Post Card Application) |
| Form was received directly from the registrant (Federal Write-in Absentee Ballot) |
| Form was received together with a Provisional Ballot |
| Registration form was received through voter registration efforts by the Secretary of State's Office |
| Other |

County Recorders must track the registration sources using statewide uniform source codes as defined by the Secretary of State in consultation with County Recorders. County Recorders and staff may obtain the exact source codes associated with specific sources from the Secretary of State's Office and must keep that information confidential to avoid public disclosure of the source of a particular voter's registration.

### C. Minimum Required Information on Registration Forms

A State, Federal, FPCA, and FWAB Form must contain the following minimum information to be considered complete:

- registrant's name;

- residential address or description of residence location;

- date of birth (DOB);

- place of birth (for State Forms only);[19]

- proof of location of residence (A.R.S. § 16-123; A.R.S. § 16-579(A)(1); Chapter 1, Section II(C));[20]

- a checkmark or other appropriate mark in the "yes" box next to the question regarding citizenship. Notwithstanding A.R.S. § 16-121.01(A), a County Recorder may not reject a voter registration application that does not contain a checkmark in the box next to the question regarding citizenship when the person provides DPOC and is otherwise eligible to vote; and

- signature or other statement indicating that the affidavit was completed at the registrant's direction (A.R.S. § 16-152 (A)(19)-(20)).

If the registrant possesses an AZDL/ID# or Social Security number (SSN), the registrant's AZDL/ID# or the last four digits of the SSN (SSN4) should be provided as well. If the registrant does not list an AZDL/ID# or SSN4 on the State Form, the registrant is nonetheless permitted to

---

[19] Litigation is pending on the "place of birth" requirement. *Mi Familia Vota, et al., v. Fontes, et al.*, CV-22-00509-PHX-SRB.

[20] In the context of a Federal Form, failure to provide proof of residence location shall not prevent a person from being registered to vote in federal elections. *See Mi Familia Vota, et al., v. Fontes, et al.*, CV-22-00509-PHX-SRB, Order filed 09/14/23, Dkt. 534, pg. 9.

register to vote. The registrant will be assigned a unique identifying number by the statewide voter registration database that will serve as a voter identification number.

The state-specific instructions accompanying the Federal Form explain that "[i]f you do not have a current and valid driver license or non-operating identification license or a social security number, please write 'NONE' on the form." However, a County Recorder may not reject a Federal Form for failure to write "NONE." Similarly, for the FPCA and the FWAB, if the registrant does not list an AZDL/ID# or SSN4, the registrant is directed to write "I do not have a Social Security Number or State issued ID number." However, failure to write this statement does not affect the registrant's ability to register to vote. A unique identifying number will be assigned to the registrant by the statewide voter registration database for identification purposes.

If the minimum requirements listed above have been met, the form should be processed and the registrant should be entered into the voter registration database in an "active" status if they otherwise meet the requirements for registration. If the minimum requirements have not been met, the County Recorder must: (i) follow-up with the registrant and seek the missing information (if the County Recorder has the registrant's address, telephone number, or email address); or (ii) place the registrant in "not registered" status if the County Recorder has no reasonable means to contact the registrant.

A.R.S. § 16-121.01(A); A.R.S. § 16-152(A)(2)-(3), (8), (12), (14), (19)-(20); A.R.S. § 16-166(F); 52 U.S.C. § 21083(a)(1)(A)(iii).

If the registration form does not contain the registrant's name, residence address or description of residence location, DOB, or signature (or assisting person's signature), but the County Recorder has a mailing address, telephone number, or email address to contact the registrant to request the incomplete information, the registrant should be entered into the voter registration database in a "suspense" status until the incomplete information or a new voter registration form is received.[21] If contact information is missing, a County Recorder must, if practicable, use reasonable efforts to research and acquire contact information for the registrant through any appropriate means.

- If the information on the form is incomplete or illegible, and the County Recorder has contact information for the registrant, the County Recorder shall notify the registrant within 10 business days of receipt of the form, request the missing or illegible information, and inform the registrant that they will remain in "suspense" status, with the reason code "registrant-waiting verification" (or functional equivalent) until the information is received.

- If a County Recorder does not have the necessary information to contact the registrant by mail, telephone, or email, the registration form should be set aside and/or the record should

---

[21] A registrant should not be placed in a "suspense" status solely for providing a description of residence location or other nonstandard residence address. In such cases, County Recorders should make all reasonable efforts to ascertain the registrant's physical residence location and should only deem the residence address field "incomplete" after such reasonable efforts failed.

be entered in the voter registration database using the status code "suspense" and the reason code "insufficient information on registration form" (or functional equivalent).

If the County Recorder receives the missing, incomplete, or illegible information by 7:00 p.m. on Election Day, the registrant is deemed to have been registered on the date the registration was first received or dated. A.R.S. § 16-134(B); A.R.S. § 16-121.01(A). Otherwise, the registrant's status must remain in "suspense" (or functional equivalent). If, after the next regular general election, the registrant still has not provided the missing information, the registrant's record may be changed to "not registered" (or functional equivalent). After the statewide voter registration system archives the record, the registrant would be required to complete a new registration form to become eligible to vote in future elections.

## D. Political Party Preference

A registrant may select a political party preference by checking one of four boxes on the State Form: (1) Republican; (2) Democratic; (3) Other _____; or (4) None or No Party.[22]

If the "Other" box is checked and the registrant writes a political party preference, the registrant's selection should be entered in the voter registration database as follows:

- <u>Republican</u>: "Republican," "Rep," "GOP," or any substantially similar designation
- <u>Democratic</u>: "Democratic," "Democrat," Dem," or any substantially similar designation
- <u>Libertarian</u>: "Libertarian," "LBT," "LIB," or any substantially similar designation
- <u>No Labels</u>: "No Labels," "NOL," or any substantially similar designation
- <u>Green</u>: "Green," "GRN," or any substantially similar designation
- <u>Independent</u>: "Independent," "IND," or any substantially similar designation
- <u>Other</u>: Any other non-recognized political party
- <u>PND</u>: "Party Not Designated," "PND," "No Preference," "Unaffiliated," "No Party," "None," or any substantially similar designation.

If a *new* registrant leaves the political party preference field blank, the registrant's party preference will be "Party Not Designated" or "PND." If an *existing* registrant leaves the political party preference field blank, however, the registrant's existing political party preference will be retained, and no changes should be made.

For previously recognized political parties that have since lost recognition (at the state or local level), the County Recorder may continue to use the party designation for registrants in the voter registration database if the registrant entered that party affiliation on their registration application.

---

[22] A.R.S. § 16-152(A)(5) requires that the two largest political parties entitled to continued representation on the ballot shall be listed on the voter registration form, and the form shall include a blank line for other party preference options.

However, for the purposes of reporting voter registration statistics, *see* Chapter 1, Section IX, these registrants shall be reported as "Other."

A registrant wishing to change their political party preference from the one indicated in the registration record must reregister. A.R.S. § 16-136.

---

### E. Date of Registration

A mailed paper registration form is deemed to be timely received for an election if: (1) the form is postmarked on or before the voter registration deadline and received by the County Recorder by 7:00 p.m. on Election Day; or (2) the form is dated on or before the voter registration deadline and received by the County Recorder within five calendar days after the voter registration deadline. A.R.S. § 16-134(C).

The registration effective date will be the date the original voter registration form was dated. If a registration form was submitted without a date, a County Recorder must use the postmark date as the date of registration, unless the postmark date is illegible or otherwise unavailable, in which case the date of receipt shall be used as the date of registration. A.R.S. § 16-134(C), (D).

If a paper registration form is missing any of the required minimum information or DPOC, or is otherwise placed in "suspense" status, and the registrant later provides that missing information or DPOC, the County Recorder must deem the date of registration to be the date the registration form was dated. If the registration form was not dated, the postmark date shall be the date of registration unless the postmark date is illegible or unavailable, in which case the date of receipt shall be used as the date of registration. DPOC must be provided by 5:00 p.m. on the Thursday before Election Day for the voter to be eligible to vote a "full-ballot" in that election. *See* Chapter 1, Section II(A). Any other required information on the form must be provided by 7:00 p.m. on Election Day for the voter to be eligible to vote in that election. A.R.S. § 16-134(C). If necessary supplemental information is provided by 7:00 p.m. on Election Day, the registrant is a qualified elector for that election, even if the supplemental information is provided after the voter registration deadline for that election.

However, in order for a petition signature to be deemed valid, any necessary missing information on the voter registration form, and DPOC for non-federal petitions, must be received by the County Recorder by the date the filing officer transmits the petition signature sheets to the County Recorder for verification.

---

### F. Initial Duplicate Checking Within the County

Before a new registration record is entered into the voter registration database, a County Recorder must first conduct a search of the voter records to determine whether there is already an existing record for the registrant *within the county*. A County Recorder may use any appropriate criteria to identify potential matches, including (but not limited to) any information in the voter's record.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If a County Recorder ultimately determines that the registration form was submitted by an existing registrant in the county, the County Recorder must update the registrant's existing record with the new registration information in lieu of creating a new record. In other words, the new registration form is treated as a request to update the registrant's existing/original record. If the initial duplicate search indicates that the registrant does not already have a record in that county, the County Recorder must create a new record.

If a County Recorder overlooks an existing/original record and inadvertently creates a new record for the registrant, the statewide voter registration system will flag the records for the County Recorder to resolve.

### G. Electronic Verification Procedures

Once a new or amended voter registration record is entered into the statewide voter registration database, the system automatically checks the registrant's information against AZMVD records and, if necessary, the Social Security Administration (SSA) database.

Verifying records against AZMVD and/or SSA data serves multiple functions:

1. If the registrant provided an AZDL/ID#, a match against AZMVD records validates proof of citizenship (unless the match is to a non-citizen AZDL/ID# or an AZDL/ID# issued before October 1, 1996).

2. If the registrant failed to provide either an AZDL/ID# or SSN4, but the registrant's provided information matches against AZMVD or SSA data, the system will "acquire" the missing AZDL/ID# or SSN4 from those sources and import that information into the registrant's record.

3. A match against AZMVD records or SSA database confirms the registrant's identity and helps ensure the integrity of registration rolls.

The registrant's new or amended record is also automatically verified against existing records in the statewide voter registration database for the purpose of identifying (and potentially canceling) any duplicate record. The details of the electronic verification procedures are defined in the statewide voter registration system.

Voter registrations electronically transmitted from AZMVD to the statewide voter registration are generated for registrants who register through AZMVD, whether online at www.azmvdnow.gov or in-person at an AZMVD (or authorized third-party provider) office. 52 U.S.C. § 20504; A.R.S. § 16-112.

All AZMVD records for a particular county are populated to an interface, where each record is individually processed by the County Recorder. If there is no match against an existing registrant's record in the county, the County Recorder should create a new registration record and import the AZMVD record into the new registration record. Once the new record is saved, the statewide voter registration system will conduct the same automatic AZMVD/SSA verification and statewide duplicate checking that occurs when a paper form has been entered.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If a County Recorder finds a match between an AZMVD and an existing registration record, the County Recorder should apply the AZMVD updates to the existing record.

### H. Issuance of Voter Registration Cards

A County Recorder shall issue a voter registration card to any new registrants and may, at the discretion of the County Recorder, issue a new card to existing registrants who update their name, address, or political party preference. A.R.S. § 16-163(B). New voter registration cards should also be issued to any registrants affected by redistricting or re-precincting. A new voter registration card need not be issued if a registrant makes other changes to their registration information, including opting into the electronic publicity pamphlet.

A voter registration card should be labeled "Voter Identification Card" or "Voter Registration Card" and contain the following information:

1. Registrant's full name;

2. Registrant's residence address or a description of residence location;

3. Registrant's political party preference;

4. Registrant's date of registration (and/or effective date of change);

5. Registrant's voter registration ID number;

6. Registrant's precinct name and/or number;

7. Registrant's district information:

    a. Congressional district (all registrants);

    b. Legislative district (only "full-ballot" voters); and

    c. Any additional optional district information;

8. County name;

9. Contact information for the County Recorder; and

10. If the registrant is a "federal-only" voter, a clear indication of "federal-only" voter designation.

The mailer that accompanies the voter registration card should contain the same information on the card and the following additional information:

1. Information stating that a new voter registration card is enclosed and instructions to discard the old card;

2. Information on use of the voter registration card (*e.g.*, as one piece of non-photo identification at the voting location);

3. How to contact the County Recorder if information on the card is incorrect;

4. Instructions on how to find one's voting location;

5. If the registrant is a "federal-only" voter, information about what "federal-only" means, what limitations apply (including voting, signing petitions, etc.), and how the voter can become a "full-ballot" voter by providing DPOC;

6. Information about identification requirements at the voting location;

7. Information about how to request an early ballot or be placed on the AEVL; and

8. Outline of the reasons why a person would need to re-register.

The County Recorder shall send a voter registration card to the voter's designated mailing address, if different than residential address, within 30 days of information being entered into the voter registration database for new registrants or registrants with new information. A.R.S. § 16-163(B). Return of an undeliverable voter registration card may be grounds to initiate the "NVRA process" by mailing another notice. A.R.S. § 16-163(C). *See* Chapter 1, Section IX(D).

## I. Help America Vote Act Identification Requirements

The Help America Vote Act (HAVA) requires a first-time voter to prove identity to vote in a federal election if the voter registered to vote by mail or through a third-party registration drive (*i.e.*, the registration form was not completed in-person at the County Recorder's office or other designated voter registration agency). 52 U.S.C. § 21083(b)(1)-(3).

The identification requirement under HAVA for in-person voting is the same as the identification requirement under state law for in-person early, emergency, and Election Day voting. Therefore, all in-person voters are subject to the same identification requirements. A.R.S. § 16-579(A)(1); 52 U.S.C. § 20505(c)(1); 52 U.S.C. § 21083(b)(2)(A)(i).

HAVA requires identity to be proven in one of the following ways for a first-time voter to vote by mail:

o  Verification of a registrant's AZDL/ID# or SSN4;
o  Presentation of a registrant's current and valid photo identification; or
o  Presentation of a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the registrant.

52 U.S.C. § 21083(b). For purposes of HAVA compliance, verification of a registrant's AZDL/ID# or SSN4 will be deemed sufficient proof of identity. If a registrant has not satisfied HAVA's identification requirement for first-time voters who registered by mail, the registrant must be entered into the statewide voter registration database with a designation of "FED" (or functional equivalent). After the registrant proves identity by presenting a photo identification or utility bill/bank statement/government document with the voter's name and address, the designation must be changed to "FEDI" (or functional equivalent) to indicate that the voter's identity has been verified in compliance with HAVA.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

| V. | PROTECTION OF SECURED REGISTRANTS |
|----|-----------------------------------|

The following eligible registrants are entitled to have their registration record generally shielded from public disclosure, beyond the standard confidentiality protections available to all registrants:

- Registrants with a government background who demonstrate to a court that sealing their registration record will reduce a danger to the registrant's life or safety (collectively "protected government officials"), A.R.S. § 16-153(A), (B)(3), (K);

- Registrants subject to an Order of Protection or Injunction against Harassment (collectively "protected victims"), A.R.S. § 16-153(A), (J), (K)(4);

- Registrants enrolled in the Secretary of State's Address Confidentiality Program (ACP). ACP participants typically include victims of domestic violence, sexual offenses, or stalking offenses. The Secretary of State provides ACP participants a substitute address for public disclosure purposes and redirects mail from the substitute address to the ACP's participant's actual address, or if applicable, other designated address for receiving mail, A.R.S. § 41-161(2); A.R.S § 41-162.

Protected government officials, protected victims, and ACP participants are collectively referred to as "secured registrants" with "secured records." Other persons who reside with secured registrants are also entitled to request to have their registration record secured. A registrant seeking secured status may obtain an application from the Administrative Office of the Courts at http://www.azcourts.gov/selfservicecenter/Self-Service-Forms/Personal-Information-Redaction. A protected government official or protected victim who is not an existing registered voter, but seeks to have their record sealed upon registering for the first time, should contact the County Recorder to coordinate the appropriate procedure. *See* A.R.S. § 16-153.

An ACP participant who seeks to register to vote must initiate the process through the Secretary of State's ACP Division. *See* A.R.S § 41-162. The ACP participant will be provided a Protected Voter Registration Packet, which includes a State Form and a Participant Protected Voter Records Form (PVR Form) and instructions.[23] Upon receipt of the ACP participant's completed Protected Voter Registration Packet from the Secretary of State's ACP Division, the designated County Recorder official must process the registration form within five business days and complete the following steps: (i) mark the registrant's record as secured, (ii) include the registrant on the AEVL;[24] and (iii) scan the State Form into the voter registration database so only the registrant's name and signature will be visible, and ensure the original State Form is protected from unauthorized access.

---

[23] More information on the process is available at https://azsos.gov/services/acp.

[24] The Secretary of State's ACP Division requires that ACP participants be added to the AEVL to maintain the confidentiality of the ACP participant's voting precinct and will therefore ensure the "AEVL" box is selected on the State Form.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

When a person with an existing Active, Inactive and Suspense voter registration record becomes an ACP participant, the Secretary of State must secure the participant's voter registration record in AVID and notify the County Recorder of the participant's:

- o Secured status;
- o Current residence address or description of residence location; and
- o Substitute address for the County Recorder to revise the participant's voter registration record. Which includes adding the substitute address as the participant's mailing address. The residence address cannot be changed in the voter registration record until the participant re-registers to vote.
- o The Secretary of State will secure new participants with a cancelled voter registration record and send notice to the appropriate county that the voter registration record has been secured.

An ACP participant who is not already registered to vote may register to vote using the substitute address and must provide the participant's actual residence address for precinct designation purposes when returning their voter registration forms that will be forwarded to the election official by the Address Confidentiality Program/Secretary of State's Office, once received by the participant. An ACP participant's substitute address shall not be used as an actual residence address for voter registration purposes. A.R.S. § 41-166(E).

### A. Marking Secured Records

A secured record in the voter registration database must be visually distinguishable from non-secured records. A County Recorder shall implement additional security protocols to limit employee access to secured records.

### B. Responding to Public Records Requests

Protected government officials and protected victims (and any registered voter who resides at the same residence who has requested and received protected status) are entitled to have their identifying information, including any of that person's documents and voting precinct number, shielded from public disclosure. A.R.S. § 16-153(A).

ACP participants are entitled to have their "actual address" shielded from public disclosure, which includes the ACP participant's actual residential address, work address, school address, telephone number, county of registration, and precinct number. A.R.S. § 41-161(1); A.R.S. § 41-165(E).

Neither the Secretary of State nor a County Recorder may disclose an ACP participant as a registered voter because doing so would reveal the ACP participant's county of residence in violation of A.R.S. § 41-161(1) and A.R.S. § 41-162(A). The Secretary of State and/or County Recorder may also exclude protected government officials and protected victims from a response to a public records request for registrant records, if separating protected government officials/protected victims from ACP participants would present an undue burden.

However, nothing in this Section precludes the Secretary of State or County Recorder from: (1) providing non-sealed information about a protected government official or protected victim if otherwise required by law or a court order; or (2) including secured registrants in statistical reports.

### C. Creating Signature Rosters or Uploading E-Pollbook Data

County Recorders may not include secured registrants, whether an ACP participant or protected government official or protected victim, on a signature roster or in an e-pollbook. If a county uses a tablet or computer terminal that has live access to the voter registration database via a secure virtual private network (VPN) connection, the system must be capable of shielding secured registrants' information from public view (or providing view access only to the secured registrant).

In the event a secured registrant attempts to vote provisionally at a polling place (and informs the poll worker of their secured status), the poll worker should undertake any additional or necessary precautions, including but not limited to:

- Confirming the correct ballot style;
- Ensuring that a protected government official or protected victim lists their actual residential address on the provisional ballot envelope;
- Making a notation about secured registrant status on the provisional ballot envelope; and/or
- Limiting the signature roster to the registrant's voter ID number and the notation "address protected."

### D. Issuance of Official Mail and Election Documents

A protected government official or protected victim should receive all official election mail and be issued any voter registration cards using the registrant's actual information.  An ACP participant should receive all official election mail and be issued any voter registration cards using the substitute address (and excluding the precinct name or number). A.R.S. § 41-166(E).

### E. Signing Candidate, Initiative, Referendum, or Recall Petitions

Secured registrants are encouraged not to sign petitions if they wish to maximize protection of the confidentiality of their identifying information and residential address.

The Secretary of State and County Recorders have no obligation to redact an address or other identifying information from a candidate, initiative, referendum, recall, or new party recognition petition signed by a secured registrant. Nor is the Secretary of State or a County Recorder required to research an ACP participant's actual address if a substitute address is placed on a petition. However, a secured registrant who signs a petition and indicates "protected address," "secured registrant," or other substantially similar designation in the address line shall not have the registrant's petition signature invalidated solely based on the failure to provide the registrant's actual address. *See* A.R.S. § 16-321(E). In such cases, the County Recorder may verify the petition signature based on the registrant's address in the voter registration record. Verification of the

petition signature, however, may necessarily disclose the secured registrant's district and/or county of residence. In addition, the registrant's identifying information, including residential address, may appear on other petition-related records, which may be disclosed through a public records request or court challenge relating to the petition. For these reasons, secured registrants are encouraged not to sign petitions if they wish to maximize the confidentiality of their residential address.

---

### F. Terminating Secured Registrant Status

A protected government official's or protected victim's registration record remains sealed for a period of five years, to expire by January 5 of the following year, unless judicially renewed. A County Recorder must mail a notice to the protected government official or protected victim at least six months prior to the January 5th expiration date of their secured status. A.R.S. § 16-153(F). A County Recorder may extend the protected government official's or protected victim's secured status upon receipt of a new court order. Otherwise, a County Recorder will remove the secured status from the registrant's record after January 5 if the County Recorder does not timely receive a new court order.

An ACP participant's registration record remains sealed indefinitely unless a County Recorder is notified by the registrant or the Secretary of State's ACP Division that the registrant is no longer a participant in the ACP program. Upon receipt of such notice, a County Recorder should remove the secured status from the registrant's record and send all future correspondence to the registrant's actual residential address previously provided on the registration form (not the substitute address previously utilized for confidentiality purposes).

---

### VI.    REGISTRATION PROCESSING DURING "BOOKS CLOSED"

The period between the last day to register to vote for an election and Election Day is known as the "books closed" period. Historically, unless the specific changes were requested by the registrant before the voter registration deadline, County Recorders refrained from making substantive changes to voter registration records during the "books closed" period in order to ensure that the creation of signature rosters, e-pollbook rosters, and the verification of provisional ballots are based on records of eligible voters as of the last day to register to vote. However, voter registration processing may continue during the "books closed" period if the County Recorder has other means of identifying records of eligible voters as of the last day to register (*e.g.*, the voter registration system is able to sort by effective eligibility date).

Even if a County Recorder chooses to suspend voter registration processing during the "books closed" period, the following updates should continue to be processed:

- **Address Updates:** If an existing registrant updates their residence or mailing address after the voter registration deadline but prior to the finalization of the signature or e-pollbook rosters, a County Recorder may update the registrant's record with the updated address. Registrants who updated their residence address would be permitted to vote a regular ballot at their *new* voting precinct (if different from their prior precinct). (Voters who registered

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

prior to the voter registration deadline but failed to notify the County Recorder of a change in residence address prior to the date of the election are eligible to vote a provisional ballot and may update their residence address at their *new* voting precinct.)

- **Name Changes:** If an existing registrant updates their name after the voter registration deadline but prior to the finalization of signature rosters or e-pollbook rosters, a County Recorder may update the registrant's record with the new name.

- **DPOC Changes:** If a "federal-only" voter provides satisfactory DPOC to the County Recorder by 5:00 p.m. on the Thursday before Election Day, the registrant's designation must be updated to "full-ballot" voter. *See* Chapter 1, Section II(A)(2).

- **Adding Supplemental Information to Incomplete Registration:** If a voter submitted a voter registration application by the applicable registration deadline but the application was missing the minimum required information to be considered complete, *see* Chapter 1, Section IV(C), the voter has until 7:00 p.m. on Election Day to provide the missing information to be eligible to vote in that election, and the County Recorder must update the registrant's record with the missing information if provided by 7:00 p.m. on Election Day. A.R.S. § 16-134(B).

## VII.   ELIGIBILITY TO VOTE

To be eligible to vote, a registrant must be both: (1) timely registered for a particular election (*i.e.*, registered in the jurisdiction at least 29 days before the date of the election), and (2) a qualified elector in a particular jurisdiction.

In general, a "qualified elector" is a person who is:

- Qualified to register to vote and is properly registered to vote (*i.e.*, included on the voter registration rolls) in the jurisdiction in question; and

- Will be at least 18 years old on or before the date of the election.

A registrant remains a qualified elector unless the registrant moves to another jurisdiction, has their voting rights revoked due to felony conviction or incapacity, or has their registration canceled pursuant to A.R.S. § 16-165(A). A.R.S. § 16-121(A). The definition of a "qualified elector," however, may differ in a Special Taxing District as prescribed in Title 48, Arizona Revised Statutes.

### A. Age Requirements to Vote in the Next Election

To be eligible to vote in the next election held pursuant to A.R.S. § 16-204, a registrant must be 18 years old on or before the date of that next election. A.R.S. § 16-121(A).

If a registrant will be at least 18 years old on or before the next statewide general election but will not be at least 18 years old by the next election held in a particular jurisdiction, the registrant remains qualified to *register* to vote but is not a *qualified elector* for that next election. For example, if a registrant will turn 18 years old before the general election but will be 17 years old

at the time of the primary election, the registrant may register but is not entitled to vote in the primary election.

## B. Residency Requirements to Vote in the Next Election

To be eligible to vote in the next election, a registrant generally must have residency within the boundaries (or proposed boundaries) of a particular jurisdiction for the 29-day period preceding that election. A.R.S. § 16-120(A). For example, to vote in a city or town election, a registrant must be a resident of that city or town at least 29 days before that election. A.R.S. § 9-822(A). A registrant may be temporarily absent from the jurisdiction without losing their residency status, as long as the registrant has an intent to return. A.R.S. § 16-101(B); A.R.S. § 16-103.

### 1. Residency Requirements When Jurisdictional Boundaries Change

If jurisdictional boundaries change during the 29-day period preceding the next election, a registrant must have residency within the new boundaries in order to vote in the next election in that new jurisdiction. This applies to boundary changes brought about by annexation.

For example, a registrant who previously resided in a county island, but whose property was annexed into a city or town during the 29-day period preceding an election, is qualified to vote in the city or town's next election if the registrant resided in the city or town's new boundaries during the 29-day period before the election. A.R.S. § 9-822(B).

### 2. Eligibility to Vote When Registrant Moves Within 29-Day Period

If a registrant moves to a different precinct within the same county during the 29-day period preceding the next election, the registrant remains a qualified elector for the next election. If the registrant updates their residence address prior to the creation of the signature rosters or e-pollbook rosters, a County Recorder may update the registrant's record with the updated residence address in the voter registration database and the voter will be permitted to vote a regular ballot at their *new* voting precinct. The registrant is also entitled to update their address at the appropriate polling place for the voter's new address and then vote a provisional ballot on Election Day. A.R.S. § 16-122, A.R.S. § 16-135, A.R.S. § 16-584.

If a registrant moves to a different county during the 29-day period preceding the next election, the registrant remains a qualified elector in the former county for that election and must vote in the *former* county. A.R.S. § 16-125.

If a registrant moves to a different state during the 29-day period preceding the next election, the registrant is not a qualified elector (and is therefore ineligible to vote) in Arizona. However, a registrant retains the right to vote in Arizona for President of the United States (and no other races) at the general election during a Presidential election year. A.R.S. § 16-126. Requesting a presidential-only ballot requires the County Recorder to cancel the registrant's record "promptly" following the general election. A.R.S. § 16-165(A)(6).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### 3.  Exceptions to the 29-Day Residency Requirement

#### a.  *Military and Overseas Voters*

Military and overseas registrants temporarily absent from the state are permitted to register and vote up until 7:00 p.m. on Election Day despite not physically residing in Arizona during the 29-day period preceding the election. A.R.S. § 16-103; A.R.S. § 16-543.02(B). This exception also applies to a U.S. citizen who has never resided in the United States but whose parent is registered in Arizona and is a qualified elector for the next election. A.R.S. § 16-103(E).

#### b.  *Public Officers Posted in Different County*

If a state employee or officer is posted to a duty station in a county other than the county from which they were appointed or elected, they (along with their spouse and dependents who reside in the household) remain qualified electors in the county of appointment or election, even if they physically reside in the county where the duty post is located. A.R.S. § 16-124.

## VIII.   REGISTRATION DEADLINE TO VOTE IN NEXT ELECTION

A registrant who registers to vote at least 29 days before the next election (and is otherwise a qualified elector in that jurisdiction) is entitled to vote at the next election. A.R.S. § 16-120(A); A.R.S. §16-134(C).

### A. Date of Receipt of Voter Registrations

For online EZ Voter registrations, a registration is timely received if the registrant completes the online registration by 11:59 p.m. on the last day to register to vote. The time of registration is the time identified on the registrant's EZ Voter confirmation receipt.

For paper registrations submitted at a County Recorder's office, the Secretary of State's Office, an AZMVD office or affiliate, a voter registration assistance agency, or an authorized voter registration volunteer's office, a registration is timely if the registrant completes or delivers the registration form before the office closes for business on the last day to register to vote.

For paper registration forms that are mailed to a County Recorder's office or the Secretary of State's Office, a registration is timely if:

- The registration form is postmarked on or before the voter registration deadline and received by the County Recorder by 7:00 p.m. on Election Day; or
- The registration form is dated on or before the voter registration deadline and received by the County Recorder within five calendar days after the voter registration deadline.

A.R.S. § 16-134(C).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

For UOCAVA registrants using an FPCA or FWAB, a registration form is timely if received by the County Recorder's or Secretary of State's Office via mail, email, or fax by 7:00 p.m. on Election Day. A.R.S. § 16-103(C).

### B. Voter Registration Form Received After Deadline

A registrant who registers to vote within 29 days of an election is eligible to vote at the election after the next election. A.R.S. § 16-120(A). For example, a person who registers 10 days before the primary election is not eligible to vote in the primary election but is eligible to vote in the general election.

If the County Recorder receives a new voter registration form less than 29 days before an election, and the registrant is not a military or overseas voter using the FPCA or FWAB registration form, the County Recorder may either:

- Enter the registrant's information in the voter registration database; or
- Refrain from entering the registrant's information in the voter registration database until after the next election.

If a County Recorder receives a voter registration form less than 29 days before an election from an existing registrant, the County Recorder may update the record prior to Election Day if the registrant will be a qualified elector in the precinct where the registrant resides.

### C. When Registration Deadline Falls on a Weekend or Holiday

If the 29-day registration deadline falls on a weekend or state holiday (regardless of whether a particular county office is open for business), the registration deadline is extended to the next business day for state government. For example, if the registration deadline falls on Columbus Day (a Monday), a registrant is qualified to vote in the next election if they register on the following Tuesday. A.R.S. § 16-120(B); see also A.R.S. § 1-301 (listing state holidays).

## IX.   VOTER REGISTRATION LIST MAINTENANCE

### A. Deceased, Felon, and Incapacitated Registrants

Though the Secretary of State does not directly cancel any registration records, the Secretary of State is responsible for importing certain information received from federal and state officials into the statewide voter registration database, pursuant to which the statewide voter registration system will automatically cancel "hard matches" on the following limited bases:

1. The registrant is deceased;

2. The registrant was convicted of a felony in court; or

3. The registrant was adjudicated mentally incapacitated by a court.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### 1. Deceased Registrants

The Arizona Department of Health Services (ADHS) provides the Secretary of State with a file each month (along with a combined file each year) that contains the name, DOB, SSN, date of death, father's name (if available), mother's maiden name, and last known address of deceased Arizona resident who passed away during the applicable period. A.R.S. § 16-165(E).  Upon receipt, the Secretary of State shall upload the deceased registrant file into the statewide voter registration system for comparison against voter records. The system then initiates a matching process against registrant records in the statewide voter registration database.

#### a.  *Hard Match Criteria for Deceased Registrant Verification*

For the purpose of verifying deceased resident records against the statewide voter registration database, a "hard match" occurs if the first three letters of the first and last name, DOB, and SSN4 match in both records. If the statewide voter registration system finds a "hard match," the registrant's record is automatically placed in "canceled" status with a reason code of "deceased-automatic resolution" (or functional equivalent). After canceling a registration, the County Recorder shall send a notice by forwardable mail informing the person that the person's registration has been canceled, the reason for cancellation, the qualifications of electors pursuant to A.R.S. § 16-101 and instructions to contact the County Recorder if the cancellation was in error. A.R.S. § 16-165(L).

#### b.  *Soft Match Criteria for Deceased Registrant Verification*

For the purpose of verifying deceased resident records against the statewide voter registration database, a "soft match" occurs if the first three letters of the first and last name and DOB match in both records or there is a "hard match" against more than one existing registrant record.

If the system finds a "soft match" between the deceased record and a registrant record, it will flag the records and notify the appropriate County Recorder of the need to review and compare the records. The County Recorder must conduct an individualized inquiry and determine whether a "true match" exists between the records.

If a County Recorder determines that a "true match" exists, the County Recorder must select "match" in the system. The registrant's record will be automatically updated to "canceled" status with a reason code of "deceased." The County Recorder shall send a letter confirming the cancellation to the registrant's mailing address on record, with instructions to contact the County Recorder if the cancellation was in error.

If the County Recorder determines that a "true match" does not exist, the County Recorder must select "no match" in the system. The registrant's record will remain in its existing status without being placed in "canceled" status in the statewide voter registration database.

A County Recorder should follow the same procedures if the county directly receives deceased registrant information directly from ADHS instead of the Secretary of State.

### c.   *Other Sources of Information on Deceased Registrants*

A County Recorder may also cancel a registrant's record if the County Recorder determines that the registrant is deceased based on other reliable sources, *see* A.R.S. § 16-165(A)(2), including, but not limited to, death notices received by the County Recorder's office and an affidavit of death from the registrant's next of kin. A County Recorder should match as much information as possible (including first name, last name, maiden name (if applicable), year of birth, place of birth, and city or town of residence) and be reasonably certain that a "true match" exists before canceling a registrant. For example, newspaper or online obituaries alone may not suffice to cancel a registrant record without additional research and confirmation. In cases where the County Recorder cannot confirm a "soft match," the County Recorder may send a letter to the registrant asking to confirm the information. Upon canceling a registrant based on other reliable sources of death, the County Recorder should send a letter, to the registrant's mailing address on record, confirming the cancellation and providing instructions for correcting an erroneous cancellation.

A registrant who passes away after casting a valid ballot is entitled to have their ballot tabulated and votes counted.

## 2.   Registrants Convicted of a Felony or Found Mentally Incapacitated

The Secretary of State is responsible for receiving felony conviction and mental incapacitation information from federal and state officials and processing the information through the statewide voter registration system.

### a.   *Sources of Felony Conviction and Incapacitation Information*

The Secretary of State electronically receives periodic files from Arizona superior courts, including the Maricopa County Superior Court, containing the name, DOB, and SSN4 of Arizona residents recently convicted of a felony or found mentally incapacitated in that jurisdiction. Upon receipt and confirmation of proper formatting, the Secretary of State imports the files into the statewide voter registration system.

The Secretary of State also receives in various non-electronic formats: (1) additional felony conviction information from Arizona superior courts and the U.S. Department of Justice; and (2) additional mental incapacitation information from Arizona superior courts. Upon receipt, the Secretary of State converts these records into the proper electronic format and imports these files into the statewide voter registration system.

### b.   *Processing Felony Conviction and Incapacitation Information*

The statewide voter registration system compares the felony and mental incapacitation records against the statewide voter registration database for potential matches.

A "hard match" occurs when the first three letters of the first and last name, DOB, and SSN4 match an existing registrant record. In this case, the registrant's record is automatically placed in

"canceled" status with the reason code of "felony–automatic resolution" or "declared incapacitated–automatic resolution" (or functional equivalent).

A "soft match" occurs when the first three letters of the first and last name and DOB match an existing registrant record (or there is a "hard match" against more than one existing record in the database). In this case, the system will flag the record for individual resolution by the applicable County Recorder. If the County Recorder finds a "true match," the record may be placed in "canceled" status with the reason code "felony" or "declared incapacitated" (or functional equivalent).

The County Recorder must send a letter to the registrant confirming any cancellation based on a felony conviction or finding of mental incapacitation, and such notice letters should inform the registrant of where to get additional information about rights restoration.

A County Recorder should follow the same procedures if the county directly receives felony conviction or mental incapacitation information from a court instead of the Secretary of State. A County Recorder may reinstate a registrant's record if the registrant was erroneously canceled based on mental incapacitation, but the registrant retained the right to vote by court order. If the registrant was canceled based on a felony conviction but later had their civil rights restored, the registrant must submit a new voter registration in order to be re-registered.

### B. Secretary of State Duties to Forward Registrant Information

The Secretary of State also periodically receives registrant information that must be processed and forwarded to County Recorders for final resolution as described below.

#### 1. Information Received from Out-of-State Jurisdictions

The Secretary of State occasionally receives correspondence from out-of-state jurisdictions providing information about Arizona registrants. The Secretary of State will promptly forward the correspondence to the applicable County Recorder(s) by email. The Secretary of State may not cancel any registration records or otherwise initiate any process through the statewide voter registration system based on the out-of-state correspondence. A County Recorder should treat the information as a "soft match" and conduct an individualized inquiry before canceling any registration record.

#### 2. Information Received Through Multi-State Compacts

Arizona is a member of the Electronic Registration Information Center (ERIC). The Secretary of State is responsible for acquiring, sorting, and distributing registrant information received from ERIC to the County Recorders and providing guidance on processing ERIC data.

#### 3. Juror Disclosure of Felony Conviction

When election officials receive court records or information regarding prospective jurors who self-report a felony conviction on a signed juror questionnaire that is completed pursuant to A.R.S. § 21-314, the County Recorder must cancel any registrant record that is a "true match" against the juror information, using the reason code "juror questionnaire - felony" (or functional equivalent). A.R.S. § 16-165(A)(4). The County Recorder must also send a letter informing the registrant of the cancellation and providing instructions on how to notify the County Recorder if the cancellation was in error.

A County Recorder must ensure that a registration is not canceled twice for the same felony conviction. For example, the statewide voter registration system might have automatically canceled the registration upon being notified of the felony conviction through court records pursuant to Chapter 1, Section IX(A)(2), and the registrant could have re-registered (following restoration of their civil rights) before the juror questionnaire information was provided to the County Recorder about the same felony conviction. Thus, before canceling a registration record based on a juror questionnaire, the County Recorder should confirm that the registrant did not have a prior registration record recently canceled on account of a felony conviction.

### 4. Department of Transportation List of Persons Issued Out-of-State Licenses[25]

Each month the Arizona Department of Transportation (ADOT) shall furnish to the Secretary of State a list of persons who the Department has been notified have been issued a driver's license or the equivalent of an Arizona nonoperating identification license in another state (an "out-of-state license"). Within ten days after receiving the list, the Secretary of State shall provide to the appropriate County Recorder a list of registered voters in that county who have been issued an out-of-state license. A.R.S. § 16-165(F). The list maintenance procedures for County Recorders to follow based on this out-of-state license information are explained below.

### 5. Department of Transportation Driver License Database Comparison[26]

Each month the Secretary of State shall compare the statewide voter registration database to the driver license database maintained by ADOT. The Secretary of State shall notify the appropriate County Recorder if a person who is registered to vote in that county has changed the person's residence address or is not a United States citizen according to the driver license database. A.R.S. § 16-165(G). The list maintenance procedures for County Recorders to follow based on this citizenship information are explained below.

---

[25] Litigation is pending on the statutory provision in this paragraph. *Mi Familia Vota, et al., v. Fontes, et al.*, CV-22-00509-PHX-SRB.

[26] Litigation is pending on the statutory provision in this paragraph. *Mi Familia Vota, et al., v. Fontes, et al.*, CV-22-00509-PHX-SRB.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## C. County Recorders' Duty to Cancel Registrant Information

The County Recorders periodically receive registrant information from governmental entities or official sources that must be processed and potentially lead to the cancellation of a person's voter registration as described below. This process is frequently referred to as "list maintenance." The County Recorder shall scan or retain any record which would commence the removal process and any written response from the voter, which will be included in the voter registration record, and shall update the voter registration address as needed.[27]

### 1. Summary report from the jury commissioner or jury manager of voters who are not residents of the county or state

The jury commissioner or jury manager shall use a questionnaire to determine whether a person is qualified to serve or has valid grounds to be excused or postponed from service. A.R.S. § 21-314(A). The juror questionnaire shall inform the person that disqualification from jury duty as a result of responding to the questionnaire that the person is not a resident of the county or is not a United States citizen will result in the person's voter registration being canceled. A.R.S. § 21-314(B).

The jury commissioner or jury manager shall forward to the Secretary of State and the County Recorder a summary report derived from juror questionnaire data that contains information that indicates that a person is not a United States citizen or does not reside in the county. The report shall only contain the information that is necessary for the County Recorder to accurately identify the person in the voter registration database. A.R.S. § 21-314(F).

When the County Recorder receives a summary report from the jury commissioner or jury manager indicating that the person has stated on the juror questionnaire that the person is not a resident of the county, the County Recorder shall verify that the person listed on the summary report is a true match to a person listed on the statewide voter registration database. A.R.S. § 16-165(A)(9)(b).

If there is a true match, the County Recorder shall send the person notice by forwardable mail and a postage prepaid, preaddressed return form requesting the person confirm by signing under penalty of perjury that the person is a resident of the county and is not knowingly registered to vote in another county or another state. The notice shall inform the person that failure to return the form within thirty-five days will result in the person's registration being put into inactive status and may ultimately lead to cancelation of their voter registration.

If the person is already in inactive status, a notice shall not be sent, and a new NVRA start time should not be initiated. 52 U. S. C. § 20507(a)(4)(B).

---

[27] Litigation is pending related to this Subsection C. *Mi Familia Vota, et al., v. Fontes, et al.*, CV-22-00509-PHX-SRB.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### a. County Recorder sends an initial notice allowing 35 days for voters to cure

The County Recorder shall send each registrant found to be a true match an initial notice giving the person 35 days to explain the information provided on the jury questionnaire. A.R.S. § 16-165(A)(9)(b). If the registrant responds in writing to the notice by confirming that the person is a resident of the county and is not knowingly registered to vote in another county or another state, the County Recorder shall maintain the person's voter registration in active status. A.R.S. § 16-165(A)(9)(b). If the registrant responds to the notice by stating that the registrant is not a resident of either the county or the state, the County Recorder shall change the voter's status to canceled. A.R.S. § 16-165(A)(8); 52 U.S.C. § 20507 (d)(1)(a).

### b. If the voter does not respond to the notice, the County Recorder shall contact the voter 35 days after the notice is sent

If the person fails to respond to the notice after thirty-five days, the voter's registration status will be changed to inactive. A.R.S. 16-166(A). The voter's record will enter the NVRA "inactive cycle period." If the registrant does not confirm their registration address or vote for two federal/statewide general election cycles after being placed in inactive status, the registrant's voter registration may be canceled. 52 U. S. C. § 20507(d)(1)(B)(i)-(ii).

### c. Post-cancellation notice

After canceling a registration, the County Recorder shall send a notice by forwardable mail informing the person that:

- The person's registration has been cancelled,
- The reason for the cancellation,
- The qualifications required for a person to register to vote, and
- Instructions on registering to vote if the person is qualified.

### 2.   Information that a person registered is not a United States Citizen.

When a County Recorder obtains information pursuant to A.R.S. § 16-165 and confirms that a registrant is not a U.S. citizen, the County Recorder must notify the registrant that registration will be canceled in 35 days unless the registrant provides documentary proof of citizenship ("DPOC"). If the registrant does not provide DPOC in 35 days, the County Recorder must cancel the registration, notify the registrant, and notify the County Attorney and Attorney General. *See* A.R.S. § 16-165(A)(10), (L).  These steps are described below.

### a.   Obtaining non-citizenship information

There are several ways in which a County Recorder may obtain information pursuant to A.R.S. § 16-165 that a registrant is not a U.S. citizen.  However, third-party allegations of non-citizenship are not enough to initiate this process.  For example:

1. The County Recorder may receive a summary report from a jury commissioner or jury manager indicating that the person has stated that the person is not a U.S. citizen.  *See* A.R.S. § 16-165(A)(10).

2. The County Recorder may receive notice from the Secretary of State, based on a review of the AZMVD database, that a registrant is not a citizen.  *See* A.R.S. § 16-165(G).

Although the statute lists other sources of information for County Recorders to check, the Secretary of State is not aware that County Recorders currently have access to those databases for citizenship review purposes.  This includes the Social Security Administration database, the USCIS SAVE program,[28] and the National Association for Public Health Statistics and Information Systems (NAPHSIS) electronic verification of vital events system.  *See* A.R.S. § 16-165(H), (I), (J).  Because the obligation to check these sources applies only to the extent practicable (or, in the case of NAPHSIS, only if accessible), County Recorders currently have no obligation to check these databases.

> ### b. Confirming non-citizenship

After obtaining non-citizenship information, the County Recorder must confirm non-citizenship before initiating the cancellation process under A.R.S. § 16-165(A)(10).

The County Recorder shall first verify that the person at issue is a true match to a person listed on the statewide voter registration database.

If there is a true match, the County Recorder shall determine whether the voter has previously provided DPOC. If the person has previously provided DPOC,[29] the County Recorder shall not cancel the registration.  The jury commissioner or jury manager may investigate the accuracy of the answers to the questionnaire and may call on law enforcement agencies and the county attorney for assistance in an investigation. A.R.S. § 21-314(E).

If a person has not previously provided DPOC, confirmation also includes reviewing relevant government databases to which the County Recorder has access, to the extent practicable, such as the AZMVD database that can be accessed using the statewide voter registration database.  *See* A.R.S. § 16-165(K).  In some situations, confirmation may require direct communication with the registrant.

---

[28] As explained earlier, County Recorders have access to SAVE pursuant to their own or the Secretary of State's Memorandum of Agreement with USCIS (the "USCIS MOA").  *See* Section II(A)(6) above.  However, under the terms of the current USCIS MOA, SAVE shall not be used for list maintenance purposes, i.e. to cancel an existing registration.  Thus, a comparison with SAVE for this purpose is not currently practicable.

[29] This generally includes persons already registered when the DPOC requirement became effective in 2004.  *See* A.R.S. § 16-166(G).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### c. Thirty-five-day notice that is required to be sent to the voter

If the County Recorder has confirmed non-citizenship as explained above, the County Recorder shall send the person notice by forwardable mail that the person's registration will be canceled in thirty-five days unless the person provides DPOC. The notice shall include a list of documents the person may provide as DPOC and a postage prepaid pre-addressed return envelope.

If the person (1) does not respond to the notice within 35 days, or (2) responds to the notice by stating that the person is not a United States citizen, the County Recorder shall cancel the person's voter registration. If the person responds providing DPOC, the County Recorder shall change the "Citizenship Verified" status to "yes," and maintain the voter registration in active status, and make the person a full-ballot voter if not already. In the voter registration database, the "Registrant Record Notes" should be updated with a description of the DPOC provided in response to the notice. Maricopa and Pima should do the same in a functional equivalent field of their respective systems.

If the person is in an inactive status, the County Recorder shall still send the required notice and follow the procedures outlined above. A.R.S. §16-165(A)(10).

### c. Post-cancellation notice

After canceling a registration, the County Recorder shall send a notice by forwardable mail informing the person that the person's registration has been canceled, the reason for the cancellation, the qualification of electors pursuant to A.R.S. § 16-101, and instructions on registering to vote if the person is qualified.

### 3. Voters issued a driver license or the equivalent of an Arizona nonoperating identification license in another State

As stated above, each month ADOT shall furnish to the Secretary of State a list of persons who have been issued an out-of-state license, and then the Secretary of State shall provide County Recorders a list of registered voters who have been issued an out-of-state license. A.R.S. § 16-165(F).

#### a. Processing the monthly list from ADOT

The Secretary of State shall process the monthly list from ADOT within 10 days of receipt by sending Pima and Maricopa Counties the data via the AVID interface. For Pima and Maricopa Counties, the interface will determine if there are any soft and hard matches for "Active" records. For the thirteen AVID counties, AVID will send the soft and hard matches to their respective AVID County dashboard queues to determine matches.

If there is a true match, the County Recorder shall send each person a notice by forwardable mail. The notice shall inform the person that failure to return the form within ninety (90) days will result in the person's registration being placed in inactive status. The notice shall include a postage

prepaid preaddressed return form requesting the person confirm by signing under penalty of perjury that the person is either:

- A resident of this state and is not knowingly registered to vote in another state; or
- Not a resident of this state.

If the person is currently inactive, a notice shall not be sent, and a new NVRA start time should not be initiated.

During the ninety-day period after the notice is sent, the County Recorder shall take one of the following actions:

- If the person returns the form within ninety days confirming that the person is a resident of Arizona and in the same county, the County Recorder shall maintain the registration in active status. The County Recorder shall scan the notice into the voter registration record and update the voter's address as needed.
- If the person returns the form within ninety days confirming that the person now resides in a different county or outside of Arizona, the County Recorder shall cancel the registration.
- If the person fails to return the notice, at the end of the 90-day period, the County Recorder shall change the person's registration status to inactive. If the person does not confirm their registration address or vote for two federal/statewide general election cycles after being placed in inactive status, the person's voter registration may be canceled. 52 U.S. C. § 20507(d)(1)(B)(i)-(ii).
- If USPS returns the notice, the county recorder shall retain or scan the returned notice (or barcode) and document that the notice was undeliverable. At the end of the 90-day period, the County Recorder shall change the registration status to inactive. If the registrant does not confirm their registration address or vote for two federal/statewide general election cycles after being placed in inactive status, the registrant's voter registration may be canceled. 52 U.S. C. § 20507(d)(1)(B)(i)-(ii).

### b. *Post-cancellation notice*

After canceling a registration, the County Recorder shall send a notice by forwardable mail informing the person that the person's registration has been cancelled, the reason for the cancellation, the qualification of electors pursuant to A.R.S. § 16-101, and instructions on registering to vote if the person is qualified.

### D. Cancellation through NVRA Process Due to Address Changes

One of the principal ways to ensure the accuracy of registration records is to update records based on a registrant's change of address. 52 U.S.C. § 20507(a)(4)(B). A County Recorder receives address change information in various ways: directly from the registrant, from the U.S. Postal Service's (USPS) National Change of Address (NCOA) service, through returned mail from USPS, and from ERIC reports. A County Recorder may update (and in some cases cancel) a registration record depending on the circumstances.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

One piece of returned official election mail alone is not sufficient to cancel a registrant's record. Rather, a County Recorder generally must send two official election mailings to the registrant (only one official election mailing is required if a registrant appears on a NCOA or ERIC report pursuant to A.R.S. § 16-166(E)), and only if a registrant does not respond to the mailing(s) or vote during a specified period after the mailings were sent, is the County Recorder permitted to cancel the record. The requirements below are outlined in the NVRA and the process is referred to here as the "NVRA process."

A County Recorder is permitted, but not required, to utilize USPS's NCOA service to preliminarily identify registrants who have moved to a different residence address. 52 U.S.C. § 20507(c)(1)(A); A.R.S. § 16-166(E). Because NCOA's data reflects actual change-of-address information that the registrant has provided to USPS, the NVRA authorizes a special process to be utilized for list maintenance purposes. The NCOA data serves the same function as a First Notice that is returned undeliverable. Thus, a County Recorder need only send one additional notice, which serves as the Final Notice, to invoke the NVRA process. This process should not be initiated when a registrant changes their mailing address but not their physical or residential address, if different.

### 1. Initiating the NVRA Process Based on Returned Election Mail

To invoke the NVRA process based on returned election mail, a County Recorder must complete the following steps:

1. Send an official election mailing by non-forwardable, first-class mail marked with a statement required by USPS to receive an address correction notification (the "First Notice"). Official election mail includes but is not limited to:

   • A voter registration card;

   • A 90-day notice to AEVL registrants issued pursuant to A.R.S. § 16-544(D);

   • A ballot-by-mail issued pursuant to A.R.S. § 16-542 or A.R.S. § 16-544;

   • Any other first-class, non-forwardable official election mail.

2. If the election mail is returned undeliverable, the County Recorder must send a follow-up notice to the registrant within 21 days after the mail is returned to the County Recorder (the "Final Notice"). If the returned mail contains a forwarding address for the registrant, the County Recorder must send the Final Notice to the new address. Otherwise, the County Recorder must send the Final Notice to the same address used for the initial mailing.

3. The Final Notice must contain a voter registration form or an appropriate internet address through which the registrant can update their address. The Final Notice also must warn that if the registrant does not submit a new voter registration form or update their address within 35 days, the registrant will be placed in "inactive" status.

4. If the registrant does not submit a new voter registration form or otherwise update their address by the 35-day deadline, the County Recorder must change the registrant's status to "inactive" with the reason code "NVRA inactive address" (or functional equivalent).

A.R.S. § 16-166(A), (C), (E); A.R.S. § 16-544(E); 52 U.S.C. § 20507(b)(2), (d)(1)(B), (d)(2).

The registration may be canceled through the NVRA process if the registrant:

- Does not timely respond to the Final Notice by submitting a new registration form or otherwise update their voter registration address with the County Recorder; and

- Fails to vote in any election in two federal/statewide general election cycles following the Final Notice.

A.R.S. § 16-165(A)(7); A.R.S. § 16-166(E); 52 U.S.C. § 20507(b)(2), (d)(1)(B), (d)(2).

If the preceding conditions have been met, under the NVRA, the registrant's record shall be canceled after four years from the date of the Final Notice or following the second general election after the Final Notice. A.R.S. § 16-166(C), (E); A.R.S. § 16-165(A)(7).

### 2. Special Procedures Applicable to NCOA Notices

A County Recorder is permitted, but not required, to utilize USPS's NCOA service to preliminarily identify registrants who have moved to a different residence address. 52 U.S.C. § 20507(c)(1)(A); A.R.S. § 16-166(E). Since NCOA data reflects actual change-of-address information the registrant has provided to USPS, the NVRA authorizes a special process to be utilized for list maintenance purposes. The NCOA data serves the same function as a First Notice that is returned undeliverable. Thus, a County Recorder need only send one additional notice, which serves as the Final Notice, to invoke the NVRA process.

If the County Recorder chooses to use NCOA data, any *initial* notice pursuant to this Section must be sent on or before May 1 of a general election year. The County Recorder may also send additional notices after May 1. 52 U.S.C. § 20507(c)(2)(A); A.R.S. § 16-166(E). Sending this notice by May 1 also allows a County Recorder to simultaneously send a 90-day notice to AEVL voters for the primary election in the same mailing. A.R.S. § 16-544(D).

#### a. *When NCOA Data Indicates Out-of-County Move*

If NCOA data indicates that the registrant moved outside the county, the County Recorder must send a notice to the new address by forwardable mail informing the registrant how to remain eligible to vote. The notice must:

- Enclose a postage paid and preaddressed return form or envelope by which the registrant may confirm the intent to cancel their registration;

- Notify the registrant to re-register if they moved to another county; and

- Notify the registrant to update the County Recorder within 35 days of the letter if the registrant's change-of-address was only temporary.

52 U.S.C. § 20507(c)(1)(B)(ii), (d)(2)(B); A.R.S. § 16-166(E). This letter serves as a Final Notice in the NVRA process.

### b.  *When NCOA Data Indicates In-County Move*

If the NCOA data indicates that the registrant moved within the county, the County Recorder must supplement the registrant's record with the new address obtained through NCOA. The County Recorder also must send a notice to the new address by forwardable mail to provide the registrant an opportunity to confirm or correct the address change. The notice must:

- Notify the registrant that the County Recorder updated the registrant's record with the new address;

- Enclose a postage prepaid and pre-addressed return form by which the registrant may confirm or correct the address change; and

- Notify the registrant that if they do not confirm the new address within 35 days, the registrant will be placed in "inactive" status.

A.R.S. § 16-166(E). This letter serves as a Final Notice in the NVRA process.

### 3.  NVRA Recordkeeping Responsibilities

A County Recorder must document all Final Notices sent to a registrant, along with any communication from the registrant received in response to a Final Notice, in the registrant's record in the voter registration database. 52 U.S.C. § 20507(i)(2).

### E.  Systematic Cancellations within 90 Days of Election Prohibited

A County Recorder must complete any program to systematically cancel registration records at least 90 days before a primary or general election. 52 U.S.C. § 20507(c)(2)(A). Systematic programs include the cancellation of records through the NVRA process described in Chapter 1, Section IX(D). Systematic programs also include potential cancellation of records based on periodic summary reports from jury commissioners or jury managers, as well as periodic notices from the Secretary of State based on a review of Arizona Department of Transportation data, as described in Section IX(C) above. However, the 90-day prohibition does not preclude cancellation of records based on:

- Automatic cancellations through the statewide voter registration system of hard matches based on death, felony conviction, or mental incapacitation;

- Merging/cancellation of duplicate records (whether manual or automatic) when processing new voter registration forms;

- Cancellation at the request of the registrant; and

- Cancellation of records added to the voter registration database in error.

52 U.S.C. § 20507(c)(2)(B).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## X. REPORTING VOTER REGISTRATION INFORMATION

### A. Voter Registration Statistics

Each County Recorder must report to the Secretary of State and the officer in charge of elections the number of active and inactive county registrants as of the following dates:

- **In even-numbered years:**
  - January 2;
  - The last day to register to vote for the March PPE;
  - April 1;
  - The last day to register to vote for the August primary election; and
  - The last day to register to vote for the November general election.
- **In odd-numbered years:**
  - January 2;
  - April 1;
  - July 1; and
  - October 1.

In addition, registration reports must be provided to the Secretary of State as of the registration deadline for any special election. A.R.S. § 16-168(G).

The reports must be broken down by political party and according to precinct, legislative district, and congressional district. For reporting purposes, political parties are limited to the Republican Party, Democratic Party, and any other statewide recognized political party that qualifies for representation on the ballot at the time of the report.[30] The "Other" total reported to the Secretary of State should include all registrants registered as "other," "independent," "party not designated," "PND", "no party" (or any substantially similar designation) or any non-recognized political party.

These totals should be reported to the Secretary of State as soon as practicable following the applicable cutoff dates. A.R.S. § 16-168(H). The totals must include only registrations as of the reporting cutoff periods.

For reports prepared as of a registration cutoff date, the County Recorder should ensure that the same active and inactive registration numbers reported to the Secretary of State match any registration statistics reported to the officer in charge of elections for purposes of determining voter turnout.

---

[30] A current list of statewide recognized political parties is available at the Secretary of State's website, https://azsos.gov/elections/information-about-recognized-political-parties.

As soon as practicable upon receipt of all 15 county reports, the Secretary of State must prepare, publish, and retain a statewide summary of the voter registration statistics. A.R.S. § 16-168(H).

## B. "Federal-Only" Registration and Ballot Report

The County Recorder or other officer in charge of elections must file a report with the Secretary of State, and post on the County Recorder's website, the number of people who are registered to vote using the state or federal form who have not provided documentary proof of citizenship. In even-numbered years, the report must be made on January 2, April 1, and the last day on which a person may register to be eligible to vote in the next presidential preference, primary, and general election. In odd numbered years, the report must be made on January 2, April 1, July 1, and October 1. Additionally, after each general election, the County Recorder must post on the County Recorder's website the number of ballots cast by those eligible to vote for federal offices only. A.R.S. § 16-161(B); A.R.S. § 16-168.

## XI.   PROVISION OF REGISTRATION DATA TO THIRD PARTIES

### A. Precinct Lists to Recognized Political Parties

Each County Recorder must provide, at no cost, a list of active and inactive registered voters to the State and County Chairpersons of the recognized political parties that are entitled to continued representation on the ballot pursuant to A.R.S. § 16-804. A.R.S. § 16-168(C)-(D).

#### 1.   Content of Political Party Precinct Lists

The precinct list must contain the following information about each registrant:

1. Registrant's full name, which includes first name, middle name, last name, and suffix in different columns;

2. Party preference;

3. Date of registration;

4. Residence address;

5. Mailing address (if different from residence address);

6. Zip code;

7. Telephone number (if available);

8. Birth year;

9. Occupation (if available);

10. Voting history for the past four years, including which party ballot was issued and method of voting (polling place, early, or provisional);

11. Whether the registrant is on the AEVL;

12. Voter ID number; and

13. Registrant's registration status and status reason, including "federal-only" designation if applicable.

A.R.S. § 16-168(C). Precinct lists should generally be provided in electronic format, and County Recorders are encouraged to make the lists available to the political parties through a secure website or Secure File Transfer Protocol (SFTP) portal. If the list is provided in printed format, the list must be created in alphabetical order (by registrant last name) and be organized by precinct, unless otherwise agreed upon by the County Recorder and the political party at issue. A.R.S. § 16-168(E).

## 2.  Timing of Political Party Precinct Lists

A County Recorder must provide precinct lists as of the following dates:

- **In even-numbered years:**
  - January 2;
  - The last day to register to vote for the March PPE;
  - April 1;
  - The last day to register to vote for the August primary election; and
  - The last day to register to vote for the November general election.
- **In odd-numbered years:**
  - January 2;
  - April 1;
  - July 1; and
  - October 1.

A.R.S. § 16-168(C)-(D), (G).

Precinct lists developed for the primary and general election must be provided within eight days after the close of registration. A.R.S. § 16-168(C). Otherwise, the remaining precinct lists must be provided within 10 business days after the applicable reporting dates. A.R.S. § 16-168(D).

## 3.  Requests for Political Party Precinct Lists

To receive precinct lists at no cost, a recognized political party must seek precinct lists from the applicable County Recorder within eight days after the close of registration for precinct lists developed for the primary and general election or within 10 business days after any other applicable reporting dates. A.R.S. § 16-168(C), (D), (L). Counties may establish a process for recognized political parties to opt to automatically receive precinct lists for each election.

A County Recorder need not provide this precinct list for the primary or general election to a recognized political party if that party will have less than four partisan candidates (other than presidential electors) on that county's ballot. A.R.S. § 16-168(C).

A recognized political party may seek precinct lists from the Secretary of State only if the applicable County Recorder fails or refuses to provide the list. In this case, the Secretary of State may charge the County Recorder a fee to produce the records as outlined in Chapter 1, Section XI(C) below. A.R.S. § 16-168(L).

### B. Use of County Registration Rolls by Political Subdivision

Any political subdivision of the state, including a city or town, may use the county registration rolls to conduct an election. At least 60 days before any such election, the governing body of the political subdivision shall negotiate a contract with the County Recorder to reimburse the County Recorder for the *actual* expenses in preparing the necessary lists for use in the election. The County Recorder shall not charge more than the actual additional costs that such preparation entails. A.R.S. § 16-172.

### C. Public Records Requests by Third Parties

Any person or organization may make a public records request for registrant information to a County Recorder or the Secretary of State. 52 U.S.C. § 20507(i); A.R.S. § 16-168(E), (K); A.R.S. § 39-121.01(D). A County Recorder or the Secretary of State may request a properly completed public records request form to be submitted before responding to the public records request. Registration records must be produced within 30 days of receipt of a proper request. A.R.S. § 16-168(E).

Copies of registrant records may be provided exclusively in electronic format, including via a password-protected Secure File Transfer Protocol (SFTP) site, Virtual Private Network (VPN), or other secure method of electronic transmission. In addition to the fees set forth in A.R.S. § 16-168(E), the County Recorder or the Secretary of State may charge for the cost of an electronic storage medium in which to deliver the records in a secure format.

If a person or organization requests to inspect registrant records in lieu of requesting copies, a County Recorder or the Secretary of State may establish how and under what conditions the records may be inspected. A.R.S. § 16-168(F).

### 1. Scope of Registrant Records Not Subject to Disclosure

The following components of a registrant's record are confidential and may not be viewed, accessed, reproduced, or disclosed to a member of the public:

1. Month and day of birth;

2. SSN (or any portion thereof);

3. AZDL/ID#;

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

4.  Indian census number;

5.  Father's name;

6.  Mother's maiden name;

7.  State or country of birth;

8.  Signature;

9.  Email address;

10. Any registration source code or other indication of location of registration;

11. Any documents submitted as proof of citizenship; or

12. Any secured record.

The information listed above may be viewed, accessed, or reproduced by the registrant (if the information pertains to the registrant's own record), an authorized government official in the scope of the official's duties, designated voter registration assistance agencies, for signature verification on petition and candidate filings, for election purposes and for news gathering purposes by a person engaged in newspaper, radio, television or reportorial work, or connected with or employed by a newspaper, radio or television station, or pursuant to a court order. If requested for news gathering purposes by a person engaged in newspaper, radio, television, or reportorial work, a County Recorder may condition release of such confidential information (other than secured, source code information, and DPOC records) upon execution of a non-disclosure agreement. A registrant's e-mail address may not be released for any purpose. A.R.S. § 16-168(F).

A registrant's signature may be viewed or accessed by a member of the public only for purposes of verifying signatures on a candidate, initiative, referendum, recall, new party, or other petition or for purposes of verifying candidate filings. A.R.S. § 16-168(F). A County Recorder may establish the conditions under which the signature may be viewed or accessed, including prohibition of photography.

## 2. Permissible Uses of Registrant Records

Registrant records may only be used for political or political party activity, a political campaign or election, nonpartisan voter registration or outreach, revising district boundaries, or any other purpose specifically authorized by law. A.R.S. § 16-168(E), (N).

A person or organization in possession of a precinct list or other registrant information may not allow the list or information to be used, sold, or otherwise transferred for any purpose except those authorized above, including posting to the internet. A.R.S. § 16-168(F). The County Recorder or Secretary of State shall deny a public records request intended for a commercial purpose. The sale of precinct lists or registrant records to a candidate or political committee for a political or campaign use does not constitute a prohibited commercial purpose. A.R.S. § 16-168(E).

## XII.    Minority Language Assistance

Jurisdictions covered under Section 203 of the Voting Rights Act are required to provide language assistance for covered languages, including assistance regarding voter registration, and are required to furnish oral instructions, assistance, or other information related to registration and voting for covered languages that are historically unwritten. 52 U.S.C. §10503(c). This applies to all stages of the electoral process including notifications, announcements, or other informational materials concerning the opportunity to register, and the deadline for voter registration, the time, places and subject matters of elections, and the absentee voting processes. 28 C.F.R. § 55.15.

Examples of measures that can be taken to comply for historically unwritten languages include having speakers of the minority language serve as registrars or deputy registrars and the use of decentralized places of registration, with minority language materials available at places where speakers of the minority language are likely to come register. 28 C.F.R. § 55.18(c). Jurisdictions must take appropriate steps to publicize the availability of materials and assistance in the minority language; some examples of means to publicize the availability of assistance include making announcements over minority language radio or television stations and direct contact with language minority group organizations. 28 C.F.R. § 55.18(e).

# CHAPTER 2:
# EARLY VOTING

Any election in Arizona, including special taxing district elections, must provide for early voting, which includes no-excuse ballot-by-mail[31] voting and in-person early voting. A.R.S. § 16-541. Voters who are blind or have a visual impairment shall be provided with an opportunity to vote early, including voting by the use of an accessible vote by United States mail option. A.R.S. § 16-541(A). An all ballot-by-mail election incorporates aspects of early voting but is subject to the specific requirements outlined in Chapter 3.

## I.   BALLOT-BY-MAIL

Without providing any reason or justification, a voter may request to be sent a ballot-by-mail on a one-time or permanent basis.

### A. One-Time Requests to Receive a Ballot-by-Mail

A voter may request a ballot-by-mail for a specific election, which may include a simultaneous request for a ballot-by-mail for both the primary and general election. A.R.S. § 16-542(A). A voter may make a ballot-by-mail request to the County Recorder or other county officer in charge of elections, who must document the voter's request in the voter's registration record.

Candidates, political committees, or other organizations are permitted to distribute ballot-by-mail request forms to voters. Such request forms shall be submitted to the County Recorder within six business days after receipt by a candidate, political committee, or other organization or 11 days before Election Day, whichever is earlier. A.R.S. § 16-542(K). The request forms must seek all the information required in Chapter 2, Section I(A)(4).

#### 1. Eligibility to Request a Ballot-by-Mail

Any qualified elector may request a ballot-by-mail containing the races for which they are eligible to vote. A.R.S. § 16-542. However, for an election that includes a federal office, first-time voters who registered to vote by mail and did not provide DPOC or other HAVA-compliant identification must prove identity before receiving a ballot-by-mail. 52 U.S.C. § 21083(b); *see* Chapter 1, Section IV(I) for more details on the HAVA identification requirements.

---

[31] This Manual uses the term "ballot-by-mail" to refer to: (1) early ballots mailed to voters based on a one-time request pursuant to A.R.S. § 16-542 or based on the voter's request to be on the Active Early Voting List (AEVL) pursuant to A.R.S. § 16-544; (2) ballots transmitted to UOCAVA voters; and (3) ballots automatically mailed to all eligible voters for an all ballot-by-mail election (see Chapter 3 for more information on ballot-by-mail elections).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### 2. Time Period to Request a Ballot-by-Mail

A voter may request a ballot-by-mail between 93 and 11 days before the election. A.R.S. § 16-542(A), (E). A voter may simultaneously request a ballot-by-mail for both a primary and general election as long as the request is made between 93 and 11 days before the *primary* election. However, UOCAVA voters and a voter whose information is protected pursuant to A.R.S. § 16-153 may make a request for a ballot-by-mail more than 93 days before an election. A.R.S. § 16-542(B).

### 3. Methods to Request a Ballot-by-Mail

A voter may request a ballot-by-mail orally or in writing, including in-person, online, or by telephone, email, fax, or mail. A voter may update their residence or mailing address in their voter registration record through a written (but not oral) ballot-by-mail request form. A.R.S. § 16-542(A), (F).

### 4. Ballot-by-Mail Request Form

For written or online requests, a ballot-by-mail request form created by County Recorders must contain the following:

1. The title "Ballot-by-Mail Request" or "Early Ballot Request;"

2. The county name;

3. Entry fields for:

   a. The voter's name;

   b. The voter's residential address or description of residence location;

   c. The voter's mailing address where the ballot-by-mail should be sent (if different from residential address);

   d. The voter's date of birth;

   e. The voter's state or country of birth or another piece of information that, if compared to the voter's record, would confirm the voter's identity (such as the AZDL/ID# or SSN4, father's name, or mother's maiden name);

   f. The voter's telephone number (paper forms only);

   g. The voter's signature (paper forms only);

   h. The voter's email address (optional);

   i. The election or election date(s) for which a ballot-by-mail is being requested;

4. If the voter is not registered with a recognized political party and is requesting a primary election ballot, an entry field for the registrant to specify the political party ballot being requested;

5. A method to indicate whether the voter would like to update their registration record with

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

the information provided in the ballot-by-mail request form; and

6. A notice that the completed ballot-by-mail request must be received by the County Recorder by 5:00 p.m. on the 11th day preceding the election.

In addition to the County Recorder's or Secretary of State's official paper or online ballot-by-mail request form, a voter may use any other substantially similar written document to make a one-time request to be sent a ballot-by-mail.

A.R.S. § 16-542(A), (E).

### 5. Minimum Requirements for Requesting a Ballot-by-Mail

In order for the County Recorder to process a ballot-by-mail request, the request must contain at least the following information:

1. The voter's name;

2. The voter's residential address or description of residence location;

3. The voter's date of birth;

4. At least one of the following:

   • The voter's state or country of birth; or

   • Another piece of information that, if compared to the voter's record, would confirm the voter's identity, such as the AZDL/ID# or SSN4, father's name, or mother's maiden name.

For partisan primary elections, a voter who is not registered with a recognized political party must indicate which political party ballot the voter wishes to receive. A.R.S. § 16-542(A), (E).

### 6. Requesting Political Party Ballot for a Primary Election

If a voter requests a one-time ballot-by-mail for a primary election, but the voter is not registered with a recognized political party, the voter must designate a recognized political party ballot in order to receive a ballot-by-mail for that primary election. A.R.S. § 16-542(A).

The voter may request only one political party ballot for each election. Requesting a political party ballot does not change the voter's political party preference in their registration record. In general, once a County Recorder mails the requested party ballot, a voter may not request or receive a different party ballot. If a voter re-registers to vote with a recognized political party between 45 and 29 days before the election, however, the voter must be sent a party ballot that corresponds to the new party. If the voter had requested a different party ballot prior to re-registering to vote, the prior ballot should not be mailed (or if already mailed, should be voided).

In lieu of requesting a party ballot for the partisan primary, a voter who is not registered with a recognized political party may request a non-partisan ballot if a non-partisan election is being

conducted at the same time as the partisan primary and if the voter is eligible to vote a non-partisan ballot.

### 7.   Incomplete Ballot-by-Mail Requests

If a ballot-by-mail request does not contain the voter's name, residential address or description of residence location, date of birth, party ballot designation (for voters not registered with a recognized political party who are requesting a ballot-by-mail for a partisan primary election), or other verifying information, the County Recorder must notify the voter (by mail, telephone, text, and/or email) within a reasonable period if the County Recorder has sufficient contact information to do so. If the ballot-by-mail request form does not contain contact information, the County Recorder must check the registrant's record for contact information. A.R.S. § 16-542(E).

If the voter provides the missing information by the 11th day before the election, the voter must be mailed a ballot-by-mail for that election.

### B. Requests to Be Placed on the Active Early Voting List

A voter may request to be placed on the Active Early Voter List (AEVL) and receive a ballot-by-mail for each election the voter is eligible for. A.R.S. § 16-544(A).

Unless an AEVL voter notifies the County Recorder at least 45 days before an election that the voter does *not* wish to receive a ballot-by-mail, the County Recorder will automatically schedule the mailing of a ballot-by-mail to the voter. A.R.S. § 16-544(F). However, for an open partisan primary election, the County Recorder will not mail a ballot to a voter who is not registered with a recognized political party unless the voter timely selects a political party ballot. A.R.S. § 16-544(G).

### 1.   AEVL Eligibility

Any qualified elector may request to be placed on the AEVL. A.R.S. § 16-544(A).

A first-time voter with "federal-only" designation who registered by mail (*i.e.*, has a "FED" designation) and requests to be placed on the AEVL must first prove their identity in compliance with HAVA prior to receiving a ballot-by-mail. 52 U.S.C. § 21083(b); *see Chapter 1, Section IV(I)* for more details on the HAVA identification requirements.

A UOCAVA voter also may request to be placed on the AEVL, however ballots are transmitted to these UOCAVA voters at least 45 days before the election. A.R.S. § 16-544(J). If an AEVL voter loses their UOCAVA status, the voter shall continue to receive a ballot-by-mail at their designated mailing address unless the address is outside of Arizona. If the mailing address is outside of Arizona, the voter shall be notified that they must update their mailing address to an address inside Arizona in order to remain on the AEVL. However, even if the voter's mailing address is in Arizona, the voter, upon losing UOCAVA status, may not receive or return a ballot by fax or other electronic means and the ballot will not be sent until 27 days (rather than 45 days) before the

election unless the voter submits a new FPCA form.

A voter enrolled in the AEVL may not request that ballots be automatically sent to an out-of-state address for each election unless the voter is also a UOCAVA voter. However, an AEVL voter may make one-time requests to have their ballot mailed to an address outside of Arizona for specific elections. A.R.S. § 16-544(B).

## 2. Time Period to Request Placement on the AEVL

A voter may request to be placed on the AEVL at any time. However, in order for a ballot to be mailed to the voter for a specific election, the AEVL request must be received no later than 5:00 p.m. on the 11th day before the election. A.R.S. § 16-542(A), (E), (F). If a voter requests to be placed on the AEVL less than 11 days before the election, no ballot will be mailed to the voter for that next election (unless the County Recorder has time to do so), but the voter's AEVL status will be activated for future elections.

## 3. Methods to Request Placement on the AEVL

A voter may request to be placed on the AEVL by:

- Selecting the AEVL request box on the State Form;[32]
- Selecting the AEVL request option on an online voter registration;
- Selecting the AEVL request option during an in-person or online MVD covered transaction;
- Submitting a hard copy or electronic AEVL request form issued by a County Recorder or the Secretary of State; or
- Making any other written request that contains the minimum required information for an AEVL request as specified in A.R.S. § 16-542(A).

If a registrant makes a request to be added to the AEVL other than through an initial voter registration, the County Recorder must compare the signature on the AEVL request form with the signature in the registrant's record to determine whether the same person signed both forms before adding the voter to the AEVL. A.R.S. § 16-544(C). After a valid request, a County Recorder must update the voter's registration record to reflect AEVL status. A.R.S. § 16-544(C).

## 4. AEVL Request Form

An AEVL request form created by County Recorders must contain substantially the following:

1. The title "Active Early Voter List Request";

---

[32] Voters, counties, and third-party organizations may use up existing printed stock of prior versions of the State Form and early ballot/early voting list request forms, including those that reference the "Permanent Early Voting List" (or "PEVL") instead of the AEVL. If using a form that references the PEVL, a voter's request to enroll in the PEVL shall constitute a request to enroll in the AEVL.

2. The county name;

3. Entry fields for:

   - The voter's name;

   - The voter's residential address or description of residence location;

   - The voter's mailing address in the state of Arizona;

   - The voter's date of birth; and

   - The voter's signature;

4. A method to indicate whether the voter would like to update their registration record with the information provided in the AEVL request form;

5. A statement that the voter is attesting that the voter is a registered voter who is eligible to vote in the county of residence; and

6. The statement "I authorize the County Recorder to add my name to the Active Early Voting List and by doing so the County Recorder will automatically mail a ballot-by-mail to me for each election for which I am eligible."

A County Recorder may add additional language to an AEVL request form.

In addition to the County Recorder's or Secretary of State's official AEVL request form, a voter may use any other substantially similar written document to request AEVL status.

### 5.   Minimum Requirements for Requesting Placement on the AEVL

A valid written AEVL request must contain, at minimum, the voter's:

- Name;

- Residence address or location within the county;

- Mailing address within the state (if different from residential address);

- Date of birth; and

- Signature.

The voter may not list an out-of-state mailing address unless the voter is a UOCAVA voter. A.R.S. § 16-544(B).

### 6.   Incomplete Requests for Placement on the AEVL

If the AEVL request does not contain the voter's name, residence address or residence location, mailing address in the state, date of birth, or signature, or contains a signature that does not match the signature in the registrant's record, the County Recorder must notify the voter (by mail, telephone, text, and/or email) within a reasonable period if the County Recorder has enough information to do so. If the AEVL request form does not contain contact information, the County

Recorder must check the registrant's record for contact information.

If the voter provides the missing information or confirms any mismatched signature by the 11th day before the election, the voter must be mailed a ballot-by-mail for that election and be added to the AEVL for future elections. If the voter provides the missing information after the 11th day before the election, the County Recorder must add the voter to the AEVL for future elections and may send the voter a ballot-by-mail for the current election if the County Recorder has sufficient time to do so.

### 7.   Removal from the AEVL

A voter may be removed from the AEVL under the following circumstances:

- The voter makes a written request to be removed from the AEVL, which includes the voter's name, residence address, date of birth, and signature;[33]

- The 90-day notice (discussed in Chapter 2, Section I(B)(9) below) is returned as undeliverable and the County Recorder is unable to contact the voter to confirm the voter's continued desire to remain on the AEVL;

- The voter's registration record is placed in an "inactive" or "canceled" status; or

- The voter did not vote by early ballot in any primary, general, or city/town election (*i.e.*, the voter voted by early ballot in <u>no</u> primary, general, or city/town election) in two consecutive election cycles (beginning after the 2022 election cycle) and failed to return a notice and confirm in writing the voter's desire to remain on the AEVL, within 90 days of receiving the notice.

On or before January 15 of each odd-numbered year, the County Recorder shall send a notice to each voter who is on the AEVL and who did not vote by early ballot in all elections for two consecutive election cycles (*i.e.*, the voter voted by early ballot in <u>no</u> primary, general, or city/town election for two consecutive election cycles, beginning after the 2022 election cycle).[34] The notice shall inform the voter that, to remain on the AEVL, the voter must:

- Confirm in writing the voter's desire to remain on the AEVL; and

---

[33] A written request to be removed from the AEVL may be submitted in-person, by mail, or by email and need not be on a specific form so long as it contains the voter's name, residence address, date of birth, and signature. Upon receipt of the voter's request to be removed from the AEVL, the County Recorder must remove the voter as soon as practicable.

[34] For purposes of this section, "election cycle" is defined as: (1) "the two-year period beginning on January 1 in the year after a statewide general election," or (2) "for cities and towns, the two year period beginning on the first day of the calendar quarter after the calendar quarter in which the city's or town's second, runoff or general election is scheduled and ending on the last day of the calendar quarter in which the city's or town's immediately following second, runoff or general election is scheduled, however that election is designated by the city or town." A.R.S. § 16-544(S). Because the 2022 election cycle began before S.B. 1485 (2022) took effect and S.B. 1485 does not apply retroactively, the first two full election cycles after S.B. 1485's effective date are the 2024 and 2026 election cycles. Therefore, the first AEVL removal notices must be sent out by January 15, 2027 to AEVL voters who vote by early ballot in zero eligible elections in the 2024 and 2026 election cycles.

- Return the completed and signed notice that contains the voter's address and date of birth to the County Recorder within 90 days of receipt of the notice.

If a voter receives a notice as described in A.R.S. § 16-544(L) and the voter does not respond to the notice within the 90-day time period, the County Recorder shall remove the voter from the AEVL. A.R.S. § 16-544(H)-(I), (K).

### 8. Third-Party Distribution/Receipt of AEVL Request Forms

As for one-time ballot-by-mail request forms, candidates, political committees, or other organizations are permitted to distribute AEVL request forms to voters. A.R.S. § 16-544(N). The request forms must seek all the information required under Chapter 2, Section I(B)(4).

If a candidate, political committee, or other organization receives a completed request form, the candidate, political committee, or other organization must return the request form to the applicable County Recorder within six business days of receipt or 11 days before Election Day, whichever is sooner. Failure to timely return completed request forms may result in a civil penalty of $25 per day for each form withheld. Any person who knowingly fails to return completed AEVL request forms by the submission deadline may be guilty of a class 6 felony. A.R.S. § 16-544(O).

If the request forms include a printed return address, the address must be the County Recorder's office in the political subdivision that will conduct the election. Failure to use the County Recorder's return address may result in a civil penalty up to three times the cost of the production and distribution of the AEVL request form. A.R.S. § 16-544(N).

### 9. Notice to AEVL Voters in Advance of the Election

A County Recorder must mail a notice to all eligible AEVL voters at least 90 days before any polling place election (*i.e.*, any election not conducted as a ballot-by-mail election, *see* Chapter 3) scheduled in March or August, including the PPE. A.R.S. § 16-544(D). A County Recorder may not issue a combined 90-day notice for the March and August elections but may issue a combined 90-day notice for a March/May election or an August/November election.

The notice must be sent by non-forwardable mail (with a request to receive an address correction notification) and include the following information:

1. A statement that the County Recorder's records indicate that the voter is on the AEVL;

2. The date(s) of the election(s) that are the subject of the notice;

3. The expected mailing date(s) of the voter's ballot;

4. The voter's mailing address, and an indication that it is the address where the ballot(s) will be mailed;

5. An indicator of the voter's party affiliation;

6. A checkbox to allow the voter to remove the voter's name from the AEVL; and

7.  A checkbox to request that the ballot-by-mail not be mailed for the elections listed on the notice.

The notice must include a postage-prepaid means for the voter to:

1.  Designate a political party ballot or request a non-partisan ballot, if applicable, (only if the upcoming election includes an open partisan primary and the voter is not registered with a recognized political party);

2.  Change the mailing address to another location within the state;

3.  Update the voter's residence address in the county of residence; and

4.  Request that the voter not be sent a ballot for the upcoming election or elections indicated in the notice.

If an election is not formally called before 180 days of the scheduled election, the County Recorder is not required to send a 90-day notice. A.R.S. § 16-544(D).

### a.  *90-Day Notice to AEVL Voters Not Affiliated with a Recognized Political Party*

If the upcoming election is an open partisan primary election and the AEVL voter is not registered with a recognized political party, the 90-day notice must include a means for the voter to designate a political party ballot. A.R.S. § 16-544(D). This notice shall explain that requesting a party ballot for the primary election does not change the voter's political party preference in their registration record.

If an AEVL voter does not designate a party ballot within 45 days of the election, the voter will not be automatically sent a ballot-by-mail for that primary election, but the voter's name will remain on the AEVL for future elections. To vote early by mail in that election, the voter must make a one-time ballot-by-mail request and designate a party ballot. A.R.S. § 16-542(A); A.R.S. § 16-544(G).

In general, once a County Recorder mails the requested party ballot, a voter may not request or receive a different party ballot. If a voter re-registers to vote with a recognized political party between 29 and 45 days before the election, however, the voter must be sent a party ballot that corresponds to the new party. If the voter had requested a different party ballot prior to re-registering to vote, the prior ballot should not be mailed (or if already mailed, should be voided).

In lieu of requesting a party ballot for the partisan primary, an eligible AEVL voter may request a non-partisan ballot if a non-partisan election is being conducted at the same time and the voter is eligible to vote a non-partisan ballot.

### b.  *90-Day Notice Returned Undeliverable*

If the 90-day notice is returned undeliverable to the County Recorder, the County Recorder must

notify the AEVL voter (if the County Recorder has contact information for the voter) to attempt to update the voter's address. Whenever feasible, the County Recorder should contact the voter by phone, email, and/or text if it has that contact information for the voter.

An undeliverable 90-day notice serves as a First Notice under the "NVRA process." *See* Chapter 1, Section IX(D). If the voter is moved to "inactive" status after failure to respond to a "Final Notice" pursuant to the "NVRA process," a ballot-by-mail shall not be automatically sent to the voter. A.R.S. § 16-544(E). The voter may regain active AEVL status upon updating the voter's address and submitting a new AEVL request.

## C. Creation and Preparation of Early Ballots

The County Board of Supervisors is responsible for preparing early ballots, including ballots-by-mail, to be used in federal, statewide, legislative, and countywide elections. A.R.S. § 16-405; A.R.S. § 16-503(A); A.R.S. § 16-545(B)(1). The Board of Supervisors may delegate this responsibility to the officer in charge of elections.

An early ballot must be identical to a polling place ballot in content and format, except an early ballot must have the word "early" printed or stamped on the ballot. A.R.S. § 16-545(A).

The exterior envelope in which a ballot-by-mail is sent to voters must include substantially the following statement: "If the addressee does not reside at this address, mark the unopened envelope "return to sender" and deposit it in the United States mail." A.R.S. § 16-547(C). However, printing a statement that includes the phrase "return to sender" on the exterior envelope will cause postal sorting machines to automatically return the ballot to the county. Therefore, the County Recorder or other officer in charge of elections shall utilize an alternate statement that omits the phrase "return to sender." The alternate statement shall be considered substantially similar to the language in the statute so long as the alternate statement: (1) clearly instructs and permits the recipient to indicate if the addressee does not reside at the address; and (2) allows the U.S. Postal Service to return appropriately marked envelopes to the county. For example, the following is an acceptable alternate statement:

   □ *If the addressee does not reside at this address, mark the box and return it to the U.S. Postal Service.*

### 1. Components of the Ballot-by-Mail Mailing

Only official election materials, as determined by the County Recorder, are permitted to be included in the ballot-by-mail mailing. Lists of official write-in candidates or withdrawn candidates may not be included in the mailing.

### 2. Required Return Envelope

The exterior of the postage prepaid return envelope must:

•   Contain the County Recorder's name, official title, and the post office address of the

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

County Recorder on the front side of the return envelope;

- Contain a statutorily prescribed voter affidavit on the back side of the return envelope (as explained below, a secrecy mailing envelope separate from the ballot affidavit may be used);

- Be tamper evident when properly sealed;

- Not reveal the voter's political party affiliation;

- Contain any required statement by the U.S. Post Office for election mail, including the election mail logo; and

- Be opaque so as not to reveal the voter's vote choices.

A.R.S. § 16-547(A); A.R.S. § 16-545(B)(2).


The voter affidavit must substantially contain at least the following language, followed by a place for the voter's signature:

> I declare the following under penalty of perjury: I am a registered voter in _____ county Arizona, I have not voted and will not vote in this election in any other county or state, I understand that knowingly voting more than once in any election is a class 5 felony and I voted the enclosed ballot and signed this affidavit personally unless noted below.

> If the voter was assisted by another person in marking the ballot, complete the following:

> I declare the following under penalty of perjury: At the registered voter's request I assisted the voter identified in this affidavit with marking the voter's ballot, I marked the ballot as directly instructed by the voter, I provided the assistance because the voter was physically unable to mark the ballot solely due to illness, injury, or physical limitation and I understand that there is no power of attorney for voting and that the voter must be able to make their selection even if they cannot physically mark the ballot.

> Name of voter assistant: _____

> Address of voter assistant: _____

A.R.S. § 16-547(A). The affidavit must also request an optional telephone number or email address to enable the County Recorder to contact the voter in case there is a deficiency with the early ballot.[35]

In lieu of printing the ballot affidavit on the exterior of the return envelope, a County Recorder

---

[35] The prescribed early ballot affidavit is deemed to substantially comply with FVAP-suggested designs for a UOCAVA return envelope affidavit. A.R.S. § 16-547(B); *see also* 52 U.S.C. § 20301(b)(4); https://www.fvap.gov/eo/overview/sending-ballots/creating-envelopes.

**CHAPTER 2:**
**Early Voting**
*Ballot-By-Mail*

may also include a postage prepaid secrecy mailing envelope. In this circumstance, the voter is directed to place their marked ballot in the standard return envelope that contains the early ballot affidavit; the voter must then place the standard return envelope inside the postage prepaid secrecy mailing envelope. This method ensures that the voter's signature (or other personally identifying information) will not be visible on the exterior envelope transmitted through the mail. The envelope that contains the early ballot affidavit must otherwise comply with A.R.S. § 16-547.

For counties that use the secrecy mailing envelope, a voted ballot shall be accepted for processing so long as the completed ballot affidavit is also returned with the voted ballot. For example, a voter may drop off their voted ballot in the signed affidavit envelope at the County Recorder's Office or ballot drop-box with no exterior secrecy envelope, or a voter may mail their voted ballot and signed affidavit in an envelope different from the postage pre-paid envelope provided by the County Recorder and such circumstances alone shall not invalidate the voter's ballot.

### 3. Required Instructions to Voters

A County Recorder must supply printed instructions that:

1. Direct voters to sign the voter affidavit, mark the ballot, and return the voted ballot in the enclosed return envelope;

2. Include a website address where the following information will be posted: (i) official locations where early ballots may be deposited; and (ii) official write-in candidates and withdrawn candidates for all jurisdictions on the ballot, A.R.S. § 16-343(G);

3. Inform voters that no votes will be counted for a particular office if they overvote (*i.e.*, mark the target area for more candidates or measures than permitted and do not otherwise make their choice clear);

4. Instruct the voter to contact the County Recorder to request a new ballot to ensure their vote is not processed as an overvote;

5. Recommend that voters mail a ballot-by-mail back to the County Recorder as soon as possible or at least seven[36] calendar days before the election to best ensure the ballot will be timely received by 7:00 p.m. on Election Day;

6. Provide information regarding ballot drop-box and other ballot drop-off locations available in the county (or a link to where that information can be found online) and recommend that voters utilize these drop-off options to ensure voted ballots are received by 7:00 p.m. on Election Day;

7. Informs voters regarding the appropriate marking devices to be used when marking the ballot; and

8. Include the following language:

---

[36] For counties that include tribal and rural communities, counties should inform voters through other available means that it is recommended that voters mail a ballot-by-mail at least ten calendar days before the election to best ensure the ballot will be timely received by 7:00 p.m. on Election Day.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- In order to be valid and counted, the ballot and affidavit must be delivered to the County Recorder or other officer in charge of elections or may be deposited at any polling place or ballot drop-off location in the county no later than 7:00 p.m. on Election Day. The ballot will not be counted without the voter's signature on the envelope.

    (WARNING - It is a felony to offer or receive any compensation for a ballot.)

- A person may only handle or return their own ballot or the ballot of family members, household members or persons for whom they are a caregiver. It is unlawful under section 16–1005 to handle or return the ballot of any other person.

A.R.S. § 16-547(D), (E). The County Recorder may substitute "vote center" for "polling place" if the county uses vote centers. If applicable, the County Recorder may add additional ballot drop-off locations to the statutorily prescribed language. All ballot drop-off locations and drop-boxes shall be approved by the Board of Supervisors (or designee).

A County Recorder in a covered jurisdiction, as designated by the Census Bureau in the current Federal Register publication, must provide these instructions in English and any additional written language(s) required under the federal Voting Rights Act. *See* Chapter 8, Section VI. For materials provided by mail, there should be appropriate publicity measures taken to advertise the instructions of returning ballots by mail in minority languages, including traditionally unwritten languages, covered by Section 203 of the Voting Rights Act. 28 C.F.R. § 55.18(a).

| **D. Mailing Ballots-by-Mail** |
| --- |

### 1. Methods of Transmitting Ballots-by-Mail

A ballot-by-mail must be mailed to voters by first-class, non-forwardable mail. The ballot-by-mail must be accompanied by an early ballot affidavit, instructions to voters, and a postage-prepaid return envelope. Ballots may be transmitted to UOCAVA voters by mail, fax, email, or other secure method of online transmittal, in accordance with the delivery method selected on the FPCA submitted by the voter. UOCAVA mailing requirements apply to all elections, not just federal elections. A.R.S. § 16-543(A). If no means of communication is designated, the ballot shall be transmitted through the Secretary of State's UOCAVA portal. A.R.S. § 16-543(A).

Except for an all ballot-by-mail election pursuant to A.R.S. § 16-409 or Chapter 4, Article 8.1 of Title 16, a County Recorder, city or town clerk, or other election officer shall not deliver or mail an early ballot to a voter unless the voter is on the AEVL or the voter made a one-time request for an early ballot for the election at issue pursuant to A.R.S. § 16-542(A). An election officer who knowingly violates this prohibition is guilty of a class 5 felony. A.R.S. § 16-542(L).

### 2. Time Period for Mailing Ballots-by-Mail

Voters who make a ballot-by-mail request at least 31 days before the election are entitled to be mailed a ballot-by-mail between 27 and 24 days before the election. A.R.S. § 16-542(C); A.R.S. § 16-545(B)(1); A.R.S. § 16-544(F).[37] Whenever practicable, the County Recorder should also mail an early ballot between 27 and 24 days before the election to voters who make a ballot-by-mail request at least 27 days before the election.

Voters who make a sufficiently complete and correct ballot-by-mail request between 27 and 11 days before the election are entitled to be sent a ballot-by-mail within two business days of the request. A.R.S. § 16-542(D)-(E).

Requests for a ballot-by-mail made 10 days or less before the election are untimely. A.R.S. § 16-542(E) (requiring requests be made by 5:00 p.m. on the 11th day before the election).

### 3. Special Time Period for Transmitting UOCAVA Ballots

If a UOCAVA voter registers to vote with an FPCA at least 48 days before an election, a County Recorder must transmit a ballot-by-mail to the voter at least 45 days before the election. A.R.S. § 16-543(A); 52 U.S.C. § 20302(a)(8).

A UOCAVA voter who registers to vote using an FWAB pursuant to A.R.S. § 16-543.02(D) must simultaneously write-in their vote choices for federal candidates. However, if a County Recorder receives an FWAB sufficiently in advance of the election, the County Recorder should transmit a ballot-by-mail to the registrant and, if the FWAB received is not the version revised in 2017 or later that contains all the same information as the FPCA, should include an FPCA. If the voter returns the voted ballot-by-mail (and includes a completed FPCA if necessary), the County Recorder should void the FWAB. FWABs from UOCAVA voters are held until 7:00 p.m. on Election Day if the voter was sent a ballot-by-mail and, if the ballot-by-mail was voted and returned, the FWAB is disqualified, and the voted ballot-by-mail is transmitted to the officer in charge of elections for tabulation.

If a UOCAVA voter registers less than 48 days before the election, a County Recorder must transmit the ballot-by-mail within one business day of receipt of the registration. A.R.S. § 16-543(A); A.R.S. § 16-542(D). Requests made within 48 hours of Election Day should be further expedited to the extent possible.

### a. *Effect of Incomplete FPCA Registration*

If a UOCAVA voter submits an incomplete FPCA (or attempts to register to vote using a registration form other than an FPCA or FWAB containing all the same information as an FPCA)

---

[37] A.R.S. § 16-542(C) allows early ballots to be mailed as late as 24 days before the election, but also requires ballots be mailed "within five days after receipt of the official early ballots from the officer charged by law with the duty of preparing ballots pursuant to section 16-545." In the event a County Recorder cannot mail early ballots within five days of receipt, a County Recorder remains in compliance with A.R.S. § 16-542(C) if early ballots are mailed no later than the 24th day before the election.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

within 48 days of the election, the County Recorder must transmit a blank FPCA along with a ballot-by-mail to the voter within one business day of receipt. A.R.S. § 16-543(A). If the voter does not return a new completed FPCA by 7:00 p.m. on Election Day, any voted ballot-by-mail from that voter will not count.

### b. *Waiver of UOCAVA 45-Day Transmittal Deadline*

In exceptional circumstances, the Secretary of State has authority to seek a waiver of the 45-day UOCAVA ballot transmission deadline from the U.S. Department of Defense as a result of undue hardship.[38] For example, an "undue hardship" may be found if:

- A county has suffered a delay in generating ballots due to a legal contest;
- Arizona's primary election date prohibits counties from meeting the 45-day mailing requirement; or
- The Arizona Constitution prohibits counties from complying with the 45-day mailing requirement.

52 U.S.C. § 20302(g)(2)(B). If a county experiences (or believes it will experience) an undue hardship, the County Recorder or other officer in charge of elections must contact the Secretary of State as soon as possible and provide sufficient information to enable the Secretary of State to make a timely waiver request.

The Secretary of State's waiver request must include:

- An explanation of the undue hardship;
- A recognition that the original purpose of the 45-day mailing requirement was to allow UOCAVA voters to have enough time to vote in a federal election;
- The number of days prior to the election that Arizona law requires ballots-by-mail to be transmitted to UOCAVA voters, A.R.S. § 16-543(A) (45 days);
- The State's plan to ensure that UOCAVA voters are able to receive and return their ballot-by-mail in time to be counted for the election. This includes the specific steps the county or counties will take, why the plan will give UOCAVA voters enough time to vote, and factual information explaining how the plan gives sufficient time for this to occur.[39]

The Secretary of State is generally required to submit a waiver request at least 90 days before the election, which the Department of Defense must act upon within 25 days. 52 U.S.C. §

---

[38] 52 U.S.C. § 20302(g); https://www.fvap.gov/eo/waivers. The Under Secretary of Defense for Personnel & Readiness is the Presidential designee charged with evaluating such requests. *See* Executive Order 12642, available at https://www.archives.gov/federal-register/codification/executive-order/12642.html; Department of Defense Instruction 1000.04, Federal Voting Assistance Program (FVAP), available at https://www.fvap.gov/uploads/FVAP/Policies/dodi1000.04.pdf.
[39] 52 U.S.C. § 20302(g)(1); *see also* https://www.fvap.gov/uploads/FVAP/EO/2012_waiver_guidance.pdf.

20302(g)(3)(A). If the undue hardship results from a legal contest, however, the Secretary of State must submit the waiver request as soon as practicable, which the Department of Defense must act upon within five business days. 52 U.S.C. § 20302(g)(3)(B).

### E. Issuing Replacement Ballots-by-Mail

A County Recorder may issue replacement ballots-by-mail to a voter upon request and may limit the total number of ballots-by-mail to three per voter per election. The voter's request must be received by the County Recorder or other officer in charge of elections no later than 5:00 p.m. on the eleventh day preceding the election. A.R.S. § 16-542(E). The County Recorder shall keep a record of each replacement ballot issued. The County Recorder must ensure that only one ballot for a particular voter is verified and transmitted to the officer in charge of elections for tabulation. Only the first ballot received and verified shall be counted.

### F. Emergency UOCAVA Early Balloting Procedures

In the event of a national or local emergency that makes substantial compliance with the UOCAVA statute impracticable, including occurrences of natural disasters, armed conflict, or mobilization of the National Guard or military reserve units of this State, the following procedures for the early balloting process shall apply for UOCAVA voters:

- The Secretary of State will issue a press statement for immediate release, posted on the Secretary of State's website and official social media accounts, and distributed as broadly and immediately as practicable to national and local wire services, to radio and television broadcast stations within the state, and to daily newspapers of general circulation in the state, outlining applicable measures that will be taken to continue or lengthen the early voting process for UOCAVA voters.

- The Secretary of State will prepare and distribute written public service announcements describing these early voting procedures for broadcast on radio and television networks, including but not limited to the U.S. Armed Forces Network and Federal Voting Assistance Program, and announcements describing these procedures on internet sites of interest to military and non-military U.S. citizens living abroad.

- The Secretary of State will direct the County Recorders and officers in charge of elections to make all reasonable efforts to locate each eligible UOCAVA voter in their jurisdiction and to notify such voter individually, by email, telephone, and/or fax, of the modified early voting process including the alternatives for issuing or returning early ballots faster than traditional mail service.

A.R.S. § 16-543(C).

### G. Reporting UOCAVA Transmission Statistics

Each County Recorder must timely confirm UOCAVA compliance to the Secretary of State, and must include information about:

- How many UOCAVA ballots were validly requested;

- How many UOCAVA ballots were transmitted in accordance with the 45-day deadline based on valid requests received before that date; and

- How many UOCAVA ballots were transmitted after the 45-day deadline based on valid requests received before that date.

UOCAVA reports must be emailed or electronically submitted to the Secretary of State within one business day of the UOCAVA ballot transmission deadline. The reports shall not include any protected information for voters who have their records sealed pursuant to A.R.S. § 16-153 or who are enrolled in the Address Confidentiality Program.

Following each primary and general election for federal office, the Secretary of State must consolidate the county reports and report Arizona's aggregated statistics to the U.S. Department of Justice, which is responsible for enforcing UOCAVA. *See* https://www.justice.gov/crt/statutes-enforced-voting-section#uocava.

### H. Deadline to Return Ballots-by-Mail

A ballot-by-mail (with completed affidavit) must be delivered to the County Recorder, the officer in charge of elections, an official ballot drop-off site, or any voting location in the county no later than 7:00 p.m. on Election Day. A.R.S. § 16-547(D); A.R.S. § 16-551(C).

The ballot-by-mail return deadline also applies to UOCAVA ballots, regardless of the method of transmission to the election official.

### I. Ballot Drop-Off Locations and Drop-Boxes

Counties or municipalities that establish one or more ballot drop-off locations, curbside ballot drop-off locations, or drop-boxes shall develop and implement procedures to ensure the security of the drop-off locations and/or drop-boxes and shall comply with the following requirements.

1. A ballot drop-off location or drop-box shall be located in a secure location, such as inside or in front of a federal, state, local, or tribal government building. All ballot drop-off locations and drop-boxes shall be approved by the Board of Supervisors (or designee).

   a. A drop-box established and staffed by election officials may be placed outdoors and shall be securely fastened in a manner to prevent moving or tampering (for example, securing the drop-box to concrete or an immovable object).

   b. A drop-box established and staffed by election officials that is placed inside a building shall be secured in a manner that will prevent unauthorized removal.

   c. While a drop-off location or drop-box established and staffed by election officials that is within the view and monitoring of an employee or designee of the County Recorder or officer in charge of elections need not be securely fastened or locked to a permanent fixture, it must be secured in a manner to prevent unauthorized

access and removal of ballots and monitored by a properly trained employee or designee of the County Recorder or officer in charge of elections at all times that the location or drop-box is accessible by the public.

   d. Counties may establish curbside or drive-through ballot drop-off options at any early, emergency, or Election Day voting location or as otherwise approved by the Board of Supervisors.

2. Election officials shall take all reasonable measures to ensure that ballot drop-boxes and ballot drop-off locations are accessible to voters with disabilities. To assist election officials in understanding the applicable standards in accordance with the Americans with Disabilities Act (ADA), the United States Department of Justice has published a guidance document concerning the physical accessibility standards that apply to ballot drop boxes, and to be used in conjunction with the ADA Checklist for Polling Places. This document is available at: https://archive.ada.gov/ada_voting/ballot_box_access.pdf.

3. The County Recorder or officer in charge of elections shall publicly post a listing of designated drop-off locations and drop-boxes on the website of the County Recorder or officer in charge of elections. Where practicable, the County Recorder or officer in charge of elections shall also post a listing of drop-off locations and drop-boxes anywhere that polling places and vote centers are posted.

4. All drop-boxes shall be clearly and visibly marked as an official ballot drop-box and secured by a lock and/or sealable with a tamper-evident seal. Only an election official or designated ballot retriever shall have access to the keys and/or combination of the lock to remove the deposited ballots.

5. The County Recorder or officer in charge of elections shall install and utilize a fire suppression device inside all ballot drop-boxes that are placed outdoors or not within the sight of election officials at all times the ballot drop-boxes are accessible to the public.

6. All drop-boxes shall have an opening slot that is not large enough to allow deposited ballots to be removed through the opening slot.

7. Ballot drop-off locations and drop-boxes shall be locked and covered or otherwise made unavailable to the public until the 27th day prior to an election to ensure that no ballots or any other materials may be deposited before the early voting period begins. Prior to use on the 27th day before the election, all drop-boxes shall be inspected for damage and to ensure they are empty.

8. All drop-boxes shall be locked and covered or otherwise made unavailable after the polls have closed on Election Day to ensure that no ballots may be dropped off after the close of the polls.

9. The County Recorder or officer in charge of elections shall develop and implement secure ballot retrieval and chain of custody procedures, which shall include the following:

   a. Voted ballots shall be retrieved from ballot drop-off locations and/or drop-boxes on a pre-established schedule, which may be withheld from the public disclosure to

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

ensure the safety of the election officials who will be retrieving the ballots. Ballot retrieval shall be more frequent as Election Day approaches.

b. For any election that includes a partisan race, at least two designated ballot retrievers of at least two differing party preferences shall be assigned to retrieve voted ballots from a ballot drop-off location or drop-box. For a nonpartisan election, at least two designated ballot retrievers shall be assigned to retrieve voted ballots from a ballot drop-off location or drop-box.

c. Each designated ballot retriever shall wear a badge or similar identification that readily identifies them as a designated ballot retriever and/or employee of the County Recorder or officer in charge of elections.

d. Upon arrival at a drop-off location or drop-box, the two designated ballot retrievers shall note, on a retrieval form prescribed by the County Recorder or officer in charge of elections, the location and/or unique identification number of the location or drop-box and the date and time of arrival.

e. The designated ballot retrievers shall retrieve the voted ballots by either placing the voted ballots in a secure ballot transfer container, retrieving the secure ballot container from inside the drop-box, or retrieving the staffed drop-box which also serves as a secure ballot container. If the drop-box includes a secure ballot container, the designated ballot retrievers shall place an empty secure ballot container inside the drop-box. The time of departure from the drop-off location or drop-box shall be noted on the retrieval form.

f. Upon arrival at the office of the County Recorder or officer in charge of elections, central counting place, or other receiving site, the designated ballot retrievers shall note the time of arrival on the retrieval form. The County Recorder or officer in charge of elections (or designee) shall inspect the secure ballot container for evidence of tampering and shall confirm receipt of the retrieved ballots by signing the retrieval form and indicating the date and time of receipt. If there is any evidence of tampering, that fact shall be noted on the retrieval form.

g. The completed retrieval form shall be attached to the outside of the secure ballot container or otherwise maintained in a matter prescribed by the County Recorder or officer in charge of elections that ensures the form is traceable to its respective secure ballot container.

h. When the secure ballot container is opened by the County Recorder or officer in charge of elections (or designee), the number of ballots inside the container shall be counted and noted on the retrieval form.

10. The County Recorder or officer in charge of elections may establish and implement additional local procedures for ballot drop-off locations to protect the security and efficient operation of the ballot drop-off location. For example, the County Recorder or officer in

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

charge of elections may restrict activities that interfere with the ability of voters and/or staff to access the ballot drop-off location free from obstruction or harassment.[40]

Ballots retrieved from a ballot drop-off location or drop-box shall be processed in the same manner as ballots-by-mail personally delivered to the County Recorder or officer in charge of elections, dropped off at a voting location, or received via the United States Postal Service or any other mail delivery service, *see* Chapter 2, Section VI.

### J. Reporting Ballot-by-Mail Requests and Returns

At the request of a state or county political party chairperson before an election, a County Recorder must provide the following information at no cost to the political party:

- A listing of registrants who have requested a ballot-by-mail. This information must be provided daily Monday through Friday, beginning 33 days before the election and through the Friday before the election; and

- A listing of registrants who have returned their ballot-by-mail, which must be provided daily in Maricopa and Pima Counties and weekly in all other counties.

  - Daily information in Maricopa and Pima Counties must be provided Monday through Friday, beginning the first Monday after early voting commences and ending the Monday before the election;

  - Weekly information in all other counties must be provided beginning on the Friday after early voting commences and ending on the Friday before the election.

A.R.S. § 16-168(D).

Ballot-by-mail request and return reports should conform to the format established for precinct lists as nearly as practicable (*see* Chapter 1, Section X(A)(1)) and should contain the following minimum information:

1. Registrant's name;

2. Voter registration/ID number;

3. Residential address or description of residence location;

4. Mailing address (if different from residential address);

---

[40] Some examples of actions that likely constitute voter intimidation or harassment are: (1) repeatedly entering or staying within 75 feet of a ballot drop box or the entrance to a building where a drop box is located for the purpose of watching or monitoring individuals who are delivering ballots; (2) intentionally following individuals delivering ballots to the drop box when such individuals are not within 75 feet of a drop box; (3) speaking to or yelling at an individual, without provocation, who that person knows is returning ballots to the drop box and who is within 75 feet of the drop box; (4) openly carrying firearms within 250 feet of a ballot drop box or visibly wearing body armor within 250 feet of a ballot drop box. See Temporary Restraining Order at 1–2, *Ariz. All. for Retired Ams., et al. v. Clean Elections USA, et al.*, 638 F. Supp. 3d 1033 (D. Ariz. 2022) (No. 2:22CV01823).

5.  Political party;

6.  Whether AEVL or one-time request (ballot-by-mail request reports only); and

7.  Date of request, for one-time requests (ballot-by-mail request reports only).

The first ballot-by-mail request report should contain all AEVL registrants and registrants who made a one-time ballot-by-mail request up to the time of the report. Subsequent ballot-by-mail request reports should include new one-time ballot-by-mail requests that have been made since the last report.

## II.   ON-SITE EARLY VOTING

A County Recorder shall establish in-person early voting locations throughout the county as practicable to ensure that all voters may reasonably access at least one early voting location. A.R.S. § 16-246(C); A.R.S. § 16-541(A); A.R.S. § 16-542(A).

A voter must cast a ballot issued at the on-site early voting location at that location and may not remove that ballot from the location. An early ballot must be issued even if the voter previously requested or received a ballot-by-mail, but only the first ballot received and verified by the County Recorder shall be counted.

An elector who appears at an on-site early voting location by 5:00 p.m. on the Friday preceding the election and presents valid identification must be given a ballot and permitted to vote at the on-site early voting location. A.R.S. § 16-542(E).

### A. Posting Notice of Write-In and Withdrawn Candidates

A County Recorder must post a Notice of Write-In and Withdrawn Candidates at each on-site early voting location. A.R.S. § 16-312(E); A.R.S. § 16-343(G). Information about write-in and withdrawn candidates also must be posted to the website of the County Recorder or officer in charge of elections. A.R.S. § 16-343(G).

### B. Applicability of Voter ID Requirements

Before receiving a ballot or being permitted to cast a vote on an accessible voting device at any on-site early voting location, a qualified elector must provide identification as prescribed by A.R.S. § 16-579 (*see* Chapter 9, Section IV for more details on the identification requirement; identification is also required to receive an early ballot at an emergency voting center or from a special election board, *see* Chapter 2, Section III(B) and IV(B)). If needed, a voter may update their voter registration record at the on-site early or emergency voting location prior to receiving a ballot by completing a new voter registration form. Such updates shall be deemed effective starting in that election. A.R.S. § 16-411(B)(5)(b); A.R.S. § 16-542(A), (H)-(I).

## C. Requirements and Security Procedures for Accessible Voting Devices

An on-site early voting location must have at least one certified accessible voting device available for voters with disabilities unless the election is for a city or town with a population under 20,000. A.R.S. § 16-442.01(A). All accessible voting devices used for early voting shall be physically secured at all times and if the media containing the election for the accessible voting device is removable, the media itself shall be physically secured at all times.

The chain of custody of the accessible voting device must be tracked and logged by a team of at least two board workers or staff of the County Recorder or other officer in charge of elections.

- The log shall include: (1) the seal numbers on the device; (2) for devices that mark and tabulate, the number of votes cast at the time the device was turned on and the number of votes cast at the time the device was turned off; and (3) a place for the two board workers or county staff to initial or sign verifying the information.

- For devices that mark and tabulate, at the close of the early voting location each day, the board workers or county staff shall log the number of votes cast on the device and then either turn the device off or otherwise secure the device. Each morning, when the device is turned on and/or retrieved from secured storage, the number of votes cast on the machine shall be compared to the log from the previous day. Any discrepancy shall be immediately reported to the officer in charge of elections.

- At 5:00 p.m. or as soon as practicable after the last voter has left the site on the last day of on-site early voting or emergency voting, the device shall be closed out according to procedures provided by the officer in charge of elections.

All other security procedures set forth in this Manual shall be followed for accessible voting devices used for early voting. *See* Chapter 4, Section II.

## D. Requirements for Ballot Security and Transport

The County Recorder and/or officer in charge of elections shall implement procedures to ensure that voted early ballots are properly secured and chain of custody documentation is maintained for the duration of the applicable retention period. Unless otherwise specified, the security and chain of custody requirements set forth in the Manual for Election Day ballots also apply to early ballots, and based on those requirements, the County Recorder or officer in charge of elections shall develop and implement these secure ballot retrieval and custody procedures.

## III.   EMERGENCY VOTING

## A. Establishing Emergency Voting Centers

Upon a specific resolution of the County Board of Supervisors before each election, the Board may authorize the County Recorder or other officer in charge of elections to establish and operate emergency voting centers. The Board shall specify in the resolution the location of the emergency voting centers and the hours of operation. A.R.S. § 16-411(B)(5).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

"Emergency" means any unforeseen circumstance that would prevent the voter from voting at the polls. Qualified electors who experience an emergency between 5:00 p.m. on the Friday preceding the election and 5:00 p.m. on the Monday preceding the election may request to vote at an emergency voting center in the manner prescribed by the Board of Supervisors of their respective county. A.R.S. § 16-542(H).

If an emergency voting center established pursuant to this section becomes unavailable and there is not sufficient time for the County Board of Supervisors to convene to approve an alternate location for that emergency voting center, the County Recorder or other officer in charge of elections may make changes to the approved emergency voting center location and shall notify the public and the Board of Supervisors regarding that change as soon as practicable. The alternate emergency voting center shall be as close in proximity to the approved emergency voting center location as possible. A.R.S. § 16-411(B)(5)(c).

## B. Identification and Signed Statement Requirements

Before receiving a ballot at an emergency voting center, a voter must provide identification as prescribed by A.R.S. § 16-579. If needed, a voter may update their voter registration record at an emergency voting center prior to receiving a ballot by completing a new voter registration form. Such updates shall be deemed effective starting in that election. A.R.S. § 16-411(B)(5); A.R.S. § 16-542(E), (H), (I).

The voter must also sign a statement under penalty of perjury containing substantially the following language: "I declare under penalty of perjury that I am experiencing or have experienced an emergency after 5:00 p.m. on the Friday immediately preceding the election and before 5:00 p.m. on the Monday immediately preceding the election that will prevent me from voting at a polling place on Election Day."

- Such signed statements are not subject to public inspection pursuant to Title 39, Chapter 1, Article 2. A.R.S. § 16-542(H); A.R.S. § 16-246(F)(2). Election workers should not ask for any additional information regarding the voter's specific emergency.

- The signed statement for emergency voting may be incorporated into the early ballot envelope and affidavit, with a line for the voter to initial or sign next to the statement or may be provided to the voter on a separate form to be signed by the voter.

## IV.    SPECIAL ELECTION BOARDS

A County Recorder or officer in charge of elections may appoint any number of special election boards to facilitate and enable voting by qualified electors who are ill or have a disability.

- For partisan elections, the board must be comprised of two members, one from each of the two political parties who cast the highest number of votes in the state in the last preceding general election. Under no circumstances shall both members of the board consist of voters who are registered with the same party affiliation. The county chairperson of each such

party shall furnish, within 60 days before Election Day, the County Recorder or other officer in charge of elections with a list of names of qualified electors within the chairperson's political party, and such additional lists as may be required, from which the County Recorder or other officer in charge of elections shall appoint members to such special election boards. The County Recorder or other officer in charge of elections may refuse for cause to appoint or may for cause remove a member of this board. A person who is a candidate for an office in that election (other than the office of precinct committeeman) is not eligible to serve on a special election board for that election.

- For nonpartisan elections, the board should consist of two members with different political affiliations. On request, a county may allow any bipartisan panel of certified election officials to act as a special election board. A person who is a candidate for an office in that election (other than the office of precinct committeeman) is not eligible to serve on a special election board for that election.

A.R.S. § 16-549(A); A.R.S. § 16-246(F).

### A. Time Periods for Requesting a Special Election Board

A qualified elector who is confined because of a continuing illness or disability may vote using a ballot-by-mail or by making a verbal or written request to have a special election board personally deliver a ballot to the elector's residence or other place of confinement. Such requests must be made by 5:00 p.m. on the second Friday before the election. A.R.S. § 16-549(C).

Qualified electors who become ill or disabled *after* the second Friday before the election may nonetheless request personal ballot delivery by a special election board up to, and including, the Monday before the election. The County Recorder or other officer in charge of elections shall honor these requests when possible. A.R.S. § 16-549(D).

Electors who are hospitalized after 5:00 p.m. on the second Friday before the election and before 5:00 p.m. on Election Day may request a special election board deliver their ballot to the hospital or other place of confinement. This ballot shall be processed as a provisional ballot in a manner to ensure the voter does not vote more than once. A.R.S. § 16-549(D).

### B. Identification and Signed Statement Requirements

Before receiving a ballot from a special election board, a voter who requests a special election board after the second Friday before the election must:

- Provide identification as prescribed by A.R.S. § 16-579.
- Sign a statement under penalty of perjury containing substantially the following language: "I declare under penalty of perjury that I am experiencing or have experienced an emergency after 5:00 p.m. on the second Friday preceding the election and before 5:00 p.m. on the Monday immediately preceding the election that will prevent me from voting at a polling place on Election Day."

- Such signed statements are not subject to public inspection pursuant to Title 39, Chapter 1, Article 2.

A.R.S. § 16-549(D).

| V. | CHALLENGES TO EARLY BALLOTS |
|----|------------------------------|

This Section governs all challenges to early ballots, including mail and in-person early ballots.

A political party representative appointed pursuant to A.R.S. § 16-552 is the only person who may make a written challenge to an early ballot, and such challenges must provide a brief statement of the grounds for the challenge. The county chairman of each political party represented on the ballot, by written appointment addressed to the early election board, may designate party representatives and alternates to act as early ballot challengers for the party. The number of representatives and alternates shall be limited to one for each political party unless all political parties mutually agree to a different number. No other individuals may challenge early ballots. A.R.S. § 16-552(C).

As discussed in further detail below, there are limited statutory grounds for challenging a voter, the standard of proof for challenging a voter is clear and convincing evidence, and voters are presumed to be properly registered.

## A. Time Periods for Early Ballot Challenges

Challenges to early ballots must be submitted in writing after an early ballot is returned to the County Recorder and prior to the opening of the early ballot affidavit envelope. Challenges received before the early ballot is returned or after the affidavit envelope containing the ballot has been opened must be summarily denied as untimely.

## B. Grounds for Challenging an Early Ballot

Statutorily-authorized grounds for challenging a returned early ballot include only the following:

1. The voter has voted before at that election;

2. The voter is not the person whose name appears on the register;

3. The voter has not resided in the State for 29 days preceding the election or other event for which the registrant's status as properly registered is in question;

4. The voter is not properly registered at an address permitted by A.R.S. § 16-121; or

5. The voter is not a qualified registrant under A.R.S. § 16-101, including:

   a. The voter is not a citizen of the United States;

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

   b.  The voter will not be at least 18 years old by the date of the next regular general election following registration;

   c.  The voter will not have been a resident of the State for 29 days preceding the election, except as provided in A.R.S. § 16-126;

   d.  The voter is unable to write their name or make their mark (unless prevented from doing so by physical disability);

   e.  The voter has been convicted of treason or a felony, unless restored to civil rights; or

   f.  The voter has been adjudicated an incapacitated person as defined in A.R.S. § 14-5101.

*See* A.R.S. § 16-552(D), A.R.S. § 16-591, A.R.S. § 16-121.01. An early ballot challenge that does not articulate a statutorily-authorized ground for the challenge shall be summarily dismissed.

For example, the following are invalid grounds for challenging an early ballot:

   1.  The voter's race, national origin, appearance, surname, language, or religion.

   2.  The voter registered to vote using a Federal or State Form and did not provide DPOC.

   3.  An alleged mismatch between the voter's signature on the early ballot affidavit and the signature(s) on file in the voter's registration record, where the County Recorder's signature verification determined that the signatures sufficiently match. *See* Minute Entry Order, *McEwen v. Sainz*, No. CV-22-163 (Ariz. Super. Ct. Aug. 1, 2022).

   4.  For reasons such as military service or college attendance, the voter is temporarily staying away from the residence at which they are registered to vote but has the intention of returning to that residence.

A.R.S. § 16-550, A.R.S. § 16-552, A.R.S. § 16-169, A.R.S. § 16-593, A.R.S. § 16-101.

### C.  Notice of an Early Ballot Challenge

If a written challenge is timely submitted by an appointed political party representative, it shall be given immediately to an early voting election board or other officer in charge of elections. If the written challenge contains at least one of the grounds authorized by A.R.S. § 16-591, the board or officer shall, within 24 hours, send the following by first class mail to the challenged voter:

   •  Notice of the challenge;

   •  A copy of the written challenge; and

   •  The time and place at which the voter may appear to defend the challenge.

The notice must be sent to the mailing address shown on the voter's request for the ballot-by-mail.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If no address is provided, the notice may be sent to the mailing address on the registration record. If there is a phone number or email address for the challenged voter in the voter registration record, the board or officer must also provide notice of the challenge by email and/or phone to ensure the voter has an opportunity to respond to the challenge. A.R.S. § 16-552.

Notice must also be sent to:

- The challenger at the address provided on the challenge; and

- The county chairperson of each political party represented on the ballot.

The early election board or other officer in charge of early ballot processing is not required to provide a notice if the written challenge is not submitted by an appointed political party representative, is untimely, or fails to set forth at least one of the grounds authorized by A.R.S. § 16-591 as a basis for the challenge.

A.R.S. § 16-552; A.R.S. § 16-594.

### D. Signature Verification of Challenged Early Ballots

To the extent practicable, challenged early ballots should be signature verified prior to transmission to the early election board for challenge processing to ensure that voters receive timely notice of and adequate opportunity to cure any signature issues.

- If the challenged early ballot is signature verified, the ballot should then be transmitted to the early election board for challenge processing.

- If the challenged early ballot is flagged as containing a mismatched signature, the challenge hearing should be scheduled as late as possible in the cure period to provide the voter time to cure the signature issue prior to the challenge hearing.

- If the challenged early ballot is flagged as missing a signature, the challenge hearing should be scheduled for after Election Day. If the voter does not cure the missing signature by 7:00 p.m. on Election Day, the ballot would be rejected for that reason and the challenge can be summarily dismissed as moot.

### E. Determination of Early Ballot Challenges

The County Recorder or other officer in charge of elections must establish or designate one or more early election boards to process early ballot challenges. The early election board shall meet to hear the challenge at the time specified, but:

- Not earlier than **96 hours** after the notice is mailed, or not earlier than **48 hours** after delivery if the notice is delivered by overnight or hand delivery; and

- Not later than 5:00 p.m. on the Monday following the election.

The early election board shall provide the voter with an informal opportunity to make, or to submit, brief statements regarding the challenge. However, a voter's decision not to attend or not to provide

a statement at or for the challenge hearing shall not be deemed to be an admission of the validity of the challenge. The board may decline to permit comments, either in person or in writing, from anyone other than the voter, the challenger, political party designees, and their lawful representatives.

The burden of proof is on the challenger to show by clear and convincing evidence why the voter's early ballot should not be counted. *See* A.R.S. § 16-121.01(A)-(B).[41] Clear and convincing evidence is a heightened standard of proof that requires more than the preponderance of the evidence standard used in civil proceedings. To meet this heightened standard, the challenger must prove sufficient, individualized facts to establish that a conclusion is highly probable or reasonably certain. *See Parker v. City of Tucson*, 233 Ariz. 422, 436 ¶ 39 (App. 2013) (defining "clear and convincing evidence"); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85 ¶ 25 (2005) (same).

If the challenge is rejected and the vote is allowed, the early election board shall open the envelope containing the ballot in such a manner that the affidavit thereon is not destroyed, take out the ballot without unfolding it or permitting it to be opened or examined, and show by the records of the election that the elector has voted.

If the challenge is accepted following an individualized challenge hearing and the vote is not allowed, the affidavit envelope containing the early ballot shall not be opened and the board must mark across the face of the early ballot envelope the grounds for rejection. The affidavit envelope and its contents shall be preserved with official returns.

If the voter did not attend the challenge hearing, the board shall send the voter a notice stating whether the early ballot was disallowed and, if disallowed, providing the grounds for the determination. The notice should be mailed by first class mail to the voter's mailing address as shown on the registration rolls within three days after the board's determination.

Except for election contests pursuant to A.R.S. § 16-672, the board's decision rejecting an early ballot challenge is final and may not be appealed.

A.R.S. § 16-552; A.R.S. § 16-594.

| **VI.** | **PROCESSING AND TABULATING EARLY BALLOTS** |
|---|---|

The following procedures for processing early ballots shall be followed.

| **A. County Recorder Responsibilities** |
|---|

> **1. Signature Verification**

---

[41] The challenge to the early ballot must rebut, with individualized evidence, the presumption under Arizona law that a vote and active voter registration is valid.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

Upon receipt of the return envelope with an early ballot and completed affidavit, a County Recorder or other officer in charge of elections shall compare the signature on the affidavit with the voter's signature in the voter's registration record. In addition to the voter registration form, the County Recorder should also consult additional known signatures from other official election documents in the voter's registration record, such as signature rosters, prior early ballot affidavits, and early ballot/AEVL request forms, in determining whether the signature on the early ballot affidavit was made by the same person who is registered to vote.[42] Other documents within the registration record that may be used for signature verification include, but are not limited to, documents that may be used to amend or update a registrant's voter registration information such as residence or mailing address. A.R.S. § 16-135(A), (E); A.R.S. § 16-544(D)(1), (2).

- If **satisfied** that the signatures were made by the same person, the County Recorder shall place a distinguishing mark on the unopened affidavit envelope to indicate that the signature is sufficient and safely keep the early ballot and affidavit (unopened in the return envelope) until they are transferred to the officer in charge of elections for further processing and tabulation.

- If **not satisfied** that the signatures were made by the same person the County Recorder shall make reasonable and meaningful attempts to: (1) contact the voter via mail, phone, text message, and/or email; (2) notify the voter of the inconsistent signature; and (3) allow the voter to correct or confirm the signature. The County Recorder shall attempt to contact the voter as soon as practicable using any contact information available in the voter's record and any other source reasonably available to the County Recorder.

Voters must be permitted to correct or confirm an inconsistent signature until 5:00 p.m. on the fifth business day after a primary, general, or special election that includes a federal office or the third business day after any other election. For the purposes of determining the applicable signature cure deadline: (i) the PPE is considered a federal election; and (ii) for counties that operate under a four-day workweek, only days on which the applicable county office is open for business are considered "business days."

If the early ballot affidavit is not signed, the County Recorder shall make reasonable and meaningful attempts to contact the voter via mail, phone, text message, and/or email, to notify the voter the affidavit was not signed and explain to the voter how they may cure the missing signature or cast a replacement ballot before 7:00 p.m. on Election Day. The County Recorder shall attempt to contact the voter as soon as practicable using any contact information available in the voter's record and any other source reasonably available to the County Recorder.

All early ballots, including ballots-by-mail and those cast in-person at an on-site early voting location, emergency voting center, or through a special election board must be signature-verified by the County Recorder or other officer in charge of elections. However, because voters who cast an early ballot in-person at an on-site early voting location, emergency voting center, or through a

---

[42] Litigation is pending on this issue: *Free Enterprise Club v. Fontes*, No. S-1300-CV-202300202, Ariz. Super. Ct., Yavapai County.

special election board must show identification prior to receiving a ballot, early ballots cast in-person should not be invalidated based solely on an allegedly inconsistent signature absent other evidence that the signatures were not made by the same person. After verifying an in-person early ballot, a County Recorder may update the signature in the voter's record by scanning the voter's affidavit signature and uploading the signature image to the voter's registration record. A.R.S. § 16-550(A); A.R.S. § 16-552(B).[43]

Starting January 1, 2024, the County Recorder or other officer in charge of elections shall provide an early ballot tracking system that indicates whether the voter's early ballot has been received and whether the early ballot has been verified and sent to be tabulated or rejected. The County Recorder or other officer in charge of elections shall provide voters with access to the early ballot tracking system on the County's website. This early ballot tracking requirement does not apply to (1) special taxing district elections (A.R.S. § 16-191) or (2) jurisdictional mail ballot elections (A.R.S. § 16-558 *et seq.*). A.R.S. § 16-550(D), (E).

## 2. Rejected Early Ballots

If the County Recorder or other officer in charge of elections determines the ballot should be rejected, they shall:

- Indicate for each ballot that the ballot has been rejected;
- Note on the early ballot report or audit report the voter's ID number (or other unique ID number) and the reason for rejection; and
- Set aside the unopened affidavit envelope in the designated stack.

## 3. Incorrect Ballots

If it is determined that the voter was sent an incorrect ballot and there is sufficient time to mail a new ballot and receive the correct voted ballot back from the voter, the County Recorder or other office in charge of elections shall make reasonable efforts to contact the voter and issue a correct ballot. A.R.S. § 16-452(A).

If it is too late to mail the correct ballot when the error is discovered but it is still possible to link the ballot to the specific voter, the incorrect ballot shall be sent to the Ballot Duplication Board, and any offices or issues the voter could have lawfully voted for shall be duplicated onto the correct ballot.

---

[43] The County Recorder need not retain or employ a handwriting expert to perform signature verification, but the County Recorder must ensure that staff performing signature verification are properly trained. Temporary employees may be trained by full time staff with at least two election cycles of signature verification experience. Counties should consult the Secretary of State's Signature Verification Guide, available at www.azsos.gov/elections.

## B. Early Ballot Board Responsibilities

The Board of Supervisors or officer in charge of elections shall appoint one or more early ballot boards consisting of an inspector and two judges (the two judges must be from different political party preferences). If the early ballot boards retire and reconvene, all materials shall be secured under the control of the Board of Supervisors or officer in charge of elections until the time for the boards to reconvene.

### 1. Early Ballot Report Log

The early ballot board shall maintain an early ballot report log that includes the following information for each batch of early ballots:

1. Date;
2. Batch ID;
3. Number of ballots to process/processed;
4. Number of ballots rejected and the reason(s) for the rejection (as applicable);
5. Number of ballots sent to duplication;
6. Number of ballots sent to tabulation;
7. Board members' initials; and
8. Board ID.

### 2. Affidavit Verification

Upon receipt of early ballots that have been batched and signature-verified by the County Recorder or other officer in charge of elections, the early ballot board shall:

- Verify that the affidavit envelope reflects the current election code; and
- Verify that the voter on the affidavit envelope appears on the batch report list received from the County Recorder.

The ballot shall be counted if the County Recorder determined that the affidavit is sufficient and the registrant is a qualified elector of the voting precinct. The vote shall not be counted if the County Recorder determined that the affidavit signature is missing or insufficient (and the applicable cure period has expired), or the registrant is not a qualified elector of the voting precinct.

### 3. Accepted Early Ballots

If the early ballot was accepted, the early ballot board shall:

1. Verify that all affidavit envelopes are of the batch being processed (and set aside any ballots from a different batch to be joined/processed with the proper batch);
2. Enter the total on the early ballot report;

3. Open each accepted affidavit envelope, being careful not to damage the ballot or the affidavit printed on the envelope;

4. Remove the ballot and check to ensure that the ballot is for the current election as shown on the affidavit envelope;

5. Place the voted ballot in the designated stack and count the number of ballots;

6. Place the empty affidavit envelope in the designated stack;

7. Repeat the process until all valid ballots are opened and placed in their appropriate stacks; and

8. Fill out the ballot transmittal slip and send ballots to tabulation.

### 4.  Damaged Early Ballots

If damaged ballots are found, they should be segregated from the batch and placed with any other ballots to be duplicated from the batch. The early ballot board must include each damaged ballot on a transmittal slip.

### 5.  Transmittal Slips for Tabulation or Duplication

Each batch of ballots sent to the central counting place and Ballot Duplication Boards shall be accompanied by a completed transmittal slip with the following information:

1. Date item is originally processed;

2. Where ballots are sent **To:** (central counting place, Ballot Duplication Board, etc.);

3. Where ballots are sent **From:** (early voting, Ballot Duplication Board, etc.);

4. Ballot color and party (if applicable);

5. Total number of ballots sent;

6. Board ID;

7. Initials of board members; and

8. Batch/sub-batch numbers.

If a ballot was transmitted by facsimile to a UOCAVA voter and the voted ballot was returned by facsimile, the ballot should be sent to the Ballot Duplication Board to be duplicated in the method prescribed under Ballot Duplication Board instructions. *See* Chapter 10, Section II(D).

### 6.  Close Out

The early ballot board will close out each batch as follows:

1. Calculate a cumulative total of the number of:

    a.  Affidavit envelopes received;

    b.   Ballots sent to the Ballot Duplication Boards;

    c.   Ballots rejected; and

    d.   Ballots sent to the central counting place;

2. Verify and audit these numbers against each applicable item (*i.e.*, the total number of affidavit envelopes collected should match the cumulative total on the early voting ballot report, etc.);

3. Place paperwork in the official envelope (official envelopes are marked to specify the items to be placed in each) or official envelope container (to accommodate large volumes);

4. Retain a duplicate copy of the early ballot report/log for office records; and

5. Seal the official envelope or official envelope container with a tamper-resistant or tamper-evident seal.

### 7. Ballot Transportation

After processing is complete, if ballots need to be transferred to another building for tabulation, ballots shall be transported in a secure manner by at least two election officials (not of the same political party preference) with the ballots inside of a ballot transfer container (sealed with a tamper-resistant or tamper-evident seal and accompanied by transfer and chain of custody documentation) to a receiving site or a central counting place that is inside a secured building. Badge control shall be handled in the same manner as the central counting place.

### C. Timing for Tabulation of Early Ballots and Reporting of Results

The officer in charge of elections may begin tabulating early ballots after confirmation from the Secretary of State that all equipment passes any required logic and accuracy test. A.R.S. § 16-552(A). Early ballots may be tabulated immediately after the envelope and completed affidavit are processed and delivered to the early board. A.R.S. § 16-550(B). Early ballot tabulation results may not be reported until Election Day, at the earlier of:

• The time when all ballots cast on Election Day at voting locations have been tabulated; or

• One hour after all polls under the jurisdiction of the officer in charge of elections have closed on Election Day.

Polls presumptively close at 7:00 p.m. on Election Day, except in the rare circumstance that hours are extended by court order.
A.R.S. § 16-551(C); A.R.S. § 16-552(A); A.R.S. § 16-565(A).

### VII. ELIGIBLE VOTERS IN JAILS OR DETENTION FACILITIES

Individuals held in pretrial detention or serving a sentence for a misdemeanor conviction remain eligible to register and vote (assuming no other deficiencies in eligibility).

# CHAPTER 3:
# BALLOT-BY-MAIL ELECTIONS

"Ballot-by-mail" elections are elections in which a ballot is automatically mailed to every qualified elector in a jurisdiction, regardless of whether the voter is on the AEVL. These elections also include establishment of ballot replacement sites, where voters may receive and cast a replacement ballot or vote on an accessible voting device. Ballot-by-mail elections must be conducted according to most of the same requirements applicable to early voting. A.R.S. § 16-191; A.R.S. § 16-409(A); A.R.S. § 16-558(B).

## I.    ELIGIBILITY TO HOLD A BALLOT-BY-MAIL ELECTION

Cities, towns, school districts, and special taxing districts are the only jurisdictions permitted to conduct ballot-by-mail elections. A.R.S. § 16-409(A); A.R.S. § 16-558(A). In addition, a County Recorder or other officer in charge of elections may send a Presidential Preference Election ballot to all qualified electors in precincts with fewer than 300 active registered voters (except where the precinct is located on tribal land). A.R.S. § 16-248(H) and (G).

## II.   APPROVAL TO HOLD A BALLOT-BY-MAIL ELECTION

A city, town, school district, or special taxing district may conduct its own ballot-by-mail election after obtaining approval of their governing board. A.R.S. § 16-409(A); A.R.S. § 16-558(A).

Special taxing districts must obtain approval of the applicable County Board of Supervisors, even if the special taxing district will conduct its own election. The special taxing district must obtain approval from the Board of Supervisors before it publishes a call of election. If a special taxing district comprises more than one county, the governing board of the special taxing district must seek approval of the County Board of Supervisors in the county that contains the greater number of registered voters in the district. A.R.S. § 16-558(A).

If a city, town, school district, or special taxing district requests a county conduct the election on the jurisdiction's behalf, the conduct of that election is generally subject to an agreement between the county and the jurisdiction. A.R.S. § 16-205. Among other things, the agreement may require that all local jurisdictions holding elections on a particular consolidated election date conduct a ballot-by-mail election in lieu of establishing voting locations on Election Day.

The governing body of a special taxing district must provide various public notifications before conducting any election that is not held concurrently with a general election, which includes ballot-by-mail elections. A.R.S. § 16-226(B); A.R.S. § 16-227(A). *See* Chapter 8, Section IV(C).

### III.   PREPARING AND MAILING BALLOTS

A County Recorder or other officer in charge of elections may use a unified ballot format that combines all candidates and issues on the same ballot in a ballot-by-mail election. A.R.S. § 16-204(G). Ballots utilized in a ballot-by-mail election must be prepared and transmitted in accordance with the requirements applicable to early ballots (*see* Chapter 2, Sections I(C) and I(D)), except:

- The County Recorder must mail ballots to all eligible voters not more than 27 and not fewer than 15 days before the election. A.R.S. § 16-558.01.

- Return envelopes in ballot-by-mail elections for Title 48 special district elections need not be postage pre-paid. The district governing board must determine whether the cost of return postage will be borne by the local jurisdiction or the voter. A.R.S. § 16-558.01.

If a jurisdiction conducts its own election without using the services of the County Recorder, the duties listed above for the County Recorder shall be performed by the officer in charge of elections for the jurisdiction.

### IV.   METHODS TO RETURN OR REPLACE BALLOTS

A completed ballot-by-mail must be delivered to the appropriate officer in charge of elections or an official ballot drop-off location no later than 7:00 p.m. on Election Day. A.R.S. § 16-411(D); 16-558(B); 16-551(C).

A city, town, school district, or special taxing district that conducts a ballot-by-mail election on its own behalf, and a county that conducts a ballot-by-mail election on behalf of a jurisdiction, may establish voting locations/ballot replacement sites on Election Day as well as ballot drop-off sites for voters to deposit voted ballots until 7:00 p.m. on Election Day. A.R.S. § 16-411(D); *see also* Chapter 8, Section I(B).

A County Recorder or other officer in charge of elections must establish at least one central location in each district to issue replacement ballots in cases where the voter's mailed ballot was lost, spoiled, destroyed, or not received. These ballot replacement sites shall be open until 7:00pm on Election Day. A.R.S. § 16-558.02(A). The County Recorder or other officer in charge of elections may establish as many additional ballot replacement sites as deemed necessary. If there is no appropriate location for a ballot replacement site in the district (for example, if the district contains only residential buildings), the County Recorder or officer in charge of elections should establish a ballot replacement site as close as practicable to a central location in the district. A.R.S. § 16-558.02(A).

For the replacement ballot to be counted, the voter must sign a sworn statement that the original ballot was lost, spoiled, destroyed, or not received. A.R.S. § 16-409(A); A.R.S. § 16-558.02(A). This language may be incorporated into the early ballot affidavit prescribed by A.R.S. § 16-547(A). *See* Chapter 2, Section I(C)(2). The County Recorder or other officer in charge of elections

shall keep a record of each replacement ballot provided [A.R.S. § 16-558.02(B)] to ensure that only one early ballot for a particular voter is verified and transmitted to the officer in charge of elections for tabulation. *See* Chapter 2, Section VI(A).

## V.   PROCESSING VOTED BALLOTS IN A BALLOT-BY-MAIL ELECTION

Voted ballots returned to the County Recorder or other officer in charge of elections must be processed and tabulated in a manner similar to early ballots. A.R.S. § 16-409(B); A.R.S. § 16-558(B); A.R.S. § 16-552; *see* Chapter 2, Section VI. For all ballot-by-mail elections, a jurisdiction may post election results after all ballot replacement locations have reported or one hour after all ballot replacement locations have closed on Election Day, whichever occurs first.

Even if a city, town, school district, or special taxing district conducts its own election, the jurisdiction must usually enter into an agreement with the applicable county (or counties) in order to conduct signature verification. *See* A.R.S. § 16-205(C). Absent an agreement with the County Recorder, a local jurisdiction could conduct its own signature verification at a public terminal provided by the County Recorder during normal business hours.

If a special taxing district crosses county lines, the district must enter into an agreement with both counties in order to conduct signature verification. For example, the county with the larger number of registered voters may conduct the election on the special taxing district's behalf and seek voter registration records from the smaller county in order to conduct signature verification for all voters in the special taxing district.

## VI.   POST-ELECTION REPORTING REQUIREMENTS

A city, town, or school district that conducts a ballot-by-mail election must report the following information to the Senate President and Speaker of the House of Representatives by January 1 of the year immediately following any ballot-by-mail election:

1. Changes in voter turnout from the previous election (regardless of whether the previous election was a ballot-by-mail or traditional election);

2. The cost of the ballot-by-mail election compared to traditional elections;

3. Suggestions for improvements to the ballot-by-mail election system;

4. The frequency and severity of irregularities in the ballot-by-mail process, if any;

5. Voter satisfaction with the ballot-by-mail election process; and

6. The number of non-deliverable ballots in the ballot-by-mail election.

A.R.S. § 16-409(B).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

# CHAPTER 4:
## VOTING EQUIPMENT

### I.     LOGIC AND ACCURACY (L&A) TESTING

A logic and accuracy (L&A) test is intended to confirm that votes are attributed to the correct candidates and ballot measures in the election management system (EMS) and that each candidate and ballot measure receives the accurate number of votes.

The Board of Supervisors or officer in charge of elections is responsible for performing an L&A test on all voting equipment prior to each election. The conduct of the test must be overseen by at least two elections staff or inspectors (of different political parties) and shall be open to observation by representatives of the political parties, candidates, the press, and the public.

For any election that includes a federal, statewide, or legislative office, the Secretary of State is responsible for conducting an L&A test on selected voting equipment. A.R.S. § 16-449.[44]

### A. Timeframe to Conduct L&A Testing

#### 1.   Accessible Voting Equipment L&A Test

In-person voting, both during the early voting period and on Election Day, requires the deployment of accessible voting equipment for voters with disabilities and/or those needing assistance in a minority language required by federal or state law. Further, some counties use accessible voting equipment for ballot marking by all voters at the voting location.

The officer in charge of elections must test all accessible voting equipment prior to an election.

- For an all ballot-by-mail election, equipment must be tested at least 15 days before the election.

- For a city, town, school district, or special taxing district election that is not an all ballot-by-mail election, and for a county election, equipment must be tested at least 27 days before the election (prior to the commencement of early voting).

- For a federal, statewide, or legislative election, equipment must be tested prior to the Secretary of State's L&A test, where practicable, or promptly thereafter.

- For jurisdictions covered under Section 203 of the Voting Rights Act, the equipment's language accessibility functionality must also be tested.

---

[44] Though not required, counties may, in their discretion, conduct additional pre-election L&A tests prior to the Secretary of State's pre-election L&A test and/or additional post-election L&A tests after the county's post-election L&A test, including with participation from representatives of the recognized political parties.

In the case of federal, statewide, or legislative elections, the Secretary of State tests selected accessible voting equipment within seven days before the start of early voting (*i.e.*, between 34 and 27 days before the election). A.R.S. § 16-449(B).

L&A tests for accessible voting equipment are a prerequisite for the County Recorder to open on-site early voting locations.

## 2. Optical and Digital Equipment L&A Test

The officer in charge of elections must test precinct/vote center voting equipment and central count equipment within 30 days of an election. In the case of federal, statewide, or legislative elections, the Secretary of State must also test selected equipment within 17 days before the election. A.R.S. § 16-449(A).

However, if a county's accessible voting equipment does not independently tabulate votes (*i.e.*, the equipment marks and/or produces a paper ballot that will be tabulated using different voting equipment), the officer in charge of elections and Secretary of State may test all voting equipment (including precinct voting equipment and central count equipment) during the time period applicable to accessible device testing. A.R.S. § 16-449(C). If the officer in charge of elections wishes to have all voting equipment testing completed together, the officer in charge of elections must make that request to the Secretary of State at least 90 days prior to the election. In order to prepare for this consolidated testing, the officer in charge of elections must provide to the Secretary of State all testing materials as referenced in Chapter 4, Section I(D)(2) below, including printed ballots, at least three weeks before the start of early voting. The Secretary of State has discretion to grant or deny a request for consolidated testing based on the circumstances. For example, if test ballots are not timely received, the tests will need to be conducted separately and the officer in charge of elections will be notified of the determination.

## 3. Rescheduling L&A Tests

The Secretary of State's Office must conduct its L&A tests after the officer in charge of elections has conducted county-level tests whenever practicable. In the event the officer in charge of elections has not successfully conducted an L&A test prior to the Secretary of State's scheduled test, the officer in charge of elections should contact the Secretary of State to consider whether to postpone the Secretary's L&A test pending further local testing.

If the electronic voting system has not successfully passed the Secretary of State's L&A test, the Secretary of State must schedule a re-test for a later time or date. Re-testing may continue during the early voting period and through the day prior to the election. However, the officer in charge of elections may not deploy any electronic voting equipment in a federal, statewide, or legislative election that has not successfully passed the Secretary of State's L&A test.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### B. Public Notice of L&A Test

The Board of Supervisors or other officer in charge of elections must publish notice of the time and place of each L&A test as soon as practicable after the test is scheduled and, in any case, at least 48 hours in advance of the test. *See* A.R.S. § 16-449(A). The notice must be published at least once in a daily or weekly newspaper circulated in the county. If no newspaper is published in the jurisdiction, notice must be published in any newspaper of general circulation. A.R.S. § 16-449(A). The notice should also be posted on the county's website and distributed through any other public communication or social media channels regularly used by the county.

If the Secretary of State must reschedule an L&A test or schedule a re-test, and the Board of Supervisors or other officer in charge of elections cannot reasonably comply with the 48-hour public notice requirement, the Board of Supervisors or other officer in charge of elections must:

- Publish notice of the rescheduled L&A test in a daily or weekly newspaper within the county as soon as possible if the notice is capable of being published before the test date;

- Post the notice on the county's website and distribute the notice through any other public communication or social media channel(s) regularly utilized by the county; and

- Provide notice of the place and time of the rescheduled L&A test or re-test by phone or email to all L&A test observers from the immediately preceding L&A test.

### C. Observers for L&A Test

An L&A test must be observed by the officer in charge of elections or designee. An L&A test must also be open to:

- Designated political party representatives;

- Candidates or candidate representatives;

- Government officials; and

- Members of the public and the media.

A.R.S. § 16-449(A). To ensure security, comply with applicable public health guidelines, and/or prevent disruption of election operations, the officer in charge of elections may place reasonable restrictions on observers, including specifying a designated area where observers are permitted to view the L&A test. If possible, the live video feed of the tabulation room should be turned on for L&A tests.

### D. Process for Conducting L&A Tests by the Secretary of State

The Secretary of State must conduct an L&A test on accessible voting equipment and optical/digital scan equipment before each federal, statewide, and legislative election.

#### 1. Acquisition of Precinct Information and Voting Equipment

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

At least eight weeks before a primary election or PPE, the officer in charge of elections must provide the Secretary of State a complete list of precincts and legislative and congressional districts and ensure the Secretary of State possesses the necessary precinct voting equipment to preliminarily verify the county's pre-determined L&A test results at the Secretary of State's Office. To determine each county's pre-determined L&A test results, the Secretary of State may acquire the necessary voting equipment from the county or directly from equipment vendors, if practicable. If multiple counties use the same type of voting equipment, the Secretary of State may preliminarily test multiple counties' ballots on the same piece of voting equipment without acquiring voting equipment from each county.

In order to prepare the county's testing requirements, the officer in charge of elections must provide the Secretary of State the following information as soon as possible:

- The type of voting locations that will be utilized (*i.e.*, precinct-based polling places, vote centers, or hybrid);

- The manufacturer and type of equipment that will be used (*e.g.*, precinct-based tabulators, central count tabulators, etc.);

- Whether the county programs its own election, or utilizes a vendor to program its election;

- The e-pollbooks, barcode scanners/printers, and ballot-on-demand printers that will be used, including manufacturer and how many e-pollbooks will be used;

- Polling locations; and

- Daytime and emergency contact information for the County Recorder and officer in charge of elections and L&A testing staff.

### 2. Selection of Precincts and Test Ballots

The Secretary of State must randomly select precincts that will be included in each type of L&A test conducted by the Secretary of State.

Based on the population of a County, the Secretary of State generally selects 5 to 10 precincts for a small or medium-sized county and 10 to 20 precincts for a large county. In doing so, the Secretary of State must ensure:

- At least one precinct is selected in each congressional and legislative district; and

- Each federal, statewide, and legislative candidate and each ballot question will receive at least one test vote in the selected precincts.

The Secretary of State must also acquire test ballots from each county. If a county will use preprinted ballots, ballots printed from a .pdf, or ballots through a ballot-on-demand printer, the officer in charge of elections must provide ballots generated though both printing methods.

For a primary election or PPE, the officer in charge of elections must provide the Secretary of State the following test ballots from each pre-determined test precinct:

- 50 ballots from each of the two largest political parties entitled to continued representation on the ballot;

- 25 ballots from every other recognized or new political party; and

- 5 "federal-only" ballots.

The Secretary of State may request additional test ballots if necessary. The Secretary of State also may account for new political parties or the possibility that not all recognized political parties will participate in a PPE.

For a general election, the officer in charge of elections must provide the Secretary of State the following test ballots from each pre-determined test precinct:

- 50 ballots; and

- 10 "federal-only" ballots.

If a precinct contains a precinct split, the officer in charge of elections should ensure the above-referenced test ballots are distributed among each precinct split. In addition, if minority-language ballots are required in the county, the officer in charge of elections must also include minority-language ballots among the requested quantities of test ballots.

The Secretary of State may vary the number of test ballots if necessary. To accommodate ballot printing and shipping timelines, counties that utilize a vendor to program the election may be notified of the selected precincts for the Secretary of State's L&A test prior to the completion of programming provided that the information on selected precincts shall be maintained as confidential, shall not be disclosed to the vendor that is programming the election, and shall be utilized only to ensure timely shipment of test ballots to the Secretary of State.

### 3. Notification of Completion of Programming

Before each federal, statewide, or legislative election, the officer in charge of elections must promptly notify the Secretary of State when the county has completed programming its election.

Within one business day of receiving this notification or as soon as possible thereafter, the Secretary of State must confirm with the officer in charge of elections the date/time of the accessible and optical/digital scan tests and the conditions for each test, including precinct selections, ballot requirements, and the number of machines selected at random for testing. The Secretary of State must inform the officer in charge of elections of the date/time of the L&A test as soon as practicable.

### 4. Secretary of State Preparation for L&A Testing

For an accessible voting equipment L&A test, the Secretary of State must:

1. Request that all accessible voting equipment to be used during on-site early voting be made available for the L&A test and be pre-programmed with all precinct ballot styles;

2. Identify the precincts randomly selected by the Secretary of State and request the accessible voting equipment to be utilized at those precincts be made available for the L&A test;

3. Ensure the attendance of any necessary minority language interpreters at the L&A test;

4. Inform the officer in charge of elections that they must:

    a. Utilize the actual election program for Election Day (not a copy);

    b. If applicable, reset any vote totals from prior L&A tests and ensure equipment zero tapes are accessible for examination;

    c. Print a zero report from the county's Election Management System (EMS) and ensure the report is accessible for examination;

    d. Ensure that equipment operators are available to assist with the L&A test;

    e. Ensure the equipment is set up, set to run in "election mode," and ready to vote upon the Secretary of State's arrival;

    f. Ensure that voter card encoders and bar code printers will be available for testing (if applicable);

    g. Ensure political party observers have been contacted for the L&A test;

    h. Ensure that headphones, touchpads, and, if applicable, other ADA accessible components, will be available for all equipment; and

    i. Ensure all equipment is capable of processing and outputting the testing results.

For an optical/digital scan equipment L&A test, the Secretary of State must:

1. Request the requisite number of test ballots;

2. Request the applicable memory cards or sticks in order to preliminarily verify L&A test results at the Secretary of State's Office;

3. Request that all central count equipment, including any back-up equipment, be made available for the L&A test;

4. Identify the precincts randomly selected by the Secretary of State and request the precinct voting equipment to be utilized at those precincts be made available for the L&A test;

5. Inform the officer in charge of elections that they must:

    a. Utilize the actual election program for Election Day (not a copy);

    b. Reset any vote totals from prior L&A tests and ensure equipment zero tapes are accessible for examination;

    c. Print a zero report from the county's EMS and ensure the report is accessible for examination;

    d. Ensure political party observers have been contacted for the L&A test;

    e. Ensure that equipment operators are available to assist with the L&A test; and

    f.  Ensure the equipment is set up, set to run in "election mode," and ready to vote upon the Secretary of State's arrival.

The officer in charge of elections must provide any requested materials or information to the Secretary of State in accordance with the deadline set forth in the Secretary of State's letter, but no later than five weeks before each election and/or three weeks before the start of early voting.

## 5.  Marking Test Ballots and Creation of Test Script

The Secretary of State must create a script that outlines how each test ballot will be marked.

Votes must be randomly distributed in each of the selected precincts, ensuring that each federal, statewide, and legislative candidate and ballot measure receives at least one vote. In addition, various races and issues must be over-voted to test the optical/digital scan equipment's ability to notify the voter of, or out-stack, an over-vote, physically or digitally.

Upon receipt of test ballots from the officer in charge of elections, the Secretary of State must mark the test ballots in accordance with the predetermined script.

The Secretary of State also must create a script for each accessible voting machine that specifies how many ballots will be cast on the machine and how the votes will be distributed during the accessible equipment L&A test.

The Secretary of State must run the test ballots through the optical/digital scan equipment provided to the Secretary of State for preliminary verification purposes.

Finally, the Secretary of State creates a summary report that aggregates the vote totals for each candidate and ballot measure. The Secretary of State must ensure these test ballot results match the summary report.

## 6.  Conducting the L&A Test

The Secretary of State must bring a sufficient number of personnel to conduct the L&A test.

Upon arrival, the Secretary of State must ensure that the selected voting equipment has zero recorded or printed votes prior to commencing the L&A test. The Secretary of State then must test the selected voting equipment to ensure each machine reports the correct vote totals (and that the EMS reports the correct aggregate totals) in accordance with the prepared scripts. If the county intends to use the electronic adjudication or electronic write-in tallying functionality in the upcoming election, that functionality must also be tested during the Secretary of State's L&A test.

The Secretary of State must review ballots, and each ballot display on the accessible voting equipment, to confirm formatting, language, and audio requirements in the testing standards have been met (*see* testing standards in Chapter 4, Section I(E) below).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## E. L&A Testing Standards

### 1. Accessible Voting Equipment

Accessible voting equipment must:

1. Display candidate races, ballot measures, and voter instructions in English and any other language required in the county under the federal Voting Rights Act, at the voter's option;

2. Display candidate races, ballot measures, and voter instructions in large print and contrasting colors, at the voter's option;

3. Produce an accurate audio recording in English and any other language required in the county under the Voting Rights Act;

4. Display the correct voting precinct and state, county, and election type;

5. Display instructions how to use the equipment and mark the ballot;

6. Display the ballot as nearly as practicable in accordance with the formatting requirements for paper ballots, including color marking for partisan primary elections;

7. Display candidate names accurately, in accordance with the candidate's nomination paper;

8. Display ballot measures accurately, in accordance with any certification from the Secretary of State;

9. Sequentially advance from screen-to-screen;

10. Perform the functions selected by the voter;

11. Provide a warning to the voter if the voter attempts to under-vote or over-vote a particular race or issue, or, in the case of an over-vote, prevent a voter from doing so;

12. Contain an accessible keypad that shall be accessible to voters with visual disabilities, and contain a functioning keypad (whether stand-alone or incorporated into the accessible voting equipment screen), headphones, and, if applicable, other ADA accessible components, such as a paddle or sip-and-puff device;

13. Allow the voter to increase or decrease the headphone audio volume in accordance with the voter's preferences;

14. Allow the voter to write in a candidate using a keypad in the voter's selected language;

15. Provide a means for the voter to verify all of the voter's selections prior to committing the selections and a means for the voter to change a selection if desired before committing the selections;

16. Display a summary screen at the conclusion of voting that matches the voter's selections;

17. Print an accurate ballot or VVPAT in English and any other written language required in the county under the Voting Rights Act; and

18. If the accessible voting equipment independently tabulates votes, tabulate the voter's selections accurately, including in the EMS.

### 7.   Optical and Digital Scan Voting Equipment

Optical and digital scan voting equipment must:

1. Attribute votes to the correct candidates and ballot measures in the EMS;

2. Attribute the correct number of votes to each candidate and ballot measure;

3. Warn the operator of an over-vote or out-stack, physically or digitally, a ballot in the event of an over-vote;

4. Record no vote in an over-voted race and out-stack, physically or digitally, for further adjudication if applicable (precinct voting equipment and central count equipment);

5. Accept ballot styles for that specific precinct and reject ballot styles from other precincts (precinct voting equipment only); and

6. Accept ballot styles from the current election and reject or out-stack (physically or digitally) ballot styles from a different election.

In advance of the Secretary of State's L&A test, the officer in charge of elections should conduct a preliminary test of ballots as soon as they are available from the printing vendor to ensure the ballots are correct and meet the requirements for the voting equipment utilized. This may include testing a blank ballot and a fully voted ballot of every ballot style used in the election.

### 8.   Electronic Adjudication and Electronic Tallying of Write-In Votes

If electronic adjudication of votes or electronic tallying of write-in votes will be utilized as part of the election tabulation system, that functionality shall also be tested during the L&A test to ensure secure and proper functioning and attribution of voter intent and/or Write-In Tally Board determinations for the write-in votes tallied. *See* Chapter 10, Section II(E) for requirements for electronic adjudication and Chapter 10, Section II(H)(2) for requirements for electronic tallying of write-in votes.

### 9.   Errors Discovered During Testing

If any error is detected during L&A testing:

- The cause shall be ascertained and corrected;

- An errorless count shall be made before the voting equipment and programs are approved for use in the election;

- If the election program is found to be the source of the error, a copy of a revised election program shall be filed with the Secretary of State within 48 hours after the revision; and

- If the error was created by voting equipment malfunction, a report shall be filed with the Secretary of State within 48 hours after the correction is made, stating the cause and the corrective action taken.

A.R.S. § 16-449(A). If the error cannot be corrected, the voting equipment and/or election program causing the error may not be deployed or used.

### 10. Certification of Voting Equipment

The Secretary of State must certify the voting equipment if the equipment meets the requirements in the L&A testing standards. Voting equipment may not be deployed or used until the Secretary of State has certified that the equipment passed L&A testing.

If the voting equipment does not meet the mandatory requirements from the testing standards, the Secretary of State should work with the officer in charge of elections to determine the cause of the deficiency and whether it can be corrected in a timely manner. If the error can be readily corrected, the voting equipment may be retested immediately and until the mandatory requirements have been met; otherwise, the L&A test must be rescheduled for a later time and date.

### F. County L&A Testing

The officer in charge of elections must substantially follow the L&A testing procedures applicable to the Secretary of State, except that all the county's deployable voting equipment must be tested. The officer in charge of elections also must conduct a post-election L&A test of tabulation equipment. *See* Chapter 12, Section II.

### G. Retention of L&A Programs, Test Ballots, and Database

The tests ballots and database used in L&A testing shall be:

- Secured immediately after the L&A test is run; and
- Retained until the post-election L&A test is ready to be conducted after ballot tabulation for the election.

Programs and test ballots used in L&A testing shall be under the control of the officer in charge of elections. After completion of the post-election L&A test, the databases and test ballots shall be retained with the official returns according to the retention period applicable for that election.

### II.   SECURITY MEASURES FOR ELECTRONIC VOTING SYSTEMS

All components of the electronic voting system, including any e-pollbooks uploaded with voter registration information or connected to a voter registration system, must be secured in accordance with this section. Counties should also conduct periodic election security and cybersecurity assessments and develop and implement appropriate security procedures and best practices in consultation with county (and, where appropriate, federal, and state) information technology and security professionals. Counties may establish more stringent and robust security protocols so long as the following minimum requirements are met.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The officer in charge of elections must develop and implement a training plan to ensure that elections staff (and any temporary workers) understand and comply with all security procedures applicable to the electronic voting system.

A person who knowingly modifies the software, hardware, or source code for voting equipment without receiving approval or certification pursuant to A.R.S. § 16-442 is guilty of a class 5 felony. A.R.S. § 16-1004(B).

### A. Physical Security of the Electronic Voting System

Hardware components of the electronic voting system:

1. Must be permanently labeled with a unique serial number for tracking and auditing purposes;

2. Must be inventoried before and after an election;

3. Must be stored in a locked, secured location that prevents unauthorized access;

   • Access to the electronic voting system (including voting equipment and the EMS) must be authorized by the officer in charge of elections. Access must be documented with a written log or with electronic key card access that indicates the date, time, and identity of the person accessing the system.

4. Must be sealed with tamper-resistant or tamper-evident seals once programmed;

   • The seal number must be logged as corresponding with particular voting equipment and the election media that has been sealed in the voting equipment. The log should be preserved with the returns of the election. In the event of a recount or re-tally of votes, the officer in charge of elections should be prepared to submit an affidavit confirming that the election program and any election media used in the election have not been altered. A.R.S. § 16-445(C).

5. Must be safeguarded from unauthorized access when being moved, transferred, serviced, programmed, or temporarily stored;

6. May be accessed by elections staff only to the extent necessary to perform their authorized task; and

7. Must be witnessed by two or more election staff members (of different political parties if possible) when being moved or transferred and an inventory of the equipment and documentation of the chain of custody before and after the move or transfer shall be maintained.

Any port, plug, door, or other method of physical or electronic access to the voting machine shall be secured in a manner to prevent any unauthorized access to the voting machine. The County Recorder or other officer in charge of elections shall document and verify security procedures regarding access before a voting machine is placed into service for an election. A.R.S. § 16-570(B).

### B. Data Security of the Electronic Voting System

Components of the electronic voting system:

1. Must be password-protected (for voting system software);[45]

   - In addition to complying with any system requirements, passwords must not be a vendor-supplied password and must only be known by authorized users.

2. May not be connected to the internet, any wireless communications device, or any external network (except for e-pollbooks);

   - An EMS must be a stand-alone system, attached only to components inside an isolated network. An EMS may only be installed on a computer that contains only an operating system, the EMS software, data/audio extractor software, and any necessary security software.

3. May not be used to modem election results, whether through analog, cellular, or any similar transmission;

4. May not contain remote access software or any capability to remotely access the system;

5. Must match the software or firmware hash code on file with the officer in charge of elections prior to programing the election and the hash code on file with either (1) the National Institute of Standards and Technology (NIST); or (2) the Secretary of State at the time of certification of the electronic voting system; and

   - If the EMS software hash code is on file with NIST or the Secretary of State, the officer in charge of elections must certify that the officer compared the hash code on file with NIST or Secretary of State for the EMS software with the hash code of the EMS software to be used in the election and certify that the numbers are identical.

6. Must be observed by the officer in charge of elections or a designee if the election program (or any software or firmware) is updated or modified.

In addition, the County Recorder or officer in charge of elections should retain back-ups of the election program, including daily back-ups once tabulation begins.

### C. Removable Electronic Storage Devices Used with the Voting System

The following security protocols apply to any memory stick or other removable electronic storage device used with the electronic voting system:

1. A stick or device must be purchased or received from a reliable source.

2. A stick or device shall be permanently identified with a unique serial number or identifier when in use, and an inventory of all electronic media shall be created and maintained.

---

[45] Counties and their IT staff should also consult the latest standards for password security from the National Institute of Standards and Technology (NIST), available at https://pages.nist.gov/800-63-3/sp800-63-3.html.

However, this requirement does not apply to a stick or device subject to the "one-way, one-use" requirement in #6 below.

3. Electronic storage media shall be physically secured at all times. No physical access should be given to any person unless the election officer in charge of the electronic storage media specifically grants that person access. Secured locations must be provided for storing electronic media when not in use, coding an election, creating the election media, and transferring and installing the election media into the voting device.

4. No electronic storage media shall be left unattended or in an unsecured location once it has been coded for an election. Where applicable, coded election media shall be immediately loaded into the relevant voting device, sealed, logged, and made secure or must be placed in a secured and controlled environment and inventoried.

5. A stick or device may be used to transfer data between an internet-connected system and a component of a non-connected electronic voting system only when necessary to conduct the election (for example, to import ballot language or ballot files to the electronic voting system or to export election results files from the electronic voting system). When such transfer is necessary, the internet-connected system and stick or device shall be scanned with updated antivirus software that is consistent with industry standards, and the internet-connected system shall be disconnected from the internet prior to transfer.  In addition, the officer in charge of elections shall use a dedicated Gateway Computer as described in Chapter 4, Section III(D) and consider and implement other appropriate security protocols for such data transfers.

6. A stick or device used to transfer data to or from the electronic voting system shall only be used one time: to transfer data from one system to a second system and then securely disposed of. When feasible, write-once memory cards or write-once disks should be used instead of USB devices to transfer data to or from an electronic voting system to ensure a "one-way, one-use policy" is self-enforced by the technology.

7. If the individual file to be transferred between systems was electronically received (whether through download, by email, or any other electronic means), the individual file must be scanned with antivirus software prior to being placed on the stick or device. The scanning should be done on a computer segregated from the primary network and while that computer is not connected to the internet. If any files were downloaded from an internet portal, the portal must be a secure portal for data transmission purposes. Regardless of the method of receipt, however, individual files should only be downloaded, transferred, or otherwise utilized if they were received by a trusted third-party source.

8. If a stick or device was received by mail:

   • The stick or device should only be accepted from a trusted, third-party source;

   • The stick or device must be encrypted by the third-party source, and the password to decrypt the stick or device may not be included with the mailing itself; and

   • Upon receipt, the stick or device must be scanned with antivirus software prior to opening or otherwise executing any file contained on the stick or device. The scanning

should be done on a computer segregated from the primary network and while that computer is not connected to the internet.

### D. Gateway Computer

A special-purpose, dedicated computer (the "Gateway Computer") shall be used in the limited circumstances when it is necessary to: (1) download data (e.g., ballot language or ballot files) from an internet-connected system onto a memory stick or other removable electronic storage device for upload to the EMS; and/or (2) download data (e.g., election results files) from the EMS to a stick or device for upload to an internet-connected system. In such circumstances, the Gateway Computer shall serve as the internet-connected system. No other computer except for the designated Gateway Computer shall be used for these purposes and the designated Gateway Computer shall not be used for any other purpose.

The following security protocols apply to the Gateway Computer:

1. The computer shall only be connected to a network when necessary (e.g., to upload to or download from the internet or to install necessary software updates) and the computer shall be disconnected from the network prior to transfer of data to or from the memory stick or device that was or will be connected to the EMS.

2. The computer shall not be used for any purpose other than moving necessary election data in or out of the EMS.

3. The computer shall have no software installed other than security controls, a browser, and the applications required for the administration of elections.

4. The computer shall have endpoint protection software (i.e., antivirus software that protects the computer from malware, viruses, ransomware, incursions, and other cybersecurity risks), with scanning capability installed.

5. The computer's operating system, browser, and endpoint protection software shall have the latest updates and security patches installed.

6. Windows Firewall (or other applicable firewall, if not using the Windows operating system) shall be enabled with the following restrictions:

   • No incoming connections allowed

   • No unnecessary outbound ports

   • No unsecured HTTP allowed

   • No connections allowed except to specific IP addresses (e.g., EMS vendor download site, Secretary of State's Election Night Reporting site, etc.)

7. Wi-Fi, Bluetooth, and cellular functions shall be disabled if present.

8. No wireless mouse or keyboard shall be used.

9. The computer shall be physically secured by the officer in charge of elections or designee pursuant to the same requirements applicable to other election equipment. See Chapter 4, Section III(A).

10. The administrator account shall be non-standard. In other words, the default administrator account in the operating system shall be disabled, and customized administrator accounts with specific powers and privileges should be created, providing those with administrator access only those powers and privileges necessary for their specific job duties.

11. Normal operation of the computer (e.g. when not conducting system configuration or maintenance that requires administrator access) shall be conducted without administrator rights to ensure that non-administrators cannot install unauthorized software or otherwise have access to the operating system or internal file structures.

12. Any physical port, plug, door, or other method of physical or electronic access to the computer shall be secured in a manner to prevent unauthorized access to the computer.

Further, it is strongly recommended that the Gateway Computer be isolated using network segmentation. In other words, the computer should be placed on its own virtual network, with no unnecessary assets able to communicate with it other than security appliances, to minimize access and exposure.[46]

### E. E-Pollbooks and Ballot-on-Demand Printers

The following security protocols apply to the use of e-pollbooks and ballot-on-demand printers:

1. E-pollbooks and ballot-on-demand printers shall only be connected to authorized and secured networks and resources;

2. E-pollbooks and ballot-on-demand printers should transmit and receive data utilizing industry standard best practices for information and network security, including encryption;

3. E-pollbooks and ballot-on-demand printers shall be patched and updated to current versions as designated by the vendor;

4. Only software, applications, or drivers necessary for e-pollbook operation shall be installed on e-pollbooks;

5. E-pollbooks and ballot-on-demand printers, as well as other peripheral devices such as barcode printers and driver license scanners, shall be tested before each election to ensure proper operation;

6. Voter data files on e-pollbooks should be checked against the original files by comparing file size and spot-checking a sample of voter records prior to testing or use at a voting

---

[46] See the CIS benchmark for the EMS Gateway at https://www.cisecurity.org/insights/blog/new-guidance-to-secure-election-management-system-machines. For further guidance on this standard please refer to: https://www.cisecurity.org/insights/blog/new-guidance-to-secure-election-management-system-machines.

location; the data file should also be checked to confirm the number of active/inactive voters, verify no protected voters' information is included, and that party information (for a primary election), and early ballot information is included;

7. Any port, plug, door, or other method of physical or electronic access to any e-pollbook shall be secured in a manner to prevent any unauthorized access to the e-pollbook. The County Recorder or other officer in charge of elections shall document and verify security procedures regarding access before an electronic pollbook is placed into service for an election, A.R.S. § 16-570(B); and

8. Only power or charging cables supplied by the vendor or purchased from a verified source shall be used to power e-pollbooks.

## III.   CONTINGENCY AND INCIDENT RESPONSE PLANNING

### A. Election Operations Contingency Plan

The officer in charge of elections shall develop a written contingency plan in case election operations, including the use of voting systems and any component thereof, are significantly disrupted. A contingency plan should consider all potential sources of disruption, including but not limited to:

- Systemic equipment failures or malfunctions;

- Power outages;

- Natural disasters or infrastructure failure;

- Terror threats or other civil disturbances; and

- Unauthorized access, intrusion, or hacking into election facilities or equipment.

Among other things, a contingency plan must outline how the officer in charge of elections would ensure continuity in voting in case one or more voting locations becomes temporarily or permanently unusable on Election Day, which may include:

- Sending voters to an alternative voting location (whether new or existing);

- Seeking a court order to extend voting hours; and/or

- Requesting voters return to the voting location after the problem has been resolved.

The officer in charge of elections must implement any additional procedures necessary to ensure that voters are properly notified and receive the correct ballot style.

In advance of each election, the officer in charge of elections must review/update the contingency plan and ensure that key staff members have been briefed on the plan. As necessary, the officer in charge of elections should also be prepared to review and/or execute the contingency plan in coordination with:

- The County Recorder;

- The Board of Supervisors;
- The County Attorney's Office;
- The County Sheriff's Office;
- The Presiding Judge of the Superior Court;
- The Secretary of State's Office;
- The Arizona Counter Terrorism Information Center (ACTIC);
- The Arizona Department of Public Safety;
- The Attorney General's Office;
- The Federal Bureau of Investigation;
- The U.S. Department of Homeland Security;
- The U.S. Department of Justice; and
- The U.S. Attorney's Office.

The officer in charge of elections must file certain contingency information with the Secretary of State at least 10 days in advance of a federal, statewide, or legislative election, including:

- A description of the officer's contingency plan to tabulate ballots in case of central count equipment failure (see specific requirements below); and
- A copy of the county's election program (see specific requirements below).

### B. Incident Response Plan

The County Recorder and officer in charge of elections shall develop a written incident response plan outlining how they will respond to and report election incidents that have security implications and/or may disrupt election operations. The Secretary of State shall provide and periodically update an election incident response plan template for the counties to consult.

### C. Tabulation Contingency Plan

The officer in charge of elections must file with the Secretary of State a tabulation contingency plan that identifies alternative voting equipment or facilities in case the county experiences a complete loss of its central count equipment or use of its central counting place. The tabulation contingency plan shall be completed no later than the second Monday before the election (*i.e.*, eight days before the election).

The plan may include the transport of ballots across county lines. In that case, the ballots must be inventoried and safeguarded by the originating county's employees in the same manner as if the ballots had not been transported. *See* Chapter 9, Section IX(C). A county must exhaust all possible options (including the acquisition of additional voting equipment from the vendor) before invoking a contingency plan that involves transportation of ballots across state lines.

The officer in charge of elections must notify the Secretary of State (and the chairpersons of the recognized political parties) if a tabulation contingency plan is invoked.

### D. Election Program Contingency File

Any jurisdiction that conducts an election must file a copy of the election program with the Secretary of State at least 17 days prior to each election. A.R.S. § 16-445(A). This copy may serve as a backup in case the original program is destroyed or rendered unusable. The election program must be in a machine-readable format and may be transmitted to the Secretary of State via a password-protected CD, DVD, USB memory stick, or SFTP site.

If any subsequent changes are made to the election program, the officer in charge of elections must file the new copy with the Secretary of State within 48 hours of the change. A.R.S. § 16-445(B).

The Secretary of State must preserve election programs in escrow for three years. The Secretary of State must securely destroy any election program after this retention period has expired. A.R.S. § 16-445(A).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

# CHAPTER 5:
## ACCOMMODATING VOTERS WITH DISABILITIES

### I.        VOTER REGISTRATION INFORMATION

Before an election, each county shall prepare and disseminate information by public notice, including about voter registration deadlines, availability of registration and voting aids, how to vote early, availability of sample ballots, and types of assistance (including reasonable accommodations) available at voting locations, in a manner calculated to reach all voters and, in particular:

- Persons with disabilities;

- Seniors, age 65 or more;

- Self-identified voters; and

- Others who request information.

During each stage of the voting process, including voter registration, election officials must ensure that they are effectively communicating with voters with disabilities. Upon a ten-day notice, the County Recorder or officer in charge of elections shall provide voting and registration information in alternative formats for the purpose of ensuring effective communication with people with disabilities. These available alternative formats may vary by County and shall include two or more alternative formats, which may include: large print, braille, electronic material for use with a screen reader, and/or computer disk in a format available on the jurisdiction's computer equipment. A voter may make an ongoing or permanent request to receive information in a particular format in their county for each election. If a voter makes a request for information in an alternative format after any applicable deadlines, the County Recorder or officer in charge of elections shall make best efforts to accommodate the request if practicable.

Voters with a hearing or speech disability may dial 7-1-1 to be connected to a Telecommunications Relay Service (TRS) or utilize a video relay service (VRS), which permits persons with a hearing or speech disability to conduct a voice or video call with persons with or without such disability. Each County Recorder and/or officer in charge of elections shall publish information on how voters may use TRS or VRS to initiate a call to the office of the County Recorder or officer in charge of elections. County election officials can also use TRS and VRS to make calls to voters with a hearing or speech disability. To ensure the provision of effective communications, election officials shall furnish the auxiliary aids and services concomitantly pursuant to their obligations under the Americans with Disabilities Act (ADA). 28 C.F.R. § 35.160(b)(1)-(2).

Signs explaining assistance available for voters with disabilities must be posted at all permanent registration facilities, polling places, and vote centers. Temporary or permanent signs shall be:

- Posted to provide reasonable guidance to reach the voting area;

- In large, clear lettering that meets the [ADA Accessibility Guidelines](#)'[47] requirements as to character proportion[48] and height[49];

- On a contrasting background color; and

- At a recommended height of 60 inches.

*See* [A.R.S. § 41-1421](#), [A.R.S. § 41-5202(A)](#).

## II.    VOTING AND VOTING LOCATION INFORMATION

Voters with disabilities are entitled to receive voting materials (and access to the voting experience in general) that is equivalent to that provided to voters without disabilities. [A.R.S. § 16-442.01(B)](#). Voting materials (including voter registration information, and web-based information and resources) must meet state and federal accessibility standards. *See* [A.R.S. § 41-1421](#), [A.R.S. § 41-5202(A)](#). Similarly, election officials must ensure effective communication with voters with disabilities at voting locations and throughout the electoral process.

Thus, with few exceptions, ballots displayed in accessible voting equipment must follow the same content, format, and rotational requirements as those applicable to printed ballots. [A.R.S. § 16-442.01(A).](#) For example:

- Voting screens must be in the same order of arrangement as provided for paper ballots as far as practicable, except that information can be printed in vertical or horizontal rows or on separate screens. [A.R.S. § 16-468(1).](#)

- If there are more candidates for a particular race than can be displayed on one voting screen, the screen must indicate that the race is continued on the following screen, and the same number of candidates must be displayed on each screen as far as practicable. [A.R.S. § 16-468(3).](#)

In addition, the County Recorder must be prepared to print ballots in braille or large print format to reasonably accommodate voters who request alternative formats. [A.R.S. § 16-442.01(B)(2).](#) Information on how individuals may identify themselves as needing accommodations for voting and for requesting reasonable accommodations at their polling place or vote center shall be attached to or distributed with the voter registration form. Printed materials shall be provided at the time of registration, at the time of notification of registration status pursuant to [A.R.S. § 16-163(B),](#) and on all sample ballots. These materials shall advise voters where they may call to ensure accessible voting, report instances of inaccessibility, and obtain voting materials in available alternative formats.

---

[47] Available at: [https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag#4.30](https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag#4.30).

[48] ADA Accessibility Guidelines 4.30.2 requires that: "[l]etters and numbers on signs shall have a width-to-height ratio between 3:5 and 1:1 and a stroke-width-to-height ratio between 1:5 and 1:10."

[49] ADA Accessibility Guidelines 4.30.3 requires that: "[c]haracters and numbers on signs shall be sized according to the viewing distance from which they are to be read. The minimum height is measured using an upper-case X. Lower case characters are permitted."

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The County Recorder and/or officer in charge of elections, as applicable, shall also include the following information on their websites, in a format that is accessible to people with disabilities using screen reading or other assistive technology:

- How voters with disabilities may obtain more information about voting assistance and reasonable accommodations in the voting process;

- How to request and obtain voting material in alternative formats;

- How to request voting through a special election board; and

- Information about and instructions on how to use accessible voting devices used by the County.

Moreover, websites containing any information concerning any aspect of the electoral process shall be provided in an accessible manner for people with visual disabilities, including those using screen reading or other assistive technology.

## III.   ENSURING ACCESSIBILITY AT THE VOTING LOCATION

Voting locations must comply with the current Americans with Disabilities Act (ADA) Standards for Accessible Design. *See* 2016 ADA Standards for Accessible Design, [36 C.F.R. § 1191](#). The voting location must be in existing compliance with the Standards or the officer in charge of elections must bring the voting location into compliance with the Standards prior to the start of voting at the location. The officer in charge of elections should consult the ADA Checklist for Polling Places, available at [https://www.ada.gov/votingchecklist.htm](https://www.ada.gov/votingchecklist.htm), when confirming that voting locations comply with federal accessibility requirements.

In addition to complying with all federal accessibility requirements, the officer in charge of elections must ensure that all voting locations also meet the following state requirements:

1. **Seating:** Each polling place shall include seating to allow voters to wait to enter the voting booth. A minimum of two seats is required and additional seats should be provided as practicable to reasonably accommodate voters with disabilities.[50]

2. **Stairs:**

   - Stair treads shall be no less than 11 inches wide, measured from riser to riser.

   - Undersides of nosings shall not be abrupt. The radius of curvature at the leading edge of the tread shall be no greater than ½ inch. Risers shall be sloped or the underside of the nosing shall have an angle not less than 60 degrees from the horizontal.

   - Nosings shall project no more than 1 ½ inch.

---

[50] In any case, if a voter has a disability-related need to sit and the available seats are being used by others, poll workers must make all reasonable efforts to accommodate the voter, including by asking if anyone can volunteer their seat or identifying another available chair from the building that can be used.

- Handrails shall be continuous along both sides of stairs. If not continuous, they shall extend at least 12 inches beyond the top riser and at least 12 inches plus the width of one tread beyond the bottom riser.

- The clear space between handrails and wall shall be 1 ½ inch.

- The ends of handrails shall be rounded or returned smoothly to floor or wall.

- Handrails shall not rotate within their fittings.

3. **Booths and Equipment:**

   - At least one voting booth in each voting location and early voting site shall be accessible. This requires that the clear area in the voting booth be no less than 30 inches by 48 inches. The preferred arrangement provides a knee space 27 inches high below the counter or ballot machine to allow front wheelchair approach. An alternative arrangement provides a clear area parallel to the ballot or counter and sufficient room to maneuver a wheelchair to this position.

   - Each voting location and early voting site shall have an accessible voting device for use by voters with disabilities. Each accessible voting device shall be prominently marked with a sign titled "Accessible Voting Device" that is located in a conspicuous place on the device and that bears the internationally accepted symbol of access. A.R.S. § 16-447(A).

   - The County Recorder, officer in charge of elections, or designee shall ensure that accessible voting devices are operational and remain turned on and ready for use as long as the voting location or early voting site is open and shall ensure that board workers are trained on the proper operation of accessible voting devices.

   - The accessible voting device shall be located and situated in a manner that provides privacy in voting. The set up for the accessible voting device at the voting location needs to ensure the same level of privacy that is afforded to voters using other voting machines and booths.

4. **Resources for Voters with Sight and Hearing Disabilities:**

   - Each voting location and early voting site shall have at least one magnifying instrument.

   - For a statewide election, the Secretary of State shall provide each county with at least one large print version of the publicity pamphlet for each polling place, vote center, and early voting site. The officer in charge of elections shall provide at least one large print version of county publicity pamphlets to each polling place, vote center, and early voting site.

   - For those with hearing disabilities, paper and pen/pencil shall be made available.

5. **Rest Stops/Other Procedures:** For voters with limited strength/stamina or restricted mobility, periodic rest stops with seats or benches should be available at each polling

location, at intervals of approximately 200 feet along the route from the vehicular access location to the voting room. Every effort should be made to provide an accessible route to the polling place that is less than 200 feet from the accessible parking spaces or passenger loading areas. If rest stops are not available, the election board workers may invite these voters to the front of the line.

6. **Lighting:** Adequate lighting shall be provided for voting locations.

Voting locations and early voting sites must be accessible if such a site is available in the precinct. If no site is accessible, temporary measures, as described in Section IV below, shall be taken to make the location accessible. A precinct should not be denied a polling place and/or early voting site for lack of a permanently accessible location. Instead, temporary measures should be taken to bring an available site within the precinct into compliance.

Each county shall conduct a uniform inspection of all voting locations and early voting sites to ensure compliance with the criteria set out in this Section. Counties shall have procedures for inspection of each location before each election, or provisions in contracts with voting locations and early voting sites requiring a contact person to inform the county if the accessibility of a location has been altered prior to an election. Election officials shall provide reasonable modifications to voters with disabilities as necessary to avoid discrimination based on disability (A.R.S. § 41-1421(C); 28 C.F.R. § 35.130(b)(7)) as applied to activities at voting locations.[51]

Counties shall submit the results of their inspections in the accessibility report provided to the Secretary of State with the general election canvass. *See* Chapter 13, Section II(A)(1); ADA Checklist for Polling Places, available at https://www.ada.gov/votingchecklist.pdf.

| **IV.** | **ALTERNATIVE VOTING OPTIONS** |
|---|---|

Locations determined by the officer in charge of elections to be inaccessible may be used as polling places and vote centers, with alternative means of voting provided at those locations, only when:

- No accessible sites are available and no temporary measures can make them accessible; or

- When otherwise necessary as a reasonable accommodation for a voter with a disability.

When the officer in charge of elections determines that no accessible voting location is available or no alternative means are available, all voters in the precinct shall: (1) be notified as soon as practicable, and prior to the deadline to request an early ballot-by-mail, that the voting location selected for their precinct is inaccessible; and (2) be provided the reason(s) for inaccessibility. Notice shall also be provided in at least two alternative formats accessible to voters with disabilities. *See* Chapter 5, Section I.

---

[51] In addition to physical accessibility requirements, election officials shall furnish auxiliary aids and services, which are needed to ensure effective communication with voters with disabilities (A.R.S. § 41-5202(A); 28 C.F.R. § 35.160(b)).

The following alternative means of voting shall be offered to voters with disabilities and seniors:

- Where practicable, reassignment to an accessible voting location in a precinct with the same ballot as the voter's precinct and that is as close to the voter's home precinct as practicable;[52]

- Assistance provided by a person of the voter's choice or two election officials of different political parties;

- Early voting; and/or

- Curbside voting, if available at the voting location.

Whenever practicable, curbside voting should be made available as a reasonable accommodation to provide voters with disabilities equal access to the voting process. Where curbside voting is offered, the following guidelines must be met:

- A sign shall be posted at or near the entrance to the voting location or the accessible parking spaces: (1) stating that curbside voting is available at that location; (2) providing an easy-to-push temporary doorbell or buzzer (at a height accessible to wheelchair users) to allow voters to request curbside assistance; (3) providing a telephone number to call to request curbside assistance or for additional information; and (4) notifying voters of the ways they can request curbside assistance, including: (a) pushing the doorbell or buzzer provided; (b) calling the telephone number provided; or (c) relaying a message requesting assistance through a companion or other nearby person to the election board.[53]

- The election board workers shall promptly respond to any requests for curbside assistance, including when the doorbell or buzzer is activated.

- The election official, using the precinct register or e-pollbook, shall: (1) verify the registration status of the senior or voter with a disability; (2) verify the voter's identification; and (3) notify the inspector.

- The inspector shall direct the two election board workers (with different political party affiliations) to: (1) proceed to the curbside with an appropriate ballot (and if needed, a provisional ballot affidavit); (2) permit the voter to privately vote their ballot after having signed the signature roster, electronic signature pad, or curbside voter affidavit form; and (3) place the voted ballot in a secrecy sleeve.

- The election board workers shall return to the voting area and present the ballot to the inspector, who shall deposit the ballot in the tabulation unit or ballot box.

*See* A.R.S. § 16-581.

---

[52] In this circumstance, the voter shall not be deemed to have voted outside of the voter's assigned precinct.
[53] *See* U.S. Dept. of Justice, Civil Rights Division, Disability Rights Section, *The Americans with Disabilities Act and Other Federal Laws Protecting the Rights of Voters with Disabilities*, at 3, available at https://www.justice.gov/file/69411/download.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## V.   SPECIAL ELECTION BOARDS

Personal ballot delivery through a special election board shall be provided to any qualified elector who is confined because of a continuing illness or physical disability and is, therefore, not able to go to the polls on Election Day. *See* Chapter 2, Section IV for more details. Requests must be made to the officer in charge of elections by the second Friday before the election. *See, e.g.*, A.R.S. § 16-549(C). If a voter makes a request after the applicable deadline, the officer in charge of elections shall make best efforts to accommodate the request if practicable.

# CHAPTER 6:
# REGULATION OF PETITION CIRCULATORS

Arizona law prescribes certain requirements for circulators and signers regarding the gathering of petition signatures. Failure to adhere to these requirements may result in petition signatures being invalidated. More information regarding the regulation and registration of circulators, including the Secretary of State's recommended best practices for circulating petition sheets, is available on the Secretary of State's website at www.azsos.gov/elections.

## I.    QUALIFICATIONS FOR PETITION CIRCULATORS

Any person who is qualified to register to vote in Arizona, or who would be qualified to register to vote in Arizona if they were an Arizona resident, may circulate petitions for a candidate, ballot measure, or political party recognition. A.R.S. § 16-321(D); A.R.S. § 16-801(A)(2); A.R.S. § 19-114(A).

Certain individuals are prohibited from circulating initiative, referendum, or recall petitions due to perceived conflict of interest. No County Recorder or Justice of the Peace may circulate petitions for an initiative, referendum, or recall. Any signatures gathered on petitions circulated by prohibited individuals are void. A.R.S. § 19-114(A); A.R.S. § 19-205.02.

In addition, the following individuals may not circulate recall or statewide initiative or referendum petitions:

- Those who have had a civil or criminal penalty imposed for a violation of Title 16 or Title 19 within the last five years;

- Those who have been convicted of treason or a felony and have not had their civil rights restored; and

- Those who have been convicted of any crime involving fraud, forgery, or identity theft.

A.R.S. § 19-118(D).

## II.    CIRCULATOR REGISTRATION AND DISCLOSURE REQUIREMENTS

A petition circulator must register with the Secretary of State's Office if the circulator:

- is *paid* to circulate any recall or statewide initiative or referendum petitions (whether or not the circulator is a resident of this state); or

- is *not a resident* of this state (whether or not the circulator is paid) and will circulate: (i) a *statewide* initiative or referendum petition, (ii) a recall petition in any Arizona jurisdiction, or (iii) a candidate petition in any Arizona jurisdiction (statewide, county, city, or town). A.R.S. § 19-118(A); A.R.S. § 19-205.01(A); A.R.S. § 16-321(D).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## A. Paid Circulators

A circulator may be paid or act as a volunteer.

- A volunteer circulator is an individual who does not receive any compensation for circulating petitions.

- A "paid circulator" is defined as an individual who receives compensation for circulating a statewide initiative or referendum petition, but does not include a paid employee of a political committee unless that employee has or will obtain 200 or more signatures on a statewide initiative, referendum, or recall petition in an election cycle. A.R.S. § 19-118(I)(1)-(2). Statewide initiative and referendum petition circulators may not be paid based on the number of signatures collected. Signatures collected by circulators who are paid per-signature are void. A.R.S. § 19-118.01.[54]

Any paid circulator, whether a resident or non-resident of Arizona, is required to register with the Secretary of State prior to circulating: (i) a statewide initiative or referendum petition; or (ii) a recall petition in any Arizona jurisdiction. Failure to do so invalidates the petition signatures collected by the circulator prior to registration. A.R.S. § 19-118(A); A.R.S. § 19-102(E); A.R.S. § 19-205.01(A).

All initiative, referendum, and recall petition circulators, whether or not they are required to register with the Secretary of State, must indicate their paid or volunteer status by checking the appropriate box on each petition sheet prior to circulation. Failure to indicate on an initiative or referendum petition sheet whether the circulator is paid or acting as a volunteer invalidates any signatures collected on that petition sheet. A.R.S. § 19-101(C)-(E); A.R.S. § 19-102(C)-(E); A.R.S. § 19-204(C)-(E).[55]

## B. Non-Resident Circulators

Circulators who are not residents of Arizona must register with the Secretary of State prior to circulating: (i) a statewide initiative or referendum petition; (ii) a recall petition in any Arizona jurisdiction; or (iii) a candidate petition in any Arizona jurisdiction (statewide, county, city, or town). Failure to do so invalidates the signatures collected by the circulator prior to registration. A.R.S. § 19-118(A); A.R.S. § 19-205.01(A); A.R.S. § 16-321(D).

A circulator who lists an out-of-state address on the back side of a petition sheet is deemed to be a non-resident circulator.

---

[54] A.R.S. § 19-118.01 does not prohibit circulators from being paid per signature collected for local initiatives. *See Ariz. Chapter of the Associated Gen. Contractors of Am. v. City of Phoenix*, 247 Ariz. 45, 445 P.3d 2 (2019).

[55] The "paid circulator" or "volunteer" status boxes may be pre-marked by the circulator or, with the consent and knowledge of the circulator, the committee or petition circulating organization may pre-mark the correct box on behalf of the circulator.

## C. Circulator Registration Procedures

Circulator registration must be conducted as prescribed by the Secretary of State through the electronic Circulator Portal (https://apps.azsos.gov/apps/election/circulatorportal/). A circulator registration is not complete until the Secretary of State confirms the registration in writing. A.R.S. § 19-118(A); A.R.S. § 19-205.01(A); A.R.S. § 16-452(A). Once a circulator is properly registered, the circulator must select in the Circulator Portal the petition(s) they will circulate (by serial number and/or candidate name).

To allow for circulators to comply with the requirements of A.R.S. § 19-118(B), a circulator shall file a separate affidavit for each petition they wish to circulate. To that end, the circulator shall upload a new affidavit and indicate a new committee address for each petition.[56]

Circulators must satisfy the following requirements when registering with the Secretary of State through the Circulator Portal:

- Provide his/her name, residential address or description of residence location, telephone number, and email address;

- Consent to the jurisdiction of Arizona courts in resolving any disputes concerning the circulation of petitions by that circulator;

- Indicate the committee's address in Arizona (for statewide initiative or referendum petitions) or a designated address in Arizona (for candidate petitions) at which the circulator will accept service of process related to disputes concerning circulation of that circulator's petitions;

- Indicate the circulating organization at which the circulator is employed (if applicable); and

- For circulators of recall or statewide initiative or referendum petitions, provide a notarized circulator affidavit declaring that the circulator is eligible to register, that all information contained in the registration is true and correct, and that the circulator has read and understands Arizona election laws applicable to the collection of signatures for a recall or statewide initiative or referendum. Exact language to be included in the affidavit can be found at A.R.S. § 19-205.01(B)(5) (for recalls) and A.R.S. § 19-118(B)(5) (for statewide initiatives and referenda).

Circulators registering through the Circulator Portal will be prompted to upload an electronic copy of the notarized circulator affidavit, which must first be accepted by the Secretary of State's Office before the circulator is permitted to register to circulate a recall or statewide initiative or referendum petition. The circulator, committee, or circulating organization should retain the original notarized circulator affidavit in case it is necessary for a court challenge.

A.R.S. § 19-118(B); A.R.S. § 19-205.01(B).

---

[56] *See Leibsohn v. Hobbs*, 254 Ariz. 1, 46 (2022) ("Construing subsection (B)(5) through the lens of the entire application process, we conclude that a new circulator affidavit is plainly required for each initiative petition a circulator wishes to circulate.")

The applicable committee and/or the circulating organization that employs petition circulators, at the direction of the applicable committee, may coordinate with their circulators to gather the necessary information including, if applicable, notarized circulator affidavits and facilitate submission of registration applications through the Circulator Portal.[57]

The Secretary of State's Office has no obligation to review the substance of circulator registrations to ensure that accurate or proper information has been provided. The circulator remains solely responsible for compliance with all legal provisions.[58]

Within five business days after submission of a circulator registration application, the Secretary of State will assign a random circulator ID number to each such circulator. A.R.S. § 19-118(C); A.R.S. § 19-205.01(C). An ID number shall not be assigned until after the affidavit is uploaded and the registration is complete. The circulator ID number is permanently assigned to the circulator and must be used for all petitions being circulated by that individual (regardless of the election cycle or which petition is being circulated).

The circulator ID number of registered circulators must be printed on the front and back of each recall or statewide initiative or referendum petition sheet. A.R.S. § 19-121(A)(2); A.R.S. § 19-121.01(A)(1)(c); A.R.S. § 19-208.01(A)(1)(c). In contrast to the petition serial number, the circulator ID number may be placed on the petition sheet at any time prior to submitting the petition sheets to the Secretary of State. The circulator ID number may be pre-printed on petition sheets and need not be written on the petition sheet by the circulator personally.

A circulator may update or cancel their circulator registration for any or all measures directly through the Secretary of State's Circulator Portal. In addition, an authorized representative of the committee serving as an initiative or referendum proponent (*i.e.,* the committee designated on the initiative or referendum serial number application) may cancel the registration of circulators for its measure by providing to the Secretary of State's Office, in writing, a list of circulator names and identification numbers and a request that those circulators' registration for the specific measure be canceled. The committee must also provide notice of the cancellation request to each affected circulator.

---

[57] A committee may have more than one address; the committee address listed pursuant to A.R.S. § 19-118(B)(4) must merely be an address of the Committee that may be used for service of process. The address listed for service of process need not be the same address listed in the serial number application pursuant to A.R.S. 19-111(A). *See Leibsohn v. Hobbs*, CV 2022-009709, Ariz. Super. Ct., Maricopa County (Aug. 18, 2022) (under advisement ruling).

[58] The requirement to list certain information on the circulator portal does not mean that a circulator's signatures shall be disqualified if the circulator makes a mistake or inconsistency in listing that information (e.g., a phone number or email address that is entered incorrectly; a residential address that doesn't match the residential address listed on that circulator's petition sheets; etc.).

Such cancellation does not affect the validity of signatures collected by those circulators before the cancellation, but any signatures collected by canceled circulators thereafter are invalid if circulator registration was otherwise required.

### D. Service of Process on Registered Circulators

Circulators who are required to register must provide an address in Arizona at which the circulator will accept service of process related to disputes concerning circulation of that circulator's petitions. For circulators of recall or statewide initiative or referenda petitions, this address must be the address of the committee in this state for which the circulator is gathering signatures. In the event of litigation regarding the petition circulated, service of process on the circulator is effective by delivering a copy of the subpoena to that person individually, by leaving a copy of the subpoena with a person of suitable age, or by mailing a copy of the subpoena to the committee or circulator by certified mail to the address provided on the circulator's registration application. A.R.S. § 19-118(B)(3)-(4), (E); A.R.S. § 19-205.01(B)(3)-(4), (E); A.R.S. § 16-315(D).

### III. SIGNATURE GATHERING AND VERIFICATION REQUIREMENTS

Every person who signs a paper petition must do so in the presence of a circulator, therefore a circulator must personally witness each collected signature.

- For an initiative, referendum, or recall petition, the circulator must execute the circulator affidavit of verification on the back of the petition before a notary after collecting signatures on a paper petition sheet. A.R.S. § 19-112(A), (C)-(D); A.R.S. § 19-205; A.R.S. § 19-204.

- For a candidate petition or petition for new party recognition, the circulator must sign the circulator verification statement on the back of the petition sheet, but notarization is not required. A.R.S. § 16-321(D).

Additionally, an initiative, referendum, or recall petition must have a copy of the official and correct title and text attached to the petition sheet before any signatures are obtained on that sheet. A.R.S. § 19-112(B)-(C); A.R.S. § 19-202.01(D); A.R.S. § 19-203(D). For statewide measures, the political committee or circulator must ensure that the staple is placed within the designated area in the upper-left corner of the petition sheet.

Qualified electors who require assistance in completing and/or signing a petition due to a physical disability or medical condition shall not be prevented from signing a petition solely on that basis. If a petition circulator assists a qualified elector in signing a petition, as a best practice, the circulator should execute a supplemental affidavit (in addition to the circulator affidavit on the petition sheet) specifying that the voter required, and asked for, assistance.

More information regarding signature collection requirements and circulator verification, including the Secretary of State's recommended best practices, is available on the Secretary of State's website at www.azsos.gov/elections.

# CHAPTER 7:
## PRESIDENTIAL PREFERENCE ELECTION

### I.    TIMING

A Presidential Preference Election (PPE) shall be held on the Tuesday immediately following March 15 in a presidential election year or on a later date pursuant to a proclamation issued by the Governor at least 180 days before the date set forth in the proclamation. No other election may appear on the same ballot as the PPE. A.R.S. § 16-241(A)-(B).

### II.    ELIGIBILITY TO PARTICIPATE IN THE PPE

#### A. Party Eligibility to Participate in the PPE

Only political parties eligible for continued representation on the ballot pursuant to A.R.S. § 16-804 and new political parties eligible to appear on the ballot pursuant to A.R.S. § 16-801 may participate in the PPE. A.R.S. § 16-244(A). New parties must have filed their petition for recognition as a new party with the Secretary of State between 180 and 150 days before the PPE in order to be eligible to participate in the PPE. A.R.S. § 16-244(A)(2).

Eligible political parties are not required to participate in the PPE, and may opt to conduct their own election or caucus instead. *See Arizona State Democratic Committee v. Hull*, No. CV96-00909 (Maricopa County Super. Ct., Feb. 1, 1999) (holding that the PPE is different from a primary election and political parties can choose whether or not to participate). If an eligible party chooses not to participate in the PPE, the state party's chairperson must notify the Secretary of State in writing by September 1 (or the next business day if that date falls on a weekend or state holiday) of the year preceding the PPE. The Secretary of State will promptly notify county officials and provide further instructions as needed.

#### B. Eligibility to Vote in the PPE

The "open primary" laws, AZ. Const. Art. 7 § 10, do not apply to the PPE. Only qualified electors registered with the political parties participating in the PPE may vote in the PPE. Independent voters or voters with no party preference and voters affiliated with a political party that is not participating in the PPE may not participate unless they change their party registration or affiliation to that of a participating political party by the deadline to register to vote in the PPE. A.R.S. § 16-241(A); *see also* Attorney General Opinion No. I99-025 (R99-049).

Voters not on the AEVL may request a ballot-by-mail for the PPE between 93 and 11 days before the election. A.R.S. § 16-246(A).

### C. Candidate Participation in the PPE

Candidates seeking to appear on the PPE ballot must meet the requirements set forth in A.R.S. § 16-242. Candidates may file with the Secretary of State either:

- A nomination paper and nominating petitions signed by at least 500 qualified electors who are eligible to vote for the candidate in the PPE; or

- A notice of candidacy affirming that they are on the PPE ballot of at least two other states.

A.R.S. § 16-242(C)-(E).

Write-in candidates are prohibited. Votes shall only be counted and canvassed for those candidates whose names appear on the PPE ballot. A.R.S. § 16-247.

The Secretary of State will certify to counties the names of candidates who qualify for the PPE ballot within 72 hours of the close of the filing period. A.R.S. § 16-242(F). The filing period for the PPE is 130 to 100 days before the PPE. A.R.S. § 16-242(B).

### III.   PPE BALLOTS

### A. Official Ballot

Official ballots for the PPE must meet the following requirements:

1. If more than one party is participating, ballots must be printed on different colored paper for each party or on white paper with a different colored stripe or color designation for each party at the top or bottom of the ballot;

2. Only one party may be represented on each ballot;

3. The top of each ballot must contain the words, "Official Ballot of the _____ Party, Presidential Preference Election (date), County of _____, State of Arizona."

4. Candidate names must be printed in a random order determined by the Secretary of State through the drawing of lots. Rotation of candidate names is prohibited. Above the list of candidate names, the title "_____ Party Candidates for President of the United States" should be printed, along with "vote for not more than one" immediately below the title. The ballot may also contain other printed instructions to voters as prescribed for other elections.

5. The ballot should be configured so that it may be tabulated by congressional district.

A.R.S. § 16-245; A.R.S. § 16-249(C).

### B. Ballot Proof

The officer in charge of elections must provide a ballot proof to the chairperson of each participating political party within five days of receiving the list of certified candidates from the Secretary of State. A.R.S. § 16-245(C).

### C. Sample Ballots

Sample ballots for the PPE must be mailed to each household containing a registered voter eligible to participate, unless each qualified voter is on the AEVL. A.R.S. § 16-245 (D)-(E).

## IV.    CONDUCT OF THE PPE

The PPE should be conducted in the same manner as any primary election held pursuant to A.R.S. § 16-201. All provisions of other laws governing elections, except as otherwise provided in Title 16, Chapter 2, Article 4, apply to the PPE, including laws relating to registration and qualification of electors. A.R.S. § 16-241(C)(D). The PPE is also subject to the hand count procedure detailed in Chapter 11, Section VII.

### A. Voting Locations

Not less than 20 days before a PPE, the Board of Supervisors must designate a reasonable and adequate number of voting locations for the PPE, based on the number of active registered voters as of January 2 of the year of the PPE. A.R.S. § 16-248(A)-(B). County Boards of Supervisors must follow the formulas set out in A.R.S. § 16-248(C)-(E) to determine the maximum allowable number of polling places. The Secretary of State may release a county from these limits if complying with them would jeopardize compliance with federal or state law. A.R.S. § 16-248(F). In addition, the limits and consolidation requirements do not apply to Native American reservations. A.R.S. § 16-248(G).

The officer in charge of elections may conduct the PPE entirely by mail in precincts with fewer than 300 active, registered voters (except for on Native American reservations). A.R.S. § 16-248(H).

In addition to Election Day voting locations, County Recorders may establish on-site early voting locations and provide for special election boards within the time limits and procedures applicable to other elections. A.R.S. § 16-246(C); *see also* A.R.S. § 16-542. With authorization from the Board of Supervisors, a County Recorder may also establish emergency voting centers between 5:00 p.m. on the Friday preceding the PPE and 5:00 p.m. on the Monday preceding the PPE. A.R.S. § 16-246(F).

The County Recorder and officer in charge of elections shall consult with the appropriate tribal government(s) when selecting voting locations on reservations within the county, and in preparing minority language translations required under Section 203 of the Voting Rights Act.

## B. Certification of Results

### 1. The Board of Supervisors

The results of the PPE must be canvassed by congressional district. A.R.S. § 16-249(C). Each county Board of Supervisors should meet to canvass the returns within 10 days after the PPE and provide a certified permanent copy of the official canvass to the Secretary of State on paper and electronically.

### 2. Secretary of State

The Secretary of State must canvass the returns and certify the results of the PPE to the chairpersons of participating political parties on or before the second Monday after the PPE. A.R.S. § 16-661, relating to automatic recounts, does not apply. A.R.S. § 16-249(A)-(B).

## V.   COUNTY REIMBURSEMENT FOR THE PPE

The Secretary of State, in consultation with County Recorders and other officers in charge of elections, must include in the budget request for the Secretary of State's Office sufficient funding from the state general fund to conduct the PPE. Counties are generally entitled to reimbursement for PPE costs at a rate of $1.25 for each active registered voter in the county as of January 2 of the year of the PPE. The Secretary of State may release a county from this reimbursement rate upon determining that being bound by it would jeopardize the county's compliance with federal or state laws and regulations. A.R.S. § 16-250.

# CHAPTER 8:
## PRE-ELECTION PROCEDURES

| I. | ESTABLISHING PRECINCTS AND VOTING LOCATIONS |
|---|---|

### A. Establishing Precincts

The Board of Supervisors must establish a convenient number of election precincts within the county and define those precincts' boundaries. If the Board of Supervisors seeks to change existing precinct boundaries, for example, to address population shifts or excessive wait times, the Board must finalize those changes by October 1 in the year preceding a general election and deliver a complete description of the updated precinct boundaries to the County Recorder or other officer in charge of elections. A.R.S. § 16-411(A). The new precinct boundaries become effective on January 2 of the year of the general election. A.R.S. § 16-412.

### B. Establishing Voting Locations

Counties may conduct Election Day voting using one of two types of voting locations (or any combination thereof, as approved by the Board of Supervisors):

- **Polling places**: voters in a particular precinct are required to vote at a polling place specifically designated for that precinct; or

- **Vote centers**: voters are permitted to vote at any vote center within the county, regardless of which precinct the voter lives in.

Collectively, polling places and vote centers are referred to as "voting locations" in this Manual.

Upon approval of the Board of Supervisors, the officer in charge of elections may establish precinct-based assigned polling places and/or vote centers, or any combination thereof, including co-location of precinct polling places or vote centers that also serve as assigned polling places for certain precincts. *See* A.R.S. § 16-411(B)(4).[59] In any case, the Board of Supervisors (in consultation with the officer in charge of elections) has a duty to establish a reasonable and adequate number of voting locations for an election. A.R.S. § 16-411(B)(3).

Except for the designation of an emergency voting location pursuant to A.R.S. § 16-411(I), the Board of Supervisors must finalize all voting locations at least 20 days before a statewide primary or general election or 10 days before a special election. A.R.S. § 16-411(B). Thereafter, the Board of Supervisors or officer in charge of elections must publicly post the names and/or locations of each voting location on the county's website. A.R.S. § 16-411(G).

---

[59] Counties that have tribal lands located within the county shall consult with the appropriate tribal government to ensure that a reasonable and adequate number of voting locations are located on or near tribal lands for the election.

### 1. Assigned Polling Places

If a county decides to conduct elections using precinct-based assigned polling places, the Board of Supervisors must designate at least one polling place in each precinct. A.R.S. § 16-411(B).[60]

If no suitable polling place is available within a precinct, the Board of Supervisors may designate a polling place in an adjacent precinct. The Board of Supervisors must make a specific finding that there is no suitable polling place within the precinct and include that finding in a separate section of the order or resolution designating polling places for the election. A.R.S. § 16-411(B)(1).

Based on projected high voter demand, precincts may be split for administrative purposes to allow a polling place to be established in each precinct split. Arizona statute requires these polling places to "be listed in separate sections of the [Board's] order or resolution" designating polling places for the election. A.R.S. § 16-411(B)(2).

Based on projected low voter demand (specifically, a high number of AEVL voters), adjacent precincts may be combined for administrative purposes to allow multiple precincts to be serviced by the same polling place and same election board. The Board of Supervisors must make a specific finding that a high number of AEVL voters is likely to substantially reduce the number of voters appearing at one or more specific polling places on Election Day and include that finding in a separate section of the order or resolution designating polling places for the election. A.R.S. § 16-411(B)(3).

### 2. Vote Centers

The Board of Supervisors may establish vote centers in lieu of precinct-based polling places. A vote center allows voters from any precinct within the county to cast a ballot with the correct ballot style on Election Day. Vote centers must be established by a vote of the Board of Supervisors and in consultation with the County Recorder and officer in charge of elections. A.R.S. § 16-411(B)(4).

Vote centers typically entail ballot tabulation exclusively at the central counting place, without use of precinct voting equipment that will warn voters of an over-vote. If ballots are not tabulated at the vote center, the officer in charge of elections must establish a voter education program that (1) notifies voters of the effect of casting multiple votes for an office, and (2) provides the voter with instructions on how to correct the ballot before it is cast (including instructions how to spoil the ballot and correct the error through issuance of a replacement ballot). 52 U.S.C. § 21081(a)(1)(B).

---

[60] The Board of Supervisors is not required to designate a polling place for special district or all ballot-by-mail elections, but may designate one or more sites in each district for voters to deposit voted ballots through 7:00 p.m. on Election Day. A.R.S. § 16-411(D). *See also* Chapter 3, Section IV.

### C. Failure to Timely Establish Polling Places

In counties that utilize assigned polling places, if a Board of Supervisors fails to designate a polling place in a particular precinct before a primary or general election (or if the election cannot be held at the polling place originally designated by the Board of Supervisors and the County Recorder or other officer in charge of elections has not designated an emergency polling place for that precinct for Election Day), the Justice of the Peace of the precinct shall designate the polling place and post public notice two days before the election in at least three locations in the precinct. A.R.S. § 16-411(C).

If the Justice of the Peace fails to do so (or there is no Justice of the Peace for the precinct), the election board of the precinct must designate and give notice of the place for holding the election. A.R.S. § 16-411(C).

### D. Consolidation of Polling Places Based on Lack of Candidates

In counties that conduct assigned polling place elections, if there are no candidates for elected office appearing on the ballot in a particular precinct, the Board of Supervisors may consolidate polling places (and consolidate the tabulation of results in combined precincts) if the following conditions apply:

- All affected voters are notified by mail of the change at least 33 days before the election;

- Notice of the change in polling place includes notice of the new polling place, notice of the hours polls are open on Election Day, and notice of the telephone number to call for voter assistance; and

- All affected voters receive information on early voting, which includes information on how to make a one-time early ballot request.

A.R.S. § 16-411(C)(1)-(3).

### E. Factors to Consider When Selecting Voting Locations

The following factors should be considered when selecting voting locations:

1. The location should be capable of being used in both the primary and general election;

2. Buildings must be appropriately sized based on projected voter turnout, among other predictive factors (*see* Chapter 8, Section IX(A));

3. Property owners must be willing to grant permission to use the building for voting purposes on Election Day, including making the building available the day(s) before Election Day, early morning on Election Day, and until a reasonable time after the polls close on Election Day;

4. Buildings should have easy ingress and egress to the parking lot, including a parking lot in close proximity to the building;

5. Buildings must meet accessibility requirements or be adapted to meet accessibility requirements for Election Day (*see* Chapter 5, Section III);

6. Buildings must have a room or hallway of sufficient size to meet the needs for setting up equipment and voter check-in stations, including adequate space for voters to wait in line;

7. Buildings should have an adequate power source;

8. The property should be located near major traffic arteries, including within walking distance of public transit where possible;

   • For polling places on tribal lands without close access to public transit and major highways, the property should be in a central location on the tribal lands or a location where tribal members frequently gather;

9. The decision of where to locate a polling place or vote center should have public support, especially through outreach to rural and underserved communities, and, for counties with tribal reservations, through outreach to tribal governments;

10. In counties that conduct assigned polling place elections, the polling place must be located within the applicable precinct, unless applicable exceptions apply (*see* Chapter 8, Section (I)(B)(1));

11. Voters should not have to travel unreasonable distances to vote;

    • Factors to consider in establishing voting locations include access to paved roads, rates of available public and personal transportation, and other relevant factors;

12. The property must have sufficient parking for voters' use on Election Day;

13. If reused, the voting location must have been successfully used in the past;

14. Whenever possible, voting locations should not be placed inside of police stations, court houses, or other locations with a regular uniformed police presence, unless the voting location is specifically intended to serve eligible incarcerated voters; and

15. For Counties that have tribal land located within a precinct, the County should consider placing voting locations on tribal lands in consultation with the tribe(s).

The elections staff should conduct a site visit to confirm the location's suitability for voting. The officer in charge of elections should also solicit community feedback on all proposed voting locations if practicable.[61]

---

[61] In some locations there are manual or electronic gates that will need to be opened outside of the normal operating hours for a facility (e.g., school, public building, public park). If so, prior to Election Day, one of the election workers shall be responsible for coordinating access through any gates or other barrier that would be closed outside of the normal operating hours of the facility.

## F. Use of School Facilities for Voting Locations

Upon request of the officer in charge of elections, a public school must provide sufficient space for use as a voting location in any statewide, county, city, or town election. A.R.S. § 16-411(E).

The principal of a public school may deny the request to host a voting location if, within two weeks of receiving the request, the principal provides a written statement confirming: (1) the school lacks sufficient space to host a voting location; or (2) the safety or welfare of students would be jeopardized by hosting a voting location. A.R.S. § 16-411(F).

## G. Polling Place/Vote Center Emergency Designation

A County Recorder or other officer in charge of elections may grant an emergency designation to a polling place/vote center if either of the following occurs:

- An act of God renders a previously established Election Day voting location unusable; or
- The County Recorder or other officer in charge of elections has exhausted all options and there are no suitable facilities that are willing to host an Election Day voting location unless the facility receives an emergency designation.

A.R.S. § 16-411(I).

At least two weeks before Election Day, the County Recorder or other officer in charge of elections must post on its website a list of polling places/vote centers with emergency designations and must specify:

- The reason the emergency designation was granted; and
- The number of attempts made to find another voting location before granting an emergency designation.

A.R.S. § 16-411(H).

Electioneering and other political activity is not permitted on the property of the hosting facility of any polling place/vote center with an emergency designation, even outside the 75-foot limit. A.R.S. § 16-411(I). However, if the voting location is not listed on the jurisdiction's elections website as having an emergency designation, electioneering and other political activity must be permitted on the premises outside the 75-foot limit. A.R.S. § 16-411(H).

If an emergency arises after the initial website posting, the County Recorder or other officer in charge of elections must:

- Update the website as soon as is practicable to include any new emergency designations of polling places/vote centers;
- Highlight the new voting location(s) with an emergency designation on the website; and

- Like other locations with an emergency designation, specify the reason the emergency designation was necessary and the number of attempts that were made to find a standard voting location before granting an emergency designation. A.R.S. § 16-411(H).

### H. Requirement to Allow Electioneering Outside 75-Foot Limit

Except in cases of an emergency designation (*see* Chapter 8, Section I(G) above), any voting location or ballot replacement site used on Election Day or during on-site early voting must permit persons to engage in electioneering and other political activity in public areas (*i.e.*, those areas generally open to the public) and parking lots used by voters outside the 75-foot limit. A.R.S. § 16-411(H).

Electioneering or political activity may not result in voter intimidation. Further, no temporary or permanent structure may be erected and access to parking spaces may not be blocked or impaired. A.R.S. § 16-411(H).

### I. Ensuring Accessibility at the Voting Location

Voting locations must comply with the current ADA Checklist for Polling Places and any additional state accessibility requirements. *See* Chapter 5, Section III for more details.

## II.   APPOINTMENT AND TRAINING OF POLL WORKERS AND OTHER ELECTION STAFF

### A. Certified Election Officers

A person shall not perform the duties or exercise the authority of an election officer, the clerk of the board of supervisors, or the County Recorder in the performance of election duties in or on behalf of any county unless the Secretary of State has certified that person as an election officer following completion of the Secretary of State's election officer certification program. A.R.S. § 16-407(A). The following are exempt from the certification requirement:

- Elected officials;
- Clerical and secretarial personnel;
- Counting center personnel;
- Election board members (*i.e.*, poll workers); and
- Election officials in cities or towns.[62]

A.R.S. § 16-407(E). An attendee of the election officer certification program must sign the Secretary of State's Arizona Election Official Code of Conduct in order to be certified.

---

[62] *But see* A.R.S. § 16-407(F) (allowing city or town employees to complete the Secretary of State's election officer training program or a training program established by the city or town and approved by the Secretary of State).

### B. Poll Workers

At least 20 days before a primary or general election, the Board of Supervisors must appoint at least the following poll workers (collectively referred to as an "election board") for each polling place with 300 or more qualified electors and each vote center or other voting location:

- One inspector;
- Two judges;
- One marshal; and
- As many clerks as deemed necessary.

A.R.S. § 16-531(A).

For polling places with less than 300 qualified electors, the Board of Supervisors must appoint at least an inspector and two judges. The Board of Supervisors shall give notice of election precincts consisting of fewer than 300 qualified electors to the county chairperson of the two largest political parties not later than 30 days before the election. A.R.S. § 16-531(B).

The inspector, judges, marshal (and clerks, if applicable) are collectively known as the "election board" [63] for a particular voting location and are referred to in this Manual as poll workers or board workers. The officer in charge of elections must provide a report containing each poll worker's name, position, precinct, and political party to the Board of Supervisors.

Poll workers must be registered voters, except for student poll workers. In assigned polling place elections, each poll worker must be a registered voter in the precinct of assignment unless there are not enough poll workers that meet this residential requirement, in which case poll workers must be qualified voters of the state. A.R.S. § 16-531(A). Similarly, for vote centers, each poll worker must be a registered voter in the county unless there are not enough poll workers that meet this residential requirement, in which case poll workers must be qualified voters of the state.[64]

Other than candidates for precinct committeeman, no candidate (nor the spouse, child, or parent of a candidate) for any office on the ballot may serve as a poll worker during that election.

---

[63] Notwithstanding A.R.S. § 16-531(A)'s reference to judges and the inspector, Arizona statutes generally provide that the election board is comprised of all poll workers at a particular voting location. *See, e.g.*, A.R.S. § 16-531(G) (allowing students to be appointed to an election board as clerks). This Manual accordingly adopts the interpretation of "election boards" to include inspectors, judges, marshals, and clerks.

[64] The officer in charge of elections should make reasonable efforts to recruit enough poll workers from within the precinct or county prior to hiring out-of-precinct or out-of-county poll workers. The officer in charge of elections shall also ensure that community poll worker recruitment is conducted in an equitable manner, to recruit a diverse pool of poll workers that reflect the community. To the extent possible, poll workers assigned to voting locations on tribal land should be registered voters in the precinct or reservation, or members of the Tribe.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The officer in charge of elections shall ensure that the election board is comprised of individuals registered with different political parties. At minimum, for partisan elections, if the inspector is a member of one of the two largest political parties, the marshal must be a member of the other of the two largest political parties and each of the two judges must be registered with different political parties. An inspector, marshal, or judge may not serve in that position if they have changed their political party registration since the last general election.

At least 90 days before an election, the county chairpersons of the two largest political parties may designate qualified electors to serve on election boards. When the list is timely submitted, it shall be used to appoint judges. Whenever possible, any person appointed as an inspector shall have had previous experience as an inspector, judge, marshal, or clerk of elections. If there is no qualified person in a given precinct, the appointment of an inspector may be made from names designated by the county party chairperson. Any registered voter in the precinct, or alternatively, in another precinct, may be appointed as a clerk.  A.R.S. § 16-531(A).[65]

### 1.  Election Board Duties

The following duties must be performed by the members comprising the election board. The officer in charge of elections may allocate these duties among different board members as deemed appropriate:

1.  Prepare and monitor the voting location, including taking appropriate measures to preserve order, prevent voter intimidation, and manage voter lines, A.R.S. § 16-562, A.R.S. § 16-512;

2.  Open, exhibit, and lock the ballot box before receiving any ballots, A.R.S. § 16-564(A);

3.  Maintain the signature roster or e-pollbook;

4.  Check for proper identification;

5.  Direct voters in the wrong polling place to vote the correct ballot style on an accessible voting device or to go to the correct polling place, including the specific address (for assigned polling place elections only);

6.  Mark spoiled ballots (inspector and only one judge required), A.R.S. § 16-585; and

7.  Ensure that voted ballots are deposited in the correct ballot box, and deposit ballots in the ballot box at the voter's request, A.R.S. § 16-580(C);

---

[65] If it is impossible to sufficiently staff the boards with members of differing political parties, the officer in charge of elections shall, at minimum, exercise best efforts to utilize board members with no party affiliation or from differing unrecognized parties to ensure that there is a diversity of political party affiliation (including no affiliation) on the election boards and that no election board is comprised of members of only one party. Further, the officer in charge of elections shall document when and how the political parties in the county were contacted about the need for board workers affiliated with those parties and all other actions taken in a best effort to obtain board workers from two different political parties. However, nothing in this Manual shall be interpreted to supersede otherwise applicable statutory requirements, including the requirement that board workers be of differing political party affiliation.

8. Assist voters in using accessible voting equipment and assist voters in marking the ballot (two board members of different political parties required), A.R.S. § 16-580(E);

9. Close the polls (inspector and two judges required); A.R.S. § 16-565(C);

10. Prepare a report of the number of voters who have voted and seal the box containing the voted ballots, A.R.S. § 16-608(A), A.R.S. § 16-616; and

11. Return the signature roster, copies of the precinct registers, and other election supplies to the Board of Supervisors or officer in charge of elections. A.R.S. § 16-617.

In addition, the inspector, marshal, and judges of the election board are specifically tasked with the responsibilities described below.

### a. *Inspector*

The inspector serves as the chair of the election board and exercises authority over all election-related activities at the voting location (under the direction of the county officer in charge of elections, who maintains overall authority over the voting location). The inspector usually acts as the single point-of-contact with the officer in charge of elections, poll worker hotline, troubleshooters, or other entity designated by the officer in charge of elections to provide assistance on Election Day.

The inspector's specific duties include the following:

1. As chair of the election board, maintain sufficient knowledge about election procedures and voting equipment;

2. Lead and assign duties to other poll workers, including appointing a substitute judge, marshal, or clerk (while maintaining political party balance) if a poll worker fails to show up or fails to perform their duty on Election Day and no alternative poll worker is available, A.R.S. § 16-534(A), A.R.S. § 16-533; and

3. Ensure the polling place is set up and functions properly, including publicly opening the sealed package of official ballots, ensuring the required ballot styles/types are present, certifying the voting roster, posting appropriate lists and notices, arranging the voting booths, and assisting electors, A.R.S. § 16-563, A.R.S. § 16-312(E), A.R.S. § 16-343(F)-(G), A.R.S. § 16-169(B), A.R.S. § 16-579(D)-(E), A.R.S. § 16-572(A).

### b. *Marshal*

The marshal is responsible for preserving order at the voting location, which includes:

1. Announcing the opening and closing of the polls, A.R.S. § 16-565(C);

2.  Preserving order and preventing any violation of election law, including electioneering within the 75-foot limit or voter intimidation, from the opening of the polls until the count of the ballots is completed, A.R.S. § 16-535(B); and

3.  Periodically measuring the length of wait times, notifying the inspector if wait times have the potential to equal or exceed the 30-minute maximum, and implementing measures to reduce voter wait time, including having the authority to request additional voting equipment or supplies and board workers or to appoint additional board workers upon approval of the officer in charge of elections, A.R.S. § 16-535(B).

The marshal may also perform the duties of any other election board worker on a relief basis. A.R.S. § 16-535(B).

### c.  *Judges*

Judges oversee the voting process itself, which may generally include:

1.  Issuing ballots to qualified voters, A.R.S. § 16-579(C), A.R.S. § 16-467(B), A.R.S. § 16-572(B);

2.  Signing the roster for an elector who is unable to sign because of physical disability, A.R.S. § 16-579(D)-(E); and

3.  Examining electronic voting equipment and comparing the number of votes cast as indicated on the machine with the number indicated on the poll list (or e-pollbook) and the number of provisional ballots cast, A.R.S. § 16-602(A).

### 2.  Bilingual Poll Workers

Jurisdictions covered under the language minority provisions under Section 203 of the Voting Rights Act should appoint bilingual poll workers and/or ensure access to on-site or remote interpretation services in the covered language(s) to provide language assistance to voters who need it. Additionally, an Election Terminology Glossary in the covered languages should be provided among the polling place supplies. Covered jurisdictions for tribal languages should contact the applicable tribal government if they need assistance recruiting and hiring bilingual poll workers.

### 3.  Student Poll Workers

The Board of Supervisors may appoint a student to serve as a clerk on the election board if the student:

•   Will be at least 16 years old at the time of the election;

•   Will be a United States citizen at the time of the election; and

•   Provides written permission from a parent or guardian.

A student poll worker must receive poll worker training and must be supervised by a trained adult poll worker at the voting location. A.R.S. § 16-531(F).

A student's absence from school due to service as a student poll worker does not affect the school's average daily membership or count against any mandatory attendance requirements for the student. A.R.S. § 15-901(A)(1); A.R.S. § 16-531(G).

### 4. Poll Worker Training

Within 45 days before an election, the officer in charge of elections must conduct poll worker training for inspectors, judges, and any other election board members deemed necessary by the officer in charge of elections. A.R.S. § 16-532(A). At least one poll worker training session should be conducted in-person during each election cycle, but additional training may be conducted online as deemed necessary. Additionally, the officer in charge of elections should develop a mechanism to assess individual poll workers' performance following the election.

Persons who conduct poll worker training must be qualified in election law and have practical experience in the election process. A.R.S. § 16-532(A)-(B). Persons who conduct poll worker training must also be certified by the Secretary of State as an election officer in accordance with A.R.S. § 16-407 or under the management of a certified election officer.

Poll worker training must cover the following pre-Election Day topics, as applicable:

1. Delivery of ballots and supplies to the voting location;

2. Duties of each election board member;

3. Ensuring proper political party representation among election board members;

4. Conducting a pre-election meeting;

5. Gaining building access;

6. Inventorying supplies;

7. Equipment setup and furniture arrangement;

8. Voting equipment checks, including ensuring that equipment seals have not been tampered with and match the seal log;

9. Conducting an official ballot count; and

10. Customer service responsibilities, including voter assistance, assistance to voters with a disability (including disability etiquette and awareness), and ensuring language accessibility.

Poll worker training must also cover the following Election Day topics, as applicable:

1. Opening the voting location;

2. Hours the voting location will be open;

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

3.  Poll workers' hours;

4.  Establishing the 75-foot limit and enforcing non-electioneering and non-intimidation rules;

5.  For poll workers assigned to voting locations on tribal reservations, sharing voting locations with tribal elections, common issues with nonstandard residential addresses, the use of post office boxes on government identification, rules relating to tribal identification, relevant tribal laws governing conduct on tribal land, and, if applicable, the right to language assistance;

6.  Procedures for checking identification;

7.  Provisional ballot processing;

8.  Operation of voting equipment;

9.  Operation of accessible voting equipment;

10. Operation of e-pollbooks or procedures for managing the signature rosters and poll lists;

11. Troubleshooting, including when and how to implement wait-time reduction and other contingency plans;

12. Any voter registration information deemed necessary;

13. Who may vote in the election;

14. Use of precinct registers and/or the issuance of ballot types/styles (political party, FED only, ballot splits, etc.);

15. Standard voting procedures;

16. Recorder's Certificates;

17. Spoiled ballot procedures;

18. Procedure for early ballot drop-off;

19. Political party observers;

20. Procedures for challenges;

21. Kids Voting;

22. Closing the polls;

23. Transmitting results and/or delivery of voted ballots;

24. Completing a Certificate of Performance, verifying that various election duties were properly performed; and

25. Preparing the official and unofficial envelope contents (*see* Chapter 8, Section V).

The officer in charge of elections may require additional training for poll workers at any time. Regardless of whether additional training is provided, however, poll workers must be notified in

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

writing prior to Election Day of any changes in election law or procedure that became effective since the last poll worker training. A.R.S. § 16-532(E).

### a. *Premium Training*

The officer in charge of elections may institute an advanced method of instruction and testing for certain election board members known as premium training. The premium training must include at least eight hours of training and a written examination on election law and procedures. A.R.S. § 16-532(D).

Those who complete this training and pass the test are certified as a "premium board worker." Premium board workers are certified for a period of 30 months and, if approved by the Board of Supervisors, are entitled to additional compensation. A.R.S. § 16-532(D).

The officer in charge of elections may require additional training for poll workers at any time. Regardless of whether additional training is provided, however, poll workers must be notified in writing prior to Election Day of any changes in election law or procedure that became effective since the last poll worker training. A.R.S. § 16-532(E).

### b. *Certificate of Qualification*

Upon successful completion of poll worker training, each election board member will receive a certificate of qualification from the Board of Supervisors or officer in charge of elections stating the worker's name and the course of instruction completed. No inspector or judge (except those appointed to fill a vacancy and as provided in A.R.S. § 16-533 and A.R.S. § 16-534) may serve on Election Day unless the person has been issued a certificate of qualification. A.R.S. § 16-532(A).

### 5. Poll Worker Compensation

The Board of Supervisors must set the compensation of poll workers, which constitutes a county charge. A.R.S. § 16-536. The Board of Supervisors may approve poll worker pay by virtue of approving the election director's budget for the forthcoming election.

Poll workers must be paid at least $30 per day. A.R.S. § 16-536. The Board of Supervisors may approve additional compensation for premium board workers. A.R.S. § 16-532(D).

### C. Election Administrator Code of Conduct

All offices tasked with election duties are encouraged to adopt a code of conduct to be signed and acknowledged by all staff and vendors carrying out such duties, including poll workers, board workers, central counting location workers, and other staff who directly support election administration (e.g., clerical, secretarial, and IT personnel). An Election Administrator Code of Conduct should establish ethical standards of behavior and may contain provisions substantially similar to the Secretary of State's Arizona Election Official Code of Conduct. An Election Administrator Code of Conduct and all officers responsible for overseeing staff covered by such a code of conduct shall comply with A.R.S. § 41-752.

### III.   DESIGNATION OF POLITICAL PARTY AND OTHER OBSERVERS

Political party representatives are permitted to observe at voting locations and central counting places for partisan elections. The proceedings at the central counting place may also be observed by up to three additional people representing a candidate for nonpartisan office or representing a political committee in support of or in opposition to a ballot measure, proposition, or question. Such observation (and observation at early voting locations, emergency voting centers, and County Recorder processing procedures, where permitted by the County Recorder or other officer in charge of elections) are subject to the procedures described below. Observation at nonpartisan elections may be permitted at the discretion of the officer in charge of elections. A.R.S. § 16-590(A)-(B); A.R.S. § 16-621(A).

The County Recorder or other officer in charge of elections may develop additional local procedures to allow political party observers the opportunity to effectively observe the election process.

### A. Appointment Process

The county chairperson (or designee) of each party represented on the ballot must submit the names of specific political party observers to the County Recorder or officer in charge of elections in writing (in hard copy or electronically in advance of observation, as required by the County Recorder or officer in charge of elections). The County Recorder or officer in charge of elections may require reasonable deadlines for advance notice of appointments. Where there is no county political party officer to make the appointment, the state political party chairperson may appoint political party observers for that county.

Political party observers may be appointed to specific voting locations (for Election Day observation), to a central counting place, or to multiple voting locations as authorized by the political party chairperson and the officer in charge of elections. Observers appointed to observe in multiple locations need only one appointment in writing designating the various locations where the observer is appointed. An appointment is not transferable to another individual.

Unless agreed upon by the political parties, not more than one party representative for each party represented on the ballot shall be at a voting location at one time. A.R.S. § 16-590(C). Further, only one representative at any one time of each political party represented on the ballot who has been appointed by the political party chairperson shall remain within the 75-foot limit while the polls are open. A.R.S. § 16-515(A), (B), (H).

Appointed political party observers must be Arizona residents and registered to vote in Arizona. A.R.S. § 16-590(D). Except for precinct committeeman candidates, candidates appearing on the ballot or official write-in candidates shall not serve as political party observers.

### B. Observer Credentials

The political party letter of appointment with the signature of the appointing authority (and, if required by the County Recorder or officer in charge of elections, on political party letterhead) serves as the written credential necessary to conduct observation at a voting location or central counting place. Credentials must be issued by the recognized political party chairperson or designee; this authority may not be delegated to a candidate or candidate's agent. The political party observer must present the political party appointment letter (or copy thereof, if permitted by the County Recorder or officer in charge of elections) to the appropriate election official upon entering the voting location, County Recorder's office, or central counting place, and be prepared to show identification if requested.

### C. Observation at Voting Locations

Political party observers may observe the following activities at a voting location:

- Opening the voting location;

- Voting at the voting location (but may not observe in the voting booth or otherwise impede voters' ability to vote and maintain a secret ballot);

- Closing the voting location;

- Transport of ballots from the voting location to a receiving site (using a separate vehicle); and/or

- Any other significant voting or processing activities at the voting location provided that it does not interfere with or impede the election procedures or staff.

Each recognized political party is presumptively entitled to have no more than one political party observer at a time inside the 75-foot limit at each voting location. A.R.S. § 16-590(C).

All political party observers are subject to removal by the County Recorder or other officer in charge of elections for failure to comply with a request to cease an activity that interferes with the election process or violates tribal (if the voting location is on a tribal reservation), state, or federal law.

### D. Observation at Central Counting Places

Political party representatives may observe at a central counting place and at each point where ballots are handled or transferred from one election official to another, including areas where the following activities take place:

- Receiving the ballots at the County Recorder's office or central counting place;

- Inspecting the ballots;

- Reviewing ballots by the Write-in Tally Board;

- Duplicating ballots by the Ballot Duplication Board;

- Adjudicating ballots by the Electronic Vote Adjudication Board;
- Receiving electronic media or processing voting results by the Accuracy Certification Board;
- Tabulation of ballots; and/or
- Any other significant tabulation or processing activities at a central counting place provided that it does not interfere with or impede the election procedures or staff.

### E. Observer Guidelines

The following observation guidelines govern all observers:

1.  An observer may not mark any ballot, place any type of material on a ballot, or otherwise touch a ballot during observation. Further, an observer shall not offer to assist any voter in the process of voting at a voting location or attempt to intimidate or influence a voter when voting. If a voter specifically requests an observer's assistance in voting, the observer may only assist the voter after relinquishing the observer's formal status as an observer (for example, by returning any observer badge or identification, exiting the voting location, and then accompanying the voter into the voting location as an assistant rather than an observer). The observer may resume their role as an observer after assisting the voter.

2.  Observers shall not touch or handle election materials, rosters, early ballot envelopes, provisional ballot envelopes, ballot transfer containers, voting machines, or voting machine components except as expressly permitted by the officer in charge of elections during demonstrations.

3.  Observers may not interfere with or impede the election procedures or staff.

    - If an observer has a question about the proceedings or seeks to raise an objection, the observer should speak solely to the designated point of contact (*e.g.*, inspector, County Recorder, or other officer in charge of elections) and not to other poll workers, staff, or voters.

    - The officer in charge of elections or inspector may prohibit observers from using electronic devices in the voting location or central counting place if doing so would interfere with or impede the election procedures or staff. No photos or videos may be taken within the 75-foot limit of a voting location. A.R.S. § 16-515(G).

    - Observers may not wear, carry, or display any materials that identify or express support or opposition for a political party, political organization, or a candidate or ballot measure appearing on the ballot. A.R.S. § 16-515(F).

    - In cases where multiple ballots are dropped off at a voting location, an observer may not, within the 75-foot limit: (1) inspect, copy, photograph, or record a video of the early ballot envelopes in an effort to discern voters' identities; or (2) confront, question, photograph, or record a video of the individual who dropped off the early ballots.

- Observers can enter and leave a voting location or central counting place so long as their entering and leaving does not interfere with or impede the election procedures or staff.

4. Observers may take handwritten notes during observation but must use a writing instrument of a color designated by the officer in charge of the election or procedure.

5. If an observer is asked by the inspector or other officer in charge to cease an activity that interferes with the election process or election staff or poll workers, the observer must comply or face possible ejection.

6. Observers must be prepared to show their appointment credential immediately upon entering any voting location or central counting place or upon request by any election official.

7. At a central counting place, all observers must check in with the County Recorder or other officer in charge of elections prior to being admitted and may be required to log in and out of the facility each time they enter or leave.

8. At a central counting place, the County Recorder or other officer in charge of elections may ensure that observers are given identifying badges to ensure that observers are clearly identifiable.

## IV.   ISSUING PRE-ELECTION NOTICES

### A. Secretary of State: 120-Day Notice of Offices to be Elected

At least 120 days before a primary election, the Secretary of State must notify in writing each Board of Supervisors and officer in charge of elections of the federal, statewide, and legislative offices for which candidates will be nominated at the primary election. A.R.S. § 16-202.

### B. County: 210-Day Notice of Election to Local Jurisdictions

At least 210 days before each consolidated election date, the Board of Supervisors or officer in charge of elections must give written notice to each school district, community college district, city, and town within the county's geographical boundaries. The Board of Supervisors or officer in charge of elections also must give written notice to all special taxing districts within the county. A.R.S. § 16-205(A).

The notice must include:

- The specific election date;

- The deadline by which the local jurisdiction must inform the Board of Supervisors or officer in charge of elections whether an election will be held; and

  - The deadline to inform the Board of Supervisors or officer in charge of elections should be set at or just after special taxing districts' 180-day deadline to call an election pursuant to A.R.S. § 16-226(A).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Any additional information deemed necessary by the Board of Supervisors or officer in charge of elections.

The notice may be mailed, emailed, or otherwise electronically transmitted.

### C. Special Taxing District/Nonpartisan Election Notices

The governing body of a special taxing district must provide various public notifications before conducting an election that is not held concurrently with a general election. A.R. S. § 16-226(B); A.R.S. § 16-227(A).[66]

- A special taxing district must call an election at least 180 days in advance of an election, except for elections called pursuant to A.R.S. § 19-209. A.R.S. § 16-226(A). "Calling" an election means the governing board of the special taxing district must officially inform the applicable Board of Supervisors or officer in charge of elections that the district intends to conduct an election.

- In addition, the special taxing district must also issue a "call of election" to the public by publishing the "call of election", at least two times and at least one week apart, in a newspaper of general circulation covering the jurisdiction during the six calendar weeks preceding 150 days before the election. A.R.S. § 16-227(A). If there is not a newspaper of general circulation in the election district, the governing body shall post the notice of election on the governing body's public website and at other locations at which the governing body customarily posts public notice of the governing body's public meetings. Alternatively, the special taxing district may mail the "call of election" to each household containing a qualified elector at least 150 days before the election. A.R.S. § 16-227(B).

- Finally, a special taxing district must issue a "notice of election," which is like the call of election but intended as the final public notice in advance of a special taxing district election. A.R.S. § 16-228(A)-(B). A special taxing district that conducts a ballot by mail election need only issue the notice specified in A.R.S. § 16-228(C)-(D). Notice requirements specific to fire district or irrigation and water conservation district bond elections can be found at A.R.S. § 48-806(A) and A.R.S. § 48-3190(A), respectively.

A special taxing district must file an affidavit certifying compliance with federal and state law with the applicable Board of Supervisors at least five days before holding a nonpartisan election. A.R.S. § 16-229.

### V.   PREPARATION OF BALLOTS

The County Board of Supervisors is responsible for preparing the official ballot to be used in federal, statewide, legislative, and countywide elections. A.R.S. § 16-405; A.R.S. § 16-503(A).

---

[66] A.R.S. §§ 16-225 to 16-229 outline various requirements for holding "nonpartisan" elections. A.R.S. § 16-226(B) defines nonpartisan elections (for purposes of those statutes) as elections of special taxing districts not held concurrent with the general election.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## A. Official Ballot Format

### 1. Form and Content of the Ballot

#### a. *Requirements for All Ballots*

##### i.   Paper Type

All official ballots must be printed with black ink on white paper of sufficient thickness to prevent the printing from being discernible on the reverse side the ballot. A.R.S. § 16-468(2); A.R.S. § 16-502(A).

##### ii.   Font

The ballot must use the same font and color template throughout the ballot. A.R.S. § 16-502(A), (C). The only color exception is for a political party indicator or stripe to be printed on official ballots used for a partisan primary election or PPE.

The ballot must use the same font size within each category on the ballot (for example, all candidate names for a particular race must be printed in the same font size), which must be printed in no less than 8-point font if practicable. However, ballot measure numbers must be printed in at least 12-point font. The officer in charge of elections may adjust spacing between the letters on a ballot to accommodate space limitations.

##### iii.   Early Ballot Designation

Early ballots, including ballots-by-mail and in-person early ballots, shall be identical to regular ballots, except that early ballots shall have the word "early" printed or stamped on them. A.R.S. § 16-545(A).

##### iv.   Spacing and Heading

The ballot must contain sufficient spacing between races and sections to enable the voter to clearly understand the ballot.

On the front side, the ballot must be headed with the phrase "Official Ballot" in bold-faced plain letters, with a heavy rule above and below the heading. The ballot may not contain any other statement or matter printed above the "Official Ballot" header. A.R.S. § 16-502(A).

Immediately below the "Official Ballot" heading, the following components must be printed in the following order:

- A subheading that specifies the type of election (general, primary, or special), the election date, and the name of the county and state holding the election;
- Instructions to the voter how to properly mark the ballot; and

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- The various candidate names and/or ballot measures. A.R.S. § 16-502(A), (C).

### v.   Candidate Races

For candidate races, the official ballot must:

- Arrange the candidate names according to A.R.S. § 16-502(C) in column format, starting with the left-hand column;

- List the name of the office to be filled at the head of each portion of the column;

- List the district number, division number, or other jurisdictional name/number to the right of or following the office name to be filled, if applicable;

- Include the designation "Vote for not more than _____" below the name of each office to be filled to indicate the appropriate number of candidates to select;

- List candidate names according to last name, followed by first name and any nickname;

    - The officer in charge of elections may: (1) shorten or truncate a candidate's name (with the candidate's consent) in order to fit the candidate's name on the ballot; or (2) decline to print the candidate's requested nickname if it suggests reference to professional, fraternal, religious, or military titles or a slogan, promotional word or phrase or any word that does not actually constitute a nickname.

- Contain a location for the voter to place a mark to vote for their candidate of choice to the right or left (and on the same line) of each candidate's name;

- Contain the candidate's political party designation in bold-faced letters next to the candidate's name (for partisan races only); and

- Contain blank lines that correspond to the number to elect placed below the last candidate name for a particular office, along with a location for the voter to place a mark next to their write-in candidate(s) of choice.

A.R.S. § 16-502(C)-(G); A.R.S. § 16-311(G); A.R.S. § 16-341(C).

Additionally, the ballot must contain the name or number of the precinct in which the ballot will be utilized and may include the precinct part or ballot style code. A.R.S. § 16-502(A).

### 2.  Additional Requirements for Primary Election Ballots

In addition to the specifications outlined in Section V(A)(1)(a) above, primary election ballots must comply with the following additional requirements.

Primary election ballots must be printed with a particular color designation to indicate the political party ballot. A.R.S. § 16-461(B). The ballot may be printed on colored stock or on white stock with a distinctive color indicator such as a stripe or other color designation for each political party. The following colors represent the current and recently recognized political parties:

- Blue: Democratic Party

- Green: Green Party
- Orange: No Labels Party
- Red: Republican Party
- Yellow: Libertarian Party

The officer in charge of elections may use varying hues of the requisite colors but may not select entirely different colors as substitutes for the requisite colors. The primary election ballot displayed in accessible voting equipment must also utilize a color designation for each political party. A.R.S. § 16-446(B)(9).

When there are two or more candidates for a nomination, except in the case of precinct committeemen, the names of all candidates for the nomination shall be so alternated on the ballots used in each election precinct that the name of each candidate shall appear substantially an equal number of times at the top, at the bottom and in each intermediate place of the list of candidates in which they belong. If the number of candidates in a particular race is less than or equal to the number to elect, the candidates' names must be listed in alphabetical order by last name and no rotation is required. A.R.S. § 16-464(A).

If more persons file nomination petitions for the office of precinct committeeman than the number to elect in a particular precinct, the county officer in charge of elections must prepare a separate ballot style that includes the office of precinct committeeman, as well as all other races in the precinct, for the voters registered with that political party in that precinct. A.R.S. § 16-822(C). The position of the precinct committeemen candidate names must be alphabetical by surname. A.R.S. § 16-464(B). This ballot style, which includes all the races in the precinct and the precinct committeeman race, must be provided only to voters registered with that political party in the precinct. A.R.S. § 16-822(C).

### 3. Additional Requirements for General Election Ballots

In addition to the specifications outlined in Section V(A)(1)(a) above, general election ballots must comply with the following additional requirements.

For partisan candidate races, the official ballot must list candidates in a particular race in the following descending order:

- Candidates who are registered with a recognized political party that appeared on the gubernatorial ballot in the most recent general election for the office of governor, listed in the order that corresponds to the number of votes for each party's gubernatorial candidate in that county;
- Candidates who are registered with a recognized political party that did not appear on the gubernatorial ballot in the most recent general election for the office of governor, listed in alphabetical order by last name; and

- Independent candidates who were nominated pursuant to A.R.S. § 16-341 (along with a three-letter designation determined by the filing officer), listed in alphabetical order by last name. A.R.S. § 16-502(E).

If there are two or more candidates of the same political party for the same office, or more than one candidate for a judicial office, the names of all such candidates in the particular race must be rotated so that each candidate will substantially appear an equal number of times in each possible location. However, if the number of candidates in a particular race is less than or equal to the number to elect, the candidates' names must be listed in alphabetical order by last name and no rotation is required. A.R.S. § 16-502(E), (H).

In general elections with a presidential candidate on the ballot, presidential electors' first and last names must be listed in alphabetical order (according to last name). The presidential and vice-presidential candidates' last names must be printed in bold and placed adjacent to the elector names, with the presidential candidate's name printed above the vice-presidential candidate's name. A.R.S. § 16-502(C)(1).

For ballot measures, the officer in charge of elections must use one of the following methods to describe the measure:

1. Print the full text of the measure on the ballot;

2. Print a summary of the measure that contains a statutorily prescribed heading, an official title, a descriptive title, and a summary that describes the measure's effect; or

3. Print a summary of the measure that contains an alternative heading and a summary that describes the measure's effect, but omits the official title and descriptive title (see below for specific requirements).

The ballot must contain the words "Yes" and "No" or "For ___" and "Against ____", along with a space for the voter to mark their choice, below the description of the ballot measure. A.R.S. § 19-125(B)-(F); A.R.S. § 16-502(L)-(N).

## 4.  Additional Requirements for PPE Ballots

Similar to a partisan primary election ballot, a PPE ballot must distinguish political party ballots by color and contain candidate names for only that political party. A.R.S. § 16-245(A). Otherwise, PPE ballots must comply with the following specific requirements.

A PPE ballot must contain the following information in descending order:

- The following header at the top of the ballot:

> "Official Ballot of the _____ Party,
>
> Presidential Preference Election (date),
>
> County of _____,

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

State of Arizona"

- The title "_____ Party Candidates for President of the United States;"

- The text "Vote for not more than one;" and

- The political party candidates certified to appear on the ballot. A.R.S. § 16-245(A)-(B).

The ballot also may contain printed instructions to voters as prescribed for other elections (see below for specific instructions). A.R.S. § 16-245(B).

Unlike all other ballots, candidate order is determined by lot drawn at a public meeting conducted by the Secretary of State. The officer in charge of elections must print candidate names in the order and format specified by the Secretary of State, without rotation of candidate names. A.R.S. § 16-245(B). Write-in votes are not permitted, and no other elections may be combined with a PPE ballot. A.R.S. § 16-241(A); A.R.S. § 16-247.

A PPE ballot must comply with any other ballot format requirements in Section V(A)(1)(a) that are not inconsistent with this Section.

### 5.   Additional Requirements for Recall Election Ballots

The reasons set forth in the recall petition for demanding the officer's recall and the officer's justification of their conduct in office shall be printed on the recall election ballot. The officer's justification must be not more than 200 words in length. There shall be no party designation on the recall ballot for a nonpartisan office. The form of the ballot shall otherwise conform as nearly as practicable to the ballot prescribed for general elections. A.R.S. § 19-213.

### 6.   Ballot Marking Instructions

Immediately below the subheading that specifies the type of election, the election date, and the name of the county and state holding the election, an official ballot may contain the following voter instructions:

1. Put a mark according to the instructions next to the name of each candidate for each office for whom you wish to vote.

2. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided on the ballot or write-in envelope and put a mark according to the instructions next to the name so written.

3. Put a mark according to the instructions next to the word "yes" (or "for") for each proposition or question you wish to be adopted. Put a mark according to the instructions next to the word "no" (or "against") for each proposition or question you wish not to be adopted.

A.R.S. § 16-502(A). The officer in charge of elections may add additional instructions to the ballot as needed.

**7.   Order of Candidate Races**

**b.   *Partisan Candidate Offices***

Partisan candidate races must be listed in the following order in the partisan section of the ballot:

1. Presidential electors;

2. U.S. Senator;

3. U.S. Representative;

4. Governor;

5. State Senator;

6. State Representative;

   • A.R.S. § 16-502(D) requires state legislative candidates' names to appear directly below the gubernatorial candidates' names. In election years where there are no gubernatorial candidates on the ballot, legislative candidates' names must still appear before statewide offices.

7. Secretary of State;

8. Attorney General;

9. State Treasurer;

10. Superintendent of Public Instruction;

11. State Mine Inspector;

12. Corporation Commissioner;

13. County Offices;

    • The officer in charge of elections may determine the ballot order for County Supervisor, County Assessor, County Attorney, Clerk of the Superior Court, County Recorder, County School Superintendent, County Sheriff, and County Treasurer.

14. Justice of the Peace; and

15. Constable.

A.R.S. § 16-502(C). Candidate races not up for election must be omitted from the ballot. Precinct Committeemen must be included on a separate ballot style, along with all other races in the precinct, only for voters registered with the particular political party in the precinct.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### c. *Nonpartisan Candidate Offices*

Subject to the exceptions outlined below, the following nonpartisan candidate races must be listed in order in the nonpartisan section of the ballot:

1. Justice of the Supreme Court;

2. Judge of the Court of Appeals (Division 1);

3. Judge of the Court of Appeals (Division 2);

4. Judge of the Superior Court (retention in Maricopa, Pima, Pinal, and Coconino Counties);

5. Judge of the Superior Court (election in Apache, Cochise, Gila, Graham, Greenlee, La Paz, Mohave, Navajo, Santa Cruz, Yavapai, and Yuma Counties).[67]

6. Governing Board Member of a School District;

7. Governing Board Member of a Community College District;

8. Governing Board of a Joint Technical Education District;

9. Governing Board Member of a Special Taxing District;

10. City or Town Mayor; and

11. City or Town Council Member.

A.R.S. § 16-502(J). The following exceptions apply to candidate order in the nonpartisan candidate section:

- The officer in charge of elections may reasonably adjust the nonpartisan candidate order in order to avoid printing on the reverse side of the ballot, to achieve uniformity with the reverse side of the ballot, or to eliminate blank space;

- A recall election involving a candidate who was originally elected in a partisan race should be listed in the partisan section of the ballot, and (if applicable) in the section of the partisan ballot where candidate's race was originally positioned, A.R.S. § 19-213; and

- An election to fill the vacant unexpired term of a nonpartisan office must appear under separate heading immediately below the nonpartisan candidates and shall include the expiration date of the term of the vacated office. A.R.S. § 16-502(K); A.R.S. § 15-424(F).

---

[67] As has been the long-standing practice in counties with populations of less than 250,000, candidates for superior court judge who are members of recognized political parties must participate in a partisan primary election. A.R.S. § 16-331, which requires primary elections to determine which candidates will be on the general election ballot, does not violate the requirement in Article VI, Section 12 of the Arizona Constitution. Consistent with Article VI, Section 12 of the Arizona Constitution, the winners in the primary election then participate in the general election, but no partisan designation appears on the general election ballot. *See* Ariz. Op. Atty. Gen. No. I04-004 (2004).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

Candidate races not up for election (or judicial offices not up for retention) should be omitted from the ballot.

**i.** <u>Determining Judicial Offices Subject to Retention</u>

Following appointment, a justice or judge (including superior court judges in counties with a population that exceeds 250,000) serves an initial 2-year term before seeking retention in office. Ariz. Const. Art. VI, § 37(C). Thereafter, justices and judges serve 6-year terms between retention elections. Ariz. Const. Art. VI, § 4; Ariz. Const. Art. VI, § 37(C); A.R.S. § 12-101; A.R.S. § 12-120.01(B).

Supreme Court justices appear on the ballot for retention in all Arizona counties.

For the 16 judges in Division 1 of the Court of Appeals, which covers Maricopa, Yuma, La Paz, Mohave, Coconino, Yavapai, Navajo, and Apache Counties:

- The 10 judges appointed from Maricopa County in Division 1 of the Court of Appeals must appear on the Maricopa County ballot for retention;

- The five judges appointed from Yuma County, La Paz County, Mohave County, Coconino County, Yavapai County, Navajo County or Apache County in Division 1 of the Court of Appeals must appear on these 7 counties' ballots for retention; and

- Retention of the 16th judge in Division 1 of the Court of Appeals depends on the county of residence:

  - If the judge was appointed from Maricopa County, that judge must appear on the Maricopa County ballot for retention;

  - If the judge was appointed from Yuma County, La Paz County, Mohave County, Coconino County, Yavapai County, Navajo County or Apache County, that judge must appear on these 7 counties' ballots for retention.

A.R.S. § 12-120.02(A).

For the six judges in Division 2 of the Court of Appeals, which covers Pima, Pinal, Cochise, Santa Cruz, Greenlee, Graham, and Gila Counties:

- The four judges appointed from Pima County in Division 2 of the Court of Appeals must appear on the Pima County ballot for retention; and

- The two judges appointed from Pinal County, Cochise County, Santa Cruz County, Greenlee County, Graham County, or Gila County in Division 2 of the Court of Appeals must appear on these six counties' ballots for retention.

A.R.S. § 12-120.02(A)-(B).

Superior court judges appear on the ballot for retention in the county in which they were elected or appointed. Ariz. Const. Art. 6, § 37(B).

The Arizona Commission on Judicial Performance must notify the Secretary of State which justices and judges are up for retention in a particular general election. A.R.S. § 19-123(A)(5); A.R.S. § 19-124.01.

### i.   Political Party Designations

In a partisan race where a candidate sought a political party nomination by primary, the officer in charge of elections must place a three-letter designation to the right of the candidate's name that corresponds to the party designated in the candidate's nomination paper. A.R.S. § 16-502(E).

The following three-letter designations correspond to the current or recently recognized political parties:

- DEM: Democratic Party
- GRN: Green Party
- LBT: Libertarian Party
- NOL: No Labels Party
- REP: Republican Party

In a partisan race where an independent candidate sought a nomination other than by primary, the officer in charge of elections must determine a three-letter designation based on the three-word designation in the candidate's nomination paper. A.R.S. § 16-341(D); A.R.S. § 16-502(E).

A political party selection of "independent" must be designated as "IND" on the general election ballot. Otherwise, the officer in charge of elections has sole discretion how to translate other non-recognized political party selections into three-letter designations (except that independent candidates may not be designated as "DEM," "GRN," "LBT," "NOL," or "REP," on the general election ballot).

### ii.   Special Provisions for Ballot Measures

#### a.   *Numbering Ballot Measures*

For any measure that has qualified for the ballot, the officer in charge of elections must assign a three-digit proposition or question number based on the ballot measure type:

- Constitutional Initiative: 100 series
  - A "constitutional initiative" is brought about by petition and represents the citizens' effort to amend the Arizona Constitution.
- Constitutional Referral: 100 series
  - A "constitutional referral" is a proposed constitutional amendment referred to the general election ballot by the Arizona Legislature.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Statutory Initiative: 200 series

  - A "statutory initiative" is brought about by petition and represents the citizens' effort to amend, add, or strike a statute.

- Statutory Referral: 300 series

  - A "statutory referral" is a statutory measure referred to the general election ballot by the Arizona Legislature.

- Citizen Referendum: 300 series

  - A "citizen referendum" is brought about by petition and represents the citizens' effort to veto a bill recently passed by the Arizona Legislature or other local government body.

- Local charter amendment, initiative, referendum, bond measure, or budget override: 400 series

Propositions or questions within a jurisdiction must be numbered consecutively based on the order filed with the officer in charge of elections. Individual numbers continue from the last number used in the previous election and do not repeat until all 100 numbers in that series have been used. A.R.S. § 19-125(B). For non-statewide ballot measures appearing on the ballot in multiple counties, unless otherwise agreed upon by the applicable counties, the county with the highest population of voters shall assign the number for the ballot measure and, where practicable, other counties shall use that same number for the same ballot measure in order to minimize voter confusion.

The proposition or question number must be printed in reverse type (white type on black background) in at least 12-point font. A.R.S. § 19-125(C). For example, a statutory initiative designated as Proposition 205 must be printed on the ballot as follows:

PROPOSITION 205

PROPOSICIÓN 205

### b. *Order of Ballot Measures*

Ballot measures must appear on the ballot in the following order, below any nonpartisan candidate races in the nonpartisan section of the ballot:

- State constitutional amendments;

- Statewide statutory initiatives;

- Statewide referenda;

- County ballot measures, including school district, joint technical education district, and community college district ballot measures;

- The officer in charge of elections may determine the ballot order for county initiatives, county referenda, county school district bond measures, county school district budget overrides, community college district bond measures, community college district budget overrides, special taxing district bond measures, and special taxing district budget overrides.

• City or town ballot measures; and

- The city or town clerk may determine the ballot order for city charter amendments, city or town initiatives, and city or town referenda.

• Special taxing district ballot measures.

A.R.S. § 16-502(L); A.R.S. § 19-125(B). Ballot measure types that will not be voted on in the election should be omitted from the ballot.

### 8. Printing Initiatives and Referenda on the Ballot

The officer in charge of elections may use one of the three methods to print initiatives and referenda (including legislative referrals) on the official ballot:

1. Print the full text of the measure on the ballot, followed by the words "**yes**" and "**no**" or "**for** _____" and "**against** ____" for the voter to mark their choice;

2. Print a standard summary of the measure that contains a statutorily prescribed heading, an official title, a descriptive title, and a summary that describes the measure's effect (see below for specific requirements); or

3. Print a condensed summary of the measure that contains an alternative heading and a summary that describes the measure's effect but omits the official title and descriptive title (see below for specific requirements).

#### i.   Standard Summary of the Measure

If the officer in charge of elections chooses the standard summary option (printing a statutorily prescribed heading, an official title, a descriptive title, and an analysis of the measure's potential effect), the following requirements apply.

Below the proposition number, the officer in charge of elections must print one of the following **headings**, as applicable:

• Constitutional Initiative: "Proposed Amendment to the Constitution by the Initiative;"

• Constitutional Referral: "Proposed Amendment to the Constitution by the Legislature;"

• Statutory Initiative: "Proposed by Initiative Petition;"

• Statutory Referral: "Referred to the People by the Legislature;" or

• Citizen Referendum: "Referendum Ordered by Petition of the People."

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

An **official title** must be printed below the prescribed heading. The official title comprises a description of the constitutional or statutory provisions being amended, added, or deleted by the measure. This information is drawn from the introductory portion of the initiative or referendum itself.

A **descriptive title** must be printed below the official title. The descriptive title constitutes a summary of the principal provisions of the measure, not to exceed 50 words.

Finally, an **analysis of the potential effect** of a "yes" or "no" vote on the measure must be printed below the descriptive title. Each analysis must begin with following introductory phrases:

A "yes" vote shall have the effect of _____.

A "no" vote shall have the effect of _____.

The "yes" line must be filled with a "brief phrase" that describes the essential change to existing law should an initiative or referral receive a majority of votes cast in the election. The "no" must be filled with a "brief phrase" that describes how the status quo will be maintained should the measure not receive a majority of votes. For a citizen referendum, a "yes" vote has the effect of approving the enactment passed by the Legislature and allowing the bill to go into effect, whereas a "no" vote essentially constitutes a citizens' veto and prevents the bill from going into effect.

Below the ballot measure analysis, the officer in charge of elections must print the words "yes" and "no" for the voter to mark their selection on the ballot.

For statewide ballot measures, the heading, official title, descriptive title, and "yes/no" analysis are drafted by the Secretary of State and approved by the Attorney General before being provided to the officer in charge of elections for printing on the ballot. For local ballot measures, the local jurisdiction is responsible for drafting the heading, official title, descriptive title, and "yes/no" analysis.

A.R.S. § 19-125(C)-(D); A.R.S. § 19-141.

### ii.   Condensed Summary of the Measure

In lieu of printing the full standard summary of a measure that includes the official title and descriptive title, the officer in charge of elections may print an alternative summary on the ballot that contains the following information below the proposition number:

1. One of the following methods of designating the measure in the ballot header:

   • The standard header, as prescribed for the standard summary above:

      - Constitutional Initiative: "Proposed Amendment to the Constitution by the Initiative"

      - Constitutional Referral: "Proposed Amendment to the Constitution by the Legislature"

- Statutory Initiative: "Proposed by Initiative Petition"

- Statutory Referral: "Referred to the People by the Legislature"

- Citizen Referendum: "Referendum Ordered by Petition of the People"; **_or_**

• The word "Proposition," "Question," or "Charter Amendment" (as applicable), followed by the phrase "relating to _____" and inserting the subject matter of the measure;

2. One of the following methods of explaining the effect of the measure:

   • An analysis of the potential effect of a "yes" or "no" vote on the measure as prescribed for the standard summary above; or

   • The full text of the measure;[68]

3. The words "yes" and "no" for the voter to mark their selection on the ballot; and

4. Instructions that direct the voter to the official title, descriptive title, and full text of the measure as printed on the sample ballot and posted in the voting location.

A.R.S. § 16-502(M); A.R.S. § 19-125(E); A.R.S. § 16-502(N); A.R.S. § 19-125(F).

In other words, this alternative summary allows the officer in charge of elections flexibility to omit the official title, descriptive title, and full text of the measure from the official ballot due to space limitations.

The alternative heading and "yes/no" analysis are drafted by the Secretary of State and approved by the Attorney General before being provided to the officer in charge of elections for printing on the ballot. A.R.S. § 19-125(D).

### iii.   Proposition 105 Statement

In addition to the standard or condensed summary of the ballot measure, for state statutory measures, the officer in charge of elections shall print the following Proposition 105 notice on the official ballot immediately before the first state initiative measure and immediately before the first state referendum measure:

• "Notice: Pursuant to Proposition 105 (1998), these measures cannot be changed in the future if approved on the ballot except by a three-fourths vote of the members of each house of the Legislature and if the change furthers the purpose of the original ballot measure, by an initiative petition or referring the change to the ballot."

A.R.S. § 19-125(E), (F)(5).

---

[68] The full text of the measure need not be printed on the ballot itself but may be printed on a separate insert (a "tablecloth") that accompanies the sample ballot. The full text must be made available at each voting location as well. A.R.S. § 16-502(N); A.R.S. § 19-125(F).

### B. Proofing Ballots

The officer in charge of elections must proof the official ballot (in all languages and in all formats, including ballots displayed and spoken in accessible voting equipment) prior to distributing the ballots for voting purposes.

### C. Sending Ballot Proofs to Candidates and Political Parties

At least 45 days before a primary or general election (unless a shorter time is available due to the pendency of a lawsuit), the officer in charge of elections should send a proof of the official ballot to:

- Each candidate (or candidate's agent) who will appear on the ballot; and
- The county chairperson of each recognized political party that will have at least one candidate on the ballot.

By statute, the officer in charge of elections must send a proof of the official ballot at least 45 days before a primary or general election. A.R.S. § 16-461(A)(2)-(3); A.R.S. § 16-510(A). Despite the 45-day statutory requirement, however, officers in charge of elections are encouraged to send ballot proofs at least 60-days before a primary or general election to allow sufficient time to make changes to the ballot before the UOCAVA mailing deadline. *See* Chapter 2, Section I(D).

If a county conducts an election on behalf of a local jurisdiction, the officer in charge of elections may transmit the ballot proofs to the local filing officer, who in turn must forward the proofs to the applicable candidates for approval.

The officer in charge of elections may send the ballot proof by mail, email, or any other method of delivery. The candidate/candidate's agent and/or county chairperson must inform the officer in charge of elections of any errors or omissions in the ballot proof within five calendar days after receipt. A.R.S. § 16-461(B).

### D. Financial Responsibility for Printing Ballots

Official ballots used in federal, statewide, legislative, and county elections must be printed at county expense. Expenses for ballots used in city, town, or special taxing district elections must be borne by the applicable city, town, or special taxing district. A.R.S. § 16-503(B)-(C).

For ballots that contain races from multiple jurisdictions, the officer in charge of elections may contract with a city, town, or special taxing district to reimburse the county for the proportional amount of printing expenses.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## E. Storage and Security of Ballots

The officer in charge of elections must implement security procedures to ensure that official ballots are properly secured and chain of custody is maintained and documented.

For security reasons, official ballots:

1. Must be inventoried upon receipt and prior to distribution to voting locations;

2. May be accessed by elections staff only to the extent necessary to perform their authorized task;

3. Must be stored in a locked, secured location that prevents unauthorized access:

   - Access to ballots must be authorized by the officer in charge of elections. Access to the ballot storage location (the outer access area, not each individual cage or storage unit) must be documented with a written log or with electronic keycard access that indicates the date, time, and identity of the person accessing the ballots. The electronic log for key card access must be accessible but need not be printed out.

4. Must be witnessed by two or more election staff members (of different political parties if possible) when being moved or transferred, which includes an inventory of the ballots before and after the move or transfer.

The officer in charge of elections shall also implement reasonable security procedures for auditing and accountability of blank ballot stock for use with on-demand printers.

The County Recorder or officer in charge of elections shall also implement procedures to ensure that voted ballots are properly secured, and chain of custody is maintained and documented both prior to and after tabulation and canvassing, and for the duration of the applicable retention period.

## F. Sample Ballots

The officer in charge of elections must prepare sample ballots for each primary and general election. A.R.S. § 16-461(A); A.R.S. § 16-510. A sample ballot provides voters who intend to vote in-person on Election Day advanced notice of the candidates and issues that will appear on their ballot.

### 1. Preparing Sample Ballots

Sample ballots:

- May be printed on a single page or multiple pages;

- May not indicate the name or identity of any public official who prepared the sample ballot or to whom the sample ballot must be returned; A.R.S. § 16-461(F);[69]

---

[69] The public official's name may only appear in the candidate section of the ballot, if applicable.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Must be imprinted with the Great Seal of the State of Arizona for elections involving a federal, statewide, or legislative candidate or statewide ballot measure; alternatively, the seal of the appropriate county, city or town (whichever corresponds to the highest-level jurisdiction with a candidate or measure on the ballot) may be imprinted in lieu of the state seal; A.R.S. § 16-461(G); and

- Must include the following warning in a conspicuous location on the ballot: "This is a sample ballot and cannot be used as an official ballot under any circumstances." A.R.S. § 16-461(D).

Primary election sample ballots are subject to additional requirements, as they must be printed with a different color (or contain a distinctive color indicator) that corresponds to the recognized political party appearing on that ballot. A.R.S. § 16-468(2). Sample ballots to be mailed to voters who are not registered with a recognized political party:

- May contain all political party candidates on the same sample ballot; and

- May be printed in alternative paper formats that do not conform to the same size as an official ballot, including a reduced size ballot. A.R.S. § 16-461(B).

For a general election involving a ballot measure, the officer in charge of elections must print the official title and descriptive title on the ballot and include the full text of the measure with any mailing. The full text of the measure need not be printed on the ballot itself but may be printed on a separate insert (a "tablecloth") that accompanies the sample ballot. A.R.S. § 16-502(N); A.R.S. § 19-125(F).

## 2.  Printing and Mailing Official Sample Ballots to Households

At least 11 days before a primary or general election (except for all ballot-by-mail elections), the County Board of Supervisors is responsible for printing and mailing a sample ballot to each household containing at least one active registered voter who is not on AEVL. A.R.S. § 16-461(D); A.R.S. § 16-510(C); *see also* A.R.S. § 16-193(2). The Board of Supervisors may delegate this responsibility to the County Recorder or other officer in charge of elections.

The sample ballot mailing:

- Must contain the appropriate sample ballot or ballots that correspond to the political party preference of the eligible voters in the household (for primary elections only);

- Must contain the words "Official Voting Materials" on the outgoing envelope or mailer face mailed to voters, A.R.S. § 16-461(G);

- Must include the list of acceptable forms of identification to vote at a voting location pursuant to A.R.S. § 16-579(A)(1); and

- Must contain the statement (for assigned polling place elections only): "Have you moved? You MUST go to the polling place designated for your CURRENT RESIDENCE ADDRESS. If you go to the WRONG polling place, you may have to vote a provisional ballot on an accessible voting device to have your ballot counted."

### 3. Sample Ballots at Voting Locations

The Board of Supervisors is responsible for printing and distributing at least two official sample ballots of each ballot style for use at polling places during the primary and general election. A.R.S. § 16-510(B). The sample ballots must correspond to the appropriate official ballots for the polling place and be contained in the precinct supplies for that location. Sample ballots shall be available in plain view or there shall be notice at voting locations indicating that sample ballots are available upon request. A.R.S. § 16-461(B).

Sample ballots need not be provided to vote centers if the vote center is able to print sample ballots upon request.

## VI.    LANGUAGE MINORITY VOTING MATERIALS

After the U.S. Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529 (2013), the State of Arizona is no longer a covered jurisdiction required to provide all voting materials in Spanish under the federal Voting Rights Act, Sections 4(b), 4(f)(3), and 4(f)(4). Nonetheless, counties and other political subdivisions are strongly encouraged to continue to provide voting materials and language assistance in Spanish, as well as other languages previously required in the county.

The following counties are currently independently covered under Section 203 of the Voting Rights Act and therefore have an obligation to print (in the case of written languages) or provide (in the case of historically unwritten or oral languages) voting materials[70] in additional languages for the following language minority groups:

COVERED AREAS FOR VOTING RIGHTS BILINGUAL ELECTION MATERIALS—2020

Apache County ................................................................Navajo, Pueblo.
Coconino County ......................................................Hopi, Navajo, Paiute.
Gila County ................................................................................Apache.
Graham County ......................................................................... Apache.
Maricopa County ..................................................................... Hispanic.
Mohave County ........................................................................ Paiute.
Navajo County ................................................................... Hopi, Navajo.
Pima County ........................................................................... Hispanic.
Pinal County ........................................................................... Apache.
Santa Cruz County ..................................................................Hispanic.
Yuma County .......................................................................... Hispanic.

---

[70] Section 203 of the Voting Rights Act defines "voting materials" as "registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots." 52 U.S.C. § 10503(b)(3)(A). The term should be broadly construed to apply to all stages of the electoral process. 28 C.F.R. § 55.15. Accordingly, the term encompasses both written and oral communication.

Voting Rights Act Amendments of 2006, Determinations Under Section 203, 86 FR 69611 (Dec. 7, 2021), *available at* 2021-26547.pdf (govinfo.gov).

A covered jurisdiction must determine which language, forms of languages, or dialects will be effective in meeting the requirements of the Voting Rights Act. 28 C.F.R. § 55.11.

The following sections describe the minority language requirements in greater detail.

## A. Voting Materials Required to Be in Minority Language(s)

If a covered jurisdiction is required to provide language assistance, all written materials distributed to (or provided for the benefit of) voters must be printed in the required language(s), 28 C.F.R. § 55.19(a), including:

- Registration and voting notices;

- Forms;

- Instructions;

- In-person assistance;

- Ballots (including accessible ballots and the accompanying audio translation); and

- Any other materials or information relating to the electoral process. 28 C.F.R. § 55.15.

Where the language of the applicable minority group is oral or unwritten, the covered jurisdiction is only required to provide oral instructions, assistance, or other information relating to registration and voting, including voting by mail, in the covered language. 52 U.S.C. § 10503(c). Measures that may contribute to this process include using bilingual registrars, placing bilingual poll workers at voting locations, and making announcements over minority language radio and television stations. *See* 28 C.F.R. § 55.18(c)-(e); 55.20.

A covered jurisdiction may attempt to use cost effective methods of compliance if they are equivalent in their effectiveness to more costly methods. 28 C.F.R. § 55.16. This may include implementing a system that provides translated voting materials to fewer than all registered voters, as long as the system is designed and implemented in a way that ensures language minority group members who need translated materials and assistance can receive them. 28 C.F.R. § 55.17.

## B. Types of Elections Requiring Minority Language Voting Materials

A covered jurisdiction must provide voting materials in the required language(s) for all elections within the covered jurisdiction, including the elections of each municipality, school district, or special taxing district within the covered jurisdiction. 28 C.F.R. § 55.10(a)-(b); 28 C.F.R. § 55.9.

For offices that cross county lines, language minority voting material requirements are to be applied on a county-by-county basis. Accordingly, if an individual county is not a covered jurisdiction, that county does not need to provide bilingual voting materials. 28 C.F.R. § 55.10(c).

### VII.  PREPARATION OF SIGNATURE ROSTERS AND E-POLLBOOKS

Prior to a statewide primary or general election, the County Recorder must prepare paper signature rosters and precinct registers or e-pollbook data and distribute the rosters/data to the officer in charge of elections for use at each voting location on Election Day. A.R.S. § 16-168(A)-(B); A.R.S. § 16-169(A); A.R.S. § 16-583(A). A signature roster or e-pollbook serves as the official list of eligible voters (other than secured voters) for a particular voting location or election.[71]

If a County Recorder uses paper signature rosters, the rosters must be bound with a suitable cover and bear the title "signature roster _____ precinct, _____ county, Arizona" (if used in assigned polling place-assigned). The cover must contain the following affidavit for the inspector to sign:

> "I, _____, inspector of the board of election of _____ precinct, _____ county, Arizona hereby certify that the foregoing (excepting signatures in red) are true and correct signatures of all electors who voted in precinct on _____.
> (date)
> (inspector)"

A.R.S. § 16-169(B). An e-pollbook must be accompanied by an affidavit (equivalent to that specified for paper rosters) to be signed by the inspector on Election Day. A.R.S. § 16-169(C).

The County Recorder or other officer in charge of elections must have a back-up solution, such as a printed roster or other contingency plan, in case the e-pollbooks do not properly function on Election Day. A.R.S. § 16-571(C). The County Recorder or other officer in charge of elections must also implement cybersecurity protocols to ensure the integrity of e-pollbook data when e-pollbooks are electronically connected to county systems. *See* Chapter 4, Section II(B).

A County Recorder should ensure the signature roster or e-pollbook contains the most up-to-date information prior to printing or distribution. In particular, a County Recorder should check the SAVE database to confirm any pending SAVE queries or "no match" results for any registrant who submitted only the registrant's Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number as proof of citizenship. *See* Chapter 1, Section II(A)(6). If the number can be confirmed, the registrant shall be made a full-ballot voter and, if time permits, the County Recorder should be prepared to print a supplement to the signature roster or conduct a last-minute upload to the e-pollbooks to reflect this information. In cases where the roster or e-pollbook cannot be timely updated, the County Recorder may issue a Recorder's Certificate to any affected registrants. *See* Chapter 1, Section II.

A signature roster or e-pollbook must contain the following information:

---

[71] For purposes of this Section, an e-pollbook includes a system whereby electronic tablets or computers are uploaded with voter registration data or are connected to a live voter registration database via a secure virtual private network (VPN) connection.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

1. Name;

2. Residence address or description of residence location;

3. Mailing address (if different than residence address);

4. Registration date and status (active/inactive);

5. Party preference or registered party;

6. Roster number, numbered consecutively (paper signature roster only);

7. Mailing address (if different than residence address);

8. Signature block (an early ballot affidavit may serve as the signature block when conducting on-site early voting or a ballot-by-mail election);

9. "Federal-only" voter designation (if applicable); and

10. Indicator if voter requested, received, or returned an early ballot, as applicable.

A signature roster or e-pollbook must also contain the following information, if practicable:[72]

1. Birth year;

2. Ballot type/style, including political party ballot selected in a partisan primary;

3. Voter ID number;

4. Barcode (paper signature rosters only);

5. A standardized oath that poll workers obtained valid proof of identity from every voter, or if identification was not presented, the provisional ballot envelope was marked appropriately.

A signature roster or e-pollbook may not contain secured registrants' information. If a county uses a tablet or computer terminal that has live access to the voter registration database via a secure virtual private network (VPN) connection, the system must be capable of shielding secured registrants' information from public view (or providing view access only to the secured registrant). *See* Chapter 4, Section II.

For paper rosters, additional pages for inactive voters and voters who voted a provisional ballot must be included in any signature roster (either attached to the back of the roster, in a separate roster, or identified within the roster). If inactive voters are comingled with active voters on the signature roster, the inactive voters must be clearly identified and the officer in charge of elections

---

[72] Additional data, such as full dates of birth, may be transmitted to e-pollbook vendors to facilitate e-pollbook functionality provided the following requirements are met: (i) only data required for e-pollbook functionality shall be transmitted to e-pollbook vendors; (ii) the data shall be transmitted using secure methods, such as encryption or secure website or SFTP; (iii) the County Recorder or officer in charge of elections shall exercise best efforts to protect the confidentiality of registrant data transferred to vendors, including requiring the vendor to agree to reasonable confidentiality terms; and (iv) the vendor shall securely dispose of the transmitted data after it is no longer needed for the election at issue.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

must have the ability to identify and/or extract the inactive voter information after the election to update the voter registration record. For provisional ballot voters, the roster must be numbered consecutively starting with "V-1," "V-2," etc. A.R.S. § 16-584(E). E-pollbooks must also contain inactive voters and have a means of indicating which voters voted a provisional ballot.

## VIII.   PREPARATION OF VOTING SUPPLIES

### A. Materials to Be Distributed to Voting Locations

The following items should be included among supplies distributed to voting locations, as applicable:

1. Election board worker supplies:

   - Board workers' checklists;

   - Signature rosters, poll lists, and precinct registers (if paper signature rosters are utilized);

   - Challenge lists or forms;

   - Sample ballots (for assigned polling place elections), *see* Chapter 8, Section V(F);

   - Relevant election laws and training guides;

   - Provisional ballot envelopes or affidavits (*see* Section VIII(B) below);

   - Provisional ballot roster;

   - Ballot box keys; and

   - Demonstration ballots (ballots that contain marking instructions).

2. Signs:

   - Arrows;

   - "Vote Here" signs;

   - "Instructions to Voters" notice, *see* Chapter 9, Section I(A);

   - "Right to Vote a Provisional Ballot" notice, *see* Chapter 9, Section I(A);

   - "Accessible Parking" signs (if no permanent signs are available);

   - "Curbside Voting Available" signs (as needed); and

   - Write-in candidate notice, *see* Chapter 9, Section I(A);

3. Supply Bag:

   - Voting equipment manuals (if applicable);

   - Pens and/or pencils;

   - A method for measuring the 75-foot limit;

   - Masking tape; and

- "I Voted" stickers (if available);

4. Official returns envelope;

    - Upon completion of the election, the official returns envelope must contain any spoiled ballots, a copy of the poll list, and the challenge list/forms (if applicable). The envelope must be sealed with a pressure-sensitive label, and the inspector and judges are required to sign across the seal and onto the envelope. A.R.S. § 16-615. If the voting location has a tabulation machine, the official returns envelope should also contain a copy of the results tape from the tabulation machine, printed immediately after the close of the polls. *See* Chapter 9, Section IX(B).

5. Unofficial returns envelope (if necessary);

    - By statute, upon completion of the election, the unofficial returns envelope must contain completed payroll vouchers, signature roster, a copy of the poll list, and any other items directed by the officer in charge of elections. The unofficial returns must be made available for inspection for six months after the election. A.R.S. § 16-616; A.R.S. § 16-551(D). However, the use of e-pollbooks or other technology may render a physical unofficial returns envelope unnecessary if the technology electronically captures all the required information for the officer in charge of elections. *See* Chapter 9, Section IX(B).

6. Payroll supplies:

    - Payroll voucher

7. Miscellaneous supplies:

    - ADA temporary equipment, including ramps, door props, door handles, etc. (as needed);

    - Magnifying sheets that may be used to magnify the text on a ballot;

    - Precinct map (assigned polling place elections only);

        - In assigned polling place elections, a poll worker may use the map to assist the voter in locating the correct polling place but may also use an e-pollbook to identify the correct precinct or provide contact information (phone number or website) for the voter to contact the elections department or County Recorder's office. Alternatively, the poll worker may offer the option to vote a provisional ballot using the accessible voting equipment if the equipment is capable of displaying all ballot styles.

    - U.S. flag & stand;

    - Badges/name tags;

    - Ballot privacy/secrecy sleeves, which must be offered to voters and that voters may use to protect the secrecy of the voter's choices when carrying the ballot in the voting location;

    - Ballot boxes with seals;

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Voting equipment, including e-pollbooks with seals, accessible voting equipment with seals, and tabulation equipment with seals (if applicable); and

- Voting booths, including voting booths that are accessible for voters with a disability;

8. Ballots of each required ballot style or blank ballot stock.

### B. Provisional Ballot Envelope and Affidavit

A voted provisional ballot must be placed and sealed in a provisional ballot envelope. A provisional ballot envelope must have affixed to it an affidavit for the voter to complete and provide the following information:

1. First and last name;

2. Current residence address;

3. Current mailing address;

4. Former name, if any;

5. Former residence address, if any;

6. Date of birth;

7. Telephone number;

8. AZDL/ID# or SSN4;

9. Date (if necessary); and

10. A signature attesting to the following statement:

    "I swear or affirm under penalty of perjury that the above information is correct, that I have resided in the precinct and/or district listed at least 29 days before the election, that I am eligible to vote in this election, and that I have not previously voted in this election.

    I know that my provisional ballot will only be fully counted if I have voted the correct ballot style for my assigned precinct, which is based on where I currently live**. I understand that voting the wrong ballot style in the wrong precinct means that my ballot will not be counted. I also understand that voting in the wrong county means my ballot will not be counted**."

Counties may exhaust existing provisional ballot envelopes or affidavits before printing envelopes or affidavits with the updated language. Elections conducted through vote centers are exempt from utilizing the statement applicable to out-of-precinct voting. Counties may also capture this information and statements electronically, but the voter must sign the affidavit on the provisional ballot envelope.

The provisional ballot envelope or affidavit also must contain the following information for the poll worker to complete:

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

1. The reason why the voter was issued a provisional ballot;

2. An indication of whether the voter presented proper or insufficient identification;

3. Provisional ballot affidavit number;

    • The provisional ballot envelope should contain a tear-off stub for the voter to retain or the voter should be provided a provisional ballot receipt. Both the envelope affidavit and the receipt or tear-off stub should have matching provisional ballot affidavit numbers.

4. Precinct number (for the voter's assigned precinct/ballot style) or voting location;

5. Type of party ballot issued, if applicable;

6. An indication of whether the ballot is a "federal-only" ballot; and

7. The poll worker's signature.

The provisional ballot envelope may contain an "Official Use Only" section for County Recorder use, which may include (but is not limited to) the following information:

1. Voter ID number;

2. Type of ID provided;

3. Recorder staff member who processed provisional ballot;

4. Whether ballot was counted or not counted; and

5. Reason for rejection, if applicable.

## IX.    IMPLEMENTING A WAIT TIME REDUCTION PLAN

"Wait time" is defined as the duration of time from when the voter arrives in line to the time the voter is checked in through the e-pollbook or paper signature roster.

The officer in charge of elections must establish and approve a specific wait time reduction plan for each election to best ensure that voters do not have to wait in lines at the voting location for more than 30 minutes and that appropriate countermeasures are implemented if the wait time at a voting location exceeds 30 minutes. The factors outlined in the following sections are not exclusive. *See* A.R.S. § 16-411(J).

### A. Projecting Voter Turnout

The officer in charge of elections must project voter turnout at each voting location prior to the election to assure the location is adequately staffed and equipped to meet voter demand. The officer in charge of elections should consider the following information to project voter turnout:

1. The percentage of voter turnout from the prior two elections of a similar type, and any anticipated increase in voter turnout;

2. The number of ballots (including regular, early, and provisional) cast in the prior two elections of a similar type, A.R.S. § 16-411(J)(1);

3. The number of registered voters, both active and inactive, A.R.S. § 16-411(J)(3);

4. The number of registered voters who requested an early ballot or are on the Active Early Voting List, A.R.S. § 16-411(J)(2); and

5. The potential number of ineligible voters that could attempt to vote, especially during a PPE.

### B. Re-Precincting

For counties that use precinct-based polling places, if excessive wait times are likely to occur at a particular polling place, whether based on population growth or any other reason, the officer in charge of elections must consider redrawing precinct boundaries to reduce the likelihood of this possibility. The officer in charge of elections should also consider increasing the number of polling places, and/or adding vote centers, if possible, to reduce the likelihood of excessive wait times. This decision should be made well in advance of the election. A.R.S. § 16-411(J).

To determine whether recent or projected population growth warrants re-precincting, the officer in charge of elections should consider:

- The year-over-year growth in registered voters in the precinct; and/or
- The potential for future construction or land development in the precinct (based on information obtained from the county assessor, city clerk, or town clerk).

If the officer in charge of elections concludes that precinct size would have an adverse impact on Election Day wait times, the officer should recommend redrawing the precinct in order to better allocate voters. In that case, the County Recorder must also transfer the affected voters into their newly designated precinct.

The County Recorder must mail a new voter registration card to each affected voter, which satisfies the requirement to mail a notice of the precinct change. A.R.S. § 16-412.[73]

The Board of Supervisors must approve all precinct lines by October 1 of an odd-numbered year. A.R.S. § 16-411(A). The new precinct boundaries become effective on January 2 of the year of the general election. A.R.S. § 16-412. By January 2 of the following year, the officer in charge of elections must ensure all relevant maps and legal descriptions have been updated with the new precinct lines, voter registration records are updated, and new voter registration cards (with updated precincts) are issued to all affected voters. A.R.S. § 16-412.

---

[73] The statute provides an exception if a sample ballot containing voters' newly designated precinct name or number is mailed prior to the next primary election. *See* A.R.S. § 16-412.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## C. Staffing and Supplying Voting Locations

The officer in charge of elections should deploy additional resources at voting locations where projected turnout (including both eligible and ineligible voters) is expected to exceed normal levels. In considering the resources needed at voting locations, the officer in charge of elections should consider past wait time data and any data demonstrating disparate wait times at voting locations across the county.

The officer in charge of elections should:

1. Determine the optimal number of poll workers, based on:

   - The projected time to check-in a voter and seek proof of identity;

   - The projected time involved in use of accessible voting devices;

   - The number of voters likely to cast provisional ballots;

   - The number of independent voters who may seek to vote (if conducting a PPE); and

   - Any increased or unusual level of interest in the election.

2. Determine the proper number of signature rosters/e-pollbooks and voting equipment in order to keep up with demand;

3. Recruit additional poll workers who will be assigned or remain in reserve on Election Day, including recruitment of students and other county workers;

4. Conduct additional training for poll workers (including premium poll workers) assigned to high volume precincts;

5. Ensure proper signage at all polling locations, including signs that will educate voters in line about how to proceed through the voting process efficiently;

6. Determine the number of bilingual poll workers needed for each voting location;

7. Empower the inspector to request additional poll workers and, in exceptional cases, recruit poll workers from the line with permission of the officer in charge of elections;

8. Ensure the inspector is prepared to shift personnel, redistribute responsibilities, reorganize the voting location, or make any other changes that will facilitate efficiency and reduce wait times;

9. Assign troubleshooters or equivalent staff who can reach any voting location within 30 minutes of being dispatched (if geographically feasible); and

10. Ensure troubleshooters or equivalent staff have made prior contact with each inspector they oversee on Election Day, including a discussion about voting location layout and contingency plans.

### D. Conducting Voter Education

The officer in charge of elections must educate voters by disseminating information that may help reduce wait times on Election Day, including, but not limited to, information on the following topics:

1. Voters must present a valid identification;

2. Voters' registration must be up-to-date;

3. Voters may only vote at their designated polling place based on their current residential address or location (assigned polling place elections only), or for counties that utilize vote centers, any vote center in the county (along with information on how to identify vote centers closest to the voter's current address);

4. Peak voting times compared to times when wait times are likely shorter;

5. Information about any websites, phone apps, or other technology that facilitate the voting process or provide voter education;

6. Encourage voters to bring their sample ballots to the polls with selections already marked to help accelerate their voting process; and

7. Early voting and permanent early voting options.

### E. Developing Contingency Plans

The officer in charge of elections must have a contingency plan ready to implement if wait times consistently or significantly exceed 30 minutes. The contingency plan must include, but need not be limited to, the following:

1. For counties that use vote centers, a plan to inform voters of the option to vote at nearby voting location(s) with shorter or no wait times;

2. A transfer plan for poll workers to move from a less busy location or from a reserve staging area;

3. A plan to open alternate or additional voting locations (including a plan to educate voters about the new location);

4. A plan to add additional e-pollbooks (if used in the county);

5. A plan to add voting/secrecy booths; and

6. A plan to add accessible voting equipment.

To the extent practicable, a plan for implementing back-up paper systems should be available in case of electronic equipment failure or loss of power.

The marshal will monitor the voter wait time at a polling place, and must inform the inspector (who must, in turn, contact the officer in charge of elections) when the wait time reaches 20 minutes or more.

## F. Emergency Procedures

The ballot box shall not be removed from the voting location or presence of bystanders until all ballots are counted, nor opened until after the polls are finally closed unless an emergency renders the polling place unusable to the point where it can no longer function as a polling place because law enforcement or other emergency personnel have ordered the polling place to be evacuated or as determined by the officer in charge of elections to allow voting to continue while awaiting an evacuation order. The following procedures shall be followed in the event of an emergency:

- If the locked ballot box must be removed from the polling place due to an emergency, at least two members of the election board, not members of the same political party, shall accompany the box to a new polling place designated by the officer in charge of elections.

- If practical and available, a law enforcement officer shall aid in the transfer of the ballot box.

- If two members of the election board are not available to transfer the ballot box, one member of the election board and one law enforcement officer may accompany the box to the new polling place.

- Two additional board members shall verify whether the ballot box arrived at the new polling place and that it was not opened or damaged.

- All election board members who accompanied the locked ballot box to the new location and the one or two board members who verified the box's arrival shall file a report with the officer in charge of elections that describes the actions taken by the board members. This report shall be filed on the day of the emergency.

- On the day of the emergency in which the ballot box was moved, all election board members who aided in the transfer and verification of the locked ballot box shall indicate on official documents containing their oath whether they witnessed the transfer of the box and whether the box remained locked.

A.R.S. § 16-564(A)-(E), (G).

## G. Ballot Box Overflow Procedures

If during the course of an election the ballot box can no longer accommodate additional ballots, the officer in charge of elections shall dispatch an additional ballot box to the appropriate voting location. The full ballot box shall remain locked until closing of the polls. If a tabulation unit is used, it shall be removed and placed on the additional ballot box or another tabulation unit and ballot box should be dispatched so voting may continue. If another unit is deployed, poll workers must first run zero tapes and confirm transfer, including checking security seals.

In the event there is no spare ballot box available, the board workers shall remove a sufficient number of ballots from the ballot box and shall place the removed ballots into the case that will be used for the transfer of the ballots to the officer in charge of elections. The inspector and both judges shall oversee the transfer and the following shall apply:

1. The number of removed ballots shall be hand counted immediately by the election board.

2. A written document shall be produced and signed by the board members supervising the count. The written document shall indicate the count and the reason for the removal of ballots.

3. The removed ballots and corresponding documentation shall be placed in the transfer case and shall be kept sealed until the polls are closed.

4. Once the removed ballots are sealed in the transfer case, the original ballot box shall be relocked or sealed and voting may continue.

5. At the close of the polls, the ballots in the locked or sealed ballot box shall be: (i) removed from the ballot box and immediately tabulated; or (ii) maintained in the locked and sealed box and securely transferred to the officer in charge of elections for tabulation. If tabulation occurs after of closing of the polls, the count shall be documented.

6. Ballots should be sealed in ballot boxes or transfer cases with any corresponding documentation while ensuring tabulated ballots are kept separate from un-tabulated ballots.

7. The sealed ballot boxes and/or transfer cases will be transported to the central counting place designated by the officer in charge of elections.

At the close of an election, if the ballot box has been opened, a report detailing those events and other pertinent information shall be made by the officer in charge of elections to the chairpersons of all recognized political parties in that county at their request. A.R.S. § 16-564(F), (G).

## H. Complete Power or Unit Failure/Ballot Emergency Bin

In counties that use polling place tabulation units, any ballots that have been deposited in the emergency bin during a complete power failure or unit failure must be fed through the tabulation unit when polls close and prior to generating the results tape at the end of the day.[74] In addition, the following steps must be completed:

- Using the key provided, at least two board workers not from the same political party shall open the ballot box emergency bin and remove the unprocessed ballots, if any, that were placed in the emergency bin due to a complete power failure or tabulation unit failure.

- The board workers shall feed the unprocessed ballots, one by one, into the tabulation unit, making sure that the digital readout increases by one each time.

- If any ballot that is over-voted or blank is returned, the inspector will use the override procedure to allow the ballot to be scanned.

- After all of the unprocessed ballots have been fed into the tabulation unit, the board workers may proceed with the regular procedures for closing the polls.

---

[74] There is no "complete power failure" or "unit failure" if the battery backup remained operative.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- After the polls have closed, any ballot the machine is unable to process or that has been marked but is returned as "unreadable" shall be set aside and sent to the central counting place for duplication.

### I. Determining Optimal Layout

The officer in charge of elections must determine the optimal layout for each voting location based on voter turnout projections. High volume voting locations should process provisional voters separately from other voters to maintain a continuous flow of voters.

### J. Wait-Time Reduction Survey

In order to test the efficacy of wait time reduction efforts over time, the officer in charge of elections should participate in occasional wait time reduction surveys at the request of (and in collaboration with) the Secretary of State.

### K. Public Input

The officer in charge of elections is encouraged to solicit public feedback on the wait time reduction plan, for example, by posting the proposed plan on the officer's website and soliciting feedback.

## X.   CANCELING AN ELECTION

Certain candidate elections may be canceled if there are equal to or fewer candidates seeking office, including write-in candidates, than the number to elect for a given race.

The following races are eligible for cancellation:

1. Precinct committeeman, A.R.S. § 16-410(A); A.R.S. § 16-822(B);
2. School district governing board member, A.R.S. § 16-410(A); A.R.S. § 15-424(D);
3. Community college district governing board member, A.R.S. § 16-410(A); A.R.S. § 15-1442(B); and
4. Any special taxing district board member, A.R.S. § 16-410(A).

If a candidate race qualifies for cancellation, the applicable Board of Supervisors may cancel the election no earlier than 105 days before Election Day, appoint to the office those candidates who had timely filed a nomination paper for the office. A.R.S. § 16-410(A)-(B).

After approval of the Board of Supervisors to cancel the election, the officer in charge of elections must omit the race in question from the ballot. If the cancellation occurs after the ballots have been printed, the canceled race must not be canvassed. A.R.S. § 16-410(D).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If no candidates filed nomination papers for the office in question, the Board of Supervisors may cancel the election no earlier than 105 days before Election Day, declare the office vacant, and initiate procedures to fill the vacancy. A.R.S. § 16-410(C).

# CHAPTER 9:
## CONDUCT OF ELECTIONS/ELECTION DAY OPERATIONS

### I.   SETTING UP THE VOTING LOCATION

Upon arriving at the voting location (either on Election Day or the day prior to the election), the election board (at the direction of the officer in charge of the election) must:

1. Ensure that any accessible voting device is set up and in working condition, including any keypad, headphones, and alternative input devices;

2. Post the following documents or notices (1) in plain view in the room where ballots will be cast and (2) in at least one other conspicuous place in and around the polling place:

   • Sample ballots that correspond to the candidates/measures that will appear on the ballot (for precinct-assigned polling places), A.R.S. § 16-510(B); A.R.S. § 16-563(1);

   • "Instructions to Voters and Election Officers" (*see* Chapter 9, Section I(A)(1) below);

   • A notice of voters' "Right to Vote a Provisional Ballot" (*see* Chapter 9, Section I(A)(2) below);

3. Unless the same information is printed on the sample ballot, place a card or poster in each voting booth that contains a "Notice to Voters" in large plain type (*see* Chapter 9, Section I(C) below);

4. Post a list of official write-in candidates in a conspicuous location within the voting location (if applicable), A.R.S. § 16-312(E);

5. Post a list of candidate withdrawals or vacancies in a conspicuous location within the voting location (if applicable), including a notice stating that any votes cast for the candidate will not be tabulated unless the withdrawal or vacancy was due to death or incapacity (however, for a Presidential Preference Election, the notice shall state that any votes cast for a candidate on the list will not be tabulated unless the candidate withdrew after ballots were printed or the withdrawal or vacancy was due to death or incapacity), A.R.S. § 16-343(F)-(G);[75]

6. Display the United States flag, A.R.S. § 16-512;

7. Arrange voting booths in view of the election board, A.R.S. § 16-562(A), and in a manner that provides an accessible path of travel for voters with disabilities (*see* ADA Checklist referenced in Chapter 5, Section III);

8. Arrange the signature roster, e-pollbook(s), or other check-in devices for convenient access;

9. Prepare ballot boxes:

---

[75] The notice must also be posted at all on-site early voting locations. *See* Chapter 2, Section II(A).

- Open and examine the ballot boxes to ensure the boxes are empty prior to voting, secure the ballot boxes; and arrange the ballot boxes in view of the election board. A.R.S. § 16-564(A).

- Confirm placement of the early ballot drop-off container (if separate boxes/containers are used);

10. Inventory the ballots received from the elections department, including ballot stock;

- If the officer in charge of elections determines it is not feasible to inventory ballot stock at the voting location, the officer in charge of elections must implement a reasonable alternative method to ensure accountability of ballot stock.

11. Set up tabulation equipment (if applicable) and accessible voting equipment near an electrical outlet in plain view of the election board and the voters;

- Ensure that electrical cords do not present a hazard to the board workers or voters;

- For the tabulation equipment, plug in the voting equipment and obtain a zero count following procedures in Chapter 4, Section I(D)(4); and

- Ensure that all tamper-resistant or tamper-evident seals are intact, contain the correct assigned number, and have not been tampered with; and

12. Establish the 75-foot limit by posting at least three "75-foot limit" signs:

- The signs must have the heading "75-foot limit" printed in letters at least 2 inches high;

- Have the following statement printed below the heading:

> "No person shall be allowed to remain inside these limits while the polls are open, except for the purpose of voting, and except the election officials, one representative at any one time of each political party represented on the ballot who has been appointed by the county chairperson of such political party, and the challengers allowed by law. Voters having cast their ballots shall at once retire without the seventy-five foot limit. A person violating any provision of this notice is guilty of a class 2 misdemeanor."

A.R.S. § 16-515(B).

All signs and notices required under this Section must be printed in English and any other language required in the county under the Voting Rights Act.

## A. Instructions Posted at the Voting Location

### 1. Instructions to Voters and Election Officers

The "Instructions to Voters and Election Officers" notice must be displayed at the voting location, containing substantially the following information:

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

---

### Instructions to Voters and Election Officers

The polls are open from 6:00 a.m. until 7:00 p.m. Language assistance will be provided at certain polling locations. If you need language assistance, please inquire at your voting location.

Please give your full name, place of residence or mailing address, and identification documents to the election officer. The election officer will determine your correct ballot style and whether you will use a regular or provisional ballot to cast your vote.

Once you have received your ballot, go to the next available voting booth to cast your vote. Mark your ballot in the appropriate place next to the name of each candidate for whom you want to vote.

If you want to vote for a person who is an official write-in candidate, write that person's name on the lines provided and mark the ballot in the appropriate place next to the name you have written.

Ask for assistance if you need assistance marking your ballot or wish to utilize the accessible voting equipment. If you request assistance marking your paper ballot, two election officers from opposing political parties will accompany you to the voting booth. They will:

> Read you the names of all candidates for each office on the ballot;
> Read you the political parties by which the candidates were nominated for each office;
> Ask the name of the candidates for whom you want to cast your vote; and
> Mark your ballot correctly.

Neither of the election officers who assist you with your vote is allowed to influence your vote by recommending, explaining, or suggesting any candidate or political party for any office or issue.

If you accidentally spoil your ballot, present it to the election judge. Make sure to conceal any votes you have made on the ballot. Either you or the judge will need to mark the ballot as spoiled, and the judge will give you another ballot on which to cast your vote. You are allowed to use no more than three ballots. A person may only handle or return their own ballot or the ballot of family members, household members or persons for whom they are a caregiver. It is unlawful under section 16–1005 to handle or return the ballot of any other person.

If you believe that a violation of the Help America Vote Act of 2002 has occurred, you may contact:

Secretary of State's Division of Election Services
1700 West Washington Street 7th Floor
Phoenix, AZ 85007
1-877-THE VOTE
www.azsos.gov

A.R.S. § 16-513; A.R.S. § 16-563(1).

## B. Right to Vote a Provisional Ballot

The "Right to Vote a Provisional Ballot" notice must be displayed at the voting location, containing substantially the following information:

---

**Right to Vote a Provisional Ballot**

If you did not receive a regular ballot, you have a right to vote a provisional ballot if one of the following situations applies to you:

- Your name does not appear on the signature roster or e-pollbook, and you are in the correct polling place based on your current residence;
- You have moved to a new address within the county and have not updated your voter registration (if applicable);
- You have legally changed your name and have not updated your voter registration (if applicable);
- You requested an early ballot but did not vote an early ballot (if applicable);
- You have not produced sufficient identification; or
- You were challenged as a qualified voter.

To vote using a provisional ballot:

- Present identification to the poll worker and state your first and last name;
- Provide your complete residence address and mailing address (if different from your residence address) to the poll worker;
- Provide your signature next to your name after the election official enters your name on the signature roster or e-pollbook; and
- Sign an affirmation on the provisional ballot envelope stating that the information filled out on the provisional ballot envelope is correct, that you have resided in the precinct specified on the provisional ballot envelope at least 29 days before the election, that you are eligible to vote in this election, that you have not previously voted in this election, that your provisional ballot will only be counted if you voted in the correct precinct or on the correct ballot style (which is based on where you currently live), that you understand that voting the wrong ballot style in the wrong precinct means that your ballot will not be counted, and that you also understand that voting in the wrong county means that your ballot will not be counted.

Once you have voted using a provisional ballot, your ballot will be placed in a provisional ballot envelope, which you can seal. The poll worker will ensure that the envelope is sealed. You will then be given a provisional ballot receipt with information on how to present sufficient identification to the County Recorder (if necessary) and how to verify the status of your provisional ballot. Your vote will be counted upon verification of your eligibility to vote in the election.

---

A.R.S. § 16-513.01; A.R.S. § 16-563(1).

### C. Notice to Voters

Unless the same information is printed on the sample ballot, a "Notice to Voters" card or poster must be placed in each voting booth (in large, plain type), containing substantially the following information:

<div style="border:1px solid black; padding:1em;">

**Notice to Voters**

Section one of this ballot is comprised of partisan candidates. To vote for the candidates for the partisan offices, mark the ballot next to the name of the candidate for each partisan office for whom you wish to vote. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided AND put a mark next to the name according to the instructions.

Section two of this ballot is comprised of nonpartisan candidates, potentially including judicial candidates, school district candidates and city/town candidates, and initiative or referendum propositions. To vote for the candidates for the nonpartisan offices, mark the ballot opposite the name of the candidate for each nonpartisan office for which you wish to vote. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided AND put a mark next to the name according to the instructions. Mark the ballot by the word 'yes' (or 'for') for each proposition or question which you wish to be adopted. Mark the ballot by the word 'no' (or 'against') for each proposition or question which you wish not to be adopted.

When marking a paper ballot the voter shall do so by placing a mark next to the printed name in the designated location or in the square or circle next to the name written in.

</div>

A.R.S. § 16-514. Minor alterations have been made to the statutory language to account for modern ballot design. The second paragraph of the notice above may be omitted for a Presidential Preference Election because there is no nonpartisan section on the ballot.

### 1. Notice of Write-In and Withdrawn Candidates

A County Recorder must post a Notice of Write-In and Withdrawn Candidates at each voting location. A.R.S. § 16-312(E); A.R.S. § 16-343(G).

Information about write-in and withdrawn candidates also must be posted to the website of the County Recorder or officer in charge of elections. A.R.S. § 16-343(G).

### 2. Notice of Effect of Overriding Overvotes

If the voting equipment used for the election provides for the rejection of overvoted ballots or ballots that contain other irregularities, the Board of Supervisors shall provide for a written notice

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

advising the voter that if the voter chooses to override the overvoted office or measure or override any other ballot irregularity, the voter's vote for that office or measure will not be tallied. The notice shall be posted on or near the voting equipment so that the voter has a clear view of the notice. A.R.S. § 16-513(B).

## II.   OPENING THE VOTING LOCATION

The election board should arrive at the voting location no later than 5:30 a.m. on Election Day to promptly open the polls at 6:00 a.m.

Upon arrival at the polling place, members of the election board must take their oath of office, to be administered by a board member or another qualified elector of the precinct. A.R.S. § 16-534(C); A.R.S. § 38-231(E). If the county utilizes vote centers, the individual administering the oath need only be a qualified elector in the county.

If the voting location contains precinct voting equipment or accessible voting equipment that independently tabulates votes, the election board must generate a "zero report" from the voting equipment prior to opening the polls. The zero report is intended to confirm that the equipment contains no votes prior to commencement of voting.

To verify a zero report, the election board must:

- Ensure the tamper resistant seals or tamper evident seals are intact and do not show signs of tampering;

- Print a zero report from the equipment (the report must remain attached to the voting equipment and not removed until final results have been printed at the close of the polls);

- Verify the correct precinct number on the report (only in counties that conduct assigned polling place elections);

- Compare the zero report to the ballot and sample ballot to ensure the same names appear (only in counties that conduct assigned polling place elections);

- Confirm that no votes have been cast for any candidates or ballot measures;

- Have at least two board members of different political parties sign the zero report prior to opening the polls; and

- Make sure the digital readout on the front of the unit registers zero after the zero report is complete.

After verifying the zero report, the election board should look for a message indicating that the equipment is ready to accept ballots. If an error message is displayed instead, the election board should follow procedures specified by the officer in charge of elections, which may include calling for troubleshooting assistance.

The election board may be required to perform other necessary tasks prior to opening the voting location. At 6:00 a.m., the marshal must announce that the polls are open, and voters will be

allowed to enter the voting location. A.R.S. § 16-565. If a voting location that is located on tribal land does not open at 6:00 a.m., the county should notify the tribal government of the delay in opening.

| III. | PRESERVING ORDER AND SECURITY AT THE VOTING LOCATION |
|---|---|

### A. Enforcing Electioneering Ban

No electioneering may take place within the 75-foot limit of a voting location. A.R.S. § 16-515(A). Additionally, no electioneering may take place outside the 75-foot limit if it is audible from a location inside the door to the voting location. The 75-foot limit is measured from the main outside entrance of the voting location.

"Electioneering" occurs when a person knowingly, intentionally, and verbally expresses support for, or opposition to, a candidate or ballot measure on the ballot in that election, or a political party with one or more candidates who appear on the ballot in that election, in order to induce or compel another person to vote in a particular manner or to refrain from voting. A.R.S. § 16-515(I).

The electioneering ban applies to the election board, other election officials, political party observers, and any voter or other individual within the 75-foot limit.

Though voters or voters' assistants are permitted to wear clothing with political messages, election board members, other election officials, or political party observers may not wear, carry, or display any materials that identify or express support or opposition for a political party, political organization, or a candidate or ballot measure appearing on the ballot. A.R.S. § 16-515(F).

The marshal, under the direction of the officer in charge of elections, enforces the electioneering ban on Election Day, while the County Recorder enforces the ban during in-person early voting and at ballot replacement sites. Law enforcement officials may be contacted to help enforce the ban in exceptional circumstances.

A County Recorder or other officer in charge of elections may grant emergency designations to polling places/vote centers, pursuant to which electioneering is not permitted on the property of the hosting facility, even outside the 75-foot limit. A.R.S. § 16-411(I); *see* Chapter 8, Section I(G).

### B. Enforcing Photography Ban

No photography or video recording is permitted within the 75-foot limit at a voting location. A.R.S. § 16-515(G). There is no exception for members of the media.

A voter, however, may display on the internet an image, that was not taken in a voting location, of their own ballot that was received by mail. A.R.S. § 16-1018(4).

## C. Enforcing Access Restrictions

A key component of preserving order at the voting location is ensuring that only authorized persons are present within the 75-foot limit. Only the following persons are authorized to be present within the 75-foot limit:

1. Members of the election board;

2. Election officials;

3. Voters (including minor children accompanying the voter, A.R.S. § 16-515(E));

   - Once in a voting booth, voters must vote promptly and move outside the 75-foot limit after voting. A.R.S. § 16-515(A); A.R.S. § 16-580(B)-(C).

4. A person selected by the voter to assist him or her voting (*see* Chapter 9, Section V);

5. Authorized political party observers (*see* Chapter 8, Section III); and

6. U.S. Department of Justice or other authorized federal government observers.

Unauthorized persons may not be present within the 75-foot limit, including but not limited to the following persons:

1. Members of the media;

2. Researchers;

3. Persons who conduct exit polls; or

4. Political party or campaign representatives without authorized political party observer status.

### 1. Simultaneous Activities Permitted at Voting Location

Regular business activity that normally occurs at the voting location may continue on Election Day, as long as the activity does not interfere with the voting process or result in electioneering. For example, a city clerk's office used as a voting location may require persons to cross or temporarily remain within the 75-foot limit in order to conduct city business. Additionally, Native American tribal election boards may be co-located with traditional election boards at the same voting location if a tribal election is held on the same day and time. A.R.S. § 16-515(D).

## D. Preventing Voter Intimidation

Any activity by a person with the intent or effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) inside or outside the 75-foot limit at a voting location is prohibited. A.R.S. § 16-1013. The officer in charge of elections has a responsibility to train poll workers and establish policies to prevent and promptly remedy any instances of voter intimidation.

The officer in charge of elections should publicize and/or implement the following guidelines as applicable:

- The inspector must utilize the marshal to preserve order and remove disruptive persons from the voting location. The inspector and/or marshal must use sound judgment to decide whether to contact law enforcement, and any higher-level decisions should be raised through the officer in charge of elections.

- Persons who witness problems at a voting location should not speak to or accost a voter in an attempt to "enforce" the law, but rather inform the inspector or marshal to allow them to resolve the issue.

- Private citizens are prohibited from bringing weapons into a polling place (including the 75-foot limit), even if the voter is properly licensed to carry such weapons. Openly carrying a firearm outside the 75-foot limit may also constitute unlawful voter intimidation, depending on the context.  In order to keep voting locations safe and free of potential intimidation, therefore, observers at voting locations should leave weapons at home or in their vehicles. A.R.S. § 13-3102(A)(11) (exceptions apply for military and peace officers in the performance of official duties, *see* A.R.S. § 13-3102(C)).

In addition to the potentially intimidating conduct outlined above, the following may also be considered intimidating conduct inside or outside the polling place:

- Aggressive behavior, such as raising one's voice or taunting a voter or poll worker;

- Using threatening, insulting, or offensive language to a voter or poll worker;

- Blocking the entrance to a voting location;

- Disrupting voting lines;

- Following voters or poll workers coming to or leaving a voting location, including to or from their vehicles;

- Intentionally disseminating false or misleading information at a voting location, such as flyers or communications that misstate the date of the election, hours of operation for voting locations, addresses for voting locations, or similar efforts intended to disenfranchise voters;

- Impersonating a law enforcement officer or otherwise wearing clothing, uniforms or official-looking apparel intended to deter, intimidate, or harass voters (*see also* A.R.S. § 26-170, prohibiting unauthorized wearing of national guard or U.S. armed forces uniform);

- Directly confronting, questioning, photographing, or videotaping voters or poll workers in a harassing or intimidating manner, including when the voter or poll worker is coming to or leaving the polling location;

- Asking voters for "documentation" or other questions that only poll workers should perform;

- Raising repeated frivolous voter challenges to poll workers without any good faith basis, or raising voter challenges based on race, ethnicity, national origin, language, religion or disability; or

- Posting signs or communicating messages about penalties for "voter fraud" in a harassing or intimidating manner.

*See* A.R.S. § 16-1013(A); A.R.S. § 16-1017.

| IV. | CHECKING VOTER IDENTIFICATION |
|---|---|

Voters are required to prove identity at the voting location before receiving a ballot on Election Day. A.R.S. § 16-579(A). The same requirements for proving identity also apply during in-person early voting, including at an on-site early voting location, emergency early voting center, or through personal early ballot delivery by a special election board. *See* Chapter 2, Section II(B).

Acceptable forms of identification fall into one of three categories:

- **List 1**: A valid form of photo identification with the voter's photograph, and name and address that reasonably match the name and address in the signature roster or e-pollbook;

- **List 2**: Two separate valid forms of non-photo identification with the voter's name and address that reasonably match the name and address in the signature roster or e-pollbook; or

- **List 3**: One valid form of identification with the voter's photograph and name, and address not reasonably matching the address in the signature roster or e-pollbook or a valid U.S. passport or military identification with the voter's name and photograph, *and* one valid form of non-photo identification from List 2.

A.R.S. § 16-579(A)(1)(a)-(c). Each list, as well as special rules applicable to Native American tribal members, is described in greater detail in the sections below.

The name and address on the identification must reasonably match the voter's name and residence or mailing address in the signature roster or e-pollbook in order to vote a regular ballot. Identification is deemed valid unless it can be determined on its face that it has expired. A.R.S. § 16-579(A)(1).

- The inclusion of an additional name on the voter's identification (*e.g.*, a middle name or an additional last name) not listed in the signature roster or e-pollbook does not prevent the voter from being issued a regular ballot.

- Voter identification that includes a nonstandard address should be found to reasonably match if the county has modified the residence address in the roster or e-pollbook and the city or town on the identification matches the city or town on the roster or e-pollbook.

- Voter identification that lists a mailing address, in lieu of a residence address, is acceptable. If the mailing address on the identification matches the mailing address on the roster or e-pollbook, there is a reasonable match and the voter must be issued a regular ballot.

If the voter provides identification, but the name or address does not reasonably match the signature roster or e-pollbook, the voter should be issued a provisional ballot, not a conditional provisional ballot. *See* Chapter 9, Section VI(B)(1).

A voter who provides no proof of identity (or invalid proof of identity) must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2). In order for a conditional provisional ballot to count, the voter must present an acceptable form of identification to the County Recorder by 5:00 p.m. on the 5th business day following a primary, general, or special election that includes an election for a federal office, or by 5:00 p.m. on the 3rd business day following any other election. A.R.S. § 16-579(A)(2). For the purposes of determining the applicable deadline to provide identification: (i) the PPE is considered a federal election; and (ii) for counties that operate under a four-day workweek, only days on which the applicable county office is open for business are considered "business days."

If the voter identifies themself as a member of a recognized Native American tribe, the voter may present alternative proof of identity as outlined in Chapter 9, Section IV(B) below. A.R.S. § 16-579(A)(1). The officer in charge of elections must post a list of acceptable forms of identification in a conspicuous place (and make it available to voters upon request) at each voting location on Election Day.

### A. Acceptable Forms of Identification

#### 1. List 1 – Photo ID with the Voter's Name and Address

Acceptable forms of identification with the voter's photograph, and name and address that reasonably match the voter's name and address in the signature roster or e-pollbook, include (only one required):

- A valid Arizona driver license;[76]

- A valid Arizona non-operating identification license;

- A tribal enrollment card or other form of tribal identification; or

- Any other valid United States federal, state, or local government-issued identification.[77]

A.R.S. § 16-579(A)(1)(a).

---

[76] Including a valid, AZMVD-issued Arizona Mobile ID. *See* https://azdot.gov/mvd/services/driver-services/mobile-id.

[77] While identification issued by a public college or university or other public educational institution qualifies as a state or local government-issued identification, it is not sufficient for voting purposes unless it includes the voter's photograph, name, and address as required by A.R.S. § 16-579(A)(1)(a).

## 2.  List 2 – Non-Photo ID with the Voter's Name and Address

A voter may present two separate documents that contain the voter's name and address. Acceptable forms of identification with the voter's name and address include the following:

- A utility bill for electric, gas, water, solid waste, sewer, telephone, cell phone, internet, or cable/satellite television service dated within 90 days of the election;

- A bank or credit union statement dated within 90 days of the election;

- A valid Arizona vehicle registration;

- A valid Indian or Native American census card;

- A property tax statement for the voter's residence;

- A valid tribal enrollment card or other valid form of tribal identification;

- A valid Arizona vehicle insurance card;

- A valid Recorder's Certificate;

- Any mailing marked "Official Election Material," including a valid Arizona voter registration card; or

- Any valid United States federal, state, or local government-issued identification.

A.R.S. § 16-579(A)(1)(b). Any List 2 document may be presented to a poll worker in electronic format, including on a smart phone or tablet.

## 3.  List 3 – Acceptable Hybrid Forms of ID

The voter may present certain combinations of documents from Lists 1 and 2. Acceptable combinations include:

- A valid photo identification from List 1 with an address that does not reasonably match the voter's address in the signature roster or e-pollbook, accompanied by a document from List 2 with an address that does reasonably match the voter's address in the signature roster or e-pollbook;

- A valid U.S. Passport or passport card, accompanied by a document from List 2; or

- A valid U.S. Military identification, accompanied by a document from List 2.

A.R.S. § 16-579 (A)(1)(c).

### B. ID Requirements for Native American Voters

A voter who identifies themself as a member of a federally recognized Native American tribe and presents one item of tribal identification (that does not meet the requirements of List 1) must be issued a provisional ballot (in lieu of a conditional provisional ballot) and does not need to return

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

to confirm their identity. A.R.S. § 16-579(A)(1). A "tribe" includes a Native American nation, community, band, or tribal subdivision.

Acceptable forms of tribal identification include, but are not limited to, the following:

- A tribal identification card issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe;

- A tribal enrollment card issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe;

- A Certificate of Indian Blood issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe;

- A voter identification card issued under the authority of a federally recognized Native American tribe;

- A home site assignment lease, permit or allotment issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe; or

- A grazing permit or allotment issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe.

If the voter does not present an acceptable form of tribal identification and otherwise does not satisfy the identification requirements in A.R.S. § 16-579(A)(1) (*see* Chapter 9, Section IV(A) above), the voter must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2).

## V.   ASSISTING VOTERS ON ELECTION DAY

Voters may be accompanied within the 75-foot limit and assisted by a person of the voter's choice during any part of the voting process.[78] A voter may request assistance from a third-party (other than the voter's employer or union representative or a candidate appearing on the ballot[79]) or from members of the election board.

If a voter requests assistance from the election board, two members of the board (of different political parties) should perform the following steps, as applicable, all with the goal of providing the voter as much privacy and independence in the voting process as possible:

- Jointly accompany the voter into the voting booth or to the accessible voting equipment;

- If requested by the voter, audibly read the candidate's names for each office, including party designations and the number to elect;

---

[78] A voter with a disability may be accompanied by a service animal during any part of the voting process. A service animal is a dog that is individually trained to do work or perform tasks for a person with a disability. An animal whose sole function is to provide comfort or emotional support does not qualify as a service animal under the ADA. *See* U.S. Dept. of Justice, Civil Rights Division, Disability Rights Section, *ADA   Requirements   -   Service   Animals* (Feb. 24, 2020), available at https://www.ada.gov/service_animals_2010.htm.
[79] Candidates for precinct committeeman are permitted to provide voter assistance.

- If requested by the voter, audibly read the relevant information pertaining to any ballot measures;

- If needed to assist the voter, ask the voter what candidates and issues the voter desires to vote for;

- If requested by the voter, instruct the voter how to operate any accessible voting equipment, including what to expect for the recorded instructions and what keys to use to move forward or go back on the screen;

- If requested by the voter, assist the voter in marking or verifying the voter's ballot selections; and

- If needed to assist the voter, ask the voter what candidates and issues the voter desires to vote for.

Those assisting a voter upon the voter's request may not attempt to influence a voter in the choice of candidates or issues, nor in any manner suggest or recommend a vote for any particular candidate or issue. *See* Chapter 9, Section I(A)(1) above. When assisting voters, poll workers should also remember to speak only as loudly as needed to assist the voter and protect their privacy as much as possible.

Curbside voting may also be provided to senior citizens or voters with disabilities as a reasonable accommodation or when the officer in charge of elections determines that a voting location is inaccessible, that no accessible sites are available, and that no temporary measures can make it accessible. *See* Chapter 5, Sections III and IV.

## VI.   ISSUING BALLOTS

### A. Issuing a Regular Ballot

Upon checking in at a voting location, voters must announce their name and address or provide their name and residence or mailing address in writing (by presenting proof of identity). A.R.S. § 16-579(A).

In jurisdictions that conduct assigned polling place elections, the residence address must be within the precinct in which the voter is attempting to vote. By signing the signature roster or the e-pollbook signature pad, the voter is deemed to affirm that they are registered in that jurisdiction and is eligible to vote in that jurisdiction. A.R.S. § 16-584(C). If the voter is found in the signature roster or e-pollbook, has presented acceptable proof of identity, and does not fall into an exception listed in Chapter 9, Section VI(B)(1) below, the voter must be issued a regular ballot. *See* A.R.S. § 16-579(C).

Each voter must sign their name in the signature roster or e-pollbook signature pad prior to receiving a ballot. Alternatively, an inspector or judge may sign the roster or e-pollbook for a voter who is personally unable to sign due to physical disability. In jurisdictions that use a paper signature roster, the inspector or judge must write the voter's name with red ink. A.R.S. § 16-

579(D). In jurisdictions that use an e-pollbook, the inspector or judge must write the voter's name and the inspector's or judge's initials (on the e-pollbook signature pad) as an attestation. A.R.S. § 16-579(E).

A voter at a special district election for which no signature roster has been supplied may vote a regular ballot, but must provide the voter's name and address in an affidavit and affirm therein that the voter:

- Resides within the district boundaries or proposed district boundaries;

- Is a qualified elector for the election; and

- Has not already voted at the election.

A.R.S. § 16-579(F).

## B. Issuing a Provisional Ballot

### 1. Circumstances Requiring Issuance of a Provisional Ballot

#### a. *Voter Received an Early Ballot*

A voter must be allowed to vote a provisional ballot if the voter appears on the signature roster or e-pollbook as having received an early ballot-by-mail, but either: (1) affirms that they have not voted and will not vote the ballot-by-mail; or (2) surrenders the ballot-by-mail to the inspector on Election Day. A.R.S. § 16-579(B).

Voters who appear at a voting location with a ballot-by-mail that has not been voted, along with the affidavit envelope, may use a privacy booth at the voting location to mark the ballot-by-mail. In this circumstance, the voter does not sign in at the voting location and the voter must place the voted ballot-by-mail in its affidavit envelope, sign the affidavit envelope, and place the envelope in the early ballot drop-off container at the voting location.

#### b. *Name Does Not Appear on Signature Roster*

A voter whose name does not appear on the signature roster must be issued a provisional ballot if the voter:

- Presents identification that includes their name and a residential address or location that the clerk verifies to be within the precinct (in counties that conduct assigned polling place elections) or county (in counties that use vote centers); or

- Signs an affirmation that states the voter is registered and eligible to vote in that jurisdiction.

A.R.S. § 16-584(B).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### i.   Recorder's Certificate

A voter whose name does not appear on the signature roster, but who presents a certificate from the County Recorder showing that the voter is entitled to vote at the voting location, is entitled to vote a regular ballot. In a jurisdiction that uses a paper signature roster, the voter must sign on the first available blank line on the signature roster. A.R.S. § 16-584(A).

### c.   *Voter Has an Inactive Status*

If a voter whose registration record is in inactive status and the voter has a new residential address or location in a different precinct, the voter must be directed to the correct voting location (in counties that conduct assigned polling place elections). In this case, the voter must also be informed that although the voter has a right to vote a provisional ballot at that location, the voter must vote in the correct polling place that corresponds to the voter's current address in order for the vote to count.

If a voter affirms they continue to reside at the address on the signature roster or in the e-pollbook, the voter must be issued a regular ballot and the County Recorder must place the voter's registration record in active status following the election. A.R.S. § 16-583(A)-(B).

### d.   *Voter Changed Their Name*

If a voter's current name does not appear in the signature roster or e-pollbook because the voter changed their name, the voter must be issued a provisional ballot or conditional provisional ballot. In that case, the clerk must write the voter's new name and former name on the provisional ballot envelope. The provisional ballot envelope will be used by the County Recorder after the election to change the voter's name in the voter registration database.

However, if the election board has real-time access to voter registration records, the voter's information may be updated at the voting location upon completion of a new voter registration or address update form.

### e.   *Voter Moved Within the County*

If a voter moved to a new address within the county but did not update their address with the County Recorder before the election, the voter must vote a provisional ballot and (in counties that conduct assigned polling place elections) must vote at the polling place that corresponds to their new address. A.R.S. § 16-584(C). If the voter is at a polling place that does not correspond to their new address, follow the procedures in Section (f) below for out-of-precinct voters.

At the new polling place, the voter will be permitted (via the provisional ballot envelope) to update their voter registration record with the new address. A.R.S. § 16-584(C). In a jurisdiction that utilizes vote centers, the voter may update their address in the same manner but may vote at any vote center within the jurisdiction.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If the election board has real-time access to voter registration records, the voter's information may be updated at the voting location upon completion of a new voter registration form or address update form.[80]

### f.   *Out-of-Precinct Voter*

If the voter's name does not appear on that precinct's signature roster because the voter resides in another precinct (in counties that conduct assigned polling place elections), an election official shall:

- Permit the voter to vote a provisional ballot (in the correct ballot style for the voter's assigned precinct) using an accessible voting device that is programmed to contain all ballot styles, and inform the voter that their provisional ballot will be counted after it is processed and if it is confirmed the voter is otherwise eligible to vote and did not vote early or at another voting location and had that other ballot counted.

  - o Alternatively, upon a specific resolution of the Board of Supervisors issued pursuant to A.R.S. § 16-411(B)(4) authorizing the use of accessible voting equipment within an assigned polling place to be used as a vote center, a voter shall be entitled to vote a regular ballot using the accessible voting device if:

    - ▪ The election board has access to real time information and can confirm the qualified voter has not cast a ballot at another voting location;

    - ▪ The accessible voting device is pre-programmed and certified to allow voters to mark or vote any ballot style for that county; and

    - ▪ The accessible voting device enables the voter to vote/mark a ballot for the correct precinct in which the voter is entitled to vote.

- If the voter refuses the option to vote on the accessible voting device as described above, the election official shall direct the voter to the correct polling location or, if applicable, to a vote center.

- If the voter refuses the option to vote on the accessible voting device and refuses to go to the correct polling location (i.e., the voter insists on voting a paper ballot in the wrong ballot style for the voter's assigned precinct),  the election official must inform the voter that the voter must vote the correct ballot style, either using the accessible voting machine or in the correct polling place, in order for their votes to be counted.

The out-of-precinct procedures described above apply to voters who are in the right county, but the wrong precinct. Voters who attempt to cast a ballot in the wrong county (i.e., outside their county of registration) should be informed that ballots cast in the wrong county will not be counted.

---

[80] If a registrant moved to a different county during the 29-day period preceding the next election, the registrant is deemed a resident of and remains a qualified elector in the former county for that election and must vote in the *former* county. A.R.S. § 16-125.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### g.   *Procedures for Issuing Provisional Ballots*

A voter who is issued a provisional ballot must sign their name on a separate signature roster page beginning with the number V-1 and numbered consecutively (for paper signature rosters only). A.R.S. § 16-584(E). E-pollbooks must be able to produce a report of provisional voters, including the voter's signature, after the polls close.

The voter and election board member must complete the information required on the provisional ballot envelope. The voter then must:

- Take the completed envelope and provisional ballot to the voting booth;
- Vote the provisional ballot;
- Place the voted ballot inside the provisional ballot envelope and seal the envelope; and
- Provide the sealed provisional ballot envelope to the election board member.

Upon receipt of the provisional ballot envelope, the voter, or the poll worker upon the voter's request, must deposit the provisional ballot envelope in the provisional ballot box (and ensure the ballot is not inserted into any precinct tabulation equipment). A.R.S. § 16-584(D). The voter shall be provided with a receipt or number with which to electronically verify the status of their provisional ballot.

All voters shall have the option of voting a provisional ballot on an accessible voting device.

### h.   *Issuing Provisional Ballots to Secured Registrants*

In the event a secured registrant attempts to vote provisionally at a polling place (and informs the poll worker of his/her secured status), the poll worker shall undertake additional precautions, including but not limited to:

- Confirming the correct ballot style;
- Ensuring that a protected government official or protected victim lists their actual residential address on the provisional ballot envelope;
- Making a notation about secured registrant status on the provisional ballot envelope; and/or
- Limiting the signature roster to the registrant's voter ID number and the notation "address protected."

### i.   *Issuing Conditional Provisional Ballots*

If the voter does not provide acceptable proof of identity, *see* Chapter 9, Section IV above, the voter must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The process for voting the ballot, completing the ballot envelope, and sealing the voted ballot in an envelope is the same procedure applicable to provisional ballots. *See* Chapter 9, Section VI(B)(2) above. However, for a conditional provisional ballot, the election board member must:

1. Indicate on the ballot envelope that the voter did not provide acceptable identification;

2. Deposit the sealed envelope in the conditional provisional ballot box or other appropriate ballot box (or allow the voter to do so);

3. Shall provide a receipt that:

   • Informs the voter how and where the voter may provide the required identification; and

   • Informs the voter that they must provide proof of identity to the County Recorder by 5:00 p.m. on:

     - The 5th business day following a primary, general, or special election that includes an election for a federal office; or

     - The 3rd business day following any other election.

A.R.S. § 16-579(A)(2).

### j.   *Ballot Privacy Folders/Sleeves*

The election judge at the voting location shall give each qualified elector only one ballot (regular or provisional, depending on the circumstances) along with a ballot privacy folder or sleeve. However, no voter shall be required to accept or use a privacy ballot folder or sleeve. A.R.S. § 16-579(C).

## VII.   ON-SITE EARLY BALLOT TABULATION

Each County Recorder or other officer in charge of elections may provide an option for voters to have their voted early ballot tabulated if the voter appears at the designated polling location or vote center on Election Day with their voted early ballot and presents proper identification. A.R.S. § 16-579.01(A); A.R.S. § 16-579.02(A). If the county permits on-site tabulation of early ballots, the County Recorder or other officer in charge of elections must do all of the following:

a) Designate an area for processing electors with their voted early ballots that is physically separate from the area for voters who are voting on Election Day within a precinct or vote center;

b) Provide adequate election officials, equipment, and poll workers necessary to conduct voting on Election Day and Election Day early ballot on-site tabulation;

c) Tally by precinct and categorize separately in the official canvass and other reports the voters whose voted early ballots are tabulated at the vote center or precinct; and

d) Reconcile the number of voters who appear on the signature roster or e-pollbook at a polling place or vote center with the number of completed early ballot affidavits and the voted early ballots tabulated on site.

A.R.S. § 16-579.01(B).

A voter with their voted early ballot who appears at a designated polling place or a vote center that allows for the on-site tabulation of early ballots shall present identification as prescribed in Chapter 9, Section IV. A.R.S. § 16-579.02(A). The voter shall then proceed as follows:

a) If the voter does not present identification, the voter must either deposit the voted early ballot in its affidavit envelope in an official drop box, or the voter shall proceed to the Election Day area designated for voting to surrender their early ballot to the election board for retention and not for tabulating. The voter is then allowed to vote a conditional provisional ballot.

b) If the voter presents identification, the voter must provide the early ballot affidavit to the election official in charge of the signature roster who must then confirm that the name and address on the completed affidavit reasonably appear to be the same as on the precinct register or e-pollbook; and

c) The election official in charge of the signature roster must allow the voter to complete the affidavit (if not complete) and may not allow for the on-site tabulation of an early ballot until the voter presents a completed early ballot affidavit.

After checking the voter's identification and ensuring the early ballot affidavit is complete, the clerk shall number consecutively the voter's completed affidavit in the order of application for early ballot tabulation, and the voter shall sign their name in the signature roster before proceeding to the tabulating equipment. A.R.S. § 16-579.02(B)-(D).

While at the tabulating equipment and under the observation of an election official, the voter shall:

a) Remove the early ballot from the completed affidavit envelope;

b) Deposit the empty completed affidavit envelope in the drop box; and

c) Insert the early ballot into a tabulating machine.

A.R.S. § 16-579.02(E).

The prescribed drop box for voted early ballot affidavits must be clearly labeled to indicate that the completed affidavits are from tabulated early ballots and must be secured in a similar manner to other ballot boxes at that location. A.R.S. § 16-579.02(F).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

A voter who lawfully brings another person's voted early ballot that is sealed in its affidavit envelope shall deposit the other person's voted early ballot in the appropriate ballot drop box before entering the on-site early ballot tabulation area in order to tabulate the voter's own early ballot. A.R.S. § 16-579.02(G).

## VIII.   CHALLENGES TO A VOTER'S ELIGIBILITY TO VOTE

A qualified elector in the county may, at the voting location, orally challenge a voter's eligibility. The elector challenging a voter's eligibility must show, by clear and convincing evidence, that:

1. The voter has voted before at that election, A.R.S. § 16-591;

2. The voter is not the person whose name appears in the signature roster or e-pollbook, A.R.S. § 16-121.01(B)(1);

3. The voter has not resided in Arizona (or the relevant local jurisdiction) for at least 29 days before the election, A.R.S. § 16-121.01(B)(2);

4. The voter is registered at an address that is not permitted for registration purposes, A.R.S. § 16-121.01(B)(3); or

5. The voter is not otherwise a qualified elector, for example, the voter does not live within the proper electoral district or is not at least 18 years old. A.R.S. § 16-121.01(B)(4); A.R.S. § 16-101(A).

A.R.S. § 16-121.01(B). A person is presumed to be properly registered to vote on completion of a registration form as prescribed by A.R.S. § 16-152 that contains the minimum required information. The burden of proof is on the challenger to show by clear and convincing evidence why the voter is not eligible to vote. *See* A.R.S. § 16-121.01(A)-(B).[81] Clear and convincing evidence is a heightened standard of proof that requires more than the preponderance of the evidence standard used in civil proceedings. To meet this heightened standard, the challenger must prove sufficient, individualized facts to establish that a conclusion is highly probable or reasonably certain.[82]

A challenge that does not articulate a statutorily-authorized ground for the challenge may be summarily dismissed. For example, a voter may not be challenged at the voting location on the following invalid grounds:[83]

• The voter's race, national origin, appearance, surname, language, or religion.

---

[81] The challenge to the voter's eligibility must rebut, with individualized evidence, the presumption under Arizona law that a vote and active voter registration is valid.

[82] *See Parker v. City of Tucson*, 233 Ariz. 422 (App. 2013) (defining "clear and convincing evidence"); *Kent K. v. Bobby M.*, 210 Ariz. 279 (2005) (same).

[83] Challengers initiating frivolous challenges or repeated challenges based on invalid grounds is justification for removing the challenger from the voting location to prevent harassment and intimidation of voters.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- The voter registered to vote using the State or Federal Form and did not provide proof of citizenship.

- The voter moved from one address within the county to another within the county.

- For reasons such as military service or college attendance, the voter is temporarily staying away from the residence at which they are registered to vote but has the intention of returning to that residence.

Challenges that articulate a statutorily-authorized ground must be decided at the voting location by the inspector and two judges. The inspector should have the challenged voter step aside and permit the other voters in line to continue to vote while the challenge is being determined.

If requested by the challenged voter, and before administering any oath, the inspector must read to the voter the rules for determining residency, including the following information:

1. The residence of a person is that place in which their habitation is fixed and to which they have the intention of returning.

2. A person does not gain or lose their residence by reason of their presence at, or absence from, a place while employed in the service of the United States or of this state, or while engaged in overseas navigation, or while a student at an institution of learning, or while kept in prison or mental institution.

3. A person does not lose their residence by traveling to another county, state, or foreign country for temporary purposes, with the intention of returning.

4. A person does not gain a residence in any county they travel to for temporary purposes, without the intention of making that county their home.

5. If a person moves to another state with the intention of making it their residence, they lose residency in this state.

6. If a person moves to another state with the intention of making it their current residence and remaining there for an indefinite time, the person loses residency in this state even though they have an intention of returning at some future period.

7. The place where a person's family permanently resides is their residence (unless separated from their family) but is not their residence if it serves as a temporary location or is used for transient purposes.

8. If a person has a family residing in one place and the person does business in another, the family residence constitutes the person's place of residence. However, a person who has taken up a residence apart from their family with the intention of remaining in that separate residence shall be regarded as a resident where the person resides.

9. A United States citizen who has never resided in the United States is eligible to vote in this state by using a federal write-in early ballot if both of the following apply:

   - A parent is a United States citizen.

   - The parent is registered to vote in this state.

Page | 195

10. The mere intention of acquiring a new residence without leaving the state or leaving the state without the intent to permanently do so, does not cause a loss of residency.

A.R.S. § 16-593(A); A.R.S. § 16-593(C). Board members should consult above residency requirements when determining registration validity.

If the challenged voter appears to be registered, the challenged voter must orally take the oath prescribed in the State Form: "I swear or affirm that the information in my voter registration is true, that I am a resident of Arizona, I have not been convicted of a felony or my civil rights have been restored, and I have not been adjudicated incapacitated with my voting rights revoked." A.R.S. § 16-592(A).

The challenged voter also may choose to answer questions material to the challenge, under oath. Only the inspector may address questions to the challenged voter. A.R.S. § 16-592(A). The person making the challenge may not speak to the challenged voter in a manner that harasses or intimidates the voter.

If a majority of the board finds the challenge to be invalid, the voter must be permitted to vote a regular ballot, so long as the voter is otherwise eligible to do so. A.R.S. § 16-592(B).

If the person challenged refuses to take any oath, refuses to answer questions material to the challenge, or if a majority of the board finds that the challenge is valid, the challenged voter must be permitted to vote a provisional ballot. A.R.S. § 16-592(C).

In the case of any challenge, the election board must complete the Official Challenge List and may seek guidance from the officer in charge of the election.

## IX.    CLOSING THE VOTING LOCATION

### A. Announcing the Closing of the Polls

The polls close at 7:00 p.m. on Election Day. A.R.S. § 16-565(A). The marshal must announce the closing of the polls and make the following additional public announcements (inside the voting location and to any voters waiting in line) at the specified time intervals:

- 1 hour before the closing of the polls;

- 30 minutes before the closing of the polls;

- 15 minutes before the closing of the polls;

- 1 minute before the closing of the polls; and

- At the moment of closing at 7:00 p.m.

A.R.S. § 16-565(C). The marshal must allow everyone to vote who is physically in line at the moment of closing the polls. The marshal may use any reasonable system to document or keep

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

track of which voters were in line as of 7:00 p.m., for example, by standing in line behind the last person to arrive as of the closing of the polls and telling those who arrive later that the polls are closed. Voters who arrive in line after 7:00 p.m. on Election Day are not permitted to vote. A.R.S. § 16-565(D).

### B. Election Board Close-Out Duties

Upon closing the voting location after the last voter has voted on Election Day, poll workers should perform close-out duties as assigned by the officer in charge of elections, including the following duties as applicable:

1. Using the procedures specified by the officer in charge of elections, poll workers must conduct an audit to ensure that the number of voters who signed in on the signature roster or e-pollbook matches the number of ballots cast, including regular and provisional ballots and, if the accessible voting equipment independently tabulates votes, any votes cast on the accessible voting equipment, A.R.S. § 16-602(A).

   a. If ballots are tabulated at the voting location: a printed statement of tally or summary of all vote totals shall be printed from every tabulation machine, and the number of ballots cast shall be compared to the signature roster and/or e-pollbook list and provided with the Official Ballot Report, A.R.S. § 16-607.

2. The information from this audit must be recorded on an Official Ballot Report form, as provided by the officer in charge of elections, which must include:

   a. The total number of blank (i.e., unvoted) printed ballots or estimated number of blank ballot stock received from the officer in charge of elections;

   b. The number of voters who signed in on the signature roster, poll list, or e-pollbook and are indicated as having been issued regular ballots;

   c. The number of voters who signed in on the signature roster, poll list, or e-pollbook and are indicated as having been issued provisional and conditional provisional ballots;

   d. The number of regular ballots cast as determined by the election board's manual count if tabulation is not done at the voting location, or as reflected on the printed summary tape from the tabulation machine if tabulation is done at the voting location;

   e. The number of provisional and conditional provisional ballots voted and sealed in provisional ballot envelopes, as determined by the election board's manual count of sealed provisional ballot envelopes;

   f. The number of unused blank ballots/ballot stock, spoiled ballots, misread ballots that still need to be tabulated (if tabulation is done at the voting location), and write-in ballots (if applicable);

   g. The number of early ballots received by the voting location (unless ballots are transported in a secure and sealed transport container to the central counting place to be counted there);

h.  In counties that use accessible voting units that independently tabulate, the number of regular and provisional ballots cast on the unit, and the unit's beginning and ending counts (if applicable); and

i.  The Official Ballot Report must be signed by the inspector and both judges, and if there are any discrepancies in the report, an explanation for the discrepancy should be attached or otherwise provided with the Official Ballot Report. The Audit Board will use this information for post-election procedures (*see* Chapter 10, Section II(H)).

3.  Secure the ballot boxes with tamper-resistant or tamper-evident numbered seals, A.R.S. § 16-608(A);

4.  Remove all memory cards or electronic media needed for election night reporting from voting equipment and e-pollbooks (if applicable) and lock and/or seal any ports or compartments where memory cards or electronic media had been inserted;

5.  Power down any voting equipment and prepare the equipment for transport/pick-up;

6.  Collect all supplies required to be returned to the elections department;

7.  Sign the Certificate of Performance for the signature roster or the functional equivalent for the e-pollbook;

8.  Prepare the official returns envelopes/containers and, if applicable, unofficial returns envelopes/containers, including the following items, for transport to the central counting place or other receiving site:

    a.  Official and unofficial returns envelopes/containers shall be plainly marked to identify items to be placed within each envelope/container:

        •  The official returns envelope/container shall be securely sealed with a tamper-evident, secure label signed by the inspector and both judges and should include, as applicable:

            -  Spoiled ballots, including any spoiled early ballots, A.R.S. § 16-585;

            -  One copy of the poll list (if the county uses paper signature rosters) or poll list produced by the e-pollbook; and

            -  Affidavits of challenged voters, decisions of election officials, and challenge lists, A.R.S. § 16-594;

        •  The unofficial returns envelope/container shall be returned with the official returns envelope/container and shall be made available for inspection by electors for a period of six months following the election. The unofficial returns envelope/container shall include the following, as applicable:

            -  A copy of the paper signature roster and poll list (if e-pollbooks are used, the e-pollbook list must be captured (*e.g.*, on memory sticks or electronic media, or exported from the e-pollbooks) and retained);

            -  Payroll voucher envelope, if applicable, with the Official Ballot Report or duplicate thereof; and

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Any other items as directed by the officer in charge of elections;

b. Voted ballots, including voted provisional and conditional provisional ballots, (with a report of the number of voters who have voted) sealed in a container with a tamper resistant or tamper-evident numbered seal, A.R.S. § 16-608(A));

c. Unvoted ballots (in a sealed container, A.R.S. § 16-566(B));

d. The original Official Ballot Report (if not included in the unofficial returns envelope/container);

e. Tally lists, if ballots are tabulated at the voting location (enclosed in a secure envelope which is sealed and signed by the members of the board (inspector and both judges) and attested by the clerks), A.R.S. § 16-614;

f. The original signature rosters/poll lists, if applicable (enclosed in a secure envelope, sealed and signed by the inspector and judges), A.R.S. § 16-615(A));

g. E-pollbooks (if the signature roster information remains in the e-pollbook and has not been extracted by removing memory cards or electronic media or otherwise securely synced with the central server);

h. Memory sticks or electronic media (securely sealed in a transport container for that purpose); and

i. Any voting equipment that independently tabulates (if memory sticks or electronic media have not been removed).

9. Exit and lock the voting location.

10. All election night returns must be delivered to the designated receiving site and a receiving board log of the transmissions should be kept by the receiving board which will later be provided to the officer in charge of elections.

## C. Transport of Ballots, Voting Equipment, and Supplies

Following the close of voting on Election Day, an accounting, reconciliation, and chain of custody record for voted ballots must be created and the transport of any ballots, voting equipment, and necessary voting location supplies to the central counting place or other authorized receiving site must be documented and done by: (1) two authorized election workers, who must be members of different political parties; or (2) if extenuating circumstances exist, a sworn official election messenger, such as a sheriff's deputy, appointed in accordance with A.R.S. § 16-615(B).

# CHAPTER 10:
## CENTRAL COUNTING PLACE PROCEDURES

### I.    CENTRAL COUNTING PLACE OPERATIONS

Electronic ballot tabulating systems shall be used for every election, except in the rare circumstance when electronic tabulation is not practicable.[84] All early ballots and provisional ballots are initially processed by the County Recorder and then transferred to the officer in charge of elections for electronic tabulation at the central counting place. Regular ballots cast on Election Day that are not processed and electronically tabulated at the voting location are also transmitted to the central counting place for processing and electronic tabulation. Central counting place operations are conducted under the direction of the Board of Supervisors or the officer in charge of elections. The operations must be in accordance with the procedures outlined in this Manual, and open to observation by representatives of each political party and the public.

Electronic ballot tabulating systems shall be tested for logic and accuracy within seven days before their use for early balloting.   A.R.S. § 16-449(B).   The central counting place and the computer center, where the computer containing the election management system (EMS) is securely kept, may be separate or joined as determined by the Board of Supervisors or designee. Maximum efficiency and control results when all board functions are performed in the same facility. However, when physical restrictions result in inadequate working spaces, it is permissible to separate board functions.

When the computer center, central counting place, or receiving sites are not at the same location, the officer in charge of elections (or designee) shall transfer the ballots to the computer center may observe the transmission of voted results, even if they are initially received and processed at another location.

As authorized by the officer in charge of elections, a security officer or an election official may conduct tours through the central counting place for the public. At no time shall any public observance of the election process interfere with or interrupt the normal ballot flow, nor shall members of the public touch a ballot, computer, or tabulation device (except as permitted by the officer in charge of elections during demonstrations). A.R.S. § 16-621(A). Further, blue or black writing utensils shall not be present in any area where voted ballots are being processed.

---

[84] Arizona law contemplates that ballots are primarily counted by electronic tabulating equipment.  *See* A.R.S. § 16-622(A) ("The result printed by the vote tabulating equipment . . . shall, when certified by the board of supervisors or other officer in charge, constitute the official canvass of each precinct or election district."); *see also, e.g.,* A.R.S. §§ 16-449, 16-468, 16-602, 16-621.  The officer in charge of elections may direct that ballots "be counted manually" only if it "becomes impracticable to count all or a part of the ballots with tabulating equipment."  A.R.S. § 16-621(C).

### A. Deputies/Oath of Office

All persons taking part in the actual processing and counting of ballots, including the employees of a jurisdiction conducting an election, must be appointed in writing and take an oath provided by the Board of Supervisors (or designee) that they will faithfully and impartially perform their duties. Any person who has not been appointed in writing or taken the oath shall, under no circumstances, be permitted to touch any ballot, computer, or counting device used in processing ballots. A.R.S. § 16-621(A).

### B. Providing Live Video Recording at Central Counting Place

For any statewide, legislative, or county election, and subject to local appropriation, the county officer in charge of elections must provide a live video recording of the custody of all ballots when ballots are present in the tabulation room in the central counting place.[85]

The live video recording must include date and time indicators. If the live coverage is interrupted, the officer in charge of elections must attempt to reinstate coverage as soon as practicable. Any disruption in live video recording does not prevent the officer in charge of elections from continuing to tabulate ballots. The officer in charge of elections must record the video coverage and retain the recording as a public record at least through the challenge period for the election. At minimum, the challenge period is through the date to file or conclude any post-election recount or election contest.

The county officer in charge of elections must timely provide the website hyperlink to the Secretary of State, who must publish those hyperlinks on the Secretary of State's website. A.R.S. § 16-621(D).

### II.    ESTABLISHING CENTRAL COUNTING PLACE BOARDS

The Central Counting Place may have 11 or more types of boards as needed, which may be combined, if practicable, at the discretion of the officer in charge of elections. The officer in charge of elections shall appoint boards for the tallying of results after the polls have closed. More than one board may be appointed for each type of board:

1.  Receiving Board

2.  Inspection Board

3.  Central Counting Place Board

4.  Ballot Duplication Board

5.  Electronic Vote Adjudication Board

6.  Accuracy Certification Board

---

[85] Live video recording is not required for the post-election hand count audit. A.R.S. § 16-602(B). Similarly, there is no live video recording requirement for L&A testing. *See* A.R.S. § 16-449.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

7. Write-in Tally Board

8. Provisional Ballot Board

9. Special Election Board

10. Audit Board

11. Snag Board

Board members are appointed by the officer in charge of elections at least 14 days prior to the board beginning its duties. All board members should be trained on their duties before assuming their positions. Some boards may have their duties combined at the discretion of the officer in charge of elections.

Unless otherwise noted below, each board is comprised of two members of different political parties. Political party chairpersons may nominate persons to fill board positions, but the board members are appointed at the discretion of the officer in charge of elections. Without a nomination from a party chairperson, the Board of Supervisors (or designee) may fill the position with a member of the appropriate party.

If it is impossible to sufficiently staff the boards with members of different political parties, the officer in charge of elections shall, at minimum, exercise best efforts to utilize board members with no party affiliation or affiliated with unrecognized political parties to ensure that there is a diversity of political party affiliation (including no affiliation) on the boards and that no board is comprised of members of only one party. Further, the County Recorder or officer in charge of elections shall document when and how the political parties in the county were contacted about the need for board workers affiliated with those parties and all other actions taken in a best effort to obtain board workers from two different political parties. Separate boards consisting of two judges and an inspector will be appointed to process early ballots and write-in votes. At least one of the judges should not be a member of the same political party as the inspector.

### A. Receiving Board

The Receiving Board consists of two members who are not registered in the same political party. The officer in charge of elections or designee serves as the chair of the Receiving Board. The Receiving Board is responsible for receiving the following items from the elections boards at the polling places and voting locations after the polls have closed, as applicable:

1. Memory devices;

2. Ballot transfer containers containing ballots;

3. Early ballots that have been dropped off at a polling place;

4. Provisional ballots;

5. Official returns container;

6. Unofficial returns container;

7. Precinct payroll envelope containing vouchers and a copy of the Official Ballot Report;

8. Duplicate poll list; and

9. Signature roster or e-pollbook.

When a ballot transfer container is delivered to a Receiving Board, the following entries shall be made in the Receiving Board Log, as applicable:

1. Precinct/polling place or vote center name or other identifier;

2. Signatures of the persons delivering the container;

3. Seal number of the ballot transfer container;

4. Seal number on the carrying case of the tabulation unit;

5. Seal number on the carrying case of the Accessible Voting System unit and memory packs; and

6. Initials of the person receiving the ballot transfer container.

The Receiving Board shall ensure proper documentation, including chain of custody documentation, for all items received. The Receiving Board shall give a numbered receipt acknowledging receipt of such ballots to the person in charge who delivers such ballots. A.R.S. § 16-608(A). If it appears that the ballot transfer container seal is broken, it shall be immediately referred to the officer in charge of elections or Snag Board for disposition. All other ballot transfer containers should be delivered unopened to the Inspection Board.

### B. Inspection Board

The Inspection Board is responsible for:

• Opening and verifying information on the precinct ballot report of the ballot transfer container contains any voting materials other than voted ballots; and

• Inspecting returns as necessary.

Receiving Boards and Inspection Boards should normally be combined unless circumstances would render this inefficient. The officer in charge of elections shall provide each board with a log to enter pertinent data for each precinct/polling place or vote center.

### 1. Preliminary Procedures

When the ballot transfer container or alternate ballot box arrives at the central counting place, the Inspection Board shall:

1. Break the seal and open the ballot transfer container;

2. Break the seal on the alternate ballot box, if used;

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

3. Remove the Ballot Report Form and check to see that the seal number is the same as shown on the log—if the Ballot Report Form is absent, incomplete, or the seal number does not agree with the number on your inspection board log, call for the supervisor or officer in charge of elections;

4. Enter on the inspection board log:

   • Precinct or voting location name and/or number;

   • Number of write-in ballots (if applicable);

   • Number of total provisional ballots, including conditional provisional ballots; and

   • Number of early ballots dropped off at the polling place;

5. Separate the types of ballots to be processed into:

   • Provisional and conditional provisional ballots,

   • Write-in ballots (if applicable),

   • Voted ballots, and

   • Early ballots.

### 2. Provisional and Conditional Provisional Ballots

The provisional ballot envelopes should be visually distinguishable from other ballot envelopes issued at a voting location or early voting site. Provisional and conditional provisional ballot envelopes may be printed on colored paper, may bear bar codes that do not identify the voter, or may use other methods to visually distinguish those types of ballot envelopes.

If there are provisional and/or conditional provisional ballots, the Inspection Board must:

1. Keep provisional ballots separate from conditional provisional ballots;

2. Complete the provisional ballot transmittal slip by entering:

   • The number of provisional ballots stated on the ballot report,

   • The actual number of provisional ballots received,

   • The number of conditional provisional ballots stated on the ballot report, and

   • The actual number of conditional provisional ballots received; and

3. Record the number of provisional and conditional provisional ballots on the inspection board log.

### 3. Voted Early Ballots

Early ballots dropped off at the polling place must be delivered to the County Recorder for signature verification and may be verified prior to or along with the provisional ballots. For more information about processing early ballots, *see* Chapter 2, Section VI.

### 4. Regular Voted Ballots

Regular ballots that were tabulated at the voting location remain in the ballot transfer container received from the precinct or are packaged for storage and retention in the Treasurer's vault. Regular ballots that were not tabulated at the voting location are received and processed by the Audit Board and/or Central Counting Place Board.

If there are write-in ballots, the Inspection Board must:

1. Count the total number of ballots containing write-ins, if not previously counted at the polling place;

2. Record the number on the log; and

3. Complete a transmittal envelope for delivery of ballots containing write-in votes to the Write-In Tally Board.

### C. Central Counting Place Board

The Central Counting Place Board is responsible for the processing and tabulation of voted ballots on the central count tabulation equipment and the EMS and shall maintain the security of the ballots throughout the process. The Central Counting Place Board shall be under the direction of the Central Counting Place Board inspector, and consist of as many trained personnel selected by the Board of Supervisors (or designee) as required to process all ballots delivered to the central counting place.

Members of the Central Counting Place Board should be familiar with the L&A testing requirements, data processing procedures, and ballot tabulation equipment. There shall be no preferential counting of ballots for the purpose of projecting the election. A.R.S. § 16-621(A).

The Central Counting Place Board shall:

1. Secure all processed ballots until successful completion of the last accuracy certification test;

2. Seal the ballot containers and secure the room where the ballots are located;

3. Keep the containers in a secure area until:

   • The end of the challenge period, or

   • If a challenge is filed, until the challenge has been resolved, and

   • The ballots have been released to the custody of the officer in charge of elections;

4. Transfer the sealed containers to the officer in charge of elections who shall transfer the ballots to the County Treasurer for retention.

The computer operating area, where the computer containing the EMS is located, shall be in a separate room or in an area of a larger room which is clearly marked as the computer operating

area. Only members of the Central Counting Place Board and Accuracy Certification Board may be permitted in the immediate computer operating area. Other observers may be permitted to observe the operations of these boards and the computer from a designated location but must not interfere with the conduct of the operations. The Snag Board may enter the computer operating area to resolve any discrepancy.

Except for a County Recorder whose name is not on the ballot and who is carrying out official duties, no public officer serving in an elected position, or any candidate for an elective public office at the election shall be permitted to enter the central counting place unaccompanied by the officer in charge of elections (or designee), any area where a central count board has been convened, any area where decisions about ballots are being made, or any other operational area where ballots are being processed or tallied.

## D. Ballot Duplication Board

When any ballot, including an early ballot, is damaged or defective so that it cannot be scanned by the tabulation machine, it must be manually duplicated by a Ballot Duplication Board and the duplicated ballot must be tabulated in place of the damaged ballot. A.R.S. § 16-621(A).

### 1. Establishing a Ballot Duplication Board

Each Ballot Duplication Board shall be comprised of at least two members who are registered voters not of the same political party and who are appointed by the officer in charge of elections. An Inspection Board may serve as a Ballot Duplication Board.

The Ballot Duplication Board manually duplicates ballots that cannot be scanned by the tabulation machine but on which the voter has nonetheless clearly indicated their intent to vote on a particular race or ballot measure. This may include crumpled or otherwise damaged ballots, ballots with smudged ink, or ballots which are marked in the wrong color of ink or with a device that cannot be read by the tabulation machine. If voter intent is not clear and Ballot Duplication Board members do not agree on the voter intent for a particular ballot, that ballot should be referred to the Snag Board or officer in charge of elections for resolution prior to duplicating the ballot.

### 2. General Duplication Guidelines

Generally, only UOCAVA ballots, early ballots, provisional ballots, and ballots cast at voting locations without a tabulation machine on-site should be duplicated at central counting facilities. Voters who vote at a voting location with a tabulation machine on-site feed their voted ballots directly into the tabulation machine and have the opportunity to correct an unreadable ballot or ballot read as over-voted or blank on the spot.

If a voter selects more than the maximum number of seats for a race, the tabulation machine will read the race as over-voted. Similarly, if a voter voted for a candidate whose name is printed on the ballot by marking the appropriate target area (*e.g.*, arrow, square, or oval) and also wrote the candidate's name in the write-in area, the tabulation machine will read that race as over-voted.

Over-voted ballots shall be sent to the Ballot Duplication Board (and the Snag Board or officer in charge of elections for adjudication if needed), even if the voter correctly filled in the arrow or oval for other races on the ballot, or to the Electronic Vote Adjudication Board. If voter intent can be determined, the ballot shall be duplicated and counted.

If a voter has consistently marked their ballot by circling the name of the candidates, or circling yes or no for issues, or placing an x, check mark, punched hole, or other similar mark next to the voter's choices, the tabulation machine will read the ballot as blank or invalid. These ballots shall be sent to the Ballot Duplication Board or the Electronic Vote Adjudication Board for processing.

If the Early Ballot Board finds ballots that are torn, corrected with white-out or labels, erased, or marked with ink or crayon that cannot be read by the equipment, the ballot must be sent to the Ballot Duplication Board.

Ballots received via fax, email, or secure web portal from UOCAVA voters shall be forwarded to the Ballot Duplication Board for processing. If the voter writes the name of a candidate on an FWAB, the vote shall be counted for that candidate. If a voter writes the name of a political party on an FWAB in a general election, the vote shall be counted as a vote for the candidate of that party. Any abbreviation, misspelling, common nickname, or other minor variation in the name of a candidate or political party shall be disregarded in determining the validity of the vote if the intent of the voter can be ascertained. A.R.S. § 16-543.02(C); A.R.S. § 16-645(A).

Counties should also consult the Secretary of State's Voter Intent Guide, available at www.azsos.gov/elections, for more detailed voter intent guidelines.

### 3. Procedures for Duplicating a Ballot

Ballots requiring duplication must be duplicated according to the following procedures:

- Ensure the correct ballot style for the voter's assigned precinct will be used to create the duplicated ballot;

- Mark the proper precinct identification code, if applicable;

- Record an identical serial number on both the original and duplicate ballot (including spoiled duplicates), A.R.S. § 16-621(A);

- Conspicuously mark the original ballot as "DUPLICATED;"

- Conspicuously mark the duplicate ballot as "DUPLICATE," A.R.S. § 16-621(A);

- Using the damaged or unreadable ballot as a guide, mark a blank ballot with votes identical to those on the original ballot;

- Do not duplicate write-in names that are not on the authorized write-in list ("blank" or "unofficial" may be typed in if using a ballot marking device to duplicate and the name/line cannot be left blank). However, mark the target area to indicate the vote cast;

- After marking the duplicate ballot, check to make sure it is identical to the original (including over-votes, if voter intent cannot be determined, and any under-votes);

- If the Ballot Duplication Board makes any errors, mark the duplicate ballot "SPOILED" in a conspicuous manner, and repeat the above steps on a new ballot;

- Place all original ballots in an envelope or container labeled "ballots that have been duplicated."

It is never permitted to enhance or alter a voter's original ballot markings to render the ballot readable. Instead, the ballot should be duplicated or, if appropriate, electronically adjudicated.

### 4. Electronic Vote Adjudication Board

As an alternative or in addition to manual duplication of ballots performed by the Ballot Duplication Board, the Board of Supervisors or officer in charge of elections may appoint Electronic Vote Adjudication Boards and utilize a certified electronic adjudication program to process specific votes requiring adjudication. Any electronic vote adjudication shall be done in compliance with A.R.S. § 16-621.

The following types of votes may be adjudicated using electronic adjudication:

- Over-votes: The Electronic Vote Adjudication Board may evaluate over-vote conditions to determine the voter's intent and make corresponding adjustments to the record if the voter's intent is clear. If the voter's choice for a specific race or ballot measure cannot be positively determined, no selection shall be counted for that race or ballot measure. A.R.S. § 16-610; A.R.S. § 16-611.

- Votes on ballots read as blank or unclear: The Electronic Vote Adjudication Board may review ballots read by the tabulation machine as blank or unclear, determine if voter intent is clear on some or all races or ballot measures, and make corresponding adjustments to the record. If the voter's choice for a specific race or ballot measure cannot be positively determined, no selection shall be counted for that race or ballot measure. A.R.S. § 16-610; A.R.S. § 16-611.

The Write-In Tally Board may also use a certified electronic adjudication program to electronically tally write-in votes for qualified write-in candidates (in lieu of manual tallying of write-in votes). Ballots that are damaged or defective such that they cannot be read or scanned by the tabulation equipment must be manually duplicated and shall not be electronically adjudicated. A.R.S. § 16-621(A).

### i.  EMS Requirements

To utilize electronic adjudication, the following minimum system and application requirements must be met:

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

1. The electronic adjudication application must be part of an election management system (EMS) that has received federal and state certification and is authorized for use in elections in Arizona.

   • The application must be installed with the EMS on a secure, isolated, closed network and shall not be connected to the internet or an external network.

2. The application shall provide distinct security roles, with separate usernames and secure passwords for each user or station. These security roles must have different functions. Each election worker shall be given access to only the components of the application necessary to perform their duties. If a secured username and password are used for each station rather than each user, a detailed log of who utilized each station and at what time(s) shall be maintained.

3. Users (and, if applicable, stations) shall have unique usernames and secure passwords. Vendor-supplied generic passwords may not be used.

4. Log-in must be required each time the electronic adjudication application is started. The application and/or tabulation system shall be capable of identifying ballots that contain over-votes or that are read as blank or unclear.

5. The application shall provide comprehensive logging of any changes to the ballot record for audit purposes, as well as validation of all changes through the use of multiple electronic "signatures" before committing any changes to the EMS results.

6. The application shall allow election officials to review, evaluate, and adjudicate votes, based on the voter's intent, through the application without physical duplication of the ballot and record those changes and any modified totals in the results report.

7. The application shall allow for each transaction to be reviewed and approved by at least two election officials of different political party affiliation.

8. There must be an efficient and reliable means of identifying and locating the physical ballots that have been electronically adjudicated if needed for auditing. For example, the tabulation machine may be programmed to out-stack and/or print an identifying mark on the ballots to be electronically adjudicated.

Even if electronic adjudication is not utilized, the tabulation equipment may be programmed to stop on, sort, or flag write-in votes for races with official write-in candidates. Official write-in candidates may be entered into the EMS after the write-in filing deadline to facilitate this process as long as doing so does not modify the election programming if L&A testing has been completed.

### ii.   L&A Testing Requirements

If electronic adjudication will be utilized for an election, that functionality of the tabulation system will also be tested during the L&A test for that election to ensure proper and secure functioning. A.R.S. § 16-621(B)(1). In addition, a paper audit log must be produced, verified, and signed off on by the Electronic Vote Adjudication Board members *before* committing their selections to the EMS for the purpose of updating results.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### iii. Electronic Vote Adjudication Board Composition

If the officer in charge of elections elects to use electronic adjudication, the officer must appoint an Electronic Vote Adjudication Board consisting of two judges, overseen by an inspector. The two judges shall be divided as equally as practicable between the two largest political parties as required by A.R.S. § 16-531(D). A.R.S. § 16-621(B)(2).

### iv. Electronic Vote Adjudication Procedures

Prior to electronically adjudicating any ballots, the Electronic Vote Adjudication Board must be trained in their duties and application functionality.

1. The electronic adjudication of votes must be performed in a secure location, preferably in the same location as the EMS, but open to public viewing.

2. The officer in charge of elections shall make a back-up of the election from the EMS prior to the start of electronic adjudication and again after electronic adjudication is complete in order to have a record of the results as initially read by the tabulator and after electronic adjudication. The officer in charge of elections may make a back-up of the election more frequently.

3. The Electronic Vote Adjudication Board shall use the electronic adjudication application to: (a) review votes on ballots read as over-voted, blank, or unclear; (b) determine voter intent; and (c) electronically attribute votes according to the clear intent of the voter.

   - The general guidelines for determining voter intent should be followed to the extent they do not conflict with any requirements in this Section.

   - The Electronic Vote Adjudication Board may decide to: (i) approve the ballot with no changes to any races; or (ii) approve the ballot with changes based on the board's adjudication of voter intent.

   - The Electronic Vote Adjudication Board shall only adjudicate votes that are marked by the voter in a manner that prevents the tabulation machine from accurately counting the race as the voter intended. If it is not possible to positively determine the voter's choice for a particular race or ballot measure, the Electronic Vote Adjudication Board shall not designate a choice for that race or ballot measure. A.R.S. § 16-610; A.R.S. § 16-611.

4. Electronic adjudication of voter intent should generally be performed separate and apart from the electronic tallying of official write-in votes and by separate boards, and the results of adjudication of voter intent and tallying of official write-in votes shall be reported and verified on separate paper audit logs.

   - If electronic adjudication of voter intent and tallying of official write-in votes is done together for each ballot requiring such action, the board performing the joint electronic adjudication of voter intent and electronic tallying of official write-in votes shall meet all the requirements applicable to both the Electronic Vote Adjudication Board and the Electronic Write-In Tally Board. In this case, the

board's actions on the adjudication of voter intent and tallying of official write-in votes may be reported and verified on the same paper audit log.

5. The EMS and/or electronic adjudication application shall provide a report on the ballots and votes electronically adjudicated by each Electronic Vote Adjudication Board, the selections made by the Electronic Vote Adjudication Board, the names of the members of the Electronic Vote Adjudication Board that processed the votes on the report, and the date of processing.

6. The electronic adjudication process shall include production of a paper audit log of the Electronic Vote Adjudication Board's dispositions as to each ballot/vote electronically adjudicated. The paper audit log must be verified and signed off on by the board members, who shall verify that the paper audit log accurately reflects the board's selections and that those selections are accurately reflected in the electronic adjudication application *prior to* committing the selections to the EMS for the purpose of updating results. The paper audit log shall be maintained in case resolution of any discrepancy or audit of the electronic adjudication process is needed. A.R.S. § 16-621(B)(3)(b).

7. To meet the requirement of a board-verified paper audit log, the Electronic Vote Adjudication Board shall either:

   • Maintain a manual, hard-copy log of its selections for each ballot/vote electronically adjudicated by the board; or

   • Print from the application a log of the ballots and votes electronically adjudicated by the board and the selections made by the board for each ballot and vote, verify that the printed log accurately reflects the board's selections, and confirm that those selections are accurately reflected in the electronic adjudication application *prior to* committing the selections to the EMS for the purpose of updating results.

8. The officer in charge of elections shall provide for a method to retain, track, and account for the original ballot and the digital duplicate of the ballot created by the electronic adjudication application that includes a serial number on the digital image, which can be used to track Electronic Vote Adjudication Board actions. A.R.S. § 16-621(B)(3)(a), (c).

9. After adjudication is complete and the board has verified that the paper audit log of its selections is accurate and that those selections are accurately reflected in the application, the results shall be committed to the EMS and the election results will be updated with new totals.

### E. Accuracy Certification Board

The Accuracy Certification Board consists of two elections officials registered with two different political parties and shall be appointed by the Board of Supervisors (or designee). The Accuracy Certification Board is responsible for verifying the accuracy of computer programs, through the L&A test materials, and attesting to the procedures during computer processing of ballots. A.R.S. § 16-449.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

All L&A tests shall be observed by the Accuracy Certification Board and open to representatives of political parties, candidates, the press, and the public. Political party observers are distinguished from members of the public, who may view the central counting place activities from the public viewing area. Under no circumstances should a political party observer touch or operate the election server computer or any scanning device. If an error is detected in the L&A test, it shall be corrected. An errorless test must occur and be completed before the program and computer are certified.

Immediately after completion of the tabulation of ballots, the Accuracy Certification Board shall certify that:

- The number of ballots processed for each precinct or voting location was checked against the number of ballots received from the precinct or voting location by the Ballot Inspection Board (part of the Central Counting Place Board), as reflected on the Ballot Report Form; and

- Any discrepancies in the number of ballots received and the number processed by the vote tally system are properly resolved.

### F. Provisional Ballot Processing

Provisional ballots are processed initially by the County Recorder and then by a Provisional Ballot Board at the central counting place. The provisional ballot affidavit, whether part of the provisional ballot envelope or a separate form, shall be deemed sufficient if it is signed by the voter.

A conditional provisional ballot cast by a voter must be clearly distinguishable and kept separate from other provisional ballots. A conditional provisional ballot must not be processed and forwarded for tabulation until the voter has produced sufficient identification to the County Recorder, in accordance with the provisions of this manual governing proof of identity. The County Recorder must disqualify the ballot if the voter does not provide sufficient identification by the deadline.

#### 1. County Recorder Responsibilities

##### a. *Verification of Provisional Ballots*

All provisional ballots must be verified for proper registration within 10 calendar days after a general election that includes an election for federal office, and within five business days for all other elections. A.R.S. § 16-135(D). The provisional ballot shall be counted if:

1. The voter's registration is verified and the voter is eligible to vote in the precinct, *and*

2. The voter's signature does not appear on any other signature roster for that election, *and*

3. There is no record that the voter voted early in that election.

For a provisional ballot to be counted, the County Recorder shall confirm that the following requirements are met:

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

1. Confirm that the provisional ballot affidavit is signed;

2. Confirm that the voter was registered to vote and was eligible to vote in the election;

3. Confirm that the voter voted in the correct polling place or voting location or cast the ballot for the correct precinct;

4. Confirm that there is no record that the voter voted early for that election;

5. If the voter moved without updating their address and voted in the precinct for the new address, confirm that the voter did not vote in the prior precinct by confirming that the voter did not sign the signature roster for the prior precinct;

6. For a partisan primary election, confirm that the voter received and voted the correct party ballot based on the voter's party affiliation;

7. If the voter is registered as a "federal-only" voter, confirm that the voter received a "federal-only" ballot or clearly mark or stamp the outside of the provisional ballot envelope to indicate that the voter is a "federal-only" voter and only races for federal candidates should be duplicated and tabulated.

The County Recorder shall deliver only provisional ballot envelopes and/or affidavits of qualified voters who meet the above requirements to the Board of Supervisors or officer in charge of elections for counting. Rejected provisional ballot envelopes and/or affidavits should be separately retained and delivered to the officer in charge of elections for retention in accordance with A.R.S. § 16-624.

### b. *Rejection Reason Code*

The rejection reason code is determined by the County Recorder. The rejection reasons include:

1. Not registered;

2. Registered after 29-day cut-off;

3. No ballot in envelope;

4. No signature;

5. Insufficient/illegible information;

6. Wrong party;

7. Outside jurisdiction ballot;

8. Voter challenge upheld;

9. Voted and returned an early ballot;

10. Proper identification not provided by deadline;

11. Not eligible; and

12. Other (please specify).

### c.   *Updating Voter Registration Records*

The County Recorder shall update the appropriate county register or registration database with the names of all provisional voters whose registration was verified to indicate that those voters are qualified to vote in future elections. The County Recorder should also use the information from a provisional ballot envelope or affidavit to update a voter's name and address.

Provisional ballot envelopes or affidavit forms shall substantially comply with A.R.S. § 16-152 and be used to register a voter for the first time for future elections (not the current election the provisional ballot was used for). Counties in which voters complete the provisional ballot affidavit on an e-pollbook should also ensure the affidavit substantially complies with A.R.S. § 16-152 so it can be used to register a voter for the first time, but, as an alternative and until compliance is possible, may offer provisional voters a State or Federal Form to complete and submit at the voting location.

Additionally, a "federal-only" voter may use the provisional ballot process to provide a driver license number as DPOC for future elections (although not for the current election the provisional ballot was used in).

### d.   *Voter Verification of Provisional Ballot Status*

The County Recorder shall create a provisional ballot record for the voter that contains the following information:

1. Provisional ballot receipt number;
2. Name of the voter;
3. Precinct/polling location where the provisional ballot was cast;
4. Provisional ballot status;
5. Provisional ballot status reason;
6. Address (optional)
7. Date of Birth (optional)
8. Political Party (optional).

A.R.S. § 16-584(E).

This information will be used for online verification of a voter's provisional ballot. The information shall be available online for at least one month after posting.

As soon as possible after verification of the provisional ballots is complete, a notice informing the voter whether their vote was counted or not counted, and the reason for not counting if applicable, shall be provided to the voter. This may be in the form of a notice mailed to the voter, or the voter may access the information pursuant to the instructions on the receipt that was issued to the voter

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

at the time they voted the provisional ballot. The receipt will provide the voter with clear instructions on how to determine the status of their vote.

The officer in charge of elections shall provide to provisional voters a toll-free number or other method of verifying the status of their votes. Reasonable restrictions will be employed to limit transmittal of the information only to the voter, such as verifying the date of birth, state or country of birth, or other information that could confirm the voter's identity if compared with the voter registration information on file. The officer in charge of elections will request verification of identity with information from the voter's registration record or provisional ballot envelope. A.R.S. § 16-584(F).

### e.  *Provisional Ballot Board Responsibilities*

The Board of Supervisors shall appoint one or more Provisional Ballot Boards, consisting of two elections officials not of the same political party, for the processing of provisional ballots. Provisional Ballot Boards may convene and begin ballot processing any time after provisional ballots are delivered to the officer in charge of elections.

The inspector on the Provisional Ballot Board shall be in charge of processing. The inspector shall receive the provisional ballot envelopes from the verification staff and record the precinct identification data on the transmittal form if that data is not already pre-printed.

### f.  *Provisional Ballot Board Procedures for Specific Scenarios*

The Provisional Ballot Board at the central counting place must follow the following procedures in the specified scenarios below.

#### i. Provisional Ballots Cast by Federal-Only Voters

The Provisional Ballot Board must examine the outside of the provisional ballot envelope to determine if the Recorder's Office has identified the voter as a "federal-only" voter. If that indicator is present and the Recorder's Office has indicated that the ballot is otherwise verified, the board will open the provisional ballot envelope and confirm whether the ballot inside is a "full-ballot" or "federal-only" ballot.

- If the ballot in the provisional ballot envelope is a "federal-only" ballot, the ballot shall be removed and processed for tabulation.

- If the ballot in the provisional ballot envelope is a "full-ballot," the board will remove the ballot from the envelope and send the ballot to the Ballot Duplication Board for duplication of the races for President of the United States (Presidential Electors), United States Senator, and United States House of Representatives only. No other race or ballot measure will be duplicated from that ballot.

#### ii.  Provisional Ballots Voted on an Accessible Voting Device that Independently Tabulates Votes

The Provisional Ballot Board must examine the provisional ballot affidavit to determine if the Recorder's Office has identified the voter as a "federal-only" voter. If that indicator is present and the Recorder's Office has indicated that the ballot is otherwise verified, the verification staff will print a copy of the voted ballot or pull the voter-verifiable paper audit trail to confirm whether the ballot is a "full-ballot" or a "federal-only" ballot.

- If the ballot is a "federal-only" ballot, the ballot shall be marked "accepted" on the EMS and processed for tabulation.

- If the ballot is a "full-ballot," the verification staff will mark the ballot "Fed-Only" and send the ballot to the Ballot Duplication Board for duplication of the offices of President of the United States (Presidential Electors), United States Senate, and United States House of Representatives only. No other race or ballot measure will be duplicated from that ballot. The provisional ballot shall be marked "rejected" on the EMS and the duplicated ballot shall be counted with the rest of the provisional paper ballots.

### iii.  Damaged Ballots

If there are damaged provisional ballots, the verification staff must:

1. Count the number of damaged ballots in each precinct;
2. Initiate a transmittal slip to accompany the ballot to the Ballot Duplication Board;
3. Record the number on the slip; and
4. Forward the ballots, with the transmittal slip, to the Ballot Duplication Board.

### iv.  Ballots Ready for Counting

The number of ballots ready to be counted must be recorded on a transmittal slip. The ballots and transmittal slip are forwarded to the Central Counting Place Board.

### v.  Ballots to Be Duplicated

If any provisional ballots require duplication, the verification staff must forward those ballots to the Ballot Duplication Board in a proper transmittal envelope or container.

## G. Write-In Tally Board

After the provisional ballots have been counted on a tabulation unit, any ballots containing write-in votes shall be separated from the other ballots and forwarded to the Write-in Tally Board or Electronic Write-in Tally Board.

### 1.  Write-In Tally Board Procedures

The Write-In Tally Board is comprised of one inspector and two judges, who are members of the two political parties which cast the highest number of votes in the state at the last general election.

At least one of the judges must be of a different political party than the inspector. At least 90 days before an election, the chairperson of the two largest political parties may designate qualified electors to serve on the Write-In Tally Board. When the list is timely submitted, it may be used to appoint board members. Without a nomination from a party chairperson, the Board of Supervisors (or designee) may fill the position with a member of the appropriate party. A.R.S. § 16-531(A), (E). The Write-In Tally Board may manually tally write-in votes or do so through an electronic voting system. A.R.S. § 16-531(E).

Write-in votes are tallied only if the ballot is properly marked by the voter. This is done by writing in the name of a qualified write-in candidate *and* by filling in the oval or connecting the arrow (or other method of properly marking the vote as indicated in the instructions for the particular optical scan or digital scan ballot). A.R.S. § 16-448.

If a write-in vote is declared to be invalid, the Write-In Tally Board manually tallying write-in votes must disqualify the vote. The Write-In Tally Board must not count any write-in vote that an election official has identified as disqualified.

## 2. Electronic Tallying of Write-In Votes

Any electronic tallying of write-in votes shall be done pursuant to the requirements in this Section unless the Secretary of State has granted a jurisdiction written approval to use alternate procedures. A jurisdiction wishing to deviate from the procedures in this Section must make a request in writing no later than 90 days prior to the election for which the exception is requested.

### a. *EMS Requirements*

To utilize an electronic program to tally write-in votes, the following minimum system and application requirements must be met:

1. The application must be part of an EMS that has received federal and state certification and is authorized for use in elections in Arizona.

   - The application must be installed with the EMS on a secure, isolated, closed network and shall not be connected to the internet or an external network.

2. The application shall provide distinct security roles, with separate usernames and secure passwords for each user or station. These security roles must have different functions. Each election worker shall be given access to only the components of the application necessary to perform their duties. If a secured username and password are used for each station rather than each user, a detailed log of who utilized each station and at what time(s) shall be maintained.

3. Users (and, if applicable, stations) shall have unique usernames and secure passwords. Vendor-supplied generic passwords may not be used.

4. Log-in must be required each time the application is started. The application and/or tabulation system shall be capable of identifying ballots that contain write-in votes.

5. The application shall provide comprehensive logging of any changes to the ballot record for audit purposes, as well as validation of all changes through the use of multiple electronic "signatures" before committing any changes to the EMS results.

6. The application shall include electronic review, attribution of eligible write-in votes, and tallying of official write-in votes within the application.

7. The application shall allow for each transaction to be reviewed and approved by at least two election officials of different political party affiliation.

8. There must be an efficient and reliable means of identifying and locating the physical ballots that have been electronically tallied, if needed, for auditing. For example, the tabulation machine may be programmed to out-stack (physically or digitally) the ballots with write-in votes to be electronically tallied and/or print identification numbers on the ballots.

The tabulation equipment may be programmed to stop on, sort, or flag write-in votes for races with official write-in candidates. Official write-in candidates may be entered into the EMS after the write-in filing deadline to facilitate this process as long as doing so does not modify the election programming if L&A testing has been completed.

### b.  *L&A Testing Requirements*

If write-in votes will be electronically tallied, that functionality of the tabulation system will also be tested during the L&A test for that election to ensure proper and secure functioning. In addition, a paper audit log must be produced, verified, and signed off on by the Write-In Tally Board members *before* committing their selections to the EMS.

### c.  *Electronic Tallying Procedures*

Prior to electronically tallying any ballots with write-in votes, the Write-In Tally Board must be trained in their duties and application functionality.

1. The electronic tallying of write-in votes must be performed in a secure location, preferably in the same location as the EMS system, but open to public viewing.

2. A Write-In Tally Board that electronically tallies write-in votes must use the EMS and electronic adjudication/tallying application to: (i) electronically filter and review ballots with write-in votes; and (ii) determine voter intent and attribute votes to official write-in candidates according to the procedures specified in Chapter 10, Section II(G)(1). Write-in votes for unofficial write-in candidates are invalid and shall not be tallied electronically.

3. If the Write-In Tally Board cannot agree on the resolution of a vote, that vote shall be flagged and referred to the officer in charge of elections (or designee) for final determination.

4. The EMS and/or electronic adjudication/tallying application shall provide a report on the official write-in votes tallied, the names of the members of the Write-In Tally Board that processed the votes on the report, and the date of processing.

5.  The electronic write-in tally process shall include production of a paper audit log of the Write-In Tally Board's decisions as to each ballot/vote electronically tallied. The paper audit log must be verified and signed off on by the board members, who shall verify that the paper audit log accurately reflects the board's selections and that those selections are accurately reflected in the electronic adjudication/tallying application *prior to* committing the selections to the EMS.

6.  To meet the requirement of a board-verified paper audit log, the Write-In Tally Board shall either:

    a.  Maintain a manual, hard-copy log of its selections for the official write-in votes tallied by batch; or

    b.  Print a log of its selections by batch from the application, verify that the printed log accurately reflects the board's selections, and confirm that those selections are accurately reflected in the electronic adjudication/tallying application *prior to* committing the selections for that batch to the EMS.

### H. Audit Board

The officer in charge of elections is responsible for overseeing a post-election audit of each voting location using an Audit Board. The officer in charge of elections shall ensure that all election board logs, the Official Ballot Report, tabulation unit tapes/printouts, accessible voting device tapes/printouts, and a copy of the downloaded precinct results reports are delivered to an Audit Board upon the completion of each election board's function.

The Audit Board:

1.  Receives the Official Ballot Reports for each voting location and any supplemental information from the election boards that could explain any discrepancies;

2.  Receives the signature rosters, poll lists (or scanned copies), or reports from e-pollbooks that show voter check-ins and signatures;

3.  Receives the tabulation unit and accessible voting device precinct paper tape;

4.  Receives a copy of the transmitted precinct results from the election management system;

5.  Verifies the counts on the Official Ballot Report match the source documents;

6.  Verifies that the number of voters issued a provisional ballot matches the sum of the number of accepted provisionals plus the number of rejected provisionals;

7.  Verifies that the count from the tabulation unit and accessible voting device precinct paper tapes is the same as the count from the transmitted precinct results on the election management system;

8.  Produces a written record that the correct vote totals for each candidate and issue were transmitted from the polling place to the election management system;

9.  Has access to all voting locations' ballot statements contained in the unofficial return envelope;

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

10. Identifies discrepancies in the reports following final tabulation of all ballots, including duplicated ballots and provisional ballots;

11. Resolves problems that appear to be of major significance in the presence of political party observers; and

12. Resolves and documents all discrepancies.

The functions of the Audit Board must be completed prior to the acceptance of the canvassing results in order to ensure the integrity of the canvass results.

### I. Snag Board

The Snag Board is comprised of at least three members who are knowledgeable about the entire elections process. Where possible, its members should have experience working as board members in several previous election cycles. The Snag Board is appointed by the Board of Supervisors or officer in charge of elections and should have members of at least two political parties.

The function of the Snag Board is to resolve any problem brought to its attention by any of the other election boards.

# CHAPTER 11:
## HAND COUNT AUDIT

A hand count audit of a limited number of precincts or vote centers and limited number of early ballots must be conducted for a random selection of races after each countywide primary, special, general, and PPE election and compared against the results from the electronic tabulation system, unless applicable exceptions apply.  The purpose of the hand count audit is to compare the results of the electronic count to the limited hand count audit to assure that the machines are working properly and accurately counting votes. Full or extended hand count audits beyond the strict parameters of A.R.S. § 16-602 are prohibited.[86]

Those conducting the hand count shall not be provided the machine count results of the batches of ballots they are hand counting prior to completion of the hand count of that batch. If the results from the hand count audit are within the "designated margin" of the electronic results for selected ballots, the hand count is deemed to have confirmed the accuracy of the electronic tabulation equipment, the hand count may cease, and the countywide electronic results are deemed the official results of the election. If the results from the hand count audit are outside of the "designated margin," a second hand count of the same ballots is required, potentially followed by an expanded hand count and one or more jurisdiction-wide hand counts depending on the results. A.R.S. § 16-602(C)-(F).

Except when prescribed by a court of competent jurisdiction or otherwise provided in Arizona Revised Statutes, no election that includes a federal, state, or county office or ballot measure shall be subject to a full hand count or full manual audit of ballots. A.R.S. § 16-602.

| I. | DESIGNATION OF HAND COUNT BOARD MEMBERS |
|---|---|

At least 14 days prior to a countywide primary, special, general, or PPE election, the officer in charge of elections must notify the county chairpersons of each political party entitled to continued representation on the state ballot of the requirement to designate Hand Count Board members, who will perform the hand count audits under the supervision of the officer in charge of elections. The officer in charge of elections should forecast the requisite number of board members (including alternate board members) based on the number of precincts/vote centers included in the hand count and/or the total number of ballots to be hand counted.

---

[86] A county lacks the discretion to conduct a hand count of all ballots cast at precincts or vote centers located in the county. Likewise, a county lacks the discretion to hand count all early ballots cast in the county. *Ariz. All. for Retired Ams., Inc. v. Crosby*, No. 2 CA-CV 2022-0136, 2023 WL 6854102, at *3-4 ¶¶ 9, 18 (Ariz. Ct. App. Oct. 18, 2023); Ariz. Op. Atty Gen. No. I22-004 (May 18, 2023).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The political party county chairpersons (or designee) must designate Hand Count Board members and alternates at least seven days before the election (*i.e.*, by 5:00 p.m. on the Tuesday before the election). The designation must be submitted as prescribed by the officer in charge of elections, who may require or permit electronic submission. If the political party is not represented by a county chairperson, the chairperson of the applicable state political party (or designee) may appoint the Hand Count Board members.

The proposed board members and alternates must be registered to vote in Arizona but need not be registered members of the political party that designated them. Candidates appearing on the ballot, except for the office of precinct committeeman, may not serve as Hand Count Board members. Board members are entitled to receive compensation, but not for lodging, meals, or travel.

The officer in charge of elections must notify a political party county chairperson by 9:00 a.m. on the Wednesday before the election if there is a shortage of required board members (*i.e.,* the total number of proposed board members provided by all parties is less than four times the number of precincts to be audited). The chairperson must provide additional board member names by the next business day (5:00 p.m. on the Thursday before the election).

The hand count shall not proceed unless a sufficient number of Hand Count Board members have been designated by 5:00 p.m. on the Thursday preceding the election and appear at the designated time and location to perform the hand count. Further, for the hand count to proceed, not more than 75% of the persons performing the hand count shall be from the same political party. The hand count may also be canceled (and the electronic tabulation of ballots will constitute the official count) if the officer in charge of elections removes enough board members (due to disruption or members being unable to perform their duty) such that there is an insufficient number of board members and the shortage cannot be remedied with substitutions.

The officer in charge of elections must notify the Secretary of State if the hand count will be canceled. Among other information, the notification to the Secretary of State must outline the steps taken by the officer in charge of elections to secure sufficient participation in the hand count.

If a sufficient number of members are present for the hand count, the officer in charge of elections must create boards by selecting at least two judges and one inspector per board. Each Hand Count Board must be comprised of designees from at least two recognized political parties and no more than 75% of the members may be from the same political party. Typically, for a three-member Hand Count Board, no more than two board members may be members of the same political party entitled to continued representation on the ballot. All board members must take the oath specified in A.R.S. § 38-231(E).

Board members may not bring any electronic devices, pens, writing utensils, or cell phones into the designated location of the hand count. The officer in charge of elections will provide any pens needed (usually with red ink) and a location for board members to store any personal items. A.R.S. § 16-602(B)(7).

## II.   OBSERVATION OF THE HAND COUNT AUDIT

The hand count is not subject to the live video requirements of A.R.S. § 16-621(D). However, political party representatives who are observing the hand count may bring their own video cameras to record the hand count. The sole act of recording the hand count does not constitute sufficient grounds for the officer in charge of elections to prohibit observers from recording or to remove them from the facility. However, the observation or recording may not interfere with the hand count. In addition, to preserve the right to a secret ballot, no recording of ballot content shall be allowed. If either situation occurs, the officer in charge of elections may remove the observers or board members from the facility or further restrict video recording. A.R.S. § 16-602(B).

## III.   TYPES AND QUANTITIES OF BALLOTS TO HAND COUNT

A post-election hand count audit includes an early ballot hand count, which involves a manual count of a percentage of early ballots cast in the election, and precinct hand count, which involves a manual count of regular ballots from selected precincts or vote centers.  Only the officer in charge of elections is permitted to conduct a post-election hand count audit under A.R.S. § 16-602(B).

### A. Ballots Included in the Early Ballot Hand Count

The officer in charge of elections is required to conduct a hand count of 1% of the total number of early ballots cast, or 5,000 early ballots, whichever is less. A.R.S. § 16-602(F).

At least one batch of up to 400 early ballots from each central count machine used to tabulate early ballots and at least one accessible voting machine (if those machines independently tabulate votes) used during on-site early voting shall be selected for the early ballot hand count process. The officer in charge of elections must securely sequester those selected ballots along with their unofficial electronically tabulated results for use in the early ballot hand count.

### B. Ballots Included in the Precinct Hand Count

For the precinct hand count, the officer in charge of elections must conduct a hand count of regular ballots from at least 2% of the precincts, or 2 precincts, whichever is greater. Provisional and conditional provisional ballots are not included in the hand count. A.R.S. § 16-602(B)(1).

In counties that utilize vote centers, each vote center is considered to be a precinct/polling location and the officer in charge of elections must conduct a hand count of regular ballots from at least 2% of the vote centers, or 2 vote centers, whichever is greater. Ballots do not have to be separated into precincts before the hand count audit.

In a PPE, the officer in charge of elections must conduct a hand count of regular ballots from 2% of the polling places or vote centers established pursuant to A.R.S. § 16-248. A.R.S. § 16-602(B)(3).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### IV.   SELECTING PRECINCTS/POLLING PLACES TO BE HAND COUNTED

The county political party chairpersons (or designees) shall take turns randomly drawing the precincts, vote centers, or consolidated polling places for the hand count. If a chairperson appoints a designee, the appointment must be in writing with the signature of the chairperson. The officer in charge of elections may prescribe the method for submitting the appointment and may require or permit electronic submission. The precincts/polling places shall be selected by lot without the use of a computer and the order of selection by the county political party chairpersons (or designees) shall also be by lot.

The selection of the precincts/polling locations shall not begin until all ballots voted in the precinct polling places have been delivered to the central counting facility. The unofficial vote totals or results from all precincts/polling locations shall be made public before selecting the precincts/polling locations to be hand counted. The selection of precincts/polling locations shall occur prior to the selection of the races to be counted.

At least 2% of the precincts/polling locations in the county (rounded to the nearest whole number) or two precincts/polling locations, whichever is greater, shall be selected at random from a lot consisting of every precinct/polling location in that county. For any election where there are consolidated polling locations, the number of precincts to hand count should be calculated based on the number of active polling locations for that election.

For counties utilizing vote centers, each vote center shall be considered to be a precinct/polling location during the selection process and the officer in charge of elections must conduct a hand count of regular ballots from at least 2% of the vote centers, or two vote centers, whichever is greater.

The process for selecting the precincts for Primary and General Elections is:

1.  **Determine Selection Order**: Select, by lot, the order in which the county political party chairpersons (or designees) shall draw precincts/polling locations. The selection order will apply for the entire hand count process.

2.  **Create Lot**: Create a lot containing all precincts/polling locations in the county.

3.  **Select Precincts**: Draw the required 2% or two precincts/polling locations to be counted from a lot containing every precinct/polling location in the county. Precincts/polling locations without any registered voters shall be excluded from the pool of available precincts/polling locations in the county. The county political party chairpersons (or designees) shall alternate selecting precincts/polling locations based on the order defined in Step 1 from the lot until the required number of precincts/polling locations is selected.

    a.  If a tabulation unit from a vote center was selected as a precinct/polling location to be hand counted, a subsequential selection shall be conducted to select a touchscreen voting machine (if they independently tabulate votes, and if there are more than one) utilized at that vote center:

- • **Create Lot**: Create a lot containing all touchscreen voting machines used at the same vote center in which a tabulation unit was previously selected.

- • **Select Touchscreen Voting Machines**: Draw a corresponding number of touchscreen voting machines to be hand counted for each tabulation unit from a vote center that was previously selected, from a lot containing every touchscreen voting machine utilized at a vote center from which a tabulation unit was selected during the selection of the precincts/polling locations.

4. **Record Precincts**: The officer in charge of elections shall record the precincts/polling locations to be hand counted in the Master Precinct and Race Selection Worksheet. The precincts/polling locations shall be listed in the order selected. The order of the precincts/polling locations shall be used when selecting the contested races in Section V of this Chapter.

A.R.S. § 16-602(B)(1), (B)(2), (B)(2)(e), (C).

| V. | RACES ELIGIBLE TO BE HAND COUNTED |
| --- | --- |

### A. Eligible Races Generally

The races to be counted in the hand count audit includes up to five contested races, which shall include:

- • One statewide candidate race;

- • One statewide ballot measure (if the election has a statewide ballot measure on the general election ballot);

- • One legislative candidate race (Arizona House of Representatives or Arizona Senate);

- • One federal candidate race (United States House of Representatives or United States Senate); and

- • One presidential elector race (only in general elections with a race for President of the United States).

A.R.S. § 16-602(B)(2), (5).

A candidate race within one of the above-referenced categories is eligible for inclusion in the hand count only if the race is "contested," meaning there are more candidates seeking election or nomination than the number of seats available. A.R.S. § 16-602(B)(2)(f). Write-in candidacies do not create contested races if the race is not otherwise contested. A.R.S. § 16-602(B)(4).

If there are no contested races within one of the above-referenced categories, one or more additional contested races from one of the other categories must be selected by lot until the required number of contested races are selected for the hand count. A.R.S. § 16-602(B)(2)(e). For example, because a statewide ballot measure will not appear on the ballot during a primary election, an

additional contested race from one of the other categories of eligible races must be drawn to make up the required four races.

For a primary election, each political party primary is considered a separate race. For example, the requirement to select one contested legislative race is satisfied by selecting either the Democratic or Republican primary election race. A.R.S. § 16-602(B).

For federal and legislative candidate races, only the type of office (House or Senate) must be selected, not any particular district. A.R.S. § 16-602(B)(2)(c)-(d). Therefore, if, for example, the race for U.S. House of Representatives has been selected to satisfy the federal candidate race category, and the county encompasses parts of three Congressional districts, ballots cast in any of the Congressional districts are eligible for the hand count audit as long as those races are contested.

### B. Eligible Races in Special Elections

For a special election to vote on a statewide ballot measure, all statewide ballot measures should be selected for the hand count audit (assuming there are four or fewer statewide ballot measures on the special election ballot).

For a special election to fill a Congressional vacancy:

- If a Congressional primary is contested, all contested political party races should be selected for the hand count audit for that special primary election (assuming there are four or fewer contested primaries);
- Regardless of whether a Congressional primary was contested, a contested special general election must be selected for the hand count.

### C. Eligible Races in a PPE

A hand count must be conducted following a PPE. A.R.S. § 16-602(B)(3). Since no other races may appear on a PPE ballot, all contested political party preference races should be selected for the hand count audit (assuming there are four or fewer contested preference races). A.R.S. § 16-241(A).

## VI.   SELECTING RACES TO BE HAND COUNTED

The county political party chairpersons (or designees) must randomly select the particular contested races to be hand counted, continuing with the order determined at the beginning of the hand count process and used to select precincts/polling locations.

If there are fewer than four contested races on the ballot, only the contested races on the ballot that fall within one of the four categories shall be included in the hand count audit. If there are no contested races in any of the designated categories in an election, no hand count will take place. A.R.S. § 16-602(B)(2)(f).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## A. Selecting Races for Primary and General Elections

The following process shall be used to select the races to be counted for both the precinct hand count and early ballot hand count for primary and general elections:

1. **Determine the race <u>categories</u> available for this election**. The possible race categories shall be statewide candidate, federal candidate, state legislative candidate, and ballot measure, and, in a presidential election year, presidential elector. Some categories may not appear on the ballot for a particular election. <u>A.R.S. § 16-602(B)(2)</u>.

2. **Create a master list of all <u>contested races</u>**. Create a list by race category of all possible contested races. This list will be referenced when creating the lots of possible races to count. The entries on this list shall be specific. Examples for the Primary would include Governor/Democrat or State House/Republican. Examples for the General would include State Treasurer or State Senate.

3. **Determine the required <u>number</u> of races that will be counted from each category.** There should be one race for each required category unless a category does not have an eligible race.

   a. **Determine if there is a contested presidential elector race**.

      • Indicate if there is no contested presidential elector race on the ballot, for example, by placing a zero in the "Presidential Elector" line of Section B of the Master Precinct and Race Selection Worksheet.

      • Indicate if there is a contested presidential elector race, for example, by placing a tick mark in the "Presidential Elector" line.

   b. **Determine if there is a contested statewide candidate race.**

      • Indicate if there is no contested statewide candidate race on the ballot, for example, by placing a zero in the "Statewide Candidate" line of Section B of the Master Precinct and Race Selection Worksheet and placing a tick mark in the "Additional Races Needed" line.

      • Indicate if there is a contested statewide candidate race, for example, by placing a tick mark in the "Statewide Candidate" line.

   c. **Determine if there is a statewide ballot measure race.**

      • Indicate if there is no statewide ballot measure on the ballot, for example, by placing a zero in the "Statewide Ballot Measure" line of Section B of the Master Precinct and Race Selection Worksheet and placing a tick mark in the "Additional Races Needed" line.

      • Indicate if there is a statewide ballot measure race, for example, by placing a tick mark in the "Statewide Ballot Measure" line.

   d. **Determine if there is a contested federal candidate race on any of the ballots in the precincts/polling locations selected.**

- Indicate if there is no contested federal candidate race in any of the selected precincts/polling locations, for example, by placing a zero in the "Federal Candidate" line of Section B of the Master Precinct and Race Selection Worksheet and placing a tick mark in the "Additional Races Needed" line.

- Indicate if there is a contested federal candidate race, for example, by placing a tick mark in the "Federal Candidate" line.

e. **Determine if there is a contested state legislative race on any of the ballots in the precincts/polling locations selected.**

- Indicate if there is no contested state legislative race in any of the selected precincts/polling locations, for example, by placing a zero in the "State Legislative" line of Section B of the Master Precinct and Race Selection Worksheet and placing a tick mark in the "Additional Races Needed" line.

- Indicate if there is a contested state legislative race, for example, by placing a tick mark in the "State Legislative" line.

f. **If additional races are needed, determine if the number of races can be satisfied by an additional race(s) in another category.**

- The priority for selecting other categories, if needed, is as follows: statewide candidate, statewide ballot measure, federal candidate and then state legislative. All additional races shall be fulfilled with the highest priority race category possible. For example, if two additional races are needed and there are two additional contested statewide races, both additional races shall be statewide races. The categories of races to be hand counted and the number per category shall be recorded on the Master Precinct and Race Selection Worksheet.

4. **Separate out the contested races by category and create selection lots for each category from which a race or races will be selected.**

a. For the statewide candidate lot in a primary election, each contested party race shall be placed in the lot (*e.g.*, Governor/Republican, State Mine/Democrat).

b. For the federal candidate lot, the officer in charge of elections shall determine the possible federal candidate race types for the lot. If one or more precincts/polling locations have a contested federal candidate race, that race type shall be placed in the lot. In a primary election, each contested party race type shall be placed in the lot. The selections for U.S. House of Representative shall not contain the specific district since the names of the candidates may vary among the sampled precincts/polling places (*e.g.*, U.S. House/Republican and U.S. House/Democrat).

c. For the state legislative lot, the officer in charge of elections shall determine the possible contested state legislative race types for the lot. If one or more precincts/polling locations have a contested state legislative race, that race type shall be placed in the lot. In a primary election, each contested party race type shall be placed in the lot. The selections for state legislative race shall not contain the

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

specific district since the names of the candidates may vary among the sampled precincts/polling locations (*e.g.*, State House/Democrat, State House/Republican, State House/Libertarian).

- If any candidate race is for a vacancy, the vacancy race shall be treated as a separate race for creating lots. For example, if an AZ Corporation Commission seat is vacant and the term ends in 2010 and there is also a race for the seat with a term that ends in 2012, the Corporation Commission Term Ending 2010 and Corporation Commission Term Ending 2012 will be two separate races when creating the Statewide Candidate lot.

5. **Select the contested races to be hand counted.** The county political party chairpersons (or designees) shall alternate selecting races continuing with the order defined when selecting precincts/polling locations. The races will be selected by lot until the required number of races is selected. Categories of contested races shall be drawn in the following order until the required number of contested races is reached: presidential elector, statewide candidate, statewide ballot measure, federal candidate, and state legislative candidate.

6. **Document any selected race(s) in Section C of the Master Precinct and Race Selection Worksheet.**

- If a selected candidate race does not have a contested race in each of the selected precincts/polling locations, only the precincts/polling locations where there is a contested candidate race shall be hand counted for that race. The machine counts of the races in this category shall be added together and measured against the hand counts of the races in this category to determine if the total difference falls within the designated margin.

7. **The races selected for the precinct hand count shall be the same used for the early ballot hand count.** Because the batches used for the early ballot hand count do not correspond to the precincts/polling locations selected for the precinct hand count, the names of candidates for the selected races may differ among the various early ballot batches selected for the audit. The machine counts of the races in such categories shall be added together and measured against the hand counts of the races in those categories to determine if the total difference falls within the designated margin.

8. **Create Hand Count Board Worksheets.** The officer in charge of elections shall create a Hand Count Board Worksheet for each Hand Count Board. The worksheet documents the members of the Hand Count Board and what races they will be hand counting.

## B. Selecting Races for a PPE

The following process shall be used to select the races to be hand counted for a PPE:

1. **Determine Selection Order.** Select by lot the order in which the county political party chairpersons (or designees) shall choose from the pool of available precincts.

2.  **Create Lot of Polling Locations.** Create a lot of available polling locations. A county may consolidate precincts in a PPE. Only actual polling locations will be placed in the lot of available polling locations.

3.  **Select Precincts.** Draw the required 2% or two polling locations to be counted among a lot containing every actual polling location for the PPE.

4.  **Record Precincts.** The officer in charge of elections shall record the polling locations to be hand counted in Section A of the Master Precinct and Race Selection Worksheet.

5.  **Create Lot of Contested Races.** Create a lot of the contested races available for the PPE. Each political party that is participating in the PPE will count as a contested race.

6.  **Select Race(s).** If there are four contested races or less, all possible races will be hand counted. If there are more than four contested races, the county political party chairperson (or designee) who is next (from Step 1), shall choose a contested PPE race to be hand counted. The political party chairpersons (or designees) will alternate until four contested races are selected.

7.  **Record Race.** The officer in charge of elections shall record the PPE race(s) to be hand counted in Section B of the Master Precinct and Race Selection Worksheet.

A.R.S. § 16-602(B)(3).

| VII. | HAND COUNT TABULATING METHODS |
| --- | --- |

There are two approved methods of hand counting votes:

-   Stacking method: used for hand counting optical/digital scan ballots; and

-   Three-person call-out method: used for hand counting votes from the VVPAT of an accessible voting machine.[87]

For either method, each judge shall be given a tally sheet that shall be marked with the precinct/polling location, the race, and the names of the candidates for that particular race.

| A. Stacking Method for Optical/Digital Scan Ballots |
| --- |

The stacking method is used for hand counting optical/digital scan ballots and may also be used to hand count paper ballots printed by accessible ballot marking devices. For the stacking method,

---

[87] Because no Arizona counties currently use accessible voting machines that independently tabulate votes or produce a VVPAT rather than a paper ballot for tabulation, the three-person call-out method used in that circumstance is not addressed in detail in this version of the Elections Procedures Manual. Interested persons may consult Chapter 11, Section VII of the 2019 Elections Procedures Manual for a description of the three-person call-out method previously used in Arizona by applicable counties. Should any county revert to using accessible voting machines that independently tabulate votes or produce a VVPAT, the county must follow the three-person call-out method described in the 2019 Elections Procedures Manual when conducting the post-election hand count audit.

ballots are sorted into piles by the three board members (the inspector and two judges) and the number of votes for each candidate in the particular race being hand counted are tallied using the process below.

### 1. Processing Ballots with Write-In Votes

1. If write-in votes have not been tabulated yet, it is very important to keep ballots with write-in votes segregated from ballots without write-in votes. To do so, the first judge counts the total number of ballots with write-in votes. The second judge shall recount the total number of ballots with write-in votes. If the totals from both judges match, the result shall be documented in the Hand Count Tally Sheet.

2. The inspector shall announce the specific race to be counted, identify that race on the ballot, and separate out ballots with over-votes or no selection for that race. The two judges shall confirm that the inspector performs this step correctly.

3. The inspector shall announce the first candidate/selection listed in the race and begin the **stacking process** for that candidate/selection:

   - The Hand Count Board members shall hold up the ballots one at a time and declare the voter's choice for the specific candidate/selection in the race. All ballots with a vote for that candidate/selection shall be placed in one stack (the "yes" stack) and all ballots with a vote for any other candidate/selection in the race shall be placed in a separate stack (the "no" or "other" stack). The judges and inspector shall view each ballot and ensure that the ballot was placed in the right stack.

   - After the sorting process is complete, one judge shall count each pile in stacks of 10 or 25 (or another agreed-upon, pre-determined number) and then the other judge shall recount each stack. The inspector shall enter the number of ballots in each stack onto the Hand Count Tally Sheet.

   - The inspector shall move the "yes" stack aside, perform the stacking process for the next candidate/selection in the race using the ballots in the "no" or "other" stack, and repeat until done recording totals for all candidates/selections on the Hand Count Tally Sheet.

     • If the race being counted is for multiple seats (*e.g.*, vote for two), it will be necessary to go through entire set of ballots for each candidate, without the option of setting aside the "yes" stack as described in the prior step.

   - If there is any question about the intent of the voter, the determination of voter intent must be made by unanimous consent of all three Hand Count Board members using the standards established in <u>Chapter 11, Section VII</u>. If a unanimous decision cannot be reached by the Hand Count Board, the officer in charge of elections shall make the final decision regarding the voter's intent. A notation of the final decision shall be logged on the tally sheet and the inspector shall place the ballot into the proper stack for counting.

4. After completing the stacking process, the inspector shall place the ballots with write-in votes back in the write-in envelope and keep those ballots separated from the regular ballots if write-in votes were not already tabulated and ballots with write-in votes were segregated from ballots without write-in votes.

### 2.  Processing Regular Ballots

1. The first judge shall count the total number of regular ballots. The second judge shall recount the total number of regular ballots. If the totals from both judges match, the result shall be documented in the Hand Count Tally Sheet.

2. The inspector announces the specific race to be counted, identifies that race on the ballot, and separates out ballots with over-votes or no selection for that race. The two judges shall confirm that the inspector performs this step correctly.

3. The inspector announces the first candidate/selection listed in the race and begins the **stacking process** for that candidate/selection, using the same procedure described above for ballots with write-in votes. The stacking process is repeated for each race to be hand counted.

4. After completing the stacking process, the inspector shall place the regular ballots back in the regular ballot envelope and keep those ballots separated from the ballots with write-in votes.

### B. Procedures for Conducting the Hand Count

The officer in charge of elections must commence the hand count with a public announcement and explanation of the procedure. The hand count must begin within 24 hours after the polls close on Election Day and must be completed before the county canvass. A.R.S. § 16-602(I). The start of the hand count can be defined as the official training of the Hand Count Board members, selection of the precincts and races, coordinating the hand count with the party leaders, or any other activity that furthers the progress of the hand count for that election.

Hand count board members shall not bring cellular phones, other electronic devices, or pens/writing instruments into the official hand counting area.

Throughout the hand count, the officer in charge of elections must retain custody and control of all hand counted ballots. A.R.S. § 16-602(H).

### 1.  Early Ballot Hand Count

The early ballot hand count is a hand count of a percentage of early ballots actually voted. The number of early ballots to be counted is 1% of the total number of early ballots cast or 5,000 early ballots, whichever is less. Each machine used for early ballot tabulation shall have at least one

batch included in the early ballot hand count, and batch sizes may not exceed 400 ballots. A.R.S. § 16-602(F).

### a. Early Ballot Hand Count Process

The selected early ballots shall be hand counted according to the following procedure for each race selected for the early ballot hand count.

1. Prior to beginning the tabulation of early ballots, the officer in charge of elections shall determine the total number of early ballots <u>sent</u> for the election. From this number the officer in charge of elections shall calculate a number that equals 1% of the number or 5,000, whichever is less. Because the number of early ballots <u>voted</u> (including in-person early voting) will generally be lower than the number of early ballots sent, this calculation should yield a number of ballots that meets or exceeds the number of early ballots required to be hand counted.

2. The officer in charge of elections shall then determine the number and size of the batches. The number of batches must be enough to include at least one batch per machine used for early ballot tabulation. That number must then be doubled to account for the possibility of an expansion from 1% to 2% of early ballots required to be hand counted. The batch size can be any amount up to 400 ballots. The size of the batch should start with the 1% number divided by the number of machines used for early ballot tabulation. The table below provides some examples.

| | County A | County B | County C |
|---|---|---|---|
| Number of early ballots sent to voters | 4,000 | 60,000 | 800,000 |
| Number of machines used for early ballot tabulation | 2 | 4 | 3 |
| 1% of early ballots sent to voters, or 5,000, whichever is less | 40 | 600 | 5,000 |
| 2% of early ballots sent to voters, or 10,000, whichever is less (in case expansion is needed) | 80 | 1,200 | 10,000 |
| Size of Batches | 20 | 150 | 400 (max) |
| Number of Batches Required to Meet 1% | (40/20) = 2 | (600/150) = 4 | (5,000/400) = 13 |
| Number of Batches Required to Meet 2% | (80/20) = 4 | (1,200/150) = 8 | (10,000/400) = 25 |

3. The county political party chairpersons (or designees) will work with the officer in charge of elections to randomly select one or more batches of early ballots included in the initial tabulation, including at least one batch from each machine used to tabulate early ballots.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The officer in charge of elections shall securely sequester those ballots, along with their unofficial tally reports, for use in the early ballot hand count.

    a.    Every precaution should be taken to ensure that no partial or complete tallies of the early election board be released or divulged before all precincts have reported or one hour after the closing of the polls on Election Day, whichever occurs first.

    b.    The officer in charge of elections shall ensure that enough ballots are sequestered in the event an expanded hand count is required.

4.   From the sequestered early ballots, the officer in charge of elections will randomly select the required number of early ballots with which to conduct a hand count of the same races that are being hand counted in the precinct hand count and create batches consisting of up to 400 ballots per batch. The total number of ballots divided into batches shall satisfy the total number of early ballots required to be hand counted. At least one batch shall be created from early ballots tabulated on each machine used for tabulating early ballots. The batches may be selected from any presorted early ballot returns from Step 3 above. The batches used for the early ballot hand count need not correspond to the precincts/polling locations selected for the precinct hand count. The names of the candidates may vary among the batches if necessary. The machine counts of the races in this category shall be added together and measured against the hand counts of the races in this category to determine if the total margin of difference falls within the designated margin.

5.   If a county has an EMS that can produce sub-reports of results, then the officer in charge of elections will complete the steps necessary to create a batch report for each batch and print out the sub-report.

6.   The ballots included in a batch, as well as the baseline and batch tally reports, will be clearly labeled and sequestered separate from any other ballots or batches. The machine that the batches of early ballots were counted on shall be identified and listed with the batch. Each batch may include a stack of regular ballots and a stack of ballots with write-in votes.

7.   This process shall continue until a sufficient number of batches have been created.

8.   On Election Day, the officer in charge of elections shall calculate the exact number of early ballots tallied up to that point in time plus the estimated number of additional early ballots expected to be received by 7:00 p.m. on Election Day. From this number, the officer in charge of elections shall calculate a number equaling 1% of the estimated total early ballots. This number (or 5,000, whichever is less) shall serve as the minimum number of ballots to audit.

9.   The political party chairpersons shall randomly select one or more batches until enough ballots have been selected to equal the number of ballots to audit.

10. If needed, for each race selected for audit, the officer in charge of elections shall calculate the electronic total for the race by subtracting the batch tally total for that race from the baseline tally total for that race. This shall be done for all selected batches. All races selected for the precinct hand count shall also be hand counted in the early ballot hand

count. For the early ballot hand count, the races shall be listed in Section C of the Master Precinct and Race Selection Worksheet.

11. A Hand Count Tally Sheet shall be created for each selected contested race listed on the Master Precinct and Race Selection Worksheet.

12. The Hand Count Board members shall then perform a hand count of the optical/digital scan ballots using the stacking method.

13. The officer in charge of elections shall add all hand count results together for each race, including any accessible voting device results, add all electronic results together for each race, including any accessible voting device, and calculate the margin of difference using the Early Ballot Hand Count Margin Worksheet as follows:

   a. **Fill out Top of Form.** Fill out the date of the election. Indicate the proper election (general, special, primary, or PPE) and the race category that the worksheet is for (presidential elector, statewide candidate, statewide ballot, federal candidate, or state legislative candidate). List the specific race (*e.g.*, State Senator, Corporation Commission/Democrat). List the hand count round (1st hand count, 2nd hand count, expanded hand count or full hand count).

   b. **Enter Hand Count Totals.** Enter separately the hand count totals for the optical/digital scan ballots and the hand count totals for the accessible voting devices. These totals will come directly from the Hand Count Tally Sheets. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of hand-counted votes shall be calculated and noted in the worksheet.

   c. **Enter Machine Count Totals.** Enter separately the machine totals for the optical/digital scan ballots and the machine totals for the accessible voting devices. These totals will come directly from Election Management Systems. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of machine-counted votes shall be calculated and noted in the worksheet.

   d. **Calculate Absolute Difference.** For each candidate's total or ballot measure yes/no total, calculate the absolute difference between the hand count and the machine count. The absolute difference is the difference between the two numbers listed as a positive value (*e.g.*, [100 – 99] or [99 – 100] will both have an absolute value of one).

   e. **Calculate Grand Totals.** Add up all the machine count totals for a particular race category to calculate the "Grand Total Machine Count." Add up all the absolute differences for a particular race category to calculate the "Grand Total Absolute Difference."

   f. **Calculate Hand Count Margin.** Divide the "Grand Total Absolute Difference" by the "Grand Total Machine Count" and multiply the result by 100 to calculate the margin in a percentage form.

If the margin of difference between the manual count of early ballots compared to the electronic tabulation of those ballots is less than the designated early ballot hand count margin, the electronic tabulation shall be the official count of the race and included in the canvass. No further hand count of the early ballots shall be conducted. A.R.S. § 16-602(F). The officer in charge of elections shall indicate on the Early Ballot Hand Count Margin Worksheet that the count is complete, and the officer in charge of elections and the chairperson (or designee) from each political party present shall sign the sheet.

### b. Second Early Ballot Hand Count

If the margin of difference is equal to or greater than the designated early ballot hand count margin for any race, the Hand Count Board shall repeat the hand count of the same early ballots for that race.

If the second early ballot hand count results in a margin that is less than the designated margin, the early ballot hand count will be concluded, and the results of the electronic tabulation will constitute the official count for that race. No further hand count of the early ballots shall be conducted. A.R.S. § 16-602(F). The officer in charge of elections shall indicate on the Hand Count Cumulative Sheet that the count is complete, and the officer in charge of elections and the chairperson (or designee) from each political party present shall sign the sheet.

### 2. Expanded Early Ballot Hand Count

If the margin is equal to or greater than the designated early ballot hand count margin for any race, the Hand Count Board shall conduct an expanded early ballot hand count for that race, to include a number of additional early ballots equal to 1% of the total early ballots cast or an additional 5,000 ballots, whichever is less, to be randomly selected from the batch or batches of sequestered early ballots. The Hand Count Board shall hand count the additional early ballots using the steps spelled out in Chapter 11, Section VIII(B)(1) above. A.R.S. § 16-602(F).

To calculate the hand count margin for the expanded early ballot hand count, add the first and expanded electronic count and add the first and expanded hand count together and then calculate the margin using the equation in Step 13 in Chapter 11, Section VIII(B)(1) above. Only the ballots that have been sequestered and have a batch report are included in this process.

If the expanded early ballot audit results in a difference for that race that is equal to or greater than the designated early ballot hand count margin, the manual counts shall be expanded for that race until a manual count results in a margin that is less than the designated margin, or until all early ballots for that race have been hand counted, whichever occurs first.

All results shall be documented in writing and signed by the officer in charge of elections and the chairperson (or designee) from each political party present. The officer in charge of elections shall label the ballots used for the early ballot hand count and preserve them separately. A.R.S. § 16-602(F).

### 3. Precinct Hand Count Process

The initial precinct hand count must be conducted according to the following procedure for each race selected for the hand count.

1. The officer in charge of elections: (i) ensures each board is properly assembled and has been provided all necessary forms and supplies; (ii) apportions ballots to the Hand Count Boards; and (iii) announces which specific race will be hand counted. The boards are not provided with the electronically tabulated results for any race at this time.

2. The inspector or one of the judges fills out a **Hand Audit Tally Sheet** for each race to be hand counted. The inspector signs each Hand Audit Tally Sheet. All Hand Audit Tally Sheets from the precinct hand count shall be provided to the officer in charge of elections after completion.

   a. Each judge shall fill out the top of the Hand Audit Tally Sheet, listing the precinct/polling location name, precinct/polling location number, inspector name and their name as the judge. Each judge shall also check the box for the proper election type.

   b. For a candidate race, list each candidate's name on a separate counting line of the Hand Audit Tally Sheet. For ballot measures, list "Yes" on the first counting line and "No" on the second counting line.

3. The Hand Count Board shall hand count each group of ballots using the stacking method described in Section VII(A) above.

4. The Hand Count Board shall list the totals for each candidate on the appropriate Hand Audit Tally Sheet. Each precinct/polling location shall have one Hand Audit Tally Sheet for the optical/digital scan ballots and one for the accessible voting devices, unless the accessible voting device produces a paper ballot read by a tabulation unit and those paper ballots were hand counted using the stacking method. At this point, the hand count results for the batch is compared to the machine count results and the inspector initials the Hand Count Tally Sheet to indicate that there are no discrepancies in the batch totals.

5. The officer in charge of elections shall create a Precinct Hand Count Margin Worksheet for each race that was hand counted and calculate the hand count margin using the Precinct Hand Count Margin Worksheet and following the steps below in the presence of the county political party chairpersons (or designees):

   a. **Fill out Top of Form.** Fill out the date of the election. Indicate the proper election (general, special, primary, or PPE). State the race category that the worksheet is for (presidential elector, statewide candidate, statewide ballot, federal candidate, or state legislative candidate). List the specific race (*e.g.*, State Senator, Corporation Commission/Democrat). List the hand count round (1st hand count, 2nd hand count, expanded hand count, or full hand count).

   b. **Enter Hand Count Totals.** For each precinct/polling location that was hand counted, enter separately the hand count totals for the optical/digital scan ballots and the hand count totals for the accessible voting devices. These totals will come

directly from the Hand Count Tally Sheets. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of hand-counted votes shall be calculated and noted in the worksheet.

c. **Enter Machine Count Totals.** For each precinct/polling location that was hand counted, enter separately the machine totals for the optical/digital scan ballots and the machine totals for the accessible voting devices. These totals will come directly from Election Management Systems. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of machine-counted votes shall be calculated and noted in the worksheet.

d. **Calculate Absolute Difference.** For each candidate's total or ballot measure's yes/no total, calculate the absolute difference between the hand count and the machine count. The absolute difference is the difference between the two numbers listed as a positive value (*e.g.*, [100 − 99] or [99 − 100] will both have an absolute value of one). The total absolute value for each precinct/machine type shall be calculated and noted in the worksheet.

e. **Calculate Grand Totals.** Add up all the machine count totals for a particular race category to calculate the "Grand Total Machine Count." Add up all the absolute differences for a particular race category to calculate the "Grand Total Absolute Difference."

f. **Calculate Hand Count Margin.** Divide the "Grand Total Absolute Difference" by the "Grand Total Machine Count" and multiply the result by 100 to calculate the margin in a percentage form.

6. Compare the hand count margin for each race to the designated margin established by the Vote Count Verification Committee (established by the Secretary of State pursuant to A.R.S. § 16-602(K)) to determine if it is in the acceptable range or if a second or expanded precinct hand count is required. The applicable designated margin is available on the Secretary of State's website at https://www.azsos.gov/elections/voting-election/voting-equipment.

7. If the calculated margin for the specific race from the Precinct Hand Count Margin Worksheet is less than the designated margin for the precinct hand count established by the Vote Count Verification Committee, the precinct hand count will be deemed concluded and the results of the electronic tabulation will constitute the official count for that race. The officer in charge of elections shall indicate on the Hand Count Cumulative Sheet that the count is complete, and the officer in charge of elections and the chairperson (or designee) from each political party present shall sign the sheet.

### *a. Second Precinct Hand Count*

If any hand-counted race results in a calculated margin that is equal to or greater than the designated margin for the precinct hand count, a second precinct hand count of that race and of

those same ballots shall be performed. A new Precinct Hand Count Margin Worksheet shall be created for the second precinct hand count for the race in question.

If the second precinct hand count results in a calculated margin that is less than the designated margin, the precinct hand count will be concluded and the results of the electronic tabulation will constitute the official count for that race. A.R.S. § 16-602(C). The officer in charge of elections shall indicate on the Hand Count Cumulative Sheet that the count is complete, and the officer in charge of elections and the chairperson (or designee) from each political party present shall sign the sheet.

### b.  Expanded Precinct Hand Count

If the second precinct hand count results in a margin that is equal to or greater than the designated margin, the precinct hand count shall be expanded to include a total of twice the original number of randomly selected precincts/polling locations. Those additional precincts/polling locations (equal to the original number of randomly selected precincts/polling locations, so that the total number of ballots hand counted is twice the original number) shall be selected in accordance with the process set forth in Section IV. If the remaining number of precincts/polling locations for a race is less than the original number of precincts/polling locations selected for the first hand count, then the total remaining precincts/polling locations shall be included in the expanded hand count. A.R.S. § 16-602(C). A new Precinct Hand Count Margin Worksheet shall be created for the expanded Precinct Hand Count race in question.

If the calculated margin for the expanded precinct hand count (as calculated based on the results of the original hand count plus the expanded hand count) is less than the designated precinct hand count margin, the precinct hand count will be concluded and the results of the electronic tabulation will constitute the official count for that race. A.R.S. § 16-602(D). The officer in charge of elections shall indicate on the Hand Count Cumulative Sheet that the count is complete, and the officer in charge of elections and the chairperson (or designee) from each political party present shall sign the sheet.

### c.  Full Precinct Hand Count

If the expanded precinct hand count results in a calculated margin that is equal to or greater than the designated precinct hand count margin, the precinct hand count shall be extended to include the entire jurisdiction for that race. If the jurisdictional boundary for that race includes any portion of more than one county, the full precinct hand count shall not be extended into the precincts/polling locations that are outside of the county that is conducting the full precinct hand count. A new Precinct Hand Count Margin Worksheet shall be created for the full precinct hand count race.

If necessary, the officer in charge of elections may work with the county political party chairpersons (or designees) to select additional Hand Count Board members using the same selection procedure for the initial Hand Count Board members.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The full hand count must be repeated for a particular race until the results of a full hand count are identical to the results of another full hand count for that race. When an identical hand count result is achieved, the hand count (not the electronic tabulation) constitutes the official result for the race in that county. The precinct hand count totals shall be added to the total count of early ballots, provisional ballots, conditional provisional ballots, and write-in votes to determine the final count and the officer in charge of elections shall report that final count to the Secretary of State. A.R.S. § 16-602(D)-(E).

### C. Review of Election Program by a Special Master

If a full jurisdiction-wide hand count is necessary, the Secretary of State must make available the escrowed election program source code for that county's election equipment to the superior court for that county. The superior court for that county must then appoint a special master to review the election program.

The special master must:

1. Have expertise in software engineering;

2. Not be affiliated with an election equipment or software vendor;

3. Not be affiliated with a candidate who appeared on the ballot in that county;

4. Be bound by a signed nondisclosure agreement with respect to the contents of the election program.

The special master must prepare a public report to the superior court and to the Secretary of State with their findings on any discrepancies found in the election program.

The Secretary of State's Election Equipment Certification Committee must review this report when considering the continued certification of that election equipment and software. A.R.S. § 16-602(J).

### D. Standard for Determining Voter Intent in Hand Count

Ballots with vote choices that were marked improperly, corrected or erased, or otherwise read as blank or unclear by the electronic tabulation machine have likely been duplicated using the procedures in Chapter 10, Section II(D) prior to being tabulated and/or committed to the EMS. Where necessary, the Hand Count Board members must also determine the voter's intent on such ballots, using the following standards:

1. If the voter did not select any choice for a particular race or ballot question, then no vote is counted for any candidate for that race or for or against that ballot measure.

2. If the voter attempted to erase or undo their original vote choice, the Hand Count Board must determine which mark is clearest and count it as the proper vote choice.

3. If the voter selected more than the allowed number of selections for a particular race and the voter's intended choice(s) cannot be positively determined, then no vote is counted for any candidate for that race or for or against that ballot measure.

4. If the voter clearly and unambiguously indicated their intended vote choice on the face of the ballot in a manner consistently used throughout the rest of the ballot but the vote choice was nonetheless unreadable by the electronic tabulation equipment, either due to the voter marking the ballot using an improper method or for other reasons, the Hand Count Board must count the voter's intended choice in the hand count.

   • If the voter properly marked the ballot (for example, filled in the oval or connected the arrow) but the ballot face includes other extraneous marks, the extraneous marks should be disregarded and the Hand Count Board must consider the properly marked vote choice as the voter's intended selection.

5. If the voter marked the ballot using an improper method (for example, circling a vote choice rather than filling an oval) such that the selections were unreadable by the electronic tabulation equipment, but the markings indicate the clear and unambiguous intent of the voter and the improper method is used throughout the rest of the ballot, the Hand Count Board must count the voter's selections in the hand count, even if a ballot is slightly defaced or soiled.

The Hand Count Board members must reach a unanimous decision as to voter intent. If the Hand Count Board members are unable to reach a unanimous decision in a particular race, the officer in charge of elections shall make the final determination of voter intent. A.R.S. § 16-602(G).

## E. Reporting Results of the Hand Count

Within two business days of the completion of the precinct hand count and early voting hand count, and prior to the county canvass, the officer in charge of elections must electronically submit a report to the Secretary of State that includes the following information:

• Dates of the precinct and early ballot hand counts;

• Precincts or vote centers selected for the precinct hand count;

• Races selected, as well as a Master List of All Contested Races;

• Summary of the results by precinct/voting location and race for both the electronically tabulated vote totals and the hand counted totals; and

• The margins from the hand count when compared to the electronically tabulated results.

County-appropriate versions of the following sample forms may be submitted to the Secretary of State's Office for reporting purposes:

• Master Precinct and Race Selection Worksheet

• Master List of All Contested Races

- Precinct Hand Count Report
- Early Ballot Audit Hand Count Report
- Aggregate Precinct Hand Count Report
- Aggregate Early Ballot Audit Hand Count Report
- Hand Count/Early Ballot Audit Report

The Secretary of State must post the results submitted by the counties on the Secretary of State's website. A.R.S. § 16-602(I).

# CHAPTER 12:
## POST-ELECTION DAY PROCEDURES

### I.    REPORTING ELECTION RESULTS

1. The officer in charge of elections may publicly release partial or complete results of the early ballot tabulation at the earlier of:

2. The time when all ballots cast on Election Day at voting locations have been tabulated and publicly reported; or

- One hour after all polls under the jurisdiction of the officer in charge of elections have closed on Election Day.

Polls close at 7:00 p.m. on Election Day, except in the rare instances when polling hours are extended by court order. A.R.S. § 16-551(C); A.R.S. § 16-565(A); *see e.g.*, Minute Entry, *Navajo Nation v. Noble*, S0100CV202200246 (Ariz. Super. Ct. Nov. 8, 2022).[88]

For elections involving a federal, statewide, or legislative candidate race or a statewide ballot measure, the officer in charge of elections must promptly transmit those election results to the Secretary of State prior to or immediately after making those results public. For the initial transmission of election results on Election Day, and as additional results are tabulated prior to the county canvass, the officer in charge of elections must transmit election results to the Secretary of State in the required electronic format using an application specified by the Secretary of State. A.R.S. § 16-622(B).

### II.    CONDUCTING POST-ELECTION LOGIC & ACCURACY TEST

A post-election logic and accuracy (L&A) test of tabulation equipment shall be performed by the officer in charge of elections after the official count has been completed but before the county canvass. A post-election L&A test must be performed using the same election program and tabulation equipment used for the pre-election L&A test and the election. The same test ballots and test script from the pre-election L&A test must be utilized.

The post-election L&A test should generate the same results as the pre-election L&A test, after which the officer in charge of elections shall execute a certification of accuracy or otherwise document the results. If the post-election L&A test does not yield the same results, the officer in charge of elections should visually assess the test ballots and/or voting equipment for errors or

---

[88] Although Arizona does not observe Daylight Savings Time (DST), the Navajo Nation, including those portions in Arizona, does. Therefore, when DST is in effect in the Navajo Nation, voting locations in the Navajo Nation presumptively close at 7:00 p.m. DST unless extended by court order.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

malfunctions and run the test again. If the problem still cannot be resolved, the officer in charge of elections should contact the Secretary of State and/or the County Attorney for further assistance.

### III.   FILING FEDERAL POST-ELECTION REPORTS

#### A.   Election Assistance Commission Reporting

Within 90 days after a federal general election [or any later date established by the federal Election Assistance Commission (EAC)], the Secretary of State must submit a comprehensive post-election report to the EAC in accordance with the format prescribed by the EAC. The report must be prepared in conjunction with, and based on data from, County Recorders and/or the other officers in charge of elections. A.R.S. § 16-142(B).

#### B.   Department of Justice UOCAVA Reporting

At the request of the United States Department of Justice, the Secretary of State must report the following information following a federal election:

- The number of UOCAVA ballots requested for the election;
- The number of UOCAVA ballots timely transmitted; and
- The number of UOCAVA ballots that were not timely transmitted.

If the County Recorder believes that UOCAVA ballots will be transmitted late, the County Recorder should notify the Secretary of State as soon as practicable.

County Recorders must provide the required data to the Secretary of State in order to meet the federal reporting requirements. 52 U.S.C. § 20308.

### IV.   POST-ELECTION REIMBURSEMENT REQUESTS

#### A.   Post-Election Reimbursement Requests

Within 90 days after conducting an election on behalf of a local jurisdiction, the officer in charge of elections must prepare an accounting report which itemizes all expenditures incurred by the county in administering the election. The report must include the specific charges for each local jurisdiction which participated in the election. Local jurisdictions that participated in the election may request and receive a copy of the report. A.R.S. § 16-205(D).

#### B.   Reimbursement for PPE Expenses

Within 90 days after a PPE, the County Recorder or other officer in charge of elections should submit a proper claim to the Secretary of State for reimbursement of expenses incurred in

conducting the election. The claim must include the number of registered voters in the county as of January 2 of the PPE year.

The Secretary of State must reimburse each county that submitted a claim at the specified statutory rate per active registered voter in the county as of January 2. A.R.S. § 16-250(B).

The Secretary of State may reimburse a county at a rate greater than $1.25 per active registered voter, in the Secretary of State's discretion, if the County Recorder or other officer in charge of elections: (1) submitted a proper claim that outlined the county's actual expenses to conduct the PPE; and (2) demonstrates that reimbursement at the statutory rate would significantly jeopardize the county's ability to comply with federal and state law. A.R.S. § 16-250(B).

### C.   Reimbursement for Sample Ballots

The Board of Supervisors or officer in charge of elections shall seek reimbursement from the Secretary of State for each sample ballot mailed to a county household. The Board of Supervisors or officer must present a certified claim that specifies the actual cost for printing, labeling and postage, along with supporting documentation. Included in the eligible reimbursement costs for sample ballots are the cost of sample ballots that shall be available at all polling locations. A.R.S. § 16-563. The Secretary of State shall direct payment of such authenticated claims from funds of the Secretary of State's Office. A.R.S. § 16-510(C).

# CHAPTER 13:
## CERTIFYING ELECTION RESULTS

### I.    DETERMINING ELECTION RESULTS

In a partisan primary election:

- The candidate who receives the largest number of votes must be declared the party nominee for that office and issued a certificate of nomination by the Board of Supervisors (or designee).

    - If more than one candidate may be nominated, the candidates who receive the largest number of votes will be declared nominees and issued certificates of nomination in accordance with the number to be nominated. Nomination entitles the candidate to be placed on the general election ballot.

    A.R.S. § 16-645.

- In order for a write-in candidate to become the nominee of a party with continued representation on the ballot, the candidate:

    - Must receive the largest number of votes; and

    - Must receive at least as many votes as the number of nomination petition signatures required to appear on the primary election ballot for that office.

At the general election:

- Unless otherwise specified in law, the candidate who receives the largest number of votes must be declared elected to that office and issued a certificate of election by the Board of Supervisors (or designee), A.R.S. § 16-647; A.R.S. § 16-650; and

- A ballot measure that is approved by a majority of votes cast for the measure will be declared to be law, Ariz. Const. Art. IV, Pt. 1, § 1(13).

    - If two or more conflicting measures (in whole or in part) are approved by voters at the same election, the measure with the most votes will prevail with respect to any provisions that are in conflict. Ariz. Const. Art. IV, Pt. 1, § 1(12).

    - Upon completion of the canvass by the Secretary of State, the Governor will issue a proclamation of the votes cast for and against any constitutional amendments, initiatives and referenda, and declare those approved by a majority to be law. A.R.S. § 16-651.

A.R.S. § 16-649 specifies the result of the election in the event of a tie.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## II.   CANVASSING THE ELECTION

The governing body conducting an election must meet in public and canvass the election results of each precinct or election district. The purpose of the canvass is to officially certify the election. The canvass includes vote totals for all races tabulated by voting equipment (including early ballots, regular ballots, and provisional ballots) and write-in votes.

A canvass must be conducted by the statutory deadline but should not be conducted until all necessary audits by the Audit Board have been completed to verify the accuracy and integrity of the election results. *See* Chapter 10, Section II(I).

### A.  County Board of Supervisors Canvassing Duties

A Board of Supervisors must canvass the official election results in a public meeting. The official election results must include the following information:

1. A Statement of Votes Cast, which includes:

    a. The number of ballots cast in each precinct and in the county;

    b. The number of ballots rejected in each precinct and in the county;

    c. The titles of the offices up for election and the names of the persons (along with the party designation, if any, of each person) running to fill those offices;

    d. The number of votes for each candidate by precinct and in the county;

    e. The number and a brief title of each ballot measure; and

    f. The number of votes for and against each ballot measure by precinct and in the county.

    A.R.S. § 16-646.

2. A cumulative Official Final Report, which includes:

    a. The total number of precincts;

    b. The total number of ballots cast;

    c. The total number of registered voters eligible for the election;

    d. The number of votes for each candidate by district or division, including a designation showing which candidate received the highest number of votes;

        i. In a PPE, the number of votes for each candidate by congressional district;

        ii. In a primary election, the report must contain the party designation for each office; whereas in a general election, the report must contain the party designation for each candidate;

    e. The number of votes for and against each ballot measure by district, including a designation of which choice received the highest number of votes; and

    f.   The total number of votes in each district or division.

  3.  A Write-In Votes Report, which includes the name and number of votes for each authorized write-in candidate by precinct (if not already included in the reports above).

### 1.   Deadline to Canvass Results

The Board of Supervisors should canvass the election results only after all necessary audits have been performed and any discrepancies have been addressed by the County Recorder or other officer in charge of elections.

Assuming all prerequisites have been met, the Board of Supervisors must canvass the election by the required deadline, which varies by type of election.

- For primary elections and PPEs, the Board of Supervisors must canvass the results within 14 days after the election. A.R.S. § 16-241(C); A.R.S. § 16-645(B).

- For all other elections held on a consolidated election date (including general elections), the Board of Supervisors must canvass between six and 20 days after the election. A.R.S. § 16-642(A).

- For special elections, the Board of Supervisors must canvass the election according to the deadline established in the order calling the election.

### 2.   Scope of Duty to Canvass

The Board of Supervisors may postpone the canvass on a day-to-day basis if the results from any precinct are missing. If precinct results are still missing after six postponements, the Board of Supervisors must canvass the remaining election results. A.R.S. § 16-642(C).

The Board of Supervisors has a non-discretionary duty to canvass the returns as provided by the County Recorder or other officer in charge of elections and has no authority to change vote totals, reject the election results, or delay certifying the results without express statutory authority or a court order.

### 3.   Preserving and Transmitting Canvass Results

Once the Board of Supervisors has certified the election results, the Official Final Report and Statement of Votes Cast from the canvass must be published on the website of the officer in charge of elections. An original signed canvass should be preserved as a permanent record by the Board of Supervisors.

For any elections that include a federal, statewide, or legislative office, or a statewide ballot measure, the Board of Supervisors or officer in charge of elections must transmit the official canvass to the Secretary of State (in an electronic format determined by the Secretary of State) within the applicable statutory deadline. A.R.S. § 16-645(B). In addition, a certified copy must be promptly mailed to the Secretary of State to be preserved as a permanent record.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If the county conducted an election on behalf of a local jurisdiction, the Board of Supervisors or officer in charge of elections should promptly transmit a copy of the official canvass to those jurisdictions as well.

### 4. Post-Canvass Reports

#### a. *Provisional Ballot Report*

The County Recorder or other officer in charge of elections must submit a provisional ballot report to the Secretary of State with the primary and general election canvasses. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State for the report. The report must contain the following information about provisional ballots cast at that election:

1. The number of voters in each precinct;

2. The number of provisional ballots cast in each precinct;

3. The number of provisional ballots verified/counted in each precinct;

4. The number of provisional ballots not verified/counted in each precinct, along with the reason for not doing so;

5. The number of conditional provisional ballots cast in each precinct;

6. The number of conditional provisional ballots verified/counted in each precinct; and

7. Whether the uniform procedures were followed for determining whether a provisional ballot is counted or not counted.

#### b. *Accessibility Report*

The County Recorder or other officer in charge of elections must submit an accessibility report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State for the report. The report must contain the following information about the recently conducted elections:

1. The number of early voting and Election Day voting locations in the county;

2. The number of early voting and Election Day voting locations that were fully handicap-accessible under the Americans with Disabilities Act (ADA);

3. The number of early voting and Election Day voting locations that were not fully handicap-accessible under the ADA. If some locations were not fully handicap-accessible, the report must identify:

   • The address or description of the voting location;

   • The number of voters registered in the precinct(s) in question (if the county conducts polling place-assigned elections); and

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- The number of ballots cast at the voting location;

4. If some locations were not fully handicap-accessible prior to use during the early voting period or on Election Day, the efforts undertaken prior to the election to either make the voting location fully accessible or identify an alternative location that was fully accessible;

5. The measures being undertaken to bring inaccessible voting locations into compliance or to replace inaccessible voting locations with accessible locations;

6. The alternative language accessibility provided for ballots, publicity pamphlets, voter registration forms and voter education materials, if applicable; and

7. If the jurisdiction is covered under Section 203 of the Voting Rights Act, a summary of the steps taken to provide language assistance to voters, including appointment of bilingual poll workers, access to on-site or remote interpretation services, and the availability of an Election Terminology Glossary in the covered language(s).

### c. *Voter Education Report*

The County Recorder, Board of Supervisors, or other officer in charge of elections must submit a voter education report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State. The report must contain the following information about the recently conducted elections:

1. The percentage of voter turnout;

2. The number of public service announcements about the election prior to the election, including during the 90-day period prior to Election Day, including a summary of media outreach (such as paid advertising, social media posts, public events, interviews, etc.);

3. The number of voter education and outreach events, including seminars or community meetings that provided voter education;

4. The number of locations where the County Recorder or officer in charge of elections provided voter information or equipment for public display and the length of time such information was on public display; and

5. A comparison of all of the statistics referenced above with the same statistics from the previous equivalent federal election.

### d. *Early Voting Report*

The County Recorder or other officer in charge of elections must submit an early voting report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic format provided by the Secretary of State. The report must contain the following information about the recently conducted elections:

1. The number of locations where the County Recorder established in-person early voting locations, including:

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- The physical address or location description of each early voting location;

- The number of early ballots cast at each early voting location; and

- The total number of early ballots cast in-person at all early voting locations;

2. The number of early ballots transmitted to voters by mail;

3. The number of replacement early ballots transmitted to voters by mail;

4. The number of mailed early ballots returned by voters;

5. The number of mailed and in-person early ballots that were verified and tabulated;

6. The number of early ballots returned by voters that were not verified and tabulated, with the corresponding reason, including:

   - Received after 7:00 p.m. on Election Day;

   - Missing signature;

   - Signature not verified;

   - Returned in an unofficial envelope with no early ballot affidavit; and

   - Returned by a voter that already voted in person.

### e. *Poll Worker Training Report*

The County Recorder or other officer in charge of elections must submit a poll worker report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State. The report must contain the following information about the recently conducted elections:

1. The number of poll workers trained;

2. A description of the types of election board workers assigned to each voting location, including:

   - The number of inspectors, marshals, judges, and clerks assigned to each voting location;

   - The number of "premium" poll workers (if any) assigned to each voting location or other area;

   - The number of "troubleshooters" (if any) assigned to each voting location or other area; and

   - The number of student poll workers (if any) assigned to each voting location or other area.

3. A summary of the mechanism used to assess individual poll workers' performance following the election;

4. The number of provisional ballots cast at each voting location; and

Page | 251

5.   The number of signature rosters or e-pollbooks used at each voting location.

### f.   *Political Party Ballot Report*

Concurrently with submitting its primary election canvass, the County Recorder or other officer in charge of elections must file a report with the Secretary of State that identifies the total number of partisan ballots, by party, selected by voters registered as no party preference, independent, or any political party not recognized for continued representation on the ballot. A.R.S. § 16-645(B).

## B.   Secretary of State's Canvassing Duties

The Secretary of State must canvass the results for any elections that include a federal, statewide, or legislative office, state appellate court judges, and statewide ballot measures.

### 1. Deadline to Canvass Results

For primary elections and PPEs, the Secretary of State must canvass the results on or before the third Monday after the election. A.R.S. § 16-241(C); A.R.S. § 16-645(B). In the case of a PPE, the Secretary of State must promptly transmit the results to the state chairpersons of any political party that had candidates on the ballot.

For a general election, the Secretary of State must canvass the results on the fourth Monday following the election. A.R.S. § 16-648(A). The Secretary of State must conduct the general election canvass at a public meeting and in the presence of the Governor and Attorney General. A.R.S. § 16-648(A). If any statewide ballot measures appeared on the ballot, the Secretary of State must canvass the results in the presence of the Governor and Chief Justice of the Arizona Supreme Court. A.R.S. § 16-648(B).

### 2. Scope of Duty to Canvass

The Secretary of State may postpone the canvass on a day-to-day basis for up to three days if the results from any county are missing. A.R.S. § 16-648(C). All counties must transmit their canvasses to the Secretary of State, and the Secretary of State must conduct the statewide canvass, no later than 30 days after the election. A.R.S. § 16-648(C). If the official canvass of any county has not been received by this deadline, the Secretary of State must proceed with the state canvass without including the votes of the missing county (i.e., the Secretary of State is not permitted to use an unofficial vote count in lieu of the county's official canvass).

The Secretary of State has a non-discretionary duty to canvass the returns as provided by the counties and has no authority to change vote totals, reject the election results, or delay certifying the results without express statutory authority or a court order.

### 2.   Preserving and Transmitting Canvass Results

Once the Secretary of State has certified the election results, the official canvass (along with the official final precinct level results files from each county) must be published on the Secretary of State's website. An original signed canvass must be preserved as a permanent record.

Following a general election with at least one statewide ballot measure, the Secretary of State must promptly transmit the results of each ballot measure to the Governor. A.R.S. § 16-648(B).

Following an electoral college vote to select the President of the United States, the Secretary of State must promptly transmit Certificates of Ascertainment and Certificates of Vote to the Archivist of the United States, President of the United States Senate, and the Chief Judge of the United States District Court for the District of Arizona by the deadline provided under federal law. *See* https://www.archives.gov/electoral-college/state-officials.html.

### C. City and Town Canvassing Duties

A city or town council must canvass the official election results of city or town elections in a public meeting. A.R.S. § 16-403.

A certified copy of the official canvass must be filed with the city or town clerk, which must be preserved as a permanent record. A.R.S. § 16-646(D).

### D. Special Taxing District Canvassing Duties

A special taxing district must canvass the official results for its elections in a public meeting and present the canvass results to the applicable Board of Supervisors at the Board's next regularly scheduled meeting. A.R.S. § 16-642(B).

For the purposes of an election contest pursuant to A.R.S. § 16-673, the canvass is not complete until the special taxing district results have been presented to the Board of Supervisors. A.R.S. § 16-642(B). The clerk of the Board of Supervisors is responsible for maintaining and preserving the certified permanent copy of the official canvass. A.R.S. § 16-646(D).

### E. County School Superintendent Canvassing Duties

Within 30 days following the date of any school election, the County School Superintendent must meet with the Chairperson of the Board of Supervisors or designee to canvass the returns in accordance with procedures for the canvass of returns in a general election. A.R.S 15-426(B); A.R.S. § 15-302(A)(8).

Within 14 days following the date of any community college district board election, the County School Superintendent must meet with the Chairperson of the Board of Supervisors or designee to canvass the returns in accordance with procedures for the canvass of returns in a general election.

Any canvass conducted by the County School Superintendent in November of an even-numbered year shall be conducted as part of the county's general election canvass.   A.R.S. § 15-1442(C).

### III.   CONDUCTING AN AUTOMATIC RECOUNT

#### A.  Vote Margin that Triggers an Automatic Recount

A recount must be performed following a general, primary, special, or recall election if the margin of votes, based on the official canvass, between the two candidates receiving the highest number of votes for a particular office, or the votes cast for and against a ballot measure, are equal to 1/2 of 1% or less of the total number of votes cast for the top two candidates or the ballot measure in question. A.R.S. § 16-661(A).[89]

The automatic recount requirements do not apply for the following offices:

- Precinct committeemen;

- School district or joint technical education district board member;

- Community college district board member;

- Special taxing district board member; or

- Presidential candidate in a PPE.

A.R.S. § 16-249(B); A.R.S. § 16-661(B).

#### B.  Method of Initiating a Recount

If the official canvass demonstrates that a recount is required, the recount is automatically triggered but must be initiated by immediately seeking a court order. A.R.S. § 16-662.

Promptly following the canvass, the applicable filing officer must:

- File a lawsuit in the appropriate superior court, citing to the applicable vote margin that triggered the automatic recount and including the canvass;

- Consult with the applicable officer(s) in charge of elections and estimate the time period it will take to recount the affected ballots; and

- Obtain a signed court order that initiates the recount and sets a court hearing to announce the results, and then distribute the order to the applicable officer(s) in charge of elections.

---

[89] *See also* A.R.S. § 16-537 ("The powers and duties conferred or imposed by law upon any public officer with respect to regular elections are conferred and imposed upon such officers with respect to special elections."); A.R.S. § 19-215 ("The powers and duties conferred or imposed by law upon boards of election, registration officers, canvassing boards and other public officials who conduct general elections, are conferred and imposed upon similar officers conducting recall elections under the provisions of this article together with the penalties prescribed for the breach thereof.")

A.R.S. § 16-662; A.R.S. § 16-663(A). A third party may not request a recount as a matter of right.

### C. Method of Conducting the Recount

For any race other than the Secretary of State's race, the Secretary of State is responsible for ensuring that the electronic voting equipment to be used for the recount is available and properly programmed. Unless the Board of Supervisors race is subject to an automatic recount, the Secretary of State may delegate this duty to the Board of Supervisors, who in turn may delegate this duty to the officer in charge of elections. If a Board of Supervisors race is subject to an automatic recount, the Secretary of State may directly delegate this responsibility to the officer(s) in charge of elections. A.R.S. § 16-664(A).

If the Secretary of State's race is the race to be recounted, the Governor is responsible for performing the oversight duties normally performed by the Secretary of State in a recount. A.R.S. § 16-664(B).

If the Secretary of State delegates oversight to the Board of Supervisors, ballots from the race to be recounted will be tabulated using the same electronic voting equipment that was used during the election, except the equipment must be reconfigured to only tabulate the race(s) to be recounted. This reconfiguration constitutes a different "program" from the program used to initially tabulate votes. A.R.S. § 16-664(C).

Regardless of which electronic voting equipment is used for the recount, the equipment must be L&A tested by the officer in charge of elections (and, in the case of a legislative, statewide, or federal office or statewide ballot measure, by the Secretary of State as well).

The recount must be conducted by running paper ballots from the applicable race through the designated electronic voting equipment.[90] While the recount is in progress, the officer(s) in charge of elections may not publicly release vote totals from the recount.

At the conclusion of the recount, the officer(s) in charge of elections must provide the official results to the filing officer who initiated the recount. Once the filing officer has collected all the recount results, the filing officer must appear at the scheduled court hearing and provide the sealed results to the court. The court must declare the winner in open court. The court announcement and/or order constitute the official result for the recounted race, making it unnecessary to re-canvass the race.

Where there are discrepancies between the initial result and the result from the automatic recount, the officer in charge of elections shall undertake reasonable efforts to reconcile the discrepancy and provide a report to the Secretary of State explaining the reasons for any discrepancy.

---

[90] A recount conducted in accordance with this section is deemed to be "conducted in the accordance with the laws pertaining to contests of elections." A.R.S. § 16-663(A).

In a candidate race, the prevailing candidate must be issued a Certificate of Nomination or Certificate of Election at the conclusion of the court proceedings by the Clerk of the Board of Supervisors. A.R.S. § 16-647.

### D. Hand Count Audit of Recounted Ballots

A precinct hand count audit must also be conducted following a court-ordered recount pursuant to A.R.S. § 16-661 through A.R.S. § 16-666 for legislative, statewide and federal candidate races only. This means any ballots that have been electronically re-tabulated for purposes of such a recount are treated as if a new election took place and therefore are again subject to hand count audit requirements.

The same procedures for a precinct hand count shall be followed except that the officer in charge of elections and the political parties must conduct a hand count of at least 5% of precincts for the recounted race. A.R.S. § 16-663(B). In counties that conduct vote center-based elections, the officer in charge of elections and the political parties must conduct a hand count of at least 5% of vote centers.

### IV.    ISSUING CERTIFICATES OF NOMINATION AND ELECTION

Upon completion of the applicable canvass or recount process, a city or town council (or designee) must promptly issue a Certificate of Nomination (following a primary or first election) or Certificate of Election (following a general or second election) to each candidate who received the highest number of votes for each office at the election.

Likewise, upon completion of the county's canvass or recount process, the Clerk of the Board of Supervisors must promptly issue a Certificate of Nomination (following a primary election) or Certificate of Election (following a general election) to each candidate who received the highest number of votes for the following offices:

- All county offices;
- Precinct committeemen;
- Community college district board member; and
- Special taxing district board member. A.R.S. § 16-645.

Certificates of election for school district board members must be issued by the county school superintendent following the applicable canvass. A.R.S. § 15-426.

However, a certificate may not be issued under the following conditions:

- A Certificate of Nomination may not be issued to a write-in candidate for a city or town office, and that candidate may not advance to the general or run-off election if the write-in candidate did not receive a number of votes equivalent to at least the number of signatures required by A.R.S. § 16-322 for nominating petitions for the same office, A.R.S. § 9-821.01(F);

- A Certificate of Nomination may not be issued to a write-in candidate from a political party recognized for continued representation who did not receive at least as many votes as the number of signatures required to appear on the primary election ballot, A.R.S. § 16-645(E);

- A Certificate of Nomination may not be issued to a write-in candidate of a political party not recognized for continued representation who did not receive a plurality of the votes of the party for the office for which the candidate is a candidate, A.R.S. § 16-645(D); and

- A Certificate of Election may not be issued to a write-in candidate for precinct committeemen or nonpartisan office who did not receive at least as many votes as the number of signatures required to appear on the ballot, A.R.S. § 16-322(A)(6), (8)-(10), A.R.S. § 16-645(C).

Following completion of the statewide canvass or recount process (and subject to the same exception for write-in candidates from a political party not recognized for continued representation), the Secretary of State must promptly issue a Certificate of Nomination or Certificate of Election to each legislative, statewide, and federal candidate who received the highest number of votes for each office at the election. The Certificate of Election must be signed by the Secretary of State and authenticated with the Great Seal of the State of Arizona. A.R.S. § 16-645(B); A.R.S. § 16-650.

## V.   ISSUING BALLOT MEASURE PROCLAMATIONS

At the conclusion of a statewide canvass that contains a ballot measure, the Governor must issue a proclamation that:

- Proclaims the number votes cast for and against each proposed constitutional amendment;

- Proclaims the number of votes cast for and against each proposed initiative or referendum; and

- Declares which measures were approved by a majority of those voting on the measures.

A.R.S. § 16-651; A.R.S. § 19-126(A). If there are two or more conflicting measures approved at the same election, the Governor must proclaim which measure received the greatest number of affirmative votes. A.R.S. § 19-126(B). If two or more conflicting measures (in whole or in part) are approved by voters at the same election, the measure with the most votes will prevail with respect to any provisions that are in conflict. Ariz. Const. Art. IV, Pt. 1, § 1(12).

For any approved measure, the Secretary of State must cause the measure to be printed with the general laws enacted by the next ensuing session of the Arizona Legislature, along with the date of the Governor's proclamation declaring the measure to be approved. A.R.S. § 19-127(B).

## VI.   STORAGE OF BALLOTS AND RETURNS OF THE ELECTION

After the county canvass is complete, the officer in charge of elections must seal the voted ballots and deliver these ballots and official returns to the County Treasurer (or a secure facility contracted

by the County Treasurer) for secure storage. A.R.S. § 16-624(A). If voting equipment produces digital ballot images, the digital ballot images must be retained and preserved in the same manner. A.R.S. § 16-625. Unused ballots are not subject to retention.

The County Treasurer must keep the ballots and official returns unopened and unaltered for a period of 24 months following an election for federal office and six months for all other elections. During these retention periods, ballots and official returns may only be opened pursuant to a court order (including for the purpose of a recount or election contest). In the absence of any recount or election contest, the County Treasurer must dispose of the ballots and official returns after the applicable retention period without opening or examining the contents. A.R.S. § 16-624(A), (D).

If a county conducts an election on behalf of a local jurisdiction, the county officer in charge of elections may transfer the official returns to the local jurisdiction (which thereafter must be preserved by the local jurisdiction in lieu of the County Treasurer).

To ensure the security and integrity of ballots, and protect against inadvertent or intentional tampering or damage to ballots during the required retention period, in the rare circumstances in which election officials or any other officials must, pursuant to court order or other compulsory process, access and/or otherwise handle ballots after they have been securely stored for retention, those officials shall implement adequate procedures to maintain the security, integrity, and chain of custody of the ballots, including, at minimum, the requirements that apply to election officials' handling of voted ballots described in this Elections Procedures Manual. Civil Rights Act of 1960, 52 U.S.C. § 20701.

The U.S. Department of Justice interprets the Civil Rights Act of 1960, 52 U.S.C. § 20701, to require that federal election records, including ballots, must "be retained either physically by election officials themselves, or under their direct administrative supervision." If election officials are required to hand over election records to other officials, "administrative procedures [must] be in place giving election officials ultimate management authority over the retention and security of those election records, including the right to physically access" the records. In other words, in addition to the requirements imposed by state law, federal law requires retention and preservation of federal election records, including maintaining the security, integrity, and chain of custody of ballots, regardless of who has physical possession of those records.[91] The same requirements apply to private vendors. A private vendor may only take custody of voted ballots, either before or after the election, if properly contracted and supervised by the appropriate election officials.

---

[91] See U.S. Dept. of Justice, *Federal Law Constraints on Post-Election "Audits"* (July 28, 2021), available at https://www.justice.gov/opa/press-release/file/1417796/download; U.S. Dept. of Justice, *Federal Prosecution of Election Offenses*, at 75-80 (Dec. 2017), available at https://www.justice.gov/criminal/file/1029066/download.

# CHAPTER 14:
## CAMPAIGN FINANCE

### I.      CAMPAIGN FINANCE REPORTING

The Secretary of State is required to prescribe the format for all campaign finance reports and statements. A.R.S. § 16-926(A). Sample forms are included in Chapter 15 for reference by local jurisdictions. Candidates who file their campaign finance reports and statements with the Secretary of State's Office must use the Secretary of State's online campaign finance reporting system, available at beacon.arizona.vote. Other jurisdictions may also require use of an online campaign finance reporting system.

The Secretary of State shall establish guidelines in this *Manual* that outline the procedures, timelines, and other processes applicable to all filing officers in this state. A.R.S. § 16-938(B). In reference to timelines, when any campaign finance filing deadline falls on a weekend or legal holiday, the period runs until the next business day. In computing any time period specified in statute, when the last day of the event, falls on a Saturday, Sunday, or legal holiday, the period runs until the next day that is not a Saturday, Sunday, or legal holiday.[92]

Additional campaign finance guidance is available on the Secretary of State's website at www.azsos.gov/elections. All candidates and campaign finance committees (which include candidate committees, political party committees, and political action committees) are encouraged to read the Secretary of State's campaign finance guides for additional information. In addition, candidates should be aware of the requirements in the Clean Elections Act and the Voters' Right to Know Act and may contact the Citizens Clean Elections Commission (CCEC) or visit their website at www.azcleanelections.gov for further information.

### II.     CAMPAIGN FINANCE ENFORCEMENT

Campaign finance enforcement may be initiated through the filing officer based on a third-party complaint or on the officer's own initiative.[93] In addition, any person may file a complaint with CCEC if they believe a violation of the Clean Elections Act or CCEC rules has occurred, including violations of A.R.S. §§ 16-971 – 16-979. CCEC staff may also initiate an internally generated complaint against a person for violation of the Clean Elections Act. *See* A.R.S. § 16-957. CCEC

---

[92] *See Ariz. R. Civ. P.* 6(a)(3); *see also Bohart v. Hanna,* 213 Ariz. 480, 482, n. 2 (2006)("[I]f the fifth day for filing an election appeal falls on a Saturday, Sunday, or state holiday, a notice of appeal will be deemed timely if filed on the next business day. *Cf.* Ariz. R. Civ. P. 6(a)").

[93] The Secretary of State is the filing officer for statewide and legislative elections. The county officer in charge of elections is the filing officer for county, school district, community college district and special taxing district elections, including retention elections for superior court judges. The city or town clerk is the filing officer for city and town elections. A.R.S. § 16-938(A).

enforcement procedures are available at https://www.azcleanelections.gov/campaign-finance-enforcement.[94]

Adjudication of campaign finance complaints generally follows a bifurcated structure, relying on an initial determination by a filing officer followed by the final decision of an enforcement officer. The overall process is summarized as follows and is covered in more detail in this Section:

- The filing officer will make a preliminary determination whether a campaign finance violation has occurred, known as a "reasonable cause" finding. A.R.S. § 16-938(C).

- If the filing officer makes a reasonable cause finding, the filing officer generally will refer the matter to the appropriate enforcement officer. A.R.S. § 16-938(C).

- The enforcement officer makes the final determination whether a legal violation occurred, which may require an additional investigation beyond the information provided by the filing officer. A.R.S. § 16-938(C), (E).

- If the enforcement officer concludes that a campaign finance violation occurred, the enforcement officer may issue a notice of violation to the alleged violator. If the violation has not been timely remedied, the enforcement officer may initiate legal action to secure compliance with campaign finance law. A.R.S. § 16-938 (E)-(G).

## A. Initiation of Campaign Finance Complaints

### 1. Third Party Complaints

Any person may file a complaint with the appropriate filing officer if they believe a violation of Arizona campaign finance laws has occurred, including but not limited to:

- Failure to register as a campaign finance committee when required;

- Unlawful commingling of money;

- Violation of campaign contribution limits;

- Making or accepting unlawful contributions;

- Failure to include proper advertising disclaimers;

- Failure to file campaign finance reports (if the filing officer has not already initiated an enforcement action);

- Improper or unreported expenditures; or

- Filing incomplete or inaccurate campaign finance reports.

---

[94] A.R.S. § 16-938(A) states ". . . a filing officer is the sole public officer who is authorized to initiate an investigation into alleged violations of . . . [Articles 1, 1.1, 1.2, 1.3, 1.4, 1.5, 1.6 and 1.7 of Title 16, Chapter 6 of the Arizona Revised Statutes], including the alleged failure to register as a committee." However, the phrase "is the sole public officer" has been invalidated by the Arizona Court of Appeals as it relates to CCEC. *See Arizona Advocacy Network et al., v. State of Arizona*, 250 Ariz. 109(App. 2020).

The complaint must be made in writing and submitted to the applicable filing officer for campaign finance reports. Email submissions are acceptable.  *See* A.R.S. § 16-938(B).

Regardless of whether a complainant is represented by counsel, a complaint must contain the full name, email address, and mailing address of the complainant. A complaint should also:

- Clearly recite the facts that describe a violation of Arizona campaign finance law under the filing officer's jurisdiction as specifically as possible (citations to the law are highly encouraged);

- Clearly identify each person, committee, organization or group that is alleged to have committed a violation;

- Include any supporting documentation (such as sworn affidavits from persons with first-hand knowledge, media reports, advertisements, website links, etc.) supporting the alleged violation, if available; and

- Differentiate between statements based on a complainant's personal knowledge and those based on information and belief. Statements not based on personal knowledge should identify the source of the information.

Complaints should be filed as soon as possible after the alleged violation becomes known to the complainant in order to preserve available evidence and initiate the enforcement process within the four-year statute of limitations period. *See* A.R.S. § 12-550. A filing officer must retain candidate filings, including campaign finance filings, based on the applicable record retention schedule.

The filing officer must review the complaint for compliance with the required criteria outlined above, including confirmation that the complaint falls within the filing officer's jurisdiction. If the complaint does not meet the criteria, the filing officer should notify the complainant of the deficiencies and that no action will be taken on the complaint. If the complaint is deemed sufficient, the filing officer will:

- Assign the complaint a complaint number (in a format determined by the filing officer);

- Confirm in writing that the complaint has been received;

- Inform the complainant that the respondent will be provided an opportunity to submit a response and the complainant may submit a reply within specified time periods; and

- Inform the complainant that the filing officer will notify all parties once a preliminary decision has been made.

Before a reasonable cause determination is made, a filing officer may not order a person to register as a committee and does not have audit or subpoena powers to compel the production of evidence or the attendance of witnesses concerning a potential campaign finance violation. However, a filing officer may request the voluntary production of evidence or attendance of witnesses in making a

reasonable cause determination. A.R.S. § 16-938(D); *see also Arizona Advocacy Network et al., v. State of Arizona*, 250 Ariz. 109 (App. 2020).

### 2. Mitigating Conflicts of Interest

A filing officer and enforcement officer should avoid actual or perceived conflicts of interest when adjudicating campaign finance complaints. A conflict analysis should be undertaken promptly after a complaint is filed and before the respondent is directed to submit a response. A.R.S. § 38-503(B).

If a filing officer determines that a conflict of interest exists, the filing officer should refer a campaign finance complaint to another filing officer in the state who accepts the referral.[95] The receiving officer has the same jurisdiction to make a reasonable cause determination as the original officer. A.R.S. § 16-938(A). If the receiving officer ultimately does find reasonable cause, they may: (i) refer the matter directly to an appropriate enforcement officer, if permitted by the enforcement officer, or; (ii) refer the matter back to the original filing officer, and the original filing officer must refer the matter to the enforcement officer for that jurisdiction. *Id*.

If a filing officer makes a reasonable cause finding but believes the corresponding enforcement officer will have a conflict of interest, the filing officer nonetheless must make the referral to that enforcement officer. *Comm. for Justice & Fairness v. Arizona Sec'y of State's Office*, 235 Ariz. 347, 350 (App. 2014). The enforcement officer must then determine whether a conflict of interest exists and, if so, refer the matter to another enforcement officer.

### B. Notice of Complaint and Opportunity for Response and Reply

### 1. Notice to Respondents

A "respondent" is the person who is the subject of the campaign finance complaint or referral.

Within thirty business days after receiving a properly filed complaint, the filing officer will send the respondent a copy of the complaint and a letter describing the filing officer's campaign finance processing procedures. The notification letter reflects no judgment about the accuracy of the allegations, but simply: (i) informs the respondent that the filing officer has received allegations as to possible violations of campaign laws by the respondent; (ii) provides a copy of the complaint

---

[95] If the original filing officer cannot promptly identify another filing officer who will accept the referral, the original filing officer should promptly notify the complainant and respondent after the complaint was filed that: (i) the filing officer has a conflict of interest; and (ii) the new filing officer (once identified) will contact the parties and formally initiate the enforcement proceedings. The filing officer may make arrangements for referrals to another filing officer due to an anticipated conflict of interest prior to the receipt of a third-party complaint.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

or referral document, or in limited circumstances, a summary of the complaint; and (iii) gives the respondent an opportunity to respond in writing by the deadline provided in the letter.

## 2. Submitting a Response

The response is the respondent's opportunity to demonstrate to the filing officer why the filing officer should not pursue an enforcement action, or to clarify, correct, or supplement the information in the complaint or referral. Respondents are not required to respond to the allegations. Respondents must be provided an opportunity to respond to both a third-party complaint and an internally-initiated investigation.

Respondents, if they choose, may be represented by counsel. Once the filing officer receives a notification that the respondent is represented by counsel, the filing officer will communicate only with the counsel unless otherwise authorized by the respondent.

There is no prescribed format for responses. While not required, providing documentation, including sworn affidavits or declarations under penalty of perjury from persons with first-hand knowledge of the facts, is helpful. It is also helpful for a respondent to specifically address each allegation in the complaint. The response may be submitted by email, and the respondent need not copy the complainant on the response.

The filing officer may set a response deadline not to exceed 30 calendar days. Upon request by the respondent and for good cause shown, the filing officer may grant a reasonable extension of the response deadline. The respondent must make the request to the filing officer in writing, and the filing officer must copy the complainant on the filing officer's decision on the extension request.

## 3. Submitting a Reply

Within ten business days after receiving a response, the filing officer will send the complainant a copy of the response and a letter that explains the opportunity for the complainant to submit a reply.

There is no prescribed format for replies, and complainants are not required to file a reply. However, the reply is the complainant's opportunity to address issues raised in the response and/or buttress the complaint's original allegations. The reply may not raise new issues that were not addressed in the original complaint.

The filing officer may set a reply deadline not to exceed 14 calendar days. The filing officer may not take any action on the complaint or referral (other than dismiss the matter) until this time period has passed. Upon request by the complainant and for good cause shown, the filing officer may grant a reasonable extension of the reply deadline.

## C. Decision by Filing Officer

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

After the reply period (and any extension, if granted) has passed, the filing officer will evaluate the complaint, response, and reply (if any) to determine whether there is reasonable cause to believe a violation occurred. The filing officer should also consider any relevant campaign finance reports or documents on file with the filing officer and any other information available in the public record. The filing officer does not possess subpoena powers to compel production of evidence or attendance of witnesses concerning a potential campaign finance violation (nor may any party to the proceeding conduct discovery). However, the filing officer may request voluntary production of information to assist in evaluating the complaint or response. A.R.S. § 16-938(D)

### 1. Determining Whether a Violation Occurred

A filing officer may take one of three courses of action: find reasonable cause, dismiss the matter, or find no reasonable cause.

#### a. Finding Reasonable Cause

To refer a matter to an enforcement officer, a filing officer must find "reasonable cause to believe a person violated" campaign finance law. A.R.S. § 16-938(C). A reasonable cause finding is not a definitive finding that the respondent violated campaign finance law but simply means that the filing officer believes a violation may have occurred.

In determining whether there is reasonable cause, the standard of review is akin to "probable cause" to support the complainant's allegations, which generally means there is reasonably trustworthy information and circumstances that would lead a reasonable person to conclude there is substantial likelihood that the respondent committed a violation. *See In re Shaheen Tr.*, 236 Ariz. 498, 501 (App. 2015); *State v. Keener*, 206 Ariz. 29, 32 (App. 2003).

#### b. Dismissal of Complaint

In their discretion, a filing officer may dismiss a matter that does not merit further use of government resources. The filing officer may consider factors such as the following when deciding whether to dismiss a complaint:

- If the matter is not within the filing officer's jurisdiction;
- Whether there is a small dollar amount at issue;
- The insignificance of the alleged violation;
- The vagueness or weakness of the evidence;
- Inability to identify members and/or contact information for the respondent;
- Whether the alleged violation has been remedied and not likely to be repeated; and
- Whether the alleged violation was unintentional.

If dismissal is warranted, the filing officer may send a letter cautioning or reminding the respondent regarding the relevant legal obligations going forward.

### c. Finding No Reasonable Cause

A filing officer should find "no reasonable cause" if a violation occurred when the complaint, response, and reply (if any), along with any publicly available information, taken together, fail to give rise to a reasonable inference that a violation has occurred (or even if the allegations were true, would not constitute a violation of the law).

### 2. Issuance and Notification of Decision

A filing officer shall issue a decision, which may explain the basis for the filing officer's determination. Absent extenuating circumstances, a filing office shall render a decision within 150 calendar days after the deadline for submitting a reply if a response was submitted, or within 150 calendar days after the deadline for a response if no response was submitted. However, if the filing officer's deadline to issue a decision falls within 30 calendar days of an election in the filing officer's jurisdiction, the decision shall be issued within 60 calendar days after the election. The filing officer should keep the parties reasonably apprised of the projected decision timetable and shall notify all parties in writing of the decision.

If the filing officer dismisses the complaint or finds no reasonable cause, the matter is closed and no notification is given to the enforcement officer. A dismissal or finding of no reasonable cause are not considered appealable actions.

If the filing officer finds reasonable cause, the filing officer must notify the enforcement officer and provide all relevant documentation from the case:

- For matters investigated by the Secretary of State as filing officer, the Secretary must notify the Attorney General;

- For matters investigated by a county filing officer, the county filing officer must notify the county attorney; or

- For matters investigated by a city or town filing officer, the city or town filing officer must notify the city or town attorney.

A.R.S. § 16-938(C)(1)-(3).

If the filing officer determines there is reasonable cause to believe that knowing and intentional misrepresentations were made, the filing officer may refer the matter to the enforcement officer for possible criminal prosecution as well. A.R.S. § 16-1021.

### D. Decision by Enforcement Officer

Upon receipt of a reasonable cause finding from a filing officer, an enforcement officer may:

- Review the matter for potential conflicts of interest;

- If necessary, conduct an investigation and/or compel discovery through the enforcement officer's subpoena powers; and

- Reach a final decision whether a campaign finance violation occurred.

Nonpublic information independently gathered during the investigation (other than the complaint, response, reply and accompanying exhibits, which may be disclosed) must be kept confidential until after the final disposition of any appeal of the enforcement order. A.R.S. § 16-938(E)(3).

If the enforcement officer determines a violation occurred, the enforcement officer may serve a notice of violation on the respondent. The notice must:

- State with reasonable particularity the nature of the violation;

- Specify the fine or penalty imposed, and any other corrective action required to be undertaken; and

- Require compliance within 20 calendar days after the date of issuance of the notice.

A.R.S. § 16-938(E)(2).

## 1. Late Campaign Finance Reports

In the case of a registered committee's failure to file campaign finance reports, the filing officer shall send a written notice by e-mail to the committee within five calendar days after the filing deadline that identifies the late report, describes how fines accrue, identifies methods of payment, and state that penalties will continue to accrue until paid in full or corrective action is taken. A.R.S. § 16-937(A). If after the notice is provided and the committee fails to timely file a complete report within thirty calendar days after the filing deadline, the filing officer may resolve the complaint or may notify the appropriate enforcement officer. See A.R.S. § 16-937(C). The filing officer may also temporarily or permanently suspend the committee when certain requirements are met. A.R.S. § 16-937(D), (E). Upon receipt of the referral by the filing officer, no further investigation or discovery is generally necessary, and the enforcement officer may proceed to issue a notice of violation.

## 2. Other Campaign Finance Violations

In the case of any other campaign finance violation, the notice of violation should include a presumptive financial penalty equal to the amount of money improperly received, spent, or promised in violation of the law. In special circumstances, based on the severity, extent, or willful nature of the violation, the enforcement officer may issue a financial penalty up to three times the amount of money improperly received, spent, or promised. The enforcement officer should outline the special circumstances in the notice of violation.

A notice of violation also may require the respondent to form a campaign finance committee and thereafter file campaign finance reports for past and future political activity. However, if the

respondent timely appeals this ruling, the respondent need not file the campaign finance reports unless and until the enforcement officer's notice of violation has been upheld. A.R.S. § 16-938(E)(2).

---

### E. Response to Notice of Violation

#### 1. Respondent Takes Corrective Action

If a notice of violation requires corrective action and payment of a fine or financial penalty, but the respondent takes the specified corrective action within 20 calendar days of being served with the notice, the respondent is not subject to any fine or financial penalty. A.R.S. § 16-938(G)(1). The enforcement officer should close the matter and issue a confirmation in writing.

#### 2.   Respondent Takes No Corrective Action

If the respondent fails to timely comply with a notice of violation, the enforcement officer may impose the fine or financial penalty (if any) and provide the respondent a final notice stating that the fine or penalty may be appealed to the Superior Court. A.R.S. § 16-938(G)(2).

#### 3.   Respondent Appeals to Superior Court

If the respondent fails to comply with a final notice but files a timely appeal, the final notice is stayed until the appeal is resolved. A respondent must file an appeal in superior court within 30 calendar days after receiving the final decision and provide a copy of the appeal to the enforcement officer. A.R.S. § 16-938(H).

At the hearing, the superior court must conduct a trial de novo and the enforcement officer has the burden of proving any alleged violations by a preponderance of the evidence. A.R.S. § 16-938(I).

# CHAPTER 15:
## ELECTION CALENDAR AND SAMPLE FORMS

This Chapter contains the 2023-2024 Election Cycle Calendar. This Chapter also contains sample campaign finance forms pursuant to A.R.S. § 16-926(A) ("The secretary of state's instructions and procedures manual adopted pursuant to A.R.S. § 16-452 shall prescribe the format for all reports and statements."). The forms contained in this Manual are subject to revision. Please contact the Secretary of State's Office, Election Services Division, for the most current version.

CHAPTER 15:
Election Calendar and Sample Campaign Finance Forms

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 1/1/2023 | Jan 1 | SOS | | Begin filing Public Officers Annual Financial Disclosure Statement covering CY2022 | 18-444(D) | **HOLIDAY** |
| 1/1/2023 | Jan 1 | SOS | | Begin Filing 2022 4th Qtr Lobbyist Expenditure Report covering October 1, 2022 - December 31, 2022 | 41-1232.02(B) 41-1232.03(B) | **HOLIDAY** |
| 1/1/2023 | Jan 1 | SOS | | Begin Filing Principal and Public Body 2022 Annual Expenditure Reports covering January 1, 2022 - December 31, 2022 | 41-1232.02(A) 41-1232.03(A) | **HOLIDAY** |
| 1/1/2023 | Jan 1 | SOS | | Begin filing Standing Committee 2022 4th Qtr Campaign Finance Report covering October 23, 2022 - December 31, 2022 | 16-927(A)(2)(b) 16-928(B) | **HOLIDAY** |
| 1/1/2023 | Jan 1 | SOS | ELEC | Begin filing PAC and Political Party 2022 4th Qtr Campaign Finance Report covering October 23, 2022 - December 31, 2022 | 16-927(A)(2)(b) | **HOLIDAY** |
| 1/1/2023 | Jan 1 | SOS | | Begin Filing Candidate 2022 4th Qtr Campaign Finance Report Covering October 23, 2022 - December 31, 2022 (Statewide and Legislative Candidates) | 16-927(B) | **HOLIDAY** |
| 1/1/2023 | Jan 1 | ELEC | | Begin Filing Candidate 2022 4th Qtr Campaign Finance Report Covering October 23, 2022 - December 31, 2022 (Applicable County and Local Races) | 16-927(B) | **HOLIDAY** |
| 1/2/2023 | Jan 2 | SOS | REC | Begin compiling county-provided January 2 Voter Registration Report | 16-168(G)(2)(a) | **HOLIDAY** |
| 1/3/2023 | AugE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for August 1, 2023 Election. | 16-205(A) | |
| 1/9/2023 | Jan 9 (Second Monday in January) | SOS | | Deadline for filing Biennial Principal or Public Body Registration Renewal for period covering 2022-2023 | 41-1232(C) 41-1232.01(C) | |
| 1/17/2023 | Jan 15 (Jan 16 is a holiday, moved to next business day) | SOS | | Deadline for filing Standing Committee 2022 4th Qtr Campaign Finance Report covering October 23, 2022 - December 31, 2022 | 16-927(A)(2)(b) 16-928(B) | **HOLIDAY** |
| 1/17/2023 | Jan 15 (Jan 16 is a holiday, moved to next business day) | SOS | ELEC | Deadline for filing PAC and Political Party 2022 4th Qtr Campaign Finance Report covering October 23, 2022 - December 31, 2022 | 16-927(A)(2)(b) | **HOLIDAY** |
| 1/17/2023 | Jan 15 (Jan 16 is a holiday, moved to next business day) | SOS | | Deadline for Filing Candidate 2022 4th Qtr Campaign Finance Report Covering October 23, 2022 - December 31, 2022 (Statewide and Legislative Candidates) | 16-927(B) | **HOLIDAY** |
| 1/17/2023 | Jan 15 (Jan 16 is a holiday, moved to next business day) | ELEC | | Deadline for Filing Candidate 2022 4th Qtr Campaign Finance Report Covering October 23, 2022 - December 31, 2022 (Applicable County and Local Races) | 16-927(B) | **HOLIDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 1/28/2023 | MarE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for March 14, 2023 election | 16-544(F) | **SATURDAY** |
| 1/28/2023 | MarE-45 | REC | | Mail UOCAVA ballots by 45th day before March 14, 2023 Election for all requests received on or before the 48th day before the election | 16-543(A) MOVE Act | **SATURDAY** |
| 1/31/2023 | Jan 31 | SOS | | Election System Software Escrow Statement: Election vendors who have voting equipment certified for use in Arizona elections and whose equipment is currently in use or will be used in an upcoming election shall notify the Secretary of State, in writing, by January 31 of each year where the source code is held in escrow | | |
| 1/31/2023 | Jan 31 | SOS | | Deadline for officeholders to file annual Financial Disclosure Statement | 18-444(D) | |
| 1/31/2023 | Jan 31 | SOS | | Deadline for Filing 2022 4th Qtr Lobbyist Expenditure Report covering October 1, 2022 - December 31, 2022 | 41-1232.02(B) 41-1232.03(B) | |
| 2/1/2023 | Feb 1 | SOS | | Send Notices of Failure to File for Public Officers Annual Financial Disclosure Statements covering CY2023 | 38-544 | |
| 2/12/2023 | MayE-93 | REC | | Begin accepting ballot-by-mail requests for May 16, 2023 Election (UOCAVA voters and protected voters under 16-153 can request ballots before this date.) | 16-542(A)(B) 16-153 | **SUNDAY** |
| 2/13/2023 | **MarE-29 (until 11:59 pm)** | **REC** | | **Last day to Register to Vote for March 14, 2023 Election (11:59 p.m.)** | **16-120(A)** | |
| 2/15/2023 | MarE-27 | ELEC | | Begin Early Voting for March 14, 2023 Election | 16-542(C) | |
| 2/15/2023 | MarE-27 | REC | | Mail Early Ballots for March 14, 2023 Election to voters on active early voting list and voters who have requested a one-time ballot-by-mail | 16-544(F) | |
| 2/15/2023 | MarE-27 | ELEC | | Tallying of early ballots for March 14, 2023 Election may begin | 16-550(B) | |
| 2/25/2023 | MarE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for March 14, 2023 Election with Secretary of State | 16-445(A) Procedures Manual | **SATURDAY** |
| 2/26/2023 | MarE-16 | SOS | | Begin Filing Standing Committee 2023 March Pre-Election Campaign Finance Report covering January 1, 2023 - February 25, 2023 | 16-927(A)(2)(a) 16-928(B) | **SUNDAY** |
| 2/26/2023 | MarE-16 | ELEC | | Begin Filing Candidate Committee 2023 March Pre-Election Campaign Finance Report covering January 1, 2023 - February 25, 2023 (Local Jurisdictions Only) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 3/1/2023 | March 1 | SOS | | Deadline for Filing Principal and Public Body 2022 Annual Expenditure Reports covering January 1, 2022 - December 31, 2022 | 41-1232.02(A) 41-1232.03(A) | |
| 3/3/2023 | MarE-11 | REC | | Deadline for accepting requests for a Ballot-by-Mail for the March 14, 2023 Election | 16-542(E) | |
| 3/4/2023 | MarE-10 | SOS | | Deadline for Filing Standing Committee 2023 March Pre-Election Campaign Finance Report covering January 1, 2023 - February 25, 2023 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | SATURDAY |
| 3/4/2023 | MarE-10 | ELEC | | Deadline for Filing Candidate Committee 2023 March Pre-Election Campaign Finance Report covering January 1, 2023 - February 25, 2023 | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | SATURDAY |
| 3/10/2023 | MarE-4 | ELEC | | Deadline to Vote Early In-Person for the March 14, 2023 Election by 5:00 p.m. | 16-542(E) | |
| 3/14/2023 | **MarE (2nd Tuesday in March)** | **ALL** | | **March 14, 2023 Election** | **16-204(F)(1)** | |
| 3/17/2023 | MarE+3 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. For counties that have a 4-day work week, the deadline will be the next business day: Monday March 20, 2023 | 16-579(A)(2) 16-550(A) Procedures Manual | |
| 3/20/2023 | MarE + 6 | BOS | | First day to canvass returns for March 14, 2023 Election | 16-642(A) 16-645(A) | |
| 4/1/2023 | Apr 1 | SOS | | Begin filing 2023 1st Qtr Lobbyist Expenditure Report covering January 1, 2023 - March 31, 2023 | 41-1232.02(B) 41-1232.03(B) | SATURDAY |
| 4/1/2023 | Apr 1 | SOS | | Begin filing Standing Committee 2023 1st Qtr Campaign Finance Report covering February 26, 2023 - March 31, 2023 | 16-927(A)(2)(b) 16-928(B) | SATURDAY |
| 4/1/2023 | Apr 1 | SOS | | Begin filing PAC and Political Party 2023 1st Qtr Campaign Finance Report covering January 1, 2023 - March 31, 2023 | 16-927(A)(1) | SATURDAY |
| 4/1/2023 | Apr 1 | ELEC | | Begin filing Candidate 2023 1st Qtr Campaign Finance Report covering February 26, 2023 - March 31, 2023 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | SATURDAY |
| 4/1/2023 | Apr 1 | SOS | REC | Begin compiling county-provided April 1 Voter Registration Report | 16-168(G)(2)(b) | SATURDAY |
| 4/1/2023 | MayE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for May 16, 2023 Election | 16-544(F) | SATURDAY |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|--------------------------|
| 4/1/2023 | MayE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before May 16, 2023 Election | 16-543(A) | **SATURDAY** |
| 4/3/2023 | MarE+20 | BOS | | Last day to canvass returns for March 14, 2023 Election | 16-642(A) 16-645(A) | |
| 4/11/2023 | NovE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for November 7, 2023 Election | 16-205(A) | |
| 4/15/2023 | Apr 15 | SOS | | Deadline for filing Standing Committee 2023 1st Qtr Campaign Finance Report covering February 26, 2023 - March 31, 2023 | 16-927(A)(2)(b) 16-928(B) | **SATURDAY** |
| 4/15/2023 | Apr 15 | ELEC | | Deadline for filing Candidate 2023 1st Qtr Campaign Finance Report covering February 26, 2023 - March 31, 2023 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | **SATURDAY** |
| 4/17/2023 | Apr 15 | ELEC | | Deadline for filing PAC and Political Party 2023 1st Qtr Campaign Finance Report covering January 1, 2023 - March 31, 2023 | 16-927(A)(1) | |
| 4/17/2023 | **MayE-29** | **REC** | | **Last day to register to vote for May 16, 2023 Election (11:59 p.m.)** | **16-120(A)** | |
| 4/19/2023 | MayE-27 | ELEC | | Begin early voting for May 16, 2023 Election | 16-542(C) | |
| 4/19/2023 | MayE-27 | REC | | Mail early ballots for May 16, 2023 Election to voters on Active Early Voting List and voters who have requested a one-time ballot-by-mail | 16-544(F) | |
| 4/19/2023 | MayE-27 | ELEC | | Tallying of early ballots for May 16, 2023 Election may begin | 16-550(B) | |
| 4/29/2023 | MayE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for May 16, 2023 Election with Secretary of State | 16-445(A) Procedures Manual | **SATURDAY** |
| 4/30/2023 | AugE-93 | REC | | Begin accepting ballot-by-mail requests for August 1, 2023 Election (UOCAVA voters and protected voters under 16-153 can request ballots before this date.) | 16-542(A)(B) 16-153 | **SUNDAY** |
| 4/30/2023 | May 1 | SOS | | Begin filing Standing Committee 2023 May Pre-Election Campaign Finance Report covering April 1, 2023 - May 6, 2023 | 16-927(A)(2)(a) 16-928(B) | **SUNDAY** |
| 5/1/2023 | Apr 30 (moved to next business day) | SOS | | Deadline for filing 2023 1st Qtr Lobbyist Expenditure Report covering January 1, 2023 - March 31, 2023 | 41-1232.02(B) 41-1232.03(B) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 5/1/2023 | May 1 | ELEC | | Begin filing Candidate 2023 May Pre-Election Campaign Finance Report covering April 1, 2023 - May 6, 2023 (Applicable County or Local Races) | 16-927(A)(2)(a) 16-927(B) | |
| 5/3/2023 | AugE - 90 | ELEC | | Mail Notice of August 1, 2023 Election to Active Early Voters | 16-544(D) | |
| 5/5/2023 | MayE-11 | REC | | Deadline for accepting requests for a ballot-by-mail for the May 16, 2023 Election | 16-542(E) | |
| 5/6/2023 | MayE- 10 | SOS | | Deadline for filing Standing Committee 2023 May Pre-Election Campaign Finance Report covering April 1, 2023 - April 29, 2023 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | SATURDAY |
| 5/6/2023 | MayE-10 | ELEC | | Deadline for filing Candidate 2023 May Pre-Election Campaign Finance Report covering April 1, 2023 - May 6, 2023 (Applicable County or Local Races) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | SATURDAY |
| 5/12/2023 | MayE - 4 | ELEC | | Deadline to Vote Early In-Person for the May 16, 2023 Election by 5:00 p.m. | 16-542(E) | |
| **5/16/2023** | **MayE (3rd Tuesday in May)** | **ALL** | | **May 16, 2023 Election** | **16-204(F)(2)** | |
| 5/19/2023 | MayE + 3 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. For counties that have a 4-day work week, the deadline will be the next business day: Monday May 22, 2023 | 16-579(A)(2) 16-550(A) Procedures Manual | |
| 5/22/2023 | MayE + 6 | BOS | | First day to canvass returns for May 16, 2023 Election | 16-642(A) 16-645(A) | |
| 6/5/2023 | MayE+20 | BOS | | Last day to canvass returns for May 16, 2023 Election | 16-642(A) | |
| 6/17/2023 | AugE-45 | REC | | Deadline for Active early voters to notify county that an early ballot not be sent for August 1, 2023 Election | 16-544(F) | SATURDAY |
| 6/17/2023 | AugE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before August 1, 2023 Election | 16-543(A) | SATURDAY |
| 7/1/2023 | Jul 1 | SOS | REC | Begin compiling county-provided July 1 Voter Registration Report | 16-168(G)(2)(c) | SATURDAY |
| 7/1/2023 | Jul 1 | SOS | | Begin filing Standing Committee 2023 2nd Qtr Campaign Finance Report covering April 30, 2023 - June 30, 2023 | 16-927(A)(2)(b) 16-928(B) | SATURDAY |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| **7/1/2023** | Jul 1 | ELEC | | Begin filing PAC and Political Party 2023 2nd Qtr Campaign Finance Report covering April 1, 2023 - June 30, 2023 | 16-927(A)(1) | **SATURDAY** |
| **7/1/2023** | Jul 1 | ELEC | | Begin filing Candidate 2nd Qtr Campaign Finance Report covering May 1, 2023 - June 30, 2023 (Applicable County or Local Races) | 16-927(A)(2)(b) 16-927(B) | **SATURDAY** |
| **7/1/2023** | Jul 1 | SOS | | Begin filing 2023 2nd Qtr Lobbyist Expenditure Report covering April 1, 2023 - June 30, 2023 | 41-1232.02(B) 41-1232.03(B) | **SATURDAY** |
| **7/3/2023** | **AugE-29** | **REC** | | **Last day to Register to Vote for August 1, 2023 Election (Until 11:59 PM)** | **16-120(A)** | |
| **7/5/2023** | AugE-27 | ELEC | | Begin early voting for August 1, 2023 Election | 16-542(C) | |
| **7/5/2023** | AugE-27 | REC | | Mail early ballots for August 1, 2023 Election to voters on Active Early Voting List and voters who have requested a one-time ballot-by-mail | 16-544(F) | |
| **7/5/2023** | AugE-27 | ELEC | | Tallying of early ballots for August 1, 2023 Election may begin | 16-550(B) | |
| **7/15/2023** | Jul 15 | SOS | | Deadline for filing Standing Committee 2023 2nd Qtr Campaign Finance Report covering April 30, 2023 - June 30, 2023 | 16-927(A)(2)(b) 16-928(B) | **SATURDAY** |
| **7/15/2023** | Jul 15 | ELEC | | Deadline for filing Candidate 2nd Qtr Campaign Finance Report covering May 1, 2023 - June 30, 2023 (Applicable County or Local Races) | 16-927(A)(2)(b) 16-927(B) | **SATURDAY** |
| **7/15/2023** | AugE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for August 1, 2023 Election with Secretary of State | 16-445(A) Procedures Manual | **SATURDAY** |
| **7/16/2023** | AugE-16 | SOS | | Begin filing Standing Committee 2023 Pre-Primary Campaign Finance Report covering July 1, 2023 - July 15, 2023. | 16-927(A)(2)(a) 16-928(B) | **SUNDAY** |
| **7/16/2023** | AugE-16 | ELEC | | Begin filing Candidate 2023 Pre-Primary Campaign Finance Report covering July 1, 2023 - July 22, 2023 (Applicable County or Local Races) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |
| **7/17/2023** | Jul 15 | ELEC | | Deadline for filing PAC and Political Party 2023 2nd Qtr Campaign Finance Report covering April 1, 2023 - June 30, 2023 | 16-927(A)(1) | |
| **7/16/2023** | AugE-16 | SOS | | Begin filing Standing Committee 2023 Pre-Primary Campaign Finance Report covering July 1, 2023 - July 22, 2023 | 16-927(A)(2)(a) 16-928(B) | **SUNDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 7/16/2023 | AugE-16 | ELEC | | Begin filing Candidate 2023 Pre-Primary Campaign Finance Report covering July 1, 2023 - July 22, 2023 (Applicable County or Local Races) | 16-927(A)(2)(a) 16-927(B) | SUNDAY |
| 7/21/2023 | AugE-11 | REC | | Deadline to accept requests for a Ballot-by-Mail for the August 1, 2023 Election | 16-542(E) | |
| 7/22/2023 | AugE-10 | SOS | | Deadline for filing Standing Committee 2023 Pre-Primary Campaign Finance Report covering July 1, 2023 - July 15, 2023 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | SATURDAY |
| 7/22/2023 | AugE-10 | ELEC | | Deadline for filing Candidate 2023 Pre-Primary Campaign Finance Report covering July 1, 2023 - July 22, 2023 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | SATURDAY |
| 7/28/2023 | AugE-4 | ELEC | | Deadline to Vote Early In-Person for the August 1, 2023 Election by 5:00 p.m. | 16-542(E) | |
| 7/28/2023 | AugE-4 | ELEC | | Begin emergency early voting in a manner prescribed by the BOS due to an emergency occurring between 5:00 p.m. on July 28, 2023 and 5:00 p.m. on July 31, 2023 that would prevent the elector from voting at the polls | 16-542(H) | |
| 7/31/2023 | Jul 31 | SOS | | Deadline for filing 2023 2nd Qtr Lobbyist Expenditure Report covering April 1, 2023 - June 30, 2023 | 41-1232.02(B) 41-1232.03(B) | |
| 7/31/2023 | Jul 31 | CCEC | SOS | End of CCEC Exploratory Period for 2024 Election. Exploratory Period covers November 9, 2022 - July 31, 2023 | 16-961(B)(2) | |
| **8/1/2023** | **AugE (1st Tuesday in August)** | **ALL** | | **August 1, 2023 Election** | **16-204(F)(3)** | |
| 8/1/2023 | Aug 1 | CCEC | SOS | Begin CCEC Qualifying Period for 2024 Election. Qualifying Period covers August 1, 2023 - July 30, 2024 | 16-961(B)(3) | |
| 8/4/2023 | AugE+3 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. For counties with a 4-day work week, the deadline is the following Monday, August 7, 2023. | 16-579(A)(2) 16-550(A) Procedures Manual | |
| 8/6/2023 | Nov E-93 | REC | | Begin accepting ballot-by-mail requests for November 7, 2023 Election (UOCAVA voters and protected voters under 16-153 can request ballots before this date.) | 16-542(A)(B) 16-153 | SUNDAY |
| 8/7/2023 | AugE+6 | BOS | | First day to canvass returns for August 1, 2023 Election | 16-642(A) | |
| 8/15/2023 | MarE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for March 12, 2024 Election | 16-205(A) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 8/21/2023 | AugE+20 | BOS | | Last day to canvass returns for August 1, 2023 Election | 16-642(A) | |
| 9/14/2023 | MarE-180 | BOS | | Deadline for jurisdictions to notify BOS of intent to hold March 12, 2024 election | 16-226 (A) | |
| 9/14/2023 | MarE-180 | BOS | | Deadline for jurisdictions to call March 12, 2024 election | 16-226 (A) | |
| **9/21/2023** | **PPE-180** | | | **Deadline for Governor's proclamation to move PPE** | **16-241(B)** | |
| 9/21/2023 | PPE-180 | SOS | | Begin filing period of New Party Petitions for Recognition in PPE | 16-244(A)(2) 16-804 | |
| 9/23/2023 | NovE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for November 7, 2023 Election | 16-544(F) | **SATURDAY** |
| 9/23/2023 | NovE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before November 7, 2023 Election | 16-543(A) | **SATURDAY** |
| 10/1/2023 | Oct 1 | SOS | | Deadline for Secretary of State to submit updated Elections Procedures Manual to Governor and Attorney General for review | 16-452(B) | **SUNDAY** |
| 10/1/2023 | Oct 1 | SOS | | Begin filing Standing Committee 2023 3rd Qtr Campaign Finance Report covering July 16, 2023 - September 30, 2023 | 16-927(A)(2)(b) 16-928(B) | **SUNDAY** |
| 10/1/2023 | Oct 1 | SOS | ELEC | Begin filing PAC and Political Party 2023 3rd Qtr Campaign Finance Report covering July 1, 2023 - September 30, 2023 | 16-927(A)(1) | **SUNDAY** |
| 10/1/2023 | Oct 1 | ELEC | | Begin filing Candidate 2023 3rd Qtr Campaign Finance Report covering July 23, 2023 - September 30, 2023 (Applicable County or Local Races) | 16-927(A)(2)(b) 16-927(B) | **SUNDAY** |
| 10/1/2023 | Oct 1 | SOS | REC | Begin compiling county-provided October 1 Voter Registration Report | 16-168(G)(2)(d) | **SUNDAY** |
| 10/1/2023 | Oct 1 | SOS | | Continued party recognition calculated based on registered voters as of October 1, 2023 | 16-804(A), (B) 16-168(G) | |
| 10/1/2023 | Oct 1 | SOS | | Begin filing 2023 3rd Qtr Lobbyist Expenditure Report covering July 1, 2023 - September 30, 2023 | 41-1232.02(B) 41-1232.03(B) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|----------------|-------|-------|-------|-----------|------------------------|
| 10/1/2023 | Oct 1 | BOS | | Deadline to establish new election precincts and boundaries | 16-411(A) | |
| 10/10/2023 | **NovE-29 (October 9 is an observed holiday, moved to next business day)** | **REC** | | **Last day to register to vote for November 7, 2023 Election (11:59 p.m.)** | **16-120(A)** | **HOLIDAY** |
| 10/11/2023 | NovE-27 | ELEC | | Begin early voting for November 7, 2023 Election | 16-542(C) | |
| 10/11/2023 | NovE-27 | REC | | Mail early ballots for November 7, 2023 Election to voters on Active Early Voting List and voters who have requested a one-time ballot-by-mail | 16-544(F) | |
| 10/11/2023 | NovE-27 | ELEC | | Tallying of early ballots for November 7, 2023 Election may begin | 16-550(B) | |
| 10/14/2023 | MarE-150 | ELEC | | Begin Accepting Nomination Papers from Write-In Candidates (March Local Elections) | 16-312(B) | **SATURDAY*** |
| 10/16/2023 | Oct 15 (date is a Sunday, moved to next business day) | SOS | | Deadline for filing Standing Committee 2023 3rd Qtr Campaign Finance Report covering July 16, 2023 - September 30, 2023 | 16-927(A)(2)(b) 16-928(B) | |
| 10/16/2023 | Oct 15 (date is a Sunday, moved to next business day) | ELEC | | Deadline for filing PAC and Political Party 2023 3rd Qtr Campaign Finance Report covering July 1, 2023 - September 30, 2023 | 16-927(A)(1) | |
| 10/16/2023 | Oct 15 (date is a Sunday, moved to next business day) | ELEC | | Deadline for filing Candidate 2023 3rd Qtr Campaign Finance Report covering July 23, 2023 - September 30, 2023 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | |
| 10/21/2023 | NovE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for November 7, 2023 Election with Secretary of State | 16-445(A) Procedures Manual | **SATURDAY** |
| 10/21/2023 | PPE-150 | SOS | | Deadline for filing Petitions for Recognition of New Party in PPE | 16-244(A)(2) | **SATURDAY** |
| 10/22/2023 | NovE-16 | SOS | | Begin filing Standing Committee 2023 Pre-General Campaign Finance Report covering October 1, 2023 - October 21, 2023 | 16-927(A)(2)(a) 16-928(B) | **SUNDAY** |
| 10/22/2023 | NovE-16 | ELEC | | Begin filing Candidate 2023 Pre-General Campaign Finance Report covering October 1, 2023 - October 21, 2023 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |
| 10/24/2023 | MayE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for May 21, 2024 Election | 16-205(A) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 10/27/2023 | NovE-11 | REC | | Deadline to accept requests for a Ballot-by-Mail for the November 7, 2023 Election | 16-542(E) | |
| 10/28/2023 | NovE-10 | SOS | | Deadline for filing Standing Committee 2023 Pre-General Campaign Finance Report covering October 1, 2023 - October 21, 2023 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | SATURDAY |
| 10/28/2023 | NovE-10 | ELEC | | Deadline for filing Candidate 2023 Pre-General Campaign Finance Report covering October 1, 2023 - October 21, 2023 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | SATURDAY |
| 10/30/2023 | 90 + 1 Days after Legislature adjourns sine die | ALL | | General effective date of legislation passed during 2023 56th Legislature, First Regular Session (Legislature adjourned on July 31, 2023.) | Const. Art. IV, Pt. 1, § 1(3) 1-243(A) | |
| 10/31/2023 | Oct 31 | SOS | | Deadline for filing 2023 3rd Qtr Lobbyist Expenditure Report covering July 1, 2023 - September 30, 2023 | 41-1232.02(B) 41-1232.03(B) | |
| 11/3/2023 | NovE-4 | ELEC | | Deadline to Vote Early In-Person for the November 7, 2023 Election by 5:00 p.m. | 16-542(E) | |
| 11/3/2023 | Nov 3 | ELEC | | Begin emergency early voting in a manner prescribed by the BOS due to an emergency occurring between 5:00 p.m. on Nov. 3, 2023 and 5:00 p.m. on Nov. 6, 2023 that would prevent the elector from voting at the polls | 16-542(H) | |
| 11/7/2023 | **NovE (1st Tuesday after 1st Monday in November)** | **ALL** | | **November 7, 2023 Election** | **16-204(F)(4)** | |
| 11/10/2023 | PPE-130 | SOS | | Begin accepting Candidate Nomination Papers and Petitions for PPE | 16-242(B) | |
| 11/10/2023 | NovE+3 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. Due to Veteran's Day Holiday, the deadline is the following Monday, November 13, 2023. | 16-579(A)(2) 16-550(A) Procedures Manual | HOLIDAY |
| 11/13/2023 | NovE+6 | BOS | | First day to canvass returns for  November 7, 2023 Election | 16-642(A) | |
| 11/23/2023 | MayE-180 | BOS | | Deadline for jurisdictions to notify BOS of intent to hold May 21, 2024 election | 16-226 (A) | |
| 11/23/2023 | MayE-180 | BOS | | Deadline for jurisdictions to call May 21, 2024 election | 16-226 (A) | |
| 11/27/2023 | NovE+20 | BOS | | Last day to canvass returns for November 7, 2023 Election | 16-642(A) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 11/30/2023 | PE-250 | REC | | Deadline for filing new party petitions with Secretary of State (for statewide recognition) or the county officer in charge of elections (for county recognition) for signature verification | 16-803(A) | |
| 12/1/2023 | Dec 1 | SOS | | Begin filing Biennial Lobbyist Registration Renewal for 2023-2024 | 41-1232.05(A) | |
| 12/1/2023 | Dec 1 | SOS | REC | Deadline to determine political parties for continued representation based on votes cast for Governor or presidential electors at last General Election, or based on October 1 county voter registration report | 16-804(A)-(D) 16-168(G) | |
| 12/10/2023 | MarE - 93 | REC | | Begin accepting ballot-by-mail requests for March 12, 2024 Election (UOCAVA voters and protected voters under 16-153 can request ballots before this date.) | 16-542(A)(B) 16-153 | SUNDAY |
| 12/11/2023 | PPE-100 (next business day due to weekend) | SOS | | Deadline for filing PPE Candidate Nomination Papers and Petitions | 16-242(B) | |
| 12/11/2023 | +7 business days after receipt of new party petitions | SOS | | Deadline for Secretary of State to remove ineligible sheets and signatures from new party petition sheets and transmit random sample to County Recorders for signature verification | 16-803(B), (C) | |
| 12/13/2023 | MarE-90 | ELEC | | Mail Notice of March 12, 2024 Election to Active Early Voters | 16-544(D) | |
| 12/14/2023 | PPE-96 (72 hours after close of candidate filing) | SOS | | Deadline for Secretary of State to issue certification of those candidates qualified for the Presidential Preference Election ballot to the officer in charge of elections within 72 hours of the close of filing | 16-242(F) | |
| 12/18/2023 | PPE-92 | SOS | | Secretary of State to hold public meeting for the purpose of the ballot order drawing for the Presidential Preference Election | 16-245(B) | |
| 12/19/2023 | PPE-91 | ELEC | | Deliver proof of sample ballots to qualified party chair(s) no later than five days following receipt of the candidate certification from the Secretary of State. | 16-245(C) | |
| 12/20/2023 | PPE-90 | ELEC | | Mail Notice of Presidential Preference Election to active early voters | 16-544(D) | |
| 12/27/2023 | +10 business days after receipt of random sample | REC | | Deadline for County Recorders to verify new party petitions petition signatures for Primary Election and provide certified results to Secretary of State | 16-803(E), (F) | |
| 12/31/2023 | Dec 31 | SOS | | Deadline for issuance of updated Elections Procedures Manual, following approval by Governor and Attorney General | 16-452(B) | HOLIDAY |
| 1/1/2024 | Jan 1 | SOS | | Begin filing Standing Committee 2023 4th Qtr Campaign Finance Report covering October 22, 2023 - December 31, 2023 | 16-927(A)(2)(b) 16-928(B) | HOLIDAY |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 1/1/2024 | Jan 1 | ELEC | | Begin filing PAC and Political Party 2023 4th Qtr Campaign Finance Report covering October 1, 2023 - December 31, 2023 | 16-927(A)(1) | **HOLIDAY** |
| 1/1/2024 | Jan 1 | SOS | | Begin filing Candidate 2023 Cumulative Report covering all transactions since last filed through December 31, 2023 (Statewide and Legislative Candidates) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| 1/1/2024 | Jan 1 | ELEC | | Begin filing Candidate 2023 4th Qtr Campaign Finance Report covering October 22, 2023 - December 31, 2023 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| 1/1/2024 | Jan 1 | SOS | | Begin filing Public Officers Annual Financial Disclosure Statement covering CY2023 | 18-444(D) | **HOLIDAY** |
| 1/1/2024 | Jan 1 | SOS | | Begin filing 2023 4th Qtr Lobbyist Expenditure Report covering October 1, 2023 - December 31, 2023 | 41-1232.02(B) 41-1232.03(B) | **HOLIDAY** |
| 1/1/2024 | Jan 1 | SOS | | Begin filing Principal and Public Body 2023 Annual Expenditure Reports covering January 1, 2023 - December 31, 2023 | 41-1232.02(A) 41-1232.03(A) | **HOLIDAY** |
| 1/1/2024 | Jan 1 | SOS | | Begin Filing Nomination Papers, Petitions, & QCs for CCEC Candidates | 16-951 | **HOLIDAY** |
| 1/2/2024 | Jan 2 | SOS | REC | Begin compiling county-provided January 2 Voter Registration Report | 16-168(G)(1)(a) | |
| 1/2/2024 | Jan 2 | REC | | Deadline to transfer voters into newly established precincts and boundaries | 16-411 16-412 | |
| 1/2/2024 | Jan 2 | SOS | ELEC | Calculate petition signature requirements for candidates for the 2024 Primary and General Elections based on the Jan. 2 voter registration numbers | 16-322(B) 16-168(G) 16-193(1) 16-321(F) | |
| 1/2/2024 | 72 hours (business days only) after receipt of certification from County Recorders | SOS | | Deadline for Secretary of State to determine new party petition results of random sample, issue receipt to sponsor committee and issue party recognition (deadline may vary depending on timing of county certification) | 16-803(H), (I) | |
| 1/8/2024 | Jan 8 (second Monday in January) | SOS | | Deadline for filing Biennial Lobbyist Registration Renewal for 2023 - 2024 | 41-1232.05(A) | |
| 1/9/2024 | PE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for August 6, 2024 Primary Election | 16-205(A) | |
| 1/16/2024 | Jan 15 (moved to next business day due to holiday) | SOS | | Deadline for filing Standing Committee 2023 4th Qtr Campaign Finance Report covering October 22, 2023 - December 31, 2023 | 16-927(A)(2)(b) 16-928(B) | **HOLIDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 1/16/2024 | Jan 15 (moved to next business day due to holiday) | SOS | ELEC | Deadline for filing PAC and Political Party 2023 4th Qtr Campaign Finance Report covering October 1, 2023 - December 31, 2023 | 16-927(A)(1) | **HOLIDAY** |
| 1/16/2024 | Jan 15 (moved to next business day due to holiday) | ELEC | | Deadline for Filing Candidate 2023 4th Qtr Campaign Finance Report Covering October 22, 2023 - December 31, 2023 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| 1/16/2024 | Jan 15 (moved to next business day due to holiday) | SOS | | Deadline for Filing Candidate 2023 Cumulative Report covering all transactions since last filed through December 31, 2023 (Statewide and Legislative Candidates) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| 1/27/2024 | MarE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for March 12, 2024 Election | 16-544(F) | **SATURDAY** |
| 1/27/2024 | MarE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before March 12, 2024 Election | 16-543(A) | **SATURDAY** |
| 1/31/2024 | Jan 31 | SOS | ELEC | Deadline for filing Public Officers Annual Financial Disclosure Statement covering CY2023 | 18-444(D) | |
| 1/31/2024 | Jan 31 | SOS | | Deadline for filing 2023 4th Qtr Lobbyist Expenditure Report covering October 1, 2023 - December 31, 2023 | 41-1232.02(B) 41-1232.03(B) | |
| 1/31/2024 | Jan 31 | SOS | | Election System Software Escrow Statement: Election vendors who have voting equipment certified for use in Arizona elections and whose equipment is currently in use or will be used in an upcoming election shall notify the Secretary of State, in writing, by January 31 of each year where the source code is held in escrow | | |
| 2/1/2024 | Feb 1 | SOS | | Send Notices of Failure to File for Public Officers Annual Financial Disclosure Statements covering CY2023 | 38-544 | |
| 2/1/2024 | MarE-40 | ELEC | | Deadline for Write-In Candidates to file Nomination Papers (March Local Elections) | 16-312(B) | |
| 2/3/2024 | PPE-45 | ELEC | | Prepare proof of sample ballots and (1) Submit to each county party chairman, and (2) Mail a copy to each candidate who has properly filed a Nomination Paper. | 16-461(A) | **SATURDAY** |
| 2/3/2024 | PPE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for March 19, 2024 Presidential Preference Election | 16-544(F) | **SATURDAY** |
| 2/3/2024 | PPE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before March 19, 2024 Presidential Preference Election | 16-543(A) | **SATURDAY** |
| 2/8/2024 | PPE-40 | ELEC | | Last day to accept suggestions from county party chairmen on changes to sample ballot due to error or omission | 16-461(B) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 2/8/2024 | PPE-40 | BOS | | Print sample ballots | 16-461(B), (C) | |
| 2/8/2024 | PE-180 | BOS | | Deadline for jurisdictions to notify BOS of intent to hold August 6, 2024 election | 16-226 (A) | |
| 2/8/2024 | PE-180 | BOS | | Deadline for jurisdictions to call August 6, 2024 election | 16-226 (A) | |
| 2/12/2024 | **MarE-29** | **REC** | | **Last day to register to vote for March 12, 2024 Election at 11:59 p.m.** | **16-120(A)** | |
| 2/14/2024 | MarE-27 | ELEC | | Begin early voting for March 12, 2024 Election | 16-542(C) | |
| 2/14/2024 | MarE-27 | REC | | Mail early ballots for March 12, 2024 Election to voters on Active Early Voting List and voters who have requested a one-time ballot-by-mail | 16-544(F) | |
| 2/14/2024 | MarE-27 | ELEC | | Tallying of early ballots for March 12, 2024 Election may begin | 16-550(B) | |
| 2/14/2024 | EV-7 | SOS | BOS | Logic and Accuracy Tests before Early Voting for the Presidential Preference Election Begins for Accessible Voting System Units | 16-449 Procedures manual | |
| 2/18/2024 | MayE - 93 | REC | | Begin accepting ballot-by-mail requests for May 21, 2024 Election (UOCAVA voters and protected voters under 16-153 can request ballots before this date) | 16-542(A)(B) 16-153 | **SUNDAY** |
| 2/18/2024 | PPE-30 | SOS | | Deadline for the Secretary of State to appoint new members to the Vote Count Verification Committee | 16-241(C) 16-602(K)(1) | **SUNDAY** |
| 2/19/2024 | PPE-29 | SOS | REC | Begin Compiling county-provided PPE Voter Registration Report | 16-168(G)(1)(e) | **HOLIDAY** |
| 2/20/2024 | **PPE-29 (next business day due to holiday)** | **REC** | | **Last day to register to vote for March 19, 2024 Presidential Preference Election at 11:59 p.m.** | **16-120(A)** | |
| 2/21/2024 | PPE-27 | ELEC | | Begin Early Voting for March 19, 2024 Presidential Preference Election | 16-542(C) | |
| 2/21/2024 | PPE-27 | REC | | Mail early ballots for March 19, 2024 Presidential Preference Election to voters on Active Early Voting List and voters who have requested a one-time ballot-by-mail | 16-544(F) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 2/21/2024 | PPE-27 | ELEC | | Tallying of early ballots may begin for March 19, 2024 Presidential Preference Election | 16-550(B) | |
| 2/24/2024 | MarE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for March 12, 2024 Election with Secretary of State | 16-445(A) Procedures Manual | SATURDAY |
| 2/25/2024 | MarE-16 | SOS | | Begin filing Standing Committee 2024 March Pre-Election Campaign Finance Report covering January 1, 2024 - February 24, 2024 | 16-927(A)(2)(a) 16-928(B) | SUNDAY |
| 2/25/2024 | MarE-16 | ELEC | | Begin Filing Candidate 2024 March Pre-Election Campaign Finance Report Covering January 1, 2024 - February 24, 2024 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) | SUNDAY |
| 3/1/2024 | MarE-11 | REC | | Deadline to accept requests for a Ballot-by-Mail for the March 12, 2024 Election | 16-542(E) | |
| 3/1/2024 | March 1 | SOS | | Deadline for filing Principal and Public Body 2023 Annual Expenditure Reports covering January 1, 2023 - December 31, 2023 | 41-1232.02(A) 41-1232.03(A) | |
| 3/1/2024 | 30 days after due date | SOS | | Send Notices of Failure to File for Public Officers Annual Financial Disclosure Statements covering CY2023 | 16-937 (38-544) | |
| 3/2/2024 | MarE-10 | SOS | | Deadline for filing Standing Committee 2024 March Pre-Election Campaign Finance Report covering January 1, 2024 - February 24, 2024 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | SATURDAY |
| 3/2/2024 | MarE-10 | ELEC | | Deadline for filing Candidate 2024 March Pre-Election Campaign Finance Report covering January 1, 2024 - February 24, 2024 (Applicable County and local Races) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | SATURDAY |
| 3/2/2024 | PPE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for March 19, 2024 Presidential Preference Election with Secretary of State | 16-445(A) Procedures Manual | SATURDAY |
| 3/8/2024 | MarE-4 | ELEC | | Deadline to Vote Early In-Person for the March 12, 2024 Election by 5:00 p.m. | 16-542(E) | |
| 3/8/2024 | PPE-11 | ELEC | SOS | Last Day to Request Early Ballot for March 19, 2024 Presidential Preference Election | 16-542(E) Procedures Manual | |
| 3/8/2024 | PPE-11 | BOS | | Mail sample ballots | 16-245(D) | |
| 3/9/2024 | PPE-10 | SOS | | Deadline for the Vote Count Verification Committee to meet and consider revision of the designated margins to be used in reviewing the hand counting of votes, which will be simultaneously posted to the Secretary of State's web site | 16-602(K)(4) | SATURDAY |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 3/9/2024 | PE-150 | SOS | | Beginning of filing period for Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking partisan nomination | 16-311(A) 16-314(A) 38-543 | SATURDAY |
| 3/9/2024 | PE-150 | SOS | ELEC | Beginning of filing period for Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking "Nomination Other than by Primary" (Independent Candidates) | 16-341(A), (C) 38-543 | SATURDAY |
| 3/9/2024 | PE-150 | ELEC | | Beginning of filing period for Non-Partisan candidate Nomination Petitions and Papers for Primary Election (Applicable County and Local Jurisdictions) | 16-311(B) 16-204 | SATURDAY |
| 3/9/2024 | PE-150 | SOS | ELEC | Beginning of filing period for Write-in Candidate Nomination Papers for Primary Election | 16-312(B) | SATURDAY |
| 3/11/2024 | PPE-8 (2nd Monday Prior to PPE) | BOS | | Complete tabulation contingency plans | Procedures Manual | |
| 3/12/2024 | **MarE (2nd Tuesday in March)** | **ALL** | | **March 12, 2024 Election** | **16-204(F)(1)** | |
| 3/12/2024 | PPE-7 | ELEC | | Deadline for political parties to provide names of persons intending to participate in PPE hand count by 5:00 p.m. | 16-602(B)(7) | |
| 3/13/2024 | PPE-6 | ELEC | | Deadline for officer in charge to notify political parties of shortage in number of persons intending to participate in PPE hand count by 9:00 a.m. | 16-602(B)(7) | |
| 3/14/2024 | PPE-5 | ELEC | | Deadline for political parties to provide sufficient number of additional persons to cover hand count board shortages by 5:00 p.m. | 16-602(B)(7) | |
| 3/15/2024 | MarE+3 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. For counties with a 4-day work week, the deadline falls on 3/18/24. | 16-579(A)(2) 16-550(A) Procedures Manual | |
| 3/15/2024 | PPE-4 | ELEC | | Deadline to Vote Early In-Person for the March 19, 2024 Presidential Preference Election by 5:00 p.m. | 16-246(C) 16-542(E) | |
| 3/18/2024 | MarE+6 | BOS | | First day to canvass returns for March 12, 2024 Election | 16-642(A) 16-645(A) | |
| 3/19/2024 | **PPE (1st Tuesday after March 15th of Presidential Election Year)** | **ALL** | | **March 19, 2024 Presidential Preference Election** | **16-241(A)** | |
| 3/20/2024 | PPE+1 | ELEC | | Hand Count begins within 24 hours of the closing of the polls | 16-602(I) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 3/20/2024 | PPE+1 | ELEC | | Select by lot 2% of polling places pursuant to 16-248 and perform hand count on those ballots | 16-602(B)(3) | |
| 3/26/2024 | PPE+5 Business Days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. For counties that have a 4-day work week, the deadline will be the next business day: 3/27/2024. | 16-579(A)(2) 16-550(A) Procedures Manual | |
| 3/29/2024 | PPE+10 Days | BOS | | Recommended deadline date for BOS to canvass March 19, 2024 Presidential Election | Procedures Manual | |
| 4/1/2024 | MarE+20 | BOS | ELEC | Last day to canvass returns for March 12, 2024 Election | 16-642(A) 16-645(A) | |
| 4/1/2024 | Apr 1 | SOS | REC | Begin compiling county-provided April 1, 2024 Voter Registration Report | 16-168(G)(1)(b) | |
| 4/1/2024 | Apr 1 | SOS | | Begin filing Standing Committee 2024 1st Qtr Campaign Finance Report covering February 25, 2024 - March 31, 2024 | 16-927(A)(2)(b) 16-928(B) | |
| 4/1/2024 | Apr 1 | ELEC | | Begin filing PAC and Political Party 2024 1st Qtr Campaign Finance Report covering January 1, 2024- March 31, 2024 | 16-927(A)(1) | |
| 4/1/2024 | Apr 1 | ELEC | | Begin filing Candidate 2024 1st Qtr Campaign Finance Report covering January 1, 2024 - March 31, 2024 (Statewide and Legislative Candidates) | 16-927(A)(1) 16-927(B) | |
| 4/1/2024 | Apr 1 | ELEC | | Begin filing Candidate 2024 1st Qtr Campaign Finance Report covering February 25, 2024 - March 31, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | |
| 4/1/2024 | Apr 1 | SOS | | Begin filing 2024 1st Qtr Lobbyist Expenditure Report covering January 1, 2024 - March 31, 2024 | 41-1232.02(B) 41-1232.03(B) | |
| 4/2/2024 | PPE+14 | BOS | ELEC | Deadline to Canvass Returns for March 19, 2024 Presidential Preference Election | 16-241(C) 16-642(A) 16-645(A) | |
| 4/6/2024 | MayE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for May 21, 2024 Election | 16-544(F) | **SATURDAY** |
| 4/6/2024 | MayE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before May 21, 2024 Election | 16-543(A) | **SATURDAY** |
| 4/8/2024 | PE-120 | SOS | | Deadline for Secretary of State to send notice to Board of Supervisors designating state and federal offices for which candidates are to be nominated at the August 6, 2024 Primary Election | 16-202 | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|--------------------------|
| 4/8/2024 | PE-120 | SOS | | Deadline for accepting Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking partisan nomination | 16-311(A) 16-314(A) 38-543 | |
| 4/8/2024 | PE-120 | SOS | | Deadline for accepting Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking "Nomination Other than by Primary" (Independent Candidates) | 16-341(A), (C) 38-543 | |
| 4/8/2024 | PE-120 | ELEC | | Deadline for accepting Nonpartisan Candidate Nomination Petitions and Papers for Primary Election (Applicable County and Local Jurisdictions) | 16-311(B) 16-204 | |
| 4/8/2024 | **PPE+3rd Monday** | **SOS** | | **Official Statewide Canvass of the March 19, 2024 Presidential Preference Election** | **16-241(C)        16-645(B)** | |
| 4/8/2024 | **PPE+3rd Monday** | **SOS** | | **Certify election results to party chairs** | **16-241(C) 16-249(A) 16-645(B)** | |
| 4/9/2024 | GE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for November 5, 2024 General Election | 16-205(A) | |
| 4/15/2024 | Apr 15 | SOS | | Deadline for filing Standing Committee 2024 1st Qtr Campaign Finance Report covering February 25, 2024 - March 31, 2024 | 16-927(A)(2)(b) 16-928(B) | |
| 4/15/2024 | Apr 15 | SOS | ELEC | Deadline for filing PAC and Political Party 2024 1st Qtr Campaign Finance Report covering January 1, 2024 - March 31, 2024 | 16-927(A)(1) | |
| 4/15/2024 | Apr 15 | SOS | | Deadline for Filing Candidate 2024 1st Qtr Campaign Finance Report Covering January 1, 2024 - March 31, 2024 (Statewide and Legislative Candidates) | 16-927(A)(1) 16-927(B) | |
| 4/15/2024 | Apr 15 | ELEC | | Deadline for filing Candidate 2024 1st Qtr Campaign Finance Report covering February 25, 2024 - March 31, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | |
| 4/22/2024 | Apr 22 (10 business days after close of candidate filing) | SOS | ELEC | Deadline for filing challenges to candidate Nomination Petitions | 16-351(A) | |
| 4/22/2024 | **MayE-29** | **REC** | | **Last day to register to vote for May 21, 2024 Election at 11:59 p.m.** | **16-120(A)** | |
| 4/23/2024 | PE-105 | BOS | | Earliest day Board of Supervisors may cancel election for certain offices held under Title 15, Title 48, or 16-822 based on number of candidates who have filed Nomination Paper and appoint those candidates to the office | 16-410(A) | |
| 4/24/2024 | MayE-27 | REC | | Begin early voting for May 21, 2024 Election | 16-542(C) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 4/24/2024 | MayE-27 | REC | | Mail early ballots for May 21, 2024 Election to voters on Active Early Voting List and voters who have requested a one-time ballot-by-mail | 16-542(C) 16-544(F) | |
| 4/24/2024 | MarE-27 | ELEC | | Tallying of early ballots for March 21, 2024 Election may begin | 16-550(B) | |
| 4/28/2024 | PE-100** | ELEC | | Recommended deadline to order ballot cards/stock for August 6, 2024 Primary Election | 16-508 | **SUNDAY** |
| 4/30/2024 | Apr 30 | SOS | | Deadline for filing 2024 1st Qtr Lobbyist Expenditure Report covering January 1, 2024 - March 31, 2024 | 41-1232.02(B) 41-1232.03(B) | |
| 5/4/2024 | MayE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for May 21, 2024 Election with Secretary of State | 16-445(A) Procedures Manual | **SATURDAY** |
| 5/5/2024 | MayE-16 | SOS | | Begin filing Standing Committee 2024 May Pre-Election Campaign Finance Report covering April 1, 2024 - May 4, 2024 | 16-927(A)(2)(a) 16-928(B) | **SUNDAY** |
| 5/5/2024 | MayE-16 | ELEC | | Begin Filing Candidate 2024 May Pre-Election Campaign Finance Report Covering April 1, 2024 - April 30, 2024 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |
| 5/5/2024 | PE-93 | REC | | Begin accepting ballot-by-mail requests for August 6, 2024 Primary Election and ballot-by-mail requests for both Primary and General Elections (UOCAVA voters and protected voters under 16-153 can request ballots before this date) | 16-542(A)(B) | **SUNDAY** |
| 5/8/2024 | PE-90 | ELEC | | Mail Notice of August 6, 2024 Primary Election to active early voters | 16-544(D) | |
| 5/8/2024 | PE-90 | BOS | | Accept lists of Election Board nominees submitted by political party chairmen for August 6, 2024 Primary Election | 16-531(A) | |
| 5/9/2024 | GE-180 | BOS | | Deadline for jurisdictions to notify BOS of intent to hold November 5, 2024 election | | |
| 5/10/2024 | MayE-11 | REC | | Deadline to accept requests for a ballot-by-mail for the May 21, 2024 election | 16-542(E) | |
| 5/11/2024 | MayE-10 | SOS | | Deadline for filing Standing Committee 2024 May Pre-Election Campaign Finance Report covering April 1, 2024 - April 30, 2024 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | **SATURDAY** |
| 5/11/2024 | MayE-10 | ELEC | | Deadline for filing Candidate 2024 May Pre-Election Campaign Finance Report Covering April 1, 2024 - April 30, 2024 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | **SATURDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 5/17/2024 | MayE-4 | ELEC | | Deadline to Vote Early In-Person for the May 21, 2024 Election by 5:00 p.m. | 16-542(E) | |
| 5/21/2024 | **MayE (3rd Tuesday in May)** | **ALL** | | **May 21, 2024 Election** | **16-204(F)(2)** | |
| 5/23/2024 | PE-75** | BOS | | Recommended deadline to schedule instruction classes for Precinct Election Boards for August 6, 2024 Primary Election | 16-532 | |
| 5/24/2024 | MayE+3 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures for May 21, 2024 Election. For counties with a 4-day work week, the deadline falls on 5/27/24. | 16-579(A)(2) 16-550(A) Procedures Manual | |
| 5/27/2024 | MayE+6 | BOS | | First day to canvass returns for May 21, 2024 Election | 16-642(A) 16-645(A) | |
| 6/4/2024 | PE-63 (9 weeks) | CCEC | | Begin CCEC Primary Election Period (9 week period ending on the day of the Primary Election) | 16-961(B)(4) | |
| 6/4/2024 | PE-63 (9 weeks) | CCEC | | CCEC payment to qualified participating candidates | 16-951(A) | |
| 6/7/2024 | PE-60 | REC | | Accept lists of nominees for Special Election Boards from the county party chairmen and begin appointing Special Election Boards for August 6, 2024 Primary Election | 16-549(A) | |
| 6/8/2024 | GE-150 = Jun 8 (Saturday) | ELEC | | Begin accepting nonpartisan candidate Nomination Petitions and Papers for General Election (applicable county and local jurisdictions) | 16-311(B) 16-204 | **SATURDAY** |
| 6/8/2024 | GE-150 | SOS | ELEC | Beginning of Filing Period for Write-in Candidate Nomination Papers for General Election | 16-312(B) | **SATURDAY** |
| 6/10/2024 | MayE+20 | BOS | | Last day to canvass returns for May 21, 2024 Election | 16-642(A) 16-645(A) | |
| 6/17/2024 | PE-50** | BOS | | Recommended deadline to prepare materials and supplies for instruction classes for Precinct Election Boards | 16-532 | |
| 6/17/2024 | PE-50** | BOS | | Recommended deadline to print instructions and check list for Election Board and Inspectors | 16-532 | |
| 6/22/2024 | PE-45 | BOS | | Instruction classes for Precinct Election Boards may begin | 16-532(A) | **SATURDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 6/22/2024 | PE-45 | ELEC | | Prepare proof of sample ballots and: (1) Submit to each county party chairman, and (2) Mail a copy to each candidate who has properly filed a Nomination Paper | 16-461(A) | SATURDAY |
| 6/22/2024 | PE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for August 6, 2024 Primary Election | 16-544(F) | SATURDAY |
| 6/22/2024 | PE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before August 6, 2024 Primary Election. | 16-543(A) | SATURDAY |
| 6/23/2024 | PE-44** | ELEC | | Recommended deadline to order ballot cards/stock for August 6, 2024 Primary Election | 16-508 | SUNDAY |
| 6/27/2024 | PE-40 | ELEC | | Last day to accept suggestions from county party chairmen on changes to sample ballot due to error or omission | 16-461(B) | |
| 6/27/2024 | PE-40 | BOS | | Print sample ballots | 16-461(B) 16-461(C) | |
| 6/27/2024 | PE-40 | SOS | ELEC | Deadline for Write-in Candidate Nomination Papers for August 6, 2024 Primary Election at 5:00 p.m. | 16-312(B) | |
| 6/28/2024 | PE-39** | SOS | ELEC | Deliver notice of Write-in Candidates who have filed Nomination Papers | 16-312(E) Procedures Manual | |
| 6/28/2024 | PE-39** | BOS | | Include list of eligible Write-in Candidates in supplies for Precinct Inspectors | 16-312(C) 16-312(E) | |
| 7/1/2024 | Jul 1 | SOS | | Begin filing Standing Committee 2024 2nd Qtr Campaign Finance Report covering May 1, 2024 - June 30, 2024 | 16-927(A)(2)(b) 16-928(B) | |
| 7/1/2024 | Jul 1 | ELEC | | Begin filing PAC and Political Party 2024 2nd Qtr Campaign Finance Report covering April 1, 2024 - June 30, 2024 | 16-927(A)(1) | |
| 7/1/2024 | Jul 1 | ELEC | | Begin filing Candidate 2024 2nd Qtr Campaign Finance Report covering April 1, 2024 - June 30, 2024 (Statewide and Legislative Candidates) | 16-927(A)(1) 16-927(B) | |
| 7/1/2024 | Jul 1 | ELEC | | Begin filing Candidate 2024 2nd Qtr Campaign Finance Report covering May 1, 2024 - June 30, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | |
| 7/1/2024 | Jul 1 | SOS | | Begin filing 2024 2nd Qtr Lobbyist Expenditure Report covering April 1, 2024 - June 30, 2024 | 41-1232.02(B) 41-1232.03(B) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| **7/3/2024** | GE - 4 months and 1 day | SOS | | Deadline for filing statewide initiative petitions with the Secretary of State | Const. Art. IV, Pt. 1 § 1(4) | |
| **7/3/2024** | (EV-7) | SOS | BOS | Begin Logic and Accuracy Tests before early voting for the Primary Election for accessible voting system units | 16-449 Procedures Manual | |
| **7/4/2024** | PE-33 | BOS | | Print early ballots and deliver to County Recorder | 16-503 16-545(B)(1) | **HOLIDAY** |
| **7/4/2024** | PE-33** | REC | | Print instructions and envelopes needed for early voting for the August 6, 2024 Primary Election | 16-547(C) | **HOLIDAY** |
| **7/4/2024** | PE-33** | REC | | Recommended deadline to appoint Special Election Boards | 16-549(A) | **HOLIDAY** |
| **7/5/2024** | PE-32** | BOS | | Recommended date to begin accepting political party election observer lists submitted by county party chairmen for August 6, 2024 Primary Election | 16-590 | |
| **7/5/2024** | PE-32** | BOS | | Designate locations for Central Counting Place Boards, Precinct Boards, Early Boards, Data Processing Boards and Receiving Site Boards | Procedures Manual | |
| **7/8/2024** | **PE-29** | **REC** | | **Last day to register to vote for August 6, 2024 Primary Election at 11:59 p.m.** | **16-120(A)** | |
| **7/8/2024** | PE-29 | SOS | REC | Begin compiling county-provided Primary Election Voter Registration Report | 16-168(G)(1)(c) | |
| **7/8/2024** | PE-29 | BOS | | Recommended deadline for designating locations for Receiving Sites, Central Counting Place, Computer Center and Early Processing Center | 16-551 | |
| **7/8/2024** | GE-120 | ELEC | | Deadline for accepting Nonpartisan Candidate Nomination Petitions and Papers for General Election (Applicable County and Local Jurisdictions) | 16-311(B) 16-204 | |
| **7/10/2024** | PE-27 | SOS | | Deadline to submit arguments for or against statewide Ballot Measures | 19-124(A)(B) | |
| **7/10/2024** | PE-27 | REC | | Begin early voting for August 6, 2024 Primary Election | 16-542(C) | |
| **7/10/2024** | PE-27 | REC | | Mail early ballots for August 6, 2024 Primary Election to voters on Active Early Voting List and voters who have requested a one-time ballot-by-mail | 16-544(F) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| **7/10/2024** | PE-27 | ELEC | | Tallying of early ballots for August 6, 2024 Primary Election may begin | 16-550(B) | |
| **7/15/2024** | Jul 15 | SOS | | Deadline for filing Standing Committee 2024 2nd Qtr Campaign Finance Report covering May 1, 2024 - June 30, 2024 | 16-927(A)(2)(b) 16-928(B) | |
| **7/15/2024** | Jul 15 | SOS | ELEC | Deadline for filing PAC and Political Party 2024 2nd Qtr Campaign Finance Report covering April 1, 2024 - June 30, 2024 | 16-927(A)(1) | |
| **7/15/2024** | Jul 15 | SOS | | Deadline for filing Candidate 2024 2nd Qtr Campaign Finance Report covering April 1, 2024 - June 30, 2024 (Statewide and Legislative Candidates) | 16-927(A)(1) 16-927(B) | |
| **7/15/2024** | Jul 15 | ELEC | | Deadline for filing Candidate 2024 2nd Qtr Campaign Finance Report covering May 1, 2024 - June 30, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | |
| **7/16/2024** | July 16 (8 days after close of registration) | REC | | Deliver complete copies of precinct registers to county and state party chairmen | 16-168(C) | |
| **7/17/2024** | PE-20 | BOS | | Designate polling places including emergency voting and dropbox locations (except for special district and mail ballot elections) | 16-411(B) | |
| **7/17/2024** | PE-20 | BOS | | Deadline to appoint all Election Boards by BOS | 16-531 16-535 16-551 | |
| **7/17/2024** | 90 + 1 Days after Legislature adjourns sine die | ALL | | General effective date of legislation passed during 2024 56th Legislature, Second Regular Session (Based on anticipated adjournment of April 17, 2024; this date will change if Legislature adjourns on a different date.) | Const. Art. IV, Pt. 1, § 1(3) 1-243(A) | |
| **7/19/2024** | PE-18** | BOS | | Recommended deadline to outline polling place support plan for General Election Day | Procedures Manual | |
| **7/20/2024** | PE-17 | BOS | SOS | File Computer Program and Voting Equipment Certification for August 6, 2024 Primary Election with Secretary of State | 16-445(A) Procedures Manual | **SATURDAY** |
| **7/20/2024** | PE-17 | SOS | | SOS performs Logic and Accuracy tests within 17 days of August 6, 2024 Primary Election - Notify public 48 hours in advance | 16-449(A) Procedures Manual | **SATURDAY** |
| **7/21/2024** | PE-16 | SOS | | Begin filing Standing Committee 2024 Pre-Primary Campaign Finance Report covering July 1, 2024 - July 20, 2024 | 16-927(A)(2)(a) 16-928(B) | **SUNDAY** |
| **7/21/2024** | PE-16 | SOS | ELEC | Begin filing PAC and Political Party 2024 Pre-Primary Campaign Finance Report covering July 1, 2024 - July 20, 2024 | 16-927(A)(2)(a) | **SUNDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 7/21/2024 | PE-16 | SOS | | Begin filing Candidate 2024 Pre-Primary Campaign Finance Report covering July 1, 2024 - July 20, 2024 (Statewide and Legislative Candidates) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |
| 7/21/2024 | PE-16 | ELEC | | Begin filing Candidate 2024 Pre-Primary Campaign Finance Report covering July 1, 2024 - July 20, 2024 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |
| 7/22/2024 | 10 business days after close of candidate filing | ELEC | | Deadline for filing challenges to Candidate Nonpartisan Nomination Petitions for the General Election | 16-351(A) | |
| 7/23/2024 | GE-105 | BOS | | Earliest day Board of Supervisors may cancel election for certain offices held under Title 15, Title 48, or 16-822 based on number of candidates who have filed Nomination Paper and appoint those candidates to the office | 16-410(A) | |
| 7/23/2024 | PE-14** | BOS | | Mail notice to county party chairmen as to time and place when voting devices can be inspected | 16-447(B) | |
| 7/26/2024 | PE-11 | REC | | Deadline for accepting requests for assistance by Special Election Board due to "continuing" illness at 5:00 p.m. | 16-549(C) | |
| 7/26/2024 | PE-11 | REC | | Deadline for accepting requests for a ballot-by-mail for August 6, 2024 Primary Election | 16-542(E) | |
| 7/26/2024 | PE-11 | BOS | | Mail sample ballots | 16-461(D) | |
| 7/26/2024 | PE-11 (after 5:00 p.m. on 2nd Friday prior to PE) | REC | | Begin accepting requests for assistance by Special Election Board due to "unanticipated" illness or disability | 16-549(D) | |
| 7/27/2024 | PE-10 | SOS | | Deadline for the Vote Count Verification Committee to meet and consider revision of the designated margins to be used in the hand count audit, which will be simultaneously posted to the Secretary of State's web site. | 16-602(K)(4) | **SATURDAY** |
| 7/27/2024 | PE-10 | REC | | Prepare official precinct registers | 16-168(A) | **SATURDAY** |
| 7/27/2024 | PE-10** | REC | | Provide inactive voter list to each precinct on or before Election Day | 16-583(A) | **SATURDAY** |
| 7/27/2024 | PE-10 | SOS | | Deadline for filing Standing Committee 2024 Pre-Primary Campaign Finance Report covering July 1, 2024 - July 20, 2024 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | **SATURDAY** |
| 7/27/2024 | PE-10 | SOS | ELEC | Deadline for Filing PAC and Political Party 2024 Pre-Primary Campaign Finance Report Covering July 1, 2024 - July 20, 2024 | 16-927(A)(2)(a) 1-243(A) 1-303 | **SATURDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 7/27/2024 | PE-10 | SOS | | Deadline for filing Candidate 2024 Pre-Primary Campaign Finance Report covering July 1, 2024 - July 20, 2024 (Statewide and Legislative Candidates) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | SATURDAY |
| 7/27/2024 | PE-10 | ELEC | | Deadline for filing Candidate 2024 Pre-Primary Campaign Finance Report covering July 1, 2024 - July 20, 2024 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | SATURDAY |
| 7/28/2024 | GE-100 | | | Beginning of Filing Period for Independent Presidential Candidate Nomination Papers for General Election. | 16-341(G) | SUNDAY |
| 7/29/2024 | PE-8 (2nd Monday Prior to PE) | BOS | ELEC | Complete tabulation contingency plans | Procedures Manual | |
| 7/30/2024 | PE-7** | BOS | | Recommended deadline to complete ballot and supply dispersal plan | 16-509 | |
| 7/30/2024 | PE-7 | ELEC | | Deadline for political parties to provide names of persons intending to participate in hand count by 5:00 p.m. | 16-602(B)(7) | |
| 7/30/2024 | PE-7 | CCEC | SOS | Deadline for filing Application for Certification form with the Secretary of State as a CCEC participating candidate | 16-947(A) 16-961(B)(3) | |
| 7/30/2024 | PE-7 | CCEC | SOS | End of CCEC Qualifying Period for 2022 Election, covers August 1, 2023 - July 30, 2024 | 16-961(B)(3) | |
| 7/31/2024 | PE-6 (Wednesday prior to PE) | ELEC | | Deadline for officer in charge of elections to notify political parties of shortage in number of persons intending to participate in hand count by 9:00 a.m. | 16-602(B)(7) | |
| 7/31/2024 | Jul 31 | SOS | | Deadline for filing 2024 2nd Qtr Lobbyist Expenditure Report covering April 1, 2024 - June 30, 2024 | 41-1232.02(B) 41-1232.03(B) | |
| 8/1/2024 | Filing date+ 20 business days (Date may vary for early filings) | SOS | | Deadline for Secretary of State to remove ineligible initiative petition sheets and signatures and transmit random sample to County Recorders | 19-121.01(A) 19-121.01(B) 19-121.01(D) | |
| 8/1/2024 | PE-5 (Thursday prior to PE) | ELEC | | Deadline for political parties to provide sufficient number of additional persons to cover hand count board shortages by 5:00 p.m. | 16-602(B)(7) | |
| 8/2/2024 | PE-4 (Friday prior to PE) | REC | | Deadline for "overseas" voter as defined in UOCAVA who was recently discharged or separated from employment to register to vote for the Primary Election at 5:00 p.m. | 16-103(D) | |
| 8/2/2024 | PE-4 | ELEC | | Deadline to Vote Early In-Person for the August 6, 2024 Primary Election by 5:00 p.m. | 16-542(E) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 8/2/2024 | Aug 2 | ELEC | | Begin emergency early voting in a manner prescribed by the BOS; available to electors who experience an emergency between 5:00 p.m. on August 2, 2024 and 5:00 p.m. on Aug. 5, 2024 that would prevent them from voting at the polls | 16-542(H) | |
| 8/4/2024 | PE-2 | BOS | | If BOS fails to designate polling places, the Justice of the Peace may designate polling places | 16-411(C) | **SUNDAY** |
| 8/4/2024 | PE-2 | BOS | | Deliver ballots to Inspector | 16-509 | **SUNDAY** |
| 8/4/2024 | GE-93 | REC | | Begin accepting requests for early ballots for the November 5, 2024 General Election (UOCAVA voters and protected voters can request ballots before this date) | 16-542(A)(B) 16-153 | **SUNDAY** |
| 8/4/2024 | GE-93** | REC | | Begin accepting requests for assistance by Special Election Board due to "continuing" illness | 16-549 | **SUNDAY** |
| 8/5/2024 | PE-1** | BOS | | Recommended deadline to complete instruction classes for Precinct Boards, Receiving and Central Counting Place Boards and Data Processing Boards | 16-532 | |
| 8/5/2024 | PE-1** | BOS | | Recommended deadline to deliver polling place supplies | 16-404 16-405 16-447 16-511 | |
| 8/5/2024 | PE-1 | REC | | Deadline for Accepting Requests for Assistance by Special Election Board due to "unanticipated" Illness or Disability | 16-549(D) | |
| 8/5/2024 | PE-1 | REC | | Deliver list of all electors who were issued early ballots to Precinct Inspectors | 16-542(G) | |
| 8/5/2024 | PE-1** | BOS | | Recommended deadline to deliver list of qualified write-in candidates to Inspector to be posted in polling place on Election Day | 16-312(E) | |
| **8/6/2024** | **PE** | **ALL** | | **August 6, 2024 Primary Election** | **16-201 16-204(E)(1) 16-204(F) 16-206(A)** | |
| 8/6/2024 | PE | REC | | Continue delivery of early ballots to Early Boards for processing until 7:00 p.m. | 16-551(C) | |
| 8/6/2024 | PE | REC | | Deadline for uniformed and overseas citizens residing outside of Arizona to register to vote for the Primary Election at 7:00 p.m. | 16-103(C) | |
| 8/6/2024 | PE | CCEC | | End of CCEC Primary Election Period | 16-961(B)(4) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 8/7/2024 | PE+1 | ELEC | | Hand count begins within 24 hours of the closing of the polls | 16-602(I) Procedures Manual | |
| 8/7/2024 | PE+1 | ELEC | | Select by lot 2% of precincts/vote centers and perform hand count on those ballots; randomly select from sequestered early ballot batches a number equal to 1% of early ballots cast or 5,000 early ballots (whichever is less) for manual audit | 16-602(B)(1) 16-602(F) Procedures Manual | |
| 8/7/2024 | PE+1 | ELEC | | Select contested races to be hand counted | 16-602(B)(2) 16-602(C) | |
| 8/7/2024 | PE+1 | CCEC | | Begin CCEC General Election Period | 16-961(B)(5) | |
| 8/7/2024 | PE+1 | CCEC | | CCEC payment to qualified participating candidates | 16-951(C) | |
| 8/7/2024 | PE+1 | CCEC | | CCEC candidates to return monies above sufficient amount to pay unpaid bills during Primary Election Period | 16-953(A) | |
| 8/7/2024 | GE-90 | BOS | | Accept lists submitted by party chairmen of Election Board nominees for November 5, 2024 General Election | 16-531(A) | |
| 8/7/2024 | GE-90 | SOS | BOS | Begin accepting retention paperwork for judicial officers of Supreme and Appellate courts (SOS) and Superior Court (CLK) | Const. Art. VI, § 38(A) | |
| 8/12/2024 | PE+1st Monday | BOS | | Deadline to hear early ballot challenges (by 5:00 p.m.) | 16-552(E) | |
| 8/12/2024 | PE+6 | BOS | | First day to canvass returns for August 6, 2024 Primary Election, and issue Letters of Nomination and Certificates of Election | 16-642(A) 16-645(A) | |
| 8/13/2024 | PE+5 Business Days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. For counties that have a 4-day work week, the deadline will be the next business day: 8/14/2024. | 16-579(A)(2) 16-550(A) Procedures Manual | |
| 8/13/2024 | PE+5 business days | REC | | Deadline to process provisional ballots from the August 6, 2024 Primary Election | 16-135(D) 16-584(E) | |
| 8/13/2024 | MarE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for March 11, 2025 Election | 16-205 | |
| 8/16/2024 | PE+10 | SOS | | Deadline for party chairs to file nomination papers for presidential electors for November 5, 2024 general election | 16-344(A) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 8/17/2024 | GE-80 | SOS | | Deadline for Independent Presidential Candidate Nomination Papers for General Election at 5:00 p.m. | 16-341(G) | **SATURDAY** |
| 8/20/2024 | PE+14 | BOS | | Last day to canvass returns for August 6, 2024 Primary Election, and issue Letters of Nomination and Certificates of Election  (NOTE: 16-642(A) allows governing body to canvass up to 20 days following an election. However, 16-645(B) requires BOS to deliver canvass to SOS within 14 days after Primary Election) | 16-642(A) 16-645(A) 16-645(B) | |
| 8/20/2024 | PE+14 | BOS | | Deliver Canvass to Secretary of State | 16-645(B) | |
| 8/22/2024 | Receipt of Random Sample +15 Business Days (Date may vary for early filings) | REC | | Deadline for County Recorders to verify initiative petition signatures and provide certified results to the Secretary of State | 19-121.02 | |
| 8/22/2024 | GE-75** | BOS | | Recommended deadline to schedule instruction classes for Precinct Election Boards for November 5, 2024 General Election | 16-532 | |
| 8/25/2024 | AugE+5 days after canvass | | | Deadline to file a state election contest | 16-673(A) | **SUNDAY** |
| 8/26/2024 | **PE+ 3rd Monday** | **SOS** | | **OFFICIAL CANVASS OF THE AUGUST 6, 2024 PRIMARY ELECTION: Canvass returns for all Federal, Statewide, and Legislative Offices** | **16-645(B)** | |
| 8/26/2024 | PE+ 3rd Monday | SOS | | Issue Letters of Nomination to all prevailing Federal, Statewide, and Legislative Candidates who filed Nomination Papers with the Secretary of State | 16-645(B) | |
| 8/27/2024 | GE-70 | CCEC | SOS | Deadline for participating candidate to file Application to Receive Funds and Qualifying Contributions Report with original qualifying slips to the Secretary of State | 16-950(B) | |
| 8/27/2024 | 72 hours (business days only) after receipt of certification from County Recorders (Date may vary for early filings) | SOS | | Deadline for Secretary of State to determine initiative petition results of random sample, issue receipt to sponsor committee, and notify Governor | 19-121.04 | |
| 9/5/2024 | PE+30 | CCEC | | CCEC candidates shall pay uncontested / unpaid bills from Primary Election | 16-953(C) | |
| 9/6/2024 | GE-60 | REC | | Accept list of nominees for Special Election Boards from the county party chairmen and begin appointing Special Election Boards for November 5, 2024 General Election | 16-549(A) | |
| 9/6/2024 | GE-60 | SOS | BOS | Deadline to accept retention paperwork for judicial officers of Supreme and Appellate courts (SOS) and Superior Court (CLK) | Const. Art. VI § 38(A) | |
| 9/16/2024 | GE-50** | BOS | | Recommended deadline to prepare materials and supplies for instruction classes for Precinct Election Boards | 16-532 | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 9/16/2024 | GE-50** | BOS | | Recommended deadline to print instructions and check list for Election Board and Inspectors | 16-532 | |
| 9/21/2024 | GE-45 | BOS | | Prepare proof of sample ballots and submit to each county party chairman; Mail a copy to each candidate whose name did not appear on the Primary Election ballot. | 16-461(A) | SATURDAY |
| 9/21/2024 | GE-45 | BOS | | Begin instruction classes for Precinct Election Boards | 16-532 | SATURDAY |
| 9/21/2024 | GE-45 | REC | | Deadline for active early voters to notify county that an early ballot not be sent for November 5, 2024 General Election | 16-544(F) | SATURDAY |
| 9/21/2024 | GE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before November 5, 2024 General Election | 16-543(A) | SATURDAY |
| 9/23/2024 | GE-43** | SOS | | Recommended date to mail or e-mail a Publicity Pamphlet to every household that contains a registered voter | 19-123(B) 19-123(C) | |
| 9/26/2024 | GE-40 | BOS | | Last day to accept suggestions from county party chairmen on changes to sample ballot due to error or omission | 16-461(B) | |
| 9/26/2024 | GE-40 | SOS | ELEC | Deadline for Write-in Candidate Nomination Papers for General Election at 5:00 p.m. | 16-312(B) | |
| 9/27/2024 | GE-39** | SOS | ELEC | Recommended date to deliver notice to counties of Write-in Candidates filing Nomination Papers with Secretary of State | 16-312(E) | |
| 9/27/2024 | GE-39** | BOS | | Include list of eligible Write-in Candidates in supplies for Precinct Inspectors | 16-312(E) | |
| 10/1/2024 | Oct 1 | SOS | | Begin filing Standing Committee 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 | 16-927(A)(2)(b) 16-928(B) | |
| 10/1/2024 | Oct 1 | SOS | ELEC | Begin filing PAC and Political Party 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 | 16-927(A)(2)(b) | |
| 10/1/2024 | Oct 1 | SOS | | Begin filing Candidate 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 (Statewide and Legislative Candidates) | 16-927(A)(2)(b) 16-927(B) | |
| 10/1/2024 | Oct 1 | ELEC | | Begin filing Candidate 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| **10/1/2024** | Oct 1 | SOS | | Begin filing 2024 3rd Qtr Lobbyist Expenditure Report covering July 1, 2024 - September 30, 2024 | 41-1232.02(B) 41-1232.03(B) | |
| **10/2/2024** | (EV-7) | SOS | BOS | Logic and Accuracy Tests begin for accessible voting system units before early voting for General Election | 16-449 Procedures Manual | |
| **10/3/2024** | GE-33 | BOS | | Print early ballots and deliver to County Recorders | 16-503 16-545 | |
| **10/6/2024** | GE-30** | BOS | | Recommended date to begin accepting political party election observer lists submitted by county party chairmen for November 5, 2024 General Election | 16-590(A) | **SUNDAY** |
| **10/6/2024** | GE-30 | | | Deadline for Issuance of Proclamation of General Election by Governor | 16-214 | **SUNDAY** |
| **10/7/2024** | **GE-29** | **REC** | | **Last day to register to vote for November 5, 2024 General Election at 11:59 p.m.** | **16-120(A)** | |
| **10/7/2024** | GE-29 | SOS | REC | Begin compiling county-provided General Election Voter Registration Report | 16-168(G)(1)(d) | |
| **10/9/2024** | GE-27 | REC | | Begin early voting for November 5, 2024 General Election | 16-542(C) | |
| **10/9/2024** | GE-27 | REC | | Mail early ballots for November 5, 2024 General Election to voters on Active Early Voting List and voters who requested a one-time ballot-by-mail | 16-544(F) | |
| **10/9/2024** | PE-27 | ELEC | | Tallying of early ballots for November 5, 2024 General Election may begin | 16-550(B) | |
| **10/11/2024** | GE-25** | BOS | | Recommended deadline to print challenge lists and payroll vouchers | 16-536 16-594 | |
| **10/11/2024** | GE-25** | BOS | | Recommended deadline to have ballot labels ready for voting devices | 16-405 | |
| **10/11/2024** | GE-25** | BOS | | Recommended deadline to print poll lists | 16-516 | |
| **10/11/2024** | GE-25** | BOS | | Recommended deadline to print official and unofficial return envelopes | 16-511(A) 16-615 16-616 | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 10/11/2024 | GE-25** | BOS | | Recommended deadline to print duplicate ballot report forms | 16-608(A) | |
| 10/15/2024 | Oct 15 | SOS | | Deadline for filing Standing Committee 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 | 16-927(A)(2)(b) 16-928(B) | |
| 10/15/2024 | Oct 15 | SOS | ELEC | Deadline for filing PAC and Political Party 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 | 16-927(A)(2)(b) | |
| 10/15/2024 | Oct 15 | SOS | | Deadline for filing Candidate 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 (Statewide and Legislative Candidates) | 16-927(A)(2)(b) 16-927(B) | |
| 10/15/2024 | Oct 15 | ELEC | | Deadline for filing Candidate 2024 3rd Qtr Campaign Finance Report covering July 21, 2024 - September 30, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | |
| 10/15/2024 | Oct 15 (8 days after close of registration) | REC | | Deliver complete copies of precinct registers to county and state party chairmen | 16-168(C) | |
| 10/16/2024 | GE-20 | BOS | | Designate polling places including emergency voting and dropbox locations (except for special district and mail ballot elections) | 16-411(B) | |
| 10/16/2024 | GE-20 | BOS | | Deadline to appoint all Election Boards | 16-531 16-535 16-551 | |
| 10/18/2024 | GE-18** | BOS | | Recommended deadline to print log books and forms for Receiving Sites, Central Counting Place, Computer Center and Early Ballot Processing Center | 16-608 | |
| 10/18/2024 | GE-18** | BOS | | Recommended deadline to outline polling place support plan for General Election Day | Procedures Manual | |
| 10/19/2024 | GE-17 | SOS | BOS | Perform Logic and Accuracy Tests within 17 days of November 5, 2024 General Election - Notify public 48 hours in advance | 16-449(A) Procedures Manual | SATURDAY |
| 10/19/2024 | GE-17 | BOS | SOS | File Computer Program and Voting Equipment Certification for November 5, 2024 General Election with Secretary of State | 16-445(A) Procedures Manual | SATURDAY |
| 10/20/2024 | GE-16 | SOS | | Begin filing Standing Committee 2024 Pre-General Campaign Finance Report covering October 1, 2024 - October 19, 2024 | 16-927(A)(2)(a) 16-928(B) | SUNDAY |
| 10/20/2024 | GE-16 | SOS | ELEC | Begin filing PAC and Political Party 2024 Pre-General Campaign Finance Report covering October 1, 2024 - October 19, 2024 | 16-927(A)(2)(a) | SUNDAY |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 10/20/2024 | GE-16 | SOS | | Begin filing Candidate 2024 Pre-General Campaign Finance Report covering October 1, 2024 - October 19, 2024 (Statewide and Legislative Candidates) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |
| 10/20/2024 | GE-16 | ELEC | | Begin filing Candidate 2024 Pre-General Campaign Finance Report covering October 1, 2024 - October 19, 2024 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) | **SUNDAY** |
| 10/22/2024 | GE-14** | BOS | | Mail notice to county party chairmen as to time and place when voting devices can be inspected | 16-447(B) | |
| 10/22/2024 | MayE-210 | BOS | | Deadline for 210 day notice by Board of Supervisors for May 20, 2025 Election | 16-205 | |
| 10/25/2024 | GE-11 | REC | | Deadline for accepting requests for a ballot-by-mail for November 5, 2024 General Election | 16-542(E) | |
| 10/25/2024 | GE-11 | BOS | | Mail sample ballot to every household that contains a registered voter not on the Active Early Voting List | 16-510(C) | |
| 10/25/2024 | GE-11 (2nd Friday prior to GE) | REC | | Deadline for accepting requests for assistance by Special Election Board due to "continuing" Illness or disability at 5:00 p.m. | 16-549(C) | |
| 10/26/2024 | GE-10 | SOS | | Deadline for filing Standing Committee 2024 Pre-General Campaign Finance Report covering October 1, 2024 - October 19, 2024 | 16-927(A)(2)(a) 16-928(B) 1-243(A) 1-303 | **SATURDAY** |
| 10/26/2024 | GE-10 | SOS | ELEC | Deadline for filing PAC and Political Party 2024 Pre-General Campaign Finance Report covering October 1, 2024 - October 19, 2024 | 16-927(A)(2)(a) 1-243(A) 1-303 | **SATURDAY** |
| 10/26/2024 | GE-10 | SOS | | Deadline for Filing Candidate 2024 Pre-General Campaign Finance Report Covering October 1, 2024 - October 19, 2024  (Statewide and Legislative Candidates) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | **SATURDAY** |
| 10/26/2024 | GE-10 | ELEC | | Deadline for Filing Candidate 2024 Pre-General Campaign Finance Report Covering October 1, 2024 - October 19, 2024 (Applicable County and Local Races) | 16-927(A)(2)(a) 16-927(B) 1-243(A) 1-303 | **SATURDAY** |
| 10/26/2024 | GE-10 | SOS | | Deadline for the Vote Count Verification Committee to meet and consider revision of the designated margins to be used in the hand count audit, which will be simultaneously posted to the Secretary of State's website | 16-602(K)(4) | **SATURDAY** |
| 10/26/2024 | (After 2nd Friday before GE) | REC | | Begin accepting requests for assistance by Special Election Board due to "unanticipated"  illness or disability | 16-549(D) | **SATURDAY** |
| 10/26/2024 | GE-10 | BOS | | Deadline to publish Election Proclamation made by Governor | 16-214(C) | **SATURDAY** |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| 10/26/2024 | GE-10 | REC | | Prepare official precinct registers | 16-168(A) | SATURDAY |
| 10/26/2024 | GE-10 | REC | | Provide inactive voter list to each precinct on or before Election Day | 16-583* | SATURDAY |
| 10/29/2024 | GE-7 (Tuesday preceding GE) | ELEC | | Deadline for political parties to provide names of persons intending to participate in hand count by 5:00 p.m. | 16-602(B)(7) | |
| 10/30/2024 | GE-6 (Wednesday preceding GE) | ELEC | | Deadline for officer in charge of elections to notify political parties of shortage in number of persons intending to participate in hand count by 9:00 a.m. | 16-602(B)(7) | |
| 10/31/2024 | GE-5 (Thursday preceding GE) | ELEC | | Deadline for political parties to provide sufficient number of additional persons to cover hand count board shortages by 5:00 p.m. | 16-602(B)(7) | |
| 10/31/2024 | October 31 | SOS | | Deadline for filing 2024 3rd Qtr Lobbyist Expenditure Report covering July 1, 2024 - September 30, 2024 | 41-1232.02(B) 41-1232.03(B) | |
| 11/1/2024 | GE-4 (Friday preceding GE) | REC | | Deadline for "overseas" voter as defined in UOCAVA who was recently discharged or separated from employment to register to vote for the General Election at 5:00 p.m. | 16-103(D) | |
| 11/1/2024 | GE-4 | ELEC | | Deadline to Vote Early In-Person for the November 5, 2024 General Election by 5:00 p.m. | 16-542(E) | |
| 11/1/2024 | Nov 1 | ELEC | | Begin emergency early voting in a manner prescribed by the BOS due to an emergency occurring between 5:00 p.m. on Nov. 1, 2024 and 5:00 p.m. on Nov. 4, 2024 that would prevent the elector from voting at the polls | 16-542(H) | |
| 11/3/2024 | GE-2 | BOS | | If BOS fails to designate polling places, the Justice of the Peace may designate polling places | 16-411(C) | SUNDAY |
| 11/3/2024 | GE-2 | BOS | | Deliver ballots to Inspector | 16-509 | SUNDAY |
| 11/4/2024 | GE-1 | BOS | | Complete instruction classes for Precinct Boards, Receiving and Central Counting Place Boards and Data Processing Boards | 16-532 | |
| 11/4/2024 | GE-1 | BOS | | Deliver polling place supplies | 16-404 16-447(D) 16-511 | |
| 11/4/2024 | GE-1 | REC | | Deadline for accepting requests for assistance by Special Election Board due to "unanticipated" illness or disability | 16-549(D) | |

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| **11/4/2024** | GE-1 | REC | | Deliver list of all electors who were issued early ballots to Precinct Inspectors | 16-542(G) | |
| **11/4/2024** | GE-1** | BOS | | Recommended deadline to deliver lists of qualified Write-in Candidates to Inspector to be posted in polling place on Election Day | 16-312(E) | |
| **11/5/2024** | **GE** | **ALL** | | **November 5, 2024 General Election** | **16-204(E)(2) 16-204(F)(4) 16-206(A) 16-211** | |
| **11/5/2024** | GE | REC | | Continue delivery of early ballots to Early Boards for processing until 7:00 p.m. | 16-551(C) | |
| **11/5/2024** | GE | REC | | Deadline for UOCAVA voters temporarily absent from the state to register to vote for November 5, 2024 General Election at 7:00 p.m. | 16-103(C) | |
| **11/5/2024** | GE | CCEC | | End of CCEC General Election Period | 16-961(B)(5) | |
| **11/6/2024** | GE+1 | ELEC | | Hand count audit begins within 24 hours of the closing of the polls | 16-602(I) | |
| **11/6/2024** | GE+1 | ELEC | | Select by lot 2% of precincts/vote centers and perform hand count on those ballots; randomly select from sequestered early ballot batches a number equal to 1% of early ballots cast or 5,000 early ballots (whichever is less) for manual audit | 16-602(B)(1) 16-602(F) Procedures Manual | |
| **11/6/2024** | GE+1 | ELEC | | Select contested races to be hand counted | 16-602(B)(2) 16-602(C) | |
| **11/6/2024** | GE+1 | CCEC | | Candidates to return monies above sufficient amount to pay unpaid bills during General Election Period | 16-953(B) | |
| **11/6/2024** | GE+1 | CCEC | SOS | Begin CCEC Exploratory Period for candidates for 2026 Election. Exploratory period covers November 6, 2024 - July 31, 2025 | 16-961(B)(2) | |
| **11/11/2024** | GE+6 | BOS | | Deadline to hear early ballot challenges (by 5:00 p.m.) | 16-552(E) | **HOLIDAY** |
| **11/11/2024** | GE+6 | BOS | | First day to canvass returns for November 5, 2024 General Election, and issue Certificates of Election for County and Local offices | 16-642(A) 16-645(A) | **HOLIDAY** |
| **11/13/2024** | GE+5 Business Days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures. For counties that have a 4-day work week, the deadline will be the next business day: 11/14/2024 | 16-579(A)(2) 16-550(A) Procedures Manual | |

# 2023-2024 ELECTION CALENDAR

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|------|-----------------|-------|-------|-------|-----------|-------------------------|
| **11/15/2024** | GE+10 | REC | | Deadline to process Provisional Ballots from the November 5, 2024 General Election | 16-135(D) 16-584(E) | |
| **11/25/2024** | GE+20 | BOS | | Last day to canvass returns for November 5, 2024 General Election, and issue Certificates of Election for County and Local Offices | 16-642(A) 16-645(A) | |
| **11/30/2024** | NovE+5 days after canvass | | | Deadline to file a state election contest | 16-673(A) | **SATURDAY** |
| **12/1/2024** | Dec 1 | SOS | | Begin filing Biennial Principal or Public Body Registration Renewal for 2024 - 2025 | 41-1232(C) 41-1232.01(C) | **SUNDAY** |
| **12/2/2024** | **GE+ 4th Monday** | **SOS** | | **OFFICIAL CANVASS OF THE NOVEMBER 5, 2024 GENERAL ELECTION: Canvass returns for all Federal, Statewide, and Legislative Offices, Supreme and Appellate Judicial Officers, and all Statewide Ballot Measures** | **Const. Art V § 10 16-648(A)** | |
| **12/2/2024** | GE+ 4th Monday | SOS | | First day to issue Certificates of Election to all prevailing Federal, Statewide, and Legislative Candidates who filed Nomination Papers with the Secretary of State | Const. Art V § 10 16-650 | |
| **12/2/2024** | GE + 4th Monday | | | Upon completion of Canvass, Governor shall issue Proclamation on Constitutional Amendments and Measures | 16-651 | |
| **12/5/2024** | GE+30 | CCEC | | Clean Elections candidates shall pay uncontested and unpaid bills from General Election | 16-953(C) | |
| **12/11/2024** | | SOS | | Arizona Electors Safe Harbor Deadline | 16-212 | |
| **12/17/2024\*** | **1st Tuesday after 2nd Wednesday in December** | **SOS** | | **Meeting of the Electoral College** | **3 U.S.C. Ch. 1 § 7** | |
| **12/31/2024** | Dec 31 | SOS | | Deadline for SOS to inform legislature about plan for election officer certification and training | 16-407(D) | |
| **1/1/2025** | Jan 1 | SOS | | Begin Filing 2024 4th Qtr Lobbyist Expenditure Report covering October 1, 2024 - December 31, 2024 | 41-1232.02(B) 41-1232.03(B) | **HOLIDAY** |
| **1/1/2025** | Jan 1 | SOS | | Begin filing Standing Committee 2024 4th Qtr Campaign Finance Report covering October 20, 2024 - December 31, 2024 | 16-927(A)(2)(b) 16-928(B) | **HOLIDAY** |
| **1/1/2025** | Jan 1 | SOS | ELEC | Begin filing PAC and Political Party 2024 4th Qtr Campaign Finance Report covering October 20, 2024 - December 31, 2024 | 16-927(A)(2)(b) | **HOLIDAY** |

\*Date corrected on January 11, 2024. The incorrect date of 12/16/2024 was in the original calendar. Due to Congress passing the "Electoral Count Reform and Presidential Transition Improvement Act of 2022," 3 U.S.C. § 7 (effective December 29, 2022), the correct date is December 17, 2024.

**2023-2024 ELECTION CALENDAR**

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | EVENT | REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|
| 1/1/2025 | Jan 1 | SOS | | Begin Filing Candidate 2024 4th Qtr Campaign Finance Report Covering October 20, 2024 - December 31, 2024 (Statewide and Legislative Candidates) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| 1/1/2025 | Jan 1 | ELEC | | Begin Filing Candidate 2024 4th Qtr Campaign Finance Report Covering October 20, 2024 - December 31, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| 1/1/2025 | Jan 1 | SOS | | Begin filing Public Officers Annual Financial Disclosure Statement covering CY2024 | 18-444(D) | **HOLIDAY** |
| 1/1/2025 | Jan 1 | SOS | | Begin Filing Principal and Public Body 2024 Annual Expenditure Reports covering January 1, 2024 - December 31, 2024 | 41-1232.02(A) 41-1232.03(A) | **HOLIDAY** |
| 1/13/2025 | Jan 13 (Second Monday in January) | SOS | | Deadline for filing Biennial Principal or Public Body Registration Renewal for period beginning 2024 - 2025 | 41-1232(C) 41-1232.01(C) | |
| 1/15/2025 | Jan 15 | SOS | | Deadline for filing Standing Committee 2024 4th Qtr Campaign Finance Report covering October 20, 2024 - December 31, 2024 | 16-927(A)(2)(b) 16-928(B) 1-243(A) 1-303 | |
| 1/15/2025 | Jan 15 | SOS | ELEC | Deadline for filing PAC and Political Party 2024 4th Qtr Campaign Finance Report covering October 20, 2024 - December 31, 2024 | 16-927(A)(2)(b) 1-243(A) 1-303 | |
| 1/15/2025 | Jan 15 | SOS | | Deadline for Filing Candidate 2024 4th Qtr Campaign Finance Report Covering October 20, 2024 - December 31, 2024 (Statewide and Legislative Candidates) | 16-927(A)(2)(b) 16-927(B) 1-243(A) 1-303 | |
| 1/15/2025 | Jan 15 | ELEC | | Deadline for Filing Candidate 2024 4th Qtr Campaign Finance Report Covering October 20, 2024 - December 31, 2024 (Applicable County and Local Races) | 16-927(A)(2)(b) 16-927(B) 1-243(A) 1-303 | |
| 1/31/2025 | Jan 31 | SOS | | Election System Software Escrow Statement: Election vendors who have voting equipment certified for use in Arizona elections and whose equipment is currently in use or will be used in an upcoming election shall notify the Secretary of State, in writing, by January 31 of each year where the source code is held in escrow | | |

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

COMMITTEE INFORMATION (required):

*Committee Information:*     Committee Name: _____

CANDIDATE INFORMATION (only if filing as a candidate committee):

*Office Sought:*     ☐ County Office:     _____     ☐ Special District Office:     _____
                     ☐ City/Town Office:     _____     ☐ School Board District:     _____

*Cumulative Report:*

☐ Check here if this is the candidate committee's first, cumulative report for the election cycle. Also select appropriate Reporting Period below.
      Cumulative reporting period start date (which supersedes the start date for the Reporting Period selected below): _____

REPORTING PERIOD (check one):

| REPORTING PERIOD | REPORT DUE |
|---|---|
| 2023 March Pre-Election Report (Local Only): January 1, 2023 to February 25, 2023 | February 26, 2023 to March 4, 2023 |
| 2023 March Post-Election (Q1) Report (Local Only): February 26 to March 31, 2023 | April 1, 2023 to April 15, 2023 |
| 2023 Quarter 1 Report: January 1, 2023 to March 31, 2023 | April 1, 2023 to April 17, 2023 |
| 2023 May Pre-Election Report (Local Only): April 1, 2023 to April 29, 2023 | April 30, 2023 to May 6, 2023 |
| 2023 May Post-Election (Q2) Report (Local Only): April 30, 2023 to June 30, 2023 | July 1, 2023 to July 15, 2023 |
| 2023 Quarter 2 Report: April 1, 2023 to June 30, 2023 | July 1, 2023 to July 17, 2023 |
| 2023 August Pre-Election Report (Local Only): July 1, 2023 to July 15, 2023 | July 16, 2023 to July 22, 2023 |
| 2023 August Post-Election (Q3) Report (Local Only): July 16, 2023 to September 30, 2023 | October 1, 2023 to October 16, 2023* |
| 2023 Quarter 3 Report: July 1, 2023 to September 30, 2023 | October 1, 2023 to October 16, 2023* |
| 2023 November Pre-Election Report (Local Only): October 1, 2023 to October 21, 2023 | October 22, 2023 to October 28, 2023 |
| 2023 November Post-Election (Q4) Report (Local Only): October 22, 2023 to December 31, 2023 | January 1, 2024 to January 16, 2024* |
| 2023 Quarter 4 Report: October 1, 2023 to December 31, 2023 | January 1, 2024 to January 16, 2024* |
| 2024 March Pre-Election Report (Local Only): January 1, 2024 to February 24, 2024 | February 25, 2024 to March 2, 2024 |
| 2024 March Post-Election (Q1) Report (Local Only): February 25, 2024 to March 31, 2024 | April 1, 2024 to April 15, 2024 |
| 2024 Quarter 1 Report: January 1, 2024 to March 31, 2024 | April 1, 2024 to April 15, 2024 |
| 2024 May Pre-Election Report (Local Only): April 1, 2024 to May 4, 2024 | May 5, 2024 to May 11, 2024 |
| 2024 May Post-Election (Q2) Report (Local Only): May 5, 2024 to June 30, 2024 | July 1, 2024 to July 15, 2024 |
| 2024 Quarter 2 Report: April 1, 2024 to June 30, 2024 | July 1, 2024 to July 15, 2024 |
| 2024 Pre-Primary Election Report: July 1, 2024 to July 20, 2024 | July 21, 2024 to July 27, 2024 |
| 2024 Post-Primary Election (Q3) Report: July 21, 2024 to September 30, 2024 | October 1, 2024 to October 15, 2024 |
| 2024 Pre-General Election Report: October 1, 2024 to October 19, 2024 | October 20, 2024 to October 26, 2024 |
| 2024 Post-General Election (Q4) Report: October 20, 2024 to December 31, 2024 | January 1, 2025 to January 15, 2025 |
| Final Campaign Finance Report Prior to Committee Termination: End of Previous Period through Today's Date | Same Date of Termination |

*Reporting deadline extended to next business day if deadline date is a holiday or Sunday. A.R.S. §§§ 1-243(A)1-301 and 1-303.

FINANCIAL SUMMARY (required):

| Activity | Cash Activity This Reporting Period | Election Cycle to Date |
|---|---|---|
| (a) Committee value at the beginning of this reporting period (*i.e.* ending balance from the previous reporting period) | | |
| (b) + Total receipts (from "Summary of Receipts," line 13 (cash column) for this reporting period) | | |
| (c) - Total disbursements (from "Summary of Disbursements," line 16 (cash column) for this reporting period) | | |
| (d) = Balance at close of reporting period | | |

☐ Check here if filing no financial activity during the reporting period. Lines (a)-(d) still must be completed, but only this cover page and the following page need to be filed.

Committees with financial activity must file the cover page, summary of receipts, summary of disbursements, and any schedules that contain financial activity.

Arizona Secretary of State Revision 8/11/23 (fillable format)

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

Under A.R.S. § 16-926(B)(5), a campaign finance report must be certified by the committee treasurer under penalty of perjury that the contents of the report are true and correct.

By filing this report, you certify that, under penalty of perjury, you have examined the contents of this report, and the contents are true and correct.

_____          _____          _____
Printed Name of Committee Treasurer          Signature of Committee Treasurer          Date

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

SUMMARY OF RECEIPTS (Schedule A):

| Receipts | Cash | Equity |
|---|---|---|
| 1.   Monetary Contributions Received | | |
| (a)  In-State Individuals - More than $100 | | |
| (b)  In-State Individuals - $100 or Less (Aggregate) | | |
| (c)  Out-of-State Individuals | | |
| (d)  Candidate Committees | | |
| (e)  Political Action Committees | | |
| (f)  Political Parties | | |
| (g)  Partnerships | | |
| (h)  Corporations & Limited Liability Companies (PACs & Political Parties Only) | | |
| (i)   Labor Organizations (PACs & Political Parties Only) | | |
| (j)   Candidate's Personal Monies (Candidate Committees Only) | | |
| (k)  Monetary Contributions Subtotal (add 1(a) through 1(j)) | | |
| (l)   Refunds Given Back to Contributors | | |
| (m) Net Monetary Contributions (subtract 1(l) from 1(k)) | | |
| 2.   Loans | | |
| (a)  Loans Received | | |
| (b)  Forgiveness on Loans Received | | |
| (c)  Repayment on Loans Made | | |
| (d)  Interest Accrued on Loans Made | | |
| (e)  Loans Subtotal (cash: add 2(a), 2(c) & 2(d)) | | |
| 3.   Rebates and Refunds Received | | |
| 4.   Interest Accrued on Committee Monies | | |
| 5.   In-Kind Contributions Received | | |
| (a)  In-State Individuals - More than $100 | | |
| (b)  In-State Individuals - $100 or Less (Aggregate) | | |
| (c)  Out-of-State Individuals | | |
| (d)  Candidate Committees | | |
| (e)  Political Action Committees | | |
| (f)  Political Parties | | |
| (g)  Partnerships | | |
| (h)  Corporations & Limited Liability Companies (PACs & Political Parties Only) | | |
| (i)   Labor Organizations (PACs & Political Parties Only) | | |
| (j)   Candidate's Personal Assets or Property (Candidate Committees Only) | | |
| (k)  In-Kind Contributions Subtotal (equity: add 5(a) through 5(j)) | | |
| 6.   In-Kind Donations Received (Non-Contributions) (Political Parties Only) | | |
| 7.   Extensions of Credit | | |
| (a)  Extensions of Credit Received | | |
| (b)  Payments on Extensions of Credit Received | | |
| (c)  Net Extensions of Credit (subtract 7(b) from 7(a)) | | |
| 8.   Joint Fundraising / Shared Expense Payments Received | | |
| 9.   Payments Received for Goods / Services | | |
| 10. Outstanding Accounts Receivable / Debts Owed to Committee | | |
| 11. Transfer In Surplus Monies / Transfer Out Debt (use cash and/or equity as applicable) | | |
| 12. Miscellaneous Receipts (use cash and/or equity as applicable) | | |
| 13. Total Receipts (cash: add 1(m), 2(e), 3-4, 8-9, 11-12; equity: add 2(b), 5(k), 6-7(c), 10-12) | | |

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

SUMMARY OF DISBURSEMENTS (Schedule B):

| Disbursements | Cash | Equity |
|---|---|---|
| 1.  Disbursements for Operating Expenses | | |
| 2.  Contributions Made | | |
|     (a)  Candidate Committees | | |
|     (b)  Political Action Committees | | |
|     (c)  Political Parties | | |
|     (d)  Partnerships | | |
|     (e)  Corporations & Limited Liability Companies (PAC & Political Parties Only) | | |
|     (f)  Labor Organizations (PAC & Political Parties Only) | | |
|     (g)  Monetary Contributions Subtotal (add 2(a) through 2(f)) | | |
|     (h)  Contribution Refunds Provided to the Reporting Committee | | |
|     (i)  Monetary Contributions Total (subtract 2(h) from 2(g)) | | |
| 3.  Loans | | |
|     (a)  Loans Made | | |
|     (b)  Loan Guarantees Made | | |
|     (c)  Forgiveness on Loans Made | | |
|     (d)  Repayment of Loans Received | | |
|     (e)  Accrued Interest on Loans Received | | |
|     (f)  Total Loans (cash: add 3(a), 3(d) & 3(e); equity: add 2(b) & 2(c)) | | |
| 4.  Rebates and Refunds Made (Non-Contributions) | | |
| 5.  Value of In-Kind Contributions Provided | | |
|     (a)  Candidate Committees | | |
|     (b)  Political Action Committees | | |
|     (c)  Political Parties | | |
|     (d)  Partnerships | | |
|     (e)  Corporations & Limited Liability Companies (PAC & Political Parties Only) | | |
|     (f)  Labor Organizations (PAC & Political Parties Only) | | |
|     (g)  Contributions Subtotal (add 5(a) through 5(f)) | | |
| 6.  Independent Expenditures Made | | |
| 7.  Ballot Measure Expenditures Made | | |
| 8.  Recall Expenditures Made | | |
| 9.  Support Provided to Party Nominees (Political Parties Only) | | |
| 10.  Joint Fundraising / Shared Expense Payments Made | | |
| 11.  Reimbursements Made | | |
| 12.  Outstanding Accounts Payable / Debts Owed by Committee | | |
| 13.  Transfer Out Surplus Monies / Transfer In Debt (use cash and/or equity as applicable) | | |
| 14.  Miscellaneous Disbursements | | |
| 15.  Aggregate of Disbursements - $250 or Less | | |
| 16.  Total Disbursements (cash: add 1, 2(i), 3(f), 6-11 & 13-15; equity: add 3(f), 5(g), & 12-15) | | |

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS RECEIVED FROM IN-STATE INDIVIDUALS - MORE THAN $100 DURING ELECTION CYCLE:*          SCHEDULE A(1)(a)

| | Individual Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 2 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 3 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 4 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 5 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(a)) | | | | | |

*If in-state individual contributions of $100 or less are listed on Schedule A(1)(b), do not include them on Schedule A(1)(a).

Schedule A(1)(a), page_____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS RECEIVED FROM IN-STATE INDIVIDUALS - $100 OR LESS (AGGREGATE):*          SCHEDULE A(1)(b)

|  | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Cumulative Contributions from In-State Individuals - $100 or Less | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(b)) | | |

*If in-state individual contributions of more than $100 are listed on Schedule A(1)(a), do not include them.

Schedule A(1)(b), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS RECEIVED FROM OUT-OF-STATE INDIVIDUALS

SCHEDULE A(1)(c)

| Individual Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| **2** Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| **3** Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| **4** Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| **5** Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(c)) | | | |

Schedule A(1)(c), page_____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM CANDIDATE COMMITTEES:                                    SCHEDULE A(1)(d)

| Candidate Committee Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| 1 | Committee Name | | | | |
| | Street Address | | | | |
| | City | State | ZIP | | |
| | Committee ID Number | Date Contribution Received | | | |
| 2 | Committee Name | | | | |
| | Street Address | | | | |
| | City | State | ZIP | | |
| | Committee ID Number | Date Contribution Received | | | |
| 3 | Committee Name | | | | |
| | Street Address | | | | |
| | City | State | ZIP | | |
| | Committee ID Number | Date Contribution Received | | | |
| 4 | Committee Name | | | | |
| | Street Address | | | | |
| | City | State | ZIP | | |
| | Committee ID Number | Date Contribution Received | | | |
| 5 | Committee Name | | | | |
| | Street Address | | | | |
| | City | State | ZIP | | |
| | Committee ID Number | Date Contribution Received | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(d)) | | | | | |

Schedule A(1)(d), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM POLITICAL ACTION COMMITTEES:                    SCHEDULE A(1)(e)

| | Political Action Committee Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(e)) | | | | | |

Schedule A(1)(e), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM POLITICAL PARTIES:                                          SCHEDULE A(1)(f)

| | Political Party Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 2 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 3 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 4 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 5 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 1(f)) | | | |

Schedule A(1)(f), page_____ of _____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM PARTNERSHIPS:                                    SCHEDULE A(1)(g)

| | Partnership Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 2 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 3 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 4 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 5 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(g)) | | | |

Schedule A(1)(g), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM CORPORATIONS AND LLCs:                                SCHEDULE A(1)(h)

| | Corporation / LLC Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Corporation/LLC Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date Contribution Received | | | |
| 2 | Corporation/LLC Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date Contribution Received | | | |
| 3 | Corporation/LLC Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date Contribution Received | | | |
| 4 | Corporation/LLC Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date Contribution Received | | | |
| 5 | Corporation/LLC Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 1(h)) | | | |

Schedule A(1)(h), page____ of ___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM LABOR ORGANIZATIONS:                    SCHEDULE A(1)(i)

| | Labor Organization Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 2 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 3 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 4 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 5 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 1(i)) | | | |

Schedule A(1)(i), page_____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM CANDIDATE'S PERSONAL MONIES:                                        SCHEDULE A(1)(j)

| | Candidate Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 2 | Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 3 | Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 4 | Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 5 | Name / Date Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(j)) | | | |

Schedule A(1)(j), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REFUNDS GIVEN BACK TO CONTRIBUTORS:                                          SCHEDULE A(1)(I)

| | Contributor Information | Amount Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name — Date Contribution Refunded<br>Street Address<br>City — State — ZIP<br>ID Number (if applicable) — Date of Original Contribution | | | |
| 2 | Name — Date Contribution Refunded<br>Street Address<br>City — State — ZIP<br>ID Number (if applicable) — Date of Original Contribution | | | |
| 3 | Name — Date Contribution Refunded<br>Street Address<br>City — State — ZIP<br>ID Number (if applicable) — Date of Original Contribution | | | |
| 4 | Name — Date Contribution Refunded<br>Street Address<br>City — State — ZIP<br>ID Number (if applicable) — Date of Original Contribution | | | |
| 5 | Name — Date Contribution Refunded<br>Street Address<br>City — State — ZIP<br>ID Number (if applicable) — Date of Original Contribution | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 1(I)) | | | |

Schedule A(1)(I), page____ of___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

| COMMITTEE ID NUMBER |
| --- |
|  |

LOANS RECEIVED:                                                                                                    SCHEDULE A(2)(a)

| | Lender Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| **1** | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **2** | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **3** | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **4** | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **5** | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 2(a)) | | | | | | |

Schedule A(2)(a), page_____ of _____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

FORGIVENESS ON LOANS RECEIVED:                                                                 SCHEDULE A(2)(b)

| | Lender Information | | | Amount Forgiven | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| **1** | Lender Name | | Date Forgiveness Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| **2** | Lender Name | | Date Forgiveness Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| **3** | Lender Name | | Date Forgiveness Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| **4** | Lender Name | | Date Forgiveness Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| **5** | Lender Name | | Date Forgiveness Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 2(b)) | | | | | |

Schedule A(2)(b), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

REPAYMENT ON LOANS MADE:                                                    SCHEDULE A(2)(c)

| Borrower Information | | | Amount Repaid | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **2** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **3** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **4** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **5** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 2(c)) | | | | | |

Schedule A(2)(c), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

INTEREST ACCRUED ON LOANS MADE:                                             SCHEDULE A(2)(d)

| Borrower Information | | | Amount of Interest Accrued | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Borrower Name / Date Interest Accrued / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **2** Borrower Name / Date Interest Accrued / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **3** Borrower Name / Date Interest Accrued / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **4** Borrower Name / Date Interest Accrued / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **5** Borrower Name / Date Interest Accrued / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 2(d)) | | | | | |

Schedule A(2)(d), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REBATES AND REFUNDS RECEIVED:                                                    SCHEDULE A(3)

| Payor Information | | | Amount Rebated or Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Payor Name | | Date Rebate/Refund Received | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Original Purchase Amount | Reason for Refund/Rebate | | | | |
| **2** Payor Name | | Date Rebate/Refund Received | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Original Purchase Amount | Reason for Refund/Rebate | | | | |
| **3** Payor Name | | Date Rebate/Refund Received | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Original Purchase Amount | Reason for Refund/Rebate | | | | |
| **4** Payor Name | | Date Rebate/Refund Received | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Original Purchase Amount | Reason for Refund/Rebate | | | | |
| **5** Payor Name | | Date Rebate/Refund Received | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Original Purchase Amount | Reason for Refund/Rebate | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 3) | | | | | |

Schedule A(3), page_____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

INTEREST ACCRUED ON COMMITTEE MONIES:                                    SCHEDULE A(4)

| | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Total<br>(transfer the total received this period to "Summary of Receipts," line 4) | | |

Schedule A(4), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS RECEIVED FROM IN-STATE INDIVIDUALS - MORE THAN $100 DURING ELECTION CYCLE:*          SCHEDULE A(5)(a)

| | Individual Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name / Date In-Kind Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 2 | Name / Date In-Kind Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 3 | Name / Date In-Kind Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 4 | Name / Date In-Kind Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| 5 | Name / Date In-Kind Contribution Received / Street Address / City / State / ZIP / Occupation / Employer | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(a)) | | | |

*If in-kind contributions of $100 or less are listed on Schedule A(5)(b), do not include them on Schedule A(5)(a).

Schedule A(5), page____ of ___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS RECEIVED FROM IN-STATE INDIVIDUALS - $100 OR LESS (AGGREGATE):*          SCHEDULE A(5)(b)

|  | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Cumulative In-Kind Contributions from Individuals - $100 or Less |  |  |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(b)) |  |  |

*If contributions of more than $100 are listed on Schedule A(5)(a), do not include them on Schedule A(5)(b).

Schedule A(5)(b), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM CANDIDATE COMMITTEES:                                    SCHEDULE A(5)(d)

| | Candidate Committee Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(d)) | | | | | |

Schedule A(5)(d), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM POLITICAL ACTION COMMITTEES:                                            SCHEDULE A(5)(e)

| Political Action Committee Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| 1   Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Received | | | |
| 2   Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Received | | | |
| 3   Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Received | | | |
| 4   Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Received | | | |
| 5   Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Received | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(e)) | | | |

Schedule A(5)(e), page____ of ___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM POLITICAL PARTIES:                                    SCHEDULE A(5)(f)

| Political Party Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Received | | | |
| **2** Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Received | | | |
| **3** Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Received | | | |
| **4** Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Received | | | |
| **5** Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Received | | | |
| Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 5(f)) | | | |

Schedule A(5)(f), page_____ of _____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM PARTNERSHIPS:                                                    SCHEDULE A(5)(g)

| | Partnership Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 2 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 3 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 4 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 5 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 5(g)) | | | |

Schedule A(5)(g), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM CORPORATIONS AND LLCs:                                                                 SCHEDULE A(5)(h)

| | Corporation / LLC Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 2 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 3 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 4 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 5 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(h)) | | | | | |

Schedule A(5)(h), page____ of _____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM LABOR ORGANIZATIONS:                                    SCHEDULE A(5)(i)

| | Labor Organization Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Labor Organization Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 2 | Labor Organization Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 3 | Labor Organization Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 4 | Labor Organization Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 5 | Labor Organization Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 5(i)) | | | |

Schedule A(5)(i), page_____ of _____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM CANDIDATE'S PERSONAL ASSETS OR PROPERTY:                    SCHEDULE A(5)(j)

| | Candidate Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 2 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 3 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 4 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 5 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(j)) | | | | | | |

Schedule A(5)(j), page____ of ___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND DONATIONS RECEIVED (NON-CONTRIBUTIONS) (POLITICAL PARTIES ONLY):　　　　　　　　　SCHEDULE A(6)

| Source Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| 1 | Name | Date In-Kind Donation Received | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Type of Item Donated | | | | |
| 2 | Name | Date In-Kind Donation Received | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Type of Item Donated | | | | |
| 3 | Name | Date In-Kind Donation Received | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Type of Item Donated | | | | |
| 4 | Name | Date In-Kind Donation Received | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Type of Item Donated | | | | |
| 5 | Name | Date In-Kind Donation Received | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Type of Item Donated | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 6) | | | | | |

Schedule A(6), page_____ of _____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

EXTENSIONS OF CREDIT RECEIVED:                                                                    SCHEDULE A(7)(a)

| | Creditor Information | | | Amount of Credit Extended | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| 2 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| 3 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| 4 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| 5 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 7(a)) | | | | | | |

Schedule A(7)(a), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

PAYMENTS ON EXTENSIONS OF CREDIT RECEIVED:                                                                SCHEDULE A(7)(b)

| | Creditor Information | Payment Amount on Credit Extended | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Services or Goods Originally Provided on Credit / Date of Original Extension of Credit | | | |
| 2 | Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Services or Goods Originally Provided on Credit / Date of Original Extension of Credit | | | |
| 3 | Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Services or Goods Originally Provided on Credit / Date of Original Extension of Credit | | | |
| 4 | Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Services or Goods Originally Provided on Credit / Date of Original Extension of Credit | | | |
| 5 | Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Services or Goods Originally Provided on Credit / Date of Original Extension of Credit | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 7(b)) | | | |

Schedule A(7)(b), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

JOINT FUNDRAISING / SHARED EXPENSE PAYMENTS RECEIVED:                    SCHEDULE A(8)

| | Payor Committee Information | | Payment Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| 1 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 2 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 3 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 4 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 5 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 8) | | | | | |

Schedule A(8), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

PAYMENTS RECEIVED FOR GOODS/SERVICES:                                      SCHEDULE A(9)

| | Payor Information | Payment Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name<br>Street Address<br>City / State / ZIP<br>Services or Goods Purchased / Payment Date | | | |
| 2 | Name<br>Street Address<br>City / State / ZIP<br>Services or Goods Purchased / Payment Date | | | |
| 3 | Name<br>Street Address<br>City / State / ZIP<br>Services or Goods Purchased / Payment Date | | | |
| 4 | Name<br>Street Address<br>City / State / ZIP<br>Services or Goods Purchased / Payment Date | | | |
| 5 | Name<br>Street Address<br>City / State / ZIP<br>Services or Goods Purchased / Payment Date | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 9) | | | |

Schedule A(9), page____ of ____

Arizona Secretary of State Revision 7/31/21 (fillable format)

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

OUTSTANDING ACCOUNTS RECEIVABLE / DEBTS OWED TO COMMITTEE:                                           SCHEDULE A(10)

| Information | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **2** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **3** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **4** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **5** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 10) | | | |

Schedule A(10), page_____ of _____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

TRANSFER IN SURPLUS MONIES / TRANSFER OUT DEBT:                                    SCHEDULE A(11)

| | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Total<br>(transfer the total received this period to "Summary of Receipts," line 11) | | |

Schedule A(11), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MISCELLANEOUS RECEIPTS:                                                                 SCHEDULE A(12)

| Source Information | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Name _____ Street Address _____ City _____ State _____ ZIP _____ Receipt Type _____ Receipt Date _____ | | | |
| **2** Name _____ Street Address _____ City _____ State _____ ZIP _____ Receipt Type _____ Receipt Date _____ | | | |
| **3** Name _____ Street Address _____ City _____ State _____ ZIP _____ Receipt Type _____ Receipt Date _____ | | | |
| **4** Name _____ Street Address _____ City _____ State _____ ZIP _____ Receipt Type _____ Receipt Date _____ | | | |
| **5** Name _____ Street Address _____ City _____ State _____ ZIP _____ Receipt Type _____ Receipt Date _____ | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 12) | | | |

Schedule A(12), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

DISBURSEMENTS FOR OPERATING EXPENSES:                                                                    SCHEDULE B(1)

| | Recipient Information | | | Amount Paid | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| **1** | Name | Disbursement Date | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **2** | Name | Disbursement Date | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **3** | Name | Disbursement Date | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **4** | Name | Disbursement Date | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| **5** | Name | Disbursement Date | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose? (PACs and Political Parties Only) ☐ | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 1) | | | | | |

Schedule B(1), page_____ of _____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO CANDIDATE COMMITTEES:                                   SCHEDULE B(2)(a)

| | Candidate Committee Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 2(a)) | | | |

Schedule B(2)(a), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO POLITICAL ACTION COMMITTEES:                                    SCHEDULE B(2)(b)

| | Political Action Committee Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Committee ID Number | Date Contribution Made | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Committee ID Number | Date Contribution Made | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Committee ID Number | Date Contribution Made | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Committee ID Number | Date Contribution Made | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Committee ID Number | Date Contribution Made | | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 2(b)) | | | | | | |

Schedule B(2)(b), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

| COMMITTEE ID NUMBER |
|---|

MONETARY CONTRIBUTIONS TO POLITICAL PARTIES:                                         SCHEDULE B(2)(c)

| | Political Party Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 2(c)) | | | |

Schedule B(2)(c), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO PARTNERSHIPS:                                                         SCHEDULE B(2)(d)

| | Partnership Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Partnership Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| 2 | Partnership Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| 3 | Partnership Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| 4 | Partnership Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| 5 | Partnership Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 2(d)) | | | | | |

Schedule B(2)(d), page____ of ___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO CORPORATIONS AND LLCs:                                    SCHEDULE B(2)(e)

| | Corporation / LLC Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 2(e)) | | | |

Schedule B(2)(e), page_____ of _____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO LABOR ORGANIZATIONS:                                        SCHEDULE B(2)(f)

| | Labor Organization Recipient Information | Amount Contributor | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Labor Organization Name<br><br>Street Address<br><br>City   State   ZIP<br><br>Corporation Commission File Number   Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Labor Organization Name<br><br>Street Address<br><br>City   State   ZIP<br><br>Corporation Commission File Number   Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Labor Organization Name<br><br>Street Address<br><br>City   State   ZIP<br><br>Corporation Commission File Number   Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Labor Organization Name<br><br>Street Address<br><br>City   State   ZIP<br><br>Corporation Commission File Number   Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Labor Organization Name<br><br>Street Address<br><br>City   State   ZIP<br><br>Corporation Commission File Number   Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 2(f)) | | | |

Schedule B(2)(f), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

CONTRIBUTION REFUNDS RECEIVED:                                                                 SCHEDULE B(2)(h)

| | Contributor Information | | | Amount Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | Date Refund Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | | Date of Original Contribution | | | |
| 2 | Committee Name | | Date Refund Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | | Date of Original Contribution | | | |
| 3 | Committee Name | | Date Refund Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | | Date of Original Contribution | | | |
| 4 | Committee Name | | Date Refund Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | | Date of Original Contribution | | | |
| 5 | Committee Name | | Date Refund Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | | Date of Original Contribution | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 2(h)) | | | | | |

Schedule B(2)(h), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

LOANS MADE:                                                                                                          SCHEDULE B(3)(a)

| | Borrower Information | | | Amount Loaned | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 2 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 3 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 4 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 5 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 3(a)) | | | | | |

Schedule B(3)(a), page____of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

LOAN GUARANTEES MADE:                                                                    SCHEDULE B(3)(b)

| | Guarantor Information | | | Amount Guaranteed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Guarantor Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Borrower Name | Date Loan Guaranteed | | | | |
| 2 | Guarantor Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Borrower Name | Date Loan Guaranteed | | | | |
| 3 | Guarantor Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Borrower Name | Date Loan Guaranteed | | | | |
| 4 | Guarantor Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Borrower Name | Date Loan Guaranteed | | | | |
| 5 | Guarantor Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Borrower Name | Date Loan Guaranteed | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 3(b)) | | | | | |

Schedule B(3)(b), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

FORGIVENESS ON LOANS MADE:                                                                                    SCHEDULE B(3)(c)

| | Borrower Information | | | Amount Forgiven | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 2 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 3 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 4 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 5 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 3(c)) | | | | | |

Schedule B(3)(c), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REPAYMENT ON LOANS RECEIVED:                                                          SCHEDULE B(3)(d)

| | Lender Information | | | Amount Repaid | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Lender Name | Date Repayment Made | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 2 | Lender Name | Date Repayment Made | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 3 | Lender Name | Date Repayment Made | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 4 | Lender Name | Date Repayment Made | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 5 | Lender Name | Date Repayment Made | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 3(d)) | | | | | | |

Schedule B(3)(d), page____ of ____

-

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

ACCRUED INTEREST ON LOANS RECEIVED:                                    SCHEDULE B(3)(e)

| | Lender Information | | | Amount of Interest Accrued | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | | Amount Still Outstanding | | | |
| 2 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | | Amount Still Outstanding | | | |
| 3 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | | Amount Still Outstanding | | | |
| 4 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | | Amount Still Outstanding | | | |
| 5 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | | Amount Still Outstanding | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 3(e)) | | | | | | |

Schedule B(3)(e), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REBATES AND REFUNDS MADE (NON-CONTRIBUTIONS):                                                    SCHEDULE B(4)

| | Recipient Information | | | Amount Rebated / Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Date of Original Payment | | | |
| 2 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Date of Original Payment | | | |
| 3 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Name of Original Payor | | | |
| 4 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Name of Original Payor | | | |
| 5 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Name of Original Payor | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 4) | | | | | |

Schedule B(4), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO CANDIDATE COMMITTEES:                                                    SCHEDULE B(5)(a)

| | Candidate Committee Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 5(a)) | | | | | |

Schedule B(5)(a), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO POLITICAL ACTION COMMITTEES:                                                        SCHEDULE B(5)(b)

| | Political Action Committee Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 5(b)) | | | | | |

Schedule B(5)(b), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO POLITICAL PARTIES:                                    SCHEDULE B(5)(c)

| Political Party Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| 1  Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Made | | | |
| 2  Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Made | | | |
| 3  Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Made | | | |
| 4  Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Made | | | |
| 5  Committee Name / Street Address / City / State / ZIP / Committee ID Number / Date In-Kind Contribution Made | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 5(c)) | | | |

Schedule B(5)(c), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO PARTNERSHIPS:                                                    SCHEDULE B(5)(d)

| | Partnership Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Partnership Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 2 | Partnership Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 3 | Partnership Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 4 | Partnership Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 5 | Partnership Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 5(d)) | | | |

Schedule B(5)(d), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO CORPORATIONS AND LLCs:                                    SCHEDULE B(5)(e)

| | Corporation / LLC Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 2 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 3 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 4 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 5 | Corporation/LLC Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 5(e)) | | | | | |

Schedule B(5)(e), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO LABOR ORGANIZATIONS:                                                    SCHEDULE B(5)(f)

| | Labor Organization Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 2 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 3 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 4 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 5 | Labor Organization Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 5(f)) | | | |

Schedule B(5)(f), page_____ of _____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

INDEPENDENT EXPENDITURES MADE:                                                          SCHEDULE B(6)

| | Expenditure Recipient Information | | Expenditure Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | |
| **2** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | |
| **3** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | |
| **4** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | Office Sought | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 6) | | | | |

Schedule B(6), page____ of ___

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

BALLOT MEASURE EXPENDITURES MADE:                                                                 SCHEDULE B(7)

| | Expenditure Recipient Information | | | Expenditure Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Recipient Name | | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | | |
| 2 | Recipient Name | | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | | |
| 3 | Recipient Name | | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | | |
| 4 | Recipient Name | | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 7) | | | | | |

Schedule B(7), page____ of ___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

RECALL EXPENDITURES MADE:                                                              SCHEDULE B(8)

| | Expenditure Recipient Information | | Expenditure Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City | State | ZIP | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| **2** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City | State | ZIP | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| **3** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City | State | ZIP | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| **4** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City | State | ZIP | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 8) | | | | | |

Schedule B(8), page____ of ___

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

SUPPORT PROVIDED TO PARTY NOMINEES (POLITICAL PARTIES ONLY):                                    SCHEDULE B(9)

| Benefitted Candidate | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| **2** Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| **3** Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| **4** Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 9) | | | |

Schedule B(9), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

JOINT FUNDRAISING / SHARED EXPENSE PAYMENTS MADE:                                    SCHEDULE B(10)

| | Recipient Committee Information | | | Payment Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| **1** | Committee Name | | Payment Date | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Date of Joint Fundraising Event (if applicable) | Type of Shared Expense (if applicable) | | | | |
| **2** | Committee Name | | Payment Date | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Date of Joint Fundraising Event (if applicable) | Type of Shared Expense (if applicable) | | | | |
| **3** | Committee Name | | Payment Date | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Date of Joint Fundraising Event (if applicable) | Type of Shared Expense (if applicable) | | | | |
| **4** | Committee Name | | Payment Date | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Date of Joint Fundraising Event (if applicable) | Type of Shared Expense (if applicable) | | | | |
| **5** | Committee Name | | Payment Date | | | |
| | Street Address | | | | | |
| | City | State | ZIP | ☐ Cash ☐ Credit | | |
| | Date of Joint Fundraising Event (if applicable) | Type of Shared Expense (if applicable) | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 10) | | | | | |

Schedule B(10), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

REIMBURSEMENTS MADE:                                                                                          SCHEDULE B(11)

| | Recipient Information | Reimbursement Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name<br>Street Address<br>City  State  ZIP<br>Services or Goods Reimbursed  Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 2 | Name<br>Street Address<br>City  State  ZIP<br>Services or Goods Reimbursed  Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 3 | Name<br>Street Address<br>City  State  ZIP<br>Services or Goods Reimbursed  Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 4 | Name<br>Street Address<br>City  State  ZIP<br>Services or Goods Reimbursed  Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 5 | Name<br>Street Address<br>City  State  ZIP<br>Services or Goods Reimbursed  Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 11) | | | |

Schedule B(11), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

OUTSTANDING ACCOUNTS PAYABLE / DEBTS OWED BY COMMITTEE:                                                  SCHEDULE B(12)

| Debt Information | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **2** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **3** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **4** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **5** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 12) | | | |

Schedule B(12), page____ of ____

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

TRANSFER OUT SURPLUS MONIES / TRANSFER IN DEBT:                                                                   SCHEDULE B(13)

| | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Total (transfer the total disbursed this period to "Summary of Disbursements," line 13) | | |

Schedule A(13), page____ of ____

Arizona Secretary of State Revision 7/31/21 (fillable format)

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MISCELLANEOUS DISBURSEMENTS:                                                                SCHEDULE B(14)

| Recipient Information | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| 1   Name<br>Street Address<br>City          ZIP<br>Disbursement Type          Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 2   Name<br>Street Address<br>City          ZIP<br>Disbursement Type          Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 3   Name<br>Street Address<br>City          ZIP<br>Disbursement Type          Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 4   Name<br>Street Address<br>City          ZIP<br>Disbursement Type          Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 5   Name<br>Street Address<br>City          State          ZIP<br>Disbursement Type          Disbursement Date | ☐ Cash<br>☐ Credit | | |
| Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 14) | | | |

Schedule B(14), page____ of ____

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

AGGREGATE OF DISBURSEMENTS – $250 OR LESS:                                                SCHEDULE B(15)

|  | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Cumulative of Disbursements - $250 or Less |  |  |
| Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Disbursements," line 15) |  |  |

Schedule B(15), page_____ of