# EXHIBIT E



**STATE OF ARIZONA**

# 2019 ELECTIONS PROCEDURES MANUAL

**December 2019**



www.azsos.gov



1700 W. Washington St. Phoenix, AZ 85007



1-877-THE-VOTE (843-8683)

# ARIZONA
# ELECTIONS PROCEDURES MANUAL

A PUBLICATION OF
THE ARIZONA SECRETARY OF STATE'S OFFICE
ELECTIONS SERVICES DIVISION

**INTRODUCTION**
**FROM SECRETARY OF STATE KATIE HOBBS**

**December 2019**

I am pleased to provide the 2019 Elections Procedures Manual to county, city, and town election officials and other stakeholders throughout Arizona. Completing a long overdue update to the Elections Procedures Manual has been one of my Administration's highest priorities since transitioning into office in January 2019. To accomplish this, we worked in close partnership with County Recorders, Elections Directors, and their staff, and carefully considered feedback from other stakeholders and the public. With their invaluable contributions, we believe the 2019 Elections Procedures Manual will help ensure the maximum degree of correctness, impartiality, uniformity, and efficiency in election procedures across the state.

Secure, accurate, and accessible elections are at the heart of our democracy and they would not be possible without the continued dedication and vigilance of election workers across the State. Thank you for all that you do for Arizona's voters.

Sincerely,

Katie Hobbs
Arizona Secretary of State



### STATE OF ARIZONA
### OFFICE OF THE GOVERNOR

DOUGLAS A. DUCEY
GOVERNOR

EXECUTIVE OFFICE

December 20, 2019

The Honorable Katie Hobbs
Arizona Secretary of State
1700 West Washington Street, 7th Floor
Phoenix, AZ 85007

Dear Secretary Hobbs:

My office has reviewed the 2019 version of the Arizona Secretary of State Election Procedures Manual (2019 Procedures Manual) that you submitted for approval on December 18, 2019.

Based upon review and approval submitted on December 19, 2019 by the Attorney General's Office that the 2019 Procedures Manual complies with the Arizona election laws, and my office's review, I hereby approve the 2019 Procedures Manual in accordance with A.R.S. § 16-452(B).

Sincerely,

Douglas A. Ducey
Governor
State of Arizona



**MARK BRNOVICH**
ATTORNEY GENERAL

**OFFICE OF THE ATTORNEY GENERAL
STATE OF ARIZONA**

December 19, 2019

The Honorable Katie Hobbs
Arizona Secretary of State
1700 E. Washington Street
Phoenix, Arizona 85007

      Re:    Approval of the 2019 Elections Procedures Manual

Secretary Hobbs:

      Pursuant to A.R.S. § 16-452(B), my office has reviewed the draft Elections Procedures Manual submitted December 18, 2019. Based upon that review, we believe the submitted manual complies with Arizona's election statutes. Accordingly, I approve the Elections Procedures Manual as submitted on December 18, 2019.

                    Sincerely,

                    Mark Brnovich
                    Attorney General
                    State of Arizona

cc: Governor Doug Ducey

# ABOUT THIS PUBLICATION

Published by the Arizona Department of State, Office of the Secretary of State, Election Services Division

© 2019 ver. Ver. Release Date December 19, 2019

All Rights Reserved.

This publication may be reproduced for private use. It shall not be used for commercial purpose.

The office strives for accuracy in our publications. If you find an error, please contact us at (602) 542-8683 or 1-877-THE-VOTE (843-8683).

DISCLAIMER

The Office cannot offer legal advice or otherwise offer recommendations on information in this publication. The Office advises consultation with an attorney in such cases.

CONTACT US

Mailing address for all correspondence or filings:
Office of the Secretary of State
Attention: Election Services Division
1700 W. Washington St., FL 7
Phoenix, AZ  85007-2808

Telephone: (602) 542-8683
Fax: (602) 542-6172

www.azsos.gov

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## TABLE OF CONTENTS

**ABOUT THIS PUBLICATION** ................................................................................................ **2**

**CHAPTER 1:  Voter Registration** ..................................................................................... **1**

I.     Voter Registration Forms ................................................................................... 1

   A.   County/State Responsibility for Supplying Forms ........................................ 1

   B.   Eligibility to Use FPCA and FWAB Forms ................................................... 2

II.    Voter Registration Requirements ....................................................................... 2

   A.   Citizenship Requirement ............................................................................... 3

   B.   Age Requirement for Registration .............................................................. 11

   C.   Residency Requirements for Registration .................................................. 12

   D.   Effect of Felony Conviction on Qualification to Register to Vote .............. 13

   E.   Effect of Incapacitation on Qualification to Register to Vote ..................... 13

III.   Voter Registration Assistance Agencies .......................................................... 14

   A.   Designated Voter Registration Assistance Agencies .................................. 14

   B.   Tracking and Reporting Source of Registration .......................................... 15

IV.    Voter Registration Processing Procedures ....................................................... 16

   A.   Statewide Voter Registration Database ...................................................... 16

   B.   Registration Codes in the Statewide Voter Registration Database ............ 16

   C.   Minimum Required Information on Voter Registration Forms .................... 17

   D.   Political Party Preference ............................................................................ 21

   E.   Date of Registration .................................................................................... 21

   F.   Initial Duplicate Checking Within the County ........................................... 22

   G.   Electronic Verification Procedures ............................................................. 23

   H.   EZ Voter Registration .................................................................................. 23

   I.   Issuance of Voter Registration Cards ......................................................... 23

   J.   Help America Vote Act Identification Requirements .................................. 25

V.     Protection of Secured Registrants ................................................................... 25

   A.   Marking Secured Records ........................................................................... 26

   B.   Responding to Public Records Requests ..................................................... 26

   C.   Creating Signature Rosters or Uploading E-Pollbook Data ....................... 27

   D.   Issuance of Official Mail and Election Documents .................................... 27

   E.   Signing Candidate, Initiative, Referendum, or Recall Petitions ................. 27

   F.   Terminating Secured Registrant Status ...................................................... 28

VI.    Voter Registration Processing During "Books Closed" ................................. 28

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

VII.   Eligibility to Vote ........................................................................................ 29

   A.   Age Requirements to Vote in the Next Election.......................................... 29

   B.   Residency Requirements to Vote in the Next Election................................. 30

   C.   Registration Deadline to Vote in Next Election .......................................... 31

VIII.   Voter Registration List Maintenance .................................................... 33

   A.   Deceased, Felon, and Incapacitated Registrants .......................................... 33

   B.   Secretary of State Duties to Forward Registrant Information ...................... 35

   C.   Cancellation through NVRA Process Due to Address Changes.................... 37

   D.   Prohibition on Systematic Cancellations within 90 Days of Election .......... 40

IX.   Reporting Voter Registration Statistics ....................................................... 40

   A.   "Federal-Only" Registration and Ballot Report.......................................... 41

X.   Provision of Registration Data to Third Parties ........................................... 41

   A.   Precinct Lists to Recognized Political Parties ............................................. 41

   B.   Use of County Registration Rolls by Political Subdivision.......................... 43

   C.   Public Records Requests by Third Parties ................................................... 43

**CHAPTER 2:  Early Voting**.......................................................................... **46**

I.   Ballot-By-Mail .............................................................................................. 46

   A.   One-Time Requests to Receive a Ballot-by-Mail ........................................ 46

   B.   Requests to Be Placed on the Permanent Early Voting List......................... 49

   C.   Creation and Preparation of Early Ballots ................................................... 54

   D.   Mailing Ballots-by-Mail ............................................................................. 56

   E.   Issuing Replacement Ballots-by-Mail.......................................................... 59

   F.   Emergency UOCAVA Early Balloting Procedures ...................................... 59

   G.   Reporting UOCAVA Transmission Statistics .............................................. 59

   H.   Deadline to Return Ballots-by-Mail............................................................. 60

   I.   Ballot Drop-Off Locations and Drop-Boxes................................................ 60

   J.   Reporting Ballot-by-Mail Requests and Returns ......................................... 62

II.   On-Site Early Voting ................................................................................... 63

   A.   Posting Notice of Write-In and Withdrawn Candidates ............................... 63

   B.   Applicability of Voter ID Requirements...................................................... 64

   C.   Requirements and Security Procedures for Accessible Voting Devices ....... 64

III.   Emergency Voting ...................................................................................... 65

   A.   Establishing Emergency Voting Centers ..................................................... 65

   B.   Identification and Signed Statement Requirements...................................... 65

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

IV.    Special Election Boards ............................................................................................ 66

   A.    Time Periods for Requesting a Special Election Board ............................................ 66

   B.    Identification and Signed Statement Requirements .................................................. 66

V.    Challenges to Early Ballots ...................................................................................... 67

VI.    Processing and Tabulating Early Ballots .................................................................. 68

   A.    County Recorder Responsibilities ............................................................................ 68

   B.    Early Ballot Board Responsibilities ......................................................................... 69

   C.    Timing for Tabulation of Early Ballots and Reporting of Results ........................... 72

VII.    Eligibile Voters In Jail or Detention Facilities ........................................................ 72

**CHAPTER 3:  Ballot-by-Mail Elections ................................................................... 73**

  I.    Eligibility to Hold a Ballot-by-Mail Election ........................................................... 73

  II.    Approval to Hold a Ballot-by-Mail Election ............................................................ 73

  III.    Preparing and Mailing Ballots .................................................................................. 74

  IV.    Methods to Return or Replace Ballots ...................................................................... 74

  V.    Processing Voted Ballots in a Ballot-by-Mail Election ............................................ 75

  VI.    Post-Election Reporting Requirements ..................................................................... 75

**CHAPTER 4:  Voting Equipment ............................................................................... 76**

  I.    Voting Equipment Certification ................................................................................ 76

   A.    State Certification Process ........................................................................................ 77

   B.    Requirements for Equipment Decertification .......................................................... 84

   C.    Emergency Conditional Certification of Upgrade/Modification .............................. 85

  II.    Logic and Accuracy (L&A) Testing .......................................................................... 86

   A.    Timeframe to Conduct L&A Testing ........................................................................ 86

   B.    Public Notice of L&A Test ....................................................................................... 88

   C.    Observers for L&A Test ........................................................................................... 88

   D.    Process for Conducting L&A Tests by the Secretary of State .................................. 89

   E.    L&A Testing Standards ............................................................................................. 92

   F.    County L&A Testing ................................................................................................. 94

   G.    Retention of L&A Programs, Test Ballots, and Database ......................................... 95

  III.    Security Measures for Electronic Voting Systems .................................................... 95

   A.    Physical Security of the Electronic Voting System .................................................. 95

   B.    Data Security of the Electronic Voting System ....................................................... 96

  IV.    Contingency Planning ............................................................................................... 98

   A.    Tabulation Contingency Plan .................................................................................... 99

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

    B.   Election Program Contingency Plan..................................................................... 100

**CHAPTER 5:  Accommodating Voters with Disabilities ...................................... 101**

  I.   Voter Registration Information........................................................................ 101

  II.   Voting and Voting Location Information ....................................................... 102

  III.   Ensuring Accessibility at the Voting Location ............................................. 103

  IV.   Alternative Voting Options ........................................................................... 105

  V.   Special Election Boards ................................................................................. 106

**CHAPTER 6:  Candidate Nomination.................................................................... 107**

  I.   Nomination Procedures ................................................................................. 107

    A.   Candidates for Partisan Federal, State, and Local Office ......................... 107

    B.   Candidates for Nonpartisan Office ........................................................... 112

    C.   Presidential Candidates ............................................................................ 114

    D.   Candidate Nomination Petition Circulators ............................................. 117

    E.   Filing Officer for Candidate Documents .................................................. 118

    F.   Bases to Reject a Candidate Filing ........................................................... 119

  II.   Nomination Petition Challenges ................................................................... 120

    A.   Initiating a Candidate Petition Challenge ................................................. 120

    B.   Service of Process and Notification Requirements.................................... 121

    C.   County Recorder Signature Verification ................................................... 121

    D.   Duties of the Challenger and Candidate ................................................... 123

    E.   Court Hearing............................................................................................ 123

    F.   Costs and Expenses .................................................................................. 123

**CHAPTER 7:  Presidential Preference Election ................................................... 124**

  I.   Timing.......................................................................................................... 124

  II.   Eligibility to Participate in the PPE ............................................................. 124

    A.   Party Eligibility to Participate in the PPE................................................. 124

    B.   Eligibility to Vote in the PPE.................................................................... 124

    C.   Candidate Participation in the PPE ........................................................... 125

  III.   PPE Ballots .................................................................................................. 125

    A.   Official Ballot ............................................................................................ 125

    B.   Sample Ballots .......................................................................................... 125

  IV.   Conduct of the PPE ..................................................................................... 126

    A.   Voting Locations ....................................................................................... 126

    B.   Certification of Results ............................................................................. 127

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

V.   County Reimbursement for the PPE ................................................................. 127

**CHAPTER 8:  Pre-Election Procedures ...................................................... 128**

I.   Establishing Precincts and Voting Locations ................................................. 128

   A.   Establishing Precincts ............................................................................ 128

   B.   Establishing Voting Locations .............................................................. 128

   C.   Failure to Timely Establish Polling Places .......................................... 129

   D.   Consolidation of Polling Places Based on Lack of Candidates ............ 130

   E.   Factors to Consider When Selecting Voting Locations ......................... 130

   F.   Use of School Facilities for Voting Locations ...................................... 131

   G.   Polling Place/Vote Center Emergency Designation .............................. 131

   H.   Requirement to Allow Electioneering Outside 75-Foot Limit ............. 132

   I.   Ensuring Accessibility at the Voting Location ..................................... 132

II.   Appointment and Training of Poll Workers .................................................. 132

   A.   Election Board Duties ............................................................................ 134

   B.   Bilingual Poll Workers .......................................................................... 136

   C.   Student Poll Workers ............................................................................. 136

   D.   Poll Worker Training ............................................................................. 136

   E.   Poll Worker Compensation .................................................................... 139

III.   Designation of Political Party and other Observers ...................................... 139

   A.   Appointment Process ............................................................................. 139

   B.   Observer Credentials .............................................................................. 140

   C.   Observation at Voting Locations ........................................................... 140

   D.   Observation at Central Counting Places ............................................... 141

   E.   Observer Guidelines .............................................................................. 141

IV.   Issuing Pre-Election Notices ........................................................................ 142

   A.   Secretary of State: 120-Day Notice of Offices to be Elected .............. 142

   B.   County: 180-Day Notice of Election to Local Jurisdictions ................ 142

   C.   Special Taxing District/Nonpartisan Election Notices ......................... 143

V.   Preparation of Ballots ................................................................................... 144

   A.   Official Ballot Format ........................................................................... 144

   B.   Proofing Ballots ..................................................................................... 156

   C.   Sending Ballot Proofs to Candidates and Political Parties ................... 156

   D.   Financial Responsibility for Printing Ballots ....................................... 156

   E.   Storage and Security of Ballots ............................................................. 157

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

F.   Sample Ballots ................................................................................................... 157

VI.   Language Minority Voting Materials .................................................................. 159

A.   Voting Materials Required To Be in Minority Language(s) ..................................... 160

B.   Types of Elections Requiring Minority Language Voting Materials ........................ 160

VII.   Preparation of Signature Rosters and E-PollBooks ..................................................... 161

VIII.   Preparation of Voting Supplies ......................................................................... 163

A.   Materials to Be Distributed to Voting Locations ................................................. 163

B.   Provisional Ballot Envelope and Affidavit .......................................................... 165

IX.   Implementing a Wait Time Reduction Plan ....................................................... 166

A.   Projecting Voter Turnout .................................................................................. 166

B.   Re-Precincting ................................................................................................. 167

C.   Staffing and Supplying Voting Locations ........................................................... 167

D.   Conducting Voter Education .............................................................................. 168

E.   Developing Contingency Plans .......................................................................... 169

F.   Emergency Procedures ...................................................................................... 169

G.   Ballot Box Overflow Procedures ........................................................................ 170

H.   Complete Power or Unit Failure/Ballot Emergency Bin ....................................... 171

I.   Determining Optimal Layout ............................................................................ 172

J.   Wait-Time Reduction Survey ............................................................................ 172

K.   Public Input ..................................................................................................... 172

X.   Canceling An Election ....................................................................................... 172

**CHAPTER 9: Conduct of Elections/Election Day Operations ............................................. 173**

I.   Setting up the Voting Location .......................................................................... 173

A.   Notices to Be Posted at the Voting Location ...................................................... 174

II.   Opening the Voting Location ............................................................................ 177

III.   Preserving Order and Security at the Voting Location ....................................... 178

A.   Enforcing Electioneering Ban ............................................................................ 178

B.   Enforcing Photography Ban .............................................................................. 179

C.   Enforcing Access Restrictions ........................................................................... 179

D.   Preventing Voter Intimidation .......................................................................... 180

IV.   Checking Voter Identification ........................................................................... 181

A.   Acceptable Forms of Identification .................................................................... 182

B.   ID Requirements for Native American Voters ..................................................... 183

V.   Assisting Voters on Election Day ...................................................................... 184

VI.      Issuing Ballots ................................................................................................ 185

   A.   Issuing a Regular Ballot ............................................................................ 185

   B.   Issuing a Provisional Ballot ..................................................................... 186

VII.    Challenges to a Voter Eligibility to Vote .................................................... 189

VIII.   Closing the Voting Location ......................................................................... 191

   A.   Announcing the Closing of the Polls ........................................................ 191

   B.   Election Board Close-Out Duties ............................................................. 192

   C.   Transport of Ballots, Voting Equipment, and Precinct Supplies .............. 194

**Chapter 10:  Central Counting Place Procedures** .............................................. **195**

  I.    Central Counting Place Operations ............................................................... 195

   A.   Deputies/Oath of Office ............................................................................ 195

   B.   Providing Live Video Recording at Central Counting Place .................... 196

   C.   Manual Ballot Counting ........................................................................... 196

  II.   Establishing Central Counting Place Boards ................................................ 196

   A.   Receiving Board ........................................................................................ 197

   B.   Inspection Board ....................................................................................... 198

   C.   Central Counting Place Board ................................................................. 200

   D.   Ballot Duplication Board .......................................................................... 201

   E.   Accuracy Certification Board .................................................................... 203

   F.   Provisional Ballot Processing .................................................................. 203

   G.   Write-In Tally Board .................................................................................. 208

   H.   Audit Board ............................................................................................... 211

   I.   Snag Board ................................................................................................ 212

**Chapter 11:  Hand Count Audit** ............................................................................ **213**

  I.    Designation of Hand Count Board members ................................................ 213

  II.   Observation of the Hand Count Audit .......................................................... 214

  III.  Types and Quantities of Ballots to Hand Count .......................................... 214

   A.   Ballots Included in the Precinct Hand Count ........................................... 215

   B.   Ballots Included in the Early Ballot Hand Count ..................................... 215

  IV.   Selecting Precincts/Polling Places to be Hand Counted .............................. 215

  V.    Races Eligible to be Hand Counted .............................................................. 217

   A.   Eligible Races Generally ........................................................................... 217

   B.   Eligible Races in Special Elections .......................................................... 218

   C.   Eligible Races in PPEs ............................................................................. 218

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

VI.    Selecting Races to be Hand Counted ................................................................ 218

   A.    Selecting Races for Primary and General Elections ................................... 218

   B.    Selecting Races for a PPE .......................................................................... 221

VII.   Hand Count Tabulating Methods.................................................................... 222

   A.    Stacking Method for Optical/Digital Scan Ballots .................................... 222

   B.    Three-Person Call-Out Method for Ballots Cast on Accessible Voting Devices that Independently Tabulate Votes ....................................................................... 223

   C.    Process for Hand Counting Accessible Voting Audit Tapes ...................... 224

VIII.  Procedures for Conducting the Hand Count .................................................. 225

   A.    Precinct Hand Count .................................................................................. 225

   B.    Early Ballot Hand Count............................................................................. 228

   C.    Review of Election Program by a Special Master ...................................... 232

IX.    Standard for Determining Voter Intent in Hand Count .............................. 233

X.     Hand Count of Recounted Elections ............................................................. 234

XI.    Reporting Results of the Hand Count ........................................................... 234

**Chapter 12:  Other Post-Election Day Procedures ........................................... 235**

I.     Reporting Election Results ........................................................................... 235

II.    Conducting Post-Election Logic & Accuracy Test........................................ 235

III.   Filing Federal Post-Election Reports ............................................................ 236

   A.    Election Assistance Commission Reporting................................................ 236

   B.    Department of Justice UOCAVA Reporting .............................................. 236

IV.    Post-Election Reimbursement Requests ........................................................ 236

   A.    Reimbursement for Conducting Local Election ......................................... 236

   B.    Reimbursement for PPE Expenses.............................................................. 236

   C.    Reimbursement for Sample Ballots ............................................................ 237

**Chapter 13:  Certifying Election Results ........................................................... 238**

I.     Determining Election Results ....................................................................... 238

II.    Canvassing the Election ................................................................................ 239

   A.    County Board of Supervisors Canvassing Duties....................................... 239

   B.    Secretary of State's Canvassing Duties ...................................................... 243

   C.    City and Town Canvassing Duties.............................................................. 244

   D.    Special Taxing District Canvassing Duties................................................ 244

   E.    County School Superintendent Canvassing Duties..................................... 244

III.   Conducting an Automatic Recount ............................................................... 245

A.  Vote Margins that Trigger Recount .................................................... 245

B.  Method of Initiating a Recount ........................................................... 245

C.  Method of Conducting the Recount .................................................... 246

IV.   Issuing Certificates of Nomination and Election ........................................ 247

V.   Issuing Ballot Measure Proclamations...................................................... 248

VI.   Storage of Ballots and Returns of the Election ......................................... 248

**Chapter 14:  Regulation of Petition Circulators ............................................ 250**

I.   Qualifications for Petition Circulators ...................................................... 250

II.   Circulator Registration and Disclosure Requirements............................... 250

A.  Paid Circulators .................................................................................. 251

B.  Non-Resident Circulators.................................................................... 251

C.  Circulator Registration Procedures ..................................................... 252

D.  Service of Process on Registered Circulators ..................................... 253

III.   Signature Gathering and Verification Requirements ................................ 254

**CHAPTER 15: Political Party Recognition .................................................... 255**

I.   New Party Recognition ............................................................................. 255

A.  Requirements for Seeking New Party Recognition ................................ 255

B.  Processing Statewide New Party Petitions ........................................ 258

C.  Duration of New Party Recognition .................................................... 262

D.  Recognition Following Expiration of New Party Status......................... 262

E.  Expiration of New Party Status........................................................... 263

II.   Qualifying for Continued Recognition ...................................................... 263

A.  Statewide Continued Representation .................................................. 263

B.  County Continued Representation ....................................................... 264

C.  City or Town Continued Representation ............................................... 264

**CHAPTER 16:  Campaign Finance ............................................................... 265**

I.   Campaign Finance Reporting .................................................................... 265

II.   Campaign Finance Enforcement............................................................... 265

A.  Initiation of Campaign Finance Complaints ......................................... 266

B.  Notice of Complaint and Opportunity for Response and Reply ............. 268

C.  Decision by Filing Officer .................................................................. 269

D.  Decision by Enforcement Officer ....................................................... 271

E.  Response to Notice of Violation.......................................................... 272

**CHAPTER 17:  Appendices and Sample Forms............................................ 274**

# CHAPTER 1:
# VOTER REGISTRATION

## I.   VOTER REGISTRATION FORMS

Voter registration forms that are accepted in Arizona include:

- The state voter registration form prescribed by the Secretary of State pursuant to A.R.S. § 16-152(C) (the "State Form"), including any low-vision/large-print version of the State Form prescribed by the Secretary of State and made available on the Secretary of State's website.[1]

- The National Mail Voter Registration Form prescribed by the U.S. Election Assistance Commission pursuant to the National Voter Registration Act of 1993 (the "Federal Form").[2]

- Registrations electronically received from the Arizona Department of Transportation, Motor Vehicle Department (AZMVD) pursuant to A.R.S. § 16-112, whether through in-person registration at an AZMVD or AZMVD affiliate's office or online through the MVD portal or voter registration website.

- The Federal Postcard Application prescribed by U.S. Secretary of Defense (the "FPCA") pursuant to the Uniformed and Overseas Citizens Absentee Voting Act of 1986 (UOCAVA).[3]

- The Federal Write-In Absentee Ballot prescribed by the U.S. Secretary of Defense pursuant to UOCAVA (the "FWAB").[4]

### A. County/State Responsibility for Supplying Forms

The County Recorder is responsible for supplying (at no cost) State Forms to all federal, state, county, and local government agencies, political parties, and private organizations located within the County Recorder's jurisdiction that conduct voter registration activities. A.R.S. § 16-151(A).[5]

---

[1] The State Form is available at https://www.azsos.gov/elections/voting-election.

[2] 52 U.S.C. § 20505(a)(1); 52 U.S.C. § 20508(a)(2). The Federal Form is available at https://www.eac.gov/voter_resources/ register_to_vote.aspx.

[3] A.R.S. § 16-103(B); 52 U.S.C. § 20301(b)(2); 52 U.S.C. § 20302(a)(4); Executive Order 12642 (June 9, 1988). The FPCA is available at https://www.fvap.gov/military-voter/overview.

[4] A.R.S. § 16-543.02(D); 52 U.S.C. § 20302(a)(4); Executive Order 12642 (June 9, 1988). The FWAB is available at https://www.fvap.gov/military-voter/overview.

[5] Any low-vision/large-print version of the State Form prescribed by the Secretary of State will be made available on the Secretary of State's website for individuals and organizations to download as a fillable PDF. Neither County Recorders nor the Secretary of State are required to supply printed copies of any low-vision/large-print version of the State Form.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The Secretary of State is responsible for supplying (at no cost) Federal Forms to all federal, state, county, and local government agencies, political parties, and private organizations that conduct voter registration activities. A.R.S. § 16-151(B).

The Secretary of State and County Recorders may place reasonable restrictions on the number of forms to be provided to individuals or organizations depending on the type of voter registration activity to be conducted and reasonable estimates of the number of voters that the individual or group will seek to register. If the individual or group exhausts the forms provided, the Secretary of State and/or County Recorders must provide additional forms upon request, subject to the same reasonable restrictions as the initial request.

Any registration form in compliance with applicable state or federal laws may be used to register to vote for the first time or amend/update an existing registration record. In addition, other documents may be used to amend/update a registrant's address, including but not limited to a request for an early ballot, a permanent early voting list (PEVL) request form, or a provisional ballot envelope or affidavit. A.R.S. § 16-135(A), (E); A.R.S. § 16-544(D)(1), (2).

### B.  Eligibility to Use FPCA and FWAB Forms

The following registrants temporarily absent from the State are authorized to use the FPCA for registration and the FWAB for registration and voting:

- Uniformed service members;
- Eligible family members of uniformed service members;
- Overseas voters; and
- Non-resident U.S. Citizens with parents already registered to vote in Arizona.

52 U.S.C. § 20310; A.R.S. § 16-103; A.R.S. § 16-543(C). For more information on eligibility, visit www.fvap.gov or the Secretary of State's website (https://azsos.gov/elections/voting-election/military-and-overseas-voters).

A UOCAVA registrant may designate the method for transmission of voting materials and information on the FPCA form, including electronic transmission, fax, or regular mail. A UOCAVA registrant may designate the length of time they wish to receive voting materials, not to exceed two federal election cycles. If no designation is made, the UOCAVA registrant's request for email, fax, or electronic transmission of voting materials will be valid until immediately after the next state general election. A.R.S. § 16-542(B).

## II.    VOTER REGISTRATION REQUIREMENTS

A person is qualified to *register* to vote in Arizona if the person:

- Is a United States citizen;
- Will be 18 years old by the date of the next general election;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Will have been an Arizona resident for at least 29 days prior to the next election;

- Can write their name (or make their mark), unless prevented from doing so by physical disability;

- Has not been convicted of treason or a felony, unless their civil rights have been restored; and

- Has not been found mentally incapacitated by a court.

Ariz. Const. Art. VII, § 2; A.R.S. §§ 9-822(A); 16-101; 16-126(A); 16-152. Each qualification is discussed in further detail below.

## A. Citizenship Requirement

A registrant must be a U.S. citizen to be qualified to register to vote. Ariz. Const. Art. VII, § 2; A.R.S. § 16-101(A)(1); 18 U.S.C. § 611(a).

U.S. citizenship must be sworn to when registering to vote. In addition, under Arizona's bifurcated or dual-track voter registration system, an acceptable form of documentary proof of citizenship (DPOC) is required to be registered as a "full-ballot" voter. A "full-ballot" voter is entitled to vote for all federal, state, county, and local races as well as state and local ballot measures for which the voter qualifies.

An otherwise eligible registrant who does not submit DPOC and whose U.S. citizenship cannot be verified via AZMVD records or other record in the statewide voter registration database is registered as a "federal-only" voter. A "federal-only" voter is eligible to vote solely in races for federal office in Arizona (including the Presidential Preference Election (PPE)).

### 1. Valid Forms of DPOC

The following section outlines what constitutes satisfactory DPOC under Arizona law.

#### a. *Driver Licenses and Identification Cards*

A registrant may submit certain state-issued driver license or non-driver identification card information as satisfactory DPOC. A.R.S. § 16-166(F)(1).

##### i.   Arizona Driver License or Non-Driver Identification Card Number

An Arizona driver license or non-driver identification card number (AZDL/ID#) issued by AZMVD after October 1, 1996 constitutes valid DPOC. To be deemed satisfactory, (1) the AZDL/ID# must be verified against AZMVD records; and (2) the verification must not return a result that indicates non-citizenship (*i.e.*, an "F-type" license).

A County Recorder may accept a copy of the registrant's AZDL/ID# as DPOC, but must still enter the AZDL/ID# into the statewide voter registration database so it can be verified against AZMVD

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

records. AZMVD issues "F-type" licenses or ID cards to those who are non-citizens at the time of issuance. Because an F-type designation is not apparent on the face of the license or ID card, an AZDL/ID# alone is not sufficient to prove citizenship without verification against AZMVD records.

### ii.  Out-of-State Driver License or Identification Card

An out-of-state driver license or identification card may constitute satisfactory DPOC if it was issued by the state's driver license-issuing agency and indicates *on the face of the license or card* that the person provided proof of U.S. citizenship in that state. A County Recorder may accept an approved out-of-state license or identification card at face value and need not electronically verify the license or card.

For example, enhanced driver licenses or enhanced identification cards from other states that are issued in compliance with the Departments of State and Homeland Security's Western Hemisphere Travel Initiative satisfy Arizona's DPOC requirement. These states display an American flag on the face of the license or card. Examples of an enhanced license from Michigan and New York appear below with the American flag circled.

 

While a County Recorder shall not accept an out-of-state driver license or identification card number alone (because the statewide voter registration database cannot electronically verify these numbers), a County Recorder may visually verify or accept a copy of these licenses or cards for DPOC purposes.

### b.  *Birth Certificate*

A registrant may submit a legible copy of the registrant's birth certificate from any U.S. state or territory as satisfactory DPOC. A.R.S. § 16-166(F)(2). For U.S. citizens born abroad, a "Certification of Report of Birth" or "Consular Report of Birth Abroad" issued by a consular officer from the U.S. Department of State will suffice for a birth certificate. 22 U.S.C. § 2705(2).

The registrant must supply supporting legal documentation (such as a marriage certificate or court-documented name change) if the name on the birth certificate or document is not the registrant's current legal name. If the registrant cannot provide supporting legal documentation to account for a different last name, a County Recorder must accept the birth certificate or document if at least

the following information matches on both the birth certificate or document and the registration form:

- First name;
- Middle name;
- Place of birth;
- Date of birth; and
- Parents' name(s).

### c.  *U.S. Passport*

A registrant may submit a legible copy of the pertinent pages of the registrant's U.S. passport or passport card, or present the registrant's U.S. passport or passport card to the County Recorder, as DPOC. A.R.S. § 16-166(F)(3).

The pertinent pages of a U.S. passport are those that contain the photo, passport number, name, nationality, date of birth, gender, place of birth, and signature (if applicable). A U.S. passport card also may be accepted, which does not contain a signature.

If the County Recorder visually inspects (and does not make a copy of) the pertinent passport pages or passport card, the County Recorder must note in the registrant's voter registration record that the passport was inspected.

### d.  *Citizenship and Immigration Documents*

A registrant may present the registrant's original naturalization documents to the County Recorder for inspection or submit (1) a legible copy of the registrant's Certificate of Naturalization or Certificate of Citizenship, or (2) the registrant's Naturalization Certificate Number, Citizenship Certificate Number, or Alien Registration Number (also known as an "A-Number").

If a registrant does not present originals or provide a copy of documents but just provides a citizenship number, including a Citizenship Certificate Number, Naturalization Certificate Number, or Alien Registration Number, for proof of citizenship purposes, this number must be verified against U.S. Citizenship and Immigration Services (USCIS) Systematic Alien Verification for Entitlements (SAVE) database before the number can be deemed satisfactory. A.R.S. § 16-166(F)(4); *see* Chapter 1, Section II(A)(6) for more information on SAVE verification procedures.[6]

### e.  *Tribal Identification Numbers and Documents*

---

[6] While the SAVE database may be used to verify citizenship status for initial registration, it shall not be used for list maintenance purposes, *i.e.* to cancel an existing registration. *See* A.R.S. § 16-165.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

A registrant may submit a Tribal Enrollment Number, Indian Census Number, Bureau of Indian Affairs Card Number, or Tribal Treaty Card Number as satisfactory DPOC. These tribal identification numbers are presumed valid for voter registration purposes and need not be verified against any database. A.R.S. § 16-166(F)(6).

A registrant may also submit a legible copy of the registrant's Tribal Certificate of Indian Blood or Tribal/Bureau of Indian Affairs Affidavit of Birth as satisfactory DPOC.

## 2. DPOC Requirement for "Full-Ballot" Voter Designation

Regardless of the type of voter registration form submitted, a County Recorder must make a registrant a "full-ballot" voter for the next election if:

- The registrant provides DPOC with or after submission of the registrant's voter registration application; or
- The County Recorder acquires DPOC on the registrant's behalf, including from AZMVD records or the statewide voter registration database.

A.R.S. § 16-166(F); *see also League of United American Citizens of Arizona (LULAC) v. Reagan*, 2:17-cv-04102-DGC, Doc. 37 (D. Ariz. June 18, 2018) (the "LULAC Consent Decree").

### a. *Acquisition of DPOC from State Records*

The Secretary of State must program or enable the statewide voter registration database to attempt to acquire DPOC for new registrants from AZMVD records. This attempt to acquire DPOC must be completed in all cases where a new registrant fails to provide DPOC with the voter registration form. The Secretary shall promptly notify the applicable County Recorder of the results of the check against AZMVD records. If DPOC is acquired, the Secretary shall promptly notify the applicable County Recorder, via the automated process in the voter registration database, to make the applicant a "full-ballot" voter. However, in no event shall an acquired "F-Type" Arizona driver license number qualify as valid DPOC.

### b. *Registrant's Submission of DPOC*

A registrant may provide DPOC at the time of submitting the registrant's voter registration application or by 5:00 p.m. on the Thursday before the election. *See* LULAC Consent Decree at 5. The registrant is entitled to vote a "full-ballot" at the next election if:

- The registrant submitted a voter registration application by the registration deadline; and
- The registrant provided DPOC to the County Recorder with the registration application or separately by 5:00 p.m. on the Thursday before the election.

If a registrant does not provide DPOC with their registration application and valid DPOC otherwise cannot be electronically acquired via AZMVD records or the statewide voter registration database (and the registrant is not shown to have an F-Type license), a County Recorder must:

1. Designate the registrant as a "federal-only" voter; and

2. Send a letter to the registrant (including a DPOC Submission Form/"Federal-Only" Notice promulgated by the Secretary of State and County Recorders, *see* sample forms in Chapter 17) within 10 business days, informing the registrant that:

    • The registrant has not satisfied the DPOC requirements;

    • The registrant must submit DPOC to become a "full-ballot" voter, and the registrant must provide DPOC by 5:00 p.m. on the Thursday before any given election in order to vote a "full-ballot" in that election; and

    • The registrant will remain a "federal-only" voter unless and until the registrant submits valid DPOC to become a "full-ballot" voter.

The registrant may provide separate DPOC using the DPOC Submission Form. A registrant who provides DPOC using a method other than the DPOC Submission Form sent by the County Recorder must be made a "full-ballot" voter if the County Recorder has sufficient information to link the registrant's DPOC with the registrant's form on file. If the County Recorder lacks sufficient information to link the DPOC to a registration form, the County Recorder must make a reasonable effort to follow up with the registrant to seek the necessary information. Registrants who subsequently provide the missing information necessary to link their submitted DPOC to their registration form shall be made "full-ballot" voters within 10 business days.

If the registrant provides DPOC to the County Recorder *after* 5:00 p.m. on the Thursday before the next election, the County Recorder must make the registrant a "full-ballot" voter for *future* elections within five business days after the completion of processing of provisional ballots.

### 3. Procedures for Registrants with F-Type License

If a registrant has not provided DPOC other than an AZDL/ID# and AZMVD records show that the registrant has an F-Type license, a County Recorder must:

1. Enter the registrant's information into the voter registration database with a status of "not eligible" (or functional equivalent) and a reason code of "invalid citizenship proof" (or functional equivalent);

2. Send a letter to the registrant (including a DPOC Submission Form/F-Type Notice, promulgated by the Secretary of State and County Recorders, see Chapter 17 for sample forms) within 10 business days, informing the registrant that:

    • According to AZMVD records, the registrant holds an F-Type license indicating non-citizenship and has not been registered to vote for that reason; and

    • The registrant may be registered and become a "full-ballot" voter if the registrant submits valid DPOC to the County Recorder. The registrant must provide DPOC by 5:00 p.m. on the Thursday before the next regular general election in order to vote a "full-ballot" in that election.

3. Maintain the registrant's information in the voter registration database with a status of "not eligible" (or functional equivalent) until the next regular general election if the registrant has not provided valid DPOC. If, after the next regular general election, the registrant still

has not provided valid DPOC, the registrant's record may be changed to "not registered" (or functional equivalent). The registrant would then be required to complete a new registration form in order to become eligible to vote in future elections.

## 4. "Federal-Only" Voter Designation

A registrant who submits an otherwise valid voter registration form to the County Recorder, but without accompanying DPOC, is entitled to be registered as a "federal-only" voter based on the registrant's sworn statement on the registration form that the registrant is a U.S. citizen. A registrant may become a "federal-only" voter regardless of the type of voter registration form submitted. An otherwise valid voter registration form submitted to the County Recorder, but without accompanying DPOC, shall be accepted, entered into the database, and registered for federal elections (*i.e.*, made a "federal-only" voter unless and until proof of citizenship is received or acquired), so long as the registrant is not shown to have an F-Type license.

A "federal-only" voter shall be upgraded to a "full-ballot" voter if:

- The County Recorder acquires DPOC on the registrant's behalf from AZMVD records or the statewide voter registration database; or
- The registrant provides DPOC to the County Recorder by 5:00 p.m. on the Thursday before an election.

If a "federal-only" voter has been issued a ballot-by-mail, but becomes a "full-ballot" voter prior to 5:00 p.m. on the Thursday before the election, the voter may:

- Vote the "federal-only" ballot-by-mail; *or*
- Vote a regular or provisional "full-ballot" in-person during early voting or on Election Day, depending on the procedures implemented by the officer in charge of elections.

If a voter is issued both an early "federal-only" ballot and an early "full-ballot," the first ballot returned to the County Recorder's office is the only ballot that will be counted.

## 5. DPOC When Moving Between Counties

A voter who registered to vote before December 13, 2004, and was therefore exempted from the requirement of providing DPOC, must submit valid DPOC if the voter is changing voter registration from one county to another in order to be registered as a "full-ballot" voter in the new county. A.R.S. § 16-166(G).

Registered voters who submitted valid DPOC to the County Recorder in their county of residence need not resubmit evidence of citizenship upon moving and registering to vote in a new county in Arizona so long as a record of their previously-submitted DPOC is accessible by the new County Recorder (*e.g.*, via AZMVD records or the statewide voter registration database) and can be made part of their voter registration file in the new county. While proof of voter *registration* from another state or county is not satisfactory evidence of citizenship, A.R.S. § 16-166(H), valid documentary

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

proof of <u>*citizenship*</u> presented in one Arizona county and documented in the statewide voter registration database constitutes valid DPOC if the voter registers in another county in Arizona.

### 6.  Verifying Citizenship/Naturalization/Alien Registration Numbers

#### a.  *SAVE Usage*

Each County Recorder accesses SAVE pursuant to the Secretary of State's Memorandum of Agreement with USCIS (the "USCIS MOA"). The Secretary of State will provide SAVE access to each County Recorder upon signing a separate agreement (the "SOS/County SAVE Agreement") that will govern the terms of SAVE usage (and, in some cases, billing as well, though some counties have a separate Reimbursement Memorandum of Agreement with USCIS).

A registrant must remain in "suspense" status until the County Recorder verifies the Citizenship, Naturalization, or Alien Registration Number through SAVE. If SAVE returns "United States Citizenship," the registrant's status must be updated to "active" in the voter registration database and the voter must be registered as a "full-ballot" voter.

##### i.  <u>SAVE Returns Non-Citizen Status</u>

If SAVE returns "Lawful Permanent Resident," "Refugee," "Non-Immigrant," or "Asylee," or other non-citizen status, the registrant must be processed like those with an F-Type license. *See* Chapter 1, Section II(A)(3) above. Specifically, a County Recorder must:

1.  Enter the registrant's information into the voter registration database with a status of "not eligible" (or functional equivalent);

2.  Send a letter to the registrant (including a DPOC Submission Form/SAVE Non-Citizen Notice, *see* Chapter 17 for sample forms) within 10 business days, informing the registrant that:

    •  According to DHS records, the registrant holds an immigration number indicating non-citizenship and has not been registered to vote for that reason; and

    •  The registrant may be registered as a "full-ballot" voter if the registrant submits other valid DPOC to the County Recorder. The registrant must provide DPOC by 5:00 p.m. on the Thursday before the next regular general election in order to vote a "full-ballot" in that election.

3.  Maintain the registrant's information in the voter registration database with a status of "not eligible" (or functional equivalent) until the next regular general election if the registrant has not provided valid DPOC. If, after the next regular general election, the registrant still has not provided valid DPOC, the registrant's record may be changed to "not registered" (or functional equivalent). The registrant would then be required to complete a new registration form in order to become eligible to vote in future elections.

##### ii.  <u>SAVE Returns No Match</u>

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

If SAVE is unable to find a match, the registrant must be processed like any other registrant who has not provided satisfactory DPOC. *See* Chapter 1, Section II(A)(4). Specifically, if valid DPOC cannot be electronically acquired via AZMVD records or the statewide voter registration database (and the registrant is not shown to have an F-Type license), a County Recorder must:

1. Process the voter registration application and designate the registrant as a "federal-only" voter; and

2. Send a letter to the registrant (including a DPOC Submission Form/SAVE No-Match Notice, *see* Chapter 17 for sample forms) within 10 business days, informing the registrant that they have been registered as a "federal-only" voter and must submit other valid DPOC to become a "full-ballot" voter.

### b.  *Naturalization Ceremonies*

County Recorder representatives who conduct registration drives at naturalization ceremonies must take special precautions to ensure registration forms are properly processed.

- The County Recorder representative who receives the registrant's completed voter registration form must write the representative's name or initials on the form, along with the date and some indication that the form was completed at a naturalization ceremony (*e.g.*, "NC");

- The County Recorder representative who conducted the registration drive must ensure that the registrant's Citizenship, Naturalization, or Alien Registration Number is written on each registration form; and

- If any registrants reside outside that county, the County Recorder representative must bundle the voter registration forms by county and send them to the applicable County Recorders, along with a cover letter affirming that the registration forms were received through a naturalization ceremony.

The County Recorder who receives the bundle may rely on this cover letter (*see* Chapter 17 for a sample form) as verification of citizenship. The County Recorder need not re-check any citizenship or immigration numbers to verify citizenship and may register the newly naturalized registrants as "full-ballot" voters (assuming no other deficiencies).

### c.  *Verifying Citizenship Near Voter Registration Deadlines*

Often there is a delay between when a registrant becomes a U.S. citizen and when that registrant's citizenship status has been updated in SAVE. Therefore, certain precautions must be taken if a County Recorder receives a voter registration form within two weeks of a registration deadline that contains a Citizenship, Naturalization or Alien Registration Number:

- If a County Recorder receives a registration form within 14 days of a voter registration deadline, the County Recorder must, as soon as practicable, notify the registrant by telephone and/or email (or by mail if the registrant's telephone number or email is not available) about the potential need (in case SAVE results are not ready by the deadline) to

submit further DPOC to be a "full-ballot" voter for the next election. For example, the registrant may present their naturalization papers or submit a copy to the County Recorder to satisfy the DPOC requirement.

• Within two weeks of Election Day, a County Recorder must check SAVE for the results of any pending verifications to print or create precinct registers for Election Day. If any cases remain pending for additional verification at that time, the County Recorder should be prepared to supplement the precinct registers immediately preceding the election or be prepared to issue Recorder's Certificates to any newly registered voters whose citizenship was verified at the last minute. If the County Recorder cannot obtain verification of citizenship from SAVE by 5:00 p.m. on the Thursday before Election Day, the registrant must be registered as a "federal-only" voter and the County Recorder must notify the registrant that the registrant must submit other valid DPOC in order to become a "full-ballot" voter for future elections. *See* Chapter 1, Section II(A)(6).

### 7. Preservation and Protection of Citizenship Documentation

A County Recorder must maintain all DPOC received pursuant A.R.S. § 16-166(F) in a manner that the County Recorder reasonably believes will prevent access by unauthorized persons. Documents submitted for purposes of proving citizenship may be maintained outside the voter registration database, but the County Recorder must other document in the voter registration database that DPOC had been received.

A County Recorder may destroy citizenship documents two years after the date of receipt. The County Recorder must exercise reasonable diligence to ensure any citizenship documents are properly destroyed. A.R.S. § 16-166(F), (J).

### B. Age Requirement for Registration

A registrant must be at least 18 years old by the next "regular general election" that occurs following their registration. A.R.S. § 16-101(A)(2). For purposes of this requirement, the next "regular general election" is the next statewide general election held pursuant to A.R.S. § 16-211.[7]

A minor who is qualified to register to vote is not necessarily a qualified elector for the next election. For example, a minor who will turn 18 years of age on November 1, 2020 is eligible to register to vote starting on November 7, 2018. However, although registered, that minor will not be eligible to vote in the August 4, 2020 Primary Election, or any earlier elections, because they will not yet be 18 years of age as required by Ariz. Const. art. VII, § 2.

If a County Recorder receives a voter registration form from a registrant who will be at least 18 years old on or before the next statewide general election, but will not be 18 years old at the time

---

[7] A.R.S. § 16-152(A)(15) requires that the state voter registration form ask whether a registrant will be 18 years old "on or before *election day*" in order to register to vote. (Emphasis added). However, this provision must be interpreted consistently with A.R.S. § 16-101(A)(2), and therefore only forbids registration if the registrant will not be at least 18 years old by the next *general* election.

of the next election, the registrant must be entered in the voter registration database and placed in a "suspense" status with a "registrant too young" reason code (or functional equivalent).

The County Recorder, after verifying citizenship as outlined in Chapter 1(II)(A), must notify the registrant by mail within 10 business days of receipt of the registration form to: (1) inform the registrant that their registration will remain in "suspense" until the registrant turns 18; (2) specify the next election where the registrant will be eligible to vote; and (3) specify the registrant's "full-ballot" or "federal-only ballot" designation  (providing an opportunity to submit DPOC where applicable). A.R.S. § 16-101(A)(1),(2),(3); A.R.S. § 16-134(B); A.R.S. § 16-152(A)(15); *see* Chapter 17 for sample forms.

On or after the registrant's 18th birthday, the registrant's status must be changed to "active" to make the registrant a qualified elector for the next election.

A registered minor is not eligible to sign candidate, initiative, referendum, or recall petitions or petitions for political party recognition until they turn 18 years old. A.R.S. § 16-121(A); A.R.S. § 16-321(F); A.R.S. § 19-121.02(A); A.R.S. § 19-208.02(A); A.R.S. § 16-803(F).

In order to maintain eligibility to vote in the next general election, the registered minor must be a resident for the 29 days preceding the election, except as provided in A.R.S. § 16-126.  A.R.S. § 16-101(A)(4). *See also* A.R.S. § 16-593.

## C. Residency Requirements for Registration

A new registrant must be a resident of Arizona at least 29 days before the next election. A.R.S. § 16-101(A)(3). A County Recorder has no duty to verify a registrant's residency status and may rely on the registrant's affirmation of residency.

A registrant is a "resident" if they have physical presence in the county along with an intent to remain. A registrant may be temporarily absent from the jurisdiction without losing their residency status, as long as they have an intent to return. A.R.S. § 16-103.

For example, although a UOCAVA registrant may register to vote any time prior to 7:00 p.m. on Election Day, a UOCAVA registrant must still be an Arizona "resident" in that they must: (i) have had physical presence (with an intent to remain) in the county of registration at least 29 days prior to the election; and (ii) have an intent to return to the county following the period of temporary absence. A.R.S. § 16-103.

Although often interchangeable, the 29-day residency qualification (A.R.S. § 16-101(A)(3)) is distinct from the 29-day deadline to register to vote (A.R.S. § 16-120) in advance of an election. For example, the voter registration deadline may change if it falls on a state holiday, but this does not affect the requirement to be a resident at least 29 days before the next election. Voter registration deadlines are addressed in Chapter 1, Section VII(C).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Notwithstanding the 29-day residency requirement, a registrant who moved away from Arizona after the 30th day immediately preceding a presidential election may vote for presidential electors in Arizona (and for no other races or ballot questions) by early ballot in the Arizona precinct from which the registrant moved, in-person at the County Recorder's office, or by mail. A.R.S. § 16-126(A). A registrant who votes pursuant to this provision shall have their registration promptly canceled after the election. A.R.S. § 16-126(B).

The only other exception to the requirement for residency prior to the election is for a UOCAVA registrant who has never resided in the United States but has at least one parent registered to vote in Arizona at the time of registration. A.R.S. § 16-103(E). *See* Chapter 1, Section I(B) for more information on registration and voting requirements for UOCAVA registrants.

### D. Effect of Felony Conviction on Qualification to Register to Vote

A registrant may not register to vote if they have been convicted of treason or a felony, unless their civil rights have been restored. A.R.S. § 16-101(A)(5). If a registrant has had only one felony conviction, civil rights are automatically restored upon: (i) completion of probation or receipt of an absolute discharge from imprisonment; and (ii) payment of any restitution imposed. Payment of any other legal financial obligations, such as fines or court fees, is no longer required before civil rights are automatically restored after a first felony conviction. A.R.S. § 13-907. Those who have only misdemeanor convictions or are in pretrial detention remain eligible to register to vote assuming no other deficiencies.

A registrant must affirm under penalty of perjury that they are not barred from registering to vote due to a felony conviction. A.R.S. § 16-152(A)(16). A County Recorder has no duty to verify whether the civil rights of a registrant with felony conviction(s) have been restored and may rely on the registrant's affirmation when registering to vote. For more information on when and how civil rights may be restored, see A.R.S. § 13-604(A); A.R.S. § 13-905; A.R.S. § 13-906; A.R.S. § 13-907; A.R.S. § 16-1011(C).

### E. Effect of Incapacitation on Qualification to Register to Vote

A registrant may not register to vote if they have been adjudicated mentally incapacitated by a court with their voting rights revoked. A.R.S. § 16-101(A)(6); A.R.S. § 14-5101(3). A registrant must affirm under penalty of perjury that they are not barred from registering to vote due to a court adjudication of mental incapacitation under A.R.S. § 14-5101(3). A County Recorder has no duty to verify whether a registrant has been adjudicated mentally incapacitated and may rely on the registrant's affirmation when registering to vote. For more information on findings of incapacitation and retention of voting rights, see A.R.S. § 14-5101(3); A.R.S. § 14-5304.02.

## III.   VOTER REGISTRATION ASSISTANCE AGENCIES

### A. Designated Voter Registration Assistance Agencies

Various agencies, organizations, and offices in Arizona may be designated as "voter registration assistance" agencies. An officially-designated voter registration assistance agency:

- Provides assistance in registering to vote without regard to political party or affiliation;

- Develops written policies and conducts internal training to ensure compliance with federal and state voter registration laws;

- Meets with the Secretary of State and/or County Recorder, as applicable, on an as-needed basis to discuss voter registration policies and procedures;

- Receives State Forms (from the applicable County Recorder) and Federal Forms (from the Secretary of State) on a regular basis; and

- Accepts and agrees to return completed voter registration forms to the applicable County Recorder within five business days of receipt of the completed forms.[8]

All public assistance agencies and disabilities agencies are designated as voter registration assistance agencies under federal and state law and are subject to specified responsibilities to conduct voter registration. 52 U.S.C. § 20506(a)(2); A.R.S. § 16-140.

- A "public assistance agency" means a state agency, division, or office that provides cash or in-kind assistance (such as access to medical care or transportation) to low-income or underserved populations. A.R.S. § 16-140(F)(3). The following agencies or divisions constitute "public assistance agencies" in Arizona:

  - Arizona Department of Economic Security (DES): Family Assistance Administration (FAA) within the Division of Benefits and Medical Eligibility (DBME)

  - Arizona Health Care Cost Containment System (AHCCCS)

  - Arizona Department of Health Services (DHS): Division of Health Prevention

- A "disabilities agency" means a state agency, division, or office that administers state-funded programs to provide services to persons with disabilities. A.R.S. § 16-140(F)(2). The following offices or divisions constitute "disabilities agencies" in Arizona:

  - Arizona Department of Economic Security (DES):

    a. Developmental Disabilities Division (DDD)

    b. Employment and Rehabilitation Services Division (DERS)

---

[8] 52 U.S.C. § 20506; A.R.S. § 16-134(A); A.R.S. § 16-140; A.R.S. § 16-141.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Armed Forces Recruiting Centers are also designated as voter registration assistance agencies. 52 U.S.C. § 20506(c); A.R.S. § 16-140; A.R.S. § 16-141; *see also* Department of Justice guidance, *available at* https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.

A County Recorder may also designate additional "voter registration volunteers" at their discretion, which could be any person, group, or entity, and may include governmental or nonprofit and other private organizations. 52 U.S.C. § 20506(a)(3); A.R.S. § 16-140(E), (F)(1).

The Secretary of State's Office will publish guidance for voter registration assistance agencies on complying with federal and state statutory requirements, which will be made available at https://azsos.gov/elections. Voter registration assistance agencies may also consult the Secretary of State's Office directly for guidance and assistance relating to voter registration responsibilities and should submit written procedures and training materials to the Secretary of State's Office.

## B. Tracking and Reporting Source of Registration

Registration forms provided to a designated voter registration assistance agency or voter registration volunteer should bear a registration source code, if practicable. The source code may not disclose the specific agency or office that issued the form, nor may the source code provide any indication that a form was issued by a public assistance or disabilities agency. The source code from a particular registrant's form may not be publicly disclosed, and may only be used by election officials to monitor compliance with federal and state law. A.R.S. § 16-140(D).[9]

A voter registration assistance agency should make its best efforts to ensure that the agency distributes voter registration forms with pre-populated source codes to the appropriate divisions or offices within the agency. Completed registration forms returned to the County Recorder should be distinguished between those received from public assistance versus disabilities assistance agencies, where applicable, for proper tracking. If the agency directs applicants to register to vote online (either through www.servicearizona.com (or subsequent voter registration website) or by downloading a registration form), the agency must utilize a reasonable method to track which applicants were directed to an online registration method, and offer to mail a paper registration form, at the applicant's request, if the applicant is unable to access online registration or unable to download and print a registration form.

A County Recorder should make best efforts to ensure, to the extent practicable, that State Forms provided to a public assistance or disabilities agency have the appropriate pre-populated source code to allow reliable tracking of the origin of a completed form. The source code should not be publicly decipherable, but should allow a County Recorder to internally distinguish between public assistance versus disabilities agencies. A.R.S. § 16-140(D); A.R.S. § 16-152(A)(22). A County Recorder must input the source of registration into each registrant's electronic registration record. *See* Chapter 1, Section IV(B)(2).

---

[9] If, under certain circumstances, pre-populated source codes are not practicable, a County Recorder should develop another reliable method to receive and track completed voter registration forms directly received from voter registration assistance and disabilities agencies.

The Secretary of State must report the number of registrations received through voter registration assistance agencies to the U.S. Election Assistance Commission on a biennial basis. Accordingly, the County Recorders should ensure (through use of pre-populated source codes or other reliable method) that completed registration forms received from state agencies can be properly distinguished between a public assistance versus a disabilities assistance agency.

## IV.   VOTER REGISTRATION PROCESSING PROCEDURES

### A. Statewide Voter Registration Database

Beginning November 2019, Arizona will operate a new voter registration and election management system called Arizona Voter Information Database (AVID). The statewide database is a matter of statewide concern and is not subject to modification or further regulation by a political subdivision. Maricopa and Pima County systems link to the state system through an interface. The 13 smaller counties directly use the state system. To the extent practicable, Maricopa and Pima County's systems will use the same terms, codes, and classifications as the state system. To the extent it is necessary for Maricopa and Pima to use different terms, codes, and classifications, they must correspond to the terms, codes, and classifications in the state system. Maricopa and Pima County must file a detailed and complete explanation of their voter registration system or program and any subsequent revisions with the Secretary of State. A.R.S. § 16-173. If Maricopa or Pima County anticipates needing to make substantive changes to their voter registration system that may inhibit data integration or otherwise impact compatibility with the state system, the Secretary of State's Office must be timely notified to enable consideration of compatibility with, and any necessary modifications to, the state system. Prior to implementation, any substantive changes to the Maricopa or Pima County voter registration systems must be approved by the Secretary of State for compatibility with the statewide voter registration system. A.R.S. § 16-168(J).

### B. Registration Codes in the Statewide Voter Registration Database

A County Recorder must assign the appropriate status, reason, source, and form code to each registrant's record.

#### 1. Registration Status and Reason Codes

There are six recognized "status" codes that may be selected in the statewide voter registration database: active, inactive, suspense, canceled, not eligible, and not registered. Each status code has its own set of "reason" codes that provide further detail on the reason the particular status code was assigned. County Recorders must track the registration status and reason codes using statewide uniform codes as defined by the Secretary of State in consultation with County Recorders.

#### 2. Registration Source Codes

A registration "source" code describes the source from which a voter registration form was received by the County Recorder or the source that circulated the registration form.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The following sources must be tracked in the voter registration database:

| Source |
| --- |
| Registration form was received from NVRA-mandated public assistance agencies |
| Registration form was completed in-person at the County Recorder's office counter |
| Registration form was received from Armed Forces recruitment offices |
| Registration form was received from state-funded agencies primarily serving persons with disabilities |
| Registration form was received from a Naturalization ceremony |
| Registration form was received by mail |
| Registration form was received from a political party or third-party organization's voter registration drive |
| Registration form was received from other public agencies designated by the state or county but not mandated by NVRA (*e.g.*, city clerks, libraries, post offices) |
| Registration form was received through an in-person MVD transaction |
| Registration form was received through an online MVD transaction |
| Registration form was received through Arizona's stand-alone online voter registration website |

County Recorders must track the registration sources using statewide uniform source codes as defined by the Secretary of State in consultation with County Recorders. County Recorders and staff may obtain the exact source codes associated with specific sources from the Secretary of State's Office and must keep that information confidential to avoid public disclosure of the source of a particular voter's registration.

### 3. Registration Form Codes

A "form" code describes the type of voter registration form used to register to vote. County Recorders must track registration forms using statewide uniform codes as defined by the Secretary of State in consultation with County Recorders.

### C. Minimum Required Information on Voter Registration Forms

A State, Federal, FPCA, and FWAB Form must contain the following minimum information to be considered complete:

- Registrant's name;

- Registrant's residence address or location;

- Registrant's date of birth (DOB);

- Registrant's signature (or in cases of physical disability, the signature of a person who helped complete the form on the registrant's behalf); and

- An answer of "yes" to the question "Are you a citizen of the United States of America?" or other affirmation that the registrant is a U.S. citizen.

If the registrant possesses an AZDL/ID# or Social Security number (SSN), the registrant's AZDL/ID# or last four digits of the SSN (SSN4) should be provided as well. If the registrant does not list an AZDL/ID# or SSN4 on the State Form, the registrant is nonetheless permitted to register to vote. The registrant will be assigned a unique identifying number by the statewide voter registration database that will serve as a voter identification number.

The state-specific instructions accompanying the Federal Form state "[i]f you do not have a current and valid driver license or non-operating identification license or a social security number, please write 'NONE' on the form." However, a County Recorder may not reject a Federal Form for failure to write "NONE." Similarly, for the FPCA and the FWAB, if the registrant does not list an AZDL/ID# or SSN4, the registrant is directed to write "I do not have a Social Security Number or State issued ID number."[10] However, failure to write this statement does not affect the registrant's ability to register to vote. A unique identifying number will be assigned to the registrant by the statewide voter registration database for identification purposes.

If the minimum requirements listed above have been met, the form should be processed and the registrant should be entered into the voter registration database in an "active" status if they otherwise meet the requirements for registration. If the minimum requirements have not been met, the County Recorder must: (i) follow-up with the registrant and seek the missing information (if the County Recorder has the registrant's address, telephone number, or email address); or (ii) place the registrant in "not registered" status if the County Recorder has no reasonable means to contact the registrant.

A.R.S. § 16-121.01(A); A.R.S. § 16-152(A)(2)-(3), (8), (12), (14), (19)-(20); A.R.S. § 16-166(F); 52 U.S.C. § 21083(a)(1)(A)(iii).

## 1. Failure to Provide Name, Address, DOB, or Signature

If the State Form, Federal Form, FPCA, or FWAB does not contain the registrant's name, residence address or location, DOB, or signature (or assisting person's signature), but the County Recorder has the address, telephone number, or email address to contact the registrant to request the incomplete information, the registrant should be entered into the voter registration database in a "suspense" status until the incomplete information or a new voter registration form is received. If contact information is missing, a County Recorder must, if practicable, use reasonable efforts to research and acquire contact information for the registrant through any appropriate means.

If the information on the form is incomplete or illegible, and the County Recorder has contact information for the registrant, the County Recorder shall notify the registrant within 10 business days of receipt of the form, request the missing or illegible information, and inform the registrant that they will remain in "suspense" status, with the reason code "registrant-waiting verification" (or functional equivalent) until the information is received. If the County Recorder receives the requested information by 7:00 p.m. on the date of the next regular general election, the registrant

---

[10] *See* https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

is deemed to have been registered on the date the registration was first received. A.R.S. § 16-134(B); A.R.S. § 16-121.01(A).

If a County Recorder does not have the necessary information to contact the registrant by mail, telephone, or email, the registration form should be set aside and/or the record should be entered in the voter registration database using the status code "suspense" and the reason code "insufficient information on registration form" (or functional equivalent). If the registrant provides the missing or illegible information by 7:00 p.m. on the date of the next regular general election, that registrant is deemed to have been registered on the date the registration was first received. A.R.S. § 16-134(B).

If the registrant does not provide the missing, incomplete, or illegible information by 7:00 p.m. on the date of the next regular general election, the registration form is invalid and the registrant's status may be changed from "suspense" to "not registered," with the reason code "pending expired" (or functional equivalent). The registrant would need to submit a new voter registration application to be eligible to vote in future elections.

## 2. Failure to Provide Optional Information

Failure to provide information not listed as required in Chapter 1, Section IV(C) above does not invalidate the registration form. Specifically:

- Failure to provide state or country of birth, telephone number, occupation, former address from another state (if any), father's name or mother's maiden name, email address, political party preference, or date of signing does not invalidate the State Form;

- Failure to provide telephone number, former address (if any), race or ethnic group, or date of signing does not invalidate the Federal Form; and

- Failure to select UOCAVA status or provide political party, previous name, gender, race, telephone number, fax number, email address, ballot delivery preference, current mailing address, or date of signing does not invalidate the FPCA or FWAB.

When only optional information is missing, the registration form should be processed and the registrant should be entered into the voter registration database in an "active" status (assuming no other deficiencies).

## 3. Failure to Properly Answer Age Verification Question

A registrant's failure to answer the question "Will you be 18 years old on or before election day?" on the State or Federal Form, or a registrant's "no" answer to the question, does not invalidate the registration form. A.R.S. § 16-121.01(A).

When this occurs, the County Recorder should review the registrant's DOB to confirm whether the registrant in fact will be at least 18 years old by the next general election.

- If yes, *and* the registrant will be 18 years old by the next election (whether or not the next election is a general election), the registrant should be added to the voter registration database in "active" status (assuming no other deficiencies), notwithstanding a "no" answer

or failure to answer the age question. If the registrant will be 18 years old by the next general election, but will not be 18 years old by the next election (that is not a general election), the registrant shall be placed in "suspense" status as outlined in Chapter 1, Section II(B).

- If no, the registrant should be added to the voter registration database with a "not eligible" status code and a "registrant too young" reason code (or functional equivalent). The County Recorder must notify the registrant by mail within 10 business days and inform the registrant that their voter registration form was rejected for failure to meet minimum age requirements.

### 4.  Failure to Properly Answer Citizenship Question

A registrant's failure to answer the citizenship question or "no" answer to the citizenship question on the State or Federal Form does not invalidate the form so long as there is some other appropriate indicator that the registrant is a U.S. citizen. A.R.S. § 16-121.01(A). For the purpose of answering the citizenship question, an affirmative answer includes making a check mark in the box, placing an X in the box, circling the box, shading the box, or any other method of marking the "yes" box that indicates the registrant is a citizen. Other appropriate indicators of U.S. citizenship include providing valid DPOC or a signature swearing/affirming that the registrant is a U.S. citizen (*e.g.*, Box 9 on the Federal Form) and/or valid DPOC acquired on the registrant's behalf from AZMVD records or the statewide voter registration database.

If the registrant did not answer "yes" to the citizenship question or provide some other appropriate indicator that the registrant is a U.S. citizen (and DPOC cannot be acquired from AZMVD records or the statewide voter registration database), the County Recorder must notify the registrant by mail, email, and/or telephone within 10 business days of receipt, request the incomplete information, and inform the registrant that they will remain in "suspense" status (or functional equivalent) until the citizenship question on the submitted voter registration form is answered in the affirmative or the registrant provides some other appropriate indicator of U.S. citizenship, such as DPOC.

If the County Recorder receives the requested information by 7:00 p.m. on the date of the next regular general election, the County Recorder must change the registrant's status from "suspense" to "active" in the voter registration database (assuming there are no other deficiencies) and the registrant is deemed registered on the date the registration was first received. A.R.S. § 16-134(B).

### 5.  Failure to Provide Proof of Citizenship

No voter registration application shall be rejected based solely on the failure to provide DPOC. An otherwise eligible registrant who does not submit DPOC and whose DPOC cannot be acquired from AZMVD records or other record in the statewide voter registration database must be register as a "federal-only" voter (assuming no other deficiencies). *See* Chapter 1, Section II(A) above for procedures to be followed when a registrant does not provide DPOC.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### D. Political Party Preference

A registrant may select a political party preference by checking one of four boxes on the State Form or EZ Voter registration: (1) Republican; (2) Democratic; (3) Other _____; or (4) None or No Party.

If the "Other" box is checked and the registrant writes a political party preference, the registrant's selection should be entered in the voter registration database as follows:

- <u>Republican</u>: "Republican," "Rep," "GOP," or any substantially similar designation

- <u>Democratic</u>: "Democratic," "Democrat," Dem," or any substantially similar designation

- <u>Libertarian</u>: "Libertarian," "LBT," or any substantially similar designation[11]

- <u>Green</u>: "Green," "GRN," or any substantially similar designation

- <u>Independent</u>: "Independent," "IND," or any substantially similar designation

- <u>Other</u>: Any other non-recognized political party

    - For previously-recognized political parties that have since lost recognition (at the state or local level), the County Recorder may continue to use the party designation for registrants in the voter registration database if the registrant entered that party affiliation on their registration application. However, for the purposes of reporting voter registration statistics, these registrants shall be reported as "Other."

- <u>PND</u>: "Party Not Designated," "PND," "No Preference," "Unaffiliated," "No Party," "None," or any substantially similar designation

If a *new* registrant leaves the political party preference field blank, the registrant's party preference will be "Party Not Designated" or "PND." If an *existing* registrant leaves the political party preference field blank, however, the registrant's existing political party preference will be retained and no changes should be made.

For purposes of reporting voter registration statistics, *see* Chapter 1, Section IX, registrants whose political party affiliations are anything other than a recognized political party shall be reported as "Other."

### E. Date of Registration

A mailed paper registration form is deemed to be timely received for an election if: (1) the form is postmarked on or before the voter registration deadline and received by the County Recorder by 7:00 p.m. on Election Day; or (2) the form is dated on or before the voter registration deadline and received by the County Recorder within five calendar days after the voter registration deadline. A.R.S. § 16-134(C).

---

[11] The designation "LIB" is not deemed substantially similar to "Libertarian" because of the similarity with the word "Liberal." If "LIB" is written, the registrant's party preference should be entered as "Other."

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The registration effective date will be the date the original voter registration form was signed. If a registration form was submitted without a date, a County Recorder must use the postmark date as the date of registration, unless the postmark date is illegible or otherwise unavailable, in which case the date of receipt shall be used as the date of registration. A.R.S. § 16-134(C), (D).

If a paper registration form that was timely submitted before the next election is missing any required information or DPOC, or is otherwise placed in "suspense" status, and the registrant later provides that missing information or DPOC, the County Recorder must deem the date of registration to be the date the registration form was signed. If the registration form was not dated, the postmark date shall be the date of registration unless the postmark date is illegible or unavailable, in which case the date of receipt shall be used as the date of registration. DPOC must be provided by 5:00 p.m. on the Thursday before Election Day for the voter to be eligible to vote a "full-ballot" in that election. *See* Chapter 1, Section II(A). Any other required information on the form must be provided by 7:00 p.m. on Election Day for the voter to be eligible to vote in that election. A.R.S. § 16-134(C). If necessary supplemental information is timely provided, the registrant is deemed to be registered as of the form date and is therefore a qualified elector for that election, even if the supplemental information is provided after the voter registration deadline for that election.

However, in order for a petition signature to be deemed valid, any necessary missing information on the voter registration form, and DPOC for non-federal petitions, must be received by the County Recorder by the date the filing officer transmits the petition signature sheets to the County Recorder for verification.

## F.  Initial Duplicate Checking Within the County

Before a new registration record is entered into the voter registration database, a County Recorder must first conduct a search of the voter records to determine whether there is already an existing record for the registrant *within the county*. A County Recorder may use any appropriate criteria to identify potential matches, including (but not limited to) any information in the voter's record.

If a County Recorder ultimately determines that the registration form was submitted by an existing registrant in the county, the County Recorder must update the registrant's existing record with the new registration information in lieu of creating a new record. In other words, the new registration form is treated as a request to update the registrant's existing/original record. If the initial duplicate search indicates that the registrant does not already have a record in that county, the County Recorder must create a new record.

If a County Recorder overlooks an existing/original record and inadvertently creates a new record for the registrant, the statewide voter registration system will flag the records for the County Recorder to resolve.

## G. Electronic Verification Procedures

Once a new or amended voter registration record is entered into the statewide voter registration database, the system automatically checks the registrant's information against AZMVD records and, if necessary, the Social Security Administration (SSA) database.

Verifying records against AZMVD and/or SSA data serves multiple functions:

1. If the registrant provided an AZDL/ID#, a match against AZMVD records validates proof of citizenship (unless the match is to a "Type F" AZDL/ID# or an AZDL/ID# issued before October 1, 1996).

2. If the registrant failed to provide either an AZDL/ID# or SSN4, but the registrant's provided information matches against AZMVD or SSA data, the system will "acquire" the missing AZDL/ID# or SSN4 from those sources and import that information into the registrant's record.

3. A match against AZMVD records or SSA database confirms the registrant's identity and helps ensure the integrity of registration rolls.

The registrant's new or amended record is also automatically verified against existing records in the statewide voter registration database for the purpose of identifying (and potentially canceling) any duplicate record. The details of the electronic verification procedures are defined in the statewide voter registration system.

## H. EZ Voter Registration

Voter registrations electronically transmitted from AZMVD to the statewide voter registration system are known as EZ Voter records. The EZ Voter program allows registrants to register through AZMVD, whether online at www.servicearizona.com or in-person at an AZMVD (or authorized third-party provider) office. 52 U.S.C. § 20504; A.R.S. § 16-112.

All EZ Voter records for a particular county are populated to an interface, where each record is individually processed by the County Recorder. If there is no "true match" against an existing registrant's record in the county, the County Recorder should create a new registration record and import the EZ Voter record into the new registration record. Once the new record is saved, the statewide voter registration system will conduct the same automatic AZMVD/SSA verification and statewide duplicate checking that occurs when a paper form has been entered.

If a County Recorder finds a match between an EZ Voter record and an existing registration record, the County Recorder should apply the EZ Voter updates to the existing record.

## I. Issuance of Voter Registration Cards

A County Recorder must issue a voter registration card to any new registrants or existing registrants who update their name, address, or political party preference. A.R.S. § 16-163(B). New voter registration cards should also be issued to any registrants affected by redistricting or

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

reprecincting. A new voter registration card need not be issued if a registrant makes other changes to their registrant record, including opting into the electronic publicity pamphlet.

A voter registration card should be labeled "Voter Identification Card" or "Voter Registration Card" and contain the following information:

1. Registrant's full name;
2. Registrant's residence address;
3. Registrant's political party preference;
4. Registrant's date of registration (and/or effective date of change);
5. Registrant's voter registration ID number;
6. Registrant's precinct name and/or number;
7. Registrant's district information:
    a. Congressional district (all registrants);
    b. Legislative district (only "full-ballot" voters); and
    c. Any additional optional district information;
8. County name;
9. Contact information for the County Recorder; and
10. If the registrant is a "federal-only" voter, a clear indication of "federal-only" voter designation.

The mailer that accompanies the voter registration card should contain the same information on the card and the following additional information:

1. Information stating that a new voter registration card is enclosed and instructions to discard the old card;
2. Information on use of the voter registration card (*e.g.*, as one piece of non-photo identification at the voting location);
3. How to contact the County Recorder if information on the card is incorrect;
4. Instructions on how to find one's voting location;
5. If the registrant is a "federal-only" voter, information about what "federal-only" means and what limitations apply (including voting, signing petitions, etc.);
6. Information about identification requirements at the voting location;
7. Information about how to request an early ballot or be placed on the PEVL; and
8. Outline of the reasons why a person would need to re-register.

The County Recorder should send a voter registration card within 30 days of when a new registrant's information is entered into the voter registration database. A.R.S. § 16-163(B). Return

of an undeliverable voter registration card may be grounds to initiate the "NVRA process." A.R.S. § 16-163(C). *See* Chapter 1, Section VIII(C).

## J. Help America Vote Act Identification Requirements

The Help America Vote Act (HAVA) requires a first-time voter to prove identity before the voter can receive a ballot or vote in a federal election if the voter registered to vote by mail or through a third-party registration drive (*i.e.*, the registration form was not completed in-person at the County Recorder's office or other designated voter registration agency). 52 U.S.C. § 21083(b)(1)-(3).

The identification requirement under HAVA for in-person voting is the same as the identification requirement under state law for in-person early, emergency, and Election Day voting. Therefore, all in-person voters are subject to the same identification requirements. A.R.S. § 16-579(A)(1); 52 § U.S.C. 20205(c)(1); 52 U.S.C. § 21083(b)(2)(A)(i).

However, Arizona's method of proving identity for mail-in early voters (signature comparison) is not expressly permitted under HAVA. HAVA instead requires identity to be proven in one of the following ways for a first-time voter to vote by mail:

- Verification of a registrant's AZDL/ID# or SSN4;

- Presentation of a registrant's current and valid photo identification; or

- Presentation of a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the registrant.

52 U.S.C. § 21083(b). For purposes of HAVA compliance, verification of a registrant's AZDL/ID# will be deemed sufficient proof of identity. If a registrant has not satisfied HAVA's identification requirement for first-time voters who registered by mail, the registrant must be entered into the statewide voter registration database with a designation of "FED." After the registrant proves identity by presenting a photo identification or utility bill/bank statement/government document with voter's name and address, the designation must be changed to "FEDI."

## V.   PROTECTION OF SECURED REGISTRANTS

The following eligible registrants are entitled to have their registration record generally shielded from public disclosure, beyond the standard confidentiality protections available to all registrants:

- Registrants with a government (principally law enforcement) background who demonstrate to a court that sealing their registration record will reduce a danger to the registrant's life or safety (collectively "protected government officials"), A.R.S. § 16-153(A), (B)(3), (K)(4);

- Registrants subject to an Order of Protection or Injunction against Harassment (collectively "protected victims"), A.R.S. § 16-153(A), (J), (K)(4);

- Registrants enrolled in the Secretary of State's Address Confidentiality Program (ACP). ACP participants typically include victims of domestic violence, sexual offenses, or

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

stalking offenses. The Secretary of State provides ACP participants a substitute address for public disclosure purposes and redirects mail from the substitute address to the ACP's participant's actual address, A.R.S. § 41-161(2); A.R.S § 41-162.

Protected government officials, protected victims, and ACP participants are collectively referred to as "secured registrants" with "secured records." Other persons who reside with secured registrants are also entitled to have their registration record secured. A registrant seeking secured status may obtain an application from the Administrative Office of the Courts at http://www.azcourts.gov/selfservicecenter/Self-Service-Forms/Personal-Information-Redaction. A protected government official or protected victim who is not an existing registered voter, but seeks to have their record sealed upon registering for the first time, should contact the County Recorder to coordinate the appropriate procedure. *See* A.R.S. § 16-153.

An ACP participant who seeks to register to vote must initiate the process through the Secretary of State's ACP Division. *See* A.R.S § 41-162. The ACP participant will be provided a Voter Registration Packet, which includes a State Form and a Participant Protected Voter Records Form (PVR Form). If the person was already registered to vote prior to becoming an ACP participant, the person should re-register to vote through the Secretary of State's ACP Division.[12] Upon receipt of the ACP participant's completed voter registration packet from the Secretary of State's ACP Division, the designated County Recorder official must process the registration form within five business days and complete the following steps: (i) mark the registrant's record as secured, (ii) include the registrant on the PEVL;[13] and (iii) scan the State Form into the voter registration database so only the registrant's name and signature will be visible, and ensure the original State Form is protected from unauthorized access.

## A. Marking Secured Records

A secured record in the voter registration database must be visually distinguishable from non-secured records. A County Recorder may implement additional security protocols to limit employee access to secured records.

## B. Responding to Public Records Requests

Protected government officials and protected victims (and any registered voter who resides at the same residence) are entitled to have their identifying information, including any of that person's documents and voting precinct number, shielded from public disclosure. A.R.S. § 16-153(A).

ACP participants are entitled to have their "actual address" shielded from public disclosure, which includes the ACP participant's actual residential address, work address, school address, telephone number, county of registration, and precinct number. A.R.S. § 41-161(1); A.R.S. § 41-165(E).

---

[12] More information on the process is available at https://azsos.gov/services/acp.

[13] The Secretary of State's ACP Division requires that ACP participants be added to the PEVL to maintain the confidentiality of the ACP participant's voting precinct, and will therefore ensure the "PEVL" box is selected on the State Form.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Neither the Secretary of State nor a County Recorder may disclose an ACP participant as a registered voter because doing so would reveal the ACP participant's county of residence in violation of A.R.S. § 41-161(1) and A.R.S. § 41-162(A). The Secretary of State and/or County Recorder may also exclude protected government officials and protected victims from a response to a public records request for registrant records, if separating protected government officials/protected victims from ACP participants would present an undue burden.

However, nothing in this Section precludes the Secretary of State or County Recorder from: (1) providing non-sealed information about a protected government official or protected victim if otherwise required by law or a court order; or (2) including secured registrants in statistical reports.

## C.  Creating Signature Rosters or Uploading E-Pollbook Data

County Recorders may not include secured registrants, whether an ACP participant or protected government official or protected victim, on a signature roster or in an e-pollbook. If a county uses a tablet or computer terminal that has live access to the voter registration database via a secure virtual private network (VPN) connection, the system must be capable of shielding secured registrants' information from public view (or providing view access only to the secured registrant).

In the event a secured registrant attempts to vote provisionally at a polling place (and informs the poll worker of their secured status), the poll worker should undertake any additional or necessary precautions, including but not limited to:

- Confirming the correct ballot style;
- Ensuring that a protected government official or protected victim lists their actual residential address on the provisional ballot envelope;
- Making a notation about secured registrant status on the provisional ballot envelope; and/or
- Limiting the signature roster to the registrant's voter ID number and the notation "address protected."

## D.  Issuance of Official Mail and Election Documents

A protected government official or protected victim should receive all official election mail and be issued any voter registration cards using the registrant's actual information.

An ACP participant should receive all official election mail and be issued any voter registration cards using the substitute address (and excluding the precinct name or number). A.R.S. § 41-166(E).

## E.  Signing Candidate, Initiative, Referendum, or Recall Petitions

Secured registrants are encouraged not to sign petitions if they wish to maximize protection of the confidentiality of their identifying information and residential address.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The Secretary of State and County Recorders have no obligation to redact an address or other identifying information from a candidate, initiative, referendum, recall, or new party recognition petition signed by a secured registrant. Nor is the Secretary of State or a County Recorder required to research an ACP participant's actual address if a substitute address is placed on a petition. However, a secured registrant who signs a petition and indicates "protected address," "secured registrant," or other substantially similar designation in the address line shall not have the registrant's petition signature invalidated solely based on the failure to provide the registrant's actual address. *See* A.R.S. § 16-321(E). In such cases, the County Recorder may verify the petition signature based on the registrant's address in voter registration record. Verification of the petition signature, however, may necessarily disclose the secured registrant's district and/or county of residence. In addition, the registrant's identifying information, including residential address, may appear on other petition-related records, which may be disclosed through a public records request or court challenge relating to the petition. For these reasons, secured registrants are encouraged not to sign petitions if they wish to maximize the confidentiality of their residential address.

### F.  Terminating Secured Registrant Status

A protected government official's or protected victim's registration record remains sealed for a period of five years, to expire by January 5 of the following year unless judicially renewed. A County Recorder must mail a notice to the protected government official or protected victim within six months of the expiration and advise him or her of the expiration date. A.R.S. § 16-153(F). A County Recorder may extend the protected government official's or protected victim's secured status upon receipt of a new court order. Otherwise, a County Recorder will remove the secured status from the registrant's record after January 5 if the County Recorder does not timely receive a new court order.

An ACP participant's registration record remains sealed indefinitely unless a County Recorder is notified by the registrant or the Secretary of State's ACP Division that the registrant is no longer a participant in the ACP program. Upon receipt of such notice, a County Recorder should remove the secured status from the registrant's record and send all future correspondence to the registrant's actual residential address previously provided on the registration form (not the substitute address previously utilized for confidentiality purposes).

### VI.    VOTER   REGISTRATION   PROCESSING   DURING   "BOOKS CLOSED"

The period between the last day to register to vote for an election and Election Day is known as the "books closed" period. Historically, unless the specific changes were requested by the registrant before the voter registration deadline, County Recorders refrained from making substantive changes to voter registration records during the "books closed" period in order to ensure that the creation of signature rosters, e-pollbook rosters, and the verification of provisional ballots are based on records of eligible voters as of the last day to register to vote. However, voter registration processing may continue during the "books closed" period if the County Recorder has other means of identifying records of eligible voters as of the last day to register (*e.g.*, the voter registration system is able to sort by effective eligibility date).

Even if a County Recorder chooses to suspend voter registration processing during the "books closed" period, the following updates should continue to be processed:

- **Address Updates:** If an existing registrant updates their residence address after the voter registration deadline but prior to the finalization of the signature or e-pollbook rosters, a County Recorder may update the registrant's record with the updated residence address. In this case, the existing registrant would be permitted to vote a regular ballot at their *new* voting precinct. (Voters who registered prior to the voter registration deadline but failed to notify the County Recorder of an address change prior to the date of the election are eligible to vote a provisional ballot and may update their address at their *new* voting precinct.)

- **Name Changes:** If an existing registrant updates their name after the voter registration deadline but prior to the finalization of signature rosters or e-pollbook rosters, a County Recorder may update the registrant's record with the new name.

- **DPOC Changes:** If a "federal-only" voter provides satisfactory DPOC to the County Recorder by 5:00 p.m. on the Thursday before Election Day, the registrant's designation must be updated to "full-ballot" voter. *See* Chapter 1, Section II(A)(2).

## VII.   ELIGIBILITY TO VOTE

To be eligible to vote, a registrant must be both: (1) timely registered for a particular election (*i.e.*, registered in the jurisdiction at least 29 days before the date of the election), and (2) a qualified elector in a particular jurisdiction.

In general, a "qualified elector" is a person who is:

- Qualified to register to vote and is properly registered to vote (*i.e.*, included on the voter registration rolls) in the jurisdiction in question; and

- Will be at least 18 years old on or before the date of the election.

A registrant remains a qualified elector unless the registrant moves to another jurisdiction or has their registration canceled. A.R.S. § 16-121(A).

"Qualified electors" may differ in property-based elections conducted pursuant to Title 48. For example, a qualified elector for the purpose of a domestic water improvement district or domestic waste water improvement district election is a natural person (not a company, corporation, LLC, trust, or other business entity) who owns property in the district and: (i) is registered to vote in the applicable county and resides within the district; (ii) is registered to vote in the applicable county but does not reside in the district; or (iii) is registered to vote in Arizona but does not reside in the applicable county or district. A.R.S. § 48-1012(G).

### A. Age Requirements to Vote in the Next Election

To be eligible to vote in the next election held pursuant to A.R.S. § 16-204, a registrant must be 18 years old on or before the date of that next election. A.R.S. § 16-121(A).

If a registrant will be at least 18 years old on or before the next statewide general election, but will not be at least 18 years old by the next election held in a particular jurisdiction, the registrant remains qualified to *register* to vote but is not a *qualified elector* for that next election. For example, if a registrant will turn 18 years old before the general election but will be 17 years old at the time of the primary election, the registrant may register but is not entitled to vote in the primary election.

## B.  Residency Requirements to Vote in the Next Election

To be eligible to vote in the next election, a registrant generally must have residency within the boundaries (or proposed boundaries) of a particular jurisdiction for the 29-day period preceding that election. A.R.S. § 16-120(A). For example, to vote in a city or town election, a registrant must be a resident of that city or town at least 29 days before that election. A.R.S. § 9-822(A). A registrant may be temporarily absent from the jurisdiction without losing their residency status, as long as the registrant has an intent to return. A.R.S. § 16-103.

### 1.  Residency Requirements When Jurisdictional Boundaries Change

If jurisdictional boundaries change during the 29-day period preceding the next election, a registrant must have residency within the new boundaries in order to vote in the next election in that new jurisdiction. This applies to boundary changes brought about by annexation.

For example, a registrant who previously resided in a county island, but whose property was annexed into a city or town during the 29-day period preceding an election, is qualified to vote in the city or town's next election if the registrant resided in the city or town's new boundaries during the 29-day period before the election. A.R.S. § 9-822(B).

### 2.  Eligibility to Vote When Registrant Moves Within 29-Day Period

If a registrant moves to a different precinct within the same county during the 29-day period preceding the next election, the registrant remains a qualified elector for the next election. If the registrant updates their residence address prior to the creation of the signature rosters or e-pollbook rosters, a County Recorder may update the registrant's record with the updated residence address in the voter registration database and the voter will be permitted to vote a regular ballot at their *new* voting precinct. The registrant is also entitled to update their address at the appropriate polling place for the voter's new address and then vote a provisional ballot on Election Day. A.R.S. §§ 16-122, 16-135, 16-584.

If a registrant moves to a different county during the 29-day period preceding the next election, the registrant remains a qualified elector in the former county for that election and must vote in the *former* county. A.R.S. § 16-125.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

If a registrant moves to a different state during the 29-day period preceding the next election, the registrant is not a qualified elector (and is therefore ineligible to vote) in Arizona. However, a registrant retains the right to vote in Arizona for President of the United States (and no other races) at the general election during a Presidential election year. A.R.S. § 16-126. Requesting a presidential-only ballot requires the County Recorder to cancel the registrant's record "promptly" following the general election. A.R.S. § 16-165(A)(6).

### 3.  Exceptions to the 29-Day Residency Requirement

#### a.  *Military and Overseas Voters*

Military and overseas registrants temporarily absent from the state are permitted to register and vote up until 7:00 p.m. on Election Day despite not physically residing in Arizona during the 29-day period preceding the election. A.R.S. § 16-103; A.R.S. § 16-543.02(B). This exception also applies to a U.S. citizen who has never resided in the United States but whose parent is registered in Arizona and is a qualified elector for the next election. A.R.S. § 16-103(E).

#### b.  *Public Officers Posted in Different County*

If a state employee or officer is posted to a duty station in a county other than the county from which they were appointed or elected, they (along with their spouse and dependents who reside in the household) remain qualified electors in the county of appointment or election, even if they physically reside in the county where the duty post is located. A.R.S. § 16-124.

### C. Registration Deadline to Vote in Next Election

A registrant who registers to vote at least 29 days before the next election (and is otherwise a qualified elector in that jurisdiction) is entitled to vote at the next election. A.R.S. § 16-120(A); A.R.S. § 16-134(C).

### 1.  Date of Receipt of Voter Registrations

For online EZ Voter registrations, a registration is timely received if the registrant completes the online registration by 11:59 p.m. on the last day to register to vote. The time of registration is the time identified on the registrant's EZ Voter confirmation receipt.

For paper registrations conducted at a County Recorder's office, the Secretary of State's office, an AZMVD office or affiliate, a voter registration assistance agency, or an authorized voter registration volunteer's office, a registration is timely if the registrant completes or delivers the registration form before the office closes for business on the last day to register to vote.

For paper registration forms that are mailed to a County Recorder's office, a registration is timely if:

- The registration form is postmarked on or before the voter registration deadline and received by the County Recorder by 7:00 p.m. on Election Day; or

- The registration form is dated on or before the voter registration deadline and received by the County Recorder within five calendar days after the voter registration deadline.

A.R.S. § 16-134(C).

For UOCAVA registrants using an FPCA or FWAB, a registration form is timely if received by the County Recorder's or Secretary of State's Office via mail, email, or fax by 7:00 p.m. on Election Day. A.R.S. § 16-103(C).

## 2. Voter Registration Form Received After Deadline

A registrant who registers to vote within 29 days of an election is eligible to vote at the election following the next election. A.R.S. § 16-120(A). For example, a person who registers 10 days before the primary election is not eligible to vote in the primary election but is eligible to vote in the general election.

If the County Recorder receives a new voter registration form less than 29 days before an election, and the registrant is not a military or overseas voter using the FPCA or FWAB registration form, the County Recorder may either:

- Enter the registrant's information in the voter registration database; or

- Refrain from entering the registrant's information in the voter registration database until after the next election.

If a County Recorder receives a voter registration form less than 29 days before an election from an existing registrant, the County Recorder may update the record prior to Election Day if the registrant will be a qualified elector in the precinct where the registrant resides.

## 3. When Registration Deadline Falls on a Weekend or Holiday

If the 29-day registration deadline falls on a weekend or state holiday (regardless of whether a particular county office is open for business), the registration deadline is extended to the next business day for state government. For example, if the registration deadline falls on Columbus Day (a Monday), a registrant is qualified to vote in the next election if they register on the following Tuesday. A.R.S. § 16-120(B); *see also* A.R.S. § 1-303 (listing state holidays).

Notwithstanding any state deadline, the Secretary of State has the authority to move the voter registration deadline in order to maintain compliance with the federal National Voter Registration Act (NVRA). Thus, the voter registration deadline will be moved closer to Election Day if the closure of state or federal offices would cause a method of registration to be unavailable within the 30-day period preceding the next election. For purposes of NVRA compliance, the registration deadline shall be applied uniformly across Arizona and is not subject to modification based on local business hours. 52 U.S.C. § 20507(a)(1)(A)-(D); *Arizona Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *13 (D. Ariz. Nov. 3, 2016).

## VIII.   VOTER REGISTRATION LIST MAINTENANCE

### A. Deceased, Felon, and Incapacitated Registrants

Though the Secretary of State does not directly cancel any registration records, the Secretary of State is responsible for importing certain information received from federal and state officials into the statewide voter registration database, pursuant to which the statewide voter registration system will automatically cancel "hard matches" on the following limited bases:

1. The registrant is deceased;

2. The registrant was convicted of a felony in court; or

3. The registrant was adjudicated mentally incapacitated by a court.

#### 1. Deceased Registrants

The Arizona Department of Health Services (DHS) provides the Secretary of State with a file each month (along with a combined file each year) that contains the name, DOB, SSN, date of death, father's name (if available), mother's maiden name, and last known address of deceased Arizona resident who passed away during the applicable period. A.R.S. § 16-165(D).

Upon receipt and confirmation of proper formatting, the Secretary of State uploads the deceased registrant file into the statewide voter registration system. The system then initiates a matching process against registrant records in the statewide voter registration database.

##### a.  *Hard Match Criteria for Deceased Registrant Verification*

For the purpose of verifying deceased resident information against the statewide voter registration database, a "hard match" occurs if the first three letters of the first and last name, DOB, and SSN4 match in both records.

If the statewide voter registration system finds a "hard match," the registrant's record is automatically placed in "canceled" status with a reason code of "deceased-automatic resolution" (or functional equivalent). The County Recorder need not send any confirmation of the cancellation to the registrant.

##### b.  *Soft Match Criteria for Deceased Registrant Verification*

For the purpose of verifying deceased resident records against the statewide voter registration database, a "soft match" occurs if the first three letters of the first and last name and DOB match in both records or there is a "hard match" against more than one existing registrant record.

If the system finds a "soft match" between the deceased record and a registrant record, it will flag the records and notify the appropriate County Recorder of the need to review and compare the records. The County Recorder must conduct an individualized inquiry and determine whether a "true match" exists between the records.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

If a County Recorder determines that a "true match" exists, the County Recorder must select "match" in the system. The registrant's record will be automatically updated to "canceled" status with a reason code of "deceased." The County Recorder need not send any confirmation of the cancellation to the registrant.

If the County Recorder determines that a "true match" does not exist, the County Recorder must select "no match" in the system. The registrant's record will remain in its existing status without being placed in "canceled" status in the statewide voter registration database.

A County Recorder should follow the same procedures if the county directly receives deceased registrant information directly from DHS instead of the Secretary of State.

### c.  *Other Sources of Information on Deceased Registrants*

A County Recorder may also cancel a registrant's record if the County Recorder determines that the registrant is deceased based on other reliable sources, *see* A.R.S. § 16-165(A)(2), including, but not limited to, death notices received by the County Recorder's office and an affidavit of death from the registrant's next of kin. A County Recorder should match as much information as possible (including first name, last name, maiden name (if applicable), year of birth, place of birth, and city or town of residence) and be reasonably certain that a "true match" exists before canceling a registrant. For example, newspaper or online obituaries alone may not suffice to cancel a registrant record without additional research and confirmation. In cases where the County Recorder cannot confirm a "soft match," the County Recorder may send a letter to the registrant asking to confirm the information.

A registrant who passes away after casting a valid ballot is entitled to have their ballot tabulated and votes counted.

### 2.  **Registrants Convicted of a Felony or Found Mentally Incapacitated**

The Secretary of State is responsible for receiving felony conviction and mental incapacitation information from federal and state officials and processing the information through the statewide voter registration system.

### a.  *Sources of Felony Conviction and Incapacitation Information*

The Secretary of State electronically receives periodic files from Arizona superior courts and from the Maricopa County Superior Court containing the name, DOB, and SSN4 of Arizona residents recently convicted of a felony or found mentally incapacitated in that jurisdiction. Upon receipt and confirmation of proper formatting, the Secretary of State imports the files into the statewide voter registration system.

The Secretary of State also receives in various non-electronic formats: (1) additional felony conviction information from Arizona superior courts and the U.S. Department of Justice; and (2)

additional mental incapacitation information from Arizona superior courts. Upon receipt, the Secretary of State converts these records into the proper electronic format and imports these files into the statewide voter registration system.

### b. *Processing Felony Conviction and Incapacitation Information*

The statewide voter registration system compares the felony and mental incapacitation records against the statewide voter registration database for potential matches.

A "hard match" occurs when the first three letters of the first and last name, DOB, and SSN4 match an existing registrant record. In this case, the registrant's record is automatically placed in "canceled" status with the reason code of "felony – automatic resolution" or "declared incapacitated – automatic resolution" (or functional equivalent).

A "soft match" occurs when the first three letters of the first and last name and DOB match an existing registrant record (or there is a "hard match" against more than one existing record in the database). In this case, the system will flag the record for individual resolution by the applicable County Recorder. If the County Recorder finds a "true match," the record may be placed in "canceled" status with the reason code "felony" or "declared incapacitated" (or functional equivalent). The County Recorder must send a letter to the registrant confirming any cancellation based on a felony conviction or finding of mental incapacitation.

A County Recorder should follow the same procedures if the county directly receives felony conviction or mental incapacitation information from a court instead of the Secretary of State.

A County Recorder may reinstate a registrant's record if the registrant was erroneously canceled based on mental incapacitation, but the registrant retained the right to vote by court order. If the registrant was canceled based on a felony conviction but later had their civil rights restored, the registrant must submit a new voter registration in order to be re-registered.

## B. Secretary of State Duties to Forward Registrant Information

The Secretary of State also periodically receives registrant information that must be processed and forwarded to County Recorders for final resolution as described below.

### 1. Information Received from Out-of-State Jurisdictions

The Secretary of State occasionally receives correspondence from out-of-state jurisdictions providing information about Arizona registrants. The Secretary of State will promptly forward the correspondence to the applicable County Recorder(s) by email. The Secretary of State may not cancel any registration records or otherwise initiate any process through the statewide voter registration system based on the out-of-state correspondence. A County Recorder should treat the information as a "soft match" and conduct an individualized inquiry before canceling any registration record.

## 2. Information Received Through Multi-State Compacts

Arizona is a member of the Electronic Registration Information Center (ERIC). The Secretary of State is responsible for acquiring, sorting, and distributing registrant information received from ERIC to the County Recorders.

## 3. Juror Disclosure of Felony Conviction

Election officials periodically receive court records or information regarding prospective jurors who acknowledged a felony conviction on a juror questionnaire. If a County Recorder receives such information, the County Recorder must cancel any registrant record that is a "true match" against the juror information, using the reason code "juror questionnaire - felony" (or functional equivalent). A.R.S. § 16-165(A)(4). The County Recorder must also send a letter informing the registrant of the cancellation.

A County Recorder must ensure that a registration is not canceled twice for the same felony conviction. For example, the statewide voter registration system might have automatically canceled the registration upon being notified of the felony conviction through court records pursuant to Chapter 1, Section VIII(A)(2), and the registrant could have re-registered (following restoration of their civil rights) before the juror questionnaire information was provided to the County Recorder about the same felony conviction. Thus, before canceling a registration record based on a juror questionnaire, the County Recorder should confirm that the registrant did not have a prior registration record recently canceled on account of a felony conviction.

## 4. Juror Disclosure of Non-Citizenship

Election officials also periodically receive court records or information regarding prospective jurors who stated on a juror questionnaire that they are not a U.S. citizen. If a County Recorder receives such information, the County Recorder may cancel any registrant record that is a "true match" only after completing the following steps:

1. Confirm that the registrant does not already have valid proof of citizenship documented in the statewide voter registration database (if the registrant has DPOC on file, the County Recorder may not cancel the registrant's record based solely on the juror questionnaire);

2. If the registrant has no DPOC on file, send a letter to the registrant (including a DPOC Submission Form/Juror Questionnaire Non-Citizen Notice, *see* Chapter 17 for sample forms) within 10 business days, informing the registrant that:

   • The County Recorder has received information indicating that the registrant stated on a juror questionnaire that they are not a U.S. citizen;

   • The registrant has not previously provided valid DPOC;

   • The registrant must submit DPOC within 35 days of the date of the notice to remain eligible to vote and the registrant will be made a "full-ballot" voter upon submission of DPOC; and

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- The registrant's record will be canceled if the registrant does not submit DPOC within 35 days.

If the registrant does not submit valid DPOC by the 35-day deadline, the County Recorder must change the registrant's status to "canceled" with the reason code "juror questionnaire - citizenship." The County Recorder must also send a letter notifying the registrant of the cancellation and providing instructions on how to re-register and provide valid DPOC if the registrant is otherwise eligible to register to vote.

## 5. Juror Disclosure of Out–of–County Residency

If a County Recorder receives court documents or other information regarding prospective jurors who stated on a juror questionnaire that they are not a resident of the county and the County Recorder confirms a "true match" with a registrant record, the County Recorder must send a letter to the registrant within 10 business days. The letter must:

- Inform the registrant that the County Recorder was notified the registrant indicated on a juror questionnaire that the registrant is not a resident of the county; and

- Include a voter registration form or an appropriate internet address through which the registrant can update their address and/or register to vote in their new county in Arizona.

If the letter is returned undeliverable,[14] the County Recorder must send a follow-up notice within 21 days, which constitutes the "Final Notice" pursuant to the NVRA process; the registrant's record may be canceled through the NVRA process only if the registrant does not timely respond to the Final Notice *and* fails to vote in any election in two federal/statewide general election cycles. *See* Chapter 1, Section VIII(C) for details on the NVRA process.

## C. Cancellation through NVRA Process Due to Address Changes

One of the principal ways to ensure the accuracy of registration records is to update records based on a registrant's change of address. 52 U.S.C. § 20507(a)(4)(B). A County Recorder receives address change information in various ways: directly from the registrant, from the U.S. Postal Service's (USPS) National Change of Address (NCOA) service, through returned mail from USPS, or from ERIC reports. A County Recorder may update (and in some cases cancel) a registration record depending on the circumstances.

One piece of returned official election mail alone is not sufficient to cancel a registrant's record. Rather, a County Recorder generally must send two official election mailings to the registrant (only one official election mailing is required if a registrant appears on an NCOA or ERIC report), and only if a registrant does not respond to the mailing(s) or vote during a specified period after the mailings were sent, is the County Recorder permitted to cancel the record. The requirements below are outlined in NVRA and the process is referred to here as the "NVRA process."

---

[14] If the initial notice letter is not returned undeliverable, the registrant's record may not be canceled, even if the registrant does not respond to the initial notice letter.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### 1. Initiating the NVRA Process Based on Returned Election Mail

To invoke the NVRA process based on returned election mail, a County Recorder must complete the following steps:

1. Send an official election mailing by non-forwardable, first-class mail marked with a statement required by USPS to receive an address correction notification (the "First Notice"). Official election mail includes but is not limited to:

   • A voter registration card;

   • A 90-day notice to PEVL registrants issued pursuant to A.R.S. § 16-544(D);

   • A ballot-by-mail issued pursuant to A.R.S. § 16-542 or A.R.S. § 16-544;

   • Any other first-class, non-forwardable official election mail.

2. If the election mail is returned undeliverable, the County Recorder must send a follow-up notice to the registrant within 21 days after the mail is returned to the County Recorder (the "Final Notice"). If the returned mail contains a forwarding address for the registrant, the County Recorder must send the Final Notice to the new address. Otherwise, the County Recorder must send the Final Notice to the same address used for the initial mailing.

3. The Final Notice must contain a voter registration form or an appropriate internet address through which the registrant can update their address. The Final Notice also must warn that if the registrant does not submit a new voter registration form or update their address within 35 days, the registrant will be placed in "inactive" status.

4. If the registrant does not submit a new voter registration form or otherwise update their address by the 35-day deadline, the County Recorder must change the registrant's status to "inactive" with the reason code "NVRA inactive address" (or functional equivalent).

A.R.S. § 16-166(A), (C), (E); A.R.S. § 16-544(E); 52 U.S.C. § 20507(b)(2), (d)(1)(B), (d)(2).

The registrant may be canceled through the NVRA process if the registrant:

• Does not timely respond to the Final Notice by submitting a new registration form or otherwise update their voter registration address with the County Recorder; and

• Fails to vote in any election in two federal/statewide general election cycles following the Final Notice.

A.R.S. § 16-165(A)(7); A.R.S. § 16-166(E); 52 U.S.C. § 20507(b)(2), (d)(1)(B), (d)(2).

If the preceding conditions have been met, under NVRA, the registrant's record shall be canceled after four years from the date of the Final Notice or following the second general election after the Final Notice. A.R.S. § 16-166(C), (E); A.R.S. § 16-165(A)(7).

### 2. Special Procedures Applicable to NCOA Notices

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

A County Recorder is permitted, but not required, to utilize USPS's NCOA service to preliminarily identify registrants who have moved. 52 U.S.C. § 20507(c)(1)(A); A.R.S. § 16-166(E). Since NCOA data reflects actual change-of-address information the registrant has provided to USPS, the NVRA authorizes a special process to be utilized for list maintenance purposes. The NCOA data serves the same function as a First Notice that is returned undeliverable. Thus, a County Recorder need only send one additional notice, which serves as the Final Notice, to invoke the NVRA process.

If the County Recorder chooses to use NCOA data, any *initial* notice pursuant to this Section must be sent on or before May 1 of a general election year. The County Recorder may also send additional notices after May 1. 52 U.S.C. § 20507(c)(2)(A); A.R.S. § 16-166(E). Sending this notice by May 1 also allows a County Recorder to simultaneously send a 90-day notice to PEVL voters for the primary election in the same mailing. A.R.S. § 16-544(D).

### a.  *When NCOA Data Indicates Out-of-County Move*

If NCOA data indicates that the registrant moved outside the county, the County Recorder must send a notice to the new address by forwardable mail informing the registrant how to remain eligible to vote. The notice must:

- Enclose a postage prepaid and preaddressed return form by which the registrant may confirm the intent to cancel their registration;

- Notify the registrant to re-register if they moved to another county; and

- Notify the registrant to update the County Recorder within 29 days of the letter if the registrant's change-of-address was only temporary.

52 U.S.C. § 20507(c)(1)(B)(ii), (d)(2)(B); A.R.S. § 16-166(E). This letter serves as a Final Notice in the NVRA process.

### b.  *When NCOA Data Indicates In-County Move*

If the NCOA data indicates that the registrant moved within the county, the County Recorder must supplement the registrant's record with the new address obtained through NCOA. The County Recorder also must send a notice to the new address by forwardable mail to provide the registrant an opportunity to confirm or correct the address change. The notice must:

- Notify the registrant that the County Recorder updated the registrant's record with the new address;

- Enclose a postage prepaid and pre-addressed return form by which the registrant may confirm or correct the address change;

- Notify the registrant that if they do not confirm the new address within 35 days, the registrant will be placed in "inactive" status.

A.R.S. § 16-166(E). This letter serves as a Final Notice in the NVRA process.

### 3. NVRA Recordkeeping Responsibilities

A County Recorder must track all Final Notices sent to a registrant, along with any communication from the registrant received in response to a Final Notice, with a registrant's record in the voter registration database. 52 U.S.C. § 20507(i)(2).

### D. Prohibition on Systematic Cancellations within 90 Days of Election

A County Recorder must complete any program to systematically cancel registration records at least 90 days before a primary or general election. 52 U.S.C. § 20507(c)(2)(A). Systematic programs include the cancellation of records through the NVRA process described in Chapter 1, Section VIII(C). However, the 90-day prohibition does not preclude cancellation of records based on:

- Automatic cancellations through the statewide voter registration system of hard matches based on death, felony conviction, or mental incapacitation;
- Merging/cancellation of duplicate records (whether manual or automatic) when processing new voter registration forms;
- Cancellation at the request of the registrant; and
- Cancellation of records added to the voter registration database in error.

52 U.S.C. § 20507(c)(2)(B).

## IX.   REPORTING VOTER REGISTRATION STATISTICS

Each County Recorder must report to the Secretary of State and the officer in charge of elections the number of active and inactive county registrants as of the following dates:

- **In even-numbered years:**
  - January 2;
  - The last day to register to vote for the March PPE;
  - April 1;
  - The last day to register to vote for the August primary election; and
  - The last day to register to vote for the November general election.
- **In odd-numbered years:**
  - January 2;
  - April 1;
  - July 1; and
  - October 1.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

In addition, registration reports must be provided to the Secretary of State as of the registration deadline for any special election. A.R.S. § 16-168(G).

The reports must be broken down by political party and according to precinct, legislative district, and congressional district. For reporting purposes, political parties are limited to the Republican Party, Democratic Party, Libertarian Party (assuming they remain qualified for statewide recognition), Green Party (assuming they remain qualified for statewide recognition), and any other statewide recognized political party that qualifies for representation on the ballot at the time of the report. The "Other" total reported to the Secretary of State should include all registrants registered as "other," "independent," "party not designated," "PND", "no party" (or any substantially similar designation) or any non-recognized political party.

These totals should be reported to the Secretary of State as soon as practicable following the applicable cutoff dates. A.R.S. § 16-168(H). The totals must include only registrations as of the reporting cutoff periods.

For reports prepared as of a registration cutoff date, the County Recorder should ensure that the same active and inactive registration numbers reported to the Secretary of State match any registration statistics reported to the officer in charge of elections for purposes of determining voter turnout.

As soon as practicable upon receipt of all 15 county reports, the Secretary of State must prepare, publish, and retain a statewide summary of the voter registration statistics. A.R.S. § 16-168(H).

### A. "Federal-Only" Registration and Ballot Report

The County Recorder or other officer in charge of elections must file a report with the Secretary of State, and post on the County Recorder's website, the number of people who are registered to vote using the state or federal form who have not provided documentary proof of citizenship. In even-numbered years, the report must be made on January 2, April 1, and the last day on which a person may register to be eligible to vote in the next presidential preference, primary, and general election. In odd numbered years, the report must be made on January 2, April 1, July 1, and October 1. Additionally, after each general election, the County Recorder must post on the County Recorder's website the number of ballots cast by those eligible to vote for federal offices only. A.R.S. § 16-161(B); A.R.S. § 16-168.

## X.   PROVISION OF REGISTRATION DATA TO THIRD PARTIES

### A. Precinct Lists to Recognized Political Parties

Each County Recorder must provide, at no cost, a list of active and inactive registered voters to the State and County Chairpersons of the recognized political parties that are entitled to continued representation on the ballot pursuant to A.R.S. § 16-804. A.R.S. § 16-168(C)-(D).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## 1. Content of Political Party Precinct Lists

The precinct list must contain the following information about each registrant:

1. Registrant's full name, which includes first name, middle name, last name, and suffix in different columns;

2. Party preference;

3. Date of registration;

4. Residence address;

5. Mailing address (if different from residence address);

6. Zip code;

7. Telephone number (if available);

8. Birth year;

9. Occupation (if available);

10. Voting history for the past four years, including which party ballot was issued and method of voting (polling place, early, or provisional);

11. Whether the registrant is on the PEVL;

12. Voter ID number; and

13. Registrant's registration status and status reason, including "federal-only" designation if applicable.

A.R.S. § 16-168(C). Precinct lists should generally be provided in electronic format, and County Recorders are encouraged to make the lists available to the political parties through a secure website or Secure File Transfer Protocol (SFTP) portal. If the list is provided in printed format, the list must be created in alphabetical order (by registrant last name) and be organized by precinct, unless otherwise agreed upon by the County Recorder and the political party at issue. A.R.S. § 16-168(E).

## 2. Timing of Political Party Precinct Lists

A County Recorder must provide precinct lists as of the following dates:

- **In even-numbered years:**

  - January 2;

  - The last day to register to vote for the March PPE;

  - April 1;

  - The last day to register to vote for the August primary election; and

  - The last day to register to vote for the November general election.

- **In odd-numbered years:**
  - January 2;
  - April 1;
  - July 1; and
  - October 1.

A.R.S. § 16-168(C)-(D), (G).

Precinct lists developed for the primary and general election must be provided within eight days after the close of registration. A.R.S. § 16-168(C). Otherwise, the remaining precinct lists must be provided within 10 business days after the applicable reporting dates. A.R.S. § 16-168(D).

### 3. Requests for Political Party Precinct Lists

To receive precinct lists at no cost, a recognized political party must seek precinct lists from the applicable County Recorder within eight days after the close of registration for precinct lists developed for the primary and general election or within 10 business days after any other applicable reporting dates. A.R.S. § 16-168(C), (D), (L). Counties may establish a process for recognized political parties to opt to automatically receive precinct lists for each election.

A County Recorder need not provide this precinct list for the primary or general election to a recognized political party if that party will have less than four partisan candidates (other than presidential electors) on that county's ballot. A.R.S. § 16-168(C).

A recognized political party may seek precinct lists from the Secretary of State only if the applicable County Recorder fails or refuses to provide the list. In this case, the Secretary of State may charge the County Recorder a fee to produce the records as outlined in Chapter 1, Section X(C) below. A.R.S. § 16-168(L).

### B. Use of County Registration Rolls by Political Subdivision

Any political subdivision of the state, including a city or town, may use the county registration rolls to conduct an election. At least 60 days before any such election, the governing body of the political subdivision shall negotiate a contract with the County Recorder to reimburse the County Recorder for the *actual* expenses in preparing the necessary lists for use in the election. The County Recorder shall not charge more than the actual additional costs that such preparation entails. A.R.S. § 16-172.

### C. Public Records Requests by Third Parties

Any person or organization may make a public records request for registrant information to a County Recorder or the Secretary of State. 52 U.S.C. § 20507(I); A.R.S. § 16-168(E), (K); A.R.S. § 39-121.01(D). A County Recorder or the Secretary of State may request a properly-completed public records request form to be submitted before responding to the public records request. Records should be produced within 30 days of receipt of a proper request. A.R.S. § 16-168(E).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Copies of registrant records may be provided exclusively in electronic format, including via a password-protected Secure File Transfer Protocol (SFTP) site, Virtual Private Network (VPN), or other secure method of electronic transmission. In addition to the fees set forth in A.R.S. § 16-168(E), the County Recorder or the Secretary of State may charge for the cost of an electronic storage medium in which to deliver the records in a secure format.

If a person or organization requests to inspect registrant records in lieu of requesting copies, a County Recorder or the Secretary of State may establish how and under what conditions the records may be inspected. A.R.S. § 16-168(F).

### 1. Scope of Registrant Records Not Subject to Disclosure

The following components of a registrant's record are confidential and may not be viewed, accessed, reproduced, or disclosed to a member of the public:

1. Month and day of birth;

2. SSN (or any portion thereof);

3. AZDL/ID#;

4. Indian census number;

5. Father's name;

6. Mother's maiden name;

7. State or country of birth;

8. Signature;

9. Email address;

10. Any registration source code or other indication of location of registration;

11. Any documents submitted as proof of citizenship; or

12. Any secured record.

The information listed above may be viewed, accessed, or reproduced by the registrant (if the information pertains to the registrant's own record), an authorized government official in the scope of the official's duties, designated voter registration assistance agencies, for signature verification on petition and candidate filings, for election purposes and for news gathering purposes by a person engaged in newspaper, radio, television or reportorial work, or connected with or employed by a newspaper, radio or television station, or pursuant to a court order. If requested for news gathering purposes by a person engaged in newspaper, radio, television, or reportorial work, a County Recorder may condition release of such confidential information (other than secured records) upon execution of a non-disclosure agreement. A registrant's e-mail address may not be released for any purpose. A.R.S. § 16-168(F).

CHAPTER 1:
Voter Registration — *X. Provision of Registration Data to Third Parties*

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

A registrant's signature may be viewed or accessed by a member of the public only for purposes of verifying signatures on a candidate, initiative, referendum, recall, new party, or other petition or for purposes of verifying candidate filings. A.R.S. § 16-168(F). A County Recorder may establish the conditions under which the signature may be viewed or accessed, including prohibition of photography.

## 2. Permissible Uses of Registrant Records

Registrant records may only be used for political or political party activity, a political campaign or election, nonpartisan voter registration or outreach, revising district boundaries, or any other purpose specifically authorized by law. A.R.S. § 16-168(E), (N).

A person or organization in possession of a precinct list or other registrant information may not allow the list or information to be used, sold, or otherwise transferred for any purpose except those authorized above, including posting to the internet. A.R.S. § 16-168(F).

The County Recorder or Secretary of State shall deny a public records request intended for a commercial purpose. The sale of precinct lists or registrant records to a candidate or political committee for a political or campaign use does not constitute a prohibited commercial purpose. A.R.S. § 16-168(E).

# CHAPTER 2:
# EARLY VOTING

Any election in Arizona, including special taxing district elections, must provide for early voting, which includes no-excuse ballot-by-mail[15] voting and in-person early voting. A.R.S. § 16-541. An all ballot-by-mail election incorporates aspects of early voting but is subject to the specific requirements outlined in Chapter 3.

## I.   BALLOT-BY-MAIL

Without providing any reason or justification, a voter may request to be sent a ballot-by-mail on a one-time or permanent basis.

### A. One-Time Requests to Receive a Ballot-by-Mail

A voter may request a ballot-by-mail for a specific election, which may include a simultaneous request for a ballot-by-mail for both the primary and general election. A.R.S. § 16-542(A). A voter may make a ballot-by-mail request to the County Recorder or other county officer in charge of elections, who must document the voter's request in the voter's registration record.

Candidates, political committees, or other organizations are permitted to distribute ballot-by-mail request forms to voters. Such request forms shall be submitted to the County Recorder within six business days after receipt by a candidate, political committee, or other organization or 11 days before Election Day, whichever is earlier. A.R.S. § 16-542(I), (J). The request forms must seek all the information required in Chapter 2, Section I(A)(4).

#### 1.   Eligibility to Request a Ballot-by-Mail

Any qualified elector may request a ballot-by-mail containing the races for which they are eligible to vote. A.R.S. § 16-542. However, for an election that includes a federal office, first-time voters who registered to vote by mail must prove identity before requesting a ballot-by-mail. 52 U.S.C. § 21083(b); *see* Chapter 1, Section IV(J) for more details on the HAVA identification requirements.

#### 2.   Time Period to Request a Ballot-by-Mail

A voter may request a ballot-by-mail between 93 and 11 days before the election. A.R.S. § 16-542(A), (E). A voter may simultaneously request a ballot-by-mail for both a primary and general

---

[15] This Manual uses the term "ballot-by-mail" to refer to: (1) early ballots mailed to voters based on a one-time request pursuant to A.R.S. § 16-542 or based on the voter's request to be on the permanent early voting list (PEVL) pursuant to A.R.S. § 16-544; (2) ballots transmitted to UOCAVA voters; and (3) ballots automatically mailed to all eligible voters for an all ballot-by-mail election (see Chapter 3 for more information on ballot-by-mail elections).

election as long as the request is made between 93 and 11 days before the *primary* election. However, UOCAVA voters may make a request for a ballot-by-mail more than 93 days before an election. A.R.S. § 16-542(B).

## 3. Methods to Request a Ballot-by-Mail

A voter may request a ballot-by-mail orally or in writing, including in-person, online, or by telephone, email, fax, or mail. A voter may update their residence or mailing address in their voter registration record through a written (but not oral) ballot-by-mail request form. A.R.S. § 16-542(A), (F).

## 4. Ballot-by-Mail Request Form

For written or online requests, a ballot-by-mail request form created by County Recorders must contain the following:

1. The title "Ballot-by-Mail Request" or "Early Ballot Request;"

2. The county name;

3. Entry fields for:

    a. The voter's name;

    b. The voter's residential address or residence location;

    c. The voter's mailing address where the ballot-by-mail should be sent (if different from residential address);

    d. The voter's date of birth;

    e. State or country of birth, or another piece of information that, if compared to the voter's record, would confirm the voter's identity (such as the AZDL/ID# or SSN4, father's name, or mother's maiden name);

    f. The voter's telephone number (paper forms only);

    g. The voter's signature (paper forms only);

    h. The voter's email address (optional);

    i. The election or election date(s) for which a ballot-by-mail is being requested;

4. If the voter is not registered with a recognized political party and is requesting a primary election ballot, an entry field for the registrant to specify the political party ballot being requested;

5. A method to indicate whether the voter would like to update their registration record with the information provided in the ballot-by-mail request form; and

6. A notice that the completed ballot-by-mail request must be received by the County Recorder by 5:00 p.m. on the 11th day preceding the election.

In addition to the County Recorder's official paper or online ballot-by-mail request form, a voter

may use any other substantially similar written document to make a one-time request to be sent a ballot-by-mail.

A.R.S. § 16-542(A), (E).

### 5. Minimum Requirements for Requesting a Ballot-by-Mail

In order for the County Recorder to process a ballot-by-mail request, the request must contain at least the following information:

1. The voter's name;

2. The voter's residential address;

3. The voter's date of birth;

4. At least one of the following:

   • The voter's state or country of birth; or

   • Another piece of information that, if compared to the voter's record, would confirm the voter's identity, such as the AZDL/ID# or SSN4, father's name, or mother's maiden name.

In addition, for partisan primary elections, a voter who is not registered with a recognized political party must indicate which political party ballot the voter wishes to receive. A.R.S. § 16-542(A), (E).

### 6. Requesting Political Party Ballot for a Primary Election

If a voter requests a one-time ballot-by-mail for a primary election, but the voter is not registered with a recognized political party, the voter must designate a recognized political party ballot in order to receive a ballot-by-mail for that primary election. A.R.S. § 16-542(A).

The voter may request only one political party ballot for each election. Requesting a political party ballot does not change the voter's political party preference in their registration record. In general, once a County Recorder mails the requested party ballot, a voter may not request or receive a different party ballot. If a voter re-registers to vote with a recognized political party between 45 and 29 days before the election, however, the voter must be sent a party ballot that corresponds to the new party. If the voter had requested a different party ballot prior to re-registering to vote, the prior ballot should not be mailed (or if already mailed, should be voided).

In lieu of requesting a party ballot for the partisan primary, a voter who is not registered with a recognized political party may request a non-partisan ballot if a non-partisan election is being conducted at the same time as the partisan primary and if the voter is eligible to vote a non-partisan ballot.

### 7. Incomplete Ballot-by-Mail Requests

If a ballot-by-mail request does not contain the voter's name, residential address, date of birth, party ballot designation (for voters not registered with a recognized political party who are requesting a ballot-by-mail for a partisan primary election), or other verifying information, the County Recorder must notify the voter (by mail, telephone and/or email) within a reasonable period if the County Recorder has sufficient contact information to do so. If the ballot-by-mail request form does not contain contact information, the County Recorder must check the registrant's record for contact information. A.R.S. § 16-542(E).

If the voter provides the missing information by the 11th day before the election, the voter must be mailed a ballot-by-mail for that election. If the voter provides the missing information after the 11th day before the election, the County Recorder may send the voter a ballot-by-mail for that election if the County Recorder has sufficient time to do so.

### B. Requests to Be Placed on the Permanent Early Voting List

A voter may request to be placed on the Permanent Early Voter List (PEVL) and receive a ballot-by-mail for each election the voter is eligible for. A.R.S. § 16-544(A).

Unless a PEVL voter notifies the County Recorder at least 45 days before an election that the voter does *not* wish to receive a ballot-by-mail, the County Recorder will automatically schedule the mailing of a ballot-by-mail to the voter. A.R.S. § 16-544(F). However, for an open partisan primary election, the County Recorder will not mail a ballot to a voter who is not registered with a recognized political party unless the voter timely selected a political party ballot. A.R.S. § 16-544(G).

### 1. PEVL Eligibility

Any qualified elector may request to be placed on the PEVL. A.R.S. § 16-544(A).

A first-time voter with "federal-only" designation who registered by mail (*i.e.*, has a "FED" designation) and requests to be placed on the PEVL must first prove their identity prior to receiving a ballot-by-mail. 52 U.S.C. § 21083(b); *see* Chapter 1, Section IV(J) for more details on the HAVA identification requirements.

A UOCAVA voter also may request to be placed on the PEVL, however ballots are transmitted to these UOCAVA voters at least 45 days before the election. A.R.S. § 16-544(J). If a PEVL voter loses their UOCAVA status, the voter shall continue to receive a ballot-by-mail at their designated mailing address unless the address is outside of Arizona. However, even if the voter's mailing address is in Arizona, the voter, upon losing UOCAVA status, may not receive or return a ballot by fax or other electronic means and the ballot will not be sent until 27 days (rather than 45 days) before the election unless the voter submits a new FPCA form.

A voter enrolled in the PEVL may not request that ballots be automatically sent to an out-of-state

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

address for each election unless the voter is also a UOCAVA voter. However, a PEVL voter may make one-time requests to have their ballot mailed to an address outside of Arizona for specific elections. A.R.S. § 16-544(B).

### 2.   Time Period to Request Placement on the PEVL

A voter may request to be placed on the PEVL at any time. However, in order for a ballot to be mailed to the voter for a specific election, the PEVL request must be received no later than 5:00 p.m. on the 11th day before the election. A.R.S. § 16-542(A), (E), (F). If a voter requests to be placed on the PEVL less than 11 days before the election, no ballot will be mailed to the voter for that next election (unless the County Recorder has time to do so), but the voter's PEVL status will be activated for future elections.

### 3.   Methods to Request Placement on the PEVL

A voter may request to be placed on the PEVL by:

- Selecting the PEVL request box on the State Form;

- Selecting the PEVL request option on an online EZ Voter registration;

- Submitting a PEVL request form issued by a County Recorder; or

- Making any other written request that contains the minimum required information for a PEVL request.

If a registrant makes a request to be added to the PEVL other than through an initial voter registration, the County Recorder must compare the signature on the PEVL request form with the signature in the registrant's record to determine whether the same person signed both forms before adding the voter to the PEVL. A.R.S. § 16-544(C).

After a valid request, a County Recorder must update the voter's registration record to reflect PEVL status. A.R.S. § 16-544(C).

### 4.   PEVL Request Form

A PEVL request form created by County Recorders must contain substantially the following:

1. The title "Permanent Early Voter List Request";

2. The county name;

3. Entry fields for:

   - The voter's name;

   - The voter's residential address or location;

   - The voter's mailing address in the state;

   - The voter's date of birth; and

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- The voter's signature;

4. A method to indicate whether the voter would like to update their registration record with the information provided in the PEVL request form;

5. A statement that the voter is attesting that the voter is a registered voter who is eligible to vote in the county of residence; and

6. The statement "I authorize the County Recorder to add my name to the permanent early voting list and by doing so the County Recorder will automatically mail a ballot-by-mail to me for each election for which I am eligible."

A County Recorder may add additional language to a PEVL request form.

In addition to the County Recorder's official PEVL request form, a voter may use any other substantially similar written document to request PEVL status.

## 5. Minimum Requirements for Requesting Placement on the PEVL

A valid written PEVL request must contain, at minimum, the voter's:

- Name;
- Residence address or location within the county;
- Mailing address within the state (if different from residential address);
- Date of birth; and
- Signature.

The voter may not list an out-of-state mailing address unless the voter is a UOCAVA voter. A.R.S. § 16-544(B).

## 6. Incomplete Requests for Placement on the PEVL

If the PEVL request does not contain the voter's name, residence address, mailing address in the state, date of birth, or signature, or contains a signature that does not match the signature in the registrant's record, the County Recorder must notify the voter (by mail, telephone, text, and/or email) within a reasonable period if the County Recorder has enough information to do so. If the PEVL request form does not contain contact information, the County Recorder must check the registrant's record for contact information.

If the voter provides the missing information or confirms any mismatched signature by the 11th day before the election, the voter must be mailed a ballot-by-mail for that election and be added to the PEVL for future elections. If the voter provides the missing information after the 11th day before the election, the County Recorder may send the voter a ballot-by-mail for that election if the County Recorder has sufficient time to do so.

### 7. Removal from the PEVL

A voter may be removed from the PEVL under the following circumstances:

- The voter makes a written request to be removed from the PEVL, which includes the voter's name, residence address, date of birth, and signature;

- The 90-day notice (discussed in Chapter 2, Section I(B)(9) below) is returned as undeliverable and the County Recorder is unable to contact the voter to confirm the voter's continued desire to remain on the PEVL; or

- The voter's registration record is placed in an "inactive" or "canceled" status.

Upon receipt of voter's request to be removed from the PEVL, the County Recorder must remove the voter as soon as practicable. A County Recorder may not remove a voter from the PEVL list for failure to vote or for voting in-person rather than using the ballot-by-mail. A.R.S. § 16-544(H)-(I), (K).

### 8. Third-Party Distribution/Receipt of PEVL Request Forms

As for one-time ballot-by-mail request forms, candidates, political committees, or other organizations are permitted to distribute PEVL request forms to voters. A.R.S. § 16-544(L). The request forms must seek all the information required under Chapter 2, Section I(B)(4).

If a candidate, political committee, or other organization receives a completed request form, the candidate, political committee, or other organization must return the request form to the applicable County Recorder within six business days of receipt or 11 days before Election Day, whichever is sooner. Failure to timely return completed request forms may result in a civil penalty of $25 per day for each form withheld. Any person who knowingly fails to return completed PEVL request forms by the submission deadline may be guilty of a class 6 felony. A.R.S. § 16-544(M).

If the request forms include a printed return address, the address must be the County Recorder's office in the political subdivision that will conduct the election. Failure to use the County Recorder's return address may result in a civil penalty up to three times the cost of the production and distribution of the PEVL request form. A.R.S. § 16-544(L).

### 9. Notice to PEVL Voters in Advance of the Election

A County Recorder must mail a notice to all eligible PEVL voters at least 90 days before any polling place election (*i.e.*, any election not conducted as a ballot-by-mail election, *see* Chapter 3) scheduled in March or August, including the PPE. A.R.S. § 16-544(D). A County Recorder may not issue a combined 90-day notice for the March and August elections, but may issue a combined 90-day notice for a March/May election or an August/November election.

The notice must be sent by non-forwardable mail (with a request to receive an address correction notification) and include the following information:

1. A statement that the County Recorder's records indicate that the voter is on the PEVL;

2. The dates of the elections that are the subject of the notice;

3. The expected mailing date(s) of the voter's ballot;

4. The voter's mailing address, and an indication that it is the address where the ballot(s) will be mailed;

5. An indicator of the voter's party affiliation;

6. A checkbox to allow the voter to remove the voter's name from the PEVL; and

7. A checkbox to request that the ballot-by-mail not be mailed for the elections listed on the notice.

The notice must include a postage-prepaid means for the voter to:

1. Designate a political party ballot or request a non-partisan ballot, if applicable, (only if the upcoming election includes an open partisan primary and the voter is not registered with a recognized political party);

2. Change the mailing address to another location within the state;

3. Update the voter's residence address in the county of residence; and

4. Request that the voter not be sent a ballot for the upcoming election or elections indicated in the notice.

If an election is not formally called within 120 days of the scheduled election, the County Recorder is not required to send a 90-day notice. A.R.S. § 16-544(D).

### a. *90-Day Notice to PEVL Voters Not Affiliated with a Recognized Political Party*

If the upcoming election is an open partisan primary election and the PEVL voter is not registered with a recognized political party, the 90-day notice must include a means for the voter to designate a political party ballot. A.R.S. § 16-544(D). Requesting a party ballot does not change the voter's political party preference in their registration record.

If a PEVL voter does not designate a party ballot within 45 days of the election, the voter will not be automatically sent a ballot-by-mail for that primary election but the voter's name will remain on the PEVL for future elections. To vote early by mail in that election, the voter must make a one-time ballot-by-mail request and designate a party ballot. A.R.S. § 16-542(A); A.R.S. § 16-544(G).

In general, once a County Recorder mails the requested party ballot, a voter may not request or receive a different party ballot. If a voter re-registers to vote with a recognized political party between 29 and 45 days before the election, however, the voter must be sent a party ballot that corresponds to the new party. If the voter had requested a different party ballot prior to re-registering to vote, the prior ballot should not be mailed (or if already mailed, should be voided).

In lieu of requesting a party ballot for the partisan primary, an eligible PEVL voter may request a non-partisan ballot if a non-partisan election is being conducted at the same time and the voter is eligible to vote a non-partisan ballot.

### b. *90-Day Notice Returned Undeliverable*

If the 90-day notice is returned undeliverable to the County Recorder, the County Recorder must notify the PEVL voter (if the County Recorder has contact information for the voter) to attempt to update the voter's address.

An undeliverable 90-day notice serves as a First Notice under the "NVRA process." *See* Chapter 1, Section VIII(C). If the voter is moved to "inactive" status after failure to respond to "Final Notice" pursuant to the "NVRA process," a ballot-by-mail shall not be automatically sent to the voter. A.R.S. § 16-544(E). The voter may re-gain active PEVL status upon updating the voter's address and submitting a new PEVL request.

### C. Creation and Preparation of Early Ballots

The County Board of Supervisors is responsible for preparing early ballots, including ballots-by-mail, to be used in federal, statewide, legislative, and countywide elections. A.R.S. § 16-405; A.R.S. § 16-503(A); A.R.S. § 16-545(B)(1). The Board of Supervisors may delegate this responsibility to the officer in charge of elections.

An early ballot must be identical to a polling place ballot in content and format, except an early ballot must have the word "early" printed or stamped on the ballot. A.R.S. § 16-545(A).

#### 1. Components of the Ballot-by-Mail Mailing

Only official election materials, as determined by the County Recorder, are permitted to be included in the ballot-by-mail mailing. Lists of official write-in candidates or withdrawn candidates may not be included in the mailing.

#### 2. Required Return Envelope

The postage prepaid return envelope must:

- Contain the County Recorder's name, official title, and the post office address of the County Recorder (or other officer in charge of elections) on the front side of the return envelope (as explained below, a secrecy mailing envelope separate from the ballot affidavit may be used);

- Contain a statutorily-prescribed voter affidavit on the back side of the return envelope (see below);

- Be tamper evident when properly sealed;

- Contain any required statement by the U.S. Post Office for election mail, including the

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

election mail logo; and

• Be opaque so as not to reveal the voter's vote choices.

A.R.S. § 16-547(A); A.R.S. § 16-545(B)(2).

The voter affidavit must substantially contain at least the following language, followed by a place for the voter's signature:

> I declare the following under penalty of perjury: I am a registered voter in _____ county Arizona, I have not voted and will not vote in this election in any other county or state, I understand that knowingly voting more than once in any election is a class 5 felony and I voted the enclosed ballot and signed this affidavit personally unless noted below.
>
> If the voter was assisted by another person in marking the ballot, complete the following:
>
> I declare the following under penalty of perjury: At the registered voter's request I assisted the voter identified in this affidavit with marking the voter's ballot, I marked the ballot as directly instructed by the voter, I provided the assistance because the voter was physically unable to mark the ballot solely due to illness, injury, or physical limitation and I understand that there is no power of attorney for voting and that the voter must be able to make their selection even if they cannot physically mark the ballot.
>
> Name of voter assistant: _____
>
> Address of voter assistant: _____

A.R.S. § 16-547(A). The affidavit must also request an optional telephone number or email address to enable the County Recorder to contact the voter in case there is a deficiency with the early ballot.[16]

For ballot-by-mail elections, the County Recorder or other officer in charge of elections may supplement the early ballot affidavit with additional language required for issuance of replacement ballots pursuant to A.R.S. § 16-558.02(A). *See* Chapter 3, Section IV.

In lieu of printing the ballot affidavit on the exterior of the return envelope, a County Recorder may also include a postage prepaid secrecy mailing envelope. In this circumstance, the voter is directed to place their marked ballot in the standard return envelope that contains the early ballot affidavit; the voter must then place the standard return envelope inside the postage prepaid secrecy mailing envelope. This method ensures that the voter's signature (or other personally identifying information) will not be visible on the exterior envelope transmitted through the mail. The envelope that contains the early ballot affidavit must otherwise comply with A.R.S. § 16-547.

---

[16] The prescribed early ballot affidavit is deemed to substantially comply with FVAP-suggested designs for a UOCAVA return envelope affidavit. A.R.S. § 16-547(B); *see also* 52 U.S.C. § 20301(b)(4); https://www.fvap.gov/eo/overview/sending-ballots/creating-envelopes.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### 3.  Required Instructions to Voters

A County Recorder must supply printed instructions that:

1.  Direct voters to sign the voter affidavit, mark the ballot, and return the voted ballot in the enclosed return envelope;

2.  Include a website address where the following information will be posted: (1) official locations where early ballots may be deposited; and (2) official write-in candidates and withdrawn candidates for all jurisdictions on the ballot, A.R.S. § 16-343(G); and (2);

3.  Inform voters that no votes will be counted for a particular office if they overvote (vote for more candidates than permitted) and therefore the voter should contact the County Recorder to request a new ballot in the event of an overvote;

4.  Recommend that voters mail a ballot-by-mail at least six calendar days before the election to best ensure the ballot will be timely received by 7:00 p.m. on Election Day;

5.  Informs voters regarding the appropriate marking devices to be used when marking the ballot; and

6.  Include the following language:

    •  In order to be valid and counted, the ballot and affidavit must be delivered to the County Recorder or other officer in charge of elections or may be deposited at any polling place in the county no later than 7:00 p.m. on Election Day; and

    •  WARNING - It is a felony to offer or receive any compensation for a ballot.

A.R.S. § 16-547(C). The County Recorder may substitute "vote center" for "polling place" if the county uses vote centers. If applicable, the County Recorder may add additional ballot drop-off locations to the statutorily-prescribed language. All ballot drop-off locations and drop-boxes shall be approved by the Board of Supervisors (or designee).

A County Recorder in a covered jurisdiction, as designated by the Census Bureau in the current Federal Register publication, must provide these instructions in English and any additional written language(s) required under the federal Voting Rights Act. *See* Chapter 8, Section VI.

## D.  Mailing Ballots-by-Mail

### 1.  Methods of Transmitting Ballots-by-Mail

A ballot-by-mail must be mailed to voters by first-class, non-forwardable mail. The ballot-by-mail must be accompanied by an early ballot affidavit, instructions to voters, and a postage-prepaid return envelope.

UOCAVA ballots may be transmitted by mail, fax, email, or other secure method of online transmittal, in accordance with the delivery method selected by the voter on the FPCA. UOCAVA mailing requirements apply to all elections, not just federal elections. A.R.S. § 16-543(A).

### 2. Time Period for Mailing Ballots-by-Mail

Voters who make a ballot-by-mail request at least 27 days before the election are entitled to be mailed a ballot-by-mail between 27 and 24 days before the election. A.R.S. § 16-542(C); A.R.S. § 16-545(B)(1); A.R.S. § 16-544(F).[17]

Voters who make a ballot-by-mail request between 26 and 11 days before the election are entitled to be sent a ballot-by-mail within two business days of the request. A.R.S. § 16-542(D)-(E).

Requests for a ballot-by-mail made 10 days or less before the election are untimely. A.R.S. § 16-542(E) (requiring requests be made by 5:00 p.m. on the 11th day before the election).

### 3. Special Time Period for Transmitting UOCAVA Ballots

If a UOCAVA voter registers to vote with an FPCA at least 48 days before an election, a County Recorder must transmit a ballot-by-mail to the voter at least 45 days before the election. A.R.S. § 16-543(A); 52 U.S.C. § 20302(a)(8).

A UOCAVA voter who registers to vote using an FWAB pursuant to A.R.S. § 16-543.02(D) must simultaneously write-in their vote choices for federal candidates. However, if a County Recorder receives an FWAB sufficiently in advance of the election, the County Recorder should transmit a ballot-by-mail to the registrant and, if the FWAB received is not the version revised in 2017 or later that contains all the same information as the FPCA, should include an FPCA. If the voter returns the voted ballot-by-mail (and includes a completed FPCA if necessary), the County Recorder should void out the FWAB. FWABs from UOCAVA voters are held until 7:00 p.m. on Election Day if the voter was sent a ballot-by-mail and, if the ballot-by-mail was voted and returned, the FWAB is disqualified and the voted ballot-by-mail is transmitted to the officer in charge of elections for tabulation.

If a UOCAVA voter registers less than 48 days before the election, a County Recorder must transmit the ballot-by-mail within one business day of receipt of the registration. A.R.S. § 16-543(A); A.R.S. § 16-542(D). Requests made within 48 hours of Election Day should be further expedited to the extent possible.

#### a. *Effect of Incomplete FPCA Registration*

If a UOCAVA voter submits an incomplete FPCA (or attempts to register to vote using a registration form other than an FPCA or FWAB containing all same information as an FPCA) within 48 days of the election, the County Recorder must transmit a blank FPCA along with a ballot-by-mail to the voter within one business day of receipt. A.R.S. § 16-543(A). If the voter

[17] A.R.S. § 16-542(C) allows early ballots to be mailed as late as 24 days before the election, but also requires ballots be mailed "within five days after receipt of the official early ballots from the officer charged by law with the duty of preparing ballots pursuant to section 16-545." In the event a County Recorder cannot mail early ballots within five days of receipt, a County Recorder remains in compliance with A.R.S. § 16-542(C) if early ballots are mailed no later than the 24th day before the election.

does not return a new completed FPCA by 7:00 p.m. on Election Day, any voted ballot-by-mail from that voter will not count.

### b. *Waiver of UOCAVA 45-Day Transmittal Deadline*

In exceptional circumstances, the Secretary of State has authority to seek a waiver of the 45-day UOCAVA ballot transmission deadline from the U.S. Department of Defense as a result of undue hardship.[18] For example, an "undue hardship" may be found if:

- A county has suffered a delay in generating ballots due to a legal contest;

- Arizona's primary election date prohibits counties from meeting the 45-day mailing requirement; or

- The Arizona Constitution prohibits counties from complying with the 45-day mailing requirement.

52 U.S.C. § 20302(g)(2)(B). If a county experiences (or believes it will experience) an undue hardship, the County Recorder or other officer in charge of elections must contact the Secretary of State as soon as possible and provide sufficient information to enable the Secretary of State to make a timely waiver request.

The Secretary of State's waiver request must include:

- An explanation of the undue hardship;

- A recognition that the original purpose of the 45-day mailing requirement was to allow UOCAVA voters to have enough time to vote in a federal election;

- The number of days prior to the election that Arizona law requires ballots-by-mail to be transmitted to UOCAVA voters, A.R.S. § 16-543(A) (45 days);

- The State's plan to ensure that UOCAVA voters are able to receive and return their ballot-by-mail in time to be counted for the election. This includes the specific steps the county or counties will take, why the plan will give UOCAVA voters enough time to vote, and factual information explaining how the plan gives sufficient time for this to occur.[19]

The Secretary of State is generally required to submit a waiver request at least 90 days before the election, which the Department of Defense must act upon within 25 days. 52 U.S.C. § 20302(g)(3)(A). If the undue hardship results from a legal contest, however, the Secretary of State must submit the waiver request as soon as practicable, which the Department of Defense must act upon within five business days. 52 U.S.C. § 20302(g)(3)(B).

---

[18] 52 U.S.C. § 20302(g); https://www.fvap.gov/eo/waivers. The Under Secretary of Defense for Personnel & Readiness is the Presidential designee charged with evaluating such requests. *See* Executive Order 12642, available at https://www.archives.gov/federal-register/codification/executive-order/12642.html; Department of Defense Instruction 1000.04, Federal Voting Assistance Program (FVAP), available at https://www.fvap.gov/uploads/FVAP/Policies/dodi1000.04.pdf.
[19] 52 U.S.C. § 20302(g)(1); *see also* https://www.fvap.gov/uploads/FVAP/EO/2012_waiver_guidance.pdf.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### E.  Issuing Replacement Ballots-by-Mail

A County Recorder may issue replacement ballots-by-mail to a voter upon request and may limit the total number of ballots-by-mail to three per voter per election. The County Recorder should keep a record of each replacement ballot issued. *See* A.R.S. § 16-558.02. The County Recorder must ensure that only one ballot for a particular voter is verified and transmitted to the officer in charge of elections for tabulation. Only the first ballot received and verified shall be counted.

### F.  Emergency UOCAVA Early Balloting Procedures

In the event of a national or local emergency that makes substantial compliance with the UOCAVA statute impracticable, including occurrences of natural disasters, armed conflict, or mobilization of the National Guard or military reserve units of this State, the following procedures for the early balloting process shall apply for UOCAVA voters:

• The Secretary of State will issue a press statement for immediate release, posted on the Secretary of State's website and official social media accounts, and distributed as broadly and immediately as practicable to national and local wire services, to radio and television broadcast stations within the state, and to daily newspapers of general circulation in the state, outlining applicable measures that will be taken to continue or lengthen the early voting process for UOCAVA voters.

• The Secretary of State will prepare and distribute written public service announcements describing these early voting procedures for broadcast on radio and television networks, including but not limited to the U.S. Armed Forces Network and Federal Voting Assistance Program, and announcements describing these procedures on internet sites of interest to military and non-military U.S. citizens living abroad.

• The Secretary of State will direct the County Recorders and officers in charge of elections to make all reasonable efforts to locate each eligible UOCAVA voter in their jurisdiction and to notify such voter individually, by email, telephone, and/or fax, of the modified early voting process including the alternatives for issuing or returning early ballots faster than traditional mail service.

Should such an event cause insufficient time to receive, execute, and return a ballot, the deadline for the receipt of the early ballots mailed, emailed, or faxed back to the County Recorder will be 5:00 p.m. on the third business day after the election.

A.R.S. § 16-543(C).

### G. Reporting UOCAVA Transmission Statistics

Each County Recorder must timely confirm UOCAVA compliance to the Secretary of State, which

must include information about:

- How many UOCAVA ballots were validly requested;

- How many UOCAVA ballots were transmitted in accordance with the 45-day deadline based on valid requests received before that date; and

- How many UOCAVA ballots were transmitted after the 45-day deadline based on valid requests received before that date.

UOCAVA reports must be emailed or electronically submitted to the Secretary of State within one business day of the UOCAVA ballot transmission deadline. The reports shall not include any protected information for voters who have their records sealed pursuant to A.R.S. § 16-153 or who are enrolled in the Address Confidentiality Program.

The Secretary of State must consolidate the county reports and report Arizona's aggregated statistics to the U.S. Department of Justice following each primary and general election for federal office. *See* https://www.justice.gov/crt/statutes-enforced-voting-section#uocava.

### H. Deadline to Return Ballots-by-Mail

A ballot-by-mail (with completed affidavit) must be delivered to the County Recorder, the officer in charge of elections, an official ballot drop-off site, or any voting location in the county no later than 7:00 p.m. on Election Day. A.R.S. § 16-547(C); A.R.S. § 16-551(C).

The ballot-by-mail return deadline also applies to UOCAVA ballots, regardless of the method of transmission to the election official, unless the UOCAVA return deadline is extended pursuant to emergency procedures as outlines in Chapter 2, Section I(F).

### I. Ballot Drop-Off Locations and Drop-Boxes

Counties or municipalities that establish one or more ballot drop-off locations or drop-boxes shall develop and implement procedures to ensure the security of the drop-off location and/or drop-boxes and shall comply with the following requirements.

1. A ballot drop-off location or drop-box shall be located in a secure location, such as inside or in front of a federal, state, local, or tribal government building. All ballot drop-off locations and drop-boxes shall be approved by the Board of Supervisors (or designee).

   a. An unstaffed drop-box (*i.e.*, not within the view and monitoring of an employee or designee of the County Recorder or officer in charge of elections) placed outdoors shall be securely fastened in a manner to prevent moving or tampering (for example, securing the drop-box to concrete or an immovable object).

   b. An unstaffed drop-box placed inside a building shall be secured in a manner that will prevent unauthorized removal.

   c. While a staffed drop-off location or drop-box (*i.e.*, within the view and monitoring of an employee or designee of the County Recorder or officer in

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

charge of elections) need not be securely fastened or locked to a permanent fixture, it must be securely located inside a government building and monitored by a properly trained employee or designee of the County Recorder or officer in charge of elections at all times that the location or drop-box is accessible by the public.

2. The County Recorder or officer in charge of elections shall publicly post a listing of designated drop-off locations and drop-boxes on the website of the County Recorder or officer in charge of elections. Where practicable, the County Recorder or officer in charge of elections shall also post a listing of drop-off locations and drop-boxes anywhere that polling places and vote centers are posted.

3. All drop-boxes shall be clearly and visibly marked as an official ballot drop-box and secured by a lock and/or sealable with a tamper-evident seal. Only an election official or designated ballot retriever shall have access to the keys and/or combination of the lock to remove the deposited ballots.

4. All drop-boxes (both staffed and unstaffed) shall have an opening slot that is not large enough to allow deposited ballots to be removed through the opening slot.

5. Ballot drop-off locations and drop-boxes shall be locked and covered or otherwise made unavailable to the public until the 27th day prior to an election to ensure that no ballots or any other materials may be deposited before the early voting period begins. Prior to use on the 27th day before the election, all drop-boxes shall be inspected for damage and to ensure they are empty.

6. All drop-boxes shall be locked and covered or otherwise made unavailable after the polls have closed on Election Day to ensure that no ballots may be dropped off after the close of the polls.

7. The County Recorder or officer in charge of elections shall develop and implement secure ballot retrieval and chain of custody procedures, which shall include the following:

   a. Voted ballots shall be retrieved from ballot drop-off locations and/or drop-boxes on a pre-established schedule. Ballot retrieval shall be more frequent as Election Day approaches.

   b. For any election that includes a partisan race, at least two designated ballot retrievers of at least two differing party preferences shall be assigned to retrieve voted ballots from a ballot drop-off location or drop-box. For a nonpartisan election, at least two designated ballot retrievers shall be assigned to retrieve voted ballots from a ballot drop-off location or drop-box.

   c. Each designated ballot retriever shall wear a badge or similar identification that readily identifies them as a designated ballot retriever and/or employee of the County Recorder or officer in charge of elections.

   d. Upon arrival at a drop-off location or drop-box, the two designated ballot retrievers shall note, on a retrieval form prescribed by the County Recorder or

officer in charge of elections, the location and/or unique identification number of the location or drop-box and the date and time of arrival.

e.  The designated ballot retrievers shall retrieve the voted ballots by either placing the voted ballots in a secure ballot transfer container, retrieving the secure ballot container from inside the drop-box, or retrieving the staffed drop-box which also serves as a secure ballot container. If the drop-box includes a secure ballot container, the designated ballot retrievers shall place an empty secure ballot container inside the drop-box. The time of departure from the drop-off location or drop-box shall be noted on the retrieval form.

f.  Upon arrival at the office of the County Recorder or officer in charge of elections, central counting place, or other receiving site, the designated ballot retrievers shall note the time of arrival on the retrieval form. The County Recorder or officer in charge of elections (or designee) shall inspect the secure ballot container for evidence of tampering and shall confirm receipt of the retrieved ballots by signing the retrieval form and indicating the date and time of receipt. If there is any evidence of tampering, that fact shall be noted on the retrieval form.

g.  The completed retrieval form shall be attached to the outside of the secure ballot container or otherwise maintained in a matter prescribed by the County Recorder or officer in charge of elections that ensures the form is traceable to its respective secure ballot container.

h.  When the secure ballot container is opened by the County Recorder or officer in charge elections (or designee), the number of ballots inside the container shall be counted and noted on the retrieval form.

Ballots retrieved from a ballot drop-off location or drop-box shall be processed in the same manner as ballots-by-mail personally delivered to the County Recorder or officer in charge of elections, dropped off at a voting location, or received via the United States Postal Service or any other mail delivery service, *see* Chapter 2, Section VI.

## J.  Reporting Ballot-by-Mail Requests and Returns

At the request of a state or county political party chairperson before an election, a County Recorder must provide the following information at no cost to the political party:

•  A listing of registrants who have requested a ballot-by-mail. This information must be provided daily Monday through Friday, beginning 33 days before the election and through the Friday before the election;

•  A listing of registrants who have returned their ballot-by-mail, which must be provided daily in Maricopa and Pima Counties and weekly in all other counties.

-  Daily information in Maricopa and Pima Counties must be provided Monday through Friday, beginning the first Monday after early voting commences and ending the Monday before the election;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Weekly information in all other counties must be provided beginning on the Friday after early voting commences and ending on the Friday before the election.

A.R.S. § 16-168(D).

Ballot-by-mail request and return reports should conform to the format established for precinct lists as nearly as practicable (*see* Chapter 1, Section X(A)(1)) and should contain the following minimum information:

1. Registrant's name;

2. Voter registration/ID number;

3. Residential address;

4. Mailing address (if different from residential address);

5. Political party;

6. Whether PEVL or one-time request (ballot-by-mail request reports only); and

7. Date of request, for one-time requests (ballot-by-mail request reports only).

The first ballot-by-mail request report should contain all PEVL registrants and registrants who made a one-time ballot-by-mail request up to the time of the report. Subsequent ballot-by-mail request reports should include new one-time ballot-by-mail requests that have been made since the last report.

## II.    ON-SITE EARLY VOTING

A County Recorder shall establish on-site early voting at the County Recorder's office during the early voting period. A County Recorder may also establish additional in-person early voting locations throughout the county as practicable to ensure that all voters may reasonably access at least one early voting location. A.R.S. § 16-246(C); A.R.S. § 16-542(A).

A voter must cast a ballot issued at the on-site early voting location at that location, and may not remove that ballot from the location. An early ballot must be issued even if the voter previously requested or received a ballot-by-mail, but only the first ballot received and verified by the County Recorder shall be counted.

An elector who appears at an on-site early voting location by 5:00 p.m. on the Friday preceding the election and presents valid identification must be given a ballot and permitted to vote at the on-site early voting location. A.R.S. § 16-542(E).

### A.  Posting Notice of Write-In and Withdrawn Candidates

A County Recorder must post a Notice of Write-In and Withdrawn Candidates at each on-site early voting location. A.R.S. § 16-312(E); A.R.S. § 16-343(G).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Information about write-in and withdrawn candidates also must be posted to the website of the County Recorder or officer in charge of elections. A.R.S. § 16-343(G).

### B. Applicability of Voter ID Requirements

Before receiving a ballot or being permitted to cast a vote on an accessible voting device at any on-site early voting location, a qualified elector must provide identification as prescribed by A.R.S. § 16-579 (*see* Chapter 9, Section IV for more details on the identification requirement; identification is also required to receive an early ballot at an emergency voting center or from a special election board, *see* Chapter 2, Section III(B) and IV(B)). If needed, a voter may update their voter registration record at the on-site early or emergency voting location prior to receiving a ballot by completing a new voter registration form. Such updates shall be deemed effective starting in that election. A.R.S. § 16-411(B)(5)(b); A.R.S. § 16-542(A), (H)-(I).

### C. Requirements and Security Procedures for Accessible Voting Devices

An on-site early voting location must have at least one certified accessible voting device available for voters with disabilities, unless the election is for a city or town with a population under 20,000. A.R.S. § 16-442.01(A).

An accessible voting device must be approved by the Secretary of State, based on review and recommendation by the Election Equipment Certification Committee, and successfully pass logic and accuracy testing prior to deployment for on-site early voting. *See* Chapter 4, Sections I and II.

All accessible voting devices used for early voting shall be physically secured at all times and if the media containing the election for the accessible voting device is removable, the media itself shall be physically secured at all times.

The chain of custody of the accessible voting device must be tracked and logged by a team of at least two board workers or staff of the County Recorder or other officer in charge of elections.

- The log shall include: (1) the seal numbers on the device; (2) for devices that mark and tabulate, the number of votes cast at the time the device was turned on and the number of votes cast at the time the device was turned off; and (3) a place for the two board workers or county staff to initial or sign verifying the information.

- For devices that mark and tabulate, at the close of the early voting location each day, the board workers or county staff shall log the number of votes cast on the device and then either turn the device off or otherwise secure the device. Each morning, when the device is turned on, the number of votes cast on the machine shall be compared to the log from the previous day. Any discrepancy shall be immediately reported to the officer in charge of elections.

- At 5:00 p.m. or as soon as practicable after the last voter has left the site on the last day of on-site early voting or emergency voting, the device shall be closed out according to procedures provided by the officer in charge of elections.

All other security procedures set forth in this manual shall be followed for accessible voting

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

devices used for early voting. *See* Chapter 4, Section III.

## III.   EMERGENCY VOTING

### A. Establishing Emergency Voting Centers

Upon a specific resolution of the County Board of Supervisors before each election, the Board may authorize the County Recorder or other officer in charge of elections to establish and operate emergency voting centers. The Board shall specify in the resolution the location of the emergency voting centers and the hours of operation. A.R.S. § 16-411(B)(5).

"Emergency" means any unforeseen circumstance that would prevent the voter from voting at the polls. Qualified electors who experience an emergency between 5:00 p.m. on the Friday preceding the election and 5:00 p.m. on the Monday preceding the election may request to vote at an emergency voting center in the manner prescribed by the Board of Supervisors of their respective county. A.R.S. § 16-542(H).

If an emergency voting center established pursuant to this section becomes unavailable and there is not sufficient time for the County Board of Supervisors to convene to approve an alternate location for that emergency voting center, the County Recorder or other officer in charge of elections may make changes to the approved emergency voting center location and shall notify the public and the board of supervisors regarding that change as soon as practicable. The alternate emergency voting center shall be as close in proximity to the approved emergency voting center location as possible. A.R.S. § 16-411(B)(5)(c).

### B. Identification and Signed Statement Requirements

Before receiving a ballot at an emergency voting center, a voter must provide identification as prescribed by A.R.S. § 16-579 (*see* Chapter 9, Section IV for more details on the identification requirement). If needed, a voter may update their voter registration record at an emergency voting center prior to receiving a ballot by completing a new voter registration form. Such updates shall be deemed effective starting in that election. A.R.S. § 16-411(B)(5); A.R.S. § 16-542(E), (H), (I).

The voter must also sign a statement under penalty of perjury containing substantially the following language: "I declare under penalty of perjury that I am experiencing or have experienced an emergency after 5:00 p.m. on the Friday immediately preceding the election and before 5:00 p.m. on the Monday immediately preceding the election that will prevent me from voting at a polling place on Election Day."

- Such signed statements are not subject to public inspection pursuant to Title 39, Chapter 1, Article 2. A.R.S. § 16-542(H); A.R.S. § 16-246(F)(2). Election workers should not ask for any additional information regarding the voter's specific emergency.

- The signed statement for emergency voting may be incorporated into the early ballot envelope and affidavit, with a line for the voter to initial or sign next to the statement, or may be provided to the voter on a separate form to be signed by the voter.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## IV.   SPECIAL ELECTION BOARDS

A County Recorder or officer in charge of elections may appoint any number of special election boards to facilitate and enable voting by qualified electors who are ill or have a disability.

- For partisan elections, the board must be comprised of two members, one from each of the two political parties who cast the highest number of votes in the state in the last preceding general election. Under no circumstances shall both members of the board consist of voters who are registered with the same party affiliation. The county chairperson of each such party shall furnish, within 60 days before Election Day, the County Recorder or other officer in charge of elections with a list of names of qualified electors within the chairperson's political party, and such additional lists as may be required, from which the County Recorder or other officer in charge of elections shall appoint members to such special election boards. The County Recorder or other officer in charge of elections may refuse for cause to appoint or may for cause remove a member of this board. A person who is a candidate for an office in that election (other than the office of precinct committeeman) is not eligible to serve on a special election board for that election.

- For nonpartisan elections, the board should consist of two members with different political affiliations. On request, a county may allow any bipartisan panel of certified election officials to act as a special election board. A person who is a candidate for an office in that election (other than the office of precinct committeeman) is not eligible to serve on a special election board for that election.

A.R.S. § 16-549(A); A.R.S. § 16-246(F).

### A.  Time Periods for Requesting a Special Election Board

A qualified elector who is confined because of a continuing illness or disability may vote using a ballot-by-mail or by making a verbal or written request to have a special election board personally deliver a ballot to the elector's residence or other place of confinement. Such requests must be made by 5:00 p.m. on the second Friday before the election. A.R.S. § 16-549(C).

Qualified electors who become ill or disabled *after* the second Friday before the election may nonetheless request personal ballot delivery by a special election board up to, and including, the Monday before the election. The County Recorder or other officer in charge of elections shall honor these requests when possible. A.R.S. § 16-549(D).

Electors who are hospitalized after 5:00 p.m. on the second Friday before the election and before 5:00 p.m. on Election Day may request a special election board deliver their ballot to the hospital or other place of confinement. This ballot shall be processed as a provisional ballot to ensure the voter does not vote more than once. A.R.S. § 16-549(D).

### B.  Identification and Signed Statement Requirements

Before receiving a ballot from a special election board, a voter who requests a special election

board after the second Friday before the election must:

- Provide identification as prescribed by A.R.S. § 16-579 (*see* Chapter 4, Section IV for more details on the identification requirement).

- Sign a statement under penalty of perjury containing substantially the following language: "I declare under penalty of perjury that I am experiencing or have experienced an emergency after 5:00 p.m. on the second Friday preceding the election and before 5:00 p.m. on the Monday immediately preceding the election that will prevent me from voting at a polling place on Election Day."

  - Such signed statements are not subject to public inspection pursuant to Title 39, Chapter 1, Article 2.

A.R.S. § 16-549(D).

## V.   CHALLENGES TO EARLY BALLOTS

Challenges to early ballots must be submitted prior to the opening of the early ballot affidavit envelope. Challenges received after the affidavit envelope containing the ballot has been opened may be summarily denied as untimely.

Written challenges to voted early ballots shall be given immediately to an early voting election board or other officer in charge of elections. If the written challenge contains at least one of the grounds listed in A.R.S. § 16-591, the board or officer shall, within 24 hours, send the following by first class mail to the challenged voter:

- Notice of the challenge;

- A copy of the written challenge; and

- The time and place at which the voter may appear to defend the challenge.

The notice must be sent to the mailing address shown on the voter's request for the ballot-by-mail. If no address is provided, the notice may be sent to the mailing address on the registration rolls.

Notice must also be sent to:

- The challenger at the address provided on the challenge; and

- The county chairperson of each political party represented on the ballot.

The early voting election board shall meet to hear the challenge at the time specified, but:

- Not earlier than **96 hours** after the notice is mailed, or not earlier than **48 hours** after delivery if the notice is delivered by overnight or hand delivery; and

- Not later than 5:00 p.m. on the Monday following the election.

The early election board or other officer in charge of early ballot processing is not required to provide a notice if the written challenge is untimely or fails to set forth at least one of the grounds

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

listed in A.R.S. § 16-591 as a basis for the challenge.

A.R.S. § 16-552; A.R.S. § 16-594.

## VI.    PROCESSING AND TABULATING EARLY BALLOTS

The following procedures for processing early ballots shall be followed, unless the Secretary of State has granted a jurisdiction permission to use another method otherwise consistent with applicable law. A jurisdiction wishing to deviate from these instructions must make a request in writing no later than 90 days prior to the election for which the exception is requested.

### A. County Recorder Responsibilities

#### 1. Signature Verification

Upon receipt of the return envelope with an early ballot and completed affidavit, a County Recorder or other officer in charge of elections shall compare the signature on the affidavit with the voter's signature in the voter's registration record. In addition to the voter registration form, the County Recorder should also consult additional known signatures from other official election documents in the voter's registration record, such as signature rosters or early ballot/PEVL request forms, in determining whether the signature on the early ballot affidavit was made by the same person who is registered to vote.

- If **satisfied** that the signatures were made by the same person, the County Recorder shall place a distinguishing mark on the unopened affidavit envelope to indicate that the signature is sufficient and safely keep the early ballot and affidavit (unopened in the return envelope) until they are transferred to the officer in charge of elections for further processing and tabulation.

- If **not satisfied** that the signatures were made by the same person the County Recorder shall make a reasonable and meaningful attempt to contact the voter via mail, phone, text message, and/or email, notify the voter of the inconsistent signature, and allow the voter to correct or confirm the signature. The County Recorder shall attempt to contact the voter as soon as practicable using any contact information available in the voter's record and any other source reasonably available to the County Recorder.

Voters must be permitted to correct or confirm an inconsistent signature until 5:00 p.m. on the fifth business day after a primary, general, or special election that includes a federal office or the third business day after any other election. For the purposes of determining the applicable signature cure deadline: (i) the PPE is considered a federal election; and (ii) for counties that operate under a four-day workweek, only days on which the applicable county office is open for business are considered "business days."

If the early ballot affidavit is not signed, the County Recorder shall not count the ballot. The County Recorder shall then make a reasonable and meaningful attempt to contact the voter via

mail, phone, text message, and/or email, to notify the voter the affidavit was not signed and explain to the voter how they may cure the missing signature or cast a replacement ballot before 7:00pm on Election Day. The County Recorder shall attempt to contact the voter as soon as practicable using any contact information available in the voter's record and any other source reasonably available to the County Recorder. Neither replacement ballots nor provisional ballots can be issued after 7:00pm on Election Day.

All early ballots, including ballots-by-mail and those cast in-person at an on-site early voting location, emergency voting center, or through a special election board must be signature-verified by the County Recorder. However, because voters who cast an early ballot in-person at an on-site early voting location, emergency voting center, or through a special election board must show identification prior to receiving a ballot, early ballots cast in-person should generally not be invalidated based solely on an allegedly inconsistent signature absent other evidence that the signatures were not made by the same person. After verifying an in-person early ballot, a County Recorder may update the signature in a voter's record by scanning the voter's affidavit signature and uploading the signature image to the voter's record.

A.R.S. § 16-550(A); A.R.S. § 16-552(B).

## 2. Rejected Early Ballots

If the County Recorder or other officer in charge of elections determines the ballot should be rejected, they shall:

- Indicate for each ballot that the ballot has been rejected;
- Note on the early ballot report or audit report the voter's ID number (or other unique ID number) and the reason for rejection; and
- Set aside the unopened affidavit envelope in the designated stack.

## 3. Incorrect Ballots

If it is determined that the voter was sent an incorrect ballot and there is sufficient time to mail a new ballot and receive the correct voted ballot back from the voter, the County Recorder or other office in charge of elections shall make reasonable efforts to contact the voter and issue a correct ballot.

If it is too late to mail the correct ballot when the error is discovered but it is still possible to link the ballot to the specific voter, the incorrect ballot shall be sent to the Ballot Duplication Board, and any offices or issues the voter could have lawfully voted for shall be duplicated onto the correct ballot.

## B. Early Ballot Board Responsibilities

The Board of Supervisors or officer in charge of elections shall appoint one or more early ballot boards consisting of an inspector and two judges (the two judges must be from different political

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

party preferences). If the early ballot boards retire and reconvene, all materials shall be secured under the control of the Board of Supervisors or officer in charge of elections until the time for the boards to reconvene.

## 1. Early Ballot Report Log

The early ballot board shall maintain an early ballot report log that includes the following information for each batch of early ballots:

1. Batch ID;

2. Number of ballots to process/processed;

3. Number of ballots rejected and the reason(s) for the rejection (as applicable);

4. Number of ballots sent to duplication;

5. Number of ballots sent to tabulation;

6. Board members' initials; and

7. Board ID.

## 2. Affidavit Verification

Upon receipt of early ballots that have been batched and signature-verified by the County Recorder or other officer in charge of elections, the early ballot board shall:

• Verify that the affidavit envelope reflects the current election code; and

• Verify that the voter on the affidavit envelope appears on the batch report list received from the County Recorder.

The vote shall be counted if the County Recorder determined that the affidavit is sufficient and the registrant is a qualified elector of the voting precinct. The vote shall not be counted if the County Recorder determined that the affidavit is insufficient, or the registrant is not a qualified elector of the voting precinct.

## 3. Accepted Early Ballots

If the early ballot was accepted, the early ballot board shall:

1. Verify that all affidavit envelopes are of the batch being processed (and set aside any ballots from a different batch to be joined/processed with the proper batch);

2. Enter the total on the early ballot report;

3. Open each accepted affidavit envelope, being careful not to damage the ballot or the affidavit printed on the envelope;

4. Remove the ballot and check to ensure that the ballot is for the current election as shown on the affidavit envelope;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

5. Place the voted ballot in the designated stack and count the ballots;

6. Place the empty affidavit envelope in the designated stack;

7. Repeat the process until all valid ballots are opened and placed in their appropriate stacks; and

8. Fill out the ballot transmittal slip and send ballots to tabulation.

### 4. Damaged Early Ballots

If damaged ballots are found, they should be segregated from the batch and placed with any other ballots to be duplicated from the batch. The early ballot board must include each damaged ballot on a transmittal slip.

### 5. Transmittal Slips for Tabulation or Duplication

Each batch of ballots sent to the central counting place and Ballot Duplication Boards shall be accompanied by a completed transmittal slip with the following information:

1. Date item is originally processed;

2. Where ballots are sent **To:** (central counting place, Ballot Duplication Board, etc.);

3. Where ballots are sent **From:** (early voting, Ballot Duplication Board, etc.);

4. Ballot color and party (if applicable);

5. Total number of ballots sent;

6. Board ID;

7. Initials of board members; and

8. Batch/sub-batch numbers.

If a ballot was transmitted by facsimile to a UOCAVA voter and the voted ballot was returned by facsimile, the ballot should be sent to the Ballot Duplication Board to be duplicated in the method prescribed under Ballot Duplication Board instructions. *See* Chapter 10, Section II(D).

### 6. Close Out

The early ballot board will close out each batch as follows:

1. Calculate a cumulative total of the number of:

   a. Affidavit envelopes received;

   b. Ballots sent to the Ballot Duplication Boards;

   c. Ballots rejected; and

   d. Ballots sent to the central counting place;

2. Verify and audit these numbers against each applicable item (*i.e.*, the total number of

affidavit envelopes collected should match the cumulative total on the early voting ballot report, etc.);

3. Place paperwork in the official envelope (official envelopes are marked to specify the items to be placed in each) or official envelope container (to accommodate large volumes);

4. Retain a duplicate copy of the early ballot report/log for office records; and

5. Seal the official envelope or official envelope container.

## 7. Ballot Transportation

After processing is complete, if ballots need to be transferred to another building for tabulation, ballots shall be transported in a secure manner by at least two election officials (not of the same political party preference) with the ballots inside of a sealed ballot transfer container to a receiving site or a central counting place that is inside a secured building. Badge control shall be handled in the same manner as the central counting place.

## C. Timing for Tabulation of Early Ballots and Reporting of Results

The officer in charge of elections may begin tabulating early ballots after confirmation from the Secretary of State that all equipment passes any required logic and accuracy test. A.R.S. § 16-552(A). Tabulation of early ballots shall not begin any earlier than 14 days before the election. A.R.S. § 16-550(B).

Early ballot tabulation results may not be reported until Election Day, at the earlier of:

• The time when all ballots cast on Election Day at voting locations have been tabulated; or

• One hour after all polls under the jurisdiction of the officer in charge of elections have closed on Election Day.

Polls presumptively close at 7:00 p.m. on Election Day unless extended by court order. A.R.S. § 16-551(C); A.R.S. § 16-552(A); A.R.S. § 16-565(A).

## VII.   ELIGIBILE VOTERS IN JAIL OR DETENTION FACILITIES

Individuals held in pretrial detention or serving a sentence for a misdemeanor conviction remain eligible to register and vote (assuming no other deficiencies in eligibility). To the extent practicable, County Recorders shall coordinate with the county sheriff's office, jail or detention facilities, the county public defender's office, and other appropriate stakeholders to develop and implement reasonable procedures to facilitate the receipt and return of a ballot-by-mail by eligible voters held in jail or detention facilities. Such procedures may include coordinating a means for secure and effective delivery and return of ballots-by-mail for those in custody and/or the use of special election boards as permitted by law.

# CHAPTER 3:
# BALLOT-BY-MAIL ELECTIONS

"Ballot-by-mail" elections are elections in which a ballot is automatically mailed to every qualified elector in a jurisdiction, regardless of whether the voter is on the PEVL. These elections also include establishment of ballot replacement sites, where voters may receive and cast a replacement ballot.

Ballot-by-mail elections must be conducted according to most of the same requirements applicable to early voting. A.R.S. § 16-191; A.R.S. § 16-409(A); A.R.S. § 16-558(B).

## I.   ELIGIBILITY TO HOLD A BALLOT-BY-MAIL ELECTION

Cities, towns, school districts, and special taxing districts are the only jurisdictions permitted to conduct ballot-by-mail elections. A.R.S. § 16-409(A); A.R.S. § 16-558(A).

In addition, a County Recorder or other officer in charge of elections may send a Presidential Preference Election ballot to all qualified electors in precincts with 300 or less registered voters. A.R.S. § 16-248(H).

## II.   APPROVAL TO HOLD A BALLOT-BY-MAIL ELECTION

A city, town, school district, or special taxing district may conduct its own ballot-by-mail election after obtaining approval of their governing board. A.R.S. § 16-409(A); A.R.S. § 16-558(A).

Special taxing districts must obtain approval of the applicable County Board of Supervisors, even if the special taxing district will conduct its own election. The special taxing district must obtain approval from the Board of Supervisors before it publishes a call of election. If a special taxing district comprises more than one county, the governing board of the special taxing district must seek approval of the County Board of Supervisors in the county that contains the greater number of registered voters in the district. A.R.S. § 16-558(A).

If a city, town, school district, or special taxing district requests a county conduct the election on the jurisdiction's behalf, the conduct of that election is generally subject to an agreement between the county and the jurisdiction. A.R.S. § 16-205. Among other things, the agreement may require that all local jurisdictions holding elections on a particular consolidated election date conduct a ballot-by-mail election in lieu of establishing voting locations on Election Day.

The governing body of a special taxing district must provide various public notifications before conducting any election that is not held concurrently with a general election, which includes ballot-by-mail elections. A.R.S. § 16-226(B); A.R.S. § 16-227(A). *See* Chapter 8, Section IV(C).

## III.   PREPARING AND MAILING BALLOTS

A County Recorder or other officer in charge of elections may use a unified ballot format that combines all candidates and issues on the same ballot in a ballot-by-mail election. A.R.S. § 16-204(G).

Ballots utilized in a ballot-by-mail election must be prepared and transmitted in accordance with the requirements applicable to early ballots (*see* Chapter 2, Sections I(C) and I(D)), except:

- The County Recorder must mail ballots to all eligible voters not more than 27 and not fewer than 15 days before the election. A.R.S. § 16-558.01.

- Return envelopes in ballot-by-mail elections for Title 48 special district elections need not be postage pre-paid. The district governing board must determine whether the cost of return postage will be borne by the local jurisdiction or the voter. A.R.S. § 16-558.01.

If a jurisdiction conducts its own election without using the services of the County Recorder, the duties listed above for the County Recorder shall be performed by the officer in charge of elections for the jurisdiction.

## IV.   METHODS TO RETURN OR REPLACE BALLOTS

A completed ballot-by-mail must be delivered to the appropriate officer in charge of elections or an official ballot drop-off location no later than 7:00 p.m. on Election Day. A.R.S. § 16-411(D); 16-558(B); 16-551(C).

A city, town, school district, or special taxing district that conducts a ballot-by-mail election on its own behalf, and a county that conducts a ballot-by-mail election on behalf of a jurisdiction, may establish voting locations/ballot replacement sites on Election Day as well as ballot drop-off sites for voters to deposit voted ballots until 7:00 p.m. on Election Day. A.R.S. § 16-411(D); *see also* Chapter 8, Section I(B).

A County Recorder or other officer in charge of elections must establish at least one central location in each district to issue replacement ballots in cases where the voter's mailed ballot was lost, spoiled, destroyed, or not received. These ballot replacement sites shall be open until 7:00pm on Election Day. A.R.S. § 16-558.02(A); A.R.S. § 16-409(A). The County Recorder or other officer in charge of elections may establish as many additional ballot replacement sites as deemed necessary. If there is no appropriate location for a ballot replacement site in the district (for example, if the district contains only residential buildings), the County Recorder or officer in charge of elections should establish a ballot replacement site as close to the district as practicable.

In order for the replacement ballot to be counted, the voter must sign a sworn statement that the original ballot was lost, spoiled, destroyed, or not received. A.R.S. § 16-409(A); A.R.S. § 16-558.02(A). This language may be incorporated into the early ballot affidavit prescribed by A.R.S.

§ 16-547(A). *See* Chapter 2, Section I(C)(2). The County Recorder or other officer in charge of elections shall keep a record of each replacement ballot provided. A.R.S. § 16-558.02(B). In any case, the County Recorder must ensure that only one early ballot for a particular voter is verified and transmitted to the officer in charge of elections for tabulation. *See* Chapter 2, Section VI(A).

## V.  PROCESSING VOTED BALLOTS IN A BALLOT-BY-MAIL ELECTION

Voted ballots returned to the County Recorder or other officer in charge of elections must be processed and tabulated in a manner similar to early ballots. A.R.S. § 16-409(B); A.R.S. § 16-558(B); A.R.S. § 16-552; *see* Chapter 2, Section VI.

Even if a city, town, school district, or special taxing district conducts its own election, the jurisdiction must usually enter into an agreement with the applicable county (or counties) in order to conduct signature verification. *See* A.R.S. § 16-205(C). Absent an agreement with the County Recorder, a local jurisdiction could conduct its own signature verification at a public terminal provided by the County Recorder during normal business hours.

If a special taxing district crosses county lines, the district must enter into an agreement with both counties in order to conduct signature verification. For example, the county with the larger number of registered voters may conduct the election on the special taxing district's behalf, and seek voter registration records from the smaller county in order to conduct signature verification for all voters in the special taxing district.

## VI.  POST-ELECTION REPORTING REQUIREMENTS

A city, town, or school district that conducts a ballot-by-mail election must report the following information to the Senate President and Speaker of the House of Representatives by January 1 of the year immediately following any ballot-by-mail election:

1.  Changes in voter turnout from the previous election (regardless of whether the previous election was a ballot-by-mail or traditional election);

2.  The cost of the ballot-by-mail election compared to traditional elections;

3.  Suggestions for improvements to the ballot-by-mail election system;

4.  The frequency and severity of irregularities in the ballot-by-mail process, if any;

5.  Voter satisfaction with the ballot-by-mail election process; and

6.  The number of nondeliverable ballots in the ballot-by-mail election.

A.R.S. § 16-409(B).

# CHAPTER 4:
# VOTING EQUIPMENT

## I.    VOTING EQUIPMENT CERTIFICATION

All components of a voting system must be properly certified prior to use in any election for a federal, state, or county office. A.R.S. § 16-442(B). In addition, a city, town, or agricultural improvement district may adopt for use in its elections any electronic voting system or vote tabulating device approved by the Secretary of State, and thereupon, the voting system or device may be used at any or all elections for voting, recording, and counting votes cast in an election. A.R.S. § 16-442(E).

A voting system is defined as the total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used to define ballots, cast and count votes, report or display election results, and maintain and produce any audit trail information. 52 U.S.C. § 21081(b)(1). Thus, a voting system consists of the electronic voting equipment (including central count equipment, precinct voting equipment, and accessible voting equipment) and election management system (EMS) used to tabulate ballots.

This section outlines the procedures under which voting systems are certified, recertified, or decertified for use in Arizona. A new voting system must be certified by:

1. A Voting System Test Laboratory (VSTL) accredited in accordance with the Help America Vote Act;

2. The federal Election Assistance Commission (EAC); and

3. The Secretary of State, based on a recommendation from the state Election Equipment Certification Committee.

A.R.S. § 16-442(A)-(B).

Certification includes a review of system documentation and/or conducting a demonstration and functionality test. Upgrades or modifications to an existing voting system require recertification, but if the upgrade or modification is *de minimis*, a demonstration and functionality test is optional and not necessarily required. *See* Chapter 4, Section I(A)(2). A request for emergency conditional certification is subject to different standards. *See* Chapter 4, Section I(C).

The Secretary of State shall consult with and obtain recommendations regarding voting systems from nonprofit organizations that represent persons who are blind or visually impaired, persons with expertise in accessible software, hardware, and other technology, county and local election officials, and other persons deemed appropriate by the Secretary of State. The Secretary of State shall submit these recommendations to the state Election Equipment Certification Committee to

be considered for possible certification if the election equipment vendor submits an application for certification. A.R.S. § 16-442.01(C).

## A. State Certification Process

A manufacturer's voting system must be tested and certified as a comprehensive suite, not as individual components. Therefore, a manufacturer's proposed combination of hardware, software, and firmware must be tested as an integrated whole to ensure the particular system accurately tabulates votes. As a result, a jurisdiction may not mix-and-match components from different manufacturers' certified voting systems. The officer in charge of elections may mix components from different manufacturers' voting systems only if those systems are not interconnected and under exceptional circumstances after notifying and receiving written approval from the Secretary of State.

### 1. Submitting an Application for Certification

To initiate state certification, a voting system manufacturer must submit an application to the Secretary of State. The application form is prescribed by the Secretary of State. A complete application packet consists of:

1. A completed application form, including a description of all voting system components and, if seeking recertification, a description of modifications to the prior certified voting system;

2. Product descriptions and/or sales brochures of the voting system components;

3. VSTL Test Report; and

4. EAC Certificate of Conformance, including EAC Certification Number and Scope of Certification.

A manufacturer may submit an application packet to the Secretary of State electronically or by mail. The Secretary of State must conduct a preliminary review of the application packet within 21 days of receipt of a completed packet or sooner if practicable. If the application packet is incomplete, the Secretary of State should inform the manufacturer and need not take further action until the application packet is complete.

### 2. Review by the Election Equipment Certification Committee

Once the application packet is deemed complete, the Secretary of State must notify and provide all relevant documentation to the Election Equipment Certification Committee and schedule a public meeting. If a demonstration and functionality test will be required, the Secretary of State must (1) coordinate with the manufacturer to receive test ballots; (2) develop a test script to vote the test ballots on all electronic voting equipment; (3) tabulate the test ballots (using alternative equipment provided by the vendor that is not the equipment to be tested in the demonstration and functionality test) in advance of the public meeting to ensure conformity with the test script; and (4) coordinate delivery and storage of the voting system as the test date nears.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Upon notification by the Secretary of State, to the extent practicable, the Equipment Certification Committee must conduct a public meeting within 90 days to consider an application for certification or recertification.

The Secretary of State coordinates the logistical details for holding the public meeting, including complying with notice requirements in accordance with Arizona open meeting laws, taking meeting minutes, and ensuring the presence of legal counsel. A.R.S. § 38-431.01.

### a.  *Composition of the Election Equipment Certification Committee*

The state Election Equipment Certification Committee consists of three persons appointed by the Secretary of State with the following qualifications:

1.  A faculty member of the engineering college at an Arizona university;

2.  A lawyer member of the Arizona Bar Association; and

3.  A person who is familiar with voting procedures in the state, such as a trained election official.

Committee members serve without compensation. No more than two of the Committee members may be registered with the same political party. At least one member must have at least five years of experience with, and be able to render an opinion based on knowledge of or training/education in, electronic voting systems, procedures, and security. A.R.S. § 16-442(A).

### b.  *New Application for Certification*

For a new application for certification, the Election Equipment Certification Committee must conduct the following activities in a public meeting:

1.  Review the manufacturer's application packet for completeness;

2.  Confirm VSTL approval and EAC certification;

3.  Confirm the voting system under review is the same voting system certified by the EAC;

4.  Review the voting system and test ballots for compliance with the legal standards for certification;

5.  Conduct a demonstration and functionality test;

6.  Ask questions to the manufacturer's representatives as necessary;

7.  Seek legal advice in executive session as necessary; and

8.  Vote on whether to recommend to the Secretary of State approval, conditional approval, or denial of the manufacturer's application.

The Election Equipment Certification Committee may issue a recommendation to the Secretary of State to approve or deny the application, including partial or conditional approval. The Committee may also recommend specific conditions under which the voting system may be used by a county, city, town, or special taxing district.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The Election Equipment Certification Committee must issue a written recommendation to the Secretary of State based on the majority vote from the public meeting.

**i.**   Legal Standards for Certification

A voting system must comply with all federal and state laws, including the following:

1. The voting system must be tested and certified under federal law:

   a. The voting system must be reviewed and/or tested by an accredited VSTL;

   b. The voting system must be certified by the EAC; and

   c. The voting system must otherwise comply with the then-applicable federal Voluntary Voting System Guidelines (VVSG) in effect;

2. The voting system must have the following functional capability and/or characteristics required under federal and state law:

   a. The voting system must be suitably designed and be of durable construction;

   b. The voting system must provide for secure, efficient, and accurate voting;

   c. The voting system must record votes correctly and accurately, including aggregation of the voter's choices made on a single device;

   d. The voting system must provide a durable paper document that visually indicates the voter's selections and can be (1) used to verify the voter's choices; (2) spoiled by the voter if they fail to reflect the voter's choices, in which case the voter would be permitted to cast a new ballot; and (3) used in recounts and manual audits;

   e. The voting system must function for all types of elections;

   f. The voting system must be capable of rotating candidate names within a race and accurately tabulating the results;

   g. The voting system must aggregate the votes in the EMS in a way that prevents votes from being changed or deleted after voting has concluded; and

   h. The voting system must contain security features that prevent unauthorized access or hacking;

3. Ballot marking devices and direct-recording electronic (DRE) voting machines must:

   a. Permit the voter to verify (in a private, secret, and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted;

   b. Allow the voter to vote for the candidate or ballot measure of choice, allow the voter to vote for or against as many candidates or ballot measures for which they are entitled to vote, and inform the voter if the number of vote choices exceeds the permitted amount or prevent the voter from selecting more than the permitted number of vote choices;

    c.   Prevent the voter from voting for the same person more than once for the same office;

    d.   Have the capability to be sealed and prevent further voting after the close of the polls and/or after the last voter has voted;

    e.   DRE voting machines must produce a paper ballot or voter verifiable paper audit trail (VVPAT) for audit purposes, including the ability to change the ballot or correct any error and noting a spoiled or voided ballot when the voter changes the ballot or corrects an error; and

    f.   Provide the voter with an opportunity (in a private, secret, and independent manner) to correct any error before the ballot is cast and counted or cast a replacement ballot if the previous ballot is spoiled or unable to be changed or corrected;

4. Accessible voting equipment must be capable of:

    a.   Allowing the voter to cast and verify (both visually and with audio or synthesized speech) the voter's selections, including a synthesized (or actual) speech recording and braille keyboard or other input method that is ADA compliant;

    b.   Displaying the on-screen ballot in a format substantially similar to that of paper ballots (*see* Chapter 4, Section II(E)(1) and Chapter 8, Section V(A));

    c.   Displaying, providing audio or synthesized speech (and if applicable, printing) the ballot in English and in any minority language required under federal or state law;[20] and

    d.   Otherwise providing voters with visual impairments equivalent access to the voting experience compared to that provided for voters without visual impairments.

5. The voting system may not be subject to a recent decertification proceeding or otherwise have been utilized in violation of federal or state law.[21]

A.R.S. § 16-442(B); A.R.S. § 16-442.01(A)-(B); A.R.S. § 16-446(A)-(B); A.R.S. § 16-502(H); 52 U.S.C. § 20971(a)-(b); 52 U.S.C. § 21081(a).

         **ii.**    Demonstration and Functionality Test

A demonstration and functionality test consists of:

1. Explaining the testing process (of both primary and general election test ballots) during the public meeting;

2. Casting ballots on all electronic voting equipment in accordance with the test script prepared for the meeting;

---

[20] *See* Chapter 8, Section VI. If the applicable minority language is not a written language, the accessible voting machine must be capable of providing audio or synthesized reading of the ballot to the voter.

[21] For example, under A.R.S. § 16-1004(B), it is a class 5 felony to knowingly modify the software, hardware, or source code for voting equipment without receiving certification from the Election Equipment Certification Committee.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

3. Casting ballots on the accessible voting equipment in English and any minority language required under federal or state law, including testing the audio equipment;

4. If the system captures digital ballot images, determining whether the system:

    a. Produces digital images of readable quality, including clearly displaying write-in votes;

    b. Produces digital images that are capable of being sorted by criteria such as race, district, ballot type, or precinct;

    c. Encrypts the digital images; and

    d. Is capable of transferring or downloading the digital images at a reasonably fast rate;

5. Ensuring the aggregate vote totals for each race in the EMS match the pre-determined test results prepared by the Secretary of State; and

6. Demonstrating the voting system's ability to function in compliance with applicable state and federal law.

### c. *Application for Recertification of Updated/Modified Systems*

Upgrades or modifications to an existing certified voting system require recertification as a precondition for the upgraded/modified system to be used in Arizona elections. Like new applications, an application for recertification requires VSTL approval, EAC certification, and certification by the Secretary of State, based on review and recommendation by the Election Equipment Certification Committee. However, depending on the nature of the upgrade/modification, a demonstration and functionality test may not be necessary.

An upgrade or modification is documented through an engineering change order (ECO) prepared by the manufacturer and submitted to the appropriate VSTL. If the VSTL concludes, and the EAC agrees, that the ECO represents a *de minimis* change to the existing certified voting system, the Secretary of State may:

1. Notify the Election Equipment Certification Committee that the upgrade or modification has been deemed *de minimis* by the EAC;

2. Recommend the Committee conduct its review without a demonstration and functionality test; and

3. If the Committee agrees to forego a demonstration and functionality test, schedule a public meeting to review the manufacturer's application for recertification.

If the Election Equipment Certification Committee foregoes a demonstration and functionality test, the Committee must:

1. Review the manufacturer's application for recertification for completeness in a public meeting, whether in-person, telephonically, or by video teleconference;

2. Confirm VSTL approval and EAC certification;

CHAPTER 4:
Voting Equipment — *I. Voting Equipment Certification*

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

3. Ask questions to the manufacturer's representatives as necessary;

4. Seek legal advice in executive session as necessary;

5. Make an independent finding that the upgrade or modification is *de minimis* in nature; and

6. Vote on the manufacturer's application for recertification.

The Election Equipment Certification Committee must issue a written recommendation to the Secretary of State based on the majority vote from the public meeting. The Election Equipment Certification Committee may recommend approval or denial of the application, including partial or conditional approval.

If the Committee determines that the upgrade or modification is not *de minimis*, or the application for recertification otherwise requires additional review or testing, the Committee may vote to schedule a subsequent meeting to conduct a demonstration and functionality test. In that case, the Committee must evaluate the upgraded or modified voting system under the standards applicable to a new application for certification.

## 3.  Secretary of State Final Decision

Within a reasonable period after receiving the Election Equipment Certification Committee's recommendation, the Secretary of State must issue a final decision on an application for certification or recertification. The Secretary of State may accept, deny, or modify the Election Equipment Certification Committee's recommendation, including issuance of a partial or conditional certification.

The Secretary of State must issue the final decision in writing and notify the manufacturer by mail or email.

A final decision denying certification must include notice that the decision constitutes an appealable agency action. The notice must:

1. Identify the statute, rule, or provision upon which the decision was based;

2. Identify with reasonable particularity the reason why certification was denied or conditioned;

3. Include a description of the manufacturer's right to request a hearing on the decision; and

4. Include a description of the manufacturer's right to request an informal settlement conference pursuant to A.R.S. § 41-1092.06.

A.R.S. § 41-1092(3); A.R.S. § 41-1092.03(A).

## 4.  Appeal Process

A manufacturer may appeal the Secretary of State's final decision denying an application for certification or recertification.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### a. *Filing Notice of Appeal*

A manufacturer must file the notice of appeal with the Secretary of State within 30 days after receiving the final decision. The notice of appeal must:

1. Identify the manufacturer;

2. Provide the manufacturer's address;

3. Identify the agency and action being appealed; and

4. Contain a concise statement of the reasons for the appeal.

The notice of appeal must be served by personal delivery or certified mail, return receipt requested.

Within five business days of receiving an appeal, the Secretary of State must:

1. Notify any local jurisdictions who use the manufacturer's voting system or are otherwise potentially affected by the appeal; and

2. Request a hearing from the Office of Administrative Hearings.

A.R.S. § 41-1092.03(A)-(B); A.R.S. § 41-1092.04.

### b. *Hearing on Appeal*

If an informal settlement conference pursuant to A.R.S. § 41-1092.06 is not requested, a hearing before the Office of Administrative Hearings:

1. Must be conducted no later than 60 days after the appeal was filed with the Secretary of State;

2. Must include a complete and accurate record;

3. Must be conducted in accordance with A.R.S. § 41-1092.07; and

4. Must be presided over by an administrative law judge, who must issue a recommended decision pursuant to A.R.S. § 41-1092.08(A).

The manufacturer bears the burden of persuasion to establish that the voting system should have been certified or recertified. The administrative law judge must issue a recommended decision within 20 days after the hearing is concluded. A.R.S. § 41-1092.08(A).

The only remedy available is recommended reversal or modification of the Secretary of State's final decision. Damages of any kind may not be awarded.

A.R.S. § 41-1092.05.

### c. *Action on Recommended Decision*

Within 30 days following issuance of the administrative law judge's recommendation, the Secretary of State may accept, reject, or modify the decision. A.R.S. § 41-1092.08(B).

The Secretary of State's decision constitutes the final determination of the application for certification or recertification. The Secretary of State must provide notice of the final determination to the manufacturer and any other interested parties.

## B. Requirements for Equipment Decertification

If the Secretary of State has reason to believe that a certified voting system is not performing or being utilized in accordance with federal or state law, the Secretary of State may issue an Intent to Decertify the voting system or any component of the system. A.R.S. § 16-442(C)-(D).

In reaching the preliminary decision to decertify, the Secretary of State may take into account any of the following:

1. Material breach of contract with any Arizona jurisdiction;
2. Submission of a fraudulent, misleading, or otherwise ineligible application for certification or recertification;
3. Installation or use of an unauthorized voting system;
4. Failure to properly function or perform, including perceived security vulnerabilities;
5. Federal decertification by the EAC;
6. Failure to place election equipment source code in escrow and/or failure to authorize the State of Arizona to access or receive the source code; or
7. Failure to continue to meet any requirements for certification.

Upon issuance of an Intent to Decertify, the Secretary of State must promptly notify the manufacturer and any affected parties. Within 30 days of issuance, the manufacturer and any affected parties may submit written comments to the Secretary of State in support of or opposition to decertification.

Within 120 days of issuance, the Secretary of State must convene the Election Equipment Certification Committee. At a public meeting the Committee must:

1. Review the evidence for and against decertification;
2. Ask questions to the manufacturer's representatives (as necessary);
3. Seek legal advice in executive session (as necessary); and
4. Vote on whether to recommend decertification.

The Election Equipment Certification Committee may recommend full or partial decertification. The Committee may also specify the conditions under which the voting system may continue to

be used by a county, city, town, or special taxing district. The Election Equipment Certification Committee must issue a written recommendation to the Secretary of State based on the majority vote from the public meeting.

Within a reasonable period after receiving the Election Equipment Certification Committee's recommendation, the Secretary of State must issue a final decision on the Intent to Decertify. The Secretary of State may accept, deny, or modify the Election Equipment Certification Committee's recommendation, including issuance of a conditional recertification. The Secretary must follow the remaining procedures applicable to issuance of a final decision for an application for certification or recertification. *See* Chapter 4, Section I(A)(3) above.

The manufacturer or affected party may appeal a decertification in accordance with the appeal procedures for denials of certification and recertification. *See* Chapter 4, Section I(A)(4) above.

In addition to decertification, the Secretary of State may prohibit the purchase, lease, or use of any voting system (or component thereof) if a manufacturer or jurisdiction: (1) installs, uses, or permits the use of a voting system that is not certified for use or approved for experimental use; or (2) uses or includes hardware, firmware, or software in a voting system version that is not certified for use or approved for experimental use. A.R.S. § 16-442(D).

## C. Emergency Conditional Certification of Upgrade/Modification

If a local jurisdiction requires an emergency upgrade or modification to its existing certified voting system, the jurisdiction may apply to the Secretary of State for emergency conditional certification of the upgrade or modification. Emergency conditional certification allows the voting system to be upgraded or modified without seeking VSTL testing or EAC certification. A.R.S. § 16-442(G).

To apply for emergency conditional certification, the local jurisdiction must:

1. Convene its governing board to pass a resolution outlining why the forthcoming election cannot be conducted without the requested emergency conditional certification;

2. Make a written request to the Secretary of State that outlines the need for conditional emergency certification, including:

   a. A description of the proposed upgrade/modification;

   b. A description of what aspects of the voting system will be affected;

   c. An explanation why the upgrade/modification is necessary in order to conduct the next election, including a copy of the governing board's resolution;

   d. An explanation why the upgrade/modification could not have been sought earlier through the standard recertification process; and

   e. A description of what safeguards or contingency plans will be implemented if the proposed upgrade/modification does not function as intended during the election; and

   f. Any other information deemed relevant by the local jurisdiction.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Upon receipt of a request for emergency conditional certification, the Election Equipment Certification Committee  must convene as soon as practicable (but no later than 30 days from the date of the request) and follow the same procedures applicable to an application for recertification, except:

- VSTL approval and EAC certification are not required; and

- Both the local jurisdiction and manufacturer are expected to participate in the public meeting and answer the Election Equipment Certification Committee's questions.

Upon receipt of the Election Equipment Certification Committee's recommendation, the Secretary of State must issue a final decision within 15 days or sooner if practicable.

Any grant of conditional emergency certification is limited to six months from the date of the Secretary's final decision. If the manufacturer has not applied for (and been granted) recertification before expiration of the 6-month period, the conditionally-certified voting system is automatically decertified and ineligible for continued use. A.R.S. § 16-442(G).

The local jurisdiction may appeal a denial of emergency certification in accordance with the appeal procedures for denials of certification and recertification described above. *See* Chapter 4, Section I(A)(4).

## II.     LOGIC AND ACCURACY (L&A) TESTING

A logic and accuracy (L&A) test is intended to confirm that votes are attributed to the correct candidates and ballot measures in the election management system (EMS) and that each candidate and ballot measure receives the accurate number of votes.

The Board of Supervisors or officer in charge of elections is responsible for performing an L&A test on all voting equipment prior to each election. The conduct of the test must be overseen by at least two elections staff or inspectors (of different political parties), and shall be open to observation by representatives of the political parties, candidates, the press, and the public.

For any election that includes a federal, statewide, or legislative office, the Secretary of State is responsible for conducting an additional L&A test on selected voting equipment. A.R.S. § 16-449.[22]

### A. Timeframe to Conduct L&A Testing

#### 1.  Accessible Voting Equipment L&A Test

---

[22] Though not required, counties may, in their discretion, conduct additional pre-election L&A tests prior to the county's and Secretary of State's pre-election L&A test and/or additional post-election L&A tests after the county's post-election L&A test, including with participation from representatives of the recognized political parties.

In-person voting, both during the early voting period and on Election Day, requires the deployment of accessible voting equipment for voters with disabilities (and ballot marking by all voters in certain counties).

The officer in charge of elections must test all accessible voting equipment prior to an election.

- For an all ballot-by-mail election, equipment must be tested at least 15 days before the election.
- For a city, town, school district, special taxing district, or county election, equipment must be tested at least 27 days before the election (prior to the commencement of early voting).
- For a federal, statewide, or legislative election, equipment must be tested prior to the Secretary of State's L&A test, where practicable, or promptly thereafter.

In the case of federal, statewide, or legislative elections, the Secretary of State tests selected accessible voting equipment within seven days before the start of early voting (*i.e.*, between 34 and 27 days before the election). A.R.S. § 16-449(B).

L&A tests for accessible voting equipment are a prerequisite for the County Recorder to open on-site early voting locations.

## 2. Optical and Digital Equipment L&A Test

The officer in charge of elections must test precinct voting equipment and central count equipment within 30 days of an election. In the case of federal, statewide or legislative elections, the Secretary of State must also test selected equipment within 17 days before the election. A.R.S. § 16-449(A).

However, if a county's accessible voting equipment does not independently tabulate votes (*i.e.*, the equipment marks and/or produces a paper ballot that will be tabulated using different voting equipment), the officer in charge of elections and Secretary of State may test all voting equipment (including precinct voting equipment and central count equipment) during the time period applicable to accessible device testing. A.R.S. § 16-449(C). If the officer in charge of elections wishes to have all voting equipment testing completed together, the officer in charge of elections must make that request to the Secretary of State at least 90 days prior to the election. In order to prepare for this consolidated testing, the officer in charge of elections must provide to the Secretary of State all testing materials as referenced in Chapter 4, Section II(D)(2) below, including printed ballots, at least three weeks before the start of early voting. The Secretary of State has discretion to grant or deny a request for consolidated testing based on the circumstances. For example, if test ballots are not timely received, the tests will need to be conducted separately and the officer in charge of elections will be notified of the determination.

## 3. Rescheduling L&A Tests

The Secretary of State's Office must conduct its L&A tests after the officer in charge of elections has conducted county-level tests whenever practicable. In the event the officer in charge of elections has not successfully conducted an L&A test prior to the Secretary of State's scheduled

test, the officer in charge of elections should contact the Secretary of State to consider whether to postpone the Secretary's L&A test pending further local testing.

If the electronic voting system has not successfully passed the Secretary of State's L&A test, the Secretary of State may schedule a re-test for a later date. Re-testing may continue during the early voting period and through the day prior to the election. However, the officer in charge of elections may not deploy any electronic voting equipment in a federal, statewide, or legislative election that has not successfully passed the Secretary of State's L&A test.

## B.  Public Notice of L&A Test

The Board of Supervisors or other officer in charge of elections must publish notice of the time and place of each L&A test at least 48 hours in advance of the test. A.R.S. § 16-449(A). The notice must be published at least once in a daily or weekly newspaper circulated in the county. If no newspaper is published in the jurisdiction, notice must be published in any newspaper of general circulation. A.R.S. § 16-449(A).

If the Secretary of State must reschedule an L&A test or schedule a re-test, and the Board of Supervisors or other officer in charge of elections cannot reasonably comply with the 48-hour public notice requirement, the Board of Supervisors or other officer in charge of elections must:

- Publish notice of the rescheduled L&A test in a daily or weekly newspaper within the county as soon as possible if the notice is capable of being published before the test date;
- Post the notice on the county's website and distribute the notice through any other public communication or social media channel(s) regularly utilized by the county; and
- Provide notice of the place and time of the reschedule L&A test or re-test by phone or email to all L&A test observers from the immediately preceding L&A test.

## C.  Observers for L&A Test

An L&A test must be observed by the officer in charge of elections. An L&A test must also be open to:

- Designated political party representatives;
- Candidates or candidate representatives;
- Government officials; and
- Members of the public and the media.

A.R.S. § 16-449(A). For security reasons and to prevent disruption of election operations, the officer in charge of elections may specify a designated area where observers are permitted to view the L&A test.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### D. Process for Conducting L&A Tests by the Secretary of State

The Secretary of State must conduct an L&A test on accessible voting equipment and optical/digital scan equipment before each federal, statewide, and legislative election.

#### 1. Acquisition of Precinct Information and Voting Equipment

At least eight weeks before a primary election or PPE, the officer in charge of elections must provide the Secretary of State a complete list of precincts and legislative and congressional districts and ensure the Secretary of State possesses the necessary precinct voting equipment to preliminarily verify the county's L&A test results at the Secretary of State's Office. To conduct the pre-test, the Secretary of State may acquire the necessary voting equipment from the county or directly from equipment vendors, if practicable. If multiple counties use the same type of voting equipment, the Secretary of State may preliminarily test multiple counties' ballots on the same piece of voting equipment without acquiring voting equipment from each county.

#### 2. Selection of Precincts and Test Ballots

The Secretary of State must randomly select precincts that will be included in each type of L&A test conducted by the Secretary of State.

The Secretary of State generally selects five to 10 precincts for a small or medium-sized county and 10-20 precincts for a large county. In doing so, the Secretary of State must ensure:

- At least one precinct is selected in each congressional and legislative district; and
- Each federal, statewide, and legislative candidate and each ballot question will receive at least one test vote in the selected precincts.

The Secretary of State must also acquire test ballots from each county. If a county will use preprinted ballots and ballots through a ballot-on-demand printer, the officer in charge of elections must provide ballots generated though both printing methods.

For a primary election or PPE, the officer in charge of elections must provide the Secretary of State the following test ballots from each pre-determined test precinct:

- 50 ballots from each of the two largest political parties entitled to continued representation on the ballot;
- 25 ballots from every other recognized or new political party; and
- Five "federal-only" ballots.

The Secretary of State may request additional test ballots if necessary. The Secretary of State also may account for new political parties or the possibility that not all recognized political parties will participate in a PPE.

For a general election, the officer in charge of elections must provide the Secretary of State the following test ballots from each pre-determined test precinct:

- 50 ballots; and

- 10 "federal-only" ballots.

If a precinct contains a precinct split, the officer in charge of elections should ensure the above-referenced test ballots are distributed among each precinct split. In addition, if minority-language ballots are required in the county, the officer in charge of elections must also include minority-language ballots among the requested quantities of test ballots.

The Secretary of State may vary the number of test ballots if necessary.

## 3.  Notification of Completion of Programming

Before each federal, statewide or legislative election, the officer in charge of elections must promptly notify the Secretary of State when the county has completed programming its election.

Within one business day of receiving this notification, the Secretary of State must confirm with the officer in charge of elections the date/time of the accessible and optical/digital scan tests and the conditions for each test, including precinct selections, ballot requirements, and the number of machines selected at random for testing. The Secretary of State must inform the officer in charge of elections of the date/time of the L&A test as soon as practicable.

## 4.  Secretary of State Preparation for L&A Testing

For an accessible voting equipment L&A test, the Secretary of State must:

1. Request that all accessible voting equipment to be used during on-site early voting be made available for the L&A test and be pre-programmed with all precinct ballot styles;

2. Identify the precincts randomly selected by the Secretary of State and request the accessible voting equipment to be utilized at those precincts be made available for the L&A test;

3. Ensure the attendance of any necessary minority language interpreters at the L&A test;

4. Inform the officer in charge of elections that they must:

   a. Utilize the actual election program for Election Day (not a copy);

   b. Reset any vote totals from prior L&A tests and ensure equipment zero tapes are accessible for examination;

   c. Print a zero report from the county's EMS and ensure the report is accessible for examination;

   d. Ensure that equipment operators are available to assist with the L&A test;

e.  Ensure the equipment is set up, set to run in "election mode," and ready to vote upon the Secretary of State's arrival;

f.  Ensure that voter card encoders and bar code printers will be available for testing (if applicable);

g.  Ensure political party observers have been contacted for the L&A test;

h.  Ensure that headphones and touchpads will be available for all equipment; and

i.  Ensure all equipment is capable of processing and outputting the testing results.

For an optical/digital scan equipment L&A test, the Secretary of State must:

1.  Request the requisite number of test ballots;

2.  Request the applicable memory cards or sticks in order to preliminarily verify L&A test results at the Secretary of State's Office;

3.  Request that all central count equipment be made available for the L&A test;

4.  Identify the precincts randomly selected by the Secretary of State and request the precinct voting equipment to be utilized at those precincts be made available for the L&A test;

5.  Inform the officer in charge of elections that they must:

    a.  Utilize the actual election program for Election Day (not a copy);

    b.  Reset any vote totals from prior L&A tests and ensure equipment zero tapes are accessible for examination;

    c.  Print a zero report from the county's EMS and ensure the report is accessible for examination;

    d.  Ensure political party observers have been contacted for the L&A test;

    e.  Ensure that equipment operators are available to assist with the L&A test; and

    f.  Ensure the equipment is set up, set to run in "election mode," and ready to vote upon the Secretary of State's arrival.

The officer in charge of elections must provide any requested materials or information to the Secretary of State in accordance with the deadline set forth in the Secretary of State's letter, but no later than five weeks before each election and/or three weeks before the start of early voting.

## 5.  Marking Test Ballots and Creation of Test Script

The Secretary of State must create a script that outlines how each test ballot will be marked.

Votes must be randomly distributed in each of the selected precincts, ensuring that each federal, statewide, and legislative candidate and ballot measure receives at least one vote. In addition, various races and issues must be over-voted to test the optical/digital scan equipment's ability to notify the voter of, or out-stack, an over-vote, physically or digitally.

Upon receipt of test ballots from the officer in charge of elections, the Secretary of State must mark the test ballots in accordance with the predetermined script.

The Secretary of State also must create a script for each accessible voting machine that specifies how many ballots will be cast on the machine and how the votes will be distributed during the accessible equipment L&A test.

The Secretary of State must run the test ballots through the optical/digital scan equipment provided to the Secretary of State for preliminary verification purposes.

Finally, the Secretary of State creates a summary report that aggregates the vote totals for each candidate and ballot measure. The Secretary of State must ensure these test ballot results match the summary report.

## 6. Conducting the L&A Test

The Secretary of State must bring a sufficient number of personnel to conduct the L&A test.

Upon arrival, the Secretary of State must ensure that the selected voting equipment has zero recorded votes prior to commencing the L&A test. The Secretary of State then must test the selected voting equipment to ensure each machine reports the correct vote totals (and that the EMS reports the correct aggregate totals) in accordance with the prepared scripts.

The Secretary of State must review ballots, and each ballot display on the accessible voting equipment, to confirm formatting, language, and audio requirements in the testing standards have been met (see testing standards in Chapter 4, Section II(E) below).

## E. L&A Testing Standards

### 1. Accessible Voting Equipment

Accessible voting equipment must:

1.  Display candidate races, ballot measures, and voter instructions in English and any other language required in the county under the federal Voting Rights Act, at the voter's option;

2.  Display candidate races, ballot measures, and voter instructions in large print and contrasting colors, at the voter's option;

3.  Produce an accurate audio recording in English and any other language required in the county under the Voting Rights Act;

4.  Display the correct voting precinct and state, county, and election type;

5.  Display instructions how to use the equipment and mark the ballot;

6.  Display the ballot as nearly as practicable in accordance with the formatting requirements for paper ballots, including color marking for partisan primary elections;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

7. Display candidate names accurately, in accordance with the candidate's nomination paper;

8. Display ballot measures accurately, in accordance with any certification from the Secretary of State;

9. Sequentially advance from screen-to-screen;

10. Perform the functions selected by the voter;

11. Provide a warning to the voter if the voter attempts to under-vote or over-vote a particular race or issue, or, in the case of an over-vote, prevent a voter from doing so;

12. Increase or decrease the headphone audio volume in accordance with the voter's preferences;

13. Contain a functioning keypad (whether stand-alone or incorporated into the accessible voting equipment screen);

14. Allow the voter to write in a candidate using a keypad in the voter's selected language;

15. Provide a means for the voter to verify all of the voter's selections prior to committing the selections and a means for the voter to change a selection if desired before committing the selections;

16. Display a summary screen at the conclusion of voting that matches the voter's selections; and

17. If the accessible voting equipment independently tabulates votes, tabulate the voter's selections accurately, including:

   • Accurately tabulating in the EMS; and

   • Printing an accurate ballot in English and any other written language required in the county under the Voting Rights Act and/or printing an accurate voter verifiable paper audit trail (VVPAT).

## 2. Optical and Digital Scan Voting Equipment

Optical and digital scan voting equipment must:

1. Attribute votes to the correct candidates and ballot measures in the EMS;

2. Attribute the correct number of votes to each candidate and ballot measure;

3. Warn the operator of an over-vote or out-stack, physically or digitally, a ballot in the event of an over-vote;

4. Record no vote in an over-voted race and out-stack for further adjudication if applicable (precinct voting equipment and central count equipment);

5. Accept ballot styles for that specific precinct and reject ballot styles from other precincts (precinct voting equipment only); and

6. Accept ballot styles from the current election and reject ballot styles from a different election.

In advance of the Secretary of State's L&A test, the officer in charge of elections should conduct a preliminary test of ballots as soon as they are available from the printing vendor to ensure the ballots are correct and meet the requirements for the voting equipment utilized. This may include testing a blank ballot and a fully-voted ballot on every ballot style used in the election.

### 3. On-Screen/Electronic Tallying of Write-In Votes

If electronic tallying of write-in votes will be utilized as part of the election tabulation system, that functionality shall also be tested during the L&A test to ensure secure and proper functioning and attribution of Write-In Tally Board determinations for the write-in votes tallied. *See* Chapter 10, Section II(G)(2) for requirements for electronic tallying of write-in votes.

### 4. Errors Discovered During Testing

If any error is detected during L&A testing:

- The cause shall be ascertained and corrected;

- An errorless count shall be made before the voting equipment and programs are approved for use in the election;

- If the election program is found to be the source of the error, a copy of a revised election program shall be filed with the Secretary of State within 48 hours after the revision; and

- If the error was created by voting equipment malfunction, a report shall be filed with the Secretary of State within 48 hours after the correction is made, stating the cause and the corrective action taken.

A.R.S. § 16-449(A).

### 5. Certification of Voting Equipment

The Secretary of State must certify the voting equipment if the equipment meets the requirements in the L&A testing standards. Voting equipment may not be deployed or used until the Secretary of State has certified that the equipment passed L&A testing.

If the voting equipment does not meet the mandatory requirements from the testing standards, the Secretary of State should work with the officer in charge of elections to determine the cause of the deficiency and whether it can be corrected in a timely manner. If the error can be readily corrected, the voting equipment may be retested until the mandatory requirements have been met; otherwise, the L&A test must be rescheduled for a later time and date.

## F. County L&A Testing

The officer in charge of elections must substantially follow the L&A testing procedures applicable to the Secretary of State, except that all of the county's deployable voting equipment must be

tested. The officer in charge of elections also must conduct a post-election L&A test of tabulation equipment. *See* Chapter 12, Section II.

### G. Retention of L&A Programs, Test Ballots, and Database

The tests ballots and database used in L&A testing shall be:

- Secured immediately after the L&A test is run; and

- Retained until the post-election L&A test is ready to be conducted after ballot tabulation for the election.

Programs and test ballots used in L&A testing shall be under the control of the officer in charge of elections. After completion of the post-election L&A test, the databases and test ballots shall be retained with the official returns according to the retention period applicable for that election.

## III.    SECURITY MEASURES FOR ELECTRONIC VOTING SYSTEMS

All components of the electronic voting system, including any e-pollbooks uploaded with voter registration information, must be secured in accordance with this section. Counties should also conduct periodic election security and cybersecurity assessments and develop and implement appropriate security procedures and best practices in consultation with county (and, where appropriate, federal and state) information technology and security professionals. Counties may establish more stringent and robust security protocols so long as the following minimum requirements are met.

The officer in charge of elections must develop and implement a training plan to ensure that elections staff (and any temporary workers) understand and comply with all security procedures applicable to the electronic voting system.

A person who knowingly modifies the software, hardware, or source code for voting equipment without receiving approval or certification pursuant to A.R.S. § 16-442 is guilty of a class 5 felony. A.R.S. § 16-1004(B).

### A. Physical Security of the Electronic Voting System

Hardware components of the electronic voting system:

1. Must be permanently labeled with a unique serial number for tracking and auditing purposes;

2. Must be inventoried before and after an election;

3. Must be stored in a locked, secured location that prevents unauthorized access;

   - Access to the electronic voting system (including voting equipment and the EMS) must be authorized by the officer in charge of elections. Access must be documented with a

written log or with electronic key card access that indicates the date, time, and identity of the person accessing the system.

4. Must be sealed with tamper-resistant or tamper-evident seals once programmed;

   • The seal number must be logged as corresponding with particular voting equipment and the election media that has been sealed in the voting equipment. The log should be preserved with the returns of the election. In the event of a recount or re-tally of votes, the officer in charge of elections should be prepared to submit an affidavit confirming that the election program and any election media used in the election have not been altered. A.R.S. § 16-445(C).

5. Must be safeguarded from unauthorized access when being moved, transferred, serviced, programmed, or temporarily stored;

6. May be accessed by elections staff only to the extent necessary to perform their authorized task; and

7. Must be witnessed by two or more election staff members (of different political parties if possible) when being moved or transferred, which includes an inventory of the equipment and chain of custody before and after the move or transfer.

## B. Data Security of the Electronic Voting System

Components of the electronic voting system:

1. Must be password-protected (for voting system software);

   • In addition to complying with any system requirements, passwords must: (1) contain mixed-cased and non-alphabetic characters, if possible; (2) be changed on a regular basis and may not be a vendor-supplied password; and (3) may be known only by authorized users.

2. May not be connected to the internet, any wireless communications device, or any external network (except for e-pollbooks);

   • An EMS must be a stand-alone system, attached only to components inside an isolated network. An EMS may only be installed on a computer that contains only an operating system, the EMS software, data/audio extractor software, and any necessary security software.

3. May not be used to modem election results, whether through analog, cellular, or any similar transmission;

4. May not contain remote access software or any capability to remotely-access the system;

5. Must match the software or firmware hash code on file with the officer in charge of elections prior to programing the election and the hash code on file with either (1) the National Institute of Standards and Technology (NIST); or (2) the Secretary of State at the time of certification of the electronic voting system; and

   • If the EMS software hash code is on file with NIST or the Secretary of State, the officer in charge of elections must certify that the officer compared the hash code on file with

NIST or Secretary of State for the EMS software with the hash code of the EMS software to be used in the election and certify that the numbers are identical.

6. Must be observed by the officer in charge of elections or a designee if the election program (or any software or firmware) is updated or modified.

In addition, the following security protocols apply to any memory stick or removable electronic storage device used with the electronic voting system:

1. A stick or device must be purchased or received from a reliable source.

2. A stick or device shall be permanently identified with a unique serial number or identifier when in use, and an inventory of all electronic media shall be created and maintained.

3. Electronic storage media shall be physically secured at all times. No physical access should be given to any person unless the election officer in charge of the electronic storage media specifically grants that person access. Secured locations must be provided for storing electronic media when not in use, coding an election, creating the election media, and transferring and installing the election media into the voting device.

4. No electronic storage media shall be left unattended or in an unsecured location once it has been coded for an election. Where applicable, coded election media shall be immediately loaded into the relevant voting device, sealed, logged, and made secure or must be placed in a secured and controlled environment and inventoried.

5. A stick or device should generally not be used to transfer data between an internet-connected system and a non-connected electronic voting system. Only when necessary to import ballot language to the electronic voting system should such transfer occur, and in those circumstances, the internet-connected system and stick or device shall be scanned with updated antivirus software prior to transfer. In addition, the officer in charge of elections shall consider and implement other appropriate security protocols for such data transfers.

6. A stick or device used to transfer data to or from the electronic voting system should only be used one time – to transfer data from one system to a second system and then securely disposed of. When feasible, write-once memory cards or write-once disks should be used instead of USB devices to transfer data to or from an electronic voting system to ensure a "one-way, one-use policy" is self-enforced by the technology.

7. If the individual file to be transferred between systems was electronically received (whether through download, by email, or any other electronic means), the individual file must be scanned with antivirus software prior to being placed on the stick or device. If any files were downloaded from an internet portal, the portal must be a secure portal for data transmission purposes. Regardless of the method of receipt, however, individual files should only be downloaded, transferred, or otherwise utilized if they were received by a trusted third-party source.

8. If a stick or device was received by mail:

   • The stick or device should only be accepted from a trusted, third-party source;

- The stick or device must be encrypted by the third-party source, and the password to decrypt the stick or device may not be included with the mailing itself; and

- Upon receipt, the stick or device must be scanned with antivirus software prior to opening or otherwise executing any file contained on the stick or device.

Finally, the following security protocols apply to the use of e-pollbooks and ballot-on-demand printers:

1. E-pollbooks and ballot-on-demand printers shall only be connected to authorized and secured networks and resources;

2. E-pollbooks and ballot-on-demand printers should transmit and receive data utilizing industry standard best practices for information and network security, including encryption;

3. E-pollbooks and ballot-on-demand printers shall be patched and updated to current versions as designated by the vendor;

4. Only software, applications, or drivers necessary for e-pollbook operation shall be installed on e-pollbooks;

5. E-pollbooks and ballot-on-demand printers shall be tested before each election to ensure proper operation;

6. To the extent practicable, voter data files on e-pollbooks should be compared to the original files by checking a hash code or, at a minimum, comparing file size prior to testing or use at a voting location; and

7. Only power or charging cables supplied by the vendor or purchased from a verified source shall be used to power e-pollbooks.

## IV.   CONTINGENCY PLANNING

The officer in charge of elections must develop a written contingency plan in case election operations, including the use of voting systems and any component thereof, are significantly disrupted. A contingency plan should consider all potential sources of disruption, including but not limited to:

- Systemic equipment failures or malfunctions;

- Power outages;

- Natural disasters or infrastructure failure;

- Terror threats or other civil disturbances; and

- Unauthorized access, intrusion, or hacking into election facilities or equipment.

Among other things, a contingency plan must outline how the officer in charge of elections would ensure continuity in voting in case one or more voting locations becomes temporarily or permanently unusable on Election Day, which may include:

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Sending voters to an alternative voting location (whether new or existing);
- Seeking a court order to extend voting hours; and/or
- Requesting voters return to the voting location after the problem has been resolved.

The officer in charge of elections must implement any additional procedures necessary to ensure that voters are properly notified and receive the correct ballot style.

In advance of each election, the officer in charge of elections must review/update the contingency plan and ensure that key staff members have been briefed on the plan. As necessary, the officer in charge of elections should also be prepared to review and/or execute the contingency plan in coordination with:

- The County Recorder;
- The Board of Supervisors;
- The County Attorney's office;
- The County Sheriff's office;
- The Presiding Judge of the Superior Court;
- The Secretary of State's Office;
- The Arizona Counter Terrorism Information Center (ACTIC);
- The Arizona Department of Public Safety;
- The Attorney General's office;
- The Federal Bureau of Investigation;
- The U.S. Department of Homeland Security; and
- The U.S. Attorney's office.

The officer in charge of elections must file certain contingency information with the Secretary of State at least 10 days in advance of the election, including:

- A description of the officer's contingency plan to tabulate ballots in case of central count equipment failure (see specific requirements below); and
- A copy of the county's election program (see specific requirements below).

### A. Tabulation Contingency Plan

The officer in charge of elections must file with the Secretary of State a tabulation contingency plan that identifies alternative voting equipment or facilities in case the county experiences a complete loss of its central count equipment or use of its central counting place. The tabulation contingency plan shall be completed no later than the second Monday before the election.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The plan may include the transport of ballots across county lines. In that case, the ballots must be inventoried and safeguarded by the originating county's employees in the same manner as if the ballots had not been transported. *See* Chapter 9, Section VIII(B). A county must exhaust all possible options (including the acquisition of additional voting equipment from the vendor) before invoking a contingency plan that involves transportation of ballots across state lines.

The officer in charge of elections must notify the Secretary of State (and the chairpersons of the recognized political parties) if a tabulation contingency plan is invoked.

## B. Election Program Contingency Plan

Any jurisdiction that conducts an election must file a copy of the election program with the Secretary of State at least 17 days prior to each election. A.R.S. § 16-445(A). This copy may serve as a backup in case the original program is destroyed or rendered unusable.

The election program must be in a machine-readable format and may be transmitted to the Secretary of State via a password-protected CD, DVD, USB memory stick, or SFTP site.

If any subsequent changes are made to the election program, the officer in charge of elections must file the new copy with the Secretary of State within 48 hours of the change. A.R.S. § 16-445(B).

The Secretary of State must preserve election programs in escrow for three years. The Secretary of State must securely destroy any election program after this retention period has expired. A.R.S. § 16-445(A).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

# CHAPTER 5:
# ACCOMMODATING VOTERS WITH DISABILITIES

## I.     VOTER REGISTRATION INFORMATION

Before an election, each county shall prepare and disseminate information by public notice, including about voter registration deadlines, availability of registration and voting aids, how to vote early, availability of sample ballots, and types of assistance (including reasonable accommodations) available at voting locations, in a manner calculated to reach all voters and, in particular:

- Persons with disabilities;

- Seniors, age 65 or more;

- Self-identified voters; and

- Others who request information.

Upon a ten-day notice, the County Recorder or officer in charge of elections shall provide voting and registration information in alternative formats for the purpose of ensuring effective communication with people with disabilities. These available alternative formats may vary by County and shall include two or more alternative formats, which may include: large print, braille, electronic material for use with a screen reader, and/or computer disk in a format available on the jurisdiction's computer equipment. A voter may make an on-going or permanent request to receive information in a particular format in their county for each election. If a voter makes a request for information in an alternative format after any applicable deadlines, the County Recorder or officer in charge of elections shall make best efforts to accommodate the request if practicable.

Voters with a hearing or speech disability may dial 7-1-1 to be connected to a Telecommunications Relay Service (TRS), which permits persons with a hearing or speech disability to call persons with or without such disability. Each County Recorder and/or officer in charge of elections shall publish information on how voters may use TRS to initiate a call to the office of the County Recorder or officer in charge of elections.

Signs explaining assistance available for voters with disabilities must be posted at all permanent registration facilities, polling places, and vote centers. Temporary or permanent signs shall be:

- Posted on stakes or taped to corridor walls to provide reasonable guidance to reach the voting area;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- In large, clear lettering that meets the ADA Accessibility Guidelines'[23] requirements as to character proportion[24] and height[25];

- On a contrasting background color; and

- At a recommended height of 60 inches.

## II.   VOTING AND VOTING LOCATION INFORMATION

Voters with disabilities are entitled to receive voting materials (and access to the voting experience in general) that is equivalent to that provided to voters without disabilities. A.R.S. § 16-442.01(B).

Thus, with few exceptions, ballots displayed in accessible voting equipment must follow the same content, format, and rotational requirements as those applicable to printed ballots. A.R.S. § 16-442.01(A). For example:

- Voting screens must be in the same order of arrangement as provided for paper ballots as far as practicable, except that information can be printed in vertical or horizontal rows or on separate screens. A.R.S. § 16-468(1).

- If there are more candidates for a particular race than can be displayed on one voting screen, the screen must indicate that the race is continued on the following screen, and the same number of candidates must be displayed on each screen as far as practicable. A.R.S. § 16-468(3).

In addition, the officer in charge of elections must be prepared to print ballots in braille or large print format to reasonably accommodate voters who request alternative formats. A.R.S. § 16-442.01(B)(2). Requests must be made to the officer in charge of elections by the second Friday before the election. *See, e.g.*, A.R.S. § 16-549(C). If a voter makes a request after the applicable deadline, the officer in charge of elections shall make best efforts to accommodate the request if practicable.

Information on how individuals may identify themselves as needing accommodations for voting and for requesting reasonable accommodations at their polling place or vote center shall be attached to or distributed with the voter registration form. Printed materials shall be provided at the time of registration, at the time of notification of registration status pursuant to ARS § 16-163(B), and on all sample ballots. These materials shall advise voters where they may call to ensure accessible voting, report instances of inaccessibility, and obtain voting materials in available alternative formats.

---

[23] Available at: https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag#4.30.

[24] ADA Accessibility Guidelines 4.30.2 requires that: "[l]etters and numbers on signs shall have a width-to-height ratio between 3:5 and 1:1 and a stroke-width-to-height ratio between 1:5 and 1:10."

[25] ADA Accessibility Guidelines 4.30.3 requires that: "[c]haracters and numbers on signs shall be sized according to the viewing distance from which they are to be read. The minimum height is measured using an upper case X. Lower case characters are permitted."

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The County Recorder and/or officer in charge of elections, as applicable, shall also include the following information on their websites:

• How voters with disabilities may obtain more information about voting assistance and reasonable accommodations in the voting process;

• How to request and obtain voting material in alternative formats;

• How to request voting through a special election board; and

• Instructions on how to use accessible voting devices used by the County.

## III.  ENSURING ACCESSIBILITY AT THE VOTING LOCATION

Voting locations must comply with the current Americans with Disabilities Act (ADA) Standards for Accessible Design. *See* 2016 ADA Standards for Accessible Design, 36 C.F.R. § 1191, Appendices B & D (2016 Standards). The voting location must be in existing compliance with the Standards or the officer in charge of elections must bring the voting location into compliance with the Standards prior to the start of voting at the location. The officer in charge of elections should consult the ADA Checklist for Polling Places, available at https://www.ada.gov/votingchecklist.htm, when confirming that voting locations comply with federal accessibility requirements.

In addition to complying with all federal accessibility requirements, the officer in charge of elections must ensure that all voting locations also meet the following state requirements:

1. **Seating:** Each polling place shall include seating to allow voters to wait to enter the voting booth. A minimum of two seats is required and additional seats should be provided as practicable to reasonably accommodate voters with disabilities.

2. **Stairs:**

   • Stair treads shall be no less than 11 inches wide, measured from riser to riser.

   • Undersides of nosings shall not be abrupt. The radius of curvature at the leading edge of the tread shall be no greater than ½ inch. Risers shall be sloped or the underside of the nosing shall have an angle not less than 60 degrees from the horizontal.

   • Nosings shall project no more than 1 ½ inch.

   • Handrails shall be continuous along both sides of stairs. If not continuous, they shall extend at least 12 inches beyond the top riser and at least 12 inches plus the width of one tread beyond the bottom riser.

   • The clear space between handrails and wall shall be 1 ½ inch.

   • The ends of handrails shall be rounded or returned smoothly to floor or wall.

   • Handrails shall not rotate within their fittings.

3. **Booths and Equipment:**

- At least one voting booth in each voting location and early voting site shall be accessible. This requires that the clear area in the voting booth be no less than 30 inches by 48 inches. The preferred arrangement provides a knee space 27 inches high below the counter or ballot machine to allow front wheelchair approach. An alternative arrangement provides a clear area parallel to the ballot or counter and sufficient room to maneuver a wheelchair to this position.

- Each voting location and early voting site shall have an accessible voting device for use by voters with disabilities. Each accessible voting device shall be prominently marked with a permanent sign that is located in a conspicuous place on the device that is of a color and design approved by the Secretary of State and that bears the internationally accepted symbol of access "Accessible Voting Device." ARS § 16-447(A).

- The County Recorder, officer in charge of elections, or designee shall ensure that accessible voting devices are operational and remain turned on as long as the voting location or early voting site is open, and shall ensure that board workers are trained on the proper operation of accessible voting devices.

4. **Resources for Voters with Sight and Hearing Disabilities:**

   - Each voting location and early voting site shall have at least one magnifying instrument.

   - For a statewide election, the Secretary of State shall provide each county with at least one large print version of the publicity pamphlet for each polling place, vote center, and early voting site. The officer in charge of elections shall provide at least one large print version of county publicity pamphlets to each polling place, vote center, and early voting site.

   - For those with hearing disabilities, paper and pen/pencil shall be made available.

5. **Rest Stops:** For voters with limited strength/stamina or restricted mobility, periodic rest stops with seats or benches should be available at each polling location, at intervals of approximately 200 feet along the route from the vehicular access location to the voting room. Every effort should be made to provide an accessible route to the polling place that is less than 200 feet from the accessible parking spaces or passenger loading areas.

6. **Lighting:** Adequate lighting shall be provided for voting locations.

Voting locations and early voting sites must be accessible if such a site is available in the precinct. If no site is accessible, temporary measures, as described in Section IV below, shall be taken to make the location accessible.

Each county shall conduct a uniform inspection of all voting locations and early voting sites to ensure compliance with the criteria set out in this Section. Counties shall have procedures for inspection of each location before each election or provisions in contracts with voting locations

and early voting sites requiring a contact person to inform the county if the accessibility of a location has been altered prior to an election.

Counties shall submit the results of their inspections in the accessibility report provided to the Secretary of State with the general election canvass. *See* Chapter 13, Section II(A)(1); *see also* Sample Accessibility Report sample form in Chapter 17.

## IV.   ALTERNATIVE VOTING OPTIONS

Alternative means of voting shall be used at polling places and vote centers determined by the officer in charge of elections to be inaccessible only when:

- No accessible sites are available; and
- No temporary measures can make them accessible.

When the officer in charge of elections determines that no accessible voting location is available or no alternative means are available, all voters in the precinct shall be notified as soon as practicable, and prior to the deadline to request an early ballot-by-mail, that the voting location selected for their precinct is inaccessible and provided the reason(s) for inaccessibility.

The following alternative means of voting shall be offered to voters with disabilities or seniors:

- Where practicable, reassignment to an accessible voting location in a precinct with the same ballot as the voter's precinct and that is as close to the voter's home precinct as practicable;
- Assistance provided by a person of the voter's choice or two election officials of different political parties;
- Early voting; or
- Curbside voting, if available at the voting location.

Curbside voting may be made available as a reasonable accommodation as necessary to provide voters with disabilities equal access to the voting process. If curbside voting is offered, the following guidelines must be met:

- A sign shall be posted at or near the entrance to the voting location or the accessible parking spaces: (1) stating that curbside voting is available at that location; (2) notifying voters that they can relay a message through a companion or other nearby person to the election board that the voter wishes to vote; and (3) providing a telephone number or other means to call to request curbside voting assistance or for additional information.
- The election official, using the precinct register or e-pollbook, shall: (1) verify the registration status of the senior or voter with a disability; (2) verify the voter's identification; and (3) notify the inspector.
- The inspector shall direct the two election board workers (with different political party affiliations) to: (i) proceed to the curbside with an appropriate ballot (and if needed, a

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

provisional ballot affidavit); (ii) permit the voter to privately vote their ballot after having signed the signature roster, electronic signature pad, or curbside voter affidavit form; and (iii) place the voted ballot in a secrecy sleeve.

- The election board workers shall then return to the voting area and present the ballot to the inspector, who shall deposit the ballot in the tabulation unit or ballot box.

## V.     SPECIAL ELECTION BOARDS

Personal ballot delivery through a special election board shall be provided to any qualified elector who is confined as a result of a continuing illness or physical disability and is, therefore, not able to go to the polls on Election Day. *See* Chapter 2, Section IV for more details.

# CHAPTER 6:
# CANDIDATE NOMINATION

## I.    NOMINATION PROCEDURES

A candidate may run for office by obtaining a nomination or running as a write-in candidate.

- There are two methods for obtaining a nomination: one reserved for candidates running under recognized party labels, and one reserved for "independent" candidates (*i.e.*, those not affiliated with a recognized political party).

- In lieu of seeking a nomination, a person may run as a write-in candidate if the person files the required documentation in advance of the election and, for primary write-in candidates, meets applicable minimum vote requirements.

Under the "resign-to-run" law, except during the final year of the term being served, an incumbent holding a salaried elective office (whether through election or by appointment) must resign their current office before filing a nomination paper and seeking nomination or election to any other salaried federal, state, or local public office. Ariz. Const. Art. XXII, § 18; A.R.S. § 38-296(A). Violation of the resign-to-run law results in the incumbent's present office being "declared vacant." A.R.S. § 38-296(E). To enforce this provision, the Attorney General, applicable County Attorney, or a person entitled to rightfully hold the office must file a *quo warranto* action in court. A.R.S. § 12-2041; A.R.S. § 12-2042; A.R.S. § 12-2043; *Jennings v. Woods*, 194 Ariz. 314 (1999).

### A. Candidates for Partisan Federal, State, and Local Office

This section outlines the requirements to run for public offices in Arizona, with the exception of President of the United States.

#### 1.  Nomination for Public Office

For partisan elections, a candidate (other than a presidential or precinct committeeman candidate) must be nominated by one of two methods in order to appear on a general election ballot.

- A candidate may be nominated by winning a recognized political party's primary election. A.R.S. § 16-311.

- An independent candidate may be nominated by obtaining nomination petition signatures from qualified electors, known as "nomination other than by primary." A.R.S. § 16-341.

##### a.  *Nomination by Primary Election*

Except for a candidate for U.S. Senator or Representative in Congress, a candidate seeking nomination for the general election ballot through a recognized political party's primary election must be a qualified elector in the electoral district for the office sought at the time of filing and a

member of the political party for which the candidate is seeking a nomination beginning no later than the date of the first signature on the candidate's nomination petition through the date of the general election at which the person is a candidate. A.R.S. § 16-311(A).

To qualify for a primary election ballot, a candidate must timely file the following documents with the appropriate filing officer:

- A statement of interest;[26]

- A nomination paper for the office sought;

- A requisite number of nomination petition signatures; and

- A financial disclosure statement.[27]

A.R.S. § 16-311.

### i.   Statement of Interest

Effective August 27, 2019, certain candidates seeking a primary election nomination or nomination other than by primary must file a statement of interest with the appropriate filing officer no later than the date of their first petition signature. Signatures collected before the filing of the statement of interest are subject to challenge. A.R.S. § 16-311(H); A.R.S. § 16-341(I). Petition signatures collected by candidates who started collecting signatures before August 27, 2019 may not be challenged on the basis of their collection before the filing of a statement of interest so long as the candidate files a statement of interest by January 2, 2020. S.B. 1451 § 6(A), 54th Leg., 1st Sess. (Az. 2019).

### ii.   Nomination Petition Signatures

A candidate seeking a primary election nomination must file a minimum number of nomination petition signatures with their nomination paper. A.R.S. § 16-314(A)-(B); A.R.S. § 16-322.

Nomination signatures may be gathered on a paper nomination petition form prescribed by the Secretary of State or, for federal, statewide, and legislative candidates, through the Secretary of State's online signature portal known as E-Qual. A.R.S. § 16-315(A); A.R.S. § 16-316; A.R.S. § 16-317; A.R.S. § 16-318.

---

[26] A statement of interest is not required for candidates for special taxing districts that are established pursuant to Title 48, chapters 2, 3, 11, 12, 15, 17, 18, 19, 20, 22, 27 and 32, candidates for precinct committeeman, or candidates for President or Vice President of the United States. A.R.S. § 16-311(H); A.R.S. § 16-341(I).

[27] A.R.S. § 16-311(H)(1); A.R.S. § 18-444(A), (F); A.R.S. § 38-543. Title 48 special district candidates, school district governing board candidates, and precinct committeeman candidates are not required to file a financial disclosure statement. *See* A.R.S. § 38-543; A.R.S. § 38-541(8). A federal candidate is also not required to file a financial disclosure statement but has the option to file a statement on recall with the Secretary of State. A.R.S. § 19-221.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

A nomination petition signer must be a qualified elector who is registered to vote in the electoral jurisdiction or district in which the candidate seeks office. A.R.S. § 16-321(B). In partisan elections, the petition signer also must be registered to vote with the same recognized political party from which the candidate is seeking a nomination, with a political party not recognized for continued representation on the ballot, or as an independent or unaffiliated voter (*i.e.*, the voter must not be registered with another recognized political party). A.R.S. § 16-321(F). "Federal-only" voters are only eligible to sign nomination petitions for federal candidates and may not sign nomination petitions for state or local candidates. AG Opinion I13-011(R13-016) 2013.

An elector may only sign one nomination petition for the same office unless more than one candidate is to be elected for that office. For example, an elector may only sign one candidate's petition for state senate but may sign two candidates' petitions for state house. If an elector signed more nomination petitions than permitted, only the earlier signatures are deemed valid. If the duplicate signatures were signed on the same date, all signatures signed by the elector on that date are deemed invalid. A.R.S. § 16-321(A), (C).

Depending on the type of candidacy, the minimum number of nomination petition signatures may be based on the number of persons qualified to sign a candidate's petition, the number of registered voters in a jurisdiction, the number of votes cast in a jurisdiction, or a static number of signatures. *See* A.R.S. § 16-322(A)-(C).

The Secretary of State must prepare sample nomination petition forms for use in federal, statewide, legislative, county, city, and town elections. A.R.S. § 16-315(C). The Secretary of State may prescribe the method of filing nomination petitions for federal, state and legislative offices, including but not limited to the electronic creation and filing of petitions. A.R.S. § 16-315(E).

### iii.   Filing Officer Processing of Nomination Petition Signatures

A filing officer may reject nomination petitions for failure to file by the applicable deadline or failure to file the minimum number of required petition signatures. *See* Chapter 6, Section I(F) for a more detailed discussion of the limited bases for a filing officer to reject candidate filings.

If there is no basis to reject a candidate filing, the filing officer must count the nomination petition signatures to ensure the minimum number of signatures has been filed. A nomination petition signature line should be counted by the filing officer if it contains at least:

- An address, description of place of residence, or P.O. Box; and
- A signature in either the signature or printed name column *or* a printed name in the signature column.

Although nomination petition signature lines that are missing a signature but contain a printed name, or use a P.O. Box as a residence address, are presumed valid and counted in the filing officer's determination of the number of signatures submitted, such signatures may be subject to challenge.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The filing officer must issue a receipt to the candidate or candidate's committee. If the candidate meets the minimum signature threshold for the office sought, the candidate is qualified for the ballot, subject to any subsequent court challenges or candidate withdrawals.

### iv.    Deadline to File Nomination Documents

A candidate seeking a primary nomination must file a nomination paper, nomination petitions and, if applicable, financial disclosure statement between 150 and 120 days before the primary election. A.R.S. § 16-311(A)-(B), (E)-(F), (H); A.R.S. § 16-314(A). However, a statewide or legislative candidate seeking public funding under the Citizens Clean Elections Act may file these nomination documents with the Secretary of State as early as January 2 of an election year. A.R.S. § 16-951(B).

A candidate seeking a primary nomination in a special election to fill a congressional vacancy must file a nomination paper and nomination petitions no more than 30 days after the date of the Governor's proclamation calling the special election. A.R.S. § 16-222(B)(2).

A candidate who does not file the requisite nomination documents by 5:00 p.m. on the last day for filing is not eligible to have their name printed on the primary election ballot. A.R.S. § 16-311(E)-(F).

### b.  *Independent Nomination (Other than by Primary)*

In lieu of seeking a nomination through a political party primary, a candidate who is not registered with a recognized political party (*i.e.*, an "independent" or "unaffiliated" candidate) may be nominated for partisan office by filing the requisite number of nomination petition signatures with the filing officer. Such an "independent" or "unaffiliated" candidate who meets this threshold will be placed directly on the general election ballot, along with a three-letter "party" designation. However, a candidate may not seek a nomination in this manner if the candidate filed nomination petitions for the primary election and failed to qualify due to insufficient valid signatures. A.R.S. § 16-341(A)-(B), (D); A.R.S. § 16-502(E).

Similar to candidates seeking nomination by political party primary, candidates seeking independent nomination must timely file a statement of interest, nomination paper, and a requisite number of nomination petition signatures with the appropriate filing officer. Non-federal candidates must also file a financial disclosure statement if applicable.[28] A.R.S. § 16-341(E), (J)(1)-(2); A.R.S. § 16-314(A); A.R.S. § 16-311(D). A federal candidate is not required to file a financial disclosure statement, but has the option to file a statement on recall with the Secretary of State. A.R.S. § 19-221.

### i.    Nomination Petition Signatures

---

[28] A.R.S. § 16-311(H)(1); A.R.S. § 18-444(A), (F); A.R.S. § 38-543. Title 48 special district candidates, school district governing board candidates, and precinct committeemen candidates are not required to file a financial disclosure statement. *See* A.R.S. § 38-543; A.R.S. § 38-541(8).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

An independent candidate must collect nomination petition signatures equal to at least 3% of the registered voters in the jurisdiction in which the candidate is running who are not registered with a recognized political party, based on voter registration totals reported by the Secretary of State or County Recorder, as applicable, as of January 2nd in the general election year. Although the minimum number of signatures required is based on the number of voters not registered with a recognized political party, any person who is registered to vote in the state, county, subdivision, or district for which the candidate is nominated is eligible to sign the nomination petition without regard to the signer's party affiliation.

Nomination signatures may be gathered on a hard-copy independent nomination petition form prescribed by the Secretary of State or, for federal, statewide, and legislative candidates, through the Secretary of State's online signature portal known as E-Qual.

A filing officer must process (and in appropriate cases reject) independent nomination petition signatures in the same manner as partisan and nonpartisan nomination petitions. Likewise, if an independent candidate's nomination petitions are challenged in court, the applicable County Recorder must review the challenged signatures in the same manner as partisan or nonpartisan nomination petitions.

A.R.S. § 16-316; A.R.S. § 16-317; A.R.S. § 16-318.

### ii.   Deadline to File Independent Nomination Documents

Like candidates seeking nomination through a political party primary:

- A candidate seeking a nomination other than by primary (to be placed on the general election ballot) must file an independent nomination paper, independent nomination petitions, and a financial disclosure statement between 150 and 120 days before the primary election, A.R.S. § 16-341(C); and

- An independent statewide or legislative candidate seeking public funding under the Citizens Clean Elections Act may file these nomination documents with the Secretary of State as early as January 2 of an election year. A.R.S. § 16-951(B)

An independent candidate seeking a nomination in a special election to fill a congressional vacancy must file a nomination paper and nomination petitions no more than 30 days after the date of the Governor's proclamation calling the special election. A.R.S. § 16-222(B)(2).

A candidate who does not file the requisite nomination documents by 5:00 p.m. on the last day for filing is not eligible to have their name printed on the general election ballot. A.R.S. § 16-311(H).

### 2.  Write-In Candidacy

In lieu of collecting nomination petition signatures to qualify for a primary or general election ballot, a person may run as a write-in candidate. Becoming an official write-in candidate requires

the officer in charge of elections to tabulate any write-in votes for the candidate and include those results in the official canvass of the election. A.R.S. § 16-312.

To qualify as an official write-in candidate, a candidate must timely file a write-in nomination paper and, if applicable, a financial disclosure statement with the appropriate filing officer. A.R.S. § 16-312(A), (C); A.R.S. § 18-444(A); A.R.S. § 38-543; A.R.S. § 18-444(F). A federal write-in candidate is not required to file a financial disclosure statement but has the option to file a statement on recall with the Secretary of State.

A person may not seek a write-in candidacy in the primary election if the candidate filed a nomination petition for that primary and failed to submit a sufficient number of valid signatures, withdrew from the primary election after a petition challenge in court, or was removed from the primary election ballot or otherwise found to be ineligible by a court of law. A person may not seek a write-in candidacy in the general election for the same reasons listed above as to primary elections. In addition, if the candidate ran and lost in the preceding primary election or did not receive the requisite number of votes required to proceed to the general election, that candidate may not seek a write-in candidacy in the general election for the same office. A.R.S. § 16-312(F)(1)-(4); A.R.S. § 9-821.01; A.R.S. § 16-645.

The required documents must be filed no later than 5:00 p.m. on the 40th day before the election, except: (i) a write-in candidate to fill a vacancy that occurs after the official ballots have been printed must file the required nomination documents no later than five days before the election; and (ii) a write-in candidate who intends to run in a school district, special taxing district, or precinct committeeman election that may be canceled due to an insufficient number of candidates seeking election must file the required nomination documents no later than 76 days before the election in question. A.R.S. § 16-312(B); A.R.S. § 16-343(D). A statewide or legislative candidate seeking public funding under the Citizens Clean Elections Act may not run as a write-in candidate in the primary or general election. A.R.S. § 16-950(E).

## B. Candidates for Nonpartisan Office

A candidate seeking nomination for a nonpartisan office must be a qualified elector in the electoral district for the office sought at the time of filing. A.R.S. § 16-311(B). There are specific requirements for eligibility to serve in city and town offices, on school district governing boards, and on special district boards pursuant to Title 9, Title 15, and Title 48, respectively. In addition, the "resign-to-run" law provisions apply to nonpartisan candidates. *See* Chapter 6, Section I above.

Similar to candidates for partisan office, candidates for nonpartisan office may run by filing nomination documents or by filing documents to run as an official write-in candidate.

### 1. Nonpartisan Nomination

To qualify to appear on the ballot, a candidate for nonpartisan office must timely file the following nomination documents with the appropriate filing officer:

- A statement of interest;[29]

- A nomination paper for the office sought; and

- A requisite number of nomination petition signatures.

A.R.S. § 16-311. Candidates for nonpartisan office are generally not required to file a financial disclosure statement.[30] However, cities and towns must require candidates to file a financial disclosure statement consistent with state law. A.R.S. § 38-545.

These nomination documents must be filed between 150 and 120 days before the election. A.R.S. § 16-311(B)-(C). A candidate who does not file the requisite nomination documents by 5:00 p.m. on the last day for filing is not eligible to have their name printed on the ballot. A.R.S. § 16-311(F).

For nonpartisan elections in cities and towns, a candidate may be elected at the primary election and a general (run-off) election is not required if the candidate received a majority of votes. A.R.S. § 9-821.01. Additionally, charter cities may differ in their scheduling of candidate elections based on the number of candidates running for office.

## 2. Write-In Candidacy

In lieu of collecting nomination petition signatures to qualify to appear on the ballot, a person may run as an official write-in candidate for a nonpartisan office. Becoming an official write-in candidate requires the officer in charge of elections to tabulate any write-in votes for the candidate and include those results in the official canvass of the election. A.R.S. § 16-312.

To qualify as an official write-in candidate, a candidate must timely file a write-in nomination paper and, if applicable, a financial disclosure statement with the appropriate filing officer. A.R.S. § 16-312(A), (C); A.R.S. § 38-541(6); A.R.S. § 38-545.

A person may not seek a write-in candidacy if the candidate filed a nomination petition for that election and failed to submit a sufficient number of valid signatures, withdrew from the election after a petition challenge in court, was removed from the election ballot, or was otherwise found to be ineligible by a court of law. A.R.S. § 16-312(F)(1)-(4); A.R.S. § 9-821.01; A.R.S. § 16-645.

The required documents must be filed no more than 40 days before the election, except: (i) a write-in candidate to fill a vacancy that occurs after the official ballots have been printed must file the required nomination documents no later than five days before the election; and (ii) a write-in

---

[29] A statement of interest is not required for candidates for special taxing districts that are established pursuant to Title 48, chapters 2, 3, 11, 12, 15, 17, 18, 19, 20, 22, 27 and 32, candidates for precinct committeeman, or candidates for President or Vice President of the United States. A.R.S. § 16-311(H); A.R.S. 16-341(I). *See* Chapter 6, Section I(A)(1)(a)(i) above for more details on the statement of interest requirement.

[30] Title 48 special district candidates, school district governing board candidates, and precinct committeemen candidates are not required to file a financial disclosure statement. *See* A.R.S. § 38-543; A.R.S. § 38-541(8).

candidate who intends to run in a school district, special taxing district, or precinct committeemen election that may be canceled due to an insufficient number of candidates seeking election must file the required nomination documents no later than 76 days before the election in question. A.R.S. § 16-312(B); A.R.S. § 16-343(D).

For nonpartisan special district elections, the candidate(s) who receive the highest number of votes is elected. Ariz. Const. Art. VII § 7. For elections in cities and towns, a candidate may be elected at the primary election and a general (run-off) election is not required if the candidate received a majority of votes. A.R.S. § 9-821.01. Additionally, charter cities may differ in their scheduling of candidate elections based on the number of candidates running for office.

## C. Presidential Candidates

A candidate may run for U.S. President in Arizona by one of two methods: obtaining a nomination or running as a write-in candidate.

Absent a successful challenge, a nomination means the presidential candidate's name will appear on the general election ballot in a presidential election year. There are two methods for obtaining a nomination: one reserved for candidates running under recognized party labels, and one reserved for "independent" or party-unaffiliated candidates.

- A candidate seeking the nomination of a recognized political party usually runs in the Presidential Preference Election (PPE). However, the presidential and vice-presidential candidates that ultimately appear on the general election ballot will be formally nominated by party delegates at national conventions held during the summer preceding the election. As a prerequisite to placement of their nominees on the general election ballot, each recognized political party must timely submit the names of presidential electors who will cast votes for the winning candidate in the Electoral College.

- Alternatively, a candidate may qualify as an independent presidential candidate by collecting nomination petition signatures. If the candidate meets the requisite signature threshold, the candidate and their vice-presidential running mate (along with a "party" designation of the candidates' choice) will appear on the general election ballot.

In lieu of seeking a nomination, a person may run as a write-in presidential candidate if the person files required documentation by the applicable deadline in advance of the general election.

## 1. Presidential Preference Elections

A PPE is only open to candidates seeking the nomination of a recognized political party. Write-in candidates are prohibited from participating in the PPE. A.R.S. § 16-243(B); A.R.S. § 16-244; A.R.S. § 16-247.

Candidates seeking to appear on their political party's PPE ballot must meet the constitutional qualifications for President of the United States and submit valid nomination documents before the filing deadline. The candidates who receive the most votes at the PPE will be entitled to have

their party's delegates from the State of Arizona vote for them at their political party's national convention. A.R.S. § 16-243(B); U.S. Const. Art. II, § 1, cl. 5.

### a.  *Required Documents for Running in the PPE*

A candidate may qualify for the PPE ballot by filing with the Secretary of State: (i) a PPE nomination paper; and (ii) PPE nomination petition with the requisite number of signatures, or certificates of presidential preference ballot qualification from at least two other states. A.R.S. § 16-242(A); A.R.S. § 16-311(A)-(B), (D), (G).

#### i.   PPE Nomination Petition Signatures

A presidential candidate may qualify for the PPE ballot by filing a minimum number of nomination petition signatures with the nomination paper. A PPE candidate must collect at least 500 nomination petition signatures from qualified electors. For a recognized political party that has at least 50,000 registered voters in Arizona, only qualified electors registered with that political party may sign the nomination petition. For a recognized political party with less than 50,000 registered Arizona voters, any registered voter may sign the nomination petition. A.R.S. § 16-242(C).

#### ii.   Alternative to Submitting Nomination Petition Signatures

In lieu of filing nomination petition signatures, a presidential candidate may submit official documentation from at least two other states proving that the candidate previously qualified for the partisan party ballot in that state. Such documentation may be from the chief election office, commission, or board. A signed letter on official government letterhead will suffice. Only states with primary-style (not caucus) presidential preference elections are eligible for this reciprocity. A.R.S. § 16-242(E).

### b.  *Deadline to File Nomination Documents*

A presidential candidate must file a PPE nomination paper and PPE nomination petitions or certificates of ballot qualification between 130 and 100 days before the PPE. If the deadline for filing falls on a weekend or legal holiday, the nomination documents must be filed by the next business day. A presidential candidate who does not file the requisite nomination documents by 5:00 p.m. on the last day for filing is not eligible to have their name printed on the PPE ballot. A.R.S. § 16-242(B).

### c.  *Opting Out of the PPE*

Participation in the PPE by an eligible party is not mandatory. *See Arizona State Democratic Committee v. Hull*, No. CV 96-00909 (Ariz. Super. 1996). If an eligible party chooses not to participate in the PPE, the state party's chairperson must notify the Secretary of State in writing by September 16, 2019 for the 2020 PPE, and by September 1 (or the next business day if that date falls on a weekend or state holiday) of the year preceding the PPE for every PPE thereafter. The Secretary of State will promptly notify county officials and provide further instructions as needed.

The presidential nominee of eligible parties who opt out of the PPE may appear on the general election ballot so long as their party chairpersons nominate presidential electors as prescribed by statute and by the statutory deadline. A.R.S. § 16-344; *see* Chapter 6, Section I(C).

## 2.  Presidential Nomination Through Party Convention

Presidential and vice-presidential candidates who were nominated by recognized political parties at national party conventions will appear on the general election ballot, contingent on the state political party's timely submission of presidential electors' nomination documents to the Secretary of State.

### a.  *Required Documents for Nomination of Presidential Electors*

The state chairperson of a recognized political party must file nomination papers for its presidential electors, equal to the number of U.S. Senators and members of the U.S. House of Representatives from Arizona. A.R.S. § 16-344.

### b.  *Deadline to File Nomination Documents*

The state chairperson of a recognized political party must file presidential elector nomination papers no later than 10 days after the primary election. A recognized political party that does not file the requisite presidential elector nomination papers by 5:00 p.m. on the last day for filing is not eligible to have its presidential, vice-presidential, or presidential elector names printed on the general election ballot. A.R.S. § 16-344(A).

## 3.  Independent Presidential Candidates

A candidate who is not affiliated with a recognized political party label may seek nomination as an "independent" candidate. If the candidate meets the requisite signature threshold, the candidate and their vice-presidential running mate (along with a "party" label of the candidates' choice) will appear on the general election ballot.

To qualify as an independent presidential candidate on the general election ballot, a candidate must file the following documents with the Secretary of State:

- A letter of consent;

    - An independent presidential candidate must file a letter with the Secretary of State designating the candidate's vice-presidential running mate and the names of their presidential electors, including each person's signed consent to be designated as such. The letter of consent is separate from the nomination papers that must be filed. The wording of the letter is left to the candidate's discretion, as long as the letter is signed by the vice-presidential running mate and each presidential elector. A.R.S. § 16-341(I).

- Independent nomination papers for the presidential, vice-presidential, and presidential elector candidates; and

- Independent nomination petitions.

An independent presidential candidate must submit nomination petition signatures equal to at least 3% of registered voters in the state who are not registered with a recognized political party. The number of unaffiliated registered voters is determined on the basis of voter registration totals reported by the Secretary of State as of January 2nd in the general election year. A.R.S. § 16-341(E)-(G).

Any registered voter may sign the petition as long as the voter has not signed another presidential elector nomination petition for the same presidential election. A "federal-only" voter is qualified to sign. A.R.S. § 16-341(G). Otherwise, the same rules for signing and circulating a nomination petition apply to independent presidential nomination petitions. *See* Chapter 6, Sections I(A) and I(D).

An independent presidential candidate must file a letter of consent, nomination papers, and nomination petitions between 90 and 60 days before the general election. A.R.S. § 16-341(G), (I).

## 4. Write-In Candidate for President

In lieu of securing a nomination to qualify for the general election ballot, a person may run as a write-in presidential candidate. Becoming an official write-in candidate causes the officer in charge of elections to tabulate any write-in votes for the candidate and include those results in the official canvass of the election. A.R.S. § 16-312(C).

A person may not seek a write-in candidacy in the general election if the candidate filed independent presidential nomination petitions for the current election. A.R.S. § 16-312(F)(4).

A person may qualify as an official write-in presidential candidate by filing with the Secretary of State: (i) a letter of consent signed by the vice-presidential running mate and each presidential elector; and (ii) write-in nomination papers for the presidential, vice-presidential, and presidential elector candidates. A.R.S. § 16-312(G).

A write-in presidential candidate must file a write-in letter of consent and requisite nomination papers no later than 5:00 p.m. on the 40th day before the general election. A write-in presidential candidate who does not file the requisite nomination documents by 5:00 p.m. on the last day for filing is not eligible to have votes tallied or included in the official canvass. Promptly after the close of the filing deadline, the filing officer must notify the Board of Supervisors of any write-in candidates certified for the election. A.R.S. § 16-312(B), (E).

## D. Candidate Nomination Petition Circulators

Circulators of candidate nomination petitions are not required to be Arizona residents, but must otherwise be qualified to register to vote in this state pursuant to A.R.S. § 16-101. If the circulator

is not a resident of this state, they must register as a circulator with the Secretary of State through the   Circulator   Portal   (https://azsos.gov/elections/requirements-paid-non-resident-circulators). A.R.S. § 16-315(D).

A circulator must complete the affidavit on the back of the nomination petition attesting that each of the names on the petition was signed in the circulator's presence on the date indicated and that, in the circulator's belief, each signer was a qualified elector who resides at the address given as the signer's residence on the date indicated. If the nomination petition is for a partisan election, the circulator must additionally attest that each signer is a qualified signer. A.R.S. § 16-321(D).

### E. Filing Officer for Candidate Documents

Candidate documents, including statements of interest, nomination papers, nomination petitions, and financial disclosure statements, must be filed with the proper filing officer.

The Secretary of State is the filing officer for:

- Presidential elector candidates;
- PPE candidates;
- U.S. Senate and U.S. House of Representatives candidates;
- Statewide candidates;
- Legislative candidates;
- Supreme Court justices (seeking retention); and
- Court of Appeals judges (seeking retention).

A.R.S. § 16-242(A); A.R.S. § 16-311(E); Ariz. Const. Art. VI, § 38(A).

The county officer in charge of elections is the filing officer for:

- County candidates, including County Sheriff, County Attorney, County Recorder, County Treasurer, County Assessor, County Superintendent of Schools, and County Supervisors;
- Candidates for precinct office, which include:[31]
    - Justice of the Peace candidates;
    - Constable candidates; and
    - Precinct committeemen candidates;
- Community college district governing board candidates;[32]

---

[31] *Nicol v. Superior Court, Maricopa County*, 106 Ariz. 208, 209 (1970) (Justices of the Peace and Constables are "precinct officers" pursuant to A.R.S. § 22-102).

[32] Community college district governing board candidates file nomination papers with the "appropriate county officer," which may be the county officer in charge of elections in some counties or the county school superintendent in others. *See* A.R.S. § 15-1442(A).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Special taxing district candidates;
- Superior Court judges (seeking election or retention); and
- Clerk of the Superior Court candidates.[33]

A.R.S. § 16-311(F); A.R.S. § 15-1442(A).

The county school superintendent is the filing officer for:

- School district governing board candidates; and
- Joint technical education district governing board candidates.

A.R.S. § 15-422(A); A.R.S. § 15-431(B)(6); A.R.S. § 16-311(F); A.R.S. § 15-393(A)(4), (C)(5).

The city or town clerk is the filing officer for candidates for city or town council or mayor. A.R.S. § 16-928(A)(3).

### F. Bases to Reject a Candidate Filing

A filing officer may reject a candidate filing on any of the following bases:

- Failure to file a sufficient number of nomination petition signatures. A filing officer may reject nomination petitions without conducting a full count if the candidate or campaign acknowledges that an insufficient number of signatures are being presented for filing;
- Failure to file nomination documents by the statutory deadline;
- Failure to file all the required documents to run for office (except that failure to file a statement of interest is not a basis to reject a filing, although it renders signatures collected prior to filing a statement of interest subject to challenge);
- Failure to fully or properly complete any required document to run for office, including:
  - Failure to sign a document that requires a signature (an electronic or type-written signature may be permitted for candidates using the Secretary of State's electronic Candidate Portal);
  - Failure to select a required checkbox or answer a required question;
  - Use of an honorific or other unauthorized title on a nomination paper. However, when possible, a filing officer should simply reject the unauthorized or honorific title in lieu of rejecting the nomination paper altogether.
- Failure to use the correct form or correct version of any required document, as prescribed by the filing officer, to run for office;
- Seeking more than one office at the same time if the candidate would be prohibited from serving in the offices simultaneously; or

---

[33] Ariz. Op. Atty. Gen. No. I85-086 (R85-071) (1985) (holding that candidates for Clerk of the Superior Court are treated as county candidates for the purpose of filing nomination petitions).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- However, a candidate for legislative office may simultaneously run for community college district, school district, or joint technical education district governing board member, and a candidate for U.S. Senate or U.S. House of Representatives may also run for U.S. President or U.S. Vice President during the same election cycle. Ariz. Const. Art. IV, Pt. 2, § 5; A.R.S. § 38-296.01(B).

• If a candidate for state or local office is liable for an aggregate of $1,000 or more in fines, penalties, late fees, or administrative or civil judgments, including any interest or costs, that have not been fully paid at the time of the attempted filing of the nomination paper and the liability arose from campaign finance violations under Title 16, Chapter 6, unless the liability is being appealed.

A.R.S. § 16-322; A.R.S. § 16-311(D), (H), (I), (J).

Any other alleged deficiencies in a candidate's nomination documents should be addressed in court. For example, the filing officer is not authorized to reject a nomination paper or nomination petitions "that have been submitted by a candidate who is found guilty of petition forgery," nor may a filing officer reject nomination papers of a candidate for failure to meet residency requirements if the papers "on their face substantially comply with the terms of the statute." Ariz. Atty. Gen. Op. No. I84-096. Any such disqualification must be ordered by a court in response to a candidate challenge filed pursuant to A.R.S. § 16-351(F).

## II.   NOMINATION PETITION CHALLENGES

Any qualified elector may challenge a candidate for any reason relating to the qualifications for the office sought as prescribed by law, or based on insufficiency of the nomination paper or petition and/or the signatures thereon. A.R.S. § 16-314; A.R.S. § 16-321; A.R.S. § 16-351.

### A. Initiating a Candidate Petition Challenge

Challenge procedures are specified in A.R.S. § 16-351. The challenge petition must be filed in superior court no later than 5:00 p.m. on the tenth day, excluding Saturday, Sunday, and legal holidays, after the deadline for filing nomination papers and petitions.

• The challenger must state specifically the grounds for the challenge. If nomination petition signatures are being challenged, the challenge petition must specify the petition page and line number for each signature being challenged as well as the grounds for challenging each signature.

• The challenge petition must name as defendants: (i) the Board of Supervisors of any county involved in the challenge, (ii) the County Recorder for any county involved, (iii) the appropriate filing officer, and (iv) the candidate who is subject to the challenge. If the candidate is seeking nomination for office for a jurisdiction or district that crosses county lines, the challenge petition must name the appropriate Board of Supervisors and County Recorder for each county included in the jurisdiction or district.

- The challenge petition must be served immediately after the challenge is filed and, in any case, no later than 24 hours after it is filed, excluding Saturday, Sunday, and legal holidays.

## B. Service of Process and Notification Requirements

The officer with whom the challenged candidate filed their nomination paper and petitions is the designated agent for service of process in all candidate challenges. *See* Chapter 6, Section I(E).

Once the correct filing officer has been served with the challenge, the filing officer must immediately mail a copy of the challenge to the candidate and notify the candidate by phone and/or email of the challenge. The filing officer shall also immediately notify the County Recorder(s) named in the challenge and provide the County Recorder(s) with a copy of the challenge and a copy of the front sides of the nomination petitions (if applicable) filed by the challenged candidate. A.R.S. § 16-351(D).

## C. County Recorder Signature Verification

The filing officer should provide the pertinent nomination petition pages to the County Recorder(s) promptly upon receipt of the complaint and reasonable certainty of a challenge, regardless of whether the challenger has formally served process on the filing officer. Upon receipt of the challenge and the nomination petitions from the filing officer, the County Recorder(s) must perform signature verification on the nomination petition signatures that are being challenged, if any.

The following procedures apply to the County Recorder's signature verification:

- The County Recorder need only perform signature verification for the challenged signatures of qualified electors in the County Recorder's county. For a nomination petition challenge for an office where the applicable boundaries include multiple counties, the County Recorder need only verify the petition signatures of the County that is designated at the top of the nomination petition form.

- The County Recorder need only perform one check of the signatures that are challenged.

- For a challenge that alleges that specific petition signers are not registered to vote, the County Recorder will search the County's voter registration database, as of the time of the filing of the court action, for the signer's name and address and confirm whether the signer was registered to vote as of the date of signing.

- If the County Recorder is the candidate being challenged, the County Recorder will be screened from the signature verification process and will have staff conduct the signature verification and prepare the report. The County Recorder shall not personally work on the verification.

- The County Recorder must ensure that staff performing the signature verification are properly trained. Temporary employees may be trained by full time staff with at least two election cycles of signature verification experience.

- The County Recorder need not retain or employ a handwriting expert to perform signature verification.

### 1. Criteria for Disqualifying Signatures

The County Recorders shall apply the criteria spelled out in the County Recorder Petition Signature Verification Guide (*see* Chapter 17, Appendix 4) when performing signature verification.

### 2. County Recorder's Signature Verification Report

Upon completion of verification of challenged signatures, the County Recorder must prepare a report of the results of the verification.

- The report shall include: (i) the list of challenged signatures determined to be invalid by the County Recorder; and (ii) the basis or bases for the County Recorder's determination that the signature is invalid.

- The County Recorder may limit the reasons for disqualifying a signature to the reason(s) identified by the challenger. Nonetheless, the County Recorder may identify, and the County Recorder's report may reflect, a reason for disqualifying a signature other than the reason(s) specified in the challenge.

- The County Recorder shall produce the signature verification report as soon as practicable after receiving, or having access to, the pertinent nomination petition pages from the filing officer or as required by the court.

### 3. Testimony and Evidence by County Recorder

In addition to the County Recorder's signature verification report, the County Recorder(s) and the filing officer, or their designee(s), must also provide testimony and other evidence for the challenge hearing on the request of any of the parties to the court action. A.R.S. § 16-351(E).

If a party to a nomination petition challenge requests certified copies of voter registration forms, the County Recorder must make best efforts to provide the certified copies as soon as practicable and prior to the court hearing. Due to the very condensed timeframe for challenges, the requestor should cooperate with the County Recorder to facilitate timely fulfillment of the requests, including by providing the voter registration number for each individually identified voter at the County Recorder's request. If the County Recorder is unable to apply statutorily-required redactions within the necessary timeframe (*see* Chapter 1, Section X(C)(1)), the County Recorder should seek to produce the records pursuant to an appropriate protective order or under seal in accordance with the Arizona Rules of Civil Procedure and other applicable law.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## D. Duties of the Challenger and Candidate

Upon filing the challenge, the challenger shall provide the applicable County Recorder(s) an electronic, sortable version of any spreadsheet filed with the complaint, which identifies the page number, line number, and reason for the challenge for each petition signature being challenged. To the extent practicable, this spreadsheet should also provide the full name, address, and voter registration identification number for each signer whose signature is being challenged.

To facilitate the County Recorder's signature verification, the candidate being challenged may provide the County Recorder with a spreadsheet listing the petition page number and line number in the same order as provided in the challenger's spreadsheet and indicating the candidate's response as to each challenged signature.

## E. Court Hearing

The hearing on the challenge and the court's ruling must occur within 10 days after the challenge is filed, excluding Saturdays, Sundays and holidays. A.R.S. § 16-351(A); *but see Brousseau v. Fitzgerald*, 138 Ariz. 453 (1984) (holding that the 10 day requirement for action by the court on nomination petition challenges is directory, not mandatory).

## F. Costs and Expenses

The filing officer has no statutory duty to reimburse County Recorders for signature verification or other expenses incurred in connection with nomination petition challenges. Accordingly, County Recorders should seek sufficient funding from their Board of Supervisors to ensure the ability to comply with the signature verification and reporting requirements of A.R.S. § 16-351.

The County Recorder may seek reasonable expenses from the challenger or candidate under specified circumstances. If the court finds that the challenge was without substantial justification or primarily for the purpose of delay or harassment, the court may enter judgment in favor of the County Recorder or officer in charge of elections and against the challenger for the reasonable expenses incurred in the signature verification process. Similarly, if the court finds that the candidate knowingly or recklessly submitted a substantial number of invalid signatures, the court may enter judgment in favor of the County Recorder or officer in charge of elections for the reasonable costs incurred in the signature verification process. A.R.S. § 16-351.01.

# CHAPTER 7:
# PRESIDENTIAL PREFERENCE ELECTION

## I.    TIMING

A Presidential Preference Election (PPE) shall be held on the Tuesday immediately following March 15 in a presidential election year or on a later date pursuant to a proclamation issued by the Governor at least 180 days before the date set forth in the proclamation. No other election may appear on the same ballot as the PPE. A.R.S. § 16-241(A)-(B).

## II.    ELIGIBILITY TO PARTICIPATE IN THE PPE

### A. Party Eligibility to Participate in the PPE

Only political parties eligible for continued representation on the ballot pursuant to A.R.S. § 16-804 and new political parties eligible to appear on the ballot pursuant to A.R.S. § 16-801 may participate in the PPE. A.R.S. § 16-244(A). New parties must have filed their petition for recognition as a new party with the Secretary of State between 180 and 150 days before the PPE in order to be eligible to participate in the PPE. A.R.S. § 16-244(A)(2).

Eligible political parties are not required to participate in the PPE, and may opt to conduct their own election or caucus instead. *See Arizona State Democratic Committee v. Hull*, No. CV96-00909 (Maricopa County Super. Ct., Feb. 1, 1999) (holding that the PPE is different from a primary election and political parties can choose whether or not to participate). If an eligible party chooses not to participate in the PPE, the state party's chairperson must notify the Secretary of State in writing by September 16, 2019 for the 2020 PPE, and by September 1 (or the next business day if that date falls on a weekend or state holiday) of the year preceding the PPE for every PPE thereafter. *See* H.B. 2751 § 19, 54th Leg., 1st Sess. (Az. 2019). The Secretary of State will promptly notify county officials and provide further instructions as needed.

### B. Eligibility to Vote in the PPE

The "open primary" laws, AZ. Const. Art. 7 § 10, do not apply to the PPE. Only qualified electors registered with the political parties participating in the PPE may vote in the PPE. Independent voters or voters with no party preference and voters affiliated with a political party that is not participating in the PPE may not participate unless they change their party registration or affiliation to that of a participating political party by the deadline to register to vote in the PPE. A.R.S. § 16-241(A); *see also* Attorney General Opinion No. I99-025 (R99-049).

Voters not on the PEVL may request a ballot-by-mail for the PPE within 93 and 11 days before the election. A.R.S. § 16-246(A).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### C. Candidate Participation in the PPE

Candidates seeking to appear on the PPE ballot must meet the requirements set forth in A.R.S. § 16-242. Candidates may file with the Secretary of State either:

- A nomination paper and nominating petitions signed by at least 500 qualified electors who are eligible to vote for the candidate in the PPE; or

- A notice of candidacy affirming that they are on the PPE ballot of at least two other states.

A.R.S. § 16-242(C)-(E).

Write-in candidates are prohibited. A.R.S. § 16-247.

The Secretary of State will certify to counties the names of candidates who qualify for the PPE ballot within 72 hours of the close of the filing period. A.R.S. § 16-242(F). The filing period for the PPE is 130 to 100 days before the PPE. A.R.S. § 16-242(B). *See* Chapter 6, Section I(C)(1) for more information regarding PPE candidacy.

## III.   PPE BALLOTS

### A. Official Ballot

Official ballots for the PPE must meet the following requirements:

1. They must be printed on different colored paper for each party if more than one party is participating, or white paper with a different colored stripe at the top;

2. Only one party may be represented on each ballot;

3. The top of each ballot must contain the words, "Official Ballot of the _____ Party, Presidential Preference Election (date), County of _____, State of Arizona."

4. Candidate names must be printed in a random order determined by the Secretary of State through the drawing of lots. Rotation of candidate names is prohibited. Above the list of candidate names, the title "_____ party candidates for President of the United States" should be printed, along with "vote for not more than one" immediately below the title. The ballot may also contain other printed instructions to voters as prescribed for other elections.

5. The ballot should be configured so that it may be tabulated by congressional districts.

A.R.S. § 16-245; A.R.S. § 16-249(C).

### B. Sample Ballots

Sample ballots for the PPE must be mailed to each household containing a registered voter eligible to participate, unless each qualified voter is on the PEVL. No elected or appointed public officer's

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

name should appear on the sample ballot, and each ballot must contain a conspicuous disclaimer that the ballot is not official. The sample ballot must also contain a list of acceptable forms of voter identification pursuant to A.R.S. § 16-579(A)(1); A.R.S. § 16-245 (D)-(E).

The mailing face of each sample ballot must be imprinted with the Great Seal of the State of Arizona, and the words, "Official Voting Materials – Presidential Preference Election." A.R.S. § 16-245 (D)-(E).

The officer in charge of elections must provide a ballot proof to the chairperson of each participating party within five days of receiving the list of certified candidates from the Secretary of State. A.R.S. § 16-245(C).

## IV.   CONDUCT OF THE PPE

The PPE should be conducted in the same manner as any other primary election held pursuant to A.R.S. § 16-201. All provisions of other laws governing elections apply to the PPE, except as otherwise provided in Title 16, Chapter 2, Article 4, including laws relating to registration and qualification of electors. A.R.S. § 16-241(C)-(D). The PPE is also subject to the hand count procedure detailed in Chapter 11, Section VIII.

### A. Voting Locations

Not less than 20 days before a PPE, the Board of Supervisors must designate a reasonable and adequate number of voting locations for the PPE, based on the number of active registered voters as of January 2 of the year of the PPE.[34] County Boards of Supervisors must follow the formulas set out in A.R.S. § 16-248(C)-(E) to determine the maximum allowable number of polling places. The Secretary of State may release a county from these limits if complying with them would jeopardize compliance with federal or state law. A.R.S. § 16-248(F). In addition, the limits and consolidation requirements do not apply to Native American reservations. A.R.S. § 16-248(G).

The officer in charge of elections may conduct the PPE entirely by mail in precincts with fewer than 300 active, registered voters (except for on Native American reservations). A.R.S. § 16-248(H).

In addition to Election Day voting locations, County Recorders may establish on-site early voting locations and provide for special election boards within the time limits and procedures applicable to other elections. A.R.S. § 16-246(C); *see also* A.R.S. § 16-542. With authorization from the Board of Supervisors, a County Recorder may also establish emergency voting centers between 5:00 p.m. on the Friday preceding the PPE and 5:00 p.m. on the Monday preceding the PPE. A.R.S. § 16-246(F).

---

[34] Although A.R.S. § 16-248(B)-(E) specifies that the designation of polling places should be based on the number of active registered voters as of "January 1" of the year of the PPE, the 54th Legislature, First Regular Session, via Senate Bill 1154, amended A.R.S. § 16-168(G) to require County Recorders to report voter registration statistics as of January 2 each year, rather than January 1. Accordingly, January 2 is used in lieu of January 1 here.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## B. Certification of Results

### 1. The Board of Supervisors

The results of the PPE must be canvassed by congressional district. A.R.S. § 16-249(C). Each county Board of Supervisors should meet to canvass the returns within 10 days after the PPE, and provide a certified permanent copy of the official canvass to the Secretary of State on paper and electronically.

### 2. Secretary of State

The Secretary of State must canvass the returns and certify the results of the PPE to the chairpersons of participating political parties on or before the second Monday after the PPE. A.R.S. § 16-661, relating to automatic recounts, does not apply. A.R.S. § 16-249(A)-(B).

## V. COUNTY REIMUBURSEMENT FOR THE PPE

The Secretary of State, in consultation with County Recorders and other officers in charge of elections, must include in the budget request for the Secretary of State's Office sufficient funding from the state general fund to conduct the PPE. Counties are generally entitled to reimbursement for PPE costs at a rate of $1.25 for each active registered voter in the county as of January 2 of the year of the PPE.[35] The Secretary of State may release a county from this reimbursement rate upon determining that being bound by it would jeopardize the county's compliance with federal or state laws and regulations. A.R.S. § 16-250.

---

[35] Although A.R.S. § 16-250 specifies that reimbursement should be based on the number of active registered voters in the county on "January 1" of the year of the PPE, the 54th Legislature, First Regular Session, via Senate Bill 1154, amended A.R.S. § 16-168(G) to require County Recorders to report voter registration statistics as of January 2 each year, rather than January 1. Accordingly, January 2 is used in lieu of January 1 here.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

# CHAPTER 8:
# PRE-ELECTION PROCEDURES

## I.    ESTABLISHING PRECINCTS AND VOTING LOCATIONS

### A. Establishing Precincts

The Board of Supervisors must establish a convenient number of election precincts within the county and define those precincts' boundaries. If the Board of Supervisors seeks to change existing precinct boundaries, for example, to address population shifts or excessive wait times, the Board must finalize those changes by October 1 in the year preceding a general election and deliver a complete description of the updated precinct boundaries to the County Recorder or other officer in charge of elections. A.R.S. § 16-411(A). The new precinct boundaries become effective on January 2 of the year of the general election. A.R.S. § 16-412.

### B. Establishing Voting Locations

Counties may conduct Election Day voting using one of two types of voting locations (or any combination thereof, as approved by the Board of Supervisors):

- **Polling places**: voters in a particular precinct are required to vote at a polling place specifically designated for that precinct; or

- **Vote centers**: voters are permitted to vote at any vote center within the county, regardless of which precinct the voter lives in.

Collectively, polling places and vote centers are referred to as "voting locations" in this Manual.

Upon approval of the Board of Supervisors, the officer in charge of elections may establish precinct-based assigned polling places and/or vote centers, or any combination thereof, including co-location of precinct polling places or vote centers that also serve as assigned polling places for certain precincts. *See* A.R.S. § 16-411(B)(4). In any case, the Board of Supervisors (in consultation with the officer in charge of elections) has a duty to establish a reasonable and adequate number of voting locations for an election. A.R.S. § 16-411(B)(3).

Except for the designation of an emergency voting location pursuant to A.R.S. § 16-411(I), the Board of Supervisors must finalize all voting locations at least 20 days before a statewide primary or general election or 10 days before a special election. A.R.S. § 16-411(B). Thereafter, the Board of Supervisors or officer in charge of elections must publicly post the names and/or locations of each voting location on the county's website. A.R.S. § 16-411(G).

## 1. Assigned Polling Places

If a county decides to conduct elections using precinct-based assigned polling places, the Board of Supervisors must designate at least one polling place in each precinct. A.R.S. § 16-411(B).[36]

If no suitable polling place is available within a precinct, the Board of Supervisors may designate a polling place in an adjacent precinct. The Board of Supervisors must make a specific finding that there is no suitable polling place within the precinct and include that finding in a separate section of the order or resolution designating polling places for the election. A.R.S. § 16-411(B)(1).

Based on projected high voter demand, precincts may be split for administrative purposes to allow a polling place to be established in each precinct split. Arizona statute requires these polling places to "be listed in separate sections of the [Board's] order or resolution" designating polling places for the election. A.R.S. § 16-411(B)(2).

Based on projected low voter demand (specifically, a high number of PEVL voters), adjacent precincts may be combined for administrative purposes to allow multiple precincts to be serviced by the same polling place and same election board. The Board of Supervisors must make a specific finding that a high number of PEVL voters is likely to substantially reduce the number of voters appearing at one or more specific polling places on Election Day and include that finding in a separate section of the order or resolution designating polling places for the election. A.R.S. § 16-411(B)(3).

## 2. Vote Centers

The Board of Supervisors may establish vote centers in lieu of precinct-based polling places. A vote center allows voters from any precinct within the county to cast a ballot with the correct ballot style on Election Day. Vote centers must be established by a vote of the Board of Supervisors and in consultation with the County Recorder and officer in charge of elections. A.R.S. § 16-411(B)(4).

Vote centers typically entail ballot tabulation exclusively at the central counting place, without use of precinct voting equipment that will warn voters of an over-vote. In that case, the officer in charge of elections must: (1) establish a voter education program that notifies voters of the effect of casting multiple votes for an office; and (2) provides the voter with instructions on how to correct the ballot before it is cast (including instructions how to spoil the ballot and correct the error through issuance of a replacement ballot). 52 U.S.C. § 21081(a)(1)(B).

## C. Failure to Timely Establish Polling Places

In counties that utilize assigned polling places, if a Board of Supervisors fails to designate a polling place in a particular precinct before a primary or general election (or if the election cannot be held at the polling place originally designated by the Board of Supervisors and the County Recorder or

---

[36] The Board of Supervisors is not required to designate a polling place for special district or all ballot-by-mail elections, but may designate one or more sites in each district for voters to deposit voted ballots through 7:00 p.m. on Election Day. A.R.S. § 16-411(D). *See also* Chapter 3, Section IV.

other officer in charge of elections has not designated an emergency polling place for that precinct for Election Day), the Justice of the Peace of the precinct shall designate the polling place and post public notice two days before the election in at least three locations in the precinct. A.R.S. § 16-411(C).

If the Justice of the Peace fails to do so (or there is no Justice of the Peace for the precinct), the election board of the precinct must designate and give notice of the place for holding the election. A.R.S. § 16-411(C).

### D. Consolidation of Polling Places Based on Lack of Candidates

In counties that conduct assigned polling place elections, if there are no candidates for elected office appearing on the ballot in a particular precinct, the Board of Supervisors may consolidate polling places (and consolidate the tabulation of results in combined precincts) if the following conditions apply:

- All affected voters are notified by mail of the change at least 33 days before the election;
- Notice of the change in polling place includes notice of the new polling place, notice of the hours polls are open on Election Day, and notice of the telephone number to call for voter assistance; and
- All affected voters receive information on early voting, which includes information on how to make a one-time early ballot request.

A.R.S. § 16-411(C)(1)-(3).

### E. Factors to Consider When Selecting Voting Locations

The following factors should be considered when selecting voting locations:

1. The location should be capable of being used in both the primary and general election;
2. Buildings must be appropriately-sized based on projected voter turnout, among other predictive factors (*see* Chapter 8, Section IX(A));
3. Property owners must be willing to grant permission to use the building for voting purposes on Election Day, including making the building available the day before Election Day, early morning on Election Day, and until a reasonable time after the polls close on Election Day;
   - Insurance considerations and payment of fees (if any) should be discussed with the property owner;
4. Buildings should have easy ingress and egress to the parking lot, including a parking lot in close proximity to the building;
5. Buildings must meet accessibility requirements or be adapted to meet accessibility requirements for Election Day (*see* Chapter 5, Section III);

6. Buildings must have a room or hallway of sufficient size to meet the needs for setting up equipment and voter check-in stations, including adequate space for voters to wait in line;

7. Buildings should have an adequate power source;

8. The property should be located near major traffic arteries, including within walking distance of public transit where possible;

9. The decision of where to locate a polling place or vote center should have public support, especially through outreach to rural and underserved communities;

10. In counties that conduct assigned polling place elections, the polling place must be located within the applicable precinct, unless applicable exceptions apply (*see* Chapter 8, Section (I)(B)(1));

11. Voters should not have to travel unreasonable distances to vote;

12. The property must have sufficient parking for voters' use on Election Day; and

13. If re-used, the voting location must have been successfully used in the past.

The elections staff should conduct a site visit to confirm the location's suitability for voting. The officer in charge of elections should also solicit community feedback on all proposed voting locations if practicable.

## F.  Use of School Facilities for Voting Locations

Upon request of the officer in charge of elections, a public school must provide sufficient space for use as a voting location in any statewide, county, city, or town election. A.R.S. § 16-411(E).

The principal of a public school may deny the request to host a voting location if, within two weeks of receiving the request, the principal provides a written statement confirming: (1) the school lacks sufficient space to host a voting location; or (2) the safety or welfare of students would be jeopardized by hosting a voting location. A.R.S. § 16-411(F).

## G. Polling Place/Vote Center Emergency Designation

A County Recorder or other officer in charge of elections may grant an emergency designation to a polling place/vote center if either of the following occurs:

• An act of God renders a previously-established Election Day voting location unusable; or

• The County Recorder or other officer in charge of elections has exhausted all options and there are no suitable facilities that are willing to host an Election Day voting location unless the facility receives an emergency designation.

A.R.S. § 16-411(I).

At least two weeks before Election Day, the County Recorder or other officer in charge of elections must post on its website a list of polling places/vote centers with emergency designations and must specify:

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- The reason the emergency designation was granted; and

- The number of attempts made to find another voting location before granting an emergency designation.

A.R.S. § 16-411(H).

Electioneering and other political activity is not permitted on the property of the hosting facility of any polling place/vote center with an emergency designation , even outside the 75-foot limit. A.R.S. § 16-411(I). However, if the voting location is not listed on the jurisdiction's elections website as having an emergency designation, electioneering and other political activity must be permitted on the premises outside the 75-foot limit. A.R.S. § 16-411(H).

If an emergency arises after the initial website posting, the County Recorder or other officer in charge of elections must:

- Update the website as soon as is practicable to include any new emergency designations of polling places/vote centers;

- Highlight the new voting location(s) with an emergency designation on the website; and

- Like other locations with an emergency designation, specify the reason the emergency designation was necessary and the number of attempts that were made to find a standard voting location before granting an emergency designation. A.R.S. § 16-411(H).

### H. Requirement to Allow Electioneering Outside 75-Foot Limit

Except in cases of an emergency designation (*see* Section I(G) above), any voting location or ballot replacement site used on Election Day or during on-site early voting must permit persons to engage in electioneering and other political activity in public areas and parking lots used by voters outside the 75-foot limit. A.R.S. § 16-411(H).

Electioneering or political activity may not result in voter intimidation. Further, no temporary or permanent structure may be erected and access to parking spaces may not be blocked or impaired. A.R.S. § 16-411(H).

### I. Ensuring Accessibility at the Voting Location

Voting locations must comply with the current ADA Checklist for Polling Places and any additional state accessibility requirements. *See* Chapter 5, Section III for more details.

## II.   APPOINTMENT AND TRAINING OF POLL WORKERS

At least 20 days before a primary or general election, the Board of Supervisors must appoint at least the following poll workers for each polling place with more than 300 qualified electors and each vote center:

- One inspector;

- Two judges;

- One marshal; and

- As many clerks as deemed necessary.

A.R.S. § 16-531(A).

For polling places with less than 300 qualified electors, the Board of Supervisors must appoint at least an inspector and two judges. The Board of Supervisors shall give notice of election precincts consisting of fewer than 300 qualified electors to the county chairperson of the two largest political parties not later than 30 days before the election. A.R.S. § 16-531(B).

The inspector, judges, marshal (and clerks, if applicable) are collectively known as the "election board" [37] for a particular voting location and are referred to in this Manual as poll workers or board workers.

The officer in charge of elections must provide a report containing each poll worker's name, position, precinct, and political party to the Board of Supervisors.

Poll workers must be registered voters, except for student poll workers. In assigned polling place elections, each poll worker must be a registered voter in the precinct of assignment unless there are not enough poll workers that meet this residential requirement. A.R.S. § 16-531(A).

Other than candidates for precinct committeeman, no candidate (nor the spouse, child, or parent of a candidate) for any office on the ballot may serve as a poll worker during that election.

The officer in charge of elections shall ensure that the election board is comprised of individuals registered with different political parties. At minimum, for partisan elections, if the inspector is a member of one of the two largest political parties, the marshal must be a member of the other of the two largest political parties and each of the two judges must be registered with different political parties. An inspector, marshal, or judge may not serve in that position if they have changed their political party registration since the last general election

At least 90 days before an election, the county chairperson of the two largest political parties may designate qualified electors to serve on election boards. When the list is timely submitted, it shall be used to appoint judges. Whenever possible, any person appointed as an inspector shall have had previous experience as an inspector, judge, marshal, or clerk of elections. If there is no qualified person in a given precinct, the appointment of an inspector may be made from names designated

---

[37] Notwithstanding A.R.S. § 16-531(A)'s reference to judges and the inspector, Arizona statutes generally provide that the election board is comprised of all poll workers at a particular voting location. *See, e.g.*, A.R.S. § 16-531(G) (allowing students to be appointed to an election board as clerks). This Manual accordingly adopts the interpretation of "election boards" to include inspectors, judges, marshals, and clerks.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

by the county party chairperson. Any registered voter in the precinct, or alternatively, in another precinct, may be appointed as a clerk.  A.R.S. § 16-531(A).[38]

### A. Election Board Duties

The following duties must be performed by the members comprising the election board. The officer in charge of elections may allocate these duties among different board members as deemed appropriate:

1. Prepare and monitor the voting location, including taking appropriate measures to preserve order and manage voter lines, A.R.S. § 16-562, A.R.S. § 16-512;

2. Open, exhibit, and lock the ballot box before receiving any ballots, A.R.S. § 16-564(A);

3. Maintain the signature roster or e-pollbook;

4. Check for proper identification;

5. Direct voters in the wrong polling place to the correct polling place, including the specific address (for assigned polling place elections only);

6. Mark spoiled ballots (inspector and only one judge required), A.R.S. § 16-585;

7. Ensure that voted ballots are deposited in the correct ballot box, and deposit ballots in the ballot box at the voter's request, A.R.S. § 16-580(C);

8. Assist voters in using accessible voting equipment and assist voters in marking the ballot (two board members of different political parties required), A.R.S. § 16-580(E);

9. Close the polls (inspector and two judges required); A.R.S. § 16-565(C);

10. Prepare a report of the number of voters who have voted and seal the box containing the voted ballots, A.R.S. § 16-608(A), A.R.S. § 16-616; and

11. Return the signature roster, copies of the precinct registers, and other election supplies to the Board of Supervisors or officer in charge of elections. A.R.S. § 16-617.

In addition, the inspector, marshal, and judges of the election board are specifically tasked with the responsibilities described below.

### 1. Inspector

---

[38] If it is impossible to sufficiently staff the boards with members of differing political parties, the officer in charge of elections shall, at minimum, exercise best efforts to utilize board members with no party affiliation or from differing unrecognized parties to ensure that there is a diversity of political party affiliation (including no affiliation) on the election board and that no election board is comprised of members of only one party. Further, the officer in charge of elections shall document when and how the political parties in the county were contacted about the need for board workers affiliated with those parties and all other actions taken in a best effort to obtain board workers from two different political parties. However, nothing in this Manual shall be interpreted to supersede otherwise applicable statutory requirements, including the requirement that board workers be of differing political party affiliation.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The inspector serves as the chair of the election board and exercises authority over all election-related activities at the voting location (under the direction of the county officer in charge of elections, who maintains overall authority over the voting location). The inspector usually acts as the single point-of-contact with the officer in charge of elections, poll worker hotline, troubleshooters, or other entity designated by the officer in charge of elections to provide assistance on Election Day.

The inspector's specific duties include the following:

1. As chair of the election board, maintain sufficient knowledge about election procedures and voting equipment;

2. Lead and assign duties to other poll workers, including appointing a substitute judge, marshal, or clerk (while maintaining political party balance) if a poll worker fails to show up or fails to perform their duty on Election Day and no alternative poll worker is available, A.R.S. § 16-534(A), A.R.S. § 16-533; and

3. Ensure the polling place is setup and functions properly, including publicly opening the sealed package of official ballots, ensuring the required ballot styles/types are present, certifying the voting roster, posting appropriate lists and notices, arranging the voting booths, and assisting electors, A.R.S. § 16-563, A.R.S. § 16-312(E), A.R.S. § 16-343(F)-(G), A.R.S. § 16-169(B), A.R.S. § 16-579(D)-(E), A.R.S. § 16-572(A).

### 2. Marshal

The marshal is responsible for preserving order at the voting location, which includes:

1. Announcing the opening and closing of the polls, A.R.S. § 16-565(C);

2. Preserving order and preventing any violation of election law, including voter intimidation or electioneering within the 75-foot limit, from the opening of the polls until the count of the ballots is completed, A.R.S. § 16-535(B); and

3. Periodically measuring the length of wait times, notifying the inspector if wait times have the potential to equal or exceed the 30-minute maximum, and implementing measures to reduce voter wait time, including having the authority to request additional voting equipment or supplies and board workers or to appoint additional board workers upon approval of the officer in charge of elections, A.R.S. § 16-535(B).

The marshal may also perform the duties of any other election board worker on a relief basis. A.R.S. § 16-535(B).

### 3. Judges

Judges oversee the voting process itself, which may generally include:

1. Issuing ballots to qualified voters, A.R.S. § 16-579(C), A.R.S. § 16-467(B), A.R.S. § 16-572(B);

2. Signing the roster for an elector who is unable to sign because of physical disability, A.R.S. § 16-579(D)-(E); and

3. Examining electronic voting equipment and comparing the number of votes cast as indicated on the machine with the number indicated on the poll list (or e-pollbook) and the number of provisional ballots cast, A.R.S. § 16-602(A).

### B. Bilingual Poll Workers

Jurisdictions covered under the language minority provisions under Section 203 of the Voting Rights Act should appoint bilingual poll workers and/or ensure access to on-site or remote interpretation services in the covered language(s) to provide language assistance to voters who need it. Additionally, an Election Terminology Glossary in the covered languages should be provided among the polling place supplies.

### C. Student Poll Workers

The Board of Supervisors may appoint a student to serve as a clerk on the election board if the student:

- Will be at least 16 years old at the time of the election;
- Will be a United States citizen at the time of the election; and
- Provides written permission from a parent or guardian.

A student poll worker must receive poll worker training and must be supervised by a trained adult poll worker at the voting location. A.R.S. § 16-531(F).

A student's absence from school due to service as a student poll worker does not affect the school's average daily membership or count against any mandatory attendance requirements for the student. A.R.S. § 15-901(A)(1); A.R.S. § 16-531(G).

### D. Poll Worker Training

Within 45 days before an election, the officer in charge of elections must commence poll worker training for inspectors, judges, and any other election board members deemed necessary by the officer in charge of elections. A.R.S. § 16-532(A). At least one poll worker training session should be conducted in-person during each election cycle, but additional training may be conducted online as deemed necessary. Additionally, the officer in charge of elections should develop a mechanism to assess individual poll workers' performance following the election.

Persons who conduct poll worker training must be qualified in election law and have practical experience in the election process. A.R.S. § 16-532(A)-(B). Persons who conduct poll worker training must also be certified by the Secretary of State as an election officer in accordance with A.R.S. § 16-407 or under the management of a certified election officer.

Poll worker training must cover the following pre-Election Day topics, as applicable:

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

1.  Delivery of ballots and supplies to the voting location;

2.  Duties of each election board member;

3.  Ensuring proper political party representation among election board members;

4.  Conducting a pre-election meeting;

5.  Gaining building access;

6.  Inventorying supplies;

7.  Equipment setup and furniture arrangement;

8.  Voting equipment checks, including ensuring that equipment seals have not been tampered with and match the seal log;

9.  Conducting an official ballot count;

10. Customer service responsibilities, including voter assistance, assistance to voters with a disability, and ensuring language accessibility; and

Poll worker training must also cover the following Election Day topics, as applicable:

1.  Opening the voting location;

2.  Hours the voting location will be open;

3.  Poll workers' hours;

4.  Establishing the 75-foot limit and enforcing non-electioneering and non-intimidation rules;

5.  Sharing voting locations with tribal elections;

6.  Procedures for checking identification;

7.  Provisional ballot processing;

8.  Operation of voting equipment;

9.  Operation of accessible voting equipment;

10. Operation of e-pollbooks or procedures for managing the signature rosters and poll lists;

11. Troubleshooting, including when and how to implement wait-time reduction and other contingency plans;

12. Any voter registration information deemed necessary;

13. Who may vote in the election;

14. Use of precinct registers and/or the issuance of ballot types/styles (political party, FED only, ballot splits, etc.);

15. Standard voting procedures;

16. Recorder's Certificates;

17. Spoiled ballot procedures;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

18. Procedure for early ballot drop-off;

19. Political party observers;

20. Procedures for challenges;

21. Kids Voting;

22. Closing the polls;

23. Transmitting results and/or delivery of voted ballots;

24. Completing a Certificate of Performance, verifying that various election duties were properly performed; and

25. Preparing the official and unofficial envelope contents (*see* Chapter 8, Section V).

The officer in charge of elections may require additional training for poll workers at any time. Regardless of whether additional training is provided, however, poll workers must be notified in writing prior to Election Day of any changes in election law or procedure that became effective since the last poll worker training. A.R.S. § 16-532(E).

## 1. Premium Training

The officer in charge of elections may institute an advanced method of instruction and testing for certain election board members known as premium training. The premium training must include at least eight hours of training and a written examination on election law and procedures. A.R.S. § 16-532(D).

Those who complete this training and pass the test are certified as a "premium board worker." Premium board workers are certified for a period of 30 months and, if approved by the Board of Supervisors, are entitled to additional compensation. A.R.S. § 16-532(D).

The officer in charge of elections may require additional training for poll workers at any time. Regardless of whether additional training is provided, however, poll workers must be notified in writing prior to Election Day of any changes in election law or procedure that became effective since the last poll worker training. A.R.S. § 16-532(E).

## 2. Certificate of Qualification

Upon successful completion of poll worker training, each election board member will receive a certificate of qualification from the Board of Supervisors or officer in charge of elections stating the worker's name and the course of instruction completed. No inspector or judge (except those appointed to fill a vacancy and as provided in A.R.S. § 16-533 and A.R.S. § 16-534) may serve on Election Day unless the person has been issued a certificate of qualification. A.R.S. § 16-532(A).

### E. Poll Worker Compensation

The Board of Supervisors must set the compensation of poll workers, which constitutes a county charge. A.R.S. § 16-536. The Board of Supervisors may approve poll worker pay by virtue of approving the election director's budget for the forthcoming election.

Poll workers must be paid at least $30 per day. A.R.S. § 16-536. The Board of Supervisors may approve additional compensation for premium board workers. A.R.S. § 16-532(D).

## III.   DESIGNATION OF POLITICAL PARTY AND OTHER OBSERVERS

Political party representatives are permitted to observe at voting locations and central counting places for partisan elections. The proceedings at the central counting place may also be observed by up to three additional people representing a candidate for nonpartisan office, or representing a political committee in support of or in opposition to a ballot measure, proposition or question. Such observation (and observation at early voting locations, emergency voting centers, and County Recorder processing procedures, where permitted by the County Recorder or other officer in charge of elections) are subject to the procedures described below. Observation at nonpartisan elections may be permitted at the discretion of the officer in charge of elections. A.R.S. § 16-590(A)-(B); A.R.S. § 16-621(A).

The County Recorder or other officer in charge of elections may develop additional local procedures governing political party observation. Additional procedures shall allow political party observers to effectively observe the election process, and no changes to the procedures shall be made after the Tuesday prior to the election in order to facilitate compliance by the county political parties and designees.

### A. Appointment Process

The county chairperson (or designee) of each party represented on the ballot must submit the names of specific political party observers to the County Recorder or officer in charge of elections in writing (in hard copy or electronically in advance of observation, as required by the County Recorder or officer in charge of elections). The County Recorder or officer in charge of elections may require reasonable deadlines for advance notice of appointments. Where there is no county political party officer to make the appointment, the state political party chairperson may appoint political party observers for that county.

Political party observers may be appointed to specific voting locations (for Election Day observation), to a central counting place, or to multiple voting locations as authorized by the political party chairperson and the officer in charge of elections. Observers appointed to observe in multiple locations need only one appointment in writing designating the various locations where the observer is appointed. An appointment is not transferable to another individual.

Unless agreed upon by the political parties, not more than one party representative for each party represented on the ballot shall be at a voting location at one time. A.R.S. § 16-590(C). Further,

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

only one representative at any one time of each political party represented on the ballot who has been appointed by the political party chairperson shall remain within the 75-foot limit while the polls are open. A.R.S. § 16-515(A), (B), (H).

Appointed political party observers need not be qualified electors in the precinct or county of observation. Except for precinct committeeman candidates, candidates appearing on the ballot or official write-in candidates shall not serve as political party observers.

## B. Observer Credentials

The political party letter of appointment with the signature of the appointing authority (and, if required by the County Recorder or officer in charge of elections, on political party letterhead) serves as the written credential necessary to conduct observation at a voting location or central counting place. Credentials must be issued by the recognized political party chairperson or designee; this authority may not be delegated to a candidate or candidate's agent. The political party observer must present the political party appointment letter (or copy thereof, if permitted by the County Recorder or officer in charge of elections) to the appropriate election official upon entering the voting location, County Recorder's office, or central counting place, and be prepared to show identification if requested.

## C. Observation at Voting Locations

Political party observers may observe the following activities at a voting location:

- Opening the voting location;
- Voting at the voting location (but may not observe in the voting booth or otherwise impede voters' ability to maintain a secret ballot);
- Closing the voting location;
- Transport of ballots from the voting location to a receiving site (using a separate vehicle); and/or
- Any other significant voting or processing activities at the voting location provided that it does not interfere with or impede the election procedures or staff.

Each recognized political party is presumptively entitled to have no more than one political party observer at a time at each voting location. A.R.S. § 16-590(C).

All political party observers are subject to removal by the County Recorder or other officer in charge of elections for failure to comply with a request to cease an activity that interferes with the election process or violates state or federal law.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## D. Observation at Central Counting Places

Political party representatives may observe at a central counting place and at each point where ballots are handled or transferred from one election official to another, including areas where the following activities take place:

- Receiving the ballots at the County Recorder's office or central counting place;

- Inspecting the ballots;

- Reviewing ballots by the Write-in Tally Board;

- Duplicating ballots by the Ballot Duplication Board;

- Adjudicating ballots by the Electronic Vote Adjudication Board;

- Receiving electronic media or processing voting results by the Accuracy Certification Board;

- Tabulation of ballots; and/or

- Any other significant tabulation or processing activities at a central counting place provided that it does not interfere with or impede the election procedures or staff.

## E. Observer Guidelines

The following observation guidelines govern all observers:

1. An observer may not mark any ballot, place any type of material on a ballot, or otherwise touch a voted ballot during observation. Further, an observer shall not offer to assist any voter in the process of voting at a voting location. If a voter specifically requests an observer's assistance in voting, the observer may only assist the voter after relinquishing the observer's formal status as an observer (for example, by returning any observer badge or identification, exiting the voting location, and then accompanying the voter into the voting location as an assistant rather than an observer). The observer may resume their role as an observer after assisting the voter.

2. Observers shall not touch or handle election materials, rosters, early ballot envelopes, provisional ballot envelopes, ballot transfer containers, voting machines, or voting machine components except as expressly permitted by the officer in charge of elections during demonstrations.

3. Observers may not interfere with or impede the election procedures or staff.

   - If an observer has a question about the proceedings or seeks to raise an objection, the observer should speak solely to the designated point of contact (*e.g.*, inspector, County Recorder, or other officer in charge of elections) and not to other poll workers or staff.

   - The officer in charge of elections or inspector may prohibit observers from using electronic devices in the voting location or central counting place if doing so would interfere with or impede the election procedures or staff. No photos may be taken within the 75 foot limit of a voting location. A.R.S. § 16-515(G).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Observers may not wear, carry, or display any materials that identify or express support or opposition for a political party, political organization, or a candidate or ballot measure appearing on the ballot. A.R.S. § 16-515(F).

- In cases where multiple ballots are dropped off at a voting location, as observer may not, within the 75-foot limit: (1) inspect, copy, or photograph the early ballot envelopes in an effort to discern voters' identities; or (2) confront, question, or photograph the individual who dropped off the early ballots.

- Observers can enter and leave a voting location or central counting place so long as their entering and leaving does not interfere with or impede the election procedures or staff.

4. Observers may take handwritten notes during observation, but must use a writing instrument of a color designated by the officer in charge of the election or procedure.

5. If an observer is asked by the inspector or other officer in charge to cease an activity that interferes with the election process, the observer must comply or face possible ejection.

6. Observers must be prepared to show their appointment credential immediately upon entering any voting location or central counting place or upon request by any election official.

7. At a central counting place, all observers must check in with the County Recorder or other officer in charge of elections prior to being admitted and may be required to log in and out of the facility each time they enter or leave.

8. At a central counting place, the County Recorder or other officer in charge of elections may ensure that observers are given identifying badges to ensure that observers are clearly identifiable.

## IV.   ISSUING PRE-ELECTION NOTICES

### A. Secretary of State: 120-Day Notice of Offices to be Elected

At least 120 days before a primary election, the Secretary of State must notify in writing each Board of Supervisors and officer in charge of elections of the federal, statewide, and legislative offices for which candidates will be nominated at the primary election. A.R.S. § 16-202.

### B. County: 180-Day Notice of Election to Local Jurisdictions

At least 180 days before each consolidated election date, the Board of Supervisors or officer in charge of elections must give written notice to each school district, community college district, city and town within the county's geographical boundaries. The Board of Supervisors or officer in charge of elections also must give written notice to all special taxing districts within the county. A.R.S. § 16-205(A).

The notice must include:

- The specific election date;

- The deadline by which the local jurisdiction must inform the Board of Supervisors or officer in charge of elections whether an election will be held; and

  - The deadline to inform the Board of Supervisors or officer in charge of elections should be set at or just after special taxing districts' 150-day deadline to call an election pursuant to A.R.S. § 16-226(A).

- Any additional information deemed necessary by the Board of Supervisors or officer in charge of elections.

The notice may be mailed, emailed, or otherwise electronically transmitted.

## C. Special Taxing District/Nonpartisan Election Notices

The governing body of a special taxing district must provide various public notifications before conducting an election that is not held concurrently with a general election. A.R. S. § 16-226(B); A.R.S. § 16-227(A).[39]

- A special taxing district must call an election at least 150 days in advance of an election, except for elections called pursuant to A.R.S. § 19-209. A.R.S. § 16-226(A). "Calling" an election means the governing board of the special taxing district must officially inform the applicable Board of Supervisors or officer in charge of elections that the district intends to conduct an election.

- In addition, the special taxing district must also issue a "call of election" to the public by publishing the "call of election", at least two times and at least one week apart, in a newspaper of general circulation covering the jurisdiction between 132 and 90 days before the election. A.R.S. § 16-227(A). Alternatively, the special taxing district may mail the "call of election" to each household containing a qualified elector at least 90 days before the election. A.R.S. § 16-227(B).

- Finally, a special taxing district must issue a "notice of election," which is like the call of election but intended as the final public notice in advance of a special taxing district election. A.R.S. § 16-228(A)-(B). A special taxing district that conducts a ballot by mail election need only issue the notice specified in A.R.S. § 16-228(C)-(D). Notice requirements specific to fire district or irrigation and water conservation district bond elections can be found at A.R.S. § 48-806(A) and A.R.S. § 48-3190(A), respectively.

A special taxing district must file an affidavit certifying compliance with federal and state law with the applicable Board of Supervisors at least five days before holding a nonpartisan election. A.R.S. § 16-229.

---

[39] A.R.S. §§ 16-225 to 16-229 outline various requirements for holding "nonpartisan" elections. A.R.S. § 16-226(B) defines nonpartisan elections (for purposes of those statutes) as elections of special taxing districts not held concurrent with the general election.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## V.   PREPARATION OF BALLOTS

The County Board of Supervisors is responsible for preparing the official ballot to be used in federal, statewide, legislative, and countywide elections. A.R.S. § 16-405; A.R.S. § 16-503(A). The Board of Supervisors may delegate this responsibility to the officer in charge of elections.

### A. Official Ballot Format

#### 1.  Form and Content of the Ballot

##### a.  *Requirements for All Ballots*

###### i.   Paper Type

All official ballots must be printed with black ink on white paper of sufficient thickness to prevent the printing from being discernible on the reverse side the ballot. A.R.S. § 16-468(2); A.R.S. § 16-502(A).

###### ii.   Font

The ballot must use the same font and color template throughout the ballot. A.R.S. § 16-502(A), (C). The only color exception is for a political party indicator or stripe to be printed on official ballots used for a partisan primary election or PPE. *See* Chapter 7, Section III(A) and Chapter 8, Section V(A)(1)(b).

The ballot must use the same font size within each category on the ballot (for example, all candidate names for a particular race must be printed in the same font size), which must be printed in no less than 8-point font if practicable. However, ballot measure numbers must be printed in at least 12-point font. The officer in charge of elections may adjust spacing between the letters on a ballot to accommodate space limitations.

###### iii.   Early Ballot Designation

Early ballots, including ballots-by-mail and in-person early ballots, shall be identical to regular ballots, except that early ballots shall have the word "early" printed or stamped on them. A.R.S. § 16-545(A).

###### iv.   Spacing and Heading

The ballot must contain sufficient spacing between races and sections to enable the voter to clearly understand the ballot.

On the front side, the ballot must be headed with the phrase "Official Ballot" in bold-faced plain letters, with a heavy rule above and below the heading. The ballot may not contain any other statement or matter printed above the "Official Ballot" header. A.R.S. § 16-502(A).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Immediately below the "Official Ballot" heading, the following components must be printed in the following order:

- A subheading that specifies the type of election (general, primary, or special), the election date, and the name of the county and state holding the election;

- Instructions to the voter how to properly mark the ballot; and

- The various candidate names and/or ballot measures. A.R.S. § 16-502(A), (C).

### v.   Candidate Races

For candidate races, the official ballot must:

- Arrange the candidate names according to A.R.S. § 16-502(C) in column format, starting with the left-hand column;

- List the name of the office to be filled at the head of each portion of the column;

- List the district number, division number, or other jurisdictional name/number to the right of the office name to be filled, if applicable;

- Include the designation "Vote for not more than _____" below the name of each office to be filled to indicate the appropriate number of candidates to select;

- List candidate names according to last name, followed by first name and any nickname;

  - The officer in charge of elections may: (1) shorten or truncate a candidate's name (with the candidate's consent) in order to fit the candidate's name on the ballot; and/or (2) decline to print the candidate's requested nickname if it suggests reference to professional, fraternal, religious, or military titles.

- Contain a location for the voter to place a mark to vote for their candidate of choice to the right or left (and on the same line) of each candidate's name;

- Contain the candidate's political party designation in bold-faced letters next to the candidate's name (for partisan races only); and

- Contain blank lines that correspond to the number to elect placed below the last candidate name for a particular office, along with a location for the voter to place a mark next to their write-in candidate(s) of choice.

A.R.S. § 16-502(C)-(G); A.R.S. § 16-311(G); A.R.S. § 16-341(C).

Additionally, the ballot must contain the name or number of the precinct in which the ballot will be utilized, and may include the precinct part or ballot style code. A.R.S. § 16-502(A).

### b.  *Additional Requirements for Primary Election Ballots*

In addition to the specifications outlined in Section V(A)(1)(a) above, primary election ballots must comply with the following additional requirements.

Primary election ballots must be printed with a particular color to indicate the political party ballot. A.R.S. § 16-461(B). The ballot may be printed on colored stock or on white stock with a distinctive color indicator such as a stripe. The following colors represent the recognized political parties:

- Blue: Democratic Party
- Green: Green Party
- Yellow: Libertarian Party
- Red or Salmon: Republican Party

The officer in charge of elections may use varying hues of the requisite colors, but may not select entirely different colors as substitutes for the requisite colors. The primary election ballot displayed in accessible voting equipment must also utilize a color designation for each political party. A.R.S. § 16-446(B)(9).

If the number of recognized party candidates in a particular race exceeds the number to elect, the officer in charge of elections must rotate candidate names in that particular race by precinct so that each candidate will appear substantially an equal number of times in each possible location for the particular race across all primary election ballots. If the number of candidates in a particular race is less than or equal to the number to elect, the candidates' names must be listed in alphabetical order by last name and no rotation is required. A.R.S. § 16-464(A).

If more persons file nomination petitions for the office of precinct committeeman than the number to elect in a particular precinct, the county officer in charge of elections must prepare a separate ballot style that includes the office of precinct committeeman for the voters registered with that political party in that precinct. A.R.S. § 16-822(C). The position of the precinct committeemen candidate names must be drawn by lot at a public meeting called by the Board of Supervisors for that purpose. A.R.S. § 16-464(B). This ballot style, which includes all the races in the precinct and the precinct committeeman race, must be provided only to voters registered with that political party in the precinct. A.R.S. § 16-822(C).

### c. *Additional Requirements for General Election Ballots*

In addition to the specifications outlined in Section V(A)(1)(a) above, general election ballots must comply with the following additional requirements.

For partisan candidate races, the official ballot must list candidates in a particular race in the following descending order:

- Candidates who are registered with a recognized political party that appeared on the gubernatorial ballot in the most recent general election for the office of governor, listed in the order that corresponds to the number of votes for each party's gubernatorial candidate in that county;
- Candidates who are registered with a recognized political party that did not appear on the gubernatorial ballot in the most recent general election for the office of governor, listed in alphabetical order by last name; and

- Independent candidates who were nominated pursuant to A.R.S. § 16-341 (along with a three-letter designation determined by the filing officer), listed in alphabetical order by last name. A.R.S. § 16-502(E).

If there are two or more candidates of the same political party for the same office, or more than one candidate for a judicial office, the names of all such candidates in the particular race must be rotated so that each candidate will substantially appear an equal number of times in each possible location. However, if the number of candidates in a particular race is less than or equal to the number to elect, the candidates' names must be listed in alphabetical order by last name and no rotation is required. A.R.S. § 16-502(E), (H).

In general elections with a presidential candidate on the ballot, presidential electors' first and last names must be listed in alphabetical order (according to last name). The presidential and vice-presidential candidates' last names must be printed in bold and placed adjacent to the elector names, with the presidential candidate's name printed above the vice-presidential candidate's name. A.R.S. § 16-502(C)(1).

For ballot measures, the officer in charge of elections must use one of the following methods to describe the measure:

1. Print the full text of the measure on the ballot;

2. Print a summary of the measure that contains a statutorily-prescribed heading, an official title, a descriptive title, and a summary that describes the measure's effect; or

3. Print a summary of the measure that contains an alternative heading and a summary that describes the measure's effect, but omits the official title and descriptive title (see below for specific requirements).

The ballot must contain the words "Yes" and "No" or "For ___" and "Against ____", along with a space for the voter to mark their choice, below the description of the ballot measure. A.R.S. § 19-125(B)-(F); A.R.S. § 16-502(L)-(N).

### d. *Additional Requirements for PPE Ballots*

Similar to a partisan primary election ballot, a PPE ballot must distinguish political party ballots by color and contain candidate names for only that political party. A.R.S. § 16-245(A). Otherwise, PPE ballots must comply with the following specific requirements.

A PPE ballot must contain the following information in descending order:

- The following header at the top of the ballot:

  "Official Ballot of the _____ Party,

  Presidential Preference Election (date),

  County of _____,

  State of Arizona"

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- The title "_____ Party Candidates for President of the United States;"
- The text "Vote for not more than one;" and
- The political party candidates certified to appear on the ballot. A.R.S. § 16-245(A)-(B).

The ballot also may contain printed instructions to voters as prescribed for other elections (see below for specific instructions). A.R.S. § 16-245(B).

Unlike all other ballots, candidate order is determined by lot drawn at a public meeting conducted by the Secretary of State. The officer in charge of elections must print candidate names in the order and format specified by the Secretary of State, without rotation of candidate names. A.R.S. § 16-245(B). Write-in votes are not permitted, and no other elections may be combined with a PPE ballot. A.R.S. § 16-241(A); A.R.S. § 16-247.

A PPE ballot must comply with any other ballot format requirements in Section V(A)(1)(a) that are not inconsistent with this Section.

## 2.  Ballot Marking Instructions

Immediately below the subheading that specifies the type of election, the election date, and the name of the county and state holding the election, an official ballot may contain the following voter instructions:

1. Put a mark according to the instructions next to the name of each candidate for each office for whom you wish to vote.
2. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided on the ballot or write-in envelope and put a mark according to the instructions next to the name so written.
3. Put a mark according to the instructions next to the word "yes" (or "for") for each proposition or question you wish to be adopted. Put a mark according to the instructions next to the word "no" (or "against") for each proposition or question you wish not to be adopted.

A.R.S. § 16-502(A). The officer in charge of elections may add additional instructions to the ballot as needed.

## 3.  Order of Candidate Races

### a.  *Partisan Candidate Offices*

Partisan candidate races must be listed in the following order in the partisan section of the ballot:

1. Presidential electors;
2. U.S. Senator;
3. U.S. Representative;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

4. Governor;

5. State Senator;

6. State Representative;

- A.R.S. § 16-502(D) requires state legislative candidates' names to appear directly below the gubernatorial candidates' names. In election years where there are no gubernatorial candidates on the ballot, legislative candidates' names must still appear before statewide offices.

7. Secretary of State;

8. Attorney General;

9. State Treasurer;

10. Superintendent of Public Instruction;

11. State Mine Inspector;

12. Corporation Commissioner;

13. County Offices;

- The officer in charge of elections may determine the ballot order for County Supervisor, County Assessor, County Attorney, Clerk of the Superior Court, County Recorder, County School Superintendent, County Sheriff, and County Treasurer.

14. Justice of the Peace; and

15. Constable.

A.R.S. § 16-502(C). Candidate races not up for election must be omitted from the ballot. Precinct Committeemen must be included on a separate ballot style only for voters registered with the particular political party. *See* Chapter 8, Section V(A)(1)(b). PPE ballots are subject to different requirements. *See* Chapter 8, Section V(A)(1)(d).

### b. *Nonpartisan Candidate Offices*

Subject to the exceptions outlined below, the following nonpartisan candidate races must be listed in order in the nonpartisan section of the ballot:

1. Justice of the Supreme Court;

2. Judge of the Court of Appeals (Division 1);

3. Judge of the Court of Appeals (Division 2);

4. Judge of the Superior Court (retention in Maricopa, Pima, and Pinal Counties);

5. Judge of the Superior Court (election in Apache, Cochise, Coconino, Gila, Graham, Greenlee, La Paz, Mohave, Navajo, Santa Cruz, Yavapai, and Yuma Counties).

6. Governing Board Member of a School District;

7.  Governing Board Member of a Community College District;

8.  Governing Board of a Joint Technical Education District;

9.  Governing Board Member of a Special Taxing District;

10. City or Town Mayor;

11. City or Town Council Member.

A.R.S. § 16-502(J). The following exceptions apply to candidate order in the nonpartisan candidate section:

•   The officer in charge of elections may reasonably adjust the nonpartisan candidate order in order to avoid printing on the reverse side of the ballot, to achieve uniformity with the reverse side of the ballot, or to eliminate blank space;

•   A recall election involving a candidate who was originally elected in a partisan race should be listed in the partisan section of the ballot, and (if applicable) in the section of the partisan ballot where candidate's race was originally positioned, A.R.S. § 19-213; and

•   An election to fill the vacant unexpired term of a nonpartisan office must appear under separate heading immediately below the nonpartisan candidates and shall include the expiration date of the term of the vacated office.  A.R.S. § 16-502(K); A.R.S. § 15-424(F).

Candidate races not up for election (or judicial offices not up for retention) should be omitted from the ballot.

### i.   Determining Judicial Offices Subject to Retention

Following appointment, a justice or judge (including superior court judges in counties with a population that exceeds 250,000) serves an initial 2-year term before seeking retention in office. Ariz. Const. Art. VI, § 37(C). Thereafter, justices and judges serve 6-year terms between retention elections. Ariz. Const. Art. VI, § 4; Ariz. Const. Art. VI, § 37(C); A.R.S. § 12-101; A.R.S. § 12-120.01(B).

Supreme Court justices appear on the ballot for retention in all Arizona counties.

For the 16 judges in Division 1 of the Court of Appeals, which covers Maricopa, Yuma, La Paz, Mohave, Coconino, Yavapai, Navajo, and Apache Counties:

•   The 10 judges appointed from Maricopa County in Division 1 of the Court of Appeals must appear on the Maricopa County ballot for retention;

•   The five judges appointed from Yuma County, La Paz County, Mohave County, Coconino County, Yavapai County, Navajo County or Apache County in Division 1 of the Court of Appeals must appear on these 7 counties' ballots for retention;

•   Retention of the 16th judge in Division 1 of the Court of Appeals depends on the county of residence:

- If the judge was appointed from Maricopa County, that judge must appear on the Maricopa County ballot for retention;

- If the judge was appointed from Yuma County, La Paz County, Mohave County, Coconino County, Yavapai County, Navajo County or Apache County, that judge must appear on these 7 counties' ballots for retention.

A.R.S. § 12-120.02(A).

For the six judges in Division 2 of the Court of Appeals, which covers Pima, Pinal, Cochise, Santa Cruz, Greenlee, Graham, and Gila Counties:

- The four judges appointed from Pima County in Division 2 of the Court of Appeals must appear on the Pima County ballot for retention; and

- The two judges appointed from Pinal County, Cochise County, Santa Cruz County, Greenlee County, Graham County, or Gila County in Division 2 of the Court of Appeals must appear on these six counties' ballots for retention.

A.R.S. § 12-120.02(A)-(B).

Superior court judges appear on the ballot for retention in the county in which they were elected or appointed. Ariz. Const. Art. 6, § 37(B).

The Arizona Commission on Judicial Performance must notify the Secretary of State which justices and judges are up for retention in a particular general election. A.R.S. § 19-123(A)(5); A.R.S. § 19-124.01.

## 4. Political Party Designations

In a partisan race where a candidate sought a political party nomination by primary, the officer in charge of elections must place a three-letter designation to the right of the candidate's name that corresponds to the party designated in the candidate's nomination paper. A.R.S. § 16-502(E).

The following three-letter designations correspond to the current or recently recognized political parties:

- DEM: Democratic Party

- GRN: Green Party

- LBT: Libertarian Party

- REP: Republican Party

In a partisan race where an independent candidate sought a nomination other than by primary, the officer in charge of elections must determine a three-letter designation based on the three-word designation in the candidate's nomination paper. A.R.S. § 16-341(D); A.R.S. § 16-502(E).

A political party selection of "independent" must be designated as "IND" on the general election ballot. Otherwise, the officer in charge of elections has sole discretion how to translate other non-recognized political party selections into three-letter designations (except that independent candidates may not be designated as "DEM," "GRN," "LBT," or "REP" on the general election ballot).

## 5.  Special Provisions for Ballot Measures

### a.  *Numbering Ballot Measures*

For any measure that has qualified for the ballot, the officer in charge of elections must assign a three-digit proposition or question number based on the ballot measure type:

- Constitutional Initiative: 100 series
    - A "constitutional initiative" is brought about by petition and represents the citizens' effort to amend the Arizona Constitution.

- Constitutional Referral: 100 series
    - A "constitutional referral" is a proposed constitutional amendment referred to the general election ballot by the Arizona Legislature.

- Statutory Initiative: 200 series
    - A "statutory initiative" is brought about by petition and represents the citizens' effort to amend, add, or strike a statute.

- Statutory Referral: 300 series
    - A "statutory referral" is a statutory measure referred to the general election ballot by the Arizona Legislature.

- Citizen Referendum: 300 series
    - A "citizen referendum" is brought about by petition and represents the citizens' effort to veto a bill recently passed by the Arizona Legislature or other local government body.

- Local charter amendment, initiative, referendum, bond measure, or budget override: 400 series

Propositions or questions within a jurisdiction must be numbered consecutively based on the order filed with the officer in charge of elections. Individual numbers continue from the last number used in the previous election and do not repeat until all 100 numbers in that series have been used. A.R.S. § 19-125(B). For non-statewide ballot measures appearing on the ballot in multiple counties, unless otherwise agreed upon by the applicable counties, the county with the highest population of voters shall assign the number for the ballot measure and, where practicable, other counties shall use that same number for the same ballot measure in order to minimize voter confusion.

The proposition or question number must be printed in reverse type (white type on black background) in at least 12-point font. A.R.S. § 19-125(C). For example, a statutory initiative designated as Proposition 205 must be printed on the ballot as follows:

PROPOSITION 205

PROPOSICIÓN 205

### b.  *Order of Ballot Measures*

Ballot measures must appear on the ballot in the following order, below any nonpartisan candidate races in the nonpartisan section of the ballot:

- State constitutional amendments;
- Statewide statutory initiatives;
- Statewide referenda;
- County ballot measures, including school district, joint technical education district, and community college district ballot measures;
    - The officer in charge of elections may determine the ballot order for county initiatives, county referenda, county school district bond measures, county school district budget overrides, community college district bond measures, community college district budget overrides, special taxing district bond measures, and special taxing district budget overrides.
- City or town ballot measures; and
    - The city or town clerk may determine the ballot order for city charter amendments, city or town initiatives, and city or town referenda.
- Special taxing district ballot measures.

A.R.S. § 16-502(L); A.R.S. § 19-125(B). Ballot measures types that will not be voted on in the election should be omitted from the ballot.

### c.  *Printing Initiatives and Referenda on the Ballot*

The officer in charge of elections may use one of the three methods to print initiatives and referenda (including legislative referrals) on the official ballot:

1. Print the full text of the measure on the ballot, followed by the words "**yes**" and "**no**" or "**for** _____ " and "**against** ____ " for the voter to mark their choice;
2. Print a standard summary of the measure that contains a statutorily-prescribed heading, an official title, a descriptive title, and a summary that describes the measure's effect (see below for specific requirements); or

3. Print a condensed summary of the measure that contains an alternative heading and a summary that describes the measure's effect, but omits the official title and descriptive title (see below for specific requirements).

**i.** <u>Standard Summary of the Measure</u>

If the officer in charge of elections chooses the standard summary option (printing a statutorily-prescribed heading, an official title, a descriptive title, and an analysis of the measure's potential effect), the following requirements apply.

Below the proposition number, the officer in charge of elections must print one of the following **<u>headings</u>**, as applicable:

- Constitutional Initiative: "Proposed Amendment to the Constitution by the Initiative;"
- Constitutional Referral: "Proposed Amendment to the Constitution by the Legislature;"
- Statutory Initiative: "Proposed by Initiative Petition;"
- Statutory Referral: "Referred to the People by the Legislature;" or
- Citizen Referendum: "Referendum Ordered by Petition of the People."

An **<u>official title</u>** must be printed below the prescribed heading. The official title comprises a description of the constitutional or statutory provisions being amended, added, or deleted by the measure. This information is drawn from the introductory portion of the initiative or referendum itself.

A **<u>descriptive title</u>** must be printed below the official title. The descriptive title constitutes a summary of the principal provisions of the measure, not to exceed 50 words.

Finally, an **<u>analysis of the potential effect</u>** of a "yes" or "no" vote on the measure must be printed below the descriptive title. Each analysis must begin with following introductory phrases:

A "yes" vote shall have the effect of _____.

A "no" vote shall have the effect of _____.

The "yes" line must be filled with a "brief phrase" that describes the essential change to existing law should an initiative or referral receive a majority of votes cast in the election. The "no" must be filled with a "brief phrase" that describes how the status quo will be maintained should the measure not receive a majority of votes. For a citizen referendum, a "yes" vote has the effect of approving the enactment passed by the Legislature and allowing the bill to go into effect, whereas a "no" vote essentially constitutes a citizens' veto and prevents the bill from going into effect.

Below the ballot measure analysis, the officer in charge of elections must print the words "yes" and "no" for the voter to mark their selection on the ballot.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

For statewide ballot measures, the heading, official title, descriptive title, and "yes/no" analysis are drafted by the Secretary of State and approved by the Attorney General before being provided to the officer in charge of elections for printing on the ballot. For local ballot measures, the local jurisdiction is responsible for drafting the heading, official title, descriptive title, and "yes/no" analysis.

A.R.S. § 19-125(C)-(D); A.R.S. § 19-141.

**ii.    Condensed Summary of the Measure**

In lieu of printing the full standard summary of a measure that includes the official title and descriptive title, the officer in charge of elections may print an alternative summary on the ballot that contains the following information below the proposition number:

1.  One of the following methods of designating the measure in the ballot header:

    •  The standard header, as prescribed for the standard summary above:

        -  Constitutional Initiative: "Proposed Amendment to the Constitution by the Initiative"

        -  Constitutional Referral: "Proposed Amendment to the Constitution by the Legislature"

        -  Statutory Initiative: "Proposed by Initiative Petition"

        -  Statutory Referral: "Referred to the People by the Legislature"

        -  Citizen Referendum: "Referendum Ordered by Petition of the People"; ***or***

    •  The word "Proposition," "Question," or "Charter Amendment" (as applicable), followed by the phrase "relating to _____" and inserting the subject matter of the measure;

2.  One of the following methods of explaining the effect of the measure:

    •  An analysis of the potential effect of a "yes" or "no" vote on the measure as prescribed for the standard summary above; or

    •  The full text of the measure;[40]

3.  The words "yes" and "no" for the voter to mark their selection on the ballot; and

4.  Instructions that direct the voter to the official title, descriptive title, and full text of the measure as printed on the sample ballot and posted in the voting location.

A.R.S. § 16-502(M); A.R.S. § 19-125(E); A.R.S. § 16-502(N); A.R.S. § 19-125(F).

---

[40] The full text of the measure need not be printed on the ballot itself, but may be printed on a separate insert (a "tablecloth") that accompanies the sample ballot. The full text must be made available at each voting location as well. A.R.S. § 16-502(N); A.R.S. § 19-125(F).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

In other words, this alternative summary allows the officer in charge of elections flexibility to omit the official title, descriptive title, and full text of the measure from the official ballot due to space limitations.

The alternative heading and "yes/no" analysis are drafted by the Secretary of State and approved by the Attorney General before being provided to the officer in charge of elections for printing on the ballot. A.R.S. § 19-125(D).

## B. Proofing Ballots

The officer in charge of elections must proof the official ballot (in all languages and in all formats, including ballots displayed and spoken in accessible voting equipment) prior to distributing the ballots for voting purposes.

## C. Sending Ballot Proofs to Candidates and Political Parties

At least 45 days before a primary or general election (unless a shorter time is available due to the pendency of a lawsuit), the officer in charge of elections should send a proof of the official ballot to:

- Each candidate (or candidate's agent) who will appear on the ballot; and
- The county chairperson of each recognized political party that will have at least one candidate on the ballot.

By statute, the officer in charge of elections must send a proof of the official ballot at least 45 days before a primary or general election. A.R.S. § 16-461(A)(2)-(3); A.R.S. § 16-510(A). Despite the 45-day statutory requirement, however, officers in charge of elections are encouraged to send ballot proofs at least 60-days before a primary or general election to allow sufficient time to make changes to the ballot before the UOCAVA mailing deadline. *See* Chapter 2, Section I(D).

The officer in charge of elections may send the ballot proof by mail, email, or any other method of delivery. The candidate/candidate's agent and/or county chairperson must inform the officer in charge of elections of any errors or omissions in the ballot proof within five calendar days after receipt. A.R.S. § 16-461(B).

## D. Financial Responsibility for Printing Ballots

Official ballots used in federal, statewide, legislative, and county elections must be printed at county expense. Expenses for ballots used in city, town, or special taxing district elections must be borne by the applicable city, town, or special taxing district. A.R.S. § 16-503(B)-(C).

For ballots that contain races from multiple jurisdictions, the officer in charge of elections may contract with a city, town, or special taxing district to reimburse the county for the proportional amount of printing expenses.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## E. Storage and Security of Ballots

The officer in charge of elections must implement security procedures to ensure that official ballots are properly secured prior to distribution to voting locations.

For security reasons, official ballots:

1. Must be inventoried upon receipt and prior to distribution to voting locations;

2. May be accessed by elections staff only to the extent necessary to perform their authorized task;

3. Must be stored in a locked, secured location that prevents unauthorized access;

   - Access to ballots must be authorized by the officer in charge of elections. Access to the ballot storage location (the outer access area, not each individual cage or storage unit) must be documented with a written log or with electronic keycard access that indicates the date, time, and identity of the person accessing the ballots. The electronic log for key card access must be accessible but need not be printed out.

4. Must be witnessed by two or more election staff members (of different political parties if possible) when being moved or transferred, which includes an inventory of the ballots before and after the move or transfer.

The officer in charge of elections shall also implement reasonable security procedures for auditing and accountability of blank ballot stock for use with on-demand printers.

## F. Sample Ballots

The officer in charge of elections must prepare sample ballots for each primary and general election. A.R.S. § 16-461(A); A.R.S. § 16-510. A sample ballot provides voters who intend to vote in-person on Election Day advanced notice of the candidates and issues that will appear on their ballot.

### 1. Preparing Sample Ballots

Sample ballots:

- May be printed on a single page or multiple pages;

- May not indicate the name or identity of any public official who prepared the sample ballot or to whom the sample ballot must be returned; A.R.S. § 16-461(F);[41]

- Must be imprinted with the Great Seal of the State of Arizona for elections involving a federal, statewide, or legislative candidate or statewide ballot measure; alternatively, the seal of the appropriate county, city or town (whichever corresponds to the highest-level

---

[41] The public official's name may only appear in the candidate section of the ballot, if applicable.

jurisdiction with a candidate or measure on the ballot) may be imprinted in lieu of the state seal; A.R.S. § 16-461(G); and

- Must include the following warning in a conspicuous location on the ballot: "This is a sample ballot and cannot be used as an official ballot under any circumstances." A.R.S. § 16-461(D).

Primary election sample ballots are subject to additional requirements, as they must be printed with a different color (or contain a distinctive color indicator) that corresponds to the recognized political party appearing on that ballot. A.R.S. § 16-468(2). Sample ballots to be mailed to voters who are not registered with a recognized political party:

- May contain all political party candidates on the same sample ballot; and

- May be printed in alternative paper formats that do not conform to the same size as an official ballot, including a reduced size ballot. A.R.S. § 16-461(B).

For a general election involving a ballot measure, the officer in charge of elections must print the official title and descriptive title on the ballot and include the full text of the measure with any mailing. The full text of the measure need not be printed on the ballot itself, but may be printed on a separate insert (a "tablecloth") that accompanies the sample ballot. A.R.S. § 16-502(N); A.R.S. § 19-125(F).

Ballots should be prepared in sufficient time for proofs to be transmitted to candidates at least 45 days before the election. For primary elections, the officer in charge of elections must transmit the ballot proofs to political parties as well. A.R.S. § 16-461(A). If a county conducts an election on behalf of a local jurisdiction, the officer in charge of elections may transmit the ballot proofs to the local filing officer, who in turn must forward the proofs to the applicable candidates for approval.

## 2. Printing and Mailing Official Sample Ballots to Households

At least 11 days before a primary or general election (except for all ballot-by-mail elections), the County Board of Supervisors is responsible for printing and mailing a sample ballot to each household containing at least one active registered voter who is not on PEVL. A.R.S. § 16-461(D); A.R.S. § 16-510(C); *see also* A.R.S. § 16-193(2). The Board of Supervisors may delegate this responsibility to the County Recorder or other officer in charge of elections.

The sample ballot mailing:

- Must contain the appropriate sample ballot or ballots that correspond to the political party preference of the eligible voters in the household (for primary elections only);

- Must contain the words "Official Voting Materials" on the outgoing envelope or mailer face mailed to voters, A.R.S. § 16-461(G);

- Must include the list of acceptable forms of identification to vote at a voting location pursuant to A.R.S. § 16-579(A)(1); and

- Must contain the statement (for assigned polling place elections only): "Have you moved? You MUST go to the polling place designated for your CURRENT RESIDENCE ADDRESS. If you go to the WRONG polling place, your (provisional) ballot will NOT COUNT."

### 3. Sample Ballots at Voting Locations

The Board of Supervisors is responsible for printing and distributing at least two official sample ballots of each ballot style for use at polling places during the primary and general election. A.R.S. § 16-510(B). The sample ballots must correspond to the appropriate official ballots for the polling place and be contained in the precinct supplies for that location. The Board of Supervisors may delegate this responsibility to the officer in charge of elections.

Sample ballots need not be provided to vote centers if the vote center is able to print sample ballots upon request.

The officer in charge of elections must make the sample ballots available in plain view or post a notice at voting locations that sample ballots are available upon request. A.R.S. § 16-461(B).

### 4. Financial Responsibility for Preparing and Mailing Sample Ballots

The Board of Supervisors shall seek reimbursement from the Secretary of State for each sample ballot mailed to a county household. A.R.S. § 16-510(C). *See* Chapter 12, Section IV(C).

## VI.   LANGUAGE MINORITY VOTING MATERIALS

After the U.S. Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529 (2013), the State of Arizona is no longer a covered jurisdiction required to provide all voting materials in Spanish under the federal Voting Rights Act, Sections 4(b), 4(f)(3), and 4(f)(4). Nonetheless, counties and other political subdivisions are strongly encouraged to continue to provide voting materials in Spanish, as well as other languages previously required in the county.

The following counties are currently independently covered under Section 203 of the Voting Rights Act and therefore have an obligation to print (in the case of written languages) and/or provide (in the case of oral languages) voting materials in additional languages for the following language minority groups:

- Apache County: Navajo
- Coconino County: Navajo
- Gila County: Apache
- Graham County: Apache
- Maricopa County: Spanish
- Navajo County: Navajo

- Pima County: Spanish
- Pinal County: Apache
- Santa Cruz County: Spanish
- Yuma County: Spanish

Voting Rights Act Amendments of 2006, Determinations Under Section 203, 81 FR 87532-01 (Dec. 5, 2016), *available at* https://www.gpo.gov/fdsys/pkg/FR-2016-12-05/pdf/2016-28969.pdf.

A covered jurisdiction must determine which language, forms of languages, or dialects will be effective in meeting the requirements of the Voting Rights Act. 28 C.F.R. § 55.11.

The following sections describe the minority language requirements in greater detail.

## A. Voting Materials Required To Be in Minority Language(s)

If a covered jurisdiction is required to provide language assistance, all materials distributed to (or provided for the benefit of) voters must be printed in the required language(s), 28 C.F.R. § 55.19(a), including:

- Registration and voting notices;
- Forms;
- Instructions;
- In-person assistance;
- Ballots (including accessible ballots and the accompanying audio translation); and
- Any other materials or information relating to the electoral process. 28 C.F.R. § 55.15.

A covered jurisdiction may attempt to use cost effective methods of compliance if they are equivalent in their effectiveness to more costly methods. 28 C.F.R. § 55.16. This may include implementing a system that provides translated voting materials to fewer than all registered voters, as long as the system is designed and implemented in a way that ensures language minority group members who need translated materials and assistance can receive them. 28 C.F.R. § 55.17.

Where the language of the applicable minority group is oral or unwritten, the covered jurisdiction is only required to provide oral instructions, assistance, or other information relating to registration and voting in the covered language. 52 U.S.C. § 10503(c).

## B. Types of Elections Requiring Minority Language Voting Materials

A covered jurisdiction must provide voting materials in the required language(s) for all elections within the covered jurisdiction, including the elections of each municipality, school district, or special taxing district within the covered jurisdiction. 28 C.F.R. § 55.10(a)-(b); 28 C.F.R. § 55.9.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

For offices that cross county lines, language minority voting material requirements are to be applied on a county-by-county basis. Accordingly, if an individual county is not a covered jurisdiction, that county does not need to provide bilingual voting materials. 28 C.F.R. § 55.10(c).

## VII.   PREPARATION OF SIGNATURE ROSTERS AND E-POLLBOOKS

Prior to a statewide primary or general election, the County Recorder must prepare paper signature rosters and precinct registers or e-pollbook data and distribute the rosters/data to the officer in charge of elections for use at each voting location on Election Day. A.R.S. § 16-168(A)-(B); A.R.S. § 16-169(A); A.R.S. § 16-583(A). A signature roster or e-pollbook serves as the official list of eligible voters (other than secured voters) for a particular voting location or election.[42]

If a County Recorder uses paper signature rosters, the rosters must be bound with a suitable cover and bear the title "signature roster _____ precinct, ____ county, Arizona" (if used in assigned polling place-assigned). The cover must contain the following affidavit for the inspector to sign:

> "I, _____, inspector of the board of election of _____ precinct, _____ county, Arizona hereby certify that the foregoing (excepting signatures in red) are true and correct signatures of all electors who voted in precinct on _____.
>
> (date)
>
> (inspector)"

A.R.S. § 16-169(B). An e-pollbook must be accompanied by an affidavit (equivalent to that specified for paper rosters) to be signed by the inspector on Election Day. A.R.S. § 16-169(C).

The County Recorder or other officer in charge of elections must have a back-up solution, such as a printed roster or other contingency plan, in case the e-pollbooks do not properly function on Election Day. A.R.S. § 16-571(C). The County Recorder or other officer in charge of elections must also implement cybersecurity protocols to ensure the integrity of e-pollbook data when e-pollbooks are electronically connected to county systems. *See* Chapter 4, Section III(B).

A County Recorder should ensure the signature roster or e-pollbook contains the most up-to-date information prior to printing or distribution. In particular, a County Recorder should check the DHS SAVE database to confirm eligibility for any registrant who submitted an Alien Registration Number, Naturalization Certificate Number, or Citizenship Certificate Number as proof of citizenship. *See* Chapter 1, Section II(A)(6). If time permits, the County Recorder should be prepared to print a supplement to the signature roster or conduct a last-minute upload to the e-

---

[42] For purposes of this Section, an e-pollbook includes a system whereby electronic tablets or computers are uploaded with voter registration data or are connected to a live voter registration database via a secure virtual private network (VPN) connection.

pollbooks. In cases where the roster or e-pollbook cannot be timely updated, the County Recorder may issue a Recorder's Certificate to any affected registrants. *See* Chapter 1, Section II.

A signature roster or e-pollbook must contain the following information:

1. Name;

2. Residence address;

3. Registration date and status (active/inactive); and

4. Party preference or registered party.

5. Roster number, numbered consecutively (paper signature roster only);

6. Mailing address (if different than residence address);

7. Signature block (an early ballot affidavit may serve as the signature block when conducting on-site early voting or a ballot-by-mail election);

8. "Federal-only" voter designation (if applicable);

9. Indicator if voter requested, received, or returned an early ballot, as applicable;

A signature roster or e-pollbook must also contain the following information, if practicable:[43]

1. Birth year;

2. Ballot type/style, including political party ballot selected in a partisan primary;

3. Voter ID number;

4. Barcode (paper signature rosters only);

5. A standardized oath that poll workers obtained valid proof of identity from every voter, or if identification was not presented, the provisional ballot envelope was marked appropriately.

A signature roster or e-pollbook may not contain secured registrants' information. If a county uses a tablet or computer terminal that has live access to the voter registration database via a secure virtual private network (VPN) connection, the system must be capable of shielding secured registrants' information from public view (or providing view access only to the secured registrant). *See* Chapter 4, Section III.

For paper rosters, additional pages for inactive voters and voters who voted a provisional ballot must be included in any signature roster (either attached to the back of the roster, in a separate

---

[43] Additional data, such as full dates of birth, may be transmitted to e-pollbook vendors to facilitate e-pollbook functionality provided the following requirements are met: (i) only data required for e-pollbook functionality shall be transmitted to e-pollbook vendors; (ii) the data shall be transmitted using secure methods, such as encryption or secure website or SFTP; (iii) the County Recorder or officer in charge of elections shall exercise best efforts to protect the confidentiality of registrant data transferred to vendors, including requiring the vendor to agree to reasonable confidentiality terms; and (iv) the vendor shall securely dispose of the transmitted data after it is no longer needed for the election at issue.

roster, or identified within the roster). If inactive voters are comingled with active voters on the signature roster, the inactive voters must be clearly identified and the officer in charge of elections must have the ability to identify and/or extract the inactive voter information after the election to update the voter registration record. For provisional ballot voters, the roster must be numbered consecutively starting with "V-1," "V-2," etc. A.R.S. § 16-584(E). E-pollbooks must also contain inactive voters and have a means of indicating which voters voted a provisional ballot.

## VIII.   PREPARATION OF VOTING SUPPLIES

### A. Materials to Be Distributed to Voting Locations

The following items should be included among supplies distributed to voting locations, as applicable:

1. Election board worker supplies:

   - Board workers' checklists;

   - Signature rosters, poll lists, and precinct registers (if paper signature rosters are utilized);

   - Challenge lists or forms;

   - Sample ballots (for assigned polling place elections), *see* Chapter 8, Section V(F);

   - Relevant election laws and training guides;

   - Provisional ballot envelopes or affidavits (*see* Section VIII(B) below);

   - Provisional ballot roster;

   - Ballot box keys; and

   - Demonstration ballots (ballots that contain marking instructions)

2. Signs:

   - Arrows;

   - "Vote Here" signs;

   - "Instructions to Voters" notice, *see* Chapter 9, Section I(A);

   - "Right to Vote a Provisional Ballot" notice, *see* Chapter 9, Section I(A);

   - "Handicap Parking" signs (if no permanent signs are available);

   - "Curbside Voting Available" signs (as needed); and

   - Write-in candidate notice, *see* Chapter 9, Section I(A).

3. Supply Bag:

   - Voting equipment manuals (if applicable);

   - Pens and/or pencils;

- A method for measuring the 75-foot limit;

- Masking tape; and

- "I Voted" stickers (if available);

4. Official returns envelope;

- Upon completion of the election, the official returns envelope must contain any spoiled ballots, a copy of the signature roster (paper jurisdictions only), and the challenge list/forms (if applicable). The envelope must be sealed with a pressure-sensitive label, and the inspector and judges are required to sign across the seal and onto the envelope. A.R.S. § 16-615. If the voting location has a tabulation machine, the official returns envelope should also contain a copy of the results tape from the tabulation machine, printed immediately after the close of the polls.

5. Unofficial returns envelope (if necessary);

- By statute, upon completion of the election, the unofficial returns envelope must contain completed payroll vouchers and any other items directed by the officer in charge of elections. The unofficial returns must be made available for inspection for six months after the election. A.R.S. § 16-616; A.R.S. § 16-551(D). However, the use of e-pollbooks or other technology may render an unofficial returns envelope unnecessary if the technology electronically captures all the required information.

6. Payroll supplies:

- Payroll voucher

7. Miscellaneous supplies:

- ADA temporary equipment, including ramps, door props, door handles, etc. (as needed);

- Magnifying sheets that may be used to magnify the text on a ballot;

- Precinct map (assigned polling place elections only);

  - In assigned polling place elections, a poll worker may use the map to assist the voter in locating the correct polling place, but may also use an e-pollbook to identify the correct precinct or provide contact information (phone number or website) for the voter to contact the elections department or County Recorder's office. Alternatively, the poll worker may offer the option to vote a provisional ballot using the accessible voting equipment if the equipment is capable of displaying all ballot styles.

- U.S. flag & stand;

- Badges / name tags;

- Secrecy sleeves that may be used to protect the secrecy of the voter's choices when carrying the ballot in the voting location;

- Ballot boxes with seals;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Voting equipment, including e-pollbooks with seals, accessible voting equipment with seals, and tabulation equipment with seals (if applicable); and

- Voting booths, including voting booths that are accessible for voters with a disability;

8. Ballots of each required ballot style or blank ballot stock.

### B. Provisional Ballot Envelope and Affidavit

A voted provisional ballot must be placed and sealed in a provisional ballot envelope. A provisional ballot envelope must have affixed to it an affidavit for the voter to complete and provide the following information:

1. First and last name;

2. Current residence address;

3. Current mailing address;

4. Former name, if any;

5. Former residence address, if any;

6. Date of birth;

7. Telephone number;

8. AZDL/ID# or SSN4;

9. Date (if necessary); and

10. A signature attesting to the following statement:

> "I swear or affirm under penalty of perjury that the above information is correct, that I have resided in the precinct and/or district at least 29 days before the election, that I am eligible to vote in this election and that I have not previously voted in this election.
>
> I know that my provisional ballot will only be counted if I have voted in the correct precinct, which is based on where I currently live. **I understand that voting in the wrong precinct or county means that my ballot will not be counted**."

Counties may exhaust existing provisional ballot envelopes or affidavits before printing envelopes or affidavits with the updated language. Elections conducted through vote centers are exempt from utilizing the statement applicable to out-of-precinct voting. Counties may also capture this information and statements electronically, but the voter must sign the affidavit envelope.

The provisional ballot envelope or affidavit also must contain the following information for the poll worker to complete:

1. The reason why the voter was issued a provisional ballot;

2. An indication of whether the voter presented proper or insufficient identification;

3. Provisional ballot affidavit number;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- The provisional ballot envelope should contain a tear-off stub for the voter to retain or the voter should be provided a provisional ballot receipt. Both the envelope affidavit and the receipt or tear-off stub should have matching provisional ballot affidavit numbers.

4. Precinct number or voting location;

5. Type of party ballot issued, if applicable;

6. An indication of whether the ballot is a "federal-only" ballot; and

7. The poll worker's signature.

The provisional ballot envelope may contain an "Official Use Only" section for County Recorder use, which may include (but is not limited to) the following information:

1. Voter ID number;

2. Type of ID provided;

3. Recorder staff member who processed provisional ballot;

4. Whether ballot was counted or not counted; and

5. Reason for rejection, if applicable.

## IX.   IMPLEMENTING A WAIT TIME REDUCTION PLAN

"Wait time" is defined as the duration of time from when the voter arrives in line to the time the voter is provided a ballot or access to an accessible voting equipment to vote a regular ballot.

The officer in charge of elections must establish and approve a specific wait time reduction plan for each election to ensure that voters do not have to wait in lines at the voting location for more than 30 minutes. The factors outlined in the following sections are not exclusive. *See* A.R.S. § 16-411(J).

### A. Projecting Voter Turnout

The officer in charge of elections must project voter turnout at each voting location prior to the election to assure the location is adequately staffed and equipped to meet voter demand.

The officer in charge of elections should take into account the following information to project voter turnout:

1. The percentage of voter turnout from the prior two elections of a similar type;

2. The number of ballots (including regular, early, and provisional) cast in the prior two elections of a similar type, A.R.S. § 16-411(J)(1);

3. The number of registered voters, both active and inactive, A.R.S. § 16-411(J)(3);

4. The number of registered voters who requested an early ballot or are on the permanent early voting list, A.R.S. § 16-411(J)(2); and

5.  The potential number of ineligible voters that could attempt to vote, especially during a PPE.

### B.  Re-Precincting

If excessive wait times are likely to occur at a particular polling place, whether based on population growth or any other reason, the officer in charge of elections must consider redrawing precinct boundaries to reduce the likelihood of this possibility. A.R.S. § 16-411(J). This decision should be made well in advance of the election.

To determine whether recent or projected population growth warrants re-precincting, the officer in charge of elections should consider:

-   The year-over-year growth in registered voters in the precinct; and/or
-   The potential for future construction or land development in the precinct (based on information obtained from the county assessor, city clerk, or town clerk).

If the officer in charge of election concludes that precinct size would have an adverse impact on Election Day wait times, the officer should recommend redrawing the precinct in order to better allocate voters. In that case, the County Recorder must also transfer the affected voters into their newly-designated precinct.

The County Recorder must mail a new voter registration card to each affected voter, which satisfies the requirement to mail a notice of the precinct change. A.R.S. § 16-412.[44]

The Board of Supervisors must approve all precinct lines by October 1 of an odd-numbered year. A.R.S. § 16-411(A). The new precinct boundaries become effective on January 2 of the year of the general election. A.R.S. § 16-412. By January 2 of the following year, the officer in charge of elections must ensure all relevant maps and legal descriptions have been updated with the new precinct lines, voter registration records are updated, and new voter registration cards (with updated precincts) are issued to all affected voters. A.R.S. § 16-412.

### C.  Staffing and Supplying Voting Locations

The officer in charge of elections should deploy additional resources at voting locations where projected turnout (including both eligible and ineligible voters) is expected to exceed normal levels.

The officer in charge of elections should:

1.  Determine the optimal number of poll workers, based on:

-   The projected time to check-in a voter and seek proof of identity;

---

[44] The statute provides an exception if a sample ballot containing voters' newly-designated precinct name or number is mailed prior to the next primary election. *See* A.R.S. § 16-412.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- The projected time involved in use of accessible voting devices;

- The number of voters likely to cast provisional ballots;

- The number of independent voters who may seek to vote (if conducting a PPE); and

- Any increased or unusual level of interest in the election.

2. Determine the proper number of signature rosters/e-pollbooks and voting equipment in order to keep up with demand;

3. Recruit additional poll workers who will be assigned or remain in reserve on Election Day, including recruitment of students and other county workers;

4. Conduct additional training for poll workers (including premium poll workers) assigned to high volume precincts;

5. Ensure proper signage at all polling locations, including signs that will educate voters in line about how to proceed through the voting process efficiently;

6. Determine the number of bilingual poll workers needed for each voting location;

7. Empower the inspector to request additional poll workers and, in exceptional cases, recruit poll workers from the line with permission of the officer in charge of elections;

8. Ensure the inspector is prepared to shift personnel, redistribute responsibilities, reorganize the voting location, or make any other changes that will facilitate efficiency and reduce wait times;

9. Assign troubleshooters or equivalent staff who are capable of reaching any voting location within 30 minutes of being dispatched (if geographically feasible); and

10. Ensure troubleshooters or equivalent staff have made prior contact with each inspector they oversee on Election Day, including a discussion about voting location layout and contingency plans.

### D. Conducting Voter Education

The officer in charge of elections must educate voters by disseminating information that may help reduce wait times on Election Day, including, but not limited to, information on the following topics:

1. Voters must present a valid identification;

2. Voters' registration must be up-to-date;

3. Voters may only vote at their designated polling place based on their current address (assigned polling place elections only);

4. Peak voting times compared to times when wait times are likely shorter;

5. Information about any websites, phone apps, or other technology that facilitate the voting process or provide voter education;

6.   Encourage voters to bring their sample ballots to the polls with selections already marked to help accelerate their voting process; and

7.   Early voting and permanent early voting options.

Much of this information must be reported in the county's voter education report. *See* Chapter 13, Section II.

## E.  Developing Contingency Plans

The officer in charge of elections must have a contingency plan ready to implement if wait times consistently or significantly exceed 30 minutes. The contingency plan must include, but need not be limited to, the following:

1.   A transfer plan for poll workers to move from a less busy location or from a reserve staging area;

2.   A plan to open alternate voting locations (including a plan to educate voters about the new location);

3.   A plan to add additional e-pollbooks (if used in the county);

4.   A plan to add voting/secrecy booths; and

5.   A plan to add accessible voting equipment.

To the extent practicable, a plan for implementing back-up paper systems should be available in case of electronic equipment failure or loss of power.

The marshal will monitor the voter wait time at a polling place, and must inform the inspector (who must, in turn, contact the officer in charge of elections) when the wait time reaches 20 minutes or more.

## F.  Emergency Procedures

The ballot box shall not be removed from the voting location or presence of bystanders until all ballots are counted, nor opened until after the polls are finally closed unless an emergency renders the polling place unusable to the point where it can no longer function as a polling place because law enforcement or other emergency personnel have ordered the polling place to be evacuated or

as determined by the officer in charge of elections to allow voting to continue while awaiting an evacuation order. The following procedures shall be followed in the event of an emergency:

- If the locked ballot box must be removed from the polling place due to an emergency, at least two members of the election board, not members of the same political party, shall accompany the box to a new polling place designated by the officer in charge of elections.

- If practical and available, a law enforcement officer shall aid in the transfer of the ballot box.

- If two members of the election board are not available to transfer the ballot box, one member of the election board and one law enforcement officer may accompany the box to the new polling place.

- Two additional board members shall verify whether the ballot box arrived at the new polling place and that it was not opened or damaged.

- All election board members who accompanied the locked ballot box to the new location and the one or two board members who verified the box's arrival shall file a report with the officer in charge of elections that describes the actions taken by the board members. This report shall be filed on the day of the emergency.

- On the day of the emergency in which the ballot box was moved, all election board members who aided in the transfer and verification of the locked ballot box shall indicate on official documents containing their oath whether they witnessed the transfer of the box and whether the box remained locked.

A.R.S. § 16-564(A)-(E), (G).

## G. Ballot Box Overflow Procedures

If during the course of an election the ballot box can no longer accommodate additional ballots, the officer in charge of elections shall dispatch an additional ballot box to the appropriate voting location. The full ballot box shall remain locked until closing of the polls. If a tabulation unit is used, it shall be removed and placed on the additional ballot box or another tabulation unit and ballot box should be dispatched so voting may continue. If another unit is deployed, poll workers must first run zero tapes and confirm transfer, including checking security seals.

In the event there is no spare ballot box available, the board workers shall remove a sufficient number of ballots from the ballot box and shall place the removed ballots into the case that will be used for the transfer of the ballots to the officer in charge of elections. The inspector and both judges shall oversee the transfer and the following shall apply:

1. The number of removed ballots shall be hand counted immediately by the election board.

2. A written document shall be produced and signed by the board members supervising the count. The written document shall indicate the count and the reason for the removal of ballots.

3. The removed ballots and corresponding documentation shall be placed in the transfer case and shall be kept sealed until the polls are closed.

4. Once the removed ballots are sealed in the transfer case, the original ballot box shall be relocked or sealed and voting may continue.

5. At the close of the polls, the ballots in the locked or sealed ballot box shall be: (i) removed from the ballot box and immediately tabulated; or (ii) maintained in the locked and sealed box and securely transferred to the officer in charge of elections for tabulation. If tabulation occurs after of closing of the polls, the count shall be documented.

6. Ballots should be sealed in ballot boxes or transfer cases with any corresponding documentation while ensuring tabulated ballots are kept separate from un-tabulated ballots.

7. The sealed ballot boxes and/or transfer cases will be transported to the central counting place designated by the officer in charge of elections.

At the close of an election, if the ballot box has been opened, a report detailing those events and other pertinent information shall be made by the officer in charge of elections to the chairpersons of all recognized political parties in that county at their request. A.R.S. § 16-564(F), (G).

### H. Complete Power or Unit Failure/Ballot Emergency Bin

In counties that use polling place tabulation units, any ballots that have been deposited in the emergency bin during a complete power failure or unit failure must be fed through the tabulation unit when polls close and prior to generating the results tape at the end of the day.[45] In addition, the following steps must be completed:

- Using the key provided, at least two board workers not from the same political party shall open the ballot box emergency bin and remove the unprocessed ballots, if any, that were placed in the emergency bin due to a complete power failure or tabulation unit failure.

- The board workers shall feed the unprocessed ballots, one by one, into the tabulation unit, making sure that the digital readout increases by one each time.

- If any ballot that is over-voted or blank is returned, the inspector will use the override procedure to allow the ballot to be scanned.

- After all of the unprocessed ballots have been fed into the tabulation unit, the board workers may proceed with the regular procedures for closing the polls.

- After the polls have closed, any ballot the machine is unable to process or that has been marked but is returned as "unreadable" shall be set aside and sent to the central counting place for duplication.

---

[45] There is no "complete power failure" or "unit failure" if the battery backup remained operative.

### I. Determining Optimal Layout

The officer in charge of elections must determine the optimal layout for each voting location based on voter turnout projections. High volume voting locations should process provisional voters separately from other voters to maintain a continuous flow of voters.

### J. Wait-Time Reduction Survey

In order to test the efficacy of wait time reduction efforts over time, the officer in charge of elections should participate in occasional wait time reduction surveys at the request of (and in collaboration with) the Secretary of State.

### K. Public Input

The officer in charge of elections is encouraged to solicit public feedback on the wait time reduction plan, for example, by posting the proposed plan on the officer's website and soliciting feedback.

## X.   CANCELING AN ELECTION

Certain candidate elections may be canceled if there are equal to or fewer candidates seeking office, including write-in candidates, than the number to elect for a given race.

The following races are eligible for cancellation:

1. Precinct committeeman, A.R.S. § 16-410(A); A.R.S. § 16-822(B);
2. School district governing board member, A.R.S. § 16-410(A); A.R.S. § 15-424(D);
3. Community college district governing board member, A.R.S. § 16-410(A); and
4. Any special taxing district board member, A.R.S. § 16-410(A); A.R.S. § 48-5503(C).

If a candidate race qualifies for cancellation, the applicable Board of Supervisors may cancel the election no earlier than 75 days before Election Day, appoint to the office those candidates who had timely filed a nomination paper for the office, and issue a certificate of election to the candidate. A.R.S. § 16-410(A)-(B).

After approval of the Board of Supervisors to cancel the election, the officer in charge of elections must omit the race in question from the ballot. If the cancellation occurs after the ballots have been printed, the canceled race must not be canvassed. A.R.S. § 16-410(D).

If no candidates filed nomination papers for the office in question, the Board of Supervisors may cancel the election no earlier than 75 days before Election Day, declare the office vacant, and initiate procedures to fill the vacancy. A.R.S. § 16-410(C).

# CHAPTER 9:
# CONDUCT OF ELECTIONS/ELECTION DAY OPERATIONS

## I.    SETTING UP THE VOTING LOCATION

Upon arriving at the voting location (either on Election Day or the day prior to the election), the election board (at the direction of the officer in charge of the election) must:

1. Ensure that any accessible voting device is set up, including any key pad and headset;

2. Post the following documents or notices (1) in plain view in the room where ballots will be cast and (2) in at least one other conspicuous place in and around the polling place:

   • Sample ballots that correspond to the candidates/measures that will appear on the ballot (for precinct-assigned polling places), A.R.S. § 16-510(B); A.R.S. § 16-563(1);

   • "Instructions to Voters and Election Officers" (*see* Chapter 9, Section I(A)(1) below);

   • A notice of voters' "Right to Vote a Provisional Ballot" (*see* Chapter 9, Section I(A)(2) below);

3. Unless the same information is printed on the sample ballot, place a card or poster in each voting booth that contains a "Notice to Voters" in large plain type (*see* Chapter 9, Section I(A)(3) below);

4. Post a list of official write-in candidates in a conspicuous location within the voting location, if applicable, A.R.S. § 16-312(E);

5. Post a list of candidate withdrawals or vacancies in a conspicuous location within the voting location (if applicable), including a notice stating that any votes cast for the candidate will not be tabulated unless the withdrawal or vacancy was due to death or incapacity, A.R.S. § 16-343(F)-(G);[46]

6. Display the United States flag, A.R.S. § 16-512;

7. Arrange voting booths in view of the election board, A.R.S. § 16-562(A);

8. Arrange the signature roster, e-pollbook(s), or other check-in devices for convenient access;

9. Prepare ballot boxes:

   • Open and examine the ballot boxes to ensure the boxes are empty prior to voting, secure the ballot boxes; and arrange the ballot boxes in view of the election board. A.R.S. § 16-564(A).

---

[46] The notice must also be posted at all on-site early voting locations. *See* Chapter 2, Section II(A).

- Confirm placement of the early ballot drop-off container (if separate boxes/containers are used);

10. Inventory the ballots received from the elections department, including ballot stock;

   - If the officer in charge of elections determines it is not feasible to inventory ballot stock at the voting location, the officer in charge of elections must implement a reasonable alternative method to ensure accountability of ballot stock.

11. Set up tabulation equipment (if applicable) and accessible voting equipment near an electrical outlet in plain view of the election board and the voters.

   - Ensure that electrical cords do not present a hazard to the board workers or voters;

   - For the tabulation equipment, plug in the voting equipment and obtain a zero count following procedures in Chapter 4, Section II(D)(4); and

   - Ensure that all tamper resistant or tamper evident seals are intact, contain the correct assigned number, and have not been tampered with.

12. Establish the 75-foot limit by posting at least three "75-foot limit" signs:

   - The signs must have the heading "75-foot limit" printed in letters at least 2 inches high; and

   - Have the following statement printed below the heading:

     > "No person shall be allowed to remain inside these limits while the polls are open, except for the purpose of voting, and except the election officials, one representative at any one time of each political party represented on the ballot who has been appointed by the county chairperson of such political party, and the challengers allowed by law. Voters having cast their ballots shall at once retire without the seventy-five foot limit. A person violating any provision of this notice is guilty of a class 2 misdemeanor."

     A.R.S. § 16-515(B).

All signs and notices required under this Section must be printed in English and any other language required in the county under the Voting Rights Act.

## A. Notices to Be Posted at the Voting Location

### 1. Instructions to Voters and Election Officers

The "Instructions to Voters and Election Officers" notice must be displayed at the voting location, containing substantially the following information:

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

---

**Instructions to Voters and Election Officers**

1. The polls are open from 6:00 a.m. until 7:00 p.m.

2. Please give your full name, place of residence, and identification documents to the election officer. The election officer will determine which type of ballot you will use to cast your vote.

3. Once you have received your ballot, go to the next available voting booth to cast your vote. Mark your ballot in the appropriate place next to the name of each candidate for whom you want to vote.

4. If you want to vote for a person who is an official write-in candidate, write that person's name on the lines provided and mark the ballot in the appropriate place next to the name you have written.

5. Ask for assistance if you need assistance marking your ballot or wish to utilize the accessible voting equipment. If you request assistance marking your paper ballot, two election officers from opposing political parties will accompany you to the voting booth. They will:

   • Read you the names of all candidates for each office on the ballot;

   • Read you the political parties by which the candidates were nominated for each office;

   • Ask the name of the candidates for whom you want to cast your vote; and

   • Mark your ballot correctly.

   Neither of the election officers who assist you with your vote is allowed to influence your vote by recommending, explaining, or suggesting any candidate or political party for any office or issue.

6. If you accidentally spoil your ballot, present it to the election judge. Make sure to conceal any votes you have made on the ballot. Either you or the judge will need to mark the ballot as spoiled, and the judge will give you another ballot on which to cast your vote. You are allowed to use no more than three ballots.

If you believe that a violation of the Help America Vote Act of 2002 has occurred, you may contact:

<div align="center">

Secretary of State's Division of Election Services
1700 West Washington Street 7th Floor
Phoenix, AZ 85007
1-877-THE VOTE
www.azsos.gov

</div>

---

A.R.S. § 16-513; A.R.S. § 16-563(1).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### 2. Right to Vote a Provisional Ballot

The "Right to Vote a Provisional Ballot" notice must be displayed at the voting location, containing substantially the following information:

---

**Right to Vote a Provisional Ballot**

1. If you did not receive a regular ballot, you have a right to vote a provisional ballot if one of the following situations applies to you:

   - Your name does not appear on the signature roster or e-pollbook, and you are in the correct polling place based on your current residence;

   - You have moved to a new address within the county and have not updated your voter registration (if applicable);

   - You have legally changed your name and have not updated your voter registration (if applicable);

   - You requested an early ballot but did not vote an early ballot (if applicable);

   - You have not produced sufficient identification; or

   - You were challenged as a qualified voter.

2. To vote using a provisional ballot:

   - Present identification to the poll worker and state your first and last name;

   - Provide your complete residence address to the poll worker;

   - Provide your signature next to your name after the election official enters your name on the signature roster; and

   - Sign an affirmation on the provisional ballot envelope stating that the information filled out on the provisional ballot envelope is correct, that you have resided in the precinct at least 29 days before the election, that you are eligible to vote in this election, that you have not previously voted in this election, that your provisional ballot will only be counted if you voted in the correct precinct (which is based on where you currently live), and that you understand that voting in the wrong precinct means that your ballot will not be counted.

Once you have voted using a provisional ballot, your ballot will be placed in a provisional ballot envelope, which you can seal. The poll worker will ensure that the envelope is sealed. You will then be given a provisional ballot receipt with information on how to present sufficient identification to the County Recorder (if necessary) and how to verify the status of your provisional ballot. Your vote will be counted upon verification of your eligibility to vote in the election.

---

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

A.R.S. § 16-513.01; A.R.S. § 16-563(1).

### 3. Notice to Voters

Unless the same information is printed on the sample ballot, a "Notice to Voters" card or poster must be placed in each voting booth (in large, plain type), containing substantially the following information:

<div style="border:1px solid">

**Notice to Voters**

Section one of this ballot is comprised of partisan candidates. To vote for the candidates for the partisan offices, mark the ballot next to the name of the candidate for each partisan office for whom you wish to vote. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided AND put a mark next to the name according to the instructions.

Section two of this ballot is comprised of nonpartisan candidates, potentially including judicial candidates, school district candidates, and initiative or referendum propositions. To vote for the candidates for the nonpartisan offices, mark the ballot opposite the name of the candidate for each nonpartisan office for which you wish to vote. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided AND put a mark next to the name according to the instructions. Mark the ballot by the word 'yes' (or for) for each proposition or question which you wish to be adopted. Mark the ballot by the word 'no' (or against) for each proposition or question which you wish not to be adopted.

When marking a paper ballot the voter shall do so by placing a mark next to the printed name in the designated location or in the square following the name written in.

</div>

A.R.S. § 16-514. Minor alterations have been made to the statutory language to account for modern ballot design.

## II.   OPENING THE VOTING LOCATION

The election board should arrive at the voting location no later than 5:30 a.m. on Election Day to promptly open the polls at 6:00 a.m.

Upon arrival at the polling place, members of the election board must take their oath of office, to be administered by a board member or another qualified elector of the precinct. A.R.S. § 16-534(C); A.R.S. § 38-231(E). If the county utilizes vote centers, the individual administering the oath need only be a qualified elector in the county.

If the voting location contains precinct voting equipment or accessible voting equipment that independently tabulates votes, the election board must generate a "zero report" from the voting

equipment prior to opening the polls. The zero report is intended to confirm that the equipment contains no votes prior to commencement of voting.

To verify a zero report, the election board must:

- Print a zero report from the equipment (the report must remain attached to the voting equipment and not removed until final results have been printed at the close of the polls);

- Verify the correct precinct number on the report (only in counties that conduct assigned polling place elections);

- Compare the zero report to the ballot and sample ballot to ensure the same names appear (only in counties that conduct assigned polling place elections);

- Confirm that no votes have been cast for any candidates or ballot measures;

- Have at least two board members of different political parties sign the zero report prior to opening the polls; and

- Make sure the digital readout on the front of the unit registers zero after the zero report is complete.

The election board may be required to perform other necessary tasks prior to opening the voting location.

At 6:00 a.m., the marshal must announce that the polls are open, and voters will be allowed to enter the voting location. A.R.S. § 16-565.

## III. PRESERVING ORDER AND SECURITY AT THE VOTING LOCATION

### A. Enforcing Electioneering Ban

No electioneering may take place within the 75-foot limit of a voting location. A.R.S. § 16-515(A). Additionally, no electioneering may take place outside the 75-foot limit if it is audible from a location inside the door to the voting location. The 75-foot limit is measured from the main outside entrance of the voting location.

"Electioneering" occurs when a person knowingly, intentionally, and verbally expresses support for, or opposition to, a candidate or ballot measure on the ballot in that election, or a political party with one or more candidates who appear on the ballot in that election, in order to induce or compel another person to vote in a particular manner or to refrain from voting. A.R.S. § 16-515(I).

The electioneering ban applies to the election board, other election officials, political party observers, and any voter within the 75-foot limit.

Though voters or voters' assistants are permitted to wear clothing with political messages, election board members, other election officials, or political party observers may not wear, carry, or display any materials that identify or express support or opposition for a political party, political organization, or a candidate or ballot measure appearing on the ballot. A.R.S. § 16-515(F).

The marshal, under the direction of the officer in charge of elections, enforces the electioneering ban on Election Day, while the County Recorder enforces the ban during in-person early voting and at ballot replacement sites. Law enforcement officials may be contacted to help enforce the ban in exceptional circumstances.

A County Recorder or other officer in charge of elections may grant emergency designations to polling places/vote centers, pursuant to which electioneering is not permitted on the property of the hosting facility, even outside the 75-foot limit. A.R.S. § 16-411(I); *see* Chapter 8, Section I(G).

## B. Enforcing Photography Ban

No photography or video recording is permitted within the 75-foot limit at a voting location. A.R.S. § 16-515(G). There is no exception for members of the media.

A voter, however, may display an image, that was not taken in a voting location, of their own ballot that was received by mail on the internet. A.R.S. § 16-1018(4).

## C. Enforcing Access Restrictions

A key component of preserving order at the voting location is ensuring that only authorized persons are present within the 75-foot limit. Only the following persons are authorized to be present within the 75-foot limit:

1. Members of the election board;
2. Election officials;
3. Voters (including minor children accompanying the voter, A.R.S. § 16-515(E));
   - Once in a voting booth, voters must vote promptly and move outside the 75-foot limit after voting. A.R.S. § 16-515(A); A.R.S. § 16-580(B)-(C).
4. A person selected by the voter to assist him or her voting (*see* Chapter 9, Section V);
5. Authorized political party observers (*see* Chapter 8, Section III); and
6. U.S. Department of Justice or other authorized federal government observers.

Unauthorized persons may not be present within the 75-foot limit, including but not limited to the following persons:

1. Members of the media;
2. Researchers;

3. Persons who conduct exit polls; or

4. Political party or campaign representatives without authorized political party observer status seeking "tear sheets."

   - Tear sheets are copies of the poll list where voters are entered in the order of voting, which are utilized by political parties to identify which persons have and have not voted at a particular voting location. If a county utilizes tear sheets, only authorized political party observers are authorized to acquire the tear sheets. *See* Chapter 8, Section III.

## 1. Simultaneous Activities Permitted at Voting Location

Regular business activity that normally occurs at the voting location may continue on Election Day, as long as the activity does not interfere with the voting process or result in electioneering. For example, a city clerk's office used as a voting location may require persons to cross or temporarily remain within the 75-foot limit in order to conduct city business. Additionally, Native American tribal election boards may be co-located with traditional election boards at the same voting location if a tribal election is held on the same day and time. A.R.S. § 16-515(D).

## D. Preventing Voter Intimidation

Any activity by a person with the intent or effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) inside or outside the 75-foot limit at a voting location is prohibited. A.R.S. § 16-1013. The officer in charge of elections has a responsibility to train poll workers and establish policies to prevent and promptly remedy any instances of voter intimidation.

The officer in charge of elections should publicize and/or implement the following guidelines as applicable:

- The inspector must utilize the marshal to preserve order and remove disruptive persons from the voting location. The inspector and/or marshal must use sound judgment to decide whether to contact law enforcement, and any higher-level decisions should be raised through the officer in charge of elections.

- Persons who witness problems at a voting location should not speak to or accost a voter in an attempt to "enforce" the law, but rather inform the inspector or marshal to allow them to resolve the issue.

- Private citizens are prohibited from bringing weapons into a polling place (including the 75-foot limit), even if the voter is properly licensed to carry such weapons. In order to keep voting locations safe and free of potential intimidation, therefore, observers at voting locations should leave weapons at home or in their vehicles. A.R.S. § 13-3102(A)(11) (exceptions apply for military and peace officers in the performance of official duties, *see* A.R.S. § 13-3102(C)).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

In addition to the potentially intimidating conduct outlined above, the following may also be considered intimidating conduct inside or outside the polling place:

- Aggressive behavior, such as raising one's voice or taunting a voter or poll worker;

- Using threatening, insulting, or offensive language to a voter or poll worker;

- Blocking the entrance to a voting location;

- Disrupting voting lines;

- Intentionally disseminating false or misleading information at a voting location, such as flyers or communications that misstate the date of the election, hours of operation for voting locations, addresses for voting locations, or similar efforts intended to disenfranchise voters;

- Directly confronting or questioning voters in a harassing or intimidating manner;

- Asking voters for "documentation" or other questions that only poll workers should perform;

- Raising repeated frivolous voter challenges to poll workers without any good faith basis, or raising voter challenges solely based on race, ethnicity, national origin, language, religion or disability; or

- Posting signs or communicating messages about penalties for "voter fraud" in a harassing or intimidating manner.

*See* A.R.S. § 16-1013(A); A.R.S. § 16-1017.

## IV.   CHECKING VOTER IDENTIFICATION

Voters are required to prove identity at the voting location before receiving a ballot on Election Day. A.R.S. § 16-579(A). The same requirements for proving identity now also apply during in-person early voting, including at an on-site early voting location, emergency vote center, or through personal early ballot delivery by a special election board. *See* Chapter 2, Sections II(B).

Acceptable forms of identification fall into one of three categories:

- A valid form of photo identification with the voter's photograph, and name and address that reasonably match the name and address in the signature roster or e-pollbook (List 1);

- Two separate valid forms of non-photo identification with the voter's name and address that reasonably match the name and address in the signature roster or e-pollbook (List 2); or

- One valid form of identification with the voter's photograph, name, and address not reasonably matching the address in the signature roster or e-pollbook or a valid U.S. passport or military identification with the voter's name and photograph, *and* one valid form of non-photo identification from List 2 (List 3).

A.R.S. § 16-579(A)(1)(a)-(c). Each list is described in greater detail in the sections below.

The address on the identification must reasonably match the voter's residence or mailing address in the signature roster or e-pollbook in order to vote a regular ballot. If an address does not reasonably match, the voter is deemed to have shown identification, but must vote a provisional ballot. Identification is deemed valid unless it can be determined on its face that it has expired. A.R.S. § 16-579(A)(1).

If the voter provides identification, but the name or address does not reasonably match the signature roster or e-pollbook, the voter should be issued a provisional ballot, not a conditional provisional ballot. *See* Chapter 9, Section VI(B)(1).

A voter who provides no proof of identity (or invalid proof of identity) must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2). In order for a conditional provisional ballot to count, the voter must present an acceptable form of identification to the County Recorder by 5:00 p.m. on the 5th business day following a primary, general, or special election that includes an election for a federal office, or by 5:00 p.m. on the 3rd business day following any other election. A.R.S. § 16-579(A)(2). For the purposes of determining the applicable deadline to provide identification: (i) the PPE is considered a federal election; and (ii) for counties that operate under a four-day workweek, only days on which the applicable county office is open for business are considered "business days."

If the voter identifies himself or herself as a member of a recognized Native American tribe, the voter may present alternative proof of identity as outlined in Chapter 9, Section IV(B) below. A.R.S. § 16-579(A)(1).

The officer in charge of elections must post a list of acceptable forms of identification in a conspicuous place (and make it available to voters upon request) at each voting location on Election Day (*see* sample forms in Chapter 17).

## A. Acceptable Forms of Identification

### 1. List 1 – Photo ID with the Voter's Name and Address

Acceptable forms of identification with the voter's photograph, and name and address that reasonably match the voter's name and address in the signature roster or e-pollbook, include (only one required):

- A valid Arizona driver license;

- A valid Arizona non-operating identification license;

- A tribal enrollment card or other form of tribal identification; or

- Any other valid United States federal, state, or local government-issued identification.[47]

---

[47] While identification issued by a public college or university or other public educational institution qualifies as a state or local government-issued identification, it is not sufficient for voting purposes unless it includes the voter's photograph, name, and address as required by A.R.S. § 16-579(A)(1)(a).

A.R.S. § 16-579(A)(1)(a).

## 2. List 2 – Non-Photo ID with the Voter's Name and Address

A voter may present two separate documents that contain the voter's name and address. Acceptable forms of identification with the voter's name and address include the following:

- A utility bill for electric, gas, water, solid waste, sewer, telephone, cell phone, or cable/satellite television service dated within 90 days of the election;
- A bank or credit union statement dated within 90 days of the election;
- A valid Arizona vehicle registration;
- A valid Indian or Native American census card;
- A property tax statement for the voter's residence;
- A valid tribal enrollment card or other valid form of tribal identification;
- A valid Arizona vehicle insurance card;
- A valid Recorder's Certificate;
- Any mailing marked "Official Election Material," including a valid Arizona voter registration card; or
- Any valid United States federal, state, or local government-issued identification.

A.R.S. § 16-579(A)(1)(b). Any List 2 document may be presented to a poll worker in electronic format, including on a smart phone or tablet.

## 3. List 3 – Acceptable Hybrid Forms of ID

The voter may present certain combinations of documents from Lists 1 and 2. Acceptable combinations include:

- A valid photo identification from List 1 with an address that does not reasonably match the voter's address in the signature roster or e-pollbook, accompanied by a document from List 2 with an address that does reasonably match the voter's address in the signature roster or e-pollbook;
- A valid U.S. Passport or passport card, accompanied by a document from List 2; or
- A valid U.S. Military identification, accompanied by a document from List 2.

A.R.S. § 16-579 (A)(1)(c).

## B. ID Requirements for Native American Voters

A voter who identifies himself or herself as a member of a federally-recognized Native American tribe and presents one item of tribal identification (that does not meet the requirements of List 1)

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

must be issued a provisional ballot (in lieu of a conditional provisional ballot) and does not need to return to confirm their identity. A.R.S. § 16-579(A)(1). A "tribe" includes a Native American nation, community, band, or tribal subdivision.

Acceptable forms of tribal identification include, but are not limited to, the following:

- A tribal identification card issued under the authority of the Bureau of Indian Affairs or a federally-recognized Native American tribe;

- A tribal enrollment card issued under the authority of the Bureau of Indian Affairs or a federally-recognized Native American tribe;

- A Certificate of Indian Blood issued under the authority of the Bureau of Indian Affairs or a federally-recognized Native American tribe;

- A voter identification card issued under the authority of a federally-recognized Native American tribe;

- A home site assignment lease, permit or allotment issued under the authority of the Bureau of Indian Affairs or a federally-recognized Native American tribe; or

- A grazing permit or allotment issued under the authority of the Bureau of Indian Affairs or a federally-recognized Native American tribe.

If the voter does not present an acceptable form of tribal identification and otherwise does not satisfy the identification requirements in A.R.S. § 16-579(A)(1) (*see* Chapter 9, Section IV(A) above), the voter must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2).

## V.    ASSISTING VOTERS ON ELECTION DAY

Voters may be accompanied within the 75-foot limit and assisted by a person of the voter's choice during any part of the voting process.

A voter may request assistance from a third-party (other than the voter's employer or union representative or a candidate appearing on the ballot[48]) or from members of the election board.

If a voter requests assistance from the election board, two members of the board (of different political parties) should perform the following steps, as applicable:

- Jointly accompany the voter into the voting booth or to the accessible voting equipment;

- Audibly read the candidate's names for each office, including party designations and the number to elect;

- Audibly read the relevant information pertaining to any ballot measures;

- Ask the voter what candidates and issues the voter desires to vote for;

---

[48] Candidates for precinct committeeman are permitted to provide voter assistance.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- If requested, instruct the voter how to operate any accessible voting equipment, including what to expect for the recorded instructions and what keys to use to move forward or go back on the screen.

Those assisting a voter upon the voter's request may not attempt to influence a voter in the choice of candidates or issues, nor in any manner suggest or recommend a vote for any particular candidate or issue. *See* Chapter 9, Section I(A)(1) above. When assisting voters, poll workers should also remember to speak only as loudly as needed to assist the voter and protect their privacy as much as possible.

Curbside voting may also be provided to senior citizens or voters with disabilities as a reasonable accommodation or when the county officer in charge of elections determines that a voting location is inaccessible, that no accessible sites are available, and that no temporary measures can make it accessible. *See* Chapter 5, Section III.

## VI.   ISSUING BALLOTS

### A. Issuing a Regular Ballot

Upon checking in at a voting location, a voter must announce his/her name and address or provide their name and residence or mailing address in writing (by presenting proof of identity). A.R.S. § 16-579(A).

In jurisdictions that conduct assigned polling place elections, the residence address must be within the precinct in which the voter is attempting to vote. By signing the signature roster or the e-pollbook signature pad, the voter is deemed to affirm that they are registered in that jurisdiction and is eligible to vote in that jurisdiction. A.R.S. § 16-584(C). If the voter is found in the signature roster or e-pollbook, has presented acceptable proof of identity, and does not fall into an exception listed in Chapter 9, Section VI(B)(1) below, the voter must be issued a regular ballot. *See* A.R.S. § 16-579(C).

Each voter must sign their name in the signature roster or e-pollbook signature pad prior to receiving a ballot. Alternatively, an inspector or judge may sign the roster or e-pollbook for a voter who is personally unable to sign due to physical disability. In jurisdictions that use a paper signature roster, the inspector or judge must write the voter's name with red ink. A.R.S. § 16-579(D). In jurisdictions that use an e-pollbook, the inspector or judge must write the voter's name and the inspector's/judge's initials (on the e-pollbook signature pad) as an attestation. A.R.S. § 16-579(E).

A voter at a special district election for which no signature roster has been supplied may vote a regular ballot, but must provide the voter's name and address in an affidavit and affirm therein that the voter:

- Resides within the district boundaries or proposed district boundaries;
- Is a qualified elector for the election; and

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Has not already voted at the election.

A.R.S. § 16-579(F).

## B. Issuing a Provisional Ballot

### 1. Circumstances Requiring Issuance of a Provisional Ballot

#### a. *Voter Received an Early Ballot*

A voter must be allowed to vote a provisional ballot if the voter appears on the signature roster or e-pollbook as having *received* an early ballot-by-mail, but either: (1) affirms that they have not voted and will not vote the ballot-by-mail; or (2) surrenders the ballot-by-mail to the inspector on Election Day. A.R.S. § 16-579(B).

Voters who appear at a voting location with a ballot-by-mail that has not been voted, along with the affidavit envelope, may use a privacy booth at the voting location to mark the ballot-by-mail. In this circumstance, the voter does not sign in and the voter must place the voted ballot-by-mail in its affidavit envelope, sign the affidavit envelope, and place the envelope in the early ballot drop-off container at the voting location.

#### b. *Name Does Not Appear on Signature Roster*

A voter whose name does not appear on the signature roster must be issued a provisional ballot if the voter:

- Presents identification that includes their name and a residential address that the clerk verifies to be within the precinct (in counties that conduct assigned polling place elections); or
- Signs an affirmation that states the voter is registered and eligible to vote in that jurisdiction.

A.R.S. § 16-584(B).

##### i. Recorder's Certificate

A voter whose name does not appear on the signature roster, but who presents a certificate from the County Recorder showing that the voter is entitled to vote at the voting location, is entitled to vote a regular ballot. In a jurisdiction that uses a paper signature roster, the voter must sign on the first available blank line on the signature roster. A.R.S. § 16-584(A).

#### c. *Voter Has an Inactive Status*

If a voter whose registration record is in inactive status and the voter has a new residential address in a different precinct, the voter must be directed to the correct voting location (in counties that

conduct assigned polling place elections). In this case, the voter must also be informed that although the voter has a right to vote a provisional ballot at that location, the voter must vote in the correct polling place that corresponds to the voter's current address for the vote to count.

If a voter affirms they continue to reside at the address on the signature roster or in the e-pollbook, the voter must be issued a regular ballot and the County Recorder must place the voter's registration record in active status following the election. A.R.S. § 16-583(A)-(B).

### d.   *Voter Changed Their Name*

If a voter's current name does not appear in the signature roster or e-pollbook because the voter changed their name, the voter must be issued a provisional ballot or conditional provisional ballot. In that case, the clerk must write the voter's new name and former name on the provisional ballot envelope. The provisional ballot envelope will be used by the County Recorder after the election to change the voter's name in the voter registration database.

However, if the election board has real-time access to voter registration records, the voter's information may be updated at the voting location upon completion of a new voter registration or address update form.

### e.   *Voter Moved Within the County*

If a voter moved to a new address within the county but did not update their address with the County Recorder before the election, the voter must vote a provisional ballot and (in counties that conduct assigned polling place elections) must vote at the polling place that corresponds to their new address. A.R.S. § 16-584(C). A clerk must inform the voter that although the voter has a right to vote a provisional ballot at that location, the voter must vote in the correct polling place that corresponds to the voter's current address in order for the vote to count.[49]

At the new polling place, the voter will be permitted (via the provisional ballot envelope) to update their voter registration record with the new address. A.R.S. § 16-584(C). In a jurisdiction that utilizes vote centers, the voter may update their address in the same manner but may vote at any vote center within the jurisdiction.

If the election board has real-time access to voter registration records, the voter's information may be updated at the voting location upon completion of a new voter registration form or address update form.

### f.   *Out-of-Precinct Voter*

If the voter's name does not appear on that precinct's signature roster because the voter resides in another precinct (in counties that conduct assigned polling place elections), an election official shall direct the voter to the correct polling location or, if applicable, to a vote center.  The election

---

[49] *See* Stipulation for Dismissal, *Jones v. Reagan*, No. CV2016-014708 (Ariz. Super. Ct. Aug. 2, 2017); Order of Dismissal, *Jones v. Reagan*, No. CV2016-014708 (Ariz. Super. Ct. Aug. 4, 2017).

official must also inform the voter that although the voter has a right to vote a provisional ballot at that location, the voter must vote in the correct polling place in order for the vote to count. If the voter insists on voting at that incorrect location, a provisional ballot must be issued, but the voter should again be informed that ballots cast in an incorrect precinct will not count.

Alternatively, upon a specific resolution of the Board of Supervisors issued pursuant to A.R.S. § 16-411(B)(4) authorizing the use of accessible voting equipment within an assigned polling place to be used as a vote center, a voter shall be entitled to vote a regular ballot using the accessible voting equipment if:

- The election board has access to real time information and can confirm the qualified voter has not cast a ballot at another voting location;
- The accessible voting equipment is pre-programmed and certified to allow voters to mark or vote any ballot style for that county; and
- The accessible voting equipment enables the voter to vote/mark a ballot for the correct precinct in which the voter is entitled to vote.

### 2. Procedures for Issuing Provisional Ballots

A voter who is issued a provisional ballot must sign their name on a separate signature roster page beginning with the number V-1 and numbered consecutively (for paper signature rosters only). A.R.S. § 16-584(E). E-pollbooks must be able to produce a report of provisional voters, including the voter's signature, after the polls close.

The voter and election board member must complete the information required on the provisional ballot envelope. The voter then must:

- Take the completed envelope and provisional ballot to the voting booth;
- Vote the provisional ballot;
- Place the voted ballot inside the provisional ballot envelope and seal the envelope; and
- Provide the sealed provisional ballot envelope to the election board member.

Upon receipt of the provisional ballot envelope, the election board member or voter must deposit the provisional ballot envelope in the provisional ballot box (and ensure the ballot is not inserted into any precinct tabulation equipment). A.R.S. § 16-584(D). The voter will be provided with a receipt or number with which to electronically verify the status of their provisional ballot.

All voters shall have the option of voting a provisional ballot on an accessible voting device.

### a. *Issuing Provisional Ballots to Secured Registrants*

In the event a secured registrant attempts to vote provisionally at a polling place (and informs the poll worker of his/her secured status), the poll worker undertake additional precautions, including but not limited to:

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Confirming the correct ballot style;

- Ensuring that a protected government official or protected victim lists their actual residential address on the provisional ballot envelope;

- Making a notation about secured registrant status on the provisional ballot envelope; and/or

- Limiting the signature roster to the registrant's voter ID number and the notation "address protected."

### 3. Procedures for Issuing Conditional Provisional Ballots

If the voter does not provide acceptable proof of identity, *see* Chapter 9, Section IV above, the voter must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2).

The process for voting the ballot, completing the ballot envelope, and sealing the voted ballot in an envelope is the same procedure applicable to provisional ballots. *See* Chapter 9, Section VI(B)(2) above. However, for a conditional provisional ballot, the election board member must:

1. Indicate on the ballot envelope that the voter did not provide acceptable identification;

2. Deposit the sealed envelope in the conditional provisional ballot box or other appropriate ballot box (or allow the voter to do so);

3. Provide a receipt that:

   - Informs the voter how and where the voter may provide the required identification; and

   - Informs the voter that they must provide proof of identity to the County Recorder by 5:00 p.m. on:

     - The 5th business day following a general election that includes an election for a federal office, or

     - The 3rd business day following any election other than a general election.

A.R.S. § 16-579(A)(2).

## VII.   CHALLENGES TO A VOTER ELIGIBILITY TO VOTE

A qualified elector in the county may, at the voting location, orally challenge a voter's eligibility. The elector challenging a voter's eligibility must show, by clear and convincing evidence, that:

1. The voter has voted before at that election, A.R.S. § 16-591;

2. The voter is not the person whose name appears in the signature roster or e-pollbook, A.R.S. § 16-121.01(B)(1);

3. The voter has not resided in Arizona (or the relevant local jurisdiction) for at least 29 days before the election, A.R.S. § 16-121.01(B)(2);

4.  The voter is registered at an address that is not permitted for registration purposes, A.R.S. § 16-121.01(B)(3); or

5.  The voter is not otherwise a qualified elector, for example, the voter does not live within the proper electoral district or is not at least 18 years old. A.R.S. § 16-121.01(B)(4); A.R.S. § 16-101(A).

A.R.S. § 16-121.01(B).

A voter may not be challenged on the basis that they:

•   Registered to vote using the State or Federal Form and did not provide proof of citizenship; or

•   Moved from one address within the county to another within the county.

Challenges must be decided at the voting location by the inspector and two judges. The inspector should have the challenged voter step aside and permit the other voters in line to continue to vote while the challenge is being determined.

If requested by the challenged voter, and before administering any oath, the inspector must read to the voter the rules for determining residency, including the following information:

1.  The residence of a person is that place in which their habitation is fixed and to which they have the intention of returning.

2.  A person does not gain or lose their residence by reason of their presence at, or absence from, a place while employed in the service of the United States or of this state, or while engaged in overseas navigation, or while a student at an institution of learning, or while kept in prison or mental institution.

3.  A person does not lose their residence by traveling to another county, state, or foreign country for temporary purposes, with the intention of returning.

4.  A person does not gain a residence in any county they travel to for temporary purposes, without the intention of making that county their home.

5.  If a person moves to another state with the intention of making it their residence, they lose residency in this state.

6.  If a person moves to another state with the intention of making it their current residence and remaining there for an indefinite time, the person loses residency in this state even though they have an intention of returning at some future period.

7.  The place where a person's family permanently resides is their residence (unless separated from their family), but is not their residence if it serves as a temporary location or is used for transient purposes.

8.  If a person has a family residing in one place and the person does business in another, the family residence constitutes the person's place of residence. However, a person who has

taken up a residence apart from their family with the intention of remaining in that separate residence shall be regarded as a resident where the person resides.

9. A United States citizen who has never resided in the United States is eligible to vote in this state by using a federal write-in early ballot if both of the following apply:

   • A parent is a United States citizen.

   • The parent is registered to vote in this state.

10. The mere intention of acquiring a new residence without leaving the state, or leaving the state without the intent to permanently do so, does not cause a loss of residency.

A.R.S. § 16-593(A); A.R.S. § 16-593(C). Board members should consult above residency requirements when determining registration validity.

If the challenged voter appears to be registered, the challenged voter must orally take the oath prescribed in the State Form: "I swear or affirm that the information in my voter registration is true, that I am a resident of Arizona, I have not been convicted of a felony or my civil rights have been restored, and I have not been adjudicated incapacitated with my voting rights revoked." A.R.S. § 16-592(A).

The challenged voter also may choose to answer questions material to the challenge, under oath. Only the inspector may address questions to the challenged voter. A.R.S. § 16-592(A).

If a majority of the board finds the challenge to be invalid, the voter must be permitted to vote a regular ballot, so long as the voter is otherwise eligible to do so. A.R.S. § 16-592(B).

If the person challenged refuses to take any oath, refuses to answer questions material to the challenge, or if a majority of the board finds that the challenge is valid, the challenged voter must be permitted to vote a provisional ballot. A.R.S. § 16-592(C).

In the case of any challenge, the election board must complete the Official Challenge List (*see* Chapter 17 for sample forms) and may seek guidance from the officer in charge of the election.

## VIII.   CLOSING THE VOTING LOCATION

### A. Announcing the Closing of the Polls

The polls close at 7:00 p.m. on Election Day. A.R.S. § 16-565(A). The marshal must announce the closing of the polls and make the following additional public announcements (inside the voting location and to any voters waiting in line) at the specified time intervals:

   • 1 hour before the closing of the polls;

   • 30 minutes before the closing of the polls;

   • 15 minutes before the closing of the polls;

   • 1 minute before the closing of the polls; and

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- At the moment of closing at 7:00 p.m.

A.R.S. § 16-565(C). The marshal must allow everyone to vote who is physically in line at the moment of closing the polls. The marshal may use any reasonable system to document or keep track of which voters were in line as of 7:00 p.m., for example, by standing in line behind the last person to arrive as of the closing of the polls and telling those who arrive later that the polls are closed. Voters who arrive in line after 7:00 p.m. on Election Day are not permitted to vote. A.R.S. § 16-565(D).

## B. Election Board Close-Out Duties

Upon closing the voting location after the last voter has voted on Election Day, the election board should perform close-out duties as assigned by the officer in charge elections, including the following duties as applicable:

1. Using the procedures specified by the officer in charge of elections, the election board must conduct an audit to ensure that the number of voters who signed in on the signature roster or e-pollbook matches the number of ballots cast, including regular and provisional ballots and, if the accessible voting equipment independently tabulates votes, any votes cast on the accessible voting equipment, A.R.S. § 16-602(A).

    a. If ballots are tabulated at the voting location: a printed statement of tally or summary of all vote totals shall be printed from every tabulation machine, and the number of ballots cast shall be compared to the signature roster and/or e-pollbook list and provided with the Official Ballot Report, A.R.S. § 16-607.

2. The information from this audit must be recorded on an Official Ballot Report form, as provided by the officer in charge of elections, which must include:

    a. The total number of printed ballots or estimated number of ballot stock received from the officer in charge of elections;

    b. The number of voters who signed in on the signature roster, poll list, or e-pollbook and are indicated as having been issued regular ballots;

    c. The number of voters who signed in on the signature roster, poll list, or e-pollbook and are indicated as having been issued provisional and conditional provisional ballots;

    d. The number of regular ballots cast as determined by the election board's manual count if tabulation is not done at the voting location, or as reflected on the printed summary tape from the tabulation machine if tabulation is done at the voting location;

    e. The number of provisional and conditional provisional ballots cast;

    f. The number of unused ballots, spoiled ballots, misread ballots that still need to be tabulated (if tabulation is done at the voting location), and write-in ballots (if applicable);

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

    g.   The number of early ballots received by the voting location (unless ballots are transported in a secure and sealed transport container to the central counting place to be counted there);

    h.   In counties that use accessible voting units that independently tabulate, the number of regular and provisional ballots cast on the unit, and the unit's beginning and ending counts (if applicable);

    i.   The Official Ballot Report must be signed by the inspector and both judges, and if there are any discrepancies in the report, an explanation for the discrepancy should be attached or otherwise provided with the Official Ballot Report. The Audit Board will use this information to conduct their post-election audit (*see* Chapter 10, Section II(H)).

3. Secure the ballot boxes with a numbered seal, A.R.S. § 16-608(A);

4. Remove all memory cards or electronic media from voting equipment and e-pollbooks (if applicable);

    a.   Lock and/or seal any ports or compartments where memory cards or electronic media had been inserted.

5. Power down any voting equipment and prepare the equipment for transport/pick-up;

6. Collect all supplies required to be returned to the elections department;

7. Sign the Certificate of Performance for the signature roster or e-pollbook;

8. Prepare the official returns envelopes/containers and, if applicable, unofficial returns envelopes/containers, including the following items, for transport to the central counting place or other receiving site:

    a.   Official and unofficial returns envelopes/containers shall be plainly marked to identify items to be placed within each envelope/container:

       •   The official returns envelope/container shall be securely sealed with a tamper-evident, secure label signed by the inspector and both judges and should include, as applicable:

          -   Spoiled ballots, including any spoiled early ballots, A.R.S. § 16-585;

          -   One copy of the poll list (if the county uses paper signature rosters); and

          -   Affidavits of challenged voters, decisions of election officials, and challenge lists, A.R.S. § 16-594;

       •   The unofficial returns envelope/container shall be returned with the official returns envelope/container and shall be made available for inspection by electors for a period of six months following the election. The unofficial returns envelope/container shall include the following, as applicable:

          -   A copy of the paper signature roster and poll list (if e-pollbooks are used, the e-pollbook list must be captured (*e.g.*, on memory sticks or electronic media, or exported from the e-pollbooks) and retained);

- Payroll voucher envelope, if applicable, with the Official Ballot Report or duplicate thereof; and

- Any other items as directed by the officer in charge of elections;

b. Voted ballots (with a report of the number of voters who have voted, sealed in a container with a numbered seal, A.R.S. § 16-608(A));

c. Unvoted ballots (in a sealed container, A.R.S. § 16-566(B));

d. The original Official Ballot Report (if not included in the unofficial returns envelope/container);

e. Tally lists, if ballots are tabulated at the voting location (enclosed in a secure envelope which is sealed and signed by the members of the board (inspector and both judges) and attested by the clerks), A.R.S. § 16-614;

f. The original signature rosters/poll lists, if applicable (enclosed in a secure envelope, sealed and signed by the inspector and judges), A.R.S. 16-615(A));

g. E-pollbooks (if the signature roster information remains in the e-pollbook and has not been extracted by removing memory cards or electronic media or otherwise securely synced with the central server);

h. Memory sticks or electronic media (securely sealed in a transport container for that purpose); and

i. Any voting equipment that independently tabulates (if memory sticks or electronic media have not been removed).

9. All election night returns must be delivered to designated receiving site and a receiving board log of the transmissions should be kept by the receiving board which will later be provided to the officer in charge of elections; and

10. Exit and lock the voting location.

## C. Transport of Ballots, Voting Equipment, and Precinct Supplies

Following the close of voting on Election Day, the transport of any ballots, voting equipment, and necessary precinct supplies to the central counting place or other authorized receiving site must be done by: (1) two authorized election workers, who must be members of different political parties; or (2) if extenuating circumstances exist, a sworn official election messenger, such as a sheriff's deputy, appointed in accordance with A.R.S. § 16-615(B).

# CHAPTER 10:
# CENTRAL COUNTING PLACE PROCEDURES

## I.   CENTRAL COUNTING PLACE OPERATIONS

All early ballots and provisional ballots are initially processed by the County Recorder and then transferred to the officer in charge of elections for tabulation at the central counting place. Regular ballots cast on Election Day that are not processed and tabulated at the voting location are also transmitted to the central counting place for processing and tabulation. Central counting place operations are conducted under the direction of the Board of Supervisors or the officer in charge of elections. The operations must be in accordance with the procedures outlined in this manual, and open to observation by representatives of each political party and the public.

The central counting place and the computer center, where the computer containing the election management system (EMS) is securely kept, may be separate or joined as determined by the Board of Supervisors or designee. Maximum efficiency and control results when all board functions are performed in the same facility. However, when physical restrictions result in inadequate working spaces, it is permissible to separate board functions as long as prescribed board functions and sequence are maintained and the public can observe.

When the computer center, central counting place, or receiving sites are not at the same location, the officer in charge of elections or designee transfer the ballots to the computer center or observe the transmission of voted results, even if they are initially received and processed at another location.

A security officer or an election official may conduct tours through the central counting place for the public. At no time shall any public observance of the election process interfere with or interrupt the normal ballot flow, nor shall members of the public touch a ballot, computer, or tabulation device (except as permitted by the officer in charge of elections during demonstrations). A.R.S. § 16-621(A).

### A. Deputies/Oath of Office

All persons taking part in the actual processing and counting of ballots, including the employees of a jurisdiction conducting an election, must be appointed in writing and take an oath provided by the Board of Supervisors (or designee) that they will faithfully and impartially perform their duties. Any person who has not been appointed in writing or taken the oath shall, under no circumstances, be permitted to touch any ballot, computer, or counting device used in processing ballots.

## B. Providing Live Video Recording at Central Counting Place

For any statewide, legislative, or county election, and subject to local appropriation, the county officer in charge of elections must provide a live video recording of the custody of all ballots when ballots are present in the tabulation room in the central counting place.[50]

The live video recording must include date and time indicators. If the live coverage is interrupted, the officer in charge of elections must attempt to reinstate coverage as soon as practicable. Any disruption in live video recording does not prevent the officer in charge of elections from continuing to tabulate ballots. The officer in charge of elections must record the video coverage and retain the recording as a public record at least through the challenge period for the election. At minimum, the challenge period is through the date to file or conclude any post-election recount or election contest.

The county officer in charge of elections must timely provide the website hyperlink to the Secretary of State, who must publish those hyperlinks on the Secretary of State's website. A.R.S. § 16-621(C).

## C. Manual Ballot Counting

If it becomes impracticable to count all or some of the ballots with tabulating equipment, the officer in charge of elections may direct that ballots be counted manually, following the provisions governing the counting of paper ballots. No valid ballot shall be left uncounted.

## II.    ESTABLISHING CENTRAL COUNTING PLACE BOARDS

The Central Counting Place may have 11 or more types of boards as needed, which may be combined, if practicable, at the discretion of the officer in charge of elections. The Board of Supervisors or officer in charge of elections shall appoint boards for the tallying of results after the polls have closed. More than one board may be appointed for each type of board:

1. Receiving Board

2. Inspection Board

3. Central Counting Place Board

4. Ballot Duplication Board

5. Electronic Vote Adjudication Board

6. Accuracy Certification Board

7. Write-in Tally Board

8. Provisional Ballot Board

---

[50] Live video recording is not required for L&A testing or the post-election hand count audit. A.R.S. § 16-602(B).

9.  Special Election Board

10. Audit Board

11. Snag Board

Board members are appointed by the Board of Supervisors or other county officer in charge of elections at least 14 days prior to the board beginning its duties. All board members should be trained on their duties before assuming their positions. Some boards may have their duties combined at the discretion of the County Recorder or officer in charge of elections.

Unless otherwise noted below, each board is comprised of two members of different political parties. County party chairpersons may nominate persons to fill board positions. Without a nomination from a party chairperson, the Board of Supervisors (or designee) may fill the position with a member of the appropriate party.[51]

Separate boards consisting of two judges and an inspector will be appointed to process early ballots and write-in votes. At least one of the judges should not be a member of the same political party as the inspector.

The following procedures for processing ballots shall be followed, unless the Secretary of State has granted a jurisdiction permission to use another method. A jurisdiction wishing to deviate from these instructions must make a request in writing no later than 90 days prior to the election for which the exception is requested.

### A. Receiving Board

The Receiving Board consists of two members who are not registered in the same political party. The officer in charge of elections or designee serves as the chair of the Receiving Board.

The Receiving Board is responsible for receiving the following items from the elections boards at the polling places and voting locations after the polls have closed, as applicable:

1.  Memory devices;

2.  Ballot transport containers containing ballots;

3.  Early ballots that have been dropped off at a polling place;

---

[51] If it is impossible to sufficiently staff the boards with members of different political parties, the officer in charge of elections shall, at minimum, exercise best efforts to utilize board members with no party affiliation or affiliated with unrecognized political parties to ensure that there is a diversity of political party affiliation (including no affiliation) on the boards and that no board is comprised of members of only one party. Further, the County Recorder or officer in charge of elections shall document when and how the political parties in the county were contacted about the need for board workers affiliated with those parties and all other actions taken in a best effort to obtain board workers from two different political parties. However, nothing in this Manual shall be interpreted to supersede otherwise applicable statutory requirements, including requirements as to differing political party affiliation of board workers.

4. Provisional ballots;

5. Official returns container;

6. Unofficial returns container;

7. Precinct payroll envelope containing vouchers and a copy of the Official Ballot Report;

8. Duplicate poll list; and

9. Signature roster or e-pollbook.

When a ballot transfer container is delivered to a Receiving Board, the following entries shall be made in the Receiving Board Log, as applicable:

1. Precinct/polling place or vote center name or other identifier;

2. Signatures of the persons delivering the container;

3. Seal number of the Ballot Transfer Container;

4. Seal number on the carrying case of the tabulation unit;

5. Seal number on the carrying case of the Accessible Voting System unit and memory packs; and

6. Initials of the person receiving the ballot transfer container.

The Receiving Board shall ensure proper chain of custody documentation for all items received. The Receiving Board shall give a numbered receipt acknowledging receipt of such ballots to the person in charge who delivers such ballots. A.R.S. § 16-608(A).

If it appears that the ballot transfer container seal is broken, it shall be immediately referred to the officer in charge of elections or Snag Board for disposition. All other ballot transfer containers should be delivered unopened to the Inspection Board.

## B. Inspection Board

The Inspection Board is responsible for:

- Opening and verifying information on the precinct ballot report if the ballot transfer container contains any voting materials other than voted ballots; and

- Inspecting returns as necessary.

Receiving Boards and Inspection Boards should normally be combined, unless circumstances would render this inefficient. The officer in charge of elections shall provide each board with a log to enter pertinent data for each precinct/polling place or vote center.

### 1. Preliminary Procedures

When the ballot transfer container or alternate ballot box arrives at the central counting place, the Inspection Board shall:

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

1. Break the seal and open the ballot transfer container;

2. Break the seal on the alternate ballot box, if used;

3. Remove the Ballot Report Form and check to see that the seal number is the same as shown on the log—if the Ballot Report Form is absent, incomplete, or the seal number does not agree with the number on your inspection board log, call for the supervisor or officer in charge of elections;

4. Enter on the inspection board log:

   • Precinct name and/or number or voting location

   • Number of write-in ballots,

   • Number of provisional ballots, and

   • Number of early ballots dropped off at the polling place;

5. Separate the types of ballots to be processed into:

   • Provisional ballots,

   • Write-in ballots,

   • Voted ballots, and

   • Early ballots.

### 2.  Provisional Ballots

If there are provisional ballots:

1. The provisional ballot envelopes should be visually distinguishable from other ballot envelopes issued at a voting location or early voting site. Provisional and conditional provisional ballot envelopes may be printed on colored paper, may bear bar codes that do not identify the voter, or may use other methods to visually distinguish those types of ballot envelopes;

2. Keep provisional ballots separate from conditional provisional ballots;

3. Complete the provisional ballot transmittal slip by entering:

   • The number of provisional ballots stated on the ballot report, and

   • The actual number of provisional ballots received; and

4. Record the number of provisional ballots on the inspection board log.

### 3.  Voted Early Ballots

Early ballots dropped off at the polling place must be delivered to the County Recorder for signature verification, and may be verified prior to or along with the provisional ballots. For more information about processing early ballots, *see* Chapter 2, Section VI.

### 4. Regular Voted Ballots

Regular ballots that were tabulated at the voting location remain in the ballot transfer container received from the precinct or are packaged for storage and retention in the Treasurer's vault.

### 5. Write-In Ballots

If there are write-in ballots:

1. Count the total number of ballots containing write-ins, if not previously counted at the polling place;

2. Record the number on the log; and

3. Complete a transmittal envelope for delivery of ballots containing write-in votes to the Write-In Tally Board.

## C. Central Counting Place Board

The Central Counting Place Board is responsible for the processing and tabulation of voted ballots on the central count tabulation equipment and the EMS and shall maintain the security of the ballots throughout the process. The Central Counting Place Board shall be under the direction of the Central Counting Place Board inspector; and consist of as many trained personnel selected by the Board of Supervisors (or designee) as required to process all ballots delivered to the computer room.

Members of the Central Counting Place Board should be familiar with the L&A test requirements, data processing procedures, and ballot tabulation equipment. There shall be no preferential counting of ballots for the purpose of projecting the election. A.R.S. § 16-621.

The Central Counting Place Board shall:

1. Secure all processed ballots until successful completion of the last accuracy certification test;

2. Seal the ballot containers and secure the room where the ballots are located;

3. Keep the containers in a secure area until:

   • The end of the challenge period, or

   • If a challenge is filed, until the challenge has been resolved, and

   • The ballots have been released to the custody of the officer in charge of elections;

4. Transfer the sealed containers to the officer in charge of elections who shall transfer the ballots to the County Treasurer for retention.

The computer operating area, where the computer containing the EMS is located, shall be in a separate room or in an area of a larger room which is clearly marked as the computer operating area. Only members of the Central Counting Place Board and Accuracy Certification Board may

be permitted in the immediate computer operating area. Other observers may be permitted to observe the operations of these boards and the computer from a designated location, but must not interfere with the conduct of the operations. The Snag Board may enter the computer operating area to resolve any discrepancy.

Except for a County Recorder whose name is not on the ballot and who is carrying out official duties, no public officer serving in an elected position, or any candidate for an elective public office at the election shall be permitted to enter the central counting place unaccompanied by the officer in charge of elections or designee, any area where a central count board has been convened, any area where decisions about ballots are being made, or any other operational area where ballots are being processed or tallied.

### D. Ballot Duplication Board

When any ballot, including an early ballot, is damaged or defective so that it cannot be read by the tabulation machine, it must be duplicated by a Ballot Duplication Board and the duplicated ballot must be tabulated in place of the damaged ballot. A.R.S. § 16-621(A).

#### 1. Establishing a Ballot Duplication Board

Each Ballot Duplication Board shall be comprised of at least two members who are registered voters not of the same political party and who are appointed by the officer in charge of elections. An Inspection Board may serve as a Ballot Duplication Board.

The Ballot Duplication Board duplicates ballots that cannot be read by the tabulation machine but on which the voter has nonetheless clearly indicated their intent to vote on a particular race or ballot measure. This may include crumpled or otherwise damaged ballots, ballots with smudged ink, or ballots which are marked in the wrong color of ink or with a device that cannot be read by the tabulation machine. If voter intent is not clear and Ballot Duplication Board members do not agree on the voter intent for a particular ballot, that ballot should be referred to the Snag Board or officer in charge of elections for resolution prior to duplicating the ballot.

#### 2. General Duplication Guidelines

Generally, only UOCAVA ballots, early ballots, and ballots cast at voting locations without a tabulation machine on-site should be duplicated at central counting facilities. Voters who vote at a voting location with a tabulation machine on-site feed their voted ballots directly into the tabulation machine and have the opportunity to correct an unreadable ballot or ballot read as over-voted or blank on the spot.

If a voter selects more than the maximum number of seats for a race, the tabulation machine will read the race as over-voted. Similarly, if a voter voted for a candidate whose name is printed on the ballot by marking the appropriate arrow or oval and also wrote the candidate's name in the write-in area, the tabulation machine will read that race as over-voted. Over-voted ballots shall be sent to the Ballot Duplication Board (and the Snag Board or officer in charge of elections for

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

adjudication if needed), even if the voter correctly filled in the arrow or oval for other races on the ballot. If voter intent can be determined, the ballot shall be duplicated and counted.

If a voter has consistently marked their ballot by circling the name of the candidates, or circling yes or no for issues, or placing an x, check mark, punched hole, or other similar mark next to the voter's choices, the tabulation machine will read the ballot as blank or invalid. These blank ballots shall be sent to the Ballot Duplication Board.

If the early ballot board finds ballots that are torn, corrected with white-out or labels, erased, or marked with ink or crayon that cannot be read by the equipment, the ballot must be sent to the Ballot Duplication Board.

Ballots received via fax, email, or secure web portal from UOCAVA voters shall be forwarded to the Ballot Duplication Board for processing.

### 3. Procedures for Duplicating a Ballot

A damaged or unreadable ballot must be duplicated according to the following procedures:

- Ensure the correct ballot style for the voter's precinct will be used to create the duplicated ballot;
- Mark the proper precinct identification code, if applicable;
- Record an identical serial number on both the original and duplicate ballot (including spoiled duplicates) – this ties the ballots together and creates a paper trail as required by statute, A.R.S. § 16-621(A);
- Conspicuously mark the original ballot as "DUPLICATED;"
- Conspicuously mark the duplicate ballot as "DUPLICATE," A.R.S. § 16-621(A);
- Using the damaged or unreadable ballot as a guide, mark a blank ballot with votes identical to those on the original ballot;
- Do not duplicate write-in names that are not on the authorized write-in list ("blank" or "unofficial" may be typed in if using a ballot marking device to duplicate and the name/line cannot be left blank). However, mark the arrow or fill in the oval to indicate the vote cast;
- After marking the duplicate ballot, check to make sure it is identical to the original, including over-votes if voter intent cannot be determined and any under-votes;
- If the Ballot Duplication Board makes any errors, mark the duplicate ballot "SPOILED" in a conspicuous manner, and repeat the above steps on a new ballot;
- Place all original ballots in an envelope or container labeled "ballots that have been duplicated."

It is never permitted to enhance or alter a voter's original ballot markings to render the ballot readable. Instead, the ballot should be duplicated.

## E. Accuracy Certification Board

The Accuracy Certification Board consists of two elections officials registered with two different political parties and shall be appointed by the Board of Supervisors (or designee). The Accuracy Certification Board is responsible for verifying the accuracy of computer programs, through the L&A test materials, and attesting to the procedures during computer processing of ballots. A.R.S. § 16-449.

All L&A tests shall be observed by the Accuracy Certification Board, and open to representatives of political parties, candidates, the press, and the general public. Political party observers are distinguished from members of the general public, who may view the central counting place activities from the public viewing area. Properly credentialed political party observers may observe the proceedings from inside the room where they happen. However, under no circumstances should a political party observer touch or operate the election server computer or any scanning device. *See* Chapter 10, Section I(A).

If an error is detected in the L&A test, it shall be corrected. An errorless test must occur and be completed before the program and computer are certified.

Immediately after completion of the tabulation of ballots, the Accuracy Certification Board shall certify that:

- The number of ballots processed for each precinct or voting location was checked against the number of ballots received from the precinct or voting location by the Ballot Inspection Board (part of the Central County Place Board), as reflected on the Ballot Report Form; and

- Any discrepancies in the number of ballots received and the number processed by the vote tally system are properly resolved.

## F. Provisional Ballot Processing

Provisional ballots are processed initially by the County Recorder and then by a Provisional Ballot Board at the central counting place.

The provisional ballot affidavit, whether part of the provisional ballot envelope or a separate form, shall be deemed sufficient if it is signed by the voter and, if the voter did not provide adequate identification at the voting location, the signature matches the signature on the voter's registration record. A provisional ballot shall not be rejected solely for lack of a signature on the affidavit by polling place election officials.

A conditional provisional ballot cast by a voter must be clearly distinguishable and kept separate from other provisional ballots. A conditional provisional ballot must not be processed and forwarded for tabulation until the voter has produced sufficient identification to the County Recorder, in accordance with the provisions of this manual governing proof of identity. *See*

Chapter 9, Section IV. The County Recorder must disqualify the ballot if the voter does not provide sufficient identification by the deadline.

## 1. County Recorder Responsibilities

### a. *Verification of Provisional Ballots*

All provisional ballots must be verified for proper registration within 10 calendar days after a general election that includes an election for federal office, and within five business days for all other elections. A.R.S. § 16-135(D). The provisional ballot shall be counted if:

1. The voter's registration is verified and the voter is eligible to vote in the precinct, *and*

2. The voter's signature does not appear on any other signature roster for that election, *and*

3. There is no record that the voter voted early in that election.

For a provisional ballot to be counted, the County Recorder shall confirm that all of the following requirements are met:

1. Confirm that the provisional ballot affidavit is signed;

2. Confirm that the voter was registered to vote and was eligible to vote in the election;

3. Confirm that the voter voted in the correct polling place or voting location or cast the ballot for the correct precinct;

4. Confirm that there is no record that the voter voted early for that election;

5. If the voter moved without updating their address and voted in the precinct for the new address, confirm that the voter did not vote in the prior precinct by confirming that the voter did not sign the signature roster for the prior precinct;

6. For a partisan primary election, confirm that the voter received and voted the correct party ballot based on the voter's party affiliation;

7. If the voter is registered as a "federal-only" voter, confirm that the voter received a "federal-only" ballot or clearly mark or stamp the outside of the provisional ballot envelope to indicate that the voter is a "federal-only" voter and only races for federal candidates should be duplicated and tabulated.

The County Recorder shall deliver only provisional ballot envelopes and/or affidavits of qualified voters who meet the above requirements to the Board of Supervisors or officer in charge of elections for counting. Rejected provisional ballot envelopes and/or affidavits should be separately retained and delivered to the officer in charge of elections for retention in accordance with A.R.S. § 16-624.

### b. *Rejection Reason Code*

The rejection code reason is determined by the County Recorder. The rejection reasons include:

1. Not registered;

2. No ballot in envelope;

3. Registered after 29-day cut-off;

4. No signature;

5. Insufficient/illegible information;

6. Voter did not provide adequate identification and signature does not match;

7. Wrong party;

8. Outside jurisdiction ballot;

9. Voter challenge upheld;

10. Voted in wrong precinct;

11. Voted and returned an early ballot;

12. Proper identification not provided by deadline;

13. Not eligible; and

14. Other (please specify).

### c. *Updating Voter Registration Records*

The County Recorder shall update the appropriate county register or registration database with the names of all provisional voters whose registration was verified to indicate that those voters are qualified to vote in future elections.

The County Recorder may also use the information from a provisional ballot envelope or affidavit to update a voter's name and address. A provisional ballot envelope or affidavit may also be used to register a voter for the first time for future elections (not the current election the provisional ballot was used for) if the form substantially complies with A.R.S. § 16-152. Additionally, a "federal-only" voter may use the provisional ballot process to provide a driver license number as DPOC for future elections (although not for the current election the provisional ballot was used in).

### d. *Voter Verification of Provisional Ballot Status*

The County Recorder shall create a provisional ballot record for the voter that contains the following information:

1. Provisional ballot receipt number;

2. Name of the voter;

3. Precinct/polling location where the provisional ballot was cast;

4. Provisional ballot status;

5. Provisional ballot status reason;

6. Address (optional)

7. Date of Birth (optional)

8. Political Party (optional).

A.R.S. § 16-584(E).

This information will be used for online verification of a voter's provisional ballot. The information shall be available online for one month after posting.

As soon as possible after verification of the provisional ballots is complete, a notice informing the voter whether their vote was counted or not counted, and the reason for not counting if applicable, shall be provided to the voter. This may be in the form of a notice mailed to the voter, or the voter may access the information pursuant to the instructions on the receipt that was issued to the voter at the time they voted the provisional ballot. The receipt will provide the voter with clear instructions on how to determine the status of their vote.

The County Recorder or other officer in charge of elections shall provide to provisional voters a toll-free number or other method of verifying the status of their votes. Reasonable restrictions will be employed to limit transmittal of the information only to the voter, such as verifying the date of birth, state or country of birth, or other information that could confirm the voter's identity if compared with the voter registration information on file. The officer in charge of elections will request verification of identity with information from the voter's registration record or provisional ballot envelope. A.R.S. § 16-584(F).

## 2. Provisional Ballot Board Responsibilities

The Board of Supervisors shall appoint one or more Provisional Ballot Boards, consisting of two elections officials not of the same political party, for the processing of provisional ballots. They must also appoint additional clerks as needed, designate the supervisory authority, designate the location for processing, and provide all necessary supplies.

Provisional ballot boards may convene and begin ballot processing any time after provisional ballots are delivered to the officer in charge of elections. The provisional ballot processing board shall place official and unofficial returns in containers marked "official returns" and "unofficial returns." The container may be an envelope or any other container that keeps the official and unofficial returns physically separated by precinct.

The inspector on the Provisional Ballot Board shall be in charge of processing. The inspector shall receive the provisional ballot envelopes from the verification staff and record the precinct identification data on the transmittal form.

## 3. Verification Staff Procedures for Specific Scenarios

Verification staff at the central counting place must follow the following procedures in the specified scenarios below.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### a. *Provisional Ballots Cast by Federal-Only Voters*

The verification staff must examine the outside of the provisional ballot envelope to determine if the Recorder's Office has identified the voter as a "federal-only" voter. If that indicator is present and the Recorder's Office has indicated that the ballot is otherwise verified, the verification staff will open the provisional ballot envelope and confirm whether the ballot inside is a "full-ballot" or "federal-only" ballot.

- If the ballot in the provisional ballot envelope is a "federal-only" ballot, the ballot shall be removed and processed for tabulation.

- If the ballot in the provisional ballot envelope is a "full-ballot," the verification staff will remove the ballot from the envelope and send the ballot to the Ballot Duplication Board for duplication of the races for President of the United States (Presidential Electors), United States Senator, and United States House of Representatives only. No other race or ballot measure will be duplicated from that ballot.

### b. *Provisional Ballots Voted on an Accessible Voting Device that Independently Tabulates Votes*

The verification staff must examine the provisional ballot affidavit to determine if the Recorder's Office has identified the voter as a "federal-only" voter. If that indicator is present and the Recorder's Office has indicated that the ballot is otherwise verified, the verification staff will print a copy of the voted ballot or pull the voter-verifiable paper audit trail to confirm whether the ballot is a "full-ballot" or a "federal-only" ballot.

- If the ballot is a "federal-only" ballot, the ballot shall be marked "accepted" on the EMS and processed for tabulation.

- If the ballot is a "full-ballot," the verification staff will mark the ballot "Fed-Only" and send the ballot to the Ballot Duplication Board for duplication of the offices of President of the United States (Presidential Elector), United States Senate, and United States House of Representatives only. No other race or ballot measure will be duplicated from that ballot. The provisional ballot shall be marked "rejected" on the EMS and the duplicated ballot shall be counted with the rest of the provisional paper ballots.

### c. *Damaged Ballots*

If there are damaged provisional ballots, the verification staff must:

1. Count the number of damaged ballots in each precinct;

2. Initiate a transmittal slip to accompany the ballot to the Ballot Duplication Board;

3. Record the number on the slip; and

4. Forward the ballots, with the transmittal slip, to the Ballot Duplication Board.

### d. *Ballots Ready for Counting*

The number of ballots ready to be counted must be recorded on a transmittal slip. The ballots and transmittal slip are forwarded to the Central Counting Place Board.

### e. *Ballots to Be Duplicated*

If any provisional ballots require duplication, the verification staff must forward those ballots to the Ballot Duplication Board in a proper transmittal envelope.

### f. *Write-In Votes*

After the provisional ballots have been counted on a tabulation unit, any ballots containing write-in votes shall be separated from the other ballots and forwarded to the Write-in Tally Board.

## 4. Challenges

Challenges of provisional ballots will be determined by the Provisional Ballot Board using the procedure outlined for counting early ballots in Chapter 2, Section V. If the voter is found to be not registered, the ballot shall remain unopened and be retained in the same manner as voted ballots. Party representatives and alternates may be appointed to be present during provisional ballot processing and to challenge the disposition of provisional ballots.

## G. Write-In Tally Board

### 1. Write-In Tally Board Procedures

The Write-In Tally Board is comprised of one inspector and two judges, who are members of the two political parties which cast the highest number of votes in the state at the last general election. At least one of the judges must be of a different political party than the inspector. At least 90-days before an election, the county chairperson of the two largest political parties may designate qualified electors to serve on Write-In Tally Board. When the list is timely submitted, it shall be used to appoint board members. Without a nomination from a party chairperson, the Board of Supervisors (or designee) may fill the position with a member of the appropriate party. A.R.S. § 16-531(A), (E). The Write-In Tally Board may manually tally write-in votes or do so through an electronic voting system pursuant to Chapter 10, Section II(G)(2) below. A.R.S. § 16-531(E).

If the voter writes the name of a candidate on the ballot, the vote shall be counted for that candidate. If a voter writes the name of a political party on an FWAB, the vote shall be counted as a vote for the candidate of that party. Any abbreviation, misspelling, common nickname, or other minor variation in the name of a candidate or political party shall be disregarded in determining the validity of the vote if the intent of the voter can be ascertained. A.R.S. § 16-543.02(C).

Write-in votes are tallied only if the ballot is properly marked by the voter. This is done by writing in the name of a qualified write-in candidate *and* by filling in the oval or connecting the arrow (or

other method of properly marking the vote as indicated in the instructions for the particular optical scan or digital scan ballot). A.R.S. § 16-448.

If a write-in vote is declared to be invalid, the Write-In Tally Board manually tallying write-in votes must disqualify the vote. The Write-In Tally Board must not count any write-in vote that an election official has identified as disqualified.

## 2. Electronic Tallying of Write-In Votes

As an alternative to manual tallying of write-in votes, the Write-In Tally Board may utilize an electronic program to tally write-in votes for qualified write-in candidates. Any electronic tallying of write-in votes shall be done pursuant to the requirements in this Section unless the Secretary of State has granted a jurisdiction written approval to use alternate procedures. A jurisdiction wishing to deviate from the procedures in this Section must make a request in writing no later than 90 days prior to the election for which the exception is requested.

### a. *EMS Requirements*

To utilize an electronic program to tally write-in votes, the following minimum system and application requirements must be met:

1. The application must be part of an EMS that has received federal and state certification and is authorized for use in elections in Arizona.

   • The application must be installed with the EMS on a secure, isolated, closed network and shall not be connected to the internet or an external network.

2. The application shall provide distinct security roles, with separate usernames and secure passwords for each user or station. These security roles must have different functions. Each election worker shall be given access to only the components of the application necessary to perform their duties. If a secured username and password are used for each station rather than each user, a detailed log of who utilized each station and at what time(s) shall be maintained.

3. Users (and, if applicable, stations) shall have unique usernames and secure passwords. Vendor-supplied generic passwords may not be used.

4. Log-in must be required each time the application is started. The application and/or tabulation system shall be capable of identifying ballots that contain write-in votes.

5. The application shall provide comprehensive logging of any changes to the ballot record for audit purposes, as well as validation of all changes through the use of multiple electronic "signatures" before committing any changes to the EMS results.

6. The application shall include electronic review, attribution of eligible write-in votes, and tallying of official write-in votes within the application.

7. The application shall allow for each transaction to be reviewed and approved by at least two election officials of different political party affiliation.

8. There must be an efficient and reliable means of identifying and locating the physical ballots that have been electronically tallied if needed for auditing. For example, the tabulation machine may be programmed to out-stack and/or print identification numbers on the ballots with write-in votes to be electronically tallied.

The tabulation equipment may be programmed to stop on, sort, or flag write-in votes for races with official write-in candidates. Official write-in candidates may be entered into the EMS after the write-in filing deadline to facilitate this process as long as doing so does not modify the election programming if L&A testing has been completed.

### b. *L&A Testing Requirements*

If write-in votes will be electronically tallied, that functionality of the tabulation system will also be tested during the L&A test for that election to ensure proper and secure functioning. In addition, a paper audit log must be produced, verified, and signed off on by the Write-In Tally Board members *before* committing their selections to the EMS (*see* Chapter 10, Section II(G)(2)(c) below).

### c. *Electronic Tallying Procedures*

Prior to electronically tallying any ballots with write-in votes, the Write-In Tally Board must be trained in their duties and application functionality.

1. The electronic tallying of write-in votes must be performed in a secure location, preferably in the same location as the EMS system, but open to public viewing.

2. An Write-In Tally Board that electronically tallies write-in votes must use the EMS and electronic adjudication/tallying application to: (i) electronically filter and review ballots with write-in votes; and (ii) determine voter intent and attribute votes to official write-in candidates according to the procedures specified in Chapter 10, Section II(G)(1). Write-in votes for unofficial write-in candidates are invalid and shall not be tallied electronically.

3. If the Write-In Tally Board cannot agree on the resolution of a vote, that vote shall be flagged and referred to the officer in charge of elections or designee for final determination.

4. The EMS and/or electronic adjudication/tallying application shall provide a report on the official write-in votes tallied, the names of the members of the Write-In Tally Board that processed the votes on the report, and the date of processing.

5. The electronic write-in tally process shall include production of a paper audit log of the Write-In Tally Board's decisions as to each ballot/vote electronically tallied. The paper audit log must be verified and signed off on by the board members, who shall verify that the paper audit log accurately reflects the board's selections and that those selections are accurately reflected in the electronic adjudication/tallying application *prior to* committing the selections to the EMS.

6. To meet the requirement of a board-verified paper audit log, the Write-In Tally Board shall either:

    a.  Maintain a manual, hard-copy log of its selections for the official write-in votes tallied by batch; or

    b.  Print a log of its selections by batch from the application, verify that the printed log accurately reflects the board's selections, and confirm that those selections are accurately reflected in the electronic adjudication/tallying application ***prior to*** committing the selections for that batch to the EMS.

## H. Audit Board

The officer in charge of elections is responsible for overseeing a post-election audit of each voting location using an Audit Board.

All election board logs, the Official Ballot Report, tabulation units, accessible voting device tapes/printouts, and a copy of the downloaded precinct results shall be delivered to an Audit Board upon the completion of each election board's function.

The Audit Board:

1. Receives the Official Ballot Reports for each voting location and any supplemental information from the election boards that could explain any discrepancies;

2. Receives the signature rosters, poll lists (or scanned copies), or reports from e-pollbooks that show voter check-ins and signatures;

3. Receives the tabulation unit and accessible voting device precinct paper tape;

4. Receives a copy of the transmitted precinct results from the election management system;

5. Verifies the counts on the Official Ballot Report;

6. Verifies that the count from the tabulation unit and accessible voting device precinct paper tapes is the same as the count from the transmitted precinct results on the election management system;

7. Produces a written record that the correct vote totals for each candidate and issue were transmitted from the polling place to the election management system;

8. Has access to all voting locations' ballot statements contained in the unofficial return envelope;

9. Identifies discrepancies in the reports following final tabulation of duplicated ballots and provisional ballots;

10. Resolves problems that appear to be of major significance in the presence of political party observers; and

11. Resolves and documents all discrepancies.

The functions of the Audit Board must be completed prior to the acceptance of the canvassing results in order to ensure the integrity of the canvass results.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## I. Snag Board

The Snag Board is comprised of at least three members who are knowledgeable about the entire elections process. Where possible, its members should have experience working as board members in several previous elections cycles. It is appointed by the Board of Supervisors or officer in charge of elections, and should have members of at least two political parties.

The function of the Snag Board is to resolve any problem brought to its attention by any of the other election boards.

# CHAPTER 11:
# HAND COUNT AUDIT

A limited precinct hand count and early ballot hand count audit must be conducted after each countywide primary, special, general, and PPE election and compared against the results from the electronic tabulation system, unless applicable exceptions apply. The purpose of the hand count audit is to compare the results of the machine count to the hand count to assure that the machines are working properly and accurately counting votes. Those conducting the hand count shall not be provided the machine count results of the batches of ballots they are hand counting prior to completion of the hand count of that batch. If the results from the hand count audit are within the "designated margin" of the electronic results for selected ballots, the hand count is deemed to have confirmed the accuracy of the electronic tabulation equipment, the hand count may cease, and the countywide electronic results are deemed the official results of the election. If the results from the hand count audit are outside of the designated margin, a second hand count of the same ballots is required, potentially followed by an expanded hand count and one or more jurisdiction-wide hand counts depending on the results. A.R.S. § 16-602(C)-(F).

## I.   DESIGNATION OF HAND COUNT BOARD MEMBERS

At least 14 days prior to a countywide primary, special, general, or PPE election, the officer in charge of elections must notify the county chairpersons of each recognized political party of the requirement to designate Hand Count Board members, who will perform the hand count audits under the supervision of the officer in charge of elections. The officer in charge of elections should forecast the requisite number of board members (including alternate board members) based on the number of precincts/vote centers included in the hand count and/or the total number of ballots to be hand counted.

The political party county chairpersons must designate Hand Count Board members and alternates at least seven days before the election (*i.e.*, by 5:00 p.m. on the Tuesday before the election). If the political party is not represented by a county chairperson, the chairperson of the applicable state political party (or designee) may appoint the Hand Count Board members.

The proposed board members and alternates must be registered to vote in Arizona but need not be registered members of the political party that designated them. Candidates appearing on the ballot, except for the office of precinct committeeman, may not serve as Hand Count Board members. Board members are entitled to receive compensation, but not for lodging, meals, or travel.

The officer in charge of elections must notify a political party county chairperson by 9:00 a.m. on the Wednesday before the election if there is a shortage of required board members (*i.e.,* the total number of proposed board members provided by all parties is less than four times the number of precincts to be audited). The chairperson must provide additional board member names by the next business day (5:00 p.m. on the Thursday before the election).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The hand count shall not proceed unless a sufficient number of Hand Count Board members has been designated by 5:00 p.m. on the Thursday preceding the election and appear at the designated time and location to perform the hand count. The hand count may also be canceled (and the electronic tabulation of ballots will constitute the official count) if the officer in charge of elections removes enough board members (due to disruption or members being unable to perform their duty) such that there is an insufficient number of board members and the shortage cannot be remedied with substitutions.

The officer in charge of elections must notify the Secretary of State if the hand count will be canceled. Among other information, the notification to the Secretary of State must outline the steps taken by the officer in charge of elections to secure sufficient participation in the hand count.

If a sufficient number of members are present for the hand count, the officer in charge of elections must create boards by selecting at least two judges and one inspector per board. Each Hand Count Board must be comprised of designees from at least two recognized political parties and no more than 75% of the members may be from the same political party. Typically, for a three-member Hand Count Board, no more than two board members shall be members of the same political party entitled to continued representation on the ballot. All board members must take the oath specified in A.R.S. § 38-231(E).

Board members may not bring any electronic devices, black pens, blue pens, or cell phones into the designated location of the hand count. A.R.S. § 16-602(B)(7).

## II.    OBSERVATION OF THE HAND COUNT AUDIT

The hand count is not subject to the live video requirements of A.R.S. § 16-621(C). However, political party representatives who are observing the hand count may bring their own video cameras to record the hand count. The sole act of recording the hand count does not constitute sufficient grounds to for the officer in charge of elections to prohibit observers from recording or to remove them from the facility. However, the observation or recording may not interfere with the hand count. In addition, to preserve the right to a secret ballot, no recording of ballot content shall be allowed. If either situation occurs, the officer in charge of elections may remove the observers or board members from the facility or further restrict video recording. A.R.S. § 16-602(B).

## III.    TYPES AND QUANTITIES OF BALLOTS TO HAND COUNT

A post-election hand count audit includes a precinct hand count, which involves a manual count of regular ballots from selected precincts, and an early ballot hand count, which involves a manual count of a percentage of early ballots cast in the election.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

### A. Ballots Included in the Precinct Hand Count

For the precinct hand count, the officer in charge of elections must conduct a hand count of regular ballots from at least 2% of the precincts, or 2 precincts, whichever is greater. Provisional and conditional provisional ballots are not included in the hand count. A.R.S. § 16-602(B)(1).

In counties that utilize vote centers, each vote center is considered to be a precinct/polling location and the officer in charge of elections must conduct a hand count of regular ballots from at least 2% of the vote centers, or 2 vote centers, whichever is greater.

In a PPE, the officer in charge of elections must conduct a hand count of regular ballots from 2% of the polling places or vote centers established pursuant to A.R.S. § 16-248. A.R.S. § 16-602(B)(3).

### B. Ballots Included in the Early Ballot Hand Count

The officer in charge of elections is required to conduct a hand count of 1% of the total number of early ballots cast, or 5,000 early ballots, whichever is less. A.R.S. § 16-602(F). Counties may elect to audit a higher number of ballots at their discretion.

At least one batch of up to 400 early ballots from each central count machine used to tabulate early ballots and at least one accessible voting machine (if those machines independently tabulate votes) used during on-site early voting shall be selected for the early ballot hand count process. The officer in charge of elections must securely sequester those selected ballots along with their unofficial electronically-tabulated results for use in the early ballot hand count.

### IV.   SELECTING PRECINCTS/POLLING PLACES TO BE HAND COUNTED

The county political party chairpersons (or designees) shall take turns randomly drawing the precincts, vote centers, or consolidated polling places for the hand count. If a chairperson appoints a designee, the appointment must be in writing with the signature of the chairperson. The precincts/polling places shall be selected by lot without the use of a computer and the order of selection by the county political party chairpersons (or designees) shall also be by lot.

The selection of the precincts/polling locations shall not begin until all ballots voted in the precinct polling places have been delivered to the central counting facility. The unofficial vote totals from all precincts/polling locations shall be made public before selecting the precincts/polling locations to be hand counted. The selection of precincts/polling locations shall occur prior to the selection of the races to be counted.

At least 2% of the precincts/polling locations in the county (rounded to the nearest whole number) or two precincts/polling locations, whichever is greater, shall be selected at random from a lot consisting of every precinct/polling location in that county. For any election where there are

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

consolidated polling locations, the number of precincts to hand count should be calculated based on the number of active polling locations for that election.

For counties utilizing vote centers, each vote center shall be considered to be a precinct/polling location during the selection process and the officer in charge of elections must conduct a hand count of regular ballots from at least 2% of the vote centers, or two vote centers, whichever is greater.

The process for selecting the precincts for Primary and General Elections is:

1. **Determine Selection Order**: Select by lot the order in which the county political party chairpersons (or designees) shall draw precincts/polling locations. The selection order will apply for the entire hand count process.

2. **Create Lot**: Create a lot containing all precincts/polling locations in the county.

3. **Select Precincts**: Draw the required 2% or two precincts/polling locations to be counted from a lot containing every precinct/polling location in the county. Precincts/polling locations without any registered voters shall be excluded from the pool of available precincts/polling locations in the county. The county political party chairpersons (or designees) shall alternate selecting precincts/polling locations based on the order defined in Step 1 from the lot until the required number of precincts/polling locations is selected.

   a. If a tabulation unit from a vote center was selected as a precinct/polling location to be hand counted, a subsequential selection shall be conducted to select a touchscreen voting machine (if they independently tabulate votes, and if there are more than one) utilized at that vote center:

      • **Create Lot**: Create a lot containing all touchscreen voting machines used at the same vote center in which a tabulation unit was previously selected.

      • **Select Touchscreen Voting Machines**: Draw a corresponding number of touchscreen voting machines to be hand counted for each tabulation unit from a vote center that was previously selected, from a lot containing every touchscreen voting machine utilized at a vote center from which a tabulation unit was selected during the selection of the precincts/polling locations.

4. **Record Precincts.** The officer in charge of elections shall record the precincts/polling locations to be hand counted in the Master Precinct and Race Selection Worksheet. The precincts/polling locations shall be listed in the order selected. The order of the precincts/polling locations shall be used when selecting the contested races in Section V of this Chapter.

A.R.S. § 16-602(B)(1), (B)(2), (B)(2)(e), (C).

## V.    RACES ELIGIBLE TO BE HAND COUNTED

### A. Eligible Races Generally

The races to be counted in the hand count audit generally includes up to five contested races, which shall include:

- One statewide candidate race;

- One statewide ballot measure (if the election has a statewide ballot measure on the general election ballot);

- One legislative candidate race (Arizona House of Representatives or Arizona Senate); and

- One federal candidate race (United States House of Representatives or United States Senate);

- One presidential elector race (only in general elections with a race for President of the United States).

A.R.S. § 16-602(B)(2), (5).

A candidate race within one of the above-referenced categories is eligible for inclusion in the hand count only if the race is "contested," meaning there are more candidates seeking election or nomination than the number of seats available. A.R.S. § 16-602(B)(2)(f). Write-in candidacies do not create contested races if the race is not otherwise contested. A.R.S. § 16-602(B)(4).

If there are no contested races within one of the above-referenced categories, one or more additional contested races from one of the other categories must be selected by lot until the required number of contested races are selected for the hand count. A.R.S. § 16-602(B)(2)(e). For example, because a statewide ballot measure will not appear on the ballot during a primary election, an additional contested race from one of the other categories of eligible races must be drawn to make up the required four races.

For a primary election, each political party primary is considered a separate race. For example, the requirement to select one contested legislative race is satisfied by selecting either the Democratic or Republican primary election race. A.R.S. § 16-602(B).

For federal and legislative candidate races, only the type of office (House or Senate) must be selected, not any particular district. A.R.S. § 16-602(B)(2)(c)-(d). Therefore, if, for example, the race for U.S. House of Representatives has been selected to satisfy the federal candidate race category, and the county encompasses parts of three Congressional districts, ballots cast in any of the Congressional districts are eligible for the hand count audit as long as those races are contested.

### B. Eligible Races in Special Elections

For a special election to vote on a statewide ballot measure, all statewide ballot measures should be selected for the hand count audit (assuming there are four or fewer statewide ballot measures on the special election ballot).

For a special election to fill a Congressional vacancy:

- If a Congressional primary is contested, all contested political party races should be selected for the hand count audit for that special primary election (assuming there are four or fewer contested primaries);

- Regardless of whether a Congressional primary was contested, a contested special general election must be selected for the hand count.

### C. Eligible Races in PPEs

A hand count must be conducted following a PPE. A.R.S. § 16-602(B)(3). Since no other races may appear on a PPE ballot, all contested political party preference races should be selected for the hand count audit (assuming there are four or fewer contested preference races). A.R.S. § 16-241(A).

## VI.   SELECTING RACES TO BE HAND COUNTED

The county political party chairpersons (or designees) must randomly select the particular contested races to be hand counted, in the same order determined at the beginning of the hand count process and used to select precincts/polling locations.

If there are fewer than four contested races on the ballot, only the contested races on the ballot that fall within one of the four categories shall be included in the hand count audit. If there are no contested races in any of the designated categories in an election, no hand count will take place. A.R.S. § 16-602(B)(2)(e)-(f).

### A. Selecting Races for Primary and General Elections

The following process shall be used to select the races to be counted for both the precinct hand count and early ballot hand count for primary and general elections:

1. **Determine the race categories available for this election**. The possible race categories shall be statewide candidate, federal candidate, state legislative candidate, and ballot measure, and, in a presidential election year, presidential elector. Some categories may not appear on the ballot for a particular election. A.R.S. § 16-602(B)(2).

2. **Create a master list of all contested races**. Create a list by race category of all possible contested races. This list will be referenced when creating the lots of possible races to count. The entries on this list shall be specific. Examples for the Primary would include Governor/Democrat or State House/Republican. Examples for the General would include State Treasurer or State Senate.

3. **Determine the required <u>number</u> of races that will be counted from each category.** There should be one race for each required category unless a category does not have an eligible race.

   a. **Determine if there is a contested presidential elector race.**

   - If there is no contested presidential elector race on the ballot, place a zero in the "Presidential Elector" line of Section B of the Master Precinct and Race Selection Worksheet, *see* sample form in Chapter 17.

   - If there is a contested presidential elector race, place a tick mark in the "Presidential Elector" line.

   b. **Determine if there is a contested statewide candidate race.**

   - If there is no contested statewide candidate race on the ballot, place a zero in the "Statewide Candidate" line of Section B of the Master Precinct and Race Selection Worksheet and place a tick mark in the "Additional Races Needed" line.

   - If there is a contested statewide candidate race, place a tick mark in the "Statewide Candidate" line.

   c. **Determine if there is a statewide ballot measure race.**

   - If there is no statewide ballot measure on the ballot, place a zero in the "Statewide Ballot Measure" line of Section B of the Master Precinct and Race Selection Worksheet and place a tick mark in the "Additional Races Needed" line.

   - If there is a statewide ballot measure race, place a tick mark in the "Statewide Ballot Measure" line.

   d. **Determine if there is a contested federal candidate race on any of the ballots in the precincts/polling locations selected.**

   - If there is no contested federal candidate race in any of the selected precincts/polling locations, place a zero in the "Federal Candidate" line of Section B of the Master Precinct and Race Selection Worksheet and place a tick mark in the "Additional Races Needed" line.

   - If there is a contested federal candidate race, place a tick mark in the "Federal Candidate" line.

   e. **Determine if there is a contested state legislative race on any of the ballots in the precincts/polling locations selected.**

   - If there is no contested state legislative race in any of the selected precincts/polling locations, place a zero in the "State Legislative" line of Section B of the Master Precinct and Race Selection Worksheet and place a tick mark in the "Additional Races Needed" line.

   - If there is a contested state legislative race, place a tick mark in the "State Legislative" line.

    **f. If additional races are needed, determine if the number of races can be satisfied by an additional race(s) in another category.**

- The priority for selecting other categories, if needed, is as follows: statewide candidate, statewide ballot measure, federal candidate and then state legislative. All additional races shall be fulfilled with the highest priority race category possible. The categories of races to be hand counted and the number per category shall be recorded on the Master Precinct and Race Selection Worksheet.

**4. Separate out the contested races by category and create selection lots for each category from which a race or races will be selected.**

    **a.** For the statewide candidate lot in a primary election, each contested party race shall be placed in the lot (*e.g.*, Governor/Republican, State Mine/Democrat).

    **b.** For the federal candidate lot, the officer in charge of elections shall evaluate each of the precincts/polling locations selected to determine the possible federal candidate race types for the lot. If one or more precincts/polling locations have a contested federal candidate race, that race type shall be placed in the lot. In a primary election, each contested party race type shall be placed in the lot. The selections for U.S. House of Representative shall not contain the specific district since the names of the candidates may vary among the sampled precincts/polling places (*e.g.*, U.S. House/Republican and U.S. House/Democrat).

    **c.** For the state legislative lot, the officer in charge of elections shall evaluate each of the precincts/polling locations selected to determine the possible contested state legislative race types for the lot. If one or more precincts/polling locations have a contested state legislative race, that race type shall be placed in the lot. In a primary election, each contested party race type shall be placed in the lot. The selections for state legislative race shall not contain the specific district since the names of the candidates may vary among the sampled precincts/polling locations (*e.g.*, State House/Democrat, State House/Republican, State House/Libertarian).

- If any candidate race is for a vacancy, the vacancy race shall be treated as a separate race for creating lots. For example, if an AZ Corporation Commission seat is vacant and the term ends in 2010 and there is also a race for the seat with a term that ends in 2012, the Corporation Commission Term Ending 2010 and Corporation Commission Term Ending 2012 will be two separate races when creating the Statewide Candidate lot.

**5. Select the contested races to be hand counted.** The county political party chairpersons (or designees) shall alternate selecting races continuing with the order defined when selecting precincts/polling locations. The races will be selected by lot until the required number of races is selected. Categories of contested races shall be drawn in the following order until the required number of contested races is reached: presidential elector, statewide candidate, statewide ballot measure, federal candidate, and state legislative candidate. Document any selected race(s) in Section C of the Master Precinct and Race Selection Worksheet.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- If a selected candidate race does not have a contested race in each of the selected precincts/polling locations, only the precincts/polling locations where there is a contested candidate race shall be hand counted for that race. The machine counts of the races in this category shall be added together and measured against the hand counts of the races in this category to determine if the total difference falls within the designated margin.

6. **The races selected for the precinct hand count shall be the same used for the early ballot hand count.** Because the batches used for the early ballot hand count do not correspond to the precincts/polling locations selected for the precinct hand count, the names of candidates for the selected races may differ among the various early ballot batches selected for the audit. The machine counts of the races in such categories shall be added together and measured against the hand counts of the races in those categories to determine if the total difference falls within the designated margin.

7. **Create Hand Count Board Worksheets.** The officer in charge of elections shall create a Hand Count Board Worksheet for each Hand Count Board. The worksheet documents the members of the Hand Count Board and what races they will be hand counting.

### B. Selecting Races for a PPE

The following process shall be used to select the races to be hand counted for a PPE:

1. **Determine Selection Order.** Select by lot the order in which the county political party chairpersons (or designees) shall choose from the pool of available precincts.

2. **Create Lot of Polling Locations.** Create a lot of available polling locations. A county may consolidate precincts in a PPE. Only actual polling locations will be placed in the lot of available polling locations.

3. **Select Precincts.** Draw the required 2% or two polling locations to be counted among a lot containing every actual polling location for the PPE.

4. **Record Precincts.** The officer in charge of elections shall record the polling locations to be hand counted in Section A of the Master Precinct and Race Selection Worksheet.

5. **Create Lot of Contested Races.** Create a lot of the contested races available for the PPE. Each political party that is participating in the PPE will count as a contested race.

6. **Select Race(s).** If there are four contested races or less, all possible races will be hand counted. If there are more than four contested races, the county political party chairperson (or designee) who is next (from Step 1), shall choose a contested PPE race to be hand counted. The political party chairpersons (or designees) will alternate until four contested races are selected.

7. **Record Race.** The officer in charge of elections shall record the PPE race(s) to be hand counted in Section B of the Master Precinct and Race Selection Worksheet.

A.R.S. § 16-602(B)(3).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## VII.   HAND COUNT TABULATING METHODS

There are two approved methods of hand counting votes:

- Stacking method: used for hand counting optical/digital scan ballots; and

- Three-person call-out method: used for hand counting votes from the VVPAT of an accessible voting machine.

For either method, each judge shall be given a tally sheet that shall be marked with the precinct/polling location, the race, and the names of the candidates for that particular race. *See* Sample Hand Count Tally Sheet in <u>Chapter 17</u>.

### A. Stacking Method for Optical/Digital Scan Ballots

The stacking method is used for hand counting optical/digital scan ballots, and may also be used to hand count paper ballots printed by accessible ballot marking devices. For the stacking method, the inspector picks up each ballot and sorts the ballots into piles with the assistance of the other two board members (the judges) and tallies the number of votes for each candidate in the particular race using the process below.

#### 1. Processing Ballots with Write-In Votes

1. Since write-in votes may not have been tabulated yet, it is very important to keep ballots with write-in votes segregated from ballots without write-in votes. To do so, the first judge counts the total number of ballots with write-in votes. The second judge shall recount the total number of ballots with write-in votes. If the totals from both judges match, the result shall be documented in the Hand Count Tally Sheet.

   - Ballots with write-in votes may be marked with yellow highlighter to enable them to be readily segregated from other ballots after the hand count of the batch is complete.

2. The inspector shall announce the specific race to be counted, identify that race on the ballot, and separate out ballots with over-votes or no selection for that race. The two judges shall confirm that the inspector performs this step correctly.

3. The inspector shall announce the first candidate/selection listed in the race and begin the **stacking process** for that candidate/selection:

   - The inspector shall hold up the ballots one at a time and declare the voter's choice for the specific candidate/selection in the race. All ballots with a vote for that candidate/selection shall be placed in one stack (the "yes" stack) and all ballots with a vote for any other candidate/selection in the race shall be placed in a separate stack (the "no" or "other" stack). The judges shall view each ballot and ensure that the inspector is placing the ballot in the right stack.

   - After the sorting process is complete, one judge shall count each pile in stacks of 10 or 25 (or another agreed-upon pre-determined number) and then the other

judge shall recount each stack. The inspector shall enter the number of ballots in each stack onto the Hand Count Tally Sheet.

- The inspector shall move the "yes" stack aside, perform the stacking process for the next candidate/selection in the race using the ballots in the "no" or "other" stack, and repeat until done recording totals for all candidates/selections on the Hand Count Tally Sheet.

  • If the race being counted is for multiple seats (*e.g.*, vote for two), it will be necessary to go through entire set of ballots for each candidate, without the option of setting aside the "yes" stack as described in the prior step.

- If there is any question about the intent of the voter, the determination of voter intent must be made by unanimous consent of all three Hand Count Board members using the standards established in Chapter 11, Section IX. If a unanimous decision cannot be reached by the Hand Count Board, the officer in charge of elections shall make the final decision regarding the voter's intent. A notation of the final decision shall be logged on the tally sheet and the inspector shall place the ballot into the proper stack for counting.

4. After completing the stacking process, the inspector shall place the ballots with write-in votes back in the write-in envelope and keep those ballots separated from the regular ballots.

## 2. Processing Regular Ballots

1. The first judge shall count the total number of regular ballots. The second judge shall recount the total number of regular ballots. If the totals from both judges match, the result shall be documented in the Hand Count Tally Sheet.

2. The inspector announces the specific race to be counted, identifies that race on the ballot, and separates out ballots with over-votes or no selection for that race. The two judges shall confirm that the inspector performs this step correctly.

3. The inspector announces the first candidate/selection listed in the race and begins the **stacking process** for that candidate/selection, using the same procedure described above for ballots with write-in votes.

4. After completing the stacking process, the inspector shall place the regular ballots back in the regular ballot envelope and keep those ballots separated from the ballots with write-in votes.

## B. Three-Person Call-Out Method for Ballots Cast on Accessible Voting Devices that Independently Tabulate Votes

The three-person call method may be used when hand counting votes from an accessible voting machine that independently tabulates votes, including the VVPAT (*see* Section VII(C) below).

1. The inspector shall take the ballots one at a time. On each ballot, the inspector shall find the races that were selected to be hand counted and announce the races one at a

time. The judges will find the race on the proper "DRE Hand Count Tally Sheet." The inspector shall then announce the name of the candidate that the voter marked on the ballot for that race or, if a ballot measure, the voter's selection for the measure.

- The determination of voter intent must be made by unanimous consent of all three Hand Count Board members, using the standards established in Chapter 11, Section IX. If a unanimous decision cannot be reached by the Hand Count Board, the officer in charge of elections shall make the final decision regarding the voter's intent. A notation of the final decision shall be logged on the tally sheet.

2. The judges shall place a tick mark by the voted candidate's name on the tally sheet. After processing each batch of 25 ballots, the judges shall compare the number of tick marks with each other. If the results from both judges match, the judges shall cross through the remaining numbers in the row. If the results do not match, the Hand Count Board shall recount the batch of 25 ballots until the results from both judges match.

3. Upon completion of the hand count, the judges shall sign the final "Hand Count Cumulative Sheet."

### C. Process for Hand Counting Accessible Voting Audit Tapes

The Hand Count Board, under the direction of the officer in charge of elections, shall:

1. Unroll the VVPAT generated by the accessible voting device and verify the precinct.

2. Mark through all the voided or spoiled votes cast with a red pen/pencil in a manner that is visually distinguishable but does not interfere with the ability to read the paper.

3. Mark through all provisional votes with a red pen/pencil in a manner that is visually distinguishable but does not interfere with the ability to read the paper.

4. Ensure that the voided or spoiled and provisional votes are not counted.

5. If the paper roll is unable to be read for any reason, a new precinct shall be selected for the precinct hand count in accordance with Section VIII of this Chapter. If no other precinct/polling location is available for selection, the unreadable ballots shall be read using the printed version of the electronic ballots as generated by the accessible voting device. The officer in charge of elections shall make the determination of whether a paper roll is readable.

6. Utilize the Three-Person Call Tabulating Method.

7. If multiple accessible voting devices were used in the precinct or for early voting, repeat the process above for each paper roll generated by the Accessible Voting Devices.

8. Record results on the Accessible Voting Device Hand Count Tally Sheet.

## VIII.  PROCEDURES FOR CONDUCTING THE HAND COUNT

The officer in charge of elections must commence the hand count with a public announcement and explanation of the procedure. The hand count must begin within 24 hours after the polls close on Election Day and must be completed before the county canvass. A.R.S. § 16-602(I). The start of the hand count can be defined as the official training of the Hand Count Board members, selection of the precincts and races, coordinating the hand count with the party leaders, or any other activity that furthers the progress of the hand count for that election.

Hand count board members shall not bring cellular phones, other electronic devices, or pens with black or blue ink into the official hand counting area.

Throughout the hand count, the officer in charge of elections must retain custody and control of all hand counted ballots. A.R.S. § 16-602(H).

### A. Precinct Hand Count

#### 1. Precinct Hand Count Process

The initial precinct hand count must be conducted according to the following procedure for each race selected for the hand count.

1. The officer in charge of elections: (i) ensures each board is properly assembled and has been provided all necessary forms and supplies; (ii) apportions ballots to the Hand Count Boards; and (iii) announces which specific race will be hand counted. The boards are not provided with the electronically-tabulated results for any race at this time.

2. The inspector or one of the judges fills out a **Hand Audit Tally Sheet** (*see* sample forms in Chapter 17) for each race to be hand counted.[52] The inspector signs each Hand Audit Tally Sheet. All Hand Audit Tally Sheets from the precinct hand count shall be provided to the officer in charge of elections after completion.

   a. Each judge shall fill out the top of the Hand Audit Tally Sheet, listing the precinct/polling location name, precinct/polling location number, inspector name and their name as the judge. Each judge shall also check the box for the proper election type.

   b. For a candidate race, list each candidate's name on a separate counting line of the Hand Audit Tally Sheet. For ballot measures, list "Yes" on the first counting line and "No" on the second counting line.

3. For optical/digital scan ballots, the Hand Count Board shall separate ballots with write-in votes from the other precinct/polling location ballots and hand count each group of ballots using the stacking method described in Section VII(A) above. For ballots cast on accessible voting devices that independently tabulates votes and VVPATs, the Hand Count Board

---

[52] *See* Sample Count Tally Sheet – Stacking Method, and Hand Count Tally Sheet – Three-Person Call Out Method, in Chapter 17.

shall conduct the hand count using the three-person call-out method, *see* Sections VII(B)-(C) above.

4. The Hand Count Board shall list the totals for each candidate on the appropriate Hand Audit Tally Sheet. Each precinct/polling location shall have one Hand Audit Tally Sheet for the optical/digital scan ballots and one for the accessible voting devices, unless the accessible voting device produces a paper ballot read by a tabulation unit and those paper ballots were hand counted using the stacking method. At this point, the hand count results for the batch is compared to the machine count results and the Auditor initials the Hand Count Tally Sheet to indicate that there are no discrepancies in the batch totals.

5. The officer in charge of elections shall create a Precinct Hand Count Margin Worksheet (*see* sample form in <u>Chapter 17</u>) for each race that was hand counted and calculate the hand count margin using the Precinct Hand Count Margin Worksheet and following the steps below in the presence of the county political party chairpersons (or designees):

   a. **Fill out Top of Form.** Fill out the date of the election. Circle the proper election (general, special, primary, or PPE). State the race category that the worksheet is for (presidential elector, statewide candidate, statewide ballot, federal candidate, or state legislative candidate). List the specific race (*e.g.*, State Senator, Corporation Commission/Democrat). List the hand count round (1st hand count, 2nd hand count, expanded hand count or final hand count).

   b. **Enter Hand Count Totals.** For each precinct/polling location that was hand counted, enter separately the hand count totals for the optical/digital scan ballots and the hand count totals for the accessible voting devices. These totals will come directly from the Hand Count Tally Sheets. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of hand counted votes shall be calculated and noted in the worksheet.

   c. **Enter Machine Count Totals.** For each precinct/polling location that was hand counted, enter separately the machine totals for the optical/digital scan ballots and the machine totals for the accessible voting devices. These totals will come directly from Election Management Systems. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of machine counted votes shall be calculated and noted in the worksheet.

   d. **Calculate Absolute Difference.** For each candidate's total or ballot measure yes/no total, calculate the absolute difference between the hand count and the machine count. The absolute difference is the difference between the two numbers listed as a positive value (*e.g.*, [100 – 99] or [99 – 100] will both have an absolute value of one). The total absolute value for each precinct/machine type shall be calculated and noted in the worksheet.

   e. **Calculate Grand Totals.** Add up all the machine count totals for a particular race category to calculate the "Grand Total Machine Count." Add up all the absolute

differences for a particular race category to calculate the "Grand Total Absolute Difference."

  f. **Calculate Hand Count Margin.** Divide the "Grand Total Absolute Difference" by the "Grand Total Machine Count" and multiply the result by 100 to calculate the margin in a percentage form.

6. Compare the hand count margin for each race to the designated margin established by the Vote Count Verification Committee (established by the Secretary of State pursuant to A.R.S. § 16-602(K)) to determine if it is in the acceptable range or if a second or expanded precinct hand count is required. The applicable designated margin is available on the Secretary of State's website at https://www.azsos.gov/elections/voting-election/voting-equipment.

7. If the calculated margin for the specific race from the Precinct Hand Count Margin Worksheet is less than the designated margin for the precinct hand count established by the Vote Count Verification Committee, the precinct hand count will be deemed concluded and the results of the electronic tabulation will constitute the official count for that race. The officer in charge of elections shall indicate on the Hand Count Cumulative Sheet that the count is complete and two members, one of each political party from each Hand Count Board present, shall sign the sheet.

## 2. Second Precinct Hand Count

If any hand counted race results in a calculated margin that is equal to or greater than the designated margin for the precinct hand count, a second precinct hand count of that race and of those same ballots shall be performed. A new Precinct Hand Count Margin Worksheet shall be created for the second precinct hand count for the race in question.

If the second precinct hand count results in a calculated margin that is less than the designated margin, the precinct hand count will be concluded and the results of the electronic tabulation will constitute the official count for that race. The officer in charge of elections shall indicate on the Hand Count Cumulative Sheet that the count is complete and a representative from each political party present shall sign the sheet. A.R.S. § 16-602(C).

## 3. Expanded Precinct Hand Count

If the second precinct hand count results in a margin that is equal to or greater than the designated margin, the precinct hand count shall be expanded to include a total of twice the original number of randomly selected precincts/polling locations. Those additional precincts/polling locations (equal to the original number of randomly selected precincts/polling locations, so that the total number of ballots hand counted is twice the original number) shall be selected in accordance with the process set forth in Section IV. If the remaining number of precincts/polling locations for a race is less than the original number of precincts/polling locations selected for the first hand count, then the total remaining precincts/polling locations shall be included in the expanded hand count. A.R.S. § 16-602(C). A new Precinct Hand Count Margin Worksheet shall be created for the expanded Precinct Hand Count race in question.

If the calculated margin for the expanded precinct hand count (as calculated based on the results of the original hand count plus the expanded hand count) is less than the designated precinct hand count margin, the precinct hand count will be concluded and the results of the electronic tabulation will constitute the official count for that race. The officer in charge of elections shall indicate on the Hand Count Cumulative Sheet that the count is complete and a representative from each political party present shall sign the sheet. ARS § 16-602(E).

### 4. Full Precinct Hand Count

If the expanded precinct hand count results in a calculated margin that is equal to or greater than the designated precinct hand count margin, the precinct hand count shall be extended to include the entire jurisdiction for that race. If the jurisdictional boundary for that race includes any portion of more than one county, the full precinct hand count shall not be extended into the precincts/polling locations that are outside of the county that is conducting the full precinct hand count. A new Precinct Hand Count Margin Worksheet shall be created for the full precinct hand count race.

If necessary, the officer in charge of elections may work with the county political party chairpersons (or designees) to select additional Hand Count Board members using the same selection procedure for the initial Hand Count Board members.

The full hand count must be repeated for a particular race until the results of a full hand count are identical to the results of another full hand count for that race. When an identical hand count result is achieved, the hand count (not the electronic tabulation) constitutes the official result for the race in that county. The precinct hand count totals shall be added to the total count of early ballots, provisional ballots, conditional provisional ballots, and write-in votes to determine the final count and the officer in charge of elections shall report that final count to the Secretary of State. A.R.S. § 16-602(D).

### B. Early Ballot Hand Count

The early ballot hand count is a hand count of a percentage of early ballots actually voted. The number of early ballots to be counted is 1% of the total number of early ballots cast or 5,000 early ballots, whichever is less. Each machine used for early ballot tabulation shall have at least one batch included in the early ballot hand count, and batch sizes may not exceed 400 ballots. A.R.S. § 16-602(F).

### 1. Early Ballot Hand Count Process

The selected early ballots shall be hand counted according to the following procedure for each race selected for the early ballot hand count.

1. Prior to beginning the tabulation of early ballots, the officer in charge of elections shall determine the total number of early ballots <u>sent</u> for the election. From this number the officer in charge of elections shall calculate a number that equals 1% of the number or

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

5,000, whichever is less. Because the number of early ballots <u>voted</u> (including in-person early voting) will generally be lower than the number of early ballots sent, this calculation should yield a number of ballots that meets or exceeds the number of early ballots required to be hand counted.

2. The officer in charge of elections shall then determine the number and size of the batches. The number of batches must be enough to include at least one batch per machine used for early ballot tabulation. That number must then be doubled to account for the possibility of an expansion from 1% to 2% of early ballots required to be hand counted. The batch size can be any amount up to 400 ballots. The size of the batch should start with the 1% number divided by the number of machines used for early ballot tabulation. The table below provides some examples.

| | County A | County B | County C |
|---|---|---|---|
| Number of early ballots sent to voters | 4,000 | 60,000 | 800,000 |
| Number of machines used for early ballot tabulation | 2 | 4 | 3 |
| 1% of early ballots sent to voters, or 5,000, whichever is less | 40 | 600 | 5,000 |
| 2% of early ballots sent to voters, or 10,000, whichever is less (in case expansion is needed) | 80 | 1,200 | 10,000 |
| Size of Batches | 20 | 150 | 400 (max) |
| Number of Batches Required to Meet 1% | (40/20) = 2 | (600/150) = 4 | (5,000/400) = 13 |
| Number of Batches Required to Meet 2% | (80/20) = 4 | (1,200/150) = 8 | (10,000/400) = 25 |

3. The county political party chairpersons (or designees) will work with the officer in charge of elections to randomly select one or more batches of early ballots included in the initial tabulation. This includes at least one batch from each machine used to tabulate early ballots, and shall securely sequester those ballots, along with their unofficial tally reports, for use in the early ballot hand count.

   a. Every precaution should be taken to ensure that no partial or complete tallies of the early election board be released or divulged before all precincts have reported or one hour after the closing of the polls on Election Day, whichever occurs first.

4. From the sequestered early ballots, the officer in charge of elections will randomly select the required number of early ballots with which to conduct a hand count of the same races that are being hand counted in the precinct hand count and create batches consisting of up to 400 ballots per batch. The total number of ballots divided into batches shall satisfy the total number of early ballots required to be hand counted. At least one batch shall be created from early ballots tabulated on each machine used for tabulating early ballots. The batches may be selected from any presorted early ballot returns from Step 3 above. The batches

Chapter 11:
Hand Count Audit — *VIII. Procedures for Conducting the Hand Count*

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

used for the early ballot hand count need not correspond to the precincts/polling locations selected for the precinct hand count. The names of the candidates may vary among the batches if necessary. The machine counts of the races in this category shall be added together and measured against the hand counts of the races in this category to determine if the total margin of difference falls within the designated margin.

5. If a county has an EMS that can produce sub-reports of results, then the officer in charge of elections will complete the steps necessary to create a batch report for each batch and print out the sub-report.

6. The ballots included in a batch, as well as the baseline and batch tally reports, will be clearly labeled and sequestered separate from any other ballots or batches. The machine that the batches of early ballots were counted on shall be identified and listed with the batch. Each batch may include a stack of regular ballots and a stack of ballots with write-in votes.

7. This process shall continue until a sufficient number of batches have been created.

8. On Election Day, the officer in charge of elections shall calculate the exact number of early ballots tallied up to that point in time. From this number, the officer in charge of elections shall calculate a number equaling 1% of the total early ballots. This shall serve as the number of ballots to audit.

9. The political party chairpersons shall randomly select one or more batches until enough ballots have been selected to equal the number of ballots to audit.

10. If needed, for each race selected for audit, the officer in charge of elections shall calculate the electronic total for the race by subtracting the batch tally total for that race from the baseline tally total for that race. This shall be done for all selected batches. All races selected for the precinct hand count shall also be hand counted in the early ballot hand count. For the early ballot hand count, the races shall be listed in Section C of the Master Precinct and Race Selection Worksheet.

11. A Hand Count Tally Sheet shall be created for each possible contested race listed on the Master List of All Contested Races.

12. The Hand Count Board members shall then perform a hand count of the optical/digital scan ballots using the stacking method. If accessible voting devices that independently tabulate votes are used for early voting, then at least one batch from each accessible voting device shall be included in the early ballot hand count and hand counted using the three-person call-out method.

13. The officer in charge of elections shall add all hand count results together for each race, including any accessible voting device results, add all electronic results together for each race, including any accessible voting device, and calculate the margin of difference using the Early Ballot Hand Count Margin Worksheet as follows:

    a. **Fill out Top of Form.** Fill out the date of the election. Circle the proper election (general, special, primary, or PPE). State the race category that the worksheet is for (presidential elector, statewide candidate, statewide ballot, federal candidate, or state legislative candidate). List the specific race (*e.g.*, State Senator, Corporation

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Commission/Democrat). List the hand count round (1st hand count, 2nd hand count, expanded hand count or final hand count).

b. **Enter Hand Count Totals.** Enter separately the hand count totals for the optical/digital scan ballots and the hand count totals for the accessible voting devices. These totals will come directly from the Hand Count Tally Sheets. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of hand counted votes shall be calculated and noted in the worksheet.

c. **Enter Machine Count Totals.** Enter separately the machine totals for the optical/digital scan ballots and the machine totals for the accessible voting devices. These totals will come directly from Election Management Systems. Each candidate's counts or yes/no counts for ballot measures from the Hand Count Tally Sheet must be listed in the table. The total number of machine counted votes shall be calculated and noted in the worksheet.

d. **Calculate Absolute Difference.** For each candidate's total or ballot measure yes/no total, calculate the absolute difference between the hand count and the machine count. The absolute difference is the difference between the two numbers listed as a positive value (*e.g.*, [100 – 99] or [99 – 100] will both have an absolute value of one).

e. **Calculate Grand Totals.** Add up all the machine count totals for a particular race category to calculate the "Grand Total Machine Count." Add up all the absolute differences for a particular race category to calculate the "Grand Total Absolute Difference."

f. **Calculate Hand Count Margin.** Divide the "Grand Total Absolute Difference" by the "Grand Total Machine Count" and multiply the result by 100 to calculate the margin in a percentage form.

If the margin of difference between the manual count of early ballots compared to the electronic tabulation of those ballots is less than the designated early ballot hand count margin, the electronic tabulation shall be the official count of the race and included in the canvass. No further hand count of the early ballots shall be conducted. The officer in charge of elections or Hand Count Board shall mark off and sign the Early Ballot Hand Count Margin Worksheet as completed. A.R.S. § 16-602(F).

## 2. Second Early Ballot Hand Count

If the margin of difference is equal to or greater than the designated early ballot hand count margin for any race, the Hand Count Board shall repeat the hand count of the same early ballots for that race.

If the second early ballot hand count results in a margin that is less than the designated margin, the early ballot hand count will be concluded and the results of the electronic tabulation will constitute the official count for that race. No further hand count of the early ballots shall be conducted. The

Hand Count Board shall mark off the chart as completed and two members, one of each political party, from each Hand Count Board present shall sign the chart. A.R.S. § 16-602(F).

### 3.  Expanded Early Ballot Hand Count

If the margin is equal to or greater than the designated early ballot hand count margin for any race, the Hand Count Board shall conduct an expanded early ballot hand count for that race, to include a number of additional early ballots equal to 1% of the total early ballots cast or an additional 5,000 ballots, whichever is less, to be randomly selected from the batch or batches of sequestered early ballots. The Hand Count Board shall hand count the additional early ballots using the steps spelled out in Chapter 10, Section VIII(B)(1) above. A.R.S. § 16-602(F).

To calculate the hand count margin for the expanded early ballot hand count, add the first and expanded electronic count and add the first and expanded hand count together and then calculate the margin using the equation in Step 13 in Chapter 10, Section VIII(B)(1) above.

If the expanded early ballot audit results in a difference for that race that is equal to or greater than the designated early ballot hand count margin, the manual counts shall be repeated for that race until a manual count results in a margin that is less than the designated margin.

All results shall be documented in writing and signed by the officer in charge of elections and all county political party chairpersons (or designees) present. The officer in charge of elections shall label the ballots used for the early ballot hand count and preserve them separately. A.R.S. § 16-602(F).

### C.  Review of Election Program by a Special Master

If a full jurisdiction-wide hand count was necessary, the Secretary of State must make available the escrowed election program source code for that county's election equipment to the superior court for that county. The superior court for that county must then appoint a special master to review the election program.

The special master must:

1.  Have expertise in software engineering;

2.  Not be affiliated with an election equipment or software vendor;

3.  Not be affiliated with a candidate who appeared on the ballot in that county;

4.  Be bound by a signed nondisclosure agreement with respect to the contents of the election program.

The special master must prepare a public report to the superior court and to the Secretary of State with their findings on any discrepancies found in the election program.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The Secretary of State's Election Equipment Certification Committee must review this report when considering the continued certification of that election equipment and software. A.R.S. § 16-602(J).

| IX. | STANDARD FOR DETERMINING VOTER INTENT IN HAND COUNT |
|---|---|

Ballots with vote choices that were marked improperly, corrected or erased, or otherwise read as blank or unclear by the electronic tabulation machine have likely been duplicated using the procedures in Chapter 10, Section II(D) prior to being tabulated and/or committed to the EMS. Where necessary, the Hand Count Board members must also determine the voter's intent on such ballots, using the following standards:

1. If the voter selected more than the allowed number of selections for a particular race and the voter's intended choice(s) cannot be positively determined, then no vote is counted for any candidate for that race or for or against that ballot measure.

2. If the voter did not select any choice for a particular race or ballot question, then no vote is counted for any candidate for that race or for or against that ballot measure.

3. If the voter clearly and unambiguously indicated their intended vote choice on the face of the ballot in a manner consistently used throughout the rest of the ballot but the vote choice was nonetheless unreadable by the electronic tabulation equipment, either due to the voter marking the ballot using an improper method or for other reasons, the Hand Count Board must count the voter's intended choice in the hand count.

   • If the voter properly marked the ballot (for example, filled in the oval or connected the arrow) but the ballot face includes other extraneous marks, the extraneous marks should be disregarded and the Hand Count Board must consider the properly marked vote choice as the voter's intended selection.

4. If the voter attempted to erase or undo their original vote choice, the Hand Count Board must determine which mark is clearest and count it as the proper vote choice.

5. If the voter marked the ballot using an improper method (for example, circling a vote choice rather than filling an oval) such that the selections were unreadable by the electronic tabulation equipment, but the markings indicate the clear and unambiguous intent of the voter and the improper method is consistently used throughout the rest of the ballot, the Hand Count Board must count the voter's selections in the hand count, even if a ballot is slightly defaced or soiled.

The Hand Count Board members must reach a unanimous decision as to voter intent. If the Hand Count Board members are unable to reach a unanimous decision in a particular race, the officer in charge of elections shall make the final determination of voter intent. A.R.S. § 16-602(G).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## X.  HAND COUNT OF RECOUNTED ELECTIONS

A precinct hand count audit must also be conducted following a court-ordered recount pursuant to A.R.S. § 16-661 through A.R.S. § 16-663(B). This means any ballots that have been electronically re-tabulated for purposes of a recount are treated as if a new election took place and therefore are again subject to hand count audit requirements.

The same procedures for a precinct hand count shall be followed except that the officer in charge of elections and the political parties must conduct a hand count of at least 5% of precincts for the recounted race. A.R.S. § 16-663(B). In counties that conduct vote center-based elections, the officer in charge of elections and the political parties must conduct a hand count of at least 2% of the total number of ballots that were subject to the recount.

## XI.  REPORTING RESULTS OF THE HAND COUNT

Within two business days of the completion of the precinct hand count and early voting hand count, and prior to the county canvass, the officer in charge of elections must electronically submit a report to the Secretary of State that includes the following information:

- Dates of the precinct and early ballot hand counts;

- Precincts or vote centers selected for the precinct hand count;

- Races selected;

- Summary of the results by precinct/voting location and race for both the electronically tabulated vote totals and the hand counted totals; and

- The margins from the hand count when compared to the electronically tabulated results.

The Secretary of State must post the results on the Secretary of State's website. A.R.S. § 16-602(I).

# CHAPTER 12:
# OTHER POST-ELECTION DAY PROCEDURES

## I.    REPORTING ELECTION RESULTS

The officer in charge of elections may publicly release election results at the earlier of:

- The time when all ballots cast on Election Day at voting locations have been tabulated and publicly reported; or

- One hour after all polls under the jurisdiction of the officer in charge of elections have closed on Election Day.

Polls presumptively close at 7:00 p.m. on Election Day unless extended by court order. A.R.S. § 16-551(C); A.R.S. § 16-565(A).

For elections involving a federal, statewide, or legislative candidate race or a statewide ballot measure, the officer in charge of elections must promptly transmit those election results to the Secretary of State, prior to or immediately after making those results public. For the initial transmission of election results on Election Day, and as additional results are tabulated prior to the county canvass, the officer in charge of elections must transmit election results to the Secretary of State in the required electronic format using an application specified by the Secretary of State. A.R.S. § 16-622(B).

## II.    CONDUCTING POST-ELECTION LOGIC & ACCURACY TEST

A post-election logic and accuracy (L&A) test of tabulation equipment must be performed by the officer in charge of elections after the official count has been completed but before the county canvass.

The post-election L&A test must be performed using the same election program and tabulation equipment used for the pre-election L&A test and the election. The same test ballots and test script from the pre-election L&A test must be utilized.

The post-election L&A test should generate the same results as the pre-election L&A test. If the post-election L&A test does not yield the same results, the officer in charge of elections should visually assess the test ballots and/or voting equipment for errors or malfunctions. If the problem still cannot be resolved, the officer in charge of elections should contact the Secretary of State and/or the County Attorney for further assistance.

## III. FILING FEDERAL POST-ELECTION REPORTS

### A. Election Assistance Commission Reporting

Within 90 days after a federal general election (or any later date established by the federal Election Assistance Commission (EAC)), the Secretary of State must submit a comprehensive post-election report to the EAC in accordance with the format prescribed by the EAC. The report must be prepared in conjunction with, and based on data from, County Recorders and/or the other officers in charge of elections. A.R.S. § 16-142(B).

### B. Department of Justice UOCAVA Reporting

At the request of the United States Department of Justice, the Secretary of State must report the following information following a federal election:

- The number of UOCAVA ballots requested for the election;

- The number of UOCAVA ballots timely transmitted; and

- The number of UOCAVA ballots that were not timely transmitted.

If the County Recorder believes that UOCAVA ballots will be transmitted late, the County Recorder should notify the Secretary of State as soon as practicable.

County Recorders must provide the required data to the Secretary of State in order to meet the federal reporting requirements. 52 U.S.C. § 20308.

## IV. POST-ELECTION REIMBURSEMENT REQUESTS

### A. Reimbursement for Conducting Local Election

Within 90 days after conducting an election on behalf of a local jurisdiction, the County Recorder or other officer in charge of elections must prepare an accounting report which itemizes all expenditures incurred by the county in administering the election. The report must include the specific charges for each local jurisdiction which participated in the election. Local jurisdictions that participated in the election may request and receive a copy of the report. A.R.S. § 16-205(D).

### B. Reimbursement for PPE Expenses

Within 90 days after a PPE, the County Recorder or other officer in charge of elections should submit a proper claim to the Secretary of State for reimbursement of expenses incurred in conducting the election. The claim must include the number of registered voters in the county as of January 2 of the PPE year.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The Secretary of State must reimburse each county that submitted a claim at the specified statutory rate per active registered voter in the county as of January 2. A.R.S. § 16-250(B).[53]

The Secretary of State may reimburse a county at a rate greater than $1.25 per active registered voter, in the Secretary of State's discretion, if the County Recorder or other officer in charge of elections: (1) submitted a proper claim that outlined the county's actual expenses to conduct the PPE; and (2) demonstrates that reimbursement at the statutory rate would significantly jeopardize the county's ability to comply with federal and state law. A.R.S. § 16-250(B).

### C. Reimbursement for Sample Ballots

The Board of Supervisors or officer in charge of elections shall seek reimbursement from the Secretary of State for each sample ballot mailed to a county household. The Board of Supervisors or officer must present a certified claim that specifies the actual cost for printing, labeling and postage, along with supporting documentation. The Secretary of State shall direct payment of such authenticated claims from funds of the Secretary of State's Office. A.R.S. § 16-510(C).

---

[53] Although A.R.S. § 16-250(B) specifies that reimbursement for the PPE must be based on the number of active registered voters as of "January 1" of the year of the PPE, the 54th Legislature, First Regular Session, via Senate Bill 1154, amended A.R.S. § 16-168(G) to require County Recorders to report voter registration statistics as of January 2 each year, rather than January 1. Accordingly, January 2 is used in lieu of January 1 here.

# CHAPTER 13:
# CERTIFYING ELECTION RESULTS

## I.   DETERMINING ELECTION RESULTS

In a partisan primary election:

- The candidate who receives the largest number of votes must be declared the party nominee for that office and issued a certificate of nomination by the Board of Supervisors (or designee).

    - If more than one candidate may be nominated, the candidates who receive the largest number of votes will be declared nominees and issued certificates of nomination in accordance with the number to be nominated. Nomination entitles the candidate to be placed on the general election ballot.

    A.R.S. § 16-645(A), (F).

- In order for a write-in candidate to become the nominee of a party with continued representation on the ballot, the candidate:

    - Must receive the largest number of votes; and

    - Must receive at least as many votes as the number of nomination petition signatures required to appear on the primary election ballot for that office.

At the general election:

- Unless otherwise specified in law, the candidate who receives the largest number of votes must be declared elected to that office and issued a certificate of election by the Board of Supervisors (or designee), A.R.S. § 16-647; A.R.S. § 16-650; and

- A ballot measure that is approved by a majority of votes cast for the measure will be declared to be law, Ariz. Const. Art. IV, Pt. 1, § 1(13).

    - If two or more conflicting measures (in whole or in part) are approved by voters at the same election, the measure with the most votes will prevail with respect to any provisions that are in conflict. Ariz. Const. Art. IV, Pt. 1, § 1(12).

    - Upon completion of the canvass by the Secretary of State, the Governor will issue a proclamation of the votes cast for and against any constitutional amendments, initiatives, and referenda, and declare those approved by a majority to be law. A.R.S. § 16-651.

A.R.S. § 16-649 specifies the result of the election in the event of a tie.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## II.   CANVASSING THE ELECTION

The governing body conducting an election must meet and canvass the election results of each precinct or election district. The purpose of the canvass is to officially certify the election. The canvass includes vote totals for all races tabulated by voting equipment (including early ballots, regular ballots, and provisional ballots) and write-in votes.

A canvass must be conducted by the statutory deadline, but should not be conducted until all necessary audits have been completed to verify the accuracy and integrity of the election results.

### A. County Board of Supervisors Canvassing Duties

A Board of Supervisors must canvass the official election results in a public meeting. The official election results must include the following information:

1. A Statement of Votes Cast, which includes:

   a. The number of ballots cast in each precinct and in the county;

   b. The number of ballots rejected in each precinct and in the county;

   c. The titles of the offices up for election and the names of the persons (along with the party designation, if any, of each person) running to fill those offices;

   d. The number of votes for each candidate by precinct and in the county;

   e. The number and a brief title of each ballot measure; and

   f. The number of votes for and against each ballot measure by precinct and in the county.

   A.R.S. § 16-646.

2. A cumulative Official Final Report, which includes:

   a. The total number of precincts;

   b. The total number of ballots cast;

   c. The total number of registered voters eligible for the election;

   d. The number of votes for each candidate by district or division, including a designation showing which candidate received the highest number of votes;

      • In a PPE, the number of votes for each candidate by congressional district;

      • In a primary election, the report must contain the party designation for each office; whereas in a general election, the report must contain the party designation for each candidate;

   e. The number of votes for and against each ballot measure by district, including a designation of which choice received the highest number of votes;

   f. The total number of votes in each district or division.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

3. A Write-Ins Vote Report, which includes the name and number of votes for each authorized write-in candidate by precinct.

## 1. Deadline to Canvass Results

The Board of Supervisors should canvass the election results only after all necessary audits have been performed and any discrepancies have been addressed by the County Recorder or other officer in charge of elections.

Assuming all prerequisites have been met, the Board of Supervisors must canvass the election by the required deadline, which varies by type of election.

- For primary elections and PPEs, the Board of Supervisors must canvass the results within 10 days after the election. A.R.S. § 16-241(C); A.R.S. § 16-645(B).

- For all other elections held on a consolidated election date (including general elections), the Board of Supervisors must canvass between six and 20 days after the election. A.R.S. § 16-642(A).

- For special elections, the Board of Supervisors must canvass the election according to the deadline established in the order calling the election.

## 2. Scope of Duty to Canvass

The Board of Supervisors may postpone the canvass on a day-to-day basis if the results from any precinct are missing. If precinct results are still missing after six postponements, the Board of Supervisors must canvass the remaining election results. A.R.S. § 16-642(C).

The Board of Supervisors has a non-discretionary duty to canvass the returns as provided by the County Recorder or other officer in charge of elections and has no authority to change vote totals or reject the election results.

## 3. Preserving and Transmitting Canvass Results

Once the Board of Supervisors has certified the election results, the Official Final Report and Statement of Votes Cast from the canvass must be published on the website of the officer in charge of elections. An original signed canvass should be preserved as a permanent record by the Board of Supervisors.

For any elections that include a federal, statewide, or legislative office, or a statewide ballot measure, the Board of Supervisors or officer in charge of elections must transmit the official canvass to the Secretary of State (in an electronic format determined by the Secretary of State) within the applicable statutory deadline. A.R.S. § 16-645(B). In addition, a certified copy must be promptly mailed to the Secretary of State to be preserved as a permanent record.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

If the county conducted an election on behalf of a local jurisdiction, the Board of Supervisors or officer in charge of elections should promptly transmit a copy of the official canvass to those jurisdictions as well.

### 4. Reports Included with County Canvass

#### a. *Provisional Ballot Report*

The County Recorder or other officer in charge of elections must submit a provisional ballot report to the Secretary of State with the primary and general election canvasses. The report must contain the following information about provisional ballots cast at that election:

1. The number of voters in each precinct;

2. The number of provisional ballots cast in each precinct;

3. The number of provisional ballots verified/counted in each precinct;

4. The number of provisional ballots not verified/counted in each precinct, along with the reason for not doing so;

5. The number of conditional provisional ballots cast in each precinct;

6. The number of conditional provisional ballots verified/counted in each precinct; and

7. Whether the uniform procedures were followed for determining whether a provisional ballot is counted or not counted.

#### b. *Accessibility Report*

The County Recorder or other officer in charge of elections must submit an accessibility report to the Secretary of State with the general election canvass (which includes information from both the primary and general election). The report must contain the following information about the recently conducted elections:

1. The number of voting locations in the county;

2. The number of voting locations that were fully handicap-accessible under the Americans With Disabilities Act (ADA);

3. The number of voting locations that were not fully handicap-accessible under the ADA. If some locations were not fully handicap-accessible, the report must identify:

   • The address or description of the voting location;

   • The number of voters registered in the precinct(s) in question (if the county conducts polling place-assigned elections); and

   • The number of ballots cast at the voting location;

4. If some locations were not fully handicap-accessible prior to use on Election Day, the efforts undertaken prior to the election to either make the voting location fully accessible or identify an alternative location that was fully accessible; and

5.  The measures being undertaken to bring inaccessible voting locations into compliance or to replace inaccessible voting locations with accessible locations.

## c.  *Voter Education Report*

The County Recorder or other officer in charge of elections must submit a voter education report to the Secretary of State with the general election canvass (which includes information from both the primary and general election). The report must contain the following information about the recently conducted elections:

1.  The percentage of voter turnout;

2.  The number of early ballots requested;

3.  The number of early ballots cast;

4.  The number of early ballots that were verified and tabulated;

5.  The number of provisional ballots voted;

6.  The number of public service announcements about the election prior to the election, including during the 90-day period prior to election day, including a summary of media outreach (such as paid advertising, social media posts, public events, interviews, etc.);

7.  The number of voter education and outreach events, including seminars or community meetings that provided voter education;

8.  The number of locations where the County Recorder or officer in charge of elections provided voter information for public display and the length of time such information was on public display; and

9.  A comparison of all of the statistics referenced above with the same statistics from the previous equivalent federal election.

## d.  *Poll Worker Training Report*

The County Recorder or other officer in charge of elections must submit a poll worker report to the Secretary of State with the general election canvass (which includes information from both the primary and general election). The report must contain the following information about the recently conducted elections:

1.  The number of poll workers trained;

2.  A description of the types of election board workers trained for each voting location, including:

    •  The number of inspectors, marshals, judges, and clerks trained and assigned to each voting location;

    •  The number of "premium" poll workers (if any) trained and assigned to each voting location or other area; and

- The number of "troubleshooters" (if any) trained and assigned to each voting location or other area;

3. The number of provisional ballots cast at each voting location; and

4. The number of signature rosters or e-pollbooks used at each voting location.

### e.  *Political Party Ballot Report*

Concurrently with submitting its primary election canvass, the County Recorder or other officer in charge of elections must file a report with the Secretary of State that identifies the total number of partisan ballots, by party, selected by voters registered as no party preference, independent, or any political party not recognized for continued representation on the ballot. A.R.S. § 16-645(B).

### B.  Secretary of State's Canvassing Duties

The Secretary of State must canvass the results for any elections that include a federal, statewide, or legislative office, state appellate court judges, and statewide ballot measures.

#### 1.  Deadline to Canvass Results

For primary elections and PPEs, the Secretary of State must canvass the results on or before the second Monday after the election. A.R.S. § 16-241(C); A.R.S. § 16-645(B). In the case of a PPE, the Secretary of State must promptly transmit the results to the state chairpersons of any political party that had candidates on the ballot.

For a general election, the Secretary of State must canvass the results on the fourth Monday following the election. A.R.S. § 16-648(A). The Secretary of State must conduct the general election canvass at a public meeting and in the presence of the Governor and Attorney General. A.R.S. § 16-648(A). If any statewide ballot measures appeared on the ballot, the Secretary of State must canvass the results in the presence of the Governor and Chief Justice of the Arizona Supreme Court. A.R.S. § 16-648(B).

#### 2.  Scope of Duty to Canvass

The Secretary of State may postpone the canvass on a day-to-day basis if the results from any county are missing. A.R.S. § 16-648(C). All counties must transmit their canvasses to the Secretary of State, and the Secretary of State must conduct the statewide canvass, no later than 30 days after the election. A.R.S. § 16-648(C).

The Secretary of State has a non-discretionary duty to canvass the returns as provided by the counties and has no authority to change vote totals or reject the election results.

### 3.  Preserving and Transmitting Canvass Results

Once the Secretary of State has certified the election results, the official canvass (along with the official final precinct level results files from each county) must be published on the Secretary of State's website. An original signed canvass must be preserved as a permanent record.

Following a general election with at least one statewide ballot measure, the Secretary of State must promptly transmit the results of each ballot measure to the Governor. A.R.S. § 16-648(B).

Following an electoral college to select the President of the United States, the Secretary of State must transmit Certificates of Ascertainment and Certificates of Vote to the Archivist of the United States, President of the United States Senate, and the Chief Judge of the United States District Court for the District of Arizona by the deadline provided under federal law. *See* https://www.archives.gov/federal-register/electoral-college/officials.html.

### C. City and Town Canvassing Duties

A city or town council must canvass the official election results of city or town elections in a public meeting. A.R.S. § 16-403.

A certified copy of the official canvass must be filed with the city or town clerk, which must be preserved as a permanent record. A.R.S. § 16-646(D).

### D. Special Taxing District Canvassing Duties

A special taxing district must canvass the official results for its elections in a public meeting and present the canvass results to the applicable Board of Supervisors at the Board's next regularly scheduled meeting. A.R.S. § 16-642(B).

For the purposes of an election contest pursuant to A.R.S. § 16-673, the canvass is not complete until the special taxing district results have been presented to the Board of Supervisors. A.R.S. § 16-642(B). The clerk of the Board of Supervisors is responsible for maintaining and preserving the certified permanent copy of the official canvass. A.R.S. § 16-646(D).

### E. County School Superintendent Canvassing Duties

Within 30 days following the date of any school election, the County School Superintendent must meet with the Chairperson of the Board of Supervisors or designee to canvass the returns in accordance with procedures for the canvass of returns in a general election. A.R.S 15-426(B); A.R.S. § 15-302(A)(8).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## III.  CONDUCTING AN AUTOMATIC RECOUNT

### A. Vote Margins that Trigger Recount

A recount must be performed following a general, primary, or special election if the margin of votes, based on the official canvass, between the two candidates receiving the highest number of votes for a particular office, or the votes cast for and against a ballot measure, are equal to the lesser of:

1. 1/10 of 1% or less of the total number of votes cast for the top two candidates or the ballot measure in question; or

2. One of the following margins:

   • 200 votes for statewide or federal office where the total number of votes cast exceeded 25,000;

   • 200 votes for a ballot measure;

   • 50 votes for statewide or federal office where the total number of votes cast was 25,000 or less;

   • 50 votes for legislative office; or

   • 10 votes for county, city, or town office.

A.R.S. § 16-661(A).

The automatic recount requirements do not apply for the following offices:

• Precinct committeemen;

• School district or joint technical education district board member;

• Community college district board member;

• Special taxing district board member; or

• Presidential candidate in a PPE.

A.R.S. § 16-249(B); A.R.S. § 16-661(B).

### B. Method of Initiating a Recount

If the official canvass demonstrates that a recount is required, the recount is automatically triggered but must be initiated by court order. A.R.S. § 16-662.

Promptly following the canvass, the applicable filing officer must:

• File a lawsuit in the appropriate superior court, citing to the applicable vote margin that triggered the automatic recount and including the canvass;

- Consult with the applicable officer(s) in charge of elections and estimate the time period it will take to recount the affected ballots; and

- Obtain a signed court order that initiates the recount and sets a court hearing to announce the results, and then distribute the order to the applicable officer(s) in charge of elections.

A.R.S. § 16-662; A.R.S. § 16-663(A). A third-party may not request a recount as a matter of right.

### C. Method of Conducting the Recount

For any race other than the Secretary of State's race, the Secretary of State is responsible for ensuring that the electronic voting equipment to be used for the recount is available and properly programmed. Unless the Board of Supervisors race is subject to an automatic recount, the Secretary of State may delegate this duty to the Board of Supervisors, who in turn may delegate this duty to the officer in charge of elections. If a Board of Supervisors race is subject to an automatic recount, the Secretary of State may directly delegate this responsibility to the officer(s) in charge of elections. A.R.S. § 16-664(A).

If the Secretary of State's race is the race to be recounted, the Governor is responsible for performing the oversight duties normally performed by the Secretary of State in a recount. A.R.S. § 16-664(B).

If the Secretary of State delegates oversight to the Board of Supervisors, ballots from the race to be recounted will be tabulated using the same electronic voting equipment that was used during the election, except the equipment must be reconfigured to only tabulate the race to be recounted. This reconfiguration constitutes a different "program" from the program used to initially tabulate votes. A.R.S. § 16-664(C).

Regardless of which electronic voting equipment is used for the recount, the equipment must be L&A tested by the officer in charge of elections (and, in the case of a legislative, statewide, or federal office or statewide ballot measure, by the Secretary of State as well).

The recount must be conducted by running paper ballots from the applicable race through the designated electronic voting equipment. For votes that were cast on an accessible voting device that independently tabulates votes, the votes (as indicated by the voter verifiable paper audit trail) must be duplicated onto paper ballots, which thereafter must be tabulated by the electronic voting equipment reprogrammed for the recount.[54]

While the recount is in progress, the officer(s) in charge of elections may not publicly release vote totals from the recount.

At the conclusion of the recount, the officer(s) in charge of elections must provide the official results to the filing officer who initiated the recount. Once the filing officer has collected all the

---

[54] A recount conducted in accordance with this section is deemed to be "conducted in the accordance with the laws pertaining to contests of elections." A.R.S. § 16-663(A).

recount results, the filing officer must appear at the scheduled court hearing and provide the sealed results to the court. The court must declare the winner in open court. The court announcement and/or order constitute the official result for the recounted race, making it unnecessary to re-canvass the race.

Where there are discrepancies between the initial result and the result from the automatic recount, the officer in charge of elections shall undertake reasonable efforts to reconcile the discrepancy and provide a report to the Secretary of State explaining the reasons for any discrepancy.

In a candidate race, the prevailing candidate must be issued a Certificate of Nomination or Certificate of Election at the conclusion of the court proceedings by the Clerk of Board of Supervisors. A.R.S. § 16-647.

## IV.   ISSUING CERTIFICATES OF NOMINATION AND ELECTION

Upon completion of the applicable canvass, a city or town council (or designee) must promptly issue a Certificate of Nomination (following a primary or first election) or Certificate of Election (following a general or second election) to each candidate who received the highest number of votes for each office at the election.

Likewise, upon completion of the county's canvass, the Clerk of the Board of Supervisors must promptly issue a Certificate of Nomination (following a primary election) or Certificate of Election (following a general election) to each candidate who received the highest number of votes for the following offices:

- All county offices;
- Precinct committeemen;
- Community college district board member; and
- Special taxing district board member. A.R.S. § 16-645(A).

Certificates of election for school district board members must be issued by the county school superintendent following the applicable canvass. A.R.S. § 15-426.

However, a certificate may not be issued under the following conditions:

- A Certificate of Nomination may not be issued to a write-in candidate for a city or town office, and that candidate may not advance to the general or run-off election if the write-in candidate did not receive a number of votes equivalent to at least the number of signatures required by A.R.S. § 16-322 for nominating petitions for the same office, A.R.S. § 9-821.01(F);
- A Certificate of Nomination may not be issued to a write-in candidate from a political party recognized for continued representation who did not receive at least as many votes as the number of signatures required to appear on the primary election ballot, A.R.S. § 16-645(E);

- A Certificate of Nomination may not be issued to a write-in candidate of a political party not recognized for continued representation who did not receive a plurality of the votes of the party for the office for which the candidate is a candidate, A.R.S. § 16-645(D); and

- A Certificate of Election may not be issued to a write-in candidate for precinct committeemen or nonpartisan office who did not receive at least as many votes as the number of signatures required to appear on the ballot, A.R.S. § 16-322(A)(6), (8)-(10), A.R.S. § 16-645(C).

Following completion of the statewide canvass (and subject to the same exception for write-in candidates from a political party not recognized for continued representation), the Secretary of State must promptly issue a Certificate of Nomination or Certificate of Election to each legislative, statewide, and federal candidate who received the highest number of votes for each office at the election. The Certificate of Election must be signed by the Secretary of State and authenticated with the Great Seal of the State of Arizona. A.R.S. § 16-645(B); A.R.S. § 16-650.

## V.    ISSUING BALLOT MEASURE PROCLAMATIONS

At the conclusion of a statewide canvass that contains a ballot measure, the Governor must issue a proclamation that:

- Proclaims the number votes cast for and against each proposed constitutional amendment;

- Proclaims the number of votes cast for and against each proposed initiative or referendum; and

- Declares which measures were approved by a majority of those voting on the measures.

A.R.S. § 16-651; A.R.S. § 19-126(A). If there are two or more conflicting measures approved at the same election, the Governor must proclaim which measure received the greatest number of affirmative votes. A.R.S. § 19-126(B).

For any approved measure, the Secretary of State must cause the measure to be printed with the general laws enacted by the next ensuing session of the Arizona Legislature, along with the date of the Governor's proclamation declaring the measure to be approved. A.R.S. § 19-127(B).

## VI.    STORAGE OF BALLOTS AND RETURNS OF THE ELECTION

After the county canvass is complete, the officer in charge of elections must seal the voted ballots and deliver these ballots and official returns to the County Treasurer (or a secure facility contracted by the County Treasurer) for secure storage. A.R.S. § 16-624(A). If voting equipment produces digital ballot images, the digital ballot images must be retained and preserved in the same manner. A.R.S. § 16-625. Unused ballots are not subject to retention.

The County Treasurer must keep the ballots and official returns unopened and unaltered for a period of 24 months following an election for federal office and six months for all other elections. During these retention periods, ballots and official returns may only be opened pursuant to a court

order (including for the purpose of a recount or election contest). In the absence of any recount or election contest, the County Treasurer must dispose of the ballots and official returns after the applicable retention period without opening or examining the contents. A.R.S. § 16-624(A), (D).

If a county conducts an election on behalf of a local jurisdiction, the county officer in charge of elections may transfer the official returns to the local jurisdiction (which thereafter must be preserved by the local jurisdiction in lieu of the County Treasurer).

# CHAPTER 14:
# REGULATION OF PETITION CIRCULATORS

Arizona law prescribes certain requirements for circulators and signers regarding the gathering of petition signatures. Failure to adhere to these requirements may result in petition signatures being invalidated. More information regarding the regulation and registration of circulators, including the Secretary of State's recommended best practices for circulating petition sheets, is available on the Secretary of State's website at www.azsos.gov/elections.

## I.   QUALIFICATIONS FOR PETITION CIRCULATORS

Any person who is qualified to register to vote in Arizona, or who would be qualified to register to vote in Arizona if they were an Arizona resident, may circulate petitions for a candidate, ballot measure, or political party recognition. A.R.S. § 16-321(D); A.R.S. § 16-801(A)(2); A.R.S. § 19-114(A).

Certain individuals are prohibited from circulating initiative, referendum, or recall petitions due to perceived conflict of interest. No County Recorder or Justice of the Peace may circulate petitions for an initiative, referendum, or recall. Any signatures gathered on petitions circulated by prohibited individuals are void. A.R.S. § 19-114(A); A.R.S. § 19-205.02.

In addition, the following individuals may not circulate statewide initiative or referendum petitions:

- Those who have had a civil or criminal penalty imposed for a violation of Title 16 or Title 19 within the last five years;
- Those who have been convicted of treason or a felony and have not had their civil rights restored; and
- Those who have been convicted of any crime involving fraud, forgery, or identity theft.

A.R.S. § 19-118(D).

## II.   CIRCULATOR REGISTRATION AND DISCLOSURE REQUIREMENTS

A petition circulator must register with the Secretary of State's Office if the circulator:

- is *paid* to circulate statewide initiative or referendum petitions (whether or not the circulator is a resident of this state); or
- is *not a resident* of this state (whether or not the circulator is paid) and will circulate: (i) a *statewide* initiative or referendum petition, or (ii) a candidate petition in any Arizona jurisdiction (statewide, county, city, or town).

A.R.S. § 19-118(A); A.R.S. § 16-321(D).

## A. Paid Circulators

A circulator may be paid or act as a volunteer.

- A volunteer circulator is an individual who does not receive any compensation for circulating petitions.

- A "paid circulator" is defined as an individual who receives compensation for circulating a statewide initiative or referendum petition, but does not include a paid employee of a political committee unless that employee has or will obtain 200 or more signatures on a statewide initiative, referendum, or recall petition in an election cycle. A.R.S. § 19-118(I)(1)-(2).

    - Statewide initiative and referendum petition circulators may not be paid based on the number of signatures collected. Signatures collected by circulators who are paid per-signature are void. A.R.S. § 19-118.01.

Any paid circulator, whether a resident or non-resident of Arizona, is required to register with the Secretary of State prior to circulating a *statewide initiative or referendum* petition. Failure to do so invalidates any initiative or referendum petition signatures collected by the circulator prior to registration. A.R.S. § 19-118(A); A.R.S. § 19-102(E); A.R.S. § 19-204(D).

All initiative, referendum, and recall petition circulators, whether or not they are required to register with the Secretary of State, must indicate their paid or volunteer status by checking the appropriate box on each petition sheet prior to circulation. Failure to indicate on an initiative or referendum petition sheet whether the circulator is paid or acting as a volunteer invalidates any signatures collected on that petition sheet. A.R.S. § 19-101(C)-(D); A.R.S. § 19-102(C)-(E); A.R.S. § 19-204(C)-(D).[55]

## B. Non-Resident Circulators

Circulators who are not residents of Arizona must register with the Secretary of State prior to circulating: (i) a *statewide* initiative or referendum petition; or (ii) a *candidate* petition in any Arizona jurisdiction (statewide, county, city, or town). Failure to do so invalidates the signatures collected by the circulator prior to registration. A.R.S. § 19-118(A); A.R.S. § 16-321(D).

A circulator who lists an out-of-state address on the back side of a petition sheet is deemed to be a non-resident circulator.

---

[55] The "paid circulator" or "volunteer" status boxes may be pre-marked by the circulator or, with the consent and knowledge of the circulator, the committee or petition circulating organization may pre-mark the correct box on behalf of the circulator.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## C. Circulator Registration Procedures

Circulator registration must be conducted as prescribed by the Secretary of State through the electronic Circulator Portal (https://apps.azsos.gov/apps/election/circulatorportal/). A circulator registration is not complete until the Secretary of State confirms the registration in writing. A.R.S. § 19-118(A); A.R.S. § 16-452(A). Once a circulator is properly registered, the circulator must select in Circulator Portal the petition(s) they will circulate (by serial number and/or candidate name).

Circulators must satisfy the following requirements when registering with the Secretary of State through the Circulator Portal:

- Provide his/her name, residential address, telephone number, and email address;

- Consent to the jurisdiction of Arizona courts in resolving any disputes concerning the circulation of petitions by that circulator;

- Indicate the committee's address in Arizona (for statewide initiative or referendum petitions) or a designated address in Arizona (for candidate petitions) at which the circulator will accept service of process related to disputes concerning circulation of that circulator's petitions;

- Indicate the circulating organization at which the circulator is employed (if applicable); and

- For circulators of statewide initiative or referendum petitions, provide a notarized circulator affidavit declaring that the circulator is eligible to register, that all information contained in the registration is true and correct, and that the circulator has read and understands Arizona election laws applicable to the collection of signatures for a statewide initiative or referendum. Exact language to be included in the affidavit can be found at A.R.S. § 19-118(B)(5).

  - Circulators registering through Circulator Portal will be prompted to upload an electronic copy of the notarized circulator affidavit, which must be accepted by the Secretary of State's Office, before the circulator is permitted to register to circulate a statewide initiative or referendum petition. The Secretary of State may also require circulators to submit the original notarized circulator affidavit to the Secretary of State's Office within a specified time period after completion of electronic registration.

A.R.S. § 19-118(B).

The applicable committee and/or the circulating organization that employs petition circulators, at the direction of the applicable committee, may coordinate with their circulators to gather the necessary information, including, if applicable, notarized circulator affidavits, and facilitate submission of registration applications through Circulator Portal.

The Secretary of State's Office has no obligation to review the substance of circulator registrations to ensure that accurate or proper information has been provided. The circulator remains solely responsible for compliance with all legal provisions.

### 1. Issuance of Circulator ID Number

Within five business days after submission of a circulator registration application, the Secretary of State will assign a random circulator ID number to each such circulator. A.R.S. § 19-118(C). The circulator ID number is permanently assigned to the circulator and must be used for all petitions being circulated by that particular individual (regardless of the election cycle or which petition is being circulated).

The circulator ID number of registered circulators must be printed on the front and back of each statewide initiative or referendum petition sheet. A.R.S. § 19-121(A)(2); A.R.S. § 19-121.01(A)(1)(c). In contrast to the petition serial number, the circulator ID number may be placed on the petition sheet at any time prior to submitting the petition sheets to the Secretary of State. The circulator ID number may be pre-printed on petition sheets and need not be written on the petition sheet by the circulator personally.

### 2. Updating or Canceling Circulator Registrations

An individual circulator may update or cancel their circulator registration for any or all measures directly through the Secretary of State's Circulator Portal.

In addition, an authorized representative of the committee serving as an initiative or referendum proponent (*i.e.,* the committee designated on the initiative or referendum serial number application) may cancel the registration of circulators for its measure by providing to the Secretary of State's Office, in writing, a list of circulator names and identification numbers and a request that those circulators' registration for the specific measure be canceled. The committee must also provide notice of the cancellation request to each affected circulator.

Such cancellation does not affect the validity of signatures collected by those circulators before the cancellation, but any signatures collected by canceled circulators thereafter are invalid if circulator registration was otherwise required.

### D. Service of Process on Registered Circulators

Circulators who are required to register must provide an address in Arizona at which the circulator will accept service of process related to disputes concerning circulation of that circulator's petitions. For circulators of statewide initiative and referenda petitions, this address must be the address of the committee in this state for which the circulator is gathering signatures. In the event of litigation regarding the petition circulated, service of process on the circulator is effected by delivering a copy of the subpoena to that person individually, by leaving a copy of the subpoena

with a person of suitable age, or by mailing a copy of the subpoena to the committee or circulator by certified mail to the address provided on the circulator's registration application. A.R.S. § 19-118(B)(4); A.R.S. § 16-315(D).

## III.   SIGNATURE GATHERING AND VERIFICATION REQUIREMENTS

Every person who signs a paper petition must do so in the presence of a circulator, therefore a circulator must personally witness each collected signature.

- For an initiative, referendum, or recall petition, the circulator must execute the circulator affidavit of verification on the back of the petition before a notary after collecting signatures on a paper petition sheet. A.R.S. § 19-112(A), (C)-(D); A.R.S. § 19-205.

- For a candidate petition or petition for new party recognition, the circulator must sign the circulator verification statement on the back of the petition sheet, but notarization is not required. A.R.S. § 16-321(D).

Additionally, an initiative, referendum, or recall petition must have a copy of the official and correct title and text attached to the petition sheet before any signatures are obtained on that sheet. A.R.S. § 19-112(C); A.R.S. § 19-202.01(D); A.R.S. § 19-203(D). For statewide measures, the political committee or circulator must ensure that the staple is placed within the designated area in the upper-left corner of the petition sheet.

Qualified electors who require assistance in completing and/or signing a petition due to a physical disability or medical condition shall not be prevented from signing a petition on that basis. Petition circulators should utilize a separate petition sheet for signatures from voters who require assistance to complete or sign the petition due to a physical disability or medical condition. As a best practice, circulators should also execute a supplemental affidavit (in addition to the circulator affidavit on the petition sheet) specifying that the voters who signed that petition sheet required assistance. In addition, the person who assisted the voter may sign a declaration: (i) stating that the person assisted the voter in the voter's presence and at the voter's specific request; and (ii) providing the name and residence address of the voter who was assisted, the name and residence address of the person who assisted the voter, the title and serial number of the petition signed, and the date. Any such supplemental affidavits and/or voter assistance declarations should be retained by the committee in the event of a challenge and will not be accepted or approved by the filing officer.

More information regarding signature collection requirements and circulator verification, including the Secretary of State's recommended best practices, will be available on the Secretary of State's website at www.azsos.gov/elections.

# CHAPTER 15:
# POLITICAL PARTY RECOGNITION

A recognized political party is entitled to representation on a partisan primary election ballot and subsequent placement of the prevailing candidate on the general election ballot. This chapter describes the process by which a political party achieves or maintains official recognition.

A political party may obtain first-time or new-party recognition by submitting a sufficient number of valid petition signatures to the appropriate filing officer. A.R.S. § 16-801(A); A.R.S. § 16-802. Alternatively, an existing political party maintains its recognition by either receiving a sufficient number of votes in the last general election or by achieving a sufficient number of registered voters. A.R.S. § 16-801(B); A.R.S. § 16-804(A)-(B).

## I.  NEW PARTY RECOGNITION

A group of qualified electors seeking to form a new political party is not required to establish a political committee unless the group raises or spends at least the current adjusted registration threshold pursuant to A.R.S. § 16-931(A)(1) in connection with the effort to seek new party recognition. A.R.S. § 16-905. If the group is required to register as a committee (or decides to voluntarily register), the group must register as a political action committee. A.R.S. § 16-905(B). A group may only register as a political party committee after the filing officer has granted new party recognition pursuant to A.R.S. § 16-803. A.R.S. § 16-905(E).

Qualified electors seeking to form a new political party must comply with the following requirements, depending on the jurisdiction.

### A.  Requirements for Seeking New Party Recognition

#### 1.  Statewide Recognition

To qualify for statewide recognition, qualified electors must timely submit the following documents to the Secretary of State:

- An affidavit signed by 10 qualified electors, requesting that a new political party be formed; and

- Petition signatures equal to at least 1⅓ percent of the total votes cast for Governor at the last preceding general election at which a Governor was elected. The number of votes cast for Governor are determined based upon the applicable statewide canvass, calculated by the Secretary of State and published on the Secretary of State's website.

A.R.S. § 16-801(A).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The new party affidavit must be completed on a form prescribed by the Secretary of State. Within seven business days of filing, the Secretary of State must send the affidavit to the applicable County Recorders to verify that each signer is a qualified elector. A.R.S. § 16-801(A)(1). The Secretary of State must transmit the affidavit to the County Recorders, and the County Recorders must verify that the affidavit signers are qualified electors, in accordance with the deadlines outlined in A.R.S. § 16-803(B) and A.R.S. § 16-803(E). The Secretary of State may deny party recognition if the County Recorders determine there are less than 10 qualified electors who signed the new party affidavit.

The new party petitions must be substantially in the form of candidate petitions but must be captioned "Petition for Political Party Recognition." A.R.S. § 16-801(A)(2)-(3). Petitions for statewide recognition must be printed on a form prescribed by the Secretary of State. Petition signatures must be gathered from registered voters in at least five different counties, and at least 10% of the required total of qualified signers must be registered in counties with populations of less than 500,000 persons. A.R.S. § 16-801(A)(1). Petition signatures may not be dated more than 24 months from the date of filing.

Both the new party affidavit and new party petitions must be filed with the Secretary of State at least 250 days before the primary election for which the party seeks recognition. A.R.S. § 16-803(A). The Secretary of State may require electronic filing for the affidavit and new party petitions.

## 2. County Recognition

To qualify for county recognition, qualified electors must timely submit petition signatures equal to at least 2% percent of the total votes cast for County Attorney at the last preceding general election at which the County Attorney was elected. The number of votes cast for County Attorney is determined based upon the applicable county canvass. The petitions must be filed with the officer in charge of elections. A.R.S. § 16-802.

The new party petitions must be substantially in the form of candidate petitions but must be captioned a "Petition for Political Party Recognition." A.R.S. § 16-801(A)(2)-(3). Petitions for county recognition must be printed on a form prescribed by the officer in charge of elections. Petition signatures must be gathered from registered voters in at least ¼ of the election precincts of the county. A.R.S. § 16-802. Petition signatures may not be dated more than 24 months from the date of filing.

New party petitions must be filed with the officer in charge of elections at least 250 days before the primary election for which the party seeks recognition. A.R.S. § 16-803(A).

## 3. Simultaneous Statewide and County Recognition

Qualified electors may simultaneously seek statewide and county recognition by filing the original petitions with the county officer in charge of elections, and filing a certified copy with the

Secretary of State. Petitions must be in the form prescribed by the Secretary of State. A.R.S. § 16-803(A).

Both filing officers must process the petitions in accordance with the procedures applicable to their jurisdiction. Accordingly:

- The electors must file the required affidavit with the Secretary of State; and
- The electors must submit petition signatures equal to at least:
    - 1⅓ percent of the total votes cast for Governor at the last preceding general election; and
    - 2% of the total votes cast for applicable County Attorney at the last preceding general election.

A.R.S. § 16-801(A); A.R.S. § 16-802.

If the petitions do not meet the requirements for certification at the statewide or county level, the political party will not be recognized in that jurisdiction.

## 4. City or Town Recognition

To qualify for city or town recognition, qualified electors must timely submit petition signatures equal to at least 2% of the total votes cast for Mayor at the last preceding election at which the Mayor was elected.

If a Mayor is not elected by voters (for example, the Mayor is appointed or elected by other councilmembers, not the city's or town's electorate), qualified electors must timely submit petition signatures equal to at least 2% of the highest total votes cast for any councilmember at the last preceding election at which a councilmember was elected. A.R.S. § 16-802. The number of votes cast for Mayor or councilmember are determined based upon the applicable city or town canvass.

New party petitions must be filed with the applicable city or town clerk. A.R.S. § 16-802.

The new party petitions must be substantially in the form of candidate petitions, but must be captioned "Petition for Political Party Recognition." A.R.S. § 16-801(A)(2)-(3). Petitions for municipal recognition must be printed on a form prescribed by the city or town clerk. Petition signatures must be gathered from registered voters in at least ¼ of the election precincts of the city or town. A.R.S. § 16-802. Petition signatures may not be dated more than 24 months from the date of filing.

New party petitions must be filed with the city or town at least 250 days before the primary (or first) election for which the party seeks recognition. A.R.S. § 16-803(A).

### B. Processing Statewide New Party Petitions

#### 1. Secretary of State Processing

##### a. *Out-of-County Signature Eliminations*

Signatures must be grouped by county on the petition sheets. Signatures collected outside the county of the majority of signers must be eliminated from a petition sheet. A.R.S. § 16-803(B)(1).

The Secretary of State must initially assume that the signers of a petition sheet reside in the county listed in the caption of the petition sheet. The Secretary of State prints a three-letter code in the upper right-corner of each petition image that corresponds to this county. A.R.S. § 16-803(B)(1)(a).

The Secretary of State must then review each signature line to verify the signer resides in the county designated at the top of the petition sheet. Any signature line printed by a signer who appears to reside in a different county will be eliminated. A.R.S. § 16-803(B)(1)(b).

The Secretary of State does not have a duty to verify that each individual address falls within the designated county's boundary but must verify that the signer's city or town falls within the designated county. If the city or town is missing, the Secretary of State must verify that the signer's zip code falls within the county. For cities or towns that cross county lines, the Secretary of State may assume the signer resides in the county designated at the top of the petition sheet.

If a majority of signers on the petition sheet reside (based on the city or town listed) in a different county than what was designated at the top of the petition sheet, the Secretary of State must change the county code for that petition sheet to the majority county and eliminate signature lines printed by signers who do not reside in the majority county. A.R.S. § 16-803(B)(1).

Petition sheets must be organized by county prior to transmitting any petition sheets to a County Recorder. A.R.S. § 16-803(B)(1)(c).

##### b. *Individual Signature Eliminations*

In addition to striking signatures outside the county of the majority of signers, the Secretary of State must eliminate petition signatures for any of the following reasons:

1. The signature of the petition signer is missing, A.R.S. § 16-803(B)(2)(a):

   - However, the Secretary of State should not eliminate a signature line if the signature is illegible, if the first and last names are switched and printed in the wrong columns or if the printed name and signature are switched and printed in the wrong columns.

2. The signer did not provide a residence address or description of the signer's residence location, or provided a P.O. Box without a town, city, or zip code, A.R.S. § 16-803(B)(2)(b):

- If the signer provided any information that could be reasonably construed as a street name or street number, the Secretary of State should not eliminate the signature line.

- The Secretary of State should not eliminate a signature line if the street type (such as "lane," "boulevard," or "circle") is missing. *See Jenkins v. Hale*, 218 Ariz. 561, 564 (2008).

- The Secretary of State may not eliminate a signature line that uses quotation marks or "ditto" marks to incorporate the address from the signature line immediately above.

3. The petition signature date is missing, A.R.S. § 16-803(B)(2)(c):

- The Secretary of State should eliminate a signature line if it is missing the day or month of signing. *See Meyers v. Bayless*, 192 Ariz. 376, 378 (1998);

- The Secretary of State may not eliminate a signature line that is only missing the year of signing. *See Energy Fuels Nuclear, Inc. v. Coconino County*, 159 Ariz. 210, 213 (1988);

- The Secretary of State may not eliminate a signature line that uses quotation marks or "ditto" marks to incorporate the date from the signature line immediately above.

The Secretary of State does not have authority to reject petition sheets or signatures based on the following legal deficiencies:

1. A missing petition caption, modified petition caption, or a caption that contains inaccurate information;

2. A missing county in the petition caption; or

3. Signatures obtained more than 24 months from the filing date.

A.R.S. § 19-101(A); A.R.S. § 19-102(A). The foregoing legal deficiencies are not explicitly or implicitly referenced in A.R.S. § 16-803(B)(2), therefore these legal deficiencies must be reviewed by a court.

### c. *Preparing Signatures for County Recorder Verification*

Within seven business days after receipt of a petition for statewide recognition, the Secretary of State must perform the following steps to determine whether signatures may be transmitted for County Recorder verification:

1. Count the number of signature lines on each valid petition sheet that have not been stricken, and place the total number on the upper right-hand corner on the front side of each petition sheet;

2. Count the total number of petition sheets and signatures eligible for County Recorder verification. Each petition sheet has been labeled upon being scanned, therefore the petition

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

sheets are not re-numbered after the Secretary of State has completed the sheet and signature count;

3.  Determine whether the signatures eligible for verification exceed the required minimum:

    •   If the minimum has been met, the Secretary of State must conduct a 20% random sample and should issue a receipt to the applicant that includes the following information:

        -   The total number of signatures eliminated by the Secretary of State;

        -   The total number of signatures that remain eligible for County Recorder verification (this number must exceed the required minimum);

        -   The total number of signatures that have been randomly sampled and transmitted to one or more County Recorders; and

        -   The deadline for County Recorder review.

    •   If the minimum has not been met, the Secretary of State must issue a receipt to the applicant, stating that the political party is not eligible for recognition, and cease further processing of the petition.

A.R.S. § 16-803(B)(3); A.R.S. § 16-803(B)(4); A.R.S. § 16-803(B)(5), (C).

The Secretary of State's selection of a random sample to transmit to County Recorders must also be conducted within seven business days after receipt of a petition for statewide recognition:

1.  The Secretary of State must randomly select (whether manually or electronically) 20% of eligible signatures across all petition sheets that have not been eliminated;

2.  The Secretary of State must mark the petition signature lines that have been randomly selected in a clear manner; and

3.  The Secretary of State must transmit the front sides of any petition sheet containing a randomly sampled signature to the applicable County Recorder(s). This may be done electronically.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

A.R.S. § 16-803(C). Although there is no deadline for transmitting the random sample to the applicable County Recorders, the Secretary of State should do so within a reasonable timeframe.

## 2. County Recorder Processing

Following receipt from the Secretary of State, a County Recorder shall determine which signatures of individuals whose names were transmitted shall be disqualified for any of the following reasons:

1. No residence address or description of residence location is provided.

2. No date of signing is provided.

3. The signature is illegible and the signer is otherwise unidentifiable.

4. The address provided is illegible or nonexistent.

5. The individual was not a qualified elector on the date of signing the petition.

6. The individual was a registered voter but was not at least eighteen years of age on the date of signing the petition or affidavit.

7. The signature was disqualified after comparison with the signature on the affidavit of registration.

8. If a petitioner signed more than once, all but one otherwise valid signature shall be disqualified.

9. For the same reasons any signatures could have been removed by the secretary of state pursuant to this section.

A.R.S. § 16-803(E).

The County Recorder must issue a certification and transmit this certification to the Secretary of State and the electors within 10 business days of receiving the signatures. A.R.S. § 16-803(E). The County Recorder's certification must include:

• The total number of signatures that were transmitted to the County Recorder for verification;

• The total number of random signatures that were disqualified by the County Recorder; and

• The name of any signer whose petition signature was eliminated, including the petition page number and signature line number where the signature was eliminated.

A.R.S. § 16-803(F). The County Recorder must transmit this certification to the Secretary of State in the manner specified by the Secretary. If the Secretary of State electronically transmitted petition sheets to the County Recorder, it is unnecessary for the County Recorder to return the petition sheet images to the filing officer. A.R.S. § 16-803(G)(1).

The Secretary of State should also transmit the County Recorder certifications to the chairperson or other representative of the party seeking new party recognition.

### 3. Final Certification by Secretary of State

Within three calendar days of receiving the last County Recorder's certification, the Secretary of State must determine whether there are sufficient valid signatures for the party to qualify for the ballot:

- The Secretary of State calculates the total number of petition signatures verified by County Recorders, including the percentage of verification.

- The Secretary of State then multiplies the total number of eligible signatures by the verification percentage.

A.R.S. § 16-803(H). The Secretary of State must also review the certification(s) regarding the affidavit of electors. *See* A.R.S. § 16-801(A)(1).

The new party qualifies for recognition if the number of presumed valid signatures exceeds the required minimum and all 10 electors were found to be qualified electors by the County Recorder(s). If the new party petition qualifies, the Secretary of State issues a certification and receipt to the electors and notifies the Boards of Supervisors, County Recorders, and officers in charge of elections. A.R.S. § 16-803(I).

If the new party petition does not qualify for recognition, the Secretary of State issues a certification and receipt to the electors explaining why the petition did not qualify for recognition and returns the original petition sheets to the electors. A.R.S. § 16-803(I).

### C. Duration of New Party Recognition

A new political party that receives statewide recognition is entitled to recognition through the next two general elections for federal office immediately following recognition of the party. A.R.S. § 16-801(B). For example, if a new political party achieves statewide recognition in March 2020, the party is entitled to recognition through the 2022 general election.

### D. Recognition Following Expiration of New Party Status

Following the expiration of new party status, the party may maintain recognition by:

- Qualifying for continued representation based upon votes cast at the election preceding the expiration of new party status or a requisite number of active registered voters; or

- Timely filing a new petition for new party recognition.

A.R.S. § 16-801(B); A.R.S. § 16-804.

A political party that qualifies for continued representation is treated differently from a political party that files a new petition for new party recognition. For example, a member of a political party with continued representation may not sign a nomination petition for a candidate seeking a nomination from a different party with continued recognition. A.R.S. § 16-321(F). Thus, a voter registered with the Democratic Party—a party with continued representation—may sign a

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

nomination petition for Democratic candidates, new party candidates, or independent candidates, but not for Republican candidates—another party with continued representation. Whereas a voter registered with a new party may sign any candidate's petition.

As a corollary, members of a political party with continued representation are not included when calculating other continuously-represented parties' signature totals to run for office. For example, the number of signatures needed to run for the U.S. Senate as a Republican—a party with continued representation—are determined by calculating ¼ of one percent of all Republicans, new party registrants, independents, and registrants with no party designation. In contrast, the number of signatures needed to run for the U.S. Senate as a new party candidate excludes Republicans, Democrats, and any other recognized parties with continued representation. A.R.S. § 16-322(A)(1); A.R.S. § 16-321(F).

### E. Expiration of New Party Status

If a new political party does not re-qualify for recognition as a new party, new party status expires when the Secretary of State, County Recorder, or city or town clerk (as applicable) issues their announcement regarding continued representation. A.R.S. § 16-804(C)-(E).

## II. QUALIFYING FOR CONTINUED RECOGNITION

To qualify for continued representation, a political party must meet one of two baseline levels of support: number of votes cast for the party's candidate or the number of active registered voters in the jurisdiction. A.R.S. § 16-804(A)-(B); *see also* A.R.S. § 16-193(5).

### A. Statewide Continued Representation

To qualify for statewide continued representation:

- The new party's candidate for Governor or President must receive at least 5% of the votes cast at the federal general election immediately preceding the expiration of new party status; or

- The new party must have at least ⅔ of 1% of active registered voters statewide as of October 1st of the year preceding expiration of new party status.

The Secretary of State must determine the political parties qualified for continued representation by December 1st of the appropriate year. A.R.S. § 16-804(C).

Promptly thereafter, the Secretary of State must notify the political party, county election officials, and the public about whether the party qualified for continued representation.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

## B. County Continued Representation

To achieve continued representation at the county level:

- The new party's candidate for County Attorney must receive at least 5% of the votes cast at the federal general election immediately preceding the expiration of new party status; or
- The new party must have at least ⅔ of 1% of active registered voters in the county as of October 1st of the year preceding expiration of new party status.

A.R.S. § 16-804(A). The County Recorder must determine the political parties qualified for continued representation by December 1st of the appropriate year. A.R.S. § 16-804(D). Promptly thereafter, the County Recorder must notify the political party, county election officials, and the public about whether the party qualified for continued representation.

## C. City or Town Continued Representation

To achieve continued representation in a city or town that conducts partisan elections:

- The new party's candidate for Mayor must receive at least 5% of the votes cast at the general election (or second or runoff election) immediately preceding the expiration of new party status; or
- The new party must have at least ⅔ of 1% of active registered voters in the city or town (as determined by the applicable County Recorder) as of 155 days prior to the primary election (or first election) that will be conducted in the year new party status expires.

A.R.S. § 16-804(A).

The city or town clerk must determine the political parties that qualify for continued representation 140 days prior to the primary election (or first election) that will be conducted in the year new party status expires. A.R.S. § 16-804(E).

Promptly thereafter, the city or town clerk must notify the political party, county election officials, and the public about whether the party qualified for continued representation.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

# CHAPTER 16:
# CAMPAIGN FINANCE

## I.     CAMPAIGN FINANCE REPORTING

The Secretary of State is required to prescribe the format for all campaign finance reports and statements. A.R.S. § 16-926(A). Sample forms are included in Chapter 17 for reference by local jurisdictions. Candidates who file their campaign finance reports and statements with the Secretary of State's Office must use the Secretary of State's online campaign finance reporting system.

Additional campaign finance guidance is available on the Secretary of State's website at www.azsos.gov/elections. All candidates and political committees are encouraged to read the Secretary of State's campaign finance guides for additional information. In addition, candidates running with Clean Elections funding have additional rules they must follow. They should contact the Citizens Clean Elections Commission (CCEC) for further information, or visit their website at www.azcleanelections.gov.

## II.    CAMPAIGN FINANCE ENFORCEMENT

Campaign finance enforcement may be initiated through the filing officer. In addition, any person may file a complaint with CCEC if they believe a violation of the Clean Elections Act or CCEC rules has occurred. CCEC staff may also initiate an internally generated complaint against a person for violation of the Clean Elections Act. *See* A.R.S. § 16-957. More details about CCEC enforcement procedures are available at https://www.azcleanelections.gov/campaign-finance-enforcement.[56]

Adjudication of third-party campaign finance complaints filed with the filing officer follows a bifurcated structure, relying on an initial determination by a filing officer followed by the final decision of an enforcement officer. The overall process is summarized as follows and is covered in more detail in this Section:

- The filing officer will make a preliminary determination whether a campaign finance violation has occurred, known as a "reasonable cause" finding. A.R.S. § 16-938(C).

---

[56] A.R.S. § 16-938(A) states ". . . a filing officer is the sole public officer who is authorized to initiate an investigation into alleged violations of . . . [Articles 1, 1.1, 1.2, 1.3, 1.4, 1.5, 1.6 and 1.7 of Title 16, Chapter 6 of the Arizona Revised Statutes], including the alleged failure to register as a committee." However, the phrase "is the sole public officer" has been invalidated by court judgment. An appeal is pending as of August 9, 2019, but the lower court judgment remains in effect absent any stay or reversal by a higher court. *See Arizona Advocacy Network et al., v. State of Arizona*, No. CV2017-096705, (Ariz. Super. June 5, 2019).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- If the filing officer makes a reasonable cause finding, the filing officer generally will refer the matter to the appropriate enforcement officer. A.R.S. § 16-938(C).

- The enforcement officer makes the final determination whether a legal violation occurred, which may require an additional investigation beyond the information provided by the filing officer. A.R.S. § 16-938(C), (E).

- If the enforcement officer concludes that a campaign finance violation occurred, the enforcement officer may issue a notice of violation to the alleged violator. If the violation has not been timely remedied, the enforcement officer may initiate legal action to secure compliance with campaign finance law. A.R.S. § 16-938 (E)-(G).

## A. Initiation of Campaign Finance Complaints

### 1. Third Party Complaints

Any person may file a complaint with the appropriate filing officer if they believe a violation of Arizona campaign finance laws has occurred, including but not limited to:

- Failure to register as a political committee when required;

- Unlawful commingling of money;

- Violation of campaign contribution limits;

- Making or accepting unlawful contributions;

- Failure to include proper advertising disclaimers;

- Failure to file campaign finance reports (if the filing officer has not already initiated an enforcement action);

- Improper or unreported expenditures; or

- Filing incomplete or inaccurate campaign finance reports.

A.R.S. § 16-938.

The complaint must be made in writing and submitted to the applicable filing officer for campaign finance reports. Email submissions are acceptable. A.R.S. § 16-938(B).

Regardless of whether a complainant is represented by counsel, a complaint must contain the full name and mailing address of the complainant. A complaint should also:

- Clearly recite the facts that describe a violation of Arizona campaign finance law under the filing officer's jurisdiction as specifically as possible (citations to the law are highly encouraged);

- Clearly identify each person, committee, organization or group that is alleged to have committed a violation;

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

- Include any supporting documentation (such as sworn affidavits from persons with first-hand knowledge, media reports, advertisements, website links, etc.) supporting the alleged violation, if available; and

- Differentiate between statements based on a complainant's personal knowledge and those based on information and belief. Statements not based on personal knowledge should identify the source of the information.

Complaints should be filed as soon as possible after the alleged violation becomes known to the complainant in order to preserve available evidence and initiate the enforcement process within the four-year statute of limitations period. *See* A.R.S. § 12-550. A filing officer should retain candidate filings for at least four years after committee termination notwithstanding the three-year retention period for "candidate records" in Schedule Number GS-1058 of the Arizona State Library, Archives and Public Records general records retention schedule.

The filing officer must review the complaint for compliance with the required criteria outlined above, including confirmation that the complaint falls within the filing officer's jurisdiction. If the complaint does not meet the criteria, the filing officer should notify the complainant of the deficiencies and that no action will be taken on the complaint. If the complaint is deemed sufficient, the filing officer will:

- Assign the complaint a complaint number (in a format determined by the filing officer);

- Confirm in writing that the complaint has been received;

- Inform the complainant that the respondent will be provided an opportunity to submit a response and the complainant may submit a reply within specified time periods; and

- Inform the complainant that the filing officer will notify him or her once a preliminary decision has been made.

## 2.  Mitigating Conflicts of Interest

A filing officer and enforcement officer should avoid actual or perceived conflicts of interest when adjudicating campaign finance complaints. A conflict analysis should be undertaken promptly after a complaint is filed and before the respondent is directed to submit a response. A.R.S. § 38-503(B).

If a filing officer determines that a conflict of interest exists, the filing officer should refer a campaign finance complaint to another filing officer in the state who accepts the referral.[57] The receiving officer has the same jurisdiction to make a reasonable cause determination as the original

---

[57] If the original filing officer cannot promptly identify another filing officer who will accept the referral, the original filing officer should promptly notify the complainant and respondent after the complaint was filed that: (i) the filing officer has a conflict of interest; and (ii) the new filing officer (once identified) will contact the parties and formally initiate the enforcement proceedings.

officer. A.R.S. § 16-938(A). If the receiving officer ultimately does find reasonable cause, they may: (i) refer the matter directly to an appropriate enforcement officer, if permitted by the enforcement officer, or; (ii) refer the matter back to the original filing officer, and the original filing officer must refer the matter to the enforcement officer for that jurisdiction.

If a filing officer makes a reasonable cause finding but believes the corresponding enforcement officer will have a conflict of interest, the filing officer nonetheless must make the referral to that enforcement officer. *Winn v. Maricopa County Attorney's Office*, No. CV2013-003007, Minute Entry pg. 5 (Ariz Super. Ct. May 2, 2013); *see also Comm. for Justice & Fairness v. Arizona Sec'y of State's Office*, 235 Ariz. 347, 350 (Ct. App. 2014). The enforcement officer must then determine whether a conflict of interest exists and, if so, refer the matter to another enforcement officer.

### B. Notice of Complaint and Opportunity for Response and Reply

#### 1. Notice to Respondents

A "respondent" is the person who is the subject of the campaign finance complaint or referral.

Within five business days after receiving a properly filed complaint, the filing officer will send the respondent a copy of the complaint and a letter describing the filing officer's campaign finance processing procedures. The notification letter reflects no judgment about the accuracy of the allegations, but simply: (i) informs the respondent that the filing officer has received allegations as to possible violations of campaign laws by the respondent; (ii) provides a copy of the complaint or referral document, or in limited circumstances, a summary of the complaint; and (iii) gives the respondent an opportunity to respond in writing in a timely manner.

#### 2. Submitting a Response

The response is the respondent's opportunity to demonstrate to the filing officer why the filing officer should not pursue an enforcement action, or to clarify, correct, or supplement the information in the complaint or referral. Respondents are not required to respond to the allegations. Respondents must be provided an opportunity to respond to both a third-party complaint and an internally-initiated investigation.

Respondents, if they choose, may be represented by counsel. Once the filing officer receives a notification that the respondent is represented by counsel, the filing officer will communicate only with the counsel unless otherwise authorized by the respondent.

There is no prescribed format for responses. While not required, providing documentation, including sworn affidavits or declarations under penalty of perjury from persons with first-hand knowledge of the facts, is helpful. It is also helpful for a respondent to specifically address each allegation in the complaint. The response may be submitted by email, and the respondent need not copy the complainant on the response.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

The filing officer may set a response deadline not to exceed 30 calendar days. Upon request by the respondent and for good cause shown, the filing officer may grant a reasonable extension of the response deadline. The respondent must make the request to the filing officer in writing, and the filing officer must copy the complainant on the filing officer's decision on the extension request.

### 3.  Submitting a Reply

Within five business days after receiving a response, the filing officer will send the complainant a copy of the response and a letter that explains the opportunity for the complainant to submit a reply.

There is no prescribed format for replies and complainants are not required to file a reply. However, the reply is the complainant's opportunity to address issues raised in the response and/or buttress the complaint's original allegations. The reply may not raise new issues that were not addressed in the original complaint.

The filing officer may set a reply deadline not to exceed 14 calendar days. The filing officer may not take any action on the complaint or referral (other than dismiss the matter) until this time period has passed. Upon request by the complainant and for good cause shown, the filing officer may grant a reasonable extension of the reply deadline.

## C.  Decision by Filing Officer

After the reply period (and any extension, if granted) has passed, the filing officer will evaluate the complaint, response and reply (if any) to determine whether there is reasonable cause to believe a violation occurred. The filing officer should also consider any relevant campaign finance reports or documents on file with the filing officer and any other information available in the public record. The filing officer does not possess subpoena powers to compel production of evidence or attendance of witnesses concerning a potential campaign finance violation (nor may any party to the proceeding conduct discovery). However, the filing officer may request voluntary production of information to assist in evaluating the complaint or response. A.R.S. § 16-938(D).

### 1.  Determining Whether a Violation Occurred

A filing officer may take one of three courses of action: find reasonable cause, dismiss the matter, or find no reasonable cause.

#### a.  *Finding Reasonable Cause*

To refer a matter to an enforcement officer, a filing officer must find "reasonable cause to believe a person violated" campaign finance law. A.R.S. § 16-938(C). A reasonable cause finding is not a definitive finding that the respondent violated campaign finance law but simply means that the filing officer believes a violation may have occurred.

In determining whether there is reasonable cause, the standard of review is akin to "probable cause" to support the complainant's allegations, which generally means there is reasonably trustworthy information and circumstances that would lead a reasonable person to conclude there is substantial likelihood that the respondent committed a violation. *See In re Shaheen Tr.*, 236 Ariz. 498, 501 (Ct. App. 2015); *State v. Keener*, 206 Ariz. 29, 32 (Ct. App. 2003).

### b.  *Dismissal of Complaint*

In their discretion, a filing officer may dismiss a matter that does not merit further use of government resources. The filing officer may take into account the following factors when deciding whether to dismiss a complaint:

- Whether there is a small dollar amount at issue;

- The insignificance of the alleged violation;

- The vagueness or weakness of the evidence;

- Whether the alleged violation has been remedied and not likely to be repeated; and

- Whether the alleged violation was unintentional.

If dismissal is warranted, the filing officer may send a letter cautioning or reminding the respondent regarding the relevant legal obligations going forward.

### c.  *Finding No Reasonable Cause*

A filing officer should find "no reasonable cause" if a violation occurred when the complaint, response and reply (if any), along with any publicly available information, taken together, fail to give rise to a reasonable inference that a violation has occurred (or even if the allegations were true, would not constitute a violation of the law).

### 2.  Issuance and Notification of Decision

A filing officer should issue a reasoned decision explaining the basis for the filing officer's determination. Absent extenuating circumstances, a filing office shall render a decision within 120 days after the deadline for submitting a reply if a response was submitted, or within 120 days after the deadline for a response if no response was submitted. However, if the filing officer's deadline to issue a decision falls within 30 days of an election in the filing officer's jurisdiction, the decision shall be issued within 30 days after the election. The filing officer should keep the parties reasonably apprised of the projected decision timetable and shall notify all parties in writing of the decision.

If the filing officer dismisses the complaint or finds no reasonable cause, the matter is closed and no notification is given to the enforcement officer. A dismissal or finding of no reasonable cause are not considered appealable actions.

If the filing officer finds reasonable cause, the filing officer must notify the enforcement officer and provide all relevant documentation from the case:

- For matters investigated by the Secretary of State as filing officer, the Secretary must notify the Attorney General;

- For matters investigated by a county filing officer, the county filing officer must notify the county attorney; or

- For matters investigated by a city or town filing officer, the city or town filing officer must notify the city or town attorney.

A.R.S. § 16-938(C)(1)-(3).

If the filing officer determines there is reasonable cause to believe that knowing and intentional misrepresentations were made, the filing officer may refer the matter to the enforcement officer for possible criminal prosecution as well. A.R.S. § 16-1021.

## D. Decision by Enforcement Officer

Upon receipt of a reasonable cause finding from a filing officer, an enforcement officer must:

- Review the matter for potential conflicts of interest;

- If necessary, conduct an investigation and/or compel discovery through the enforcement officer's subpoena powers; and

- Reach a final decision whether a campaign finance violation occurred.

Nonpublic information independently gathered during the investigation (other than the complaint, response, reply and accompanying exhibits, which may be disclosed) must be kept confidential until after the final disposition of any appeal of the enforcement order. A.R.S. § 16-938(E)(3).

If the enforcement officer determines a violation occurred, the enforcement officer may serve a notice of violation on the respondent. The notice must:

- State with reasonable particularity the nature of the violation;

- Specify the fine or penalty imposed, and any other corrective action required to be undertaken; and

- Require compliance within 20 calendar days after the date of issuance of the notice.

A.R.S. § 16-938(E)(2).

### 1. Late Campaign Finance Reports

In the case of a registered committee's failure to file campaign finance reports, no further investigation or discovery is generally necessary and the enforcement officer may proceed to issue a notice of violation. The notice should include a calculation of the penalties that have accrued

between the filing deadline and the date of the notice of violation, and state that penalties will continue to accrue until paid in full or corrective action is taken. A.R.S. § 16-938(E)(2); *see also* A.R.S. § 16-937(B).

## 2.  Other Campaign Finance Violations

In the case of any other campaign finance violation, the notice of violation should include a presumptive financial penalty equal to the amount of money improperly received, spent or promised in violation of the law. In special circumstances, based on the severity, extent, or willful nature of the violation, the enforcement officer may issue a financial penalty up to three times the amount of money improperly received, spent or promised. The enforcement officer should outline the special circumstances in the notice of violation.

A notice of violation also may require the respondent to form a political committee and thereafter file campaign finance reports for past and future political activity. However, if the respondent timely appeals this ruling, the respondent need not file the campaign finance reports unless and until the enforcement officer's notice of violation has been upheld. A.R.S. § 16-938(E)(2).

## E.  Response to Notice of Violation

### 1.  Respondent Takes Corrective Action

If a notice of violation requires corrective action and payment of a fine or financial penalty, but the respondent takes the specified corrective action within 20 days of being served with the notice, the respondent is not subject to any fine or financial penalty. A.R.S. § 16-938(G)(1). The enforcement officer should close the matter and issue a confirmation in writing.

### 2.  Respondent Takes No Corrective Action

If the respondent fails to timely comply with a notice of violation, the enforcement officer may impose the fine or financial penalty (if any) and provide the respondent a final notice stating that the fine or penalty may be appealed to the Superior Court. A.R.S. § 16-938(G)(2).

### 3.  Respondent Appeals to Superior Court

If the respondent fails to comply with a final notice but timely files an appeal, the final notice is stayed until the appeal is resolved. A respondent must file an appeal in superior court within 30 days after receiving the final decision and provide a copy of the appeal to the enforcement officer. A.R.S. § 16-938(H).

At the hearing, the Superior Court must conduct a trial de novo and the enforcement officer has the burden of proving any alleged violations by a preponderance of the evidence. A.R.S. § 16-938(I).

# CHAPTER 17:
# APPENDICES AND SAMPLE FORMS

The sample forms contained in this manual are subject to revisions.  Please contact the Secretary of State's Office, Election Services Division, for the most current version.

## TABLE OF CONTENTS

| | Page # |
|---|---|
| **I. Appendices** | A5 |
|     A.  Election Calendar | A6 |
|     B.  Retention Schedule – Election Records | A43 |
|     C.  Retention Schedule – Recorder Records | A51 |
|     D.  County Recorder Petition Signature Verification Guide | A58 |
|     E.  AZSOS HAVA Complaint Handbook (available at www.azsos.gov/elections) | N/A |
|     F.  HAVA Administrative Complaint Form (English) | A62 |
|     G.  HAVA Administrative Complaint Form (Spanish) | A64 |
| **II. Voter Registration Sample Forms** | A66 |
|     A.  Arizona Voter Registration Form | A67 |
|     B.  National Voter Registration Form | A71 |
|     C.  Federal Post Card Application (FPCA) | A74 |
|     D.  Federal Write-In Absentee Ballot (FWAB) | A77 |
| **III. Voter Correspondence Sample Forms** | A82 |
|     A.  DPOC Submission Form/"Federal-Only" Notice | A83 |
|     B.  DPOC Submission Form/F-Type Notice | A84 |
|     C.  DPOC Submission Form/SAVE Non-Citizen Notice | A85 |
|     D.  DPOC Submission Form/SAVE No-Match Notice | A86 |
|     E.  DPOC Submission Form/ Juror Questionnaire Non-Citizen Notice | A87 |
|     F.  Under 18 Sample Notice (Not Registered) | A88 |
|     G.  Under 18 Sample Notice (Suspense, Fed-Only) | A89 |
|     H.  Under 18 Sample Notice (Suspense, Full-Ballot) | A90 |
|     I.  Notification to "Federal-Only" RE: HAVA ID Requirement | A91 |

| | | |
|---|---|---|
| J. | Cancellation Notice Due to Soft Duplicate Match Resolution | A92 |
| K. | Registration Update Needed | A93 |
| L. | Final Notice (In-Jurisdiction Letter) | A94 |
| M. | Final Notice (Out-of-Jurisdiction Letter) | A95 |
| N. | Jury Questionnaire – Felon | A96 |
| O. | Felony Conviction | A97 |
| P. | Adjudicated Incompetent | A98 |
| **IV. County Recorder Sample Forms** | | A99 |
| A. | County Recorder Naturalization Ceremony Certification | A100 |
| B. | Recorder's Certificate | A101 |
| C. | Active Signature Roster – Certificate of Inspector | A102 |
| D. | Inspector's Certificate | A103 |
| **V. Candidate and Campaign Finance Sample Forms** | | A104 |
| A. | Candidate Nomination Paper (Nomination by Primary) | A105 |
| B. | Candidate Nomination Petition (Nomination by Primary) | A107 |
| C. | Candidate Nomination Paper (Nomination Other Than By Primary, ARS § 16-341) | A110 |
| D. | Candidate Nomination Petition (Other Than By Primary) | A112 |
| E. | Candidate Nomination Paper (Write-In) | A115 |
| F. | Candidate Nomination Paper (Non-Partisan) | A117 |
| G. | Candidate Nomination Petition (Non-Partisan) | A119 |
| H. | Candidate Statement of Interest | A122 |
| I. | Public Officer and Candidate Financial Disclosure Statement | A123 |
| J. | Political Committee Statement of Organization | A142 |
| K. | Political Committee Campaign Finance Report | A145 |
| L. | Political Committee Termination Statement | A212 |
| M. | Failure To File Notice - Campaign Finance Reports | A214 |

A2

| | |
|---|---|
| N.   Notice of Intent to Suspend Political Committee | A215 |
| **VI. Early Voting Sample Forms** | A216 |
| A.   Accessible Voting Device Affidavit | A217 |
| B.   90 Day Notice Information | A218 |
| C.   33 Day Notice for Ballot-by-Mail Jurisdictional Election held during a Partisan Election (Optional) | A219 |
| **VII. Polling Place Sample Forms & Diagrams** | A220 |
| A.   Precinct Election Supplies Inventory List | A221 |
| B.   Instructions to Voters and Election Officers | A222 |
| C.   Identification at the Polls – Requirements for Voters | A223 |
| D.   Sample Disabled Voters Signature Affidavit | A224 |
| E.   Sample Door Diagram | A225 |
| F.   Polling Place Set Up Sample Diagram | A226 |
| G.   Official Challenge List | A227 |
| H.   Sample Official Ballot Report | A228 |
| **VIII. Central Counting Place Boards Sample Forms** | A229 |
| A.   Receiving Board Log | A230 |
| B.   Inspection Board Receipt Log | A231 |
| C.   Write-In Board Log | A232 |
| D.   Write-In Tally Sheet | A233 |
| E.   Master Audit Form Format | A234 |
| F.   Master Audit Form | A235 |
| G.   Duplication Board Log | A236 |
| **IX. Hand Count Audit Sample Forms** | A237 |
| A.   Master Precinct and Race Selection Worksheet | A238 |
| B.   Master List of All Contested Races | A239 |
| C.   Hand Count Board Worksheet | A240 |

| | |
|---|---|
| D.  Sample Hand Count Tally Sheet | A241 |
| E.  Sample Hand Count Tally Sheet – Accessible Voting System | A242 |
| F.  Sample Precinct Hand Count Report | A243 |
| G.  Sample Early Ballot Audit – Hand Count Report | A245 |
| H.  Sample Aggregate Precinct Hand Count Report | A246 |
| I.  Sample Aggregate Early Ballot Audit – Hand Count Report | A247 |
| J.  Sample Hand Count/Early Ballot Audit Report | A248 |
| **X. Additional Reporting Sample Forms** | A249 |
| A.  Equipment, Software, and Firmware Certification Statement | A250 |
| B.  Cover Sheet for Additional Reports | A251 |
| C.  Accessibility Report | A252 |
| D.  Poll Worker Training Report | A253 |
| E.  Voter Education Report | A254 |
| F.  Provisional Ballot Report | A255 |
| G.  Primary Election Official Canvass of Results | A256 |

A4

# I.   APPENDICES

## ELECTION CALENDAR

| DATE | DATE IN STATUTE | Cat 1 | Cat 2 | Cat 3 | EVENT | A.R.S. REFERENCE | HOLIDAY/ WEEKEND STATUS |
|---|---|---|---|---|---|---|---|
| **1/1/2019** | Jan 1 | SOS | REC | | Compile county-provided January 1 Voter Registration Report | 16-168(G)(2)(a) | **HOLIDAY** |
| **1/1/2019** | Jan 1 | SOS | | | Begin filing Public Officers Annual Financial Disclosure Statement covering CY2018 | 18-444(D) | **HOLIDAY** |
| **1/1/2019** | Jan 1 | SOS | | | Begin Filing 2018 4th Qtr Lobbyist Expenditure Report covering October 1, 2018 - December 31, 2018 | 41-1232.02(B) 41-1232.03(B) | **HOLIDAY** |
| **1/1/2019** | Jan 1 | SOS | | | Begin Filing Principal and Public Body 2018 Annual Expenditure Reports covering January 1, 2018 - December 31, 2018 | 41-1232.02(A) 41-1232.03(A) | **HOLIDAY** |
| **1/1/2019** | Jan 1 | SOS | | | Begin filing Standing Committee 2018 4th Qtr Campaign Finance Report covering October 21, 2018 - December 31, 2018 | 16-927(A)(2)(b); 16-928(B) | **HOLIDAY** |
| **1/1/2019** | Jan 1 | SOS | ELEC | | Begin filing PAC and Political Party 2018 4th Qtr Campaign Finance Report covering October 21, 2018 - December 31, 2018 | 16-927(A)(2)(b) | **HOLIDAY** |
| **1/1/2019** | Jan 1 | SOS | | | Begin Filing Candidate 2018 4th Qtr Campaign Finance Report Covering October 21, 2018 - December 31, 2018 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2020) | 16-927(B) | **HOLIDAY** |
| **1/1/2019** | Jan 1 | ELEC | | | Begin Filing Candidate 2018 4th Qtr Campaign Finance Report Covering October 21, 2018 - December 31, 2018 (applicable county and local races) | 16-927(B) | **HOLIDAY** |
| **1/14/2019** | Jan 14 | SOS | | | Deadline for filing Biennial Principal or Public Body Registration Renewal for period beginning 2019 | 41-1232(C); 41-1232.01(C) | |
| **1/15/2019** | Jan 15 | SOS | | | Deadline for filing Standing Committee 2018 4th Qtr Campaign Finance Report covering October 21, 2018 - December 31, 2018 | 16-927(A)(2)(b); 16-928(B) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **1/15/2019** | Jan 15 | SOS | ELEC | Deadline for filing PAC and Political Party 2018 4th Qtr Campaign Finance Report covering October 21, 2018 - December 31, 2018 | 16-927(A)(2)(b) | |
| **1/15/2019** | Jan 15 | SOS | | Deadline for Filing Candidate 2018 4th Qtr Campaign Finance Report Covering October 21, 2018 - December 31, 2018 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2020) | 16-927(B) | |
| **1/15/2019** | Jan 15 | ELEC | | Deadline for Filing Candidate 2018 4th Qtr Campaign Finance Report Covering October 21, 2018 - December 31, 2018 (applicable county and local races) | 16-927(B) | |
| **1/26/2019** | MarE-45 | REC | | Deadline for permanent early voters to notify county that an early ballot not be sent | 16-544(F) | |
| **1/26/2019** | MarE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before March 12, 2019 Election. | 16-543(A), MOVE Act | |
| **1/31/2019** | Jan 31 | SOS | | Deadline for Filing Public Officers Annual Financial Disclosure Statements covering CY2018 | 18-444(D) | |
| **1/31/2019** | Jan 31 | SOS | | Deadline for Filing 2018 4th Qtr Lobbyist Expenditure Report covering October 1, 2018 - December 31, 2018 | 41-1232.02(B) 41-1232.03(B) | |
| **2/11/2019** | **MarE-29** | **REC** | | **Last day to Register to Vote for March 12, 2019 Election** | **16-120(A)** | |
| **2/13/2019** | MarE-27 | ELEC | | Begin Early Voting for March 12, 2019 Election | 16-542(C) | |
| **2/13/2019** | MarE-27 | REC | | Mail Early Ballots for March 12, 2019 Election to voters on permanent early voting list | 16-544(F) | |
| **2/13/2019** | 10 business days after due date** | SOS | | Send Notices of Failure to File for Public Officers Annual Financial Disclosure Statements covering CY2018 | ** | |
| **2/24/2019** | MarE-16 | SOS | | Begin Filing Standing Committee 2019 March Pre-Election Campaign Finance Report covering January 1, 2019 - February 23, 2019 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| **2/28/2019** | AugE-180 | BOS | | Deadline for 180 day notice by Board of Supervisors for August 27, 2019 Election | 16-205(A) | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3/1/2019 | March 1 | SOS | | | Deadline for Filing Principal and Public Body 2018 Annual Expenditure Reports covering January 1, 2018 - December 31, 2018 | 41-1232.02(A) 41-1232.03(A) | |
| 3/2/2019 | MarE-10 | ELEC | SOS | | File Computer Program and Voting Equipment Certification for March 12, 2019 Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND** |
| 3/4/2019 | MarE-10 (next business day due to weekend) | SOS | | | Deadline for Filing Standing Committee 2019 March Pre-Election Campaign Finance Report covering January 1, 2019 - February 26, 2019 | 16-927(A)(2)(a); 16-928(B) 1-243(A) 1-303 | |
| 3/8/2019 | MarE-4 | ELEC | | | Deadline to Vote Early In-Person for the March 12, 2019 Election by 5:00 p.m. | 16-542(E) | |
| **3/12/2019** | **MarE** | **ALL** | | | **March 12, 2019 Election** | **16-204** | |
| 3/15/2019 | MarE+3 business days | REC | | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| 3/18/2019 | MarE+6 | BOS | | | First day to canvass returns for March 12, 2019 Election | 16-642(A); 16-645(A) | |
| 4/1/2019 | Apr 1 | SOS | REC | | Compile county-provided April 1 Voter Registration Report | 16-168(G) | |
| 4/1/2019 | Apr 1 | SOS | | | Begin filing 2019 1st Qtr Lobbyist Expenditure Report covering January 1, 2019 - March 31, 2019 | 41-1232.02(B); 41-1232.03(B) | |
| 4/1/2019 | Apr 1 | SOS | | | Begin filing Standing Committee 2019 1st Qtr Campaign Finance Report covering February 24, 2019 - March 31, 2019 | 16-927(A)(2)(b); 16-928(B) | |
| 4/1/2019 | Apr 1 | SOS | | | Begin filing PAC and Political Party 2019 1st Qtr Campaign Finance Report covering January 1, 2019 - March 31, 2019 | 16-927(A)(1) | |
| 4/1/2019 | Apr 1 | ELEC | | | Begin filing Candidate 2019 1st Qtr Campaign Finance Report covering February 24, 2019 - March 31, 2019 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 4/1/2019 | MarE+20 | BOS | | | Last day to canvass returns for March 12, 2019 Election | 16-642(A); 16-645(A) | |
| 4/6/2019 | MayE-45 | REC | | | Deadline for permanent early voters to notify county that an early ballot not be sent | 16-544(F) | |
| 4/6/2019 | MayE-45 | REC | | | Mail UOCAVA ballots for all requests received on or before the 48th day before May 16, 2019 Election. | 16-543(A); | **WEEKEND** |

| 4/15/2019 | Apr 15 | SOS | | | Deadline for filing Standing Committee 2019 1st Qtr Campaign Finance Report covering February 24, 2019 - March 31, 2019 | 16-927(A)(2)(b); 16-928(B) | |
|---|---|---|---|---|---|---|---|
| 4/15/2019 | Apr 15 | ELEC | | | Deadline for filing PAC and Political Party 2019 1st Qtr Campaign Finance Report covering January 1, 2019 - March 31, 2019 | 16-927(A)(1) | |
| 4/15/2019 | Apr 15 | ELEC | | | Deadline for filing Candidate 2019 1st Qtr Campaign Finance Report covering February 24, 2019 - March 31, 2019 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 4/22/2019 | **MayE-29** | **REC** | | | **Last day to register to vote for May 21, 2019 Election at midnight** | **16-120(A)** | |
| 4/24/2019 | MayE-27 | ELEC | | | Begin early voting for May 21, 2019 Election | 16-542(C) | |
| 4/24/2019 | MayE-27 | REC | | | Mail early ballots for May 21, 2019 Election to voters on Permanent Early Voting List | 16-544(F) | |
| 4/30/2019 | Apr 30 | SOS | | | Deadline for filing 2019 1st Qtr Lobbyist Expenditure Report covering January 1, 2019 - March 31, 2019 | 41-1232.02(B); 41-1232.03(B) | |
| 5/5/2019 | MayE-16 | SOS | | | Begin filing Standing Committee 2019 May Pre-Election Campaign Finance Report covering April 1, 2019 - May 4, 2019 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| 5/5/2019 | MayE-16 | ELEC | | | Begin filing Candidate 2019 May Pre-Election Campaign Finance Report covering April 1, 2019 - May 4, 2019 (applicable county or local races) | 16-927(A)(2)(a) 16-927(B) | **WEEKEND** |
| 5/9/2019 | NovE-180 | BOS | | | Deadline for 180 day notice by Board of Supervisors for November 5, 2019 Election | 16-205(A) | |
| 5/11/2019 | MayE-10 | ELEC | SOS | | File Computer Program and Voting Equipment Certification for May 21, 2019 Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND** |
| 5/13/2019 | MayE-10 (next business day due to weekend) | SOS | | | Deadline for filing Standing Committee 2019 May Pre-Election Campaign Finance Report covering April 1, 2019 - May 4, 2019 | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | |

A10

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/13/2019 | MayE-10 (next business day due to weekend) | ELEC | | | Deadline for filing Candidate 2019 May Pre-Election Campaign Finance Report covering April 1, 2019 - May 4, 2019 (applicable county or local races) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | |
| 5/17/2019 | MayE-4 | ELEC | | | Deadline to Vote Early In-Person for the May 21, 2019 Election by 5:00 p.m. | 16-542(E) | |
| **5/21/2019** | **MayE** | **ALL** | | | **May 21, 2019 Election** | **16-204(F)(2)** | |
| 5/24/2019 | MayE+3 business days | REC | | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| 5/27/2019 | MayE+6 | BOS | | | First day to canvass returns for May 21, 2019 Election | 16-642(A); 16-645(A) | **HOLIDAY** |
| 5/29/2019 | AugE-90 | ELEC | | | Mail Notice of Elections to Permanent Early Voters | 16-544(D) | |
| 6/10/2019 | MayE+20 | BOS | | | Last day to canvass returns for May 21, 2019 Election | 16-642(A); 16-645(A) | |
| 7/1/2019 | Jul 1 | SOS | REC | | Compile county-provided July 1 Voter Registration Report | 16-168(G) | |
| 7/1/2019 | Jul 1 | SOS | | | Begin filing Standing Committee 2019 2nd Qtr Campaign Finance Report covering May 5, 2019 - June 30, 2019 | 16-927(A)(2)(b); 16-928(B) | |
| 7/1/2019 | Jul 1 | ELEC | | | Begin filing PAC and Political Party 2019 2nd Qtr Campaign Finance Report covering April 1, 2019 - June 30, 2019 | 16-927(A)(1) | |
| 7/1/2019 | Jul 1 | ELEC | | | Begin filing Candidate 2nd Qtr Campaign Finance Report covering May 5, 2019 - June 30, 2019 (applicable county or local races) | 16-927(A)(2)(b) 16-927(B) | |
| 7/1/2019 | Jul 1 | SOS | | | Begin filing 2019 2nd Qtr Lobbyist Expenditure Report covering April 1, 2019 - June 30, 2019 | 41-1232.02(B); 41-1232.03(B) | |
| 7/13/2019 | AugE-45 | REC | | | Deadline for permanent early voters to notify county that an early ballot not be sent | 16-544(F) | **WEEKEND** |
| 7/13/2019 | AugE-45 | REC | | | Mail UOCAVA ballots for all requests received on or before the 48th day before August 27, 2019 Election. | 16-543(A); | **WEEKEND** |
| 7/15/2019 | Jul 15 | SOS | | | Deadline for filing Standing Committee 2019 2nd Qtr Campaign Finance Report covering May 5, 2019 - June 30, 2019 | 16-927(A)(2)(b); 16-928(B) | |

A11

| 7/15/2019 | Jul 15 | ELEC | | | Deadline for filing PAC and Political Party 2019 2nd Qtr Campaign Finance Report covering April 1, 2019 - June 30, 2019 | 16-927(A)(1) | |
| 7/15/2019 | Jul 15 | ELEC | | | Deadline for filing Candidate 2nd Qtr Campaign Finance Report covering May 5, 2019 - June 30, 2019 (applicable county or local races) | 16-927(A)(2)(b) 16-927(B) | |
| **7/29/2019** | **AugE-29** | **REC** | | | **Last day to Register to Vote for August 27, 2019 Election** | **16-120(A)** | |
| 7/31/2019 | Jul 31 | SOS | | | Deadline for filing 2019 2nd Qtr Lobbyist Expenditure Report covering April 1, 2019 - June 30, 2019 | 41-1232.02(B); 41-1232.03(B) | |
| 7/31/2019 | Jul 31 | CCEC | SOS | | End of CCEC Exploratory Period for 2020 Election. Exploratory Period covers November 7, 2018 - July 31, 2019 | 16-961(B)(2) | |
| 7/31/2019 | AugE-27 | ELEC | | | Begin early voting for August 27, 2019 Election | 16-542(C) | |
| 7/31/2019 | AugE-27 | REC | | | Mail early ballots for August 27, 2019 Election to voters on Permanent Early Voting List | 16-544(F) | |
| 8/1/2019 | Aug 1 | CCEC | SOS | | Begin CCEC Qualifying Period for 2020 Election. Qualifying Period covers August 1, 2019 - August 18, 2020 | 16-961(B)(3) | |
| 8/10/2019 | AugE-17 | ELEC | SOS | | File Computer Program and Voting Equipment Certification for August 27, 2019 Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND** |
| 8/11/2019 | AugE-16 | SOS | | | Begin filing Standing Committee 2019 Pre-Primary Campaign Finance Report covering July 1, 2019 - August 10, 2019 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| 8/11/2019 | AugE-16 | ELEC | | | Begin filing Candidate 2019 Pre-Primary Campaign Finance Report covering July 1, 2019 - August 10, 2019 (applicable county or local races) | 16-927(A)(2)(a) 16-927(B) | **WEEKEND** |
| 8/13/2019 | AugE-14 | ELEC | | | Tallying of early ballots for August 27, 2019 Election may begin | 16-550(B) | |
| 8/19/2019 | AugE-10 (next business day due to weekend) | SOS | | | Deadline for filing Standing Committee 2019 Pre-Primary Campaign Finance Report covering July 1, 2019 - August 10, 2019 | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | |

A12

| | | | | | | |
|---|---|---|---|---|---|---|
| **8/19/2019** | AugE-10 (next business day due to weekend) | ELEC | | | Deadline for filing Candidate 2019 Pre-Primary Campaign Finance Report covering July 1, 2019 - August 12, 2019 (applicable county and local races) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | |
| **8/23/2019** | AugE-4 | ELEC | | | Deadline to Vote Early In-Person for the August 27, 2019 Election by 5:00 p.m. | 16-542(E) | |
| **8/27/2019** | **AugE** | **ALL** | | | **August 27, 2019 Election** | **16-204(F)(3)** | |
| **8/27/2019** | 90 + 1 Days after Legislature adjourns *sine die* | ALL | | | General effective date of legislation passed during 2019 54th Legislature, First Regular Session | Const. Art. IV, Pt. 1, § 1(3); 1-243(A) | |
| **8/30/2019** | AugE+3 business days | REC | | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| **9/2/2019** | AugE+6 | BOS | | | First day to canvass returns for August 27, 2019 Election | 16-642(A); 16-645(A) | **HOLIDAY** |
| **9/12/2019** | MarE-180 | BOS | | | Deadline for 180 day notice by Board of Supervisors for March 10, 2020 Election | 16-205(A) | |
| **9/16/2019** | AugE+20 | BOS | | | Last day to canvass returns for August 27, 2019 Election | 16-642(A); 16-645(A) | |
| **9/19/2019** | PPE-180 | | | | Deadline for Governor's proclamation to move PPE | 16-241(B) | |
| **9/19/2019** | PPE-180 | SOS | | | Begin filing period of New Party Petitions for Recognition in PPE | 16-244(A)(2); 16-804 | |
| **9/21/2019** | NovE-45 | REC | | | Deadline for permanent early voters to notify county that an early ballot not be sent | 16-544(F) | **WEEKEND** |
| **9/21/2019** | NovE-45 | REC | | | Mail UOCAVA ballots for all requests received on or before the 48th day before November 5, 2019 Election. | 16-543(A); | **WEEKEND** |
| **10/1/2019** | Oct 1 | SOS | | | Begin filing Standing Committee 2019 3rd Qtr Campaign Finance Report covering August 11, 2019 - September 30, 2019 | 16-927(A)(2)(b); 16-928(B) | |
| **10/1/2019** | Oct 1 | ELEC | | | Begin filing PAC and Political Party 2019 3rd Qtr Campaign Finance Report covering July 1, 2019 - September 30, 2019 | 16-927(A)(1) | |
| **10/1/2019** | Oct 1 | ELEC | | | Begin filing Candidate 2019 3rd Qtr Campaign Finance Report covering August 11, 2019 - September 30, 2019 (applicable county or local races) | 16-927(A)(2)(b) 16-927(B) | |

A13

| 10/1/2019 | Oct 1 | SOS | REC | Compile county-provided October 1 Voter Registration Report | 16-168(G) | |
|---|---|---|---|---|---|---|
| 10/1/2019 | Oct 1 | SOS | | Continued party recognition calculated as of October 1, 2019 | 16-804(A), (B); 16-168(G) | |
| 10/1/2019 | Oct 1 | SOS | | Begin filing 2019 3rd Qtr Lobbyist Expenditure Report covering July 1, 2019 - September 30, 2019 | 41-1232.02(B); 41-1232.03(B) | |
| 10/1/2019 | Oct 1 | BOS | | Deadline to establish new election precincts and boundaries | 16-411(A) | |
| **10/7/2019** | **NovE-29** | **REC** | | **Last day to register to vote for November 5, 2019 Election at midnight** | **16-120(A)** | |
| 10/9/2019 | NovE-27 | ELEC | | Begin early voting for November 5, 2019 Election | 16-542(C) | |
| 10/9/2019 | NovE-27 | REC | | Mail early ballots for November 5, 2019 Election to voters on Permanent Early Voting List | 16-544(F) | |
| 10/15/2019 | Oct 15 | SOS | | Deadline for filing Standing Committee 2019 3rd Qtr Campaign Finance Report covering August 11, 2019 - September 30, 2019 | 16-927(A)(2)(b); 16-928(B) | |
| 10/15/2019 | Oct 15 | ELEC | | Deadline for filing PAC and Political Party 2019 3rd Qtr Campaign Finance Report covering July 1, 2019 - September 30, 2019 | 16-927(A)(1) | |
| 10/15/2019 | Oct 15 | ELEC | | Deadline for filing Candidate 2019 3rd Qtr Campaign Finance Report covering August 11, 2019 - September 30, 2019 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 10/19/2019 | PPE-150 | SOS | | Deadline for filing Petitions for Recognition of New Party in PPE | 16-244(A)(2) | **WEEKEND** |
| 10/19/2019 | NovE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for November 5, 2019 Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND** |
| 10/20/2019 | NovE-16 | SOS | | Begin filing Standing Committee 2019 Pre-General Campaign Finance Report covering October 1, 2019 - October 19, 2019 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| 10/20/2019 | NovE-16 | ELEC | | Begin filing Candidate 2019 Pre-General Campaign Finance Report covering October 1, 2019 - October 19, 2019 (applicable county and local races) | 16-927(A)(2)(a); 16-927(B) | **WEEKEND** |

A14

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/22/2019 | NovE-14 | ELEC | | | Tallying of early ballots for November 5, 2019 Election may begin | 16-550(B) | |
| 10/28/2019 | NovE-10 (next business day due to weekend) | SOS | | | Deadline for filing Standing Committee 2019 Pre-General Campaign Finance Report covering October 1, 2019 - October 19, 2019 | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | WEEKEND |
| 10/28/2019 | NovE-10 (next business day due to weekend) | ELEC | | | Deadline for filing Candidate 2019 Pre-General Campaign Finance Report covering October 1, 2019 - October 19, 2019 (applicable county and local races) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | WEEKEND |
| 10/31/2019 | Oct 31 | SOS | | | Deadline for filing 2019 3rd Qtr Lobbyist Expenditure Report covering July 1, 2019 - September 30, 2019 | 41-1232.02(B); 41-1232.03(B) | |
| 11/1/2019 | NovE-4 | ELEC | | | Deadline to Vote Early In-Person for the November 5, 2019 Election by 5:00 p.m. | 16-542(E) | |
| **11/5/2019** | **NovE** | **ALL** | | | **November 5, 2019 Election** | **16-204(F)(4)** | |
| 11/8/2019 | NovE+3 business days | REC | | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| 11/8/2019 | PPE-130 | SOS | | | Begin accepting Candidate Nomination Papers and Petitions for PPE | 16-242(B) | |
| 11/11/2019 | NovE+6 | BOS | | | First day to canvass returns for November 5, 2019 Election | 16-642(A); 16-645(A) | HOLIDAY |
| 11/21/2019 | MayE-180 | BOS | | | Deadline for 180 day notice by Board of Supervisors for May 19, 2020 Election | 16-205(A) | |
| 11/25/2019 | NovE+20 | BOS | | | Last day to canvass returns for November 5, 2019 Election | 16-642(A) 16-645(A) | |
| 11/29/2019 | PE-250 | REC | | | Deadline for filing new party petitions with Secretary of State (for statewide recognition) or the county officer in charge of elections (for county recognition) for signature verification | 16-803(A) | |
| 12/1/2019 | Dec 1 | SOS | | | Begin filing Biennial Lobbyist Registration Renewal for period beginning 2020 | 41-1232.05(A) | WEEKEND |
| 12/1/2019 | Dec 1 | SOS | | | Deadline for Secretary of State to determine political parties for continued representation based on votes cast for Governor at last General Election, or based on October 1 county voter registration report | 16-804(A), (B), (C), (D); 16-168(G) | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **12/9/2019** | PPE-100 (next business day due to weekend) | SOS | | | Deadline for filing PPE Candidate Nomination Papers and Petitions | 16-242(B) | |
| **12/9/2019** | +7 business days after receipt of new party petitions | SOS | | | Deadline for Secretary of State to remove ineligible sheets and signatures from new party petition sheets and transmit random sample to County Recorders for signature verification | 16-803(B), (C) | |
| **12/11/2019** | MarE-90 | ELEC | | | Mail Notice of Elections to Permanent Early Voters | 16-544(D) | |
| **12/12/2019** | PPE-96 (72 hours after close of candidate filing) | SOS | | | Deadline for Secretary of State to issue certification of those candidates qualified for the Presidential Preference Election ballot to the officer in charge of elections within 72 hours of the close of filing | 16-242(F) | |
| **12/17/2019** | PPE-91 | ELEC | | | Deliver proof of sample ballots to qualified party chair(s) no later than five days following receipt of the candidate certification from the Secretary of State. | 16-245(C) | |
| **12/18/2019** | PPE-90 | ELEC | | | Mail Notice of Presidential Preference Election to permanent early voters | 16-544(D) | |
| **12/23/2019** | +10 business days after receipt of random sample | REC | | | Deadline for County Recorders to verify new party petitions petition signatures for Primary Election and provide certified results to Secretary of State | 16-803(E), (F) | |
| **12/27/2019** | 72 hours (business days only) after receipt of certification from County Recorders | SOS | | | Deadline for Secretary of State to determine new party petition results of random sample, issue receipt to sponsor committee and issue party recognition | 16-803(H), (I) | |
| **1/1/2020** | Jan 1 | SOS | | | Begin filing Standing Committee 2019 4th Qtr Campaign Finance Report covering October 20, 2019 - December 31, 2019 | 16-927(A)(2)(b); 16-928(B) | **HOLIDAY** |
| **1/1/2020** | Jan 1 | ELEC | | | Begin filing PAC and Political Party 2019 4th Qtr Campaign Finance Report covering October 1, 2019 - December 31, 2019 | 16-927(A)(1) | **HOLIDAY** |

A16

| 1/1/2020 | Jan 1 | SOS | | | Begin filing Candidate 2019 Annual Report covering January 1, 2019 - December 31, 2019 (Statewide and Legislative candidates, excluding Corporation Commission candidates running in 2022) | 16-927(A)(1) 16-927(B) | **HOLIDAY** |
| 1/1/2020 | Jan 1 | ELEC | | | Begin filing Candidate 2019 4th Qtr Campaign Finance Report covering October 20, 2019 - December 31, 2019 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| 1/1/2020 | Jan 1 | SOS | | | Begin filing Public Officers Annual Financial Disclosure Statement covering CY2019 | 18-444(D) | **HOLIDAY** |
| 1/1/2020 | Jan 1 | SOS | | | Begin filing 2019 4th Qtr Lobbyist Expenditure Report covering October 1, 2019 - December 31, 2019 | 41-1232.02(B); 41-1232.03(B) | **HOLIDAY** |
| 1/1/2020 | Jan 1 | SOS | | | Begin filing Principal and Public Body 2019 Annual Expenditure Reports covering January 1, 2019 - December 31, 2019 | 41-1232.02(A); 41-1232.03(A) | **HOLIDAY** |
| 1/2/2020 | Jan 2 | SOS | REC | | Compile county-provided January 2 Voter Registration Report | 16-168(G) | |
| 1/2/2020 | Jan 2 | REC | | | Deadline to transfer voters into newly established precincts and boundaries | 16-411; 16-412 | |
| 1/2/2020 | Jan 2 | SOS | ELEC | | Calculate petition signature requirements for candidates for the 2020 Primary and General Elections | 16-322(B); 16-168(G); 16-193(1); 16-321(F) | |
| 1/13/2020 | Jan 13 | SOS | | | Deadline for filing Biennial Lobbyist Registration Renewal for period beginning 2020 | 41-1232.05(A) | |
| 1/15/2020 | Jan 15 | SOS | | | Deadline for filing Standing Committee 2019 4th Qtr Campaign Finance Report covering October 20, 2019 - December 31, 2019 | 16-927(A)(2)(b); 16-928(B) | |
| 1/15/2020 | Jan 15 | ELEC | | | Deadline for filing PAC and Political Party 2019 4th Qtr Campaign Finance Report covering October 1, 2019 - December 31, 2019 | 16-927(A)(1) | |
| 1/15/2020 | Jan 15 | ELEC | | | Deadline for Filing Candidate 2019 4th Qtr Campaign Finance Report Covering October 20, 2019 - December 31, 2019 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **1/15/2020** | Jan 15 | ELEC | | Deadline for Filing Candidate 2019 Annual Report Covering January 1, 2019 - December 31, 2019 (Sttewide and Legislative candidates, excluding Corporation Commission candidates running in 2022) | 16-927(A)(1) 16-927(B) | |
| **1/25/2020** | MarE-45 | REC | | Deadline for permanent early voters to notify county that an early ballot not be sent | 16-544(F) | **WEEKEND** |
| **1/25/2020** | MarE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before March 10, 2020 Election. | 16-543(A); | **WEEKEND** |
| **1/31/2020** | Jan 31 | SOS | ELEC | Deadline for filing Public Officers Annual Financial Disclosure Statement covering CY2019 | 18-444(D) | |
| **1/31/2020** | Jan 31 | SOS | | Deadline for filing 2019 4th Qtr Lobbyist Expenditure Report covering October 1, 2019 - December 31, 2019 | 41-1232.02(B); 41-1232.03(B) | |
| **2/1/2020** | Feb 1** | SOS | | Send Notices of Failure to File for Public Officers Annual Financial Disclosure Statements covering CY2019 | 38-544 | |
| **2/1/2020** | PPE-45 | ELEC | | Prepare proof of sample ballots and (1) Submit to each county party chairman, and (2) Mail a copy to each candidate who has properly filed a Nomination Paper. | 16-461(A) | **WEEKEND** |
| **2/1/2020** | PPE-45 | REC | | Deadline for permanent early voters to notify county that an early ballot not be sent for March 17, 2020 Presidential Preference Election. | 16-544(F) | **WEEKEND** |
| **2/1/2020** | PPE-45 | REC | | Mail UOCAVA ballots for all requests received on or before the 48th day before March 17, 2020 Presidential Preference Election. | 16-543(A); MOVE Act | **WEEKEND** |
| **2/6/2020** | PPE-40 | ELEC | | Last day to accept suggestions from county party chairmen on changes to sample ballot due to error or omission | 16-461(B) | |
| **2/6/2020** | PPE-40 | BOS | | Print sample ballots | 16-461(B), (C) | |
| **2/6/2020** | PE-180 | BOS | | Deadline for 180 day notice by Board of Supervisors for August 4, 2020 Primary Election | 16-205(A) | |

A18

| 2/10/2020 | MarE-29 | REC | | **Last day to register to vote for March 10, 2020 Election at midnight** | **16-120(A)** | |
| 2/12/2020 | MarE-27 | ELEC | | Begin early voting for March 10, 2020 Election | 16-542(C) | |
| 2/12/2020 | MarE-27 | REC | | Mail early ballots for March 10, 2020 Election to voters on Permanent Early Voting List | 16-544(F) | |
| 2/12/2020 | EV-7 | SOS | BOS | Logic and Accuracy Tests before Early Voting for the Presidential Preference Election Begins for Accessible Voting System Units | 16-449; Procedures manual | |
| 2/16/2020 | PPE-30 | SOS | | Deadline for the Secretary of State to appoint new members to the Vote Count Verification Committee. | 16-602(K)(1) | **WEEKEND** |
| 2/17/2020 | PPE-29 | SOS | REC | Compile county-provided PPE Voter Registration Report | 16-168(G)(1)(e) | |
| 2/18/2020 | **PPE-29 (next business day due to holiday)** | **REC** | | **Deadline to register to vote in March 17, 2020 Presidential Preference Election** | **16-120(A)** | |
| 2/19/2020 | PPE-27 | ELEC | | Begin Early Voting for March 17, 2020 Presidential Preference Election | 16-542(C) | |
| 2/19/2020 | PPE-27 | REC | | Mail Early Ballots for March 17, 2020 Presidential Preference Election to voters on permanent early voting list | 16-544(F) | |
| 2/22/2020 | MarE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for March 10, 2020 Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND** |
| 2/23/2020 | MarE-16 | SOS | | Begin filing Standing Committee 2020 March Pre-Election Campaign Finance Report covering January 1, 2020 - February 22, 2020 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| 2/23/2020 | MarE-16 | ELEC | | Begin Filing Candidate 2020 March Pre-Election Campaign Finance Report Covering January 1, 2020 - February 22, 2020 (applicable county and local races) | 16-927(A)(2)(a); 16-927(B) | **WEEKEND** |
| 2/25/2020 | MarE-14 | ELEC | | Tallying of early ballots for March 10, 2020 Election may begin | 16-550(B) | |
| 2/29/2020 | PPE-17 | ELEC | SOS | File Computer Program and Voting Equipment Certification for March 17, 2020 Presidential Preference Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND LEAP YEAR** |

A19

| | | | | | | |
|---|---|---|---|---|---|---|
| 3/2/2020 | Mar 2 (next business day due to weekend) | SOS | | | Deadline for filing Principal and Public Body 2019 Annual Expenditure Reports covering January 1, 2019 - December 31, 2019 | 41-1232.02(A); 41-1232.03(A) | WEEKEND |
| 3/2/2020 | MarE-10 (next business day due to weekend) | SOS | | | Deadline for filing Standing Committee 2020 March Pre-Election Campaign Finance Report covering January 1, 2020 - February 22, 2020 | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | WEEKEND |
| 3/2/2020 | MarE-10 (next business day due to weekend) | ELEC | | | Deadline for filing Candidate 2020 March Pre-Election Campaign Finance Report covering January 1, 2020 - February 22, 2020 (applicable county and local races) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | WEEKEND |
| 3/3/2020 | PPE-14 | ELEC | | | Tallying of early ballots may begin for March 17, 2020 Presidential Preference Election | 16-550(B) | |
| 3/6/2020 | PPE-11 | ELEC | SOS | | Last Day to Request Early Ballot for March 17, 2020 Presidential Preference Election | 16-542(E); Procedures Manual | |
| 3/6/2020 | PPE-11 | BOS | | | Mail sample ballots | 16-245(D) | |
| 3/6/2020 | MarE-4 | ELEC | | | Deadline to Vote Early In-Person for the March 10, 2020 Election by 5:00 p.m. | 16-542(E) | |
| 3/7/2020 | PPE-10 | SOS | | | Deadline for the Vote Count Verification Committee to meet and consider revision of the designated margins to be used in reviewing the hand counting of votes, which will be simultaneously posted to the Secretary of State's web site. | 16-602(K)(4) | WEEKEND |
| 3/7/2020 | PE-150 | SOS | | | Begin accepting Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking partisan nomination | 16-311(A); 16-314(A); 38-543 | WEEKEND |
| 3/7/2020 | PE-150 | SOS | ELEC | | Begin accepting Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking "Nomination Other than by Primary" (independent candidates) | 16-341(A), (C); 38-543 | WEEKEND |
| 3/7/2020 | PE-150 | ELEC | | | Begin accepting nonpartisan candidate Nomination Petitions and Papers for Primary Election (applicable county and local jurisdictions) | 16-311(B); 16-204 | WEEKEND |

| Date | Deadline | Entity | | Description | Citation | |
|---|---|---|---|---|---|---|
| 3/9/2020 | PPE-8 (Second Monday prior to PPE) | BOS | ELEC | Complete tabulation contingency plans | Procedures Manual | |
| 3/10/2020 | PPE-7 | ELEC | | Deadline for political parties to provide names of persons intending to participate in PPE hand count by 5:00 p.m. | 16-602(B)(7) | |
| **3/10/2020** | **MarE** | **ALL** | | **March 10, 2020 Election** | **16-204(F)(1)** | |
| 3/11/2020 | PPE-6 | ELEC | | Deadline for officer in charge to notify political parties of shortage in number of persons intending to participate in PPE hand count by 9:00 a.m. | 16-602(B)(7) | |
| 3/12/2020 | PPE-5 | ELEC | | Deadline for political parties to provide sufficient number of additional persons to cover hand count board shortages by 5:00 p.m. | 16-602(B)(7) | |
| 3/13/2020 | Friday before PPE | REC | | Last Day to Vote Early - PPE | 16-246(C) | |
| 3/13/2020 | MarE+3 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| 3/13/2020 | PPE-4 | ELEC | | Deadline to Vote Early In-Person for the March 17, 2020 Presidential Preference Election by 5:00 p.m. | 16-542(E) | |
| 3/16/2020 | MarE+6 | BOS | | First day to canvass returns for March 10, 2020 Election | 16-642(A); 16-645(A) | |
| **3/17/2020** | **PPE** | **ALL** | | **March 17, 2020 Presidential Preference Election** | **16-241(A)** | |
| 3/18/2020 | PPE+1 | ELEC | | Hand Count begins within 24 hours of the closing of the polls | 16-602(I) | |
| 3/18/2020 | PPE+1 | ELEC | | Select by lot 2% of polling places pursuant to 16-248 and perform hand count on those ballots | 16-602(B)(3) | |
| 3/24/2020 | PPE+5 business days | REC | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| 3/27/2020 | PPE+10 | BOS | ELEC | Last day to Canvass Returns for March 17, 2020 Presidential Preference Election | 16-642(A); 16-645(A) | |
| 3/27/2020 | PPE+10 | BOS | | Deliver PPE Canvass to Secretary of State | 16-645(B) | |
| **3/30/2020** | **PPE+2nd Monday** | **SOS** | | **Official Statewide Canvass of the March 17, 2020 Presidential Preference Election** | **16-249(A)** | |

| 3/30/2020 | MarE+20 | BOS | | | Last day to canvass returns for March 10, 2020 Election | 16-642(A); 16-645(A) | |
|---|---|---|---|---|---|---|---|
| 4/1/2020 | Apr 1 | SOS | REC | | Compile county-provided April 1, 2020 Voter Registration Report | 16-168(G) | |
| 4/1/2020 | Apr 1 | SOS | | | Begin filing Standing Committee 2020 1st Qtr Campaign Finance Report covering February 23, 2020 - March 31, 2020 | 16-927(A)(2)(b); 16-928(B) | |
| 4/1/2020 | Apr 1 | ELEC | | | Begin filing PAC and Political Party 2020 1st Qtr Campaign Finance Report covering January 1, 2020-March 31, 2020 | 16-927(A)(1) | |
| 4/1/2020 | Apr 1 | ELEC | | | Begin filing Candidate 2020 1st Qtr Campaign Finance Report covering January 1, 2020 - March 31, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(1) 16-927(B) | |
| 4/1/2020 | Apr 1 | ELEC | | | Begin filing Candidate 2020 1st Qtr Campaign Finance Report covering February 23, 2020 - March 31, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 4/1/2020 | Apr 1 | SOS | | | Begin filing 2020 1st Qtr Lobbyist Expenditure Report covering January 1, 2020 - March 31, 2020 | 41-1232.02(B); 41-1232.03(B) | |
| 4/4/2020 | MayE-45 | REC | | | Deadline for permanent early voters to notify county that an early ballot not be sent for May 19, 2020 Election | 16-544(F) | **WEEKEND** |
| 4/4/2020 | MayE-45 | REC | | | Mail UOCAVA ballots for all requests received on or before the 48th day before May 19, 2020 Election. | 16-543(A); | **WEEKEND** |
| 4/6/2020 | PE-120 | SOS | | | Send notice to Board of Supervisors designating state and federal offices for which candidates are to be nominated at the Primary Election | 16-202 | |
| 4/6/2020 | PE-120 | SOS | | | Deadline for accepting Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking partisan nomination | 16-311(A); 16-314(A); 38-543 | |

A22

| | | | | | | |
|---|---|---|---|---|---|---|
| **4/6/2020** | PE-120 | SOS | | Deadline for accepting Nomination Papers, Nomination Petitions, and Financial Disclosure Statements for Primary Election candidates seeking "Nomination Other than by Primary" (independent candidates) | 16-341(A), (C); 38-543 | |
| **4/6/2020** | PE-120 | ELEC | | Deadline for accepting Nonpartisan Candidate Nomination Petitions and Papers for Primary Election (County and Local Jurisdictions only) | 16-311(B);     16-204 | |
| **4/15/2020** | Apr 15 | SOS | | Deadline for filing Standing Committee 2020 1st Qtr Campaign Finance Report covering February 23, 2020 - March 31, 2020 | 16-927(A)(2)(b); 16-928(B) | |
| **4/15/2020** | Apr 15 | ELEC | | Deadline for filing PAC and Political Party 2020 1st Qtr Campaign Finance Report covering January 1, 2020 - March 31, 2020 | 16-927(A)(1) | |
| **4/15/2020** | Apr 15 | SOS | | Deadline for Filing Candidate 2020 1st Qtr Campaign Finance Report Covering January 1, 2020 - March 31, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2020) | 16-927(A)(1) 16-927(B) | |
| **4/15/2020** | Apr 15 | ELEC | | Deadline for filing Candidate 2020 1st Qtr Campaign Finance Report covering February 23, 2020 - March 31, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| **4/20/2020** | PE-76 (10 business days afer close of candidate filing) | SOS | ELEC | Deadline for filing challenges to candidate Nomination Petitions | 16-351(A) | |
| **4/20/2020** | **MayE-29** | **REC** | | **Last day to register to vote for May 19, 2020 Election** | **16-120(A)** | |
| **4/22/2020** | MayE-27 | ELEC | | Begin early voting for May 19, 2020 Election | 16-542(C) | |
| **4/22/2020** | MayE-27 | REC | | Mail early ballots for May 19, 2020 Election to voters on Permanent Early Voting List | 16-542(C); 16-544(F) | |
| **4/26/2020** | PE-100** | ELEC | | Order ballot cards for Primary Election | 16-508 | **WEEKEND** |

A23

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **4/30/2020** | Apr 30 | SOS | | | Deadline for filing 2020 1st Qtr Lobbyist Expenditure Report covering January 1, 2020 - March 31, 2020 | 41-1232.02(B); 41-1232.03(B) | |
| **5/2/2020** | MayE-17 | ELEC | SOS | | File Computer Program and Voting Equipment Certification for May 19, 2020 Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND** |
| **5/3/2020** | MayE-16 | SOS | | | Begin filing Standing Committee 2020 May Pre-Election Campaign Finance Report covering April 1, 2020 - May 2, 2020 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| **5/3/2020** | MayE-16 | ELEC | | | Begin Filing Candidate 2020 May Pre-Election Campaign Finance Report Covering April 1, 2020 - May 2, 2020 (applicable county and local races) | 16-927(A)(2)(a); 16-927(B) | **WEEKEND** |
| **5/3/2020** | PE-93 | REC | | | Begin accepting requests for early ballot for Primary Election (UOCAVA voters and protected voters under can request ballots before this date) | 16-542(A)(B) | **WEEKEND** |
| **5/3/2020** | PE-93** | REC | | | Begin accepting requests for assistance by Special Election Board due to "continuing" illness | 16-549 | **WEEKEND** |
| **5/5/2020** | MayE-14 | ELEC | | | Tallying of early ballots for May 19, 2020 election may begin | 16-550(B) | |
| **5/6/2020** | PE-90 | ELEC | | | Mail Notice of Primary Election to permanent early voters | 16-544(D) | |
| **5/6/2020** | PE-90 | BOS | | | Accept list submitted by party chairmen of Election Board nominees | 16-531(A) | |
| **5/7/2020** | GE-180 | BOS | | | Deadline for 180 day notice by Board of Supervisors for November 3, 2020 General Election | 16-205(A) | |
| **5/11/2020** | MayE-10 (next business day due to weekend) | SOS | | | Deadline for filing Standing Committee 2020 May Pre-Election Campaign Finance Report covering April 1, 2020 - May 2, 2020 | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | **WEEKEND** |
| **5/11/2020** | MayE-10 (next business day due to weekend) | ELEC | | | Deadline for filing Candidate 2020 May Pre-Election Campaign Finance Report Covering April 1, 2020 - May 2, 2020 (applicable county and local races) | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | **WEEKEND** |
| **5/15/2020** | MayE-4 | ELEC | | | Deadline to Vote Early In-Person for the May 19, 2020 Election by 5:00 p.m. | 16-542(E) | |
| **5/19/2020** | **MayE** | **ALL** | | | **May 19, 2020 Election** | **16-204(F)(2)** | |

A24

| 5/21/2020 | PE-75 | BOS | | | Board of Supervisors may cancel election for certain offices held under Title 15, Title 48, or 16-822 based on number of candidates who have filed Nomination Paper. | 16-410(A) | |
| 5/21/2020 | PE-75** | BOS | | | Schedule classes for Precinct Election Boards | 16-532 | |
| 5/22/2020 | MayE+3 business days | REC | | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| 5/25/2020 | MayE+6 | BOS | | | First day to canvass returns for May 19, 2020 Election | 16-642(A); 16-645(A) | |
| 6/2/2020 | PE-63 (9 weeks) | CCEC | | | Begin CCEC Primary Election Period | 16-961(B)(4) | |
| 6/2/2020 | PE-63 (9 weeks) | CCEC | | | Clean Election Commission payment to qualified participating candidates | 16-951(A) | |
| 6/5/2020 | PE-60 | REC | | | Accept list of nominees for Special Election Boards from the county party chairmen | 16-549(A) | |
| 6/6/2020 | GE-150 | ELEC | | | Begin accepting nonpartisan candidate Nomination Petitions and Papers for General Election (applicable county and local jurisdictions) | 16-311(B); 16-204 | WEEKEND |
| 6/8/2020 | MayE+20 | BOS | | | Last day to canvass returns for May 19, 2020 Election | 16-642(A) 16-645(A) | |
| 6/15/2020 | PE-50** | BOS | | | Prepare materials and supplies for instruction classes to Precinct Election Boards | 16-532 | |
| 6/15/2020 | PE-50** | BOS | | | Print instructions and check list for Election Board and Inspectors | 16-532 | |
| 6/17/2020 | PE-48 | SOS | | | Deadline to submit arguments for or against Ballot Measures | 19-124(A)(B) | |
| 6/20/2020 | PE-45 | BOS | | | Begin instruction classes for Precinct Election Boards | 16-532(A) | WEEKEND |
| 6/20/2020 | PE-45 | ELEC | | | Prepare proof of sample ballots and (1) Submit to each county party chairman, and (2) Mail a copy to each candidate who has properly filed a Nomination Paper | 16-461(A) | WEEKEND |
| 6/20/2020 | PE-45 | REC | | | Deadline for permanent early voters to notify county that an early ballot not be sent | 16-544(F) | WEEKEND |
| 6/20/2020 | PE-45 | REC | | | Mail UOCAVA ballots for all requests received on or before the 48th day before August 4, 2020 Primary Election. | 16-543(A); | WEEKEND |
| 6/21/2020 | PE-44** | ELEC | | | Order ballot cards for November 3, 2020 General Election | 16-508 | WEEKEND |

A25

| 6/25/2020 | PE-40 | ELEC | | | Last day to accept suggestions from county party chairmen on changes to sample ballot due to error or omission | 16-461(B) | |
| 6/25/2020 | PE-40 | BOS | | | Print sample ballots | 16-461(B), (C) | |
| 6/25/2020 | PE-40 | SOS | ELEC | | Deadline for Write-in Candidate Nomination Papers for 2020 Primary Election at 5:00 p.m. | 16-312(B) | |
| 6/26/2020 | PE-39** | SOS | ELEC | | Deliver notice of Write-in Candidates who have filed Nomination Papers | 16-312(E); Procedures Manual | |
| 6/26/2020 | PE-39** | BOS | | | Include list of eligible Write-in Candidates in supplies for Precinct Inspectors | 16-312(C), (E) | |
| 7/1/2020 | (EV-7) | SOS | BOS | | Begin Logic and Accuracy Tests before early voting for the Primary Election for accessible voting system units | 16-449; Procedures Manual | |
| 7/1/2020 | Jul 1 | SOS | | | Begin filing Standing Committee 2020 2nd Qtr Campaign Finance Report covering May 3, 2020 - June 30, 2020 | 16-927(A)(2)(b); 16-928(B) | |
| 7/1/2020 | Jul 1 | ELEC | | | Begin filing PAC and Political Party 2020 2nd Qtr Campaign Finance Report covering April 1, 2020 - June 30, 2020 | 16-927(A)(1) | |
| 7/1/2020 | Jul 1 | ELEC | | | Begin filing Candidate 2020 2nd Qtr Campaign Finance Report covering April 1, 2020 - June 30, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(1) 16-927(B) | |
| 7/1/2020 | Jul 1 | ELEC | | | Begin filing Candidate 2020 2nd Qtr Campaign Finance Report covering May 3, 2020 - June 30, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 7/1/2020 | Jul 1 | SOS | | | Begin filing 2020 2nd Qtr Lobbyist Expenditure Report covering April 1, 2020 - June 30, 2020 | 41-1232.02(B); 41-1232.03(B) | |
| 7/2/2020 | GE - 4 months and 1 day | SOS | | | Deadline for filing statewide initiative petitions with the Secretary of State | Const. Art. IV § 1(4) | |
| 7/2/2020 | PE-33 | BOS | | | Print early ballots and deliver to County Recorder | 16-503; 16-545(B)(1) | |
| 7/2/2020 | PE-33** | REC | | | Print instructions and envelopes needed for early voting | 16-547(C) | |
| 7/2/2020 | PE-33** | REC | | | Appoint Special Election Boards | 16-549(A) | |
| 7/3/2020 | PE-32** | BOS | | | Accept list submitted by county party chairmen of party election observers | 16-590 | |

| 7/3/2020 | PE-32** | BOS | | | Designate locations for Central Counting Place Boards, Precinct Boards, Early Boards, Data Processing Boards and Receiving Site Boards | Procedures Manual | |
| 7/6/2020 | **PE-29** | **REC** | | | **Last day to register to vote for August 4, 2020 Primary Election at midnight** | **16-120(A)** | |
| 7/6/2020 | PE-29 | SOS | REC | | Compile county-provided Primary Election Voter Registration Report | 16-168(G) | |
| 7/6/2020 | PE-29** | BOS | | | Designate locations for Receiving Sites, Central Counting Place, Computer Center and Early Processing Center | 16-551 | |
| 7/6/2020 | GE-120 | ELEC | | | Deadline for accepting Nonpartisan Candidate Nomination Petitions and Papers for General Election (County and Local Jurisdictions only) | 16-311(B);    16-204 | |
| 7/8/2020 | PE-27 | REC | | | Begin early voting for August 4, 2020 Primary Election | 16-542(C) | |
| 7/8/2020 | PE-27 | REC | | | Mail early ballots for August 4, 2020 Primary Election to voters on Permanent Early Voting List | 16-544(F) | |
| 7/14/2020 | PE-21 (8 days after close of registration) | REC | | | Deliver complete copies of precinct registers to county and state party chairmen | 16-168(C) | |
| 7/15/2020 | PE-20 | BOS | | | Designate polling places (except for special district and mail ballot elections) | 16-411(B) | |
| 7/15/2020 | PE-20 | BOS | | | Appoint all Election Boards | 16-531; 16-535; 16-551 | |
| 7/15/2020 | Jul 15 | SOS | | | Deadline for filing Standing Committee 2020 2nd Qtr Campaign Finance Report covering May 3, 2020 - June 30, 2020 | 16-927(A)(2)(b); 16-928(B) | |
| 7/15/2020 | Jul 15 | ELEC | | | Deadline for filing PAC and Political Party 2020 2nd Qtr Campaign Finance Report covering April 1, 2020 - June 30, 2020 | 16-927(A)(1) | |

| 7/15/2020 | Jul 15 | ELEC | | | Deadline for filing Candidate 2020 2nd Qtr Campaign Finance Report covering April 1, 2020 - June 30, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(1) 16-927(B) | |
| 7/15/2020 | Jul 15 | ELEC | | | Deadline for filing Candidate 2020 2nd Qtr Campaign Finance Report covering May 3, 2020 - June 30, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 7/17/2020 | PE-18** | BOS | | | Outline polling place support plan for General Election Day | ** | |
| 7/18/2020 | PE-17 | BOS | SOS | | File Computer Program and Voting Equipment Certification for Primary Election with Secretary of State for August 4, 2020 Primary Election | 16-445(A); Procedures Manual | **WEEKEND** |
| 7/18/2020 | PE-17 | SOS | | | SOS performs Logic and Accuracy tests within 17 days of August 4, 2020 Primary Election - Notify public 48 hours in advance | 16-449(A); Procedures Manual | **WEEKEND** |
| 7/19/2020 | PE-16 | SOS | | | Begin filing Standing Committee 2020 Pre-Primary Campaign Finance Report covering July 1, 2020 - July 18, 2020 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| 7/19/2020 | PE-16 | ELEC | | | Begin filing PAC and Political Party 2020 Pre-Primary Campaign Finance Report covering July 1, 2020 - July 18, 2020 | 16-927(A)(2)(a) | **WEEKEND** |
| 7/19/2020 | PE-16 | ELEC | | | Begin filing Candidate 2020 Pre-Primary Campaign Finance Report covering July 1, 2020 - July 18, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(2)(a) 16-927(B) | **WEEKEND** |
| 7/19/2020 | PE-16 | ELEC | | | Begin filing Candidate 2020 Pre-Primary Campaign Finance Report covering July 1, 2020 - July 18, 2020 (applicable county and local races) | 16-927(A)(2)(a) 16-927(B) | **WEEKEND** |
| 7/20/2020 | 10 business days afer close of candidate filing | ELEC | | | Deadline for filing challenges to Candidate Nonpartisan Nomination Petitions for the General Election | 16-351(A) | |

A28

| 7/21/2020 | PE-14 | ELEC | | | Tallying of early ballots for August 4, 2020 Primary Election may begin | 16-550(B) | |
|---|---|---|---|---|---|---|---|
| 7/21/2020 | PE-14** | BOS | | | Mail notice to county party chairmen as to time and place when voting devices can be inspected | 16-447(B) | |
| 7/24/2020 | PE-11 | REC | | | Deadline for accepting requests for assistance by Special Election Board due to "continuing" illness at 5:00 p.m. | 16-549(C) | |
| 7/24/2020 | PE-11 | REC | | | Deadline for accepting requests for early ballot | 16-542(E) | |
| 7/24/2020 | PE-11 | BOS | | | Mail sample ballots | 16-461(D) | |
| 7/24/2020 | PE-11 | REC | | | Begin accepting requests for early ballots as a result of an emergency occurring between 5:00 p.m. on July 24, 2020 and 5:00 p.m. on August 3, 2020 that would prevent the elector from voting at the polls | 16-542(H) | |
| 7/24/2020 | PE-11 (after 5:00 p.m. on 2nd Friday prior to PE) | REC | | | Begin accepting requests for assistance by Special Election Board due to "unanticipated" illness or disability | 16-549(D) | |
| 7/25/2020 | PE-10 | REC | | | Prepare official precinct registers | 16-168(A) | **WEEKEND** |
| 7/25/2020 | PE-10** | REC | | | Provide inactive voter list to each precinct | 16-583(A) | **WEEKEND** |
| 7/27/2020 | PE-8 (2nd Monday Prior to PE) | BOS | ELEC | | Complete tabulation contingency plans | Procedures Manual | |
| 7/27/2020 | PE-10 (next business day due to weekend) | SOS | | | Deadline for filing Standing Committee 2020 Pre-Primary Campaign Finance Report covering July 1, 2020 - July 18, 2020 | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | **WEEKEND** |
| 7/27/2020 | PE-10 (next business day due to weekend) | ELEC | | | Deadline for Filing PAC and Political Party 2020 Pre-Primary Campaign Finance Report Covering July 1, 2020 - July 18, 2020 | 16-927(A)(2)(a); 1-243(A); 1-303 | **WEEKEND** |
| 7/27/2020 | PE-10 (next business day due to weekend) | ELEC | | | Deadline for filing Candidate 2020 Pre-Primary Campaign Finance Report covering July 1, 2020 - July 18, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | **WEEKEND** |

A29

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/27/2020 | PE-10 (next business day due to weekend) | ELEC | | | Deadline for filing Candidate 2020 Pre-Primary Campaign Finance Report covering July 1, 2020 - July 18, 2020 (applicable county and local races) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | **WEEKEND** |
| 7/28/2020 | PE-7** | BOS | | | Complete ballot and supply dispersal plan | 16-509 | |
| 7/28/2020 | PE-7 | ELEC | | | Deadline for political parties to provide names of persons intending to participate in hand count by 5:00 p.m. | 16-602(B)(7) | |
| 7/28/2020 | PE-7 | CCEC | SOS | | Deadline for filing Application for Certification form with the Secretary of State as a candidate participating in Clean Elections | 16-947(A); 16-961(B)(3) | |
| 7/28/2020 | PE-7 | CCEC | SOS | | End of CCEC Qualifying Period for 2020 Election, covers August 1, 2019 - August 28, 2020 | 16-961(B)(3) | |
| 7/29/2020 | PE-6 (Wednesday prior to PE) | ELEC | | | Deadline for officer in charge to notify political parties of shortage in number of persons intending to participate in hand count by 9:00 a.m. | 16-602(B)(7) | |
| 7/30/2020 | PE-5 (Thursday prior to PE) | ELEC | | | Deadline for political parties to provide sufficient number of additional persons to cover hand count board shortages by 5:00 p.m. | 16-602(B)(7) | |
| 7/31/2020 | PE-4 (Friday prior to PE) | REC | | | Deadline for Uniformed and Overseas Citizens recently discharged or separated from employment to register to vote for the Primary Election at 5:00 p.m. | 16-103(D) | |
| 7/31/2020 | PE-4 | ELEC | | | Deadline to Vote Early In-Person for the August 4, 2020 Primary Election by 5:00 p.m. | 16-542(E) | |
| 7/31/2020 | Jul 31 | SOS | | | Deadline for filing 2020 2nd Qtr Lobbyist Expenditure Report covering April 1, 2020 - June 30, 2020 | 41-1232.02(B); 41-1232.03(B) | |
| 7/31/2020 | Filing date+ 20 business days (Date may vary for early filings) | SOS | | | Deadline for Secretary of State to remove ineligible initiative petition sheets and signatures and transmit random sample to County Recorders | 19-121.01(A) 19-121.01(B) 19-121.01(D) | |
| 8/2/2020 | PE-2 | BOS | | | If BOS fails to designate polling places, the Justice of the Peace may designate polling places | 16-411(C) | **WEEKEND** |

| 8/2/2020 | PE-2 | BOS | | | Deliver ballots to Inspector | 16-509 | **WEEKEND** |
|---|---|---|---|---|---|---|---|
| **8/2/2020** | GE-93 | REC | | | Begin accepting requests for early ballot for General Election (UOCAVA voters and protected voters under can request ballots before this date) | 16-542(A)(B); 16-153 | **WEEKEND** |
| **8/2/2020** | GE-93** | REC | | | Begin accepting requests for assistance by Special Election Board due to "continuing" illness | 16-549* | **WEEKEND** |
| **8/3/2020** | PE-1** | BOS | | | Complete instruction classes for Precinct Boards, Receiving and Central Counting Place Boards and Data Processing Boards | 16-532 | |
| **8/3/2020** | PE-1** | BOS | | | Deliver polling place supplies | 16-404; 16-405; 16-447; 16-511 | |
| **8/3/2020** | PE-1 | REC | | | Deadline for Accepting Requests for Assistance by Special Election Board due to "Unanticipated" Illness or Disability | 16-549(D) | |
| **8/3/2020** | PE-1 | REC | | | Deadline for accepting requests for early ballots as a result of an emergency occurring between 5:00 p.m. on July 24, 2020 and 5:00 p.m. on August 3, 2020 that would prevent the elector from voting at the polls | 16-542(H) | |
| **8/3/2020** | PE-1 | REC | | | Deliver list of all electors who were issued early ballots to Precinct Inspectors | 16-542(G) | |
| **8/3/2020** | PE-1** | BOS | | | Deliver list of qualified write-in candidates to Inspector to be posted in polling place on Election Day | 16-312(E) | |
| **8/4/2020** | **PE** | **ALL** | | | **August 4, 2020 Primary Election** | **16-201; 16-204(E)(1) 16-204(F); 16-206(A)** | |
| **8/4/2020** | PE | REC | | | Continue delivery of early ballots to Early Boards until 7:00 p.m. | 16-551(C) | |
| **8/4/2020** | PE | REC | | | Deadline for uniformed and overseas citizens residing outside of Arizona to register to vote for the Primary Election at 7:00 p.m. | 16-103(C) | |
| **8/4/2020** | PE | CCEC | | | End of CCEC Primary Election Period | 16-961(B)(4) | |

A31

| 8/5/2020 | PE+1 | ELEC | | | Hand count begins within 24 hours of the closing of the polls | 16-602(I); Procedures Manual | |
|---|---|---|---|---|---|---|---|
| 8/5/2020 | PE+1 | ELEC | | | Select by lot 2% of precincts and perform hand count on those ballots | 16-602(B)(1); | |
| 8/5/2020 | PE+1 | ELEC | | | Select contested races to be hand counted | 16-602(C); | |
| 8/5/2020 | PE+1 | CCEC | | | Begin CCEC General Election Period | 16-961(B)(5) | |
| 8/5/2020 | PE+1 | CCEC | | | CCEC payment to qualified participating candidates | 16-951(C) | |
| 8/5/2020 | PE+1 | CCEC | | | CCEC candidates to return monies above sufficient amount to pay unpaid bills during Primary Election Period | 16-953(A) | |
| 8/5/2020 | GE-90 | BOS | | | Accept lists submitted by party chairmen of Election Board nominees for General Election | 16-531(A) | |
| 8/5/2020 | GE-90 | SOS | CLK | | Begin accepting retention paperwork for judicial officers of Supreme and Appellate courts (SOS) and Superior Court (CLK) | Const. Art. VI § 38(A) | |
| 8/11/2020 | PE+5 Business Days | REC | | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2); Procedures Manual | |
| 8/10/2020 | PE+1st Monday | BOS | | | Deadline to hear early ballot challenges | 16-552(E) | |
| 8/10/2020 | PE+6 | CLK | BOS | | First day to canvass returns for August 4, 2020 Primary Election, and issue Letters of Nomination and Certificates of Election | 16-642(A); 16-645(A) | |
| 8/11/2020 | PE+5 business days | REC | | | Last day for County Recorder to make reasonable effort to contact voter for early ballot signature reconciliation | 16-550(A) | |
| 8/11/2020 | PE+5 business days | REC | | | Process provisional ballots | 16-135(D); 16-584(E) | |
| 8/14/2020 | PE+10 | CLK | BOS | | Last day to canvass returns for August 4, 2020 Primary Election, and issue Letters of Nomination and Certificates of Election (NOTE: 16-642(A) allows governing body to canvass up to 20 days following an election. However, 16-645(B) requires BOS to deliver canvass to SOS within 10 days after Primary Election) | 16-642(A); 16-645(A) | |

A32

| 8/14/2020 | PE+10 | BOS | | | Deliver Canvass to Secretary of State | 16-645(B) | |
|---|---|---|---|---|---|---|---|
| 8/17/2020 | **PE+ 2nd Monday** | **SOS** | | | **OFFICIAL CANVASS OF THE AUGUST 4, 2020 PRIMARY ELECTION Canvass returns for all Federal, Statewide, and Legislative Offices** | **16-645(B)** | |
| 8/17/2020 | PE+ 2nd Monday | SOS | | | Issue Letters of Nomination to all prevailing Federal, Statewide, and Legislative candidates who filed Nomination Papers with the Secretary of State | 16-645(B) | |
| 8/20/2020 | GE-75** | BOS | | | Schedule instruction classes for Precinct Election Boards | 16-532 | |
| 8/20/2020 | GE-75 | BOS | | | Board of Supervisors may cancel election for certain offices held under Title 15, Title 48, or 16-822 based on number of candidates who have filed Nomination Paper. | 16-410(A) | |
| 8/21/2020 | Receipt of Random Sample +15 Business Days (Date may vary for early filings) | REC | | | Deadline for County Recorders to verify initiative petition signatures and provide certified results to the Secretary of State | 19-121.02 | |
| 8/25/2020 | GE-70 | CCEC | SOS | | Deadline for participating candidate to file Application to Receive Funds and Qualifying Contributions Report with original qualifying slips to the Secretary of State | 16-950(B) | |
| 8/27/2020 | 72 hours (business days only) after receipt of certification from County Recorders (Date may vary for early filings) | SOS | | | Deadline for Secretary of State to determine initiative petition results of random sample, issue receipt to sponsor committee, and notify Governor | 19-121.04 | |
| 9/3/2020 | PE+30 | CCEC | | | CCEC candidates shall pay uncontested / unpaid bills from Primary Election | 16-953(C) | |

A33

| 9/4/2020 | GE-60 | REC | | | Begin appointing Special Election Boards | 16-549(A) | |
|---|---|---|---|---|---|---|---|
| 9/4/2020 | GE-60 | REC | | | Accept list of nominees for Special Election Boards from the county party chairmen | 16-549(A) | |
| 9/4/2020 | GE-60 | SOS | ELEC | | Deadline to accept retention paperwork for judicial officers of Supreme and Appellate courts (SOS) and Superior Court (CLK) | Const. Art. VI § 38(A) | |
| 9/10/2020 | MarE-180 | BOS | | | Deadline for 180 day notice by Board of Supervisors for March 9, 2021 Election | 16-205 | |
| 9/14/2020 | GE-50** | BOS | | | Prepare materials and supplies for instruction classes to Precinct Election Boards | 16-532 | |
| 9/14/2020 | GE-50** | BOS | | | Print instructions and check list for Election Board and Inspectors | 16-532 | |
| 9/19/2020 | GE-45 | BOS | | | Prepare proof of sample ballots and submit to each county party chairman; Mail a copy to each candidate whose name did not appear on the Primary Election ballot | 16-461(A) | **WEEKEND** |
| 9/19/2020 | GE-45 | BOS | | | Begin instruction classes for Precinct Election Boards | 16-532 | **WEEKEND** |
| 9/19/2020 | GE-45 | REC | | | Deadline for permanent early voters to notify county that an early ballot not be sent | 16-544(F) | **WEEKEND** |
| 9/19/2020 | GE-45 | REC | | | Mail UOCAVA ballots for all requests received on or before the 48th day before November 3, 2020 General Election. | 16-543(A); | **WEEKEND** |
| 9/21/2020 | GE-43** | SOS | | | Mail or e-mail a Publicity Pamphlet to every household that contains a registered voter | 19-123(B)* 19-123(C)* | |
| 9/24/2020 | GE-40 | BOS | | | Accept suggestions from county party chairmen on changes to sample ballot due to error or omission | 16-461(B) | |
| 9/24/2020 | PE+30 | CCEC | | | CCEC candidates shall pay uncontested / unpaid bills from Primary Election | 16-953(C) | |
| 9/24/2020 | GE-40 | SOS | ELEC | | Deadline for Write-in Candidate Nomination Papers for General Election at 5:00 p.m. | 16-312(B) | |
| 9/25/2020 | GE-39** | SOS | ELEC | | Deliver notice of Write-in Candidates filing Nomination Papers with Secretary of State | 16-312(E) | |
| 9/25/2020 | GE-39** | BOS | | | Include list of eligible Write-in Candidates in supplies for Precinct Inspectors | 16-312(E) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/30/2020 | (EV-7) | SOS | BOS | | Logic and Accuracy Tests begin for accessible voting system units before early voting for General Election | 16-449; Procedures Manual | |
| 10/1/2020 | Oct 1 | SOS | | | Begin filing Standing Committee 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 | 16-927(A)(2)(b); 16-928(B) | |
| 10/1/2020 | Oct 1 | ELEC | | | Begin filing PAC and Political Party 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 | 16-927(A)(2)(b) | |
| 10/1/2020 | Oct 1 | SOS | | | Begin filing Candidate 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2020) | 16-927(A)(2)(b) 16-927(B) | |
| 10/1/2020 | Oct 1 | ELEC | | | Begin filing Candidate 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 10/1/2020 | Oct 1 | SOS | | | Begin filing 2020 3rd Qtr Lobbyist Expenditure Report covering July 1, 2020 - September 30, 2020 | 41-1232.02(B); 41-1232.03(B) | |
| 10/1/2020 | GE-33 | BOS | | | Print early ballots and deliver to County Recorders | 16-503; 16-545 | |
| 10/4/2020 | GE-30** | BOS | | | Accept lists of party election observers submitted by county party chairmen | 16-590(A) | **WEEKEND** |
| 10/4/2020 | GE-30 | | | | Deadline for Issuance of Proclamation of General Election by Governor | 16-214 | **WEEKEND** |
| 10/5/2020 | **GE-29** | **REC** | | | **Last day to register to vote for November 3, 2020 General Election at midnight** | **16-120(A)** | |
| 10/5/2020 | GE-29 | SOS | REC | | Compile county-provided General Election Voter Registration Report | 16-168(G) | **HOLIDAY** |
| 10/7/2020 | GE-27 | REC | | | Begin early voting for November 3, 2020 General Election | 16-542(C) | |
| 10/7/2020 | GE-27 | REC | | | Mail early ballots for November 3, 2020 General Election to voters on Permanent Early Voting List | 16-544(F) | |
| 10/9/2020 | GE-25** | BOS | | | Print challenge lists and payroll vouchers | 16-536*; 16-594* | |
| 10/9/2020 | GE-25** | BOS | | | Ballot labels ready for voting devices | 16-405 | |

A35

| 10/9/2020 | GE-25** | BOS | | | Print poll lists | 16-516 | |
| 10/9/2020 | GE-25** | BOS | | | Print official and unofficial return envelopes | 16-511(A); 16-615; 16-616 | |
| 10/9/2020 | GE-25** | BOS | | | Print duplicate ballot report forms | 16-608(A) | |
| 10/13/2020 | GE-21 (8 days after close of registration) | REC | | | Deliver complete copies of precinct registers to county and state party chairmen | 16-168(C) | |
| 10/14/2020 | GE-20 | BOS | | | Deadline to designate polling places (except for special district and mail ballot elections) | 16-411(B) | |
| 10/14/2020 | GE-20 | BOS | | | Appoint all Election Boards | 16-531; 16-535; 16-551 | |
| 10/15/2020 | Oct 15 | SOS | | | Deadline for filing Standing Committee 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 | 16-927(A)(2)(b); 16-928(B) | |
| 10/15/2020 | Oct 15 | ELEC | | | Deadline for filing PAC and Political Party 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 | 16-927(A)(2)(b) | |
| 10/15/2020 | Oct 15 | ELEC | | | Deadline for filing Candidate 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(2)(b) 16-927(B) | |
| 10/15/2020 | Oct 15 | ELEC | | | Deadline for filing Candidate 2020 3rd Qtr Campaign Finance Report covering July 19, 2020 - September 30, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |
| 10/16/2020 | GE-18** | BOS | | | Print log books and forms for Receiving Sites, Central Counting Place, Computer Center and Early Ballot Processing Center | 16-608 | |
| 10/16/2020 | GE-18** | BOS | | | Outline polling place support plan for General Election Day | ** | |
| 10/17/2020 | GE-17 | SOS | BOS | | Perform Logic and Accuracy Tests within 17 days of November 3, 2020 General Election - Notify public 48 hours in advance | 16-449(A); Procedures Manual | **WEEKEND** |

| 10/17/2020 | GE-17 | BOS | SOS | File Computer Program and Voting Equipment Certification for November 3, 2020 General Election with Secretary of State | 16-445(A); Procedures Manual | **WEEKEND** |
|---|---|---|---|---|---|---|
| 10/18/2020 | GE-16 | SOS | | Begin filing Standing Committee 2020 Pre-General Campaign Finance Report covering October 1, 2020 - October 17, 2020 | 16-927(A)(2)(a); 16-928(B) | **WEEKEND** |
| 10/18/2020 | GE-16 | SOS | ELEC | Begin filing PAC and Political Party 2020 Pre-General Campaign Finance Report covering October 1, 2020 - October 17, 2020 | 16-927(A)(2)(a) | **WEEKEND** |
| 10/18/2020 | GE-16 | SOS | | Begin filing Candidate 2020 Pre-General Campaign Finance Report covering October 1, 2020 - October 17, 2020 (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(2)(a) 16-927(B) | **WEEKEND** |
| 10/18/2020 | GE-16 | SOS | | Begin filing Candidate 2020 Pre-General Campaign Finance Report covering October 1, 2020 - October 17, 2020 (applicable county and local races) | 16-927(A)(2)(a) 16-927(B) | **WEEKEND** |
| 10/20/2020 | GE-14 | ELEC | | Tallying of early ballots for November 3, 2020 General Election may begin | 16-550(B) | |
| 10/20/2020 | GE-14 | BOS | | Mail notice to county party chairmen as to time and place when voting devices can be inspected | 16-447(B)* | |
| 10/23/2020 | GE-11 | REC | | Deadline for accepting requests for early ballot | 16-542(E) | |
| 10/23/2020 | GE-11 | BOS | | Mail sample ballot to every household that contains a registered voter | 16-510(C) | |
| 10/23/2020 | GE-11 (2nd Friday prior to GE) | REC | | Deadline for accepting requests for assistance by Special Election Board due to "continuing" Illness at 5:00 p.m. | 16-549(C) | |
| 10/23/2020 | GE-11 (Beginning 2nd Friday prior to GE) | REC | | Begin accepting requests for Early Ballots as a result of an emergency occurring between 5:00 p.m. on October 23, 2020 and 5:00 p.m. on November 2, 2020 that would prevent the elector from voting at the polls | 16-542(H) | |

A37

| 10/24/2020 | GE-10 | SOS | | | Deadline for the Vote Count Verification Committee to meet and consider revision of the designated margins to be used in reviewing the hand counting of votes, which will be simultaneously posted to the Secretary of State's web site. | 16-602(K)(4) | **WEEKEND** |
|---|---|---|---|---|---|---|---|
| 10/24/2020 | GE-10 (After 2nd Friday before GE) | REC | | | Begin accepting requests for assistance by Special Election Board due to "unanticipated" illness | 16-549(D) | **WEEKEND** |
| 10/24/2020 | GE-10 | BOS | | | Deadline to publish Election Proclamation made by Governor | 16-214(C) | **WEEKEND** |
| 10/24/2020 | GE-10 | REC | | | Prepare official precinct registers | 16-168(A) | **WEEKEND** |
| 10/24/2020 | GE-10 | REC | | | Provide inactive voter list to each precinct | 16-583* | **WEEKEND** |
| 10/26/2020 | GE-10 (next business day due to weekend) | SOS | | | Deadline for filing Standing Committee 2020 Pre-General Campaign Finance Report covering October 1, 2020 - October 17, 2020 | 16-927(A)(2)(a); 16-928(B); 1-243(A); 1-303 | |
| 10/26/2020 | GE-10 (next business day due to weekend) | SOS | ELEC | | Deadline for filing PAC and Political Party 2020 Pre-General Campaign Finance Report covering October 1, 2020 - October 20, 2020 | 16-927(A)(2)(a 1-243(A); 1-303 | |
| 10/26/2020 | GE-10 (next business day due to weekend) | SOS | | | Deadline for Filing Candidate 2020 Pre-General Campaign Finance Report Covering October 1, 2020 - October 17, 2020  (Statewide and Legislative candidates, excluding Corp Comm Candidates running in 2022) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | |
| 10/26/2020 | GE-10 (next business day due to weekend) | ELEC | | | Deadline for Filing Candidate 2020 Pre-General Campaign Finance Report Covering October 1, 2020 - October 17, 2020  (applicable county and local races) | 16-927(A)(2)(a); 16-927(B); 1-243(A); 1-303 | |
| 10/27/2020 | GE-7 (Tuesday preceding GE) | ELEC | | | Deadline for political parties to provide names of persons intending to participate in hand count by 5:00 p.m. | 16-602(B)(7) | |
| 10/28/2020 | GE-6 (Wednesday preceding GE) | ELEC | | | Deadline for officer in charge to notify political parties of shortage in number of persons intending to participate in hand count by 9:00 a.m. | 16-602(B)(7) | |

A38

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **10/29/2020** | GE-5 (Thursday preceding GE) | ELEC | | | Deadline for political parties to provide sufficient number of additional persons to cover hand count board shortages by 5:00 p.m. | 16-602(B)(7) | |
| **10/30/2020** | GE-4 (Friday preceding GE) | REC | | | Deadline for uniformed and overseas citizens recently discharged or separated from employment to register to vote for the General Election at 5:00 p.m. | 16-103(D) | |
| **10/30/2020** | GE-4 | ELEC | | | Deadline to Vote Early In-Person for the November 3, 2020 General Election by 5:00 p.m. | 16-542(E) | |
| **11/1/2020** | GE-2 | BOS | | | If BOS fails to designate polling places, the Justice of the Peace may designate polling places | 16-411(C) | **WEEKEND** |
| **11/1/2020** | GE-2 | BOS | | | Deliver ballots to Inspector | 16-509 | **WEEKEND** |
| **11/2/2020** | GE-1 | BOS | | | Complete instruction classes for Precinct Boards, Receiving and Central Counting Place Boards and Data Processing Boards | 16-532 | |
| **11/2/2020** | GE-1 | BOS | | | Deliver polling place supplies | 16-404; 16-447(D); 16-511* | |
| **11/2/2020** | GE-1 | REC | | | Deadline for accepting requests for assistance by Special Election Board due to "unanticipated" illness | 16-549(D) | |
| **11/2/2020** | GE-1 | REC | | | Deadline for accepting requests for early ballots as a result of an emergency occurring between 5:00 p.m. on October 23, 2020 and 5:00 p.m. on November 2, 2020 that would prevent the elector from voting at the polls | 16-542(H) | |
| **11/2/2020** | GE-1 | REC | | | Deliver list of all electors who were issued early ballots to Precinct Inspectors | 16-542(G) | |
| **11/2/2020** | GE-1 | BOS | | | Deliver list of qualified Write-in Candidates to Inspector to be posted on in polling palce on Election Day | 16-312* | |
| **11/2/2020** | Nov 2 (next business day due to weekend) | SOS | | | Deadline for filing 2020 3rd Qtr Lobbyist Expenditure Report covering July 1, 2020 - September 30, 2020 | 41-1232.02(B); 41-1232.03(B) | |

A39

| 11/3/2020 | GE | ALL | | | November 3, 2020 General Election | 16-204(E)(2); 16-204(F)(4); 16-206(A); 16-211 | |
|---|---|---|---|---|---|---|---|
| 11/3/2020 | GE | REC | | | Continue delivery of early ballots to Early Boards until 7:00 p.m. | 16-551(C) | |
| 11/3/2020 | GE | REC | | | Deadline for UOCAVA voters temporarily absent from the state to register to vote for November 3, 2020 General Election at 7:00 p.m. | 16-103(C) | |
| 11/3/2020 | GE | CCEC | | | End of CCEC General Election Period | 16-961(B)(5) | |
| 11/4/2020 | GE+1 | ELEC | | | Hand count begins within 24 hours of the closing of the polls | 16-602(I) | |
| 11/4/2020 | GE+1 | ELEC | | | Select by lot 2% of precincts and perform hand count on those ballots | 16-602(B)(1) | |
| 11/4/2020 | GE+1 | ELEC | | | Select contested races to be hand counted | 16-602(C) | |
| 11/4/2020 | GE+1 | CCEC | | | Candidates to return monies above sufficient amount to pay unpaid bills during General Election Period | 16-953(B) | |
| 11/4/2020 | GE+1 | CCEC | SOS | | Begin CCEC Exploratory Period for candidates for 2022 Election. Exploratory period covers November 4, 2020 - July 31, 2021 | 16-961(B)(2) | |
| 11/9/2020 | GE+6 | BOS | | | Deadline to hear early ballot challenges | 16-552(E) | |
| 11/9/2020 | GE+6 | BOS | | | First day to canvass returns for November 3, 2020 General Election, and issue Certificates of Election for County and Local offices | 16-642(A); 16-645(A) | |
| 11/10/2020 | GE+5 Business Days | REC | | | Last day for County Recorder to make reasonable effort to contact voter for early ballot signature reconciliation | 16-550(A) | |
| 11/10/2020 | GE+5 Business Days | REC | | | Last day for identification verification for Conditional Provisional Ballots and curing of early ballot affidavit signatures | 16-579(A)(2) Procedures Manual | |
| 11/13/2020 | GE+10 | REC | | | Process Provisional Ballots | 16-135(D); 16-584(D) | |
| 11/19/2020 | MayE-180 | BOS | | | Deadline for 180 day notice by Board of Supervisors for May 18, 2021 Election | 16-205 | |

| 11/23/2020 | GE+20 | BOS | | | Last day to canvass returns for November 3, 2020 General Election, and issue Certificates of Election for County and Local Offices | 16-642(A); 16-645(A) | |
|---|---|---|---|---|---|---|---|
| **11/30/2020** | **GE+ 4th Monday** | **SOS** | | | **OFFICIAL CANVASS OF THE NOVEMBER 3, 2020 GENERAL ELECTION Canvass returns for all Federal, Statewide, and Legislative Offices, Supreme and Appellate Judicial Officers, and all Statewide Ballot Measures** | **Const. Art V § 10; 16-648(A)** | |
| 11/30/2020 | GE+ 4th Monday | SOS | | | First day to issue Certificates of Election to all prevailing Federal, Statewide, and Legislative candidates who filed Nomination Papers with the Secretary of State | Const. Art V § 10; 16-650 | |
| 11/30/2020 | GE + 4th Monday | | | | Upon completion of Canvass, Governor shall issue Proclamation on Constitutional Amendments and Measures | 16-651 | |
| 12/1/2020 | Dec 1 | SOS | | | Begin filing Biennial Principal or Public Body Registration Renewal for period beginning 2021 | 41-1232(C); 41-1232.01(C) | |
| 12/3/2020 | GE+30 | CCEC | | | Clean Elections candidates shall pay uncontested and unpaid bills from General Election | 16-953(C) | |
| 12/14/2020 | **1st Monday after 2nd Wednesday in December** | **SOS** | | | **Meeting of the Electoral College** | **3 U.S.C. Ch. 1 § 7** | |
| 1/1/2021 | Jan 1 | SOS | | | Begin filing Standing Committee 2020 4th Qtr Campaign Finance Report covering October 18, 2020 - December 31, 2020 | 16-927(A)(2)(b); 16-928(B) | **HOLIDAY** |
| 1/1/2021 | Jan 1 | ELEC | | | Begin filing PAC and Political Party 2020 4th Qtr Campaign Finance Report covering October 18, 2020 - December 31, 2020 | 16-927(A)(2)(b) | **HOLIDAY** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **1/1/2021** | Jan 1 | SOS | | | Begin Filing Candidate 2020 4th Qtr Campaign Finance Report Covering October 18, 2020 - December 31, 2020 (Statewide and Legislative candidates only, excluding Corp Comm Candidates running in 2020) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| **1/1/2021** | Jan 1 | ELEC | | | Begin Filing Candidate 2020 4th Qtr Campaign Finance Report Covering October 18, 2020 - December 31, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | **HOLIDAY** |
| **1/14/2021** | Jan 11 | SOS | | | Deadline for filing Biennial Principal or Public Body Registration Renewal for period beginning 2021 | 41-1232(C); 41-1232.01(C) | |
| **1/15/2021** | Jan 15 | SOS | | | Deadline for filing Standing Committee 2020 4th Qtr Campaign Finance Report covering October 18, 2020 - December 31, 2020 | 16-927(A)(2)(b); 16-928(B) | |
| **1/15/2021** | Jan 15 | ELEC | | | Deadline for filing PAC and Political Party 2020 4th Qtr Campaign Finance Report covering October 18, 2020 - December 31, 2020 | 16-927(A)(2)(b) | |
| **1/15/2021** | Jan 15 | ELEC | | | Deadline for Filing Candidate 2020 4th Qtr Campaign Finance Report Covering October 18, 2020 - December 31, 2020 (Statewide and Legislative candidates only, excluding Corp Comm Candidates running in 2020) | 16-927(A)(2)(b) 16-927(B) | |
| **1/15/2021** | Jan 15 | ELEC | | | Deadline for Filing Candidate 2020 4th Qtr Campaign Finance Report Covering October 18, 2020 - December 31, 2020 (applicable county and local races) | 16-927(A)(2)(b) 16-927(B) | |

A42

**RETENTION SCHEDULE - ELECTION SCHEDULE**



Providing ACCESS
Preserving Arizona
Arizona State Library,
Archives and Public Records

**ARIZONA STATE**
**LIBRARY, ARCHIVES AND PUBLIC RECORDS**
A DIVISION OF THE ARIZONA SECRETARY OF STATE

**Schedule Number:**
**GS-1058**

**General Records Retention Schedule Issued to:**
**All Public Bodies**
**Election Records**

**Authority:** Pursuant to ARS 41-151.12(3), only the Arizona State Library, Archives and Public Records has the authority to set retention periods, including the sole authority to modify, extend or decrease records retention periods. The retention periods listed herein are the required time records must be retained. Records should be promptly and orderly disposed of at the end of their retention period. Keeping records longer than the retention period poses financial, legal, audit and investigative risks to the Agency. These risks need to be considered by State and Local Agencies when there is a compelling need to retain records for a longer period of time than the approved retention period. Records required for ongoing or foreseeable official proceedings such as audits, investigations or lawsuits, must be retained until released from such official proceedings, notwithstanding the instructions of this schedule.

**Archival Value:** Records designated as Permanent on the retention schedule must not be destroyed (ARS 39-101). If it is believed that special circumstances warrant other records to be retained permanently, contact the Arizona State Archives for assistance in determining historical or archival value. All records created prior to 1912 must be retained permanently. This retention schedule does not authorize the transfer of records to any repository other than the Arizona State Archives (ARS 41-151.09).

**Disposition:** This schedule is used in conjunction with the Certificate of Records Destruction. All records disposed under this schedule must be reported on the Certificate of Records Destruction, unless transferred to the Arizona State Archives.

**Format:** Retention periods listed on this schedule apply to all records regardless of physical form or characteristics. Records, regardless of format (including electronic, paper, microfilm, etc.) not listed in this schedule or on the approved General Retention Schedule, are not authorized to be destroyed.

**Copies:** Additional copies created for convenience or reference purposes should not be retained longer than the record copy listed in this schedule. Copies do not need to be reported on the Certificate of Records Destruction when they are disposed.

**Supersedence:** This schedule supersedes schedule dated July 10, 2012.

| | |
|---|---|
| Records Analyst, Secretary of State: Richard Carroll | State Records Management Officer, Arizona State Archives & Records Management Center: Dr. Ted Hale |
| *Records Series Electronically Approved in RSM Database* | *Records Series Electronically Approved in RSM Database* |
| Assistant Director of Archives: Dennis Preisler, Ph.D. | Records Management Officer: |
| *Records Series Electronically Approved in RSM Database* | Records series approval on file |

**RECORDS MANAGEMENT CENTER**

1919 West Jefferson Street • Phoenix, Arizona 85009 • http://www.azlibrary.gov/records • Phone: (602) 926-3815 • FAX: (602) 256-2838 • E-Mail: records@azlibrary.gov

Revised: 10/16/2018



A44

# General Records Retention Schedule Issued to:
## All Public Bodies
### Election Records

**Schedule Number: GS-1058**

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 20323 | **Candidate Records, If elected**<br>State and local, including campaign finance records, nomination papers, petitions, affidavits, financial disclosure statements, statements of organization, threshold statements and other related records. | 3 Years | After term in office ended. | | 7/10/2012 |
| 20324 | **Candidate Records, If not elected**<br>State and local, including campaign finance records, nomination papers, petitions, affidavits, financial disclosure statements, statements of organization, threshold statements and other related records | 3 Years | After PAC terminated or after date of election, whichever is later. | | 7/10/2012 |
| 20325 | **Candidate Records, Federal elections**<br>State and local, including campaign finance records, nomination papers, petitions, affidavits, financial disclosure statements, statements of organization, threshold statements and other related records. | 2 Years | After date of election. | | 7/10/2012 |
| 20326 | **Court Challenge Records, Historical** | Permanent | Preserve pursuant to ARS 39-101. | ARS 39-101 | 7/10/2012 |
| 20327 | **Court Challenge Records, All others** | 2 Years | After calendar year resolved. | | 7/10/2012 |
| 20328 | **Cumulative Independent Expenditure Notification Forms** | 3 Years | After date of election. | | 7/10/2012 |

A45

General Records Retention Schedule Issued to:

Schedule Number: GS-1058

All Public Bodies

Election Records

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 20329 | **Department of Justice Records**<br>Including submissions and Americans with Disabilities Act (ADA) records. | Permanent | Preserve pursuant to ARS 39-101. | ARS 39-101 | 7/10/2012 |
| 20330 | **Election Records, State and Local Elections**<br>Voted ballots, voting abstracts (ARS 16-618, 619) and related voting materials, including voted ballots, official and unofficial returns envelopes, unofficial results, early voting requests, county special election records, write-in tally sheets, official poll lists, tally lists and voted ballots (ARS 16-615); unofficial poll lists and tally lists (ARS 16-616); chain of custody documents, logic and accuracy test records, hand count/ early ballot audit documents and related records. | 6 Months | After date of election. | | 7/10/2012 |
| 20331 | **Election Records, Federal and Presidential Preference Elections**<br>Voted ballots, voting abstracts (ARS 16-618, 619) and related voting materials, including voted ballots, official and unofficial returns envelopes, unofficial results, early voting requests, county special election records, write-in tally sheets, official poll lists, tally lists and voted ballots (ARS 16-615); unofficial poll lists and tally lists (ARS 16-616); chain of custody documents, logic and accuracy test records, hand count/ early ballot audit documents and related records. | 2 Years | After date of election (ARS 16-624(A); USC 42-1974). | ARS 16-624(A); USC 42- 1974) | 7/10/2012 |

General Records Retention Schedule Issued to:

Schedule Number: GS-1058

All Public Bodies

Election Records

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 20332 | **Election Records, Political Subdivision Records, If not retained by office**<br>Voted ballots, voting abstracts (ARS 16-618, 619) and related voting materials, including voted ballots, official and unofficial returns envelopes, unofficial results, early voting requests, county special election records, write-in tally sheets, official poll lists, tally lists and voted ballots (ARS 16-615); unofficial poll lists and tally lists(ARS 16-616); chain of custody documents, logic and accuracy test records, hand count/ early ballot audit documents and related records. | | Transfer to political subdivision after election. | | 7/10/2012 |
| 20333 | **Election Records, Political Subdivision Records, All other records**<br>Voted ballots, voting abstracts (ARS 16-618, 619) and related voting materials, including voted ballots, official and unofficial returns envelopes, unofficial results, early voting requests, county special election records, write-in tally sheets, official poll lists, tally lists and voted ballots (ARS 16-615); unofficial poll lists and tally lists(ARS 16-616); chain of custody documents, logic and accuracy test records, hand count/ early ballot audit documents and related records. | | After calendar year 2 regular elections held or after political subdivision ceases to exist or after political subdivision begins holding own elections, whichever comes first. | | 7/10/2012 |
| 20334 | **Election Violation Complaint Records, Resolved through litigation** | 5 Years | After litigation completed. | | 7/10/2012 |
| 20335 | **Election Violation Complaint Records, Resolved without litigation** | 2 Years | After date of election. | | 7/10/2012 |

**General Records Retention Schedule Issued to:**
**All Public Bodies**
**Election Records**

**Schedule Number: GS-1058**

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 20336 | Maps (Precincts and districts, including legal descriptions) | Permanent | Preserve pursuant to ARS 39-101. | ARS 39-101 | 7/10/2012 |
| 20337 | Official Canvass (ARS 16-646) | Permanent | Preserve pursuant to ARS 39-101. | ARS 39-101 | 7/10/2012 |
| 20338 | Political Action Committee (PAC) Records, Standing PAC, Initial filing records | 3 Years | After PAC terminated. | | 7/10/2012 |
| 20339 | Political Action Committee (PAC) Records, Standing PAC, Jurisdictional filing records records filed with jurisdictions where PAC is campaigning. | 3 Years | After PAC terminated or after date of election, whichever is later. | | 7/10/2012 |
| 20340 | Political Action Committee (PAC) Records, All others | 3 Years | After PAC terminated. | | 7/10/2012 |
| 20341 | Polling Place Records, Presidential Preference Election (PPE) Including consent forms. | | After next PPE held. | | 7/10/2012 |
| 20342 | Polling Place Records, All others Including consent forms. | 2 Years | After date of election. | | 7/10/2012 |

General Records Retention Schedule Issued to:

Schedule Number: GS-1058

All Public Bodies

Election Records

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 20343 | **Poll Worker for Election Day Records**<br>Including financial records, names, addresses, poll worked, sign-in sheets, reports and handouts and other related records. | 2 Years | After date of election. | | 7/10/2012 |
| 20344 | **Publicity Records, Historical**<br>Including pamphlets and other educational documentation for election issues. | Permanent | Preserve pursuant to ARS 39-101. | ARS 39-101 | 7/10/2012 |
| 20345 | **Publicity Records, All others**<br>Including pamphlets and other educational documentation for election issues. | | After fiscal year election held. | | 7/10/2012 |
| 20346 | **Report of Voter Statistics (if issued)** | 10 Years | After date of election. | | 7/10/2012 |
| 20347 | **Signature Rosters**<br>Including for traditional elections, this is the actual signature roster and may include notation for voters that mail-in ballots and for elections that are fully conducted via mail-in I on-line, this can be a roster I checklist of citizens that actually. | Permanent | Preserve pursuant to ARS 39-101. | ARS 39-101 | 7/10/2012 |
| 20348 | **Title 19 Records, Historical**<br>Including initiatives, recalls and referendum. | Permanent | Preserve pursuant to ARS 39-101. | ARS 39-101 | 7/10/2012 |
| 20349 | **Title 19 Records, Petitions, certification sheets and related correspondence**<br>Including initiatives, recalls and referendum. | 1 Year | After calendar year of election. If no election held, return petitions to petitioner. | | 7/10/2012 |

A49

# General Records Retention Schedule Issued to:

## All Public Bodies

### Election Records

**Schedule Number: GS-1058**

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 20350 | Title 19 Records, Application for Initiatives, recalls and referendum<br><br>Including initiatives, recalls and referendum. | 10 Years | After calendar year filed. | | 7/10/2012 |
| 20351 | Video Recording of Ballot Counting and Related Records<br><br>For any statewide, county or legislative election. | | | ARS 16-621 | 7/10/2012 |

**RETENTION SCHEDULE – RECORDER SCHEDULE**



**ARIZONA STATE**
**LIBRARY, ARCHIVES AND PUBLIC RECORDS**
A DIVISION OF THE ARIZONA SECRETARY OF STATE

**General Records Retention Schedule Issued to:**
**All Arizona Counties**
**Recorder Records**

**Schedule Number:**
**GS-1070**

**Authority:** Pursuant to ARS 41-151.12(3), only the Arizona State Library, Archives and Public Records has the authority to set retention periods, including the sole authority to modify, extend or decrease records retention periods. The retention periods listed herein are the required time records must be retained. Records should be promptly and orderly disposed of at the end of their retention period. Keeping records longer than the retention period poses financial, legal, audit and investigative risks to the Agency. These risks need to be considered by State and Local Agencies when there is a compelling need to retain records for a longer period of time than the approved retention period. Records required for ongoing or foreseeable official proceedings such as audits, investigations or lawsuits, must be retained until released from such official proceedings, notwithstanding the instructions of this schedule.

**Archival Value:** Records designated as Permanent on the retention schedule must not be destroyed (ARS 39-101). If it is believed that special circumstances warrant other records to be retained permanently, contact the Arizona State Archives for assistance in determining historical or archival value. All records created prior to 1912 must be retained permanently. This retention schedule does not authorize the transfer of records to any repository other than the Arizona State Archives (ARS 41-151.09).

**Disposition:** This schedule is used in conjunction with the Certificate of Records Destruction. All records disposed under this schedule must be reported on the Certificate of Records Destruction, unless transferred to the Arizona State Archives.

**Format:** Retention periods listed on this schedule apply to all records regardless of physical form or characteristics. Records, regardless of format (including electronic, paper, microfilm, etc.) not listed in this schedule or on the approved General Retention Schedule, are not authorized to be destroyed.

**Copies:** Additional copies created for convenience or reference purposes should not be retained longer than the record copy listed in this schedule. Copies do not need to be reported on the Certificate of Records Destruction when they are disposed.

**Supersedence:** This schedule supersedes General Schedule GS-1070, dated September 12, 2018.

| | |
|---|---|
| Records Analyst, Secretary of State: Richard Carroll | State Records Management Officer, Arizona State Archives & Records Management Center: Dr. Ted Hale |
| *Records Series Electronically Approved in RSM Database* | *Records Series Electronically Approved in RSM Database* |
| Assistant Director of Archives: Dennis Preisler, Ph.D. | Records Management Officer: |
| *Records Series Electronically Approved in RSM Database* | Records series approval on file |

**RECORDS MANAGEMENT CENTER**
1919 West Jefferson Street • Phoenix, Arizona 85009 • http://www.azlibrary.gov/records • Phone: (602) 926-3815 • FAX: (602) 256-2838 • E-Mail: records@azlibrary.gov

Revised: 5/21/2019



A52

# General Records Retention Schedule Issued to:

Schedule Number: GS-1070

## All Arizona Counties

## Recorder Records

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 21082 | Blotters | Permanent | Created and preserved pursuant to ARS 11-472. | ARS 11-472 | 5/6/2010 |
| 21083 | Fee Collection Records | 3 Years | After fiscal year created. | | 5/6/2010 |
| 21084 | Indices to Recorded Instruments, Maps and Plats | Permanent | Created and preserved pursuant to ARS 11-462 and 463). | ARS 11-462, ARS 11-463 | 5/6/2010 |
| 21085 | Index Reports<br>Printed out from index database | 3 Years | After calendar year created. | | 5/6/2010 |
| 21086 | Official Oaths, County Recorder's | | After reference value served.<br>Official copy with Clerk of the Board. | | 5/6/2010 |
| 21087 | Official Oaths, Other Elective County and Elective Precinct Officers | 5 Years | After term of office expires. | | 5/6/2010 |
| 21088 | Recorded Instruments, Original Instruments, Maps and Plats<br>Including all recorded documents, maps and plats. | | Returned to requestor or destroyed after recorded on permanent quality medium and all other provisions of ARS, 11-479 are met. | ARS 11-479 | 5/6/2010 |

A53

# General Records Retention Schedule Issued to:
## All Arizona Counties
### Recorder Records

Schedule Number: GS-1070

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 21089 | Recorded Instruments, Microfilm Including all recorded documents, maps and plats., original silver halide master. | Permanent | Retain and secure in separate location pursuant to ARS 11-479. | ARS 11-479 | 5/6/2010 |
| 21090 | Recorded Instruments, Non-Silver Halide Microfilm Or Electronic Including all recorded documents, maps and plats. | | After reference value served. | | 5/6/2010 |
| 21091 | Recorded Instruments, Returned Mail Instruments Including all recorded documents, maps and plats. | | After final attempt to mail is returned. | | 5/6/2010 |
| 21092 | Signature Rosters I Voter History, For Traditional Elections This is the actual signature roster and may include notation for voters that mail- in ballots. | Permanent | Preserve pursuant to ARS 39-101. When the public body no longer wishes to maintain the permanent records, they should be transferred to the State Archives | ARS 39-101 | 5/6/2010 |
| 21093 | Signature Rosters / Voter History, For Elections That Are Fully Conducted Via Mail-In / On-Line This can be a roster/checklist of citizens that actually voted in the election. | | Will be provided by the Arizona Secretary of State through the Voter Registration Records database. | | 5/6/2010 |
| 21094 | Voter Notification Records Including returned mailed information. | 1 Year | After mailed, but no less than 6 months after date of election. | | 5/6/2010 |

# General Records Retention Schedule Issued to:
## All Arizona Counties
## Recorder Records

**Schedule Number: GS-1070**

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 21095 | Voter Registration Records Database, Output Records, Affidavits of Registration (Voter) Records | | After reference value served. | | 5/6/2010 |
| 21096 | Voter Registration Records Database, Output Records, Cancelation of Affidavits of Registration (Voter) Records | | After reference value served. | | 2/20/2019 |
| 21097 | Voter Registration Records Database, Output Records, Early / Absentee Voter Records | | After reference value served. | | 2/20/2019 |
| 21098 | Voter Registration Records Database, Output Records, Audit Logs | | After reference value served. | | 2/20/2019 |
| 21099 | Voter Registration Records Database, Output Records, General Register | | After reference value served. | | 3/12/2019 |
| 21100 | Voter Registration Records Database, Database and Data Fields  Last name, first name, middle name, suffix, date of birth, birthplace, name of parent, former name, driver license number, social security number, indian census number, party, occupation, poll worker status, mailing address, mailing city, mailing state, mailing zip, residence address, residence city, residence state, residence county, residence zip, telephone, precinct, county assigned Voter ID number, registration status, NVRA source, last modified date, restriction status, record status. | | 5 years after voter registration cancelled or after reference value served, whichever is later. (Official copy with Secretary of State's Office). | | 5/6/2010 |

# General Records Retention Schedule Issued to:
## All Arizona Counties
### Recorder Records

Schedule Number: GS-1070

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 21101 | Voter Registration Records Database, Input Records, Voter Registration Affidavits | | After scanned and verified and after reference value served. | | 5/6/2010 |
| 21102 | Voter Registration Records Database, Input Records, Voter Registration Cancellations | | After scanned and verified and after reference value served. | | 2/20/2019 |
| 21103 | Voter Registration Records Database, Input Records, United States Citizenship and Immigration Services - Systematic Alien Verification For Entitlements (SAVE) | | After scanned and verified and after reference value served. | | 2/20/2019 |
| 21104 | Voter Registration Records Database, Input Records, Juror Questionnaire-Related | | After scanned and verified and after reference value served. | | 2/20/2019 |
| 21105 | Voter Registration Records Database, Input Records, Death Notifications | | After scanned and verified and after reference value served. | | 5/13/2019 |
| 21106 | Voter Registration Records Database, Input Records, US Postal Service - Change Of Address Notifications | | After scanned and verified and after reference value served. | | 2/20/2019 |

A56

General Records Retention Schedule Issued to:

All Arizona Counties

Recorder Records

Schedule Number: GS-1070

| Record Series Number | Record Series Title | Retention Period | Retention Remark | Legal Citation(s) | Approval Date |
|---|---|---|---|---|---|
| 21107 | **Voter Registration Records Database, Input Records, Confirmation Notices** | | After scanned and verified and after reference value served. | | 2/20/2019 |
| 21108 | **Voter Registration Records Database, System Records**<br>Including configuration and setup, installation and implementation, design, program operation, software-related, site logs and statistical compilations, site maps, comprehensive list of urls referenced and related records. | 1 Year | After superseded or obsolete or after reference value has been served, whichever is later. | | 5/6/2010 |

## COUNTY RECORDER PETITION SIGNATURE VERIFICATION GUIDE

| ALL CANDIDATE NOMINATION PETITIONS<br>(A.R.S. § 16-315; A.R.S. § 16-321; A.R.S. § 16-341(I)) | |
|---|---|
| **Petition Scenarios** | **Accept/ Reject** |
| 1.  Voter active/inactive, registered in proper party, registered address in district and petition address different but within the district. | ACCEPT |
| 2.  Voter active/inactive, registered in proper party, registered address out of district and petition address different but within district. | REJECT |
| 3.  Voter active/inactive, registered in proper party, registered address in district and petition address different but outside of district. | ACCEPT |
| 4.  Voter active/inactive, registered in proper party, registered address in district and petition shows P.O. Box. | ACCEPT |
| 5.  Voter active/inactive, registered in proper party, registered address out of district and petition shows P.O. Box. | REJECT |
| 6.  Voter active/inactive, registered in different *recognized* party.<br><br>Note: A voter not registered with a recognized party may sign a recognized party candidate's petition, excluding a candidate for precinct committeeman. Additionally, any registered voter, regardless of party affiliation may sign an A.R.S. § 16-341 (independent) candidate's petition. | REJECT |
| 7.  Voter registered to vote after the date of signing the petition. | REJECT |
| 8.  Voter provided no date or an incomplete date on petition signature line. | REJECT |
| 9.  Duplicate for same candidate: Voter signed the same candidate's petition more than once and another signature is dated on or before the same date as the signature being reviewed. Both signatures must be identified by page and line number. | REJECT |
| 10.  Duplicate for same office: Voter signed more than one candidate's petition for the same office and another signature is dated on or before the same date as the signature being reviewed. Both signatures must be identified by page and line number.<br>Note: Signer may sign petitions up to the number of open seats for that office (*i.e.*, council members). | REJECT |
| 11.  Voter provided other information but did not sign the petition. | REJECT |
| 12.  Signature or other information printed by the signer is illegible and search of county's database in an attempt to identify the voter was unsuccessful. | REJECT |
| 13.  Petition signature does not match voter's signature in the voter registration record. | REJECT |

| | |
|---|---|
| 14.  Voter provided no address on petition signature line. | REJECT |
| Note: Voter can use description of residence or P.O. box if previously registered and not moved from residence on file in voter registration record. Protected/secured registrants may write in "Protected Address," "Protected Registrant," "Secured Registrant," or substantially similar designation in place of residence address. | |
| 15.  Voter signed the petition prior to the candidate filing a statement of interest for nomination if a statement of interest is required to be filed. A.R.S. § 16-341(I). | REJECT |
| Note: Petition signatures for candidates who began collecting signatures before August 27, 2019 are not invalid or subject to challenge solely on the basis of being signed before the candidate filed a statement of interest so long as the candidate filed any required statement of interest by January 2, 2020. | |
| 16.  Voter is a "**federal-only**" voter and **petition is for state/local candidate**. AG Opinion I13-011(R13-016) 2013. | REJECT |

| CLEAN ELECTIONS - $5 QUALIFYING CONTRIBUTION SLIPS (A.R.S. § 16-946) | |
|---|---|
| **Petition Scenarios** | **Accept/Reject** |
| 1.  Voter active/inactive, registered address in district and $5 slip address different but within the district. | ACCEPT |
| 2.  Voter active/inactive, registered address out of district and $5 slip address different but within district. | REJECT |
| 3.  Voter active/inactive, registered address in district and $5 slip address different but outside of district. | ACCEPT |
| 4.  Voter active/inactive registered address in district and $5 slip shows P.O. Box. | ACCEPT |
| 5.  Voter active/inactive, registered address out of district and $5 slip shows P.O. Box. | REJECT |
| 6.  "Federal-only" voter. AG Opinion I13-011(R13-016) 2013. | REJECT |

| INITIATIVE, REFERENDUM AND RECALL PETITIONS | |
|---|---|
| (A.R.S. § 19-112(A); A.R.S. § 19-121.02; A.R.S. § 19-205(A); A.R.S. § 19-208.02(A); AG Opinion I09-011(R09-020) 2009.) | |
| **Petition Signature Scenarios** | **Accept/Reject** |
| 1. Voter active/inactive, registration address in applicable jurisdiction and petition address different but within the applicable jurisdiction. | ACCEPT |
| 2. Voter active/inactive, registration address out of applicable jurisdiction and petition address different but within applicable jurisdiction. | ACCEPT |
| 3. Voter active/inactive, registration address in applicable jurisdiction and petition address different but outside of applicable jurisdiction. | REJECT |
| 4. Voter active/inactive, registration address in applicable jurisdiction and petition shows P.O. Box. | REJECT |
| 5. Voter active/inactive, registration address out of applicable jurisdiction and petition shows P.O. Box. | REJECT |
| 6. Not registered to vote. | REJECT |
| 7. Registered after signing. | REJECT |
| 8. Not 18 years of age on date of signing. | REJECT |
| 9. No date. | REJECT |
| 10. No signature. | REJECT |
| 11. Signature or other information printed by the signer is illegible and search of county's database in an attempt to identify the voter was unsuccessful. | REJECT |
| 12. Signature does not match voter's signature in the voter registration record. | REJECT |
| 13. Address or description of residence not provided, illegible or nonexistent.  Note: Protected/secured registrants may write in "Protected Address," "Protected Registrant," "Secured Registrant," or substantially similar designation in place of residence address. | REJECT |
| 14. Duplicate signature on petition (count only one signature). | REJECT |
| 15. Voter is a "**federal-only**" voter and **petition is for an initiative or referendum, or recall of a state/local candidate**. AG Opinion I13-011(R13-016) 2013. | REJECT |

| NEW PARTY RECOGNITION PETITIONS (A.R.S. § 16-801(A); A.R.S. § 16-803(E)) | |
|---|---|
| **Petition Signature Scenarios** | **Accept/Reject** |
| 1. Voter active/inactive, registration address in applicable jurisdiction and petition address different but within the applicable jurisdiction. | ACCEPT |
| 2. Voter active/inactive, registration address out of applicable jurisdiction and petition address different but within the applicable jurisdiction. | ACCEPT |
| 3. Voter active/inactive, registration address in applicable jurisdiction and petition address different but outside of the applicable jurisdiction. | REJECT |
| 4. Voter active/inactive, registration address in applicable jurisdiction and petition shows P.O. Box. | ACCEPT |
| 5. "Federal-only" voter. AG Opinion I13-011(R13-016) 2013 | REJECT |

**HAVA ADMINISTRATIVE COMPLAINT FORM: ENGLISH**



State of Arizona

# Election Administrative Complaint Form

**KATIE HOBBS, SECRETARY OF STATE**

Election Services Division
1700 W. Washington, 7th Fl., Phoenix, Arizona 85007

**KATIE HOBBS**
SECRETARY OF STATE

*This form is to be used by anyone alleging a violation of Title III of the Help America Vote Act (HAVA) of 2002, 52 U.S.C. § 21112.*

Secretary of State Use Only
Do not write or staple in this space

**TYPE or PRINT ALL INFORMATION.**
Please fill out this form completely, have it notarized and return it to the address above.  **The form must be received no later than 60 days from the date of the alleged violation**.
*For more information, call Toll-free (in-state) 1-877-THE VOTE (1-877-843-8683); or 602-542-8683. TDD # 602-255-8683. Visit www.azsos.gov for more information about HAVA and the State of Arizona HAVA Plan.*

## Personal Information

| Last Name | First Name | | |
|---|---|---|---|
| Mailing Address (include apartment # if applicable) | City | State | Zip Code |
| Daytime Phone Number (include area code) | Fax Number (include area code) | | |
| E-mail address | | | |

## Federal Law Violations   Under HAVA individuals may file a complaint if a violation: has occurred; is occurring; or is about to occur.

| Date of alleged violation | Place of alleged violation | | |
|---|---|---|---|
| ***Provisional Ballot***<br>☐ I was not allowed to vote using a provisional ballot | ***New Voter Registration***<br>☐ Provisions regarding verification of new voter registration were not followed | ***Provisional Ballot Not Counted***<br>☐ I was not able to determine whether my provisional ballot was counted | ***Posting Voter Information***<br>☐ Required voting information was not publicly posted in a polling place on Election Day |
| ***Other federal law violation***<br>☐ If other violation, fill out information to the right. | Section of Title III of the Help America Vote Act of 2002 allegedly violated. | | |
| | Describe Violation Here: | | |

☐ Would you like the Office of Administrative Hearings to conduct a hearing on the record?

*Signature of complainant*

| State of Arizona | ) | Subscribed and sworn (or affirmed) before me this _____ day |
|---|---|---|
| County of _____ | ) | of _____, _____. |

(seal)

_____
Notary Public

Grievance Form Rev. 01-07-19

**HAVA ADMINISTRATIVE COMPLAINT FORM: SPANISH**



*Estado de Arizona*

# Formulario de Queja de Elecciones
### KATIE HOBBS, SECRETARIA DE ESTADO
Election Services Division, 1700 W. Washington, 7th Fl.
Phoenix, Arizona 85007

**KATIE HOBBS**
SECRETARY OF STATE

*Este formulario deberá ser usado por cualquier persona que alega una infracción del Título III de la Ley de Ayudar a América a Votar (HAVA) de 2002, 52 U.S.C. §§ 21112.*

Para el uso de la Secretaría de Estado sólo
No escriba ni engrape en este espacio

## ESCRIBA TODA LA INFORMACIÓN A MÁQUINA O CON LETRA DE IMPRENTA.

Por favor llene este formulario completamente, certifíquelo por notario y regréselo a la dirección más arriba.  **La forma debe recibirse no más tarde de 60 días de la fecha de la presunta infracción.** *Para más información, llame gratis (en el estado) al 1-877-THE VOTE (1-877-843-8683); or 602-542-8683. TDD # 602-255-8683. Visite at www.azsos.gov para más información acerca de HAVA y el Plan de HAVA del Estado de Arizona.*

### Información Personal

| Apellido | Nombre de Pila | | |
|---|---|---|---|
| Dirección de Correo (incluya el # de departamento si se aplica) | Ciudad | Estado | Código Postal |
| Número Telefónico de Día (incluya el código de zona) | Número de Fax (incluya el código de zona) | | |
| Dirección de Correo Electrónico | | | |

### Infracciones de la Ley Federal   Según HAVA, personas individuales pueden presentar una queja si una infracción ha ocurrido; está ocurriendo; o está a punto de ocurrir.

| Fecha de la infracción alegada | Lugar de la infracción alegada |
|---|---|

| *Boleta Electoral Provisional* | *Nueva Inscripción de Votante* | *Boleta Provisional  No Contada* | *Anuncios con Información para Votantes* |
|---|---|---|---|
| ☐ No se me permitió votar usando una boleta electoral provisional | ☐ No se siguieron las disposiciones con respecto a la verificación de las nuevas inscripciones de votante | ☐ No pude determinar si mi boleta electoral provisional fue contada | ☐ No se fijó públicamente la información requerida de votación en un lugar de votación el Día de la Elección |

| *Otra infracción de la ley federal*  ☐ Si hay otra infracción, llene la información a la derecha. | Sección del Título III de la Ley de Ayuda a América a Votar supuestamente violada. |
|---|---|
| | Describa la infracción aquí: |

☐ ¿Quiere usted que la Oficina de Audiencias Administrativas realice una audiencia documentada?

*Firma del reclamante*

| State of Arizona | ) | Subscribed and sworn (or affirmed) before me this _____ day |
|---|---|---|
| County of _____ | ) | of _____, _____. |

(seal)

_____
Notary Public (Notario Público)

Grievance Form Rev. 01-07-19

# II.
# VOTER REGISTRATION SAMPLE FORMS

## ARIZONA VOTER REGISTRATION FORM



# ARIZONA VOTER REGISTRATION FORM
## FORMA DE REGISTRO ELECTORAL EN ARIZONA

**FILL OUT COMPLETELY WITH A BLACK/BLUE PEN (RED SHADED BOXES ARE REQUIRED). TO BE ELIGIBLE TO VOTE A "FULL BALLOT," COMPLETE BOX 9, 10 OR 11 OR PROVIDE OTHER PROOF OF CITIZENSHIP - SEE BACK FOR DETAILS AND ADDITIONAL INSTRUCTIONS.**
*LLENE COMPLETAMENTE CON PLUMA DE TINTA NEGRA/AZUL (LAS CASILLAS ROJAS SON REQUERIDAS). PARA VOTAR EN UNA "BOLETA ELECTORAL COMPLETA," LLENE LA CASILLA 9, 10 U 11 O INCLUYA OTRA PRUEBA DE CIUDADANÍA - VEA LOS DETALLES EN EL REVERSO.*

**1** Permanent Early Voting List (PEVL) / *Lista Permanente de Votación Temprana*
Receive your early ballot by mail! / *¡Reciba su boleta de votación temprana por correo!*

☐ **Yes**, I want to be added to PEVL and automatically get an early ballot by mail for every election for which I am eligible. (*To be on PEVL, your mailing address in Box 7 must be in Arizona.*)
*Sí, Quiero que me agreguen a la lista PEVL y recibir automáticamente una boleta de votación temprana por correo para cada elección. (Para estar en la lista, su dirección postal en la casilla 7 debe estar en Arizona.)*

☐ **No**, I do not want to be added to PEVL. I understand CHECKING THIS BOX will remove my name from PEVL if it was previously included. / *No. No quiero que me agreguen a la lista PEVL. Yo entiendo que al MARCAR ESTA CASILLA removerán mi nombre de la lista PEVL si éste estaba incluido antes.*

REGISTER ONLINE / *REGÍSTRESE EN LÍNEA:*
**WWW.SERVICEARIZONA.COM**
FOR MORE INFORMATION / *PARA MÁS INFORMACIÓN:*
**WWW.AZSOS.GOV**

BOX FOR OFFICE USE ONLY
*ÁREA SÓLO PARA EL USO DE LA OFICINA*
**S 00**

**2** Last Name / *Apellido* | First Name / *Nombre* | Middle Name / *Segundo Nombre* | Jr./Sr./III

**3** Residential Address (**where you live – no P.O. Box/business address**) / *Domicilio Residencial (donde usted vive – no use un apartado postal ni dirección comercial)*
If no street address, describe location using mileage, cross streets, parcel #, subdivision name/lot, or landmarks. Draw a map and/or provide latitude/longitude or geocode in Box 23 if located in a rural area without a traditional street address. / *Si no cuenta con un domicilio de calle, describa la ubicación usando millaje, cruceros de calles, núm. de parcela, nombre de lote/subdivisión, o detalles específicos de referencia. Dibuje un mapa y/o provea la latitud/longitud o código geográfico en la casilla 23 si está ubicado en un área rural sin domicilio tradicional de calles.*

**4** Apt./Unit/Space
*Apto/Unidad/Espacio* | **5** City / *Ciudad* | **6** Zip / *Código Postal*

**7** Mailing Address (**where you get mail**, *if not delivered to residential address*) / *Dirección Postal (donde recibe su correo, si su correo no es entregado a su domicilio residencial)*

**8** Last 4 Digits of Social Security #
*Últimos 4 Dígitos del Núm. de Seguro Social*
**X X X - X X -** ___ ___ ___ ___ | **9** AZ Driver License or Nonoperating License # / *Núm. de Licencia de Manejo o Tarjeta de Identificación de Arizona* | **10** Tribal ID #
*Núm. de Identificación Tribal*

**11** Alien Registration, Naturalization Certificate, or Citizenship Certificate # / *Núm. de Registro de Extranjero, Certificado de Naturalización o de Ciudadanía* | **12** Birth Date (MM/DD/YYYY)
*Fecha de Nacimiento (MM/DD/AAAA)* | **13** State or Country of Birth
*Estado o País de Nacimiento*

**14** Party Preference / *Preferencia de Partido*
☐ Republican / *Republicano*
☐ Democratic / *Demócrata*
☐ Other / *Otro* _____
☐ None or No Party / *Ningún Partido* | **15** Telephone Number
*Número de Teléfono*

Is this a cellphone? ☐ **Yes**/*Sí*  ☐ **No**
*¿Es este número un celular?* | **16** Occupation / *Ocupación*

**17** If you were registered to vote in another state, list former address (including county and state)
*Si usted estaba registrado/a para votar en otro estado, anote el domicilio previo (incluyendo el condado y el estado)* | **18** Former Name(s) (if applicable)
*Nombre/s Previo/s (si se aplica)*

**19** Father's Name or Mother's Maiden Name
*Nombre de su padre/nombre de soltera de su madre* | **20** Are you willing to work at a polling place on Election Day? / *¿Está dispuesto/a a trabajar en un lugar de votación el Día de la Elección?*
☐ **Yes**/*Sí* | **21** E-Mail / *Correo Electrónico*

**22** Are you a citizen of the United States of America?
*¿Es usted ciudadano/a de los Estados Unidos de América?*  ☐ **Yes**/*Sí*  ☐ **No**

Will you be at least 18 years old by Election Day?
*¿Cumplirá usted 18 años de edad en o antes del Día de la Elección?*  ☐ **Yes**/*Sí*  ☐ **No**

If you checked "No" to either of these questions, **DO NOT** submit this form.
*Si marcó "No" a cualquiera de estas preguntas, NO presente esta forma.*

**VOTER DECLARATION** – By signing below, I swear or affirm that the above information is true, that I am a RESIDENT of Arizona, I have NOT been convicted of a FELONY (or my civil rights have been restored - see back for details), and I have NOT been adjudicated INCAPACITATED with my voting rights revoked.

*DECLARACIÓN DEL/LA VOTANTE – Al firmar abajo, yo afirmo que la información anterior es verdadera, que soy RESIDENTE de Arizona, que NO se me ha condenado por un DELITO GRAVE (o que mis derechos civiles han sido restituidos - vea en el reverso los detalles), y que no se me ha dictaminado INCAPACITADO/A con mis derechos electorales revocados.*

SIGNATURE
*FIRMA*  **X** | DATE / *FECHA*

**23** If no street address, draw a map and/or provide the latitude/longitude or geocode here / *Si no tiene domicilio de calle, dibuje un mapa y/o provea la latitud/longitud o código geográfico aquí*

N
W/O — E
S

**24** If you are unable to complete or sign the form, the form can be completed at your direction. The person who assisted you must sign here.
*Si usted no puede completar o firmar la forma, ésta se puede llenar según sus instrucciones. La persona que le ayudó a hacerlo debe firmar aquí.*

SIGNATURE OF PERSON ASSISTING / *FIRMA DE LA PERSONA QUE LE AYUDÓ* | DATE / *FECHA*

<Remove tape and fold to mail - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Despegue la cinta adhesiva y doble la forma para enviarla por correo>



## ADDITIONAL INFORMATION

- Don't forget to sign and date your voter registration form.
- If you are mailing your completed and signed registration form, write your County Recorder's mailing address (listed at the bottom of the Voter Registration Information page) on the "To" lines below.
- The location where you submit your registration form or, if you decide not to register to vote, your decision not to register will be kept confidential.
- Citizens with disabilities may contact their County Recorder or Elections Department about early or accessible voting, and other accommodations.
- WARNING: Executing a false registration is a class 6 felony.

## INFORMACIÓN ADICIONAL

- No olvide firmar y fechar su forma de registro electoral.
- Si usted va a enviar por correo su forma de registro llenada y firmada, escriba la dirección postal de su Registrador del Condado (indicada en la parte inferior de la página de Información de Registro Electoral) en las líneas "To" abajo.
- El lugar donde sometió su forma de registro y, si decide no registrarse para votar, su decisión de no registrarse, se mantendrán en confidencia.
- Ciudadanos con discapacidades pueden contactar al Registrador del Condado o Depto. de Elecciones sobre la votación temprana o accesible, y otras modificaciones.
- AVISO: La ejecución de un registro electoral falso es un delito grave de clase 6.

<Fold Line ----------------------------------------------------------------- Línea de Plegado>

TO:

OFFICIAL ELECTION MAIL *Authorized by the U.S. Postal Service*

FROM:

PLACE STAMP HERE



# VOTER REGISTRATION INFORMATION

**Use this form to register to vote in Arizona or update your voter registration. You must update your registration whenever you move, change your name, or change your political party affiliation.** Call your County Recorder's office (listed below) with any questions about voter registration.

## TO REGISTER TO VOTE IN ARIZONA YOU MUST BE:
- A **U.S. citizen** (proof of citizenship required to vote a "full ballot")
- A **resident** of Arizona and the county listed on your registration
- **18 years** of age or more by the next regular General Election

## YOU CANNOT REGISTER TO VOTE IN ARIZONA IF:
- You have been found mentally **incapacitated** by a court and your voting rights were not preserved; or
- You have been convicted of a **felony** and have not had your civil rights restored. Civil rights are automatically restored if you have only **one** felony conviction, completed your sentence, parole, or probation, and paid any victim restitution.

*You **can** register to vote if you have only misdemeanor convictions or you are in pretrial detention and are otherwise eligible.*

## GENERAL INFORMATION
- Register **online** at www.servicearizona.com, or **mail** or **take** your completed, signed form to your County Recorder (acceptable mailing addresses provided below) or person designated to receive registration forms. Keep this copy as your receipt. The County Recorder will send you a confirmation of registration within 4-6 weeks.
- Fill in your political party preference in Box 14. If you leave this box blank as a first-time registrant, your party will be none or "No Party Designated." If you are already registered and you leave this box blank, you will keep your prior party preference. If you pick "Other," write the full name of your preferred party on the line provided.

## REGISTRATION DEADLINE
- **You must register at least 29 days before the election** (or the next business day if that deadline falls on a holiday) to vote in that election.
- If returned by mail, the registration must be: (1) postmarked by the deadline and received by the County Recorder by 7:00 p.m. on Election Day; or (2) dated on or before the deadline and received by the County Recorder no later than 5 days after the deadline.

### PROOF OF CITIZENSHIP REQUIREMENT
**To be eligible to vote a "full ballot," you must submit proof of citizenship with your registration form or by 5:00 p.m. on the Thursday before Election Day.** A "full ballot" includes all federal, state, county, and local races and ballot questions for which you are eligible to vote.

If you do not submit proof of citizenship and we cannot acquire your proof of citizenship from the Arizona Motor Vehicle Division or the statewide voter registration database, you will receive a "federal-only" ballot, which has only federal races and no state, county, or local races or initiatives/referendums.

You don't need to resubmit proof of citizenship if you previously registered to vote in Arizona and submitted citizenship and are using this form to update your name, party affiliation, or address after moving within the state.

**VALID FORMS OF PROOF OF CITIZENSHIP**
If you have an **Arizona driver's license or non-operating license** issued after October 1, 1996, write the number in Box 9. This will serve as proof of citizenship and no additional documents are needed. However, if your license was issued when you were *not* a U.S. citizen but you later became a U.S. citizen, complete Box 11 or provide another form of proof of citizenship.

Other acceptable proof of citizenship (only one is needed):
- Legible copy of a birth certificate that verifies citizenship. If the name on the birth certificate is not the same as your current legal name, submit supporting documents (e.g. marriage certificate).
- Legible copy of the pertinent pages of your passport
- Presentation to the County Recorder of U.S. naturalization documents, or Alien Registration Number, Naturalization Certificate Number, or Citizenship Certificate Number (Box 11)
- Indian Census Number, Bureau of Indian Affairs Number, Tribal Treaty Card Number, or Tribal Enrollment Number (Box 10)
- Legible copy of your Tribal Certificate of Indian Blood or Tribal or Bureau of Indian Affairs Affidavit of Birth

**Do not send original documents.** Make a printed copy of proof of citizenship and mail it with your completed registration form to your County Recorder. Visit www.azsos.gov if you have questions about proof of citizenship.

---

# INFORMACIÓN DE REGISTRO ELECTORAL

**Use esta forma para registrarse para votar en Arizona o actualizar su registro.** Usted debe actualizar su registro cada vez que se mude, cambie su nombre, o cambie su afiliación de partido político. Llame al Registrador de su Condado (lista abajo) con cualquier pregunta sobre el registro electoral.

## PARA REGISTRARSE PARA VOTAR EN ARIZONA DEBE:
- Ser **ciudadano/a de EUA** (requiere prueba para usar la "boleta completa")
- Ser **residente** de Arizona y del condado listado en su registro
- Tener **18 años** de edad o más en o antes de la próxima Elección General

## USTED NO PUEDE REGISTRARSE PARA VOTAR EN ARIZONA SI:
- Una corte dictaminó que usted está **incapacitado/a** y no se conservaron sus derechos de voto; o
- A usted se le ha condenado por un **delito grave** y no se le han restaurado sus derechos civiles. Los derechos civiles se restauran automáticamente si usted sólo tiene **una** condena por un delito grave, ha completado su sentencia, libertad condicional, o régimen probatorio, y ha pagado cualquier restitución.

*Puede **registrarse** si sólo tiene condenas por delitos menores o está detenido/a antes del juicio y es elegible para votar al cumplir con los otros requisitos.*

## INFORMACIÓN GENERAL
- Regístrese **en línea** en www.servicearizona.com, o **envíe por correo** o **lleve** su forma de registro llenada y firmada al Registrador de su Condado (dirección postal indicada abajo) o a una persona designada para recibir dichas formas. Conserve esta copia como su recibo. El Registrador le enviará a usted una confirmación dentro de 4-6 semanas.
- Llene su preferencia de partido político en la Casilla 14. Si la deja en blanco al registrarse por primera vez, su partido será ninguno o "Ningún Partido Designado." Si deja esta casilla en blanco y se había registrado en el estado, se mantendrá su preferencia de partido político anterior. Si elige "Otro," escriba el nombre completo de su partido de preferencia en la línea provista.

## FECHA LÍMITE PARA EL REGISTRO
- **Para ser elegible para votar en una elección, se debe inscribir por lo menos 29 días antes de la elección** (o al siguiente día hábil si la fecha límite cae en un día festivo reconocido por el estado).
- Si envía por correo, la forma debe ser: (1) estampada en/antes de la fecha límite de registro y el Registrador del Condado debe recibirla en/antes de las 7:00 p.m. el día de la elección; ó (2) fechada en o antes de la fecha límite y el Registrador debe recibirla no más de 5 días después de la fecha límite.

### REQUISITO DE PRUEBA DE CIUDADANÍA
**Para votar usando la "boleta electoral completa," debe presentar prueba de ciudadanía con su forma de registro o antes de las 5:00 p.m. del jueves previo al Día de la Elección.** Una "boleta electoral completa" incluye todas las contiendas federales, estatales, del condado y locales y propuestas/referéndums para las que usted sea elegible para votar.

Si no presenta prueba de ciudadanía y no podemos adquirir dicha prueba de la División de Vehículos Motorizados de Arizona o de la base de datos del registro electoral del estado, recibirá una boleta "sólo federal," que incluye sólo contiendas federales y excluye las del estado, condado, o locales o propuestas/referéndums.

Usted no necesita volver a enviar prueba de ciudadanía si se registró antes en Arizona y presentó dicha prueba, y está usando esta forma para actualizar su nombre, afiliación de partido, o domicilio después de mudarse dentro del estado.

**FORMAS VÁLIDAS DE PRUEBA DE CIUDADANÍA**
Si usted tiene una **licencia de manejo de Arizona o tarjeta de identificación** emitida después del 1 de octubre de 1996, anote el número en la Casilla 9. Esto servirá como prueba de ciudadanía y no necesitará documentos adicionales. Pero si su licencia fue emitida cuando *no* era ciudadano y se convirtió después en ciudadano/a de Estados Unidos, complete la Casilla 11 o provea otra forma de prueba de ciudadanía.

Otras pruebas aceptables de ciudadanía (sólo necesita una) incluyen:
- Copia legible del certificado de nacimiento que verifique la ciudadanía y documentación legal de apoyo (ejemplo: certificado de matrimonio) si el nombre en el certificado de nacimiento no es igual a su nombre legal actual
- Copia legible de las páginas pertinentes de su pasaporte
- Presentación de documentos de naturalización de Estados Unidos al Registrador del Condado, o anote su Número de Registro de Extranjero, del Certificado de Naturalización, o del Certificado de Ciudadanía (Casilla 11)
- Anote su Número de Censo Indio, de la Oficina de Asuntos Indios, de la Tarjeta del Tratado Tribal, o de la Inscripción Tribal (Casilla 10)
- Copia legible de su Certificado Tribal de Sangre India o Afidávit de Nacimiento Tribal o de la Oficina de Asuntos Indios

**No envíe documentos originales.** Haga una copia impresa de la prueba de ciudadanía y envíela por correo con su forma de registro completa al Registrador de su Condado. Visite www.azsos.gov si tiene preguntas sobre pruebas aceptables de ciudadanía.

---

**Apache County Recorder**
St. Johns, AZ 85936
(928) 337-7516 (TDD# 800-361-4402)

**Cochise County Recorder**
Bisbee, AZ 85603
(520) 432-8358 (TDD# 432-8360)

**Coconino County Recorder**
Flagstaff, AZ 86001
(928) 679-7860 (TDD# 679-7131)

**Gila County Recorder**
Globe, AZ 85501
(928) 402-8740 (TDD# 7-1-1)

**Graham County Recorder**
Safford, AZ 85548
(928) 428-3560 (TDD# 428-3562)

**Greenlee County Recorder**
Clifton, AZ 85533
(928) 865-2632 (TDD# 865-2632)

**La Paz County Recorder**
Parker, AZ 85344
(928) 669-6136 (TDD# 669-8400)

**Maricopa County Recorder**
Phoenix, AZ 85003
(602) 506-1511 (TDD# 506-2348)

**Mohave County Recorder**
Kingman, AZ 86402
(928) 753-0767 (TDD# 753-0701)

**Navajo County Recorder**
Holbrook, AZ 86025
(928) 524-4192 (TDD# 524-4294)

**Pima County Recorder**
Tucson, AZ 85702
(520) 724-4330 (TDD# 724-4320)

**Pinal County Recorder**
Florence, AZ 85132
(520) 866-6854 (TDD# 866-6851)

**Santa Cruz County Recorder**
Nogales, AZ 85621
(520) 375-7990 (TDD# 375-7934)

**Yavapai County Recorder**
Prescott, AZ 86305
(928) 771-3248 (TDD# 771-3530)

**Yuma County Recorder**
Yuma, AZ 85364
(928) 373-6034 (TDD# 373-6033)

*Arizona Secretary of State*
*Revised April 2019*

**NATIONAL VOTER REGISTRATION FORM: ENGLISH/SPANISH**

# Voter Registration Application

**Before completing this form, review the General, Application, and State specific instructions.**

| Are you a citizen of the United States of America? | ☐ Yes ☐ No | This space for office use only. |
|---|---|---|
| Will you be 18 years old on or before election day? | ☐ Yes ☐ No | |

**If you checked "No" in response to either of these questions, do not complete form.**
(Please see state-specific instructions for rules regarding eligibility to register prior to age 18.)

**1** ☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms. | Last Name | First Name | Middle Name(s) | ☐ Jr ☐ Sr ☐ II ☐ III ☐ IV

**2** Home Address | Apt. or Lot # | City/Town | State | Zip Code

**3** Address Where You Get Your Mail If Different From Above | City/Town | State | Zip Code

**4** Date of Birth ___ Month Day Year
**5** Telephone Number (optional)
**6** ID Number - (See item 6 in the instructions for your state)

**7** Choice of Party (see item 7 in the instructions for your State)
**8** Race or Ethnic Group (see item 8 in the instructions for your State)

**9** I have reviewed my state's instructions and I swear/affirm that:
- I am a United States citizen
- I meet the eligibility requirements of my state and subscribe to any oath required.
- The information I have provided is true to the best of my knowledge under penalty of perjury. If I have provided false information, I may be fined, imprisoned, or (if not a U.S. citizen) deported from or refused entry to the United States.

Please sign full name (or put mark) ▲

Date: ___ / ___ / ___ Month Day Year

**If you are registering to vote for the first time:** please refer to the application instructions for information on submitting copies of valid identification documents with this form.

## Please fill out the sections below if they apply to you.

If this application is for a **change of name**, what was your name before you changed it?

**A** ☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms. | Last Name | First Name | Middle Name(s) | ☐ Jr ☐ Sr ☐ II ☐ III ☐ IV

If you were **registered before but this is the first time you are registering from the address in Box 2**, what was your address where you were registered before?

**B** Street (or route and box number) | Apt. or Lot # | City/Town/County | State | Zip Code

If you live in a rural area but do not have a street number, or if you have no address, please show on the map where you live.

**C**
- Write in the names of the crossroads (or streets) nearest to where you live.
- Draw an X to show where you live.
- Use a dot to show any schools, churches, stores, or other landmarks near where you live, and write the name of the landmark.

NORTH ↑

Example | Route #2 | ● Grocery Store | Woodchuck Road | Public School ● | X

If the applicant is unable to sign, who helped the applicant fill out this application? Give name, address and phone number (phone number optional).

**D**

## Mail this application to the address provided for your State.

A72

# Solicitud de Inscripción de Votante

**Before completing this form, review the General, Application, and State specific instructions.**
**Antes de llenar este formulario, vea las instrucciones generales, las instrucciones para llenar esta solicitud, y las instrucciones específicas de su estado.**
**PLEASE PROVIDE YOUR RESPONSES IN ENGLISH. / PROPORCIONE SUS RESPUESTAS EN INGLÉS.**

| | | |
|---|---|---|
| Are you a citizen of the United States of America? / ¿Es usted ciudadano de Estados Unidos de América? <br> **If you check "No" in response to either of these questions, do not complete form.** <br> **Si contestó "No" a alguna de estas preguntas, no llene el formulario.** <br> (Please see state-specific instructions for rules regarding eligibility to register prior to age 18.) <br> (Vea también las instrucciones específicas de su estado sobre la posibilidad de inscribirse antes de los 18 años de edad). | Will you be 18 years old on or before election day? <br> ¿Habrá cumplido los 18 años de edad para el día de las elecciones? | This space for office use only. / Este espacio sólo para uso de la oficina. |

**1** | Last Name / Apellido | First Name / Primer nombre | Middle Name(s) / Segundo nombre

**2** | Home Address / Dirección donde vive | Apt. or Lot # / N°. de depto. o lote | City/Town / Ciudad/Localidad | State / Estado | Zip Code / Código postal

**3** | Address Where You Get Your Mail If Different From Above / Dirección donde recibe su correo, si es diferente a la de más arriba | City/Town / Ciudad/Localidad | State / Estado | Zip Code / Código postal

**4** | Date of Birth/ Fecha de nacimiento | Month / Mes   Day / Día   Year / Año

**5** | Telephone Number (optional) / Número de teléfono (optativo)

**6** | ID Number (See Item 6 in the instructions for your state) / Número de identificación (Vea el número 6 en las Instrucciones de su estado)

**7** | Choice of Party (See item 7 in the instructions for your State) / Selección de partido político (Vea el número 7 en las instrucciones de su estado)

**8** | Race or Ethnic Group (see item 8 in the instructions for your State) / Raza o grupo étnico (Vea el número 8 en las instrucciones de su estado)

**9** | I have reviewed my state's instructions and I swear/affirm that: / Leí las instrucciones de mi estado y juro/afirmo que:
■ I am a United States citizen. / Soy ciudadano de Estados Unidos.
■ I meet the eligibility requirements of my state and subscribe to any oath required. / Cumplo con los requisitos de mi estado y presto cualquier juramento requerido.
■ The information I have provided is true to the best of my knowledge under penalty of perjury. If I have provided false information, I may be fined, imprisoned, or (if not a U.S. citizen) deported from or refused entry to the United States. / La información que proporcioné es verdadera según mis mejores conocimientos, bajo pena de perjurio. Si proporcioné información falsa, se me puede multar, encarcelar o (si no soy ciudadano de EE UU), deportar de o denegar entrada a Estados Unidos.

Please sign full name (or put mark) / Firme su nombre completo (o ponga su marca)

Date / Fecha:   Month / Mes   Day / Día   Year / Año

**If you are registering to vote for the first time:** please refer to the application instructions for information on submitting copies of valid identification documents with this form.
**Si se está inscribiendo para votar por primera vez:** consulte las instrucciones de la solicitud para información sobre presentar copias documentos de identificación válidos con este formulario.

## Please fill out the sections below if they apply to you.
## Llene las secciones a continuación que correspondan a su situación.

If this application is for a **change of name**, what was your name before you changed it? / Si esta aplicación es para un **cambio de nombre**, ¿cómo se llamaba antes de cambiar de nombre?

**A** | Last Name / Apellido | First Name / Primer nombre | Middle Name(s) / Segundo nombre

If you were **registered before but this is the first time you are registering from the address in Box 2**, what was your address where you were registered before?
Si estuvo **inscrito antes, pero esta es la primera vez que se está inscribiendo con la dirección en la Casilla 2**, ¿cuál era la dirección con que estaba inscrito antes?

**B** | Street (or route and box number) / Calle (o número de ruta y casilla) | Apt. or Lot # / N°. de depto. o lote | City/Town/County / Ciudad/Localidad/Condado | State / Estado | Zip Code / Código postal

If you live in a rural area but do not have a street number, or if you have no address, please show on the map where you live.
Si vive en una zona rural, pero no tiene un número de calle, o si no tiene dirección, muestre en el mapa dónde vive.

**C** | ■ Write in the names of the crossroads (or streets) nearest to where you live. / Escriba el nombre de las calles que cruzan más cerca de donde vive.
■ Draw an X to show where you live. / Ponga una X para mostrar el lugar en que vive.
■ Use a dot to show any schools, churches, stores, or other landmarks near where you live, and write the name of the landmark. /Ponga un punto para mostrar las escuelas, iglesias, tiendas u otros puntos de referencia y escriba el nombre del punto de referencia.

**NORTH / NORTE** ⬆

Example / Ejemplo
Ruta N°. 2
● Grocery Store / Tienda de abarrotes
Woodchuck Road
Public School / Escuela pública ●
**X**

If the applicant is unable to sign, who helped the applicant fill out this application? Give name, address and phone number (phone number optional).
Si el solicitante no puede firmar, ¿quién ayudó al solicitante a llenar esta solicitud? Dé el nombre, la dirección y el número de teléfono. (El número de teléfono es optativo).

**D** |

## Mail this application to the address provided for your State.
## Envíe esta solicitud a la dirección provista por su estado.

A73

# FEDERAL POST CARD APPLICATION (FPCA)

# Voter Registration and Absentee Ballot Request

## Federal Post Card Application (FPCA)

**This form is for absent Uniformed Service members, their families, and citizens residing outside the United States. It is used to register to vote, request an absentee ballot, and update your contact information. See your State's instructions at FVAP.gov.**

Print clearly in blue or black ink.

### 1. Who are you? Pick one.

I request an absentee ballot for all elections in which I am eligible to vote AND:

☐ I am on active duty in the Uniformed Services or Merchant Marine **-OR-** ☐ I am an eligible spouse or dependent.
☐ I am an activated National Guard member on State orders.
☐ I am a U.S. citizen living outside the country, and I intend to return.
☐ I am a U.S. citizen living outside the country, and my return is uncertain.
☐ I am a U.S. citizen living outside the country, and I have never lived in the United States.

| Last name | | Suffix (Jr., II) | | Sex | ☐ Female ☐ Male |
| Last name | | Suffix (Jr., II) | | | |
| First name | | Previous names (if applicable) | | | |
| Middle name | | Birth date (MM/DD/YYYY) | / / | | |
| Social Security Number ___ ___ ___ - ___ ___ - ___ ___ ___ ___ | | Driver's license or State ID # | | | |

### 2. What is your address in the U.S. State or territory where you are registering to vote and requesting an absentee ballot?

Your voting materials will not be sent to this address. See instructions on other side of form.

| Street address | | Apt # | |
| City, town, village | | State | |
| County | | ZIP | |

### 3. Where are you now? You must give your CURRENT address to receive your voting materials.

| Your mailing address. (Different from above) | Your mail forwarding address. (If applicable) |

### 4. What is your contact information? This is so election officials can reach you about your request.

Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

| Email: | | Phone: | |
| Alternate email: | | Fax: | |

### 5. What is your voting preference? Select One.

| How do you want to receive voting materials from your election office? | ☐ Mail ☐ Email or online ☐ Fax | What is your political party for primary elections? |

### 6. What additional information must you provide?

The following need more information: Alaska, Arizona, Puerto Rico, Vermont, and Virginia. (Ex. Proof of residency, employer, etc.)
You may also use this space to clarify your voter information. See the *Voting Assistance Guide* at FVAP.gov.

### 7. You must read and sign this statement.

**I swear or affirm, under penalty of perjury, that:**

- The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
- I am a U.S. citizen, at least 18 years of age (or will be by the day of the election), eligible to vote in the requested jurisdiction, and
- I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
- I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.

 **X**

  / /

This information is for official use only. Any unauthorized release may be punishable by law.    Previous editions are obsolete.    Standard Form 76 (Rev.09-2017), OMB No. 0704-0503

A75

# You can vote wherever you are.

**1. Fill out your form completely and accurately.**

- Your U.S. address is used to determine where you are eligible to vote absentee. For military voters, it is usually your last address in your State of legal residence. For overseas citizens, it is usually the last place you lived before moving overseas. You do not need to have any current ties with this address. DO NOT write a PO Box # in section 2.

- Most States allow you to provide a Driver's License number or the last 4 digits of your SSN. Some States require a full SSN. See your State's guidelines at FVAP.gov.

- Most States require you to specify a political party to vote in primary elections. This information may be used to register you with a party.

- We recommend that you complete this form every year while you are an absentee voter.

**2. Remember to sign this form!**

**3. Remove the adhesive liner from the top and sides.
Fold and seal tightly.**

- You can find the address for your election office at FVAP.gov.

- All States accept this form by mail, but they vary on email and fax. See your State's rules in the *Voting Assistance Guide* at FVAP.gov.

## Questions? Email vote@fvap.gov

### Agency Disclosure Statement

The public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden to: Department of Defense, Washington Headquarters Services, Executive Services Directorate, Information Management Division, 4800 Mark Center Dr., East Tower, Suite 03F09, Alexandria, VA 22350-3100. [OMB Control #0704-0503]. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number. DO NOT RETURN YOUR FORM TO THE ADDRESS ABOVE.

### Privacy Act Statement

**Authority:** The authority to collect your personal information on this form comes from 52 U.S.C. § 20301, "Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)."

**Principal purpose:** This form serves as an application for registration and/or request for an absentee ballot for all persons covered by UOCAVA.

**Routine use(s):** There is no retention of this information by the Federal government. Completed forms are sent by you to an appropriate State election official.

**Disclosure:** Your disclosure of personal information is voluntary. However, failure to provide the requested personal information may keep the pertinent jurisdiction from processing this request and may prevent you from voting absentee.

---

**From**
**(Your name and mailing address)**

_____

_____

_____

_____
International airmail postage is required if not mailed using the
U.S. Postal Service, APO/FPO/DPO system, or diplomatic pouch.

U.S. Postage Paid
39 USC 3406

PAR AVION

OFFICIAL
ELECTION MAIL
*Authorized by the U.S. Postal Service*

OFFICIAL ABSENTEE BALLOTING MATERIAL – FIRST CLASS MAIL

NO POSTAGE NECESSARY IN THE U.S. MAIL – DMM 703.8.0

**To**
**(Fill in the address of your election office.
The address can be found online at FVAP.gov.)**

_____

_____

_____

_____

_____

A76

**FEDERAL WRITE-IN ABSENTEE BALLOT (FWAB)**

# Federal Write-In Absentee Ballot

- If you do not receive your absentee ballot in enough time to meet your State's deadlines, use this ballot as a backup. If you send in this ballot and receive your State's ballot later, you should fill out and return your State ballot as well. Your election office will count only one ballot.

- The following require you to register and request an absentee ballot before filling out this form: AL, AS, AR, CT, FL, GU, HI, ID, IL, IN, IA, KS, LA, MI, NH, NJ, NM, NY, PA, PR, RI, TX, VT, WV, and WY. If your State or territory is listed, complete a Federal Post Card Application (FPCA) online at FVAP.gov.

- If you already registered and requested a ballot, send in the *Voter Information* page and the *Official Backup Ballot*.

## Use this form if you are:

- **On active duty in the Uniformed Services or Merchant Marine**
- **An eligible spouse or dependent**
- **On active duty in the National Guard under State orders (some States only)**
- **A U.S. citizen living outside the United States**

# You can vote wherever you are. This is how.

1. Fill out your *Voter Information* page completely and accurately.

   - Your U.S. voting residence address is used to determine where you are eligible to vote absentee. For military voters, it is usually your last address in your State of legal residence. For overseas citizens, it is usually the last place you lived before moving overseas. You do not need to have any current ties with this address.

   - Most States allow you to provide a Driver's License number or the last 4 digits of your SSN. Some States require a full SSN. See your State's guidelines at FVAP.gov.

   - Most States require you to specify a political party to vote in primary elections. This information may be used to register you with a party.

   - Remember to sign the bottom of the *Voter Information* page!

2. Carefully fill out your *Official Backup Ballot*.

   - DO NOT sign your ballot or include any personal information. Keep your ballot anonymous.

   - Remove the adhesive liner from the top and sides of your ballot.

   - Fold and seal tightly.

3. Assemble your documents for mailing.

   - Put your *Voter Information* page and *Official Backup Ballot* into the envelope.

   - You can find the address for your election office at FVAP.gov.

   - All States accept this form by mail, but they vary on email and fax. See your State's rules in the *Voting Assistance Guide* online at FVAP.gov.

### Agency Disclosure Statement

The public reporting burden for this collection of information is estimated to average 15 minutes per response, including time to review instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden to: Department of Defense, Washington Headquarters Services, Executive Services Directorate, Information Management Division, 4800 Mark Center Dr., East Tower, Suite 03F09, Alexandria, VA 22350-3100. [OMB Control #0704-0502]. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number. DO NOT RETURN YOUR FORM TO THE ADDRESS ABOVE.

### Privacy Act Statement

**Authority:** The authority to collect your personal information on this form comes from 52 U.S.C. § 20301, "Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)."

**Principal purpose:** This form serves as a write-in absentee ballot for elections for Federal office or other elections provided by State law or special provisions for all persons covered by UOCAVA.

**Routine use(s):** There is no retention of this information by the Federal government. Completed forms are sent by you to an appropriate State election official.

**Disclosure:** Your disclosure of personal information is voluntary. However, failure to provide the requested information may result in the Federal Write-In Absentee Ballot not being recognized and therefore not counted.

## Questions? Email vote@fvap.gov

# Voter Information

## Federal Write-In Absentee Ballot (FWAB)

**Have you already registered and requested an absentee ballot?** ☐ Yes ☐ No

Some States allow you to use this form to register and request ballots for future elections. Visit FVAP.gov for more details.

Print clearly in blue or black ink.

## 1. Who are you? Pick one.

For absent Uniformed Service members, their families, and citizens residing outside the United States.

☐ I am on active duty in the Uniformed Services or Merchant Marine **-OR-** ☐ I am an eligible spouse or dependent.
☐ I am an activated National Guard member on State orders.
☐ I am a U.S. citizen living outside the country, and I intend to return.
☐ I am a U.S. citizen living outside the country, and my return is uncertain.
☐ I am a U.S. citizen living outside the country, and I have never lived in the United States.

| Last name | | Suffix (Jr., II) | | Sex | ☐ Female ☐ Male |
|---|---|---|---|---|---|
| First name | | Previous names (if applicable) | | | |
| Middle name | | Birth date (MM/DD/YYYY) | / / | | |
| Social Security Number | ___ ___ ___ - ___ ___ - ___ ___ ___ ___ | Driver's license or State ID # | | | |

## 2. What is your U.S. voting residence address?

Your voting materials will not be sent to this address. See instructions on other side of form.

| Street address | | Apt # | |
|---|---|---|---|
| City, town, village | | State | |
| County | | ZIP | |

## 3. Where are you now? You must give your CURRENT contact information.

Your mailing address. (Different from above)    Your mail forwarding address. (If applicable)

## 4. What is your contact information? This is so election officials can reach you about your request.

Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

| Email: | Phone: |
|---|---|
| Alternate email: | Fax: |

## 5. What is your voting preference for future elections?

Do you want to register and request a ballot for all elections you are eligible to vote in?  ☐ Yes  ☐ No

How do you want to receive voting materials from your election office?  ☐ Mail  ☐ Email or online  ☐ Fax

What is your political party for primary elections?

## 6. What additional information must you provide?

The following need more information: Alabama, Alaska, Arizona, Puerto Rico, Virginia, and Wisconsin. (Ex. Witness signature, etc.) You may also use this space to clarify your voter information. See the Voting Assistance Guide online at FVAP.gov.

## 7. You must read and sign this statement.

**I swear or affirm, under penalty of perjury, that:**
- The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
- I am a U.S. citizen, at least 18 years of age (or will be by the day of election), eligible to vote in the requested jurisdiction, and
- I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
- I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.
- In voting, I have marked and sealed this ballot in private and have not allowed any person to observe the marking of this ballot, except those authorized to assist voters under State and Federal law.

 **X**

 **Today's date (MM/DD/YYYY)**  / /

This information is for official use only. Any unauthorized release may be punishable by law.     Previous editions are obsolete.     Standard Form 186 (Rev.09-2017), OMB No. 0704-0502

A79

# Official Backup Ballot

**Federal Write-In Absentee Ballot (FWAB)**

Print clearly in blue or black ink.

**Vote by writing the NAME or PARTY of the candidates you choose. To find out about specific candidates and races go to FVAP.gov.**

## Instructions

- This ballot can be used to vote for federal offices.
- DO NOT write your name or any identifying number (SSN, driver's license) on this ballot.
- Photocopy this page if you require additional room for candidates or ballot initiatives.
- If you are voting in American Samoa, Guam, Puerto Rico, or the U.S. Virgin Islands, you may vote for Delegate or Resident Commissioner, and in presidential primaries. State laws vary about using the FWAB for other offices like Governor or Mayor. Learn more online at FVAP.gov.

### Federal offices

| | |
|---|---|
| President and Vice President | |
| U.S. Senator | |
| U. S. Representative, Delegate, or Resident Commissioner to Congress | |

### Non-federal offices

| Office | Candidate name | Political party |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### Ballot initiatives

Standard Form 186 (Rev.09-2017), OMB No. 0704-0502

A80

# Official Ballot
**Federal Write-In Absentee Ballot**

## Private

Fold your ballot and keep it private. Put it in the envelope.

A81

# III.
# VOTER CORRESPONDENCE SAMPLE FORMS

## DPOC SUBMISSION FORM/"FEDERAL-ONLY" NOTICE

Dear Voter,

We have received your voter registration application, but because you did not provide documentary proof of citizenship ("DPOC") and we could not acquire DPOC for you from MVD records, you have been registered as a "Federal-Only" voter in Arizona. This means you are eligible to vote for any federal races (e.g. Congressional or Presidential races) using an Arizona Federal-Only ballot.

To update your voter registration status to a "Full-Ballot" voter and be eligible to vote for all federal, statewide, county, and local races in your voting precinct and all ballot questions for which you are eligible, you must provide DPOC to the County Recorder. Please use the form below if you wish to provide DPOC and update your voter registration status. To be able to vote a full ballot in the next election, you must submit your DPOC by 5:00 p.m. on the Thursday before Election Day.

Thank you,
<**County Recorder**>

---

Documentary Proof of Citizenship Form

Name: _____

Residential Address: _____

_____

Mailing Address:
*(if different from*
*residential address)* _____

_____

Date of Birth: _____

Voter ID #: _____
(if known)

**Acceptable Documentary Proof of Citizenship pursuant to A.R.S. § 16-166(F) (please provide one):**

Arizona Driver's License/Arizona Non-Operating ID #:
_____
Legible Copy of U.S. Birth Certificate
Legible Copy of pertient pages of U.S. Passport
Legible Copy of Naturalizaton/Citizenship Certificate or Certificate #:
_____
Bureau of Indian Affairs, Tribal Treaty, or Tribal Enrollment Card #:
_____
*\*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A83

## DPOC SUBMISSION FORM/F-TYPE NOTICE

Dear Voter,

We have received your voter registration application. However, we are unable to process your registration because Arizona Motor Vehicle Division records indicate that you have an F-type driver's license or identification card, which is issued to someone who was not a U.S. citizen at the time of issuance.

If you have since become a U.S. citizen, you may complete your voter registration and become a "Full-Ballot" voter by providing documentary proof of citizenship ("DPOC") to our office. Full-Ballot voters are eligible to vote for all federal, state, county, and local races as well as state and local ballot measures for which they are eligible. To provide DPOC and complete your voter registration, please complete this form and return it with one of the items listed below that establishes that you are a U.S. citizen.

You will not be registered to vote until we receive one of the forms of DPOC listed below. To be able to vote a Full Ballot in the next election, you must submit your DPOC by 5:00 p.m. on the Thursday before Election Day. If you do not submit DPOC by the next regular general election, your application will be rejected and you will need to submit a new registration application if you wish to register to vote.

Thank you,
<**County Recorder**>

---

Documentary Proof of Citizenship Form (F-Type License Holder)

Name: _____

Residential Address: _____
_____

Mailing Address: _____
*(if different from*
*residential address)* _____

Date of Birth: _____

Voter ID #: _____
(if known)

**Acceptable Documentary Proof of Citizenship pursuant to A.R.S. § 16-166(F) (please provide one):**

Legible Copy of U.S. Birth Certificate
Legible Copy of pertient pages of U.S. Passport
Legible Copy of Naturalization/Citizenship Certificate or Certificate #:
_____
Bureau of Indian Affairs, Tribal Treaty, or Tribal Enrollment Card #:
_____

*\*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al* <**insert phone number**> *o* <**insert email address**>*.*

A84

## DPOC SUBMISSION FORM/SAVE NON-CITIZEN NOTICE

Dear Voter,

We have received your voter registration application. However, we are unable to process the application because according to Department of Homeland Security records, you hold an immigration number that indicates non-citizenship status.

If you have since become a U.S. citizen, you may complete your voter registration and become a "Full-Ballot" voter by providing documentary proof of citizenship ("DPOC") to our office. Full-Ballot voters are eligible to vote for all federal, state, county, and local races as well as state and local ballot measures for which they are eligible. To provide DPOC and complete your voter registration, please complete this form and return it with one of the items listed below that establishes that you are a U.S. citizen.

You will not be registered to vote until we receive one of the forms of DPOC listed below. To be able to vote a Full Ballot in the next election, you must submit your DPOC by 5:00 p.m. on the Thursday before Election Day. If you do not submit DPOC by the next regular general election, your application will be rejected and you will need to submit a new registration application if you wish to register to vote.

Thank you,
<**County Recorder**>

---

Documentary Proof of Citizenship Form (SAVE Non-Citizen)

Name: _____

Residential Address: _____

_____

Mailing Address: _____
*(if different from*
*residential address)* _____

Date of Birth: _____

Voter ID #: _____
(if known)

**Acceptable Documentary Proof of Citizenship pursuant to A.R.S. § 16-166(F) (please provide one):**

Arizona Driver's License/Arizona Non-Operating ID #: _____
Legible Copy of U.S. Birth Certificate
Legible Copy of pertient pages of U.S. Passport
Legible Copy of Naturalization/Citizenship Certificate or Certificate #:
_____
Bureau of Indian Affairs, Tribal Treaty, or Tribal Enrollment Card #:
_____
*\*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A85

## DPOC SUBMISSION FORM/SAVE NO-MATCH NOTICE

Dear Voter,

We have received your voter registration application. However, we were unable to match the immigration/citizenship number you provided with U.S. Department of Homeland Security records. Therefore, we do not have valid documentary proof of citizenship ("DPOC") for you and could only register you as a "Federal-Only" voter in Arizona. This means you are eligible to vote for any federal races (e.g. Congressional or Presidential races) using an Arizona Federal-Only ballot.

To update your voter registration status to a "Full-Ballot" voter, you must provide DPOC to the County Recorder. Full-Ballot voters are eligible to vote for all federal, state, county, and local races as well as state and local ballot measures for which they are eligible. Please use the form below if you wish to provide DPOC and update your voter registration status. To be able to vote a full ballot in the next election, you must submit your DPOC by 5:00 p.m. on the Thursday before Election Day.

Thank you,
<**County Recorder**>

Documentary Proof of Citizenship Form (SAVE No-Match)

Name: _____

Residential Address: _____

_____

Mailing Address: _____
*(if different from*
*residential address)* _____

Date of Birth: _____

Voter ID #: _____
(if known)

**Acceptable Documentary Proof of Citizenship pursuant to A.R.S. § 16-166(F) (please provide one):**

Arizona Driver's License/Arizona Non-Operating ID #: _____
Legible Copy of U.S. Birth Certificate
Legible Copy of pertient pages of U.S. Passport
Legible Copy of Naturalization/Citizenship Certificate or Certificate #:
_____
Bureau of Indian Affairs, Tribal Treaty, or Tribal Enrollment Card #:
_____

*\*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A86

## DPOC SUBMISSION FORM/ JUROR QUESTIONNAIRE NON-CITIZEN

Dear Voter,

The <**County Name**> County Jury Commissioner has informed us that you indicated that you are not a U.S. citizen on a Jury Summons form/questionnaire. Because you stated that you are not a U.S. citizen and we do not currently have documentary proof of citizenship ("DPOC") in your voter registration record, your voter registration will be canceled unless you submit valid DPOC within 35 days of the date of this notice.

Please use the form below if you wish to provide DPOC and remain registered to vote. If you provide valid DPOC, your registration will be updated to a "Full-Ballot" voter, which means you will be eligible to vote for all federal, state, county, and local races as well as state and local ballot measures for which you are eligible. To be able to vote a full ballot in the next election, you must submit your DPOC by 5:00 p.m. on the Thursday before Election Day.

Thank you,
<**County Recorder**>

Documentary Proof of Citizenship Form (Non-Citizen Jury Questionnaire)

Name: _____

Residential Address: _____

_____

Mailing Address: _____
*(if different from*
*residential address)* _____

Date of Birth: _____

Voter ID #: _____
(if known)

**Acceptable Documentary Proof of Citizenship pursuant to A.R.S. § 16-166(F) (please provide one):**

Arizona Driver's License/Arizona Non-Operating ID #: _____

Legible Copy of U.S. Birth Certificate

Legible Copy of pertient pages of U.S. Passport

Legible Copy of Naturalizaton/Citizenship Certificate or Certificate #: _____

Bureau of Indian Affairs, Tribal Treaty, or Tribal Enrollment Card #: _____

*\*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al* <***insert phone number***> *o* <***insert email address***>*.*

A87

## UNDER 18 SAMPLE NOTICE (NOT REGISTERED)

Dear Registrant,

We have received your voter registration application. However, if your birthdate is <**birth date**> as you indicated on the form, you will not be 18 years old by the <**election date**> General Election. The law requires that you be at least 18 years old on or before the day of the next General Election in order to register to vote.

Enclosed is another voter registration form for you to complete and return to our office after you meet the age requirement. You may also visit <**www.servicearizona.com/voterRegistration or current web address**> to register to vote after you meet the age requirement. If you have any questions, please call our office at <**phone number**> or email us at <**email**>.

Sincerely,
Thank you,
<**County Recorder**>

*\*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al [insert phone number] o [insert email address].*

A88

## UNDER 18 SAMPLE NOTICE (SUSPENSE, FED-ONLY)

Dear Voter,

We have received your voter registration application. However, if your birthdate is <**birth date**> as you indicated on the application, you are not yet 18 years old but will be 18 years old before the next general election on <**election date**>. Therefore, we have processed your registration application but your voter registration will remain in a "suspense" status until you turn 18 years old.

The first election in which you will be old enough to vote is the <**election date**> election. **If you move before this date, please be sure to update your voter registration record by visiting <www.servicearizona.com/voterRegistration or current web address> or by submitting a new voter registration form with your updated address.**

In addition, because you did not provide documentary proof of citizenship ("DPOC") and we could not acquire DPOC for you from MVD records, you have been registered as a "Federal-Only" voter in Arizona. This means you are eligible to vote for any federal races (e.g. Congressional or Presidential races) using an Arizona Federal-Only ballot. To update your voter registration status to a "Full-Ballot" voter and be eligible to vote for all federal, statewide, county, and local races and all ballot questions for which you are eligible, you must provide DPOC to the County Recorder. Please use the form below if you wish to provide DPOC and update your voter registration status. To be able to vote a full ballot in an election in which you are eligible to vote, you must submit your DPOC by 5:00 p.m. on the Thursday before Election Day.

If you have any questions, please call our office at <**phone number**> or email us at <**email**>.

Thank you,
<County Recorder>

---

Documentary Proof of Citizenship Form

Name: _____

Residential Address: _____

_____

Mailing Address: _____
*(if different from residential address)* _____

Date of Birth: _____

Voter ID #: _____
(if known)

**Acceptable Documentary Proof of Citizenship pursuant to A.R.S. § 16-166(F) (please provide one):**

Arizona Driver's License/Arizona Non-Operating ID #:
_____

Legible Copy of U.S. Birth Certificate
Legible Copy of pertinent pages of U.S. Passport
Legible Copy of Naturalizaton/Citizenship Certificate or Certificate #:
_____

Bureau of Indian Affairs, Tribal Treaty, or Tribal Enrollment Card #:
_____

*\*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al [insert phone number] o [insert email address].*

A89

## UNDER 18 SAMPLE NOTICE (SUSPENSE, FULL-BALLOT)

Dear Voter,

We have received and processed your voter registration application. However, if your birthdate is <**birth date**> as you indicated on the application, you are not yet 18 years old but will be 18 years old before the next general election on <**election date**>. Your voter registration will remain in a "suspense" status until you turn 18 years old. After you turn 18 years old, you will be registered as a full-ballot voter and be eligible to vote in all federal, state, county, and local races and ballot questions for which you are eligible.

The first election in which you will be old enough to vote is the <**election date**> election. **If you move before this date, please be sure to update your voter registration record by visiting <www.servicearizona.com/voterRegistration or current web address> or by submitting a new voter registration form with your updated address.**

If you have any questions, please call our office at <**phone number**> or email us at <**email**>.

Thank you,
<County Recorder>

*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A90

## NOTIFICATION TO "FEDERAL-ONLY" VOTERS RE: HAVA ID REQUIREMENT

If a new registrant submits a voter registration application **without** proof of identity as required by HAVA and identity cannot be proven through any other database match, the counties need to place the registrant in "Active" status as a "federal–only" voter **without** Early Voting (EV) eligibility. Counties must then send correspondence to the registrant informing the voter that they will only be eligible to vote in federal elections and must vote in-person the first time or prove identity prior to an election in order to vote early by mail. Correspondence sent to registrants without proof of identity shall include:

- Voter full name
- Voter Registration ID #
- Voter mailing address
- Voter city, state, zip code and extension
- Statement notifying voter of identification requirements for a first-time voter
- List of acceptable forms of identification
- Statement informing registrant to send legible photocopies and not originals
- County contact information

A91

## CANCELLATION NOTICE DUE TO SOFT DUPLICATE MATCH RESOLUTION

Dear Voter,

In accordance with A.R.S. §16-168(J), the Secretary of State has compiled a statewide voter registration database to determine duplicate registrations throughout the state. The records indicate that you have a more recent registration in <**New County Name**> County, dated <**date of new registration**>.  Therefore, your registration with <**Old County Name**> County has been canceled.

If you have any questions about this matter, please contact this office at <**phone number**> or e-mail: <**email address**>.

To update your voter registration information online, visit: <**https://servicearizona.com/voterRegistration or current web address**>.

Thank you,

<**County Name**> County

Voter Registration

*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

## REGISTRATION UPDATE NEEDED

Dear Voter,

This office continuously strives to keep our voter records up-to-date. It is our experience that a person's signature may vary considerably over time. This may be due to several factors, including age of the registration form or an illness or injury that may affect the way you sign your name.

Changes in your signature will not affect your registration, but will impact your voting activities if you do not submit a new voter registration form with your current signature. Many voting activities require comparison of signatures to the signature provided on your voter registration form. This includes early balloting and signing of petitions. Your prompt reply is especially important if you will vote using an early ballot for the upcoming election.

Please take a moment to completely fill out and return the enclosed voter registration form immediately. We will update your information and include your current signature in our system.

Should you have any questions, please feel free to contact this office at <**phone number**>.


Thank you,

<**County Name**> County
Voter Registration


*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A93

## FINAL NOTICE (IN-JURISDICTION LETTER)

Dear Voter,

You were recently sent a mailing (first notice) to the address we have on your voter record. However, the mailing was returned to our office as undeliverable, which indicates that either you no longer reside at the address on your voter registration record or that your mailing address is no longer valid. State law requires voters to re-register to vote when you change your residential address.

**Pursuant to A.R.S. § 16-166(A), to remain on the active voter list, you must update your voter registration information at <https://servicearizona.com/voterRegistration or current web address> <or by completing the enclosed registration form and return it to our office> within 35 days of the date on this notice.** If we do not receive your new registration form or an updated address from you within 35 days, you will be placed on the inactive voter list.

Please note that mailing services and business addresses are not acceptable mailing addresses pursuant to A.R.S. 16-152.

If you no longer have a P.O. box, please contact our office at <**phone number**> or <**email**> and we will change your mailing information.

If we do not have the correct information on file, you may not receive sample ballots or statutory information pamphlets.

Thank you,

<**County Name**> County
Voter Registration

*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A94

## FINAL NOTICE (OUT OF JURISDICTION LETTER)

Dear Voter,

You were recently sent a letter to the address we have on your voter record. However, the letter was returned to our office with this forwarding address. This new address is outside of <**County Name**> County.

If you no longer live in <**County Name**> County, you are no longer eligible to vote in <**County Name**> County elections. If that is the case, please fill out the bottom portion of this form and return it to our office to cancel your voter registration in <**County Name**> County. **Visit <https://servicearizona.com/voterRegistration or current web address> to register to vote in your new county with your new address.**

If you are only temporarily absent from <**County Name**> County, please contact our office at <**phone number**> or <**email**> so that we can keep your registration current. If we do not hear from you within 35 days, Arizona law requires that we move your voter registration to an inactive status.

Thank you,

<**County Name**> County
Voter Registration

---------------------------------------------------------------------------------------------------------------------

I, (please print name) _____ no longer reside in <**County Name**> County, Arizona.  Please cancel my voter registration and discontinue sending me voter literature.  I understand that if I relocate back to <**County Name**> County, I will need to reregister at that time.

_____
Signature (Mandatory for cancellation)

_____
Date of Birth (for identification purposes)

When completed, please mail to:
<**County Recorder Address**>

*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A95

## JURY QUESTIONNAIRE - FELON

Dear Voter:

The <**County Name**> County Jury Commissioner has informed this office that you received a Jury Summons form/questionnaire from them and that you returned the form/questionnaire to their office indicating that you have been convicted of a felony and have not had your rights restored.

Pursuant to A.R.S. § 16-165(B), we are mandated to remove your name from the voter registration rolls and cancel your registration effective this date.

When you have completed your obligation to the court in accordance with A.R.S. § 13-905, you may re-register by completing a new voter registration form.

> <*Optional Material - If the county wants to add links or phone numbers where a person can obtain additional information on how they can get their rights restored, it should be placed here*>

If this information is in error or you have any questions, please contact the Superior Court Jury Commissioner immediately at <**phone number**>.

Thank you,

<**County Name**> County
Voter Registration

*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <insert phone number> o <insert email address>.*

A96

## FELONY CONVICTION

Dear Voter:

We have recently received information from the court system indicating that you have been convicted of a felony. Pursuant to ARS §16-165(B), we are mandated to remove your name from the voter registration rolls and cancel your registration effective this date.

When you have completed your obligation to the court in accordance with ARS §13-905, you may reregister by completing a new voter registration form or completing an online voter registration application at **<https://servicearizona.com/voterRegistration or current web address>**.

> *<Optional Material - If the county wants to add links or phone numbers where a person can obtain additional information on how they can get their rights restored, it should be placed here>*

If this information is in error, or you have any questions, please contact this office immediately at <**phone number**> or <**email address**>.

Thank you,

<**County Name**> County
Voter Registration

*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <__insert phone number__> o <__insert email address__>.*

A97

## ADJUDICATED INCOMPETENT

Dear <**County Name**> County Voter:

We have recently received information from the court indicating that you have been adjudicated incompetent with your voting right revoked.

Pursuant to ARS §16-165(C), we are mandated to remove your name from the voter registration rolls and cancel your registration effective this date.

If this information is in error, or you have any questions, please contact this office immediately at <**phone number**> or <**email address**>.


Thank you,

<**County Name**> County
Voter Registration

*Si usted necesita este documento en español, favor de ponerse en contacto con la oficina de Inscripción de Votantes al <**insert phone number**> o <**insert email address**>.*

A98

# IV.
# COUNTY RECORDER SAMPLE FORMS

## COUNTY RECORDER NATURALIZATION CEREMONY CERTIFICATION

Dear <**County Name**> County Recorder,

Enclosed are voter registration form(s) that were gathered by my staff at a Naturalization Ceremony at the United States District Court for the District of Arizona in <**City**>. The enclosed form(s) are for voters in your county.

Members of my staff were present at the ceremony and examined the Naturalization Certificates for each of these voters.  Staff then initialed each form to indicate the examination of the citizenship documents for these voters.

If you have any further questions, please contact our office at <**phone number**> or <**email address**>.


Thank you,

<**County Name**> County
Voter Registration

A100

## RECORDER'S CERTIFICATE

I, <**County Recorder Name**>, <**County Name**> County Recorder do hereby attest and certify that _____ is currently registered to vote in <**County Name**> County with date of most recent registration to be _____.  The registrant has provided birth year of _____, residential address of _____, mailing address of _____, political party of _____.  Assigned precinct is _____ and assigned ballot style is _____.

.

Witness my hand and seal this _____ day of _____.

<**County Recorder Name**>

<**County Name**> County Recorder

## ACTIVE SIGNATURE ROSTER – CERTIFICATE OF INSPECTOR

State of Arizona)

             ) SS

County of _____)

### ACTIVE SIGNATURE ROSTER

**FOR POLLING PLACE:   <u>\<Voting Area\></u>**

**Number of Names:   <u>\<Number\></u>**

**<u>\<County Name\></u>, Arizona**

**<u>\<Precinct Name\></u>**

**<u>\<Date of Election\></u>**

I, <**<u>Recorder Name</u>**>, County Recorder in and for <**<u>County Name</u>**>, Arizona, as provided for by A.R.S. §16-169, hereby certify that this Signature Roster prepared for the above Voting Area, <**<u>County Name</u>**>, Arizona containing the above listed number of names is complete and correct.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of <**<u>County Name</u>**> County Arizona

_____

<**<u>Recorder Name</u>**>, <**<u>County Name</u>**> County Recorder

## INSPECTOR'S CERTIFICATE

I, the undersigned inspector of the Board of Elections for this Voting Area, <**County Name**> County, Arizona, hereby certify that the foregoing (except for signatures in red ink) are true and correct signatures of all electors who voted in this Voting Area on the day of the election.

_____

Inspector

-------------------------------------------------

BACKSIDE OF COVER PAGE

-------------------------------------------------

And we hereby certify that each individual, whose signature is contained herein, presented identification pursuant to A.R.S. § 16-579(A).  Those individuals that did not provide identification pursuant to A.R.S. § 16-579(A) were instructed to vote a provisional ballot and provided information on the times and locations for providing the required identification.

_____

_____

_____

INSTRUCTIONS TO VOTING AREA BOARD

The above certificate must be signed by the Inspector.  Each qualified elector shall sign the Signature Roster in the space provided prior to receiving a ballot.  The Inspector or a Judge may sign (using red ink) for an elector who is unable to sign because of physical disability.

A103

# V.
# CANDIDATE AND CAMPAIGN SAMPLE FINANCE FORM

## CANDIDATE NOMINATION PAPER (NOMINATION BY PRIMARY)

You are hereby notified that I, the undersigned, a qualified elector, am a candidate for the office of

_____, seeking the nomination of the _____ Party,

at the Primary Election to be held on the _____ day of _____, 20____, and at the General

Election to be held on the _____ day of _____, 20____, should I be nominated.

I will have been a citizen of the United States for _____ years before my election, will have been a

citizen of Arizona for _____ years before my election, and I will be at least _____ years of age upon taking

said office.   I have resided in _____ County for _____ years and in precinct

_____ for _____ years before my election.

_____
Actual residence address                                        City or Town                          Zip
or description of place of residence (required)

_____
Post office address (if applicable)                         City or town                          Zip

**Print or type your name on the following lines in the exact manner you**
**wish it to appear on the ballot, last name first.**

_____,     _____
              LAST NAME                                          FIRST NAME

I declare, under penalty of perjury, that the information in this Nomination Paper and Declaration of Qualification is true and correct, and that at the time of filing I am a resident of the county, district or precinct which I propose to represent, that I have no final, outstanding judgments against me of an aggregate of $1,000 or more that arose from failure to comply with or enforcement of campaign finance law, and as to all other qualifications, I will be qualified at the time of election to hold the office that I seek.

_____     _____
           CANDIDATE SIGNATURE                                      DATE

A106

## CANDIDATE NOMINATION PETITION (NOMINATION BY PRIMARY)

# Partisan Nomination Petition

I, the undersigned, a qualified elector of the county of _____ , state of Arizona, and of _____ (here name political division or district from which the nomination is sought) and a member of the _____ party or a person who is registered as no party preference or independent as the party preference or who is registered with a political party that is not qualified for representation on the ballot, hereby nominate _____ who resides at _____ in the county of _____ for the party nomination for the office of _____ to be voted at the primary election to be held _____ as representing the principles of such party, and I hereby declare that I am qualified to vote for this office and that I have not signed, and will not sign, any nomination petition for more persons than the number of candidates necessary to fill such office at the next ensuing election. I further declare that if I choose to use a post office box address on this petition, my residence address has not changed since I last reported it to the county recorder for purposes of updating my voter registration file.

Put optional photo here

| | Signature | Printed name | Actual residence address, description of place of residence or Arizona post office box address, city or town | Date of signing |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |

Petitioner/circulator remains solely responsible for ensuring this form complies with Arizona law.

Revised 07/31/2019, Secretary of State
A108

# Instructions for Circulators

1. All petitions shall be signed by circulator.
2. Circulator is not required to be a resident of this state but otherwise must be qualified to register to vote in this state and, if not a resident of this state, shall register as a circulator with the secretary of state.
3. Circulator's name shall be typed or printed under the circulator's signature.
4. Circulator's actual residence address or, if no street address, a description of residence location shall be included on the petition.

PRINT NAME

I, _____ a person who is not required to be a resident of this state but who is otherwise qualified to register to vote in the county of _____ COUNTY _____, in the state of Arizona, hereby verify that each of the names on the petition was signed in my presence on the date indicated and that in my belief each signer was a qualified elector who resides at the address given as their residence on the date indicated. I further verify that each signer is a member of the party from which the candidate is seeking nomination, or the signer is a member of a political party that is not entitled to continued representation on the ballot, or the signer is registered as independent or no party preferred.

Signature of Circulator

Typed or Printed Name of Circulator

Circulator's Actual Residence Address
(If no street address, a description of residence location shall be included on the petition)

City or Town and Zip Code

Revised 07/31/2019, Secretary of State

A109

Petitioner/circulator remains solely responsible for ensuring this form complies with Arizona law.

## CANDIDATE NOMINATION PAPER (OTHER THAN BY PRIMARY, A.R.S. § 16-341)

You are hereby notified that I, the undersigned, a qualified elector, am a candidate for the office of

_____, at the General Election to be held on the _____ day of

_____, 20____.

I will have been a citizen of the United States for _____ years before my election, will have been a

citizen of Arizona for _____ years before my election, and I will be at least _____ years of age upon taking

said office.   I have resided in _____ County for _____ years and in precinct

_____ for _____ years before my election.

_____

Actual residence address                                         City or Town                          Zip
or description of place of residence (required)

_____

Post office address (if applicable)                              City or town                          Zip

---

**Print or type your name on the following lines in the exact manner you**
**wish it to appear on the ballot, last name first.**

_____,        _____

                  LAST NAME                                              FIRST NAME

---

_____
BALLOT DESIGNATION (up to 3 words)

I declare, under penalty of perjury, that the information in this Nomination Paper and Declaration of
Qualification is true and correct, and that at the time of filing I am a resident of the county, district or precinct
which I propose to represent, that I have no final, outstanding judgments against me of an aggregate of
$1,000 or more that arose from failure to comply with or enforcement of campaign finance law, and as to all
other qualifications, I will be qualified at the time of election to hold the office that I seek.

_____        _____

              CANDIDATE SIGNATURE                                              DATE

A111

## CANDIDATE NOMINATION PETITION (OTHER THAN BY PRIMARY)

# Independent Nomination Petition

Put optional photo here

The undersigned, qualified electors of _____, county, state of Arizona, do hereby nominate

who resides at _____ in the county of _____, as a candidate for the office of

_____ at the _____ day of _____ election to be held on the

I hereby declare that I have not signed the nomination petitions of any candidate for the office to be voted for at this primary election, and I do hereby select the following

designation under which name the said candidate shall be placed on the official ballot _____.

| | Signature | Printed name | Actual residence address, description of place of residence or Arizona post office box address, city or town | Date of signing |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |

Petitioner/circulator remains solely responsible for ensuring this form complies with Arizona law.

Revised 07/30/2019, Secretary of State

A113

## Instructions for Circulators

1. All petitions shall be signed by circulator.
2. Circulator is not required to be a resident of this state but otherwise must be qualified to register to vote in this state and, if not a resident of this state, shall register as a circulator with the secretary of state.
3. Circulator's name shall be typed or printed under the circulator's signature.
4. Circulator's actual residence address or, if no street address, a description of residence location shall be included on the petition.

PRINT NAME

I, _____ a person who is not required to be a resident of this state but who is otherwise qualified to register to

vote in the county of _____ COUNTY _____, in the state of Arizona, hereby verify that each of the names on the petition was signed in my presence on the date indicated and that in my

belief each signer was a qualified elector who resides at the address given as their residence on the date indicated.

Signature of Circulator

Typed or Printed Name of Circulator

Circulator's Actual Residence Address
(If no street address, a description of residence location shall be included on the petition)

City or Town, State and Zip Code

Revised 07/30/2019, Secretary of State

Petitioner/circulator remains solely responsible for ensuring this form complies with Arizona law.

A114

## CANDIDATE NOMINATION PAPER (WRITE-IN)

You are hereby notified that I, the undersigned, a qualified elector, am a candidate for the office of

_____, for the _____ Party (if applicable), at the

PRIMARY Election or GENERAL Election (circle one) to be held on the _____ day of

_____, 20____.

I will have been a citizen of the United States for _____ years before my election, will have been a

citizen of Arizona for _____ years before my election, and that I am _____ years of age and my date of birth

is _____. I have resided in _____ County for _____ years

and in precinct _____ for _____ years before my election.

_____
Actual residence address                                          City or Town                          Zip
or description of place of residence (required)

_____
Post office address (if applicable)                               City or town                          Zip

---

**Print or type your name on the following lines in the exact manner you
wish it to be listed on the Notice of Official Write-In Candidates.**

_____,        _____
              LAST NAME                                        FIRST NAME

---

I declare, under penalty of perjury, that the information in this Nomination Paper and Declaration of

Qualification is true and correct, and that at the time of filing I am a resident of the county, district or precinct

which I propose to represent, that I have no final, outstanding judgments against me of an aggregate of

$1,000 or more that arose from failure to comply with or enforcement of campaign finance law, and as to all

other qualifications, I will be qualified at the time of election to hold the office that I seek.  If running in the

General Election, I further certify that I am not disqualified from running as a write-in candidate pursuant to

A.R.S. § 16-312(F).

_____        _____
        CANDIDATE SIGNATURE                                      DATE

A116

## CANDIDATE NOMINATION PAPER (NON-PARTISAN)

You are hereby notified that I, the undersigned, a qualified elector, am a candidate for the office of

_____ at the election to be held on the _____ day of _____,

20_____.

I will have been a citizen of the United States for _____ years before my election, will have been a

citizen of Arizona for _____ years before my election, and I will be at least _____ years of age upon taking

said office.   I have resided in _____ County for _____ years and in precinct

_____ for _____ years before my election.

_____

Actual residence address                                    City or Town                          Zip
or description of place of residence (required)

_____

Post office address (if applicable)                        City or town                          Zip

**Print or type your name on the following line in the exact manner you
wish it to appear on the ballot, last name first.**

_____,        _____

LAST NAME                                                  FIRST NAME

I declare, under penalty of perjury, that the information in this Nomination Paper and Declaration of
Qualification is true and correct, and that at the time of filing I am a resident of the county, district or precinct
which I propose to represent, that I have no final, outstanding judgments against me of an aggregate of
$1,000 or more that arose from failure to comply with or enforcement of campaign finance law, and as to all
other qualifications, I will be qualified at the time of election to hold the office that I seek.

_____        _____

CANDIDATE SIGNATURE                                         DATE

A118

## CANDIDATE NOMINATION PETITION (NON-PARTISAN)

# Nonpartisan Nomination Petition

Put optional photo here

I, the undersigned, a qualified elector of the county of _____ , state of Arizona, and of

_____ (here name political division or district from which the nomination is sought) hereby nominate

who resides at _____ in the county of _____ for the office of

_____ election to be held _____ , and I hereby declare that I am qualified to vote for this office and that I have

not signed, and will not sign, any nomination petitions for more persons than the number of candidates necessary to fill such office at the next ensuing election. I further

declare that if I choose to use a post office box address on this petition, my residence address has not changed since I last reported it to the county recorder for purposes

of updating my voter registration file.

| | Signature | Printed name | Actual residence address, description of place of residence or Arizona post office box address, city or town | Date of signing |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |

Petitioner/circulator remains solely responsible for ensuring this form complies with Arizona law.

Revised 07/30/2019, Secretary of State
A120

## Instructions for Circulators

1. All petitions shall be signed by circulator.
2. Circulator is not required to be a resident of this state but otherwise must be qualified to register to vote in this state and, if not a resident of this state, shall register as a circulator with the secretary of state.
3. Circulator's name shall be typed or printed under the circulator's signature.
4. Circulator's actual residence address or, if no street address, a description of residence location shall be included on the petition.

PRINT NAME

I, _____ a person who is not required to be a resident of this state but who is otherwise qualified to register to

vote in the county of _____ COUNTY _____, in the state of Arizona, hereby verify that each of the names on the petition was signed in my presence on the date indicated and that in my

belief each signer was a qualified elector who resides at the address given as their residence on the date indicated.

_____
Signature of Circulator

_____
Typed or Printed Name of Circulator

_____
Circulator's Actual Residence Address
(If no street address, a description of residence location shall be included on the petition)

_____
City or Town, State and Zip Code

Petitioner/circulator remains solely responsible for ensuring this form complies with Arizona law.

Revised 07/30/2019, Secretary of State

A121

## CANDIDATE STATEMENT OF INTEREST



**STATE OF ARIZONA**

*Candidate Statement of Interest*

**A.R.S. § 16-311; A.R.S. § 16-341**

You are hereby notified that I, the undersigned, hereby declare my interest to run as a candidate for the office of _____, seeking the nomination of the _____ Party, at the _____ _____ Election to be held on Tuesday, _____, _____.

By submitting this document, I understand that any nomination petition signatures collected before the date of this Statement of Interest are invalid and may be subject to challenge pursuant to A.R.S. § 16-351, unless signatures were collected before August 27, 2019 and this Statement of Interest was filed by January 2, 2020.

_____                _____

Last Name                                                                      First Name

                                                                                      _____

                                                                                      Date

                                                                                      _/s/_____

A122

## PUBLIC OFFICER AND CANDIDATE FINANCIAL DISCLOSURE STATEMENT

# PUBLIC OFFICER AND CANDIDATE FINANCIAL DISCLOSURE STATEMENT

Name of Public Officer or Candidate:

Address: (Please note: this address is public information and not subject to redaction)

Public Office Held or Sought:

District / Division Number (if applicable):

Please check the appropriate box that reflects your service for this filing year:

☐ I am a **public officer** filing this Financial Disclosure Statement covering the 12 months of calendar year 2019.

☐ I have been **appointed** to fill a vacancy in a public office within the last 60 days and am filing this Financial Disclosure Statement covering the 12-month period ending with the last full month prior to the date I took office.

☐ I am a **public officer who has served in the last full year of my final term**, which expires less than thirty-one days into calendar year 2020. This is my final Financial Disclosure Statement covering the last 12 months plus the final days of my term for the current year.

☐ I am a **candidate** for a public office and am filing this Financial Disclosure Statement covering the 12 months preceding the date of this statement, from the month of _____, to the month of _____.

## VERIFICATION

By signing, I verify under penalty of perjury that the information provided in this Financial Disclosure Statement is true and correct.

/S/ _____

Signature of Public Officer or Candidate          Date
(Electronic Signatures Accepted)

1

Secretary of State Revision December 17, 2019

A124

# A. PERSONAL FINANCIAL INTERESTS

This section requires disclosure of your financial interests and/or the financial interests of the member(s) of your household.[1]

## 1. Identification of Household Members and Business Interests

**What to disclose:** If you are married, is your spouse a member of your household?   ☐**Yes** ☐**No**   ☐**N/A** (If not married/widowed, select N/A)

Are any minor children[2] members of your household?      ☐**Yes** (If yes, disclose how many_____)      ☐**No**   ☐**N/A** (If no children, select N/A)

For the remaining questions in this Financial Disclosure Statement, the term "member of your household" or "household member" will be defined as the person(s) who correspond to your "yes" answers above.

You are not required to disclose the names of your spouse or minor children when answering the questions below. Thus, you may identify your household members as "spouse," "minor child 1", "minor child 2", etc. **Please note that if you choose to identify your spouse or minor children by name, the Secretary of State's Office or other local filing officer are not expected to redact that information when posting this Financial Disclosure Statement on the internet or providing it in response to a public records request.**

---

[1] If additional space is needed to report information on this Financial Disclosure Statement, please attach additional information as numbered exhibits.
[2] Minor children include children 18 years old and younger over whom you have joint or sole legal custody.

Secretary of State Revision December 17, 2019

A125

## 2. Sources of Personal Compensation

**What to disclose:** In subsection (2)(a), provide the name and address of each employer who paid you or any member of your household more than $1,000 in salary, wages, commissions, tips or other forms of compensation (other than "gifts") during the period covered by this report. Describe the nature of each employer's business and the type of services for which you or a member of your household were compensated.

### Subsection (2)(a):

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[3] BENEFITTED | NAME AND ADDRESS OF EMPLOYER WHO PROVIDED COMPENSATION > $1,000 | NATURE OF EMPLOYER'S BUSINESS | NATURE OF SERVICES PROVIDED BY PUBLIC OFFICER OR HOUSEHOLD MEMBER FOR EMPLOYER |
|---|---|---|---|
| | | | |
| | | | |

In subsection (2)(b), if applicable, list anything of value that any other person (outside your household) received for your or a member of your household's use or benefit. For example, if a person was paid by a third-party to be your personal housekeeper, identify that person, describe the nature of that person's services that benefited you, and provide information about the third-party who paid for the services on your behalf.

**You need not disclose** income of a business, including money you or any member of your household received that constitutes income paid to a business that you or your household member owns or does business as. This type of business income will be disclosed in Question 12.

### Subsection (2)(b) (if applicable):

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[4] BENEFITTED | NAME AND ADDRESS OF PERSON WHO PROVIDED SERVICES VALUED OVER $1,000 FOR YOUR OR YOUR HOUSEHOLD MEMBER'S USE OR BENEFIT | NATURE OF SERVICES PROVIDED BY PERSON FOR YOUR OR YOUR HOUSEHOLD MEMBER'S USE OR BENEFIT | NAME AND ADDRESS OF THIRD PARTY WHO PAID FOR PERSON'S SERVICES ON YOUR OR YOUR HOUSEHOLD MEMBER'S BEHALF |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

[3] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1," "minor child 2," etc.
[4] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse, "minor child 1," "minor child 2," etc.

A126                    Secretary of State Revision December 17, 2019

## 3. Professional, Occupational, and Business Licenses

**What to disclose:** List all professional, occupational or business licenses held by you or any member of your household at any time during the period covered by this Financial Disclosure Statement. This includes licenses in which you or a member of your household had an "interest," which includes (but is not limited to) any business license held by a "controlled" or "dependent" business as defined in Question 12 below.

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[5] | TYPE OF LICENSE | PERSON OR ENTITY HOLDING THE LICENSE | JURISDICTION OR ENTITY THAT ISSUED LICENSE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

[5] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1," "minor child 2," etc.

Secretary of State Revision December 17, 2019

A127

## 4. Personal Creditors

**What to disclose:** The name and address of each creditor to whom you or a member of your household owed a qualifying personal debt over $1,000 during any point during the period covered by this Financial Disclosure Statement.

Additionally, if the qualifying personal debt was either incurred for the first time or completely discharged (paid in full) during this period, list the date and check the applicable box to indicate whether it was incurred or discharged. Otherwise, check the box for "N/A" if the debt was not first incurred or fully discharged during the period covered by this Financial Disclosure Statement.

**You need _not_ disclose the following, which _do not_ qualify as "personal debt":**

- Debts resulting from the ordinary conduct of a business (these will be disclosed in Section B below);
- Debts on any personal residence or recreational property;
- Debts on motor vehicles used primarily for personal purposes (not commercial purposes);
- Debts secured by cash values on life insurance;
- Debts owed to relatives;
- Personal credit card transactions or the value of any retail installment contracts you or your household member entered into.

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[6] OWING THE DEBT | NAME AND ADDRESS OF CREDITOR (OR PERSON TO WHOM PAYMENTS ARE MADE) | IF THE DEBT WAS FIRST INCURRED OR COMPLETELY DISCHARGED DURING THIS REPORTING PERIOD, PROVIDE THE DATE (MM/DD/YYYY) AND CHECK THE APPROPRIATE BOX |
|---|---|---|
| | | Date: ☐Incurred  ☐Discharged ☐N/A |
| | | Date: ☐Incurred  ☐Discharged ☐N/A |
| | | Date: ☐Incurred  ☐Discharged ☐N/A |

---

[6] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1," "minor child 2," etc.

Secretary of State Revision December 17, 2019

A128

## 5. Personal Debtors

**What to disclose**: The name of each debtor who owed you or a member of your household a debt over $1,000 at any time during the period covered by this Financial Disclosure Statement, along with the approximate value of the debt by financial category.

Additionally, if the debt was either incurred for the first time or completely discharged (paid in full) during this period, list the date and check the box to indicate whether it was incurred or discharged. Otherwise, check "N/A" (for "not applicable") after the word "Date" if the debt was not first incurred or fully discharged during the period covered by this Financial Disclosure Statement.

| Public Officer or Household Member[7] Owed the Debt | Name of Debtor | Approximate Value of Debt | If the Debt Was First Incurred or Completely Discharged During This Reporting Period, Provide the Date (MM/DD/YYYY) and Check the Appropriate Box |
|---|---|---|---|
| | | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + | Date:<br>☐ Incurred    ☐ Discharged   ☐ N/A |
| | | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + | Date:<br>☐ Incurred    ☐ Discharged   ☐ N/A |
| | | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + | Date:<br>☐ Incurred    ☐ Discharged   ☐ N/A |

---

[7] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1," "minor child 2," etc.

Secretary of State Revision December 17, 2019

A129

## 6.  Gifts

**What to disclose:** The name of the donor who gave you or a member of your household a single gift or an accumulation of gifts during the preceding calendar year with a cumulative value over $500, subject to the exceptions listed in the below "You need <u>not</u> disclose" paragraph. A "gift" means a gratuity (tip), special discount, favor, hospitality, service, economic opportunity, loan or other benefit received <u>without</u> adequate consideration (reciprocal value) and not provided to members of the public at large (in other words, a personal benefit you or your household member received without providing an equivalent benefit in return).

**Please note:** the concept of a "gift" for purposes of this Financial Disclosure Statement is separate and distinct from the gift restrictions outlined in Arizona's lobbying statutes. Thus, disclosure in a lobbying report does not relieve you or a member of your household's duty to disclose gifts in this Financial Disclosure Statement.

**You need <u>not</u> disclose the following, which <u>do not</u> qualify as "gifts":**

- Gifts received by will;
- Gift received by intestate succession (in other words, gifts distributed to you or a household member according to Arizona's intestate succession laws, not by will);
- Gift distributed from an *inter vivos* (living) or testamentary (by will) trust established by a spouse or family member;
- Gifts received from any other member of the household;
- Gifts received by parents, grandparents, siblings, children and grandchildren; or
- Political campaign contributions reported on campaign finance reports.

| Public Officer or Household Member[8] Who Received Gifts Over $500 | Name of Gift Donor |
|---|---|
| | |
| | |
| | |
| | |
| | |

---
[8] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1," "minor child 2," etc.

7

Secretary of State Revision December 17, 2019

# 7.  Office, Position or Fiduciary Relationship in Businesses, Nonprofit Organizations or Trusts

**What to disclose:** The name and address of each business, organization, trust or nonprofit organization or association in which you or any member of your household held any office, position, or fiduciary relationship during the period covered by this Financial Disclosure Statement, including a description of the office, position or relationship.

| Public Officer or Household Member[9] Having the Reportable Relationship | Name and Address of Business, Organization, Trust, or Nonprofit Organization or Association | Description of Office, Position or Fiduciary Relationship Held by the Public Officer or Household Member |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

[9] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1," "minor child 2," etc.

8

Secretary of State Revision December 17, 2019

## 8. Ownership or Financial Interests in Businesses, Trusts or Investment Funds

**What to disclose**: The name and address of each business, trust, or investment fund in which you or any member of your household had an ownership or beneficial interest of over $1,000 during the period covered by this Financial Disclosure Statement. This includes stocks, annuities, mutual funds, or retirement funds. It also includes any financial interest in a limited liability company, partnership, joint venture, or sole proprietorship. Also, check the box to indicate the value of the interest.

| Public Officer or Household Member[10] Having Interest | Name and Address of Business, Trust or Investment Fund | Description of the Business, Trust or Investment Fund | Approximate Equity Value of the Interest |
|---|---|---|---|
| | | | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + |
| | | | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + |
| | | | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + |

[10] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1", "minor child 2", etc.

9

A132

Secretary of State Revision December 17, 2019

## 9. Ownership of Bonds

**What to disclose**: Bonds issued by a state or local government agency worth more than $1,000 that you or a member of your household held during the period covered by this Financial Disclosure Statement. Also, check the box to indicate the approximate value of the bonds.

Additionally, if the bonds were either acquired for the first time or completely divested (sold in full) during this period, list the date and check the box whether the bonds were acquired or divested. Otherwise, check "N/A" (for "not applicable") after the word "Date" if the bonds were not first acquired or fully divested during the period covered by this Financial Disclosure Statement.

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[11] ISSUED BONDS | ISSUING STATE OR LOCAL GOVERNMENT AGENCY | APPROXIMATE VALUE OF BONDS | IF THE BONDS WERE FIRST ACQUIRED OR COMPLETELY DIVESTED DURING THIS REPORTING PERIOD, PROVIDE THE DATE (MM/DD/YYYY) AND CHECK THE APPROPRIATE BOX |
|---|---|---|---|
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired   ☐Divested   ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired   ☐Divested   ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired   ☐Divested   ☐N/A |

[11] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1", "minor child 2", etc.

10

Secretary of State Revision December 17, 2019

## 10. Real Property Ownership

**What to disclose:** Arizona real property (land) and improvements which was owned by you or a member of your household during the period covered by this Financial Disclosure Statement, other than your primary residence or property you use for personal recreation. Also describe the property's location (city and state) and approximate size (acreage or square footage) and check the box to indicate the approximate value of the land.

Additionally, if the land was either acquired for the first time or completely divested (sold in full) during this period, list the date and check the box to indicate whether the land was acquired or divested. Otherwise, check "N/A" (for "not applicable") if the land was not first acquired or fully divested during the period covered by this Financial Disclosure Statement.

**You need not disclose:** Your primary residence or property you use for personal recreation.

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[12] THAT OWNS LAND | LOCATION AND APPROXIMATE SIZE | APPROXIMATE VALUE OF LAND | IF THE LAND WAS FIRST ACQUIRED OR COMPLETELY DISCHARGED DURING THIS REPORTING PERIOD, PROVIDE THE DATE (MM/DD/YYYY) AND CHECK THE APPROPRIATE BOX |
|---|---|---|---|
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired   ☐Divested   ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired   ☐Divested   ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired   ☐Divested   ☐N/A |

---

[12] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1", "minor child 2," etc.

11

Secretary of State Revision December 17, 2019

## 11. Travel Expenses

**What to disclose:** Each meeting, conference or other event during the period covered in this Financial Disclosure Statement where you participated in your official capacity and travel-related expenses of $1,000 or more were paid on your behalf (or for which you were reimbursed) for that meeting, conference, or other event. "Travel-related expenses" include, but are not limited to, the value of transportation, meals, and lodging to attend the meeting, conference, or other event.

**You need not disclose:** Any meeting, conference, or other event where paid or reimbursed travel-related expenses were less than $1,000 or your personal monies were expended related to the travel.

| Name of Meeting, Conference, or Event Attended in Official Capacity as Public Officer | Location | Amount or Value of Travel Costs |
|---|---|---|
|  |  | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + |
|  |  | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + |
|  |  | ☐ $1000 - $25,000<br>☐ $25,001 - $100,000<br>☐ $100,001 + |

Secretary of State Revision December 17, 2019

A135

# B. BUSINESS FINANCIAL INTERESTS

This section requires disclosure of any financial interests of a business owned by you or a member of your household.

## 12. Business Names

**What to disclose:** The name of any business under which you or any member of your household owns or did business under (in other words, if you or your household member were self-employed) during the period covered by this Financial Disclosure Statement, which include any corporations, limited liability companies, partnerships, sole proprietorships or any other type of business conducted under a trade name.

Also disclose if the named business is controlled or dependent. A business is "controlled" if you or any member of your household (individually or combined) had an ownership interest that amounts to more than 50%. A business is classified as "dependent," on the other hand, if: (1) you or any household member (individually or combined) had an ownership interest that amounts more than 10%; *and* (2) the business received more than $10,000 from a single source during the period covered by this Financial Disclosure Statement, which amounted to more than 50% of the business' gross income for the period.

**Please note:** If the business was either controlled or dependent, check the box to indicate whether it was controlled or dependent in the last column below. If the business was both controlled *and* dependent during the period covered by this Financial Disclosure Statement, check *both* boxes. Otherwise, leave the boxes in the last column below blank.

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[13] OWNING THE BUSINESS | NAME AND ADDRESS OF BUSINESS | CHECK THE APPROPRIATE BOX IF THE BUSINESS IS "CONTROLLED" BY OR "DEPENDENT" ON YOU OR A HOUSEHOLD MEMBER |
|---|---|---|
| | | ☐ Controlled  ☐ Dependent |
| | | ☐ Controlled  ☐ Dependent |
| | | ☐ Controlled  ☐ Dependent |

**Please note:** If a business listed in the foregoing Question 12 was neither "controlled" nor "dependent" during the period covered by this Financial Disclosure Statement, you need not complete the remainder of this Financial Disclosure Statement with respect to that business. If none of the businesses listed in Question 12 were "controlled" or "dependent," you need not complete the remainder of this Financial Disclosure Statement.

---

[13] You are not required to disclose the names of your spouse or minor children. Thus, you may identify your household members as "spouse," "minor child 1", "minor child 2", etc.

Secretary of State Revision December 17, 2019

A136

## 13. Controlled Business Information

**What to disclose:** The name of each controlled business listed in Question 12 above, and the goods or services provided by the business. If a single client or customer (whether a person or business) accounts for more than $10,000 *and* 25% of the business' gross income during the period covered by this Financial Disclosure Statement, the client or customer is deemed a "major client" and therefore you must describe what your business provided to this major client in the third column below. Also, if the major client is a business, please describe the client's type of business activities in the final column below (but if the major client is an individual, write "N/A" for "not applicable" in the final column below). If the business does not have a major client, write "N/A" for "not applicable" in the last two columns below.

**You need not disclose:** The name of any major client, or the activities of any major client that is an individual. If you or your household member does not own a business, or if your or your household member's business is not a controlled business, you may leave this question blank.

| NAME OF YOUR OR YOUR HOUSEHOLD MEMBER'S CONTROLLED BUSINESS | GOODS OR SERVICES PROVIDED BY THE CONTROLLED BUSINESS | DESCRIBE WHAT YOUR BUSINESS PROVIDES TO ITS MAJOR CLIENT | TYPE OF BUSINESS ACTIVITIES OF THE MAJOR CLIENT (IF A BUSINESS) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Secretary of State Revision December 17, 2019

A137

## 14. Dependent Business Information

**What to disclose:** The name of each dependent business listed in Question 12 above, and the goods or services provided by the business. If a single client or customer (whether a person or business) accounts for more than $10,000 *and* 25% of the business' gross income during the period covered by this Financial Disclosure Statement, the client or customer is deemed a "major client" and therefore you must describe what your business provides to this major client in the third column below. Also, if the major client is a business, please describe the client's type of business activities in the final column below (but if the major client is an individual, write "N/A" for "not applicable" in the final column below).

If the business does not have a major client, write "N/A" for "not applicable" in the last two columns below. Likewise, if the dependent business is also a controlled business, disclose the business only in Question 13 above and leave this question blank.

**You need not disclose:** The name of any major client, or the activities of any major client that is an individual. If you or your household member does not own a business, or if your or your household member's business is not a dependent business, you may leave this question blank.

| Name of Your or Your Household Member's Dependent Business | Goods or Services Provided by the Dependent Business | Describe What Your Business Provides to Its Major Customer | Type of Business Activities of the Major Customer (If a Business) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

15

A138

## 15. Real Property Owned by a Controlled or Dependent Business

**What to disclose:** Arizona real property (land) and improvements which was owned by a controlled or dependent business during the period covered by this Financial Disclosure Statement. Also describe the property's location (city and state) and approximate size (acreage or square footage) and check the box to indicate the approximate value of the land. If the business is one that deals in real property and improvements, check the box that corresponds to the aggregate value of all parcels held by the business during the period covered by this Financial Disclosure Statement.

Additionally, if the land was either acquired for the first time or completely divested (sold in full) during this period, list the date and check whether the land was acquired or divested. Otherwise, check "N/A" (for "not applicable") if the land was not first acquired or fully divested during the period covered by this Financial Disclosure Statement.

**You need not disclose:** If you or your household member does not own a business, or if your or your household member's business is not a dependent business, you may leave this question blank.

| NAME OF CONTROLLED OR DEPENDENT BUSINESS THAT OWNS LAND | LOCATION AND APPROXIMATE SIZE | APPROXIMATE VALUE OF LAND | IF THE LAND WAS FIRST ACQUIRED OR COMPLETELY DISCHARGED DURING THIS REPORTING PERIOD, PROVIDE THE DATE (MM/DD/YYYY) AND CHECK THE APPROPRIATE BOX |
|---|---|---|---|
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired ☐Divested ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired ☐Divested ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Acquired ☐Divested ☐N/A |

Secretary of State Revision December 17, 2019

A139

## 16. Controlled or Dependent Business' Creditors

**What to disclose:** The name and address of each creditor to which a controlled or dependent business owed more than $10,000, if that amount was also more than 30% of the business' total indebtedness at any time during the period covered by this Financial Disclosure Statement ("qualifying business debt").

Additionally, if the qualifying business debt was either incurred for the first time or completely discharged (paid in full) during this period, list the date and check the box to indicate whether it was incurred or discharged. Otherwise, check "N/A" (for "not applicable") after the word "Date" if the business debt was not first incurred or fully discharged during the period covered by this Financial Disclosure Statement.

**You need not disclose:** If you or your household member does not own a business, or if your or your household member's business is not a controlled or dependent business, you may leave this question blank.

| Name of Controlled or Dependent Business Owing the Qualifying Debt | Name and Address of Creditor (or Person to Whom Payments are Made) | If the Debt Was First Incurred or Completely Discharged During This Reporting Period, Provide the Date (MM/DD/YYYY) and Check the Appropriate Box |
|---|---|---|
| | | Date: ☐Incurred ☐Discharged ☐N/A |
| | | Date: ☐Incurred ☐Discharged ☐N/A |
| | | Date: ☐Incurred ☐Discharged ☐N/A |

Secretary of State Revision December 17, 2019

A140

## 17. Controlled or Dependent Business' Debtors

**What to disclose:** The name of each debtor who owed more than $10,000 to a controlled or dependent business, if that amount was also more than 30% of the total indebtedness owed to the controlled or dependent business at any time during the period covered by this Financial Disclosure Statement ("qualifying business debt"). Also check the box to indicate the approximate value of the debt by financial category.

Additionally, if the qualifying business debt was either incurred for the first time or completely discharged (paid in full) during this period, list the date and check the box to indicate whether it was incurred or discharged. Otherwise, check "N/A" (for "not applicable") if the business debt was not first incurred or fully discharged during the period covered by this Financial Disclosure Statement.

**You need not disclose:** If you or your household member does not own a business, or if your or your household member's business is not a controlled or dependent business, you may leave this question blank.

| PUBLIC OFFICER OR HOUSEHOLD MEMBER[11] OWED THE DEBT | NAME OF DEBTOR | APPROXIMATE VALUE OF DEBT | IF THE DEBT WAS FIRST INCURRED OR COMPLETELY DISCHARGED DURING THIS REPORTING PERIOD, PROVIDE THE DATE (MM/DD/YYYY) AND CHECK THE APPROPRIATE BOX |
|---|---|---|---|
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Incurred   ☐Discharged  ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Incurred   ☐Discharged  ☐N/A |
| | | ☐$1000 - $25,000<br>☐$25,001 - $100,000<br>☐$100,001 + | Date:<br>☐Incurred   ☐Discharged  ☐N/A |

Secretary of State Revision December 17, 2019

A141

## POLITICAL COMMITTEE STATEMENT OF ORGANIZATION

☐ Initial Application
☐ Amended Application
Date: _____

**STATE OF ARIZONA**
**COMMITTEE STATEMENT**
**OF ORGANIZATION**

COMMITTEE ID NUMBER
(office use only)

COMMITTEE TYPE (choose one):

☐ **Candidate**

*Committee Name* (required): _____
(first or last name & office)

*Candidate Information*:   Candidate's Name (required): _____

Candidate's mailing address (required): _____

Candidate's email address (required): _____

Candidate's phone number (required): _____

Candidate's website (if any): _____

*Office Sought* (choose one):   ☐ Governor        ☐ Secretary of State        ☐ Attorney General        ☐ State Treasurer
☐ Superintendent of Public Instruction        ☐ State Mine Inspector        ☐ Corporation Commissioner

☐ State Senate        ☐ State House of Representatives        ☐ District (required): _____

☐ County Office: _____        ☐ District (if applicable): _____

☐ City/Town Office: _____        ☐ District (if applicable): _____

*Election Cycle for Office Sought* (year the election will take place) (required): _____

*Party Affiliation*:   ☐ Democrat        ☐ Green        ☐ Libertarian        ☐ Republican        ☐ Other: _____
(required for partisan offices)

☐ **Political Action Committee (PAC)**

*Committee Name* (required): _____
(if sponsored, must include
sponsor's name)

*Political Function* (optional):   ☐ Contributions        ☐ Candidate-Related Independent Expenditures
(select any that apply)   ☐ Ballot Measure Expenditures        ☐ Recall Expenditures

*Sponsorship Information*:   Sponsor's name or nickname (required): _____
(if applicable)   Sponsor's mailing address (required): _____
Sponsor's email address (required): _____
Sponsor's phone number (if any): _____
Sponsor's website (if any): _____

*Special Status*        ☐ Separate Segregated Fund of a Corporation, LLC, Partnership, or Union
(if applicable)        ☐ Standing Committee (must also complete separate standing committee registration)
☐ Mega PAC (must provide proof of Mega PAC status to filing officer) (amended applications only)

☐ **Political Party**

*Committee Name* (required): _____
(must include party affiliation)

*Jurisdiction*:        ☐ State Party (must include proof of qualification pursuant to A.R.S. § 16-801 or § 16-804)
☐ County Party (must include proof of qualification pursuant to A.R.S. § 16-802 or § 16-804)
☐ Legislative District Party (must include proof of organization pursuant to A.R.S. § 16-823)
☐ City or Town Party (must include proof of qualification pursuant to A.R.S. § 16-802 or § 16-804)

*Special Status*        ☐ Standing Committee (must also complete separate standing committee registration)
(if applicable)

A143

☐ Initial Application
☐ Amended Application
Date: _____



**STATE OF ARIZONA**
**COMMITTEE STATEMENT**
**OF ORGANIZATION**

COMMITTEE ID NUMBER
(office use only)

COMMITTEE INFORMATION:

*Contact Information*: Committee's mailing address (required): _____

Committee's email address (required): _____

Committee's phone number (if any): _____

Committee's website (if any): _____

*Chairperson's Information*: Chairperson's name (required): _____

Chairperson's physical address (required): _____

Chairperson's mailing address (if different): _____

Chairperson's email address (required): _____

Chairperson's phone number (required): _____

Chairperson's employer (required): _____

Chairperson's occupation (required): _____

*Treasurer's Information*: Treasurer's name (required): _____

Treasurer's physical address (required): _____

Treasurer's mailing address (if different): _____

Treasurer's email address (required): _____

Treasurer's phone number (required): _____

Treasurer's employer (required): _____

Treasurer's occupation (required): _____

*Bank or Financial Institution*: Bank name (required): _____
(do not list acct numbers) Additional bank name (if applicable): _____

Additional bank name (if applicable): _____

DECLARATION AND SIGNATURES:

I declare under penalty of perjury that the foregoing information is true and correct. I further declare that I: (1) consent to serve as chairperson or treasurer of the committee named herein, if applicable; (2) designate the above-named committee as my official candidate committee and authorize it to receive/make contributions/expenditures on my behalf, if applicable; (3) have read the Secretary of State's campaign finance and reporting guide; (4) agree to comply with Arizona election law, including campaign finance laws codified at A.R.S. §§ 16-901 to 16-938; and (5) agree to accept all notifications and legal service of process for campaign finance purposes via the email address(es) provided herein.

Chairperson's signature: _____ Date: _____

Treasurer's signature: _____ Date: _____

Candidate's signature (if applicable): _____ Date: _____

A144

## POLITICAL COMMITTEE CAMPAIGN FINANCE REPORT

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

| COMMITTEE ID NUMBER |
| --- |

COMMITTEE INFORMATION (required):

*Committee Information:* Committee Name: _____

CANDIDATE INFORMATION (only if filing as a candidate committee):

*Office Sought:*  ☐ Statewide Office: _____  ☐ State Legislature: _____
  ☐ County Office: _____  ☐ City/Town Office: _____

*Cumulative Report:*
☐ Check here if this is the candidate committee's first, cumulative report for the election cycle. Also select appropriate Reporting Period below.
Cumulative reporting period start date (which supersedes the start date for the Reporting Period selected below):_____

REPORTING PERIOD (check one):

| REPORTING PERIOD | REPORT DUE |
| --- | --- |
| 2018 4th Quarter Report: October 21, 2018 to December 31, 2018 | January 1, 2019 to January 15, 2019 |
| 2019 March Pre-Election Report (Local Only): January 1, 2019 to February 23, 2019 | February 24, 2019 to March 4, 2019* |
| 2019 1st Quarter Report (Local Only): February 24, 2019 to March 31, 2019 | April 1, 2019 to April 15, 2019 |
| 2019 1st Quarter Report: January 1, 2019 to March 31, 2019 | April 1, 2019 to April 15, 2019 |
| 2019 May Pre-Election Report (Local Only): April 1, 2019 to May 4, 2019 | May 5, 2019 to May 13, 2019* |
| 2019 2nd Quarter Report (Local Only): May 5, 2019 to June 30, 2019 | July 1, 2019 to July 15, 2019 |
| 2019 2nd Quarter Report: April 1, 2019 to June 30, 2019 | July 1, 2019 to July 15, 2019 |
| 2019 August Pre-Election Report (Local Only): July 1, 2019 to August 10, 2019 | August 11, 2019 to August 19, 2019* |
| 2019 3rd Quarter Report (Local Only): August 11, 2019 to September 30, 2019 | October 1, 2019 to October 15, 2019 |
| 2019 3rd Quarter Report: July 1, 2019 to September 30, 2019 | October 1, 2019 to October 15, 2019 |
| 2019 October Pre-Election Report (Local Only): October 1, 2019 to October 19, 2019 | October 20, 2019 to October 28, 2019* |
| 2019 4th Quarter Report (Local Only): October 20, 2019 to December 31, 2019 | January 1, 2020 to January 15, 2020 |
| 2019 4th Quarter Report: October 1, 2019 to December 31, 2019 | January 1, 2020 to January 15, 2020 |
| 2020 March Pre-Election Report (Local Only): January 1, 2020 to February 22, 2020 | February 23, 2020 to March 2, 2020* |
| 2020 1st Quarter Report (Local Only): February 23, 2020 to March 31, 2020 | April 1, 2020 to April 15, 2020 |
| 2020 1st Quarter Report: January 1, 2020 to March 31, 2020 | April 1, 2020 to April 15, 2020 |
| 2020 May Pre-Election Report (Local Only): April 1, 2020 to May 2, 2020 | May 3, 2020 to May 11, 2020* |
| 2020 2nd Quarter Report (Local Only): May 3, 2020 to June 30, 2020 | July 1, 2020 to July 15, 2020 |
| 2020 2nd Quarter Report: April 1, 2020 to June 30, 2020 | July 1, 2020 to July 15, 2020 |
| 2020 July Pre-Election Report: July 1, 2020 to July 18, 2020 | July 19, 2020 to July 27, 2020* |
| 2020 3rd Quarter Report: July 19, 2020 to September 30, 2020 | October 1, 2020 to October 15, 2020 |
| 2020 October Pre-Election Report: October 1, 2020 to October 17, 2020 | October 18, 2020 to October 26, 2020* |
| 2020 4th Quarter Report: October 18, 2020 to December 31, 2020 | January 1, 2021 to January 15, 2021 |
| Final Campaign Finance Report Prior to Committee Termination | End of Previous Period through Today's Date |

*Reporting deadline extended to next business day. A.R.S. §§ 1-243(A) and 1-303.

FINANCIAL SUMMARY (required):

| | Activity | Cash Activity This Reporting Period | Election Cycle to Date |
| --- | --- | --- | --- |
| (a) | Committee value at the beginning of this reporting period (*i.e.* ending balance from the previous reporting period) | | |
| (b) | + Total receipts (from "Summary of Receipts," line 13 (cash column) for this reporting period) | | |
| (c) | - Total disbursements (from "Summary of Disbursements," line 16 (cash column) for this reporting period) | | |
| (d) | = Balance at close of reporting period | | |

☐ Check here if no financial activity during the reporting period. Lines (a)-(d) still must be completed, but only this cover page need be filed.

Committees with financial activity must file the cover page, summary of receipts, summary of disbursements, and any schedules that contain financial activity.
All reports are deemed to be filed under penalty of perjury by the committee treasurer (all committees) and candidate (candidate committees only).
Arizona Secretary of State Revision 12/12/19 (fillable format)



**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

_____

Under A.R.S. § 16-926(B)(5), a campaign finance report must be certified by the committee treasurer under penalty of perjury that the contents of the report are true and correct.

By filing this report, you certify that, under penalty of perjury, you have examined the contents of this report, and the contents are true and correct.

_____           _____     _____
Printed Name of Committee Treasurer          Signature of Committee Treasurer        Date

A147

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

SUMMARY OF RECEIPTS (Schedule A):

| Receipts | Cash | Equity |
|---|---|---|
| 1.   Monetary Contributions Received | | |
| (a)   Individuals - More than $50 | | |
| (b)   Individuals - $50 or Less (Aggregate) | | |
| (c)   Candidate Committees | | |
| (d)   Political Action Committees | | |
| (e)   Political Parties | | |
| (f)   Partnerships | | |
| (g)   Corporations & Limited Liability Companies (PACs & Political Parties Only) | | |
| (h)   Labor Organizations (PACs & Political Parties Only) | | |
| (i)   Candidate's Personal Monies (Candidate Committees Only) | | |
| (j)   Monetary Contributions Subtotal (add 1(a) through 1(i)) | | |
| (k)   Refunds Given Back to Contributors | | |
| (l)   Net Monetary Contributions (subtract 1(k) from 1(j)) | | |
| 2.   Loans | | |
| (a)   Loans Received | | |
| (b)   Forgiveness on Loans Received | | |
| (c)   Repayment on Loans Made | | |
| (d)   Interest Accrued on Loans Made | | |
| (e)   Loans Subtotal (cash: add 2(a), 2(c) & 2(d)) | | |
| 3.   Rebates and Refunds Received | | |
| 4.   Interest Accrued on Committee Monies | | |
| 5.   In-Kind Contributions Received | | |
| (a)   Individuals - More than $50 | | |
| (b)   Individuals - $50 or Less (Aggregate) | | |
| (c)   Candidate Committees | | |
| (d)   Political Action Committees | | |
| (e)   Political Parties | | |
| (f)   Partnerships | | |
| (g)   Corporations & Limited Liability Companies (PACs & Political Parties Only) | | |
| (h)   Labor Organizations (PACs & Political Parties Only) | | |
| (i)   Candidate's Personal Assets or Property (Candidate Committees Only) | | |
| (j)   In-Kind Contributions Subtotal (equity: add 5(a) through 5(i)) | | |
| 6.   In-Kind Donations Received (Non-Contributions) (Political Parties Only) | | |
| 7.   Extensions of Credit | | |
| (a)   Extensions of Credit Received | | |
| (b)   Payments on Extensions of Credit Received | | |
| (c)   Net Extensions of Credit (subtract 7(b) from 7(a)) | | |
| 8.   Joint Fundraising / Shared Expense Payments Received | | |
| 9.   Payments Received for Goods / Services | | |
| 10.   Outstanding Accounts Receivable / Debts Owed to Committee | | |
| 11.   Transfer In Surplus Monies / Transfer Out Debt (use cash and/or equity as applicable) | | |
| 12.   Miscellaneous Receipts | | |
| 13.   Total Receipts (cash: add 1(l), 2(e), 3-4, 8-9, 11-12; equity: add 2(b), 5(j), 6-7, 10-12) | | |

A148

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

SUMMARY OF DISBURSEMENTS (Schedule B):

| Disbursements | Cash | Equity |
|---|---|---|
| 1. Disbursements for Operating Expenses | | |
| 2. Contributions Made | | |
| (a) Candidate Committees | | |
| (b) Political Action Committees | | |
| (c) Political Parties | | |
| (d) Partnerships | | |
| (e) Corporations & Limited Liability Companies (PAC & Political Parties Only) | | |
| (f) Labor Organizations (PAC & Political Parties Only) | | |
| (g) Monetary Contributions Subtotal (add 2(a) through 2(f)) | | |
| (h) Contribution Refunds Provided to the Reporting Committee | | |
| (i) Monetary Contributions Total (subtract 2(h) from 2(g)) | | |
| 3. Loans | | |
| (a) Loans Made | | |
| (b) Loan Guarantees Made | | |
| (c) Forgiveness on Loans Made | | |
| (d) Repayment of Loans Received | | |
| (e) Accrued Interest on Loans Received | | |
| (f) Total Loans (cash: add 3(a), 3(d) & 3(e); equity: add 2(b) & 2(c)) | | |
| 4. Rebates and Refunds Made (Non-Contributions) | | |
| 5. Value of In-Kind Contributions Provided | | |
| (a) Candidate Committees | | |
| (b) Political Action Committees | | |
| (c) Political Parties | | |
| (d) Partnerships | | |
| (e) Corporations & Limited Liability Companies (PAC & Political Parties Only) | | |
| (f) Labor Organizations (PAC & Political Parties Only) | | |
| (j) Contributions Subtotal (add 5(a) through 5(f)) | | |
| 6. Independent Expenditures Made | | |
| 7. Ballot Measure Expenditures Made | | |
| 8. Recall Expenditures Made | | |
| 9. Support Provided to Party Nominees (Political Parties Only) | | |
| 10. Joint Fundraising / Shared Expense Payments Made | | |
| 11. Reimbursements Made | | |
| 12. Outstanding Accounts Payable / Debts Owed by Committee | | |
| 13. Transfer Out Surplus Monies / Transfer In Debt (use cash and/or equity as applicable) | | |
| 14. Miscellaneous Disbursements | | |
| 15. Aggregate of Disbursements - $250 or Less | | |
| 16. Total Disbursements (cash: add 1, 2(i), 3(f), 6-11 & 13-15; equity: add 3(f), 5(j), & 12-15) | | |

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS RECEIVED FROM INDIVIDUALS - MORE THAN $50 DURING ELECTION CYCLE:*                    SCHEDULE A(1)(a)

| Individual Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| 1 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 2 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 3 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 4 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 5 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(a)) | | | | | |

*If contributions of $50 or less are listed on Schedule A(1)(b), do not include them on Schedule A(1)(a).

Schedule A(1)(a), page ___ of ____

A150

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS RECEIVED FROM INDIVIDUALS - $50 OR LESS (AGGREGATE):*       SCHEDULE A(1)(b)

|  | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Cumulative Contributions from Individuals - $50 or Less |  |  |
| Enter total only if last page of schedule <br> (transfer the total received this period to "Summary of Receipts," line 1(b)) |  |  |

*If contributions of more than $50 are listed on Schedule A(1)(a), do not include them on Schedule A(1)(b).

Schedule A(1)(b), page ____ of ____

A151

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM CANDIDATE COMMITTEES:                                     SCHEDULE A(1)(c)

| Candidate Committee Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Committee Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Committee ID Number | Date Contribution Received | | | | |
| **2** Committee Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Committee ID Number | Date Contribution Received | | | | |
| **3** Committee Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Committee ID Number | Date Contribution Received | | | | |
| **4** Committee Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Committee ID Number | Date Contribution Received | | | | |
| **5** Committee Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Committee ID Number | Date Contribution Received | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(c)) | | | | | |

Schedule A(1)(c), page ___ of ___

A152

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM POLITICAL ACTION COMMITTEES:                                    SCHEDULE A(1)(d)

| | Political Action Committee Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date Contribution Received | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(d)) | | | | | |

Schedule A(1)(d), page ___ of ___

A153

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM POLITICAL PARTIES:                                                    SCHEDULE A(1)(e)

| | Political Party Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 2 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 3 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 4 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| 5 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 1(e)) | | | |

Schedule A(1)(e), page ____ of ____

A154

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM PARTNERSHIPS:

SCHEDULE A(1)(f)

| | Partnership Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 2 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 3 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 4 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| 5 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| | **Enter total only if last page of schedule**<br>(transfer the total received this period to "Summary of Receipts," line 1f(1)) | | | |

Schedule A(1)(f), page ___ of ___

A155

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM CORPORATIONS AND LLCs:                                           SCHEDULE A(1)(g)

| Corporation / LLC Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| **2** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| **3** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| **4** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| **5** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Received | | | |
| Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 1(g)) | | | |

Schedule A(1)(g), page ___ of ___

A156

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM LABOR ORGANIZATIONS:                                         SCHEDULE A(1)(h)

| | Labor Organization Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Labor Organization Name <br> Street Address <br> City    State    ZIP <br> Corporation Commission File Number    Date Contribution Received | | | |
| 2 | Labor Organization Name <br> Street Address <br> City    State    ZIP <br> Corporation Commission File Number    Date Contribution Received | | | |
| 3 | Labor Organization Name <br> Street Address <br> City    State    ZIP <br> Corporation Commission File Number    Date Contribution Received | | | |
| 4 | Labor Organization Name <br> Street Address <br> City    State    ZIP <br> Corporation Commission File Number    Date Contribution Received | | | |
| 5 | Labor Organization Name <br> Street Address <br> City    State    ZIP <br> Corporation Commission File Number    Date Contribution Received | | | |
| | Enter total only if last page of schedule <br> (transfer the total received this period to "Summary of Receipts," line 1(h)) | | | |

Schedule A(1)(h), page ___ of ___

A157

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS FROM CANDIDATE'S PERSONAL MONIES:                                        SCHEDULE A(1)(i)

| | Candidate Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 2 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 3 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 4 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| 5 | Name | | Date Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(i)) | | | | | | |

Schedule A(1)(i), page ___ of ___

A158

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REFUNDS GIVEN BACK TO CONTRIBUTORS:                                                                          SCHEDULE A(1)(k)

| | Contributor Information | | | Amount Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | Date Contribution Refunded | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | ID Number (if applicable) | | Date of Original Contribution | | | |
| 2 | Name | | Date Contribution Refunded | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | ID Number (if applicable) | | Date of Original Contribution | | | |
| 3 | Name | | Date Contribution Refunded | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | ID Number (if applicable) | | Date of Original Contribution | | | |
| 4 | Name | | Date Contribution Refunded | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | ID Number (if applicable) | | Date of Original Contribution | | | |
| 5 | Name | | Date Contribution Refunded | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | ID Number (if applicable) | | Date of Original Contribution | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 1(k)) | | | | | |

Schedule A(1)(k), page ____ of

A159

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

LOANS RECEIVED:                                                                                           SCHEDULE A(2)(a)

| | Lender Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | | | |
| 2 | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | | | |
| 3 | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | | | |
| 4 | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | | | |
| 5 | Lender Name | Date Loan Received | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 2(a)) | | | | | |

Schedule A(2)(a), page ___ of ___

A160

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

FORGIVENESS ON LOANS RECEIVED:                                                                                SCHEDULE A(2)(b)

| Lender Information | | | Amount Forgiven | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Lender Name __ Date Forgiveness Received <br> Street Address <br> City __ State __ ZIP <br> Original Amount of Loan __ Amount Still Outstanding | | | | | |
| **2** Lender Name __ Date Forgiveness Received <br> Street Address <br> City __ State __ ZIP <br> Original Amount of Loan __ Amount Still Outstanding | | | | | |
| **3** Lender Name __ Date Forgiveness Received <br> Street Address <br> City __ State __ ZIP <br> Original Amount of Loan __ Amount Still Outstanding | | | | | |
| **4** Lender Name __ Date Forgiveness Received <br> Street Address <br> City __ State __ ZIP <br> Original Amount of Loan __ Amount Still Outstanding | | | | | |
| **5** Lender Name __ Date Forgiveness Received <br> Street Address <br> City __ State __ ZIP <br> Original Amount of Loan __ Amount Still Outstanding | | | | | |
| Enter total only if last page of schedule <br> (transfer the total received this period to "Summary of Receipts," line 2(b)) | | | | | |

Schedule A(2)(b), page ___ of ____

A161

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REPAYMENT ON LOANS MADE:                                                                                          SCHEDULE A(2)(c)

| Borrower Information | | | Amount Repaid | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **2** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **3** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **4** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| **5** Borrower Name / Date Repayment Received / Street Address / City / State / ZIP / Original Amount Borrowed / Amount Still Outstanding | | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 2(c)) | | | | | |

Schedule A(2)(c), page ___ of ___

A162

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

INTEREST ACCRUED ON LOANS MADE:                                        SCHEDULE A(2)(d)

| | Borrower Information | | | Amount of Interest Accrued | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Borrower Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 2 | Borrower Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 3 | Borrower Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 4 | Borrower Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 5 | Borrower Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 2(d)) | | | | | |

Schedule A(2)(d), page ____ of

A163

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REBATES AND REFUNDS RECEIVED:                                                                                   SCHEDULE A(3)

| | Payor Information | Amount Rebated or Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Payor Name                    Date Rebate/Refund Received<br>Street Address<br>City          State          ZIP<br>Original Purchase Amount     Reason for Refund/Rebate | | | |
| 2 | Payor Name                    Date Rebate/Refund Received<br>Street Address<br>City          State          ZIP<br>Original Purchase Amount     Reason for Refund/Rebate | | | |
| 3 | Payor Name                    Date Rebate/Refund Received<br>Street Address<br>City          State          ZIP<br>Original Purchase Amount     Reason for Refund/Rebate | | | |
| 4 | Payor Name                    Date Rebate/Refund Received<br>Street Address<br>City          State          ZIP<br>Original Purchase Amount     Reason for Refund/Rebate | | | |
| 5 | Payor Name                    Date Rebate/Refund Received<br>Street Address<br>City          State          ZIP<br>Original Purchase Amount     Reason for Refund/Rebate | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 3) | | | |

Schedule A(3), page ___ of

A164

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

INTEREST ACCRUED ON COMMITTEE MONIES:                                                    SCHEDULE A(4)

| | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Account with Interest Earned (Bank Name / Type of Account) | | |
| Total (transfer the total received this period to "Summary of Receipts," line 4) | | |

Schedule A(4), page ____ of ____

A165

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS RECEIVED FROM INDIVIDUALS - MORE THAN $50 DURING ELECTION CYCLE:*    SCHEDULE A(5)(a)

| | Individual Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| **1** | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| **2** | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| **3** | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| **4** | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| **5** | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Occupation | Employer | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(a)) | | | | | | |

*If in-kind contributions of $50 or less are listed on Schedule A(5)(b), do not include them on Schedule A(5)(a).

Schedule A(5), page ___ of

A166

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS RECEIVED FROM INDIVIDUALS - $50 OR LESS (AGGREGATE):*       SCHEDULE A(5)(b)

| | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Cumulative In-Kind Contributions from Individuals - $50 or Less | | |
| Enter total only if last page of schedule <br> (transfer the total received this period to "Summary of Receipts," line 1(b)) | | |

*If contributions of more than $50 are listed on Schedule A(5)(a), do not include them on Schedule A(5)(b).

Schedule A(5)(b), page ____ of ____

A167

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM CANDIDATE COMMITTEES:                                SCHEDULE A(5)(c)

| | Candidate Committee Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 5(c)) | | | | | |

Schedule A(5)(c), page ___ of ___

A168

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM POLITICAL ACTION COMMITTEES:                                    SCHEDULE A(5)(d)

| | Political Action Committee Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 5(d)) | | | | | |

Schedule A(5)(d), page ___ of ___

A169

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM POLITICAL PARTIES:                                                                 SCHEDULE A(5)(e)

| | Political Party Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Received | | | | |
| | Enter total only if last page of schedule | | | | | |
| | (transfer the total received this period to "Summary of Receipts," line 5(e)) | | | | | |

Schedule A(5)(e), page ___ of ____

A170

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM PARTNERSHIPS:

SCHEDULE A(5)(f)

| | Partnership Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 2 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 3 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 4 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| 5 | Partnership Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Corporation Commission File Number / Date In-Kind Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 5(f)) | | | |

Schedule A(5)(f), page ___ of ___

A171

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM CORPORATIONS AND LLCs:                                                                    SCHEDULE A(5)(g)

| | Corporation / LLC Contributor Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Corporation/LLC Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 2 | Corporation/LLC Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 3 | Corporation/LLC Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 4 | Corporation/LLC Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| 5 | Corporation/LLC Name<br>Street Address<br>City    State    ZIP<br>Corporation Commission File Number    Date In-Kind Contribution Received | | | |
| | Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 5(q)) | | | |

Schedule A(5)(g), page ____ of ____

A172

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM LABOR ORGANIZATIONS:                    SCHEDULE A(5)(h)

| | Labor Organization Contributor Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Labor Organization Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 2 | Labor Organization Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 3 | Labor Organization Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 4 | Labor Organization Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| 5 | Labor Organization Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Received | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(h)) | | | | | |

Schedule A(5)(h), page ___ of ___

A173

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS FROM CANDIDATE'S PERSONAL ASSETS OR PROPERTY:                                    SCHEDULE A(5)(i)

| | Candidate Information | | | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 2 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 3 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 4 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| 5 | Name | | Date In-Kind Contribution Received | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Asset or Property Contributed | | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(i)) | | | | | |

Schedule A(5)(i), page ___ of ___

A174

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND DONATIONS RECEIVED (NON-CONTRIBUTIONS) (POLITICAL PARTIES ONLY):                                SCHEDULE A(6)

| Source Information | Amount Received | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Name / Date In-Kind Donation Received / Street Address / City / State / ZIP / Type of Item Donated | | | |
| **2** Name / Date In-Kind Donation Received / Street Address / City / State / ZIP / Type of Item Donated | | | |
| **3** Name / Date In-Kind Donation Received / Street Address / City / State / ZIP / Type of Item Donated | | | |
| **4** Name / Date In-Kind Donation Received / Street Address / City / State / ZIP / Type of Item Donated | | | |
| **5** Name / Date In-Kind Donation Received / Street Address / City / State / ZIP / Type of Item Donated | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 5(e)) | | | |

Schedule A(5)(e), page ___ of ___

A175

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

EXTENSIONS OF CREDIT RECEIVED:

SCHEDULE A(7)(a)

| Creditor Information | | | Amount of Credit Extended | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| **2** Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| **3** Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| **4** Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| **5** Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Services or Goods Provided on Credit | | Date of Extension of Credit | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts." line 7(a)) | | | | | |

Schedule A(7)(a), page___ of ___

A176

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

PAYMENTS ON EXTENSIONS OF CREDIT RECEIVED:                                                    SCHEDULE A(7)(b)

| | Creditor Information | | | Payment Amount on Credit Extended | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Originally Provided on Credit | | Date of Original Extension of Credit | | | |
| 2 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Originally Provided on Credit | | Date of Original Extension of Credit | | | |
| 3 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Originally Provided on Credit | | Date of Original Extension of Credit | | | |
| 4 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Originally Provided on Credit | | Date of Original Extension of Credit | | | |
| 5 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Originally Provided on Credit | | Date of Original Extension of Credit | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 7(b)) | | | | | |

Schedule A(7)(b), page ___ of ___

A177

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

JOINT FUNDRAISING / SHARED EXPENSE PAYMENTS RECEIVED:                                SCHEDULE A(8)

| | Payor Committee Information | | Payment Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| 1 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 2 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 3 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 4 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| 5 | Committee Name / Payment Date / Street Address / City / State / ZIP / Date of Joint Fundraising Event (if applicable) / Type of Shared Expense (if applicable) | | | | |
| | Enter total only if last page of schedule <br> (transfer the total received this period to "Summary of Receipts," line 8) | | | | |

Schedule A(8), page ___ of ___

A178

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

PAYMENTS RECEIVED FOR GOODS/SERVICES:                                                                 SCHEDULE A(9)

| | Payor Information | | | Payment Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Purchased | | Payment Date | | | |
| 2 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Purchased | | Payment Date | | | |
| 3 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Purchased | | Payment Date | | | |
| 4 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Purchased | | Payment Date | | | |
| 5 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Services or Goods Purchased | | Payment Date | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 9) | | | | | |

Schedule A(9), page ____ of ___

A179

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

OUTSTANDING ACCOUNTS RECEIVABLE / DEBTS OWED TO COMMITTEE:                           SCHEDULE A(10)

| Information | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **2** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **3** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **4** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| **5** Name<br>Street Address<br>City / State / ZIP<br>Type of Account Receivable or Debt Owed / Date that Debt Accrued | | | |
| Enter total only if last page of schedule<br>(transfer the total received this period to "Summary of Receipts," line 10) | | | |

Schedule A(10), page ___ of ___

A180

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

TRANSFER IN SURPLUS MONIES / TRANSFER OUT DEBT:                                                    SCHEDULE A(11)

| | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Source of Surplus Monies / Recipient of Transferred Debt | | |
| Total (transfer the total received this period to "Summary of Receipts," line 11) | | |

Schedule A(11), page ____ of ____

A181

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MISCELLANEOUS RECEIPTS:                                                                SCHEDULE A(12)

| | Source Information | | | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Receipt Type | | Receipt Date | | | |
| 2 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Receipt Type | | Receipt Date | | | |
| 3 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Receipt Type | | Receipt Date | | | |
| 4 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Receipt Type | | Receipt Date | | | |
| 5 | Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Receipt Type | | Receipt Date | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 12) | | | | | | |

Schedule A(12), page ___ of ___

A182

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

DISBURSEMENTS FOR OPERATING EXPENSES:                                                    SCHEDULE B(1)

| | Recipient Information | | | Amount Paid | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name | Disbursement Date | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | ☐ Cash ☐ Credit | | |
| 2 | Name | Disbursement Date | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | ☐ Cash ☐ Credit | | |
| 3 | Name | Disbursement Date | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | ☐ Cash ☐ Credit | | |
| 4 | Name | Disbursement Date | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | ☐ Cash ☐ Credit | | |
| 5 | Name | Disbursement Date | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Type of Operating Expense Paid | Non-Electoral Purpose?  (PACs and Political Parties Only) ☐ | | ☐ Cash ☐ Credit | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 1) | | | | | |

Schedule B(1), page ____ of ___

A183

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO CANDIDATE COMMITTEES:                                          SCHEDULE B(2)(a)

| | Candidate Committee Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 2(a)) | | | |

Schedule B(2)(a), page ___ of ___

A184

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO POLITICAL ACTION COMMITTEES:                                        SCHEDULE B(2)(b)

| | Political Action Committee Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Committee Name<br><br>Street Address<br><br>City / State / ZIP<br><br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 2(b)) | | | |

Schedule B(2)(b), page ___ of ___

A185

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO POLITICAL PARTIES:                                    SCHEDULE B(2)(c)

| | Political Party Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements." line 2(c)) | | | |

Schedule B(2)(c), page ___ of ___

A186

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO PARTNERSHIPS:                                                    SCHEDULE B(2)(d)

| | Partnership Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 2 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 3 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 4 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| 5 | Partnership Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date Contribution Made | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements." line 2(d)) | | | |

Schedule B(2)(d), page ____ of ____

A187

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO CORPORATIONS AND LLCs:                                          SCHEDULE B(2)(e)

| | Corporation / LLC Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Corporation/LLC Name <br> Street Address <br> City / State / ZIP <br> Corporation Commission File Number / Date Contribution Made | ☐ Cash ☐ Credit | | |
| 2 | Corporation/LLC Name <br> Street Address <br> City / State / ZIP <br> Corporation Commission File Number / Date Contribution Made | ☐ Cash ☐ Credit | | |
| 3 | Corporation/LLC Name <br> Street Address <br> City / State / ZIP <br> Corporation Commission File Number / Date Contribution Made | ☐ Cash ☐ Credit | | |
| 4 | Corporation/LLC Name <br> Street Address <br> City / State / ZIP <br> Corporation Commission File Number / Date Contribution Made | ☐ Cash ☐ Credit | | |
| 5 | Corporation/LLC Name <br> Street Address <br> City / State / ZIP <br> Corporation Commission File Number / Date Contribution Made | ☐ Cash ☐ Credit | | |
| | Enter total only if last page of schedule <br> (transfer the total disbursed this period to "Summary of Disbursements," line 2(e)) | | | |

Schedule B(2)(e), page ___ of ___

A188

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

MONETARY CONTRIBUTIONS TO LABOR ORGANIZATIONS:                                                    SCHEDULE B(2)(f)

| | Labor Organization Recipient Information | | | Amount Contributor | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| **1** | Labor Organization Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| **2** | Labor Organization Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| **3** | Labor Organization Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| **4** | Labor Organization Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| **5** | Labor Organization Name | | | ☐ Cash ☐ Credit | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 2(f)) | | | | | |

Schedule B(2)(f), page ___ of ___

A189

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

CONTRIBUTION REFUNDS RECEIVED:                                                                 SCHEDULE B(2)(h)

| Contributor Information | | | Amount Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Committee Name / Date Refund Received / Street Address / City / State / ZIP / Committee ID Number / Date of Original Contribution | | | | | |
| **2** Committee Name / Date Refund Received / Street Address / City / State / ZIP / Committee ID Number / Date of Original Contribution | | | | | |
| **3** Committee Name / Date Refund Received / Street Address / City / State / ZIP / Committee ID Number / Date of Original Contribution | | | | | |
| **4** Committee Name / Date Refund Received / Street Address / City / State / ZIP / Committee ID Number / Date of Original Contribution | | | | | |
| **5** Committee Name / Date Refund Received / Street Address / City / State / ZIP / Committee ID Number / Date of Original Contribution | | | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 2(h)) | | | | | |

Schedule B(2)(h), page ___ of

A190

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

LOANS MADE:

SCHEDULE B(3)(a)

| | Borrower Information | | | Amount Loaned | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 2 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 3 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 4 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| 5 | Borrower Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Guarantor/Endorser Name | Date Loan Made | | | | |
| | Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 3) | | | | | |

Schedule B(3)(a), page ___ of ___

A191

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

LOAN GUARANTEES MADE:                                                                                    SCHEDULE B(3)(b)

| Guarantor Information | | | Amount Guaranteed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** Guarantor Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Borrower Name | Date Loan Guaranteed | | | | |
| **2** Guarantor Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Borrower Name | Date Loan Guaranteed | | | | |
| **3** Guarantor Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Borrower Name | Date Loan Guaranteed | | | | |
| **4** Guarantor Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Borrower Name | Date Loan Guaranteed | | | | |
| **5** Guarantor Name | | | | | |
| Street Address | | | | | |
| City | State | ZIP | | | |
| Borrower Name | Date Loan Guaranteed | | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 3/b)) | | | | | |

Schedule B(3)(b), page ___ of ___

A192

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

FORGIVENESS ON LOANS MADE:                                                                                          SCHEDULE B(3)(c)

| | Borrower Information | | | Amount Forgiven | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 2 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 3 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 4 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| 5 | Borrower Name | | Date Forgiveness Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount of Loan | Amount Still Outstanding | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 3(c)) | | | | | |

Schedule B(3)(c), page ___ of ___

A193

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REPAYMENT ON LOANS RECEIVED:                                                                              SCHEDULE B(3)(d)

| | Lender Information | | | Amount Repaid | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Lender Name | | Date Repayment Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 2 | Lender Name | | Date Repayment Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 3 | Lender Name | | Date Repayment Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 4 | Lender Name | | Date Repayment Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 5 | Lender Name | | Date Repayment Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |

Enter total only if last page of schedule
(transfer the total disbursed this period to "Summary of Disbursements," line 3(d))

Schedule B(3)(d), page ___ of

A194

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

INTEREST ACCRUED ON LOANS RECEIVED:                                    SCHEDULE B(3)(e)

| | Lender Information | | | Amount of Interest Accrued | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 2 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 3 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 4 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| 5 | Lender Name | | Date Interest Accrued | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Original Amount Borrowed | Amount Still Outstanding | | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements." line 3(e)) | | | | | | |

Schedule B(3)(e), page ___ of

A195

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REBATES AND REFUNDS MADE (NON-CONTRIBUTIONS):                                                    SCHEDULE B(4)

| | Recipient Information | | | Amount Rebated / Refunded | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Date of Original Payment | | | |
| 2 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Date of Original Payment | | | |
| 3 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Date of Original Payment | | | |
| 4 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Date of Original Payment | | | |
| 5 | Name of Original Payor | | Date Rebate/Refund Made | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number (if applicable) | Original Payment Amount | Date of Original Payment | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 4) | | | | | |

Schedule B(4), page ____ of ____

A196

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO CANDIDATE COMMITTEES:                                                           SCHEDULE B(5)(a)

| | Candidate Committee Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements." line 5(a)) | | | | | |

Schedule B(5)(a), page ___ of ___

A197

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO POLITICAL ACTION COMMITTEES:                                    SCHEDULE B(5)(b)

| | Political Action Committee Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 2 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 3 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 4 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| 5 | Committee Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Committee ID Number | Date In-Kind Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 5(b)) | | | | | |

Schedule B(5)(b), page ___ of ___

A198

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO POLITICAL PARTIES:                                   SCHEDULE B(5)(c)

| | Political Party Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Made | | | |
| 2 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Made | | | |
| 3 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Made | | | |
| 4 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Made | | | |
| 5 | Committee Name<br>Street Address<br>City / State / ZIP<br>Committee ID Number / Date In-Kind Contribution Made | | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 5(c)) | | | |

Schedule B(5)(c), page ____ of ____

A199

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO PARTNERSHIPS:                                                                SCHEDULE B(5)(d)

| | Partnership Recipient Information | | | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|---|
| 1 | Partnership Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 2 | Partnership Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 3 | Partnership Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 4 | Partnership Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| 5 | Partnership Name | | | | | |
| | Street Address | | | | | |
| | City | State | ZIP | | | |
| | Corporation Commission File Number | Date In-Kind Contribution Made | | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements." line 5(d)) | | | | | |

Schedule B(5)(d), page ___ of ___

A200

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO CORPORATIONS AND LLCs:                                                   SCHEDULE B(5)(e)

| Corporation / LLC Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| **2** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| **3** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| **4** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| **5** Corporation/LLC Name<br>Street Address<br>City / State / ZIP<br>Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 5(e)) | | | |

Schedule B(5)(e), page ___ of ___

A201

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

IN-KIND CONTRIBUTIONS TO LABOR ORGANIZATIONS:

SCHEDULE B(5)(f)

| Labor Organization Recipient Information | Amount Contributed | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| 1 Labor Organization Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 2 Labor Organization Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 3 Labor Organization Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 4 Labor Organization Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| 5 Labor Organization Name / Street Address / City / State / ZIP / Corporation Commission File Number / Date In-Kind Contribution Made | | | |
| Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 5(f)) | | | |

Schedule B(5)(f), page ___ of ___

A202

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

INDEPENDENT EXPENDITURES MADE:                                                                 SCHEDULE B(6)

| | Expenditure Recipient Information | | Expenditure Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| 1 | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year / Office Sought | | | |
| 2 | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year / Office Sought | | | |
| 3 | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year / Office Sought | | | |
| 4 | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Candidate(s) Supported (including % supported) | Candidate(s) Opposed (including % opposed) | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year / Office Sought | | | |
| | **Enter total only if last page of schedule** (transfer the total disbursed this period to "Summary of Disbursements," line 6) | | | | |

Schedule B(6), page ___ of ___

A203

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

BALLOT MEASURE EXPENDITURES MADE:                                                                                      SCHEDULE B(7)

| | Expenditure Recipient Information | | Expenditure Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | |
| **2** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | |
| **3** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | |
| **4** | Recipient Name | Mode of Advertising (TV, mail, etc) | | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Ballot Measure(s) Supported (including % supported) | Ballot Measure(s) Opposed (including % opposed) | ☐ Cash ☐ Credit | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Election Month/Year | | | |
| | **Enter total only if last page of schedule** (transfer the total disbursed this period to "Summary of Disbursements," line 7) | | | | |

Schedule B(7), page ____ of ____

A204

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

RECALL EXPENDITURES MADE:                                                                                      SCHEDULE B(8)

| | Expenditure Recipient Information | | Expenditure Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|---|
| **1** | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| **2** | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| **3** | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| **4** | Recipient Name | Mode of Advertising (TV, mail, etc) | ☐ Cash ☐ Credit | | |
| | Street Address | | | | |
| | City / State / ZIP | | | | |
| | Supporting or Opposing Issuance of Recall Order? | Candidate Sought to be Recalled | | | |
| | Date of First Publication, Display, Delivery, or Broadcast | Office Held | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 8) | | | | |

Schedule B(8), page ____ of ____

A205

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

SUPPORT PROVIDED TO PARTY NOMINEES (POLITICAL PARTIES ONLY):                                        SCHEDULE B(9)

| | Benefitted Candidate | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| 2 | Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| 3 | Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| 4 | Candidate Name / Date Benefit Provided / Street Address / City / State / ZIP / Type of Benefit Provided / Notes: | | | |
| | Enter total only if last page of schedule (transfer the total disbursed this period to "Summary of Disbursements," line 9) | | | |

Schedule B(9), page ____ of ____

A206

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

JOINT FUNDRAISING / SHARED EXPENSE PAYMENTS MADE:                                                      SCHEDULE B(10)

| | Recipient Committee Information | Payment Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Committee Name _____ Payment Date _____<br>Street Address<br>City _____ State ___ ZIP ____<br>Date of Joint Fundraising Event (if applicable) _____ Type of Shared Expense (if applicable) | ☐ Cash<br>☐ Credit | | |
| 2 | Committee Name _____ Payment Date _____<br>Street Address<br>City _____ State ___ ZIP ____<br>Date of Joint Fundraising Event (if applicable) _____ Type of Shared Expense (if applicable) | ☐ Cash<br>☐ Credit | | |
| 3 | Committee Name _____ Payment Date _____<br>Street Address<br>City _____ State ___ ZIP ____<br>Date of Joint Fundraising Event (if applicable) _____ Type of Shared Expense (if applicable) | ☐ Cash<br>☐ Credit | | |
| 4 | Committee Name _____ Payment Date _____<br>Street Address<br>City _____ State ___ ZIP ____<br>Date of Joint Fundraising Event (if applicable) _____ Type of Shared Expense (if applicable) | ☐ Cash<br>☐ Credit | | |
| 5 | Committee Name _____ Payment Date _____<br>Street Address<br>City _____ State ___ ZIP ____<br>Date of Joint Fundraising Event (if applicable) _____ Type of Shared Expense (if applicable) | ☐ Cash<br>☐ Credit | | |
| | **Enter total only if last page of schedule**<br>(transfer the total disbursed this period to "Summary of Disbursements," line 10) | | | |

Schedule B(10), page ____ of ____

A207

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

REIMBURSEMENTS MADE:                                                                      SCHEDULE B(11)

| | Recipient Information | Reimbursement Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name<br>Street Address<br>City   State   ZIP<br>Services or Goods Reimbursed   Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 2 | Name<br>Street Address<br>City   State   ZIP<br>Services or Goods Reimbursed   Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 3 | Name<br>Street Address<br>City   State   ZIP<br>Services or Goods Reimbursed   Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 4 | Name<br>Street Address<br>City   State   ZIP<br>Services or Goods Reimbursed   Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| 5 | Name<br>Street Address<br>City   State   ZIP<br>Services or Goods Reimbursed   Reimbursement Date | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 11) | | | |

Schedule B(11), page ___ of ___

A208

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

OUTSTANDING ACCOUNTS PAYABLE / DEBTS OWED BY COMMITTEE:                                    SCHEDULE B(12)

| Debt Information | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|
| **1** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **2** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **3** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **4** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| **5** Name / Street Address / City / State / ZIP / Type of Account Payable or Debt Owed / Date that Debt Accrued | | | |
| Enter total only if last page of schedule (transfer the total received this period to "Summary of Receipts," line 12) | | | |

Schedule B(12), page ___ of ___

A209

**STATE OF ARIZONA**
**COMMITTEE CAMPAIGN**
**FINANCE REPORT**

COMMITTEE ID NUMBER

TRANSFER OUT SURPLUS MONIES / TRANSFER IN DEBT:                                                                 SCHEDULE B(13)

| | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Recipient of Surplus Monies / Source of Transferred Debt | | |
| Total (transfer the total disbursed this period to "Summary of Disbursements," line 14) | | |

Schedule A(13), page ____ of ____

A210

**STATE OF ARIZONA
COMMITTEE CAMPAIGN
FINANCE REPORT**

COMMITTEE ID NUMBER

MISCELLANEOUS DISBURSEMENTS:                                                      SCHEDULE B(14)

| | Recipient Information | Amount | Cumulative Amount this Reporting Period | Cumulative Amount this Election Cycle |
|---|---|---|---|---|
| 1 | Name<br>Street Address<br>City   ZIP<br>Disbursement Type   Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 2 | Name<br>Street Address<br>City   ZIP<br>Disbursement Type   Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 3 | Name<br>Street Address<br>City   ZIP<br>Disbursement Type   Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 4 | Name<br>Street Address<br>City   ZIP<br>Disbursement Type   Disbursement Date | ☐ Cash<br>☐ Credit | | |
| 5 | Name<br>Street Address<br>City   State   ZIP<br>Disbursement Type   Disbursement Date | ☐ Cash<br>☐ Credit | | |
| | Enter total only if last page of schedule<br>(transfer the total disbursed this period to "Summary of Disbursements," line 12) | | | |

Schedule B(12), page ___ of ___

A211

## POLITICAL COMMITTEE TERMINATION STATEMENT

Date: _____



**STATE OF ARIZONA**
**COMMITTEE TERMINATION**
**STATEMENT**

COMMITTEE ID NUMBER

COMMITTEE INFORMATION:

Committee name: _____

Mailing address: _____

Email address: _____

Phone number: _____

Website: _____

Chairperson name: _____

Treasurer: _____

DECLARATION AND SIGNATURES:

I declare under penalty of perjury that the foregoing information is true and correct. I further declare that: (1) the committee will no longer receive any contributions or make any disbursements; (2) the committee either (a) has no outstanding debts or obligations, or (b) has outstanding debts or obligations that are all more than five years old, and the committee's creditors have agreed to discharge the debts and obligations and have agreed to the termination of the committee; (3) any surplus monies have been disposed of and that the committee has no cash on hand; and (4) all contributions and expenditures have been reported, including any disposal of surplus monies.

Chairperson's signature: _____   Date: _____

Treasurer's signature: _____   Date: _____

Candidate's signature (if applicable): _____   Date: _____

A213

## FAILURE TO FILE NOTICE – CAMPAIGN FINANCE REPORTS

**NOTE: Required to be sent within 5 days after the report filing deadline**

**From: Campaign Finance**
**Sent: <date of email>**
**To: <Committee's email address>**
**Cc: <User with "Administrator" privilege access and all lesser-privileged Users by request>**
**Subject: Campaign Finance Report Late – <name of Report>**

The campaign finance report <**name of Report**> has not been received by the <**name of filing officer**> for <**name of Committee and ID #**>.  This report covers all activity from <**DATE**> 12:00 AM through <**DATE**> 11:59 PM.

This report was due by <**DATE**>.  Beginning the day after your campaign finance report was due, a mandatory late filing penalty of (i) $10.00 per day during the first 15 days, and (ii) $25.00 per day thereafter must be paid to the <**name of filing officer**>.

Payment may be made by the following methods:

      -by check payment, mailed to:

            [**name of filing** officer]
            ATTN: Campaign Finance
            [**address**]

      -by cash, check or credit card payment made in-person at the above location.

---------------------------------------------------------------------------------------------------------------------------

*Disclaimer: This email is sent in accordance with A.R.S. § 16-937(A). Your action or inaction to this email does not release you from your legal obligation to report all campaign finance activity in connection with the above-referenced report, nor are you released from your obligation to file future reports.*

*Campaign Finance Automated Email - please reply to this email if you perceive a technical problem with filing the campaign finance report in question.*

## NOTICE OF INTENT TO SUSPEND POLITICAL COMMITTEE

**NOTE: Applicable to PAC or Political Party *only***

**From: \<filing official's email address\>**
**Sent: \<date of email\>**
**To: \<PAC (or Party) Committee's email address\>; \<Chairperson's email address\>;**
**\<Treasurer's email address\>**
**Subject: PAC (or Party) Temp Suspension – \<PAC (or Party) name and ID #\>**
**Importance: High**

**Re:    Notice of TEMPORARY SUSPENSION – \<name of PAC (or Party) and ID #\>**

**To:    \<Name of Chairperson\>, Chairperson, via email : \<Chairperson's email address\>**
        **\<Name of Treasurer\>, Treasurer, via email : \<Treasurer's email address\>**
        **\<Name of Committee\>, via email: \<Committee's email address\>**

Date:    \<date of email\>

Based upon a review of the \<**filing officer's**\> records, the political action committee (or political party) \<**insert name of PAC or Party**\>, ID \<**insert ID number**\>, has failed to file the following consecutive campaign finance reports:

1.  1st Quarter 2020 Report
    [covering the period January 1, 2020 thru March 31, 2020, due April 15, 2020];

2.  2nd Quarter 2020 Report
    [covering the period April 1, 2020 thru June 30, 2020, due July 15, 2020]; and

3.  2020 Pre-Primary Report
    [covering the period July 1, 2020 thru July 18, 2020, due July 27, 2020].

Beginning the day after each of the above-referenced campaign finance reports was due, a mandatory late-filing penalty of (i) $10.00 per day during the first 15 days and (ii) $25.00 per day thereafter, began to accrue and continues to accrue until the campaign finance reports in question are filed.  The late-filing penalties are required to be paid to the \<**filing officer name**\>.  To date, the late-filing penalties for the committee total $_____ and continue to accrue.

-------------------------------------------------------------------------------------------------------------------------
*This NOTICE OF SUSPENSION is sent in accordance with A.R.S. § 16-937(D) to advise you that the committee's authority to operate is temporarily suspended.  Failure to comply with all filing and payment requirements within thirty (30) days after the date of this notice shall result in permanent suspension of the committee's authority to operate.  Suspension, either temporary or permanent, does not eliminate the committee's continuing obligation to file campaign finance reports and pay outstanding and accruing penalties.*

A215

# VI.
# EARLY VOTING SAMPLE FORMS

## ACCESSIBLE VOTING DEVICE AFFIDAVIT

**Name:** _____ **Voter ID#**
_____

**Precinct/Split:** _____ **Date:**
_____

### Ballot Affidavit

A.R.S. §16-547      State of Arizona
              **County of <County Name>**

I do solemnly swear that I am the identical person whose name is signed to this affidavit and that this name and signature are my true name and signature, or if I did not personally sign, it was because of physical disability; that I have not voted and will not vote in this election in any other state during the calendar year of this affidavit and that I personally voted the accessible voting device ballot or that it was marked according to my instructions because I was unable to do so.  I understand that knowingly voting more than once in any election is a class 5 felony.  I declare that I am more than eighteen years of age, that I am a qualified elector of the state of Arizona and the County of <**County Name**> and that I reside at the address as indicated below.  If a challenge is filed against my early ballot, I understand that a copy of the challenge will be sent to me by first class mail and that I may have as little as forty-eight hours' notice of an opportunity to appear.


Signature of Elector:

_____

_____
_____
Name of Person signing affidavit if other than registrant:


Physical Address:


_____

 (House Number)      (Street)                (City/Town)                (Zip)

## 90 DAY NOTICE INFORMATION

Dear <**County Name**> County Voter:

Our records indicate that you are on the Permanent Early Voting List and we are mailing this notice to you to make you, as an eligible voter, aware of the upcoming election(s) and to provide you an opportunity to modify any of your registration information, if needed.  If your information is correct and current, you do not need to return this notification form.  Your ballot will automatically mail on the date(s) indicated on the front of the form.

However, if you do need to update any of your voter registration information, then complete and return this form no later than 45 calendar days prior to the election dates indicated on the front of this form.  If the update is not received within the above timeframe, your early ballot will already have been scheduled to be mailed automatically.

For partisan primary elections:  If you wish to participate in this specific election and are registered without a recognized political party affiliation, you will need to return this form to indicate the party ballot you wish to receive.  A ballot for this partisan election will not be sent if you do not make a political party ballot selection.

Reminder:  You will remain on the Permanent Early Voting List until your voter registration record is canceled, moved to inactive status, or until you request in writing to be removed from the Permanent Early Voting List.  A removal request must include your name, residence address, date of birth, and signature.  A voter's failure to vote and return an early ballot does not remove the voter from the Permanent Early Voting List.

## 33 DAY NOTICE FOR BALLOT-BY-MAIL JURISDICTIONAL ELECTION HELD DURING A PARTISAN ELECTION (OPTIONAL)

One of the jurisdictions you reside in is conducting an all ballot-by-mail election consolidated with a partisan (political party specific) Primary Election. Because you are registered without a political party affiliation, if you wish to receive a ballot-by-mail for this election, you will need to return this form, call  <**phone number**>, or email <**email address**> to indicate the political party ballot you want to receive or note the option to receive a "jurisdiction only" ballot. If you opt to receive a political party ballot, that ballot will also contain the jurisdiction measures or candidates that are applicable to you.  If you do not want a political party ballot and instead want the "jurisdiction only" ballot, you must indicate this choice and contact our office or return this form in order to receive that ballot. A ballot for this Primary Election will not be sent if a selection is not made.

Complete and return this form so that it is received no later than 11 calendar days prior to the Election Date indicated on the front of this form.

A219

# VII.
# POLLING PLACE SAMPLE FORMS AND DIAGRAMS

## PRECINCT ELECTION SUPPLIES INVENTORY LIST

Election Type (Circle):    PRIMARY        GENERAL        OTHER

PRECINCT: _____    POLLING PLACE: _____

POLLING PLACE CONTACT NAME: _____    PHONE: _____

| QTY | ITEM | QTY | ITEM |
|---|---|---|---|
|  | INSPECTOR |  | OFFICIAL & UNOFFICIAL |
|  | Inspector's Checklist |  | Unofficial Returns (Unused Ballot Seal & Recount seal inside bag) |
|  | Signature Roster |  | Official Returns (Official Seal Inside Bag) |
|  | Precinct Registers |  | MARSHAL |
|  | Poll Lists |  | Marshal certificate |
|  | Challenge List |  | 75' twine |
|  | Sample Ballots for each ballot style |  | Masking Tape |
|  | ARS Title 16 Book |  | PAYROLL |
|  | Provisional Ballot Envelopes |  | Payroll Voucher (if claiming mileage, must have license plate #) |
|  | Keys to ballot container |  |  |
|  | Demonstration Ballots |  | EXTRA SUPPLIES |
|  | SIGNS |  | Magnifying sheets |
|  | Arrows |  | Precinct Map |
|  | No Smoking |  | Flag & stand |
|  | Vote Here |  | Badges/Name Tags |
|  | Instructions to Voters/Right to Vote |  | Secrecy Sleeves |
|  | Disabled Vote Here |  | Ballot Container with Seal # |
|  | Handicap Parking |  | Tabulation Unit with Seal # |
|  | Senior Citizen Parking |  | Accessible Voting Unit with Seal # |
|  | Curbside Voting Available |  | Ballot Box |
|  | Write In Candidates (if any) |  | Voting Booths |
|  |  |  |  |
|  | SUPPLY BAG |  | BALLOTS |
|  | Equipment Manuals |  | Ballot style |
|  | Black Pens |  | Ballot style |
|  | Ballot Marking Pens |  | Ballot style |
|  | Red Pens |  | Ballot style |
|  | Pencils & Pencil Sharpener |  | Ballot style |
|  | "I Voted" stickers |  |  |

INSPECTOR:  Please check this list against your supplies.  Sign below stating the total amount of official ballots you have received.

I, _____, Inspector for the _____Precinct, have received a total of _ ballots on _____ _____, 20_____ for the _____Election.

_____
INSPECTOR SIGNATURE

## INSTRUCTIONS TO VOTERS AND ELECTION OFFICERS

1. The polls are open from 6:00 a.m. until 7:00 p.m.

2. Please give your full name and place of residence and identification documents to the election officer.  The election officer will determine which type of ballot you will use to cast your vote.

3. Once you have received your ballot, go to the next available voting booth to cast your vote. Mark your ballot opposite the name of each candidate for whom you want to vote.

4. If you want to vote for a person who is an official write-in candidate, write that person's name on the lines provided and mark the ballot in the appropriate place next to the name you have written.

5. Ask for assistance if you need assistance marking your ballot or wish to utilize the accessible voting equipment. If you request assistance marking your paper ballot, two election officers from opposing political parties will accompany you to the voting booth. They will:

   • tell you the names of all candidates for each office on the ballot,

   • tell you the political parties by which the candidates were nominated for each office,

   • ask the name of the candidates for whom you want to cast your vote, and

   • mark your ballot correctly.

   Neither of the election officers who assist you with your vote is allowed to influence your vote by recommending, explaining, or suggesting any candidate or political party for any office or issue.

6. If you accidentally spoil your ballot, present it to the election judge.  Make sure to conceal any votes you have made on the ballot.  Either you or the judge will need to mark the ballot as spoiled, and the judge will give you another ballot on which to cast your vote.  You are allowed to spoil no more than three ballots.

If you believe that a violation of the Help America Vote Act of 2002 has occurred, you may contact:

Secretary of State's Division of Election Services
1700 West Washington Street 7th Floor
Phoenix, AZ 85007
1-877-THE VOTE
www.azsos.gov

A222

## IDENTIFICATION AT THE POLLS – REQUIREMENTS FOR VOTERS

**Make sure to bring proper identification when voting.**

The voters of Arizona passed a law in 2004 that requires voters to show proof of identity before receiving a ballot. An elector who does not provide proper identification shall be issued a conditional provisional ballot.

**List 1 - Acceptable forms of identification with photograph, name, and address of the elector (one required)**

- Valid Arizona driver license
- Valid Arizona nonoperating identification license
- Tribal enrollment card or other form of tribal identification
- Valid United States federal, state, or local government issued identification

An identification is "valid" unless it can be determined on its face that it has expired.

**List 2 - Acceptable forms of identification without a photograph that bear the name and address of the elector (two required)**

- Utility bill of the elector that is dated within 90 days of the date of the election. A utility bill may be for electric, gas, water, solid waste, sewer, telephone, cellular phone, or cable television
- Bank or credit union statement that is dated within 90 days of the date of the election
- Valid Arizona Vehicle Registration
- Indian census card
- Property tax statement of the elector's residence
- Tribal enrollment card or other form of tribal identification
- Arizona Vehicle insurance card
- Recorder's Certificate
- Valid United States federal, state, or local government issued identification, including a voter registration card issued by the County Recorder
- Any mailing to the elector marked "Official Election Material"

Any form of identification from List 2 may be presented to a poll worker in electronic format, including on a smart phone or tablet. An identification is "valid" unless it can be determined on its face that it has expired.

**List 3 – Acceptable forms of identification, one identification with name and photo of the elector accompanied by one non-photo identification with name and address**

- Any valid photo identification from List 1 in which the address does not reasonably match the precinct register/e-pollbook, accompanied by a non-photo identification from List 2 in which the address does reasonably match the precinct register/e-pollbook
- U.S. Passport or passport card without address and one valid item from List 2
- U.S. military identification without address and one valid item from List 2

An identification is "valid" unless it can be determined on its face that it has expired.

## SAMPLE DISABLED VOTERS SIGNATURE AFFIDAVIT

_____
PRECINCT NAME OR CODE

_____
REGISTER NUMBER

_____
_____

             NAME                BALLOT CODE          VR#

_____
_____

            ADDRESS           PARTY           REG. DATE

I am the person listed above and I reside at the address listed above.

_____
SIGNATURE OF QUALIFIED ELECTOR

_____
SIGNATURE OF ELECTION OFFICIAL

A224

## SAMPLE DOOR DIAGRAM



NOTE: x = 12 in (305 mm) if door has both a closer and latch.

**(a)**
**Front Approaches — Swinging Doors**



NOTE: x = 36 in (915 mm) minimum if y = 60 in (1525 mm); x = 42 in (1065 mm) minimum if y = 54 in (1370 mm).

NOTE: y = 48 in (1220 mm) minimum if door has both a latch and closer.

**(b)**
**Hinge Side Approaches — Swinging Doors**



NOTE: y = 54 in (1370 mm) minimum if door has closer.

NOTE: y = 48 in (1220 mm) minimum if door has closer.

**(c)**
**Latch Side Approaches — Swinging Doors**

NOTE: All doors in alcoves shall comply with the clearances for front approaches.

**Fig. 25**
**Maneuvering Clearances at Doors**

# POLLING PLACE SET UP SAMPLE DIAGRAM

## Using the Polling Place

### F. Voting Area

**Typical Issues**

The accessible voting area must be on an accessible route and have an accessible entrance and adequate circulation and maneuvering space for voters who use wheelchairs or scooters or who walk with mobility aids.

An accessible route must connect the accessible building entrance to the accessible voting area, which includes voter check-in and the location of the accessible voting machines. The survey should also identify any protruding objects (wall-mounted or overhead) along the circulation route to voter check-in and the voting area.

**Notes:**

❶ Accessible route connects the building entrance with the voting area, including voter check-in and accessible voting machine.

❷ Accessible door or doorway to voting area

❸ Turning space at accessible voting machine

❹ Blinds closed on windows behind check-in so voters who read lips can communicate with the voting staff.

# OFFICIAL CHALLENGE LIST

_State of Arizona_
**Official Challenge List**

Of the _____ election held on _____

in _____ precinct/district.

State of Arizona )
County of _____ )

We, the undersigned board of election, do hereby certify that the following list of challenges is correct.

_____     _____     _____
Inspector          Judge              Judge
                   Board of Election

| Voter / Register Number | Name of Elector | Grounds for Challenge* | Challenge Denied, Elector **Allowed** to Vote (mark with a check) | Challenge Upheld, Elector Given **Provisional** Ballot (mark with a check) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

* A voter may not be challenged on the basis that the voter registered using the Federal Form and did not provide evidence of citizenship.

STATE OF ARIZONA )
COUNTY OF _____ )

I am a citizen of the United States, a resident of the State of Arizona and the above named county and precinct/district and I am eighteen years of age or over.  I have not been convicted of treason or a felony (or if so, my civil rights have been restored). I certify under penalty of perjury under the laws of the State of Arizona, that the information on my registration is true and correct.

ESTADO DE ARIZONA )
CONDADO DE _____ )

Soy ciudadano de los Estados Unidos, un residente del Estado de Arizona y del condado y precinto/distrito antes citado y que yo tengo diéz y ocho años o más de edad.  No se me ha declarado culpable de traición o de un crimen mayor (o se es asi, se me han restaurado mis derechos civiles). Yo certifico bajo pena de perjurio, bajo las leyes de Estado de Arizona, que la información en mi registración es verdadera y correcta.

_____
Signature of Elector

A227

## SAMPLE OFFICAL BALLOT REPORT

(PLACE HOLDER FOR COUNTY SEAL) **Official Ballot Report**

_Type Of Election: (Circle One)_

General     Primary     Special

Precinct:_____

Ballot Transfer Container Seal #:_____

Date Of Election:_____

| Start of The Day | Total |
|---|---|
| 1.) How many ballots did you receive from the Elections Department? | |
| 2.) How many additional blank ballots did you receive? | |
| 3.) Total number of ballots (add lines 1 and 2): | |

| Damaged / Unused Ballots | Total |
|---|---|
| 4.) Total number of spoiled ballots: | |
| 5.) Total number of unused ballots: | |
| 6.) Total number of damaged/unused ballots (add lines 4 and 5): | |

| Voted Optical/Digital Scan Ballots | Total |
|---|---|
| 7.) Total number of write-in ballots: | |
| 8.) Total number of regular ballots cast: | |
| 9.) Total number of voted Optical/Digital Scan Ballots (add lines 7 and 8): | |
| 10.) Total Ballots Cast from Optical/Digital Scan Tape (this should match line 9): | |

| Provisional Ballots | Total |
|---|---|
| 11.) Total number of Provisional Ballots Cast: | |

| Accessible Voting Device Ballots (if applicable) | Total |
|---|---|
| 12.) Number of Ballots Cast On Accessible Voting Device/From Accessible Voting Device Results Tape (if applicable): | |

| Clean Up / Check and Balance | Total |
|---|---|
| 13.) Total number of used ballots (add lines 10 and 11): | |
| 14.) Subtract line 6 from line 3 (this should match with line 13): | |
| 15.) Total number of ballots cast (add lines 10, 11, and 12 if applicable): | |
| 16.) Total number of names entered in the poll list (this should match line 15): | |

| Early Ballots | Total |
|---|---|
| 17.) Total number of dropped off early ballots received during the day: | |

**Certificate of Performance**

We hereby certify that all voters whose signatures appear upon the precinct signature roster voted in this election, excepting those who, after signing the signature roster, failed to vote or were challenged and denied the right to vote as indicated on the challenge list, and that the number of voters who voted in this election in this precinct is as indicated in the sections above. We further certify that the total number of official ballots received, voted, or spoiled is as indicated above and this accounting is true and correct in every way. We further certify that the challenge list shows a complete list of all persons challenged, together with the action taken on each challenge.

| _____ | _____ | _____ |
|---|---|---|
| Inspector | Judge | Judge |

| _____ | _____ | _____ |
|---|---|---|
| Marshal | Clerk | Clerk |

A228

# VIII.
# CENTRAL COUNTING PLACE BOARDS SAMPLE FORMS

# RECEIVING BOARD LOG

Board No. _____

| PRECINCT NUMBER | PRECINCT NAME | BOARD MEMBERS INITIALS | SEAL NUMBER | TIME RECEIVED | SIGNATURE OF PERSON BRINGING IN RETURNS | CONDITION OF CONTAINER |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

SAMPLE

A230

# INSPECTION BOARD RECEIPT LOG

Board No. _____

| Provisional Ballots | Precinct | Time | Seal Number | TO DUPLICATION BOARD | | TO WRITE-IN BOARD Write-in/ Ballots | Rejected | Board Members Initials |
|---|---|---|---|---|---|---|---|---|
| | | | | Damaged Ballots | Overvote Ballots | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

SAMPLE

A231

## WRITE-IN BOARD LOG

Board No._____

| PRECINCT | TIME | NUMBER OF BALLOTS | BOARD MEMBERS INITIALS |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

SAMPLE

# WRITE-IN TALLY SHEET

(CHECK ONE):    PRIMARY ELECTION     GENERAL ELECTION     SPECIAL ELECTION

PRECINCT NAME: _____

PRECINCT NUMBER: _____

INSPECTOR NAME: _____
JUDGE NAME: _____
JUDGE NAME: _____

DEM – DEMOCRAT
REP – REPUBLICAN
OTHER -

Regular Ballots     Early Ballots

## HOW TO USE THIS TALLY SHEET

(The number of votes must be written out at full length)

MICKEY MOUSE   had

TWENTY-EIGHT   votes

for PRESIDENT

(Number of votes cast for each candidate)

| | | | | | | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 02 | 03 | 04 | 05 | 06 | 07 | 08 | 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 28 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | |
| 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 | |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 | 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 | 97 | 98 | 99 | 100 | |

(The number of votes must be written out at full length)

had

votes

for

(Number of votes cast for each candidate)

| | | | | | | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 02 | 03 | 04 | 05 | 06 | 07 | 08 | 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | |
| 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 | |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 | 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 | 97 | 98 | 99 | 100 | |

(The number of votes must be written out at full length)

had

votes

for

(Number of votes cast for each candidate)

| | | | | | | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 02 | 03 | 04 | 05 | 06 | 07 | 08 | 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | |
| 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 | |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 | 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 | 97 | 98 | 99 | 100 | |

SAMPLE

A233

## MASTER AUDIT FORM FORMAT

### COLUMN HEADINGS IN SEQUENTIAL ORDER

1. Payroll voucher

2. Precinct ballot report

3. Total ballots

4. Ballots issued to precinct

5. Spoiled ballots

6. Unused ballots

7. Regular ballots counted

8. Early ballots (see details below)

9. Provisional ballots (see details below)

10. Manual total ballots counted from Precinct ballot report

11. Machine count of all ballots cast

**8. <u>Early Ballots</u>**

     A. Total ballots issued to County Recorder for early voting
     B. Ballots distributed for early voting
     C. Spoiled ballots
     D. Unused ballots returned to Board of Supervisors
     E. Ballots turned over to early board from County Recorder
     F. Ballots rejected by early board as incomplete or insufficient
     G. Early ballots to be counted (cast)
     H. Early ballots tabulated

**9. <u>Provisional Ballots</u> (also see Provisional Ballot Report)**

     A. Provisional ballots to be counted (cast) (should equal Column 4 on Provisional Ballot Report)
     B. Provisional ballots rejected (should equal Column 12 on Provisional Ballot Report)
     C. Provisional ballots counted (should equal Column 7 on Provisional Ballot Report)

# MASTER AUDIT FORM

| PRECINCT | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | PAYROLL VOUCHER | | | | | | | |
| 2 | PRECINCT BALLOT REPORT | | | | | | | |
| 3 | TOTAL BALLOTS | | | | | | | |
| 4 | BALLOTS ISSUED TO PRECINCT | | | | | | | |
| 5 | SPOILED BALLOTS | | | | | | | |
| 6 | UNUSED BALLOTS | | | | | | | |
| 7 | REGULAR BALLOTS COUNTED | | | | | | | |
| 8A | EARLY BALLOTS — Total ballots issued to County Recorder | | | | | | | |
| 8B | Ballots distributed for early voting | | | | | | | |
| 8C | Spoiled Ballots | | | | | | | |
| 8D | Unused ballots returned to Board of Supervisors | | | | | | | |
| 8E | Ballots turned over to early board from County Recorder | | | | | | | |
| 8F | Ballots rejected by early board as incomplete or insufficient | | | | | | | |
| 8G | Early ballots to be counted (cast) | | | | | | | |
| 8H | Total early ballots counted | | | | | | | |
| 9A | PROVISIONAL BALLOTS — Provisional Ballots to be counted (cast) | | | | | | | |
| 9B | Provisional ballots rejected | | | | | | | |
| 9C | Provisional ballots counted | | | | | | | |
| 10 | MANUAL TOTAL BALLOTS CAST FROM PRECINCT BALLOT REPORT | | | | | | | |
| 11 | MACHINE COUNT OF ALL BALLOTS CAST | | | | | | | |

SAMPLE

A235

# DUPLICATION BOARD LOG

Board No._____

| Precinct | Time | OVERVOTE | | DAMAGED | | | | Board Members Initials |
|---|---|---|---|---|---|---|---|---|
| | | Total Received | Reproduced | Total Received | Did Not Require Reproduction | Reproduced | Rejected | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

SAMPLE

A236

# IX.
# HAND COUNT AND EARLY BALLOT AUDIT FORMS

## MASTER PRECINCT AND RACE SELECTION WORKSHEET

Election: _____

### SECTION A. SELECTED PRECINCTS (LIST IN ORDER SELECTED)

### SECTION B. NUMBER OF RACES TO COUNT PER CATEGORY

| RACE CATEGORY | TICK MARK TALLY | NUMBER OF RACES PER CATEGORY | RECEIVED PRECINCT HAND COUNT MARGIN WORKSHEET |
|---|---|---|---|
| 1. Presidential Elector | | | |
| 2. Statewide Candidate | | | |
| 3. Statewide Ballot Measure | | | |
| 4. Federal Candidate | | | |
| 5. State Legislative | | | |
| Additional Races Needed | | | |

### SECTION C. RACES TO BE COUNTED IN EACH SELECTED PRECINCT

| Race To Be Counted | Category of Race |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

A238

## MASTER LIST OF ALL CONTESTED RACES

Election: _____

Category:_____        Category:_____

Race:_____        Race:_____


Category:_____        Category:_____

Race:_____        Race:_____


Category:_____        Category:_____

Race:_____        Race:_____


Category:_____        Category:_____

Race:_____        Race:_____


Category:_____        Category:_____

Race:_____        Race:_____


Category:_____        Category:_____

Race:_____        Race:_____


Category:_____        Category:_____

Race:_____        Race:_____

A239

## HAND COUNT BOARD WORKSHEET

**Hand Count Board Number:** _____

**Election:** _____

**Inspector:** _____

**Judge:** _____

**Judge:** _____

**Precinct/Polling Location:** _____

**Race to Be Counted**

| | |
|---|---|
| **Race 1** | |
| **Race 2** | |
| **Race 3** | |
| **Race 4** | |
| **Race 5 (if applicable)** | |

A240

## SAMPLE HAND COUNT TALLY SHEET



COUNTY LOGO HERE

# HAND COUNT TALLY SHEET

Board#

Ballot Bag Seal#

Precinct Number & Name  OR  EV Batch Number

Inspector's Name **(Print)** ➤ Inspector's Signature

Judge's Name **(Print)** ➤ Judge's Signature

**(Check One)**
- [ ] **Primary Election** Party:
- [ ] **General Election**
- [ ] **Presidential Preference Election**

**(Check One)**
- [ ] **Polling Place Ballots** (Write-In's + Regular)
- [ ] **Early Voting Ballots**

Page _____ of _____

**SAMPLE ON HOW TO COMPLETE THIS TALLY SHEET**

*Candidate Name* or *Proposition #* had

*Forty-Five* ☑ votes

*(Number of votes must be written out at full length)*

for *Office Sought* or *ISSUE* (E.G. YES/NO)

**JUDGE'S HAND COUNT TOTALS**
WRITE-IN BALLOTS + REGULAR BALLOTS = TOTAL
3 | 42 | **45**

**INSPECTOR'S VALIDATION** — RV

**AUDITOR'S VALIDATION**

**TOTAL BALLOTS RECEIVED**
WRITE-IN + REGULAR = TOTAL

**Write-In Ballots** are provided in separate **"Write-In Envelopes"**. Hand-count Write-In Ballots separately and upon completion of an audit, ALL Write-in Ballots must be returned to their appropriate "Write-In Envelope".

(Five repeated blank entry blocks with: "_____ had _____ votes (Number of votes must be written out at full length) for _____", JUDGE'S HAND COUNT TOTALS (WRITE-IN BALLOTS + REGULAR BALLOTS = TOTAL), INSPECTOR'S VALIDATION, AUDITOR'S VALIDATION)

A241

## SAMPLE HAND COUNT TALLY SHEET – ACCESSIBLE VOTING SYSTEM

### ACCESSIBLE VOTING DEVICE HAND COUNT TALLY SHEET

Insert County Logo

Election Date: _____  ☐ Primary Election   ☐ General Election   ☐ Presidential Pref. Election

(Check One): ☐ Polling Place   ☐ Early Voting

Precinct or Batch: #_____ - _____
(PRINT Precinct Number and Name or EV Batch Number)

Inspector: _____   Board # _____

Judge: _____   Seal # _____

Judge: _____

---

### HOW TO USE THIS TALLY SHEET

| (The number of votes must be written out at full length) | (Number of votes cast for a candidate or issue) | Judges' Total | Auditor's Validation |
|---|---|---|---|
| CANDIDATE NAME or PROPOSITION #   had<br>ONE   vote(s)<br>for OFFICE SOUGHT or ISSUE (E.G. YES/NO) | 01 02 03 04 05 06 07 08 09 10 11 12 13 14 15 16 17 18 19 20<br>21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40<br>41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60<br>61 62 63 64 65 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 | 1 | Auditor will Initial Here to indicate the Tape / Results MATCH |

| (The number of votes must be written out at full length) | (Number of votes cast for a candidate or issue) | Judges' Total | Auditor's Validation |
|---|---|---|---|
| _____ had<br>_____ vote(s)<br>for _____ | 01 02 03 04 05 06 07 08 09 10 11 12 13 14 15 16 17 18 19 20<br>21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40<br>41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60<br>61 62 63 64 65 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 | | Auditor will Initial Here to indicate the Tape / Results MATCH |
| _____ had<br>_____ vote(s)<br>for _____ | 01 02 03 04 05 06 07 08 09 10 11 12 13 14 15 16 17 18 19 20<br>21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40<br>41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60<br>61 62 63 64 65 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 | | Auditor will Initial Here to indicate the Tape / Results MATCH |
| _____ had<br>_____ vote(s)<br>for _____ | 01 02 03 04 05 06 07 08 09 10 11 12 13 14 15 16 17 18 19 20<br>21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40<br>41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60<br>61 62 63 64 65 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 | | Auditor will Initial Here to indicate the Tape / Results MATCH |
| _____ had<br>_____ vote(s)<br>for _____ | 01 02 03 04 05 06 07 08 09 10 11 12 13 14 15 16 17 18 19 20<br>21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40<br>41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60<br>61 62 63 64 65 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 | | Auditor will Initial Here to indicate the Tape / Results MATCH |
| _____ had<br>_____ vote(s)<br>for _____ | 01 02 03 04 05 06 07 08 09 10 11 12 13 14 15 16 17 18 19 20<br>21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40<br>41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60<br>61 62 63 64 65 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 | | Auditor will Initial Here to indicate the Tape / Results MATCH |

Page _____ of _____

## SAMPLE PRECINCT HAND COUNT REPORT

PRECINCT HAND COUNT REPORT

Precinct Counted:_____        Election:_____

Race Category: _____        Race: _____

**Optical Scan**

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

**Touch Screen**

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

| Sum of Optical Scan AND Touch Screens Totals: | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|

Comments for why a discrepancy occurred: _____
_____

Race Category: _____        Race: _____

**Optical Scan**

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

**Touch Screen**

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

| Sum of Optical Scan AND Touch Screens Totals: | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|

Comments for why a discrepancy occurred: _____
_____

Race Category: _____        Race: _____

**Optical Scan**

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

**Touch Screen**

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

| | | | |
|---|---|---|---|
| Totals: | | | |

| Sum of Optical Scan AND Touch Screens | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| Totals: | | | |

Comments for why a discrepancy occurred: _____
_____

Race Category: _____     Race: _____

| Optical Scan | | | |
|---|---|---|---|
| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
| | | | |
| | | | |
| | | | |
| Totals: | | | |

| Touch Screen | | | |
|---|---|---|---|
| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
| | | | |
| | | | |
| | | | |
| Totals: | | | |

| Sum of Optical Scan AND Touch Screens | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| Totals: | | | |

Comments for why a discrepancy occurred: _____
_____

Race Category: _____     Race: _____

| Optical Scan | | | |
|---|---|---|---|
| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
| | | | |
| | | | |
| | | | |
| Totals: | | | |

| Touch Screen | | | |
|---|---|---|---|
| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
| | | | |
| | | | |
| | | | |
| Totals: | | | |

| Sum of Optical Scan AND Touch Screens | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| Totals: | | | |

Comments for why a discrepancy occurred: _____
_____

**\* Carry Totals to Aggregate Precinct Hand Count Report \***

Page # _____

A244

## SAMPLE EARLY BALLOT AUDIT – HAND COUNT REPORT

| EARLY BALLOT AUDIT - HAND COUNT REPORT |
|---|

Batch Counted:_____    # of Ballots per Batch:_____    Election:_____

Race Category: _____          Race: _____

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

Comments for why a discrepancy occurred: _____
_____

Race Category: _____          Race: _____

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

Comments for why a discrepancy occurred: _____
_____

Race Category: _____          Race: _____

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

Comments for why a discrepancy occurred: _____
_____

Race Category: _____          Race: _____

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

Comments for why a discrepancy occurred: _____
_____

Race Category: _____          Race: _____

| Candidate Name | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

Comments for why a discrepancy occurred: _____
_____

**\* Carry totals to the Aggregate Early Ballot Audit \***

A245

# SAMPLE AGGREGATE PRECINCT HAND COUNT REPORT

| AGGREGATE - PRECINCT HAND COUNT REPORT - TOTAL FROM ALL PRECINCTS |
|---|

Election:_____

Race Category: _____     Race: _____

| Precinct | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| | | | |
| | | | |
| Totals: | | | |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Precinct | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| | | | |
| | | | |
| Totals: | | | |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Precinct | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| | | | |
| | | | |
| Totals: | | | |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Precinct | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| | | | |
| | | | |
| Totals: | | | |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Precinct | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
| | | | |
| | | | |
| Totals: | | | |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Additional Comments: _____
_____

Page # _____

A246

## SAMPLE AGGREGATE EARLY BALLOT AUDIT – HAND COUNT REPORT TOTAL FROM ALL BATCHES

| AGGREGATE - EARLY BALLOT AUDIT - HAND COUNT REPORT - TOTAL FROM ALL BATCHES |
|---|

Election:_____

Race Category: _____     Race: _____

| Batch | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Batch | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Batch | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Batch | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Race Category: _____     Race: _____

| Batch | Hand Count Total | Machine Count Total | Absolute Difference |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Totals: |  |  |  |

| | Aggregated Margin |
|---|---|
| Margin = Absolute Difference ÷ Machine Count X 100 | _____ % |

Additional Comments: _____
_____     Page # _____

A247

## SAMPLE HAND COUNT/EARLY BALLOT AUDIT REPORT

_____ COUNTY
### Hand Count / Early Ballot Audit Report

**Synopsis:**
Pursuant to A.R.S. §16-602 (B), _____ County conducted the hand count/early ballot audit for the August 24, 2010 Primary Election. 2% of precincts were counted as required by statute, which amounted to _____ precincts out of _____ total precincts.

The hand count began on (Date) at (Time) when the _____ County Chairmen of the Republican and Democratic Parties met to select the races, precincts, and early ballot audit batches to be counted. All ballots were accounted for in the central counting location before the selection process started. The selection order was chosen by lot, and the _____ Party was chosen to go first.

With the order established, the specific precincts to be counted were selected with the County Party Chairmen alternating the selection. Once the precincts were chosen, the races to be counted were selected.

Four contested races were chosen as required by law. Since this election did not contain a Statewide Ballot Measure, 2 Statewide races, 1 Federal race, and 1 Legislative race were counted. Specifically, the following list display's the contested races that were counted:

Statewide Race - *Governor (Republican)*- (# of possible precincts to count)
Statewide Race - *Corporation Commission (Democrat)*- (# of possible precincts to count)
Federal Race - *Republican Congressional District* ___ - (# of possible precincts to count)
Legislative Race - *Democratic Legislative District* ___ - (# of possible precincts to count)

The master precinct and race selection lists are attached for review. The physical hand count started at (Time) on (Date) and was concluded at (Time) on (Date). The tabulation method used was the stacking method. The hand count was conducted by _____ boards made up 3 members, of which not more than 2 members were from the same political party. This hand count included votes cast on both the optical scan and touch screen devices from the selected precincts.

**Early Ballot Audit:**
1% of early ballots were audited as per Arizona State Law. The early ballot audit consisted of _____ batches, each containing _____ early ballots. There was a total of _____ early ballots cast in _____ County for the 2010 Primary Election.

**Comments:**
Where a discrepancy occurred, the reason for the discrepancy is notated and described in each report. Please find the following precinct and early ballot reports for your review. (Any additional comments that you feel might be necessary should be included here.)


_____
_____ County Election Official

A248

# X.
# ADDITIONAL REPORTING FORMS

# EQUIPMENT, SOFTWARE, FIRMWARE, AND HASH CODE CERTIFICATION STATEMENT

I, <COUNTY OFFICER IN CHARGE OF ELECTIONS NAME> certify by affixing my signature to this document that all election equipment and firmware, as well as all election management system software to be used in the <ELECTION TYPE> Election to be held on <ELECTION DATE> IN <COUNTY NAME> County has been certified for use by the Arizona Secretary of State and that I have compared the hash code on file with the National Institute of Science and Technology (NIST) or the Arizona Secretary of State's Office (if on file with NIST or the Arizona Secretary of State's Office) to the hash code of the election management system software to be used in this election and certify that the numbers are identical.  The following is a list of the equipment, firmware, and election management system software to be used in the aforementioned election:

## VOTING UNITS

| Manufacturer | Model | Firmware Version |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## CENTRAL COUNT UNITS

| Manufacturer | Model | Firmware Version |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## ELECTION MANAGEMENT SOFTWARE

| Manufacturer | Product Name | Version |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

_____          _____
Officer in Charge of Elections Signature          Date

A250

**COVER SHEET FOR ADDITIONAL REPORTS**

<COUNTY NAME>
<COUNTY ADDRESS>
<COUNTY CITY, STATE, ZIP>

<COUNTY PHONE>
<COUNTY FAX>

SAMPLE

Additional Required Reports

**Prepared by:**

| | |
|---|---|
| Name | |
| Address | |
| Telephone | |
| Fax | |
| Email | |

I, the undersigned, affirm that the information I have provided for the Provisional Ballot, Accessibility, Voter Education, and Poll Worker Training Reports are true to the best of my knowledge.

Signature: _____

Date: _____

A251

## ACCESSIBILITY REPORT

| Polling Place | Precinct | Accessible Yes/No | # of Registered Voters | Data From On-Site Inspections of Polling Place | Description of Measures Taken to Bring Inaccessible Polling Place Into Compliance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

A252

## POLL WORKER TRAINING REPORT

| Precinct | # of Inspectors | # of Marshals | # of Judges | # of Clerks | # of Others (Translators – Trouble-shooters) | Total # Trained | # of those trained who are "Premium" Board Workers | # of those trained who worked Election Day | Total # of poll workers who worked Election Day | # of Provisional Ballots Counted | # of Signature Rosters used at the polls |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| TOTALS | | | | | | | | | | | |

SAMPLE

A253

# VOTER EDUCATION REPORT

| Voter Education Information | 2016 | 2020 |
|---|---|---|
| Percentage of Voter Turnout | | |
| Number of Early Ballots Requested | | |
| Number of Early Ballots Voted | | |
| Number of Early Ballots Verified and Tabulated | | |
| Number of Provisional Ballots Voted | | |
| Number of Public Service Announcements About the Election | | |
| Number of Voter Education and Outreach Events | | |
| Number of Locations Where Voting Information Was on Public Display | | |
| Length of Time Voting Information Was on Public Display | | |

| Description of voter education and voter outreach initiatives | Estimated Costs | Participation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A254

# PROVISIONAL BALLOT REPORT

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9A | 9B | 9C | 9D | 9E | 9F | 9G | 9H | 9I | 9J | 9K | 9L | 9M | 9N | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| PRECINCT | Regular Provisional Ballots Received | Conditional Provisional Ballots Received | TOTAL Provisional Ballots Received | Regular Provisional Ballots Tabulated | Conditional Provisional Ballots Tabulated | TOTAL Provisional Ballots Tabulated | SUBTOTAL of Ballots NOT Tabulated | Administrative Error | Already Voted | Elector Challenged | Incomplete Ballot Form | Not Eligible | Missing Ballot | No ID Provided | No Signature | Non-Matching Signature | Not Registered | Wrong Jurisdiction | Wrong Party | Wrong Precinct | Other (please specify) | Regular Provisional Ballots Rejected | Conditional Provisional Ballots Rejected | TOTAL Provisional Ballots Rejected | # of Provisional Voters Notified of Ballot Status |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | |

*Columns 9A–9N: Reasons for Rejection*

SAMPLE

**PRIMARY ELECTION OFFICIAL CANVASS OF RESULTS**

| PRIMARY ELECTION OFFICIAL CANVASS OF RESULTS | | | |
|---|---|---|---|
| PARTY | Number of Ballots Requested by Party Members | Total Number of Ballots Requested | Number of Partisan Ballots Requested by OTH Voters |
| DEM | | | |
| GRN | | | |
| LBT | | | |
| REP | | | |
| Total Number of Partisan Ballots Requested by OTH Voters Across All Parties | | | |