KRISTIN K. MAYES
Attorney General
Firm State Bar No. 14000

Kara Karlson, No. 029407
Karen J. Hartman-Tellez, No. 021121
Senior Litigation Counsel
Kyle Cummings, No. 032228
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ 85004-1592
Telephone (602) 542-8323
Facsimile (602) 542-4385
Kara.Karlson@azag.gov
Karen.Hartman@azag.gov
Kyle.Cummings@azag.gov
adminlaw@azag.gov
*Attorneys for Defendant Arizona
Secretary of State Adrian Fontes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| American Encore, an Arizona non-profit corporation; Karen Glennon, an Arizona individual; American First Policy Institute, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State; Kris Mayes, in her official capacity as Arizona Attorney General; Katie Hobbs, in her official capacity as Governor of Arizona,<br><br>Defendant. | No. CV-24-01673-PHX-MTL<br><br>**ARIZONA SECRETARY OF STATE'S MOTION TO DISMISS** |

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), defendant Arizona Secretary of State Adrian Fontes (the "Secretary") moves to dismiss Plaintiffs' Complaint. (Doc. 1). This Motion is supported by the following Memorandum of Points and Authorities, which focuses on Count One of the Complaint. With respect to Count Two, the Secretary joins the Motion to Dismiss and Response to Motion for Preliminary Injunction filed by Attorney General Kristin K. Mayes. (Doc. 31, 32).

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs American Encore, America First Policy Institute, and Karen Glennon, an Arizona voter who resides in Apache County (collectively, "Plaintiffs"), set forth in their Complaint a parade of horribles that could only occur if a lengthy chain of contingencies—including illegal acts perpetrated by third parties not before this Court—all happen before statutory deadline for the Secretary to conduct the statewide canvass, and no court order or new legislation otherwise addresses the situation. As election officials are prone to do, the Secretary has planned for this extremely remote possibility by including in the Arizona Elections Procedures Manual (the "EPM") a provision that reflects current Arizona law, which gives no leeway in the canvass deadline, but notes that the Legislature and the courts have the power to provide otherwise if this remote possibility ever materializes. (*See* Doc. 16-1, at 4; Doc. 16-2, at 252) (the "Canvass Provision").[1]

Lest the Court be concerned that the Secretary would callously move forward with his canvassing duties without using all of the tools at his disposal to include every legally-cast vote in the state's vote totals, it need not be. The Secretary has committed to using all legal means at his disposal to avoid the dilemma of canvassing without one

---

[1] The Secretary has published the 2023 EPM on his website, in a searchable format: https://apps.azsos.gov/election/files/epm/2023/20231230_EPM_Final_Edits_406_PM.pdf.

county's results or not timely canvassing at all, thereby risking the effectiveness of the entire state's votes. (Doc. 26-3, at 2). And there is precedent for this commitment. As the Court noted during the July 19, 2024 status conference, the appropriate remedy for a recalcitrant county's failure to carry out its statutory duties is a mandamus action in state court, not a federal court's entanglement in state election law and procedures long before there is any dispute to resolve.

At this point, however, the dispute about the Secretary's future actions with respect to his duty to conduct the statewide canvass is purely theoretical. The harm that Plaintiffs fear is so remote that they do not have standing to invoke this federal court's jurisdiction, and Plaintiffs' Complaint must be dismissed on standing and ripeness grounds. Even if the Plaintiffs could get past their failure to meet the "irreducible constitutional minimum" of standing, the *Anderson-Burdick* balance weighs in favor of the state's interests here, and Plaintiffs' Complaint fails to state a claim on which relief can be granted.

