KRISTIN K. MAYES
Attorney General
Firm State Bar No. 14000

Kara Karlson, No. 029407
Karen J. Hartman-Tellez, No. 021121
Senior Litigation Counsel
Kyle Cummings, No. 032228
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ  85004-1592
Telephone (602) 542-8323
Facsimile (602) 542-4385
Kara.Karlson@azag.gov
Karen.Hartman@azag.gov
Kyle.Cummings@azag.gov
adminlaw@azag.gov
*Attorneys for Defendant Arizona
Secretary of State Adrian Fontes*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| American Encore, an Arizona non-profit corporation; Karen Glennon, an Arizona individual; American First Policy Institute, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State; Kris Mayes, in her official capacity as Arizona Attorney General; Katie Hobbs, in her official capacity as Governor of Arizona,<br><br>Defendant. | No. CV-24-01673-PHX-MTL<br><br>**ARIZONA SECRETARY OF STATE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION REGARDING COUNT ONE** |

Defendant Arizona Secretary of State Adrian Fontes (the "Secretary") hereby responds in opposition to Plaintiffs' Motion for a Preliminary Injunction regarding Count One of the Complaint (the "Motion"). (Doc. 26).

## INTRODUCTION

Plaintiffs, two organizations that purportedly have an interest in the conduct of Arizona's elections, and one voter from Apache County, have sued the Secretary of State because the Elections Procedures Manual (the "EPM") that he is required by law to issue includes a provision regarding his duty to canvass elections with statewide or federal candidates that complies in all respects with Arizona law regarding the timing and non-discretionary nature the Secretary's duty to canvass. (*See* Doc. 16-1, at 4 (the "Canvass Provision")). Plaintiffs allege that this wholly lawful provision might, at some unknown time in the future, cause the voter-Plantiff's vote to not be included in the state canvass of election results, if some hypothetical chain of events that involves multiple government actors failing to carry out a nondiscretionary statutory duty. Despite the likelihood of the harm that Plaintiffs allege being extremely remote, they seek to (1) enjoin the Canvass Provision, and (2) entangle this Court in the promulgation of a new EPM. But Plaintiffs cannot meet the standard for a preliminary injunction and the Court should deny their motion.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to

establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted).

In addition, mandatory injunctions such as Plaintiffs' request that the Court order the Secretary to issue a new EPM must meet an even higher standard. Because mandatory injunctions go "well beyond simply maintaining the status quo," they are "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (cleaned up). Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Id.*

## ARGUMENT

### I. Plaintiffs Do Not Have a Likelihood of Success on the Merits.

As set forth in greater detail in the Secretary's Motion to Dismiss, incorporated herein by reference, Plaintiffs are not entitled to a preliminary injunction regarding the Canvass Provision because this claim does constitute a case or controversy giving this Court jurisdiction to entangle itself in state election law to stave off hypothetical harm not caused by the challenged EPM provision. Moreover, the Canvass Provision does not impose a severe burden on the voter-Plaintiff's right to vote, and the Secretary's interests in complying with state laws that the Plaintiffs do not challenge and preventing the disenfranchisement of all Arizona voters easily justify the Canvass Provision. Because Plaintiffs do not have a likelihood of success on the merits, they have not shown that the injunction they seek, including the mandatory injunction compelling the Secretary to re-issue the EPM, is warranted.

### A. Plaintiffs Lack Standing to Pursue Count One, Which is also Unripe.

Plaintiffs include two organizations and a single Arizona voter, who lives in Apache County. The Complaint contains no well-pled allegations about who the organizational Plaintiffs' members are, where they live, or whether they are even

2

1 registered to vote in Arizona. Instead, they offer just a single, bare allegation that
2 "Plaintiffs AFPI and American Encore's supporters and/or sympathetic voters and
3 Plaintiff AFPI's members similarly will cast votes in the November 5, 2024 general
4 election." (Doc, 1, ¶ 99). The Secretary is unaware of a theory of organizational
5 standing that would extend to "supporters and/or sympathetic voters." (*Id*.) And AFPI
6 cannot establish standing via members it does not name. *See Summers v. Earth Island
7 Inst*., 555 U.S. 488, 497-99 (2009). Accordingly, this Response, like the Secretary's
8 contemporaneously filed Motion to Dismiss, focuses on the standing of the sole
9 identified voter-Plaintiff, Karen Glennon.

