Andrew Gould (No. 013234)
Drew C. Ensign (No. 025463)
Dallin B. Holt (No. 037419)
Brennan A.R. Bowen (No. 036639)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2555 East Camelback Road, Suite 700
Phoenix, Arizona 85016
(602) 388-1262
agould@holtzmanvogel.com
densign@holtzmanvogel.com
dholt@holtzmanvogel.com
bbowen@holtzmanvogel.com
minuteentries@holtzmanvogel.com

Michael Berry (*pro hac vice*)
Richard P. Lawson (*pro hac vice*)
Jessica H. Steinmann (*pro hac vice*)
Patricia Nation *(pro hac vice)*
AMERICA FIRST POLICY INSTITUTE
1001 Pennsylvania Ave., N.W., Suite 530
Washington, D.C. 2004
(813) 952-8882
mberry@americafirstpolicy.com
rlawson@americafirstpolicy.com
jsteinmann@americafirstpolicy.com
pnation@americafirstpolicy.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Encore, an Arizona non-profit corporation; Karen Glennon, an Arizona individual; America First Policy Institute, a non-profit corporation,<br><br>                       Plaintiffs,<br>vs.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State; Kris Mayes, in her official capacity as Arizona Attorney General; Katie Hobbs, in her official capacity as Governor or Arizona,<br><br>                       Defendants. | Case No.:  CV-24-01673-PHX-MTL<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR A *PULLMAN*-ABSTENTION BASED STAY**<br><br><br>**Oral Argument Scheduled For September 12** |

**INTRODUCTION**

Defendants' request for *Pullman* abstention for Plaintiffs' First Amendment claim would face nearly insurmountable obstacles even if it had made a strong showing on the *Pullman* factors. Which it doesn't. Defendants' request thus merits emphatic rejection. And Defendants willingness to make this request is deeply—if advertently—revealing of the strength of their merits arguments, which Defendants are understandably (and palpably) eager to avoid judicial scrutiny of.

The Ninth Circuit has repeatedly held that *Pullman* abstention for First Amendment claims is "*strongly disfavored.*" *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 528 (9th Cir. 2015) (emphasis added). Indeed, it is "*almost never*" appropriate. *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989) (emphasis added). Further compounding the steepness of Defendants' climb, the Ninth Circuit has further held that *Pullman* abstention is *particularly inappropriate* where—as here—it could preclude resolution of a First Amendment claim relating to election activities "prior to the [upcoming] election." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).

Defendants would thus need to provide an exceptionally compelling case for *Pullman* abstention to overcome these multiple, towering hurdles that binding precedent has placed in their path. But their offerings are instead quite meager.

In particular, Defendants' *Pullman* arguments are particularly flimsy here as to whether state law is uncertain. Indeed, Defendants' textual arguments about what the Speech Restriction means under state law are so weak as to flirt with frivolousness. In Defendants' telling, a provision that provides that "[a]ny activity by a person" that falls within its scope "is prohibited" (EPM at 181) both (1) does not actually prohibit anything and is instead purely non-binding guidance and (2) only applies to election workers and not, as it says, any "person." Here, Defendants' arguments are not merely atextual but affirmatively *anti*-textual.

The prospect that Arizona courts would accept such arguments is fanciful. Indeed,

the superior court had little difficulty rejecting that argument the day after Defendants' instant request was filed. *See* Second Declaration of Brennan A.R. Bowen (attached hereto as Ex. A), ¶3, Attachment 1. Moreover, Secretary Fontes has since made multiple statements confirming his view that the Speech Restriction contains binding prohibitions on speech. *Id.* ¶¶4, 6 Attachments 2, 4; *see also infra* at 8–11. And Defendants have sought a stay pending appeal in state court, *id.* ¶5, Attachment 3—which necessarily presupposes that the Speech Restriction prohibits something (otherwise Defendants' inability to enforce it could not even conceivably cause them harm).

This Court thus should not abstain under *Pullman* simply so that Arizona courts could confirm what is already obvious: Defendants' arguments that the Speech Restriction is purely non-binding guidance that prohibits nothing is not a plausible reading of the restriction's text. Nor have Defendants demonstrated that the "sensitive area" factor is satisfied where: (1) the Ninth Circuit has made plain that it is nearly impossible to do so in First Amendment cases and (2) strong federal interests are implicated here.

