**KRISTIN K. MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Nathan T. Arrowsmith (No. 031165)
Joshua M. Whitaker (No. 032724)
Luci D. Davis (No. 035347)
Shannon Hawley Mataele (No. 029066)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Nathan.Arrowsmith@azag.gov
Joshua.Whitaker@azag.gov
Luci.Davis@azag.gov
Shannon.Mataele@azag.gov
ACL@azag.gov

*Attorneys for Arizona Attorney General Kristin K. Mayes*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| American Encore, an Arizona non-profit corporation; Karen Glennon, an Arizona individual; America First Policy Institute, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State; Kris Mayes, in her official capacity as Arizona Attorney General; Katie Hobbs, in her official capacity as Governor of Arizona,<br><br>Defendants. | No. CV-24-01673-PHX-MTL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO ABSTAIN AS TO COUNT TWO**<br><br>(Hon. Michael T. Liburdi) |

**Introduction**

Defendants acknowledge that *Pullman* abstention is unusual for First Amendment claims. But it is also unusual for a First Amendment claim to (1) depend on how state courts will interpret state law and (2) be a near-identical copy of a claim previously filed (and already preliminarily decided) in a state court proceeding. Consider the similarities between Count Two here and the parallel claim in the State Case:

1. One of the Plaintiffs is the same, and Plaintiffs' counsel is the same.
2. Defendants are the same, and Defendants' counsel is the same.
3. The same EPM provision (section III(D)) is being challenged.
4. The nature of the free speech challenge is virtually identical.

*Compare* Doc. 1 (especially ¶¶ 150–156) *with* Doc. 27-1 (especially ¶¶ 150–157).

The main difference between Count Two in this case and the parallel claim in the State Case is that the State Case is much farther ahead. The state court has already ruled on the motion for a preliminary injunction, and appellate proceedings are underway.

In this sort of situation, courts often abstain under *Pullman*. Plaintiffs cite general principles about the rarity of *Pullman* abstention in First Amendment cases, but they ignore that the present situation is analogous to the exceptional cases in which courts have abstained. Tellingly, Plaintiffs cite no case <u>denying</u> abstention in such circumstances.

And abstention is eminently sensible here. The reason why Plaintiffs included Count Two in this case is so that, *if* Arizona's appellate courts ultimately interpret A.R.S. § 16-452 and the EPM more narrowly than Plaintiffs advocate in the State Case, Plaintiffs might still be able to convince a federal court to adopt their broad interpretation. But that is the exact opposite of how federalism and judicial economy should work. Rather, a federal court "ordinarily" should "refrain from deciding a case in which state action is challenged in federal court as contrary to the federal constitution if there are unsettled questions of state law that may be dispositive of the case," especially "if there is already pending a state court action that is likely to resolve the state questions." Wright & Miller § 4242. That is precisely the situation that Plaintiffs and their counsel have created.

1

I. ***Pullman* Abstention for First Amendment Claims Is More Common than Plaintiffs Suggest.**

Plaintiffs argue (at 3) that federal courts "almost never" abstain from considering First Amendment claims. But "almost never" means "sometimes." To illustrate, below are some times when federal courts—including the Supreme Court—have approved *Pullman* abstention for First Amendment claims in cases similar to this one:

1. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 307–12 (1979) (holding that the "District Court should have postponed resolution" of a challenge to an Arizona law when a state court interpretation could "significantly alter the constitutional questions requiring resolution," and that the "District Court should have abstained" from deciding a challenge to a related Arizona law when the law "might fairly be construed by an Arizona court" more narrowly than challengers suggested).

2. *Almodovar v. Reiner*, 832 F.2d 1138, 1139–41 (9th Cir. 1987) (affirming abstention when "constitutional claims would be moot if the state supreme court decides that the statutes do not apply").

3. *Lomma v. Connors*, 539 F. Supp. 3d 1094, 1099–1103 (D. Haw. 2021) (abstaining under Ninth Circuit precedent when parties were involved in a related state case that was farther along, "rendering abstention particularly compelling").

4. *Moore v. Hosemann*, 591 F.3d 741, 745–46 (5th Cir. 2009) (stating that "*Pullman* abstention is appropriate" for claim that Secretary of State violated First Amendment right to political participation, when claim was "entirely contingent on an unresolved interpretation of [state] law").

5. *Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 840–41 (8th Cir. 1998) (affirming abstention when issue was "fairly subject to" statutory decision by state courts that could "obviat[e] federal constitutional inquiry").