## LEGAL AND FACTUAL BACKGROUND

### I. Arizona's Election Deadlines.

Election administration is largely a matter of state law, subject to modification by Congress pursuant to its Elections Clause power to "make or alter" state laws regarding the "times, places and manner of holding" federal elections. U.S. Const. Art. I, § 4, cl.1. In Arizona, the interplay between state and federal law has led to some very tight deadlines with very little room to accomplish required tasks within the time provided by law.[2] In particular, the Uniformed and Overseas Citizens' Voting Act ("UOCAVA")

---

[2] *See* Ariz. Sec. of State Election Calendar 2023-2024, available at: https://apps.azsos.gov/election/2024/2024_Election_Calendar.pdf. Pursuant to Fed. R. Evid. 201(b), the Court may take judicial notice of this and the other government-published documents cited herein that are hosted on a government website in considering this Motion to Dismiss. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (assessing Rule 12(b)(6) motion, courts may "consider . . . matters of which a court may take judicial notice"); *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)

requires that ballots be sent to UOCAVA voters no fewer than 45 days before an election. 52 U.S.C. § 20302(a)(8). As such, after a primary election, ballots for the general election must be finalized and printed before the UOCAVA deadline, which falls in mid-September. In addition, in 2024, the Electoral Count Act, as modified by the Electoral Count Reform Act, requires that the governor issue certificates of ascertainment of appointment of Presidential electors by December 11, 2024—36 days after the November 5, 2024 general election. 3 U.S.C. § 5(a)(1).

Impacting the state's ability to meet these federal deadlines are two post-election actions governed by state law: "automatic" recounts and election contests. In 2022, the Arizona Legislature amended A.R.S. § 16-661 to raise the vote difference requiring a recount from 200 votes for state and federal offices or 50 votes for legislative seats to one-half of one percent of the votes cast for the top two candidates.[3] 2022 Ariz. Sess. Laws ch. 230, § 1 (55th Leg. 2d Reg. Sess.). In the first election in which the amended recount law was in effect, two statewide races and one legislative race were subject to a recount, none of which would have been subject to recount before the law's amendment.[4] In addition, Arizona law permits any elector to file an action contesting an election on certain statutory bases. *See* A.R.S. § 16-672(A). Election contests are considered and decided on an expedited basis, but from filing to resolution by the superior court, may still take up to 20 days. *See* A.R.S. § 16-676(A)-(B). In 2022, the

---

(explaining courts "need not accept as true . . . allegations that contradict facts that may be judicially noticed by the court").

[3] Under the pre-2022 recount statute, a recount was required when the margin was the lesser of the numbers above or one-tenth of one percent. As such, unless the top two candidates in a state race received fewer than 200,000 votes combined or 50,000 combined in a legislative race, the numbers above would control. *See* 2022 Ariz. Sess. Laws ch. 230, § 1 (55th Leg. 2d Reg. Sess.)

[4] *See In the Matter of the November 8, 2022 General Election for Atty. Gen'l, Superintendent of Pub. Instr. and State Rep. for Dist.13,* No. CV2022-015915, Petition for Automatic Recount, ¶¶ 4, 6, 8 (Ariz. Super. Ct. Maricopa Cnty., Dec. 5, 2022), available at: https://www.clerkofcourt.maricopa.gov/home/showpubliseddocument/4099/638058525370970000.

3

losing candidates for Governor, Attorney General, and Secretary of State each filed contests. The last superior court decision confirming the results of the election in those cases was entered on December 24, 2022.[5] Recounts and contests of federal, statewide, and legislative offices cannot be commenced until the election is canvassed by the counties (for recounts) and the Secretary (for contests). *See* A.R.S. §§ 16-661(A) (requiring recount based on the margin shown in the canvass); -672(A) (providing for contest of "the election of any person *declared elected* to a state office, or *declared nominated* to a state office at a primary election) (emphasis added).