10 With no factual basis whatsoever, Plaintiffs assert that the EPM's Canvass
11 Provision constitutes a severe burden on her right to vote. But that burden is wholly
12 inchoate today. It will not come into being unless and until the non-party Apache
13 County Board of Supervisors (the "Board") fails to comply with its statutory duty to
14 canvass a primary or general election, no emergency relief (via a mandamus action in
15 state court) is obtained, and the Board does not timely transmit its completed canvass to
16 the Secretary. In other words, a "long chain of hypothetical contingencies that have
17 never occurred in Arizona and must take place for any harm to occur." *Lake v. Fontes*,
18 83 F.4th 1199, 1204 (9th Cir. 2023) (cleaned up). This type of speculation does not
19 represent the "real and immediate threat of" harm to Glennon's right to vote necessary to
20 establish standing. *Id.* (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983)).

21 Moreover, the speculative injury that Plaintiffs fear is not "fairly . . . trace[able]"
22 to the Secretary's promulgation of the Canvass Provision, but is instead "th[e] result [of]
23 the independent action of some third party not before the court." *Lujan v. Defs. of
24 Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). All of the harm that Plaintiffs
25 allege stems not from the Secretary's inclusion of the Canvass Provision in the EPM, but
26 from the potential illegal actions of the Board or some unidentified non-governmental
27
28

bad actors who block the Board from carrying out its statutory duty. The injury that Plaintiffs fear is not traceable to the Secretary.

Furthermore, Plaintiffs lack standing because Glennon's alleged injury will not be redressed by the decision Plaintiffs' seek here. *See Lujan,* 504 U.S. at 561 (citation omitted). Plaintiffs have challenged only the EPM's Canvass Provision. (*See* Doc. 1, Prayer for Relief). They have not challenged the Arizona statutes that set the deadline for the statewide canvass, make no allowance for postponing the canvass, and use mandatory language giving the Secretary no discretion not to follow the law's dictates. *See* A.R.S. § 16-642(A)(2)(b) ("The secretary of state *shall* canvass . . . [f]or the general election, not later than the third Monday after the election.") (emphasis added). As such, even in the absence of the Canvass Provision, the Secretary would have no discretion not to canvass on the date set by Arizona law, even if fewer than all fifteen counties have completed their own nondiscretionary duty to canvass.

Finally, Count One of the Complaint is not ripe for adjudication because "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up). But here, "we have no idea whether or when" a county's votes will be left out of the statewide canvass, and therefore "the issue is not fit for adjudication." *Id.* (cleaned up).

**B. The State's Interest in Protecting the Votes of as Many Arizonans as Possible Outweighs Plaintiffs' Wholly Speculative Harm.**

For essentially the same reasons that Plaintiffs lack standing to advance their claim regarding the Canvass Provision—the purely speculative nature of the harm alleged—that provision does not constitute a severe burden on Glennon's right to vote. As such, the "State's important regulatory interests" are enough to justify the Canvass Provision. *Arizona Democratic Party v. Hobbs*, 18 F.4th. 1179, 1187 (9th Cir. 2021) (cleaned up). Indeed, Plaintiffs' claim wholly ignores that the loss of the effect of Glennon's vote, in the unlikely event that occurred in the future, would be caused not by

4

the Canvass provision, but by the illegal acts of third parties who are not before the court, or by the operation of state law that Plaintiffs have not challenged.

Absent a severe burden on Plainiff's right to vote, the Secretary "need not establish a compelling interest to tip the constitutional scales in its direction." *Burdick*, 504 U.S. at 439.  But even so, in addition to the Secretary's interest in complying with state statute, two compelling state interests tip the scales in the state's favor here:  (1) the importance of finality of elections and (2) not disenfranchising every voter in Arizona.  Arizona election laws reflect "the strong public policy favoring stability and finality of election results." *Donaghey v. Att'y Gen.*, 120 Ariz. 93, 95, 584 P.2d 557, 559 (1978) (requiring strict compliance with the deadlines for election contests).  Without the statewide canvass, there is no final result.

And if there is no canvass and final result, there can be no certificates of election for federal and state offices, no proclamation of the results of the votes on initiatives and referred ballot measures, and no certificates of ascertainment for Presidential electors.  Indeed, if one county does not timely canvass, thereby preventing the Secretary from carrying out his canvassing duties in time to comply with the Electoral Count Reform Act, the alternative to canvassing without one county's votes is to not canvass at all—thereby nullifying the vote for president of every single Arizona voter instead of only those from the recalcitrant county.  The Canvass Provision is a contingency plan, aimed at minimizing the negative effects on the whole of the state of a county not meeting its statutory obligations.