Defendants' request for *Pullman* abstention should thus be denied.

## BACKGROUND

As explained in greater detail in Plaintiffs' motion for a preliminary injunction (ECF No. 14), Count II challenges the Speech Restriction, which is Chapter 9, §III(D) of the 2023 Election Procedure Manual. *See* EPM at 181-83. The central provision of the Speech Restriction provides:

> "Any activity by a person with the intent or effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) inside or outside the 75-foot limit at a voting location is prohibited." EPM at 181.

Arizona statutory law further provides that violation of any prohibition contained in the EPM is a criminal act: any "*person* … who violates any rule [in an EPM] … is guilty of a class 2 misdemeanor" under Arizona law. A.R.S. § 16-452(C).

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

**I.  DEFENDANTS' REQUEST FOR *PULLMAN* ABSTENTION IS STRONGLY DISFAVORED HERE**

Before turning to the *Pullman* factors, it is useful to consider how *Pullman* abstention applies in the First Amendment context—where it is overwhelmingly disfavored—and the extraordinary and inequitable nature of the relief that Defendants are seeking here.

**A.  *Pullman* Abstention for First Amendment Challenges Is Overwhelmingly Disfavored and Almost *Never* Granted**

It is useful to begin by noting that Defendants' request for *Pullman* abstention of a First Amendment claim is *overwhelmingly* disfavored. It is almost *never* appropriate. And there is nothing about this case that warrants a departure from the overwhelming antipathy with which Ninth Circuit precedent treats such abstention.

Defendants do grudgingly acknowledge (at 4) that "federal courts have expressed reluctance to abstain in cases involving free speech claims when doing so would delay a decision on the merits and thus risk chilling speech." That is a choice understatement.

As the Supreme Court has explained, "'abstention is inappropriate for cases where statutes are justifiably attacked on their face as abridging free expression.'" *Houston v. Hill*, 482 U.S. 451, 467, (quoting *Dombrowski* v. *Pfister*, 380 U.S. 479, 489-490 (1965) (cleaned up)). The Ninth Circuit has put an even finer point on this: *Pullman* abstention "is *strongly disfavored* in First Amendment cases." *Chula Vista Citizens*, 782 F.3d at 528 (emphasis added). Indeed, "[i]n first amendment cases, the first of [the *Pullman*] factors *will almost never be present* because the guarantee of free expression is always an area of particular federal concern." *Ripplinger*, 868 F.2d at 1048 (emphasis added)

This "almost never" language is no one-off stray language. Instead, the Ninth Circuit has repeated it *multiple times*, making clear its unequivocal commitment to this "almost never" standard.[1] This Court has repeated it too. *See*, *e.g.*, *St. Mark Roman*

---

[1]  *See*, *e.g.*, *Porter*, 319 F.3d at 492 ("We have held that, in First Amendment cases, the first Pullman factor 'will almost never be present because the guarantee of free expression

3

*Catholic Par. v. City of Phoenix*, No. CV 09-1830-PHX-SRB, 2010 U.S. Dist. LEXIS 145304, at *43 (D. Ariz. Mar. 3, 2010).

Notably, the Ninth Circuit does not appear to have approved of *Pullman* abstention in the last 35 years. Instead, the sole time it did so was decades past in *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987). So, predictably, Defendants place enormous reliance (at 4-5) on *Almodovar*, because they have almost nothing else.

But "*Almodovar* involved an unusual procedural setting; the issue in question was already before the state supreme court." *Porter*, 319 F.3d at 493-94. Where that "unique circumstance [wa]s absent … abstention was inappropriate." *Id.* at 494. That unique factor is missing here too: the state case is not presently pending before the Arizona Supreme Court and may not arrive there for years. Defendants just filed a notice of appeal to the Arizona Court of Appeals last week and proceedings in that intermediate court could easily take a year or more. Proceedings in the Arizona Supreme Court could then easily take additional years.