2

6. *Presbytery of N.J. of the Orthodox Presbyterian Church v. Whitman*, 99 F.3d 101, 106–07 (3d Cir. 1996) (affirming abstention when it was "quite possible" that state courts "would construe the challenged language so as to avoid reaching the type of conduct in which [plaintiffs] engage").

7. *Def. Distributed v. Grewal*, 368 F. Supp. 3d 1087, 1090–93 (W.D. Tex. 2018) (abstaining when state law was "fairly susceptible to" interpretation that would not hinder plaintiffs and observing that "the Supreme Court has ruled that abstention is appropriate, even in the context of First Amendment challenges, when the interpretation of a state law 'turns upon the choice between one or several alternative meanings of [the] state statute'" (quoting *Babbitt*, 442 U.S. at 307–09)).

8. *Caldera v. City of Boulder*, 341 F. Supp. 3d 1241, 1243–1248 (D. Colo. 2018) (abstaining when state law question could be "entirely dispositive" of federal constitutional issues and observing that "the factors that sometimes lead the Supreme Court to assert that free expression cases generally are not suitable for *Pullman* abstention are not present here"), *aff'd sub nom. Caldara v. City of Boulders*, 955 F.4d 1175 (10th Cir. 2020).

9. *Supreme v. Kan. State Elections Bd.*, No. 18-CV-1182-EFM, 2018 WL 3329864, at *3–5 (D. Kan. July 6, 2018) (finding abstention "likely" when First Amendment claim "rests entirely upon the meaning of [state] election laws").

10. *Gordon v. E. Goshen Twp.*, 592 F. Supp. 2d 828, 845–49 (E.D. Pa. 2009) (abstaining when state court resolution of state-law question "would eliminate the need for, or substantially narrow the scope of, this Court's constitutional ruling" and explaining that "the Supreme Court has concluded that even a facial First Amendment challenge does not automatically render abstention inappropriate" (citing *Babbitt*, 442 U.S. at 308)).

These cases should guide the Court here. For example, the question of how to interpret A.R.S. § 16-452(C) and EPM section III(D) "can be adjudicated in a single state court proceeding," and the parties "need not undergo the expense or delay of a full state court litigation" because the question is already being litigated in a state appellate court. *Almodovar*, 832 F.2d at 1140.

Inexplicably, Plaintiffs try to minimize *Almodovar* by asserting (at 4) that "the Ninth Circuit does not appear to have approved of *Pullman* abstention in the last 35 years." This is a blatant falsehood. Here are some examples of recent published opinions:

- *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1146–51 (9th Cir. 2022) (affirming *Pullman* abstention);
- *Courtney v. Goltz*, 736 F.3d 1152, 1162–65 (9th Cir. 2013) (affirming *Pullman* abstention);
- *Smelt v. Cnty. of Orange*, 447 F.3d 673, 678–82 (9th Cir. 2006) (affirming *Pullman* abstention);
- *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 801–07 (9th Cir. 2001) (*reversing* district court's decision to reach the merits and instead directing district court to abstain under *Pullman*);
- *San Remo Hotel v. City & Cnty. of San Francisco*, 145 F.3d 1095, 1104–05 (9th Cir. 1998) (directing district court to abstain under *Pullman*);
- *Cedar Shake & Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622–26 (9th Cir. 1993) (holding that district court abused its discretion in *failing* to abstain under *Pullman*).

While these cases did not involve First Amendment claims, they show that the Ninth Circuit continues to regard *Pullman* abstention as important.[1]

Plaintiffs also try to minimize *Almodovar* by observing (at 4) that the state-law question in that case had already made its way to the state supreme court. This

---

[1] The two most recent of these published opinions were cited in Defendants' motion to abstain. It is hard to understand how Plaintiffs missed them.

4

observation is true, but irrelevant. Nothing in the *Almodovar* opinion suggests the Ninth Circuit would have come out differently had the state-law question been in the state intermediate appellate court (as it is here). The point being made by the Ninth Circuit in *Almodovar* was that abstention would not force the parties to "undergo the expense or delay of a *full* state court litigation" because there was already "a pending state court litigation." 832 F.2d at 1140 (emphasis added). That point is equally applicable here.

II.     **The State Case Addresses Plaintiffs' Concerns about the Upcoming Election.**

Plaintiffs next argue (at 5) that *Pullman* abstention would grant Defendants "victory through non-adjudication with respect to the 2024 elections." But this argument ignores reality. Plaintiffs have *already* achieved a preliminary victory regarding the 2024 elections, via a preliminary injunction in the State Case.