In view of the strong likelihood of post-election recounts and contests, in early 2024 the Legislature enacted House Bill 2785, which included an emergency clause and became effective immediately upon the Governor's signature on February 9, 2024. 2024 Ariz. Sess. Laws, ch. 1 (56th Leg. 2d Reg. Sess). With respect to election deadlines, H.B 2785 made three important changes. It moved the 2024 Primary Election from August 6 to July 30, it changed the deadlines for both county boards of supervisors and the Secretary to canvass elections, and it removed statutory provisions permitting delay of a county or the state canvass. *See id.* §§ 13-16 (amending A.R.S. §§ 16-642, -645, -646. -648); § 20 (changing the primary date). In particular, provisions in A.R.S. § 16-642(C) allowing up to six postponements of a canvass no longer apply to boards of supervisors. And former A.R.S. § 16-648(C), which allowed for postponement of the state canvass "[i]f the official canvass of any county has not been received . . . until all canvasses from all counties are received," was deleted from the law. 2024 Ariz. Sess. Laws, ch. 1, § 16. In short, as amended by H.B. 2785, Arizona statutes do not permit a county board of supervisors or the Secretary to delay their canvassing duties beyond the day set in A.R.S. § 16-642(A). *See Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1303 (9th Cir.

---

[5] *See Lake v. Hobbs*, No. CV2022-095403, Under Advisement Ruling, at 10 (Ariz. Super. Ct. Maricopa Cnty., Dec. 24, 2022), available at: https://www.clerkofcourt.maricopa.gov/home/showpubliseddocument/4531/638074764564170000.

1997), *amended* 136 F.3d 1208 (9th Cir. 1998) (stating that the Legislature's removal of language from as statute "is a telling clue as to the Legislature's intent.")

## II. The Elections Procedures Manual.

While state law governs elections, counties are largely responsible for the conduct and administration of elections. Consequently, the Arizona Legislature has directed that "after consultation with each county board of supervisors or other officer in charge of elections, the secretary of state shall prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots." A.R.S. § 16-452(A). After obtaining approval of the Governor and Attorney General, the Secretary issued the 2023 EPM on December 30, 2023. *See* A.R.S. § 16-452(B).

Chapter 13 of the 2023 EPM governs certifying election results, including the content and timing of the canvass of elections by the governing body that conducted an election. (*See generally* Doc. 16-2 (EPM, at 247-54)). It also provides rules for the Secretary's canvass of election results for federal, statewide, appellate court, and legislative offices, as well as statewide ballot measures. *See id.* at 252. Plaintiffs challenge a single sentence of the section regarding the Secretary's canvassing duties: "[i]f the official canvass of any county has not been received by this deadline, the Secretary of State must proceed with the state canvass without including the votes of the missing county (i.e., the Secretary of State is not permitted to use an unofficial vote count in lieu of the county's official canvass)." (Doc. 1, ¶ 2 ; Doc. 16-1, at 4).[6] While the Secretary finalized and issued the 2023 EPM before the statutory amendments from H.B. 2785, to the extent the manual guides the Secretary's canvassing duties, it is wholly consistent with the new law.

---

[6] It is worth noting that the Canvass Provision refers to "this deadline," which in turn refers to the deadline for the state canvass in former A.R.S. § 16-648(C), a deadline that has been superseded by the dates set forth in the current version of A.R.S. § 16-642(A).

5

**ARGUMENT**

**I. Plaintiff Glennon Lacks Standing.[7]**

Standing "is a core component of the Article III case or controversy requirement." *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011). The party invoking federal jurisdiction bears the burden of establishing each element of standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). "[A]t an 'irreducible constitutional minimum,'" a plaintiff must demonstrate (1) an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) susceptible to redress by a decision in their favor." *Lake v. Fontes*, 83 F.4th 1199, 1202-03 (9th Cir. 2023) (cleaned up). Neither "abstract, theoretical concerns," nor an "interest shared generally with the public at large in the proper application of the Constitution and laws," will satisfy constitutional standing requirements." *Id.* Here, Plaintiff's claim regarding the Canvass Provision fails at each step of the standing analysis.