**II. Plaintiffs Will Not Suffer Irreparable Harm Absent an Injunction.**

**A. The Remote Likelihood of Harm Defeats Plaintiffs' Claim for Extraordinary Relief.**

Irreparable injury sufficient to warrant injunctive relief is an even higher bar than for standing—a bar Plaintiffs have failed to clear.  Indeed, Plaintiffs must establish "immediate threatened injury." *Caribbean Marine Servs.,* 844 F.2d at 674.  But

5

1  Plaintiffs do not allege that Glennon's vote has not been counted, or a legitimate threat
2  that her vote will not be counted in the upcoming general election. Instead, with no
3  factual basis, they argue that the Canvass Provision "inflicts current and ongoing injury,"
4  and they "face a credible threat of enforcement—complete disenfranchisement" under
5  the Canvass Provision." (Doc. 26, at 4.).

6  Plaintiffs seem to argue that Glennon has an ongoing injury because the existence
7  of the Canvass Provision "downgrad[es her] right to vote from unconditional to
8  conditional, based on how governmental officials act." (*Id*. at 6). Not so. Under A.R.S.
9  § 16-642(A)(1)(b), counties canvass their elections "not later than the third Thursday
10 after the election," while under A.R.S. § 16-648(A) the Secretary conducts his canvass
11 after that, "[o]n the third Monday following a general election." It is a class 6 felony
12 under A.R.S. § 16-1010 for a person "charged with" performing a duty related to
13 elections to knowingly refuse to perform that duty." *See also* A.R.S. § 16-1009
14 (providing a misdemeanor penalty for a "public officer upon whom a duty is imposed"
15 by the election statutes "who knowingly fails or refuses to perform a duty in the manner
16 prescribed by law"). In short, Arizona law has set deadlines to insure that all county
17 canvasses are received in time for the Secretary to perform his statutorily-mandated
18 canvass. And county supervisors and the Secretary are entitled to a presumption that
19 they will follow the law. *See Dodge v. Meyer,* 444 P.3d 159, 164 & n.21 (Alaska 2019)
20 (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960) ("[T]he
21 presumption of regularity supports the official acts of public officers, and courts presume
22 that they have properly discharged their official duties.")).

23 In addition to the criminal penalties that Arizona law provides for failing to
24 comply with canvassing duties, the Secretary and Plaintiffs alike have the ability to
25 initiate a mandamus action to ensure a county canvass is timely completed. *See* A.R.S.
26 § 12-2021; *Hobbs v. Crosby*, 2022 WL 17406494, No. S0200CV202200553, at *2 (Ariz.
27 Super. Ct. Cochise Cnty. Dec. 1, 2022). Simply put, neither Glennon's nor any other
28

Arizona voter's right to vote has been downgraded to "conditional" status, and Plaintiffs only reach this argument by creating a chain of hypotheticals requiring government officials to shirk their statutory duties and engage in criminal conduct.

**B. The Law Does Not Recognize the Alleged Diminution of Plaintiff's Right to Vote as an Irreparable Injury.**

Plaintiffs cite several cases about actual disenfranchisement to support their claims, but they are inapposite. Specifically, Plaintiffs argue that Glennon has been injured because her situation is somehow similar to those in which felons were disenfranchised based on government actors' decisions, signature-mismatch cases involving inadequate opportunities to cure signature problems, and free speech cases involving government permits. (Doc. 26, at 5-7). None of the cited cases demonstrates an injury here.

First, the felon-disenfranchisement cases Plaintiffs cite concern voters who were actually barred from voting due to felony convictions. *See Williams v. Taylor*, 677 F.2d 510, 517 (5th Cir. 1982) ("We conclude that appellant should be given a chance to prove his claim of selective and arbitrary enforcement of the disenfranchisement procedure."); *El-Amin v. McDonnell*, 2013 WL 1193357, at *2 (E.D. Va. Mar. 22, 2013) (denying dismissal of a claim because it alleged a state constitutional amendment was passed "in order to suppress the black vote"). In contrast, Plaintiffs have not alleged that Glennon has ever been barred from voting or that her vote was not included in the county and state canvasses for the elections in which she voted.

Second, the signature-mismatch cases Plaintiffs cite dealt with "state election officials fail[ing] to provide adequate cure opportunities." (Doc. 26, at 7). Again, this situation is wholly dissimilar to this action, as those cases address situations in which the laws at issue inherently allow injury to occur. *See, e.g., Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1030 (N.D. Fla. 2018) (finding "the opportunity to cure has proven illusory," as some voters would not be notified of mismatches until it

1  was too late under the law's timeframes, while the law does not allow others the
2  opportunity to cure). Here, in contrast, the relevant, unchallenged, laws provide
3  safeguards to ensure that all votes are canvassed, and it is only if third parties fail to
4  carry out nondiscretionary duties, that Glennon's vote would be at risk.