The upshot is that the Ninth Circuit has only *once* approved of *Pullman* abstention in the past four decades and only did so based on unusual circumstances absent here. There is little reason to believe that the Ninth Circuit would do so again here—for the first time in a generation—if this Court were to abstain and that decision were appealed.

**B. Defendants' Request to Defer Adjudication of Plaintiffs' Claim Past the Imminent 2024 Elections Is Strongly Disfavored**

Defendants' motion also elides the extraordinary nature of their request. Specifically, Defendants seek a stay "pending the resolution of *Arizona Free Enterprise Club et al. v. Fontes et al.*, No. CV2024-002760 (Maricopa County Superior Court), and *any appellate proceedings.*" (ECF No. 27-5) (emphasis added). But those appellate proceedings may take years. In the meantime, the 2024 general election is imminent and

---

is always an area of particular federal concern.'" (citation omitted)); *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010) (same); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 784 (9th Cir. 2014) (same); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 588 (9th Cir. 2020) (same).

Plaintiffs contend—and a state superior court has already ruled—that their free speech rights would be violated by the Speech Restriction remaining in force.

Defendants' motion thus effectively seeks, with respect to the Speech Restriction, a license to conduct the 2024 general election as a First Amendment-free zone. While Plaintiffs possess rights under both the First Amendment and the Free Speech Clause of the Arizona Constitution, they would only be permitted to assert the latter with respect to the upcoming general election. And if Defendants were to obtain the stay pending appeal that they are presently seeking in state court, Defendants would be free to violate Plaintiffs' First Amendment rights with impunity during that election—particularly as sovereign immunity shields them from liability for damages for retrospective liability.

In short, Defendants' request is tantamount to asking for outright victory through non-adjudication with respect to the 2024 elections. Indeed, it is far from certain that proceedings in Arizona state courts (including the Arizona Supreme Court) would conclude before the 2026 election, thus further extending the First-Amendment-free zone that Defendants seek into yet another election cycle.

The Ninth Circuit has held that *Pullman* abstention is uniquely unwarranted in circumstances like this: *i.e.*, where it was "far from clear that the case would be resolved prior to the [upcoming] election if Plaintiffs were sent to state court." *Porter*, 319 F.3d at 494. Given the upcoming election, "abstention [i]s inappropriate," particularly since "the delay that comes from abstention may itself chill the First Amendment rights at issue." *Id.* at 492-93. Such "delay … is particularly pernicious in First Amendment cases." *Id.* at 494.

Plaintiffs' request is also distinctly asymmetric and inequitable. Plaintiffs (at 5) do not seek abstention from resolution of *their* standing arguments—which they still want resolved now—only adjudication of Plaintiffs' claims. Defendants thus seek to establish a Heads-I-Win, Tails-You-Can't-Win-For-Years regime that selectively slams the courthouse doors to only one side. But *Pullman* abstention is an equitable doctrine and does not require—or even permit—such a deeply inequitable outcome, particularly where First Amendment rights are at stake.

**C. Defendants' Request Ignores Certification**

Finally, Defendants' request ignores that certification of questions to state courts has largely supplanted outright abstention under *Pullman*. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997) ("Certification today covers territory once dominated by … '*Pullman* abstention[.]'"). And certification is often more desirable as it "reduc[es] the delay, cut[s] the cost, and increase[es] the assurance of gaining an authoritative response." *Id.*; *id.* at 79 (certification does not "entail the delays, expense, and procedural complexity that generally attend abstention decisions.").

Thus, even if this Court thought the *Pullman* factors were plausibly satisfied here, it should instead certify the state-law interpretive questions to the Arizona Supreme Court. But Defendants do not even attempt to explain why abstention, rather than certification, is warranted here. And unless delay is the point of Defendants' motion—rather than mere byproduct—it is difficult to see why they completely ignore certification in favor of "the delays, expense, and procedural complexity" that outright abstention would occasion relative to certification. *Id.*

**II.   THE *PULLMAN* ABSTENTION FACTORS ARE NOT SATISFIED HERE**

"It is appropriate to abstain under *Pullman* only if each of the following three factors is present: (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain." *Porter*, 319 F.3d at 492 (cleaned up). "[T]he absence of any one of these three factors is sufficient to prevent the application of *Pullman* abstention." *Id.*

Here the first and third factors are plainly lacking and the second is marginal.