Plaintiffs are apparently worried that the Arizona Court of Appeals will stay the preliminary injunction in the State Case. This worry is understandable given that Plaintiffs' broad interpretations of A.R.S. § 16-452(C) and EPM section III(D) are unlikely to pass appellate scrutiny. But even assuming the Arizona Court of Appeals disagrees with Plaintiffs' broad interpretation and stays the preliminary injunction, *that is what should happen* in our federalist judicial system. As the Supreme Court has explained, abstention is appropriate when a state law "might fairly be construed by an Arizona court" more narrowly than the challengers suggest. *Babbitt*, 442 U.S. at 308–09.

Plaintiffs also suggest (at 5) that evaluating whether Plaintiffs have met the jurisdictional prerequisite of standing *before* deciding whether to abstain would be "asymmetric and inequitable." But this asymmetry is not inequitable; it is the direct consequence of the fact that Article III limits federal courts to cases and controversies. "Since abstention presupposes that jurisdiction exists, the court ought not consider whether to abstain until it has satisfied itself that it has jurisdiction of the case." Wright

& Miller § 4243 (citing, among other cases, *City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980)).[2]

### III.  The Three *Pullman* Abstention Factors Are Satisfied.

*Pullman* abstention is appropriate when "(1) the federal constitutional claim 'touches a sensitive area of social policy,' (2) 'constitutional adjudication plainly can be avoided or narrowed by a definitive ruling' by a state court, and (3) a 'possibly determinative issue of state law is doubtful.'" *Gearing*, 54 F.4th at 1147 (citation omitted).  Plaintiffs argue (at 6) that the first and third factors are "lacking" and the second is "marginal."  This is incorrect.

#### A.  Count Two touches a sensitive area of social policy.

Although Count Two is directed at behavior during elections, Plaintiffs argue (at 6–7) that this is not a sensitive area of social policy, citing *Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003).  But in *Porter*, the Ninth Circuit was driven by "special concern" that "the delay that comes from abstention may itself chill the First Amendment rights at issue."  *Id.* at 492–93.  The Ninth Circuit reasoned that "the parties have already been litigating the case in federal court for over two years, and it is far from clear that the case would be resolved prior to the 2004 election if Plaintiffs were sent to state court."  *Id.* at 494.  Here, as explained above, these concerns are absent because (1) the federal case has barely started, (2) a nearly identical claim was previously brought in the State Case and is already being considered in Arizona's appellate courts, and (3) Plaintiffs have *achieved* a preliminary injunction in the State Case prior to the upcoming election.

---

[2] Plaintiffs also suggest (at 6) that this Court should certify state-law questions to the Arizona Supreme Court.  But there is no need to do so because the Arizona Court of Appeals will be considering the questions soon.  Once the Arizona Court of Appeals decides, the Arizona Supreme Court can choose whether to grant review.  *See, e.g.*, *Caldara v. City of Boulder*, 955 F.3d 1175, 1183 (10th Cir. 2020) (declining certification because "there is a case involving substantially identical issues pending in state court").  If Plaintiffs wish to hasten consideration of the issue by the Arizona Supreme Court, they can file a petition to transfer the State Case.  *See* Ariz. R. Civ. App. P. 19.

Plaintiffs also belittle (at 7) Defendants' citation of *Arizona Alliance for Retired Americans v. Clean Elections USA*, No. CV-22-01823-PHX-MTL, 2022 WL 17088041 (D. Ariz. Nov. 1, 2022). But Defendants cited that case to highlight the Court's own experience with this sensitive area of social policy. The fact that that case involved federal judicial action (in a context where parties did not urge abstention) does not somehow mean that behavior during elections is *not* a sensitive area of social policy.

Indeed, the fact that there are state laws governing behavior during elections, *e.g.*, A.R.S. § 16-1013, as well as an EPM provision on the subject (drafted by the Secretary of State and approved by the Governor and Attorney General) demonstrates that this is a sensitive and important subject in Arizona. *Accord, e.g.*, *Moore*, 591 F.3d at 745 (stating that "*Pullman* abstention is appropriate" for claim that Secretary of State violated First Amendment right to political participation); *Supreme*, No. 18-CV-1182-EFM, 2018 WL 3329864, at *3–5 (finding abstention "likely" when First Amendment claim "rests entirely upon the meaning of [state] election laws" and explaining that the State has a "significant interest" in an "orderly election process").