**A. Glennon's claimed injuries are too conjectural and speculative.**

To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "concrete" and "particularized" injury must be "real," not "abstract." *Id.* And it "must affect the plaintiff in a personal and individual way." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (quotation omitted). To be "actual or imminent," a threatened injury must be "certainly impending"—"allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (cleaned up).

---

[7] Plaintiffs do not offer any well-pleaded factual allegations that Plaintiffs American Encore or America First Policy Institute are injured by the Canvass Provision. (*See* Doc. 1, ¶¶ 11-18, 23-30). Accordingly, this Motion focuses on Plaintiff Karen Glennon's standing.

1    Here, the injury alleged is purely hypothetical. As such it "is far too speculative
2    and conjectural" to establish standing. *Drake v. Obama*, 664 F.3d 774, 781 (9th Cir.
3    2011). Indeed, Plaintiffs argue that the existence of the Canvass Provision changes "the
4    nature of [Arizona voters'] right to vote and have their vote counted from an unqualified
5    right to one subject to *potential* disqualification by the actions of government officials."
6    (Doc. 1, ¶ 91). Plaintiffs spend several paragraphs of their Complaint positing situations
7    in which county boards of supervisors fail to carry out their non-discretionary duty to
8    canvass or unknown non-governmental bad actors prevent a board from complying with
9    its statutory duty to canvass, but none of these situations are anything more than
10   conjecture. (*Id.* ¶¶ 82-85).

11   Plaintiffs further point to the Cochise County Board of Supervisors' failure to
12   timely canvass the 2022 general election. (*Id.* ¶ 86). They assert that there is a credible
13   threat of harm to Plaintiff Glennon, an Apache County resident, because if one of the
14   members of the Cochise County Board had not "backed away from the ledge at the
15   eleventh hour," Cochise County voters may not have had their votes included in the
16   statewide canvass. (*Id.* ¶ 102). What Plaintiffs fail to mention is that the supervisor who
17   "backed away from the ledge" was ordered to do so after the Secretary filed a mandamus
18   action and secured relief because a county's duty to timely canvass is a nondiscretionary
19   statutory duty. *See Hobbs v. Crosby*, 2022 WL 17406494, No. S0200CV202200553, at
20   *2 (Ariz. Super. Ct. Cochise Cnty. Dec. 1, 2022). In addition, Defendant Fontes has
21   informed Plaintiffs that he "intends to use all lawful means to" enfranchise Arizona
22   voters, "including seeking judicial remedies if a county fails to timely carry out its duty
23   to canvass." (Doc. 26-3, at 2).

24   In short, far from alleging an imminent harm to Plaintiff Glennon's right to vote,
25   Plaintiffs have offered nothing more than a "long chain of hypothetical contingencies
26   that have never occurred in Arizona and must take place for any harm to occur." *Lake*,
27   83 F.4th at 1204 (cleaned up). Indeed, only one link in that chain has ever occurred, and
28

Plaintiffs' own allegations show that it is far less likely to occur in the future. (*See* Compl. ¶¶ 87-88). As the *Lake* court further explained, '[t]his is the kind of speculation that stretches the concept of imminence 'beyond its purpose.'" *Id.* (quoting *Lujan*, 504 U.S. at 564 n.2). As such, Plaintiffs have failed to plead a plausible "real and immediate threat of" harm to Glennon's right to vote, and their claim regarding the Canvass Provision fails at the first step. *Id.* (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983)).

### B. Plaintiffs raise only generalized grievances, not particularized injury.

In addition to being imminent, an injury must be a "concrete and particularized" harm, personal to Plaintiff. *See, e.g., Pierce v. Ducey*, 965 F.3d 1085, 1089 (9th Cir. 2020) (generalized "interest in seeing that the law is obeyed" is neither concrete nor particularized). The existence of the prospect of a recalcitrant county's votes not being included in the statewide canvass is a potential harm that every Arizona voter has the same (extremely remote) risk of experiencing. Indeed, the Complaint contains no allegation that Apache County is any more likely than another Arizona county to fail to timely canvass its election results. As such, Plaintiff Glennon has nothing more than a generalized grievance about the Canvass Provision, which lacks the requisite particularity to demonstrate standing. *Cf. Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711 (D. Ariz. 2020).