5  Third, the First Amendment permit cases Plaintiffs cite involved complaints that
6  government officials' discretion to issue or deny permits was standardless. *See Desert*
7  *Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996);
8  *Stewart v. City & Cnty. of San Francisco*, No. 22-16018, 2023 WL 2064162, at *1 (9th
9  Cir. Feb. 17, 2023) (finding standing because city park code created a permit
10 requirement infringing on speech). The Canvass Provision and the laws on which it is
11 based are completely different. Indeed, instead of standardless discretion, the election
12 officials here have no discretion with respect to the canvass. The permit cases are
13 inapposite.

14 **C. The Canvass Provision Does Not Pose a "Credible Threat" to Plaintiff's Voting Rights.**
15

16 Plaintiffs assert that "if a county fails . . . to certify its election results, it is all-but
17 certain that" the Canvass Provision will be come into effect, disenfranchising voters.
18 (Doc. 26, at 8). But Plaintiffs offer no evidence of this certainty. And the only evidence
19 available—from Cochise County in 2022—shows that the Secretary and others will take
20 immediate, extraordinary steps to prevent a county's votes from not being included in
21 the state canvass. Simply put, Plaintiffs' hypothetical danger cannot be called a
22 "credible threat" when there are laws both directing election officials to act in ways that
23 assure the full canvass can be performed, and criminal law exists to prevent those acts
24 from not being carried out. *See, e.g.,* A.R.S. §§ 16-642(A), -648(A), -1009, -1010. And
25 these laws are coupled with a history of the Defendants in this case taking remedial
26 measures when they are broken.

27
28

Moreover, Plaintiffs' view of the Secretary's response to their demand that he "disavow" the Canvass Provision is perplexing. Plaintiffs complain that the Secretary "refus[es] to disavow such enforcement" of the Canvass Provision. (Doc. 26, at 8). They further note that the Secretary explained that he has a "nondiscretionary statutory duty" to canvass–meaning he is *required by law to conduct the canvass by the statutory deadline*–yet they offer no explanation as to why it would be acceptable for the Secretary to break the law. (*Id.*) The conclusion is clear: Plaintiffs have no answer to this point, and instead ignore it. They also ignore the Secretary's commitment to "use all lawful means" to enfranchise Arizona voters. (Doc. 26-3, at 2).

In view of the lack of a credible threat that Glennon's vote will not be included in a future statewide canvass, she has not established the irreparable injury required to support injunctive relief.

**III.   Balance of Harms and Public Interest Do Not Support Injunctive Relief**

Plaintiffs give short shrift to the remaining preliminary injunction factors, arguing only that a constitutional violation has occurred, and "the public interest and balance of equities favor preventing" such violations. (Doc. 26, at 16) (cleaned up). As set forth in this Response and the Secretary's Motion to Dismiss, no such constitutional violation has occurred or will imminently occur.

On the other hand, the balance of hardships and public interest weigh in the Secretary's favor, as he has a statutory duty to canvass on a specific date. *See Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) ("[T]he Secretary has shown that the State will suffer irreparable harm if" the state is "precluded from applying its duly enacted legislation regarding election procedures."); *see also Nken v. Holder*, 556 U.S. 418, 436 (2009) (harm to a government defendant and the public interest merge). Similarly, regarding public interest, far from the Canvass Provision enacting "mass disenfranchisement," it ensures that should the canvass date come and the Secretary has not received a county's official canvass, the Secretary is in a position to

ensure that not all votes in Arizona are discounted. Plaintiffs assert that "potential mass disenfranchisement . . . is thus not in the public interest," and this is certainly true. (Doc. 26, at 16). However, worse would be the Secretary being precluded from completing the canvass to finalize the results of an election, leading to statewide disenfranchisement.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction regarding Count Two.

RESPECTFULLY SUBMITTED this 9th day of August, 2024.

                Kristin K. Mayes
                Attorney General

                */s/ Karen J. Hartman-Tellez*
                Kara Karlson
                Karen J. Hartman-Tellez
                Senior Litigation Counsel
                Kyle Cummings
                Assistant Attorney General
                *Attorney for Defendant Arizona*
                *Secretary of State Adrian Fontes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of August, 2024, I filed the forgoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.


 /s/Karen J. Hartman-Tellez