**A. Defendants Have Not Established That This Case Involves a "Sensitive Area of Social Policy Upon Which the Federal Courts Ought Not Enter"**

Defendants' climb on the first *Pullman* factor is about as steep as they come: "in First Amendment cases, the first *Pullman* factor '*will almost never be present* because the

guarantee of free expression is always an area of particular federal concern." *Porter*, 319 F.3d at 492 (quoting *Ripplinger*, 868 F.2d at 1048) (emphasis added). "'Indeed, constitutional challenges based on the first amendment right of free expression are the kind of cases that the federal courts are *particularly well-suited to hear*.'" *Id.* (quoting *J-R Distribs., Inc. v. Eikenberry*, 725 F.2d 482, 487 (9th Cir. 1984) (emphasis added)). Thus far from being the sort of case "upon which the federal courts ought not enter," this is instead precisely the sort of case that this Court is "particularly well-suited to hear." *Id.*

The Ninth Circuit has already considered whether the first *Pullman* factor is present where—as here—the case arises from a First Amendment challenge to election administration by the states. In that context, as here, "the first factor required for *Pullman* abstention [i]s not satisfied." *Id.* at 492-94. Thus, "abstention [i]s inappropriate." *Id.* at 494.

Defendants only cite a *single* case for the proposition that this dispute involves a "sensitive area of social policy upon which the federal courts ought not enter." *Id.* at 492 (cleaned up). Without trace of apparent irony, Defendants cite (at 4) to this Court's decision in *Ariz. All. for Retired Americans v. Clean Elections USA*, No. CV-22-01823-PHX-MTL, 2022 WL 17088041 (D. Ariz. Nov. 1, 2022) as establishing that regulation of "behavior at voting locations… is … a sensitive subject."

But *Clean Elections USA* did not discuss *Pullman* abstention *whatsoever*. More importantly, it actually involved a federal court *intervening* in the State's operation of elections. It thus *confirms* that there are important federal interests at play here that federal courts properly enforce, rather than establishing the context as one that "'federal courts ought not enter.'" *Porter*, 319 F.3d at 492 (citation omitted). Citing a case in which this federal court *did* "enter" hardly establishes this context as one that "federal courts ought not to enter." *Id.*

*   *   *

Defendants are attempting to surmount their formidable "almost never" burden with a *single* case that directly supports Plaintiffs—not them. Defendants' request should thus be denied on the "sensitive area" factor alone.

1

2

**B.  Resolution of What the Speech Restriction Does Under State Law Is Hardly "Uncertain"**

3

4

5

6

7

8

9

The second *Pullman* factor could only be satisfied here if the Speech Restriction were "*capable* of a construction that could avoid the constitutional issues." *Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135, 137 (9th Cir. 1980) (emphasis added). Here, Defendants contend that the Speech Restriction does not actually prohibit anything at all and instead is only non-binding guidance for election officials. But the Speech Restriction is simply not capable of such a construction and thus this second *Pullman* factor is absent here.

10

11

12

13

As explained in Plaintiffs' motion for a preliminary injunction (ECF No. 14) and their brief in state court,[2] the Speech Restriction's text cannot plausibly be read as anything other than a prohibition that applies to all members of the public, and not just election workers.

14

15

16

17

18

19

20

The Speech Restriction's central provision provides: "*Any activity by a person* with the intent or effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) inside or outside the 75-foot limit at a voting location *is prohibited*." EPM at 181 (emphasis added). More succinctly: ""*Any activity by a person*" that falls within its scope "*is prohibited*." *Id.* emphasis added). That prohibition is backed by a criminal statute: any "*person* … who violates *any rule* [in an EPM] … is guilty of a class 2 misdemeanor" under Arizona law. A.R.S. § 16-452(C) (emphasis added).