**B.  Plaintiffs' interpretation of A.R.S. § 16-452 and the EPM is doubtful (at best).**

Skipping to the third *Pullman* factor, Plaintiffs argue (at 8–11) that their interpretation of A.R.S. § 16-452(C) and EPM section III(D) is so obvious that it cannot be "doubtful" for purposes of abstention. Of course, Defendants strongly disagree with Plaintiffs' interpretation, as explained at length in the Attorney General's Motion to Dismiss Count Two (Doc. 31), the Attorney General's Response to Plaintiffs' Motion for Preliminary Injunction as to Count Two (Doc. 32), the Secretary's joinder in both filings (Doc. 33 at 1), and the Attorney General's Reply in Support of her Motion to Dismiss Count Two (filed concurrently with the present Reply).

Defendants will not burden the Court by repeating arguments in those briefs. Suffice it to say, Plaintiffs' expansive interpretation of criminal liability is unprecedented. At a minimum, Defendants' interpretation of A.R.S. § 16-452(C) and EPM section III(D)

renders Plaintiffs' broad interpretation doubtful. After all, Defendants are the enforcer of A.R.S. § 16-452(C) (the Attorney General) and the drafter of the EPM (the Secretary), and they have unequivocally and repeatedly disavowed the interpretations, applications, and prosecutions that Plaintiffs advance.

Insofar as Plaintiffs rely (at 10–11) on the Secretary's public statements after the superior court's decision in the State Case, that reliance is misplaced. The *superior court* had (mis)interpreted EPM section III(D) as directly restricting speech of members of the public, having been convinced by the plaintiffs. That is why the Secretary referred, for example, to "the *court's decision* to halt certain speech restrictions." Doc. 41-1 at 3 ¶ 6 (emphasis added). The Secretary was not expressing agreement with the superior court's interpretation. He was explaining the State Case and issues to lay members of the public. It is common for elected officials to comment on court rulings to educate the public, including to express disagreement about those rulings when they fear for the implications on important statewide matters like safety and security in voting.

The Secretary's comments to the lay public are consistent with his litigation positions on the legal issues, as expressed through his counsel and the Attorney General in this Court. Indeed, some of the Secretary's comments reflect the broad, undefined, and confusing nature of the superior court's preliminary injunction. The Secretary's comments also make sense in light of the actual meaning of EPM section III(D), as opposed to Plaintiffs' erroneous reading. His overarching point was to convey how the superior court's misreading and overbroad preliminary relief evidently prevents poll workers from considering the EPM's guidance as they perform their duties to keep voting locations secure from (unprotected) intimidation, coercion, harassment, and disruptive or dangerous conduct, which would threaten Arizonans' ability to freely and safely vote.

**C.     An adjudication of Count Two plainly can be avoided or narrowed by a ruling in the State Case.**

Returning to the second *Pullman* factor, Plaintiffs suggest (at 11–12) that it is unclear whether an adjudication of Count Two could be avoided or narrowed by a ruling in the State Case. This position is baffling.

Count Two in this case is nearly *identical* to the parallel claim in the State Case. *Compare* Doc. 1 (especially ¶¶ 150–156) *with* Doc. 27-1 (especially ¶¶ 150–157). And Plaintiffs have already won a preliminary injunction in the State Case, based on the trial court's (mis)interpretation of A.R.S. § 16-452(C) and EPM section III(D). So, if Arizona's appellate courts affirm the preliminary injunction, and if a permanent injunction is ultimately entered, that would plainly eliminate—or at least narrow—the need for this Court to adjudicate Count Two.

Plaintiffs say (at 11) that Defendants made this *Pullman* factor "murky" by seeking a stay of the preliminary injunction in the State Case. But it is Plaintiffs who are making the factor murky by misstating the legal inquiry under *Pullman*. Regardless of what Plaintiffs think of *Defendants'* views of A.R.S. § 16-452(C) and EPM section III(D), it is clear that *Arizona courts'* views on these issues will bear heavily on whether this Court must adjudicate Count Two at all. Therefore, this *Pullman* factor clearly favors abstention.

## Conclusion

If this Court does not dismiss Count Two for lack of standing, this Court should abstain from deciding Count Two pending resolution of the State Case.

RESPECTFULLY SUBMITTED this 5th day of September, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By /s/ *Joshua M. Whitaker*
    Nathan T. Arrowsmith
    Joshua M. Whitaker
    Luci D. Davis
    Shannon Hawley Mataele
    Office of the Arizona Attorney General
    2005 N. Central Ave.
    Phoenix, Arizona 85004

*Attorneys for Arizona Attorney General Kristin K. Mayes*

By /s/ *Karen J. Hartman-Tellez*
    Kara Karlson
    Karen J. Hartman-Tellez
    Senior Litigation Counsel
    Kyle Cummings
    Assistant Attorney General

*Attorneys for Arizona Secretary of State Adrian Fontes*