### C. Plaintiff's alleged harm is not fairly traceable to the Canvass Provision.

Even if Plaintiffs could establish an injury, that injury must be "fairly . . . trace[able]" to the Secretary's promulgation of the EPM provision they challenge, "and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (citation omitted). All of the harm that Plaintiffs allege stems not from the Secretary's inclusion of the Canvass Provision in the EPM, but from the potential illegal actions of the Apache County Board of Supervisors or some unidentified

non-governmental bad actors who block the Board from carrying out its statutory duty. The injury that Plaintiff fears is not traceable to the Secretary.

### D. A decision barring enforcement of the Canvass Provision will not redress Plaintiff Glennon's alleged injury.

Finally, it must be likely, as opposed to merely "speculative," that the Plaintiff's injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (citation omitted). Plaintiffs have challenged only the EPM's Canvass Provision. (*See* Doc. 1, Prayer for Relief). They have not challenged the Arizona statutes that set the deadline for the statewide canvass, make no allowance for postponing the canvass, and use mandatory language giving the Secretary no discretion not to follow the law's dictates. *See* A.R.S. §§ 16-642(A)(2)(b) ("The secretary of state *shall* canvass . . . [f]or the general election, not later than the third Monday after the election.") (emphasis added). As such, even in the absence of the Canvass Provision, the Secretary would have no discretion not to canvass on the date set by Arizona law, even if fewer than all fifteen counties have completed their own nondiscretionary duty to canvass.

## II. Plaintiffs' Claims Are Not Ripe.

As a corollary to Plaintiff's lack of standing is the ripeness doctrine. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up). Plaintiffs bear the burden of demonstrating that their claim constitutes a live controversy that is ripe for this Court's review. *Renne v. Geary,* 501 U.S. 312, 315-16 (1991). Here, like the Voting Rights Act claim at issue in *Texas v. U.S.*, "we have no idea whether or when" a county's votes will be left out of the statewide canvass, and therefore "the issue is not fit for adjudication." *Texas*, 523 U.S. at 300 (cleaned up).

## III. The Eleventh Amendment Bars Plaintiff's Claim.

To the extent that Plaintiffs ask the Court to order the Secretary and Attorney General, state officials, to diverge from the statutory text and follow a different version of state law according to Plaintiffs' specific (incorrect) interpretation of it, the Eleventh Amendment bars their claim regarding the Canvass Provision. (*See* Doc. 1, Prayer for Relief, ¶ E (seeking a mandatory injunction that the Secretary issue, and the Attorney General approve "an EPM that complies with the First and Fourteenth Amendments")).

The Eleventh Amendment prevents a state from being sued in federal court without its consent. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008). This immunity extends to "suit[s] against state officials when the state is," as it is here, "the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quotations omitted). The *Ex parte Young* exception to this immunity applies only to "claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123 (1908) (emphasis added)). But Plaintiffs have not challenged the underlying statutes or alleged ongoing violation of federal law. They have offered only bare speculation that the Secretary might in the future take steps that will harm Plaintiff. That is not enough to justify entangling this federal Court in regulation of Arizona's elections. *See Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1030 (D. Ariz. 2022)

Plaintiffs try to disguise their claims as alleged violations of the federal Constitution. But because their claims turn on application of state law, they are barred. Courts have repeatedly rejected similar state law claims cloaked as federal law violations. *See, e.g.*, *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1204-05 (11th Cir. 2019) (Eleventh Amendment barred alleged federal constitutional claim that "relied on a determination that state officials had not complied with state law"); *DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 682 (11th Cir. 1997) (rejecting attempt to

cloak claims in federal constitutional law because the "gravamen" and "substance" of the complaint was that the state improperly interpreted and applied a state statute); *Bowyer*, 506 F.Supp.3d at 716 ("where the claims are state law claims, masked as federal law claims" Eleventh Amendment immunity applies) (citing *Massey v. Coon*, 865 F.2d 264 (9th Cir. 1989)).[8]