21

22

23

24

25

26

This text is impossible to square with Defendants' arguments. Take first their contention (at 2) that the Speech Restriction only "applies to election officials for violating certain EPM rules, not to ordinary members of the public." The Speech Restriction's plain text has no such restriction: it explicitly applies to anyone that is "person"—which "ordinary members of the public" are just as much as "election officials." Defendants never explain why only election officials enjoy personhood under that provision that members of

27

28

[2] *See* Ex. A ¶8, Attachment 6. Defendants notably incorporated by reference their motion to dismiss and reply brief in the State Case and attached it as an exhibit. *See* Mot. at 2-3 (referencing and attaching briefs as Exhibits 2 & 3). Plaintiffs accordingly do likewise.

the ordinary public lack. Indeed, the personhood of all natural persons residing in the United States is an issue that the Fourteenth Amendment conclusively resolved seven score and sixteen years ago.

Defendants' position that the Speech Restriction is purely non-binding is equally unavailing. Under its plain text, activities within its scope are outright "prohibited"—not "disfavored" or "recommended against" etc. And Arizona statutory law makes any violations of that prohibition "a class 2 misdemeanor." A.R.S. § 16-452(C).

Had Defendants wanted to promulgate non-binding guidance, they easily could have done so: instead using words like "recommended" or "discouraged." Instead, they used "prohibit"—which unambiguously means "to forbid" or "officially refuse to allow something." *Prohibit*, Cambridge Dictionary https://dictionary.cambridge.org/us/dictionary/english/prohibit (last visited Aug. 19, 2024). And Defendants did so even after the Arizona House Speaker and Senate President explicitly raised First Amendment concerns about the Speech Restriction. *See* ECF No. 1-1 at 8–9. Defendants thus had ample notice that retaining the provision as drafted could lead to a First Amendment challenge. Yet they refused to change course—even though, in their post-suit telling, the text purportedly does not match their claimed intent of drafting purely non-binding guidance applicable only for poll workers. That refusal to react to the legislative leaders' objections is deeply revealing of their actual pre-suit intent. (Not that privately held intent could trump plain meaning in any event.)

Moreover, the Speech Restriction's use of the modifier "any" before "activity" further belies Defendants' efforts to diminish the Speech Restriction into non-binding nothingness. The word "'any' has a well-established "expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (citation omitted)); *accord Babb v. Wilkie*, 140 S. Ct. 1168, 1174 n.3 (2020) ("We have repeatedly explained that 'the word 'any' has an expansive meaning."). Thus, the use of "any" confirms that "any activity" that falls within the Speech Restriction's own definition is, as the provisions says, "prohibited." EPM at 181.

For these reasons, the superior court had little difficulty rejecting Defendants' untenable, anti-textual constructions. As that court explained, the Speech Restriction "serves 'as a universal prohibition on conduct.'" Ex. A, Attachment 1, at 17. It further "applies to all Arizonans, not just those professionally involved with elections or volunteering to assist in election operations." *Id*. at 9.

Indeed, the superior court not only rejected Defendants' contentions but "admitted difficulty in [even] *understanding Defendants' arguments*." Order at 8 (emphasis added). That difficulty is understandable: Defendants' construction is simply impossible to reconcile with any defensible reading of the words "any," "person," and "prohibit." Defendants' construction is simply unserious.

Notably, the Secretary has made *multiple* statements following the superior court's decision that are impossible to reconcile with Defendants' contention that the Speech Restriction is purely non-binding guidance that applies only to poll workers. Immediately following the decision, he told the press that: "While we respect the court's decision to halt *certain speech restrictions*, implementing a preliminary injunction for the general election would be too far reaching." Ex. A ¶6 (emphasis added). The Secretary thus admitted that the Speech Restriction does, in fact, contain "speech restrictions"—*i.e.*, actual prohibitions on speech, rather than pure non-binding guidance.

Secretary Fontes further tweeted on August 13 that one of the Plaintiffs here and in the State Case "*put non-protected harassment/intimidation speech* vs 1A right of voters to peaceably assemble." *Id.* ¶4 (emphasis added). That necessarily demonstrates Secretary Fontes's view the Speech Restriction bans *speech*. The dispute here is just that, in his (erroneous) view, that speech that is "non-protected." But that is a question under *federal law* as to what the First Amendment protects, not state law.