### IV. Plaintiffs Fail to a State Cognizable Constitutional Claim in Count Two.

"Dismissal [under Rule 12(b)(6)] is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). A court generally "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1080 (9th Cir. 1987). But the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "The complaint is properly dismissed if it fails to plead enough facts to state a claim to relief that is plausible on its face." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (cleaned up).

### A. The Canvass Provision Is Not a Severe Burden on Plaintiff's Right to Vote.

"A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward

---

[8] Alternatively, the Court should abstain from determining Plaintiffs' claims under the *Pullman* abstention doctrine. "By allowing 'federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions,'" *Pullman* abstention is "intended both to avoid 'a collision between the federal courts and state . . . legislatures' and to prevent 'the premature determination of constitutional questions.'" *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (citation omitted). Plaintiffs' claims about how the canvass is conducted turns on questions of state law. This sets up precisely the type of collision that *Pullman* aims to avoid. *See Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010).

by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). The *Anderson-Burdick* "flexible" standard means that although a law imposing a severe burden on voting rights must meet strict scrutiny, a lesser burden "trigger[s] less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Ariz. Democratic Party v. Hobbs*, 18 F.4th. 1179, 1187 (9th Cir. 2021) (cleaned up). Moreover, "states retain broad authority to structure and regulate elections." *Short v. Brown*, 893 F.3d 671, 676 (9th Cir. 2018).

Plaintiffs assert that the Canvass Provision is a severe burden on Glennon's right to vote because it results in "vote nullification" and that "when it becomes operative, all voters in the affected county are completely disenfranchised." (Doc. 1, ¶ 112). But the premise of Plaintiffs' claim wholly ignores that the loss of the effect of Glennon's vote, in the unlikely event that occurred in the future, would be caused not by the Canvass provision, but by the illegal acts of third parties who are not before the court, or by the operation of a state law that Plaintiffs have not challenged. An example illustrates the logical fallacy of Plaintiffs' argument. Arizona law requires that voters who wish to vote by mail must return their early ballot to the county recorder by 7:00 pm on election day. A.R.S. § 16-548(A). If a voter timely deposits their ballot in the mail, but a thief steals the mail from the U.S.P.S. mail box or a postal worker deliberately does not deliver the ballot on time, the vote cannot be counted under Arizona law. But the law requiring timely delivery does not burden the voter's right to vote. *See Ariz. Democratic Party*, 18 F.4th at 1189. Instead, the intervening acts of third parties prevent the vote from being counted. So to, the existence of the Canvass Provision does not impose a severe burden on the right to vote. If Plaintiff's vote is not included within the statewide canvass, it will be due to violation of Arizona law by parties not before this court. There is simply

no causal link between the severe burden that Plaintiffs allege and the EPM provision that they challenge.

Importantly, when determining the burden, if any, on Plaintiff Glennon's right to vote, this Court must presume that county and state election officials will follow the law—and in particular the provisions of A.R.S. §§ 16-642 and -648 requiring both county officials and the Secretary to timely carry out their respective canvassing duties. The only way the burden on Glennon's right to vote becomes severe is if this Court assumes a county is not carrying out its canvassing duty, which would violate the EPM, as well as A.R.S. §§ 16-642(A) and -1009. But government actors are entitled to a presumption that they will follow the law. *See Dodge v. Meyer,* 444 P.3d 159, 164 & n.21 (Alaska 2019) (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960) ("Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties.")). This Court cannot rely on Plaintiffs' conjured harm of illegal acts to establish a burden on the right to vote.