The Secretary thus plainly believes that the Speech Restriction is a binding prohibition on *speech*. On that issue, Plaintiffs and the Secretary are in apparent agreement (at least insofar as the briefs that bear his name are excluded). The disagreement here arises not from what the Speech Restriction means, but rather what whether its acknowledged

prohibitions are constitutional. The Secretary thus views, wrongly, that speech at issue is unprotected by free speech guarantees. But disputes like that are why this Court should exercise jurisdiction, rather than abstain. Defendants' state-law arguments are thus not only meritless and already rejected by Arizona state court, but also plainly not even believed by the Secretary himself.

Other outside observers have had little difficulty in understanding that the Speech Restriction's is a generally applicable prohibition. For example, Democracy Docket, which is aligned with Defendants' amici, had little difficulty in admitting in an August 6 post that the Speech Restriction *inter alia* "*prohibits*: Any activity by a person 'with the intent or effect of threatening, harassing, intimidating, or coercing' voters." Ex. A ¶7 (emphasis added). It further goes on to argue that "*Prohibitions on voter intimidation* [like the Speech Restriction] are critical, especially in a state where vigilantes have been empowered by the right to monitor voters." *Id.* (emphasis added).

For all of these reasons and those explained in Plaintiffs' prior briefs, see (ECF No. 14 at 9–11); Ex A ¶7, Attachment 6, the Speech Restriction is simply not "capable of [Defendants'] construction that could avoid the constitutional issues." *Spokane Arcades*, 631 F.2d at 137. The second *Pullman* factor is thus absent here.

### C. It Is Doubtful That "Constitutional Adjudication Can Plainly Be Avoided" By *Pullman* Abstention Here

Finally, the third factor here is marginal. If Defendants were correct that the Speech Restriction did not prohibit anything, the third factor (unlike the first two) would be satisfied. But Defendants have now rendered this factor murky by seeking a stay pending appeal in state court, which appears to argue that some of the examples in the Speech Restriction are indeed prohibited. Ex. A ¶5. Indeed, unless those examples are actually prohibited by the Speech Restriction, it is difficult to comprehend how Defendants could possibly suffer irreparable harm from their inability to enforce provisions that they simultaneously claim are completely unenforceable, non-binding guidance. At least one of those two irreconcilable positions is necessarily wrong.

The Attorney General thus appears to regard at least part of the Speech Restriction as establishing binding prohibitions. And if that is correct, Defendants prevailing on their state law interpretive arguments will not eliminate the need to adjudicate the First Amendment claim here. Moreover, the Secretary appears to regard *all* of the Speech Restriction as a binding restriction, *supra* at 10-11—which he notably has *not* disavowed enforcement of, ECF No. 1-3 at 2.

Given Defendants' shifting, self-contradictory positions, it is thus difficult to ascertain whether the second *Pullman* factor applies. But that hardly matters since the first and third *Pullman* factors are plainly not satisfied and Plaintiffs have not come close to demonstrating that this case warrants an exception from the Ninth Circuit's "almost never … appropriate" standard.

## CONCLUSION

For the foregoing reasons, Plaintiffs have not established that this case warrants an exception to the Ninth Circuit's standard that *Pullman* prohibition is "almost never" appropriate in First Amendment cases. Under binding Ninth Circuit precedent, this issue is neither close nor difficult. Defendants' request merits emphatic rejection by this Court.

Dated this 19th day of August 2024.

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC

By: */s/ Andrew Gould*
    Andrew Gould
    Drew C. Ensign
    Dallin B. Holt
    Brennan A.R. Bowen
    2555 E. Camelback Road, Suite 7000
    Phoenix, AZ 85016
    *Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on this 19th day of August, 2024, I electronically filed the

3  foregoing with the Clerk of the Court for the United States District Court for the District of

4  Arizona using the CM/ECF filing system. Counsel for parties that are registered CM/ECF

5  users will be served by the CM/ECF system pursuant to the notice of electronic filing.

6

7                          /s/ Andrew Gould
                          *Attorney for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28