**B. Compelling State Interests Justify the Canvass Provision.**

In view of the slight (indeed, nonexistent) burden on Glennon's right to vote due to the Canvass Provision, the Secretary "need not establish a compelling interest to tip the constitutional scales in its direction." *Burdick*, 504 U.S. at 439. However, even if this Court were to require a compelling interest to outweigh Plaintiffs' alleged burden, two state interests tip the scales in the state's favor here: (1) the importance of finality of elections and (2) not disenfranchising every voter in Arizona.

Arizona election laws reflect "the strong public policy favoring stability and finality of election results." *Donaghey v. Att'y Gen.*, 584 P.2d 557, 559 (Ariz. 1978) (requiring strict compliance with the deadlines for election contests). Under Arizona law, the canvass, which generally constitutes the official results of an election, provides that finality. And to the extent that other proceedings such as a recount or election

contest provide the final results, the county or statewide canvass are the necessary step to initiate such proceedings. *See* A.R.S. §§ 16-662, -673(A). Without the statewide canvass, there is no final result at all.

Plaintiffs insist that the solution to a county not submitting its official canvass cannot be the Secretary not including that county's votes, but they are silent as to what the Secretary should do if the Secretary does not receive the official canvass of a county by the Secretary's statutory deadline to canvass, and if every other potential cure fails. The Secretary's "authority is limited to those powers expressly or impliedly delegated to him by the state constitution or statutes," he does not have the authority to simply choose to certify unofficial vote counts. *Ariz. Pub. Integrity All. v. Fontes*, 475 P.3d 303, 307, ¶ 14 (Ariz. 2020).

The problem caused by the Secretary's inability to timely conduct the statewide canvass is particularly salient with respect to the deadline for certificates of ascertainment for Presidential electors. Neither the Secretary nor a state court judge can excuse compliance with the federal deadlines. As such, if one county does not timely canvass, thereby preventing the Secretary from carrying out his canvassing duties in time to comply with the Electoral Count Reform Act, the alternative to canvassing without one county's votes is to not canvass at all—thereby nullifying the vote for president of every single Arizona voter instead of only those from the recalcitrant county. The Canvass Provision reflects the Secretary's effort to minimize the follow-on effects of a county not meeting its statutory obligations and chart a path that protects as many Arizona voters as possible in the unlikely event the fantastical scenarios Plaintiffs posit every come to be.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Count One with prejudice.

RESPECTFULLY SUBMITTED this 9th day of August, 2024.

> Kristin K. Mayes
> Attorney General
>
> */s/ Karen J. Hartman-Tellez*
> Kara Karlson
> Karen J. Hartman-Tellez
> Senior Litigation Counsel
> Kyle Cummings
> Assistant Attorney General
> *Attorney for Defendant Arizona Secretary of State Adrian Fontes*

**CERTIFICATE OF GOOD FAITH CONFERRAL**

Pursuant to Local Rule 12.1(c), I certify that on August 7, 2024, I participated in a video conference with counsel for Plaintiffs and counsel for Defendant Attorney General Kristin K. Mayes. During the video conference, I notified Plaintiffs' counsel of the issues asserted in the foregoing Motion. Plaintiffs did not offer to make any permissible amendment that would cure the defects in the Complaint.

    Kristin K. Mayes
    Attorney General

    */s/ Karen J. Hartman-Tellez*
    Kara Karlson
    Karen J. Hartman-Tellez
    Senior Litigation Counsel
    Kyle Cummings
    Assistant Attorney General
    *Attorney for Defendant Arizona*
    *Secretary of State Adrian Fontes*

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I HEREBY CERTIFY that on this 9th day of August, 2024, I filed the forgoing |
| 3 | document electronically through the CM/ECF system, which caused all parties or |
| 4 | counsel of record to be served by electronic means, as more fully reflected on the Notice |
| 5 | of Electronic Filing. |
| 10 | /s/Karen J. Hartman-Tellez |
**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of August, 2024, I filed the forgoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/Karen J. Hartman-Tellez*